GIBSON, DUNN & CRUTCHER LLP
Theodore B. Olson, SBN 38137
tolson@gibsondunn.com
Matthew D. McGill (*pro hac vice* application pending)
Amir C. Tayrani, SBN 229609
1050 Connecticut Avenue, N.W. Washington, D.C. 20036
Telephone: (202) 955-8668, Facsimile: (202) 467-0539

Theodore J. Boutrous, Jr., SBN 132009
tboutrous@gibsondunn.com
Christopher D. Dusseault, SBN 177557
Ethan D. Dettmer, SBN 196046
Theane Evangelis Kapur, SBN 243570
Enrique A. Monagas, SBN 239087
333 S. Grand Avenue, Los Angeles, California 90071
Telephone: (213) 229-7804, Facsimile: (213) 229-7520

BOIES, SCHILLER & FLEXNER LLP
David Boies (*pro hac vice* application pending)
dboies@bsfllp.com
Theodore H. Uno, SBN 248603
333 Main Street, Armonk, New York 10504
Telephone: (914) 749-8200, Facsimile: (914) 749-8300

Attorneys for Plaintiffs KRISTIN M. PERRY, SANDRA B. STIER,
PAUL T. KATAMI, and JEFFREY J. ZARRILLO

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the California Department of Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; and DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles,<br><br>Defendants. | CASE NO. CV 09 2292<br><br>**COMPLAINT FOR DECLARATORY, INJUNCTIVE, OR OTHER RELIEF** |

Gibson Dunn &
Crutcher LLP

COMPLAINT

Plaintiffs Kristin M. Perry, Sandra B. Stier, Paul T. Katami, and Jeffrey J. Zarrillo complain of Defendants and allege:

## INTRODUCTION

1.  More than 30 years ago, the Supreme Court of the United States recognized that "[m]arriage is one of the 'basic civil rights of man,' fundamental to our very existence and survival." *Loving v. Virginia*, 388 U.S. 1, 12 (1967). But today, as a result of the passage of Proposition 8 in November 2008, the State of California denies its gay and lesbian residents access to marriage by providing in its constitution that only a civil marriage "between a man and a woman" is "valid or recognized in California." Cal. Const. Art. I § 7.5 ("Prop. 8"). Instead, California relegates same-sex unions to the separate-but-unequal institution of domestic partnership. *See* Cal. Fam. Code §§ 297-299.6. This unequal treatment of gays and lesbians denies them the basic liberties and equal protection under the law that are guaranteed by the Fourteenth Amendment to the United States Constitution.

2.  For these reasons, Plaintiffs ask this Court to enjoin, preliminarily and permanently, all enforcement of Prop. 8 and any other California statutes that seek to exclude gays and lesbians from access to civil marriage.

## JURISDICTION AND VENUE

3.  This case raises questions under the Constitution of the United States and 42 U.S.C. § 1983, and thus this Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. § 1331.

4.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant O'Connell resides in this district and all Defendants reside in the State of California. Venue is also proper in this Court because a substantial part of the events giving rise to the claim occurred in this district.

## NATURE OF DISPUTE

5.  This action pursuant to 42 U.S.C. § 1983 seeks (1) a declaration that Prop. 8, which denies gay and lesbian individuals the opportunity to marry civilly and enter into the same officially sanctioned family relationship with their loved ones as heterosexual individuals, is unconstitutional under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United

States Constitution, and (2) a preliminary and permanent injunction preventing Defendants from enforcing that provision against Plaintiffs.

6. In an abundance of caution, and to the extent that they have any continuing legal force after the California Supreme Court's decision in *In re Marriage Cases*, 183 P.3d 384 (Cal. 2008), Plaintiffs also seek (1) a declaration that California Family Code §§ 300 and 308.5, which purport to restrict civil marriage in California to opposite-sex couples, and California Family Code § 301, which also could be read to impose such a restriction, are unconstitutional under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, and (2) a preliminary and permanent injunction preventing Defendants from enforcing those provisions against Plaintiffs.

7. Plaintiffs Perry and Stier are lesbian individuals in a committed relationship. Plaintiffs Katami and Zarrillo are gay individuals in a committed relationship. Both couples desire to express their love for and commitment to one another by getting married and obtaining official sanction for their family from the State. But Prop. 8 denies them that right in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution.

8. To enforce the rights afforded by the United States Constitution, Plaintiffs bring this suit pursuant to 42 U.S.C. § 1983 for declaratory and injunctive relief against the enforcement of Prop. 8. Plaintiffs also seek to recover all their attorneys' fees, costs, and expenses incurred in this action and any other relief that this Court may order.

## THE PARTIES

9. Plaintiff Kristin M. Perry is a California citizen and resides in Alameda County, California.

10. Plaintiff Sandra B. Stier is a California citizen and resides in Alameda County, California.

11. Plaintiff Paul T. Katami is a California citizen and resides in Los Angeles County, California.

12. Plaintiff Jeffrey J. Zarrillo is a California citizen and resides in Los Angeles County, California.

13. Defendant Arnold Schwarzenegger is the Governor of the State of California. In his official capacity, the Governor is the chief executive officer of the State of California. It is his responsibility to ensure that the laws of the State are properly enforced. The Governor maintains an office in San Francisco.

14. Defendant Edmund G. Brown, Jr., is the Attorney General of the State of California. In his official capacity, the Attorney General is the chief legal officer of the State of California. It is his duty to see that the laws of the State are uniformly and adequately enforced. The Attorney General maintains offices in Oakland and San Francisco.

15. Defendant Mark B. Horton is the Director of the California Department of Public Health and, as such, is the State Registrar of Vital Statistics of the State of California. In his official capacity, the Director of the California Department of Public Health is responsible for prescribing and furnishing the forms for the application for license to marry, the certificate of registry of marriage including the license to marry, and the marriage certificate.

16. Defendant Linette Scott is the Deputy Director of Health Information & Strategic Planning for the California Department of Public Health. Upon information and belief, Scott reports to Defendant Horton and is the California Department of Public Health official responsible for prescribing and furnishing the forms for the application for license to marry, the certificate of registry of marriage including the license to marry, and the marriage certificate.

17. Defendant Patrick O'Connell is the Clerk-Registrar for the County of Alameda. O'Connell is responsible for maintaining vital records of marriages, issuing marriage licenses, and performing civil marriage ceremonies.

18. Defendant Dean C. Logan is the Registrar-Recorder/County Clerk for the County of Los Angeles. Logan is responsible for maintaining vital records of marriages, issuing marriage licenses, and performing civil marriage ceremonies.

19. Defendants, and those subject to their supervision, direction, and control, are responsible for the enforcement of Prop. 8. The relief requested in this action is sought against each Defendant, as well as against each Defendant's officers, employees, and agents, and against all

persons acting in cooperation with Defendant(s), under their supervision, at their direction, or under their control.

## FACTS

20. Gay and lesbian individuals have faced a long and painful history of societal and government-sponsored discrimination in this country. Although their sexual orientation bears no relation to their ability to contribute to society, gays and lesbians have been singled out for discriminatory treatment. They have faced unconstitutional criminal penalties for private sexual conduct between consenting adults, harassment, hate crimes, and discrimination in employment and many other areas. They have even been the subject of laws stripping them of rights afforded to all other citizens.

21. Beginning in the 1970s, gays and lesbians began to seek change and equality through the legislative process in California. Unfortunately, that effort was met with resistance from those who would deny them equal treatment. For example, several same-sex couples sought marriage licenses in the mid-1970s from the county clerks in a number of California counties, but their applications were denied. Then, in 1977, the California Legislature enacted California Family Code § 300, which defined marriage as "a personal relation arising out of a civil contract between a man and a woman, to which the consent of the parties capable of making that contract is necessary."

22. Nonetheless, gays and lesbians continued to press for the recognition of their right to equal treatment and were successful in making some gains. One such gain was the creation of domestic partnerships by the California Legislature in 1999. Cal. Stats. 1999, ch. 588, § 2 (adding Cal. Fam. Code §§ 297-299.6). The 1999 legislation defined "domestic partners" as "two adults who have chosen to share one another's lives in an intimate and committed relationship of mutual caring." Cal. Fam. Code § 297(a). To qualify for domestic partnership, a couple must share a common residence, each be at least 18 years of age and unrelated by blood in any way that would prevent them from being married to each other, not be married or a member of another domestic partnership, be capable of consenting, and either both be persons of the same sex or include at least one person more than 62 years of age. Cal. Fam. Code § 297(b).

23. Domestic partnership enables same-sex couples to obtain many of the substantive legal benefits and privileges that California law provides to married couples, but denies them access to civil marriage itself. It also treats same-sex couples differently in other respects, including but not limited to the following: (1) To qualify for domestic partnership, both partners must have a common residence at the time the partnership is established, Cal. Fam. Code § 297(b)(1), but there is no such requirement for marriage; (2) both individuals must be 18 years of age to enter into a domestic partnership, Cal. Fam. Code § 297(b)(4), but a person under 18 may be married with the consent of a parent or guardian or court order, Cal. Fam. Code §§ 302, 303; (3) to become domestic partners, both individuals must complete and file a Declaration of Domestic Partnership with the Secretary of State, who registers the declaration in a statewide registry, Cal. Fam. Code § 298.5(a) & (b), but a couple who wishes to marry must obtain a marriage license and certificate of registry of marriage from the county clerk, have the marriage solemnized by an authorized individual, and return the license and certificate of registry to the county recorder, who transmits it to the State Registrar of Vital Statistics, Cal. Fam. Code §§ 306, 359; Cal. Health & Safety Code §§ 102285, 102330, 102355; (4) the marriage laws establish a procedure through which an unmarried man and woman who have been living together as husband and wife may enter into a "confidential marriage" in which the marriage certificate and date of marriage are not made available to the public, Cal. Fam. Code §§ 500, 511, but the domestic partnership law contains no such provision; (5) Article XIII § 3(o) & (p) of the California Constitution grants a $1,000 property tax exemption to an "unmarried spouse of a deceased veteran" who owns property valued at less than $10,000, but not to a domestic partner of a deceased veteran; and (6) domestic partners may initiate a summary dissolution of a domestic partnership without any court action, whereas a summary dissolution of a marriage becomes effective only upon entry of a court judgment, Cal. Fam. Code § 299(a)-(c); Cal. Fam. Code § 2400 et seq.

24. After enactment of the domestic partnership law, gays and lesbians again experienced a backlash, this time through the ballot initiative process. In 2000, a majority of California voters approved Proposition 22 (codified at Cal. Fam. Code § 308.5), which provided that "[o]nly marriage between a man and a woman is valid or recognized in California." In *Lockyer v. City & County of San Francisco*, 95 P.3d 459 (Cal. 2004), the California Supreme Court held that Family Code sections

5

300 and 308.5 prohibited public officials of the City and County of San Francisco from issuing marriage licenses to same-sex couples, but it did not decide whether those laws were constitutional.

25. Fearing that Family Code sections 300 and 308.5 might be held unconstitutional, opponents of same-sex marriage began an effort to put an initiative on the November 4, 2008, ballot that would overturn the California Supreme Court's decision by amending the California Constitution to ban same-sex marriage. On April 24, 2008, the proponents of the ban submitted petitions with enough signatures to place what would become Prop. 8 on the ballot.

26. On May 15, 2008, the California Supreme Court held that Family Code sections 300 and 308.5 were unconstitutional under the privacy, due process, and equal protection guarantees of the California Constitution in *In re Marriage Cases*, 183 P.3d 384 (Cal. 2008).

27. On June 2, 2008, the Secretary of State declared that Prop. 8 could be placed on the ballot. The General Election Voter Information Guide stated that Prop. 8 would "[c]hange[] the California Constitution to *eliminate the right* of same-sex couples to marry in California." (Emphasis added). Thus, the express and stated purpose of the ballot initiative was to strip gays and lesbians of constitutional rights afforded to them by the California Constitution and to impose a special disability on gays and lesbians alone by stripping them of state constitutional protections that apply to all other citizens.

28. On election day, fifty-two percent of the ballots cast voted to amend the California Constitution to add a new section 7.5 to Article I providing: "Only marriage between a man and a woman is valid or recognized in California." The measure went into effect on November 5, 2008, the day after the election.

29. Since November 5, 2008, same-sex couples have been denied marriage licenses on account of Prop. 8.

30. Prop. 8 has created a legal system in which civil marriage is restricted solely and exclusively to opposite-sex couples, and in which gay and lesbian individuals are denied the right to enter into a civil marriage with the person of their choice. The inability to marry denies gay and lesbian individuals and their children the personal and public affirmation that accompanies marriage.

31. Plaintiffs are gay and lesbian residents of California who are involved in long-term, serious relationships with individuals of the same sex and desire to marry those individuals. They are now prohibited from doing so as a direct result of Defendants' enforcement of Prop. 8.

32. On May 21, 2009, Plaintiffs Perry and Stier applied for a marriage license from Defendant O'Connell, the Alameda County Clerk-Registrar, but were denied because they are a same-sex couple.

33. On May 20, 2009, Plaintiffs Katami and Zarrillo applied for a marriage license from Defendant Logan, the Los Angeles County Clerk, but were denied because they are a same-sex couple.

34. As a result of Prop. 8, Plaintiffs are barred from marrying the individual they wish to marry and are instead left only with the separate-but-unequal option of domestic partnership.

35. Plaintiffs' inability to have their relationship recognized by the State with the dignity and respect accorded to married opposite-sex couples has caused them significant hardship, including but not limited to the deprivation of rights guaranteed by the Fourteenth Amendment and severe humiliation, emotional distress, pain, suffering, psychological harm, and stigma. Marriage is a supremely important social institution, and the "freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men." *Loving v. Virginia*, 388 U.S. 1, 12 (1967). Each day that Plaintiffs are denied the freedom to marry, they suffer irreparable harm as a direct result of Defendants' violation of their constitutional rights.

36. If Prop. 8 is not enjoined, Defendants will continue to enforce this unconstitutional law against Plaintiffs, thereby depriving them of their constitutional rights under the Fourteenth Amendment. The declaratory and injunctive relief sought by Plaintiffs, on the other hand, will require Defendants Horton and Scott to revise the official state forms for the application for license to marry, the certificate of registry of marriage including the license to marry, and the marriage certificate, and will require Defendants O'Connell and Logan to issue them a marriage license. The relief sought also will require Defendants Schwarzenegger and Brown to recognize their marriage as valid within the State of California.

## CLAIMS FOR RELIEF

## CLAIM ONE: DUE PROCESS

37. Plaintiffs incorporate here by reference paragraphs 1 through 36, *supra*, as if fully set forth herein.

38. Prop. 8 violates fundamental liberties that are protected by the Due Process Clause, both on its face and as applied to Plaintiffs.

39. Prop. 8 impinges on fundamental liberties by denying gay and lesbian individuals the opportunity to marry civilly and enter into the same officially sanctioned family relationship with their loved ones as opposite-sex individuals. For example, by denying those individuals the same "marriage" designation afforded to opposite-sex couples, and instead allowing them access only to the separate and differently named "domestic partnership" relationship, the State is stigmatizing gays and lesbians, as well as their children and families, and denying them the same dignity, respect, and stature afforded officially recognized opposite-sex family relationships.

## CLAIM TWO: EQUAL PROTECTION

40. Plaintiffs incorporate here by reference paragraphs 1 through 39, *supra*, as if fully set forth herein.

41. Prop. 8 violates the Equal Protection Clause of the Fourteenth Amendment, both on its face and as applied to Plaintiffs.

42. Prop. 8 restricts civil marriage to individuals of the opposite sex; gay and lesbian individuals are therefore unable to marry the person of their choice. Thus, California law treats similarly-situated people differently by providing civil marriage to heterosexual couples, but not to gay and lesbian couples. Instead, California law affords them and their families only the separate-but-unequal status of domestic partnership. Even if domestic partnership provided all of the tangible benefits and privileges of marriage, it still would be unequal because of the intangible, symbolic difference between the designation "marriage," which enjoys a long history and uniform recognition, and the different and unequal institution of "domestic partnership," which is a recent and manifestly unequal creation. Gays and lesbians are therefore unequal in the eyes of the law, and their families are denied the same respect as officially sanctioned families of opposite-sex individuals. By

purposefully denying civil marriage to gay and lesbian individuals, California's ban on same-sex marriage discriminates on the basis of sexual orientation.

43. The disadvantage Prop. 8 imposes upon gays and lesbians is the result of disapproval or animus against a politically unpopular group. The history of the enactment of Prop. 8 demonstrates that it was a backlash that stripped gays and lesbians of the rights previously conferred upon them by the California Supreme Court in *In re Marriage Cases*, 183 P.3d 384 (Cal. 2008). As such, Prop. 8 withdrew from gays and lesbians, but no others, specific legal protections afforded by the California Supreme Court and the California Constitution, and imposed a special disability upon those persons alone. Accordingly, Prop. 8 violates the Equal Protection Clause of the Fourteenth Amendment because it singles out gays and lesbians for a disfavored legal status, thereby creating a category of "second-class citizens."

44. Prop. 8 also violates the Equal Protection Clause because it discriminates on the basis of sex. It distinguishes between couples consisting of a man and a woman and couples consisting of individuals of the same sex. Thus, the limitation on civil marriage depends upon an individual person's sex; a man who wishes to marry a man may not do so because he is a man, and a woman may not marry a woman because she is a woman.

## CLAIM THREE: VIOLATION OF 42 U.S.C. § 1983

45. Plaintiffs incorporate here by reference paragraphs 1 through 44, *supra*, as if fully set forth herein.

46. Insofar as they are enforcing the terms of Prop. 8, Defendants, acting under color of state law, are depriving and will continue to deprive Plaintiffs of numerous rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

## **IRREPARABLE INJURY**

47. Plaintiffs incorporate here by reference paragraphs 1 through 46, *supra*, as if fully set forth herein.

48. Plaintiffs are now severely and irreparably injured by Prop. 8—a state law that violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment. By way of example only, Plaintiffs' injury as a result of Prop. 8 includes the deprivation of rights guaranteed by

the Fourteenth Amendment and the severe humiliation, emotional distress, pain, suffering, psychological harm, and stigma caused by the inability to marry the ones they love and have society accord their unions and their families the same respect and dignity enjoyed by opposite-sex unions and families. Plaintiffs' injuries will be redressed only if this Court declares Prop. 8 unconstitutional and enjoins Defendant from enforcing it.

49. An actual and judicially cognizable controversy exists between Plaintiffs and Defendants regarding whether Prop. 8 violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Defendants are presently enforcing this state law to the detriment of Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

1. Plaintiffs respectfully request that this Court, pursuant to 28 U.S.C. § 2201, construe Prop. 8 and enter a declaratory judgment stating that this law and any other California law that bars same-sex marriage violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment and 42 U.S.C. § 1983.

2. Plaintiffs respectfully request that this Court enter a preliminary and a permanent injunction enjoining enforcement or application of Prop. 8 and any other California law that bars same-sex marriage.

3. Plaintiffs respectfully request costs of suit, including reasonable attorneys' fees under 42 U.S.C. § 1988, and all further relief to which they may be justly entitled.

Dated: May 22, 2009

GIBSON, DUNN & CRUTCHER LLP

By: *[signature]*
Theodore B. Olson

and

BOIES, SCHILLER & FLEXNER LLP
David Boies (*pro hac vice* application pending)

Attorneys for Plaintiffs KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, AND JEFFREY J. ZARRILLO