1  GIBSON, DUNN & CRUTCHER LLP
   Theodore B. Olson, SBN 38137
2  *tolson@gibsondunn.com*
   Matthew D. McGill (*pro hac vice* application pending)
3  Amir C. Tayrani, SBN 229609
   1050 Connecticut Avenue, N.W. Washington, D.C. 20036
4  Telephone: (202) 955-8668, Facsimile: (202) 467-0539

5  Theodore J. Boutrous, Jr., SBN 132009
   *tboutrous@gibsondunn.com*
6  Christopher D. Dusseault, SBN 177557
   Ethan D. Dettmer, SBN 196046
7  Theane Evangelis Kapur, SBN 243570
   Enrique A. Monagas, SBN 239087
8  333 S. Grand Avenue, Los Angeles, California 90071
   Telephone: (213) 229-7804, Facsimile: (213) 229-7520
9
   BOIES, SCHILLER & FLEXNER LLP
10 David Boies (*pro hac vice* application pending)
   *dboies@bsfllp.com*
11 Theodore H. Uno, SBN 248603
   333 Main Street, Armonk, New York 10504
12 Telephone: (914) 749-8200, Facsimile: (914) 749-8300

13 Attorneys for Plaintiffs KRISTIN M. PERRY, SANDRA B. STIER,
   PAUL T. KATAMI, and JEFFREY J. ZARRILLO
14
15              **UNITED STATES DISTRICT COURT**

                **NORTHERN DISTRICT OF CALIFORNIA**
16

17 KRISTIN M. PERRY, SANDRA B. STIER,        CASE NO. 09-CV-2292 VRW
   PAUL T. KATAMI, and JEFFREY J.
18 ZARRILLO,                                 **PLAINTIFFS' NOTICE OF MOTION AND
                                             MOTION FOR A PRELIMINARY
19          Plaintiffs,                      INJUNCTION, AND MEMORANDUM OF
                                             POINTS AND AUTHORITIES IN SUPPORT
        v.                                   OF MOTION FOR A PRELIMINARY
20                                           INJUNCTION**
   ARNOLD SCHWARZENEGGER, in his official
21 capacity as Governor of California; EDMUND    Date: July 2, 2009
   G. BROWN, JR., in his official capacity as    Time: 10:00 a.m.
22 Attorney General of California; MARK B.       Judge: Chief Judge Walker
   HORTON, in his official capacity as Director of   Location: Courtroom 6, 17th Floor
23 the California Department of Public Health and
   State Registrar of Vital Statistics; LINETTE
24 SCOTT, in her official capacity as Deputy
   Director of Health Information & Strategic
25 Planning for the California Department of Public
   Health; PATRICK O'CONNELL, in his official
26 capacity as Clerk-Recorder for the County of
   Alameda; and DEAN C. LOGAN, in his official
27 capacity as Registrar-Recorder/County Clerk for
   the County of Los Angeles,
28
           Defendants.

Gibson, Dunn &
Crutcher LLP

09-CV-2292 VRW  PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR A PRELIMINARY INJUNCTION,
AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

FACTS .............................................................................................................................. 3

ARGUMENT ..................................................................................................................... 5

I.      PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS OF THEIR CONSTITUTIONAL CHALLENGE TO PROP. 8 .......................................................... 6

      A.     Plaintiffs Are Likely To Establish That Prop. 8 Violates The Due Process Clause Of The Fourteenth Amendment .............................................. 6

      B.     Plaintiffs Are Likely To Establish That Prop. 8 Violates The Equal Protection Clause Of The Fourteenth Amendment ...................................... 11

          1.     Prop. 8 Discriminates Against Gay And Lesbian Individuals On The Basis Of Their Sexual Orientation .............................................. 12

          2.     Prop. 8 Discriminates Against Gay And Lesbian Individuals On The Basis Of Their Sex ................................................................... 16

II.     PLAINTIFFS WILL BE IRREPARABLY HARMED IN THE ABSENCE OF A PRELIMINARY INJUNCTION ................................................................................ 17

III.    THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR A PRELIMINARY INJUNCTION ................................................................................ 18

CONCLUSION ................................................................................................................ 20

i

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Trucking Ass'ns v. City of Los Angeles*,
559 F.3d 1046 (9th Cir. 2009)................................................................................. 5

*Baker v. Nelson*,
409 U.S. 810 (1972) .............................................................................................. 11

*Bowen v. Gilliard*,
483 U.S. 587 (1987) ........................................................................................ 13, 14

*Bowers v. Hardwick*,
478 U.S. 186 (1986) .............................................................................................. 13

*Brown v. Bd. of Educ.*,
347 U.S. 483 (1954).............................................................................................. 7, 8

*Carey v. Population Servs. Int'l, Inc.*,
431 U.S. 678 (1977) ................................................................................................ 6

*City of Cleburne v. Cleburne Living Ctr., Inc.*,
473 U.S. 432 (1985)................................................................................... 13, 14, 15

*City of Ladue v. Gilleo*,
512 U.S. 43 (1994) .................................................................................................. 9

*Cleveland Bd. of Educ. v. LaFleur*,
414 U.S. 632 (1974) ...................................................................................... 2, 6, 17

*Edelman v. Jordan*,
415 U.S. 651 (1974) .............................................................................................. 18

*Fla. Star v. B.J.F.*,
491 U.S. 524 (1989)............................................................................................... 10

*Goldberg v. Kelly*,
397 U.S. 254 (1970)............................................................................................... 19

*Griswold v. Connecticut*,
381 U.S. 479 (1965)................................................................................................. 9

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982)............................................................................................... 18

*Hernandez-Montiel v. INS*,
225 F.3d 1084 (9th Cir. 2000)............................................................................... 15

*Hicks v. Miranda*,
422 U.S. 332 (1975) .............................................................................................. 11

*High Tech Gays v. Defense Industrial Security Clearance Office*,
895 F.2d 563 (9th Cir. 1990)................................................................................. 13

*Jinro Am., Inc. v. Secure Invs., Inc.*,
266 F.3d 993 (9th Cir. 2001).................................................................................. 1

*Kerrigan v. Comm'r of Pub. Health*,
957 A.2d 407 (Conn. 2008) ..........................................................................passim

*Lawrence v. Texas*,
539 U.S. 558 (2003) ......................................................................................passim

ii

Gibson, Dunn & Crutcher LLP

*Loving v. Virginia*,
    388 U.S. 1 (1967) .................................................................................... *passim*

*M.L.B. v. S.L.J.*,
    519 U.S. 102 (1996) ..................................................................................... 1

*Mandel v. Bradley*,
    432 U.S. 173 (1977) ................................................................................... 11

*In re Marriage Cases*,
    183 P.3d 384 (Cal. 2008) ...................................................................... *passim*

*Mass. Bd. of Retirement v. Murgia*,
    427 U.S. 307 (1976) ................................................................................... 14

*Miller v. Gammie*,
    335 F.3d 889 (9th Cir. 2003) .................................................................... 13

*Monterey Mech. Co. v. Wilson*,
    125 F.3d 702 (9th Cir. 1997) .................................................................... 17

*Nelson v. NASA*,
    530 F.3d 865 (9th Cir. 2008) .................................................................... 17

*Opinions of the Justices to the Senate*,
    802 N.E.2d 565 (Mass. 2004) ..................................................................... 8

*P.O.P.S. v. Gardner*,
    998 F.2d 764 (9th Cir. 1993) ...................................................................... 6

*Palmore v. Sidoti*,
    466 U.S. 429 (1984) ................................................................................... 10

*Preminger v. Principi*,
    422 F.3d 815 (9th Cir. 2005) .................................................................... 19

*Romer v. Evans*,
    517 U.S. 620 (1996) .......................................................................... 2, 8, 12

*Skinner v. Oklahoma ex rel. Williamson*,
    316 U.S. 535 (1942) ................................................................................... 12

*Smelt v. County of Orange*,
    374 F. Supp. 2d 861 (C.D. Cal. 2005) ....................................................... 11

*Strauss v. Horton*,
    No. S168047, 2009 WL 1444594 (Cal. May 26, 2009) .................................... 3, 18, 19

*Turner v. Safley*,
    482 U.S. 78 (1987) ..................................................................................... 10

*United States v. Hancock*,
    231 F.3d 557 (9th Cir. 2000) .................................................................... 11

*United States v. Virginia*,
    518 U.S. 515 (1996) .......................................................................... 7, 16, 17

*Varnum v. Brien*,
    763 N.W.2d 862 (Iowa 2009) ............................................................ 11, 14, 15

*Williams v. Illinois*,
    399 U.S. 235 (1970) ..................................................................................... 8

*Winter v. NRDC, Inc.*,
    129 S. Ct. 365 (2008) .................................................................................. 5

iii

Gibson, Dunn &
Crutcher LLP

09-CV-2292 VRW  PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR A PRELIMINARY INJUNCTION,
AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

*Witt v. Dep't of the Air Force*,
   527 F.3d 806 (9th Cir. 2008) .............................................................................. 8, 13

*Zablocki v. Redhail*,
   434 U.S. 374 (1978) ................................................................................... 1, 6, 18

**Constitutional Provisions**

Cal. Const. Art. I, § 7.5. ..................................................................................... 1, 3, 20

Cal. Const. Art. XIII, § 3 ............................................................................................ 4

**Statutes**

10 U.S.C. § 654 ......................................................................................................... 14

Ark. Code § 9-8-304 .................................................................................................. 14

Cal. Fam. Code § 297(a) .............................................................................................. 4

Cal. Fam. Code § 297(b) .............................................................................................. 4

Cal. Fam. Code § 297(b)(1) .......................................................................................... 4

Cal. Fam. Code § 297(b)(4) .......................................................................................... 4

Cal. Fam. Code § 297(b)(5) .......................................................................................... 4

Cal. Fam. Code § 298.5(a) ........................................................................................... 4

Cal. Fam. Code § 298.5(b) ........................................................................................... 4

Cal. Fam. Code § 299(a)-(c) ......................................................................................... 5

Cal. Fam. Code § 300 .............................................................................................. 1, 3

Cal. Fam. Code § 301 ................................................................................................... 1

Cal. Fam. Code § 302 ................................................................................................... 4

Cal. Fam. Code § 303 ................................................................................................... 4

Cal. Fam. Code § 306 ................................................................................................... 4

Cal. Fam. Code § 308.5 ........................................................................................... 1, 3

Cal. Fam. Code § 359 ................................................................................................... 4

Cal. Fam. Code § 500 *et seq.* ...................................................................................... 4

Cal. Fam. Code § 2400 *et seq.* .................................................................................... 5

Cal. Health & Safety Code § 102285 ............................................................................ 4

Cal. Health & Safety Code § 102330 ............................................................................ 4

Cal. Health & Safety Code § 102355 ............................................................................ 4

Cal. Penal Code § 2601(e) .......................................................................................... 10

Fla. Stat. § 63.042 ..................................................................................................... 14

**Other Authorities**

Congressional Research Service, *Membership of the 111th Congress:  A Profile* (2008) .................. 15

iv

Gibson, Dunn &
Crutcher LLP

09-CV-2292 VRW  PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR A PRELIMINARY INJUNCTION,
AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

**TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 2, 2009, at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Vaughn R. Walker, United States District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Plaintiffs will move the Court for a preliminary injunction.

Plaintiffs respectfully request a preliminary injunction enjoining Defendants from enforcing Article I, § 7.5 of the California Constitution ("Prop. 8") insofar as it limits civil marriage in California to the union of a man and a woman, and prohibits two individuals of the same sex from getting married.[1]

## **INTRODUCTION**

The "freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men." *Loving v. Virginia*, 388 U.S. 1, 12 (1967).  As a result, "[c]hoices about marriage" are "sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect." *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996) (internal quotation marks omitted).  Despite the "fundamental importance" of marriage "for all individuals" (*Zablocki v. Redhail*, 434 U.S. 374, 384 (1978)), the State of California prohibits gay and lesbian individuals from marrying the person of their choice.  Through Prop. 8, the State relegates gay and lesbian individuals to domestic partnerships, which—though affording same-sex couples most of the substantive rights that accompany the status of marriage—brand same-sex unions with an indelible status and badge of inferiority.  Such separate-but-inherently-unequal classifications for favored and disfavored groups are sharply at odds with the promise of "[f]ormal equality . . . [that] is the bedrock of our legal system." *Jinro Am., Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1009 (9th Cir. 2001).

---

[1]  In an abundance of caution, Plaintiffs have also challenged the constitutionality of California Family Code §§ 300 and 308.5, which purport to restrict civil marriage in California to opposite-sex couples, and California Family Code § 301, which also could be read to impose such a restriction.  To the extent that those statutes have any continuing legal force after the California Supreme Court's decision in *In re Marriage Cases*, 183 P.3d 384 (Cal. 2008), their enforcement should be enjoined for the same reasons as the enforcement of Prop. 8.

Gibson, Dunn & Crutcher LLP

09-CV-2292 VRW  PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR A PRELIMINARY INJUNCTION, AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

It is impossible to reconcile the restrictions that Prop. 8 imposes on the right of gay men and lesbians to marry with the U.S. Supreme Court's conclusion that the Fourteenth Amendment protects the right of *all* citizens to make personal decisions about marriage without unwarranted state intrusion. *Loving*, 388 U.S. at 12. This discriminatory measure also transgresses the Supreme Court's direction that state ballot initiatives may not be used to strip gay and lesbian individuals of rights accorded to all other citizens (*Romer v. Evans*, 517 U.S. 620, 635 (1996)) and its conclusion that due process protects the intimate personal relationships of gay and lesbian individuals. *Lawrence v. Texas*, 539 U.S. 558, 578 (2003). Together, these decisions lead to the inexorable conclusion that Prop. 8 is fundamentally inconsistent with the federal constitutional rights of gay men and lesbians.

This Court should issue a preliminary injunction prohibiting the enforcement of Prop. 8 insofar as it prohibits two individuals of the same sex from getting married. Each of the well-established requirements for a preliminary injunction—likelihood of success on the merits, irreparable harm to the plaintiffs, the balance of hardships, and public-interest considerations—weighs strongly in favor of an injunction in this case. Most importantly, Plaintiffs have a substantial likelihood of prevailing on the merits of their constitutional challenge because Prop. 8 denies gay and lesbian individuals in same-sex relationships their rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution. Prop. 8 deprives gay and lesbian individuals of their fundamental constitutional right to marry, and discriminates against them on the basis of their sexual orientation and their sex. Prop. 8 can therefore be sustained only if the State can prove that it is narrowly tailored to serve a compelling governmental interest. But none of the purported state interests typically offered in defense of prohibitions on marriage by individuals of the same sex—preservation of tradition, expression of moral condemnation, or promotion of procreation—is a remotely legitimate basis for denying gay and lesbian individuals their constitutionally protected "freedom of personal choice in matters of marriage" (*Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639 (1974)) and for discriminating against them on arbitrary and invidious grounds. And, even if those interests were legitimate, Prop. 8 is not adequately tailored to further those interests because it is vastly underinclusive. In the absence of a legitimate state interest furthered by Prop. 8, this discriminatory measure cannot satisfy even rational basis review—let alone,

Gibson, Dunn & Crutcher LLP

2

09-CV-2292 VRW  PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR A PRELIMINARY INJUNCTION,
AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

the stringent requirements of strict scrutiny.  Because Plaintiffs are therefore likely to prevail on the merits of their claims—and because an injunction would prevent irreparable harm to Plaintiffs' constitutional rights, impose no burden on Defendants, and promote the public interest in safeguarding the constitutional rights of all citizens—a preliminary injunction is warranted.

## FACTS

Prop. 8 limits the institution of civil marriage in California to the union of a man and a woman, and prohibits two individuals of the same sex from marrying each other.  This measure added a new Article I, § 7.5 to the California Constitution, which provides that "[o]nly marriage between a man and a woman is valid or recognized in California."

Prop. 8 was narrowly approved by California voters in November 2008—160 years after the adoption of the State's first constitution—and was a direct response to the California Supreme Court's decision in *In re Marriage Cases*, 183 P.3d 384 (Cal. 2008).  That decision held that California Family Code §§ 300 and 308.5 were unconstitutional under the due process and equal protection guarantees of the California Constitution because they prohibited marriage between individuals of the same sex.  *Id.* at 452.  According to the official General Election Voter Information Guide, Prop. 8 "[c]hange[d] the California Constitution to eliminate the right of same-sex couples to marry in California."  *Strauss v. Horton*, No. S168047, 2009 WL 1444594, slip op. at 40 (Cal. May 26, 2009) (internal quotation marks omitted).  The measure went into effect on November 5, 2008, the day after the election.  During the period between the California Supreme Court's decision in the *Marriage Cases* on May 15, 2008, and the effective date of Prop. 8, more than 18,000 same-sex couples were married in California.  *Id.* at 3.  On May 26, 2009, the California Supreme Court upheld Prop. 8 against a state constitutional challenge, but held that the new amendment to the California Constitution did not invalidate the marriages of same-sex couples that had been performed before its enactment.  *Id.* at 135.

When Prop. 8 changed the California Constitution to eliminate the right of individuals of the same sex to marry, it relegated same-sex couples seeking government recognition of their relationships to so-called "domestic partnerships."  California's domestic partnership legislation— which was adopted in 1999 and has been amended on several occasions since—defines "domestic

partners" as "two adults who have chosen to share one another's lives in an intimate and committed relationship of mutual caring."  Cal. Fam. Code § 297(a).  To qualify for domestic partnership, a couple must share a common residence, each be at least 18 years of age and unrelated by blood in a way that would prevent them from marrying each other, and not be married or a member of another domestic partnership.  *Id.* § 297(b).  Domestic partnerships are available only to same-sex couples and to opposite-sex couples where at least one member of the partnership is more than 62 years old.  *Id.* § 297(b)(5).

A domestic partnership "affords the couple virtually all of the same substantive legal benefits and privileges, and imposes upon the couple virtually all of the same legal obligations and duties, that California law affords to and imposes upon a married couple."  *Marriage Cases*, 183 P.3d at 397-98.  Although there are several relatively minor substantive differences between the rights that California law affords to married couples and domestic partners, by far the most significant distinction is that the domestic partnership legislation does not afford gay and lesbian individuals access to the institution of civil marriage itself—a distinction that the California Supreme Court found as a matter of fact and California law to "perpetuat[e]" the "general premise . . . that gay individuals and same-sex couples are in some respects 'second-class citizens' who may, under the law, be treated differently from, and less favorably than, heterosexual individuals or opposite-sex couples."  *Id.* at 402.[2]

_____

[2]  The California Supreme Court identified nine differences between the corresponding provisions of the marriage and domestic partnership statutes, including that (1) to qualify for domestic partnership (but not for marriage), both partners must have a common residence at the time the partnership is established, Cal. Fam. Code § 297(b)(1); (2) both persons must be 18 years of age to enter into a domestic partnership, *id.* § 297(b)(4), but a person under 18 may be married with the consent of a parent or guardian or court order, *id.* §§ 302, 303; (3) to become domestic partners, both individuals must file a Declaration of Domestic Partnership with the Secretary of State, who registers the declaration in a statewide registry, Cal. Fam. Code § 298.5(a) & (b), but a couple who wishes to marry must obtain a marriage license and certificate of registry of marriage from the county clerk, have the marriage solemnized by an authorized individual, and return the license and certificate of registry to the county recorder, who transmits it to the State Registrar of Vital Statistics, *id.* §§ 306, 359; Cal. Health & Safety Code §§ 102285, 102330, 102355; (4) the marriage laws, unlike the domestic partnership law, establish a procedure through which an unmarried man and woman who have been living together as husband and wife may enter into a "confidential marriage" in which the marriage certificate and date of marriage are not made available to the public, Cal. Fam. Code § 500 *et seq.*; (5) Article XIII, § 3(o) & (p) of the

[Footnote continued on next page]

4

Gibson, Dunn & Crutcher LLP

Plaintiffs are gay and lesbian residents of California who are involved in long-term, serious relationships with individuals of the same sex and who desire to marry those individuals in order to demonstrate publicly their commitment to their partner and to obtain all the benefits that come with the official recognition of their family relationship.  Plaintiffs Perry and Stier are lesbian individuals who have been in a committed relationship for ten years.  Perry Decl. ¶ 2; Stier Decl. ¶ 2.  They reside together in Alameda County and are raising four children, who range in age from fourteen to twenty.  Perry Decl. ¶ 2; Stier Decl. ¶ 2.  Plaintiffs Katami and Zarrillo are gay individuals who have been in a committed relationship for eight years and who reside together in Los Angeles County.  Katami Decl. ¶ 2; Zarrillo Decl. ¶ 2.

On May 21, 2009, Plaintiffs Perry and Stier applied for a marriage license from Defendant O'Connell, the Alameda County Clerk-Registrar, but were denied a license solely because they are a same-sex couple.  Perry Decl. ¶ 8-9; Stier Decl. ¶ 8-9.  On May 20, 2009, Plaintiffs Katami and Zarrillo applied for a marriage license from Defendant Logan, the Los Angeles County Clerk, but also were denied a license solely because they are a same-sex couple.  Katami Decl. ¶ 12-13; Zarrillo Decl. ¶ 12-13.

## ARGUMENT

"'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. NRDC, Inc.*, 129 S. Ct. 365, 374 (2008)).  Because Plaintiffs are likely to succeed on the merits of their claims that Prop. 8 violates their rights under the Due Process and Equal Protection Clauses of the Fourteenth

---

[Footnote continued from previous page]

California Constitution grants a $1,000 property tax exemption to an "unmarried spouse of a deceased veteran" who owns property valued at less than $10,000, but not to a domestic partner of a deceased veteran; and (6) domestic partners may initiate a summary dissolution of a domestic partnership without any court action, whereas a summary dissolution of a marriage becomes effective only upon entry of a court judgment, Cal. Fam. Code § 299(a)-(c); Cal. Fam. Code § 2400 *et seq*.  *See Marriage Cases*, 183 P.3d at 416 n.24.

Gibson, Dunn &
Crutcher LLP

5

09-CV-2292 VRW  PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR A PRELIMINARY INJUNCTION,
AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Amendment to the United States Constitution—and because prohibiting the State from continuing to impair Plaintiffs' due process and equal protection rights would prevent irreparable harm to Plaintiffs, impose no material burden on Defendants, and promote the public interest in safeguarding fundamental constitutional rights—this Court should preliminarily enjoin Defendants from enforcing Prop. 8 insofar as it precludes marriage by individuals of the same sex.

I.     **PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS OF THEIR CONSTITUTIONAL CHALLENGE TO PROP. 8.**

Prop. 8 violates Plaintiffs' right to due process under the Fourteenth Amendment because it impermissibly impairs their fundamental constitutional right to marry.  Prop. 8 also violates Plaintiffs' right to equal protection under the Fourteenth Amendment because it not only burdens a fundamental constitutional right but also unlawfully discriminates against Plaintiffs on the basis of their sexual orientation and their sex.

A.     **Plaintiffs Are Likely To Establish That Prop. 8 Violates The Due Process Clause Of The Fourteenth Amendment.**

As the Supreme Court declared in *Loving*, the "freedom to marry" is "one of the vital personal rights essential to the orderly pursuit of happiness by free men."  388 U.S. at 12.  Because "the right to marry is of fundamental importance for all individuals" (*Zablocki*, 434 U.S. at 384), "freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause."  *LaFleur*, 414 U.S. at 639.  Indeed, this Nation has a deeply rooted—and frequently reaffirmed—"tradition" of "afford[ing] constitutional protection to personal decisions relating to marriage," "family relationships," and "child rearing."  *Lawrence*, 539 U.S. at 573-74.  "Statutes that directly and substantially impair those rights require strict scrutiny" (*P.O.P.S. v. Gardner*, 998 F.2d 764, 767-68 (9th Cir. 1993)), and can be sustained only where the government meets its burden of establishing that the statutes are "narrowly drawn" to further a "compelling state interest[ ]."  *Carey v. Population Servs. Int'l, Inc.*, 431 U.S. 678, 686 (1977).  Prop. 8 cannot survive rational basis review—let alone, the rigors of strict scrutiny.

1.     Prop. 8 directly and substantially impairs Plaintiffs' constitutionally protected "freedom of personal choice in matters of marriage" and the fundamental liberty interest that

Gibson, Dunn & Crutcher LLP

guarantees that freedom.  The provision categorically prohibits individuals of the same sex from entering into civil marriages and thereby excludes gay and lesbian individuals from what the Supreme Court has recognized to be "*the most important relation in life*."  *Zablocki*, 434 U.S. at 384 (emphasis added; internal quotation marks omitted).  Prop. 8 imposes an insurmountable barrier between gay and lesbian individuals and the personal fulfillment that all other citizens are able to attain by entering into that "most important" of life's relations.

The availability of domestic partnerships does not ameliorate the constitutionally intolerable burden that Prop. 8 imposes on the right to marry of gay and lesbian individuals.  A State cannot discharge its constitutional obligations by conferring separate but partially equal rights on socially disfavored groups because excluding a disfavored group from the rights enjoyed by all other members of society—be it the right to attend a respected educational institution (*see United States v. Virginia*, 518 U.S. 515, 554 (1996)), or the right to enter into the esteemed institution of marriage— brands the disfavored group with an indelible mark of inferiority.  *Brown v. Bd. of Educ.*, 347 U.S. 483, 494 (1954).

As the California Supreme Court recognized in the *Marriage Cases*, one of the "core elements of th[e] fundamental right [to marry] is the right of same-sex couples to have their official family relationship accorded the same dignity, respect, and stature as that accorded to all other officially recognized family relationships."  183 P.3d at 434.  By "reserving the historic and highly respected designation of 'marriage' exclusively to opposite-sex couples while offering same-sex couples only the new and unfamiliar designation of domestic partnership," Prop. 8 communicates the "official view that [same-sex couples'] committed relationships are of lesser stature than the comparable relationships of opposite-sex couples" and impermissibly stamps gay and lesbian individuals—and their children—with a "mark of second-class citizenship."  *Id.* at 402, 434, 445.  Other courts that have invoked state constitutional grounds to invalidate prohibitions on marriage by individuals of the same sex have also concluded that domestic partnerships and civil unions are constitutionally inadequate substitutes for marriage—even if they afford same-sex couples all of the substantive rights enjoyed by opposite-sex couples.  *See Kerrigan v. Comm'r of Pub. Health*, 957 A.2d 407, 417 (Conn. 2008) ("the legislature, in establishing a statutory scheme consigning same sex couples to civil

Gibson, Dunn & Crutcher LLP

7

09-CV-2292 VRW  PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR A PRELIMINARY INJUNCTION, AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

1    unions, has relegated them to an inferior status, in essence, declaring them to be unworthy of the

2    institution of marriage"); *Opinions of the Justices to the Senate*, 802 N.E.2d 565, 570 (Mass. 2004)

3    (same).

4         Especially in light of the long history of invidious, government-sponsored discrimination

5    against gay and lesbian individuals—including the unconstitutional criminalization of their sexual

6    relationships (*Lawrence*, 539 U.S. at 578)—the separate institutions of civil marriage for opposite-sex

7    couples and domestic partnership for same-sex couples "are inherently unequal," and thus materially

8    and substantially burden the marriage rights of gay and lesbian individuals.  *Brown*, 347 U.S. at 495.[3]

9         2.    Defendants cannot meet their burden of demonstrating that they have a compelling

10   reason for consigning gay and lesbian individuals to the separate-but-inherently-unequal institution of

11   domestic partnership.  Indeed, Prop. 8 does not even further a single legitimate state interest.[4]

12        For example, tradition alone is a manifestly insufficient basis for a State to impair a person's

13   constitutionally protected right to marry.  "[N]either the antiquity of a practice nor the fact of

14   steadfast legislative and judicial adherence to it through the centuries insulates it from constitutional

15   attack."  *Williams v. Illinois*, 399 U.S. 235, 239 (1970).  A state practice of restricting citizens'

16   constitutional rights thus cannot be perpetuated merely "for its own sake."  *Romer*, 517 U.S. at 635.

17   As the Supreme Court recently recognized when invalidating a criminal prohibition on same-sex

18   intimate conduct, "times can blind us to certain truths and later generations can see that laws once

19

20   _____

21   [3]  Prop. 8 also burdens the constitutional right to personal sexual autonomy recognized by the
     Supreme Court in *Lawrence*, 539 U.S. at 578, by perpetuating the misconception that same-sex
22   expressions of intimacy are abnormal and less deserving of official recognition than expressions
     of intimacy between opposite-sex couples.  The Ninth Circuit has held that "when the government
23   attempts to intrude upon the personal and private lives of homosexuals, in a manner that
     implicates the rights identified in *Lawrence*, the government must advance an important
24   governmental interest, the intrusion must significantly further that interest, and the intrusion must
     be necessary to further that interest."  *Witt v. Dep't of the Air Force*, 527 F.3d 806, 819 (9th Cir.
25   2008).  As discussed subsequently, Defendants cannot meet that heightened standard of scrutiny
     in this case because they cannot identify *any* legitimate governmental interest furthered by Prop.
26   8.

27   [4]  For that reason, Prop. 8 would violate the Due Process Clause of the Fourteenth Amendment even
     if examined under the rational basis standard.

28

Gibson, Dunn &
Crutcher LLP

1    thought necessary and proper in fact serve only to oppress." *Lawrence*, 539 U.S. at 579.

2    Accordingly, California's longstanding tradition of prohibiting marriage by individuals of the same

3    sex cannot shield Prop. 8 from federal constitutional scrutiny any more than Virginia's longstanding

4    tradition of prohibiting marriage by individuals of different races—which dated back to "the colonial

5    period"—could shield its anti-miscegenation law from the Fourteenth Amendment's requirements.

6    *Loving*, 388 U.S. at 6.

7            In any event, the prohibition on marriage by individuals of the same sex is certainly not

8    necessary to preserve or strengthen the tradition of marriage in California.  Protecting the right of

9    individuals to marry a person of the same sex will not impair the ability of individuals who wish to

10   marry a person of the opposite sex to exercise their own constitutional right to marry.  Removing the

11   unconstitutional state-law impediment to marriage by gay and lesbian individuals will simply put an

12   end to the irrational denial of the right to marry to a group of individuals who have historically been

13   excluded from this most "'basic civil right[ ] of man.'"  *Loving*, 388 U.S. at 12.[5]

14           Nor can Defendants rely on an asserted interest in promoting procreation to establish the

15   constitutionality of Prop. 8.  As an initial matter, the promotion of procreation is not a remotely

16   sufficient ground for preventing a couple from getting married.  If it were, "it would follow that in

17   instances in which the state is able to make a determination of an individual's fertility . . . , it would

18   be constitutionally permissible for the state to preclude an individual who is incapable of bearing

19   children from entering into marriage" with even a partner of the opposite sex.  *Marriage Cases*, 183

20   P.3d at 431.  It is well established, however, that procreation is not the only purpose of marriage.  *See*

21   *Griswold v. Connecticut*, 381 U.S. 479, 485 (1965) (upholding the right of married individuals to use

22   contraception to prevent procreation).

---

24   5  Prop. 8 is also drastically underinclusive if its true purpose is to defend some "traditional" notion
25   of marriage.  Under California law, individuals of the opposite sex remain free to enter into
     marriages that may be "nontraditional" in any number of ways, such as "open," nonmonogamous
26   marriages or marriages between people who have only just met.  Indeed, it is telling—and a cause
     for significant constitutional concern—that the only "traditional" aspect of marriage that Prop. 8
27   sees fit to protect is the exclusion of gay and lesbian individuals from that institution.  *See City of
     Ladue v. Gilleo*, 512 U.S. 43, 52 (1994) (underinclusiveness "diminish[es] the credibility of the
28   government's rationale for restricting" constitutional rights).

1      Moreover, even if a State could constitutionally impose such far-reaching restrictions on the

2  right to marry, Prop. 8 is a fatally underinclusive means of promoting procreation because it permits

3  individuals of the opposite sex who are biologically unable to bear children, or who simply have no

4  desire for children, to marry—a fact that belies the theory that the State actually prohibits marriage by

5  individuals of the same sex for procreation-related reasons.  *See Fla. Star v. B.J.F.*, 491 U.S. 524,

6  540-41 (1989) (holding that a statute prohibiting the publication of particular information in certain

7  media but not in others was unconstitutionally underinclusive).

8      Ultimately, then, Prop. 8 seems to be premised on little more than the moral disapproval of

9  homosexuality by a transitory majority of voters.  Of course, this is a demonstrably improper ground

10  for abridging fundamental constitutional rights.  The Supreme Court has already made absolutely

11  clear that "[m]oral disapproval" of homosexuals, "like a bare desire to harm the group, is an interest

12  that is insufficient to satisfy" even rational basis review (*Lawrence*, 539 U.S. at 582), and it thus

13  cannot possibly meet the onerous requirements of strict scrutiny.  While "[p]rivate biases may be

14  outside the reach of the law," the "law cannot, directly or indirectly, give them effect" at the expense

15  of a disfavored group's fundamental constitutional rights.  *Palmore v. Sidoti*, 466 U.S. 429, 433

16  (1984).

17      The moral opprobrium animating Prop. 8 is exposed by the fact that California law establishes

18  virtually *no* restrictions on the right of adults to marry *other than* the requirement that the couple be

19  of the opposite sex.  Murderers, child molesters, rapists, serial divorcers, spousal abusers, and

20  philanderers are permitted to marry in California.  California law even guarantees inmates

21  incarcerated in state prisons the right to marry.  *See* Cal. Penal Code § 2601(e); *see also Turner v.*

22  *Safley*, 482 U.S. 78, 99 (1987) (an almost-complete prohibition on inmate marriages was

23  unconstitutional because it was not "reasonably related to legitimate penological objectives").  Thus,

24  while two individuals of the opposite sex who each have a long history of divorces, incarceration,

25  mistreatment of children, and drug abuse can get married the morning after meeting each other at a

26  night club, two individuals of the same sex who have spent years together in a loving and committed

27  relationship are denied the opportunity to pledge their lives to each other and start an officially

28  sanctioned family.  This is an utterly irrational restriction premised on nothing more than

Gibson, Dunn &
Crutcher LLP

10

09-CV-2292 VRW  PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR A PRELIMINARY INJUNCTION,
AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

longstanding misconceptions about and prejudice toward gay and lesbian individuals.  *Cf. Varnum v. Brien*, 763 N.W.2d 862, 900 (Iowa 2009) (law restricting marriage to opposite-sex couples could not be justified as a measure to ensure an optimal child-rearing environment where "child abusers, sexual predators, . . . [and] violent felons" were allowed to marry persons of the opposite sex).

Because Prop. 8 does not further a compelling—or even a legitimate—state interest, it unconstitutionally impairs Plaintiffs' right to marry under the Due Process Clause of the Fourteenth Amendment.[6]

### B.   Plaintiffs Are Likely To Establish That Prop. 8 Violates The Equal Protection Clause Of The Fourteenth Amendment.

Under the Equal Protection Clause, a "law is subject to strict scrutiny if it targets a suspect class or burdens the exercise of a fundamental right."  *United States v. Hancock*, 231 F.3d 557, 565 (9th Cir. 2000).  As demonstrated above, Prop. 8 impairs the fundamental right of gay and lesbian individuals to marry.  Because Defendants lack a compelling justification for permitting individuals

---

[6]  In *Baker v. Nelson*, 409 U.S. 810 (1972), the Supreme Court dismissed "for want of a substantial federal question" an appeal from a Minnesota Supreme Court decision rejecting federal due process and equal protection challenges to the State's refusal to issue a marriage license to a same-sex couple.  191 N.W.2d 185 (1971).  The Supreme Court's summary dismissals are binding on lower courts only "on the precise issues presented and necessarily decided" (*Mandel v. Bradley*, 432 U.S. 173, 176 (1977) (per curiam)) and only to the extent that they have not been undermined by subsequent "doctrinal developments" in the Supreme Court's case law.  *Hicks v. Miranda*, 422 U.S. 332, 344 (1975) (internal quotation marks omitted).  Neither of those requirements is met here.  The issue in *Baker*—the constitutionality of an outright refusal by a State to afford any recognition to same-sex relationships—is different from the issue presented by Plaintiffs' constitutional challenge, which asks this Court to determine whether it is constitutional for California to reserve the institution of marriage for opposite-sex couples and relegate same-sex couples to domestic partnerships.  Moreover, the Supreme Court's subsequent decisions in *Lawrence*—which invalidated a state prohibition on same-sex intimate conduct on due process grounds—and *Romer*—which struck down on equal protection grounds a state constitutional amendment prohibiting governmental action to protect gay and lesbian individuals against discrimination—have fatally weakened *Baker*.  Indeed, at least one California district court has already concluded as much in a decision holding that *Baker* did not foreclose the court from considering a federal constitutional challenge to the federal Defense of Marriage Act.  *See Smelt v. County of Orange*, 374 F. Supp. 2d 861, 873 (C.D. Cal. 2005) ("Doctrinal developments show it is not reasonable to conclude the questions presented in the *Baker* jurisdictional statement would still be viewed by the Supreme Court as 'unsubstantial.'"), *rev'd in part on other grounds*, 447 F.3d 673 (9th Cir. 2006).

Gibson, Dunn & Crutcher LLP

11

09-CV-2292 VRW  PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR A PRELIMINARY INJUNCTION, AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

of the opposite sex to marry and for consigning individuals of the same sex to the inferior institution of domestic partnership, Prop. 8 violates Plaintiffs' equal protection rights for the same reasons that it violates Plaintiffs' due process rights. *See Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 541 (1942) (applying strict equal protection scrutiny to a state law that burdened the fundamental right to procreate).

While Prop. 8 must therefore be evaluated under—and fails—strict equal protection scrutiny regardless of whether it targets a suspect class, Prop. 8 also violates the Equal Protection Clause for the additional reasons that it impermissibly discriminates against Plaintiffs on the basis of their sexual orientation and their sex.

**1.      Prop. 8 Discriminates Against Gay And Lesbian Individuals On The Basis Of Their Sexual Orientation.**

Prop. 8 is unconstitutional under any standard of equal protection scrutiny because it does not further a legitimate—much less, an important or compelling—governmental interest.

a.      Prop. 8 is unconstitutional under even rational basis review because it irrationally deprives gay and lesbian individuals of the right to marry that they had previously possessed under California law and that it is still enjoyed by all other citizens of the State.

The Supreme Court has already invalidated one voter-enacted state constitutional provision that—like Prop. 8—stripped gay and lesbian individuals of legal protections they had previously enjoyed under state law.  In *Romer*, the Court concluded that Colorado's Amendment 2—which "prohibit[ed] all legislative, executive or judicial action at any level of state or local government designed to protect" gay and lesbian individuals and thereby overturned several local laws barring discrimination based on sexual orientation—was not rationally related to any legitimate governmental interest.  517 U.S. at 624.  The Court determined that the measure "classifie[d] homosexuals not to further a proper legislative end but to make them unequal to everyone else."  *Id.* at 635.  Such a "bare . . . desire to harm a politically unpopular group," the Court emphasized, "cannot constitute a *legitimate* governmental interest."  *Id.* at 634 (internal quotation marks omitted; emphasis in original).

Prop. 8 suffers from the same constitutional flaw.  The voter-enacted constitutional

12

Gibson, Dunn & Crutcher LLP

amendment stripped gay and lesbian individuals of their right to marry under the California Constitution, and, as explained above, did so for no other reason than to express the majority's moral disapproval of gay men and lesbians.  Because Prop. 8 does not further any legitimate governmental interest, it could not withstand equal protection scrutiny even if gay and lesbian individuals were not a suspect or quasi-suspect class.

> b.      In any event, gay and lesbian individuals are a suspect or quasi-suspect class, and Prop. 8 does not even come close to surviving the heightened equal protection scrutiny applicable to laws that target such groups.[7]

> i.      A classification is suspect or quasi-suspect where it targets a group that has been subject to a history of discrimination (*Bowen v. Gilliard*, 483 U.S. 587, 602 (1987)) and that is defined by a "characteristic" that "frequently bears no relation to ability to perform or contribute to society."  *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440-41 (1985) (internal quotation marks omitted).  It is also relevant whether the group exhibits "obvious, immutable, or

---

[7]  In *High Tech Gays v. Defense Industrial Security Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990), the Ninth Circuit held that classifications based on sexual orientation are subject to rational basis review.  That case is no longer controlling because it was premised on the Supreme Court's since-overruled decision in *Bowers v. Hardwick*, 478 U.S. 186 (1986).  *High Tech Gays* reasoned that, "by the *Hardwick* majority holding that the Constitution confers no fundamental right upon homosexuals to engage in sodomy, and because homosexual conduct can thus be criminalized, homosexuals cannot constitute a suspect or quasi-suspect class entitled to greater than rational basis review for equal protection purposes."  895 F.2d at 571.  *Lawrence*'s holding that the government may not criminalize same-sex intimate conduct and its explicit overruling of *Hardwick* leaves this Court free to reexamine whether sexual orientation is a suspect or quasi-suspect classification.  *See Witt*, 527 F.3d at 820-21 (where "'the relevant court of last resort . . . ha[s] undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable, . . . district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of this court'") (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc)).  Moreover, nothing in the Ninth Circuit's post-*Lawrence* decision in *Witt* forecloses that reexamination.  In *Witt*, the plaintiff's equal protection challenge to the Defense Department's "Don't Ask, Don't Tell" policy was not premised on the government's differential treatment of heterosexuals and homosexuals.  *See id.* at 821; *see also id.* at 823-24 & n.4 (Canby, J., concurring in part and dissenting in part).  Even if *High Tech Gays* or *Witt* were controlling, however, Prop. 8 would still violate Plaintiffs' equal protection rights because the State has no rational basis for discriminating against them by restricting civil marriage to opposite-sex couples.

Gibson, Dunn & Crutcher LLP

13

09-CV-2292 VRW  PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR A PRELIMINARY INJUNCTION, AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

1  distinguishing characteristics that define them as a discrete group" and whether they are "politically

2  powerless." *Bowen*, 483 U.S. at 602.

3  Classifications based on sexual orientation easily meet the criteria for suspect or quasi-suspect

4  status.  First, it is beyond dispute that "gay persons historically have been, and continue to be, the

5  target of purposeful and pernicious discrimination due solely to their sexual orientation." *Kerrigan*,

6  957 A.2d at 432; *see also Varnum*, 763 N.W.2d at 889.  "[F]or centuries there have been powerful

7  voices to condemn homosexual conduct as immoral" (*Lawrence*, 539 U.S. at 571), and this moral

8  condemnation continues to find expression today in state-sanctioned discrimination that denies gay

9  and lesbian individuals the right to marry, the right to serve in the military (10 U.S.C. § 654), and, in

10  some States, the right to adopt children (*see*, *e.g.*, Ark. Code § 9-8-304; Fla. Stat. § 63.042).  This

11  "history of purposeful unequal treatment" based on the sexual orientation of gay and lesbian

12  individuals is the hallmark of a suspect classification.  *Mass. Bd. of Retirement v. Murgia*, 427 U.S.

13  307, 313 (1976) (internal quotation marks omitted).

14  Second, like the suspect classifications of race, alienage, national origin, and religion, sexual

15  orientation has absolutely no "relation to the ability" of a person "to perform or contribute to

16  society."  *City of Cleburne*, 473 U.S. at 440-41.  Sexual orientation is simply irrelevant to whether

17  someone can make a meaningful contribution to the social, political, or cultural life of this Nation.

18  *See*, *e.g.*, *Marriage Cases*, 183 P.3d at 442; *Kerrigan*, 957 A.2d at 434.  Unlike age or mental

19  disability—two classifications that receive rational basis scrutiny (*Murgia*, 427 U.S. at 314; *City of

20  Cleburne*, 473 U.S. at 446)—it is impossible to identify "real and undeniable" differences in the

21  ability of homosexuals and heterosexuals to function in, and contribute to, society.  *City of Cleburne*,

22  473 U.S. at 444.  Indeed, the only limitations on the ability of gay and lesbian individuals to

23  participate fully in all aspects of American life are those imposed by discriminatory laws or private

24  discriminatory conduct.

25  These two factors alone are sufficient to establish that classifications based on sexual

26  orientation are suspect or quasi-suspect.  Because gay and lesbian individuals have "experienced a

27  history of purposeful unequal treatment" and "been subjected to unique disabilities on the basis of

28  stereotyped characteristics not truly indicative of their abilities" (*Murgia*, 427 U.S. at 313 (internal

Gibson, Dunn &
Crutcher LLP

14

09-CV-2292 VRW  PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR A PRELIMINARY INJUNCTION,
AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

quotation marks omitted)), there is an overwhelming probability that laws singling out gay and lesbian individuals for adverse treatment are grounded on nothing more than "prejudice and antipathy." *City of Cleburne*, 473 U.S. at 440.  Such classifications demand especially exacting judicial scrutiny.

This conclusion is reinforced by the two remaining factors relevant to the suspect-classification inquiry.  The Ninth Circuit has concluded that "[s]exual orientation and sexual identity are immutable," and that "[h]omosexuality is as deeply ingrained as heterosexuality." *Hernandez-Montiel v. INS*, 225 F.3d 1084, 1093 (9th Cir. 2000) (internal quotation marks omitted).  Because sexual orientation is "so fundamental to one's identity," a "person should not be required to abandon" it in order to secure access to fundamental rights that the Constitution guarantees to *all* persons.  *Id.*[8]

Finally, gay and lesbian individuals possess less political power than other groups that are afforded the protection of suspect or quasi-suspect status under the Equal Protection Clause, including African-Americans and women.  Indeed, of the more than half million people who hold political office at the local, state, and national levels in this country, less than 300 are openly gay. *Kerrigan*, 957 A.2d at 446.  No openly gay person has ever served in the United States Cabinet, on any federal court of appeals, or in the United States Senate.  *Id.* at 447.  In contrast, African-Americans have served as President of the United States, Attorney General, and Secretary of State, as well as in the United States Senate and on the U.S. Supreme Court.  Similarly, women currently head the Departments of State, Homeland Security, and Labor, and the 111th Congress includes seventeen female Senators and seventy-eight female representatives.  *See* Congressional Research Service,

---

[8] As the California Supreme Court explained, it is therefore "sophistic to suggest"—as have some defenders of prohibitions on marriage by individuals of the same sex—that these measures do not discriminate against gay and lesbian individuals because they "permit a gay man or a lesbian to marry someone of the opposite sex." *Marriage Cases*, 183 P.3d at 441.  "[M]aking such a choice would require the negation of the person's sexual orientation" (*id.*), and thus presents no real choice at all for same-sex couples seeking official recognition of their commitment to the person with whom they have chosen to spend the rest of their lives. *See also Varnum*, 763 N.W.2d at 893 ("sexual orientation forms a significant part of a person's identity," and "influences the formation of personal relationships between all people—heterosexual, gay, or lesbian—to fulfill each person's fundamental needs for love and attachment") (internal quotation marks omitted).

Gibson, Dunn & Crutcher LLP

*Membership of the 111th Congress: A Profile* 5 (2008).  While comparisons among types of discrimination must be made cautiously, it is apparent that gay and lesbian individuals have not yet made all of the great political strides accomplished by other groups subject to similar histories of discrimination in this country.

For all these reasons, government classifications based on sexual orientation are inherently suspect and should be rigorously examined in order to foreclose the type of purposeful and invidious discrimination that has been directed at gay and lesbian individuals for centuries.  Indeed, "the bigotry and hatred that gay persons have faced are akin to, and, in certain respects, perhaps even more severe than, those confronted by some groups that have been accorded heightened judicial protection." *Kerrigan*, 957 A.2d at 446.  Strict scrutiny—or, at a minimum, heightened scrutiny—of classifications based on sexual orientation is therefore appropriate.

ii.      Prop. 8 cannot survive either of these exacting standards of scrutiny because it does not further *any* permissible governmental interest.  Neither the preservation of tradition nor the expression of moral disapproval is a legitimate—let alone, an important—governmental interest.  The "fact that the governing majority in a State has traditionally viewed a particular practice as immoral is not a sufficient reason for upholding a law prohibiting the practice." *Lawrence*, 539 U.S. at 577 (internal quotation marks omitted).  Moreover, Prop. 8 does not bear even a rational relationship to the government's purported interest in promoting procreation because it does not prohibit marriage by opposite-sex couples who are unable or unwilling to have children and does not make it any more likely that those opposite-sex couples who are able and willing to have children will do so.  The "classifications drawn" by Prop. 8 thus constitute precisely the type of "arbitrary and invidious discrimination" prohibited by the Equal Protection Clause.  *Loving*, 388 U.S. at 10.

**2.      Prop. 8 Discriminates Against Gay And Lesbian Individuals On The Basis Of Their Sex.**

Prop. 8 is also unconstitutional because it impermissibly discriminates against Plaintiffs on the basis of their sex.

Classifications based on sex can be sustained only where the government demonstrates that they are "substantially related" to an "important governmental objective." *Virginia*, 518 U.S. at 533

Gibson, Dunn & Crutcher LLP

(internal quotation marks omitted).  Prop. 8 classifies Plaintiffs based on their sex because the male Plaintiffs—Katami and Zarrillo—would be able to marry their partners if those partners were female, and the female Plaintiffs—Perry and Stier—would be able to marry their partners if they were male. The Equal Protection Clause prohibits such "differential treatment or denial of opportunity" based on a person's sex in the absence of an "exceedingly persuasive" justification.  *Id.* at 532-33 (internal quotation marks omitted).

For the reasons discussed above, Defendants cannot muster even a minimally plausible—let alone, an "exceedingly persuasive"—justification for employing these sex-based distinctions to restrict marriage to opposite-sex couples.  Not tradition, not moral condemnation, and not the promotion of procreation.  None of these grounds is a constitutionally sufficient rationale for prohibiting a person from entering into a marriage on the basis of nothing more than the happenstance of his or her sex.

## II. PLAINTIFFS WILL BE IRREPARABLY HARMED IN THE ABSENCE OF A PRELIMINARY INJUNCTION.

Plaintiffs are irreparably harmed each day that Prop. 8 remains in force and continues to deprive them of their due process and equal protection rights.  This Court should therefore enter a preliminary injunction enjoining Defendants from enforcing that provision insofar as it prohibits two individuals of the same sex from getting married.

"[C]onstitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm."  *Nelson v. NASA*, 530 F.3d 865, 882 (9th Cir. 2008); *see also Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997).  Each Plaintiff has attempted to exercise his or her fundamental constitutional right to marry by applying for a marriage license in California, and each has been denied a marriage license on the sole ground that he or she was seeking to marry a person of the same sex.  Thus, as long as Prop. 8 remains on the books, Plaintiffs will be denied their "freedom of personal choice in matters of marriage . . . protected by the Due Process Clause" (*LaFleur*, 414 U.S. at 639) and their right to be free from "arbitrary and invidious discrimination" guaranteed by the Equal Protection Clause.  *Loving*, 388 U.S. at 10.

Monetary damages would be an utterly inadequate remedy for the denial of these fundamental constitutional guarantees, and for the emotional distress, psychological harm, and humiliation that Plaintiffs have suffered as a result of being denied the right to marry the person they love.  Perry Decl. ¶ 10; Stier Decl. ¶ 10; Katami Decl. ¶ 6; Zarrillo Decl. ¶ 6.  Plaintiffs are each involved in a loving and committed relationship with a person with whom they plan to spend the rest of their lives, and they seek nothing more than the same official respect, recognition, and approval of that relationship that is accorded to opposite-sex couples.  Financial damages cannot make Plaintiffs whole for being excluded from the most "intimate" and "sacred" of life's relationships.  *Zablocki*, 434 U.S. at 384.[9]

## III.   THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR A PRELIMINARY INJUNCTION.

Finally, a preliminary injunction is appropriate because an order enjoining the enforcement of Prop. 8 would not burden the rights of Defendants or third parties, and would promote the Nation's profound commitment to equal rights.

Requiring the State of California to issue marriage licenses to otherwise-qualified same-sex couples would not remotely burden Defendants' rights.  Indeed, the State issued more than 18,000 marriage licenses to same-sex couples between the California Supreme Court's decision in the *Marriage Cases* and the voters' approval of Prop. 8, and the California Supreme Court has upheld the validity of those marriages.  *Strauss*, No. S168047, slip op. at 135.  There is no reason to believe that it would be a significant administrative hardship for Defendants to begin issuing licenses again.  It is equally implausible that extending the right to marry to same-sex couples would impose a material burden on the public fisc.  Because domestic partnership already "affords the couple virtually all of the same substantive legal benefits and privileges" as marriage (*Marriage Cases*, 183 P.3d at 397-

---

[9]  In any event, monetary damages are unavailable in this case because sovereign immunity bars the award of monetary relief against state officials sued in their official capacities.  *See Edelman v. Jordan*, 415 U.S. 651, 665 (1974).  Similarly, qualified immunity would likely bar any subsequent suit seeking monetary relief from these Defendants in their personal capacities.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Gibson, Dunn & Crutcher LLP

18

09-CV-2292 VRW  PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR A PRELIMINARY INJUNCTION, AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

98), the State is unlikely to incur additional financial obligations if gay and lesbian individuals are afforded the same marriage rights as individuals in heterosexual relationships.

Nor will a preliminary injunction burden the rights of third parties.  Enjoining the enforcement of Prop. 8 insofar as it prohibits marriage by individuals of the same sex will not impair the right of opposite-sex couples to marry.  Moreover, the risk that the validity of marriages of same-sex couples performed after the issuance of a preliminary injunction would be compromised if this Court later vacated the injunction falls squarely on Plaintiffs alone.  In any event, this Court will not issue a preliminary injunction unless Plaintiffs are likely to prevail on the merits of their claims. And, even if the Court were ultimately to sustain Prop. 8, the California Attorney General himself has acknowledged that "marriages that were legal at the time of formation"—such as those performed while the enforcement of a state law prohibiting marriage by same-sex couples has been enjoined by a federal court—remain legal after an intervening change in the law.  Br. for Respondents at 75, *Strauss*, No. S168047 (Cal. filed Dec. 19, 2008) (emphasis omitted).  The California Supreme Court agrees.  *See Strauss*, No. S168047, slip op. at 135.

Indeed, far from burdening the rights of third parties, a preliminary injunction would promote the public interest because "all citizens have a stake in upholding the Constitution" and have "concerns [that] are implicated when a constitutional right has been violated."  *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005).  A preliminary injunction vindicating gay and lesbian individuals' fundamental constitutional rights would advance the shared interest of all citizens in enforcing the Constitution's guarantees and reinforce this "Nation's basic commitment . . . to foster the dignity and well-being of all persons within its borders."  *Goldberg v. Kelly*, 397 U.S. 254, 264-65 (1970).

Gibson, Dunn & Crutcher LLP

19

09-CV-2292 VRW  PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR A PRELIMINARY INJUNCTION, AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

**CONCLUSION**

For the foregoing reasons, the Court should issue a preliminary injunction enjoining Defendants from enforcing Article I, § 7.5 of the California Constitution insofar as that provision limits civil marriage in California to the union of a man and a woman, and prohibits two individuals of the same sex from getting married.

Dated:  May 27, 2009

GIBSON, DUNN & CRUTCHER LLP


By:_____/s/_____
                    Theodore J. Boutrous, Jr.

and

BOIES, SCHILLER & FLEXNER LLP

David Boies (*pro hac vice* application pending)
Attorneys for Plaintiffs KRISTIN M. PERRY,
SANDRA B. STIER, PAUL T. KATAMI, AND
JEFFREY J. ZARRILLO

Gibson, Dunn &
Crutcher LLP