ALLIANCE DEFENSE FUND
Timothy Chandler (CA Bar No. 234325)
*tchandler@telladf.org*
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 932-2850, Facsimile: (916) 932-2851

Benjamin W. Bull, (AZ Bar No. 009940)
*bbull@telladf.org*
Brian W. Raum (NY Bar No. 2856102)*
*braum@telladf.org*
James A. Campbell (OH Bar No. 0081501)*
*jcampbell@telladf.org*
15100 North 90th Street, Scottsdale, Arizona 85260
Telephone: (480) 444-0020, Facsimile: (480) 444-0028

LAW OFFICES OF ANDREW P. PUGNO
Andrew P. Pugno (CA Bar No. 206587)+
*andrew@pugnolaw.com*
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 608-3065, Facsimile: (916) 608-3066

ATTORNEYS FOR PROPOSED INTERVENORS DENNIS HOLLINGSWORTH,
GAIL J. KNIGHT, MARTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM,
MARK A. JANSSON, and PROTECTMARRIAGE.COM – YES ON 8, A
PROJECT OF CALIFORNIA RENEWAL

* *Pro hac vice* application forthcoming
+ Application for admission forthcoming

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO,<br><br>    Plaintiffs,<br><br>    v.<br><br>ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the California Department of Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; and DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for | CASE NO. 09-CV-2292 VRW<br><br>**PROPOSED INTERVENORS' NOTICE OF MOTION AND MOTION TO INTERVENE, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE**<br><br>Date:  July 2, 2009<br>Time:  10:00 a.m.<br>Judge:  Chief Judge Vaughn R. Walker<br>Location:  Courtroom 6, 17th Floor |

1    the County of Los Angeles,

2                    Defendants,

3    and

4    PROPOSITION 8 OFFICIAL PROPONENTS
     DENNIS HOLLINGSWORTH, GAIL J.
5    KNIGHT, MARTIN F. GUTIERREZ, HAK-
     SHING WILLIAM TAM, and MARK A.
6    JANSSON; and PROTECTMARRIAGE.COM –
     YES ON 8, A PROJECT OF CALIFORNIA
7    RENEWAL,

8                    Proposed Intervenors.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

PROCEDURAL HISTORY ................................................................................................ 1

FACTUAL HISTORY ........................................................................................................ 2

ARGUMENT ....................................................................................................................... 6

I.      PROPOSED INTERVENORS ARE ENTITLED TO INTERVENE AS OF RIGHT ................................. 6

        A.      Proposed Intervenors Have Timely Filed This Motion ................................ 7

        B.      Proposed Intervenors Have A Significantly Protectable Interest In The Subject Matter Of This Lawsuit ............................................................ 7

        C.      This Court's Ruling Might Impair Proposed Intervenors' Significantly Protectable Interest ............................................................ 10

        D.      The Existing Parties Will Not Adequately Represent Proposed Intervenors' Interests ............................................................................... 11

II.     PROPOSED INTERVENORS HAVE SATISFIED THE REQUIREMENTS FOR PERMISSIVE INTERVENTION ........................................................................ 14

CONCLUSION ................................................................................................................... 16

PROPOSED INTERVENORS' NOTICE OF MOTION AND MOTION TO INTERVENE, AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE – CASE NO. 09-CV-2292 VRW

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Bates v. Jones,*
904 F. Supp. 1080 (N.D. Cal. 1995) .................................................................... *passim*

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.,*
440 F.3d 541 (1st Cir. 2006) ............................................................................. 13

*Blake v. Pallan,*
554 F.2d 947 (9th Cir. 1977) ............................................................................. 12

*Glancy v. Taubman Ctrs., Inc.,*
373 F.3d 656 (6th Cir. 2004) ............................................................................. 13

*Idaho v. Freeman,*
625 F.2d 886 (9th Cir. 1980) ............................................................................... 8

*League of United Latin Am. Citizens v. Wilson,*
131 F.3d 1297 (9th Cir. 1997) ........................................................................... 14

*Nw. Forest Res. Council v. Glickman,*
82 F.3d 825 (9th Cir. 1996) ................................................................................. 7

*Prete v. Bradbury,*
438 F.3d 949 (9th Cir. 2006) ...................................................................... 7, 8, 9

*Sagebrush Rebellion, Inc. v. Watt,*
713 F.2d 525 (9th Cir. 1983) ...................................................................... 8, 10, 11, 12

*Sw. Ctr. for Biological Diversity v. Berg,*
268 F.3d 810 (9th Cir. 2001) ......................................................................... 7, 10

*Trbovich v. United Mine Workers of Am.,*
404 U.S. 528 (1972) ........................................................................................... 11

*United States v. City of Los Angeles,*
288 F.3d 391 (9th Cir. 2002) ......................................................................... 7, 14

*Washington State Bldg. & Constr. Trades Council v. Spellman,*
684 F.2d 627 (9th Cir. 1982) ...................................................................... 7, 8, 10

*Yniguez v. State of Arizona,*
939 F.2d 727 (9th Cir. 1991) ........................................................................ *passim*

**STATE CASES**

*In re Marriage Cases,*
43 Cal.4th 757, 76 Cal.Rptr.3d 683 (Cal. 2008) ................................................. 12

*Hernandez v. Robles,*
7 N.Y.3d 338, 855 N.E.2d 1 (N.Y. 2006) .......................................................... 13

1

**CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES**

Cal. Const. art. I, § 7.5 ........................................................................................ 1, 5, 12

Cal. Const. art. II, § 8 ............................................................................................... 2, 9

Cal. Elec. Code § 342 ................................................................................................... 2

Cal. Elec. Code § 9001 ................................................................................................. 3

Cal. Elec. Code § 9004 ................................................................................................. 2

Cal. Elec. Code § 9008 ................................................................................................. 3

Cal. Elec. Code § 9012 ................................................................................................. 3

Cal. Elec. Code § 9014 ................................................................................................. 3

Cal. Elec. Code § 9030 ................................................................................................. 4

Cal. Elec. Code § 9031 ................................................................................................. 4

Cal. Elec. Code § 9032 .............................................................................................. 3, 9

Cal. Elec. Code § 9033 ................................................................................................. 4

Cal. Elec. Code § 9067 ........................................................................................... 4, 5, 9

Cal. Elec. Code § 9607 ................................................................................................. 3

Cal. Elec. Code § 9609 ................................................................................................. 3

Cal. Fam. Code § 308.5 .......................................................................................... 12, 13

Fed. R. Civ. P. 24 .................................................................................................... 6, 14

**OTHER AUTHORITIES**

A.B. 849, 2005-2006 Leg., Reg. Sess. (Cal. 2005) ...................................................... 14

A.B. 43, 2007-2008 Leg., Reg. Sess. (Cal. 2007) ....................................................... 14

iii

PROPOSED INTERVENORS' NOTICE OF MOTION AND MOTION TO INTERVENE, AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE – CASE NO. 09-CV-2292 VRW

**TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 2, 2009, at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Vaughn R. Walker, United States District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Proposed Intervenors Dennis Hollingsworth, Gail J. Knight, Martin F. Gutierrez, Hak-Shing William Tam, Mark A. Jansson, and ProtectMarriage.com – Yes on 8, a Project of California Renewal, (collectively referred to as "Proposed Intervenors") will move this Court for an order allowing them to intervene in this case.

Proposed Intervenors respectfully request an order allowing them to intervene in this case to guard their significant protectable interest in the subject matter of this lawsuit.

### INTRODUCTION

The Ninth Circuit has repeatedly permitted sponsors and supporters of ballot initiatives and constitutional amendments to intervene in lawsuits challenging those provisions. Proposed Intervenors are the official proponents and campaign committee for Proposition 8, the California constitutional provisions challenged in this lawsuit. This Court should thus allow them to intervene in this case.

### PROCEDURAL HISTORY

On May 22, 2009, Plaintiffs filed this suit, asserting claims against various California state and local officials. Plaintiffs allege that California's recently enacted Proposition 8, which is now embodied in Article I, Section 7.5 of the State Constitution, violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. They seek declaratory and injunctive relief against the enforcement of Article I, Section 7.5 of the State Constitution.

A few days after the initial filing of this lawsuit, on May 27, 2009, Plaintiffs filed a motion for preliminary injunction, asking this Court to enjoin California state officials from enforcing Article I, Section 7.5 of the State Constitution. Plaintiffs set their preliminary-injunction hearing for July 2, 2009.

Now Proposed Intervenors respectfully request that this Court allow them to intervene. They have expeditiously filed this intervention motion so as not to cause any unnecessary delay in these proceedings. And, to aid this Court in economically addressing the preliminary issues raised in this case, Proposed Intervenors have proposed to schedule their intervention hearing for the same time as Plaintiffs' preliminary-injunction hearing.

## FACTUAL HISTORY

Article II, Section 8 of the California Constitution gives "electors" the right "to propose statutes and amendments to the [State] Constitution" through the initiative process. *See* Cal. Const. art. II, § 8. Five California "electors"—Dennis Hollingsworth, Gail J. Knight, Martin F. Gutierrez, Hak-Shing William Tam, and Mark A. Jansson (collectively referred to as "Proponents")— exercised this state constitutional right by taking the necessary legal steps to become the "Official Proponents" of Proposition 8.

In the fall of 2007, Proponents started the process of satisfying all legal requirements for placing Proposition 8 on the November 2008 ballot. Proponents began by supervising the drafting and ultimately approving the language of Proposition 8. Declaration of Dennis Hollingsworth at ¶ 6 (attached as Exhibit A); Declaration of Gail J. Knight at ¶ 6 (attached as Exhibit B); Declaration of Martin F. Gutierrez at ¶ 6 (attached as Exhibit C); Declaration of Hak-Shing William Tam at ¶ 6 (attached as Exhibit D); Declaration of Mark A. Jansson at ¶ 6 (attached as Exhibit E). Proponents then submitted the requisite legal forms prompting the California Attorney General to prepare Proposition 8's "Title and Summary" for the signature petitions. *Id.* By approving the language and submitting the forms, Proponents became the "Official Proponents" of Proposition 8 within the meaning of California law. *See* Cal. Elec. Code § 342. As such, Proponents assumed various legal duties and acquired numerous legal rights: among other things, they were responsible for paying the initiative filing fee; they could compel the California Attorney General to draft a Title and Summary for the initiative; and they were the only persons authorized to submit amendments to the initiative. *See* Cal. Elec. Code § 9004.

On November 29, 2007, the California Attorney General issued to Proponents a

"circulating" Title and Summary for Proposition 8. Ex. A at ¶ 10; Ex. B at ¶ 10; Ex. C at ¶ 10; Ex. D at ¶ 10; Ex. E at ¶ 10. But before they could collect signatures, Proponents needed to comply with additional legal requirements. For instance, they needed to prepare petition forms that complied with the California Elections Code. *See* Cal. Elec. Code §§ 9001, 9008, 9012, 9014. Proponents were also required to retain an executed certification from each supervising signature-gatherer, certifying that he or she would not allow the Proposition 8 signatures to be used for any purpose other than qualifying the measure for the ballot. *See* Cal. Elec. Code § 9609. And Proponents had a legal duty to instruct all signature-collectors about the petition-circulation and signature-gathering requirements under state law. *See* Cal. Elec. Code § 9607. No person or entity other than Proponents could submit petitions to the State for signature verification; the State would have summarily rejected petitions submitted by others. *See* Cal. Elec. Code § 9032.

California law places onerous, time-constrained signature-gathering requirements on Proponents. They were responsible for obtaining at least 694,354 valid petition signatures between November 29, 2007, and April 28, 2008. Ex. A at ¶ 16; Ex. B at ¶ 16; Ex. C at ¶ 16; Ex. D at ¶ 16; Ex. E at ¶ 16. In other words, Proponents needed to supervise the collection of, on average, at least 4,629 valid petition signatures per day during a five-month period.

Even after a sufficient number of signatures had been collected, Proponents retained the exclusive statutory right to decide whether to file the initiative petitions for signature verification. *See* Cal. Elec. Code § 9032 ("The right to file the petition shall be reserved to its proponents, and any section thereof presented for filing by any person or persons other than the proponents . . . shall be disregarded by the elections official"). No person other than Proponents possessed this unique legal right.

Near the beginning of this initiative process, Proponents helped to establish ProtectMarriage.com – Yes on 8, a Project of California Renewal ("Committee"), as a "primarily formed ballot measure committee" under the California Political Reform Act. Ex. A at ¶ 13; Ex. B at ¶ 13; Ex. C at ¶ 13; Ex. D at ¶ 13; Ex. E at ¶ 13. The Committee exists with one purpose: to support Proposition 8. *See* Declaration of David Bauer at ¶ 4 (attached as Exhibit F). Proponents

endorsed the Committee as the official Proposition 8 campaign committee, and designated it to receive all contributions and disburse all expenditures for the Proposition 8 campaign. *Id.* at ¶ 6.

Since its formation, the Committee has received financial contributions from over 83,000 individuals, the vast majority of which are registered California voters. *Id.* at ¶ 8. From these financial supporters, the Committee has amassed more than $39 million in total contributions. *Id.* at ¶ 9. Aside from the statutory powers and duties reserved exclusively to Proponents, the Committee was directly responsible for all aspects of the campaign to qualify Proposition 8 for the ballot and enact it into law. *Id.* at ¶¶ 6, 10. During the campaign, the Committee spent over $37 million to qualify Proposition 8 for the ballot and operate a statewide campaign to persuade a majority of California voters to approve it. *Id.* at ¶ 11. The Committee's substantial investments of time and money, in addition to its unique status as a "primarily formed ballot measure committee" under state law, distinguish its interest in Proposition 8 from that of other supporters in the general public. *Id.* at ¶ 15.

On April 24, 2008, Proponents authorized the Committee to submit the petitions, containing the signatures of over 1.2 million Californians, for signature verification by county-elections officials. Ex. A at ¶ 19; Ex. B at ¶ 19; Ex. C at ¶ 19; Ex. D at ¶ 19; Ex. E at ¶ 19. California law provides that county-elections officials and the Secretary of State must provide certain notices to Proponents during the signature-verification process. *See* Cal. Elec. Code §§ 9030, 9031, 9033. On June 2, 2008, the California Secretary of State notified Proponents that the county-elections officials had verified the requisite number of voter signatures and that, consequently, Proposition 8 qualified for inclusion on the November 2008 ballot. Ex. A at ¶ 21; Ex. B at ¶ 21; Ex. C at ¶ 21; Ex. D at ¶ 21; Ex. E at ¶ 21.

After Proposition 8 was approved for the ballot, Proponents had the statutory authority to designate the arguments in favor of Proposition 8 to appear in the statewide voter-guide. Ex. A at ¶ 22; Ex. B at ¶ 22; Ex. C at ¶ 22; Ex. D at ¶ 22; Ex. E at ¶ 22. The voter-guide contains only one argument in favor of each ballot initiative. *See* Cal. Elec. Code § 9067. If multiple arguments are submitted, the Secretary of State publishes only the argument designated by Proponents and omits

those submitted by other persons or entities.  *See* Cal. Elec. Code § 9067(b).  Thus, California law

gives Proponents a preferred status as official advocate for Proposition 8.

In addition to satisfying their many legal duties, Proponents dedicated substantial time,

effort, reputation, and personal resources in campaigning for Proposition 8.  Ex. A at ¶ 27; Ex. B at

¶ 27; Ex. D at ¶ 27; Ex. E at ¶ 27.  Mr. Hollingsworth, for example, authored campaign literature

and helped to raise more than $2 million for the campaign.  Ex. A at ¶ 27.  Mr. Tam spent most of

his working hours during 2008 advocating for Proposition 8; among other things, he coordinated

Proposition 8 rallies and organized volunteers from the Asian-American community.  Ex. D at ¶ 27.

Mrs. Knight donated personal funds to the campaign and gave a presentation at a large Proposition

8 rally.  Ex. B at ¶ 27.  And Mr. Jansson spent hundreds of hours working in support of Proposition

8—work which included circulating signature petitions, organizing volunteers, speaking to

community organizations, and serving on the Committee.  Ex. E at ¶ 27.  Proponents' tireless

support of Proposition 8, and unique status as official proponents, separates their interest in

Proposition 8 from that of other supporters in the general public.  Ex. A at ¶ 5; Ex. B at ¶ 5; Ex. C at

¶ 5; Ex. D at ¶ 5; Ex. E at ¶ 5.

In late June 2008, Proponents were sued as Real Parties in Interest in a pre-election legal

challenge to Proposition 8 filed in the California Supreme Court.  *See* Petition for Extraordinary

Relief, *Bennett v. Bowen*, No. S164520 (attached as Exhibit G).  The petitioners in that case alleged

that Proposition 8 was a constitutional "revision" (rather than an "amendment"), and thus could not

be enacted through the initiative process.  *Id.* at p. 12.  The petitioners also asserted that the Title

and Summary on the circulated petitions were false and misleading.  *Id.* at p. 34.  Proponents

defended against those allegations, and the California Supreme Court summarily denied that legal

challenge.  *See Bennett v. Bowen*, No. S164520 (Cal. July 16, 2008) (attached as Exhibit H).

On November 4, 2008, a majority of California voters approved Proposition 8 as an

amendment to the State Constitution.  Thus, on November 5, 2008, Proposition 8 became Article I,

Section 7.5 of the California Constitution, which states:  "Only marriage between a man and a

woman is valid or recognized in California."  Cal. Const. art. I, § 7.5.

On that same day, November 5, 2008, three post-election lawsuits were filed in the California Supreme Court, arguing that Proposition 8 was enacted in violation of the State Constitution. *See* Amended Petition for Extraordinary Relief, *Strauss v. Horton*, No. S168047 (attached as Exhibit I). Although not initially named as parties, Proponents and the Committee successfully intervened in that suit and defended Proposition 8. *See Strauss v. Horton*, No. S168047 (Cal. Nov. 19, 2008) (attached as Exhibit J). In that litigation, the California Attorney General opposed Proposition 8, arguing that it "should be invalidated . . . because it abrogates fundamental rights . . . without a compelling interest." *See* Answer Brief in Response to Petition for Extraordinary Relief, *Strauss v. Horton*, No. S168047, at p. 75 (attached as Exhibit K). On May 26, 2009, the California Supreme Court denied those legal challenges and upheld Proposition 8. *See Strauss v. Horton*, Nos. S168047, S168066, S168078, 2009 WL 1444594 (Cal. May 26, 2009).

On May 6, 2009, Proponents and the Committee successfully intervened in another challenge to Proposition 8 currently pending before the United States District Court for the Central District of California. *See Smelt v. United States*, Case No. SACV-09-286 DOC (MLGx) (C.D. Cal. May 6, 2009) (attached as Exhibit L); *see also* Ex. A at ¶ 30; Ex. B at ¶ 30; Ex. C at ¶ 29; Ex. D at ¶ 30; Ex. E at ¶ 30; Ex. F. at ¶ 19. That case, like this one, challenges the legality of Proposition 8 under the United States Constitution. Proponents and the Committee through their legal counsel are currently defending against that federal constitutional challenge to Proposition 8.

Proponents believe that no other party in this case will adequately represent their interests as official proponents with state constitutional and statutory rights to propose Proposition 8. Ex. A at ¶ 29; Ex. B at ¶ 29; Ex. C at ¶ 28; Ex. D at ¶ 29; Ex. E at ¶ 29. The Committee likewise believes that no other party will adequately represent its interests as the official Proposition 8 campaign committee. Ex. F at ¶ 18.

## ARGUMENT

### I.  PROPOSED INTERVENORS ARE ENTITLED TO INTERVENE AS OF RIGHT.

Four requirements must be satisfied to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2): (1) the intervention motion must be timely filed; (2) the applicant must have a

"significantly protectable" interest relating to the subject of the action; (3) the disposition of the action might, as a practical matter, impair the applicant's ability to protect its interest; and (4) the applicant's interest might be inadequately represented by the existing parties. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817-18 (9th Cir. 2001) (citing *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996)). Each of these requirements must be evaluated liberally in favor of intervention:

> A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a practical interest in the outcome of a particular case to intervene, [the court] often prevent[s] or simplif[ies] future litigation involving related issues; at the same time, [the court] allow[s] an additional interested party to express its views . . . .

*United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (citing *Forest Conservation Council v U.S. Forest*, 66 F.3d 1489, 496 n.8 (9th Cir. 1995)); *see also Berg*, 268 F.3d at 818; *Washington State Bldg. & Constr. Trades Council v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982). Proposed Intervenors satisfy all four intervention requirements, each of which will be addressed in turn.

### A.    Proposed Intervenors Have Timely Filed This Motion.

Three criteria determine whether a motion to intervene satisfies the timeliness requirement: (1) the stage of the proceedings; (2) the reason for delay, if any, in moving to intervene; and (3) prejudice to the parties. *Glickman*, 82 F.3d at 836-837. Proposed Intervenors filed their motion at the very earliest stages of this proceeding (less than a week after these proceedings began); they have not delayed in moving to intervene; and the parties will not be prejudiced in any way.

### B.    Proposed Intervenors Have A Significantly Protectable Interest In The Subject Matter Of This Lawsuit.

The Ninth Circuit has adopted "a virtual *per se* rule that the sponsors of a ballot initiative have a sufficient interest in the subject matter of the litigation to intervene pursuant to Fed. R. Civ. P. 24(a)." *Yniguez v. State of Arizona*, 939 F.2d 727, 735 (9th Cir. 1991); *see also Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) (ruling that a public-interest group and chief petitioner

who supported "an initiative [had] a 'significant protectable interest' in defending the legality of the measure"); *Spellman*, 684 F.2d at 630 (holding that "the public interest group that sponsored the [challenged] initiative[] was entitled to intervention as a matter of right under Rule 24(a)"). "The individualized interest of official proponents of ballot initiatives in defending the validity of the enactment they sponsored is sufficient to support intervention as of right." *Bates v. Jones*, 904 F. Supp. 1080, 1086 (N.D. Cal. 1995).

A long line of Ninth Circuit precedent supports intervention by initiative proponents, initiative sponsors, and constitutional-amendment supporters. In *Yniguez*, the Ninth Circuit held that an organization and spokesman who campaigned for a ballot initiative had "sufficient interest[s] in the subject matter of the litigation to intervene" in a suit challenging that initiative. *Yniguez*, 939 F.2d at 735. In *Prete*, the court ruled that the chief initiative petitioner and a public-interest group that supported the initiative had "a 'significant protectable interest' in defending the legality of the measure." *Prete*, 438 F.3d at 954. Similarly, in *Spellman*, the court found that "the public interest group that sponsored the [challenged] initiative[] was entitled to intervention as a matter of right under Rule 24(a)." *Spellman*, 684 F.2d at 630. And, in *Idaho v. Freeman*, 625 F.2d 886, 887 (9th Cir. 1980), the Ninth Circuit concluded that an organization had the right to intervene in a suit challenging the ratification procedures for a constitutional amendment supported by that organization. Likewise, in *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983), a case challenging the federal government's creation of a wildlife conservation area, the court held that "there [could] be no serious dispute . . . concerning . . . the existence of a protectable interest" on the part of an organization that supported the conservation area's creation. This Court has dutifully followed this guidance: in *Bates*, for example, this Court permitted intervention by the "official proponents" of a state constitutional amendment setting term limits for state legislators. *Bates*, 904 F. Supp. at 1086.

Here, Proposed Intervenors are the official proponents and campaign committee of Proposition 8, and as such, they hold unique legal statuses regarding that initiative. By creating, proposing, and campaigning for Proposition 8, Proponents have exclusively exercised many state

statutory and constitutional rights:  (1) the constitutional right to propose Proposition 8 by initiative, *see* Cal. Const. art. II, § 8; (2) the statutory right to submit completed signature petitions, thereby authorizing the State to place Proposition 8 on the ballot, *see* Cal. Elec. Code § 9032; and (3) the statutory right to designate arguments in support of Proposition 8 for the official voter-guide, *see* Cal. Elec. Code § 9067.  *Cf. Yniguez*, 939 F.2d at 733 ("[State] law recognizes the ballot initiative sponsor's heightened interest in the measure by giving the sponsor official rights and duties distinct from those of the voters at large").  Similarly, the Committee holds a distinctive legal position:  it is the only "primarily formed ballot measure committee" under California law endorsed by Proponents in support of Proposition 8.  In short, Proposed Intervenors' unique legal statuses regarding Proposition 8 are unmatched by any other person or organization.

Proposed Intervenors have indefatigably labored in support of Proposition 8.  Proponents complied with a myriad of legal requirements to procure Proposition 8's enactment, such as (1) filing forms prompting the State to prepare Proposition 8's Title and Summary, (2) paying the initiative filing fee, (3) drafting legally compliant signature petitions, (4) overseeing the collection of more than 1.2 million signatures, (5) instructing signature-collectors on state-law guidelines, and (6) obtaining certifications from supervising signature-gatherers.  Proponents devoted substantial time, effort, and resources through fundraising, campaigning, monetary donations, organizing volunteers, and assisting the Committee.  Likewise, the Committee—which was responsible for all aspects of the campaign (aside from those legal duties assigned exclusively to Proponents)—labored incessantly, collecting and disbursing approximately $39 million, all with the goal of achieving Proposition 8's enactment.  Proposed Intervenors have also battled for Proposition 8 in the courtroom:  Proponents successfully defended against a pre-election legal challenge; and Proponents as well as the Committee intervened and successfully defended against a post-election challenge filed in the California Supreme Court.  *See Strauss v. Horton*, Nos. S168047, S168066, S168078, 2009 WL 1444594 (Cal. May 26, 2009).  Currently, Proposed Intervenors continue their legal defense of Proposition 8.  They have recently intervened and are litigating in a federal-court suit, which, like this case, challenges the legality of Proposition 8 under the United States

Constitution.  *See Smelt v. United States*, Case No. SACV-09-286 DOC (MLGx) (C.D. Cal.).  It is thus clear that Proposed Intervenors—unlike any other person or organization—have invested greatly in enacting and protecting Proposition 8.

In this case, Plaintiffs directly challenge Proposition 8 under the Federal Constitution.  It is well settled under Ninth Circuit precedent that Proposed Intervenors' unique legal status as Proposition 8's official proponents and campaign committee endow them with a significantly protectable interest permitting them to intervene as of right.  *See Yniguez*, 939 F.2d at 735; *Prete*, 438 F.3d at 954; *Spellman*, 684 F.2d at 630; *Bates*, 904 F. Supp. at 1086.  Ninth Circuit precedent also demonstrates that Proposed Intervenors' tireless support of Proposition 8 also establishes their right to intervene.  *See Sagebrush Rebellion*, 713 F.2d at 528; *Freeman*, 625 F.2d at 887.

## C.    This Court's Ruling Might Impair Proposed Intervenors' Significantly Protectable Interest.

When a proposed intervenor "would be substantially affected in a practical manner by the determination made in the action, he should, as a general rule, be entitled to intervene."  *Berg*, 268 F.3d at 822 (quoting the advisory committee's notes from Fed. R. Civ. P. 24).  Not surprisingly, the Ninth Circuit has routinely concluded that an initiative- or amendment-supporters' sufficiently protectable interest could be impaired by a suit challenging the supported provision.  *See Prete*, 438 F.3d at 954 ("[A]n adverse court decision on such [an initiative] measure may, as a practical matter, impair the interest held by the public interest group"); *Bates*, 904 F. Supp. at 1086 ("The interest of . . . the official proponents of [the challenged] Proposition . . . in its continued validity could obviously be impaired in this litigation"); *Freeman*, 625 F.2d at 887 (holding that an organization's protectable interest in a constitutional amendment supported by that organization "would as a practical matter be significantly impaired by an adverse decision"); *Sagebrush Rebellion*, 713 F.2d at 528 (holding that "there can be no serious dispute . . . concerning . . . the existence of a protectable interest on the part of the [proposed intervenor] which may, as a practical matter, be impaired").

Here, Plaintiffs ask this Court to declare that Proposition 8 violates the United States

Constitution. They also seek to enjoin California state officials from enforcing that newly enacted provision of the State Constitution. If the Court grants this relief, all Proposed Intervenors' labor in support of Proposition 8 will be for naught. Thus, this Court's ruling could directly impair Proposed Intervenors' interest in Proposition 8, by undoing all that they have done in obtaining its enactment.

### D. The Existing Parties Will Not Adequately Represent Proposed Intervenors' Interests.

"[T]he requirement of inadequacy of representation is satisfied if the [proposed intervenor] shows that representation of its interests '*may be*' inadequate." *Sagebrush Rebellion*, 713 F.2d at 528 (emphasis added); *accord Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). "[T]he burden of making this showing is minimal." *Sagebrush Rebellion*, 713 F.2d at 528; *accord Trbovich*, 404 U.S. at 538 n.10; *Bates*, 904 F. Supp. at 1087.

Presumably, California Attorney General, Edmund G. Brown, will represent the California state officials sued in this case. The Ninth Circuit has found that intervention is warranted where the facts indicate that the defendant government official desires the same legal outcome sought by the plaintiff. *See Sagebrush Rebellion*, 713 F.2d at 528. Attorney General Brown has made it clear that he opposes Proposition 8's validity. In the challenge to Proposition 8 recently decided by the California Supreme Court, Attorney General Brown argued that "Proposition 8 should be invalidated . . . because it abrogates fundamental rights . . . without a compelling interest." *See* Ex. K at p. 75. The Attorney General's deputy communicated this message more pointedly at oral argument, when he identified himself as a "challenger" to Proposition 8. *See* California Supreme Court Website, Proposition 8 Cases, *available at* http://www.courtinfo.ca.gov/courts/supreme/ highprofile/prop8.htm (last visited on May 27, 2009) (linking to audio and video coverage of the oral argument). A self-identified "challenger" to Proposition 8 will not adequately represent the interests of those who diligently labored for its enactment.

The Ninth Circuit has also found that a state attorney general inadequately represents the views of initiative proponents if he interprets the initiative amendment differently than the

proponents. *See Yniguez*, 939 F.2d at 738. Attorney General Brown's legal views about Proposition 8 conflict sharply with those held by Proposed Intervenors. As previously mentioned, the Attorney General believes that Proposition 8 should be invalidated, while Proposed Intervenors firmly maintain its legal propriety. Additionally, Attorney General Brown contends that Proposition 8 should be interpreted narrowly, *i.e.*, that the State should recognize all relational unions that were considered to be "marriages" when they were formalized (regardless of whether they conform to Proposition 8's structure of one man and one woman). *See* Ex. K at pp. 61-75 (arguing that the State should recognize same-sex "marriages" previously solemnized within its borders). In contrast, Proposed Intervenors maintain that Proposition 8 should be interpreted broadly, *i.e.*, that it prevents the State from "recogniz[ing]" as "marriage" any relational union that does not conform to Proposition 8's structure of one man and one woman (regardless of when or where it was solemnized). *See* Cal. Const. art. I, § 7.5. These significant distinctions between Attorney General Brown's and Proposed Intervenors' legal views about Proposition 8 demonstrate that he is unable to adequately represent Proposed Intervenors' interests.

The inadequate-representation prong is also satisfied where the existing parties—because of inability or unwillingness—might not present intervenor's arguments. *See Sagebrush Rebellion*, 713 F.2d at 528; *Blake v. Pallan*, 554 F.2d 947, 954-55 (9th Cir. 1977). In 2000, Californians enacted a statutory initiative that defined "marriage," like Proposition 8 does, as a union between "a man and a woman." Cal. Fam. Code § 308.5 (2000). Attorney General Brown unsuccessfully defended that statute against state constitutional attack. *See In re Marriage Cases*, 43 Cal.4th 757, 76 Cal.Rptr.3d 683 (Cal. 2008). When litigating that case, he presented only two state interests for defining marriage as the union of a man and a woman: (1) the government's interest in maintaining its longstanding definition of marriage; and (2) its interest in affirming the will of its citizens. *See* Answer Brief of State of California and the Attorney General to Opening Brief on the Merits, *In re Marriage Cases*, No. S147999, at pp. 43-54 (attached as Exhibit M). Here, Proposed Intervenors intend to argue additional state interests including but not limited to: promoting stability in relationships between a man and a woman because they naturally (and at times unintentionally)

produce children; and promoting the statistically optimal child-rearing household where children are raised by both a mother and a father. The Attorney General has proven unwilling to argue these state interests, which have been found by other courts to satisfy rational-basis review. *See, e.g.*, *Hernandez v. Robles*, 7 N.Y.3d 338, 855 N.E.2d 1 (N.Y. 2006). His refusal to do so here will unnecessarily hinder the constitutional defense of Proposition 8.

"[Another] way for the intervenor to show inadequate representation is to demonstrate that its interests are sufficiently different in . . . degree from those of the named party." *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 546 (1st Cir. 2006); *see also Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 675 (6th Cir. 2004) ("Asymmetry in the intensity . . . of interest can prevent a named party from representing the interests of the absentee"). The Ninth Circuit has acknowledged that oftentimes the government's motivation to defend a voter-enacted initiative is much less than the proponent's hearty enthusiasm:

> [A]s appears to be true in this case, the government may be less than enthusiastic about the enforcement of a measure adopted by ballot initiative; for better or worse, the people generally resort to a ballot initiative precisely because they do not believe that the ordinary processes of representative government are sufficiently sensitive to the popular will with respect to a particular subject. While the people may not always be able to count on their elected representatives to support fully and fairly a provision enacted by ballot initiative, they can invariably depend on its sponsors to do so.

*Yniguez*, 939 F.2d at 733. This Court has similarly reasoned:

> [A]n official sponsor of a ballot initiative may be considered to add an element not covered by the government in defending the validity of the initiative in that the very act of resorting to a ballot initiative indicates a rift between the initiative's proponents and voters and their elected officials on the issue that underlies the initiative.

*Bates*, 904 F. Supp. at 1087 (citations omitted).

The marriage issue in California reflects this sharp "rift" between the people and their elected representatives. As previously mentioned, in 2000, Californians enacted a statutory initiative that defined "marriage" as a union between "a man and a woman." Cal. Fam. Code § 308.5 (2000). In 2005 and 2007, however, the California Legislature sought to overturn the

people's will by approving bills that would have allowed marriage between persons of the same sex, but on both occasions, the Governor vetoed those bills. *See* A.B. 849, 2005-2006 Leg., Reg. Sess. (Cal. 2005); A.B. 43, 2007-2008 Leg., Reg. Sess. (Cal. 2007). These repeated legislative efforts to permit same-sex "marriage" demonstrate the representatives' hostility to the people's will on marriage. This prompted Proposed Intervenors to endure the personally arduous initiative process to enact the constitutional amendment desired by the people. Moreover, the Attorney General's legal opposition to Proposition 8 also demonstrates the rift between Californians and their elected representatives. Californians thus depend on Proposed Intervenors, and not their elected officials, to defend Proposition 8 vigorously.

In sum, Proposed Intervenors satisfy all the requirements for intervention as of right. This Court should grant their request to intervene.

## II. PROPOSED INTERVENORS HAVE SATISFIED THE REQUIREMENTS FOR PERMISSIVE INTERVENTION.

Fed. R. Civ. P. 24(b)(1)(B) establishes the requirements for permissive intervention. "[A] court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or question of fact in common." *City of Los Angeles*, 288 F.3d at 403. Proposed Intervenors satisfy each of these requirements.

First, Proposed Intervenors have independent grounds for jurisdiction in this case. Plaintiffs' claims seek to undermine Proposed Intervenors' state constitutional and statutory rights as the official proponents and campaign committee for Proposition 8. This direct attack on Proposed Intervenors' rights creates sufficient grounds for jurisdiction.

Second, Proposed Intervenors have timely filed their motion to intervene. In determining timeliness for purposes of permissive intervention, the Ninth Circuit "considers precisely the same three factors—the stage of the proceedings, the prejudice to existing parties, and the length of and reason for the delay"—that it considers when determining timeliness for purposes of mandatory intervention. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997).

1    As previously demonstrated, Proposed Intervenors satisfy the timeliness requirement:  they filed

2    their motion at the very earliest stages of this proceeding; they have not delayed in moving to

3    intervene; and the parties will not be prejudiced in any way.

4        Third, Proposed Intervenors' defenses to Plaintiffs' claims present questions of law in

5    common with the issues involved in the "main action."  Plaintiffs' claims and Proposed

6    Intervenors' defenses both involve the constitutionality of Proposition 8 under the Federal

7    Constitution:  Plaintiffs seek a declaration that Proposition 8 violates the Federal Constitution, and

8    Proposed Intervenors contend that Proposition 8 complies with the Federal Constitution.  These

9    arguments present inextricably intertwined and completely overlapping questions of law.

10        In sum, Proposed Intervenors satisfy all the requirements for permissive intervention.  This

11    Court should therefore grant their request to intervene.

1

**CONCLUSION**

2

Proposed Intervenors have significantly protectable interests in Proposition 8. The

3

California Attorney General will not adequately represent their interests because he has argued that

4

Proposition 8 should be invalidated; he interprets Proposition 8 differently than Proposed

5

Intervenors; and he will not present all their arguments. This Court should thus allow Proposed

6

Intervenors to intervene in this action.

7

Dated: May 28, 2009

8

9

ALLIANCE DEFENSE FUND

10

ATTORNEYS FOR PROPOSED INTERVENORS DENNIS
HOLLINGSWORTH, GAIL J. KNIGHT, MARTIN F.

11

GUTIERREZ, HAK-SHING WILLIAM TAM, MARK A.
JANSSON, AND PROTECTMARRIAGE.COM – YES ON

12

8, A PROJECT OF CALIFORNIA RENEWAL

13

14

By: s/Timothy Chandler_____
    Timothy Chandler

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROPOSED INTERVENORS' NOTICE OF MOTION AND MOTION TO INTERVENE, AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE – CASE NO. 09-CV-2292 VRW