# EXHIBIT G

Case No.: _____

## IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

Brian Bennett, Xavier Barrera, Audrey Koh and Equality California,

Petitioners,

v.

Debra Bowen, in her official capacity as Secretary of State,

Respondent;

Initiative Proponents Dennis Hollingsworth, Gail J. Knight, Martin F. Gutierrez, Hak-Shing William Tam, and Mark A. Jansson,

Real Parties in Interest.

## PETITION FOR EXTRAORDINARY RELIEF, INCLUDING WRIT OF MANDATE AND REQUEST FOR STAY; MEMORANDUM OF POINTS AND AUTHORITIES

### STAY REQUESTED

HELLER EHRMAN LLP
Stephen V. Bomse (Bar No. 40686)
Scott A. Westrich (Bar No. 172442)
Christopher F. Stoll (Bar No. 179046)
Elisabeth R. Brown (Bar No. 234879)
David J. Simon (Bar No. 241501)
333 Bush Street
San Francisco, CA 94104-2878
T: (415) 772-6000 / F: (415) 772-6268

NATIONAL CENTER FOR LESBIAN RIGHTS
Shannon P. Minter (Bar No. 168907)
Vanessa H. Eisemann (Bar No. 210478)
Melanie Rowen (Bar No. 233041)
Catherine Sakimura (Bar No. 246463)
870 Market Street, Suite 370
San Francisco, CA 94102
T: (415) 392-6257 / F: (415) 392-8442

Additional Counsel Listed on Next Page:
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
ACLU FOUNDATION OF NORTHERN CALIFORNIA
LAW OFFICE OF DAVID C. CODELL

*Attorneys For Petitioners*
*Brian Bennett, Xavier Barrera, Audrey Koh, and Equality California*

Additional Attorneys for Petitioners Brian Bennett, Xavier Barrera, Audrey
Koh, and Equality California

LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
Jon W. Davidson (Bar No. 89301)
Jennifer C. Pizer (Bar No. 152327)
3325 Wilshire Boulevard, Suite 1300
Los Angeles, CA 90010
T: (213) 382-7600 / F: (213) 351-6050

ACLU FOUNDATION OF NORTHERN CALIFORNIA
Alan L. Schlosser (Bar No. 49957)
Elizabeth O. Gill (Bar No. 218311)
39 Drumm Street
San Francisco, CA 94111
T: (415) 621-2493 / F: (415) 255-8437

ACLU FOUNDATION OF SOUTHERN CALIFORNIA
Mark Rosenbaum (Bar No. 59940)
Peter J. Eliasberg (Bar No. 189110)
Clare Pastore (Bar No. 135933)
1616 Beverly Boulevard
Los Angeles, CA 90026
T: (213) 977-9500 / F: (213) 250-3919

LAW OFFICE OF DAVID C. CODELL
David C. Codell (Bar No. 200965)
9200 Sunset Boulevard, Penthouse Two
Los Angeles, CA 90069
T: (310) 273-0306 / F: (310) 273-0307

## CERTIFICATE OF INTERESTED ENTITIES OR PERSONS

Petitioners hereby certify that they are not aware of any person or entity that must be listed under the provisions of California Rule of Court 8.208(e).

## TABLE OF CONTENTS

PRELIMINARY AND JURISDICTIONAL STATEMENT ...................... 1

PARTIES ....................................................................................... 2

FACTS ......................................................................................... 3

CLAIMS ASSERTED .................................................................. 7

RELIEF SOUGHT ....................................................................... 8

VERIFICATION......................................................................... 11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PETITION FOR EXTRAORDINARY RELIEF, INCLUDING WRIT OF
MANDATE AND REQUEST FOR STAY .............................................. 12

I.      The Writ Should Be Granted Because The Proposed Initiative
        Would Revise, Not Amend, The California Constitution............... 12

        A.      Revisions Of The California Constitution Cannot Be
                Accomplished Through An Initiative. ...................... 13

        B.      The Proposed Initiative Is A Revision, Not An
                Amendment, Because It Seeks To Inscribe
                Discrimination Based On A Suspect Classification Into
                The Constitution And To Destroy The Courts'
                Quintessential Role Of Protecting Minorities Against
                The Deprivation Of Equal Protection And Other
                Fundamental Rights. ................................................ 16

                1.      Equal protection is a basic principle of our
                        constitutional system. ..................................... 17

                2.      The Proposed Initiative is a revision rather than
                        an amendment because it would severely
                        compromise the core constitutional principle of
                        equal citizenship. ........................................... 22

                3.      The Proposed Amendment is a revision rather
                        than an amendment because it would strip the
                        courts of their authority to enforce basic
                        constitutional guarantees. ............................... 27

ii

4.   This Court should enforce the provisions of Article XVIII. .................................................. 29

II.   The Court Should Address Whether The Proposed Initiative Is A Revision Before The November Election. ....................................... 32

III.   The Petition Circulated To The Public Materially Misstated The Effect Of The Proposed Initiative .................................................... 35

IV.   Conclusion ..................................................................................... 42

CERTIFICATE OF WORD COUNT PURSUANT TO RULE 8.204(c)(1) ...................................................................................... 43

iii

# TABLE OF AUTHORITIES

## Cases

*Am. Federation of Labor-Congress of Indus. Orgs. v. Eu*
(1984) 36 Cal.3d 687 ......................................................................... 32, 33

*Amador Valley Joint Union High School Dist. v. State Bd. of Equalization*
(1978) 22 Cal.3d 208 ........................................................................ passim

*Billings v. Hall*
(1857) 7 Cal. 1 ............................................................................................ 26

*Bixby v. Pierno*
(1971) 4 Cal.3d 130 ................................................................................... 28

*Boyd v. Jordan*
(1934) 1 Cal.2d 468 ............................................................................. 35, 36

*Clark v. Jordan*
(1936) 7 Cal. 248 ......................................................................... 35, 36, 38

*Com. To Defend Reproductive Rights v. Myers*
(1981) 29 Cal.3d 252 ................................................................................ 20

*Conservatorship of Valerie N.*
(1985) 40 Cal.3d 143 ................................................................................ 25

*Costa v. Superior Court*
(2006) 37 Cal.4th 986 ........................................................................ passim

*Cruzan v. Director, Mo. Dept. of Health*
(1990) 497 U.S. 26 ..................................................................................... 27

*Ex Parte Newman*
(1858) 9 Cal. 502 ....................................................................................... 26

*Forty-Niners v. Nishioka*
(1999) 75 Cal.App.4th 637 ....................................................................... 36

*Hebard v. Bybee*
(1998) 65 Cal.App.4th 1331 ..................................................................... 36

*Indep. Energy Producers Assn. v. McPherson*
(2006) 38 Cal.4th 1020 ....................................................................... 32, 33

*In re Lance W.*
(1985) 37 Cal.3d 873 ................................................................................ 15

*In re Marriage Cases*
  (2008) 43 Cal.4th 757 ................................................................... passim

*Jones v. Bates*
  (9th Cir. 1997) 127 F.3d 839 ...................................................... 40

*Lawrence v. Texas*
  (2003) 539 U.S. 558 ...................................................................... 21

*Legislature v. Deukmejian*
  (1983) 34 Cal.3d 658 ............................................................. 32, 33

*Legislature v. Eu*
  (1991) 54 Cal.3d 492 ....................................................... 13, 15, 16

*Livermore v. Waite*
  (1894) 102 Cal. 113 ......................................................... 12, 24, 31

*MHC Financing Ltd. Partnership Two v. City of Santee*
  (2005) 125 Cal.App.4th 1372 ..................................................... 35

*McFadden v. Jordan*
  (1948) 32 Cal.2d 330 .................................................................. passim

*Mervyn's v. Reyes*
  (1998) 69 Cal.App.4th 93 ....................................................... 36, 39

*Molar v. Gates*
  (1979) 98 Cal.App.3d 1 ................................................................ 19

*People v. Frierson*
  (1979) 25 Cal.3d 142 ................................................................... 15

*People v. Ramirez*
  (1979) 25 Cal.3d 260 ......................................................... 19, 20, 25

*Plessy v. Ferguson*
  (1896) 163 U.S. 537 ..................................................................... 17

*Railway Express v. New York*
  (1949) 336 U.S. 106 ..................................................................... 27

*Raven v. Deukmejian*
  (1990) 52 Cal.3d 336 .................................................................. passim

*Romer v. Evans*
  (1996) 517 U.S. 620 ............................................................... 17, 24

*Sail'er Inn v. Kirby*
  (1971) 5 Cal.3d 1 ........................................................................ 19

*Senate of the State of Cal. v. Jones*
  (1999) 21 Cal.4th 1142 ................................................. 32, 34, 38

*United States Steel Corp. v. Public Utilities Com.*
  (1981) 29 Cal.3d 60 .................................................................... 27

*West Virginia State Bd. of Ed. v. Barnette*
  (1943) 319 U.S. 624 .................................................................... 21

## Constitutions, Statutes, and Rules

Cal. Const., art. I, § 1 ............................................................ 18, 26

Cal. Const., art. I, § 7(a) ............................................................. 18

Cal. Const., art. I, § 7(b) ............................................................. 18

Cal. Const., art. I, § 8(b) ............................................................... 6

Cal. Const., art. II, § 10(d) ......................................................... 35

Cal. Const., art. VI, § 10 ............................................................... 2

Cal. Const., art. XVIII ......................................................... passim

Cal. Const., art. XVIII, § 1 ................................................... 12, 13

Cal. Const., art. XVIII, § 2 ................................................... 12, 13

Cal. Const., art. XVIII, § 3 ......................................................... 13

Cal. Const., art. XVIII, § 4 ......................................................... 13

Cal. Code Civ. Proc. § 1085 ......................................................... 4

Cal. Elec. Code § 336 ................................................................... 4

Cal. Elec. Code § 9004 ............................................................... 35

Cal. Elec. Code § 9005 ............................................................... 35

Cal. Elec. Code § 9007 ................................................................. 4

Cal. Elec. Code § 9035 ................................................................. 6

Cal. Elec. Code § 13314 ............................................................... 1

Cal. Rules of Court, rule 8.490 ................................................... 2

## Other Authorities

Browne, Report of the Debates in the Convention of California on the
    Formation of the State Constitution, in September and October
    (1850)............................................................................................ 21, 22

Karst, *Foreword: Equal Citizenship Under the Fourteenth Amendment*
    (1977) 91 Harv. L.Rev. 1............................................................ 18, 19, 20

Manheim & Howard, *Symposium on the California Initiative Process: A
    Structural Theory of the Initiative Power in California*
    (1998) 31 Loy. L.A. L.Rev. 1165............................................................ 14

Minger, *Putting the "Single" Back in the Single-Subject Rule: A Proposal
    for Initiative Reform in California*
    (1991) 24 U.C. Davis L.Rev. 879............................................................ 13

Mosk, Raven *and Revision*, 25 U.C. Davis L.Rev. 1................................... 18

Sears and Badgett, *The Impact of Extending Marriages to Same-Sex
    Couples on the California Budget* (Williams Institute June 2008) ......... 38

Roger Traynor, Amending the United States Constitution (1927)
    (unpublished Ph.D. thesis, University of California (Berkeley) ............. 31

Rachel A. Van Cleave, *A Constitution in Conflict: The Doctrine of
    Independent State Grounds And The Voter Initiative In California*
    (1993) 21 Hastings Const. L.Q. 95......................................................... 31

**TO THE HONORABLE JUSTICES OF THE SUPREME COURT OF CALIFORNIA:**

<u>PRELIMINARY AND JURISDICTIONAL STATEMENT</u>

1. By this original Verified Petition for Writ of Mandate, Petitioners Brian Bennett, Xavier Barrera, Audrey Koh and Equality California ("Petitioners") hereby seek a writ of mandate pursuant to California Elections Code Section 13314 directing Respondent, Secretary of State Debra Bowen, not to include Initiative 1298 (the "Proposed Initiative") in the ballot materials to be sent to the State Printer on or before August 11, 2008, not to submit the Proposed Initiative to the electors at the general election to be held on November 4, 2008, and to desist from any act in aid of the submission of the Proposed Initiative to the electors at that election. Petitioners also request this Court to issue an interim stay restraining Respondent from taking these actions pending the outcome of this Petition.

2. This petition is brought on the grounds that: (a) the Proposed Initiative is invalid because it is a proposed constitutional revision, not a proposed constitutional amendment and, as such, the California Constitution provides that it may not be enacted by initiative and (b) the description of the Proposed Initiative in the petitions that were circulated for signature was materially misleading and materially misstated the effect of the Proposed Initiative to the electors signing the petitions to qualify the measure for the ballot.

3. Petitioners have no other plain, speedy or adequate remedy at law. There are no administrative or other proceedings available to compel the Proposed Initiative to be deleted from the ballot. California Elections Code Section 13314 specifically provides a Writ of Mandate as the exclusive remedy for the violations alleged herein.

1

4. Petitioners respectfully invoke the original jurisdiction of this Court pursuant to California Constitution, Article VI, Section 10; California Code of Civil Procedure Section 1085; and Rule 8.490 of the California Rules of Court. Petitioners invoke that jurisdiction in light of the fact that the time available between now and the submission of the Proposed Initiative to the state printer (on or before August 11, 2008) is insufficient to allow full and adequate consideration of the issues raised through this Petition by the Superior Court or the Court of Appeal. This Petition presents no questions of fact for the Court to resolve in order to issue the relief sought.

5. The Court should exercise its original jurisdiction for the additional reason that the issues presented by this case are of great public importance. As discussed more fully in the accompanying Memorandum of Points and Authorities, these issues involve the prohibition on submitting to the voters an initiative that is a revision of the California Constitution or that was described in petitions circulated for signature in a materially misleading way. It is in the public interest for these issues to be addressed in advance of the November 4, 2008 election in order to avoid a waste of public and private resources and in order to provide certainty regarding the marriage rights of gay and lesbian couples in California.

<u>THE PARTIES</u>

6. Petitioner Brian Bennett is a registered voter in the State of California and a resident of the City of Long Beach, California.

7. Petitioner Xavier Barrera is a registered voter in the State of California and a resident of the City and County of San Francisco, California.

8. Petitioner Audrey Koh is a registered voter in the State of California and a resident of the City of San Francisco, California

2

9. Petitioner Equality California is an organization that represents its members in this action. Equality California's members include registered voters in every county in the State of California.

10. Respondent Debra Bowen is the Secretary of State of the State of California. It is Respondent's legal duty, among other things, to prepare the state ballot pamphlet, to cause adequate numbers of ballot pamphlets to be printed, to disseminate the state ballot pamphlet, to certify and declare the result of all matters submitted to vote by initiative filed in her office, and to make official declaration of the vote upon all initiatives. Respondent is the custodian of the laws of the State of California.

11. Real parties in interest Dennis Hollingsworth, Gail J. Knight, Martin F. Gutierrez, Hak-Shing William Tam, and Mark A. Jansson ("Proponents") are the proponents of the Proposed Initiative.

12. Petitioners are informed and believe, and on such information and belief allege, that, unless directed otherwise by this Court, Respondent intends to cause the Proposed Initiative to be submitted to and published by the State Printer, and to cause the Proposed Initiative to be submitted to voters in the November 4, 2008 general election.

## FACTS

13. On or about October 1, 2007, after this Court had granted review in *In re Marriage Cases*, Case No. S147999, and withdrawn the decision of the Court of Appeal in that case, Proponents submitted to the Attorney General of California a draft initiative in the form of a proposed constitutional amendment. Proponents requested preparation of a title and summary of the chief purpose and points of their proposed initiative measure pursuant to Elections Code section 9002. (See Petitioners' Request for Judicial Notice, Exh. 1.)

3

14. On information and belief, the Attorney General referred the proposed initiative to the Department of Finance and the Joint Legislative Budget Committee for preparation of a fiscal analysis of any increase or decrease in revenues or costs to state or local governments, or whether a substantial net change in state or local finances would result if the Proposed Initiative were adopted.

15. On November 14, 2007, the California Legislative Analyst Office sent a letter to the California Attorney General setting forth the above fiscal analysis pursuant to Elections Code section 9005. This letter stated that "The measure would have no fiscal effect on state or local governments. This is because there would be no change to the manner in which marriages are currently recognized by the state." (See Petitioners' Request for Judicial Notice, Exh. 2.)

16. On information and belief, following receipt of the fiscal analysis, the Attorney General completed preparation of the title and summary and sent copies to the Proponents, the Senate and the Assembly, and the Secretary of State pursuant to Elections Code sections 336 and 9007 on November 29, 2007. (See http://www.sos.ca.gov/elections/ elections_j.htm.) By November 14, 2007, all briefs had been filed with this Court in *In re Marriage Cases*.

17. Upon receipt of the official title and summary, the Proponents were permitted to, and did begin to, circulate petitions in an effort to gather a sufficient number of signatures to qualify the Proposed Initiative for the November 4, 2008 ballot. The Proponents continued to gather signatures after the scheduling of oral argument to this Court in *In re Marriage Cases* as well as after the March 4, 2008 oral argument. Pursuant to Article VI, section 19 of the California Constitution, once the case was submitted on March 4, 2008, a decision in *In re Marriage Cases* was expected to be issued on or before June 2, 2008.

4

18. Pursuant to Elections Code sections 9008 and 9014, each page of the petitions on which signatures appeared was required to contain a copy of the Attorney General's summary. Petitions that were circulated for signature contained the summary, including its statement that "there would be no change to the manner in which marriages are currently recognized by the state" and its statement that "the measure would have no fiscal effect on state or local governments." (See Petitioners' Request for Judicial Notice, Exh. 3.) Specifically, each petition contained the following language:

> Limit on Marriage. Constitutional Amendment.
>
> Amends the California Constitution to provide that only marriage between a man and a woman is valid or recognized in California. Summary of estimate by Legislative Analyst and Director of Finance of fiscal impact on state and local government: The measure would have no fiscal effect on state or local governments. This is because there would be no change to the manner in which marriages are currently recognized by the state. (Initiative 07-0068.)

19. The statement that there would be no change in the manner in which marriages are currently recognized by the state significantly failed to communicate the effect of the Proposed Initiative to the electors signing the petitions to qualify the measure for the ballot and was materially misleading because, at the time the petitions were circulated, review had already been granted in *In re Marriage Cases*, the Court of Appeal decision had been withdrawn, and briefing had been completed. At a minimum, the petitions should have advised electors considering signing the petitions that it was not clear whether or not there would be a change in the manner in which marriages were recognized by the state because that issue was pending before the California Supreme Court. In addition, the statement that the measure would have no fiscal effect on state or local governments significantly failed to communicate the effect

5

of the Proposed Initiative to the electors signing the petitions and was materially misleading because it was not then known whether or not the manner in which marriages were recognized by the state would be changed by the Proposed Initiative, which would depend upon how this Court ruled in *In re Marriage Cases*.

20. As an initiative that purported to propose a constitutional amendment, the petition required a number of signatures equal to at least 8% of the total votes cast for Governor at the last gubernatorial election. (Cal. Const., art. II, § 8(b); Elec. Code § 9035.) The required number of valid signatures necessary to qualify the Proposed Initiative for the ballot was 694,354.

21. On or about April 24, 2008, Proponents submitted petitions containing in excess of 694,354 signatures in support of the Proposed Initiative to county election officials.

22. On May 15, 2008, this Court issued its opinion in *In re Marriage Cases* (2008) 43 Cal.4th 757 [2008 WL 2051892, 2008 Cal. LEXIS 5247]. That decision reversed the prior judgment of the Court of Appeal and held that the portion of Family Code section 300 that limited marriage to a man and a woman, and section 308.5 in its entirety, are unconstitutional in that they violate the rights of equal protection, privacy and due process of gay and lesbian individuals and couples under the California Constitution. The Court further ordered that gay and lesbian couples must be allowed to marry to the same extent as different-sex couples.

23. On June 2, 2008, the Secretary of State issued a press release announcing that the Proposed Initiative had received a sufficient number of signatures to qualify for the November 4, 2008 ballot and that her office had certified the Proposed Initiative for inclusion on the ballot for that election. (See http://www.sos.ca.gov/executive/press_releases/2008/DB08_068.pdf)

24. In light of this Court's decision in the *Marriage Cases*, the description of the Proposed Initiative, as contained in the petitions circulated by Proponents, was materially misleading in that it stated that the Proposed Initiative would not change the manner in which marriages are currently recognized in the State of California whereas, now that gay and lesbian couples are being allowed to marry in California, enactment of the Proposed Initiative would result in a substantial and fundamental change to the manner in which marriages currently are recognized in California.

## CLAIMS ASSERTED

25. It is impermissible to submit the Proposed Initiative to voters at the November 4, 2008 general election because the initiative power does not permit the enactment of a constitutional revision, as opposed to a constitutional amendment.

26. The Proposed Initiative constitutes a proposed revision of the California Constitution because, if enacted, it would alter the underlying principles on which the California Constitution is based and make far-reaching changes in the nature of our basic government plan, by severely compromising the core constitutional principle of equal citizenship, depriving a vulnerable minority of fundamental rights and inscribing discrimination based on a suspect classification into the Constitution, and by destroying the courts' quintessential power and role of protecting minorities and enforcing the guarantee of equal protection under the laws, including the application of heightened judicial scrutiny to laws that discriminate based on suspect classifications or that deny fundamental rights.

27. Even were the Proposed Initiative not a proposed revision of the California Constitution, it could not be submitted to the voters on the November 4, 2008 ballot. It is impermissible to submit an initiative to voters in this state based on petitions in which the title and summary of

7

the initiative set forth in such petitions significantly fails to communicate the effect of the Proposed Initiative to the electors signing the petitions to qualify the measure or are materially misleading. The Proposed Initiative as submitted to California voters by Proponents failed accurately to communicate the effect of the Proposed Initiative to the electors signing the petitions to qualify the measure and was materially misleading in its statements regarding the effect that enactment of the Proposed Initiative would have upon California law and its fiscal effect on state and local governments.

28. Petitioners are informed and believe and thereon allege that issuance of a writ of mandate directing Respondent not to include the Proposed Initiative in the ballot materials to be sent to the State Printer on or before August 11, 2008 will not substantially interfere with the printing and distribution of the ballot pamphlet.

29. Petitioners and the voters of the State of California will suffer irreparable injury and damage unless this Court intervenes and directs Respondent not to include the Proposed Initiative in the ballot materials to be sent to the State Printer, not to submit the Proposed Initiative to the electors at the general election to be held on November 4, 2008, and to desist from any act in aid of the submission of the Proposed Initiative to the electors at that election.

30. Petitioners believe that there is no requirement in this circumstance to plead demand and refusal.   Without prejudice to that position, Petitioners allege that any demand to Respondent to act or refrain from taking action as described in Paragraph 29 would have been futile if made, and that only a court order will cause Respondent to refrain from taking those actions.

## RELIEF SOUGHT

Wherefore, Petitioners request the following relief:

1. That this Court forthwith issue an alternative writ of mandate directing Respondent

   a. not to include the Proposed Initiative in the ballot materials to be sent to the State Printer on or before August 11, 2008, not to submit the Proposed Initiative to the electors at the general election to be held on November 4, 2008, and to desist from any act in aid of the submission of the Proposed Initiative to the electors at that election or, in the alternative,

   b. to show cause before this Court at a specified time and place why Respondent has not done so;

2. That, upon Respondent's return to the alternative writ, a hearing be held before this Court at the earliest practicable time so that the issues involved in this Petition may be adjudicated promptly;

3. That, pending such return and hearing, the Court grant an interim stay, prohibiting Respondent from causing ballot materials containing the Proposed Initiative to be published;

4. That, following the hearing upon this Petition, the Court issue a peremptory writ of mandate directing Respondent not to submit the Proposed Initiative to the electors at the general election to be held on November 4, 2008 and to desist from any act in aid of the submission of the Proposed Initiative to the electors at that election;

5. That Petitioners be awarded their attorneys' fees and costs of suit; and

9

6. For such other and further relief as the Court may deem just and equitable.

June 20, 2008

STEPHEN V. BOMSE
SCOTT A. WESTRICH
CHRISTOPHER F. STOLL
ELISABETH R. BROWN
DAVID J. SIMON
Heller Ehrman LLP

SHANNON P. MINTER
VANESSA H. EISEMANN
MELANIE ROWEN
CATHERINE SAKIMURA
National Center for Lesbian Rights

JON W. DAVIDSON
JENNIFER C. PIZER
Lambda Legal Defense and
Education Fund, Inc.

ALAN L. SCHLOSSER
ELIZABETH O. GILL
ACLU Foundation of Northern California

MARK ROSENBAUM
PETER J. ELIASBERG
CLARE PASTORE
ACLU Foundation of Southern California

DAVID C. CODELL
Law Office of David C. Codell

By: _Stephen V. Bomse / CFS_
Stephen V. Bomse

Attorneys for Petitioners Brian Bennett,
Xavier Barrera, Audrey Koh and Equality
California

10

<u>VERIFICATION</u>

I, Audrey Koh, declare:

I am a petitioner in the above-entitled action. I have read the foregoing Petition for Writ of Mandate and know the contents thereof. I am informed and believe and based on said information and belief allege that the contents are true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June __19__, 2008 at __S.F__, California

Signed: _____

11

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION FOR EXTRAORDINARY RELIEF, INCLUDING WRIT OF MANDATE AND REQUEST FOR STAY

### I.    The Writ Should Be Granted Because The Proposed Initiative Would Revise, Not Amend, The California Constitution.

For the reasons stated below, this Court should hold that the Proposed Initiative constitutes an attempted revision, not an amendment, of our state Constitution and therefore must be subject to the deliberative process mandated by sections 1 and 2 of article XVIII of the California Constitution.  Where a proposed change to our state Constitution seeks to elaborate or improve upon existing constitutional principles, it can be enacted through the initiative process.  By contrast, where a measure seeks to change the "underlying principles" upon which the Constitution is premised (*Livermore v. Waite* (1894) 102 Cal. 113, 117-119), or where the initiative would make "far reaching changes in the nature of our basic government plan" (*Amador Valley Joint Union High School District v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 223 (hereafter *Amador Valley*); *Raven* v. *Deukmejian* (1990) 52 Cal.3d 336, 351-352), it must follow a different, more deliberative procedure, requiring a vote of two-thirds of both houses of the Legislature before being submitted either to the voters or to a constitutional convention.  Here, the Proposed Initiative constitutes a proposed revision rather than an amendment because: (1) it seeks to alter basic structural principles of our constitutional system, including the principles of equal protection and equal citizenship, the protections afforded to human dignity and personhood by the fundamental rights to privacy and due process encompassed in the right to marry, and the premise that fundamental human rights inherently belong to all persons; and (2) it seeks to limit the quintessential power and role of the courts in protecting minorities and enforcing the guarantee of equal protection under

12

the laws, including the application of heightened judicial scrutiny to laws that discriminate based on suspect classifications or that deny fundamental rights.

The Proponents of the Proposed Initiative did not follow the mandatory process for seeking to revise the California Constitution. Accordingly, Petitioners are entitled to the requested writ to prevent the Proposed Initiative from appearing on the November 4, 2008 ballot.

## A. Revisions Of The California Constitution Cannot Be Accomplished Through An Initiative.

While the voters may *amend* the Constitution by an initiative approved by a simple majority of voters (Cal. Const., art. XVIII, § 3), *revisions* require a vote of two-thirds of both houses of the Legislature either to submit the revision to the voters (art. XVIII, § 1) or to convene a constitutional convention (art. XVIII, § 2). In either case, the revision then requires ratification by popular vote. (Cal. Const., art. XVIII, § 4; see, e.g., *Raven v. Deukmejian, supra,* 52 Cal.3d at p. 349 [discussing different processes for adoption of amendments and revisions]; *Amador Valley, supra,* 22 Cal.3d at pp. 221-22 [same].)

The different procedures for revising as opposed to amending the Constitution reflect the understanding that changes affecting the "underlying principles" of the Constitution require "more formality, discussion and deliberation than is available through the initiative process." (*Legislature v. Eu* (1991) 54 Cal.3d 492, 506 [citing *Raven, supra,* 52 Cal.3d at pp. 349-350].) "[I]nitiatives, unlike legislation, do not generally undergo a 'systematic refining process, in which facts are collected, assumptions challenged, and analysis performed.'" (Minger, *Putting the "Single" Back in the Single-Subject Rule: A Proposal for Initiative Reform in California* (1991) 24 U.C. Davis L.Rev. 879, 886 [citation omitted].) Requiring approval of two-thirds of both houses before voters can approve

13

a revision to the Constitution ensures that substantive changes affecting fundamental constitutional principles are not adopted by a simple majority of the popular vote without adequate scrutiny and deliberation. (See generally Manheim & Howard, *Symposium on the California Initiative Process: A Structural Theory of the Initiative Power in California* (1998) 31 Loy. L.A. L.Rev. 1165, 1221-1222.)

This Court has stated that "our analysis in determining whether a particular constitutional enactment is a revision or an amendment must be both quantitative and qualitative in nature." (*Amador Valley, supra,* 22 Cal.3d at p. 223.) "Substantial changes in either respect could amount to a revision." (*Raven v. Deukmejian, supra,* 52 Cal.3d at p. 350.) The "quantitative" analysis focuses on the number and extent of the provisions that are changed or added by the initiative. (*Amador Valley, supra,* at p. 223; see also *McFadden v. Jordan* (1948) 32 Cal.2d 330, 345-346.) Regardless of the number and extent of the changes, however, a "qualitative" analysis is also necessary, because "even a relatively simple enactment may accomplish such far reaching changes in the nature of our basic governmental plan as to amount to a revision." (*Amador Valley, supra,* at p. 223.)

In *Raven v. Deukmejian, supra,* the Court held that a proposed ballot initiative was a constitutional revision rather than an amendment. In relevant part, the proposition at issue there would have added a provision to the California Constitution stating that the "Constitution shall not be construed by the courts to afford greater rights to criminal defendants than those afforded by the Constitution of the United States." (52 Cal.3d at p. 350.) The Court held that the *qualitative* effect of that measure was significant because the new constitutional section "would vest all judicial *interpretive* power, as to fundamental criminal defense rights, in the United States Supreme Court." (*Id.,* at p. 352 [original italics].) "From a qualitative standpoint," the Court concluded, "the effect of [that change] is

14

devastating." (*Ibid.*) Specifically, the Court found that the purported
amendment implicated a number of "fundamental constitutional rights,"
including "the rights to due process of law, equal protection of the law,
assistance of counsel, and avoidance of cruel and unusual punishment."
(*Ibid.*) Emphasizing that the California Supreme Court sits "as a court of
last resort [in interpreting state constitutional guaranties]," the Court
concluded that the initiative "substantially alters the preexisting
constitutional scheme or framework heretofore extensively and repeatedly
used by courts in interpreting and enforcing state constitutional
protections." (*Id.*, at p. 354 [citation omitted, alteration in original].) In
short, the initiative would have altered the "underlying principles" on
which the Constitution rests, both by eliminating or limiting a number of
fundamental constitutional guarantees for criminal defendants, and by
stripping state courts of their "authority to exercise independent judgment
in construing a wide spectrum of important rights under the state
Constitution." (*Id.*, at p. 355.)[1]

By contrast, in *Legislature v. Eu, supra*, this Court held that
Proposition 140, an initiative establishing legislative term limits, did not
effect a constitutional revision because the legislative process contemplated
by the Constitution was unaffected. (54 Cal.3d at 508.) "Proposition 140
on its face does not affect either the structure or foundational powers of the
Legislature, which remains free to enact whatever laws it deems
appropriate." (*Id.*, at p. 509.) The Court distinguished the case from

---

[1] This Court distinguished two earlier cases in which it had rejected
revision challenges because "neither case involved a broad attack on state
court authority to exercise independent judgment in construing a wide
spectrum of important rights under the state Constitution." (*Raven v.
Deukmejian, supra*, 52 Cal.3d at p. 35; see *In re Lance W.* (1985) 37 Cal.3d
873 [initiative that limited the exclusionary rule was not a revision]; *People
v. Frierson* (1979) 25 Cal.3d 142 [initiative regarding death penalty was not
a revision because courts retained sufficient review over death penalty
cases].)

15

*Raven*, "in which [the Court] struck down a provision that would have fundamentally changed and subordinated the constitutional role assumed by the judiciary in the governmental process." (*Id.*, at pp. 508-509.) In *Eu*, on the other hand, the

> basic and fundamental structure of the Legislature as a representative branch of government is left substantially unchanged by Proposition 140. Term and budgetary limitations may affect and alter the particular legislators and staff who participate in the legislative process, but the process itself should remain essentially as previously contemplated by our Constitution.

(*Id.*, at p. 508.)

As explained below, like the proposition at issue in *Raven* but unlike the one at issue in *Eu*, the Proposed Initiative *would* affect the "underlying principles" on which the California Constitution is based and the "nature of our basic government plan." The Proposed Initiative thus amounts to an attempted constitutional revision rather than a mere amendment.

**B.     The Proposed Initiative Is A Revision, Not An Amendment, Because It Seeks To Inscribe Discrimination Based On A Suspect Classification Into The Constitution And To Destroy The Courts' Quintessential Role Of Protecting Minorities Against The Deprivation Of Equal Protection And Other Fundamental Rights.**

The Proposed Initiative seeks to deny fundamental rights to a minority group based on a classification this Court has deemed to be suspect under the current equal protection requirements of the California Constitution. In the *Marriage Cases* (2008) 43 Cal.4th 757 [2008 WL 2051892, 2008 Cal. LEXIS 5247],[2] this Court held that the California

---

[2] For the Court's convenience, due to the recent publication of the decision, this Memorandum of Points and Authorities provides the slip opinion page references to citations to *In re Marriage Cases*.

Constitution subjects classifications based on sexual orientation to strict scrutiny and that, by barring same-sex couples from marriage, the prior marriage statutes impermissibly violated equal protection by denying gay and lesbian individuals and couples the fundamental rights encompassed by the right to marry, including the rights to privacy, personal autonomy, freedom of intimate association, and due process. (*In re Marriage Cases*, *supra*, at pp. 96-97, 118-119.) The goal of the Proposed Initiative is not merely to *permit* the resumption of that prior discrimination, but to *require* it as a matter of constitutional decree. Accordingly, as discussed in more detail in Section I(B)(2) below, the Proposed Initiative is a revision rather than an amendment because it seeks to alter core principles of our state Constitution, including the fundamental guarantee of equal protection as well as other fundamental rights. If enacted, the Proposed Initiative would also fundamentally alter this Court's quintessential role in enforcing the guarantee of equal protection to protect vulnerable minorities and to ensure that our Constitution "neither knows nor tolerates classes among citizens." (*Romer v. Evans* (1996) 517 U.S. 620, 633 [citing with approval Justice Harlan's dissent in *Plessy v. Ferguson* (1896) 163 U.S. 537, 559].) Like Proposition 115 in *Raven*, the Proposed Initiative would affect the "underlying principles" on which the California Constitution is based and tamper with the "nature of our basic government plan." Accordingly, it is an attempted constitutional revision rather than a mere amendment, and it may not be enacted through the initiative process.

> **1. Equal protection is a basic principle of our constitutional system.**

Equal protection is not merely a discrete constitutional guarantee; it is a transcendent principle that is deeply woven into the fabric of our entire Constitution. The Proposed Initiative seeks to abrogate that principle for gay and lesbian individuals and couples, as well as to deprive them of the

17

fundamental rights encompassed by marriage. Because the principle of equal protection is so central to our constitutional system, the impact of that Proposed Initiative on our basic government plan would be profound. The requirement of equal protection is embodied in the Declaration of Rights, set forth in article I of the California Constitution. The very first words of the California Constitution declare not merely the existence of rights such as liberty, happiness, and privacy, but declare those rights to be "inalienable" and to exist "by nature" in the "free and independent" citizens of this state. (Cal. Const., art. I, § 1.) In addition, two provisions of article I expressly mandate equality under the law. Article I, section 7(a) declares that: "A person may not be ... denied equal protection of the laws." And Article I, section 7(b) provides that: "A citizen or class of citizens may not be granted privileges or immunities not granted on the same terms to *all* citizens" (italics added).[3]

As Professor Kenneth Karst has rightly emphasized, the requirement of equal protection is not merely a "rule for decision" but "an *informing principle*" that permeates every facet of our constitutional system. (Karst, *Foreword: Equal Citizenship Under the Fourteenth Amendment* (1977) 91 Harv. L.Rev. 1, 40, 42 [hereafter Karst] [italics added].) The requirement of equal protection embodies and expresses "a principle of equal citizenship" that "presumptively guarantees to each individual the right to be treated by the organized society as a respected, responsible, and participating member." (*Id.*, at p. 4.) That principle requires the government to "treat each individual as a person, one who is worthy of respect, one who 'belongs.'" (*Id.*, at p. 6.) Therefore, "[a] society devoted

---

[3] It bears emphasis that, in contrast to the federal equal protection clause, which was added to the federal Constitution by amendment, the state constitutional equal protection clause has been part of the California Constitution from its inception. (See Mosk, Raven *and Revision* (1991) 25 U.C. Davis L.Rev. 1, 13 ["the Declaration of Rights of article 1 is a fundamental part of the state charter"].)

18

to the idea of equal citizenship . . . will repudiate those inequalities that impose the stigma of caste and thus belie the principle that people are of equal ultimate worth." (*Ibid.* [internal quotation marks and citations omitted].)

The primacy of equal citizenship as a constitutional principle underscores the importance of the suspect classification doctrine and of the courts' role in protecting minority rights. In our constitutional system, courts apply the most rigorous level of judicial scrutiny to classifications that threaten the idea of equal citizenship. The Constitution does not tolerate such classifications, in large part, because they "impose the stigma of caste" and thereby brand some groups as less than equal. (Karst, *supra*, 91 Harv. L.Rev. at p. 6.) As this Court has recognized, underlying all suspect classifications is "the stigma of inferiority and second class citizenship associated with them." (*Sail'er Inn v. Kirby* (1971) 5 Cal.3d 1, 19.) Suspect classifications, even "irrespective of the nature of the interest implicated," "in and of themselves are an affront to the dignity and self-respect of the members of the class set apart for disparate treatment." (*Molar v. Gates* (1979) 98 Cal.App.3d 1, 16.) "Such classifications . . . violate 'the most fundamental interest of all, the interest in being treated by the organized society as a respected and participating member.'" (*Ibid* [quoting Karst, *supra*, at p. 33].)

The primacy of equal citizenship as a constitutional principle also helps to illuminate why certain interests are deemed "fundamental" and entitled to heightened judicial protection. Such interests are protected, at least in significant part, because they bear upon a person's entitlement to equal dignity, respect, and participation in society—that is, upon "the presumptive right to be treated as a person, one of equal worth among citizens." (Karst, *supra*, 91 Harv. L.Rev. at p. 32.) In *People v. Ramirez* (1979) 25 Cal.3d 260, for example, this Court held that there is an "important due process interest in recognizing the dignity and worth of the

19

individual by treating him as an equal, fully participating and responsible member of society." (*Id.*, at p. 267.) "For government to dispose of a person's significant interests without offering him a chance to be heard is to risk treating him as a nonperson, an object, rather than a respected, participating citizen." (*Id.*, at pp. 267-268 [quoting Karst, *supra*, at p. 30].) Thus, the Court held that even when providing a hearing will have no practical effect, "due process may nevertheless require that certain procedural protections be granted the individual in order to protect important dignitary values." (*Ramirez*, *supra*, at p. 268.)

Moreover, this Court has made clear that the fundamental rights protected by the due process and privacy provisions of the California Constitution incorporate, as a core element, a requirement of government neutrality and equal treatment. For example, in *Com. to Defend Reproductive Rights v. Myers* (1981) 29 Cal.3d 252, 284, this Court held that the state could not use "discriminatory financing" to "indirectly nullify" the fundamental right to procreative choice for poor women. As the Court explained, in determining whether a challenged law impermissibly restricts a fundamental right in a "discriminatory manner," the Court's analysis "closely parallels" the requirements of equal protection. (*Id.* at p. 276, fn. 22.) Similarly, in the *Marriage Cases*, this Court held that a requirement of "equal dignity and respect" is "one of the core elements embodied in the state constitutional right to marry," independent of the equal protection clause. (*In re Marriage Cases*, *supra*, at p. 101.) The Court held that, by definition, a fundamental right belongs equally to all; thus, it may not be defined "in so narrow a fashion that the basic protections afforded by the right are withheld from a class of persons . . . who historically have been denied the benefit of such rights." (*Id.* at p. 71.) "In light of the fundamental nature of the substantive rights embodied in the right to marry," the Court held that "the California Constitution

properly must be interpreted to guarantee this basic civil right to *all* individuals and couples[.]" (*Id.* at p. 66.)

The principle of equal citizenship therefore underscores the importance of the courts' role in enforcing the requirement of equal protection in order to protect minorities against the deprivation of equal protection and other fundamental rights. The constitutional rights at stake in this case—equal protection, privacy, and due process—are among the most fundamental rights embodied in our Constitution. The object of those constitutional rights is, and always has been, the protection of minorities from oppression by the majority. As this Court aptly observed in the *Marriage Cases*, "the expansive protections of our constitution, such as the due process clause, were drafted with the knowledge that 'times can blind us to certain truths that and later generations can see that laws once thought necessary and proper in fact serve only to oppress.'" (*In re Marriage Cases, supra,* at p. 116 [quoting *Lawrence v. Texas* (2003) 539 U.S. 558, 579].) As the Court further explained:

> The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts.

(*In re Marriage Cases, supra,* at p. 113 [quoting *West Virginia State Bd. of Ed. v. Barnette* (1943) 319 U.S. 624, 638].) Indeed, those same principles motivated the participants in California's original constitutional convention. (See Browne, Report of the Debates in the Convention of California on the Formation of the State Constitution, in September and October, 1849 (1850) p. 409 ["my object is to provide for the protection of minorities—a principle which is so generally recognized under our system of government" (statement of Mr. Price)]; *id.* at p. 21 ["The majority of any community is the party to be governed; the restrictions of law are interposed between them and the weaker party; they are to be restrained

from infringing upon the rights of the minority." (statement of Mr. Gwin)]; *id.* at p. 309 ["the object of the Constitution was to protect the minority" (statement of Mr. Botts)].)

As explained further below, the Proposed Initiative represents a direct assault not only upon those core principles but upon the role of the courts in enforcing them. The Proposed Initiative not only would strip gay and lesbian people of equal protection, privacy, and due process, it also would deprive the courts of any role in safeguarding those fundamental constitutional rights for a group that historically faced "widespread disparagement" and that the Court has held is a constitutionally protected class. (*In re Marriage Cases, supra,* at p. 11.)

## 2. The Proposed Initiative is a revision rather than an amendment because it would severely compromise the core constitutional principle of equal citizenship.

The Proposed Initiative is a revision rather than a mere amendment of our state Constitution because, if enacted, it would eviscerate the principle of equal citizenship for gay and lesbian people and strip the courts of their authority to enforce basic constitutional guarantees. To the best of petitioners' knowledge, that proposal is unlike any other that has been enacted or even considered by California voters since the initiative process was first adopted. Although couched in deceptively terse language, the implications of the Proposed Initiative are profound. In seeking to deprive members of a group defined by a suspect classification of a fundamental right, the Proposed Initiative would severely compromise a basic structural element of our Constitution—the principle that all laws must treat similarly situated people equally and that all persons, including minority group members, are entitled to equal dignity and respect. As a result, if enacted, the Proposed Initiative would destabilize our Constitution and our basic government plan in a manner that far transcends its immediate impact on a

22

particular group, by establishing that *any* group may be deprived of equal protection and fundamental rights through a simple majority vote. Accordingly, this Court should hold that the Proposed Initiative seeks a revision of the California Constitution, not an amendment, and therefore may be accomplished (if at all) only through the more deliberative process required for revisions under Article XVIII.   That conclusion follows inexorably from the following considerations.

The California Constitution was adopted in order to protect vulnerable minorities; however, for the first time in our state's history, the Proposed Initiative would use the Constitution to mandate, rather than prevent, *unequal* government treatment of such a group.  Such a major and unprecedented change would constitute a revision, not an amendment, to the Constitution.  In our constitutional tradition, it would be difficult to imagine a proposed measure that is more deeply antithetical to the core principle of equal protection than inscribing discrimination based on a suspect classification into the Constitution.   By definition, a suspect classification is based on a personal characteristic that bears no relationship to an individual's ability to perform or contribute to society and thus provides no basis for unequal treatment. (*Marriage Cases*, *supra*, at p. 99.) In the *Marriage Cases*, this Court found that, like women and racial minorities, gay and lesbian people "historically [have] been subjected to invidious and prejudicial treatment," and yet "society now recognizes that [being gay] . . . bears no relationship to the individual's ability to perform or contribute to society." (*Ibid*.) Accordingly, the Court held that laws that discriminate based on sexual orientation must be subjected to strict scrutiny, and that "gay individuals are entitled to the same legal rights and the same respect and dignity afforded all other individuals." (*Id*. at p. 67.) In stark contrast, the Proposed Initiative deliberately seeks to stigmatize gay and lesbian people as outsiders by formally declaring their separation from other citizens.   In light of that extraordinary purpose and the

23

significant constitutional change it seeks to accomplish, the Court should hold that the Proposed Initiative is a revision, not an amendment, because it seeks to alter a basic, foundational principle (namely, equality before the law) upon which the structure of the entire Constitution rests.

The very novelty of that proposal reinforces its fundamental incompatibility with the foundational principles of our Constitution. As the United States Supreme Court observed in *Romer v. Evans*, *supra*, 517 U.S. 620—a case that struck down a provision of the Colorado Constitution enacted by initiative that sought to bar gay and lesbian people from the protection of anti-discrimination laws—"[i]t is not within our constitutional tradition to enact laws of this sort. Central ... to the idea of the rule of law ... is the principle that government and each of its parts remain open on impartial terms to all who seek its assistance." (See *id.* at p. 623.) As the Court noted, "[r]espect for this principle [of equal protection] explains why laws singling out a certain class of citizens for disfavored legal status or general hardships are rare." (*Romer*, at p. 633.) Just as the provision struck down in *Romer* "confound[ed] th[e] normal process of judicial review" (*ibid*), the Proposed Initiative likewise confounds "our constitutional tradition" and "the rule of law." (*Ibid.*)

In *Livermore*, *supra*, this Court pointedly juxtaposed the "underlying principles" of the Constitution that are meant to be of a "permanent and abiding nature" with a mere "amendment" which "implies ... an addition or change within the lines of the original instrument *as will effect an improvement, or better carry out the purpose for which it was framed.*" (102 Cal. at p. 119 [emphasis added].) That is a telling articulation. Nothing about the Proposed Initiative can fairly be said to involve "an improvement" on the protection of the fundamental constitutional principles identified in the *Marriage Cases*, let alone to further the cause of equality. To the contrary, its avowed purpose is to withdraw the protection of the laws, and of rights otherwise deemed "inalienable," from a particular

24

group of citizens whom this Court has identified as being in need of heightened legal protection because of the long history of discrimination against them. Those kinds of changes in no way can be said to "carry out the purpose" for which our Constitution was framed.

Rather, by deliberately stripping gay and lesbian people of fundamental rights, the Proposed Initiative cuts directly at the very notion of equal personhood, and the corresponding entitlement to be treated "as an equal, fully participating ... member of society," that constitute the most bedrock foundation of our Constitution. (*People v. Ramirez*, *supra*, 25 Cal.3d at p. 267.) Under the provisions of article XVIII, such a profound change in our constitutional system cannot be accomplished through an amendment. Under the California Constitution, the right to marry "embodies fundamental interests of an individual that are protected from abrogation or elimination by the state" under the privacy and due process provisions of article I. (*Marriage Cases*, *supra*, at pp. 62-63.) The constitutional rights at stake here—privacy (including the right to personal autonomy and freedom of intimate association) and due process—are among the most fundamental rights embodied in our Constitution. (See, e.g., *Conservatorship of Valerie N.* (1985) 40 Cal.3d 143, 161 ["The right to marriage and procreation are now recognized as fundamental, constitutionally protected interests. . . . These rights are aspects of the right of privacy which . . . is express in section 1 of article I of the California Constitution which includes among the inalienable rights possessed by all persons in this state, that of 'privacy.'"].) Accordingly, in the *Marriage Cases*, this Court held that "[i]n light of the fundamental nature of the substantive rights embodied in the right to marry—and their central importance to an individual's opportunity to live a happy, meaningful, and satisfying life as a full member of society—the California Constitution properly must be interpreted to guarantee this basic civil right to *all*

25

individuals and couples, without regard to their sexual orientation."
(*Marriage Cases*, *supra*, at p. 66 [italics in original].)

It confounds our constitutional tradition to single out particular
groups and seek to deprive them of fundamental rights guaranteed as
"inalienable" by the California Constitution. (See *Marriage Cases*, *supra*,
at p. 49.)[4]  Such a change would discard core "underlying principles" on
which the California Constitution rests and would alter our basic
governmental plan that equal protection, and other fundamental guarantees,
belong to all. In *Raven v. Deukmejian*, *supra*, the Court found that
Proposition 115 amounted to a revision because "fundamental
constitutional rights [were] implicated, including the rights to due process
of law [and] equal protection of the law." (52 Cal.3d at p. 352.) The Court
also relied on the fact that the initiative "unduly restrict[ed] judicial power"
and "substantially alter[ed] the preexisting constitutional scheme or
framework . . . used by courts in interpreting and enforcing state
constitutional protections." (*Id.* at pp. 353-354.) Those same concerns not
only exist, but are amplified, here. Under Article XVIII, it cannot be as
easy as securing a simple majority of the electorate to deprive a vulnerable
minority of equal protection, especially with regard to a fundamental right,
and to eliminate the role of the courts in protecting that most basic
constitutional guarantee. Rather, that is exactly the type of circumstance

---

[4]  The understanding that Article I, section 1's guarantee of
inalienable rights are part of the very foundation of our system of
government dates back to the earliest days of California's history as a state.
(See *Billings v. Hall* (1857) 7 Cal. 1, 6  [noting that the principle that
fundamental rights are inalienable, as articulated in Article I,  "is as old as
the Magna Charta," is "necessary to the existence of civil liberty and free
institutions" and "was not lightly incorporated into the Constitution of this
State"]; see also *Ex Parte Newman* (1858) 9 Cal. 502, 507-508 [concluding
that we have "a government of constitutional limitation" where certain
liberties are recognized as protected against "usurpations of the reserved
rights of the citizen"].)

26

where the safeguards of the revision process are essential "as a protection against improvident or hasty ... revision" of the Constitution.   (See *McFadden, supra*, 32 Cal.2d at p. 347.)

### 3.   The Proposed Amendment is a revision rather than an amendment because it would strip the courts of their authority to enforce basic constitutional guarantees.

The Proposed Initiative also fundamentally alters the role of the courts in enforcing equal protection and protecting other fundamental rights. By its very nature, equal protection has meaning and effect only as a universal and inalienable guarantee.  As Justice Scalia has noted, "What [protects us from oppressive laws] ... is the Equal Protection Clause, which requires the democratic society to accept for themselves and their loved ones what they impose on you and me." (*Cruzan v. Director, Mo. Dept. of Health* (1990) 497 U.S. 261, 300 (conc. opn. of Scalia, J.).)  If enacted, the Proposed Initiative would create an unprecedented breach of that universality, in a manner that would have significant and far-reaching consequences for all Californians, not just for those directly targeted by this measure.  As this Court has observed:

> [T]he framers of the Constitution knew, and we should not forget today, that there is no more effective practical guaranty against arbitrary and unreasonable government than to require that the principles of law which officials would impose upon a minority must be imposed generally. Conversely, nothing opens the door to arbitrary action so effectively as to allow those officials to pick and choose only a few to whom they will apply legislation and thus to escape the political retribution that might be visited upon them if larger numbers were affected.

*United States Steel Corp.* v. *Public Utilities Com.* (1981) 29 Cal.3d 603, 611-612, quoting *Railway Express v. New York* (1949) 336 U.S. 106.)  To ensure that this essential check on majority power is not lost, the ultimate

power to enforce equal protection for vulnerable minorities must remain with the judiciary. The decision to eliminate that check, and to remove that quintessential function from the courts, would alter "the nature of our basic government plan" (*Amador Valley*, *supra*, 22 Cal.3d at p. 223) even more profoundly than the measure addressed in *Raven*.

There is an important distinction to be drawn between an initiative that purports to restrict or eliminate a fundamental right or rights as a general matter and an initiative, such as the one at issue here, that purports to withdraw a fundamental right *from a particular class of citizens*. Thus, for example, it would be one thing for California voters to abolish freedom of speech in California and quite another to abolish the freedom of speech *of Catholics only*. Regardless of whether a particular right (for example, the right to speak, to practice one's religion, or to marry) should be recognized at all under the state Constitution, once such a right is recognized and is acknowledged as *fundamental* under the state Constitution, any attempt to withdraw that right from a particular group of people necessarily not only alters the fundamental nature of that right and the equality of all Californians, but also strips state courts of their authority to enforce the Constitution's equality guarantees. Whether to provide a right for all may be a proper subject of political activity, but the very point of equal protection is to ensure against rights being denied selectively to unpopular minorities. An essential feature of our system of government is that the courts must protect such groups by insisting on equal protection. (See *Bixby v. Pierno* (1971) 4 Cal.3d 130, 141 ["Probably the most fundamental [principle of the separation of powers doctrine] lies in the power of courts . . . to preserve constitutional rights, whether of individual or minority, from obliteration by the majority."].)

Thus, while it might appear to some that abolishing a fundamental right only for a particular group based on a suspect classification is a less significant alteration of our Constitution than abolishing it for all might be,

the contrary is true. If the people are asked to eliminate a fundamental right completely, they must take into account the cost *to them* of doing so. That self-interest acts as an important inhibition against improvident action. Where, however, the proposal is simply to withdraw a fundamental right *from someone else*, no such inhibition obtains. The removal of that inhibition constitutes a significant alteration in the nature of our basic governmental plan.

As Justice Kennard aptly noted in her concurring opinion in the *Marriage Cases*, "[t]here is a reason why the words 'Equal Justice Under Law' are inscribed above the entrance to the courthouse of the United States Supreme Court. Both the federal and the state Constitutions guarantee to all the 'equal protection of the laws' ..., and it is the particular responsibility of the judiciary to enforce those guarantees." (*Marriage Cases, supra,* at pp. 4-5 (conc. opn. of Kennard, J.).) Justice Kennard further noted that:

> The architects of our federal and state Constitutions understood that widespread and deeply rooted prejudices may lead majoritarian institutions to deny fundamental freedoms to unpopular minority groups, and that the most effective remedy for this form of oppression is an independent judiciary charged with the solemn responsibility to interpret and enforce the constitutional provisions guaranteeing fundamental freedoms and equal protection.

(*Ibid.*) Discharging that obligation is a court's "gravest and most important responsibility under our constitutional form of government." (*Ibid.*)

### 4. This Court should enforce the provisions of Article XVIII.

There may be limits to the argument that minority rights must be subject to protection through judicial review. However, regardless of how harmful the Proposed Initiative would be to the rights of gay and lesbian people, Petitioners do not here assert, nor is this Court asked to decide,

whether such changes to the Constitution are inherently impermissible. Petitioners' argument here is, simply, that if these far-reaching changes are to be made, they must be effectuated through the deliberative constitutional revision process. As the decisions of this Court reflect, the greater protections afforded by the revision process serve an important gate-keeping function when the most fundamental constitutional precepts, including the principle of equal citizenship and the role of the judiciary in protecting that foundational principle, are directly implicated.

In the *Marriage Cases*, this Court held that "the provisions of the California Constitution itself constitute the ultimate expression of the people's will, and that the fundamental rights embodied within that Constitution for the protection of all persons represent restraints that the people themselves have imposed upon the statutory enactments that may be adopted either by their elected representatives or by the voters through the initiative process." (*Marriage Cases, supra*, at p. 113.) Likewise, the requirement that a revision of our Constitution may be accomplished only by constitutional convention or legislative submission represents a restraint that the people themselves have imposed upon proposed changes to the state constitution that are especially significant or far reaching. More than a century ago, this Court explained that:

> The very term "constitution" implies an instrument of a permanent and abiding nature, and *the provisions contained therein for its revision indicate the will of the people that the underlying principles upon which it rests, as well as the substantial entirety of the instrument, shall be of a like permanent and abiding nature.*

(*Livermore, supra*, 102 Cal. at pp. 118-119 [emphasis added].)[5] Writing after the adoption of the constitutional provision permitting amendment by initiative, the Court further explained that:

---

[5] Although the constitutional provisions granting initiative power to the voters were added to the Constitution after *Livermore*, they were

> The people of this state have spoken; they made it clear when they adopted article XVIII and made amendment relatively simple but provided the formidable bulwark of a constitutional convention as a protection against improvident or hasty (or any other) revision, that they understood there was a real difference between amendment and revision.

(*McFadden, supra,* 32 Cal. 2d at p. 347.) This Court should enforce the will of the people and require that those who wish to enact the Proposed Initiative must use the correct, constitutionally-mandated, procedure for a revision. As former Chief Justice Traynor wrote, if a Constitution "is to retain respect it must be free from popular whim and caprice which would make of it a mere statute." (Roger Traynor, Amending the United States Constitution (1927) (unpublished Ph.D. thesis, University of California (Berkeley) [cited in Rachel A. Van Cleave, *A Constitution in Conflict: The Doctrine of Independent State Grounds And The Voter Initiative In California* (1993) 21 Hastings Const. L.Q. 95, 98, fn. 19].)

Under this Court's precedents, as well as the structure and logic of our constitutional system of government, the Court should hold that the Proposed Initiative would effect a constitutional revision and therefore the proposed constitutional changes cannot be adopted through the initiative process.

## II. The Court Should Address Whether The Proposed Initiative Is A Revision Before The November Election.

Whether a proposition amounts to a constitutional revision rather than an amendment properly may be determined either before or after an election. (*Indep. Energy Producers Assn. v. McPherson* (2006) 38 Cal.4th 1020, 1025; *Costa v. Superior Court* (2006) 37 Cal.4th 986, 1005.) The

---

"understood to have been drafted in the light of the *Livermore* decision" and they maintain the same distinction between a revision and an amendment. (See *McFadden, supra,* 32 Cal. at pp. 333-334.)

general rule that challenges to ballot initiatives are usually more appropriately raised postelection "does not preclude preelection review when the challenge is based upon a claim, for example, that the proposed measure may not properly be submitted to the voters because . . . it amounts to a constitutional revision rather than an amendment." (*Costa, supra,* 37 Cal.4th at p. 1005; *McFadden, supra,* 32 Cal.2d 330 [granting preelection relief when initiative constituted a revision not an amendment]; see also *Senate of the State of Cal. v. Jones* (1999) 21 Cal.4th 1142, 1145-1146 [finding preelection that initiative violated single subject rule].)

Where, as here, the challenge goes to the power of the electorate to adopt the proposal in the first instance, there are compelling reasons for engaging in preelection review. In such cases, "[t]he question raised is, in a sense, jurisdictional." (*Legislature v. Deukmejian* (1983) 34 Cal.3d 658, 667 [engaging in preelection review to invalidate legislative initiative].) As the Court has explained,

> The presence of an invalid measure on the ballot steals attention, time and money from the numerous valid propositions on the same ballot. It will confuse some voters and frustrate others, and an ultimate decision that the measure is invalid, coming after the voters have voted in favor of the measure, tends to denigrate the legitimate use of the initiative process.

(*Am. Federation of Labor-Congress of Indus. Orgs. v. Eu* (1984) 36 Cal.3d 687, 697; *Jones, supra,* 41 Cal.4th at p. 1154.) This proceeding likewise challenges the power of the electorate to adopt the Proposed Initiative.

This is an appropriate case for preelection review. The freedom of gay and lesbian couples to marry in California is a question of overarching importance and concern to many people, not the least gay and lesbian couples who now enjoy the right to marry but risk having that fundamental right taken away from them by the Proposed Initiative. The election undoubtedly will generate intense interest among California voters. Voters' views about marriage by lesbian and gay couples are deeply felt and the

32

issue is, unfortunately, potentially divisive. The campaign also promises to be immensely expensive to both sides. (See *Indep. Energy Producers Assn., supra*, 38 Cal.4th at p. 1030 [stating that "potential costs are incurred in postponing the judicial resolution of a challenge to an initiative measure until after the measure has been submitted to and approved by the voters, and such costs appropriately can be considered by a court in determining the propriety of preelection intervention"].) Thus, to allow this initiative to proceed to an election only later to be invalidated because it constitutes a revision rather than an amendment raises the same concerns identified by the Court in *American Federation of Labor* and *Legislature v. Deukmejian*.

While the Court has suggested that it may be preferable to defer initiative challenges that would not be rendered moot by the election (see *Indep. Energy Producers Assn., supra*, 38 Cal.4th at pp. 1030-1031), the Court also has stated that the general policy favoring postelection review assumes that "no serious consequences will result if consideration of the validity of a measure is delayed until after an election." (*Raven, supra*, 34 Cal.3d at p. 666.) Any delay here in addressing Petitioners' challenge to the Proposed Initiative does carry very serious consequences. Gay and lesbian couples already have waited years for a judicial determination of their constitutional right to marry. They now are permitted to marry, but there is uncertainty due to the Proposed Initiative as to whether that right will continue past November. This puts gay and lesbian individuals and couples contemplating marriage in the untenable position—not shared by any other group—of having to decide whether they need to rush into marriage before the date of the election or risk not being able to marry at all. If the Proposed Initiative fails to meet the constitutional standards applicable for amending the Constitution by initiative, as Petitioners submit it does, gay and lesbian couples should not have to live under this cloud of uncertainty any longer than necessary. While a determination that the Proposed Initiative amounts to a revision would not eliminate the prospect

33

of a constitutional change at some future date, it would be enormously beneficial for gay and lesbian couples to know that their right to marry could be taken away only through the more rigorous revision process.

Furthermore, Petitioners have separately raised a challenge based on the accuracy of the summary contained in the initiative petition. As explained below, this challenge *must* be addressed preelection. (See pp. 40-41, *infra*.) Therefore, it would be most efficient and least disruptive to all involved for the Court to address both of these challenges in a single proceeding prior to the election. Otherwise, in the event the Court agrees that the initiative needs to be recirculated but declines to address whether it constitutes a revision, there is a possibility that a Proposed Initiative prohibiting marriage by gay and lesbian couples would be put before the courts in two separate proceedings. It would be best to avoid the serious risk of confusion and voter disillusionment on both sides of the issue that might result if that were to occur. As the Court stated in *Senate of the State of Cal. v. Jones*, *supra*, 21 Cal.4th at pp. 1153-1154, "in an appropriate instance, preelection relief not only is permissible but is expressly contemplated," and "deferring a decision until after the election...may contribute to an increasing cynicism on the part of the electorate."

## III.   The Petition Circulated To The Public Materially Misstated The Effect Of The Proposed Initiative.

The Attorney General is required to prepare an effective title and summary of a proposed initiative measure (Cal. Const., art. II, § 10, subd. (d); Elec. Code § 9004), which must include an analysis of the measure's fiscal impact (Elec. Code § 9005).[6]  The purpose of these

---

[6] See Exh. 2 to Request for Judicial Notice (Nov. 14, 2007 Letter from the Legislative Analyst Office to Attorney General Edmund G. Brown, Jr., setting forth the fiscal analysis of the Department of Finance and the Joint Legislative Budget Committee, pursuant to Elections Code section 9005, with regard to the Proposed Initiative).

requirements is to provide voters with accurate, objective information describing "the nature of the petition which [they are] asked to sign." (*Boyd v. Jordan* (1934) 1 Cal.2d 468, 474). As this Court recently explained:

> "The purposes served by the ballot title and summary requirements of [the California Elections Code] are: (1) to reduce the risk that voters were misled when signing the petition; (2) to allow verification that the signers had a neutral explanation of the proposed ordinance available to them when they signed; and (3) to prevent signatures from being submitted in support of a different measure than that for which they were procured."

(*Costa, supra,* 37 Cal.4th at pp. 1020-1021 [quoting *MHC Financing Ltd. Partnership Two v. City of Santee* (2005) 125 Cal.App.4th 1372, 1389]; see also *Amador Valley, supra,* 22 Cal.3d at p. 243; *Clark v. Jordan* (1936) 7 Cal.2d 248, 251-252.) The summary of a proposed measure, which is a required component of a circulated petition, must inform voters about the true "character of the proposed legislation." (*Boyd,* 1 Cal.2d at pp. 472-473.) When a proposed initiative obtains the requisite number of signatures by "misleading" or "withholding vital information" from voters, the petition must be invalidated and the measure removed from the ballot. (*Costa,* 37 Cal.4th at p. 1016; see also *Forty-Niners v. Nishioka* (1999) 75 Cal.App.4th 637, 644.)

This Court has noted the "utmost importance of ensuring the integrity of the electoral process and of interpreting and applying the applicable constitutional and statutory provisions in a manner that closely safeguards the integrity of that process." (*Costa, supra,* 37 Cal.4th at p. 1012.) Courts construe the Elections Code in favor of the people's initiative power and therefore require only substantial compliance with the applicable constitutional and statutory requirements; however, it is well settled that the standard of substantial compliance is not met where the title and summary do not accurately convey the primary purpose and effect of

35

the proposed initiative. (See *Costa, supra*, at pp. 1015-1016; *Clark, supra*, 7 Cal.2d at p. 252; *Boyd, supra*, 1 Cal.2d at pp. 472-473.) Where a procedural defect on the face of a petition is likely to mislead "the potential signers of an initiative petition regarding a significant feature of the proposed measure," the petition must be rejected. (*Costa, supra*, 37 Cal.4th at p. 1012; see also *id.*, at p. 1016 [explaining favorably past Supreme Court decision that invalidated a pre-election petition because it failed to communicate the effect of the initiative to the electors who signed it].) California courts have invalidated initiative measures where the petitions, as circulated, misinformed the electorate concerning the purpose or effect of the proposed initiative. (See *Clark, supra*, 7 Cal.2d at pp. 251-252 [invalidating initiative pre-election because title and summary on petition was misleading]; *Boyd, supra*, 1 Cal.2d at pp. 472-473 [same]; *Forty-Niners v. Nishioka, supra*, 75 Cal.App.4th at pp. 643-650 [petition was invalid because it contained false statements of the facts supporting need for initiative, even though petition did not misrepresent contents or effect of initiative]; *Mervyn's v. Reyes* (1998) 69 Cal.App.4th 93, 99-105 [failure to include complete text of initiative measure resulted in confusion]; *Hebard v. Bybee* (1998) 65 Cal.App.4th 1331, 1338-1339 [misleading title on circulated petition frustrated the purpose of the election statutes to inform electors and to reduce confusion].)

Here, the petitions circulated to the electorate to qualify the Proposed Initiative for the November 2008 ballot contained material defects on their face. Specifically, the petitions advised voters that the proposed measure, if enacted, would make "no change" to existing California marriage law and, for that reason, would have "no fiscal effect" on the state budget. (Petitioners' Request for Judicial Notice, Exh. 3.) That description was misleading even at the time the summary was prepared, as this Court already had accepted review of the *Marriage Cases* and the parties' principal briefs and briefs in response to the Court's supplemental

36

questions already had been submitted. To avoid misleading the voters, the petitions—which sought to change the California *Constitution*, not simply to enact a statutory measure about marriage eligibility—should have stated that whether the Constitution required the state to allow same-sex couples to be permitted to marry was unclear, and that the fiscal impact of the initiative, therefore, was unknown as well. Petitions were still being circulated after this Court held oral argument and the matter was submitted, so it was plain even as more petitions were being signed that the Court's decision in the *Marriage Cases* was likely to be issued months before the Proposed Initiative could be placed on the November ballot.

Moreover, now that the Court has ruled, the summary of the initiative that was provided in the petitions circulated to voters is not just inaccurate and misleading, but has proven to be dramatically incorrect. This Court has recognized that gay and lesbian couples have a fundamental right to marry and, as of June 16, such couples have been getting married across the state. In addition, the Court held that laws that discriminate based on sexual orientation are presumptively unconstitutional and must be subjected to strict scrutiny, based on the Court's determination that sexual orientation is a suspect classification. Therefore, rather than effecting "no change" in existing California law, the Proposed Initiative would dramatically change existing law by taking that fundamental right away and by inscribing discrimination based on a suspect classification into our state Constitution. That misstatement of the law on the circulated petitions is serious and "likely … misled those electors who signed the circulated petitions." (*Senate of the State of Cal. v. Jones*, supra, 21 Cal.4th at pp. 1151-1152 [suggesting that inaccurate statement of current law on initiative petition summary could justify removal of the measure from the ballot, although not reaching the issue because the measure also violated the "single subject" rule].) Because the petition "fails, directly or indirectly, expressly or impliedly, to indicate that the proposal is intended to work [a]

37

major ... change in the existing" law, the initiative should be disqualified from the ballot. (*Clark, supra,* 7 Cal.2d at p. 251.)

The statement in the official summary that the Proposed Initiative will have "no fiscal impact" likewise is inaccurate and misleading and should not have been circulated to voters. It is clear that, if enacted, the initiative would have a significant negative fiscal impact on the state. The marriages of gay and lesbian couples are expected to inject over $683 million into the state's economy over the next three years, with consequent increases of over $63 million in the tax revenues and license fees paid to state and local governments. (Sears and Badgett, *The Impact of Extending Marriages to Same-Sex Couples on the California Budget* (Williams Institute June 2008), available at http://www.law.ucla.edu/williamsinstitute/publications/EconImpactCAMarriage.pdf.)   Thus, far from having "no fiscal effect," if enacted, the Proposed Initiative would deprive the state of the significant revenue streams associated with continuing to permit gay and lesbian couples to marry on an equal basis with others, as current California law requires.

In short, the description of the Proposed Initiative presented to voters who signed the petition was inaccurate and misleading when it was promulgated; moreover, now that the Court has clarified the relevant provisions of California law, it is apparent that the description was indeed dramatically misleading.   The statements that the initiative would not change existing law and would have no fiscal effect do not merely fail to provide a complete or thorough description of what the initiative would do, nor do they merely reflect discrepancies "involving some substantive details" of the kind at issue in *Costa (Costa, supra,* at p. 1024); rather, they are completely inaccurate and fail to describe the primary impact and purpose of the proposed measure.   Those errors cannot be "retroactively" corrected merely by updating the official summary because no one knows how many petition signers (including fiscally conservative signers) would

have declined to support the initiative petition if they had known that the Proposed Initiative would change the law by eliminating an existing right and would cost state and local governments millions of dollars in income because of decreases in tax revenues and fees. The petitions voters signed described a proposed measure that is very different in its purpose and effect than the measure that will be before the voters in November, unless the writ sought by this Petition is granted.

As noted, the purpose of the constitutional and statutory provisions requiring the circulation of an accurate title and summary of a proposed initiative is to provide an objective explanation of the effect of a measure to the voters, avoid voter confusion, and protect the integrity of the initiative process. (See, e.g., *Costa, supra,* 37 Cal.4th at p. 1021; *Mervyn's v. Reyes, supra,* 69 Cal.App.4th at p. 99 [voters must be able to "intelligently evaluate whether to sign the petition."].) The need for accurate disclosure is particularly acute where a proposed measure will have a profound effect upon fundamental rights. As the Ninth Circuit has explained, when a ballot measure will have the effect of severely limiting a fundamental constitutional right, due process requires that the electorate be given accurate information concerning the gravity of the proposed measure—"the state simply must tell its citizens what they are voting on." (*Jones v. Bates* (9th Cir. 1997) 127 F.3d 839, 863 [applying federal due process analysis].)

Here, the petition summary was woefully inadequate because it materially misinformed the electors about the effect that the proposed initiative would have—or likely would have—on existing law with respect to the fundamental right of same-sex couples to marry. The supposed legal and fiscal consequences of the Proposed Initiative as described are diametrically different from their actual legal and fiscal consequences. Given the magnitude of the misstatements contained in the submitted petitions as well as the vital nature of the rights at issue, the Proposed Initiative cannot be considered in "substantial compliance" with the

39

constitutional and statutory electoral requirements. For that reason, this Court should invalidate those petitions and require those who wish to change existing law, if they so choose (and if the initiative power extends to such a change), to circulate petitions that correctly describe the current state of the law on this fundamental legal right.

This challenge to the validity of the petitions circulated by proponents of the proposed initiative must be heard before the election. (*Costa*, *supra*, 37 Cal.4th at pp. 1006-1007.) This Court has held that, where a proposed initiative has been challenged on the basis that it has not satisfied the threshold "procedural prerequisites necessary to qualify it for the ballot, it is logical and appropriate for a court to consider such a claim prior to the election," because if those "prerequisites have not been satisfied the measure is *not entitled* to be submitted to the voters." (*Id.*, at p. 1006 [emphasis added].) After the election, however, "California decisions have been most reluctant to overturn the results of an election on the basis of a procedural defect that has occurred at the petition-circulation stage of the process," as it may be difficult to quantify the effect that a deficiency in the petition had on the fairness of the election itself. (*Ibid.*, see also *id.*, at p. 1007 [citing cases dismissing post-election challenges to petition-circulation procedural deficiencies as moot].) For that reason, "it cannot be said that there is no harm in postponing until after the election a determination of the validity of this type of procedural challenge to the petition-circulation process." (*Ibid.*) Therefore, it is not only proper but essential for this Court to determine whether the Proposed Initiative has failed to satisfy the required constitutional and statutory procedures and, if so, to safeguard the integrity of the initiative process by directing that the Proposed Initiative be removed from the ballot. That remedy can be applied only if the validity of the summary of the Proposed Initiative on the circulated petitions is determined now.

## IV.    Conclusion

For the reasons stated above, Petitioners respectfully urge this Court to grant the relief sought in the attached Writ Petition.

Dated: June 20, 2008          Respectfully submitted,

STEPHEN V. BOMSE
SCOTT A. WESTRICH
CHRISTOPHER F. STOLL
ELISABETH R. BROWN
DAVID J. SIMON
Heller Ehrman LLP

SHANNON P. MINTER
VANESSA H. EISEMANN
MELANIE ROWEN
CATHERINE SAKIMURA
National Center for Lesbian Rights

JON W. DAVIDSON
JENNIFER C. PIZER
Lambda Legal Defense and
Education Fund, Inc.

ALAN L. SCHLOSSER
ELIZABETH O. GILL
ACLU Foundation of Northern California

MARK ROSENBAUM
PETER J. ELIASBERG
CLARE PASTORE
ACLU Foundation of Southern California

DAVID C. CODELL
Law Office of David C. Codell

By:   _Stephen V. Bomse/CFS_

        Stephen V. Bomse

*Attorneys for Petitioners Brian Bennett,
Xavier Barrera, Audrey Koh, and Equality
California*

41

## CERTIFICATE OF WORD COUNT
## PURSUANT TO RULE 8.204(c)(1)

Pursuant to California Rule of Court 8.204(c)(1), counsel for Petitioners hereby certifies that the number of words contained in this Petition For Extraordinary Relief, Including Writ Of Mandate And Request For Stay; Memorandum Of Points And Authorities, including footnotes but excluding the Table of Contents, Table of Authorities, and this Certificate, is 12,291 words as calculated using the word count feature of the computer program used to prepare the brief.

By: _Stephn V. Bomse/CFs_

Stephen V. Bomse

42

## PROOF OF SERVICE

I, Norman S. Lee, declare that I am over the age of eighteen years and I am not a party to this action. My business address is 333 Bush Street, San Francisco, California 94104. On June 20, 2008, I served the documents listed below on the interested parties in this action in the manner indicated below:

**PETITION FOR EXTRAORDINARY RELIEF, INCLUDING WRIT OF MANDATE AND REQUEST FOR STAY; MEMORANDUM OF POINTS AND AUTHORITIES; STAY REQUESTED;**

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PETITION FOR EXTRAORDINARY RELIEF, INCLUDING WRIT OF MANDATE AND REQUEST FOR STAY**

[ ]   **BY OVERNIGHT DELIVERY:**  I caused such envelopes to be delivered on the following business day by FEDERAL EXPRESS service.

[ X ]   **BY PERSONAL SERVICE:**  I caused the document(s) to be delivered to a process server for delivery by hand on the interested parties indicated below.

[ X ]   **BY MAIL**:  I am readily familiar with the business practice for collection and processing correspondence for mailing with the United States Postal Service.  I know that the correspondence was deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business.  I know that the envelopes were sealed, and with postage thereon fully prepaid, placed for collection and mailing on this date, following ordinary business practices, in the United States mail at San Francisco, California.

[ ]   **BY FACSIMILE**:  I transmitted such documents by facsimile

**INTERESTED PARTIES:**

**SEE ATTACHED SERVICE LIST**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct; that this declaration is executed on June 20, 2008, at San Francisco, California.

_Norman S. Lee_

Norman S. Lee

# SERVICE LIST

## California Attorney General

| | |
|---|---|
| Edmund G. Brown, Jr.<br>Christopher E. Krueger<br>STATE OF CALIFORNIA, DEPT. OF JUSTICE<br>OFFICE OF THE ATTORNEY GENERAL<br>1300 I Street, Suite 125<br>Post Office Box 944255<br>Sacramento, CA 94244<br>Tel: (916) 445-7385<br><br>*Counsel for the State of California*<br><br>***Service by hand*** | |

## Secretary of State in her official capacity as Secretary of State

| | |
|---|---|
| Debra Bowen<br>SECRETARY OF STATE<br>1500 11th Street<br>Sacramento, CA 95814<br><br>***Service by hand*** | Debra Bowen<br>SECRETARY OF STATE<br>455 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>***Service by hand*** |

## Real Parties in Interest

| | |
|---|---|
| Dennis Hollingsworth<br>26620 Pabesu Road<br>Murrieta, CA 92652<br><br>***Service by mail*** | Hak-Shing William Tam<br>2307 29th Avenue<br>San Francisco, CA 94118<br><br>***Service by mail*** |
| Gail J. Knight<br>220 Eagle Lane<br>Palmdale, CA 93551<br><br>***Service by mail*** | Martin A. Jansson<br>9860 Edeva Way<br>Elk Grove, CA 95624<br><br>***Service by mail*** |
| Martin F. Gutierrez<br>2626 South Catalina Street<br>Los Angeles, CA 90007<br><br>***Service by mail*** | |

| Andrew P. Pugno | Andrew P. Pugno |
|---|---|
| LAW OFFICES OF ANDREW P. PUGNO | LAW OFFICES OF ANDREW P. PUGNO |
| 101 Parkshore Drive | Post Office Box 1993 |
| Suite 100 | Fair Oaks, CA 95628 |
| Folsom, CA 95630 | Tel: (916) 608-3065 |
| Tel: (916) 608-3065 | |
| | *Service by mail on behalf of Real Parties In Interest* |
| *Service by hand on behalf of Real Parties In Interest* | |