# Exhibit I

Case No.: S168047

# IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

SUPREME COURT
FILED

Karen L. Strauss, Ruth Borenstein, Brad Jacklin, Dustin Hergert, Eileen Ma,
Suyapa Portillo, Gerardo Marin, Jay Thomas, Sierra North, Celia Carter,
Desmond Wu, James Tolen and Equality California,

NOV - 5 2008

Frederick K. Ohlrich, Clerk

Petitioners,

v.

Deputy

Mark D. Horton, in his official capacity as State Registrar of Vital Statistics of the
State of California and Director of the California Department of Public Health;
Linette Scott, in her official capacity as Deputy Director of Health Information &
Strategic Planning for the California Department of Public Health; and Edmund G.
Brown, Jr., in his official capacity as Attorney General for the State of California,

Respondents;

---

## AMENDED PETITION FOR EXTRAORDINARY RELIEF, INCLUDING WRIT OF MANDATE AND REQUEST FOR IMMEDIATE INJUNCTIVE RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES

## IMMEDIATE STAY OR INJUNCTIVE RELIEF REQUESTED

---

| NAT'L CENTER FOR LESBIAN RIGHTS | MUNGER, TOLLES & OLSON LLP |
|---|---|
| Shannon P. Minter (Bar No. 168907) | Gregory D. Phillips (Bar No. 118151) |
| Melanie Rowen (Bar No. 233041) | Jay M. Fujitani (Bar No. 129468) |
| Catherine Sakimura (Bar No. 246463) | David C. Dinielli (Bar No. 177904) |
| Ilona M. Turner (Bar No. 256219) | Michelle Friedland (Bar No. 234124) |
| Shin-Ming Wong (Bar No. 253136) | Lika C. Miyake (Bar No. 231653) |
| Christopher F. Stoll (Bar No. 179046) | Mark R. Conrad (Bar No. 255667) |
| 870 Market Street, Suite 370 | 355 S. Grand Avenue, 35th Floor |
| San Francisco, CA 94102 | Los Angeles, CA 90071-1560 |
| T: (415) 392-6257 / F: (415) 392-8442 | T: (213) 683-9100 / F: 687-3702 |

Additional Counsel Listed on Next Page
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
ACLU FOUNDATION OF NORTHERN CALIFORNIA
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
ACLU FOUNDATION OF SAN DIEGO AND IMPERIAL COUNTIES
LAW OFFICE OF DAVID C. CODELL
ORRICK, HERRINGTON & SUTCLIFFE LLP
*Attorneys For Petitioners Karen L. Strauss, Ruth Borenstein, Brad Jacklin, Dustin
Hergert, Eileen Ma, Suyapa Portillo, Gerardo Marin, Jay Thomas, Sierra North,
Celia Carter, Desmond Wu, James Tolen and Equality California*

Case No.: S168047

# IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

---

Karen L. Strauss, Ruth Borenstein, Brad Jacklin, Dustin Hergert, Eileen Ma, Suyapa Portillo, Gerardo Marin, Jay Thomas, Sierra North, Celia Carter, Desmund Wu, James Tolen and Equality California,

Petitioners,

v.

Mark D. Horton, in his official capacity as State Registrar of Vital Statistics of the State of California and Director of the California Department of Public Health; Linette Scott, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; and Edmund G. Brown, Jr., in his official capacity as Attorney General for the State of California,

Respondents;

---

# AMENDED PETITION FOR EXTRAORDINARY RELIEF, INCLUDING WRIT OF MANDATE AND REQUEST FOR IMMEDIATE INJUNCTIVE RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES

## IMMEDIATE STAY OR INJUNCTIVE RELIEF REQUESTED

---

NAT'L CENTER FOR LESBIAN RIGHTS
Shannon P. Minter (Bar No. 168907)
Melanie Rowen (Bar No. 233041)
Catherine Sakimura (Bar No. 246463)
Ilona M. Turner (Bar No. 256219)
Shin-Ming Wong (Bar No. 255136)
Christopher F. Stoll (Bar No. 179046)
870 Market Street, Suite 370
San Francisco, CA 94102
T: (415) 392-6257 / F: (415) 392-8442

MUNGER, TOLLES & OLSON, LLP
Gregory D. Phillips (Bar No. 118151)
Jay M. Fujitani (Bar No. 129468)
David C. Dinielli (Bar No. 177904)
Michelle Friedland (Bar No. 234124)
Lika C. Miyake (Bar No. 231653)
Mark R. Conrad (Bar No. 255667)
355 S. Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
T: (213) 683-9100 / F: 687-3702

Additional Counsel Listed on Next Page:
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
ACLU FOUNDATION OF NORTHERN CALIFORNIA
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
ACLU FOUNDATION OF SAN DIEGO AND IMPERIAL COUNTIES
LAW OFFICE OF DAVID C. CODELL
ORRICK, HERRINGTON & SUTCLIFFE LLP
*Attorneys For Petitioners Karen L. Strauss, Ruth Borenstein, Brad Jacklin, Dustin Hergert, Eileen Ma, Suyapa Portillo, Gerardo Marin, Jay Thomas, Sierra North, Celia Carter, Desmund Wu, James Tolen and Equality California*

Additional Attorneys for Petitioners Karen L. Strauss, Ruth Borenstein, Brad Jacklin, Dustin Hergert, Eileen Ma, Suyapa Portillo, Gerardo Marin, Jay Thomas, Sierra North, Celia Carter, Desmund Wu, James Tolen and Equality California

LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
Jon W. Davidson (Bar No. 89301)
Jennifer C. Pizer (Bar No. 152327)
F. Brian Chase (Bar No. 242542)
Tara Borelli (Bar No. 216961)
3325 Wilshire Boulevard, Suite 1300
Los Angeles, CA 90010
T: (213) 382-7600 / F: (213) 351-6050

ACLU FOUNDATION OF NORTHERN CALIFORNIA
Alan L. Schlosser (Bar No. 49957)
Elizabeth O. Gill (Bar No. 218311)
39 Drumm Street
San Francisco, CA 94111
T: (415) 621-2493 / F: (415) 255-8437

ACLU FOUNDATION OF SOUTHERN CALIFORNIA
Mark Rosenbaum (Bar No. 59940)
Clare Pastore (Bar No. 135933)
Lori Rifkin (Bar No. 244081)
1313 W. 8th Street
Los Angeles, CA 90017
T: (213) 977-9500 / F: (213) 250-3919

ACLU FOUNDATION OF SAN DIEGO AND IMPERIAL COUNTIES
David Blair-Loy (Bar No. 229235)
P.O. Box 87131
San Diego, CA 92138-7131
T:  (619) 232-2121 / F: (619) 232-0036

LAW OFFICE OF DAVID C. CODELL
David C. Codell (Bar No. 200965)
9200 Sunset Boulevard, Penthouse Two
Los Angeles, CA 90069
T: (310) 273-0306 / F: (310) 273-0307

ORRICK, HERRINGTON & SUTCLIFFE LLP
Stephen V. Bomse (Bar No. 40686)
405 Howard Street
San Francisco, CA 94105-2669
T: (415) 773-5700 / F: (415) 773-5759

## CERTIFICATE OF INTERESTED ENTITIES OR PERSONS

Petitioners hereby certify that they are not aware of any person or entity that must be listed under the provisions of California Rule of Court 8.208(e).

## TABLE OF CONTENTS

**Page**

AMENDED PETITION FOR WRIT OF MANDATE AND REQUEST
FOR IMMEDIATE STAY OR INJUNCTIVE RELIEF ......................... 1

PRELIMINARY AND JURISDICTIONAL STATEMENT ............. 1

THE PARTIES ................................................................. 3

FACTS ........................................................................... 6

CLAIMS ASSERTED ....................................................... 8

RELIEF SOUGHT ........................................................... 9

VERIFICATION ............................................................. 11

MEMORANDUM OF POINTS AND AUTHORITIES ............................ 12

I.      Introduction .......................................................... 12

II.     This Court Should Grant The Writ Because Proposition 8 Is An
        Invalid Revision of the California Constitution. .......................... 14

        A.      The People Of California Intended Article XVIII To Require
                A More Deliberative Process For Far-Reaching Changes To
                The Underlying Principles Or The Nature Of The Basic
                Governmental Plan Of The California Constitution .............. 18

                1.      Article XVIII Prohibits Revision Of The California
                        Constitution By Initiative .................................. 18

                2.      This Court Has A Duty To Enforce The Provisions Of
                        Article XVIII .................................................. 21

        B.      Proposition 8 Is A Revision Because It Subverts The
                Fundamental Principle Of Equal Protection And Removes A
                Critical Structural Check On The Exercise Of Majority
                Power. ........................................................................... 23

        C.      Proposition 8 Is A Revision Because It Would Prevent The
                Courts From Exercising Their Unique Constitutional
                Responsibility To Protect The Equal Protection Rights Of
                Minorities. ..................................................................... 35

III.    This Court Should Exercise Its Inherent Authority To Stay The
        Certification And Enforcement Of Proposition 8 Until Its
        Validity Is Established. ............................................................ 43

# TABLE OF CONTENTS

**Page**

A. The Supreme Court Has Inherent Authority To Stay The Implementation Of Proposition 8 Until Its Validity Is Established. ........................................................................44

B. Immediate Relief Is Warranted Because This Amended Petition Raises Serious Constitutional Questions And Proposition 8 Poses An Enormous And Irreparable Burden Exclusively On The Rights Of Same-Sex Couples. ............46

    1. Proposition 8 Deprives A Constitutionally Protected Class Of The "Core" Constitutional Right To Marry. .............47

    2. The Harm Perpetuated By Proposition 8 Is Irreparable, And It Is Borne By Same-Sex Couples And No Others. .49

C. Preservation Of The Status Quo Is Necessary To Prevent Irreparable Harm To Same-Sex Couples. ............................50

IV. Conclusion ...............................................................................52

CERTIFICATE OF WORD COUNT ........................................................54

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Crawford v. Bd. of Ed.* (1982)
  458 U.S. 527 ............................................................................................... 33

*Cruzan v. Director, Mo. Dept. of Health* (1990)
  497 U.S. 261 ............................................................................................... 28

*Elrod v. Burns* (1976)
  427 U.S. 347 ............................................................................................... 48

*Plessy v. Ferguson* (1896)
  163 U.S. 537 ............................................................................................... 37

*Railway Express Agency v. New York* (1949)
  336 U.S. 106 ............................................................................................... 31

*Romer v. Evans* (1996)
  517 U.S. 620 ................................................................................ 26, 33, 34

*W. Va. State Bd. of Ed. v. Barnette* (1943)
  319 U.S. 624 ............................................................................................... 28

## STATE CASES

*2M Restaurants, Inc. v. San Francisco Local Joint Exec. Bd. of Culinary Workers* (1981)
  124 Cal.App.3d 666 .................................................................................. 44

*Am. Bank & Trust Co. v. Community Hospital of Los Gatos-Saratoga, Inc.* (1984)
  36 Cal.3d 359 ............................................................................................ 31

*Amador Valley Joint Union High School Dist. v. State Bd. of Equalization* (1978)
  22 Cal.3d 208 ........................................................... 12, 13, 15, 19

*Billings v. Hall* (1857)
  7 Cal. 1 ...................................................................................................... 24

*Bixby v. Pierno* (1971)
  4 Cal.3d 130 ............................................................................ 37, 39, 40

*Brosnahan v. Brown* (1982)
  32 Cal.3d 236 ........................................................................................... 14

*Cal. Table Grape Comm'n v. Dispoto* (1971)
  14 Cal.App.3d 314 ................................................................................... 44

*Committee to Defend Reproductive Rights v. Myers* (1981)
  29 Cal.3d 252 ................................................................................... 24, 25

*Common Cause v. Bd. of Supervisors* (1989)
  49 Cal.3d 432 ........................................................................................... 45

*Crawford v. Bd. of Ed.* (1976)
  17 Cal.3d 280 ........................................................................................... 33

## TABLE OF AUTHORITIES

*Crawford v. Bd. of Ed.* (1980)
113 Cal.App.3d 633 ........................................................... 33

*IT Corp. v. County of Imperial* (1983)
35 Cal.3d 63 .................................................................... 45

*In re Lance W.* (1985)
37 Cal.3d 873 .................................................................. 30

*Legislature v. Eu* (1991)
54 Cal.3d 492 ............................................................ 13, 14

*Livermore v. Waite* (1894)
102 Cal. 113 ............................................................ passim

*Lockyer v. City and County of San Francisco* (2004)
33 Cal.4th 1055 ............................................................. 51

*McFadden v. Jordan* (1948)
32 Cal.2d 330 ....................................................... 19, 21, 22

*In re Marriage Cases* (2008)
43 Cal.4th 757 ......................................................... passim

*Molar v. Gates* (1979)
98 Cal.App.3d 1 ........................................................ 25, 36

*Mulkey v. Reitman* (1966)
64 Cal.2d 529 ................................................................ 32

*People v. Anderson* (1972)
6 Cal.3d 628 .................................................................. 38

*People v. Frierson* (1979)
25 Cal.3d 142 ........................................................... passim

*People v. Hannon* (1977)
19 Cal.3d 588 ................................................................ 27

*People v. Ramirez* (1979)
25 Cal.3d 260 ........................................................... 24, 35

*Raven v. Deukmejian* (1990)
52 Cal.3d 336 ........................................................... passim

*Robbins v. Superior Court* (1985)
38 Cal.3d 199 ........................................................... 44, 49

*Rosenfeld v. Miller* (1932)
216 Cal. 560 ................................................................. 44

*Sail'er Inn, Inc. v. Kirby* (1971)
5 Cal.3d 1 ............................................................... 25, 37

*Segarini v. Bargagliotti* (1924)
193 Cal. 538 ................................................................. 44

*White v. Davis* (2003)
30 Cal.4th 528 .............................................................. 45

# TABLE OF AUTHORITIES

## CONSTITUTIONS, STATUTES, AND RULES

Cal. Code. Civ. P. § 923 ...................................................................43, 51

Cal. Code Civ. P. § 1085 ................................................................. 1, 2

Cal. Const., art. I, § 7(b) ...................................................................23

Cal. Const., art. I, § 1 .......................................................................23

Cal. Const., art. I, § 7(a) ...................................................................23

Cal. Const., art. I, § 24 .....................................................................27

Cal. Const., art. II, § 1 [repealed Nov. 2, 1926] ...............................32

Cal. Const., art. XVIII, §§ 1-3 .............................................15, 18, 46

Cal. Const., art. XVIII, § 4 ...............................................................46

Cal. Const., art. XIX, §§ 1, 4 [repealed Nov. 4, 1952] .....................32

Cal. Rules of Court, rule 8.116, 8.490(b)(7).....................................44

Cal. Rules of Court, rule  8.490 .......................................................2

## OTHER AUTHORITIES

Karst, *Foreword: Equal Citizenship Under the Fourteenth Amendment* (1977),
   91 Harv.L.Rev. 1, 40, 42 ............................................................23

Mosk, *Raven and Revision* (1991) 25 U.C. Davis L.Rev. 1, 13 .......24

Roger Traynor, Amending the United States Constitution (1927) (unpublished
   Ph.D. thesis, University of California (Berkeley) [quoted in Rachel A. Van
   Cleave, *A Constitution in Conflict: The Doctrine of Independent State
   Grounds And The Voter Initiative In California* (1993) 21 Hastings Const.
   L.Q. 95, 98, fn. 19]......................................................................22

## AMENDED PETITION FOR WRIT OF MANDATE AND REQUEST FOR IMMEDIATE STAY OR INJUNCTIVE RELIEF

### TO THE HONORABLE JUSTICES OF THE SUPREME COURT OF CALIFORNIA:

#### PRELIMINARY AND JURISDICTIONAL STATEMENT

1.      By this original Verified Petition for Writ of Mandate, Petitioners Karen L. Strauss, Ruth Borenstein, Brad Jacklin, Dustin Hergert, Eileen Ma, Suyapa Portillo, Gerardo Marin, Jay Thomas, Sierra North, Celia Carter, Desmund Wu, James Tolen and Equality California ("Petitioners") hereby seek a writ of mandate pursuant to California Constitution article VI, section 10 and California Code of Civil Procedure Section 1085 enjoining State Registrar of Vital Statistics of the State of California and Director of the California Department of Public Health Mark B. Horton, MD, MSPH; Deputy Director of Health Information & Strategic Planning of the California Department of Public Health Linette Scott, MD, MPH; and California Attorney General Edmund G. Brown Jr., all in their official capacities (collectively, "Respondents") from enforcing, taking any steps to enforce, or directing any persons or entities to enforce Proposition 8, the initiative measure entitled "Eliminates the Right of Same-Sex Couples to Marry." Proposition 8, based on election results posted on the California Secretary of State's official website as of the morning of November 5, 2008 (see

- 1 -

http://vote.sos.ca.gov/props/index.html, as of 10:45 a.m., Nov. 5, 2008), appears to have received a majority of votes counted thus far in the November 4, 2008 election.  According to that website, not all votes have yet been counted.

2.    Petitioners also request that this Court issue an immediate injunction or order staying the enforcement of Proposition 8 pending the resolution of the instant Amended Petition and prohibiting Respondents from taking any acts to enforce or from directing any persons or entities to enforce Proposition 8 during the pendency of these writ proceedings.

3.    This Amended Petition is brought on the grounds that Proposition 8, if it has been enacted, is invalid because it would constitute a constitutional revision, not a constitutional amendment and, as such, the California Constitution provides that it may not be enacted by initiative.

4.    Petitioners have no other plain, speedy or adequate remedy at law. There are no administrative or other proceedings available to enjoin the enforcement of Proposition 8.

5.    Petitioners respectfully invoke the original jurisdiction of this Court pursuant to California Constitution article VI, section 10; California Code of Civil Procedure Section 1085; and Rule 8.490 of the California Rules of Court.   Petitioners invoke that jurisdiction because the issues presented here are of great public importance and

- 2 -

should be resolved promptly.  It is in the public interest to resolve the questions presented in this Amended Petition to provide certainty regarding the rights of lesbian and gay couples in California to marry and the validity or invalidity of Proposition 8.

6.      This Amended Petition presents no questions of fact for the Court to resolve in order to issue the relief sought.

## THE PARTIES

7.      Petitioners Karen L. Strauss and Ruth Borenstein are residents of the City and County of San Francisco, California, and are a same-sex couple who seek the right to marry notwithstanding the possible passage of Proposition 8.  Strauss and Borenstein are in a committed relationship and wish to marry each other, but have not yet married because their loved ones have been unable to travel to attend a wedding in California between June and November of this year. Because of the ill health of one of their parents, Strauss and Borenstein are concerned that they may never be able to marry with all three of their surviving parents present if they are required to wait to marry until the instant Amended Petition is resolved.  Strauss and Borenstein have a deep interest in enforcing their fundamental right to marry.

8.      Petitioners Brad Jacklin and Dustin Hergert are residents of San Jose, California, and are a same-sex couple who seek the right to

marry notwithstanding the possible passage of Proposition 8. Jacklin and Hergert are not registered as domestic partners because they consider domestic partnership to be a separate and unequal status. They are in a committed relationship and wish to marry each other in the future. Jacklin and Hergert have a deep interest in enforcing their fundamental right to marry.

9. Petitioners Eileen Ma and Suyapa Portillo are residents of South Pasadena, California, and are a same-sex couple who seek the right to marry notwithstanding the possible passage of Proposition 8. Ma and Portillo are in a committed relationship and wish to marry each other in the future, in part to ensure that their relationship is recognized by states that recognize marriages and not domestic partnerships. Ma and Portillo have a deep interest in enforcing their fundamental right to marry.

10. Petitioners Gerardo Marin and Jay Thomas are residents of the City and County of San Francisco, California, and are a same-sex couple who seek the right to marry notwithstanding the possible passage of Proposition 8. Marin and Thomas wish to marry each other in the future but have not yet done so because they have not had time to complete the pre-marriage steps that are prescribed by their religion. Marin and Thomas have a deep interest in enforcing their fundamental right to marry.

11.    Petitioners Sierra North and Celia Carter are residents of the City of Oakland, California, and are a same-sex couple who seek the right to marry notwithstanding the possible passage of Proposition 8. North and Carter are in a committed relationship and have jointly adopted a son. North and Carter wish to marry each other in the future, in part because they wish to raise their child and any other children they may adopt or have as a married couple. North and Carter have a deep interest in enforcing their fundamental right to marry.

12.    Petitioners Desmund Wu and James Tolen are residents of Los Angeles, California, and are a same-sex couple who seek the right to marry notwithstanding the possible passage of Proposition 8. Wu and Tolen are in a committed relationship and wish to marry each other in the future, in part because they wish to adopt children as a married couple. Wu and Tolen have a deep interest in enforcing their fundamental right to marry.

13.    Petitioner Equality California is an organization that represents its members in this action. Equality California's members include registered voters in every county in the State of California, as well as lesbian and gay individuals who wish to marry in the future, some of whom currently are in registered domestic partnerships and some of whom are not.

14.    Respondent Mark B. Horton, MD, MSPH ("Horton") is the Director of the California Department of Public Health and, as such, is the

State Registrar of Vital Statistics of the State of California. Horton is sued in his official capacity. It is Horton's legal duty, among other things, to prescribe and furnish the forms for the application for license to marry, the certificate of registry of marriage including the license to marry, and the marriage certificate.

15. Respondent Linette Scott, MD, MPH ("Scott") is the Deputy Director of Health Information & Strategic Planning for the California Department of Public Health. Scott is sued in her official capacity. Upon information and belief, Scott reports to Respondent Horton, and is the California Department of Public Health official responsible for prescribing and furnishing the forms for the application for license to marry, the certificate of registry of marriage including the license to marry, and the marriage certificate.

16. Respondent Edmund G. Brown Jr. ("Brown") is the Attorney General of the State of California. Brown is sued in his official capacity. It is Brown's legal duty, among other things, to ensure that the laws of the State of California are uniformly and adequately enforced.

## FACTS

17. As of the morning of November 5, 2008, it appears that Proposition 8 received a majority of "yes" votes so far counted in the November 4, 2008 election. (See

- 6 -

http://vote.sos.ca.gov/props/index.html, as of 10:45 a.m., Nov. 5, 2008.) Proposition 8 is an initiative measure that seeks to change the California Constitution by inserting a new section, Section 7.5, in Article I that would state: "Only marriage between a man and a woman is valid or recognized in California." The Official Title and Summary of Proposition 8, prepared by Respondent Brown, state that the measure would "[e]liminate the right of same-sex couples to marry in California."

18.    Couples who have not yet been able to marry may never be able to marry in California if they are forced to wait for the resolution of the instant Amended Petition. For example, the unexpected death of one member of a couple during the pendency of this Amended Petition could foreclose the possibility of the couple's marriage altogether.

19.    Other couples' marriage plans may be significantly compromised by having to wait for the resolution of the instant Amended Petition. Individuals who have had to delay their wedding because a family member is ailing may not be able to marry while that family member is still alive if they are forced to wait for the resolution of the instant Amended Petition.

20.    Couples who have not yet been able to marry will be foreclosed from designating and declaring their relationship as a marriage, and thereby foreclosed from exercising their expressive and associational rights.

## CLAIMS ASSERTED

21.   Proposition 8, if it truly has been enacted, would constitute a revision of the California Constitution because it alters underlying principles on which the California Constitution is based and makes far-reaching changes to the nature of our basic governmental plan by severely compromising the core constitutional principle of equal protection of the laws, depriving a vulnerable minority of fundamental rights, inscribing discrimination based on a suspect classification into the Constitution, and destroying the courts' quintessential power and role of protecting minorities and enforcing the guarantee of equal protection under the law.

22.   Petitioners, the residents of the State of California and others will suffer irreparable injury and damage unless this Court intervenes and directs Respondents to desist from enforcing Proposition 8 and to desist from directing others to enforce Proposition 8.

23.   Petitioners, the residents of the State of California and others will suffer irreparable injury and damage unless this Court stays the enforcement of Proposition 8 immediately and pending resolution of these proceedings.

24.   Petitioners believe that there is no requirement in this circumstance to plead demand and refusal.  Without prejudice to that position, Petitioners allege that any demand to Respondent to act or refrain from taking action as described in Paragraph 1 in the Relief Sought

- 8 -

below would have been futile if made, and that only a court order will cause Respondents to refrain from taking those actions.

## RELIEF SOUGHT

Wherefore, Petitioners request the following relief:

1.  That this Court forthwith issue a writ of mandate directing Respondents:

    a.  To take all actions necessary to ensure that marriage certificates continue to be issued to couples regardless of the respective sexes of the parties to the marriage;

    b.  To desist from any act enforcing Proposition 8, giving effect to the terms of Proposition 8, or directing any other person or entity to enforce or give effect to the terms of Proposition;

    c.  Or in the alternative, to show cause before this Court at a specified time and place why Respondents have not done so;

2.  That this Court issue an order, if it is confirmed subsequent to the filing of this Amended Petition that Proposition 8 did in fact receive a majority of the votes cast, declaring that Proposition 8 is null and void in its entirety, and that Proposition 8 was not an amendment to the California Constitution but instead attempted to effect a revision of the Constitution without complying with the constitutionally mandated procedures for enactment of a revision set forth in Article XVIII of the California Constitution.

- 9 -

3.   That, upon Respondent's return to the alternative writ, a hearing be held before this Court at the earliest practicable time so that the issues involved in this Amended Petition may be adjudicated promptly, and if this Court deems appropriate, pursuant to an expedited briefing and hearing schedule;

4.   That, pending such return and hearing, the Court grant an immediate injunction or order staying the enforcement of Proposition 8 pending the resolution of the instant Amended Petition and prohibiting Respondents from taking any acts to enforce or from directing any persons or entities to enforce Proposition 8 during the pendency of these writ proceedings;

5.   That, following the hearing upon this Amended Petition, and if it is confirmed subsequent to the filing of this Amended Petition that Proposition 8 did in fact receive a majority of the votes cast, the Court issue a peremptory writ of mandate directing Respondents not to enforce Proposition 8, and to desist in any act in aid of enforcing Proposition 8;

6.   That Petitioners be awarded their attorneys' fees and costs of suit; and

7.   For such other and further relief as the Court may deem just and equitable.

## VERIFICATION

I, Karen L. Strauss, declare:

I am a Petitioner in the above-entitled action.  I have read the foregoing Amended Petition for Writ of Mandate and know the contents thereof.  I am informed and believe and based on said information and belief allege that the contents therein are true.

I declare under penalty of perjury that the foregoing is true and correct.  Executed in San Francisco, California on November 5, 2008.

Karen L. Strauss

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF AMENDED PETITION FOR EXTRAORDINARY RELIEF,
INCLUDING WRIT OF MANDATE AND REQUEST FOR
IMMEDIATE STAY OR INJUNCTIVE RELIEF**

## I.   Introduction

Proposition 8 is invalid under the California Constitution. Proposition 8, unlike any other constitutional initiative of which Petitioners are aware, eliminates a fundamental right[1] — the right to marry — and it does so only with respect to a subset of Californians — lesbian and gay people — who "historically [have] been subjected to invidious and prejudicial treatment." (*In re Marriage Cases* (2008) 43 Cal.4th 757, 840 (hereafter *Marriage Cases*).) If given effect, Proposition 8 would work a dramatic, substantive change to our Constitution's "underlying principles" of individual equality, on a scale and scope never previously condoned by this Court. (*Livermore v. Waite* (1894) 102 Cal. 113, 117-119 (*Livermore*).) And, because it would prohibit California courts from exercising their core, traditional, constitutional role of protecting the established equality rights of a minority defined by a suspect classification, Proposition 8 also would effect a "far reaching change[] in the nature of our basic governmental plan." (See *Amador Valley Joint Union High School*

---

[1]   Petitioners in this action challenge Proposition 8 because it purports to eliminate the right of lesbian and gay couples to marry. As the California Attorney General has publicly acknowledged, Proposition 8 is not a retroactive measure and thus does not apply to marriages of same-sex couples existing as of November 4, 2008.

*Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 223   (hereafter *Amador Valley*).)

For these reasons, Proposition 8 must be deemed to constitute a "revision" of the Constitution, as opposed to a mere "amendment." Although section 3 of article XVIII confers on the people the power to "amend" our Constitution by initiative, "revisions" properly may be accomplished only through the deliberative process established in sections 1 and 2 of article XVIII.  Because none of the steps necessary to effect a "revision" have taken place here, Proposition 8 is invalid in its entirety.

There can be no question that Proposition 8's validity is "of sufficient public importance" to be taken under this Court's original jurisdiction.  (*Legislature v. Eu* (1991) 54 Cal.3d 492, 500.)  This Court exercises its original jurisdiction where, as here, it can be "uniformly agreed that the issues are of great public importance and should be resolved promptly."  (*Ibid.* [quoting *Raven v. Deukmejian* (1990) 52 Cal.3d 336, 340] [exercising original jurisdiction of matter challenging constitutionality of initiative measure] (hereafter *Raven*).)  This Amended Petition presents issues of the utmost public importance, including the impermissible revision of the California Constitution and the abrogation of our Constitution's most fundamental principles.  These include equal protection and the responsibility of the courts to interpret and enforce the equal protection rights of individuals and minorities, particularly where, as is the case here, both fundamental rights and a suspect classification are involved.

- 13 -

This Court has regularly exercised its original jurisdiction to consider challenges to initiative amendments. (*Ibid.*; see also *Brosnahan v. Brown* (1982) 32 Cal.3d 236, 241.) The voters in this election and, in particular, lesbian and gay individuals and couples who are most directly affected by Proposition 8, are entitled to know whether the voters "have adopted a valid" amendment. (*People v. Frierson* (1979) 25 Cal.3d 142, 172 (hereafter *Frierson*).) This Court accordingly should exercise its original jurisdiction to provide its guidance on the important issues presented by this Amended Petition "at the earliest practicable opportunity." (*Ibid.*) In addition, as explained in section III below, because enforcement of Proposition 8 will cause irreparable harm to same-sex couples and their families whereas staying the enforcement of Proposition 8 will cause no countervailing harm, this Court should grant Petitioners' request for a stay of the enforcement of Proposition 8 pending the adjudication of the initiative's constitutionality.

## II.   This Court Should Grant The Writ Because Proposition 8 Is An Invalid Revision of the California Constitution.

Proposition 8 denies the fundamental right to marry to a minority group based on a classification this Court has deemed to be suspect under the equal protection guarantee of the California Constitution. For the reasons stated below, this Court should hold that Proposition 8 constitutes an attempted revision of our state Constitution, rather than an amendment, and therefore is invalid because it was not enacted through the process

required for a revision by sections 1 and 2 of article XVIII of the California Constitution.   A proposed change to our state Constitution that seeks to elaborate or improve upon existing constitutional principles can be enacted through the initiative process.   But a measure, such as Proposition 8, that seeks to change the "underlying principles" upon which the Constitution is premised (*Livermore*, *supra*, 102 Cal. at pp. 117-119), and that would make "far reaching changes in the nature of our basic governmental plan" (*Amador Valley*, *supra*, 22 Cal.3d at p. 223), must follow a more deliberative procedure, requiring approval by two-thirds of both houses of the Legislature to submit the measure either to the voters or to a constitutional convention.   (Cal. Const., art. XVIII, §§ 1-3.)

Although Proposition 8 is couched in deceptively terse language, its implications for our constitutional scheme are far reaching and profound. Proposition 8 seeks to add the following provision to the California Constitution:   "Only marriage between a man and a woman is valid or recognized in California."   That provision is identical to the text of former Family Code section 308.5, which this Court previously found to be unconstitutional.   (*Marriage Cases*, *supra*, 43 Cal.4th 757.)   Like that former statute, Proposition 8 would establish a facial classification based on sexual orientation in order to mandate government discrimination against gay and lesbian people with respect to the fundamental right to marry.[2]   In

---

[2]   (See *id.* at p. 840 ["Just as a statute that restricted marriage only to couples of the same sex would discriminate against heterosexual persons on

- 15 -

this case, however, Proposition 8 seeks to inscribe that discriminatory classification into our state's Constitution.

If permitted to stand, Proposition 8 would strike directly at the foundational constitutional principle of equal protection in a manner that far transcends its immediate impact on a particular group, by establishing that an unpopular group may be selectively stripped of fundamental rights by a simple majority of voters. In *In re Marriage Cases*, this Court held that the California Constitution subjects government classifications based on sexual orientation to strict scrutiny and that gay and lesbian individuals and couples must have an equal opportunity to enjoy the fundamental right to marry, which derives from the constitutional guarantees of privacy, autonomy, freedom of intimate association and expression, and due process. (*Marriage Cases, supra*, at pp. 822-823, 839-844.) Proposition 8 would not affect this Court's holding that government discrimination based on sexual orientation is subject to strict scrutiny; however, if permitted to take effect, Proposition 8 would create an exception to the requirement of heightened scrutiny for laws that discriminate based on sexual orientation with respect to the fundamental right to marry. In essence, Proposition 8 would prohibit California courts from interpreting or enforcing the

---

the basis of their heterosexual orientation, the current California statutes realistically must be viewed as discriminating against gay persons on the basis of their homosexual orientation."] [citation omitted].)

requirement of equal protection for lesbian and gay persons seeking to exercise the fundamental right to marry.

Such an attempt to mandate government discrimination against a vulnerable minority in our state's Constitution, and to prevent the courts from fulfilling their quintessential constitutional role of protecting minorities, would work such a drastic change in our constitutional system that it must be regarded as a revision rather than an amendment. It is antithetical to our constitutional tradition to single out a particular group on the basis of a suspect classification in order to deprive its members of an "inalienable" right, such as the right to marry, that "embodies fundamental interests of an individual that are protected from abrogation or elimination by the state" under the privacy and due process provisions of article I. (*Marriage Cases*, *supra*, at pp. 810, 818.) Such a change would discard core "underlying principles" on which the California Constitution rests and would alter the structural premise that equal protection, and other fundamental guarantees, belong to all, not just to those favored by the majority. It would also disrupt the system of checks and balances mandated by the California Constitution by undermining the courts' traditional and essential authority to interpret and enforce the foundational requirement of equal protection, particularly where the government not only prohibits a minority from exercising a fundamental right, but does so on the basis of a suspect classification. Article XVIII does not permit such

a far reaching and profound change to our Constitution to be accomplished through the initiative process.

This case presents an issue not directly addressed in any of this Court's prior decisions construing Article XVIII:   whether the initiative process may be used to enshrine in our Constitution discrimination against a disfavored minority with regard to a fundamental right.  But the decisions in this Court's other cases provide helpful guidance by focusing the relevant inquiry on whether an initiative would contradict "a preexisting fundamental principle of constitutional jurisprudence" in a manner that "substantially alters the preexisting constitutional scheme." (*Raven*, *supra*, at p. 354.)   Based on that standard, it is apparent that, by effectively eliminating the courts' ability to enforce the guarantee of equal protection for gay and lesbian persons with respect to the fundamental right to marry, Proposition 8 substantially alters our constitutional scheme and thus may not be enacted through the initiative process.

**A.    The People Of California Intended Article XVIII To Require A More Deliberative Process For Far-Reaching Changes To The Underlying Principles Or The Nature Of The Basic Governmental Plan Of The California Constitution.**

**1.    Article XVIII Prohibits Revision Of The California Constitution By Initiative.**

Article XVIII of the California Constitution provides that the Constitution may be *amended* by initiative; however, it may be *revised* only by the Legislature's submission of a proposed revision to the people, or

through a constitutional convention and popular ratification. (Cal. Const., art. XVIII, §§ 1-3.)  This Court has explained that "[t]he differentiation required [between 'amend' and 'revise'] is not merely between two words; more accurately, it is between two procedures and between their respective fields of application. … [T]here [is] a real difference between amendment and revision." (*McFadden v. Jordan* (1948) 32 Cal.2d 330, 347 (hereafter *McFadden*).)

In *Livermore*, *supra*, 102 Cal. 113, this Court held that the "underlying principles" of the Constitution are meant to be of a "permanent and abiding nature." (*Id.* at pp. 118-119.)  Accordingly, an "amendment implies such an addition or change within the lines of the original instrument as will effect an improvement, or better carry out the purpose for which it was framed." (*Id.* at p. 119.)  In contrast, a revision substantially alters those underlying principles or makes "far reaching changes in the nature of our basic governmental plan." (*Amador Valley*, *supra*, 22 Cal.3d at p. 223.)

This Court has held that "our analysis in determining whether a particular constitutional enactment is a revision or an amendment must be both quantitative and qualitative in nature." (*Ibid.*)  "Substantial changes in *either* respect could amount to a revision." (*Raven*, *supra*, 52 Cal.3d at p. 350, italics added.)  Of particular relevance here, "even a relatively simple enactment may accomplish such far reaching changes in the nature

of our basic governmental plan as to amount to a revision." (*Amador Valley, supra*, at p. 223.)

In *Raven,* for example, the Court struck down an initiative that would have made certain rights of criminal defendants under the California Constitution coextensive with rights under the federal Constitution. (52 Cal.3d at p. 350.) The Court held that the qualitative effect of that measure was significant because of its "formidable impact . . . on the constitutional rights of criminal defendants" and on the role of the courts. (*Id.* at pp. 350-351.) The Court explained that, as a result of Proposition 115, "California courts in criminal cases would no longer have authority to interpret the state Constitution in a manner more protective of defendants' rights than extended by the federal Constitution, as construed by the United States Supreme Court." (*Id.* at p. 352.) That change "would substantially alter the substance and integrity of the state Constitution as a document of independent force and effect." (*Ibid.*) "From a qualitative standpoint," the Court concluded, "the effect of Proposition 115 is devastating." (*Ibid.*)

As explained in sections III.B and III.C below, even more profoundly than the initiative at issue in *Raven*, Proposition 8, by seeking to limit equal access to a fundamental right based on a suspect classification, would have a "formidable impact" both on fundamental principles of the California Constitution and the role of the judiciary in "interpreting and enforcing state constitutional protections." (*Id.* at pp. 350, 354.) Proposition 8 accordingly must be found to be invalid.

## 2.   This Court Has A Duty To Enforce The Provisions Of Article XVIII.

This Court has an obligation to enforce the distinction between amendments and revisions that the people of California established in Article XVIII of the California Constitution.  As the decisions of this Court reflect, the greater protections afforded by the revision process were designed by the people to serve an important gate-keeping function to protect the most fundamental constitutional precepts from being altered through hasty or intemperate action by a momentary political majority.

In *In re Marriage Cases*, this Court held that "the provisions of the California Constitution itself constitute the ultimate expression of the people's will, and that the fundamental rights embodied within that Constitution for the protection of all persons represent restraints that the people themselves have imposed upon the statutory enactments that may be adopted either by their elected representatives or by the voters through the initiative process." (*Marriage Cases*, *supra*, 43 Cal.4th at p. 852.) Likewise, the requirement that a revision of our Constitution may be accomplished only by legislative submission to the voters or a constitutional convention represents a restraint that the people themselves have imposed upon proposed changes to the state Constitution that are especially significant or far reaching.

More than a century ago, this Court explained:

The very term "constitution" implies an instrument of a permanent and abiding nature, and the provisions contained

- 21 -

> therein for its revision indicate the will of the people that the
> underlying principles upon which it rests, as well as the
> substantial entirety of the instrument, shall be of a like
> permanent and abiding nature.

(*Livermore*, *supra*, 102 Cal. at pp. 118.)[3]  Writing after the adoption of the

constitutional provision permitting amendment by initiative, the Court

further explained:

> The people of this state have spoken; they made it clear when
> they adopted article XVIII and made amendment relatively
> simple but provided the formidable bulwark of a
> constitutional convention as a protection against improvident
> or hasty (or any other) revision, that they understood there
> was a real difference between amendment and revision.

(*McFadden*, *supra*, 32 Cal.2d at p. 347.)  In adopting article XVIII, the

people wisely acted to guard against temporary majoritarian sentiments that

could threaten the integrity of our Constitution and its most fundamental

values.  That expression of the people's will is entitled to the highest

respect from the courts of our state.

The people's considered action in forging a critical distinction

between revisions and amendments demonstrates that they share the

conclusion of former Chief Justice Traynor, that if a Constitution "is to

retain respect it must be free from popular whim and caprice which would

make of it a mere statute." (Roger Traynor, Amending the United States

---

[3] The constitutional provisions granting initiative power to the voters
were added to the Constitution after *Livermore*; however, they were
"understood to have been drafted in the light of the *Livermore* decision"
and they maintain the same distinction between a revision and an
amendment.  (See *McFadden*, *supra*, 32 Cal.2d at pp. 333-334.)

Constitution (1927) (unpublished Ph.D. thesis, University of California (Berkeley) [quoted in Rachel A. Van Cleave, *A Constitution in Conflict: The Doctrine of Independent State Grounds And The Voter Initiative In California* (1993) 21 Hastings Const. L.Q. 95, 98, fn. 19].)  If the people of California had wished to retain the power to make substantial, far-reaching changes to the underlying principles or the nature of the basic governmental plan of the Constitution by mere majority vote of the electorate, they could have done so.  Their intentional choice to impose restraint on the power of a temporary majority of voters to make significant changes to the fundamental principles of the California Constitution must be recognized and given proper effect.  For the reasons set forth below, the Court should enforce the distinction set out by the people and hold that Proposition 8 would effect a constitutional revision and therefore cannot be enacted through the less protective amendment process.

>    **B.**   **Proposition 8 Is A Revision Because It Subverts The Fundamental Principle Of Equal Protection And Removes A Critical Structural Check On The Exercise Of Majority Power.**

If permitted to stand, Proposition 8 would subvert the fundamental principle of equal protection, which is not merely a "rule for decision" but "an *informing principle*" that permeates every facet of our constitutional system.  (Karst, *Foreword: Equal Citizenship Under the Fourteenth Amendment* (1977) 91 Harv.L.Rev. 1, 40, 42, italics added (hereafter Karst).)  The requirement of equal protection is embodied in the

Declaration of Rights, set forth in article I of the California Constitution. The first words of the California Constitution not only declare the existence of rights such as liberty, happiness, and privacy, but declare those rights to be "inalienable" and to exist "by nature" in the "free and independent" citizens of this state. (Cal. Const., art. I, § 1.)  In addition, article I, section 7(a) declares that: "A person may not be … denied equal protection of the laws."  And article I, section 7(b) provides that:  "A citizen or class of citizens may not be granted privileges or immunities not granted on the same terms to *all* citizens." (Italics added.)

In contrast to the federal equal protection clause, which was added to the federal Constitution by amendment, the right to equal protection has been part of the California Constitution from its inception.  (See Mosk, *Raven and Revision* (1991) 25 U.C. Davis L.Rev. 1, 13 ["the Declaration of Rights of article 1 is a fundamental part of the state charter"].)  Moreover, this Court has long recognized that article I's guarantee of certain fundamental inalienable rights is part of the very foundation of our system of government. (See *Billings v. Hall* (1857) 7 Cal. 1, 6  [noting that the principle that fundamental rights are inalienable, as articulated in article I, "is as old as the Magna Charta," is "necessary to the existence of civil liberty and free institutions" and "was not lightly incorporated into the Constitution of this State"].)

In addition to the California Constitution's *express* mandates prohibiting the denial of equal treatment, other fundamental constitutional

rights also incorporate an *implicit* requirement of equal protection.   In *People v. Ramirez* (1979) 25 Cal.3d 260, 267 (hereafter *Ramirez*), for example, this Court held that the right to due process of law incorporates a requirement that every person must be treated "as an equal, fully participating and responsible member of society."  In *Committee to Defend Reproductive Rights v. Myers* (1981) 29 Cal.3d 252, 284, in which this Court struck down a discriminatory funding scheme on the ground that it violated the fundamental right to procreative choice, this Court explained that, when determining whether a law restricts a fundamental right in a "discriminatory manner," the Court's analysis "closely parallels" the requirements of equal protection. (*Id.* at p. 276, fn. 22.)  Similarly, in *In re Marriage Cases*, this Court held that the fundamental right to marry incorporates a requirement of "equal dignity and respect." (*Marriage Cases*, *supra*, 43 Cal.4th at p. 831.)

Proposition 8 turns the foundational requirement of equal protection on its head.  A chief purpose of equal protection is to protect groups that, based on a history of discrimination, are likely to be vulnerable to majoritarian oppression. (*Id.* at p. 843, fn. 63; *Sail'er Inn, Inc. v. Kirby* (1971) 5 Cal.3d 1, 19 (hereafter *Sail'er Inn*).)   As this Court has recognized, underlying all suspect classifications is "the stigma of inferiority and second class citizenship associated with them." (*Id.* at p. 841 [citation omitted].)  Suspect classifications, even "irrespective of the nature of the interest implicated," "in and of themselves are an affront to

- 25 -

the dignity and self-respect of the members of the class set apart for disparate treatment." (*Molar v. Gates* (1979) 98 Cal.App.3d 1, 16.) "Such classifications . . . violate 'the most fundamental interest of all, the interest in being treated by the organized society as a respected and participating member.'" (*Ibid.* [quoting Karst, *supra*, at p. 33].)

Perversely, and contrary to the very definition of equal protection, Proposition 8 would *require* disparate government treatment of a stigmatized minority group based on a suspect classification. In *In re Marriage Cases*, this Court found that, like women and racial minorities, gay and lesbian people "historically [have] been subjected to invidious and prejudicial treatment," and yet "society now recognizes that [being gay] . . . bears no relationship to the individual's ability to perform or contribute to society." (*Marriage Cases*, *supra*, 43 Cal.4th at p. 843.) Accordingly, the Court held that laws that discriminate based on sexual orientation must be subjected to strict scrutiny, and that "gay individuals are entitled to the same legal rights and the same respect and dignity afforded all other individuals." (*Id.* at pp. 821-822.) Proposition 8 would effectively eliminate the protections of the state equal protection clause for gay and lesbian people with regard to the fundamental right to marry.

The implications of that attempt to constitutionalize an overt denial of equal protection are profound and are not limited to gay people or to marriage. If the initiative process can be used to selectively deny a fundamental right to gay and lesbian persons based on their sexual

orientation, then that process presumably could be used repeatedly, in piecemeal fashion, to deprive gay and lesbian persons, or other disfavored groups of Californians, of many or even all of their protected rights under the state Constitution. As history has shown, even the most serious and sweeping deprivations of human rights often begin with laws that exclude disfavored groups, in incremental fashion, from "ordinary civic life in a free society." (*Romer v. Evans* (1996) 517 U.S. 620, 631 (hereafter *Romer*).) Proposition 8 opens the door to step-by-step elimination of state constitutional protections for lesbian and gay Californians and, indeed, for other disfavored minorities, perhaps even based on other suspect classifications.[4]  The initiative process cannot be used to effect such a fundamental revision of the state Constitution's core guarantee of equality under the law.

It is no answer to that argument that the federal Constitution may provide some level of protection against majoritarian abuse of minority groups. Gay and lesbian Californians, like all Californians, are entitled to the unique protections of the California Constitution. (See, e.g., *People v.*

---

[4]  See, e.g., Martin Niemöller's now classic formulation of the dangers posed by failing to recognize that permitting the government to discriminate against one disfavored group undermines the freedom of all. (Niemöller (undated) "First they came for the Communists" <http://www.quotationspage.com/quote/29611.html> [as of Nov. 3, 2008] ["First they came for the Communists but I was not a Communist so I did not speak out. Then they came for the Socialists and the Trade Unionists, but I was not one of them, so I did not speak out. Then they came for the Jews but I was not Jewish so I did not speak out. And when they came for me, there was no one left to speak out for me."].)

*Hannon* (1977) 19 Cal.3d 588, 607, fn. 8 [California Constitution is "a document of independent force and effect particularly in the area of individual liberties"]; Cal. Const., art. I, § 24.) Moreover, for that reason, the mere fact that other states may have chosen to include in their constitutions discriminatory bans on marriage by same-sex couples in no way alters the exceptional and far-reaching nature of Proposition 8 under California law. This Court has led the way as the first high court in this nation's history to recognize the basic point that sexual orientation is as impermissible a basis for depriving persons of legal rights as are race and sex. This Court accordingly cannot allow the widespread prevalence of discrimination against gay and lesbian people throughout our nation — which indeed was a central factor in this Court's suspect classification analysis in the *Marriage Cases* — to deter this Court from determining that Proposition 8 would alter the core equal protection principles of this state's Constitution, and that such a measure therefore cannot be enacted through the initiative process.

By eliminating the requirement of equal protection for a vulnerable minority seeking to exercise a fundamental right, Proposition 8 would remove an essential structural check on the exercise of majority power. As Justice Scalia has noted with respect to the federal Constitution, "[w]hat [protects us from oppressive laws] ... is the Equal Protection Clause, which requires the democratic society to accept for themselves and their loved ones what they impose on you and me." (*Cruzan v. Director, Mo. Dept. of*

*Health* (1990) 497 U.S. 261, 300 (conc. opn. of Scalia, J.).)  This Court has similarly noted that "[t]he very purpose of a [federal] Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities . . . ."  (*Marriage Cases*, *supra*, 43 Cal.4th at p. 852 [quoting *W. Va. State Bd. of Ed. v. Barnette* (1943) 319 U.S. 624, 638].)   That same purpose motivated the participants in California's original constitutional convention, who sought to guarantee certain inalienable rights in order to limit the exercise of majority power to protect individuals and minorities.  (See Browne, Report of the Debates in the Convention of California on the Formation of the State Constitution, in September and October, 1849 (1850) p. 409 ["my object is to provide for the protection of minorities — a principle which is so generally recognized under our system of government" (statement of Mr. Price)]; *id.* at p. 22 ["The majority of any community is the party to be governed; the restrictions of law are interposed between them and the weaker party; they are to be restrained from infringing upon the rights of the minority." (statement of Mr. Gwin)]; *id.* at p. 309 ["the object of the Constitution was to protect the minority" (statement of Mr. Botts)].)

Because Proposition 8 would materially impair the courts' role in that system of checks and balances, this case goes far beyond previous cases in which this Court has found ballot initiatives to amend rather than revise the Constitution.  For example, in *People v. Frierson*, the voters were permitted to define the substantive scope of an important right under the

- 29 -

state Constitution — the right to be free from cruel and unusual punishment — through the initiative process. (*Frierson*, *supra*, 25 Cal.3d at p. 187 [holding that initiative approving statutes imposing the death penalty, which this Court had found to violate the state Constitution, was an amendment, not a revision].)  However, *Frierson* dealt with a different question than the one presented here.   To the extent the initiative amendment at issue in *Frierson* limited an important constitutional right, it did so for all Californians alike.  In this case, the issue is not whether the voters can amend the Constitution to alter the fundamental right to marry for all Californians (for example, to take away a particular marital right or to change the name of the institution for all couples).  Rather, the issue is whether voters can *eliminate* the fundamental right to marry *only for a particular group*, *based on a classification this Court has held to be suspect under the California Constitution's equal protection guarantee*.   The answer to that question is "no," just as it surely would have been "no" if the issue in *Frierson* had been whether the voters could amend the Constitution to re-impose the death penalty only for persons of a certain sex, race, religion, national origin, ethnicity, or sexual orientation.

That distinction between *Frierson* and this case is at the core of the issue presented here.  There is a profound difference between a decision by the electorate, for example, to limit the right to the free exercise of religion for all and a decision to limit it only for Muslims or Catholics.  Similarly, if the citizens of this state — subject to limitations imposed by the federal

Constitution — wished to eliminate certain rights of all defendants in criminal trials by amending the state Constitution to that effect, the elimination of those rights might be sufficiently discrete as to represent an "amendment" within the initiative power. (Cf. *In re Lance W.* (1985) 37 Cal.3d 873 [initiative limiting criminal defendants' rights to suppress evidence under the state constitution was an amendment rather than a revision].) However, a proposed initiative saying that only African-American persons, or only women, no longer have the those certain rights would be a far more profound alteration of the "underlying principles" of our constitutional system because it would strike at the heart of the foundational constitutional guarantee of equal protection for all of California's people. (*Livermore, supra*, 102 Cal. at pp. 117-119.)

If enacted, Proposition 8 would remove an essential structural check on the abuse of majority power to encroach upon the rights of minorities by establishing that voters can override the requirements of equal protection even with regard to a fundamental right, and even where the denial of access to that right is based on a suspect classification. Where voters are being asked whether to provide or remove a right generally, voters must determine the scope of protections or benefits they choose to bestow on all citizens — themselves included. (See *Am. Bank & Trust Co. v. Community Hospital of Los Gatos-Saratoga, Inc.* (1984) 36 Cal.3d 359, 399 ["[T]here is no more effective practical guaranty against arbitrary and unreasonable government than to require that the principles of law which officials would

impose upon a minority must be imposed generally."] [citing with approval *Railway Express Agency v. New York* (1949) 336 U.S. 106, 112-113].) However wise or unwise a particular decision to add or remove a right may be, that decision at least would apply equally to all citizens of the state and would thus leave intact the guarantees of the equal protection clause. By contrast, a decision to deny a right only to certain disfavored citizens not only presents a wholly different issue analytically, but raises, in the starkest fashion, the danger of majority oppression. If permitted to take effect, Proposition 8 would establish that a simple majority can eliminate that structural check on majority oppression with respect to gay and lesbian persons, even where access to a fundamental right is at issue, and thus presumably with respect to other disfavored groups of Californians as well. Such a dramatic change in the purpose and function of equal protection in our "preexisting constitutional scheme" would surely constitute a revision, rather than a mere amendment. (*Raven, supra,* 52 Cal.3d at p. 354.)

To the best of Petitioners' knowledge, by seeking to mandate government discrimination against a particular subset of citizens based on a suspect classification, Proposition 8 is unlike any other initiative that has been enacted or even considered by California voters since the initiative process was first adopted. Shamefully, the California Constitution of 1879 incorporated provisions that expressly discriminated against Chinese persons; however, those measures were adopted by a constitutional convention, well before the initiative process existed. (See, e.g., former

Cal. Const., art. XIX, §§ 1, 4 [repealed Nov. 4, 1952]; art. II, § 1 [repealed Nov. 2, 1926].) Similarly, in 1964, California voters enacted Proposition 14, which purported to "amend" the California Constitution to invalidate recently enacted state laws prohibiting racial discrimination in housing. (See *Mulkey v. Reitman* (1966) 64 Cal.2d 529.) Because this Court held that Proposition 14 was invalid on federal equal protection grounds, the Court did not consider whether it was a revision of the California Constitution. Further, Proposition 8 differs from Proposition 14 in two significant respects. Whereas Proposition 14 was facially neutral (despite its manifestly discriminatory purpose) and applied only to private transactions, Proposition 8 incorporates a suspect classification on its face and mandates *government* discrimination against gay and lesbian couples.[5]

---

[5] Proposition 8 also differs significantly from a 1979 proposition ("Proposition 1") amending section 7(a) of Article I to prohibit state courts from imposing obligations "with respect to the use of pupil school assignment or pupil transportation" unless required by the federal constitution. That proposition was a response to this Court's 1976 decision in *Crawford v. Bd. of Ed.* (1976) 17 Cal.3d 280, which held that "de facto" segregation of public schools could constitute a violation of the California equal protection clause, and which also concluded that busing was "one potential tool which may be utilized to satisfy a school district's constitutional obligation" to remedy school segregation. (*Id.* at p. 309.) In a subsequent proceeding in that same case, the California Court of Appeal explained that the effect of Proposition 1 was not to deprive anyone of equal protection, but simply "to withdraw one desegregative technique from the state court's arsenal of remedies available to alleviate unintended nonpurposeful segregation, but to leave all other available techniques intact." (*Crawford v. Bd. of Ed.* (1980) 113 Cal.App.3d 633, 652.) On certiorari, the United States Supreme Court similarly explained that Proposition 1 did not classify based on race and was not "a 'repeal' of the California Equal Protection Clause," which continued to "place[] upon school boards a greater duty to desegregate than does the Fourteenth

- 33 -

The very novelty of that proposal reinforces its fundamental incompatibility with the foundational principles of our Constitution. As the United States Supreme Court observed in *Romer v. Evans* — a decision that struck down a provision of the Colorado Constitution enacted by initiative that sought to bar gay and lesbian people, but no one else, from the protection of anti-discrimination laws — "[i]t is not within our constitutional tradition to enact laws of this sort." (See *Romer*, *supra*, 517 U.S. at p. 633.) As the Court explained, "[r]espect for th[e] principle [of equal protection] explains why laws singling out a certain class of citizens for disfavored legal status or general hardships are rare." (*Id.* at p. 633.) Just as the provision struck down in *Romer* confounded "our constitutional tradition" and "the rule of law" (*ibid.*), so the attempted use of the initiative process in Proposition 8 to single out a certain class of Californians for disfavored treatment is fundamentally alien to the principle of equal protection and the structure of our constitutional scheme.

---

Amendment." (*Crawford v. Bd. of Ed.* (1982) 458 U.S. 527, 541-542.) Here, by contrast, Proposition 8 does not simply limit remedies that the state courts may apply for violations of the state constitutional guarantee of equal protection, but rather directly provides that lesbian and gay couples are not entitled to the protection of the state equal protection clause with respect to the fundamental right to marry. In any event, neither the California Court of Appeal nor the United States Supreme Court addressed whether Proposition 1's limitation of remedies for school-segregation equal protection violations constituted a "revision" of the California Constitution, apparently because the issue was not raised. (E.g., *Crawford*, 113 Cal.App.3d at p. 650 ["The remaining question is the federal constitutionality of [Proposition 1] under the Fourteenth Amendment."].)

In *Livermore, supra*, this Court pointedly juxtaposed the "underlying principles" of the Constitution that are meant to be of a "permanent and abiding nature" with a mere "amendment" which "implies . . . an addition or change within the lines of the original instrument *as will effect an improvement, or better carry out the purpose for which it was framed*." (102 Cal. at pp. 118-119, italics added.) Nothing about Proposition 8 can fairly be said to be an addition or change "within the lines" of our existing Constitution or consistent with the purpose for which the inalienable guarantees of equal protection in Article I were framed. Rather, by deliberately stripping lesbian and gay people of a fundamental right, Proposition 8 cuts directly at the very notion of equal personhood, and the corresponding entitlement to be treated "as an equal, fully participating . . . member of society," that constitute the most bedrock foundation of our Constitution. (See *Ramirez, supra*, 25 Cal.3d at p. 267.) Changes to such bedrock foundational principles can be made, if at all, only through the revision process, and not by amendment.

**C.    Proposition 8 Is A Revision Because It Would Prevent The Courts From Exercising Their Unique Constitutional Responsibility To Protect The Equal Protection Rights Of Minorities.**

As explained above, Proposition 8 would substantially alter our constitutional scheme by subverting the fundamental constitutional premise that all persons are entitled to equal protection of the laws. For many of the same reasons described above, Proposition 8 would have an equally far

- 35 -

reaching effect upon the essential role of the courts in our constitutional scheme and, for that reason, would substantially alter the system of checks and balances that is fundamental to the structure of our constitutional system. Just as the right to equal protection unquestionably is among the most fundamental underlying principles of the California Constitution, the courts' authority to interpret and apply the guarantee of equal protection is a core judicial function that plays a central role in the system of checks and balances mandated by the separation of powers doctrine. (E.g., Cal. Const., art. III, § 3.) As Justice Kennard has noted: "There is a reason why the words 'Equal Justice Under Law' are inscribed above the entrance to the courthouse of the United States Supreme Court. Both the federal and the state Constitutions guarantee to all the 'equal protection of the laws' . . . , and it is the particular responsibility of the judiciary to enforce those guarantees." (*Marriage Cases*, *supra*, at pp. 859-860 (conc. opn. of Kennard, J.).) Discharging that obligation is a court's "gravest and most important responsibility under our constitutional form of government." (*Ibid.*)

Within our state constitutional scheme, the importance of the courts' role as the ultimate arbiter of equal protection in our constitutional system cannot be overstated. As Justice Kennard further explained:

> The architects of our federal and state Constitutions understood that widespread and deeply rooted prejudices may lead majoritarian institutions to deny fundamental freedoms to unpopular minority groups, and that the most effective remedy for this form of oppression is an independent

- 36 -

> judiciary charged with the solemn responsibility to interpret
> and enforce the constitutional provisions guaranteeing
> fundamental freedoms and equal protection.

(*Ibid.*) By safeguarding the equal protection rights of individuals and

minorities, the courts enforce the fundamental constitutional limitations on

majority power that are necessary to ensure that every person is "treated by

the organized society as a respected and participating member." (*Molar v.*

*Gates* (1979) 98 Cal.App.3d 1, 16.) Without the courts' authority to

interpret and apply the guarantee of equal protection to prevent majorities

from encroaching on minority rights, there is a danger that entrenched

patterns of historical discrimination would become fixed, and disfavored

groups would be relegated to a permanent or semi-permanent position of

"second class citizenship." (*Sail'er Inn*, *supra*, 5 Cal.3d at p. 19.) Such a

result would be fundamentally antithetical to our basic governmental plan.

As Justice Harlan long ago noted of the federal Constitution, the California

Constitution "neither knows nor tolerates classes among citizens." (*Plessy*

*v. Ferguson* (1896) 163 U.S. 537, 559 (diss. op. of Harlan, J.) The courts'

role in enforcing that prohibition is paramount.

In fact, this Court has described the courts' role in preserving the

equal protection rights of individuals and minorities as "probably the most

fundamental" of all of the protections secured by our tripartite

constitutional scheme. As this Court explained:

> The separation of powers doctrine articulates a basic
> philosophy of our constitutional system of government; it
> establishes a system of checks and balances to protect any

> one branch against the overreaching of any other branch.  Of
> such protections, probably the most fundamental lies in the
> power of the courts to test legislative and executive acts by
> the light of constitutional mandate and in particular to
> preserve constitutional rights, whether of individual or
> minority, from obliteration by the majority.

(*Bixby v. Pierno* (1971) 4 Cal.3d 130, 141 (hereafter *Bixby*)); *id.* at 142-

143 [contrasting court's minimal role in reviewing economic legislation to

the critical "judicial protection [of] minorities"].)

Proposition 8 would strike directly at the courts' ability to exercise

that essential constitutional authority to protect minorities against

overreaching by the majority.  Proposition 8 does not purport to abolish the

equal protection clause; therefore, even if Proposition 8 were to go into

effect, the equal protection clause would remain part of the California

Constitution.   But Proposition 8 would require a court to deny equal

protection claims by same-sex couples seeking to exercise the freedom to

marry in the future, even though the court's independent judgment would

be that the state equal protection clause requires that the right to marry be

available on equal terms.  This case is thus distinguishable from *Frierson*,

where the California Supreme Court retained the power to enforce the

fundamental state constitutional right to be free from cruel and unusual

punishment for all Californians and even to strike down *particular* death

sentences as violations of the California Constitution.   (See *Frierson*,

*supra*, 25 Cal.3d at p. 187 [holding with regard to the capital statutes at

issue that the Court "retain[ed] broad powers of judicial review of death

sentences to assure that each sentence has been properly and legally imposed and to safeguard against arbitrary or disproportionate treatment"].) By contrast, Proposition 8 seeks to completely bar the Court from enforcing the fundamental right to marry exclusively for a particular group of persons (lesbians and gay men).

This case differs from *Frierson* in a closely related respect as well. The statutes approved by the initiative at issue in *Frierson* provided that *anyone* who committed a capital offense could be subject to the death penalty. (*Frierson, supra*, 25 Cal.3d at p. 185; see also *People v. Anderson* (1972) 6 Cal.3d 628, 652 [describing statutes].) No group was singled out for differential treatment under the capital sentencing laws at issue in *Frierson*. In contrast, Proposition 8 singles out a class of persons based on their sexual orientation and excludes them — and only them — from the exercise of a fundamental right that is otherwise available to all other qualified Californians. That distinction between the situations presented in *Frierson* and this case is critical. Regardless of whether the people may by initiative limit *for all persons* the substantive scope of a particular fundamental right (for example, by providing that the prohibition on cruel and unusual punishment does not prohibit an otherwise proportionate and non-discriminatory imposition of a particular penalty), any attempt, such as with Proposition 8, to impose such a limitation only on a disfavored group strips California's judicial branch of its traditional authority to interpret and enforce our state's equal protection guarantees on behalf of unpopular

minorities. (See *Bixby*, *supra*, 4 Cal.3d at p. 141.) Because such an unprecedented diminution of the Court's role would substantially alter our constitutional scheme, Proposition 8 is a revision of the California Constitution, and its enforcement should be enjoined because the measure was not enacted in compliance with the procedures for enactment of a revision.

Proposition 8 would alter the traditional separation of powers in an even more profound sense. Virtually by definition, every act of government involves a decision to allocate resources and rights and thereby to "discriminate" in some fashion. Thus, a decision to confer a benefit on X, but to withhold it from Y, is a form of discrimination, as is a decision to impose a burden on A but not B. For the most part, the power to make such allocations lies with the Legislature (or with the people acting in a legislative capacity through the initiative power), subject to the limitation that there must be a "rational basis" for their determination. (See, e.g., *Bixby*, *supra*, 4 Cal.3d at p. 142.) Put otherwise, in most circumstances, the Legislature has a presumptive right to choose how to ration the benefits and burdens of governmental authority. (*Ibid.*)

There is, however, a critical limitation on that principle, and that limitation is fundamental not only to the operation of equal protection but to the system of checks and balances required by the separation of powers doctrine. Within our constitutional tradition, when the courts determine that a right is fundamental or that a legislative classification has been drawn

- 40 -

upon suspect lines, the ordinary presumptions of legislative competence and deference to the line-drawing authority of the legislative function do not apply. In those situations, the judiciary must play a more active role in ensuring that an individual or group denied a fundamental right or disadvantaged on the basis of a suspect classification is insulated from the potential oppression of majoritarian sentiment. Thus, where a fundamental right or a suspect classification is at issue, those who are adversely affected by the government's actions are entitled to searching *judicial* protection. (See *Bixby*, *supra*, 4 Cal.3d at pp. 142-143; see also *Marriage Cases*, *supra*, 43 Cal.4th at pp. 839-847.) That the courts have a particular responsibility to enforce the guarantee of equal protection under those circumstances is a "fundamental principle of constitutional jurisprudence" (*Raven*, *supra*, 52 Cal.3d at p. 354) that is an essential component of the checks and balances mandated by the California Constitution.

In purporting to require the government to deny a fundamental right (marriage) to a group defined by a suspect classification (lesbians and gay men), Proposition 8 would not merely restrict the courts' traditional role in that system of checks and balances. It would entirely strip the courts of authority to enforce the guarantee of equal protection under the very circumstances where judicial authority is ordinarily at its height. Doing so would strike directly at the heart of the allocation of legislative and judicial competence in a way that fundamentally alters the separation of powers contemplated by our existing constitutional scheme. Such a serious

- 41 -

revision of our state Constitution cannot be enacted through the initiative process.

If the people purported to enact an initiative repealing the equal protection clause entirely, there surely would be little doubt that that their action in doing so would be disallowed as prohibited constitutional revision. However, it matters not that Proposition 8 would eliminate the courts' traditional authority to interpret and enforce the guarantee of equal protection "only" with regard to a single group and "only" with regard to marriage. For example, it is apparent that if an initiative tried to pass a constitutional amendment that barred African-Americans from marriage or that excluded women from public schools, the resulting interference with the courts' authority to enforce equal protection by constitutionalizing the discrimination would be an invalid revision of the California Constitution, because it would strike so directly at a core judicial function.

The same is true here. If Proposition 8 were to take effect, California courts would be rendered powerless to enforce the guarantee of equal protection for a historically stigmatized and disadvantaged minority with regard to the exercise of a fundamental right. If this Court were to hold that such a fundamental and far-reaching change in our constitutional system could be enacted by a simple majority vote, there would be no principled barrier to further "amendments" that sequentially stripped gay and lesbian persons, or other groups of Californians, of additional fundamental rights. By restricting the courts' traditional authority to

invalidate such overtly discriminatory measures, Proposition 8 would significantly alter the system of checks and balances mandated by our Constitution.[6] Proposition 8 accordingly is invalid because it was not adopted through the revision process.

### III. This Court Should Exercise Its Inherent Authority To Stay The Certification And Enforcement Of Proposition 8 Until Its Validity Is Established.

Immediate injunctive or other appropriate relief is necessary to stay the enforcement of Proposition 8 during the pendency of these writ proceedings. The implementation of Proposition 8 would cause serious and irreparable harm to same-sex couples who wish to exercise the fundamental right to marry guaranteed them under the California Constitution. Many same-sex couples will be prevented — some possibly permanently — from exercising that fundamental right if Proposition 8 is permitted to take effect before this Court has determined the validity of the initiative. By contrast, a temporary stay of Proposition 8's enforcement while this Court determines its validity will harm no one; in fact, the rights of other

---

[6] Indeed, it would have been impermissible for the 1911 initiative that gave voters the power to amend the California Constitution through the initiative process to have included within that power the ability to make such a significant change to the foundational principle of equal protection and the Court's role in enforcing that principle to protect minorities and to prevent discriminatory violations of fundamental rights. Any such grant of power could itself only have been bestowed by a *revision*, rather than an initiative.

Californians will not be affected in any way by the preliminary relief Petitioners seek.   In short, because there are weighty constitutional questions about whether Proposition 8 constitutes an impermissible revision of the California Constitution, and because the potential for harm falls exclusively on same-sex couples who wish to marry, preliminary relief to prevent enforcement of the initiative is necessary and appropriate.

A.   **The Supreme Court Has Inherent Authority To Stay The Implementation Of Proposition 8 Until Its Validity Is Established.**

California law recognizes the inherent authority of this Court "to make any order appropriate to preserve the status quo" and to issue any appropriate writ "in aid of its jurisdiction." (Code. Civ. P. § 923; see also Cal. Rules of Court 8.116, 8.490(b)(7).)  In *Rosenfeld v. Miller* (1932) 216 Cal. 560, the Court indicated that a stay of enforcement may be ordered "to preserve the status quo until the final determination of [an] action" pending before this Court.  (*Id.* at p. 563.)  Likewise, in *Segarini v. Bargagliotti* (1924) 193 Cal. 538, the Court stated that it "may properly, in the exercise of a sound discretion, grant [a] writ [to maintain the status quo] upon such terms as will be just and will adequately protect the rights of the respondent."  (*Id.* at p. 539.)

Immediate relief is appropriate where there is "no disadvantage or prejudice" to the respondents in delay of enforcement, and the parties seeking relief from the appellate tribunal "could well be irreparably damaged." (*Cal. Table Grape Comm'n v. Dispoto* (1971) 14 Cal.App.3d

- 44 -

314, 316.)  "If the denial of an injunction would result in great harm to the [party seeking relief], and the [respondents] would suffer little harm if it were granted, then it is an abuse of discretion to fail to grant the preliminary injunction." (See *Robbins v. Superior Court* (1985) 38 Cal.3d 199, 205; see also *2M Restaurants, Inc. v. San Francisco Local Joint Exec. Bd. of Culinary Workers* (1981) 124 Cal.App.3d 666, 674 [describing the "inherent power" of the judiciary to "to protect a right from unlawful and injurious interference" through "preservation of the status quo until a final determination of the merits of the action"].)

The Court must "evaluate two interrelated factors: (i) the likelihood that the party seeking the injunction will ultimately prevail on the merits of his claim, and (ii) the balance of harm presented, i.e., the comparative consequences of the issuance and nonissuance of the injunction." (*Common Cause v. Bd. of Supervisors* (1989) 49 Cal.3d 432, 441-442, 447.)  But the "presence or absence of each factor is usually a matter of degree," and immediate relief is appropriate "if the party seeking the injunction can make a sufficiently strong showing" as to one of these factors. (*Id.*, at p. 447.)  The "principal objective" of such injunctive relief "'is to minimize the harm which an erroneous interim decision may cause.'" (*White v. Davis* (2003) 30 Cal.4th 528, 561 [quoting *IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 73].)  Thus, even where it is unclear how the merits of a claim will be resolved, injunctive relief is appropriate and warranted where, as here, the party seeking relief will

- 45 -

shoulder an enormous and unique constitutional burden unless the circumstances that existed prior to the passage of the challenged act are maintained. (*Ibid.* [noting that "a court faced with the question whether to grant a preliminary injunction cannot ignore the possibility that its initial assessment of the merits, prior to a full adjudication, may turn out to be in error."].)

### B. Immediate Relief Is Warranted Because This Amended Petition Raises Serious Constitutional Questions And Proposition 8 Poses An Enormous And Irreparable Burden Exclusively On The Rights Of Same-Sex Couples.

As explained above, Proposition 8 constitutes a revision of the California Constitution, unlawfully accomplished through the initiative process for constitutional amendments, rather than the more deliberative process required for constitutional revisions. (Cal. Const., art. XVIII, §§ 1-3.) Absent relief from this Court, the initiative will deprive unmarried lesbian and gay individuals and couples of "a vitally important attribute of the fundamental interest in liberty and personal autonomy that the California Constitution secures to all persons for the benefit of both the individual and society" — namely, the right to marry. (*Marriage Cases*, *supra*, 43 Cal.4th at pp. 781-782; see also Cal. Const., art. XVIII, § 4 [providing that an amendment "takes effect the day after the election unless the measure provides otherwise"].)

Moreover, and more importantly for purposes of providing an immediate injunction or other appropriate relief, Proposition 8 imposes

enormous and undeniable hardships exclusively on same-sex couples who wish to exercise their constitutional right to marry in the future. In light of this Court's ruling in *In re Marriage Cases*, it cannot reasonably be disputed that the deprivation of the fundamental right to marry represents an irreparable injury of enormous constitutional dimension. Further, it is equally clear that the potential harm in this case falls solely on Petitioners and others similarly situated to them and that preservation of the status quo ante will cause no harm to Respondents or to any other party while the validity of Proposition 8 is resolved.

1.   **Proposition 8 Deprives A Constitutionally Protected Class Of The "Core" Constitutional Right To Marry.**

"[P]ast California cases establish beyond question that the right to marry is a fundamental right whose protection is guaranteed to all persons by the California Constitution." (*Marriage Cases*, *supra*, 43 Cal.4th at p. 809.) Indeed, the "basic *substantive* legal rights and attributes traditionally associated with marriage . . . are so integral to an individual's liberty and personal autonomy that they may not be eliminated or abrogated by the Legislature or by the electorate through the statutory initiative process." (*Id.* at p. 781 [emphasis in original].) These "core" constitutional values involve "the right of an individual to establish a legally recognized family with the person of one's choice, and, as such, [it] is of fundamental significance both to society and to the individual." (*Id.* at pp. 814-815.) In precluding an entire category of Californians, *and only that category of*

*Californians*, from exercising these rights, Proposition 8 directly destroys equality and liberty interests of the highest constitutional order.

As the Court recognized in *In re Marriage Cases*, the right to marry, which is entitled to the strictest of constitutional protection (*see id.* at p. 844), involves more than merely the catalogue of concrete rights and obligations generally associated with the institution of marriage, such as those related to property, taxes, or adoption (*id.* at pp. 801-808).   In addition, "the historic and highly respected designation of marriage" provides to couples an inimitable degree of "dignity, respect, and stature" that is accorded by the state by virtue of these "officially recognized family relationships." (*Id.* at pp. 830-831.)   Furthermore, the fundamental rights of expression and association are intimately intertwined with marriage: "the opportunity to publicly and officially express one's love for and long-term commitment to another person by establishing a family together with that person also is an important element of self-expression that can give special meaning to one's life." (*Id.* at p. 817; see, e.g., Declaration of Phyllis Lyon at ¶¶ 3-7 (Petrs' Appx. ("PA") pp. 24-26); Declaration of Eileen Ma at ¶ 8 (PA pp. 31-32).)   As in other cases involving such expressive and associational rights, but particularly with regards to the abrogation of those rights with regards to a protected class of individuals, irreparable harm should be *presumed* from any denial of the right to marry, and should suffice in this case to establish Petitioners' right to immediate relief pending adjudication of this challenge. (Cf. *Elrod v. Burns* (1976) 427 U.S.

- 48 -

347, 373 ["The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."].)

### 2. The Harm Perpetuated By Proposition 8 Is Irreparable, And It Is Borne By Same-Sex Couples And No Others.

Proposition 8 mandates government discrimination based on sexual orientation by purporting to add to the California Constitution a provision that specifically abrogates the fundamental right of marriage only for gay and lesbian persons. (*See Marriage Cases*, *supra*, 43 Cal.4th at pp. 840-841.)  As the Court recognized in *In re Marriage Cases*, "realistically viewed," laws denying same-sex couples access to the institution of marriage "operate clearly and directly to impose different treatment on gay individuals because of their sexual orientation." (*Id.* at p. 839.)  Indeed, the ballot arguments in favor of Proposition 8 make clear that the initiative was *intended* to eliminate the right of lesbian and gay individuals to marry same-sex partners. (See, e.g., *Argument In Favor Of Proposition 8* [describing intent to eliminate "gay marriage" and describing alleged consequences "if the gay marriage ruling is not overturned"], Exh. A to Declaration of Lika C. Miyake In Supp. Of Petrs.' Mot. For Jud. Not.).  As with the statutory provisions invalidated in *In re Marriage Cases*, the effect of Proposition 8 is to selectively deprive one group of citizens access to the central social institution of marriage based on a characteristic that bears no relationship to their ability to participate in or contribute to society.

There is no countervailing harm to any other party that could create a need to "balance" the hardships in this matter. The denial of a preliminary injunction or similar relief would result in "great harm" to same-sex couples, while different-sex couples "would suffer little harm" — if any — if preliminary relief is granted. (*Robbins*, *supra*, 38 Cal.3d at p. 205.) Just as the rights of heterosexual persons and couples would be entirely unaffected by the application Proposition 8, that group would also suffer no harm at all from a decision to stay its implementation. (See *Marriage Cases*, *supra*, 43 Cal.4th at p. 825 [noting that heterosexual couples would "continue to enjoy precisely the same constitutional rights they traditionally have possessed"].) The unambiguously one-sided nature of the constitutional burdens imposed by Proposition 8 is alone sufficient justification to warrant preliminary relief precluding the initiative's enforcement while this Court considers the merits of this Amended Petition.

### C.   Preservation Of The Status Quo Is Necessary To Prevent Irreparable Harm To Same-Sex Couples.

Same-sex couples will suffer irreparable harm if Proposition 8 is not stayed immediately. In the absence of a stay, same-sex couples would be precluded from marrying while this litigation is pending, and in some cases the denial of this fundamental right will be absolute. Inevitably, there will be cases similar to that of David Lawson, whose partner passed away just months before the decision *In re Marriage Cases* issued. (Declaration of

David N. Lawson, at ¶¶ 3, 6 (PA pp. 17-18).)  Without interim relief to prevent the enforcement of Proposition 8, it is certain that other couples will suffer similar misfortunes if the initiative becomes effective immediately, with at least some couples permanently prevented from marrying due to death, illness, or other circumstances arising while this action is pending.  Similarly, some couples may forever lose the chance to have their weddings attended by their loved ones if they are forced to wait to marry until the resolution of the instant Amended Petition, as family members may be in declining health and may become entirely unable to travel to California before these proceedings conclude.  (See Declaration of Karen L. Strauss, at ¶¶ 9-13, 16 (PA pp. 45-47, 48).)  The Court has inherent and equitable discretion to provide preliminary relief to prevent this type of irreparable harm.

It is of the utmost significance that Petitioners seek only to *preserve* the situation that has existed in California since this Court's decision in *In re Marriage Cases* became effective.  That is, Petitioners seek not to create or alter any rights, but only to keep in place the existing constitutional rights held by same-sex couples until Proposition 8 can be tested against the requirements of the California Constitution.  Thus, in contrast to other cases where this Court has found that preliminary relief was inappropriate, this *is* a case in which the Court, "by temporarily refraining from enforcing a state law, merely preserve[s] the status quo to prevent potentially irreparable harm pending judicial determination of a legitimate and substantial

constitutional question about [a] law's validity." (*Lockyer v. City and County of San Francisco* (2004) 33 Cal.4th 1055, 1128.) This Court has inherent authority "to make any order appropriate to preserve the status quo" (Code. Civ. P. § 923), and Petitioners respectfully request that the Court do so here to stay Proposition 8 until the merits of this challenge to this unprecedented initiative are decided.

## IV.   Conclusion

For the reasons stated above, Petitioners respectfully urge this Court to grant the relief sought in the attached Amended Writ Petition.


Dated: Nov. 5, 2008        Respectfully submitted,

SHANNON P. MINTER
MELANIE ROWEN
CATHERINE SAKIMURA
ILONA M. TURNER
SHIN-MING WONG
CHRISTOPHER F. STOLL
National Center for Lesbian Rights

GREGORY D. PHILLIPS
JAY M. FUJITANI
DAVID C. DINIELLI
MICHELLE FRIEDLAND
LIKA C. MIYAKE
MARK R. CONRAD
Munger, Tolles & Olson LLP

JON W. DAVIDSON
JENNIFER C. PIZER
F. BRIAN CHASE
TARA BORELLI
Lambda Legal Defense and
Education Fund, Inc.

ALAN L. SCHLOSSER
ELIZABETH O. GILL

ACLU Foundation of Northern California

MARK ROSENBAUM
CLARE PASTORE
LORI RIFKIN
ACLU Foundation of Southern California

DAVID BLAIR-LOY
ACLU Foundation of San Diego and
Imperial Counties

DAVID C. CODELL
Law Office of David C. Codell

STEPHEN V. BOMSE
Orrick, Herrington & Sutcliffe LLP

By: _____

SHANNON P. MINTER

*Attorneys for Petitioners Karen L. Strauss,*
*Ruth Borenstein, Brad Jacklin, Dustin*
*Hergert, Eileen Ma, Suyapa Portillo,*
*Gerardo Marin, Jay Thomas, Sierra North,*
*Celia Carter, Desmund Wu, James Tolen*
*and Equality California*

## CERTIFICATE OF WORD COUNT
## PURSUANT TO RULE 8.204(c)(1)

Pursuant to California Rule of Court 8.204(c)(1), counsel for Petitioners hereby certifies that the number of words contained in this Amended Petition For Extraordinary Relief, Including Writ Of Mandate And Request For Immediate Injunctive Relief; Memorandum Of Points And Authorities, including footnotes but excluding the Table of Contents, Table of Authorities, and this Certificate, is 12,444 words as calculated using the word count feature of the computer program used to prepare the brief.

By: _____
LIKA C. MIYAKE

## PROOF OF SERVICE BY HAND

I declare as follows:

1.      I am over the age of 18 and not a party to the within cause.  I am employed by Wheels of Justice in the County of San Francisco, State of California.  My business address is 657 Mission Street, Suite 502, San Francisco, CA 94105.

2.      On November 5, 2008, I served a true copy of the attached documents entitled

- AMENDED PETITION FOR EXTRAORDINARY RELIEF, INCLUDING WRIT OF MANDATE AND REQUEST FOR IMMEDIATE INJUNCTIVE RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES

in addressed, sealed envelopes, clearly labeled to identify the persons being served at the addresses shown below and I delivered the envelope by hand to the offices of the addressee.

> Mark B. Horton, MD, MSPH
> State Registrar of Vital Statistics
> of the State of California and
> Director of the California Department of
> Public Health
> 1615 Capitol Avenue, Suite 73.720
> P.O. Box 997377 MS 0500
> Sacramento, CA 95899-7377
> (916) 558-1700

6284221.1

Linette Scott, MD, MPH
Deputy Director of Health Information and
Strategic Planning of the California
Department of Public Health
1616 Capitol Avenue, Suite 74.317
Mail Stop 5000
Sacramento, CA 95814
(916) 440-7350

Edmund G. Brown, Jr.
California Attorney General
1300 "I" Street
P.O. Box 94255
Sacramento, CA 94244-2550
(916) 445-9555

1515 Clay Street, Room 206
Oakland, CA 94612
(510) 622-2100

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 5, 2008, at San Francisco, California.