1  MENNEMEIER, GLASSMAN & STROUD LLP
   KENNETH C. MENNEMEIER (SBN 113973)
2  KELCIE M. GOSLING (SBN 142225)
   LANDON D. BAILEY (SBN 240236)
3  980 9th Street, Suite 1700
   Sacramento, CA 95814-2736
4  Telephone:  916-553-4000
   Facsimile:  916-553-4011
5
   Attorneys for Defendants
6  Arnold Schwarzenegger, in his official capacity as Governor of
   California, Mark B. Horton, in his official capacity as Director of the
7  California Department of Public Health and State Registrar of Vital
   Statistics, and Linette Scott, in her official capacity as Deputy Director
8  of Health Information & Strategic Planning for the California Department
   of Public Health
9

10                      UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12                        SAN FRANCISCO DIVISION

13
   KRISTIN M. PERRY, SANDRA B. STIER, )   Case No. 09-CV-02292 VRW
14 PAUL T. KATAMI, and JEFFREY J.      )
   ZARRILLO,                           )   THE ADMINISTRATION'S OPPOSITION
15                                     )   TO PLAINTIFFS' MOTION FOR
                     Plaintiffs,       )   PRELIMINARY INJUNCTION
16                                     )
   v.                                  )   Date:   July 2, 2009
17                                     )   Time:   10:00 a.m.
   ARNOLD SCHWARZENEGGER, in his       )   Location: Courtroom 6, 17th Floor
18 official capacity as Governor of California; )   The Honorable Vaughn R. Walker
   EDMUND G. BROWN, JR., in his official )
19 capacity as Attorney General of California; )
   MARK B. HORTON, in his official     )
20 capacity as Director of the California )
   Department of Public Health and State )
21 Registrar of Vital Statistics; LINETTE )
   SCOTT, in her official capacity as Deputy )
22 Director of Health Information & Strategic )
   Planning for the California Department )
23 of Public Health; PATRICK O'CONNELL, )
   in his official capacity as Clerk-Recorder for )
24 the County of Alameda; and DEAN C.  )
   LOGAN, in his official capacity as   )
25 Registrar-Recorder/County Clerk for the )
   County of Los Angeles,              )
26                                     )
                     Defendants.       )
27 _____)

28

# I.

## INTRODUCTION

Defendants Arnold Schwarzenegger, in his official capacity as Governor of California, Mark B. Horton, in his official capacity as Director of the California Department of Public Health and State Registrar of Vital Statistics, and Linette Scott, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health (collectively "the Administration"), oppose Plaintiffs' application for preliminary injunctive relief for prudential reasons.

Plaintiffs ask this Court to issue a preliminary order directing state officials and two county clerks to issue marriage licenses to same-sex couples. They argue that the United States Constitution precludes the State of California from limiting the definition of marriage to opposite-sex couples and obligates the State to issue marriage licenses in a gender-neutral manner. Plaintiffs present federal constitutional questions of national interest. Those issues will surely be decided in the appellate courts, perhaps in the United States Supreme Court.

The State of California and its citizens have already confronted the uncertainty that results when marriage licenses are issued in a gender-neutral manner prior to the issuance of a final, judicial determination of legal and constitutional issues. The State and its citizens have a profound interest in not having to confront that uncertainty again. The federal constitutional issues that Plaintiffs raise are important and difficult, but those issues should be decided *before* any court orders the State and its public officials to issue marriages licenses in a gender-neutral manner. For these and the other reasons explained below, the Court should deny Plaintiffs' application for preliminary injunctive relief.

# II.

## BACKGROUND

California's statutes have long defined marriage as being between a man and a woman. Fam. Code §§ 300, 308.5. In 2004, legal challenges to those statutes began to arise.

THE ADMINISTRATION'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - CASE NO. 09-CV-02292 VRW

1        In February 2004, the county clerk for the City and County of San Francisco

2   began issuing marriage licenses to same-sex couples.  That prompted state Attorney General Bill

3   Lockyer to bring an original mandate proceeding in the California Supreme Court.  In March

4   2004, that court issued an order to show cause why a writ of mandate should not issue requiring

5   county officials to abide by the California marriage statutes in the absence of a judicial

6   determination that those statutes were unconstitutional.  The court also issued an order directing

7   county officials to enforce the State's marriage statutes and to refrain from issuing marriage

8   licenses not authorized by those statutes.  The court added, though, that its order did not preclude

9   the filing of a declaratory relief action raising a substantive constitutional challenge to the State's

10  marriage statutes.  *See Lockyer v. City and County of San Francisco*, 33 Cal. 4th 1055, 1069-74

11  (2004) (describing the events that gave rise to the initial judicial proceedings).

12       In the interim, between February 12, 2004, and March 11, 2004, approximately

13  4,000 same-sex marriages were performed under licenses issued by the county clerk of the City

14  and County of San Francisco.  In August 2004, the state Supreme Court issued its decision in

15  *Lockyer*, ruling that local officials had overstepped their legal authority in issuing marriage

16  licenses to same-sex couples.  The court also ruled that the same-sex marriages entered into

17  pursuant to those licenses were invalid.  *Id.* at 1113-1119.  In doing so, the court declined to

18  leave those marriages intact pending a determination of the constitutionality of the state's

19  marriage statutes.  The court stated:  "Now that we have confirmed that the city officials lack this

20  authority [to issue marriage licenses to same-sex couples], we do not believe that these couples

21  have a persuasive equitable claim to have the validity of the marriages left in doubt at this point

22  in time, creating uncertainty and potential harm to others who may need to know whether the

23  marriages are valid or not."  *Id.* at 1118.

24       While the *Lockyer* case was pending, the City and County of San Francisco

25  initiated a declaratory relief action in superior court, seeking a declaration that California's

26  marriage statutes violated the California Constitution.  In April 2005, the superior court ruled that

27  California's marriage statutes were unconstitutional, but the trial court stayed enforcement of its

28  judgment pending appeal.  In May 2008, in a 4-3 decision, the California Supreme Court ruled

THE ADMINISTRATION'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION -
CASE NO. 09-CV-02292 VRW

1  that California's marriage statutes violated the California Constitution because they precluded

2  same-sex couples from marrying. *In re Marriage Cases*, 43 Cal. 4th 757 (2008).

3        In response, in November 2008, California voters passed Proposition 8. That

4  initiative measure added a new section to the California Constitution, providing: "Only marriage

5  between a man and a woman is valid or recognized in California." Cal. Const. art. I, § 7.5.

6  Opponents immediately challenged the constitutionality of that measure under the state

7  constitution. On May 26, 2009, in a 6-1 decision, the California Supreme Court upheld

8  Proposition 8. *See Strauss v. Horton*, 93 Cal. Rptr. 3d 591, 2009 Cal. LEXIS 4626 (2009).

9        Plaintiffs served this action the next day.[1] Plaintiffs seek a preliminary injunction

10  ordering various public officials "to issue marriage licenses to otherwise-qualified same-sex

11  couples." Motion, at 18:15-16 (Doc # 7, at 23). This opposition addresses that application.

### III.

### ARGUMENT

**A.    As Plaintiffs Seeking a Preliminary Injunction that Would Alter the**

       **Status Quo, Plaintiffs Bear a Heavy Burden.**

16        A preliminary injunction is "an extraordinary remedy never awarded as of right,"

17  granted only "upon by a clear showing that the plaintiff is entitled to relief." *Winter v. Natural*

18  *Res. Def. Council, Inc.*, 129 S. Ct. 365, 376 (2008). *See also Munaf v. Geren*, 128 S. Ct. 2207,

19  2219 (2008) ("[a] preliminary injunction is an 'extraordinary and drastic remedy'"); *Mazurek v.*

20  *Armstrong*, 520 U.S. 968, 972 (1997) ("It frequently is observed that a preliminary injunction is

21  an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear*

22  *showing*, carries the burden of persuasion" (emphasis in original); quoting 11A C. Wright, A.

23  Miller, & M. Kane, *Federal Practice and Procedure* § 2948, at 129-30 (2d ed. 1995)).

24        Plaintiffs who seek a preliminary injunction must establish all of the following:

25  (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the

---

    [1]    Although Plaintiffs served this action on May 27, 2009, they filed it on May 22, 2009, in apparent anticipation of the *Strauss* decision.

1   absence of preliminary relief; (3) the "balance of equities" tips in their favor; and (4) an

2   injunction is in the public interest. *Winter*, 129 S. Ct. at 374; *American Trucking Ass'ns, Inc. v.*

3   *City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009); *Reiffin v. Microsoft Corp.*, 158 F.

4   Supp. 2d 1016, 1028 (N.D. Cal 2001). As to the fourth consideration, the Supreme Court

5   recently reiterated that courts "should pay particular regard for the public consequences in

6   employing the extraordinary remedy of injunction." *Winter*, 129 S. Ct. at 376-377 (quoting

7   *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

8          Preliminary injunctive relief is intended as an equitable device to preserve the

9   status quo. *See University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (the "purpose of a

10  preliminary injunction is merely to preserve the relative positions of the parties until a trial on the

11  merits can be held"); *Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 786 (9th Cir. 2001)

12  (preliminary injunction is "a device for preserving the status quo").

13         As the Ninth Circuit has repeatedly stated, "mandatory" injunctions (that is,

14  injunctions that compel a party to take action, as opposed to injunctions that restrain a party from

15  taking a certain action) are categorically disfavored. *See, e.g., Anderson v. United States*, 612

16  F.2d 1112, 1114 (9th Cir. 1979) ("generally an injunction will not lie except in prohibitory

17  form"); *Stanley v. University of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (mandatory

18  injunctive relief generally denied "unless the facts and law clearly favor the moving party").

19  Thus, requests for "mandatory" injunctions that would disrupt, rather than preserve, the status

20  quo warrant heightened scrutiny. *See Dahl v. HEM Pharm. Corp.*, 7 F.3d 1399, 1403 (9th Cir.

21  1992) (injunctive relief mandating "affirmative conduct" is "subject to heightened scrutiny");

22  *Martin v. International Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) ("courts should be

23  extremely cautious about issuing a preliminary injunction" where the moving party "seeks

24  mandatory relief that goes well beyond maintaining the status quo").

25         Extreme caution is also warranted where, as here, complete relief is sought

26  through preliminary injunction. *See Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809

27  (9th Cir. 1963) ("it is not usually proper to grant the moving party [seeking preliminary

28  injunction] the full relief to which he might be entitled if successful at the conclusion of trial.").

**B.    Plaintiffs Have Not Met Their Burden and Do Not Qualify for Mandatory Injunctive Relief.**

    **1.    Plaintiffs Cannot Demonstrate that Existing Federal Precedent "Clearly Favors" Their Position.**

Because Plaintiffs seek a mandatory injunction, they must show that the law "clearly favors" their position. *Dahl*, 7 F.3d at 1403; *see also International Molders' and Allied Workers' Local Union v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) ("In deciding a motion for preliminary injunction, the district court is not bound to decide doubtful and difficult questions of law . . . ."). Plaintiffs cannot meet this burden for two reasons. First, no United States Supreme Court or Ninth Circuit authority holds that the federal constitution obligates the States to define marriage in gender-neutral terms. Second, none of the right-to-marry cases addresses the unique context presented by Proposition 8 as interpreted by the California Supreme Court.

The United States Supreme Court last considered whether same-sex couples have a constitutional right to marry more than thirty years ago, in *Baker v. Nelson*, 409 U.S. 810 (1972). That case reached the Court after the Minnesota Supreme Court rejected a claim by two men that they had a constitutional right to marry. *See Baker v. Nelson*, 291 Minn. 310, 191 N.W.2d 185 (1971). The state court had held that limiting Minnesota's marriage statute to opposite-sex marriages did not violate either the equal protection or due process guarantees of the Fourteenth Amendment. In so holding, the Minnesota court rejected plaintiffs' argument that the United States Supreme Court's decisions in *Skinner v. Oklahoma*, 316 U.S. 535 (1941), *Griswold v. Connecticut*, 381 U.S. 469 (1965), and *Loving v. Virginia*, 388 U.S. 1 (1967), required that same-sex couples be afforded the right to marry. *Baker v. Nelson*, 191 N.W.2d at 187. Plaintiffs appealed to the United States Supreme Court, as federal law then permitted. The Supreme Court summarily decided the case and dismissed the appeal "for want of [a] substantial federal question." *Baker v. Nelson*, 409 U.S. 810 (1972).

Although there have been significant developments in the jurisprudence regarding the constitutional rights of gay men and lesbians since 1972, the Court has never overruled *Baker* or revisited the issue of whether state statutes barring same-sex marriages are constitutional.

1   Despite this silence, Plaintiffs argue that they have a substantial probability of succeeding on the

2   merits under the Supreme Court's more recent decisions in *Romer v. Evans*, 517 U.S. 620 (1996),

3   and *Lawrence v. Texas*, 539 U.S. 558 (2003).  But, while those decisions recognize the rights of

4   gays and lesbians to seek assistance from the government in combating discrimination based on

5   sexual orientation (*Romer*) and to engage in private sexual conduct (*Lawrence*), they do not

6   recognize a right for same-sex couples to marry.

7           Indeed, in *Lawrence*, the Court acknowledged the issue and confirmed that it was

8   not addressing it.  In *Lawrence*, the Court overturned a Texas statute that criminalized certain

9   private consensual conduct between consenting same-sex adults, holding that the statute offended

10  liberty interests protected by the Due Process Clause.  But, in doing so, the Court was careful to

11  note: "The present case . . . does not involve whether the government must give formal

12  recognition to any relationship that homosexual persons seek to enter." *Id.* at 578; *see also id.* at

13  585 (O'Connor, J., concurring) ("Unlike the moral disapproval of same-sex relations -- the

14  asserted state interest in this case -- other reasons exist to promote the institution of marriage

15  beyond mere moral disapproval of an excluded group.").

16          In addition, forecasting the ultimate outcome of this case based on high court

17  precedents is complicated by the unique context of California law.  This challenge to Proposition

18  8 presents the issue of the constitutionality of state law in a different context than is found in any

19  prior right-to-marry case, including *Baker*.  The California Supreme Court recently held that "it is

20  only the designation of marriage -- albeit significant -- that has been removed by" Proposition 8.

21  *Strauss v. Horton*, 93 Cal. Rptr. 3d 591, 2009 Cal. LEXIS 4626 (2009).  The Court explained:

22          [A]lthough Proposition 8 eliminates the ability of same-sex couples to
            enter into an official relationship designated "marriage," in all other

23          respects those couples continue to possess, under the state constitutional
            privacy and due process clauses, "the core set of basic substantive legal

24          rights and attributes traditionally associated with marriage," including,
            "most fundamentally, the opportunity of an individual to establish -- with

25          the person with whom the individual has chosen to share his or her life --
            an officially recognized and protected family possessing mutual rights and

26          responsibilities and entitled to the same respect and dignity accorded a
            union traditionally designated as marriage." . . . Like opposite-sex

27          couples, same-sex couples enjoy this protection not as a matter of
            legislative grace, but of constitutional right.

28

1    *Id.* at 627 (quoting *In re Marriage Cases*, 43 Cal. 4th 757, 781 (2008)). Since federal courts are

2    bound to follow the interpretation of state high courts when interpreting state law (*see S.D. Myers*

3    *v. City and County of San Francisco*, 253 F.3d 461, 473 (9th Cir. 2001)), the issue presented to

4    this Court is whether Proposition 8, as thus construed by the California Supreme Court, violates

5    the United States Constitution. No court has previously addressed this narrow issue.

6          The issues presented here are issues that will surely be decided by either the Ninth

7    Circuit or the United States Supreme Court. The available precedent from those courts does not

8    allow Plaintiffs to show that the law "clearly favors" their legal position on these "difficult

9    questions of law." *See Dahl*, 7 F.3d at 1403; *International Molders*, 799 F.2d at 551. For this

10   reason, their motion for preliminary injunction should be denied.

11        **2.**      **The Consequences of Ordering Two of California 58 County**

12                 **Clerks to Issue Marriage Licenses to Same-Sex Couples Argue**

13                 **Against Issuance of a Preliminary Injunction.**

14          The Supreme Court recently reiterated: "In exercising their sound discretion,

15   courts of equity should pay particular regard for the public consequences in employing the

16   extraordinary remedy of injunction." *Winter*, 129 S. Ct. at 376-377 (quoting *Weinberger v.*

17   *Romero-Barcelo*, 456 U.S. 305, 312 (1982)). Here, Plaintiffs seek a preliminary injunction that

18   would obligate public officials in the State of California to issue marriage licenses to same-sex

19   couples.[2] Such relief would be potentially disruptive, in a number of respects.

20          If the Court granted the requested relief, and if a higher court later reverses this

21   Court's decision and vacates the injunction, what would become of marriages entered while the

22   injunction was in effect? The issuance of a preliminary injunction ordering the State to permit

23   same-sex marriages in contravention of Proposition 8 would lead to profound uncertainty

24

25      [2]     Plaintiffs make some attempt to characterize the relief they seek as a prohibitory

26   injunction. But Plaintiffs plainly seek *mandatory* injunctive relief. In their papers, Plaintiffs
    acknowledge that they seek an order "requiring the State of California to issue marriage licenses

27   to otherwise-qualified same-sex couples." Doc # 7, at 23 (Plaintiff's Motion, at 18:15-16). The
    preliminary relief that Plaintiffs seek would obligate the State to take affirmative steps, and

28   would plainly alter the status quo.

1  regarding the legal status of those marriages, both during and after the final resolution of this

2  case. Would those marriages be valid? *See, e.g., Strauss v. Horton*, 93 Cal. Rptr. 3d 591, 2009

3  Cal. LEXIS 4626 (2009) (upholding the validity of marriages entered into after the California

4  Supreme Court's ruling in *In re Marriage Cases* but before the passage of Proposition 8). Or,

5  would such marriages be invalid? *See, e.g. Lockyer v. City and County of San Francisco*, 33 Cal.

6  4th 1055, 1118 (2004) ("[A]s part of the remedy for the city officials' unauthorized and unlawful

7  actions, we believe it is appropriate to make clear that the same-sex marriages that already have

8  purportedly come into being must be considered void from their inception."). The uncertainty

9  and potential harm to others who may need to know whether the marriages are valid is obvious.

10  *See id.* 1118 (noting the "uncertainty and potential harm to others who may need to know

11  whether the marriages are valid or not" that ensued after marriage licenses were issued to same-

12  sex couples prior to any judicial determination that California's marriage statutes were

13  unconstitutional); *see also Smelt v. County of Orange*, 447 F.3d 673, 679-680 (9th Cir. 2006)

14  (noting that marriage is a "sensitive area of social policy" in abstaining from challenge to state

15  marriage statutes).

16          Moreover, if the Court granted the requested relief, there would be confusion -- if

17  not inconsistency -- within California as to the scope of the preliminary relief. California has

18  58 counties, but Plaintiffs have named the county clerks in only two of those counties (Alameda

19  and Los Angeles) as defendants. As for the county clerks in the other 56 counties, in the absence

20  of a judicial order from a court having personal jurisdiction over them, it would be reasonable to

21  expect that the clerks in those counties would continue to feel bound by Proposition 8. After all,

22  the California Supreme Court recently instructed county clerks that they may not disregard

23  California's marriage laws in the absence of a judicial order. *See Lockyer*, 33 Cal. 4th at 1082

24  ("we conclude that a local public official, charged with the ministerial duty of enforcing a statute,

25  generally does not have the authority, in the absence of a judicial determination of

26  unconstitutionality, to refuse to enforce the statute on the basis of the official's view that it is

27  unconstitutional"). If the Court issued preliminary relief affecting only two county clerks, there

28  is no reason to anticipate that all other county clerks would voluntarily comply with any such

1  injunction. This would create an anomaly in that same-sex couples could marry in Alameda

2  County and Los Angeles County, but not elsewhere in California.

3        **3.     A Preliminary Injunction Is Further Unwarranted Because It**

4                **Would Provide Plaintiffs With Substantially All of the Relief**

5                **They Seek at Trial.**

6        Finally, under the aforementioned standards regarding the issuance of preliminary

7  relief, several considerations counsel against the issuance of preliminary relief here. One of the

8  primary purposes of preliminary relief is to preserve the status quo; here, Plaintiffs seek to alter

9  the status quo. Also, the Ninth Circuit has said that "it is not usually proper to grant the moving

10  party the full relief to which he might be entitled if successful at the conclusion of the trial."

11  *Tanner Motor Livery*, 316 F.2d at 808 (reversing preliminary injunction that granted moving

12  parties "substantially all injunctive relief that they could have obtained after a plenary trial on the

13  merits"). Here, Plaintiffs seek preliminary relief so that they may lawfully marry in California,

14  which is the very relief they seek on the merits.

15      **C.     Expediting Hearing of the Merits, Instead of Issuing a Preliminary**

16             **Injunction, Would Better Serve the Public Interest.**

17        Plaintiffs present important federal constitutional issues that require and warrant

18  judicial determination. The issues have nationwide significance. Ultimately, the issues will

19  likely be decided by the United States Supreme Court. This reality counsels in favor of having

20  this Court expedite the resolution of this case at this initial stage of the proceedings. But, for the

21  reasons explained above, the public interest is best served by preserving the status quo until there

22  is a *final* resolution of the merits.

23  / / /

24  / / /

25  / / /

26  / / /

27

28

1

# IV.

# CONCLUSION

For the foregoing reasons, the Administration respectfully urges the Court (1) to
deny the Plaintiffs' application for a preliminary injunction, and (2) to devise a case management
plan that will facilitate a prompt, expeditious resolution of the merits.

Dated:  June 11, 2009

MENNEMEIER, GLASSMAN & STROUD LLP
KENNETH C. MENNEMEIER
KELCIE M. GOSLING
LANDON D. BAILEY

By:   *Kenneth C. Mennemeier*
Kenneth C. Mennemeier
Attorneys for Defendants Arnold Schwarzenegger,
in his official capacity as Governor of California,
Mark B. Horton, in his official capacity as Director
of the California Department of Public Health and
State Registrar of Vital Statistics, and Linette Scott,
in her official capacity as Deputy Director of Health
Information & Strategic Planning for the California
Department of Public Health

Case Name:   *Perry, et al. v. Schwarzenegger, et al.;*
Case No:      US District Court, Northern District, Case No. 3:09-cv-09-2292 VRW

## CERTIFICATE OF SERVICE

I declare as follows:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 980 9th Street, Suite 1700, Sacramento, California 95814.  On June 11, 2009, I served the within documents:

**THE ADMINISTRATION'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

☒      by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and delivering to a Federal Express agent for delivery.

DAVID BOIES
BOIES SCHILLER & FLEXNER LLP
333 MAIN STREET
ARMONK, NY 10504

JAMES A. CAMPBELL
ALLIANCE DEFENSE FUND
15100 NORTH 90TH STREET
SCOTTSDALE, AZ 85260

THEANE EVANGELIS KAPUR
GIBSON DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071

THEODORE HIDEYUKI UNO
BOIES SCHILLER & FLEXNER LLP
333 MAIN STREET
ARMONK, NY 10504

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepared in the ordinary course of business.

I declare that I am employed in the office of a member of the bar of this Court at whose direction this service was made.

Executed on June 11, 2009, at Sacramento, California.

_____
Angela Knight