1  EDMUND G. BROWN JR.
   Attorney General of California
2  JONATHAN K. RENNER
   Senior Assistant Attorney General
3  STEPHEN P. ACQUISTO
   Supervising Deputy Attorney General
4  MARK R. BECKINGTON
   Deputy Attorney General
5  TAMAR PACHTER
   Deputy Attorney General
6  SBN: 146083
    455 Golden Gate Avenue, Suite 11000
7   San Francisco, CA  94102-7004
    Telephone:  (415) 703-5970
8   Fax: (415) 703-1234
    E-mail:  Tamar.Pachter@doj.ca.gov
9  *Attorneys for Defendant*
   *Attorney General Edmund G. Brown Jr.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KRISTIN M. PERRY, et al.,** | No. C 09-2292 VRW |
| Plaintiffs, | **ATTORNEY GENERAL'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| **ARNOLD SCHWARZENEGGER, et al.,** | Date: July 2, 2009<br>Time: 10:00 a.m.<br>Dept: Ctrm. 6, 17th Floor |
| Defendants. | Judge: Hon. Vaughn R. Walker, C.J.<br>Trial Date: None<br>Action Filed: May 22, 2009 |

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................................... 1
Summary of the Complaint .................................................................................................. 1
Statement of Facts ................................................................................................................ 3
    I.     Early legislative measures and Proposition 22 ................................................ 3
    II.    *Lockyer v. City and County of San Francisco* voided thousands of same-sex marriages performed by local city and county officials. .............................. 4
    III.   *In re Marriage Cases* struck down statutes prohibiting marriage between same-sex couples as violating the state constitution. ............................................. 5
        A.   *Strauss v. Horton* upheld Proposition 8 as a constitutional amendment but preserved 18,000 marriages performed before passage of the measure. ................................................................................ 6
Argument .............................................................................................................................. 8
    I.     The motion for preliminary injunction should be denied ................................ 8
        A.   The purpose of a preliminary injunction is to preserve the status quo and to prevent infliction of irreparable harm before final judgment. .......... 8
        B.   A preliminary injunction would change the status quo and create uncertainty with respect to marriages performed before judgment. ......... 9
    II.    Plaintiffs have not shown that they are entitled to injunctive relief ..................... 11
Conclusion .......................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Arcamuzi v. Continental Airlines, Inc.*,
   819 F.2d 935 (9th Cir. 1987) ................................................................................ 8, 9

*Barahona-Gomez v. Reno*,
   167 F.3d 1228 (9th Cir. 1999) ................................................................................ 8, 9

*Chalk v. U.S. Dist. Court, etc.*,
   840 F.2d 701 (9th Cir. 1988) ....................................................................................... 9

*Department of Parks and Recreation, etc. v. Bazaar del Mundo, Inc.*,
   448 F.3d 1118 (9th Cir. 2004.) ..................................................................................... 9

*Lockyer v. City and County of San Francisco*,
   33 Cal.4th 1055 (2004) ................................................................................................. 4

**STATE CASES**

*In re Marriage Cases*,
   43 Cal.4th (2008) ........................................................................................... 3, 4, 5, 6

*Strauss v. Horton*,
   __ Cal.4th __, 93 Cal. Rptr. 3d 591 (2009) ........................................................ *passim*

**FEDERAL CODES**

28 United States Code
   § 1292(a)(1) ................................................................................................................ 12
   § 1983 ............................................................................................................................ 2

**STATE STATUTES**

California Constitution
   Article XVIII, § 4 ................................................................................................ 5, 6, 9

California Family Code
   § 300 ......................................................................................................................... 3, 6
   § 301 ............................................................................................................................. 3
   § 308.5 ...................................................................................................................... 3, 6
   § 4100 ........................................................................................................................... 3
   § 4101 ........................................................................................................................... 3

Defendant Edmund G. Brown Jr., appearing in his official capacity as Attorney General of California, submits the following memorandum of points and authorities in opposition to Plaintiffs' motion for a preliminary injunction.

**INTRODUCTION**

In their complaint filed shortly before the California Supreme Court upheld Proposition 8 as valid under the State Constitution, Plaintiffs seek to invalidate the measure under the Federal Constitution. Although Plaintiff's complaint presents questions of significant public importance, their motion for preliminary injunction raises independent concerns that counsel caution in granting immediate interim relief. Due to the significant uncertainty that a preliminary injunction could create in same-sex marriages that might be performed before a final judgment, as well as the substantial harm such uncertainty could cause third parties and the general public, Defendant opposes the request for a preliminary injunction at this time.

As discussed below, a preliminary injunction would not serve the fundamental goal of preserving the status quo pending trial on the merits. Moreover, it would not serve the public interest because it would create significant uncertainty for many persons concerning a relationship in which certainty is of the utmost importance. At this stage of the litigation, these concerns must override the countervailing arguments presented by Plaintiffs.

Defendant submits that this case presents an important question that should be decided on the merits and with finality but that the status quo should be preserved pending that final resolution. Therefore, Defendant opposes the specific relief sought by this motion.

**SUMMARY OF THE COMPLAINT**

Filed May 22, 2009, four days before the California Supreme Court issued its decision in *Strauss v. Horton*, the complaint seeks a declaration that Proposition 8 is unconstitutional under the Due Process and Equal Protection Clauses of the Fourteenth Amendment and a preliminary and permanent injunction preventing Defendants from enforcing the measure.

Plaintiffs Perry and Stier are identified as lesbian individuals in a committed relationship and Plaintiffs Katami and Zarrillo as gay individuals in a committed relationship. (Compl. at ¶ 7.) Each couple wishes to marry and obtain official sanction for their family from the State.

1

(*Id.* at ¶¶ 7, 31.)  On May 20, 2009, Katami and Zarrillo applied for a marriage license from the Los Angeles County Clerk, and the next day, Perry and Stier applied for a marriage license from the Alameda County Clerk-Recorder.  (*Id.* at ¶¶ 32-33.)  Both allege that they were denied licenses because they are same-sex couples.  (*Id.*)  Because of Proposition 8, they allege, "Plaintiffs are barred from marrying the individual they wish to marry and are instead left only with the separate-but-unequal option of domestic partnership."  (*Id.* at ¶ 34.)

In their first claim for relief, Plaintiffs allege that Proposition 8 "violates fundamental liberties that are protected by the Due Process Clause, both on its face and as applied to Plaintiffs."  (Compl. at ¶ 38.)  According to the complaint, by denying them the same designation of marriage afforded opposite-sex couples, "the State is stigmatizing gays and lesbians, as well as their children and families, and denying them the same dignity, respect, and stature afforded officially recognized opposite-sex family relationships."  (*Id.* at ¶ 39.)

In the second claim for relief, Plaintiffs allege that Proposition 8 violates the Equal Protection Clause of the Fourteenth Amendment, both on its face and as applied to plaintiffs.  (Compl. at ¶ 42.)  They contend that it "treats similarly-situated people differently by providing civil marriage to heterosexual couples, but not to gay and lesbian couples."  (*Id.*)  Further, they allege that the measure violates the Equal Protection Clause "because it singles out gays and lesbians for a disfavored legal status, thereby creating a category of 'second-class citizens.'"  (*Id.* at ¶ 43.)  Separately, they allege that the measure violates the Equal Protection Clause "because it discriminates on the basis of sex."  (*Id.* at ¶ 44.)

Finally, the third claim for relief is brought under 28 U.S.C. section 1983.  (Compl. at ¶ 46.)  Plaintiffs allege that defendants are depriving them of numerous rights secured by the Fourteenth Amendment in violation of that section.  (*Ibid.*)

As a result, Plaintiffs allege that they are suffering irreparable harm, including severe humiliation, emotional distress, pain, suffering, psychological harm, and stigma.  (Compl. at ¶ 48.)  They conclude, "Plaintiffs' injuries will be redressed only if this Court declares Prop. 8 unconstitutional and enjoins Defendant [sic] from enforcing it."  (*Id.*)

**STATEMENT OF FACTS**

The issue of same-sex marriage in California has been the subject of legislative statutes, ballot initiatives, and appellate opinions. This legal history forms the relevant background to Plaintiffs' request for a preliminary injunction.

**I.  Early Legislative Measures and Proposition 22.**

In 1977, the California Legislature amended former Family Code section 4100, now section 300, to specify that marriage was a relationship "between a man and a woman." *In re Marriage Cases*, 43 Cal.4th 757, 795, 76 Cal. Rptr. 3d 863 (2008). As amended, Family Code section 300 read in part, "Marriage is a personal relation arising out of a civil contract between a man and a woman, to which the consent of the parties capable of making that contract is necessary." Cal. Fam. Code § 300. In addition, the Legislature amended former Family Code section 4101, now section 301, governing the age limits for marriage, to reinstate gender references that had been eliminated in a 1969 revision of the Family Code. *In re Marriage Cases*, 43 Cal.4th at 795. This section, which had provided that "[a]ny unmarried person of the age of 18 years or upwards" was capable of consenting to marriage, was changed to read, in part: "An unmarried male of the age of 18 years or older, and an unmarried female of the age of 18 years or older, are capable of consenting to and consummating marriage." Cal. Fam. Code § 301.

Subsequently, in the March 2000 primary election, a majority of California voters approved Proposition 22, an initiative statute that added section 308.5 to the Family Code, expressly limiting marriage to a union between a man and a woman. *In re Marriage Cases*, 43 Cal.4th at 796. This measure read, in full: "Only marriage between a man and a woman is valid or recognized in California." *Id.*; Cal. Fam. Code § 308.5. "Section 308.5 was intended to ensure 'that California will not legitimize or recognize same-sex marriages from other jurisdictions . . . and that California will not permit same-sex partners to validly marry within the state.'" 1 *In re*

---

[1] In the *Marriage Cases*, the California Supreme Court detailed much of the history of California marriage laws as they relate to gender and domestic partnerships, including the events leading up to the revisions to former Family Code sections 4100 and 4101 (now Cal. Fam. Code §§ 300, 301) and the passage of Proposition 22. *In re Marriage Cases*, 43 Cal.4th at 792-808.

3

*Marriage Cases*, 43 Cal.4th at 799 (emphasis omitted) (quoting *Knight v. Superior Court,* 128 Cal. App. 4th 14, 23-24 (2005)).

**II.     Lockyer v. City and County of San Francisco Voided Thousands of Same-Sex Marriages Performed By Local City and County Officials.**

Four years after passage of Proposition 22, in *Lockyer v. City and County of San Francisco*, the California Supreme Court addressed whether local officials exceeded their authority in refusing to enforce California marriage laws limiting marriage to a man and a woman, based on their opinion that the statutes were unconstitutional, without any court having made that determination. *Lockyer v. City and County of San Francisco*, 33 Cal.4th 1055, 1066-1067, 17 Cal. Rptr. 3d 225 (2004).  The case arose when the mayor of San Francisco, concluding that the limitation violated the California Constitution's Equal Protection Clause, directed local officials to issue marriage licenses to same-sex couples and register marriage certificates for those couples. *Id.* at 1069-1071.

Before the matter reached the California Supreme Court, at least 4,000 same-sex marriages were performed pursuant to licenses issued by the County Clerk of the City and County of San Francisco.  *Lockyer*, 33 Cal.4th at 1071.  In issuing its show cause order, the Supreme Court directed the local officials "to enforce the existing marriage statutes and refrain from issuing marriage licenses or certificates not authorized by such provisions." *Id.* at 1073.

Rejecting the City and County's arguments, the California Supreme Court held that "a local public official, charged with the ministerial duty of enforcing a statute, generally does not have the authority, in the absence of a judicial determination of unconstitutionality, to refuse to enforce the statute on the basis of the official's view that it is unconstitutional." *Lockyer*, 33 Cal.4th at 1082.  Applying this principle to the officials' conduct, the court concluded that "the city officials had no authority to refuse to perform their ministerial duty in conformity with the current California marriage statutes on the basis of their view that the statutory limitation of marriage to a couple comprised of a man and a woman is unconstitutional." *Id.* at 1104-1105.  The court did not, however, address "the substantive question of the constitutional validity of the California marriage statutes." *In re Marriage Cases*, 43 Cal.4th at 778.

Having rejected the local officials' construction of their authority, the court addressed what it described as the "unusual, perhaps unprecedented, set of circumstances" represented by the 4,000 same-sex marriages authorized, performed and registered by those officials. *Lockyer*, 33 Cal.4th at 1113. The court held that "all same-sex marriages authorized, solemnized, or registered by the city officials must be considered void and of no legal effect from their inception." *Id.* at 1114. The court directed the county clerk and county recorder to take corrective action, including correcting records to reflect the invalidity of the licenses and marriages. *Id.* at 1118-1119.

**III.  *In re Marriage Cases* Struck Down Statutes Prohibiting Marriage Between Same-Sex Couples as Violating the State Constitution.**

Four years after *Lockyer*, the California Supreme Court reached the substantive constitutional question not posed in that case: "whether . . . the failure to designate the official relationship of same-sex couples as marriage violates the California Constitution." *In re Marriage Cases*, 43 Cal.4th at 780.

Answering this question in the affirmative, the Court held that the fundamental right to marry, embodied in the privacy and due process provisions of the California Constitution, "guarantees same-sex couples the same substantive constitutional rights as opposite-sex couples to choose one's life partner and enter with that person into a committed, officially recognized, and protected family relationship that enjoys all of the constitutionally based incidents of marriage." *In re Marriage Cases*, 43 Cal.4th at 829. Further, rejecting the view that retention of the traditional definition of marriage was a sufficiently compelling state interest under equal protection principles, the court held that statutory distinctions excluding same-sex couples from access to the designation of marriage were unconstitutional. *Id.* at 855-856.

In reaching these holdings, the court applied the strict scrutiny standard for constitutional review. The court held that "sexual orientation should be viewed as a suspect classification for purposes of the California Constitution's equal protection clause and that statutes that treat persons differently because of their sexual orientation should be subjected to strict scrutiny under this constitutional provision." *In re Marriage Cases*, 43 Cal.4th at 840-841. Therefore, the state

was required to demonstrate that "the state interest is a constitutionally compelling one that justifies the disparate treatment prescribed by the statute in question" and that "the distinctions drawn by the statute (or statutory scheme) are necessary to further that interest. *Id.* at 848 (original emphasis).

Applying these rulings to the Family Code sections at issue, the court held that "the language of [Family Code] section 300 limiting the designation of marriage to a union 'between a man and a woman' is unconstitutional and must be stricken from the statute, and that the remaining statutory language must be understood as making the designation of marriage available both to opposite-sex and same-sex couples." *In re Marriage Cases*, 43 Cal.4th at 857. Further, the Court struck down Family Code section 308.5, added by Proposition 22, in its entirety, since that provision could have "no constitutionally permissible effect in light of the constitutional conclusions set forth in this opinion." *Id.*

### A. Strauss v. Horton Upheld Proposition 8 as a Constitutional Amendment But Preserved 18,000 Marriages Performed Before Passage of the Measure.

Shortly after the California Supreme Court issued its decision in Marriage Cases, Proposition 8 was certified for the November 4, 2008 general election ballot by the California Secretary of State. See *Strauss v. Horton*, __ Cal.4th __, 93 Cal. Rptr. 3d 591, 613-614 (May 26, 2009). The measure proposed to add to the State Constitution, in new section 7.5 of article I, the identical language that had been added to the Family Code by Proposition 22 and struck down in the *Marriage Cases*, *i.e.*, "Only marriage between a man and a woman is valid or recognized in California." *Id.* at 10. The difference between the two measures was that "Proposition 8 proposed to add this language as a provision of the California Constitution, whereas by Proposition 22 this language had been adopted as a statutory provision." *Id.* (original emphasis). The California Supreme Court denied a request to stay the effect of the *Marriage Cases* decision until after the results of the November 4, 2008 were compiled. *Strauss*, 93 Cal. Rptr. 3d at 615. An estimated 18,000 same-sex couples were married between the effective date of the *Marriage Cases* decision and the November election. *Id.* at 605, 679.

1 | Proposition 8 was approved by a 52.3 percent majority of the voters. *Strauss*, 93 Cal. Rptr.
2 | 3d at 616. By law, the measure went into effect the day following the election, November 5,
3 | 2008. *Id.*

4 | The California Supreme Court agreed to hear petitions for writs of mandate filed by
5 | challengers of Proposition 8 immediately following the election. *Strauss*, 93 Cal. Rptr. 3d at 616.
6 | But the court denied requests to stay the operation of Proposition 8 pending its consideration of
7 | these cases. *Id.* The court framed three issues for briefing and argument: "(1) Is Proposition 8
8 | invalid because it constitutes a revision of, rather than an amendment to, the California
9 | Constitution? . . . (2) Does Proposition 8 violate the separation of powers doctrine under the
10 | California Constitution? (3) If Proposition 8 is not unconstitutional, what was its effect, if any, on
11 | the marriages of same-sex couples performed before the adoption of Proposition 8?" *Id.* at 616
12 | fn. 4 (citation omitted).

13 | In a lengthy decision, the court upheld Proposition 8 as a validly enacted addition to the
14 | State Constitution. The court held that "Proposition 8 constitutes a constitutional amendment,
15 | rather than a constitutional revision, and that therefore it is not invalid because it was proposed
16 | through the initiative process." *Strauss*, 93 Cal. Rptr. 3d at 671. The court rejected alternative
17 | arguments that the measure violated the separation of powers doctrine or should be held invalid as
18 | abrogating fundamental, inalienable rights protected by section 1, article I of the State
19 | Constitution. *Id.* at 671-675.

20 | Although it upheld the method used to adopt Proposition 8, the court declined to apply the
21 | measure retroactively to the 18,000 marriages performed before the election. *Strauss*, 93 Cal.
22 | Rptr. 3d at 676-680. Following well-established principles of statutory interpretation, the court
23 | concluded that "Proposition 8 cannot be interpreted to apply retroactively so as to invalidate the
24 | marriages of same-sex couples that occurred prior to the adoption of Proposition 8." *Id.* at 680.
25 | "Those marriages," wrote the court, "remain valid in all respects." *Id.*

26 | In reaching its decision, the court construed Proposition 8 as having "limited scope" in that
27 | it eliminated "only the right of same-sex couples to equal access to the designation of marriage,"
28 | but did otherwise affect "the constitutional right of those couples to establish an officially

7

recognized family relationship." *Strauss*, 93 Cal. Rptr. 3d at 624. Therefore, the court emphasized that same-sex couples retained the full panoply of rights recognized in the *Marriage Cases* outside of the use of the term "marriage" in designating their relationship:

> Accordingly, although Proposition 8 eliminates the ability of same-sex couples to enter into an official relationship designated 'marriage,' in all other respects those couples continue to possess, under the state constitutional privacy and due process clauses, 'the core set of basic substantive legal rights and attributes traditionally associated with marriage,' including, 'most fundamentally, the opportunity of an individual to establish-with the person with whom the individual has chosen to share his or her life-an officially recognized and protected family possessing mutual rights and responsibilities and entitled to the same respect and dignity accorded a union traditionally designated as marriage.'

*Id.* at 627 (original emphasis) (quoting *In re Marriage Cases*, 43 Cal.4th at 781).

## ARGUMENT

### I. The Motion For Preliminary Injunction Should Be Denied

#### A. The Purpose of a Preliminary Injunction is to Preserve the Status Quo and to Prevent Infliction of Irreparable Harm Before Final Judgment.

The traditional equitable criteria for granting preliminary injunctive relief are: (1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to the plaintiffs if injunctive relief is not granted; (3) a balance of hardships favoring the plaintiffs; and (4) advancement of the public interest. *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1234 (9th Cir. 1999). In the Ninth Circuit, "the moving party may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor." *Id.* "'These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.'" *Arcamuzi v. Continental Airlines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987) (quoting *Oakland Tribune, Inc. v. Chronicle Publishing Co.*, 752 F.2d 1374, 1376 (9th Cir. 1985)). "As an 'irreducible minimum,' the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation. . . . Under any formulation of the test, the moving party must demonstrate a significant threat of irreparable injury." *Id.*

8

Moreover, "[a] preliminary injunction is not a preliminary adjudication on the merits, but a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Barahona-Gomez*, 167 F.3d at 1234. Indeed, "[t]he basic function of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits." *Chalk v. U.S. Dist. Court, etc.*, 840 F.2d 701, 704 (9th Cir. 1988) (original emphasis). "[T]he status quo is not simply any situation before the filing of the lawsuit, but rather the last uncontested status that preceded the parties' controversy." *Department of Parks and Recreation, etc. v. Bazaar del Mundo, Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2004.)

### B. A Preliminary Injunction Would Change the Status Quo and Create Uncertainty With Respect to Marriages Performed Before Judgment.

The overriding consideration in evaluating Plaintiffs' motion for preliminary injunction is its effect on the status quo that existed at the time the lawsuit was filed and the related uncertainty that would be created by altering the status quo during the pendency of the action. Here, the goals of preserving the status quo and avoiding significant uncertainty in matters pertaining to the important institution of marriage militate against the granting of a preliminary injunction.

By operation of the State Constitution, Proposition 8 went into effect the day after its approval by the voters. Cal. Const., art. XVIII, § 4. As noted above in the Statement of Facts, the California Supreme Court denied a request to stay operation of Proposition 8 pending consideration of the legal challenges to that measure. *Strauss*, 93 Cal. Rptr. 3d at 615. Although the court upheld the validity of the estimated 18,000 same-sex marriages performed in California before the voters approved Proposition 8, its decision means that no post-Proposition 8 marriages between same-sex couples are being licensed in California at the present time. And as Plaintiffs implicitly recognize in their complaint and other papers, no officially recognized same-sex marriages have been performed in California since the November 4, 2008 election. Thus, the preliminary injunction sought by Plaintiffs would in fact alter the status quo that has been in place for more than seven months, a status quo upheld as valid under the State Constitution by the California Supreme Court.

Notwithstanding the important issues raised in this proceeding, the uncertain consequences of altering that status quo pending final resolution of this action weigh heavily on the side of denying the preliminary injunction. Staying operation of Proposition 8, without the certainty of a final judgment as to its constitutionality, would leave same-sex couples, as well as their families, friends, and the wider community, in legal limbo. Potentially, "thousands of actions taken in reliance" on such a decision "by same-sex couples, their employers, their creditors and many others," *Strauss*, 93 Cal. Rptr. 3d at 680, would remain in jeopardy until this court, and possibly an appellate court, were to reach a final decision on the merits of the litigation.

Although Plaintiffs assert that any marriages taking place under the auspices of a preliminary injunction would "remain legal after an intervening change in the law" (Mot. at 19:9-14), they offer no authority that supports this blanket assertion beyond a citation to the *Strauss* court's recognition of the validity of the pre-election same-sex marriages. But *Strauss* addressed the retroactivity of a duly approved constitutional amendment, not the effect of a preliminary injunction later discharged by the issuing court. *Strauss*, 93 Cal. Rptr. 3d at 676-680. Plaintiffs have not provided this Court with authority that eliminates the risk that a preliminary injunction would create a class of persons whose marriages would have to be subsequently evaluated to determine whether they should be officially recognized even if Proposition 8 were ultimately upheld as constitutional.

Thus, a preliminary injunction would create a danger of reprising the "unusual [and] unprecedented" circumstances faced by the *Lockyer* court. See *Lockyer*, 33 Cal.4th at 1113-1118 (declaring void approximately 4,000 marriages performed by local officials). Any decision to issue a preliminary injunction in this situation should factor in the potential harm to a broad section of the general public from subsequent invalidation of possibly thousands of marriages, as well as the ongoing uncertainty about their validity that would undoubtedly persist until a final determination by an appellate court.

Indeed, *Lockyer* provides a cautionary example of why preservation of the status quo is important until the courts have reached a final decision on the merits. In *Lockyer*, the California Supreme Court was asked to refrain from ruling on the validity of the same-sex marriages that

10

had been certified by local officials. Rejecting such pleas, the court warned that such action "might lead numerous persons to make fundamental changes in their lives or otherwise proceed on the basis of erroneous expectations, creating potentially irreparable harm." *Lockyer*, 33 Cal.4th at 1117. Further, the court expressed concern about "creating uncertainty and potential harm to others who may need to know whether the marriages are valid or not." *Id.* at 1118.

These concerns apply with equal force to the present motion. The overarching goal of preserving the status quo until the Court may fully consider and rule on the issues before it, along with the important concern of avoiding uncertainty in the validity of marriages that would occur during an interim stay, weighs against granting the preliminary injunction requested by the Plaintiffs.

**II.    Plaintiffs Have Not Shown That They are Entitled to Injunctive Relief.**

The foregoing concerns bear directly on whether Plaintiffs have shown that a preliminary injunction should issue. Here, Plaintiffs have not shown that the balance of the factors recognized by the courts weighs decisively in their favor at this stage of the litigation.

Plaintiffs devote much of their brief to their likelihood of success on the merits. It bears noting that Plaintiffs focus entirely on the legal arguments favoring their challenge to the constitutionality of Proposition 8. Plaintiffs, in effect, ask the Court to make nearly a final determination on each of the important legal questions presented by the complaint at the outset of the litigation. Ordinarily, however, "the burden on the moving party is a 'heavy one where . . . granting the preliminary injunction will give [the movant] substantially the relief it would obtain after a trial on the merits." Schwarzer, et. al., Federal Civil Procedure Before Trial (The Rutter Group 2009), § 13:79:10, p. 13-41 (original brackets) (quoting *Sanborn Mfg. Co., Inc. v. Campbell/Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 486 (8th Cir. 1993)).

Given the obvious significance of the issues presented by this litigation, and the likelihood of appellate review, the parties, the Court, and, indeed, the general public would benefit from having such questions decided on the merits following full briefing and argument by the parties

before the Court rather than by way of an interim motion.[2] Thus, plaintiffs have not shown that this factor, on their limited showing so far, favors an immediate preliminary injunction.

Nor have any of the Plaintiffs clearly established overriding personal irreparable harm in their submissions to the Court. In their two paragraph section discussing irreparable harm, Plaintiffs essentially argue that they will suffer delay in achieving their wish to get married to the partner of their choice. This concern, however legitimate, must be weighed against the harm from creating uncertainty in potentially thousands of future marriages.

The same holds true for the other factors identified by Plaintiffs, such as limited administrative burden,[3] impact on the public fisc, and same-sex couples' ability to weigh the risk of uncertainty. These factors would not counterbalance the concerns identified above.

For purposes of a preliminary injunction, this conclusion is underscored by the "limited scope" placed on Proposition 8 by the California Supreme Court. *Strauss*, 93 Cal. Rptr. 3d at 624. Proposition 8 eliminated "only the right of same-sex couples to equal access to the designation of marriage," not "the constitutional right of those couples to establish an officially recognized family relationship." *Id.*, emphasis added.

For these reasons, the public interest would not be best served by the preliminary injunction sought by Plaintiffs. Instead the balance of all factors favors resolution of this issue pursuant to a final adjudication on the merits.

---

[2] An aggrieved party may have the right to appeal a preliminary injunction to the Ninth Circuit. 28 U.S.C. § 1292(a)(1); Schwarzer, § 13:215, p. 13-100. Thus, if a preliminary injunction is granted, the Ninth Circuit might be faced with evaluating underlying constitutional issues without the benefit of a full record developed in the district court.

[3] Plaintiffs err, however, in suggesting that the State performs the administrative duty of issuing and certifying marriage licenses. This duty is born by local county clerks and recorders. See *Lockyer*, 33 Cal.4th at 1080.

## CONCLUSION

The preliminary injunction sought by Plaintiffs would not only alter the status quo recognized by the California Supreme Court, it would create significant uncertainty for thousands of same-sex couples, who would face potentially life-changing decisions pending a final ruling on the legitimacy of Proposition 8, as well as for their families and friends and other members of the general public. Resolution of the issues raised by the Plaintiffs should be decided by a final adjudication on the merits that would not involve the potential harms that would unavoidably arise from interim relief. Therefore, Defendant respectfully submits that the motion for preliminary injunction should be denied.

Dated: June 11, 2009

Respectfully Submitted,

EDMUND G. BROWN JR.
Attorney General of California
JONATHAN K. RENNER
Senior Assistant Attorney General
STEPHEN P. ACQUISTO
Supervising Deputy Attorney General
TAMAR PACHTER
Deputy Attorney General

/s/
MARK R. BECKINGTON
Deputy Attorney General
*Attorneys for Defendant Attorney General Edmund G. Brown Jr.*

SA2009310603
20207307.doc