GIBSON, DUNN & CRUTCHER LLP
Theodore B. Olson, SBN 38137
*tolson@gibsondunn.com*
Matthew D. McGill, *pro hac vice*
Amir C. Tayrani, SBN 229609
1050 Connecticut Avenue, N.W., Washington, D.C. 20036
Telephone: (202) 955-8668, Facsimile: (202) 467-0539

Theodore J. Boutrous, Jr., SBN 132009
*tboutrous@gibsondunn.com*
Christopher D. Dusseault, SBN 177557
Ethan D. Dettmer, SBN 196046
Sarah E. Piepmeier, SBN 227094
Theane Evangelis Kapur, SBN 243570
Enrique A. Monagas, SBN 239087
333 S. Grand Avenue, Los Angeles, California 90071
Telephone: (213) 229-7804, Facsimile: (213) 229-7520

BOIES, SCHILLER & FLEXNER LLP
David Boies, *pro hac vice*
*dboies@bsfllp.com*
Theodore H. Uno, SBN 248603
333 Main Street, Armonk, New York 10504
Telephone: (914) 749-8200, Facsimile: (914) 749-8300

Attorneys for Plaintiffs KRISTIN M. PERRY, SANDRA B. STIER,
PAUL T. KATAMI, and JEFFREY J. ZARRILLO

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO, <br><br>             Plaintiffs, <br><br>       v. <br><br>ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the California Department of Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; and DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles, <br><br>             Defendants. | CASE NO. 09-CV-2292 VRW <br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION** <br><br>Date: July 2, 2009 <br>Time: 10:00 a.m. <br>Judge: Chief Judge Walker <br>Location: Courtroom 6, 17th Floor |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT .............................................................................................................................. 3

    I.    PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS OF THEIR CONSTITUTIONAL CHALLENGE TO PROP. 8 ...................................................... 3

        A.    Prop. 8 Violates The Equal Protection Clause Of The Fourteenth Amendment ............................................................................................................ 3

        B.    Prop. 8 Violates The Due Process Clause Of The Fourteenth Amendment .......................................................................................................... 10

    II.    A PRELIMINARY INJUNCTION IS WARRANTED TO PREVENT IRREPARABLE HARM TO PLAINTIFFS AND PROMOTE THE PUBLIC INTEREST IN EQUAL RIGHTS .................. 12

CONCLUSION ........................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. Nelson*,
    409 U.S. 810 (1972) ................................................................................................................. 3

*Brown v. Bd. of Educ.*,
    347 U.S. 483 (1954) ................................................................................................................. 4

*Cal. Pharmacists Ass'n v. Maxwell-Jolly*,
    563 F.3d 847 (9th Cir. 2009) .................................................................................................. 13

*Carey v. Population Servs. Int'l, Inc.*,
    431 U.S. 678 (1977) ............................................................................................................... 11

*Cleveland Bd. of Educ. v. LaFleur*,
    414 U.S. 632 (1974) ............................................................................................................... 11

*Dep't of Parks & Recreation v. Bazaar Del Mundo, Inc.*,
    448 F.3d 1118 (9th Cir. 2006) ................................................................................................ 12

*Golden Gate Restaurant Ass'n v. City of San Francisco*,
    512 F.3d 1112 (9th Cir. 2008) ................................................................................. 2, 12, 13, 14

*Heckler v. Mathews*,
    465 U.S. 728 (1984) ................................................................................................................. 4

*Hernandez-Montiel v. INS*,
    225 F.3d 1084 (9th Cir. 2000) .................................................................................................. 9

*Kerrigan v. Comm'r of Pub. Health*,
    957 A.2d 407 (Conn. 2008) .................................................................................................... 10

*Lawrence v. Texas*,
    539 U.S. 558 (2003) ............................................................................................................... 11

*Lockyer v. City & County of San Francisco*,
    95 P.3d 459 (Cal. 2004) ......................................................................................................... 14

*Loving v. Virginia*,
    388 U.S. 1 (1967) ................................................................................................................ 1, 6

*M.L.B. v. S.L.J.*,
    519 U.S. 102 (1996) ................................................................................................................. 1

*Mandel v. Bradley*,
    432 U.S. 173 (1977) ................................................................................................................. 3

*In re Marriage Cases*,
    183 P.3d 384 (Cal. 2008) ................................................................................................ *passim*

*Mass. Bd. of Ret. v. Murgia*,
    427 U.S. 307 (1976) ................................................................................................................. 9

*Meghrig v. KFC W., Inc.*,
    516 U.S. 479 (1996) ............................................................................................................... 13

*Nelson v. NASA*,
    530 F.3d 865 (9th Cir. 2008) .................................................................................................. 13

*Opinions of the Justices to the Senate*,
    802 N.E.2d 565 (Mass. 2004) .................................................................................................. 5

*Reitman v. Mulkey*,
   387 U.S. 369 (1967) .................................................................................................... 5, 15

*Romer v. Evans*,
   517 U.S. 620 (1996) ................................................................................................... *passim*

*Sharon S. v. Sup. Ct.*,
   73 P.3d 554 (Cal. 2003) ...................................................................................................... 6

*Skinner v. Oklahoma ex rel. Williamson*,
   316 U.S. 535 (1942) .......................................................................................................... 11

*Strauss v. Horton*,
   207 P.3d 48 (Cal. 2009) .................................................................................................. 5, 6

*Turner v. Safley*,
   482 U.S. 78 (1987) ........................................................................................................ 6, 8

*United States v. Virginia*,
   518 U.S. 515 (1996) .......................................................................................................... 10

*Varnum v. Brien*,
   763 N.W.2d 862 (Iowa 2009) ............................................................................... 6, 7, 8, 9

*Zablocki v. Redhail*,
   434 U.S. 374 (1978) .......................................................................................................... 10

**Statutes**

Cal. Fam. Code § 297.5(d) ......................................................................................................... 6

Cal. Fam. Code § 9000(b) ......................................................................................................... 6

**INTRODUCTION**

Until November 5, 2008, the California Constitution guaranteed gay and lesbian individuals, like heterosexual individuals, the right to marry the person of their choice—a right that is "sheltered by the Fourteenth Amendment" of the United States Constitution "against the State's unwarranted usurpation, disregard, or disrespect." *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996); *see also Loving v. Virginia*, 388 U.S. 1, 12 (1967).  Proposition 8 ("Prop. 8") stripped gay and lesbian individuals of that fundamental right and relegated them to the separate-but-inherently-unequal institution of domestic partnership.

Like the voter-enacted constitutional amendment invalidated in *Romer v. Evans*, 517 U.S. 620 (1996), Prop. 8 is a manifestly discriminatory measure that cannot survive even rational basis review. Prop. 8 "imposes a special disability upon [gay and lesbian individuals] alone" and "withdraws from" them, "but, no others, specific legal protection" that they had previously enjoyed under the state constitution. *Id.* at 627, 631.  And it does so in order to "reserv[e]" the "highly respected designation of marriage exclusively to opposite-sex couples while offering same-sex couples only the new and unfamiliar designation of domestic partnership"—thereby communicating the "official view that [same-sex couples'] committed relationships are of lesser stature than the comparable relationships of opposite-sex couples." *In re Marriage Cases*, 183 P.3d 384, 402, 434 (Cal. 2008).  The voters' decision to nullify the recognized constitutional right of gay and lesbian individuals to marry and consign these individuals to the inherently unequal institution of domestic partnership is both irrational and "inexplicable by anything but animus." *Romer*, 517 U.S. at 632.

Notably, none of the Defendants responsible for enforcing this irrational measure disputes that Prop. 8 violates the United States Constitution.  Indeed, the Attorney General of California expressly admits that "[t]aking from same-sex couples the right to civil marriage that they had previously possessed under California's Constitution cannot be squared with guarantees of the Fourteenth Amendment."  Doc # 39 at 2.  Similarly, the Governor does not contest any of the key allegations on which Plaintiffs' claims are founded.  Doc # 46 at 2.

That leaves only Proposed Intervenors to conjure some legitimate explanation for Prop. 8's discriminatory amendment of the state constitution.  Their justifications—that the State has

"compelling" interests in "creating a legal structure that promotes the raising of children by both of their biological parents" and in promoting "responsible procreation" (Doc # 36 at 22)—are specious. Prop. 8 does absolutely nothing to further either of those assertedly compelling interests and is vastly and inexplicably underinclusive. Indeed, the implausible justifications proffered by Proposed Intervenors merely reinforce "the inevitable inference that the disadvantage imposed" on gay and lesbian individuals by Prop. 8 "is born of" nothing more than naked "animosity." *Romer*, 517 U.S. at 634.

The equitable arguments against a preliminary injunction advanced by the Governor and Attorney General ("State Defendants") and by Proposed Intervenors are equally unpersuasive, especially since the California Supreme Court upheld the marriages of 18,000 same-sex couples performed before Prop. 8 irrationally stripped Plaintiffs of their state constitutional right to marry. While State Defendants and Proposed Intervenors attempt to confine the purpose of a preliminary injunction to preservation of the status quo (Doc # 33 at 10; Doc # 34 at 12; Doc # 36 at 34), the Ninth Circuit has made clear that "[m]aintaining the status quo is not a talisman" and that "[i]f the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury." *Golden Gate Restaurant Ass'n v. City of San Francisco*, 512 F.3d 1112, 1116 (9th Cir. 2008) (internal quotation marks omitted). The ongoing irreparable harm in this case is manifest and indisputable: Each day that Prop. 8 remains in force, Plaintiffs are prohibited from marrying the person with whom they are in a loving, committed, and long-term relationship, and are subjected to the stigma of state-sanctioned discrimination.

No amount of supposed uncertainty about the legal status of marriages performed while Prop. 8 is preliminarily enjoined can outweigh the compelling need for injunctive relief to alleviate this irreparable harm. The burden of any such uncertainty would be borne principally by Plaintiffs and those similarly situated. While State Defendants may find the hypothesized uncertainty discomfiting, that is not a remotely sufficient justification for withholding from Plaintiffs the relief to which they are otherwise entitled until—as State Defendants would have it—final disposition of this case on appeal, which is to say, for *years*.

# ARGUMENT

**I. PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS OF THEIR CONSTITUTIONAL CHALLENGE TO PROP. 8.**

Only Proposed Intervenors dispute that Prop. 8 violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment. The Attorney General expressly concedes that the provision is unconstitutional, and none of the other Defendants contests the merits of Plaintiffs' arguments. This fact in and of itself demonstrates, at a bare minimum, a probability of success on the merits sufficient to warrant a preliminary injunction.

**A.    Prop. 8 Violates The Equal Protection Clause Of The Fourteenth Amendment.**

Prop. 8 violates the Equal Protection Clause in several independent respects: It irrationally strips Plaintiffs of their state constitutional right to marry and singles them out for a "special disability" by relegating gay and lesbian individuals to the inherently unequal institution of domestic partnership (*Romer*, 517 U.S. at 631), it impermissibly deprives Plaintiffs of their fundamental right to marry in the absence of a compelling state interest, and it unconstitutionally discriminates against Plaintiffs on the basis of their sexual orientation and sex. Proposed Intervenors are unable to provide a constitutionally satisfactory explanation for any—let alone all—of Prop. 8's irrational and discriminatory features.

1.    Proposed Intervenors contend that this Court is foreclosed from providing relief to Plaintiffs by the Supreme Court's summary order in *Baker v. Nelson*, 409 U.S. 810 (1972), which dismissed without opinion an appeal from a Minnesota Supreme Court decision rejecting federal equal protection and due process challenges to that State's prohibition on marriage by individuals of the same sex. Doc # 36 at 12. Even if *Baker* had not been conclusively undermined by the Supreme Court's subsequent decisions in *Romer* and *Lawrence* (*see* Doc # 7 at 16 n.6), it still would not be binding on this Court because the Supreme Court's summary dismissals have controlling force only "on the *precise* issues presented and necessarily decided" by the Supreme Court. *Mandel v. Bradley*, 432 U.S. 173, 176 (1977) (per curiam) (emphasis added). Plaintiffs have not asked this Court to adjudicate the constitutionality of Minnesota law, and the appellants in *Baker* did not challenge a state law like Prop. 8 that stripped gay and lesbian individuals of their previously recognized right to

marry.  Nor was the Supreme Court in *Baker* confronted with a legal regime like California's that "grant[s] same-sex couples who choose to become domestic partners virtually all of the legal rights and responsibilities accorded married couples under California law" (*Marriage Cases*, 183 P.3d at 398 n.2), but arbitrarily denies them access to the institution of civil marriage itself.  This distinction matters because, as the California Supreme Court found, when the State "assign[s] a different designation for the family relationship of same-sex couples while reserving the historic designation of 'marriage' exclusively for opposite-sex couples," the State runs the impermissible risk of "denying the family relationships of same-sex couples . . . equal dignity and respect." *Id.* at 400.  And, tellingly, the Attorney General of California agrees with the state supreme court's conclusion that relegating gay and lesbian individuals to domestic partnership "denies gay and lesbian couples and their families the same dignity, respect, and stature afforded families headed by a married couple." Doc # 39 at 9.

Indeed, the discriminatory message conveyed by Prop. 8 is no different from the message that would be conveyed by a federal statute that granted U.S.-born persons of Chinese ancestry all the benefits of U.S. citizenship but denominated them "nationals of Chinese descent" rather than "United States citizens."  It is beyond question that the Equal Protection Clause does not tolerate such state-sanctioned stigmatization of a disfavored class, even where the substantive rights afforded that class are equal to those granted other citizens. *See Brown v. Bd. of Educ.*, 347 U.S. 483, 494 (1954); *see also Heckler v. Mathews*, 465 U.S. 728, 739-40 (1984) ("discrimination itself, by perpetuating 'archaic and stereotypic notions' or by stigmatizing members of the disfavored group as 'innately inferior' and therefore as less worthy participants in the political community, can cause serious noneconomic injuries to those persons who are personally denied equal treatment") (citation omitted).

The California Supreme Court's recent decision upholding Prop. 8 underscores the irrationality of that provision.  The state supreme court held that Prop. 8 creates three categories of couples in California:  Opposite-sex couples, who are permitted to marry; the 18,000 same-sex couples who were married after the California Supreme Court's decision in the *Marriage Cases* but before the enactment of Prop. 8, whose marriages remain valid; and unmarried same-sex couples, who are prohibited by Prop. 8 from marrying and restricted to the separate-but-inherently-unequal

status of domestic partnership. The state supreme court explained that Prop. 8 "eliminates the ability of [as-yet-unmarried] same-sex couples to enter into an official relationship designated 'marriage,'" but "in all other respects those couples continue to possess . . . 'the core set of basic substantive legal rights and attributes traditionally associated with marriage.'" *Strauss v. Horton*, 207 P.3d 48, 77 (Cal. 2009). The similarities to the voter-enacted constitutional provision in *Romer*—which, like Prop. 8, nullified state-law rights previously enjoyed by gay and lesbian individuals and "put [them] in a solitary class with respect to transactions and relations in both the private and governmental spheres" (517 U.S. at 627)—are unmistakable and constitutionally fatal. *See also Reitman v. Mulkey*, 387 U.S. 369, 381 (1967) (invalidating a voter-enacted California constitutional provision that extinguished state-law protections that minorities had previously possessed against housing discrimination).

Proposed Intervenors' efforts to distinguish *Romer* are unavailing. They emphasize, for example, that, unlike Prop. 8, the Colorado "amendment at issue in *Romer* prevented the government from protecting gay and lesbian individuals against discrimination" and argue that "[d]enying legal protection from invidious discrimination hints of animosity, but denying official legal promotion does not." Doc # 36 at 27. That Proposed Intervenors cast access to the fundamental right to marry as "official legal promotion" cannot mask the reality that both Prop. 8 and Colorado's Amendment 2 stripped gay and lesbian individuals of state-law rights that they had previously possessed and imposed a "special disability upon [them] alone." *Romer*, 517 U.S. at 631. Like Amendment 2, Prop. 8 is an irrational measure that cannot be explained "by anything but animus" toward gay and lesbian individuals. *Id.* at 632; *see also Opinions of the Justices to the Senate*, 802 N.E.2d 565, 570 (Mass. 2004) ("The dissimilitude between the terms 'civil marriage' and 'civil union' is not innocuous; it is a considered choice of language that reflects a demonstrable assigning of same-sex, largely homosexual, couples to second-class status.").

Proposed Intervenors also emphasize the "'sheer breadth'" of Colorado's Amendment 2. Doc # 36 at 27. But just as the "sheer breadth" of Amendment 2—which prohibited the enactment of any law protecting gay and lesbian individuals from discrimination—made clear that the provision "classifie[d] homosexuals not to further a proper legislative end but to make them unequal to

everyone else" (*Romer*, 517 U.S. at 635), the targeted nature of Prop. 8—which relegates gay and lesbian individuals to domestic partnership without otherwise diminishing their ability to obtain nearly all of the substantive state-law rights associated with marriage—similarly underscores the fact that Prop. 8 excludes gay and lesbian individuals from the institution of marriage not because same-sex relationships are somehow incompatible with the rights, duties, or concept of marriage but rather because a "majority of voters" in California harbor an irrational "disapproval of . . . same-sex marriage" and same-sex couples.  Doc # 39 at 10.[1]

2.   In addition to their reliance on *Baker*, Proposed Intervenors contend that Prop. 8 can withstand equal protection scrutiny because the measure purportedly furthers the governmental "interest in creating a legal structure that promotes the raising of children by both of their biological parents" and the interest in what Proposed Intervenors term "'responsible procreation.'"  Doc # 36 at 22.  But Prop. 8 does nothing to further either of those purported governmental interests and is therefore unconstitutional under any standard of equal protection review.[2]

Prop. 8's prohibition on marriage by individuals of the same sex does not advance the State's purported interest in ensuring that children are raised by both of their biological parents because California law expressly authorizes adoption by unmarried same-sex couples.  *See* Cal. Fam. Code §§ 297.5(d), 9000(b); *Sharon S. v. Sup. Ct.*, 73 P.3d 554, 569 (Cal. 2003).  Stripping gay and lesbian

---

[1] Proposed Intervenors' other asserted distinctions of *Romer* are equally baseless.  While *Romer* addressed a "deprivation of political rights" (Doc # 36 at 27), rather than a deprivation of marriage rights, both the right to participate in the political process and the right to marry are fundamental rights protected by the U.S. Constitution.  *See Turner v. Safley*, 482 U.S. 78, 95 (1987) ("the decision to marry is a fundamental right").  Moreover, Proposed Intervenors' contention (at 28) that Prop. 8 was not a response to the California Supreme Court's decision in the *Marriage Cases* is flatly inconsistent with the description of Prop. 8 in the General Election Voter Information Guide as a measure that would "eliminate the right of same-sex couples to marry" first recognized in the state supreme court's decision.  *Strauss*, 207 P.3d at 77.  And while the effort to qualify Prop. 8 for the ballot may have begun before the California Supreme Court had issued that decision, it commenced only after a California superior court had already held that the California Constitution afforded gay and lesbian individuals the right to marry.  *See id.* at 66.

[2] Proposed Intervenors also suggest in passing that "maintaining marriage as the union of a man and a woman is vitally necessary to preserve the tradition of marriage in California."  Doc # 36 at 23 n.6.  But it is well settled that a State cannot shield its discriminatory laws from constitutional scrutiny on the basis of tradition alone.  Indeed, "[i]f a simple showing that discrimination is traditional satisfies equal protection, previous successful equal protection challenges of invidious racial and gender classifications would have failed."  *Varnum v. Brien*, 763 N.W.2d 862, 898 (Iowa 2009); *see*, *e.g.*, *Loving*, 388 U.S. at 6.

individuals of their right to marry and relegating them to domestic partnership therefore does nothing to "promote[ ] the raising of children by both of their biological parents."  Moreover, even if same-sex couples were not permitted to adopt children in California, Prop. 8 would not make it any less likely that biological parents who are unable or unwilling to raise their own children would give those children up for adoption.  And to the extent Proposed Intervenors are suggesting that same-sex couples are sub-optimal parents and that the State therefore has an interest in promoting child-rearing by opposite-sex couples, that contention has been refuted both by California's decision to authorize adoption by same-sex couples and by the great weight of the social science literature.  *See Varnum v. Brien*, 763 N.W. 2d 862, 899 n.26 (Iowa 2009) ("The research appears to strongly support the conclusion that same-sex couples foster the same wholesome environment as opposite-sex couples and suggests that the traditional notion that children need a mother and a father to be raised into healthy, well-adjusted adults is based more on stereotype than anything else.").  Excluding gay and lesbian individuals from the institution of marriage simply stigmatizes the children of gay and lesbian couples—such as the four children that Plaintiffs Perry and Stier are currently raising—by suggesting that their parents' relationships are somehow less deserving of official recognition than the relationships of opposite-sex couples.  Doc # 7-2 at 2; Doc # 7-3 at 2.

Prop. 8 is equally unrelated to the State's purported interest in "'responsible procreation,'" which Proposed Intervenors define as "directing the inherent procreative capacity of sexual intercourse between men and women into stable, legally bound relationships."  Doc # 36 at 22.  It is difficult to fathom how the State's refusal to permit *gay and lesbian* individuals to marry could possibly encourage *heterosexual* individuals to marry when their relationships result in "unintended children."  *Id.* at 13.  Indeed, Proposed Intervenors have it precisely backward when they contend that "recognizing [same-sex] relationships as marriages would not further the government's interest in responsible procreation."  *Id.* at 14 (alterations and internal quotation marks omitted).  The question here is not whether *recognizing* marriage between individuals of the same sex would further a governmental interest—but, instead, whether *prohibiting* those marriages furthers such an interest.  Proposed Intervenors are unable to identify a single legitimate interest that Prop. 8 even conceivably advances, and there is none.

3. Because Prop. 8 does not further any legitimate governmental interest, it is unnecessary for this Court to determine whether Prop. 8 targets a suspect or quasi-suspect class. Even if Prop. 8 could satisfy rational basis review—which it cannot—it would still violate equal protection because it infringes upon Plaintiffs' fundamental right to marry without being narrowly tailored to a compelling state interest. Doc # 7 at 16-17. Moreover, Prop. 8's equal protection shortcomings are exacerbated by the fact that the provision discriminates against gay and lesbian individuals on the basis of their sexual orientation and their sex and therefore must survive at least intermediate scrutiny—an onerous standard that Prop. 8 does not come close to satisfying.

As a threshold matter, Proposed Intervenors contend that Plaintiffs are not "similarly situated to opposite-sex couples" for purposes of marriage because same-sex couples cannot reproduce "naturally" or provide children with both of their biological parents or a male and female role model. Doc # 36 at 26. But Proposed Intervenors' myopic focus on the link between marriage and "natural" reproduction is misplaced. Marriage is an "expression[ ] of emotional support and public commitment" whose importance transcends simple reproduction. *Turner*, 482 U.S. at 95. Plaintiffs are similarly situated to heterosexual individuals for purposes of marriage because, like individuals in a relationship with a person of the opposite sex, they are in loving, committed relationships and "wish to enter into a formal, legally binding and officially recognized, long-term family relationship that affords the same rights and privileges and imposes the same obligations and responsibilities." *Marriage Cases*, 183 P.3d at 435 n.54; *see also Varnum*, 763 N.W.2d at 883 ("plaintiffs are similarly situated compared to heterosexual persons" because "[p]laintiffs are in committed and loving relationships, many raising families, just like heterosexual couples"). The fact that Plaintiffs are not able to produce children together through "natural" means does not permit the State to exclude them from the institution of marriage any more than it would permit the State to prohibit marriage by senior citizens, by felons incarcerated in separate prisons, or by couples who intend to use contraception to prevent procreation.

Proposed Intervenors also argue that Prop. 8 does not discriminate against gay and lesbian individuals because it "treats heterosexual persons in precisely the same manner it treats gay and lesbian individuals." Doc # 36 at 29. This contention is difficult to take seriously. While Prop. 8

indeed prohibits both heterosexual individuals and gay and lesbian individuals from marrying a person of the same sex, Prop. 8 prohibits only gay and lesbian individuals from marrying a person of the sex to which he or she is attracted.  Heterosexual individuals—who, by definition, are attracted to persons of the opposite sex—are authorized under California law to marry a person of the opposite sex, while gay and lesbian individuals—who, by definition, are attracted to persons of the same sex—are prohibited from marrying a person of the same sex.  For this reason, Prop. 8 "cannot be understood as having merely a disparate impact on gay persons, but instead properly must be viewed as directly classifying and prescribing distinct treatment on the basis of sexual orientation." *Marriage Cases*, 183 P.3d at 440.

This discriminatory treatment on the basis of sexual orientation triggers heightened judicial scrutiny because gay and lesbian individuals are a suspect or, at a minimum, a quasi-suspect class.  Indeed, Proposed Intervenors concede that gay and lesbian individuals have been, and continue to be, the target of discrimination and that sexual orientation has no relation to the ability of a person to contribute to society.  Doc # 36 at 31.  This history of invidious discrimination based on a characteristic unrelated to ability conclusively establishes that gay and lesbian individuals are a suspect or quasi-suspect class.  *See Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 313 (1976) (persons "who have been discriminated against on the basis of race or national origin" are a suspect class because they have "experienced a history of purposeful unequal treatment" and "been subjected to unique disabilities on the basis of stereotyped characteristics not truly indicative of their abilities") (internal quotation marks omitted).

The considerations of immutability and political powerlessness invoked by Proposed Intervenors simply underscore the conclusion that laws discriminating against gay and lesbian individuals warrant heightened judicial scrutiny.  The Ninth Circuit and other courts agree that sexual orientation is an immutable characteristic—or, at a minimum, a characteristic that is highly resistant to change.  *See Hernandez-Montiel v. INS*, 225 F.3d 1084, 1093 (9th Cir. 2000); *see also Varnum*, 763 N.W.2d at 893 ("sexual orientation is central to personal identity and 'may be altered [if at all] only at the expense of significant damage to the individual's sense of self'") (alteration in original).  Moreover, the recent enactment of legislation in several States to remove legal restrictions on gay and

lesbian individuals does not diminish "the pervasive and sustained nature of the discrimination" that has historically been directed at gay and lesbian individuals or the "risk that that discrimination will not be rectified, sooner rather than later, merely by resort to the democratic process." *Kerrigan v. Comm'r of Pub. Health*, 957 A.2d 407, 444 (Conn. 2008). Indeed, one need look no further than Prop. 8 itself—which stripped gay and lesbian individuals of their constitutional right to marry under the California Constitution—to recognize that gay and lesbian individuals lack the political power to defend themselves against state-sanctioned discrimination. Heightened judicial scrutiny therefore remains a necessary response to the "invidious and prejudicial treatment" that gay and lesbian individuals continue to endure. *Marriage Cases*, 183 P.3d at 443.[3]

Ultimately, whether gay and lesbian individuals are deemed a suspect class or not—and whether Prop. 8 is examined under heightened scrutiny or rational basis review—this discriminatory measure violates equal protection. Prop. 8 singles out gay and lesbian individuals for disfavored status by stripping them of a state constitutional right that they had previously enjoyed (and that all other citizens of California continue to enjoy)—a right that is fundamental under the United States Constitution (*Zablocki v. Redhail*, 434 U.S. 374, 384 (1978))—and does so for no other reason than to express popular disapproval of same-sex couples and same-sex marriage. Such discrimination is antithetical to our Constitution's promise of equal protection under the law.

**B.    Prop. 8 Violates The Due Process Clause Of The Fourteenth Amendment.**

For many of the same reasons that Prop. 8 violates the Equal Protection Clause, it also cannot withstand scrutiny under the Due Process Clause. Prop. 8 burdens Plaintiffs' fundamental right to

---

[3] Heightened scrutiny is also required because Prop. 8 discriminates against Plaintiffs on the basis of their sex. If either Plaintiff Katami or Zarrillo were female, and if either Plaintiff Perry or Stier were male, then California law would permit each of them to marry the person with whom they are in a long-term, committed relationship. The Equal Protection Clause prohibits such sex-based classifications unless they are "substantially related" to an "important governmental objective" (*United States v. Virginia*, 518 U.S. 515, 533 (1996))—a standard that Prop. 8 is demonstrably unable to satisfy.

marry. Because it does so without furthering a legitimate—let alone a compelling—governmental interest, it violates due process.[4]

It is well established that "freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause." *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639 (1974). Proposed Intervenors contend that this freedom does not extend to Plaintiffs because "the fundamental right to marry recognized in the Constitution is limited to unions between one man and one woman." Doc # 36 at 17. The Supreme Court has made clear, however, that "our laws and tradition afford constitutional protection to personal decisions relating to marriage" and that "[p]ersons in a homosexual relationship may seek autonomy for th[is] purpose[ ], just as heterosexual persons do." *Lawrence v. Texas*, 539 U.S. 558, 574 (2003); *see also Marriage Cases*, 183 P.3d at 421 (Plaintiffs "are not seeking to create a new constitutional right—the right to 'same-sex marriage' . . . . Instead, plaintiffs contend that, properly interpreted, the state constitutional right to marry affords same-sex couples the same rights and benefits . . . as this constitutional right affords to opposite-sex couples."). Plaintiffs are not asking this Court to recognize a new constitutional right to same-sex marriage but instead to vindicate the longstanding right of *all* persons to exercise "freedom of personal choice" and "autonomy" in deciding whom to marry.

The restrictions that Prop. 8 imposes on the ability of gay and lesbian individuals to exercise this fundamental freedom violate due process. As discussed above, Prop. 8 cannot survive rational basis review—much less, the strict scrutiny that is required when a law burdens a fundamental right—because Prop. 8 does not further any legitimate governmental interest. *See Carey v. Population Servs. Int'l, Inc.*, 431 U.S. 678, 686 (1977). Prop. 8 does nothing to advance either of the purported state interests proffered by Proposed Intervenors—promoting the raising of children by their biological parents or encouraging "responsible procreation"—and thus cannot satisfy the

---

[4] The burden that Prop. 8 imposes on Plaintiffs' fundamental right to marry also constitutes an independent violation of the Equal Protection Clause. *See Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 541 (1942).

requirements of due process under any standard of constitutional scrutiny. Accordingly, there is far more than a reasonable probability that Plaintiffs will succeed on the merits.[5]

## II. A PRELIMINARY INJUNCTION IS WARRANTED TO PREVENT IRREPARABLE HARM TO PLAINTIFFS AND PROMOTE THE PUBLIC INTEREST IN EQUAL RIGHTS.

In addition to having a likelihood of success on the merits of their claims, Plaintiffs are entitled to a preliminary injunction because they are being irreparably harmed by Prop. 8's denial of their equal protection and due process rights, and because the balance of hardships and public interest considerations weigh strongly in favor of immediately enjoining enforcement of that discriminatory measure.

Although the Attorney General concedes that Prop. 8 is unconstitutional and the Governor does not dispute that fact, they join Proposed Intervenors in arguing that the Court should decline to preliminarily enjoin Prop. 8 because to do so would purportedly alter the "status quo" pending final resolution of this case. But a preliminary injunction would simply restore the status quo that existed before Prop. 8 stripped Plaintiffs of their state constitutional right to marry—which is precisely the function that a preliminary injunction is intended to serve. *See Dep't of Parks & Recreation v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006) ("the status quo is . . . the last uncontested status that preceded the parties' controversy").

In any event, even if the relevant status quo is California marriage law as it existed on the date this suit was filed (when Prop. 8's validity was still the subject of a state-law dispute before the California Supreme Court), State Defendants and Proposed Intervenors are wrong when they effectively suggest that "[m]aintaining the status quo" has some "talisman[ic]" significance to whether a preliminary injunction is warranted. *Golden Gate Restaurant Ass'n*, 512 F.3d at 1116. The Ninth Circuit has made clear that, when determining whether a preliminary injunction is

---

[5] It is simply a rhetorical distraction for Proposed Intervenors to suggest (at 21 n.4) that invalidating laws prohibiting marriage between individuals of the same sex would call into question the constitutionality of laws prohibiting marriage between closely related individuals and laws prohibiting polygamy. Those laws serve completely different governmental interests that are plainly inapplicable to the issue of equal access of *all* adult citizens to the fundamental right to marry irrespective of their sexual orientation.

appropriate, the "focus always must be on prevention of injury by a proper order, not merely on preservation of the status quo." *Id.* (internal quotation marks omitted). "If the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury." *Id.* (internal quotation marks omitted). For that reason, the Ninth Circuit routinely has approved preliminary injunctions suspending the enforcement of statutes and governmental policies that are likely to be invalidated on the merits and that are causing irreparable harm to the plaintiff. *See*, *e.g.*, *Nelson v. NASA*, 530 F.3d 865, 872 (9th Cir. 2008) (reversing a district court's denial of a preliminary injunction in a suit filed seven months after a challenged NASA policy went into effect). Like Plaintiffs' request for preliminary relief, these cases present classic examples of the use of a prohibitory injunction to "'restrain[ ]' a responsible party" from continuing to violate a plaintiff's rights during the pendency of litigation. *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996).

Here, Plaintiffs will be irreparably harmed as long as Prop. 8 continues to deny them their right to marry. Not only does this state-sanctioned discrimination cause Plaintiffs irreparable emotional distress and psychological harm, but each day that Prop. 8 remains in force augments the possibility that changed circumstances—strain on Plaintiffs' relationships created by their inability to marry, the unpredictable vicissitudes of life, or even illness or death—will prevent Plaintiffs from ever marrying their partners. It is therefore "clear that it would not be equitable or in the public's interest to allow the state to continue to violate the requirements of federal [constitutional] law" during the pendency of this case, "especially when there are no adequate remedies available to compensate . . . Plaintiffs for the irreparable harm that would be caused by the continuing violation." *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 852-53 (9th Cir. 2009).

State Defendants and Proposed Intervenors are also wrong when they argue that these irreparable harm and public interest considerations are outweighed by the supposed legal uncertainty that might be generated if Plaintiffs married after obtaining a preliminary injunction but were subsequently unsuccessful on the merits of their claims. Neither State Defendants nor Proposed Intervenors are able to establish that any person other than Plaintiffs and other gay and lesbian individuals who wish to get married would bear the risk of that uncertainty. Gay and lesbian

individuals should have the right to choose, for themselves and for their own reasons, whether to marry today or wait until their fundamental rights are no longer under attack. Moreover, under the reasoning of State Defendants and Proposed Intervenors, injunctive relief would not be warranted in this case even if this Court invalidated Prop. 8 on the merits because it is possible that the Ninth Circuit or U.S. Supreme Court would eventually reverse that decision. Permitting such irreparable harm to continue unabated until a final resolution of this case on appeal ignores the very reason that preliminary injunctive relief is made available in the first place—"to prevent irreparable injury" to plaintiffs. *Golden Gate Restaurant Ass'n*, 512 F.3d at 1116.[6]

In any event, the uncertainty posited by State Defendants and Proposed Intervenors is greatly diminished by the fact that this Court will only issue a preliminary injunction if it first determines that Plaintiffs are *likely* to succeed on the merits of their claims. And while Plaintiffs believe—consistent with the Attorney General's arguments before the California Supreme Court in *Strauss v. Horton* (Doc # 7 at 24)—that the marriages performed during the period that Prop. 8 is preliminarily enjoined would remain valid even if that provision were eventually upheld, the specter of legal uncertainty raised by State Defendants and Intervenors is sufficient to refute their contention that a preliminary injunction would afford Plaintiffs complete relief. As long as those parties continue to cast doubt on whether Plaintiffs' marriages would remain valid if Prop. 8 were ultimately sustained, Plaintiffs will have a strong interest in continuing to litigate this case vigorously even after obtaining a preliminary injunction.

Finally, it is singularly unpersuasive for Proposed Intervenors to contend that they would be irreparably harmed by a preliminary injunction that would "nullify" the "exercise of their state

---

[6] The Governor attempts to bolster his claim of legal uncertainty by contending that a preliminary injunction against the enforcement of Prop. 8 would apply only in those two counties whose clerks have been named as defendants in this case. But that is plainly incorrect as a matter of state law, which affords county clerks only the "ministerial" responsibility of issuing marriage licenses under the direction and control of the State. *Lockyer v. City & County of San Francisco*, 95 P.3d 459, 473 (Cal. 2004). If the Governor and Attorney General of California are enjoined from enforcing Prop. 8, then county clerks cannot continue to enforce that provision. Indeed, when the California Supreme Court invalidated California's statutes limiting marriage to opposite-sex couples in the *Marriage Cases*, it ordered statewide relief even though the plaintiffs had not named every California county clerk as a defendant.

constitutional right to amend the California Constitution." Doc # 36 at 35. While Proposed Intervenors possess the right under state law to use the initiative process to propose amendments to the state constitution, the U.S. Supreme Court has repeatedly made clear that this power may not be used to deprive a disfavored group of their federal constitutional rights. *See Romer*, 517 U.S. at 635; *Reitman*, 387 U.S. at 381. Permitting Prop. 8 to remain in force would condone Proposed Intervenors' discriminatory and unconstitutional use of the state initiative process.[7]

**CONCLUSION**

For the foregoing reasons, the Court should issue a preliminary injunction enjoining Defendants from enforcing Article I, § 7.5 of the California Constitution insofar as that provision limits civil marriage in California to the union of a man and a woman, and prohibits two individuals of the same sex from getting married.

Dated: June 18, 2009

GIBSON, DUNN & CRUTCHER LLP

By: _____/s/_____
Theodore B. Olson

and

BOIES, SCHILLER & FLEXNER LLP

David Boies

Attorneys for Plaintiffs KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, AND JEFFREY J. ZARRILLO

---

[7] If this Court denies a preliminary injunction, then Plaintiffs agree with the Governor that, in light of the "important federal constitutional issues" raised in this case (Doc # 33 at 10), the ongoing irreparable harm to Plaintiffs, and the absence of disputed factual issues, expedited treatment of this case is warranted.