ALAN L. SCHLOSSER (SBN 49957)
aschlosser@aclunc.org
ELIZABETH O. GILL (SBN 218311)
egill@aclunc.org
ACLU FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
T: (415) 621-2493/F: (415) 255-8437

JON W. DAVIDSON (SBN 89301)
jdavidson@lambdalegal.org
JENNIFER C. PIZER (SBN 152327)
jpizer@lambdalegal.org
TARA BORELLI (SBN 216961)
tborelli@lambdalegal.org
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
3325 Wilshire Boulevard, Suite 1300
Los Angeles, CA 90010
T: (213) 382-7600/F: (213) 351-6050

SHANNON P. MINTER (SBN 168907)
sminter@nclrights.org
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, CA 94102
T: (415) 392-6257/F: (415) 392-8442

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO,<br><br>        Plaintiffs,<br><br>    v.<br><br>ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the California Department of Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; and DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles,<br><br>        Defendants. | CASE NO. 09-CV-2292 VRW<br><br>**BRIEF OF *AMICI CURIAE* AMERICAN CIVIL LIBERTIES UNION, LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC., AND NATIONAL CENTER FOR LESBIAN RIGHTS**<br><br>Date:       July 2, 2009<br>Time:      10:00 a.m.<br>Judge:     Chief Judge Walker<br>Location:  Courtroom 6, 17th Floor<br><br>Trial Date:  Not Set |

Additional Counsel:

MARK ROSENBAUM (SBN 59940)
mrosenbaum@aclu-sc.org
LORI RIFKIN (SBN 244081)
lrifkin@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 W. 8th Street
Los Angeles, CA 90017
T: (213) 977-9500/ F: (213) 250-3919

DAVID BLAIR-LOY (SBN 229235)
dblairloy@aclusandiego.org
ACLU FOUNDATION OF SAN DIEGO AND IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138
T: (619) 232-2121/F: (619) 232-0036

MATTHEW A. COLES (SBN 76090)
mcoles@aclu.org
JAMES D. ESSEKS (SBN 159360)
jesseks@aclu.org
LGBT & AIDS PROJECT
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10005
T: (212) 549-2500/F: (212) 549-2650

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ......................................................................... i

**SUMMARY OF ARGUMENT** ................................................................... 1

**ARGUMENT** ................................................................................................ 1

I.    **PROPOSITION 8'S MANNER OF DEPRIVING SAME-SEX COUPLES IN CALIFORNIA OF EQUAL STATUS UNDER THE LAW IS UNIQUELY TRANSPARENT IN ITS UNCONSTITUTIONALITY**................. 1

    A.    Proposition 8 Singled Out Same-Sex Couples for Discriminatory Treatment Under California Law. ..................................................... 1

    B.    Proposition 8 Denied the Status of Marriage to Gay and Lesbian Couples While Leaving Intact Their Correlative, Substantive Rights and Obligations. ......................................................................... 4

II.    **BECAUSE IT DOES NOT ADVANCE A LEGITIMATE GOVERNMENT PURPOSE, PROPOSITION 8 FAILS UNDER EVEN THE MOST MINIMAL CONSTITUTIONAL SCRUTINY REQUIRED BY THE EQUAL PROTECTION CLAUSE.** ............................................................. 6

    A.    The Court Need Not Reach the Issue of Whether a Heightened Level of Scrutiny Applies ............................................................................... 7

    B.    A Discriminatory Law That Does Not Advance a Legitimate Government Purpose Violates the Equal Protection Clause. ......................... 7

    C.    Proposition 8 Did Not Advance a Legitimate Government Purpose. ........... 10

    D.    In Addition To Being Illegitimate, the Purposes Presented by Proponents Are Not Rationally Advanced by Proposition 8. ....................... 11

        1.    Proposition 8 Does Not Rationally Advance the Goal of Children Being Raised by Their Married, Biological Parents. .............................. 12

        2.    Proposition 8 Does Not Rationally Advance the Goal of Preventing Children From Being Taught in Public School That Same-Sex Couples Exist and Can Marry. ................................................................ 14

        3.    Proposition 8 Does Not Rationally Advance the Goal of "Restoring" a "Traditional" Definition of Marriage. .............................. 15

**CONCLUSION**..................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985) ................................ 7, 10, 11, 12

*Cruzan v. Dir. Mo. Dep't of Health*, 497 U.S. 261, 292, 300 (1990) ............................ 4

*Dandridge v. Williams,* 397 U.S. 471, 486 (1970) ............................................ 8

*Davis v. Beason,* 133 U.S. 333 (1890) ....................................................... 9

*Eisenstadt v. Baird,* 405 U.S. 438, 446-455 (1972) ......................................... 8

*FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307 (1993) .......................................... 8

*Ferguson v. Skrupa,* 372 U.S. 726 732-733 (1963) ........................................... 8

*Heller v. Doe*, 509 U.S. 312, 324 (1993) ................................................ 7, 8

*Hooper v. Bernalillio County Assessor*, 472 U.S. 612, 619-623 (1985) ....................... 9

*Hunter v. Erickson*, 393 U.S. 385 (1969) .................................................. 9

*In re Lance W.*, 37 Cal.3d 873, 889 (1985) ................................................. 3

*In re Marriage Cases,* 43 Cal. 4th 757 (2008) ......................................... passim

*Koebke v. Bernardo Heights Country Club*, 36 Cal.4th 824, 837-39 (2005) .................. 5, 6

*Lawrence v. Texas*, 539 U.S. 558 (2003) ................................................ 9, 15

*Meyer v. Nebraska*, 262 U.S. 390 (1923) .................................................... 9

*People v. Garcia*, 77 Cal.App.4th 1269 (2000) .............................................. 2

*Pierce v. Society of Sisters,* 268 U.S. 510 (1925) ......................................... 9

*Railway Express Agency, Inc. v. New York*, 336 U.S. 106, 112-13 (1949) ..................... 4

*Reitman v. Mulkey*, 387 U.S. 369, 373 (1967) ............................................. 10

*Robert L. v. Superior Court*, 30 Cal.4th 894, 901 (2003) ................................... 3

*Romer v. Evans,* 517 U.S. 620, 626 (1996) ...................................... 5, 10, 12, 16, 17

*Rowland v. Mad River Local School Dist.*, 470 U.S. 1009 (1985) ............................. 3

*Strauss v. Horton*, 207 P.3d 48 (2009) ............................................... passim

*United States Dep't of Agric. v. Moreno*, 413 U.S. 528, 533-538 (1973) .............. 8, 10, 16

*Witt v. Dep't of the Air Force*, 527 F.3d 806 (9th Cir. 2008) .............................. 7

i

## Constitutional Provisions

U.S. CONST., amend XIV, § 1 ................................................................................................ 7

## Statutes

Cal. Fam. Code § 297 ......................................................................................................... 5

Cal. Fam. Code § 297.5 ...................................................................................................... 5

Cal. Fam. Code § 297.5(a) ................................................................................................. 6

2003 Cal. Stats., ch. 421, § 1(a), § 2 ................................................................................. 5

## Other Authorities

Prop. 8 Voter Guide, Argument in Favor of Prop. 8 ................................................ *passim*

**SUMMARY OF ARGUMENT**

Before the Court is a motion for preliminary injunction that seeks to enjoin the enforcement of Proposition 8, the November 2008 amendment to the California Constitution that eliminated the right of same-sex couples to marry. Plaintiffs argue that by denying same-sex couples the right to marry, Proposition 8 violates both the Equal Protection and Due Process Clauses of the Fourteenth Amendment, and the State Attorney General agrees. While *amici* also agree that Proposition 8 violates the federal guarantees of equal protection and due process, *amici* submit this brief to emphasize the singular nature of the case presented by Proposition 8, and the California-focused analysis that accordingly is warranted. *Amici* therefore address only the question of whether, in light of the particular circumstances of this ballot measure, plaintiffs are likely to succeed on the merits of their equal protection claim.

Proposition 8 denies same-sex couples the right to marry in a unique historical context in which the denial can only be deemed a declaration of inequality. First, Proposition 8 singled out gay and lesbian couples for discriminatory treatment by stripping them of the right to marry in direct response to the California Supreme Court's recognition that all individuals and couples, regardless of sexual orientation, are entitled to exercise the fundamental right to marry. Second, while Proposition 8 stripped same-sex couples of the designation or status of marriage, it otherwise left the legal rights of same-sex state-registered couples both intact and identical to the legal rights of heterosexual married couples. The intent and effect of the measure is therefore to differentiate between same-sex couples and different-sex couples solely on the basis of declared unequal status— an illegitimate purpose for a state law, whatever standard of constitutional scrutiny is applied under the Equal Protection Clause.

**ARGUMENT**

I.   **PROPOSITION 8'S MANNER OF DEPRIVING SAME-SEX COUPLES IN CALIFORNIA OF EQUAL STATUS UNDER THE LAW IS UNIQUELY TRANSPARENT IN ITS UNCONSTITUTIONALITY.**

A.   **Proposition 8 Singled Out Same-Sex Couples for Discriminatory Treatment Under California Law.**

The California Supreme Court's May 2008 decision regarding the constitutionality under state law of California's statutory ban on the marriage of same-sex couples held that all individuals and

1

couples are entitled to the fundamental right to marry, without regard to their sexual orientation.  *See In re Marriage Cases*, 43 Cal.4th 757, 820 (2008).  Under the state constitutional guarantees of privacy, due process, and equal protection, the Court recognized not only that same-sex couples are entitled to "the same substantive constitutional rights as opposite-sex couples to choose one's life partner and enter with that person into a committed, officially recognized, and protected family relationship that enjoys all of the constitutionally based incidents of marriage," but also that same-sex couples were entitled to "the name assigned to the family relationship available to opposite-sex couples"—marriage.  *Id.* at 829-30.

The Court in the *Marriage Cases* further held that, under California's state constitutional equal protection analysis, government discrimination on the basis of sexual orientation demanded the highest level of constitutional scrutiny.  Citing the long history of discrimination against gay and lesbian people in California, the Court found that "sexual orientation is a characteristic . . . that is associated with a stigma of inferiority and second-class citizenship, manifested by the group's history of legal and social disabilities."  *Id.* at 841; *see also id.* ("Outside of racial and religious minorities, we can think of no group which has suffered such pernicious and sustained hostility, and such immediate and severe opprobrium, as homosexuals.") (citing *People v. Garcia*, 77 Cal.App.4th 1269, 1276 (2000), citing *Rowland v. Mad River Local School Dist.*, 470 U.S. 1009 (1985) (Brennan, J., dissenting from denial of certiorari)).  Because "society now recognizes that the characteristic in question generally bears no relationship to the individual's ability to perform or contribute to a society," the Court concluded that "statutes imposing differential treatment on the basis of sexual orientation should be viewed as constitutionally suspect."  *Id.* at 843.

This was the unique factual and legal background within which Proposition 8 was introduced and qualified as a statewide initiative constitutional amendment to be placed on California's November 2008 ballot.  The purpose of the initiative was explicitly stated in its title: "Eliminates Right of Same-Sex Couples to Marry."  Should there nonetheless have been any question as to the aim of the amendment, rationales for its passage were submitted by its proponents ("Proponents") for

2

publication in the November 2008 voter guide.[1]  The three main rationales for the measure were described as follows:  "YES on Proposition 8 does three simple things: *It restores the definition of marriage* to what the vast majority of California voters already approved and human history has understood marriage to be.  *It overturns the outrageous decision of four activist Supreme Court justices* who ignored the will of the people.  *It protects our children* from being taught in public schools that 'same-sex marriage' is the same as traditional marriage."  Prop. 8 Voter Guide, Argument in Favor of Prop.8 (emphasis in original).[2]

As reflected in its title and ballot arguments, then, the purpose of Proposition 8 was plain: it would take away the right to marry from gay and lesbian couples, while restoring heterosexual couples to an exclusive and favored status.  When a simple majority of the California electorate approved Proposition 8 in November 2008, its insertion of language into the state constitution limiting marriage to different-sex couples had a known effect—it stripped the right to marry from same-sex couples, and thereby singled out a minority group that has historically suffered discriminatory treatment under the law.[3]

This naked act of political will to advantage the majority at the expense of a minority is, on its face, at odds with a core purpose of the Equal Protection Clause:  "The framers of the Constitution knew, and we should not forget today, that there is no more effective practical guaranty against

---

[1] California General Election, *Tuesday, November 4, 2008, Official Voter Information Guide, Proposition 8, available at* http://voterguide.sos.ca.gov/past/2008/general/argu-rebut/argu-rebutt8.htm. (hereinafter "Prop. 8 Voter Guide, Argument in Favor of Prop.8").

[2] Under California law, the "analyses and arguments contained in the official ballot pamphlet" are recognized as indicia of the voters' intent.  *Robert L. v. Superior Court*, 30 Cal.4th 894, 901 (2003).  And "[i]n construing constitutional and statutory provisions, whether enacted by the Legislature or by initiative, the intent of the enacting body is the paramount consideration."  *In re Lance W.*, 37 Cal.3d 873, 889 (1985).

[3] Proponents contend that Proposition 8 does not discriminate on the basis of sexual orientation because a "man and woman can marry regardless of their sexual orientation."  Proposed Intervenors' Br. at 19.  As the California Supreme Court recognized in the *Marriage Cases*, however, this argument has no merit:  "A statute that limits marriage to a union of persons of opposite sexes, thereby placing marriage outside the reach of couples of the same sex, unquestionably imposes different treatment on the basis of sexual orientation.  In our view, it is sophistic to suggest that this conclusion is avoidable by reason of the circumstance that the marriage statutes permit a gay man or lesbian to marry someone of the opposite sex, because making such a choice would require the negation of the person's sexual orientation."  *In re Marriage Cases*, 43 Cal.4th at 839.

3

arbitrary and unreasonable government than to require that the principles of a law which officials would impose upon a minority must be imposed generally. . . . Courts can take no better measure to assure that laws will be just than to require that laws be equal in operation." *Railway Express Agency, Inc. v. New York*, 336 U.S. 106, 112-13 (1949) (Jackson, J., concurring); *see also Cruzan v. Dir. Mo. Dep't of Health*, 497 U.S. 261, 292, 300 (1990) (Scalia, J., concurring) ("Our salvation is the Equal Protection Clause, which requires the democratic majority to accept for themselves and their loved ones what they impose on you and me.").

**B.      Proposition 8 Denied the Status of Marriage to Gay and Lesbian Couples While Leaving Intact Their Correlative, Substantive Rights.**

Although Proposition 8 explicitly eliminated the right to marry for same-sex couples, it did not strip them of the substantive rights recognized by the California Supreme Court in the *Marriage Cases* "to chose one's life partner and enter with that person into a committed, officially recognized, and protected family relationship that enjoys all of the constitutionally based incidents of marriage." *In re Marriage Cases*, 43 Cal.4th at 829.

In *Strauss v. Horton*, the California Supreme Court authoritatively construed Proposition 8,[4] holding that "the measure carves out a narrow and limited exception" to the state constitutional guarantees of privacy, due process, and equal protection. *Strauss v. Horton*, 207 P.3d 48, 61 (2009). Proposition 8 "reserv[es] the official designation of the term 'marriage' for the union of opposite-sex couples as a matter of state constitutional law, but leav[es] undisturbed all of the other extremely significant substantive aspects of a same-sex couple's state constitutional right to establish an officially recognized and protected family relationship and the guarantee of equal protection of the laws." *Id.* Proposition 8 therefore eliminates "only the right of same-sex couples to equal access to the designation of marriage." *Id.* at 76. The *Strauss* court made clear that all aspects of the right to marry other than the name and the status must be provided to same-sex couples as a matter of state

---

[4] *See Romer v. Evans,* 517 U.S. 620, 626 (1996) (noting that state supreme court's construction of an amendment to its state constitution is "authoritative").

constitutional law.  *Id.* at 77 ("Like opposite-sex couples, same-sex couples enjoy this protection not as a matter of legislative grace, but of constitutional right.")

That Proposition 8 would leave intact all the substantive legal rights of same-sex couples other than the right to the status of marriage was fully contemplated in the ballot arguments in support of the measure, which said:  "Proposition 8 doesn't take away any rights or benefits of gay and lesbian domestic partnerships.  Under California law, 'domestic partners shall have the same rights, protections, and benefits' as married spouses.  (Family Code § 297.5.)  There are NO exceptions.  Proposition 8 WILL NOT change this."  Prop. 8 Voter Guide, Argument in Favor of Prop. 8 (emphasis in original).  And Proponents also recognize that Proposition 8 only pertains to the designation or status of marriage:  "While Californians believe that marriage is the union of a man and a woman, they have chosen to officially recognize and grant benefits to same-sex relationships, *see* Cal. Fam. Code § 297, and they have relentlessly strived to eradicate discrimination against gay and lesbian individuals from all facets of society."  Proposed Intervenors' Br. at 2.

**C.      The Effect of Proposition 8 Is To Declare Gay and Lesbian Couples Unequal Under the Law.**

Considering the unique circumstances surrounding its enactment and stated intent of stripping same-sex couples of the status of marriage while leaving intact all of the other substantive rights of same-sex couples, the sole purpose of Proposition 8 manifestly is to establish a declaration of the inequality of gay and lesbian couples under California law.  California has long recognized that lesbian and gay couples have the same needs for legal protection as heterosexual couples and should be protected to the same extent, using the same rules, and within the same legal system.  As the California Supreme Court has noted, the state's domestic partnership laws were intended "to further the state's interests in promoting stable and lasting family relationships, and protecting Californians from the economic and social consequences of abandonment, separation, the death of loved ones, and other life crises," regardless of couples' gender and sexual orientation.  *Koebke v. Bernardo Heights Country Club*, 36 Cal.4th 824, 837-39 (2005) (citing 2003 Cal. Stats., ch. 421, § 1(a), § 2).  California did so in 2003 by granting domestic partners "'the same rights, protections, and benefits' and impos[ing] upon them 'the same responsibilities, obligations, and duties under law, whether they

derive from statutes, administrative regulations, court rules, government policies, common law, or any other provisions or sources of law, as are granted to and imposed upon spouses.'" *Id.* at 838 (citing Cal. Fam. Code § 297.5(a)).

In the *Marriage Cases*, the California Supreme Court took the next step and described the effect on same-sex couples of the denial of the designation of marriage in part as follows:

> [B]ecause of the long and celebrated history of the term "marriage" and the widespread understanding that this term describes a union unreservedly approved and favored by the community, there clearly is a considerable and undeniable symbolic importance to this designation.  Thus, it is apparent that affording access to this designation exclusively to opposite-sex couples, while providing same-sex couples access to only a novel alternative designation, realistically must be viewed as constituting significant unequal treatment to same-sex couples.

*In re Marriage Cases*, 43 Cal.4th at 845.  As the California Supreme Court concluded, and as could be easily demonstrated by evidence, denying same-sex couples access to the status of marriage and relegating them to the lesser status of domestic partnership will harm those couples and their children in both tangible and intangible ways.  *Id.* at 846 ("[I]t is difficult to deny that the unfamiliarity of the term 'domestic partnership' is likely, for a considerable period of time, to pose significant difficulties and complications for same-sex couples, and perhaps most poignantly for their children, that would not be presented if, like opposite-sex couples, same-sex couples were permitted access to the established and well-understood family relationship of marriage) (citing N.J. Civil Union Review Com., First Interim Rep. (Feb. 19, 2008) pp. 6–18 <http://www.nj.gov/oag/dcr/downloads/1st-InterimReport-CURC.pdf>[as of May 15, 2008]); *id* at 845 ("[I]n light of the historic disparagement of and discrimination against gay persons, there is a very significant risk that retaining a distinction in nomenclature with regard to this most fundamental of relationships . . . will cause the new parallel institution [domestic partnerships] . . . to be viewed as of a lesser stature than marriage and, in effect, as a mark of second-class citizenship."); *see also Strauss*, 207 P.3d at 61 ("we by no means diminish or minimize the significance that the official designation of 'marriage' holds").

The unique declaration of inequality that Proposition 8 accomplishes in California sets this case apart from other state bans on marriage for same-sex couples elsewhere.  No other state has voted to take the existing right to marry away from same-sex couples who had not yet exercised it

while, at the same time, acknowledging that same-sex couples need and are entitled to retain all the legal protections that the state provides to married couples. The presence of thousands of married lesbian and gay couples in the state alongside the many thousands more who are forbidden from making that commitment further underscores the unique line drawing at work here. Given these singular circumstances, this case presents a tightly focused constitutional question: Can an official declaration that a disadvantaged minority group is inferior satisfy the most basic requirements of equal protection? The answer is that it cannot.

## II. BECAUSE IT DOES NOT ADVANCE A LEGITIMATE GOVERNMENT PURPOSE, PROPOSITION 8 FAILS UNDER EVEN THE MOST MINIMAL CONSTITUTIONAL SCRUTINY REQUIRED BY THE EQUAL PROTECTION CLAUSE.

### A. The Court Need Not Reach the Issue of Whether a Heightened Level of Scrutiny Applies.

*Amici* agree with plaintiffs that Proposition 8 should be subjected to the strictest form of constitutional scrutiny because it discriminates on the basis of sexual orientation and gender, and infringes on the fundamental right to marry. Under applicable Ninth Circuit precedent, discrimination against same-sex couples should be reviewed under heightened scrutiny. *See Witt v. Dep't of the Air Force*, 527 F.3d 806 (9th Cir. 2008). *Amici* believe, however, that it is unnecessary for the Court to decide the appropriate standard of review here. As explained below, Proposition 8's declaration of inequality fails to meet even the minimal level of constitutional scrutiny demanded by the federal equal protection guarantee.

### B. A Discriminatory Law That Does Not Advance a Legitimate Government Purpose Violates the Equal Protection Clause.

The federal Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST., amend XIV, § 1. This equality guarantee is "essentially a direction that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). At a bare minimum—on rational basis review—the Clause demands that a classification drawn by state law must be "rationally related to a legitimate state interest," *id.* at 440, and that the classification cannot rest "on grounds wholly irrelevant to the achievement of the State's objectives." *Heller v. Doe*, 509 U.S. 312, 324 (1993).

7

Thus, in order to pass constitutional muster under the Equal Protection Clause, the classification drawn by Proposition 8 between same-sex couples and different-sex couples must be, at a minimum, rationally related to achieving a legitimate state purpose.

While the Supreme Court defers almost completely to legislative choices about where to draw lines in economic and regulatory contexts, it is more careful in cases involving individual liberty and human dignity.  *See, e.g., Eisenstadt v. Baird,* 405 U.S. 438, 446-455 (1972) (closely analyzing and ultimately rejecting under rational basis rationales offered for Massachusetts' ban on purchase of contraceptives by people who were not married); *United States Dep't of Agric. v. Moreno,* 413 U.S. 528, 533-538 (1973) (closely analyzing and ultimately rejecting on rational basis rationales offered for federal ban on food stamps for households containing unmarried persons); *Heller*, 509 U.S. at 321-330 (closely analyzing and ultimately upholding rationales offered for different standards of proof for involuntary commitment of mentally ill and mentally retarded individuals); *cf. FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) (upholding economic regulation against equal protection challenge where "any reasonably conceivable state of facts that could provide a rational basis for the classification").

At a minimum, when applying the rational basis test carefully, the Court goes beyond the mere labels used to describe the purposes said to be advanced by a classification, to make sure that in fact a legitimate interest is being invoked.  In addition, the Court asks for an intellectually rigorous explanation of how the classification might be thought to advance the purposes.  *See, e.g. Moreno*, 413 U.S. at 533-538 (carefully thinking through whether an exclusion of unmarried persons could really be thought to prevent fraud); *Heller,* 509 U.S. at 321-330 (taking pains to see if it really was possible to think that differences between mentally ill and mentally retarded persons could justify different standards of proof in commitment proceedings).  In economic and regulatory cases, on the other hand, the Court's review of the possible purposes and conceivable connections is often cursory to say the least.  *See, e.g., Dandridge v. Williams,* 397 U.S. 471, 486 (1970); *Ferguson v. Skrupa,* 372 U.S. 726 732-733 (1963).

A more rigorous application of rational basis analysis is particularly important where there is reason to suspect that the classification may not have been drawn for legitimate reasons.  Enactments

that are outside "our constitutional tradition" are one reason to be wary.  *See, e.g. Romer v. Evans*, 517 U.S. 620, 633 (1996) (state constitutional amendment depriving government of the power to protect lesbians, gay men and bisexuals from discrimination failed rational basis test after careful examination showed no legitimate purposes); *see also, Hooper v. Bernalillio County Assessor*, 472 U.S. 612, 619-623 (1985) (tax exemption for some Vietnam Veterans failed rational basis test after careful review showed only possible purpose was not legitimate).

Reason to suspect that a law's objective in fact was to disadvantage a politically unpopular group or to express moral disapproval is another reason for added care.  *See Romer*, 517 U.S. at 633 ("By requiring that the classification bear a rational relationship to an independent and legitimate legislative end, we ensure that classifications are not drawn for the purpose of disadvantaging the group burdened by the law."); *see also Lawrence v. Texas*, 539 U.S. 558, 580 (2003) (O'Connor, J., concurring) ("When a law exhibits such a desire to harm a politically unpopular group, we have applied a more searching form of rational basis review to strike down such laws under the Equal Protection Clause.").

Both reasons for suspicion are raised by Proposition 8, and therefore mandate the more rigorous application of rational basis review in this case.  First, the circumstances under which Proposition 8 was enacted are unprecedented.  In no other state have voters stripped gay and lesbian couples of an established right to marry on the heels of a state supreme court decision holding not only that such couples are fully included within an established fundamental right to marry, but also that gay and lesbian persons are a historically disadvantaged minority who have suffered "pernicious and sustained hostility" resulting in "a history of legal and social disabilities" based on a characteristic with no relevance their ability to participate in or contribute to society.  By taking that extraordinary step, Proposition 8 joined an aberrant group of shameful efforts that were rejected by the Court for being outside our constitutional tradition of equal justice, in which a majority of voters used the law to make official outcasts of an unpopular minority.  *See Romer*, 517 U.S. at 620; *Hunter v. Erickson*, 393 U.S. 385 (1969) (African Americans); *Pierce v. Society of Sisters,* 268 U.S. 510 (1925) (Catholics); *Meyer v. Nebraska*, 262 U.S. 390 (1923) (German Americans); *Davis v. Beason,* 133 U.S. 333 (1890) (Mormons).

Second, as explained more fully below, the circumstances of Proposition 8's adoption and the reasons offered for it make plain that it was motivated by disapproval of gay people generally, and lesbian and gay couples in particular, and amounts to a bare desire to favor different-sex couples. Proposition 8 stripped same-sex couples of access to marriage not in order to change the substantive rights afforded to such couples, but rather to establish that different-sex couples are favored and that gay couples are not "okay."  Prop. 8 Voter Guide, Argument in Favor of Prop. 8.; *see also In re Marriage Cases,* 43 Cal.4th at 845; *Strauss,* 207 P.3d at 61.

**C.     Proposition 8 Did Not Advance a Legitimate Government Purpose.**

In examining the constitutionality of a state law under the Equal Protection Clause, courts may look to the law's "immediate objective, its ultimate effect and its historical context and the conditions existing prior to its enactment."  *Reitman v. Mulkey*, 387 U.S. 369, 373 (1967).  As described above, in an unprecedented manner, Proposition 8 singled out gay and lesbian couples in order to deprive them of the status of marriage, while leaving intact "the core set of basic substantive legal rights and attributes traditionally associated with marriage."  *Strauss*, 207 P.3d at 63.  The novelty of the circumstances under which Proposition 8 was enacted, together with its avowed purpose of stripping same-sex couples of an existing and highly favored legal status while retaining that status for different-sex couples, make plain that the purpose of Proposition 8 was to label gay and lesbian couples as distinct from and second-class to heterosexual couples—to declare them unequal under the law.

Proponents' ballot arguments confirm that Proposition 8 was intended to strip an equalizing status from gay and lesbian couples, relegating them to an inherently unequal and inferior status.[5] Indeed, the unifying theme of the ballot arguments was that the relationships of same-sex couples, no matter the commitments the couples make nor the responsibilities they take on, should not be deemed

---

[5] The Court in engaging in the more rigorous application of rational basis review required for classifications that target disfavored minorities has also looked to traditional sources of legislative intent to "illuminate the purposes" behind a law.  *See Moreno*, 413 U.S. at 534 (reviewing legislative history to determine the purpose behind a statute that differentiated between households of related persons and households of unrelated persons); *see also*, *Cleburne*, 473 U.S. at 447-50 (reviewing city council records to determine the purpose behind a zoning ordinance that differentiated between group homes for the mentally disabled and other group homes).

"equal" to the relationships of different-sex couples.  As the ballot arguments put it, Proposition 8 removes the designation or status of marriage from same-sex couples in order to avoid creating the impression that same-sex relationships are "okay" and that there is "no difference" between the relationships of same-sex and different-sex couples.  Prop. 8 Voter Guide, Argument in Favor of Prop. 8.  The purpose of Proposition 8, in other words, is to mark same-sex couples as different so as to preserve the most favored family status for different-sex couples.

The U.S. Supreme Court has held in no uncertain terms, however, that such a "classification of persons undertaken for its own sake" is "something the Equal Protection Clause does not permit." *Romer*, 517 U.S. at 635.  Indeed, the Supreme Court has long held that in the equal protection context a legislative objective that intentionally disadvantages the group burdened by the law—such as "a bare desire to harm a politically unpopular group"—cannot constitute a legitimate government purpose. *See Romer*, 517 U.S. at 633; *Cleburne*, 473 U.S. at 446-447; *see also Moreno*, 413 U.S. at 534 ("[I]f the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot constitute a legitimate governmental interest.").

Here, given the unique factual and legal circumstances presented by Proposition 8, as well as the explicit reasoning set out in Proponents' ballot arguments, it is clear that Proposition 8 was not enacted to advance any legitimate government purpose, but instead simply to advantage different-sex couples over same-sex couples in order to declare the superiority of the former and the inferiority of the latter—a classification for classification's sake.

**D.     In Addition To Being Illegitimate, the Purposes Presented by Proponents Are Not Rationally Advanced by Proposition 8.**

In the ballot arguments and in their pleading in this Court, Proponents argue that the following constitute legitimate government purposes for the discriminatory treatment of same-sex couples by Proposition 8: (1) promoting the raising of children by their biological, married parents; (2) preventing children from being taught in public school that "gay marriage" is acceptable; and (3) "restoring" the "traditional" definition of marriage.  Prop. 8 Voter Guide, Argument in Favor of Prop. 8.

11

These stated purposes, however, simply reinforce the inference drawn above that Proposition 8 was not enacted to achieve any legitimate end.  Whether or not the purposes in themselves are legitimate, none of them is rationally advanced by Proposition 8.  Excluding same-sex couples from the designation or status of marriage has no impact on the parenting incentives provided to same-sex and heterosexual couples under California law; it did not alter what is or can be taught about the marriage of same-sex couples in California's public schools; and it did not "restore" any "traditional" definition of marriage to California law.

### 1. Proposition 8 Does Not Rationally Advance the Goal of Children Being Raised by Their Married, Biological Parents.

According to the ballot arguments, "Proposition 8 protects marriage as an essential institution of society.  While death, divorce, or other circumstances may prevent the ideal, the best situation for a child is to be raised by a married mother and father."  Prop. 8 Voter Guide, Argument in Favor of Prop. 8.  Proponents also argue that "the government has a compelling interest in creating a legal structure that promotes the raising of children by both their biological parents," and "in 'responsible procreation'—that is, directing the inherent procreative capacity of sexual intercourse between men and women into stable, legally bound relationships."  Proposed Intervenors' Br. at 12.

Eliminating the right of same-sex couples to marry, though, does nothing to increase parenting within the social institution of marriage for heterosexual couples.  Proposition 8 does not confer marriage or any of its protections on heterosexual couples, nor does it increase access to marriage for these couples or add new legal protections or other inducements to marry.  Heterosexual couples currently have exactly the same legal incentives to procreate in marital relationships as they had prior to the passage of Proposition 8.  Perhaps in recognition of that point, Proponents contend that the government's interest in promoting an "ideal" of child-rearing is merely "symbolic and aspirational," Proposed Intervenors' Br. at 13, but controlling precedent establishes that "[t]he State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational."  *Cleburne*, 473 U.S. at 446.

Proposition 8 also does not eliminate the legal framework in which same-sex couples continue to be validated and supported as they have and raise children.  Same-sex couples in California-

registered domestic partnerships receive all the same legal protections of marriage and the same enforcement of their legal responsibilities to each other and their children as marriage affords heterosexual couples.  The California Supreme Court emphasized in *Strauss* that, despite the passage of Proposition 8, same-sex couples continue to possess in California as a matter of constitutional right "the same substantive core benefits afforded by those state constitutional rights as those enjoyed by opposite-sex couples—including the constitutional right to enter into an officially recognized and protected family relationship with the person of one's choice and to raise children in that family if the couple so chooses . . . ."  *Strauss*, 207 P.3d at 65.

Indeed, in light of California's extensive, robust law unequivocally affirming parenting by gay and lesbian people, the California Supreme Court in the *Marriage Cases* found that Proponents' parenting rationale was not a plausible state interest for supporting California's statutory ban on marriage for same-sex couples, holding as follows:  "Because the governing California statutes permit same-sex couples to adopt and raise children and additionally draw no distinction between married couples and domestic partners with regard to the legal rights and responsibilities relating to children raised within each of these family relationships, the asserted difference in the effect on children does not provide a justification for the differentiation in nomenclature set forth in the challenged statutes."  *In re Marriage Cases*, 43 Cal.4th at 855 n.72.

Given that Proposition 8 provides no legal inducement for heterosexual couples to raise children within the social institution of marriage and leaves intact comprehensive protection and validation of same-sex couples who commit to one another and raise children, the measure does not promote the raising of children by their biological parents or "responsible procreation" by heterosexual couples, even if such purported state interest could be considered legitimate.[6]

---

[6] The basis for Proponents' stated parenting rationale is that "[c]hildren, on average, develop best when raised by their biological mother and father."  Proposed Intervenors' Br. at 12.  As Proposition 8 neither encourages heterosexual couples to have and raise children in wedlock nor discourages same-sex couples from having and raising children, the question of whether sexual orientation has anything to do with ability to parent is beside the point.

**2.     Proposition 8 Does Not Rationally Advance the Goal of Preventing Children From Being Taught in Public School That Same-Sex Couples Exist and Can Marry.**

The ballot arguments repeatedly invoked the specter of "gay marriage" being taught in California's public schools, and promised that a vote for Proposition 8 would circumscribe such teaching: "[Proposition 8] *protects our children* from being taught in public schools that "same-sex marriage" is the same as traditional marriage"; "State law may require teachers to instruct children as young as kindergarteners about marriage. (Education Code § 51890.)  If the gay marriage ruling is not overturned, TEACHERS COULD BE REQUIRED to teach young children there is *no difference* between gay marriage and traditional marriage"; and "We should not accept a court decision that may result in public schools teaching our kids that gay marriage is okay.  That is an issue for parents to discuss with their children according to their own values and beliefs."  Prop. 8 Voter Guide, Argument in Favor of Prop. 8 (emphasis in original).

As a threshold matter, preventing children from being taught that gay relationships are "okay" is not a legitimate government purpose.  Even viewed in isolation from the more explicit expressions of class-based disapproval in the ballot arguments, that purported educational rationale is not simply an extension or restatement of moral disapproval: it would only not be "okay" to teach that same-sex and different-sex relationships have the same legal status if one believes that same-sex and different-sex relationships should not be treated as legally equal, an inference buttressed by the ballot arguments' explicit referral to "values and beliefs."

In addition to the illegitimacy of this asserted educational goal, Proposition 8 is not rationally related to its achievement.  To the contrary, as an instrument for changing what is taught in California schools, Proposition 8 is far too blunt:  While the ballot arguments identified their concern as one that California's Education Code *might* be interpreted to require that public schools teach that the marriages of same-sex couples are "okay," Proposition 8 in fact changed nothing in the Education Code.  Instead, Proposition 8 eliminated the right to marry for same-sex couples in California, denying them access to an essential social institution and declaring them unequal under state law, while leaving thousands of "okay" married gay couples existing in the state and elsewhere.  The equivalent of this means of achieving the ballot arguments' educational goal would be to amend the

14

constitution to disallow more female police officers in order to limit the school discussion of women's career options.

Where the breadth of a discriminatory measure is "far removed" from its purported goals, it becomes "impossible to credit them." *Romer*, 517 U.S. at 635. Denying same-sex couples continued access to the designation of marriage is wildly disproportionate to the stated goal of preventing public school teaching about who can marry and whether marriage varies as a function of spouses' sexual orientation or other traits. Consequently, even if the ballot arguments' stated educational goal were legitimate, it is impossible to credit as a government purpose that can validate Proposition 8's discriminatory classification.

### 3. Proposition 8 Does Not Rationally Advance the Goal of "Restoring" a "Traditional" Definition of Marriage.

Proponents also assert that Proposition 8 "restores" the "traditional" definition of marriage to that of a union between a man and a woman, and prevents same-sex couples from "redefin[ing] marriage for everyone else." Prop. 8 Voter Guide, Argument in Favor of Prop. 8. In their pleading in this Court, Proponents state that "Proposition 8's actual purpose is to reaffirm California's historical definition of marriage as the union of a man and a woman, to prevent the government from recognizing any variation from that definition." Proposed Intervenors' Br. at 18.

It is well settled that deference to tradition on its own is not a legitimate government interest. *See Lawrence*, 539 U.S. at 577 ("the fact that the governing majority in a State has traditionally viewed a particular practice as immoral is not a sufficient reason for upholding a law prohibiting the practice"). Arguing for an exclusion because the majority favors it, or because it has existed for some time, is to make the exclusion its own justification. But the equal protection clause does not allow a classification to be adopted "for its own sake." *Romer*, 517 U.S. at 635. Instead, a law calling for different treatment must be justified by a legitimate end "independent" of its own discriminatory effect. *Romer*, 517 U.S. at 633, 635. Not only does the Constitution disallow a tradition of discrimination to be its own justification, but Proposition 8 does not rationally advance any supposed goal of "restoring" a "traditional" definition of marriage.

Putting aside the illegitimacy of tradition as a state interest, Proposition 8 logically cannot be understood to "restore" a "traditional" definition of marriage.  Implicit in the idea of "restoration" is the need to return something to its original place.  What the ballot arguments suggested is that the California Supreme Court's decision in the *Marriage Cases* "redefine[d] marriage" and that Proposition 8 would "restore" it.  Prop. 8 Voter Guide, Argument in Favor of Prop. 8.  Contrary to this suggestion, the *Marriage Cases* did not "redefine marriage" for heterosexual couples.  The Court in the *Marriage Cases* expressly found that "[e]xtending access to the designation of marriage to same-sex couples will not deprive any opposite-sex couple or their children of any of the rights and benefits conferred by the marriage statutes."  *In re Marriage Cases*, 43 Cal.4th at 854.  Because the access of heterosexual couples to the status and substantive rights of marriage has stayed constant through the *Marriage Cases* decision and the enactment of Proposition 8, the measure does not "restore" marriage with respect to heterosexual couples.

Of course, Proposition 8 did restore to heterosexual couples one thing they had before the *Marriage* Cases: exclusivity.  Although it did not otherwise give any tangible rights to heterosexual couples or otherwise take any tangible rights from same-sex couples, Proposition 8 did give different-sex couples access to a status same-sex couples now cannot join.  But if mere exclusion is the "tradition" which Proposition 8 sought to restore, then tradition here is not a legitimate purpose because it once again justifies a classification solely for its own sake.  An initiative aimed at simply making one group of Americans "unequal" does not further a legitimate end.  *Romer*, 517 U.S. at 635; *see also Moreno,* 413 U.S. at 534.

Nor did Proposition 8 "restore" California's "traditional" family law status quo, in which same-sex couples were excluded from both the status and substantive protections of marriage.  As *Strauss* holds, Proposition 8 must be interpreted as "eliminating only the right of same-sex couples to equal access to the designation of marriage."  *Strauss*, 207 P.3d at 76.  The measure left "undisturbed all of the other extremely significant substantive aspects of a same-sex couple's state constitutional right to establish an officially recognized and protected family relationship."  *Id.* at 61.  These substantive rights—"the legal rights and attributes traditionally associated with marriage"— were the core part of the fundamental right to marry that the Court extended to same-sex couples in the

*Marriage Cases*, and that must therefore continue to be a part of any "traditional" definition of marriage.  *Id.* at 71.  Instead, Proposition 8 did something that no other state constitutional amendment has ever done—namely, it detached the substantive core of the fundamental right to marry under the state constitution and statutes from the status of marriage in order to withdraw equal citizenship from lesbian and gay couples while otherwise leaving their substantive legal rights intact. The novelty of that effort—together with the decidedly "untraditional" severing of the formal and substantive aspects of marriage—defeats any attempt to portray Proposition 8 as rationally advancing a legitimate, non-animus-based goal of restoring a "traditional" definition of marriage.

## CONCLUSION

For the foregoing reasons, *amici* respectfully submit that plaintiffs are likely to succeed on the merits of their equal protection claim.

Dated:  June 25, 2009

ALAN L. SCHLOSSER
ELIZABETH O. GILL
ACLU Foundation of Northern California

JON W. DAVIDSON
JENNIFER C. PIZER
TARA BORELLI
Lambda Legal Defense and Education Fund, Inc.

SHANNON P. MINTER
National Center For Lesbian Rights

MARK ROSENBAUM
LORI RIFKIN
ACLU Foundation of Southern California

DAVID BLAIR-LOY
ACLU Foundation of San Diego and Imperial Counties

MATTHEW A. COLES
JAMES D. ESSEKS
LGBT & AIDS Project
American Civil Liberties Union Foundation

By:   _____/s/_____
        ELIZABETH O. GILL

Attorneys for *Amici Curiae*