**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KRISTIN M PERRY, SANDRA B STIER, PAUL T KATAMI and JEFFREY J ZARRILLO<br><br>    Plaintiffs,<br><br>    v<br><br>ARNORLD SCHWARZENEGGER, in his official capacity as governor of California; EDMUND G BROWN JR, in his official capacity as attorney general of California; MARK B HORTON, in his official capacity as director of the California Department of Public Health and state registrar of vital statistics; LINETTE SCOTT, in her official capacity as deputy director of health information & strategic planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as clerk-recorder of the County of Alameda; and DEAN C LOGAN, in his official capacity as registrar-recorder/county clerk for the County of Los Angeles,<br><br>    Defendants<br>_____/<br>DENNIS HOLLINGSWORTH, GAIL J KNIGHT, MARTIN F GUTIERREZ, HAKSHING WILLIAM TAM and MARK A JANSSON, as official proponents of Proposition 8,<br><br>    Defendant-Intervenors<br>_____/ | No   C 09-2292 VRW<br><br>ORDER |

Plaintiffs Kristin Perry, Sandra Stier, Paul Katami and Jeffrey Zarrillo are California residents in same-sex relationships who applied for marriage licenses in California in May 2009. Doc #1 at ¶32-33. Plaintiffs' applications were denied because the California constitution provides that "only marriage between a man and a woman is valid or recognized in California." Cal Const art I § 7.5. Plaintiffs seek equitable and declaratory relief that section 7.5, recently enacted in California by ballot initiative as Proposition 8 ("Prop 8"), violates the Fourteenth Amendment of the United States Constitution. Doc #1. On May 27, 2009, plaintiffs moved for a preliminary injunction to halt enforcement of Prop 8. Doc #7.

Plaintiffs' motion for a preliminary injunction and the official proponents of Prop 8's motion to intervene are currently set for hearing on July 2, 2009. For the following reasons and in the absence of persuasive reasons to the contrary presented by the parties at the July 2 hearing, the court will CONTINUE the hearing on the preliminary injunction in favor of a case management conference, but will GRANT the proponents' motion to intervene.

I

The court turns first to the motion to intervene filed by the official proponents of Prop 8. Doc #8. Because no party opposes intervention, the court will decide the matter on the papers. See Docs ##28, 31, 32, 35, 37.

To seek intervention as of right under FRCP 24(a), applicants must make a four-part showing: (1) their motion is timely; (2) they have a significant protectible interest relating

2

to the transaction that is the subject of the action; (3) they are so situated that the disposition of the action may practically impair or impede their ability to protect their interest; and (4) their interest is not adequately represented by the parties to the action. Donnelly v Glickman, 159 F3d 405, 409 (9th Cir 1998). Generally, the court should be "guided primarily by practical and equitable considerations" and should "interpret the requirements broadly in favor of intervention." Id at 409 (citation omitted).

The proponents of Prop 8 meet all four of FRCP 24(a)'s criteria: (1) their motion to intervene is timely, filed just days after plaintiffs filed the complaint; (2) as official proponents, they have a significant protectible interest in defending Prop 8's constitutionality; (3) their interest in upholding Prop 8 is directly affected by this lawsuit; and (4) their interest is not represented by another party, as no defendant has argued that Prop 8 is constitutional. See Docs ##27, 30, 39, 46. Significantly, with respect to the last factor, although the responsibilities of the Attorney General of California contemplate that he shall enforce the state's laws in accordance with constitutional limitations, Cal Const art V § 13, see also Cal Govt Code §§ 12511, 12512, Attorney General Brown has informed the court that he believes Prop 8 is unconstitutional. Doc #39 at 2.

Because the proponents have established their entitlement to intervene as of right, the court GRANTS the proponents' motion to intervene as defendants.

//

//

3

**II**

The court turns now to plaintiffs' motion for a preliminary injunction. Because entering a preliminary injunction may raise novel concerns that could be avoided through a prompt decision on the merits, the court's tentative plan is instead to proceed expeditiously to trial, a decision on the merits and final judgment.

**A**

Defendants' positions regarding the preliminary injunction vary. Los Angeles County registrar-recorder Dean C Logan and Alameda County clerk-recorder Patrick O'Connell take no position on the motion. Docs ##27, 30. California Governor Arnold Schwarzenegger, along with Public Health Director Mark B Horton and Deputy Director Linette Scott, argue against a preliminary injunction because of prudential considerations – specifically, that same-sex marriages performed after the injunction but before a decision on the merits may not be recognized under state law. Doc #33 at 8-10. Attorney General Brown opposes the preliminary injunction because of uncertainty surrounding the validity of post-injunction same-sex marriages. Doc #34. As noted, Brown agrees with plaintiffs that Prop 8 violates the federal Constitution. Doc #39 at 2.

To obtain a preliminary injunction, plaintiffs must show they have raised a serious question on the merits and that the balance of hardships tips sharply in their favor. <u>Department of Parks and Recreation v Bazaar Del Mundo, Inc</u>, 448 F3d 1118, 1123 (9th Cir 2006). Brown's stance that Prop 8 violates the

4

Constitution may well suffice to establish a serious question on the merits. See Doc #39 at 2. Furthermore, plaintiffs have alleged a violation of their constitutional rights, which alone can demonstrate irreparable harm. <u>Goldie's Bookstore, Inc v Superior Court</u>, 739 F2d 466, 472 (9th Cir 1984).

Governor Schwarzenegger has pointed out that "California and its citizens have already confronted the uncertainty that results when marriage licenses are issued in a gender-neutral manner prior to the issuance of a final, judicial determination of legal and constitutional issues." Doc #33 at 2. The governor avers that in early 2004, shortly before the California Supreme Court's decision in <u>Lockyer v City and County of San Francisco</u>, 33 Cal 4th 1055 (2004), some 4,000 same-sex marriages were performed in California. In the period between the California Supreme Court's decision in <u>In re Marriage Cases</u>, 43 Cal 4th 757 (2008) and the passage of Prop 8, numerous other same-sex marriages were performed. The validity of those marriages remained unclear until the California Supreme Court issued its decision in <u>Strauss v Horton</u>, 46 Cal 4th 364 (2009).

Given that serious questions are raised in these proceedings, issuance of preliminary injunctive relief on an incomplete record may inject still further uncertainty in an important area of concern and interest to the state and its citizens. To avoid the procedural and practical problems surrounding a preliminary injunction, the court is inclined to proceed directly and expeditiously to the merits of plaintiffs' claims and to determine, on a complete record, whether injunctive relief may be appropriate.

5

**B**

To reach a decision on the merits, it appears that the court will need to resolve certain underlying factual disputes raised by the parties. The court has identified several questions from the parties' submissions to be resolved at trial. While the issues identified by the parties and discussed below are by no means exhaustive of the issues in this case, the breadth of factual disputes raised by the parties supports the court's plan to proceed directly to trial.

The parties disagree regarding the standard of review the court should apply to plaintiffs' equal protection and due process claims. Compare Doc #7 at 11 (suggesting that under the Due Process Clause, Prop 8 is subject to strict scrutiny) and 18 (arguing that gays and lesbians are a suspect class for equal protection purposes) with Doc #36 at 17 (arguing that Prop 8 does not affect a fundamental right under the Due Process Clause and must therefore only survive rational basis review) and 30 (arguing that gays and lesbians are not a suspect class).

The facts necessary to establish the appropriate level of scrutiny under the Equal Protection Clause have been adverted to in the parties' submissions but have not been adequately briefed, nor have these facts been established on an adequate evidentiary record. The factors, of course, derive from the Supreme Court's formulation in United States v Carolene Products Co, 304 US 144, 153 n4 (1938). See also Varnum v Brien, 763 NW2d 862, 887 (Iowa 2009) (synthesizing federal precedent and listing the factors used to determine whether a classification should receive heightened scrutiny). In the context of the present case, the relevant

factors appear to include: (1) the history of discrimination gays and lesbians have faced; (2) whether the characteristics defining gays and lesbians as a class might in any way affect their ability to contribute to society; (3) whether sexual orientation can be changed, and if so, whether gays and lesbians should be encouraged to change it; and (4) the relative political power of gays and lesbians, including successes of both pro-gay and anti-gay legislation. The parties have also averted to facts, such as the history of marriage and whether and why its confines may have evolved over time, that may be necessary to determine whether the right asserted by plaintiffs is "deeply rooted in this Nation's history and tradition" and thus subject to strict scrutiny under the Due Process Clause. Washington v Glucksberg, 521 US 702, 721 (1997) (citations omitted).

In support of their argument that Prop 8 is constitutional, the intervenors have raised state interests that appear to require evidentiary support. Doc #8 at 17-18 (citing state interests asserted in In re Marriage Cases, 43 Cal 4th at 784 and Hernandez v Robles, 7 NY3d 338 (2006)). To determine whether the asserted state interests can survive plaintiffs' constitutional challenge, the record may need to establish: (1) the longstanding definition of marriage in California; (2) whether the exclusion of same-sex couples from marriage leads to increased stability in opposite-sex marriage or alternatively whether permitting same-sex couples to marry destabilizes opposite-sex marriage; (3) whether a married mother and father provide the optimal child-rearing environment and whether excluding same-sex couples from marriage promotes this environment; and (4) whether and how California has

acted to promote these interests in other family law contexts.

The parties' submissions raise the question whether or not Prop 8 discriminates based on sexual orientation or gender or both. Compare Doc #7 at 20, 21 (citing In re Marriage Cases, 43 Cal 4th at 840, to argue it is "sophist to suggest" that Prop 8 does not discriminate against gays and lesbians) with Doc #36 at 29, 32 (citing Cuyahoga Falls, Ohio v Buckeye Comm Found, 538 US 194 (2003), for the proposition that Prop 8 has a disparate impact on gays and lesbians but does not discriminate against them as a class); see also Doc #52 at 17 (asserting that plaintiffs have suffered psychological harm because Prop 8 directs state-sanctioned discrimination at them based their sexual orientation). In addition to the particular facts pertaining to the parties at bar, resolution of this dispute may depend on: (1) the history and development of California's ban on same-sex marriage; (2) whether the availability of opposite-sex marriage is a meaningful option for gays and lesbians; (3) whether the ban on same-sex marriage meaningfully restricts options available to heterosexuals; and (4) whether requiring one man and one woman in marriage promotes stereotypical gender roles.

Finally, the parties have raised a question whether Prop 8 was passed with a discriminatory intent. Doc #7 at 18 (arguing that the sole motivation for Prop 8 was moral disapproval of gays and lesbians) with Doc #8 at 17-18 (arguing various state interests in preventing same-sex couples from marrying). The question of discriminatory intent may inform the court's equal protection analysis. Romer v Evans, 517 US 620, 631-32 (1996); Vil of Arlington Heights v Metro Housing Dev, 429 US 252, 266-67 (1977).

To resolve the question, the court may have to consider the "immediate objective" and "ultimate effect" of Prop 8, along with its "historical context and the conditions existing prior to its enactment," Reitman v Mulkey, 387 US 369, 373 (1967), which in this case may require the record to establish: (1) the voters' motivation or motivations for supporting Prop 8, including advertisements and ballot literature considered by California voters; and (2) the differences in actual practice of registered domestic partnerships, civil unions and marriage, including whether married couples are treated differently from domestic partners in governmental and non-governmental contexts.

The just, speedy and inexpensive determination of these issues would appear to call for proceeding promptly to trial. Although the court will entertain any party's objection to proceeding promptly to trial without deciding plaintiff's request for preliminary injunctive relief, the court believes that a case management conference would likely be a more productive endeavor at the hearing scheduled for July 2, 2009 at 10 AM. At that time, the court will solicit the parties' views on the matters described in FRCP 16(c)(2), as well as scheduling necessary to complete pretrial preparation and the speedy disposition of these proceedings on the merits.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge