United States District Court

Northern District of California

Before The Honorable Vaughn R. Walker

| | | |
|---|---|---|
| Kristin Perry, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. C09-2292 VRW |
| | ) | |
| Arnold Schwarzenegger, | ) | |
| et al., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

San Francisco, California
Thursday, July 2, 2009

**Reporter's Transcript Of Proceedings**

**Appearances**:

For Plaintiff:          Gibson, Dunn & Crutcher, LLP
                        1050 Connecticut Avenue, N.W.
                        Washington, DC  20036
                  **By:  Theodore B. Olson, Esquire**
                        **Amir Cameron Tayrani, Esquire**

                        Gibson, Dunn & Crutcher, LLP
                        333 South Grand Avenue
                        Los Angeles, California  90071
                  **By:  Christopher Dean Dusseault, Esquire**

                        Gibson Dunne & Crutcher, LLP
                        555 Mission Street, Suite 300
                        San Francisco, California  94105
                  **By:  Ethan D. Dettmer, Esquire**

(Appearances continued on next page.)

*Reported By:*        *Sahar McVickar, RPR, CSR No. 12963*
                      *Official Reporter, U.S. District Court*
                      *For the Northern District of California*

(Computerized Transcription By Eclipse)

**Appearances, continued:**

1

2  For Plaintiffs:          Boies, Schiller & Flexner, LLP
                            1999 Harrison Street, Suite 900
3                           Oakland, California  94612
                        By: **Theodore H. Uno, Esquire**
4                           **Jeremy M. Goldman, Esquire**

5  For Defendant:           Mennemeier, Glassman & Stroud, LLP
                            U.S. Bank Plaza
6                           980 9th Street, Suite 1700
                            Sacramento, California  95814
7                       By: **Kenneth C. Mennemeier, Esquire**

8                           Department of Justice
                            Office of the Attorney General
9                           1300 I Street, 17th Floor
                             Sacramento, California  95814
10                      By: **Gordon B. Burns, Esquire**

11                          Department of Justice
                            Office of the Attorney General
12                          455 Golden Gate Avenue, Suite 11000
                            San Francisco, California  94102
13                      By: **Tamar Pachter, Esquire**

14                          County of Alameda
                            1221 Oak Street, Suite 450
15                          Oakland, California  94612
                        By: **Claude F. Kolm, Esquire**
16                          **Deputy County Counsel**

17 For Intervenors:         Cooper & Kirk
                            1523 New Hampshire Avenue, N.W.
18                          Washington, DC  20036
                        By: **Charles J. Cooper, Esquire**
19                          **David Thompson, Esquire**
                            **Peter Patterson, Esquire**
20
   For Amici:               American Civil Liberties Union
21                          Union Foundation of Northern California
                            39 Drumm Street
22                          San Francisco, California  94111
                        By: **Alan L. Schlosser, Esquire**
23                          **Elizabeth O. Gill, Esquire**

24

25 (Appearances continued on next page.)

1 | <u>Appearances, continued:</u>

2 | For Amici:                   City and County of San Francisco
  |                              Dennis J. Herrera, City Attorney
3 |                             City Hall, Room 234
  |                             1 Carlton B. Goodlett Place
4 |                             San Francisco, California  94102
  |                      By:    **Therese M. Stewart, Esquire**
5 |                             **Chief Deputy City Attorney**

6 |

7 |                             ---oOo---

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

```
 1  Thursday, July 2, 2009                        10:00 a.m.

 2                      P R O C E E D I N G S

 3            THE CLERK:  Calling our next case, Civil Docket No.

 4  09-2292, Kristin Perry, et al., versus Arnold Schwarzenegger,

 5  et al.

 6            Counsel, please state your appearances for the

 7  record.

 8            MR. OLSON:  Theodore B. Olson, Your Honor, Chief

 9  Judge Walker, for the plaintiffs.

10            THE COURT:  Good morning, Mr. Olson.

11            MR. OLSON:  Good morning, Your Honor.

12            And thank you for the opportunity so early in the

13  case, to appear before you and to move it along.

14            I would like to say --

15            THE COURT:  Are we going to have other appearances?

16            Let's have all appearances.

17            MR. MENNEMEIER:  Ken Mennemeier on behalf of the

18  Governor and on behalf of Mark Horton in his capacity as

19  Director of California Department of Public Health and on

20  behalf of Linette Scott, who is named in her capacity as a

21  Deputy Director in the California Department of Public Health.

22            THE COURT:  Very well, Good morning, Mr. Mennemeier.

23            MR. MENNEMEIER:  Yes, sir.

24            THE COURT:  Very well.

25            MS. PACHTER:  Good morning, Your Honor.
```

1          Tamar Pachter on behalf of the Attorney General.

2          *THE COURT:*  Good morning.

3          *MS. PACHTER:*  Good morning.

4          *MR. BURNS:*  Good morning, Your Honor.

5          Gordon Burns on behalf of the Attorney General.

6          *THE COURT:*  Mr. Burns, good morning.

7          *MR. BURNS:*  Good morning.

8          *MR. KOLM:*  Good morning, Your Honor.

9          Claude Kolm on behalf of Alameda County Clerk

10   Recorder.

11          *THE COURT:*  Yes, Mr. Kolm, good morning.

12          *MR. COOPER:*  Good morning, Judge Walker.

13          Charles Cooper.  I represent the intervenors in the

14   case, the official proponents of Proposition 8.  I'm here with

15   my colleagues, David Thompson --

16          *MR. THOMPSON:*  Good morning, Your Honor.

17          *MR. COOPER:*  -- and Pete Patterson.  We are here

18   with the permission of the Court, and we were grateful for

19   that.

20          *THE COURT:*  Very well, good morning.  Good morning,

21   Mr. Cooper.

22          *MR. BOUTROUS:*  Good morning, Your Honor.

23          Theodore Boutrous, also for the plaintiffs.

24          *THE COURT:*  Mr. Boutrous.

25          *MR. DUSSEAULT:*  Good morning, Your Honor.

1            Chris Dusseault Gibson, Dunn & Crutcher, also for

2    the plaintiffs.

3            **MR. MONAGAS:**   Good morning, Your Honor.

4            Enrique Monagas, representing plaintiffs.

5            **MR. GOLDMAN:**   Good morning, Your Honor.

6            Jeremy Goldman from Boies, Schiller & Flexner, also

7    for the plaintiffs.

8            **MR. UNO:**   Good morning, Your Honor.

9            Theodore Uno from Boise, Schiller & Flexner, also

10   for the plaintiffs.

11           **MR. DETTMER:**   Thank you, Your Honor.

12           Ethan Dettmer of Gibson Dunn, on behalf of

13   plaintiffs.

14           **MS. PIEPMEIER:**   Good morning, Your Honor.

15           Sarah Piepmeier Gibson, Dunn, also for the

16   plaintiff.

17           **MR. TAYRANI:**   Good morning, Your Honor.

18           Amir Tayrani from Gibson Dunn for the plaintiffs.

19           **THE COURT:**   Very well.

20           And, I understand we have some amici that has filed

21   papers; are they just going to sit and listen this morning, or

22   are they going to weigh in on anything?

23                    **(Laughter.)**

24           **MS. STEWART:**   Good morning, Your Honor.

25           Therese Stewart for the City of San Francisco.

 1          We didn't view ourselves as needing to speak, but

 2     we'll happily do so, if the Court wants to hear from us.

 3          **THE COURT:**  All right, well, you know, simply

 4     because you appear doesn't mean you to have to talk.

 5                    **(Laughter.)**

 6          **MR. SCHLOSSER:**  Good morning, Your Honor.

 7          Alan Schlosser for the American Civil Liberties

 8     Union appearing for amicus ACLU, Randall V. Hoke and National

 9     Center for Lesbian Rights.

10          **THE COURT:**  All right.

11          **MR. LORENCE:**  Your Honor?

12          **THE COURT:**  Yes?

13          **MR. LORENCE:**  Jordan Lorence with the Alliance

14     Defense Fund.  And we are with Charles Cooper on Prop 8, too.

15          **THE COURT:**  Very well, good morning, Mr. Lawrence.

16          **MR. NIMOCKS:**  Austin Nimocks on behalf of the

17     intervenor.

18          **THE COURT:**  Anybody else?

19          **MR. RAUM:**  Brian Raum on behalf of the proponents,

20     as well, Your Honor.

21          **THE COURT:**  Good morning.

22          **MR. CAMPBELL:**  And finally, Your Honor, James

23     Campbell on behalf of the intervenors.

24          **THE COURT:**  All right.

25          Well, let's see, we have at least three matters to

1    deal with.  And, as you know, on June 30, I issued a -- an

2    order with some tentative rulings, and I would like, obviously,

3    anybody who wishes to react to those to speak up.  Those are

4    tentative decisions, and so, if anybody has any difficulty that

5    he or she wishes to present with respect to those, I'll be

6    happy to hear and to consider whatever position a party wishes

7    to present.

8            But the three matters, as I see it, that we have to

9    deal with this morning are, first of all, the motion to

10   intervene; second, the application for preliminary injunction;

11   and then, third, how we are going to proceed in the case.

12           Now, with respect to the motion to intervene, that

13   basically is unopposed and, it does seem to me, substantially

14   justified in this case, particularly where the authorities, the

15   defendants who ordinarily would defend the proposition or the

16   enactment that is being challenged here, are taking the

17   position that, in fact, it is constitutionally infirmed.  And

18   so, it seems to me, both for practical reasons and reasons of

19   proceeding in this case in an orderly and judicial fashion that

20   intervention is appropriate.

21           Certainly, under California law, as I understand it,

22   proponents of initiative measures have the standing to

23   represent proponents and to defend an enactment that is brought

24   into law by the initiative process.

25           So first, are there any objections to granting the

```
 1   motion to intervene?

 2                     (No response.)

 3              THE COURT:  Hearing none, that motion will be

 4   granted.

 5              Now, with respect to preliminary injunction, in the

 6   Ninth Circuit the test for the issuance of a preliminary

 7   injunction is generally described in one of two formulations.

 8   The one that I think is most applicable here is whether serious

 9   questions are raised and whether the balance of hardships tips

10   in favor of the party seeking injunctive relief.

11              In this situation, we have a claim that

12   constitutional rights have been violated.  And, typically,

13   those are regarded as weighty claims raising serious questions.

14   And in addition, as I indicated a moment ago, the Attorney

15   General of California has indicated that he believes the

16   initiative measure at issue here is constitutionally invalid.

17   And so, those facts would surely indicate that the Court is

18   facing a situation in which serious questions are raised.

19              The more difficult issue is whether or not the

20   balance of hardships tips in favor of granting an injunction.

21   And I was particularly impressed by the Governor's submission,

22   which I thought was quite a cogent one.  He pointed out that in

23   the periods of time in which the California Supreme Court had

24   authorized same-sex marriages, a number of same-sex marriages

25   were performed in the state.  And during that period of time,
```

1   as well as the earlier period of time, after the City and

2   Council of San Francisco issued marriage licenses to same-sex

3   couples, that there was a good deal of uncertainty on the part

4   of the county authorities with respect to the issuance of

5   marriage licenses, and that created a confusion and

6   administrative uncertainty, an important aspect of the work of

7   these local agencies.

8          And, perhaps more importantly, there was a good deal

9   of uncertainty on the part of the individuals who were

10  involved, whether or not they were undertaking relationships

11  that would be recognized at law, and would be continued to be

12  deemed to be valid.  And so, those uncertainties, I think,

13  weigh very heavily in this situation against the issuance of a

14  preliminary injunction prior to the fact -- prior to the

15  ability, prior to the ability of the Court to consider the

16  issues here on a full record.

17         The briefing that's been submitted so far is, is

18  fine, in a preliminary way, but it is only preliminary.  And a

19  lot of factual assertions have been made in these statements.

20  And briefing has been set forth, but it's hardly of an extent

21  or nature that would enable the Court to make a decision on a

22  full record.

23         And so, I'm inclined to think that a preliminary

24  injunction should not be granted at this time, but rather, as

25  the Court indicated in the June 30 order, we should proceed to

1    discuss how we're going to try this case, how we are going to

2    handle this case, and deal with the issues that we confront.

3            And in that connection, there are, as indicated in

4    the June 30 order, a lot of factual questions, a lot of factual

5    assertions have been made.  Now, this is a trial court, this is

6    not the Supreme Court of the United States where we deal with

7    these boxcar philosophical issues.  We deal with facts; we deal

8    with evidence; we deal with testimony of witnesses.  And to the

9    extent there are factual issues, I think we need to proceed in

10   the way in which a trial court proceeds to deal with those

11   issues, to present the facts, to present the evidence, and to

12   make what determinations are necessary.

13           I realize that a good many of these questions are

14   mixed questions of law and fact, but where there is a factual

15   component, it does seem to me that we ought to address those

16   facts in the traditional way in which courts have dealt with

17   factual questions.

18           I realize, also, that a good many of these factual

19   questions will depend upon expert testimony, opinion testimony,

20   but I think we should deal with those the same way that the

21   Supreme Court has counseled and guided us to deal with those

22   kinds of questions, in accordance with the standards of the

23   Daubert decision, *Kumho Tire*, and its progeny, or their

24   progeny, and deal with those opinion issues in a manner

25   consistent with the way that opinion testimony should be dealt

1   with.

2          I say all of this because I'm reasonably sure, given

3   the issues involved and given the personnel that are in the

4   courtroom, that this case is only touching down in this court,

5   that it will have a life after this Court, and what happens

6   here, in many ways, is only a prelude to what is going to

7   happen later.

8          So I am inclined to think that how we do things here

9   is more important than what we do, that our job in this case,

10  at this point, is to make a record.  And I want to give the

11  plaintiffs, the defendants, and the intervenors the opportunity

12  to make the record that they think is appropriate for the

13  decision.  And so I think we've got our work cut out for us.

14  But, I'd like to invite counsel to tell me how they wish to

15  proceed.

16         First, I should turn to the plaintiffs with respect

17  to the motion for preliminary injunction; anything further that

18  you wish to say in support of that?

19         Mr. Olson?

20         **MR. OLSON:**  Your Honor, thank you.

21         Let me say, preliminarily, that we understand and

22  appreciate, respect the wisdom of Your Honor's June 30th order

23  as you have articulated it again today.  We accept it, and we

24  are prepared to go forward on that basis.

25         I feel, however, it's imperative to just say a word

1   or two about the preliminary injunction matter, having said

2   that we are accepting and perfectly willing to go forward, as

3   you -- as you suggested, if I may.

4           **THE COURT:** Very well.

5           **MR. OLSON:** The -- every day that Proposition 8 is

6   enforced perpetuates a tragic injustice on tens of thousands of

7   Californians, including, specifically, the plaintiffs who are

8   here, today, before you. Proposition 8 brands our citizens,

9   our neighbors, our friends, our family members, and our

10  co-workers as second class, unworthy, and different. The harm

11  it does is incalculable, continuous, painful, irreparable, and

12  without justification.

13          The United States Supreme Court has held again and

14  again that the right to marry is the most important relation in

15  life and a right of fundamental importance to all citizens.

16  The Court has variously characterized marriage as a right of

17  liberty, privacy, and association. And, as you have noted, the

18  California Attorney General, to his great credit, squarely

19  admits that taking from same-sex couples the right to civil

20  marriage cannot be squared with the guarantees of the

21  Fourteenth Amendment. Therefore, these individuals are

22  suffering irreparable injury under a California law that the

23  State of California, through its chief law enforcement officer,

24  acknowledges is unconstitutional.

25          With respect to the point that the Governor made and

1    you referred to earlier this morning, Your Honor, with respect

2    to the uncertainty of the effect of marriages, if a preliminary

3    injunction was granted, my clients would prefer the uncertainty

4    of the ultimate outcome in this case, to the certainty of daily

5    irreparable harm.

6            Now, having said that, I think that it's important

7    to have stated why we felt it was important to bring this

8    Court's -- to this Court's attention the need for immediate

9    injunctive relief; however, you have said, and we agree, that

10   this is important, that this is a foundation for what might

11   happen subsequently, and that it is in the interest of justice,

12   to use your words, that this be given a full, prompt,

13   expeditious, and efficient resolution of this case so that the

14   foundation is there, to the extent it might be necessary to

15   proceed.

16           I am prepared to address that part of the case

17   management issue, but you may wish to hear from others before I

18   do so.

19           **THE COURT:**  I would, if anybody wishes to be heard

20   on the preliminary injunction issue.

21           **MR. MENNEMEIER:**  Your Honor?

22           **THE COURT:**  Yes, Mr. Mennemeier?

23           **MR. MENNEMEIER:**  Your Honor, I just briefly want to

24   indicate that the Governor certainly supports the approach that

25   you outlined in the June 30 order.  We think that it is

1    important to have these important federal constitutional issues

2    heard expeditiously.  And so, we concur with the approach you

3    outlined in that order.

4              That's all I have, Your Honor.

5              **THE COURT:**  All right, very well.  Thank you.

6              Anybody else?

7                        **(No response.)**

8              **THE COURT:**  Mr. Cooper?

9              **MR. COOPER:**  Your Honor, thank you very much.

10             I do want to -- to offer some brief thoughts in

11   response to what my friend, Mr. Olson, has -- has offered to

12   the Court, but I want to preface it by saying this:  The

13   intervenors, the proponents of Proposition 8, are very

14   sensitive to the issue of pace in this court and to the

15   concerns that Mr. Olson has raised.

16             If, it is true that, as he says, that our

17   constitution entitles gays and lesbians in California and

18   elsewhere to marry, then we want to do everything that we can

19   to move this proceeding along so that -- so that the plaintiffs

20   and others can exercise their constitutional rights just as

21   soon as possible.

22             But, Your Honor, before we proceed, I would like to

23   take stock of the nature of the claim that Mr. Olson is

24   advancing to the Court.

25             The constitutional right invoked by the plaintiff --

1           **THE COURT:**  I'm just saying -- is this more related

2   to case management, or is it more related to the preliminary

3   injunction?

4           **MR. COOPER:**  It is related to the kind of prefatory

5   comments that Mr. Olson made.

6           **THE COURT:**  All right.

7           **MR. COOPER:**  But I certainly accept his statement

8   that he is not going to contest the Court's order.  And I'm not

9   here, obviously, Your Honor --

10          **THE COURT:**  I gather you are not contesting it,

11  either.

12                      **(Laughter.)**

13          **MR. COOPER:**  Not at all, Your Honor.

14          **THE COURT:**  All right.

15          **MR. COOPER:**  I'm simply offering some

16  counter-thoughts to the points that --

17          **THE COURT:**  All right.

18          **MR. COOPER:**  -- that Mr. Olson has shared with the

19  Court.

20          And again, and I want the Court to simply step back

21  for a moment and take stock of -- of the claim that is being

22  advanced here.

23          According to the plaintiffs, this is not new, this

24  constitutional right, it's, as they put it in their motion

25  papers, the long-standing right of all persons to exercise

1  freedom of personal choice and autonomy in deciding whom to

2  marry.

3              And further, they say that the prohibition in

4  Proposition 8 against the plaintiff's freedom to marry persons

5  of the same sex is so devoid of any conceivable rational basis

6  that it is explicable only in terms of naked animus against

7  gays and lesbians and a bare desire to harm them.

8              Now, Your Honor, I want to suggest that to grasp the

9  radical nature of this claim, it is enough to say that it

10  would, if it were accepted, sweep away not only Proposition 8

11  and the sovereign will of the people in the state, but the

12  common definition of marriage and the laws of 43 other states

13  and the Federal Government in the Defense of Marriage Act.

14              But, there is more to say than that, for the

15  plaintiff's claim also condemns as irrational, as bigoted, the

16  universal definition of marriage that has hitherto prevailed by

17  law in America and in virtually every known society for as long

18  as the subject of marriage has been governed by law.

19              Now, the closest thing that the plaintiffs offer,

20  thus far, to this point is that tradition alone is a manifestly

21  insufficient basis for a state to impair a person's

22  constitutionally protected right to marry.  And there, Your

23  Honor, they are simply not coming to grips with the fact that

24  tradition is a definitional element of the Supreme Court's test

25  for identifying fundamental constitutional rights.

1              As the Court said in **_Gluxberg_**, "The due process

2    clause specially protects those fundamental rights and

3    liberties which are objectively deeply rooted in the nation's

4    history and tradition."

5              And it's at that threshold level, Your Honor, of

6    identifying the fundamental right at issue, the plaintiffs due

7    process claim ultimately we will advance here, fails.  For it's

8    really patently clear that the right to marry recognized by the

9    Supreme Court in every one of its cases is defined by the

10   marital institution that it protects, the right of a man and a

11   woman to marry.

12             Every Supreme Court case that describes marriage and

13   speaks to its fundamental constitutional protected nature

14   identifies its central procreative purpose.  And, regarding the

15   freedom of choice on that, Your Honor, there simply can be no

16   doubt that those opinions would not have been written in the

17   same formulations had -- had the claim that is being advanced

18   here, been advanced there.

19             So, Your Honor, the bottom line is that the

20   plaintiffs are not seeking simply to have their right to marry

21   enforced here, they are seeking to have it redefined here.

22             With that, Your Honor, I appreciate it.

23             **_THE COURT:_**  Very well.  Thank you, Mr. Cooper.

24             Anybody else want to make a prefatory statement

25   before we roll up our sleeves and do a little bit of case

1   management?

2                    **(No response.)**

3           *THE COURT:*  All right, fine.

4           Now, when I talked about the various facts that we

5   have to deal with here, I omitted to mention one other way of

6   approaching facts.  And I mentioned the traditional way of

7   presenting evidence, subjecting witnesses to cross-examination

8   at trial, and so forth; there may be, in addition to mixed

9   questions of law and fact and opinion testimony, there may be

10  facts as to which there is no genuine dispute and as to which

11  we should deal with those facts by way of summary judgment

12  motion.  And so, we might want to consider building that into

13  whatever schedule we talk about.

14          I don't know, maybe -- maybe the parties are not

15  interested in motion practice before the trial, maybe they are,

16  but, in any event, that is certainly a matter that we should

17  consider.

18          Well, Mr. Olson, you are the plaintiff; tell me how

19  you would like to proceed.

20          *MR. OLSON:*  Thank you, Your Honor.

21          I have consulted briefly with my colleague,

22  Mr. Cooper, which I think is contemplated by the Court's

23  rule --

24          *THE COURT:*  Certainly is.

25          *MR. OLSON:*  We've talked about some of these issues.

```
 1    And I do not purport to speak for him, but I will say what I

 2    think in reaction to your order and how we might assist one

 3    another and the Court in an expeditious resolution of this

 4    case.

 5              As you have indicated, many of these issues, we

 6    think, can possibly be addressed by stipulated fact.  Many of

 7    these might be addressed through the course of admissions.

 8    Many of these issues may be already adjudicated facts.  There

 9    is a great deal on this subject that's been adjudicated with

10    respect to the impact and the purport of Proposition 8 by the

11    California Supreme Court in what we would regard as in a

12    conclusive manner.

13              There may be many issues of --

14         THE COURT:  There was no trial, was there, in the

15    marriage cases?

16         MR. OLSON:  Well, no, Your Honor, but --

17         THE COURT:  Even at the Superior Court level.

18         MR. OLSON:  But --

19         THE COURT:  Am I correct, and by all means correct

20    me if I'm in error, that the trial judge there did not conduct

21    a trial.

22         MR. OLSON:  I --

23         THE COURT:  He proceeded on the basis of affidavits

24    and declarations?

25         MR. OLSON:  I believe that's correct.
```

1          **(Cell phone rings.)**

2               *THE COURT:*  Okay, we have a cell phone going off

3     somewhere.  At least it's not quacking like --

4                    **(Laughter.)**

5               *THE COURT:*  -- they do in some courts.

6               *MR. OLSON:*  I understand that point, Your Honor, but

7     that is an appropriate way to reach conclusions of fact.  And

8     it's -- and, in fact, that may be part of the process that you

9     might participate in through motion practice here.

10              We are not disagreeing that there may be some things

11    at the end of the day that have to be resolved in that fashion,

12    but there may be ways in which we can narrow the issues by

13    agreement or turning to things that the United States Supreme

14    Court said in the **Romer** case might be something that the trial

15    court would have to accept as conclusive in terms of factual

16    determinations by the highest court of the State, who has

17    considered perhaps something concerning, for example, the

18    effect of Proposition 8 and what it -- what it does, and the

19    effect of denying the opportunity to marry same-sex

20    individuals.

21              But, I'm not trying to argue that point now, I'm

22    simply saying that we think that there are many things that can

23    be resolved by agreement, by cross-motions, perhaps, for

24    summary judgment, or perhaps some narrowing process.

25              And what I was going to propose, and I mentioned

 1 | this to Mr. Cooper before the hearing, and he'll -- he'll speak
 2 | in response to it, is that if we had, for example, possibly 30
 3 | days to submit to Your Honor a written analysis of the facts
 4 | that we think could be agreed upon or could -- or which could
 5 | be dealt with my motion, and we could consult with one another
 6 | in connection with preparing joint submissions along this
 7 | ground, that might help to narrow the issues upon which there
 8 | then might have to be expert testimony or opinion evidence and
 9 | that sort of thing, in other words, to narrow the ballpark, the
10 | field.
11 |      **THE COURT:**  That is certainly an invitation that I'm
12 | not going to refuse.
13 |            **(Laughter.)**
14 |      **MR. OLSON:**  And it seems to me that that way, we
15 | could come back before you, after having submitted -- made
16 | submissions along those lines, and talk to you then about how
17 | we might proceed further in the most expeditious way.
18 |      Now, I mentioned 30 days, but we'd be willing to do
19 | it sooner.  But it seems to me that that is not an unreasonable
20 | period of time, given the Court's interest and our interest in
21 | moving forward expeditiously and everyone's interest in doing
22 | this thoroughly.
23 |      **THE COURT:**  What about -- I want to hear
24 | Mr. Cooper's response to that, but before doing so and while
25 | you're at the podium, what about discovery?  There certainly is

1    some discovery that is going to be necessary here, isn't there?

2         **MR. OLSON:**  Well, I'm not sure.  And that's one of

3    the reasons that I would think it would be important to

4    communicate with co-counsel.  Is there discovery necessary?  If

5    there is, what is it?  What form would it take?

6              Discovery includes, as I understand it, request for

7    admissions, interrogatories, depositions, and that sort of

8    thing.  I think that to the extent that there may be discovery

9    that is necessary, we could maybe work that out and make a

10   submission to Your Honor.

11             As I stand here today, we believe that an

12   affirmative, powerful case can be made that the constitution is

13   being violated based upon the fact -- based upon facts that are

14   in the declarations of the plaintiffs, based upon matters of

15   which the Court can take judicial notice, based upon facts that

16   have been determined by the California Supreme Court and

17   recognition that has occurred by the United States Supreme

18   Court, but I may be wrong.

19             And Mr. Cooper might disagree with me or our other

20   opponents might disagree, but we do know that the California

21   Supreme -- the California Attorney General has already decided

22   that this proposition is unconstitutional.

23             Now, I think that we could make a compelling case

24   upon which you could reach a conclusion that Proposition 8

25   denies due process to the plaintiffs and denies them the equal

1    protection of the laws.  If there is discovery, I guess we will

2    hear from others with respect to how much might be necessary,

3    but I think that to the extent that there is the necessity of

4    discovery, it doesn't have to be broad.

5            But we could also not only confer with one another

6    and make submissions to you, but you might feel differently

7    once we have done so and say that this is something that I need

8    more from you.

9            *THE COURT:*  All right.

10           Mr. Cooper, how does that proposal sound to you?

11           *MR. COOPER:*  Well, Your Honor, we -- as Mr. Olson

12   mentioned, we did have a chance very briefly to put our heads

13   together, and we are very close to the same page on this,

14   actually.

15           And the Court made a good point at the outset, that

16   the California marriage cases, there was no trial in connection

17   with that.  And as far as our research has been able to turn

18   up, we can't find that any of the marriage cases, the dozen or

19   so of them that have proceeded around the country, actually

20   submitted issues of fact to trial, as opposed to having gone

21   off on summary judgment.  I think the reason for that --

22           *THE COURT:*  Isn't that -- isn't that a problem?

23           *MR. COOPER:*  Well --

24           *THE COURT:*  Isn't that a problem?  I think you and

25   Mr. Olson agree that what's going on here is basically a

1   prelude to further proceedings, and shouldn't those further

2   proceedings be based upon a fully developed record here?

3                   **MR. COOPER:**  Your Honor absolutely.  And --

4                   **THE COURT:**  We develop records with trials.

5                   **MR. COOPER:**  Well, Your Honor, and what I want to

6   submit for your consideration is -- is the proposition that the

7   factual issues that the Court has identified, or at least by my

8   lights, a large number of them, really concern legislative

9   facts rather than adjudicatory facts.

10          And I want to submit to you a description of this

11  point I'm making from Judge Posner in the Seventh Circuit.  He

12  said the distinction between adjudicatory and legislative

13  facts, the distinction is between facts germane to the specific

14  dispute, which often are best developed through testimony and

15  cross-examination, and facts relevant to shaping a general rule

16  which has the discussion in this opinion and illustrates more

17  often, are facts reported in books and other documents not

18  prepared specially for litigation or refined in its fires.

19          And the Ninth Circuit has also, in a couple of, I

20  think, relevant opinions, drawn forward this -- this

21  distinction between an adjudicatory fact, that is, facts that

22  relate specifically to, for example, these plaintiffs, or

23  larger legislative facts that go to the, for example, the

24  rational basis, or lack thereof, for -- and by the way, the

25  test here would be any conceivable rational basis -- whether or

1   not that legislative fact has been developed and demonstrated.

2          And that can be done with literature, the decisions

3   of the -- of the relevant state courts, the social science

4   literature, and what have you, things that are not, for

5   example, an expert who is specifically engaged by one of the

6   parties to treat with, expert testimony that pertains

7   specifically to the facts here as opposed to -- the adjudicated

8   facts here as opposed to the legislative facts treating with

9   legislation itself or the rule of law that will govern going

10  forward.  And that case, Your Honor, is **_Indiana Harbor Belt_**

11  **_versus American Sign_**, *(phonetic)* at 916 F.2d, 1174.

12          Beyond that, Your Honor, I think Mr. Olson is making

13  a useful suggestion that the two of us and our friends

14  representing the Government defendants I do believe ought to

15  make the effort to try to identify some -- some of these facts

16  that you've -- that you've listed as well as perhaps others

17  that we know are going to be relevant to our cases and attempt

18  to stipulate to them or perhaps agree that they are controlled

19  in some fashion by a previous decision, a Ninth Circuit case,

20  or a California Supreme Court case, and take that first step to

21  narrow this down and make it as manageable as possible.

22          What I would submit is that -- is that the parties

23  ought, well then try, through cross-motions for summary

24  judgment to either resolve the case -- and I frankly think it

25  can be resolved on -- on cross motions -- but even if it can't

 1   be, and the Court does determine that, yes, a more developed

 2   record would be helpful to the Court, and that is what we will

 3   be here to do, Your Honor, is ensure that the record that the

 4   Court believes it needs to resolve this gravely important

 5   question correctly, is before it.  And we'll do anything and

 6   everything in our power to assist the Court in that fashion.

 7          But -- but, I guess what I'm saying is that through

 8   those methods, we can skinny down as much as possible what we

 9   may have to try up, and may end up not having to actually have

10   a trial.

11          On discovery, I agree also with Mr. Olson that that

12   may be minimized.  It's going to depend on what he -- for

13   example, if we do go cross-motions for summary judgment, it

14   will depend on what he attaches to it.  If he has some expert

15   reports, then, of course, I want to depose those experts.  And

16   the same, I'm sure, is true of -- of him, depending on what we

17   would provide to the Court by way of illumination.

18          But I don't think -- I don't think the discovery,

19   necessarily, is going to have to be -- be onerous in this case.

20          **THE COURT:**  Well, I'm not sure that this is like an

21   antitrust case, where we are going to have reams and reams and

22   reams of documents.

23          **MR. COOPER:**  And e-mails.

24              **(Laughter.)**

25          **THE COURT:**  Well --

1          **MR. COOPER:**  I'm not going to look for any e-mails

2    in this case.

3          **THE COURT:**  Those are sometimes very handy, as you

4    know, Mr. Cooper --

5                    **(Laughter.)**

6          **THE COURT:**  -- in a case.

7          **MR. COOPER:**  I don't want his clients' e-mails, and

8    I'm sure he doesn't want mine.

9          **THE COURT:**  Well -- well, certainly, I welcome your

10   joint suggestion that you take some time, confer, and submit a

11   proposal for facts that you think the Court can take judicial

12   notice of, facts that are established without dispute.  The

13   more of those that we have resolved, the better; there is no

14   question about that.  And, also, to take some time and to

15   figure out how, with respect to any matters that you cannot

16   agree upon, you think it's sensible to proceed.

17          I gather from what you both are saying that you

18   think 30 days is an appropriate period of time within which to

19   do that work.  And --

20          **MR. COOPER:**  Your Honor -- I -- if I could just

21   speak to that?

22          I -- I think that is aggressive.  I think it's

23   possible, but I do want to say, and I mentioned on my earlier

24   trip to the lectern, here, that we have no desire in any way to

25   delay the outcome of this case; quite the contrary, we are

1  sensitive to the need to move it as quickly as we responsibly

2  can.  But we are also very acutely aware that we -- the

3  proponents now are the only ones before the Court that will be

4  defending Proposition 8, and we take that as a gravely

5  important responsibility.

6           And so -- and, frankly, I think my friends on the

7  side of the plaintiffs have been thinking a lot longer and

8  preparing their case a lot longer than I and my colleagues, in

9  a responsive profile, have been able to do.

10           With that kind of general, I guess --

11           *THE COURT:*  Plea?

12              **(Laughter.)**

13      *MR. COOPER:*  Plea, exactly, plea, I would say that I

14  don't think 30 days is unrealistic on that.  But we might end

15  up needing to ask the Court for, you know, a little

16  dispensation at the back end.

17      *THE COURT:*  Well, what do you intend to do during

18  this period of time other than meet and confer with your

19  adversaries?

20      *MR. COOPER:*  Well, I think that will be -- that will

21  be it.

22      *THE COURT:*  Well, it's not going to take that long

23  to do that, is it?

24           I could step outside, and you could --

25              **(Laughter.)**

1          **THE COURT:**  I could give you the jury room, and you

2     could sit down and roll up your sleeves and talk about some

3     issues.

4          **MR. COOPER:**  Well, Your Honor, I think it's going to

5     take some time to identify the issues that each of us think are

6     important.  It's going to take some time to argue with each

7     other, I think, to --

8          **THE COURT:**  Well, I'm sure that's true.

9                    **(Laughter.)**

10         **MR. COOPER:**  To determine whether or not the --

11         **THE COURT:**  Well, how can I crystallize this

12    process, by requiring within a week that you exchange letters

13    in which you describe a general plan for management of the case

14    and that -- just set a schedule?

15         I used to practice law myself, and I know the value

16    of a deadline.

17         **MR. COOPER:**  Yes, indeed.  And, Your Honor, 30 days

18    it is.

19                    **(Laughter.)**

20         **MR. OLSON:**  May I add something, Your Honor, with

21    what we would propose to do during that period.

22         **THE COURT:**  Of course.

23         **MR. OLSON:**  And I think Mr. Cooper would be doing it

24    too, is not just talking and conferring with respect to the

25    things that we can agree upon, but also doing an inventory of

 1   the facts that are available on the public record, and court

 2   decisions, and other materials that we would advance.

 3           So my contemplation here would be that within that

 4   30-day period, we would assemble not only the areas where we

 5   have agreement, but areas where we can lay out where we may

 6   disagree and why.  And I think that will take a little bit more

 7   time because we want to lay it out as much as possible

 8   forthrightly for one another.  Once we see that, and once you

 9   see that, I think that will help us all narrow the case down.

10           I will hasten to say that, at the end of the day, if

11   it is necessary, and we may all agree that it's necessary, to

12   have expert witnesses and cross-examination, and so forth, we

13   are ready, willing, able, and prepared to do that on the

14   quickest possible schedule.  But I think that 30 days is a

15   reasonable period of time, not just to find out the things that

16   we can agree upon, because maybe a little longer would cause us

17   to agree upon a few more things or to crystallize more

18   succinctly the areas where we have disagreements, and then,

19   maybe narrow it down.

20           **THE COURT:**  In my experience, it works the other

21   way; the longer you have, the more disagreements there are.

22                   **(Laughter.)**

23           **MR. OLSON:**  Well, we want to make sure that we do

24   justice to the issues.

25           **THE COURT:**  Well, of course, of course, I fully

1    understand that.  But, my goodness, you are very able lawyers,

2    and you do have a substantial amount of assistance behind you

3    on both sides.

4                        **(Laughter.)**

5              **MR. OLSON:**  Well, as I said, we are prepared to do

6    whatever you feel is appropriate and necessary.  That was my

7    judgment with respect to how it would be most useful and

8    appropriate and orderly.

9              **THE COURT:**  Well, is it unreasonable for me to have

10   you back on the 6th of August, having submitted prior to that

11   date either a joint case management proposal or respective

12   differing approaches?

13             **MR. OLSON:**  From my standpoint, yes.

14             **MR. COOPER:**  As well as mine, Your Honor.

15             **THE COURT:**  All right.

16             **MR. MENNEMEIER:**  Your Honor, I'm out of town that

17   week.  So I hate to be --

18             **THE COURT:**  I'm glad you didn't say that you are

19   laid off that week.

20             **MR. MENNEMEIER:**  No, no.

21                        **(Laughter.)**

22             **MR. MENNEMEIER:**  I hate to interrupt the agreement

23   between counsel here, but the following week -- I'm out the

24   week of the 6th.

25             **THE COURT:**  You're not available on the week of the

1    -- that would be the week of the 3rd of August.

2            **MR. MENNEMEIER:**  Yes, I'm out that week.  The next

3    week I am available.

4            **MR. BURNS:**  Your Honor --

5            **THE COURT:**  Why don't we do this -- oh.

6            Yes, sir?

7            **MR. BURNS:**  I also --

8            **THE COURT REPORTER:**  I'm sorry; please restate your

9    appearance for me.

10           **MR. BURNS:**  Gordon Burns.

11           **THE COURT REPORTER:**  Thank you.

12           **MR. BURNS:**  I'm also unavailable that week and due

13   to be out of town on a previously scheduled vacation.

14           **THE COURT:**  But are you available the following

15   week?

16           **MR. BURNS:**  I am, yes.

17                    **(Court and clerk confer.)**

18           **THE COURT:**  How does the 19th or the 20th of August

19   suit everybody?

20           **MR. OLSON:**  From our standpoint, Your Honor, you

21   name the date, we'll be here.

22           **MR. MENNEMEIER:**  That's fine.

23           **THE COURT:**  Mr. Cooper?

24           **MR. COOPER:**  That's fine, Your Honor.

25           How about the 19th?  The 19th at 10:00 a.m, the 19th

1    of August.

2           What I would like is for the parties to submit

3    either a joint or separate, or perhaps a combination of joint

4    and separate case management statements, by not later than the

5    7th of August.  And describe in that, one, what facts that you

6    think can be determined by the Court without necessity of

7    further proceedings, those facts that you think may require

8    discovery, those facts which may require resolution by some

9    means other than judicial notice, and a plan of action, whether

10   it's a motion for summary judgment or motions, plural, for

11   summary judgment on one side or the other.  But I would like to

12   get down to the specifics of how we are going to proceed.

13          MR. OLSON:  We accept and -- we understand, accept

14   and are fully supportive of that, Your Honor.

15          MR. COOPER:  So let be said, so let be done.

16                 (Laughter.)

17          THE COURT:  I like that attitude, Mr. Cooper.

18                 (Laughter.)

19          THE COURT:  All right, is there anything further

20   that we need to discuss this morning?

21          MR. OLSON:  We have nothing further.

22          THE COURT:  Mr. Cooper?

23          MR. COOPER:  No, Your Honor.

24          THE COURT:  How about anybody else?

25                 (A collective "no.")

1          **MR. MENNEMEIER:**  No, Your Honor.

2          **THE COURT:**  Counsel, thank you very much.  I look

3    forward to your help.

4          **MR. OLSON:**  Thank you, Your Honor.

5          **MR. MENNEMEIER:**  Thank you, Your Honor.

6                    **(Proceedings adjourned at 11:14 a.m.)**

7

8                         **---o0o---**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### <u>CERTIFICATE OF REPORTER</u>


      I, Sahar McVickar, Official Court Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.  The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.



              **/s/ Sahar McVickar**
         **Sahar McVickar**, RPR, CSR No. 12963
          **Monday, July 6, 2009**