ALAN L. SCHLOSSER (SBN 49957)
ELIZABETH O. GILL (SBN 218311)
ACLU FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
T: (415) 621-2493/F: (415) 255-8437
E-mail: egill@aclunc.org

JON W. DAVIDSON (SBN 89301)
JENNIFER C. PIZER (SBN 152327)
TARA BORELLI (SBN 216961)
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
3325 Wilshire Boulevard, Suite 1300
Los Angeles, CA 90010
T: (213) 382-7600/F: (213) 351-6050
E-mail: jpizer@lambdalegal.org

SHANNON P. MINTER (SBN 168907)
CHRISTOPHER F. STOLL (SBN 179046)
ILONA M. TURNER (SBN 256219)
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, CA 94102
T: (415) 392-6257/F: (415) 392-8442
E-mail: sminter@nclrights.org

Attorneys for Proposed Plaintiff-Intervenors Our Family Coalition;
Lavender Seniors of the East Bay; and Parents, Families, and Friends of Lesbians and Gays

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the California Department of Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; and DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles,<br><br>Defendants, and | CASE NO. 09-CV-2292 VRW<br><br>**NOTICE OF MOTION AND MOTION TO INTERVENE AS PARTY PLAINTIFFS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>The Honorable Chief Judge Vaughn R. Walker<br><br>Date:       September 3, 2009<br>Time:       10:00 a.m.<br>Location:   Courtroom 6, 17th Floor<br><br>Trial Date:    Not Set |

1 | and

2 | Proposition 8 Official Proponents Dennis
Hollingsworth, Gail J. Knight, Martin F. Gutierrez,
3 | Hakshing William Tam, and Mark A. Jansson; and
ProtectMarriage.com – Yes on 8, a Project of
4 | California Renewal,

5 |            Defendant-Intervenors.

6 |

7 | <u>Additional Counsel for Proposed Plaintiff-Intervenors:</u>

8 | MARK ROSENBAUM (SBN 59940)
LORI RIFKIN (SBN 244081)
9 | ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 W. 8th Street
10 | Los Angeles, CA 90017
T: (213) 977-9500/ F: (213) 250-3919
11 | E-mail: mrosenbaum@aclu-sc.org

12 | DAVID BLAIR-LOY (SBN 229235)
ACLU FOUNDATION OF SAN DIEGO AND IMPERIAL COUNTIES
13 | P.O. Box 87131
San Diego, CA 92138
14 | T: (619) 232-2121/F: (619) 232-0036
E-mail: dblairloy@aclusandiego.org

15 |

16 | MATTHEW A. COLES (SBN 76090)
JAMES D. ESSEKS (SBN 159360)
17 | LGBT & AIDS PROJECT
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
18 | 125 Broad Street, 18th Floor
New York, NY 10005
19 | T: (212) 549-2500/F: (212) 549-2650
E-mail: jesseks@aclu.org

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

NOTICE OF MOTION TO INTERVENE ....................................................................... iv

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

I.      INTRODUCTION .................................................................................................. 1

II.     RELEVANT BACKGROUND............................................................................. 1

      A.      Procedural History ................................................................................... 1

      B.      Identity of Proposed Intervenors............................................................ 4

III.    ARGUMENT ......................................................................................................... 7

      A.      Proposed Intervenors Are Entitled to Intervene as of Right Under FRCP 24(a). ......... 8

            1.      Proposed Intervenors' Motion Is Timely ..................................... 9

            2.      Proposed Intervenors Have Significant Protectable Interests in the Subject Matter of the Action That May Be Impaired or Impeded by Disposition of the Action ........................................................ 9

            3.      The Interests of Proposed Intervenors May Not Be Adequately Represented by the Parties in the Action ..................................... 10

      B.      In the Alternative, the Court Should, In the Exercise of its Discretion, Permit Proposed Intervenors To Intervene Under FRCP 24(b) ................................ 12

IV.     CONCLUSION...................................................................................................... 16

CASE NO. 09-CV-2292 VRW NOTICE OF MOTION AND MOTION TO INTERVENE

# TABLE OF AUTHORITIES

## Cases

*Andersen v. King County*, 138 P.3d 963 (Wash. 2006) .................................................. 6, 7, 14

*Baehr v. Lewin*, 852 P.2d 44 (Haw. 1993) .............................................................................. 6, 7

Baehr, 1996 WL 694235, No. CV 91-1394 (Haw. Cir. Ct. Dec. 3, 1996) .......................... 14

*California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775 (9th Cir. 1986) ...................... 10

*Conaway v. Deane*, 932 A.2d 571 (Md. 2007) ........................................................................ 6

*Dep't of Human Servs. v. Howard*, 238 S.W.3d 1 (Ark. 2006) ............................................. 7

*Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998) ........................................................... 8, 9

*Equality Found. of Greater Cincinnati v. City of Cincinnati*, 128 F.3d 289
    (6th Cir. 1997) ..................................................................................................................... 6

*Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489 (9th Cir. 1995) ........... 8, 10

*Goodridge v. Dep't of Pub. Health*, 798 N.E.2d 941 (Mass. 2003) ...................................... 6

*Hernandez v. Robles*, 855 N.E. 2d 1 (N.Y. 2006) .............................................................. 6, 14

*In re Adoption of Doe*, 2008 WL 5006172 (Fla. Cir. Ct. Nov. 25, 2008) .............................. 7

*In re Marriage Cases* ........................................................................................................... 6, 7

*Int'l Union v. Brock*, 477 U.S. 274 (1986) ........................................................................ 13, 14

*Kerrigan v. Comm'r of Pub. Health*, 957 A.2d 407 (Conn. 2008) ......................................... 6

*Knight v. Superior Court*, 128 Cal. App. 4th 14 (Cal. Ct. App. 2005) .................................. 7

*Lawrence v. Texas*, 539 U.S. 558 (2003) ................................................................................. 6

*Lewis v. Harris*, 908 A.2d 196 (N.J. 2006) ............................................................................. 6

*LG Electronics Inc. v. Q-Lity Computer Inc.*, 211 F.R.D. 360 (N.D. Cal. 2002) ................ 13

*Li v. State of Oregon*, 110 P.3d 91 (Or. 2005) .................................................................... 6, 7

*Maniaci v. Kulstad*, Cause No. DA 08-0483 (Mont. 2009) ................................................... 7

*Northwest Forest Res. Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996) ......................... 10

*People ex rel. Lockyer v. U.S. Dep't of Agric.*, No. C05-03508, 2006 WL 870732
    (N.D.Cal. March 31, 2006) ................................................................................................ 11

*Romer v. Evans*, 517 U.S. 620 (1996) ...................................................................................... 6

*Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983) ....................................... 10

*San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096 (9th Cir. 1999) ............. 12

*Southern Cal. Edison Co. v. Lynch*, 307 F.3d 794 (9th Cir. 2002) ...................................... 12

*Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir.2001) ............... 10, 11

*Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326 (9th Cir. 1977) ............................ 13

*United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004) ....................................... 9

*United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002) ...................................... 9

*Varnum v. Brien*, 763 N.W. 2d 862 (Iowa 2009) ................................................................. 6, 7

*Witt v. Dep't of the Air Force*, 527 F.3d 806 (9th Cir. 2008) ................................................. 6

ii

**Statutes**

28 U.S.C. § 1331 ................................................................................................... 12

**Other Authorities**

6 Moore's Federal Practice § 24.10 [2][b] (Matthew Bender, 3d. ed.) ................................................ 13

**Rules**

Fed. R. Civ. P. 24. ........................................................................................ 8, 9, 12

iii

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on September 3, 2009 at 10:00 a.m., or as soon thereafter as the matter may be heard, at the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, 17th Floor, Courtroom 6, before the Honorable Chief Judge Vaughn R. Walker, Proposed-Intervenors Our Family Coalition, Lavender Seniors of the East Bay ("Lavender Seniors"), and Parents, Families, and Friends of Lesbians and Gays ("PFLAG") will move this Court for an order allowing them to intervene in this case as party plaintiffs under Federal Rule of Civil Procedure 24.[1]

The motion of proposed intervenors is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the Declarations of Judith K. Appel, Dan Ashbrook, and Jody Huckaby (who respectively are the directors or executive directors of proposed intervenors Our Family Coalition, Lavender Seniors, and PFLAG), in support of the motion; the Declaration of Elizabeth Gill in support of the motion, which attaches the [Proposed] Complaint in Intervention; all pleadings and other documents filed in this case; and any and all arguments of counsel at the hearing.

---

[1] Proposed Intervenors are simultaneously moving to shorten time on the motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Proposed Intervenors Our Family Coalition, Lavender Seniors, and PFLAG (collectively, "Proposed Intervenors") respectfully seek to intervene as party plaintiffs in this action. On June 30, 2009, the Court issued an order that delineates legal issues that may be necessary to reach a decision on the merits of this action, and that may benefit from, or require, the presentation of a factual record. These issues—whether resolved on the law or through factual findings—are of great consequence to the lesbian, gay, bisexual, and transgender ("LGBT") community both in California and nationwide. Proposed Intervenors' members represent the broad diversity of lesbian and gay individuals and same-sex couples and their families that are affected most directly by Proposition 8 and would bring to the litigation a wide spectrum of the varied harms inflicted on same-sex couples by Proposition 8. Through their members' experience and through the experience and expertise of their counsel— Lambda Legal, the National Center for Lesbian Rights ("NCLR"), and the American Civil Liberties Union ("ACLU"), the three national legal groups dedicated to protecting the civil rights of LGBT people in California and nationwide—Proposed Intervenors would also bring to the action a unique ability to develop a factual record on the issues identified in the Court's June 30 Order both thoroughly and efficiently.

For the reasons set forth below, Proposed Intervenors respectfully request that the Court permit them to intervene as party plaintiffs in this action. Proposed Intervenors further request that the Court order the parties to meet and confer with Proposed Intervenors within such period of time as would allow Proposed Intervenors to participate fully in the parties' preparation of a joint case management conference statement, currently due in this Court on August 7, 2009.

### II.   RELEVANT BACKGROUND

#### A.   Procedural History

Plaintiffs, two same-sex couples who live in California and wish to marry, filed their complaint in this Court on May 22, 2009, alleging that Proposition 8, which is codified as Article 1, § 7.5 of the California Constitution, violates the federal guarantees of due process and equal protection. Plaintiffs are represented by two private law firms, Gibson, Dunn & Crutcher LLP and

1

Boies, Schiller & Flexner LLP.  On May 27, 2009, Plaintiffs filed a motion for preliminary injunction.  As presented in their motion, Plaintiffs' claims turn principally on legal arguments.  (*See* Pls.' Mot. for a Prelim. Inj., pp.3-5 (arguing that on its face, Proposition 8 violates the federal Due Process and Equal Protection Clauses).)  On May 28, 2009, the proponents of Proposition 8 moved to intervene, and the parties did not oppose the motion.

On June 25, 2009, the legal groups representing Proposed Intervenors—Lambda Legal, NCLR, and the ACLU—filed an amicus brief upon leave of the Court addressing Plaintiffs' likelihood of success on their equal protection claim.  In addition to arguing that, as a matter of law, Proposition 8 fails even the lowest level of constitutional review under the Supreme Court's decision in *Romer v. Evans*, 517 U.S. 620 (1996), that amicus brief identified areas in which the development of an evidentiary record would further demonstrate the invalidity of Proposition 8 under any standard of review.  (*See* Br. of *Amici Curiae*, p.6 (noting that it "could be easily demonstrated by evidence" that "denying same-sex couples access to the status of marriage and relegating them to the lesser status of domestic partnership will harm those couples and their children in both tangible and intangible ways.").)

On June 30, 2009, the Court issued an order in which it granted the motion to intervene, continued the motion for preliminary injunction, which was calendared for hearing on Thursday, July 2, 2009, and set forth a tentative plan to "proceed expeditiously to trial" in order to provide the Court with an adequate factual record before making a final determination on the merits of Plaintiffs' motion for injunctive relief.  (Order, Case No. 09-CV-2292 (June 30, 2009) ("Order").)  In the Order, the Court stated that "[g]iven that serious questions are raised in these proceedings, issuance of preliminary injunctive relief on an incomplete record may inject still further uncertainty in an important area of concern and interest to the state and its citizens."  Order at p.5.  The Court went on to state further that it was inclined "to proceed directly and expeditiously to the merits of plaintiffs' claims and to determine, on a complete record, whether injunctive relief may be appropriate."  *Id.*

In order to ensure that the Court has an adequate record, the Court identified the following categories of issues that may benefit from or require factual support: the appropriate level of scrutiny under the Equal Protection Clause (Order at p.6); the state interests raised by Defendant-Intervenors

2

(*id.* at p.7); "whether or not Prop 8 discriminates based on sexual orientation or gender or both" (*id.* at p.8); and "whether Prop 8 was passed with a discriminatory intent" (*id.* at p.8). Within these larger categories, the Court listed specific sub-categories of factual issues or questions that it stated the record may need to establish, including:

1. The history of discrimination gays and lesbians have faced;

2. Whether the characteristics defining gays and lesbians as a class might in any way affect their ability to contribute to society;

3. Whether sexual orientation can be changed, and if so, whether gays and lesbians should be encouraged to change it;

4. The relative political power of gays and lesbians, including successes of both pro-gay and anti-gay legislation;

5. Whether the exclusion of same-sex couples from marriage leads to increased stability in opposite-sex marriage or alternatively whether permitting same-sex couples to marry destabilizes opposite-sex couples;

6. Whether a married mother and father provide the optimal child-rearing environment and whether excluding same-sex couples from marriage promotes this environment;

7. The history and development of California's ban on same-sex marriage;

8. Whether the availability of opposite-sex marriage is a meaningful option for gays and lesbians;

9. Whether the ban on same-sex marriage meaningfully restricts options available to heterosexuals;

10. Whether requiring one man and one woman in marriage promotes stereotypical gender roles;

11. The voters' motivation or motivations for supporting Prop 8, including advertisements and ballot literature considered by California voters; and

12. The differences in actual practice of registered domestic partnerships, civil unions and marriage, including whether married couples are treated differently from domestic partners in governmental and non-governmental contexts.

(Order at pp.7-9).

At the case management conference on July 2, 2009, the Court confirmed its intention to proceed to a trial on the merits, in which the above-identified issues would be addressed. (*See* Hr'g Tr. at 10:23-12:13 (July 2, 2009); *see also id.* at 11:5-12 (noting that it is the special role of the trial court to deal with facts, evidence, and the testimony of witnesses).) Both Plaintiffs and Defendant-Intervenors argued to the Court that many if not all of the issues listed in the Order could be

3

1 | addressed without a trial on the merits—and potentially without any discovery. (*Id.* at 20:5-21:24;

2 | 23:11-24:4; 24:11-21; 27:7-12.)  They recommended that the Court allow them to meet and confer

3 | and, within 30 days, propose a plan for any discovery, dispositive motions, and trial. (*Id.* at 22:1-10;

4 | 30:17-18.)

5 |       The Court accepted the parties' recommendation, and ordered the parties to prepare a joint

6 | case management conference statement, describing "what facts that [the parties] think can be

7 | determined by the Court without necessity of further proceedings, those facts that [the parties] think

8 | may require discovery, those facts which may require resolution by some means other than judicial

9 | notice, and a plan of action, whether it's a motion for summary judgment or motions, plural, for

10 | summary judgment on one side or the other." (Hr'g Tr. at 34:1-12.)  The parties are to submit their

11 | joint statement to the Court no later than August 7, 2009, and the Court set a further case

12 | management conference for August 19, 2009.  (Minute Entry (Jul. 6, 2009).)

13 | **B.  Identity of Proposed Intervenors**

14 |       Our Family Coalition is a San Francisco Bay Area nonprofit membership organization that

15 | promotes the civil rights and well-being of LGBT families with children and LGBT prospective

16 | parents. (Declaration of Judith K. Appel, Executive Director of Our Family Coalition ("OFC Dec.")

17 | ¶ 2.)  The organization has approximately 750 member families, many of which are headed by same-

18 | sex couples who are planning for or raising small children, and others who are coping with disability,

19 | aging, and other life challenges made harder by anti-LGBT discrimination.  (OFC Dec. ¶¶ 3, 4, 6.)

20 | Our Family Coalition was a plaintiff in the consolidated cases that led to the decision in the

21 | California Supreme Court recognizing the right of same-sex couples to marry under state law, *In re*

22 | *Marriage Cases*, 43 Cal.4th 757 (Cal. 2008) (hereinafter "*In re Marriage Cases*"), and was an *amicus*

23 | *curiae* in the case challenging the constitutionality of Proposition 8 under the California Constitution,

24 | *Strauss v. Horton*, 207 P.3d 48 (Cal. 2009) (hereinafter "*Strauss*").  (OFC Dec. ¶ 8.)

25 |       Lavender Seniors is a nonprofit membership organization serving the roughly 20,000 to

26 | 30,000 LGBT individuals over the age of 65 in the Eastern counties of California's San Francisco

27 | Bay Area, with approximately 1,000 members and volunteers, most of whom are LGBT seniors.

28 | (Declaration of Dan Ashbrook, Director of Lavender Seniors ("LS Dec.") ¶¶ 2-3.)  Lavender Seniors

provides care and social support for LGBT seniors, and cultural competency training and public advocacy about the particular needs of the LGBT senior population, many of which needs are exacerbated by exclusion from marriage and the resulting, pervasive social stigma.  (LS Dec. ¶ 4.)

PFLAG is a national non-profit membership organization that promotes the health and well-being of LGBT people, their families, and friends.  (Declaration of Jody M. Huckaby, Executive Director of PFLAG ¶ 3 ("PFLAG Dec.").)  PFLAG has over 200,000 nationwide members and supporters and over 500 affiliates in the United States, including 38 local chapters in California.  (PFLAG Dec. ¶ 4.)  PFLAG was also an *amicus curiae* in both *In re Marriage Cases* and *Strauss*.

Many members of Our Family Coalition, Lavender Seniors, and PFLAG are lesbian or gay individuals living in California who desire and intend to marry their same-sex partners, but who are prevented from doing so by Proposition 8.  (OFC Dec. ¶ 9; LS Dec. ¶¶ 6, 11; PFLAG Dec. ¶ 5.)  Many members of Our Family Coalition, Lavender Seniors, and PFLAG are also the parents, children, and other family members of lesbian and gay individuals and same-sex couples in California who wish for their children, parents or other family members to be able to marry.  (OFC Dec. ¶¶ 2-4; PFLAG Dec. ¶ 5.)  Together, Our Family Coalition, Lavender Seniors, and PFLAG represent a broad and diverse range of people in the LGBT community who have interests in the issues raised in this case, in California and nationally.

Counsel for Proposed Intervenors—Lambda Legal, NCLR, and the ACLU—are the three national legal groups that are dedicated to protecting the civil rights of LGBT people in California and nationwide.  Collectively, these legal groups have unique experience and expertise both in their understanding of the scope of discriminatory treatment to which lesbians and gay men and same-sex couples are regularly subjected in California and the nation, and in their advocacy for the civil rights of lesbian and gay people, including presenting evidence relevant to these rights in many prior cases. The legal groups were counsel for the same-sex couples who sought and previously won the freedom to marry under the California Constitution in *In re Marriage Cases*, and the legal groups were counsel for the same-sex couples who challenged Proposition 8 on state law grounds regarding the process for amending the California Constitution in *Strauss*.

In addition to *In re Marriage Cases* and *Strauss*, Lambda Legal, NCLR and the ACLU have participated in every other case seeking the freedom to marry for same-sex couples to reach a state supreme court.  Lambda Legal was counsel for the couples who won the freedom to marry on state constitutional grounds in Iowa, see *Varnum v. Brien*, 763 N.W. 2d 862 (Iowa 2009), and the ACLU was counsel for the couples who won the freedom to marry on state constitutional grounds in Connecticut, see *Kerrigan v. Comm'r of Pub. Health*, 957 A.2d 407 (Conn. 2008).  And these legal groups participated as *amici curiae* in the case in which couples won the freedom to marry on state constitutional grounds in Massachusetts, see *Goodridge v. Dep't of Pub. Health*, 798 N.E.2d 941 (Mass. 2003).  One or more of the three groups were also counsel for the couples who sought to be allowed to marry in Hawaii, Maryland, New Jersey, New York, Oregon, and Washington.  *See Baehr v. Lewin*, 852 P.2d 44 (Haw. 1993) (hereinafter "*Baehr*"); *Conaway v. Deane*, 932 A.2d 571 (Md. 2007); *Lewis v. Harris*, 908 A.2d 196 (N.J. 2006); *Hernandez v. Robles*, 855 N.E. 2d 1 (N.Y. 2006) (hereinafter "*Hernandez*"); *Li v. State of Oregon*, 110 P.3d 91 (Or. 2005) (hereinafter "*Li*"); *Andersen v. King County*, 138 P.3d 963 (Wash. 2006) (hereinafter "*Andersen*").

Through these marriage cases and other cases involving the civil rights of LGBT individuals and couples in which these legal groups were counsel—including the seminal cases of *Lawrence v. Texas*, 539 U.S. 558 (2003), *Romer*, 517 U.S. 620, and *Witt v. Dep't of the Air Force*, 527 F.3d 806 (9th Cir. 2008)—Lambda Legal, NCLR, and the ACLU have accrued extensive experience in developing precisely the range of evidence that the Court has identified as central to this case.  For example, these groups have presented evidence in many cases on the history of discrimination against lesbians and gay men and their relative political powerlessness. (*See, e.g.*, trial record in *Romer*, *Baehr*, and *Equality Found. of Greater Cincinnati v. City of Cincinnati*, 128 F.3d 289 (6th Cir. 1997) (case challenging constitutionality of Cincinnati ordinance that removed gay men, lesbians, and bisexuals from protection of city's anti-discrimination law); *see also* summary judgment record in *In re Marriage Cases*, *Varnum*, *Andersen*, and *Hernandez*.)

On the evidence surrounding the comparative outcomes that children raised with same-sex parents and with different-sex parents exhibit—the "child-rearing environment" questions—Lambda Legal, NCLR, and the ACLU have presented expert testimony in constitutional challenges to state

6

1 | laws involving both marriage and parenting rights.  (*See. e.g.*, trial records in *Baehr, Dep't of Human*
2 | *Servs. v. Howard*, 238 S.W.3d 1 (Ark. 2006) (case challenging constitutionality of Arkansas state
3 | regulation that prohibited an individual from being a foster parent if an adult member of that person's
4 | household was gay) (hereinafter "*Howard*"), and *In re Adoption of Doe*, 2008 WL 5006172 (Fla. Cir.
5 | Ct. Nov. 25, 2008) (case challenging constitutionality of Florida statute prohibiting gay people from
6 | adopting children) (hereinafter "*In re Adoption of Doe*"); summary judgment records in *Varnum, Li*,
7 | and *Andersen*.)  And these groups have represented hundreds of individual lesbian and gay parents in
8 | cases involving their state law rights to adoption, foster parenting, and custody, some of which
9 | included expert testimony (see *Maniaci v. Kulstad*, Cause No. DA 08-0483 (Mont. 2009)), and all of
10 | which included evidence relevant to the questions asked by the Court.

11 |      Other factual issues identified by the Court on which the legal groups have experience
12 | presenting evidence are: (1) whether permitting same-sex couples to marry destabilizes opposite-sex
13 | couples (*see. e.g.*, trial records in *Baehr, Howard*, and *In re Adoption of Doe*; summary judgment
14 | record in *Varnum*); (2) whether sexual orientation can be changed, and if so, whether gays and
15 | lesbians should be encouraged to change it (*see. e.g.*, trial records in *Howard* and *In re Adoption of*
16 | *Doe*); (3) the history and development of California's ban on same-sex marriage (*see* summary
17 | judgment record in *In re Marriage Cases*); and (4) the differences in actual practice of registered
18 | domestic partnerships, civil unions and marriage, including whether married couples are treated
19 | differently from domestic partners in governmental and non-governmental contexts (*see* summary
20 | judgment record and supplemental briefing before California Supreme Court in *In re Marriage*
21 | *Cases*; briefing on writ of mandate in *Knight v. Superior Court*, 128 Cal. App. 4th 14 (Cal. Ct. App.
22 | 2005) (case brought by proponents of Proposition 22—California's statutory ban on marriage for
23 | same-sex couples—challenging constitutionality of California's domestic partnership law).

## III.   ARGUMENT

25 |      Proposed Intervenors agree with the Court that the development of a complete record through
26 | the presentation of evidence on a number of the dispositive legal issues could be of value to the
27 | ultimate resolution of this action.  (Order at p.5; Hr'g Tr. 12:2-15 (noting that "how we do things here
28 | [in the trial court] is more important than what we do").)  Proposed Intervenors, who represent much

broader diversity among same-sex couples than the two Plaintiff couples (or any two couples by themselves), would facilitate a more comprehensive examination of the harms inflicted on same-sex couples by Proposition 8's exclusion of those couples from marriage. In addition, given the extensive experience and expertise of Proposed Intervenors and their counsel in litigating the very factual issues identified by the Court as in need of adjudication here, Proposed Intervenors would be of great assistance to the parties and the Court in developing an evidentiary record as thoroughly and efficiently as possible.

For these and the other reasons addressed below, Proposed Intervenors are entitled to intervene in this action as a matter of right. In the alternative, Proposed Intervenors should be permitted to intervene in this action in the sound exercise of the Court's discretion.

**A.    Proposed Intervenors Are Entitled to Intervene as of Right Under FRCP 24(a).**

Intervention as of right is governed by Fed. R. Civ. P. 24(a), which provides in relevant part: "On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." As this Court has recently recognized, there is a four-part test for evaluating claims for intervention as of right: (1) the motion is timely; (2) proposed intervenors have a significant protectable interest relating to the transaction that is the subject of the action; (3) proposed intervenors are so situated that the disposition of the action may practically impair or impede their ability to protect their interest; and (4) the existing parties may not adequately represent the proposed intervenors' interests. (Order at pp.2-3; *see also Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1493 (9th Cir. 1995).) All four factors are met here.

In applying the factors, "the court should be 'guided primarily by practical and equitable considerations' and should 'interpret the requirements broadly in favor of intervention.'" (Order at p.3 (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)).) "A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a *practical* interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an additional

8

interested party to express its views before the court." *United States v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002) (internal quotations omitted) (emphasis in original).[2]

### 1.   Proposed Intervenors' Motion Is Timely.

The complaint in this case was filed on May 22, 2009, less than six weeks ago, and there has not yet been any discovery, any substantive rulings, or any proceedings addressing the merits of the case. More relevantly, the Court just last week issued the order that set forth the Court's tentative plan, including the identification of a wide range of legal issues and the development of a factual record, and the plan was confirmed at the case management conference on July 2, 2009. Proposed Interveners have not delayed in their application for intervention, and granting their request at this beginning stage of the litigation would not prejudice the other parties. *See United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (in determining timeliness, courts take into account the stage of the proceeding, the prejudice to other parties, and the reason for and length of delay). Proposed Intervenors' request for intervention is therefore timely.[3]

### 2.   Proposed Intervenors Have Significant Protectable Interests in the Subject Matter of the Action That May Be Impaired or Impeded by Disposition of the Action.

Proposed Intervenors unquestionably have a "significant protectable interest" in the subject matter of the action. Fed. R. Civ. P. 24(a). An applicant for intervention has a "'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *Donnelly*, 159 F.3d at 409. The requirement is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Forest Conservation Council*, 66 F.3d at 1496.

---

[2] While Proposed Intervenors could seek to ensure that their interests are adequately represented by filing a new case (which might end up before this Court as well), they instead seek to intervene in this case in the interest of judicial economy.

[3] Proposed Intervenors have sought to intervene as promptly as possible after the July 2, 2009 case management conference so that should their motion be granted, they will be able to participate with counsel for the parties in the meet and confer process directed toward the preparation of a joint case management conference statement, currently due August 7, 2009, and in the further case management conference, currently calendared for August 19, 2009, without causing any delay in the proceedings.

Like Plaintiffs, many members of Proposed Intervenors' organizations intend to marry their same-sex partners, but are prevented from doing so by Proposition 8. (OFC Dec. ¶ 9; LS Dec. ¶ 6; PFLAG Dec. ¶ 5.) In addition, the Court's ruling on the constitutionality of Proposition 8 also may unquestionably directly impair or impede the interests of Proposed Intervenors' members: Should the Court reject Plaintiffs' claims under the federal Due Process and Equal Protection Clauses, Proposed Intervenors' members could be foreclosed from seeking similar relief in subsequent litigation. Proposed Intervenors therefore satisfy the second and third prongs of the intervention as of right test.

**3.      The Interests of Proposed Intervenors May Not Be Adequately Represented by the Parties in the Action.**

In determining whether a proposed intervenor's interest is adequately represented by the parties, courts must consider: (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable of making and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect. *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986). The requirement of inadequate representation "is satisfied if the applicant shows that representation '*may be*' inadequate." *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)) (emphasis added).[4]

Although Plaintiffs and Proposed Intervenors share an "ultimate objective"—a ruling that Proposition 8 is unconstitutional—in which case there is a presumption of adequate representation, such presumption is rebutted by the potential of divergent interests between Plaintiffs and Proposed Intervenors. *See Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823-24 (9th Cir.2001) (applicants for intervention rebutted presumption of adequacy of representation on showing that their interests "might diverge" from those of defendant); *see also id.* at 824 ("The district court

---

[4] A claim that representation is inadequate is of course not a claim about the general quality of existing counsel, and Proposed Intervenors have no concern in that regard. Instead, "Rule 24 requires that we look to the adequacy or inadequacy of representation by 'existing parties' not counsel." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 529 (9th Cir. 1983).

1   concluded that Applicants had not 'identif[ied] any argument that [defendant] is either incapable or

2   unwilling to make ... or any necessary elements that applicants will bring to these proceedings that

3   [defendant] will neglect.'  But it is not Applicants' burden at this stage in the litigation to anticipate

4   specific differences in trial strategy.  It is sufficient for Applicants to show that, because of the

5   difference in interests, it is likely that Defendants will not advance the same arguments as

6   Applicants."); *see also People ex rel. Lockyer v. U.S. Dep't of Agric.*, No. C05-03508, 2006 WL

7   870732 *3 (N.D.Cal. March 31, 2006) (presumption of adequacy of representation rebutted where

8   interests of applicants not "identical" to those of plaintiffs).

9          The interests of Proposed Intervenors and Plaintiffs are not coextensive here, and the

10   representation by Plaintiffs of those interests may therefore be inadequate.  As opposed to the two

11   Plaintiff couples, Proposed Intervenors represent the full range of lesbian and gay individuals and

12   couples of all ages and ethnic, cultural, and socio-economic backgrounds, and their children

13   (biological, adopted, and foster), parents, and other family members.  (OFC Dec. ¶¶ 3, 6; LS Dec. ¶ 5;

14   PFLAG Dec. ¶¶ 3, 6.).  Because marriage is a social institution that protects many different personal

15   and legal interests, the harms of being excluded from marriage, or having a family member excluded

16   from marriage, are distinct.  For example, the interests of a same-sex couple with small children may

17   diverge from those of a same-sex couple without small children, given the different potential for

18   harm Proposition 8 could inflict.  In a medical emergency, a small child would not be able to

19   represent his or her own interests, and any failure by emergency personnel to recognize both

20   members of the same-sex couple as parents, due to their lack of the universally recognized status of

21   marriage, would therefore implicate the couple's parenting interests, as well as their more general

22   interest in attaining marriage for its own sake.  Same-sex couples raising younger children also must

23   often cope with the emotional harms inflicted on their children by anti-gay hostility, whether

24   expressed by bullying peers or biased adults, which can seem to be validated by discriminatory

25   marriage laws.  (OFC Dec. ¶¶ 5, 7.)

26          Similarly, the interests of older same-sex couples may diverge from those of other same-sex

27   couples in both practical and emotionally meaningful ways.  As older couples are often in positions

28   of greater financial vulnerability, the costs imposed by the estate planning necessary to try to ensure

that their immediate family relationships are recognized (relationships again universally recognized through the status of marriage) can be more burdensome. The official respect and recognition that comes with marriage may also have a special value for older same-sex couples. For example, the validation and inclusion inherent in the status of marriage may carry particular weight after a lifetime of discrimination. (LS Dec. ¶¶ 8, 9.) At the same time, older same-sex couples often face the increased likelihood that one or both of the partners may become physically or mentally incapacitated and need to depend on the other financially or to make decisions, while facing increased risk that blood relatives or complete strangers may interfere because the couple's relationship is not honored. (LS Dec. ¶ 7.) These challenges only increase for older same-sex couples residing in assisted living facilities, nursing homes, and similar institutions in which family statuses other than marriage are routinely disrespected. (*Id.*) And the extra security that comes from the shared meaning of marriage is denied to an even greater extent for same-sex couples from the many ethnic, cultural, or socio-economic backgrounds in which marriage plays an especially important role in supporting family.

**B.   In the Alternative, the Court Should, In the Exercise of its Discretion, Permit Proposed Intervenors To Intervene Under FRCP 24(b).**

A court may grant permissive intervention when a potential intervenor shows "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Southern Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (citing *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002). If these threshold requirements are met, deciding whether to grant permissive intervention "is directed to the sound discretion of the district court." *San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1100 (9th Cir. 1999).

All three threshold elements are met here. This court has equal jurisdiction over Proposed Intervenors' claims as it has over Plaintiffs' claims, pursuant to 28 U.S.C. § 1331; Proposed Intervenors' claims plainly share questions of law and fact with Plaintiffs' claims; and as discussed above, Proposed Intervenors' motion is timely. Nor would the intervention "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). As noted above, Proposed Intervenors are moving to intervene at the outset of the litigation, and they seek to

12

complement the efforts of current Plaintiffs while bringing unique and vital experience, expertise, and diversity of interests to this important litigation. *See LG Electronics Inc. v. Q-Lity Computer Inc.*, 211 F.R.D. 360, 366 (N.D. Cal. 2002) ("[I]ntervention would not delay or prejudice the adjudication of the rights of the original parties, because these issues [that the proposed intervenor seeks to raise] have already been raised by the other parties . . . the Court must consider these issues regardless of whether [the proposed intervenor] intervenes.").

Proposed Intervenors' participation as parties in this action moreover would "contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented," a factor courts should take into account in exercising their discretion to permit intervention. *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977); *see also* 6 Moore's Federal Practice § 24.10 [2][b] (Matthew Bender, 3d. ed.). As discussed above, Proposed Intervenors represent a more comprehensive range of persons directly affected by Proposition 8 than the two Plaintiff couples, and they would therefore be able to provide the Court and the parties with perspectives—as well as first-hand evidence—otherwise absent from this litigation. Through their members' experiences, and the experience of their counsel, Proposed Intervenors would also bring unique resources to the development of the very factual issues that the Court has identified as central to the resolution of the important constitutional claims at stake.

Indeed, the Supreme Court has recognized as one of the great benefits of organizational plaintiffs their very ability to provide such unique evidence and expertise. *See Int'l Union v. Brock*, 477 U.S. 274 (1986). In comparing class action representatives to organizational plaintiffs, the Court held: "While a class action creates an ad hoc union of injured plaintiffs who may be linked only by their common claims, an association suing to vindicate the interests of its members can draw upon a pre-existing reservoir of expertise and capital. Besides financial resources, organizations often have specialized expertise and research resources relating to the subject matter of the lawsuit that individual plaintiffs lack." *Id.* at 289. The Court went on to hold that "[t]hese resources can assist both courts and plaintiffs. As one court observed of an association's role in pending litigation: The interest and expertise of this plaintiff, when exerted on behalf of its directly affected members, assure

13

1  that concrete adverseness which sharpens the presentation of issues upon which the court so largely

2  depends for illumination of difficult questions." *Id.* (internal quotations omitted).

3         Proposed Intervenors further agree with the Court that it is important as part of litigating the

4  constitutional claims in this case to develop fully many of the factual issues identified by the Court in

5  its Order and, if allowed to intervene, Proposed Intervenors would advance those issues vigorously.

6  (*See* Hrn'g Tr. at 24:24 (in response to counsel for Defendant-Intervenors stating that there has not

7  been a trial in any of the marriage cases, the Court asked "Isn't that a problem?").[5])  Counsel for

8  Proposed Intervenors have participated in state marriage cases in which appeals courts made factual

9  assumptions relevant to the legal analysis, without having the benefit of a factual record on those

10  issues, and they therefore particularly appreciate how helpful it may be to have a factual record

11  developed on certain of the issues presented by this litigation prior to an appeal.  *See, e.g.,*

12  *Hernandez,* 855 N.E. 2d at 8 (holding that "the Legislature could rationally proceed on the

13  commonsense premise that children will do best with a mother and father in the home," without any

14  evidence in the record on whether a mother and father provide the optimal child-rearing environment,

15  and despite information from *amici curiae* briefs addressing that very issue); *Andersen,* 138 P.3d at

16  974 (holding that because plaintiffs did not "cite other authority or any secondary authority or studies

17  in support of the conclusion that homosexuality is an immutable characteristic," they could not make

18  a showing of immutability, which the court held to be necessary for the purpose of a suspect

19  classification analysis).

20         In developing a factual record, Proposed Intervenors would draw on the experience and

21  expertise of Our Family Coalition and PFLAG in *In re Marriage Cases* and *Strauss,* and of Lambda

22  Legal, NCLR, and the ACLU in developing and presenting many of the same facts in state court

23  marriage cases and other constitutional litigation around the country.  This extensive experience and

24  expertise covers all the categories of factual issues described by the Court in its Order: the level of

25  scrutiny applicable to sexual orientation discrimination; the state interests that might be advanced

26  

27  5 Counsel for Intervenor-Defendants was incorrect on this point.  There was in fact a trial in *Baehr,*
   the Hawaii state marriage case, in which Lambda Legal represented plaintiffs.  *See* No. CV 91-1394,

28  1996 WL 694235 (Haw. Cir. Ct. Dec. 3, 1996) (findings of fact and conclusions of law after trial).

1   with regard to excluding same-sex couples from marriage; the relationship between sexual orientation

2   discrimination and gender stereotypes; and the genesis of Proposition 8.  The legal groups

3   additionally have extensive experience and expertise regarding the all of the sub-categories of factual

4   issues described by the Court, both through their constitutional challenges to restrictive state marriage

5   and parenting laws in other states and their representation of LGBT individuals and couples in

6   hundreds of cases in California and around the country.

7            Judicial economy will also be served by granting this motion for intervention.  First, because

8   Proposed Intervenors' members are representative of the LGBT community in California and around

9   the country and their counsel are the national legal organizations with the most experience

10  representing that community, Proposed Intervenors and their counsel have every incentive to take all

11  the interests of the LGBT community into account.  Accordingly, their intervention minimizes the

12  possibility of intervention by additional persons or groups whose rights would also be affected by

13  Plaintiffs' challenge to Proposition 8.  Second, Proposed Intervenors and their counsel have

14  experience and expertise that will be helpful to the development of a complete factual record on the

15  numerous complex and important factual issues identified by the Court in as "just, speedy and

16  inexpensive" manner as possible.  (Order at p.9.)

17           Finally, the nature and extent of Proposed Intervenors' interests in the case weigh heavily in

18  favor of intervention.  The questions of both law and fact at stake in this case are of enormous

19  importance to the entire LGBT community.  Allowing representatives across a wide spectrum of that

20  community to participate in this momentous litigation will ensure that a full range of perspectives and

21  fact patterns arising for same-sex couples excluded from marriage by Proposition 8 and their families

22  will be presented to the Court.

23

24

25

26

27

28

CASE NO. 09-CV-2292 VRW  BRIEF IN SUPPORT OF MOTION TO INTERVENE

## IV.   CONCLUSION

Because Proposed Intervenors' motion is timely, they have significant protectable interests in the subject matter of the action that may be impeded or impaired by disposition of the action, and their interests may not be adequately represented by Plaintiffs, Proposed Intervenors respectfully request that the Court grant their motion to intervene as of right.  In the alternative, Proposed Intervenors respectfully request that the Court in its discretion permit them to intervene in this action.

If the Court grants Proposed Intervenors' motion to intervene, they respectfully request that the Court order the parties to meet and confer with Proposed Intervenors in sufficient time for Proposed Intervenors to participate fully in the parties' joint case management statement.


Dated:  July 8, 2009

ALAN L. SCHLOSSER
ELIZABETH O. GILL
ACLU Foundation of Northern California

JON W. DAVIDSON
JENNIFER C. PIZER
TARA BORELLI
Lambda Legal Defense and Education Fund, Inc.

SHANNON P. MINTER
CHRISTOPHER F. STOLL
ILONA M. TURNER
National Center for Lesbian Rights

MARK ROSENBAUM
LORI RIFKIN
ACLU Foundation of Southern California

DAVID BLAIR-LOY
ACLU Foundation of San Diego and Imperial Counties

MATTHEW A. COLES
JAMES D. ESSEKS
LGBT & AIDS Project
American Civil Liberties Union Foundation


By:   _____/s/_____
        ELIZABETH O. GILL

Attorneys for Proposed Plaintiff-Intervenors Our Family Coalition; Lavender Seniors of the East Bay; and Parents, Families, and Friends of Lesbians and Gays