June 22, 2009

FILED

JUL 02 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Chief Judge Vaughn R. Walker
United States District Court
Northern District of California
450 Golden Gate Ave.
Courtroom 6, 17th floor
San Francisco, CA 94102-3489

RE: CASE NO. 09-CV-2292 VRW, Perry et al v. Schwarzenegger et al.

Chief Judge Walker:

I am writing to you in connection with the above-referenced matter as a citizen of the United States, State of California, and County of Los Angeles, who voted to amend our California Constitution (hereinafter, the "Cal. Const.") to define marriage as "between a man and a woman." (Cal. Const. Art I § 7.5.)

I am absolutely astonished that the Plaintiffs knew how the California Supreme Court (hereinafter "Cal. Court") would rule on Proposition 8 before the Cal. Court ruled. The Plaintiffs filed their Complaint with your court on a Friday (5/22/09) before the Memorial Day holiday weekend on the same day the Cal. Court stated it would announce its ruling on Proposition 8 the following Tuesday (5/26/09) after the holiday. It seems odd to me that a Complaint would be filed before the Plaintiffs knew they had anything to complain about. It's even more bizarre that California's own Attorney General and Governor would support the Plaintiffs in total disregard for the majority vote of the people of the State of California who have decided that marriage is "between a man and a woman."

On May 26, 2009, the Cal. Court determined that Proposition 8 was a permissible change to the Cal. Const. Proposition 8 was a voter initiative to amend the Cal. Const. It was approved by a majority of California voters and it added Section 7.5 to Article I of the Cal. Const., providing that "only marriage between a man and a woman is valid or recognized in California."

In accordance with the Tenth Amendment (hereinafter, the "10th Amend.") to the United States Constitution (hereinafter, the "US Const"), marriage is a privilege granted by the state in accordance with that state's public policies, which is why a marriage "license" is granted. The definition of license is "permission." The state grants licenses with the goal to promote the public good and protect the public's health and welfare such as: drivers licenses, liquor licenses, fishing licenses, cosmetology licenses, contractor licenses, plumbing licenses, etc.

Most of laws concerning marriage licenses have already been established because marriage is an institution. These laws include denying marriage licenses to: siblings and certain other close relatives due to possible birth defects in their offspring; couples under the age of majority; mentally incompetent couples, etc. Denying marriage licenses to couples under these circumstances promotes the public good and protects its health and welfare.

The federal government does not have jurisdiction over marriage, but nonetheless, because the people of the State of California have constitutionally determined public policy that marriage is "between a man and a woman," the Plaintiffs appear before you and complain that they are being denied equal protection of the law under the Fourteenth Amendment (hereinafter, the "14th Amend.") to the US Const.

The Plaintiffs erroneously conclude that same sex couples are entitled to the right of marriage based on a sentence in the Supreme Court of the United States (hereinafter,

the "Court") holding in *Loving v. Virginia*, 388 U.S. 1, 12 (1967) – "[m]arriage is one of the 'basic civil rights of man.'"

While the Court may have stated that sentence in their opinion, <u>the holding in this case concerned the fact that **racial minorities** are protected suspect classes under the strict scrutiny of judicial review of the 14th Amend. to the US Const.</u>

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court in *Loving v. Virgina, supra*.
> "This case presents a constitutional question never addressed by this Court: <u>whether a statutory scheme adopted by the State of Virginia to prevent marriages between persons solely on the basis of racial classifications</u> violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment. For reasons which seem to us to reflect the central meaning of those constitutional commands, we conclude that these statutes cannot stand consistently with the Fourteenth Amendment."

So why did the Court make a statement that marriage is one of the basic civil rights of man? The answer can be found in the penumbra of the Preamble to the US Const:

> "We the people of the United States, in order to form a more perfect union, establish justice, insure domestic tranquility, provide for the common defense, promote the general welfare, and secure the blessings of liberty to ourselves <u>and our posterity,</u> do ordain and establish this Constitution for the United States of America."

<u>Posterity means children and generations.</u> Throughout the state of California's history, and under authority of both the US and California Constitutions, the people of the state of California have consistently decided that marriage is between "a man and a woman." California Attorney General Brown outlines the history of California's public policy on marriage in his to the Complaint.

RE: CASE NO. 09-CV-2292 VRW, Perry et al v Schwarzenegger et al.
6/22/09 Letter to Chief Justice Walker from a California resident who voted to pass Proposition 8
p 3/9

In 1977, the California Legislature enacted California Family Code Section 300, which defined marriage as "a personal relation arising out of a civil contract between a man and a woman to which the consent of the parties capable, of making that contract is necessary;" in 2000, California voters approved Proposition 22 (codified as Cal. Fam. Code § 308.5), which provided that "only marriage between a man and a woman is valid or recognized in California"; in *Lockyer v. City & County of San Francisco*, 33 Ca. 4th 1055 (2004), the Cal. Court found that Family Code sections 300 and 308.5 prohibited the City and County of San Francisco from issuing marriage licenses to same-sex couples.

Prior to 1977, and for more than two thousand years of recorded history, marriage has always been "between a man and a woman." Yet, nonetheless, the Plaintiffs complain that they should have the right to marry and be entitled to all the benefits afforded married couples. Most of these benefits are geared to families with children. Same sex couples can not naturally conceive children. Just because babies can be grown in a test-tube, or carried by a surrogate or by insemination, does not mean it is in the best interest of that child. These scientific breakthroughs do not mean that the definition of marriage should include same sex marriage. Exceptions are not the rule.

Same sex couples can not conceive children. Therefore, how can sexual orientation be compared to race, national origin or religion? Man and woman couples of different races, national origins and religions can conceive children. If *Loving v. Virginia, supra,* had a different holding, President Barack Obama would not have been our President. The people of the state of California have consistently decided that marriage is "between a man and a woman" because of their belief in families and future generations.

In addition to the "sentence" about marriage being a civil right in the holding of *Loving v. Virginia, supra,* the Plaintiffs cite the holding in the Cal. Court's *In re*

RE: CASE NO. 09-CV-2292 VRW, Perry et al v Schwarzenegger et al.
6/22/09 Letter to Chief Justice Walker from a California resident who voted to pass Proposition 8
p 4/9

*Marriage Cases*, 183 P. 3d 384 (Cal. 2008), that sexual orientation is a suspect class entitled to strict scrutiny of judicial review of 14th Amend. cases.

I ask Your Honor to remand *In re Marriage Cases* back to the Cal. Court because the Cal. Court erred in its conclusion that sexual orientation is statutory classification to be considered 'suspect' for equal protection purposes. The Cal. Court used a California Court of Appeal (hereinafter "Cal. Crt of Appeal") conclusion and other case holdings to reach this conclusion as follows.

A Cal. Crt of Appeal stated that generally three requirements must be met for a statutory classification to be considered suspect. The defining characteristic must (1) be based upon an 'immutable trait'; (2) 'bear[] no relation to [a person's] ability to perform or contribute to society'; and (3) be associated with a 'stigma of inferiority and second class citizenship,' manifested by the group's history of legal and social disabilities. (*Sail'er Inn, Inc. v. Kirby* (1971) 5 Cal. 3d at pp. 18-19)

In determining whether gays and lesbians are a statutory suspect class, the Cal. Crt of Appeal in *Sail'er Inn, Inc. v. Kirby* breezed right by requirement (2) – "[w]hile the latter two requirements would seem to be readily satisfied in the case of gays and lesbians, the first is more controversial." The Cal. Court used a sexual discrimination case in a public utility company to address requirement (2) *In re Marriage Cases*. The Cal. Court stated "[p]ast California cases fully support the Court of Appeal's conclusion that sexual orientation is a characteristic (1) that bears no relation to a person's ability to perform or contribute to society (see, e.g. *Gay Law Students*)[1]

This is where the Cal. Court erred *In re Marriage Cases*. The Cal. Court used a sexual orientation discrimination case at a public utility company, *Gay Law Students,* as a basis for the suspect class classification requirement of "perform and contribute to

---

[1] *Gay Law Students Assn. V. Pacific Te. & Tel. Co.* (1979) 24 Cal. 3d

RE: CASE NO. 09-CV-2292 VRW, Perry et al v Schwarzenegger et al.
6/22/09 Letter to Chief Justice Walker from a California resident who voted to pass Proposition 8

p 5/9

society" in the context of marriage. Same sex couples can not naturally conceive children, and just because there are scientific laboratory means by which to conceive children, does not mean that same sex couples can "perform and contribute to society" in the context of marriage. <u>Perform and contribute in the context of marriage means conceiving children.</u> And just because some couples choose not to have children in the context of marriage, that does not give cause to change the thousands year definition of marriage.

*In re Marriage Cases,* the Cal. Court exceeded its authority by concluding "that sexual orientation should be viewed as a suspect classification for purposes of California Constitution's equal protection clause and that statutes that treat persons differently because of their sexual orientation should be subjected to strict scrutiny under this constitutional provision." The Cal. Court can not make decisions in opposition of the supreme law of the land and Federal courts have not ruled that sexual orientation is a suspect class. Federal courts have jurisdiction over the 14th Amend. to the US Const.

Not only did the Cal. Court exceed its authority, it declared public policy in direct contradiction to the consistent vote of the people of the state of California. Courts are not charged with making policy. That is a job for the people and their legislative representatives. The people have consistently declared public policy that marriage in California is "between a man and a woman."

The people of the state of California have also agreed to domestic partnership laws giving same domestic partnerships (same sex couples) most of the benefits to which married couples are entitled. The big differences are federal benefits and benefits pertaining to family and children.

Contrary to the Plaintiff's view, it is not irrational to codify the separation between married couples and domestic partnerships. The state and the courts should have

RE: CASE NO. 09-CV-2292 VRW, Perry et al v Schwarzenegger et al.
6/22/09 Letter to Chief Justice Walker from a California resident who voted to pass Proposition 8

p 6/9

the best interest of children in mind and children are best raised in families with man and woman parents. Same sex couples can not naturally conceive children.

It is because Proposition 8 substantially relates to an important state objective, California's public policy on marriage, it passes all tests of judicial review. First, the people of the State of California have the authority to amend the Cal. Const. by voter initiative. Second, Proposition 8 has a rational basis. Third, Proposition 8 treats all Californians equally.

On May 26, 2009, the Cal. Court upheld Proposition 8, confirming that the people had the authority to amend the Cal. Const. to define marriage as between a man and a woman. The people of the state of California can determine public policy regarding marriage.

Proposition 8 has a rational basis from a public policy and freedom of religion points of view. California's public policy defines marriage as "between a man and a woman" in the interest of families and children. Amending the Cal. Const. to promote this view is a rational means to that just end, particularly when the Cal. Court had previously ruled a previous similar law - unconstitutional. To this day, I wonder how the Cal. Court could make that determination anyway because it did not conform to precedent, *Loving v. Virginia, supra*, and the Cal. Court can not start defining terms not under their jurisdiction. Same sex couples are not the same as heterosexual couples of different races, national origins or religions because same sex couples can not naturally conceive children.

Proposition 8 has a rational basis from a freedom of religion point of view. The biggest opponents of same sex marriage are religious groups and institutions, as well as religious citizens. Religions ARE a protected suspect class under the 14th Amend. Therefore, these religious groups' viewpoint about the definition of marriage should carry greater weight when considering 14th Amend. issues. Certainly, many religious

RE: CASE NO. 09-CV-2292 VRW, Perry et al v Schwarzenegger et al.
6/22/09 Letter to Chief Justice Walker from a California resident who voted to pass Proposition 8
p 7/9

Californians voted to amend the Cal. Const. to define marriage as "between a man and a woman".

While I do not agree with the Cal. Court's decision that sexual orientation is suspect class, even so, Proposition 8 passes the strict scrutiny of judicial review. Contrary to the Plaintiffs' declaration that Proposition 8 denies them due process and equal protection of law, Proposition 8 passes this test because California's domestic partners are entitled to benefits that married couples receive with some few exceptions. These exceptions are benefits that primarily apply to married couples with children.

Nolo Online Legal Companion published a comprehensive outline of all benefits afforded to married couples entitled, Marriage Rights and Benefits[2]. The major categories of benefits include Tax Benefits, Estate Planning Benefits, Government Benefits, Employment Benefits, Medical Benefits, Death Benefits, Family Benefits, Housing Benefits and Consumer Benefits. *In re Marriage Cases*, The Cal. Court enumerated nine differences between domestic partnership and marriage laws affecting same sex couples. The Cal. Court noted that one benefit could never be granted to same sex couples as it was denied by the federal government. With respect to another, the putative spouse doctrine, a week prior to the filing of the decision *In re Marriage Cases*, a California District Court of Appeal ruled that the putatitve spouse doctrine applies to domestic partnerships.

Same sex couples are entitled to many benefits that are granted to married couples. The benefits denied to same sex couples are usually granted to married couples with children such as child care tax credits and per child tax deductions. As same sex couples can not conceive children, the codification of domestic partnerships versus marriage is a rational means to a legitimate end. I respectfully ask that you dismiss the Plaintiff's Complaint with prejudice and that you remand *In re Marriage Cases* back to

---

[2] http://www.nolo.com/article.cfm/pg/1/objectId/E0366844-7992-4018-B581C6AE9BF8B045/catId/F896EE61-B80C-4FE1-B1687AC0F07903BA/118/304/ART/

the California Supreme Court who exceeded their authority is determining sexual orientation is a suspect class when considering equal protection of the law under the 14th Amend.

Unfortunately Your Honor, because I fear retaliation from same sex marriage advocates, I kindly ask that you consider my views as an anonymous voter when making your decision on this case noting that I was entitled to secretly vote in California. As you may have heard, there have been many publicized retaliation incidents against people who voted yes on Proposition 8 that give me cause for concern. Not to forget that our own Governor and Attorney General have publicly stated their support of same sex marriage despite the will of the people of the state of California. As well, the Mayor of Los Angeles also has criticized the constitutional amendment.

Thank you for your consideration.

Sincerely,

X

Citizen X who voted Yes on Proposition 8
Citizen of the United States and California
Resident of Los Angeles County

RE: CASE NO. 09-CV-2292 VRW, Perry et al v Schwarzenegger et al.
6/22/09 Letter to Chief Justice Walker from a California resident who voted to pass Proposition 8

p 9/9

RE: CASE NO. 09-CV-2292 VRW, Perry et al v. Schwarzenegger et al.

Chief Judge Vaughn R. Walker
United States District Court
Northern District of California
450 Golden Gate Ave.
Courtroom 6, 17th floor
San Francisco, CA 94102-3489