1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  THERESE M. STEWART, State Bar #104930
   Chief Deputy City Attorney
3  DANNY CHOU, State Bar #180240
   Chief of Complex and Special Litigation
4  VINCE CHHABRIA, State Bar #208557
   ERIN BERNSTEIN, State Bar #231539
5  CHRISTINE VAN AKEN, State Bar #241755
   MOLLIE M. LEE, State Bar #251404
6  Deputy City Attorneys
   City Hall, Room 234
7  One Dr. Carlton B. Goodlett Place
   San Francisco, California 94102-4682
8  Telephone:     (415) 554-4708
   Facsimile:     (415) 554-4699
9
   Attorneys for Proposed Intervenors
10 CITY AND COUNTY OF SAN FRANCISCO

11

12                          UNITED STATES DISTRICT COURT

13                         NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 14  KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO, | Case No. 09-CV-2292 VRW |
| 15 | **NOTICE OF MOTION AND MOTION TO INTERVENE AS PARTY PLAINTIFF; MEMORANDUM OF POINTS AND AUTHORITIES** |
| 16           Plaintiffs, | |
| 17           vs. | |
| 18  ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; | Hearing Date:   August 19, 2009<br>Time:           10:00 a.m.<br>Place:          Courtroom 6, 17th Fl., |
| 19  EDMUND G. BROWN JR., in his official capacity as Attorney General of California; | 450 Golden Gate Ave. |
| 20  MARK B. HORTON, in his official capacity as Director of the California Department of | Trial Date:     Not set |
| 21  Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, in her official | |
| 22  capacity as Deputy Director of Health Information & Strategic Planning for the | |
| 23  California Department of Public Health; PATRICK O'CONNELL, in his official | |
| 24  capacity as Clerk-Recorder for the County of Alameda; and DEAN C. LOGAN, in his | |
| 25  official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles, | |
| 26           Defendants. | |

27

28

1 and

2 PROPOSITION 8 OFFICIAL PROPONENTS DENNIS HOLLINGSWORTH, GAIL J.
3 KNIGHT, MARTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM, and MARK A.
4 JANSSON; and PROTECTMARRIAGE.COM – YES ON 8, A PROJECT OF CALIFORNIA
5 RENEWAL,

6     Defendant-Intervenors.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii
NOTICE OF MOTION ........................................................................................................1
MEMORANDUM OF POINTS AND AUTHORITIES .....................................................2
I.     Introduction................................................................................................................2
II.    Background.................................................................................................................3
      A.    Through Legislation And Litigation, The City Has Long Sought To Achieve Full Equality For Its LGBT Citizens And Families................................................3
      B.    The Record Developed By The City And The Decision In The *Marriage Cases*..6
      C.    The City's Substantive Expertise And Trial Experience...........................................9
      D.    Proposition 8 ..........................................................................................................10
      E.    The Federal Lawsuit ..............................................................................................10
III.   Argument .................................................................................................................11
IV.   Conclusion ...............................................................................................................14

# TABLE OF AUTHORITIES

**State Cases**

*City & County of San Francisco v. Horton*
  46 Cal.4th 364 (2009) ...........................................................................................5, 10

*Delaney v. Superior Fast Freight*
  14 Cal. App. 4th 590 (1993) ..............................................................................................4

*Elisa B. v. Superior Court*
  37 Cal. 4th 108 (2005) ........................................................................................................5

*Evans v. City of Berkeley*
  38 Cal. 4th 1 (2006) ........................................................................................................4, 5

*In re Marriage Cases*
  43 Cal. 4th 757 (2008) ....................................................................................................5. 9

*In re Marriage Cases*
  143 Cal.4th 873 (2006) .........................................................................................................9

*Lockyer v. City & County of San Francisco*
  33 Cal. 4th 1055 (2004) ........................................................................................................5

*Sharon S. v. Superior Court*
  31 Cal. 4th 417 (2003) ..........................................................................................................5

**Federal Cases**

*Air Transp. Ass'n of America v. City & County of San Francisco*
  266 F.3d 1064 (9th Cir. 2001) .........................................................................................3, 4

*American Family Ass'n v. City & County of San Francisco*
  277 F.3d 1114 (9th Cir. 2002) ..............................................................................................4

*Catholic League for Religious & Civil Rights v. City & County of San Francisco*
  567 F.3d 595 ........................................................................................................................4

*Employee Staffing Services, Inc. v. Aubry*
  20 F.3d 1038 (9th Cir. 1994) ..............................................................................................11

*Greene v. United States*
  996 F.2d 973 (9th Cir. 1993) ..............................................................................................10

*ProtectMarriage.com v. Bowen*
  Case No. 09-00058 (E.D. Cal. 2009) ....................................................................................4

*Romer v. Evans*
  517 U.S. 620 (1996) ..............................................................................................................3

*S.D. Myers, Inc. v. City & County of San Francisco*
    253 F.3d 461 (9th Cir. 2001) .................................................................................................3

*S.E.C. v. United States Realty & Improvement Co.*
    310 U.S. 434 (1940).............................................................................................................11

*Spangler v. Pasadena City Bd. of Education*
    552 F.2d 1326 (9th Cir. 1977) .............................................................................................11

*United States v. Board of School Commissioners*
    466 F.2d 573 (9th Cir. 1972) ...............................................................................................11

**Rules**

Federal Rule of Civil Procedure 24(b)..................................................................................1, 10

**Constitutional Provisions**

28 U.S.C. § 1331....................................................................................................................11

Cal. Const., Art. I, § 7.5 ..........................................................................................................1

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on August 19, 2009 at 10:00 a.m., or as soon thereafter as the matter may be heard, at the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, 17th Floor, Courtroom 6, before the Honorable Chief Judge Vaughn R. Walker, Proposed Intervenor City and County of San Francisco ("City") will move this Court for an Order allowing it to intervene in this action as a party plaintiff under Federal Rule of Civil Procedure 24(b).

The motion of Proposed Intervenor is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the Declaration of Therese Stewart and attached exhibits; the [Proposed] Complaint in Intervention; all pleadings and other documents filed in this case; and any and all arguments of counsel at the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The City and County of San Francisco (City) respectfully requests that the Court permit it to intervene. The City initially participated as *amicus curiae*, supporting the Plaintiffs' motion for preliminary injunction. After this Court's call for further factual development on numerous issues, however, the City determined it could add significant value to the case should the Court permit it to intervene as a fully-participating party-plaintiff. Based on its unique and recent experience developing a factual record on many of these very issues, its interest as a public entity required to enforce an unconstitutional law, and its duty in preventing dignitary, mental, and physical harm to its residents, the City's profound interests justify its full participation.

The City's participation as lead plaintiff in the preceding state court marriage litigation was based on the principle that a local government need not, and should not, remain silent when required to enforce a law it considers unconstitutional. This is particularly so where, as here, the law's discriminatory treatment of a significant class of the local citizens imposes substantial economic burdens on the local government itself. The same principle and economic impact support the City's request to intervene here, where no local government has spoken to the constitutionality of Proposition 8, codified at Cal. Const., art. I, § 7.5 ("Proposition 8"). Because California law prevents the City from declining to enforce Proposition 8 until a court holds it unconstitutional, the City's only means to avoid participating in the continuing violation of its citizens' constitutional rights is this lawsuit challenging the validity of Proposition 8. If permitted to intervene, the City would be the lone local government entity to represent its interest in striking down an unconstitutional law it is compelled to enforce. And, if denied intervention, San Francisco would be relegated to the sidelines in the final stage of the legal battle for marriage equality in California—a battle that began on the steps of City Hall more than five years ago.

The City, as the sole party who presented a substantial factual record in the *Marriage Cases*—including 18 declarations by 12 expert witnesses identified by the City after thorough research on the topics on which they testified—is prepared to develop a trial record here on all of the significant factual issues identified by the Court. Nor would the City's intervention delay this action; on the

CCSF MOTION TO INTERVENE
CASE NO. 09-CV-2292 VRW

2

contrary, its relationships with the experts whose declarations it submitted in the *Marriage Cases* will assist the plaintiffs and streamline the process of readying such evidence as the Court may require.

Because the enforcement of Proposition 8 harms not only San Francisco's citizens, but also the City, which must absorb the financial, social, and public health consequences associated with the enforcement of this discriminatory law, the City respectfully requests that the Court permit it to intervene in this action.

## II. BACKGROUND

### A. Through Legislation And Litigation, The City Has Long Sought To Achieve Full Equality For Its LGBT Citizens And Families.

The City, which has the highest percentage of same-sex couple households of any county or major city in California, has a long history of efforts to achieve full equality for its LGBT citizens. The City's interest in achieving this equality, as evidenced by its active legislation, human rights commission work, and litigation over the last four decades, stems in part from the City's responsibility as the primary provider of the public health and welfare safety net for citizens who are unable to support themselves.

The City provides welfare benefits; shelters and supportive housing for the homeless; primary, emergency, psychiatric and other kinds of public health care; juvenile delinquency and dependency services including foster care; mental health counseling and suicide prevention; elder and nursing home care; and many other types of support for its neediest citizens. Discrimination, including sexual orientation discrimination, results in increased use of many such services. Youth and adults victimized by discrimination are more likely to become homeless, suffer mental health problems, and commit suicide. Adults and children in families that lack full government recognition and support are more likely to become dependent on government than those in marital families. And the State's denial of marriage to lesbians and gay men brands them as second-class citizens and invites other forms of discrimination against them. *In re Marriage Cases*, 43 Cal. 4th 757, 855 (2008)

Not surprisingly, San Francisco was one of the first localities in the nation to adopt legislation banning discrimination against lesbians and gay men. In 1972, the City prohibited such discrimination in employment by the City and entities that contracted with the City. *See* Stewart Decl., Exh. 12. In

1978, San Francisco enacted legislation prohibiting any San Francisco business from discriminating based on sexual orientation in regard to employment, housing and public accommodations. This legislation was enacted in response to complaints from the City's LGBT community about pervasive discrimination that imposed serious costs on the City and its citizens. *Id.* In the decades after these laws were passed, San Francisco's Human Rights Commission (HRC) held public hearings on many issues facing the LGBT community, such as economic discrimination. In 2000-2002, San Francisco further strengthened its anti-discrimination legislation to include discrimination in business.

San Francisco was the first major U.S. city to allow lesbian and gay couples to officially register their relationships. In 1982, the Board of Supervisors passed a domestic partner ordinance, but Mayor Feinstein vetoed it. *See* Stewart Decl., Exh. 12. After years of hearings and further documentation of the effect of such discrimination on families headed by same-sex couples, the Board again adopted a domestic partner ordinance, which Mayor Art Agnos signed in 1989. *Id*. However, before the ordinance took effect, religious organizations launched a referendum campaign and succeeded in convincing voters to repeal the ordinance. *Id*. But San Francisco voters then approved a new domestic partner measure, which took effect in 1991. In subsequent years, the City adopted laws to extend health and retirement benefits to domestic partners of its employees.

On behalf of the City, the City Attorney's Office has for the last two decades also actively litigated numerous cases concerning discrimination against lesbians and gay men, including cases about recognition of lesbian and gay relationships and families. A partial list includes:

- *Delaney v. Superior Fast Freight*, 14 Cal. App. 4th 590 (1993) (as intervenor, sought to defend S.F. sexual orientation anti-discrimination law against state preemption challenge);

- *Romer v. Evans*, 517 U.S. 620 (1996) (filed amicus brief on behalf of Cities of Atlanta, Baltimore, Boston, Chicago, Los Angeles, Madison, New York, Portland, San Francisco, and Seattle, and the National Institute of Municipal Law Officers);

- *Air Transp. Ass'n of America v. City & County of San Francisco*, 266 F.3d 1064 (9th Cir. 2001), and *S.D. Myers, Inc. v. City & County of San Francisco*, 253 F.3d 461 (9th Cir. 2001), litigated in N.D. Cal. and 9th Cir. 1997-2003 (defended against Commerce Clause and federal and state preemption challenges to S.F. ordinance requiring contractors to provide employees' spouses and domestic partners equal benefits);

- *American Family Ass'n v. City & County of San Francisco*, 277 F.3d 1114 (9th Cir. 2002), litigated in N.D. Cal. and 9th Cir. 1999-2002 (defended Board of Supervisors resolution condemning religious organizations' hate speech against gay people and actions encouraging gays to change their sexual orientation);

- *Sharon S. v. Superior Court*, 31 Cal. 4th 417 (2003) (as amicus, filed only brief to argue waiver theory ultimately adopted by the Court in upholding second-parent adoptions for same-sex couples);

- *Elisa B. v. Superior Court,* 37 Cal. 4th 108 (2005) (as amicus, authored brief on behalf of the California Association of Counties supporting county effort to establish parentage of child and support obligation by one of two lesbian mothers);

- *Evans v. City of Berkeley*, 38 Cal. 4th 1 (2006) (authored amicus brief on behalf of League of California Cities and California Association of Counties in support of City of Berkeley's refusal to continue subsidizing Sea Scouts with free berthing privileges because of its discrimination based on sexual orientation);

- *Catholic League for Religious & Civil Rights v. City & County of San Francisco*, 567 F.3d 595, litigated in N.D. Cal. and 9th Cir. 2007-2009 (defended Bd. of Sups. resolution condemning Catholic hierarchy's direction to local Catholic Charities to cease placing children for adoption in gay and lesbian homes and statement that such adoptions "do violence" to children);

- *Lockyer v. City & County of San Francisco*, 33 Cal. 4th 1055 (2004) (defended Mayor and County Clerk in original proceedings challenging issuance of marriage licenses to same-sex couples on ground that denial of marriage violated state Constitution);

- *In re Marriage Cases*, 43 Cal. 4th 757 (2008), litigated in S.F. Superior Ct., CA Ct. App., and CA Supreme Ct. (represented CCSF in challenge to marriage statutes on ground that exclusion of same-sex couples violated state Constitution's guarantees of equal protection, liberty and privacy);

- *City & County of San Francisco v. Horton*, 46 Cal. 4th 364 (2009) (represented group of California cities and counties in original writ action challenging Proposition 8 as an unconstitutional revision);

- *ProtectMarriage.com v. Bowen,* Case No. 09-00058 (E.D. Cal. 2009) (defending campaign disclosure requirements against challenge brought by Proposition 8 supporters).

A number of these cases have required the City to develop and submit evidence concerning the effects of discrimination on lesbians and gay men and their children. In particular, the City submitted a substantial record documenting the effects on lesbian and gay couples of denying equal spousal benefits in the *Air Transport Association* case. As discussed below, the City was also the only plaintiff to submit a record in the *Marriage Cases* on most of the factual issues this Court has identified.

### B. The Record Developed By The City And The Decision In The *Marriage Cases*

On March 11, 2004, the City filed in San Francisco Superior Court the lead case challenging the State's marriage statutes under the California Constitution's equality, liberty and privacy guarantees. *City and County of San Francisco v. State*, Case No. 429-539, Judicial Council Coordination Proceeding No. 4365 ("*Marriage Cases*"). Shortly thereafter, a group of couples and organizations represented by the National Center for Lesbian Rights, Lambda Legal Defense and Education Fund and the ACLU ("NCLR, et al.") filed a similar challenge. These two cases and four others (including two suits filed earlier against the City by organizations opposed to marriage equality) were coordinated and assigned to San Francisco Superior Court Judge Richard Kramer.

The City's position was that a full factual record was necessary and important. Specifically, the City urged the creation of a factual record on a number of subjects relevant to two main issues: 1) the factors determinant of suspect classification; and 2) rebuttal of the justifications proffered in opposition to marriage equality. The City was the only plaintiff advocating for and attempting to develop a full factual record in the *Marriage Cases*. In contrast, other parties advocating for marriage equality argued that the issues in the case were legal and that the only material facts were those establishing plaintiffs' standing. *See* Stewart Decl. ¶ 3.

Simply stated, the City advocated for a full record in the *Marriage Cases* for the same reason it believes such a record is important in this case:

> Legislative facts are commonly pertinent in litigation involving interpretation of statutes and/or the constitution. [citation omitted] Courts have, in varying contexts, been willing to derive such facts from a variety of sources, ranging from assumptions to the personal experience of the judge, from facts believed to be commonly known to published books and studies, and from judicially noticeable material to expert and lay declarations and testimony. In the context of a case like this one, of constitutional dimension, it is important that the fact-finding process with respect to legislative facts be as thoughtful, careful and judicious as it is with respect to adjudicative facts. Grounding facts material to a decision on *evidence* that is part of the *record*—as opposed to the court's own assumptions or beliefs or even its own research—promotes fairness of the decision-making process and the legitimacy of the Court's ultimate decision.

Stewart Decl. ¶ 4 & Exh. 1.

Although the trial court declined to hold a trial, it allowed parties to submit the written evidence they believed was necessary to the resolution of the cases. While other plaintiffs submitted

1  requests for judicial notice and declarations of same-sex couples and family members, only the City
2  submitted evidence and proposed findings on the strict scrutiny factors and claimed justifications for
3  the marriage exclusion. Stewart Decl. ¶¶ 5-8 & Exhs. 1-17.

In the *Marriage Cases*, the City invested considerable time and effort in developing a record on most of the very same matters this Court suggested in its June 30, 2009 Order ("Order") should be the subject of evidence in this action. The City researched the issues, consulted with and interviewed dozens of potential experts, retained twelve experts (including two City officials), and worked with those experts to develop declarations on the issues pertinent to the case. *See* Stewart Decl. ¶ 8. It also proffered seven lay witness declarations touching on some of these points. *Id.*

This Court's Order identified fourteen factual questions in four major areas to be resolved at trial: 1) whether sexual orientation is a suspect classification that should receive heightened scrutiny; 2) whether the asserted State interests in enforcing Proposition 8 can survive the present constitutional challenge; 3) whether Proposition 8 discriminates based on sexual orientation, gender, or both; and 4) whether Proposition 8 was passed with discriminatory intent. *See* Order at 6-9. Many of the expert declarations submitted by the City in the *Marriage Cases*, attached to Stewart Decl. ("SD") Exhibits 6-17[1], speak to the precise issues identified in this Court's Order, including:

- "[T]he history of discrimination gays and lesbians have faced" [Order at 7]. *See* Chauncey Decl., SD at Exh. 7.

---

[1] Relevant declarations include those from M.V. Lee Badgett, Ph.D., University of Massachusetts, Professor of Economics and Research Director of the Institute for Gay and Lesbian Strategic Studies, attached to Stewart Decl. as Exhibit 6; George Chauncey, Ph.D., University of Chicago and Yale University, Professor of History, attached to Stewart Decl. as Exhibit 7; Nancy F. Cott, Ph.D., Harvard University, Professor of History, attached to Stewart Decl. as Exhibit 8; Roy Douglas Elliott, Law Society of Upper Canada, attached to Stewart Decl. as Exhibit 9; Dr. Robert Galatzer-Levy, M.D., Child and Adolescent Psychiatrist and University of Chicago Lecturer in Psychiatry attached to Stewart Decl. as Exhibit 10; David Theo Goldberg, Ph.D., Director of University of California, system-wide Humanities Research Institute, attached to Stewart Decl. as Exhibit 11; Cynthia Goldstein, attached to Stewart Decl. as Exhibit 12; Ed Harrington, CPA, Controller for the City and County of San Francisco (1991-2008), currently General Manager of the San Francisco Public Utilities Commission, attached to Stewart Decl. as Exhibit 13; Gregory M. Herek, Ph.D., University of California, Davis, Professor of Psychology, attached to Stewart Decl. as Exhibit 14; Randall Kennedy, J.D., Harvard University Professor of Law, attached to Stewart Decl. as Exhibit 15; Steven Nock, Ph.D., University of Virginia Professor of Sociology, co-founder of the Center for Children, Families and the Law, attached to Stewart Decl. as Exhibit 16; and Dr. Ellen Perrin, M.D., MA, Tufts-New England Medical Center Professor of Pediatrics and Director of the Division of Developmental-Behavioral Pediatrics and the Center for Children with Special Needs, attached to Stewart Decl. as Exhibit 17.

- "[T]he relative political power of gays and lesbians, including successes of both pro-gay and anti-gay legislation" [Order at 7]. *See* Chauncey Decl., SD at Exh. 7; Goldstein Decls., SD at Exh. 12; Harrington Decl., SD at Exh. 13.

- "[T]he . . . historical context [of Proposition 8] and the conditions existing prior to its enactment" [Order at 9] *See* Chauncey Decl., SD at Exh. 7; Badgett Decl., SD at Exh. 6; *see also* Elliot Decl., SC at Exh. 9; Kennedy Decl., SD at Exh. 15; Goldberg Decl., SD at Exh. 11.

- "[W]hether the characteristics defining gays and lesbians as a class might in any way affect their ability to contribute to society" [Order at 7] *See* Badgett Decl., SD at Exh. 6; Galatzer-Levy Decls., SD at Exh. 10; Herek Decls., SD at Exh. 14; Perrin Decl., SD at Exh. 17.

- "[W]hether sexual orientation can be changed, and if so, whether gays and lesbians should be encouraged to change it" [Order at 7] *See* Galatzer-Levy Decls., SD at Exh. 10; Herek Decls., SD at Exh. 14.

- "[W]hether a married mother and father provide the optimal child-rearing environment and whether excluding same-sex couples from marriage promotes this environment" [Order at 7] *See* Galatzer-Levy Decls., SD at Exh. 10; Herek Decls., SD at Exh. 14; Perrin Decl., SD at Exh. 17.

- "[W]hether the availability of opposite-sex marriage is a meaningful option for gays and lesbians" [Order at 8] *See* Herek Decls., SD at Exh. 14; Galatzer-Levy Decls., SD at Exh. 10.

- "[T]he history of marriage and whether and why its confines may have evolved over time" [Order at 7] *See* Cott Decl., SD at Exh. 8; Nock Decls., SD at Exh. 16; Kennedy Decl., SD at Exh. 15; Elliot Decl., SC at Exh. 9.

- "[T]he differences in actual practice of registered domestic partnerships, civil unions and marriage, including whether married couples are treated differently from domestic partners in governmental and non-governmental contexts" [Order at 9] *See* Herek Decls., SD at Exh. 14; Nock Decls., SD at Exh. 16; Kennedy Decl., SD at Exh. 15; Goldberg Decl., SD at Exh. 11.

The City proffered these and other declarations both in support of its petition for writ of mandate in the Superior Court and in response to the opposing parties' motion for summary judgment.[2] These declarations are relevant to the factual issues necessary for the Court to decide the instant action, and the City is well able to further develop this evidence for any trial necessary on these disputed issues.

---

[2] The Alliance Defense Fund and Liberty Counsel, who represent the intervenors and proposed intervenors supporting Proposition 8 in this case, likewise represented the groups opposing the plaintiffs in the state *Marriage Cases.* The City is thus familiar with and ready to respond to the evidence those intervenors filed in the *Marriage Cases* and are likely to proffer in this case.

1   Ultimately, the other plaintiffs in the *Marriage Cases* and the groups opposing marriage
2 equality agreed, over the City's objection, that the Court could decide the issues presented as a matter
3 of law without considering the evidence submitted.  The Court therefore declined to consider the City's
4 or the opposing parties' evidence and declined to make factual findings before rendering a decision.
5 The evidence proffered by the City did become relevant in the Court of Appeal, where the majority
6 initially opined that it could not hold that sexual orientation is a suspect classification because there
7 was no evidence presented on the factors to support such a determination.  After the City petitioned for
8 rehearing on the ground that the City had proffered evidence pertaining to those factors in the trial
9 court, the Court amended its opinion to state that it could not hold sexual orientation was a suspect
10 classification because the trial court had made no *findings* on the factors to support it.  *In re Marriage*
11 *Cases*, 49 Cal. Rptr. 3d 675, 713, previously published at 143 Cal. App. 4th 873 (2006), as modified
12 on denial of rehearing.

13   The City and other plaintiffs sought review of the Court of Appeal's ruling and ultimately
14 prevailed on May 15, 2008, when the California Supreme Court decided that California's
15 constitutional guarantees of equal protection, privacy, and due process required that California permit
16 same-sex couples full access to the officially recognized, cherished institution of civil marriage.  *In re*
17 *Marriage Cases*, 43 Cal. 4th 757 (2008).

### C. The City's Substantive Expertise And Trial Experience

19   The City's efforts to reduce and eliminate sexual orientation discrimination over the last forty
20 years have led it to develop considerable substantive expertise on the effects of such discrimination,
21 including the denial of marriage to same-sex couples and their children.  Indeed, two of the expert
22 declarations the City proffered in the *Marriage Cases* were the declarations of City officials with
23 knowledge of the history of bias and San Francisco's efforts to eliminate it, as well as on the increased
24 need for government supported social services resulting from the failure of the government to
25 recognize same-sex couples' family relationships as marriages.  These and other City officials who
26 provide health and welfare services that focus on the LGBT community were and will be resources
27 that the City can lend to the development of a full record in these cases.

1     The City Attorney's Office has substantial expertise on the issues before this Court as a result of its history of litigating cases involving sexual orientation discrimination, and in particular the work it did in *American Transport Association* and the *Marriage Cases*. In addition, the City Attorney's Office has extensive trial experience in the federal and state courts in California, including in this Court. San Francisco's deputy city attorneys try diverse cases brought by and against the City, and the Office tries between five and ten cases to judgment each year. In the last five years alone, this Office has tried cases before many of the Judges on this Court, including one or multiple trials before: Judge Alsup, Judge Breyer, Judge Chesney, Judge W. Fletcher (by designation), Judge Hamilton, Judge Illston, Judge Jenkins, Judge Laporte, Judge Larson, Judge Spero, and Judge Wilken. The team of deputy city attorneys who will participate in this litigation, if the City is permitted to intervene, includes attorneys who worked on the *Air Transport Association* and *Marriage Cases*, and attorneys who have extensive trial experience.

### D. Proposition 8

While the City was actively litigating the *Marriage Cases* before the California Supreme Court, the petition to place Proposition 8 on the ballot was drafted and circulated. *Strauss v. Horton*, 46 Cal.4th 364, 395 (2009).

After a slim majority of California voters approved Proposition 8 on November 4, 2008, the City filed an original writ petition directly in the California Supreme Court (*City & County of San Francisco v. Horton*), which was joined with *Strauss v. Horton* and a third similar petition, challenging the procedural propriety of Proposition 8 as a valid amendment to the California Constitution. On May 26, 2009, the California Supreme Court decided those cases, *see Strauss v. Horton*, *supra*, holding that Proposition 8 was a valid amendment to California's Constitution. It *did not* overrule *In re Marriage Cases*.

### E. The Federal Lawsuit

On May 22, 2009, Plaintiffs Kristin M. Perry, Sandra B. Stier, Paul T. Katami, and Jeffrey J. Zarrillo (collectively, "Plaintiffs") filed a complaint in this Court, alleging that Proposition 8 violates the federal Constitution's due process and equal protection guarantees. Plaintiffs are ably represented

1  by experienced attorneys from the law firms of Gibson, Dunn & Crutcher LLP and Boies, Schiller &
2  Flexner LLP.

3       After the Plaintiffs filed a motion for preliminary injunction on May 27, 2009, the proponents
4  of Proposition 8 filed a motion to intervene in this action.  The parties did not oppose the motion, and
5  the Court granted the proponents leave to intervene.  The City filed an amicus brief on June 18, 2009,
6  supporting Plaintiffs' motion for preliminary injunction and further requesting that, if the Court denied
7  the injunction, it permit further development of a factual record in this case.  *See* Brief of City &
8  County of San Francisco as *Amicus Curiae* Supporting Plaintiffs*, Perry v. Schwarzenegger*, 09-CV-
9  2292,  Docket No. 53 (filed on June 18, 2009).

10       The Court issued its Order on June 30, 2009, continuing the motion for preliminary injunction,
11  and setting forth a plan for trial on various factual issues, the development of which are necessary in
12  order for the Court to make a final determination on the merits in this action. On July 8, 2009,
13  attorneys for groups Our Family Coalition, Lavender Seniors of the East Bay, and Parents Families
14  and Friends of Lesbians and Gays (collectively, "Groups") moved to intervene as party-plaintiffs.

15       On July 13, 2009, the Court issued an order setting a timetable for all parties seeking to
16  intervene in this action, setting July 24, 2009 as the deadline for filing of a motion to intervene.

17  **III.    ARGUMENT**

18       The City requests that the Court exercise its discretion to permit the City to intervene.  If
19  allowed to intervene as a fully-participating party, the City will add a unique local government
20  perspective, employ its trial expertise to assist the Court in building a full trial record in this action,
21  and use its recent experience creating a factual record in the *Marriage Cases* to streamline the
22  development of such trial evidence.

23       Fed. R. Civ. P. 24(b) governs permissive intervention, giving the Court wide discretion to
24  permit a party to intervene when three threshold conditions are met: 1) the motion is timely; 2) the
25  applicant's claim or defense and the main action have a question of law or fact in common; and 3) the
26  movant shows an independent ground for jurisdiction.  *Greene v. United States*, 996 F.2d 973, 978
27  (9th Cir. 1993).

28

In considering a motion for permissive intervention, the Court may consider additional factors such as:

> [T]he nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case …. whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented. *Spangler v. Pasadena City Bd. of Education*, 552 F.2d 1326, 1329 (9th Cir. 1977) (*Spangler*).

The district court's discretion to grant or deny permissive intervention is broad. *See Spangler*, 552 F.2d at 1329 (citing *United States v. Board of School Commissioners*, 466 F.2d 573, 576 (9th Cir. 1972)). For example, unlike intervention as of right, a legally protectable interest is not required for permissive intervention. *See Employee Staffing Services, Inc. v. Aubry*, 20 F.3d 1038, 1042 (9th Cir. 1994) (citing *S.E.C. v. United States Realty & Improvement Co.*, 310 U.S. 434, 459 (1940) (rule 24(b) "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation")).

The City meets all three threshold factors for permissive intervention. The City's motion to intervene is timely: it hews to the timeline provided by the Court for the filing of motions to intervene in its July 13, 2009 order and was filed less than a month after the hearing on Plaintiffs' Motion for Preliminary Injunction. As is evident from the City's proposed Complaint in Intervention, the City shares both questions of fact and law with Plaintiffs, including many of the factual issues outlined by the Court in its June 30, 2009 Order. *See* Stewart Decl., Exh. 18. The Court has jurisdiction over the claims raised by both Plaintiffs and the City. 28 U.S.C. § 1331.

The factors outlined by the Ninth Circuit in *Spangler* also weigh heavily in favor of permitting intervention. The City, as a local government entity charged with enforcing Proposition 8 against its LGBT citizens, has a significant and unique interest in this action—both because it is compelled to enforce a constitutionally infirm law and because it bears the financial and public health consequences of discrimination against lesbians and gay men, including the discrimination mandated by Proposition 8.

The City has not only a financial interest in licensing and performing marriages of same-sex couples and in the tax revenues that flow from weddings held in the City, but also has an interest in preventing social, mental health, and other harms suffered by its LGBT citizens. Spouses and children in families who are not provided the full governmental and social support that marriage brings are more likely to become reliant on the government social safety net when a relationship breaks down, and local governments are the primary providers of the public health and welfare safety net. *See* Stewart Decl., Exh. 13. Studies demonstrate that sexual-orientation discrimination, including denying marriage to same-sex couples, costs governments tens to hundreds of millions of dollars each year. Finally, the City has an interest in acting on behalf of its citizens, including its substantial LGBT population, to prevent unlawful discrimination and to advocate for equality. The City is resolute in securing these protections for its citizens; doing so not only benefits its LGBT population, but the polity as a whole. For these reasons, the City offers a unique perspective here, albeit one that is closely aligned with that of the Plaintiffs in this action.

Further, neither Alameda County nor Los Angeles County have spoken to the constitutionality of Proposition 8. While it is understandable that local governments sued by Plaintiffs for enforcing Proposition 8 might be reluctant to speak as to the constitutionality of that measure, it remains that counties doubting the constitutionality of Proposition 8 are not adequately represented by the counties who are already parties before this Court.

The City can also significantly contribute to full development of factual issues in this action. As discussed above in section IIA, the City has a decades-long history of involvement in LGBT litigation and legislation, and over five years of experience in litigating issues particular to marriage in California. Most importantly, the City was the sole party to submit a factual record in the *Marriage Cases* on the issues highlighted by this Court in its June 30, 3009 Order. *See supra*, section IIB. The City's experience in developing a factual record on numerous issues—including, but not limited to, the history of discrimination faced by gays and lesbians, whether sexual orientation can or should be changed, the history of marriage, the context and history surrounding the Proposition 8 campaign, and the effect on children of being raised by same-sex parents—will meaningfully aid the factual

development of this case. The City is committed to providing that record through a full and fair trial in this case. *See* Stewart Decl., ¶ 23.

Nor will the City's intervention in this action prolong or unduly delay the litigation. The City has endeavored to build a strong and positive relationship with the Plaintiffs' counsel in this case from the outset, responding swiftly and affirmatively to requests for information and amicus support. *See* Stewart Decl. ¶ 23. The City's in-house expertise and its ongoing relationships with prominent medical and social scientists and other experts with whom it developed evidence in the *Marriage Cases* will also streamline the process of readying the evidence for any trial on the issues pinpointed by the Court. The City has already done much of the work required to identify, interview and build relationships with individuals who have relevant expertise, and that recent work can be leveraged in this litigation. Finally, the San Francisco City Attorney's Office has tried dozens of cases in the past few years (including many trials in the Northern District of California), is familiar with developing factual records for trials in federal court, and is able to efficiently prepare for trial.

## IV. CONCLUSION

For the above reasons, the City and County of San Francisco respectfully requests that the Court permit it to intervene in this action. The City, as a local government forced to enforce an unconstitutional law that demands that it deny marriage licenses to same-sex couples, is not represented by any party to the instant action. The City's historical involvement and significant experience in litigating for LGBT equality, its leading role in developing expert testimony on issues

//

//

1 necessary for deciding this case, and its interest in preventing harm to the public fisc and
2 constitutional injury to its citizens all weigh in favor of the City's intervention.

Dated: July 23, 2009
DENNIS J. HERRERA
City Attorney
THERESE M. STEWART
Chief Deputy City Attorney
DANNY CHOU
Chief of Complex & Special Litigation
VINCE CHHABRIA
ERIN BERNSTEIN
CHRISTINE VAN AKEN
MOLLIE M. LEE
Deputy City Attorneys


By:_____/s/_____
    THERESE M. STEWART

Attorneys for Proposed Intervenor
CITY AND COUNTY OF SAN FRANCISCO