# EXHIBIT 16B

DENNIS J. HERRERA, State Bar #139669
City Attorney
THERESE M. STEWART, State Bar #104930
Chief Deputy City Attorney
WAYNE K. SNODGRASS, State Bar #148137
JIM EMERY, State Bar#153630
JULIA M.C. FRIEDLANDER, State Bar#165767
YVONNE MERE, State Bar #173594
KATHLEEN S. MORRIS, State Bar #196672
SHERRI SOKELAND KAISER, State Bar #197986
GINA M. ROCCANOVA, State Bar #201594
NELI PALMA, State Bar #203374
PHILIP LEIDER, State Bar #229751
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:    (415) 554-4700
Facsimile:    (415) 554-4747

BOBBIE J. WILSON, State Bar #147317
PAMELA K. FULMER, State Bar #154736
AMY E. MARGOLIN, State Bar #168192
SARAH M. KING, State Bar #189621
KEVIN H. LEWIS, State Bar #197421
CEIDE ZAPPARONI, State Bar #200708
JEFFREY T. NORBERG, State Bar # 215087
HOWARD RICE NEMEROVSKI CANADY
FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4024
Telephone:    (415) 434-1600
Facsimile: (415) 217-5910

Attorneys for Plaintiff
CITY AND COUNTY OF SAN FRANCISCO

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SAN FRANCISCO
UNLIMITED CIVIL JURISDICTION

| | |
|---|---|
| Coordination Proceeding<br>Special Title (Rule 1550(b))<br>**MARRIAGE CASES**<br><br>**RANDY THOMASSON**, et al.,<br><br>Petitioners/Plaintiffs,<br><br>vs.<br><br>**GAVIN NEWSOM**, et al.,<br><br>Respondents/Defendants. | JUDICIAL COUNCIL COORDINATION PROCEEDING NO. 4365<br><br>Case No. 428-794<br>(Consolidated with Case No. 503-943)<br><br>**DECLARATION OF STEVEN L. NOCK IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |
| **PROPOSITION 22 LEGAL DEFENSE AND EDUCATION FUND**, et al.,<br><br>Petitioners/Plaintiffs,<br><br>vs.<br><br>**CITY AND COUNTY OF SAN FRANCISCO**, et al.,<br><br>Respondents/Defendants | Date Action Filed:   March 11, 2004<br>Trial Date:            Not set |

1

DECL NOCK IN OPP PLTFFS MOT SUM JDMT; PROCEEDING NO. 4365

I, STEVEN L. NOCK, declare as follows:

I am a Professor of Sociology at the University of Virginia. I set forth my qualifications in the earlier declaration I filed in this matter.

My research has indicated that encouraging marriage creates a social good. This is not only because it encourages those who wish to procreate to get married, but that even for those who do not procreate, marriage as an institution provides significant benefits to the two persons in the marriage and to society as a whole.

1. I have reviewed the declaration of Maggie Gallagher submitted in this matter. She does not base her declaration on any studies that she herself has conducted but rather relies on the results of others.

2. I agree generally that valid social science studies have shown that children from intact families have better outcomes than children from other types of family structures. These studies show that children that are either born into a single parent home, or are children of divorced parents who either do or do not remarry, or children of a heterosexual couple who cohabitate and do not marry, have worse outcomes than those from intact, married families. These studies cannot, however, compare the relevant factors necessary to make a conclusion regarding the potential outcome for children raised in an intact, married family that has two same sex parents. Because marriage of same sex couples in the United States is an extremely recent and limited phenomena, we have yet to design a demographic or sociological study that would address the effect of marriage on same sex couples who marry and their children (or, for that matter, the effect of marriage of same sex couples on marriage of heterosexual couples) in the United States.

3. In 2002, I conducted a study to examine the correlation of kinship on the outcomes of children. I published an article on a study that examined the affect of "kin care," which is a system whereby the biological kin of a child raise the child rather than having the child placed in foster care and/or sent out for adoption by non-kin. (Brinig and Nock, How Much Does Legal Status Matter: Adoption by Kin Care Givers, Family Law Quarterly, Vol. 36, No. 3, Fall 2002.) As part of that study of approximately 18,000 children, I examined and compared the outcomes for children who had been adopted (i.e., were not biologically related to the one or two parents

2

with whom they lived) with the outcome of children living with one or two biological parents.. We also examined children living in foster families, including foster families where the adults and foster children were related (kin). We compared well-being issues such as perceived morbidity (i.e., the chances of dying young), juvenile delinquency, depression, and drug use. We discovered that children living with their adopted parent or parents fared about equally with those living with a biological parent or parents. Both fared better than those living in foster homes, including those foster homes where the foster parents were related to the foster children (although this pattern was not found for Black children). This study suggests that adoption may serve as well as living with biological parents in matters such as those we studied in this research.

4.  I have also reviewed the declaration of Allan Carlson, an historian who comments on various aspects of marriage. He does not cite any studies in his declaration, so I cannot comment on the scientific validity of any studies upon which he relies.

5.  I have also reviewed the declaration of George Rekers, who is a psychologist, not a sociologist. He relies in part on an article by Sotirios Sarantakos, Children in Three Contexts: Family, Education and Social Development, Children Australia, Vol. 21, No. 2, 1996, pp. 23-31. I have reviewed that article, and believe it to be scientifically flawed for a number of reasons. First, as Sarantakos noted, the sample is quite small. Second, the method Sarantakos used for sampling is a method known "snowball sampling." Snowball sampling is an unreliable sampling method. In this type of sample, the subjects are identified when one person in the study identifies someone they know, who identifies another they know, and so on. Studies based on these types of sampling are biased in unknown ways. Also, people who are well known are more likely to become part of the sample than those who are less well known, and thus tend to be different. Furthermore, this study specifically states all of the children with homosexual parents used in the study were "born in a previous relationship (marriage, cohabitation, or unmarried motherhood)," and thus, unlike the married or cohabiting couples, they are not born and raised

continually by two parents but rather come from divorced families. I do not believe that this study can be used to generalize about children born into a homosexual relationship.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct. Signed this 24 day of November, in Charlottesville Virginia

_____
STEVEN L. NOCK

4

INSERT 1 LINE ONLY ABBREV DOC NAME: PROCEEDING NO. 4365