# EXHIBIT 18

DENNIS J. HERRERA, State Bar #139669
City Attorney
THERESE M. STEWART, State Bar #104930
Chief Deputy City Attorney
DANNY CHOU, State Bar #180240
Chief of Complex and Special Litigation
VINCE CHHABRIA, State Bar #208557
ERIN BERNSTEIN, State Bar #231539
CHRISTINE VAN AKEN, State Bar #241755
MOLLIE M. LEE, State Bar #251404
Deputy City Attorneys
City Hall, Room 234
One Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:    (415) 554-4708
Facsimile:    (415) 554-4699

Attorneys for Plaintiff-Intervenor
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO,<br><br>Plaintiffs,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the California Department of Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; and DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles,<br><br>Defendants, | Case No. 09-CV-2292 VRW<br><br>**[PROPOSED] COMPLAINT IN INTERVENTION FOR DECLARATORY, INJUNCTIVE OR OTHER RELIEF**<br><br>Hearing Date:  August 19, 2009<br>Time:         10:00 a.m.<br>Place:        Courtroom 6, 17th Fl.,<br>              450 Golden Gate Ave.<br><br>Trial Date:   Not set |

[PROPOSED] COMPLAINT
CASE NO. 09-CV-2292 VRW

1

and

PROPOSITION 8 OFFICIAL PROPONENTS DENNIS HOLLINGSWORTH, GAIL J. KNIGHT, MARTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM, and MARK A. JANSSON; and PROTECTMARRIAGE.COM – YES ON 8, A PROJECT OF CALIFORNIA RENEWAL,

    Defendant-Intervenors.

CITY AND COUNTY OF SAN FRANCISCO,

    Plaintiff-Intervenor

vs.

ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the California Department of Public Health and State Registrar of Vital Statistics; and LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health,

    Defendants.

Plaintiff-Intervenor the City and County of San Francisco complain of Defendants and allege:

## INTRODUCTION

1. Proposition 8 requires San Francisco to violate the federal constitutional rights of its lesbian and gay citizens by denying them marriage licenses on the basis of their sexual orientation and gender. Before Proposition 8 was adopted, California granted same-sex couples the same right to marry as heterosexual couples, as required by the California Supreme Court's decision in *In re Marriage Cases*, 43 Cal. 4th 757 (2008). But in November 2008, Proposition 8 amended the California Constitution to state that "[o]nly a marriage between a man and a woman is valid or recognized in California." Cal. Const. Art. I § 7.5 ("Prop. 8"). By eliminating the right of same-sex couples to marry, Prop. 8 denies lesbians and gay men the basic liberties and equal protection of the law guaranteed by the Fourteenth Amendment to the United States Constitution.

2. For these reasons, Plaintiff-Intervenor seeks declaratory and injunctive relief against Prop. 8.

## JURISDICTION AND VENUE

3. Plaintiff-Intervenor adopts and incorporates by reference Plaintiffs' statement of Jurisdiction and Venue, Docket 1-1 at ¶¶ 3-4.

4. This action arises under the Fourteenth Amendment to the United States Constitution and Plaintiff-Intervenor seeks declaratory relief under 28 U.S.C. § 2201 and any further relief that may be proper under 28 U.S.C § 2202.

## NATURE OF DISPUTE

5. This action pursuant to 28 U.S.C. §§ 2201-02 and 42 U.S.C. § 1983 seeks: 1) a declaration that Prop. 8, which denies gay and lesbian individuals the opportunity to marry civilly and enter into the same officially sanctioned family relationship with their loved ones as heterosexual individuals, is unconstitutional under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution; and 2) a permanent injunction preventing Defendants from enforcing Prop. 8.

6. Plaintiff-Intervenor believes it is clearly established that California Family Code §§ 300 and 308.5, which purport to restrict civil marriage in California to opposite-sex couples, and California Family Code § 301, which also could be read to impose such a restriction, have no continuing legal force after the California Supreme Court's decision in *In re Marriage Cases*, 43 Cal. 4th 757 (2008). But in an abundance of caution, Plaintiff-Intervenor seeks: 1) a declaration that California Family Code §§ 300 and 308.5, which purport to restrict civil marriage in California to opposite-sex couples, and California Family Code § 301, which also could be read to impose such a restriction, are unconstitutional under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution; and 2) a permanent injunction preventing Defendants from enforcing those provisions against Plaintiffs.

7. Plaintiff-Intervenor the City and County of San Francisco is a unit of local government with the responsibility to issue civil marriage licenses and to solemnize and record marriages. Prop. 8

requires San Francisco to violate the federal constitutional rights of its gay and lesbian citizens – and other gay and lesbian couples – by denying them the marriage licenses that it issues daily to heterosexual couples. Because of Prop. 8, San Francisco must provide health care, welfare benefits, and other social services to citizens whose mental and physical health suffers because of discrimination and to citizens who become dependent on public resources when families disintegrate. Prop. 8 also deprives San Francisco of revenue that would be generated by the weddings of same-sex couples and associated tourism.

8. To enforce the rights afforded by the United States Constitution, Plaintiff-Intervenor brings this suit under 28 U.S.C. §§ 2201-02 and 42 U.S.C. § 1983 for declaratory and injunctive relief against the enforcement of Prop. 8. Plaintiff-Intervenor also seeks to recover all its attorneys' fees, costs, and expenses incurred in this action and any other relief that this Court may order.

**THE PARTIES**

9. Defendant Arnold Schwarzenegger is the governor of the State of California. He is sued in his official capacity. As the chief executive officer of the State, the Governor is responsible for ensuring that the laws of the State are properly enforced, subject to any limits imposed by the Constitution and laws of the United States. The Governor maintains an office in San Francisco.

10. Defendant Edmund G. Brown, Jr., is the Attorney General of the State of California. He is sued in his official capacity. As the chief legal officer of the State, the Attorney General has the duty to see that the laws of the State are uniformly and adequately enforced, subject to his duty to uphold the Constitution and laws of the United States. The Attorney General maintains offices in Oakland and San Francisco.

11. Defendant Mark B. Horton is the Director of the California Department of Public Health and, as such, is the State Registrar of Vital Statistics of the State of California. He is sued in his official capacity. The Director of the California Department of Public Health is responsible for prescribing and furnishing the forms for the application for license to marry, the certificate of registry of marriage including the license to marry, and the marriage certificate. He is also responsible for instructing and supervising local registrars in the use of these forms.

[PROPOSED] COMPLAINT
CASE NO. 09-CV-2292 VRW

4

12. Defendant Linette Scott is the Deputy Director of Health Information & Strategic Planning for the California Department of Public Health. She is sued in her official capacity. On information and belief, Scott reports to Defendant Horton and is the California Department of Public Health official responsible for prescribing and furnishing the forms for the application for license to marry, the certificate of registry of marriage, and the marriage certificate.

13. Plaintiff-Intervenor the City and County of San Francisco is a charter city and county organized and existing under the Constitution and laws of the State of California. San Francisco is responsible for issuing marriage licenses, performing civil marriage ceremonies, and maintaining vital records of marriages.

14. Defendants-Intervenors Dennis Hollingsworth, Gail J. Knight, Martin F. Gutierrez, Hak-Shing William Tam, and Mark A. Jansson are the official proponents of Prop. 8 under California law. Defendant-Intervenor ProtectMarriage.com – Yes on 8, a Project of California Renewal is a "primarily formed ballot measure committee" under California law and was established to support Proposition 8. The Court granted Defendants-Intervernors' motion to intervene in this action before this Complaint was filed.

## FACTS

15. Plaintiff-Intervenor adopts and incorporates by reference Plaintiffs' statement of facts, Docket 1-1 at ¶¶ 20-36.

16. Prop. 8 requires San Francisco to violate the federal constitutional rights of lesbians and gay men by denying them the marriage licenses that it daily issues to heterosexual couples. Under California state law, city and county officials may not decline to enforce statutory restrictions on marriage until a court holds them unconstitutional.

17. Denying same-sex couples the right to marry imposes significant harms on lesbian and gay individuals, their families, and their communities. When the State excludes same-sex couples from the institution of marriage, San Francisco must respond to the financial and public health consequences of this discrimination.

18. San Francisco provides its neediest citizens with welfare benefits; shelters and supportive housing for the homeless; primary, emergency, psychiatric and other kinds of public health

care; juvenile delinquency and dependency services including foster care; nursing home care and other types of support. Discrimination, including sexual orientation discrimination, results in increased use of many such services.

19. San Francisco bears the financial burden of providing health care, welfare benefits, and other social services to adults and children who become dependent on public resources when a relationship breaks down. By denying same-sex couples the right to marry, Prop. 8 makes it less likely that such couples will formalize their relationships in a way that imposes obligations of support upon which adults and children may rely. Studies show that same-sex couples are significantly less likely to enter into domestic partnerships and civil unions, which lack the full social and governmental sanction and status of marriage, than they are to enter into marriage. Notwithstanding California's domestic partnership law, its denial of marriage to same-sex couples increases the likelihood that San Francisco's citizens will depend on local health and welfare programs.

20. The State's separate and unequal scheme for recognizing same-sex relationships also sends a message to the world that in the State's eyes, lesbians and gay men are unequal to other citizens. This message was evidenced by an increase in anti-gay violence during the Prop. 8 campaign and after its passage.

21. San Francisco bears the financial burden of providing health care, welfare benefits and other social services to adults and youth whose physical or mental health suffers because of discrimination, bias, bullying, and violence targeted at lesbians and gay men. Negative health consequences of discrimination – especially officially sanctioned discrimination like Prop. 8 and the negative message it sends – include suicide, depression and substance abuse, injuries from hate crimes, and homelessness. By denying same-sex couples the right to marry, Prop. 8 harms lesbian and gay individuals by branding them with a mark of inferiority. This directly injures the mental health of lesbian and gay individuals. State-sanctioned discrimination also encourages private discrimination and increases the likelihood that lesbian and gay individuals will be subject to bias, bullying and violence on the basis of their sexual orientation. This increases the likelihood that San Francisco will be required to provide health care, welfare benefits and other social services to its citizens.

[PROPOSED] COMPLAINT                                6
CASE NO. 09-CV-2292 VRW

22. Between June 16, 2008, and November 4, 2008, San Francisco issued thousands of marriage licenses to same-sex couples. San Francisco benefitted from fees, taxes and other revenue generated by the weddings of same-sex couples and tourism associated with those weddings. This revenue includes fees for issuing and recording licenses and solemnizing marriages, fees for rental of public buildings, parking fees, sales tax, hotel tax, airport revenues, and payroll tax for hotel and restaurant workers.

23. Prop. 8 deprives San Francisco of the revenue that would be generated by the weddings of same-sex couples in San Francisco.

24. Prop. 8 stunts economic growth in San Francisco by making it more difficult for San Francisco employers to recruit and retain talented employees, who may instead choose to live in states that provide full marriage equality such as Maine, New Hampshire, Massachusetts, Vermont and Iowa. This reduces San Francisco's tax base and deprives San Francisco of revenue.

25. There is a long history of public and private discrimination against lesbians and gay men. This discrimination includes unconstitutional criminal penalties for private sexual conduct between consenting adults, hate crimes and harassment, public and private discrimination in employment, and laws stripping lesbians and gay men of rights afforded to all other citizens.

26. Sexual orientation bears no relation to an individual's ability to contribute to society.

27. The vast majority of people experience little or no choice about their sexual orientation, which cannot be changed readily, if at all. Attempts to change sexual orientation often cause serious harm.

28. Although lesbians and gay men have made significant advances, they lack the political power to ensure protection of their rights through the political process. In 1999, the California Legislature passed domestic partnership legislation, 1999 Cal. Stats. ch. 588, § 2, and subsequently expanded the rights and responsibilities of domestic partnership, 2003 Cal. Stats. ch. 421, § 1. Despite this progress in achieving a measure of formal recognition for same-sex relationships, the initiative process has been used to deny same-sex couples the full rights and dignity of marriage. Voters adopted Proposition 22 ("Prop. 22") in 2000, which stated that "[o]nly marriage between a man and a woman is valid or recognized in California." Cal. Fam. Code § 308.5. In 2008 the California

Supreme Court held that Prop. 22 violated the privacy, due process, and equal protection guarantees of the California Constitution. *In re Marriage Cases*, 43 Cal. 4th 757 (2008). But the voters responded by adopting Prop. 8, which amended the California Constitution to selectively repeal – for lesbians and gay men only – a portion of those rights protected by the privacy, due process and equal protection guarantees of the state constitution.

29. The right of two consenting adults to marry is deeply rooted in the history and tradition of this Nation.

30. The definition and understanding of marriage in California have evolved significantly over time. These changes have not destroyed marriage but have allowed it to continue to be relevant and remain an esteemed institution despite significant cultural change.

31. Excluding same-sex couples from marriage does not lead to increased stability in marriages between opposite-sex couples. Permitting same-sex couples to marry does not destabilize the marriages of opposite-sex couples.

32. Excluding same-sex couples from marriage does not optimize the child-rearing environment of married opposite-sex couples.

33. California recognizes that lesbians and gay men have the right to form state-sanctioned relationships of mutual caring and support and have the right and ability to raise children. In 1999, the California Legislature created the status of registered domestic partnership and defined "domestic partners" as "two adults who have chosen to share one another's lives in an intimate and committed relationship of mutual caring." Cal. Fam. Code § 297(a). In 2003 the Legislature adopted AB 205, which extended to registered domestic partners additional rights, benefits and responsibilities that are given to married spouses under California law. The Legislature found that "[e]xpanding the rights and creating responsibilities of registered domestic partners would further California's interests in promoting family relationships and protecting family members during life crises." 2003 Cal. Stats. ch. 421, § 1(b). California also treats lesbian and gay men as capable parents equal to heterosexual individuals. Cal. Welf. & Inst. Code §§ 16001.9(a)(23); 2003Cal. Stats. ch. 331; Cal. Fam. Code §§ 8600, 9000(b).

34. The development of California's ban on permitting same-sex couples to marry reflects a history of animus and continued animus towards lesbians and gay men.

35. Denying same-sex couples the right to marry meaningfully restricts options available to lesbians and gay men. Marriage to opposite-sex partners is not a meaningful option for lesbians and gay men.

36. Denying same-sex couples the right to marry does not meaningfully restrict options available to heterosexuals.

37. Requiring one man and one woman in marriage promotes stereotypical gender roles. The idea that men and women should or necessarily do fulfill distinct roles in marriage, based on their gender, is premised on gender stereotypes that in other contexts have long been rejected as an illegitimate basis for legal classifications.

38. Marriage is not now, and has never in this State been, limited to those who are capable of procreating. The State has never established as a legal requirement for marriage that the members of the couple be fertile, of child-bearing age, physically or mentally healthy or intent on having or raising children.

39. Insofar as same-sex couples employ assisted reproduction or adoption or foster parenting to bring children into their lives, the State freely permits and encourages them to do so in the form of laws that allow such methods of reproduction and permit lesbians and gay men to be foster parents and to adopt children. In these respects, same-sex couples are indistinguishable from the many opposite-sex couples in California who use these same methods to bring children into their lives to love and raise as their own. The only difference between these couples is that same-sex couples cannot marry and they and their children therefore do not enjoy all the social and other benefits that the title and stature of marriage bring, whereas opposite-sex couples can marry and they and their children can enjoy these benefits.

40. Support for Prop. 8 was motivated by animus towards lesbians and gay men and moral disapproval of same-sex relationships.

41. There are meaningful differences in the actual practice of registered domestic partnerships, civil unions and marriage. Marriage is a valued social institution and married couples are

[PROPOSED] COMPLAINT
CASE NO. 09-CV-2292 VRW

9

treated differently than unmarried couples. Creating a separate institution of domestic partnership stigmatizes same-sex couples and sends a message of inferiority to these couples, their children, and lesbians and gay men generally. This stigma increases the likelihood that lesbians and gay men will experience discrimination and harassment in schools, employment and other settings.

42. The qualifications and requirements for entering into or dissolving domestic partnership differ in certain respects from the qualifications and requirements for entering into or dissolving a marriage. Certain rights and benefits associated with marriage do not attach to domestic partnership.

43. State Defendants either assert that Prop. 8 violates the federal constitution or take no position on the matter. Attorney General Brown asserts that "[t]aking from same-sex couples the right to civil marriage that they had previously possessed under California's Constitution cannot be squared with guarantees of the Fourteenth Amendment." (Docket 39 at 2). Governor Schwarzenegger, Director of Public Health Horton, and Deputy Director Scott state that the federal challenge to Prop. 8 "presents important constitutional questions that require and warrant judicial determination." (Docket 46 at 2).

## CLAIMS FOR RELIEF

**CLAIM ONE: DEPRIVATION OF FUNDAMENTAL LIBERTIES AND DUE PROCESS BROUGHT PURSUANT TO 28 U.S.C. §§ 2201-02 and 42 U.S.C. § 1983**

44. Plaintiff-Intervenor incorporates here by reference paragraphs 1 through 43, supra, as if fully set forth herein.

45. Prop. 8 violates fundamental liberties that are protected by the Due Process Clause of the Fourteenth Amendment.

46. Prop. 8 impinges on fundamental liberties by denying gay and lesbian individuals the freedom to marry civilly and to enter into the same officially sanctioned family relationship as individuals who desire to marry someone of a different sex. For example, by denying same-sex couples the same designation of "marriage" that is afforded to opposite-sex couples, and instead allowing them access only to the separate designation and status of "domestic partnership," the State stigmatizes lesbians and gay men, as well as their children and families, and denies them the same dignity, respect, and stature afforded to the family relationships of different-sex couples.

47. Prop. 8 substantially burdens lesbians' and gay men's fundamental right to autonomy and privacy in establishing an intimate relationship with a chosen partner and their fundamental right to marry and create a family with a chosen partner.

**CLAIM TWO: DEPRIVATION OF EQUAL PROTECTION BROUGHT PURSUANT TO 28 U.S.C. §§ 2201-02 AND 42 U.S.C. § 1983**

48. Plaintiffs incorporate here by reference paragraphs 1 through 47, as if fully set forth herein.

49. Prop. 8 violates the Equal Protection Clause of the Fourteenth Amendment.

50. Prop. 8 arbitrarily excludes otherwise qualified lesbian and gay individuals from the legal institution and status of civil marriage and thereby prohibits lesbians and gay men from marrying the person of their choice, both because of their sexual orientation and because of their sex. Thus, California law treats similarly-situated people differently by providing civil marriage to heterosexual couples, but not to lesbian and gay couples. Instead, California law affords same-sex couples and their families only the separate and unequal status of domestic partnership. Even if domestic partnership provided all of the tangible benefits and privileges of marriage, it would remain unequal because of the social, psychological, expressive, and symbolic difference between the designation "marriage," which enjoys a long history and uniform recognition, and the different and unequal institution of "domestic partnership," which is a recent and manifestly unequal creation. Lesbians and gay men are therefore unequal in the eyes of the law, and their families are denied the same respect as officially sanctioned families of opposite-sex couples. By purposefully denying civil marriage to lesbians and gay men, Prop. 8 discriminates on the basis of sexual orientation and sex.

51. The disadvantage Prop. 8 imposes upon gays and lesbians is the result of moral disapproval and animus against a politically unpopular group. The history of Prop. 8 demonstrates that it was adopted as backlash to strip lesbians and gay men of rights previously conferred upon them by the California Constitution, as interpreted by the California Supreme Court in *In re Marriage Cases*, 43 Cal. 4th 757 (2008). As such, Prop. 8 withdrew from lesbians and gay men, but not others, specific legal protections afforded by the California Constitution, and imposed a special disability upon those persons alone. Accordingly, Prop. 8 violates the Equal Protection Clause of the Fourteenth

Amendment because it singles out lesbians and gay men for a disfavored legal status, thereby creating a category of second-class citizens.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff-Intervenor pray for judgment as follows:

1. Plaintiff-Intervenor respectfully requests that this Court, pursuant to 28 U.S.C. § 2201, enter a declaratory judgment stating that Prop. 8 and any other California law that excludes same-sex couples from marriage violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment and 42 U.S.C. § 1983.

2. Plaintiff-Intervenor respectfully requests that this Court enter a permanent injunction enjoining enforcement or application of Prop. 8 and any other California law that excludes same-sex couples from marriage.

3. Plaintiff-Intervenor respectfully requests costs of suit, including reasonable attorney fees under 42 U.S.C. § 1988, and all further relief to which it may be justly entitled.

Dated: July 23, 2009

DENNIS J. HERRERA
City Attorney
THERESE M. STEWART
Chief Deputy City Attorney
DANNY CHOU
Chief of Complex & Special Litigation
VINCE CHHABRIA
ERIN BERNSTEIN
CHRISTINE VAN AKEN
MOLLIE M. LEE
Deputy City Attorneys


By: _____/s/_____
THERESE M. STEWART

Attorneys for Plaintiff-Intervenor
CITY AND COUNTY OF SAN FRANCISCO