1  GIBSON, DUNN & CRUTCHER LLP
   Theodore B. Olson, SBN 38137
2  *tolson@gibsondunn.com*
   Matthew D. McGill, *pro hac vice*
3  Amir C. Tayrani, SBN 229609
   1050 Connecticut Avenue, N.W., Washington, D.C. 20036
4  Telephone: (202) 955-8668, Facsimile: (202) 467-0539

5  Theodore J. Boutrous, Jr., SBN 132009
   *tboutrous@gibsondunn.com*
6  Christopher D. Dusseault, SBN 177557
   Ethan D. Dettmer, SBN 196046
7  Sarah E. Piepmeier, SBN 227094
   Theane Evangelis Kapur, SBN 243570
8  Enrique A. Monagas, SBN 239087
   333 S. Grand Avenue, Los Angeles, California 90071
9  Telephone: (213) 229-7804, Facsimile: (213) 229-7520

10 BOIES, SCHILLER & FLEXNER LLP
   David Boies, *pro hac vice*
11 *dboies@bsfllp.com*
   Theodore H. Uno, SBN 248603
12 333 Main Street, Armonk, New York 10504
   Telephone: (914) 749-8200, Facsimile: (914) 749-8300

13
   Attorneys for Plaintiffs KRISTIN M. PERRY, SANDRA B. STIER,
14 PAUL T. KATAMI, and JEFFREY J. ZARRILLO

15         **UNITED STATES DISTRICT COURT**

16        **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 17  KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. | CASE NO. 09-CV-2292 VRW |
| 18  ZARRILLO, | **PLAINTIFFS' OPPOSITION TO PROPOSED INTERVENORS' MOTIONS TO INTERVENE** |
| 19          Plaintiffs, | |
| 20      v. | Date:  August 19, 2009 |
| 21  ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND | Time:  10:00 a.m. Judge:  Chief Judge Walker Location:  Courtroom 6, 17th Floor |
| 22  G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. | |
| 23  HORTON, in his official capacity as Director of the California Department of Public Health and | |
| 24  State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy | |
| 25  Director of Health Information & Strategic Planning for the California Department of Public | |
| 26  Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of | |
| 27  Alameda; and DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for | |
| 28  the County of Los Angeles, | |
|            Defendants. | |

Gibson, Dunn &
Crutcher LLP

1

**TABLE OF CONTENTS**

2

Page

3

I.      INTRODUCTION ....................................................................................... 1

4

II.     ARGUMENT ............................................................................................. 3

5

        A.    Our Family Coalition and the Campaign Are Not Entitled To Intervene
              As Of Right. ................................................................................... 3

6

7

              1.    Neither Our Family Coalition Nor the Campaign Has a Legally
                    Protectable Interest in This Case That May Be Practically
                    Impaired. ............................................................................. 4

8

9

              2.    The Current Parties Adequately Represent the Interests of Our
                    Family Coalition and the Campaign. ...................................... 8

10

        B.    The Motions For Permissive Intervention Should Be Denied .................... 12

11

              1.    Our Family Coalition and the Campaign Are Not Eligible For
                    Permissive Intervention........................................................ 12

12

13

              2.    The *Spangler* Factors Militate in Favor of Allowing Proposed
                    Intervenors to Participate as Amici Rather Than Parties. ............... 13

14

        C.    Any Intervention Should Be Strictly Limited to Avoid Prejudice to
              Plaintiffs ......................................................................................... 16

15

16

III.    CONCLUSION......................................................................................... 18

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Aeronautical Radio, Inc. v. FCC,*
   983 F.2d 275 (D.C. Cir. 1993) ........................................................................................ 5

*Allen Calculators, Inc. v. Nat'l Cash Register Co.,*
   322 U.S. 137 (1944) ................................................................................................. 15, 18

*Am. Nat'l Bank & Trust Co. v. Chicago,*
   865 F.2d 144 (7th Cir. 1989) ...................................................................................... 11

*Arakaki v. Cayetano,*
   324 F.3d 1078 (9th Cir. 2003) ...................................................................................... 8

*Arizonans for Official English v. Arizona,*
   520 U.S. 43 (1997) ..................................................................................................... 5, 7

*Associated Builders & Contractors v. Perry,*
   16 F.3d 688 (6th Cir. 1994) .......................................................................................... 4

*Bradley v. Milliken,*
   620 F.2d 1141 (6th Cir. 1980) .................................................................................... 18

*Building & Constr. Trades Dep't v. Reich,*
   40 F.3d 1275 (D.C. Cir. 1994) ..................................................................................... 4

*Butler, Fitzgerald & Potter v. Sequa Corp.,*
   250 F.3d 171 (2d Cir. 2001) ....................................................................................... 11

*Chiglo v. Preston,*
   104 F.3d 185 (8th Cir. 1997) ...................................................................................... 11

*Chiles v. Thornburgh,*
   865 F.2d 1197 (11th Cir. 1989) .................................................................................... 4

*Churchill County v. Babbitt,*
   150 F.3d 1072 (9th Cir. 1998) .................................................................................... 17

*Cleveland v. Nuclear Regulatory Comm'n,*
   17 F.3d 1515 (D.C. Cir. 1994) ..................................................................................... 5

*Coalition for a Sustainable Delta v. Carlson,*
   No. 08-CV-00397, 2008 U.S. Dist. LEXIS 65420 (E.D. Cal. July 23, 2008) ............... 17

*Diamond v. Charles,*
   476 U.S. 54 (1986) ..................................................................................................... 13

# TABLE OF AUTHORITIES
## [Continued]

Page(s)

*Donaldson v. United States*,
  400 U.S. 517 (1971) ................................................................................................................ 4, 5

*Donnelly v. Glickman,*
  159 F.3d 405 (9th Cir. 1998) ......................................................................................... 3, 14, 16

*EEOC v. Pan Am. World Airways*,
  897 F.2d 1499 (9th Cir. 1990) .................................................................................................. 13

*Fox v. Glickman Corp.*,
  355 F.2d 161 (2d Cir. 1965) ...................................................................................................... 18

*Glass v. UBS Fin. Servs.*,
  No. C-06-4068, 2007 U.S. Dist. LEXIS 8509 (N.D. Cal. Jan. 17, 2007) ................................... 9, 11

*Greene/Guilford Envtl. Ass'n v. Wykle*,
  94 F. App'x 876 (3d Cir. 2004) ................................................................................................. 4

*Hasibuan v. Mukasey*,
  305 F. App'x 372 (9th Cir. 2008) .......................................................................................... 1, 5

*Idaho v. Freeman*,
  625 F.2d 886 (9th Cir. 1980) ..................................................................................................... 7

*In re Marriage Cases*,
  183 P.3d 384 (Cal. 2008) ......................................................................................................... 12

*Jones v. Prince George's County*,
  348 F.3d 1014 (D.C. Cir. 2003) ......................................................................................... 11, 12

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................................................. 7, 13

*Mangual v. Rotger-Sabat*,
  317 F.3d 45 (1st Cir. 2003) ....................................................................................................... 4

*Nw. Forest Res. Council v. Glickman*,
  82 F.3d 825 (9th Cir. 1996) ............................................................................................ 8, 12, 13

*Pac. Coast Fed'n of Fishermen's Ass'ns v. Gutierrez*,
  No. 06-CV-00245, 2008 U.S. Dist. LEXIS 80605 (E.D. Cal. Sept. 2, 2008) ........................... 17, 18

*Planned Parenthood of Mid-Missouri & E. Kansas, Inc. v. Ehlmann*,
  137 F.3d 573 (8th Cir. 1998) ..................................................................................................... 4

# TABLE OF AUTHORITIES
## [Continued]

Page(s)

*Prete v. Bradbury,*
438 F.3d 949 (9th Cir. 2006)...................................................................... 4, 7, 8, 10, 11

*Ruiz v. Estelle,*
161 F.3d 814 (5th Cir. 1998)........................................................................ 4

*Sagebrush Rebellion Inc. v. Watt,*
713 F.2d 525 (9th Cir. 1983)........................................................................ 7

*San Juan County v. United States,*
503 F.3d 1163 (10th Cir. 2007)................................................................... 4

*Schlesinger v. Reservists Comm. to Stop the War,*
418 U.S. 208 (1974)................................................................................. 2, 7

*SEC v. Ross,*
504 F.3d 1130 (9th Cir. 2007)..................................................................... 5

*Serena v. Mock,*
547 F.3d 1051 (9th Cir. 2008)..................................................................... 6

*Smelt v. County of Orange,*
447 F.3d 673 (9th Cir. 2006)....................................................................... 6

*Smelt v. United States,*
No. SACV 09-0286 (C.D. Cal. July 15, 2009) ............................................ 6

*Sokaogon Chippewa Cmty. v. Babbitt,*
214 F.3d 941 (7th Cir. 2000)....................................................................... 5

*Spangler v. Pasadena City Bd. of Educ.,*
552 F.2d 1326 (9th Cir. 1977)..................................................................... 12, 14

*Stadin v. Union Elec. Co.,*
309 F.2d 912 (8th Cir. 1962)....................................................................... 15

*Strauss v. Horton,*
207 P.3d 48 (Cal. 2009) .............................................................................. 7

*Stringfellow v. Concerned Neighbors in Action,*
480 U.S. 370 (1987).................................................................................... 3, 17

*Summers v. Earth Island Inst.,*
129 S. Ct. 1142 (2009) ............................................................................... 6, 7, 13

Gibson, Dunn & Crutcher LLP

**TABLE OF AUTHORITIES**
**[Continued]**

Page(s)

*Sw. Ctr. for Biological Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2001)........................................................................ 4

*U.S. Postal Serv. v. Brennan*,
  579 F.2d 188 (2d Cir. 1978)........................................................................ 4

*United States v. 36.96 Acres of Land*,
  754 F.2d 855 (7th Cir. 1985)........................................................................ 4

*United States v. Los Angeles*,
  288 F.3d 391 (9th Cir. 2002)................................................................. 8, 11

*United States v. Philadelphia*,
  798 F.2d 81 (3d Cir. 1986)........................................................................ 11

*Valley Forge Christian College v. Ams. United for Separation of Church & State*,
  454 U.S. 464 (1982)........................................................................ 6

*Van Hoomissen v. Xerox Corp.*,
  497 F.2d 180 (9th Cir. 1974)........................................................................ 18

*Yniguez v. Arizona*,
  939 F.2d 727 (9th Cir. 1991)........................................................................ 5

**OTHER AUTHORITIES**

ACLU, Lambda Legal, NCLR, et al.,
  *Make Change, Not Lawsuits* (May 2009), *available at*
  http://www.aclu.org/pdfs/lgbt/make_change_ 20090527.pdf........................................ 16

ACLU, Lambda Legal, NCLR, et al.,
  *Why The Ballot Box And Not The Courts Should Be The Next Step On Marriage In California*
  (May 2009)........................................................................ 16

Jesse McKinley,
  *Bush v. Gore Foes Join To Fight Gay Marriage Ban*, N.Y. TIMES, May 27, 2009........................ 15

**RULES**

Fed. R. Civ. P. 24 ........................................................................ 2, 3, 4, 13, 14, 17

Fed. R. Civ. P. 82 ........................................................................ 13

# I.   INTRODUCTION

Before the Court are motions to intervene filed by (1) Our Family Coalition, Lavender Seniors of the East Bay, and Parents, Families, and Friends of Lesbians and Gays (collectively "Our Family Coalition") (as plaintiffs); (2) the City and County of San Francisco (the "City") (as a plaintiff); and (3) Campaign for California Families (the "Campaign") (as a defendant).  While Plaintiffs welcome their continued participation as *amicus curiae*, Plaintiffs respectfully oppose their motions to intervene as parties.

As an initial matter, neither Our Family Coalition nor the Campaign is entitled to intervene as of right.  The interests both wish to protect are adequately represented by the existing parties to this litigation.  Our Family Coalition's proposed complaint asserts substantially the same injury and precisely the same claims for relief as Plaintiffs' complaint.  Their motion identifies no argument Plaintiffs are unwilling to make.  Similarly, the Campaign has failed to offer any argument that differs from those raised by Intervenor-Defendants, the official proponents of Prop. 8.  The fact that the proposed intervenors or their counsel might bring another set of viewpoints to the litigation is an insufficient basis to call into question the adequacy of the existing parties' representation.  And a point of view simply is not a "significant protectable interest."

Moreover, the interests that Our Family Coalition and the Campaign do invoke are insufficient to create an Article III case or controversy.  At least when one seeks to intervene as a plaintiff, the pleading appended to the motion for intervention must be one that, standing alone, is sufficient to invoke the jurisdiction of a federal court.  This is integral to the requirement of a "*protectable* interest."  Yet, controlling authority suggests that Our Family Coalition's complaint, because it lacks any allegation that any particular person actually sought and was denied a license to marry in California, is insufficient to create an Article III case or controversy.  *Hasibuan v. Mukasey*, 305 F. App'x 372, 374 (9th Cir. 2008).  And while the Ninth Circuit has concluded that the official proponents of a ballot initiative, such as the Intervenor-Defendants, may have an interest sufficiently concrete and particularized to support intervention, the Campaign states only an interest shared by every person who counts himself as a supporter of Prop. 8, and the federal courts may not entertain

1   such generalized grievances.  *See Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208,

2   220 (1974).

3           For the same reasons, Our Family Coalition and the Campaign are ineligible for permissive

4   intervention.  In the absence of a statute granting a right of intervention, a court may allow persons to

5   intervene only if they have a "claim or defense" in common with the main action.  Fed. R. Civ. P.

6   24(b).  Our Family Coalition and the Campaign have no judicially cognizable *claim*.

7           But even if Our Family Coalition or the Campaign were eligible for permissive

8   intervention, this Court should exercise its discretion to deny their motions and that of the

9   City and instead invite all the proposed intervenors to continue to participate in this litigation

10  as *amici curiae*.  When it deferred consideration of Plaintiffs' motion for a preliminary

11  injunction, the Court stated that it would "proceed[] promptly to trial" to reach a "just, speedy

12  and inexpensive determination of these issues."  Doc #76 at 9.  Yet, adding parties to this

13  already complex litigation inevitably will multiply the proceedings and jeopardize that goal.

14  And that substantial risk of prejudicial delay is compounded by the fact that one proposed

15  intervenor—Our Family Coalition—is represented by counsel that (1) have publicly urged

16  against the filing of any federal constitutional challenge to Prop. 8, (2) have publicly

17  suggested that this lawsuit should be delayed to advance a national litigation strategy, (3) have

18  opposed the development of a factual record in similar litigation, and (4) to this day, are

19  unwilling to say that they actually support Plaintiffs' effort to vindicate their rights in this

20  lawsuit.

21          Delay is even more significant a problem here than in many cases.  The chief legal officer of

22  the State acknowledges that the injuries Plaintiffs are suffering are ongoing and irreparable.  Doc #39

23  at 2.  The human costs associated with further delay provide especially compelling grounds for

24  denying requests to intervene—particularly those brought by counsel who reportedly are "driven by

25

26

27

28

Gibson, Dunn &
Crutcher LLP

2

internal disagreements about the federal lawsuit" and "question both the motives and allegiances" of Plaintiffs' counsel.[1]

If there is to be any further intervention into Plaintiffs' case, it should be the City alone that is permitted to join. The City Attorney's demonstrated experience in assembling factual evidence pertaining to the constitutional issues presented in this case and its demonstrated willingness to take on Plaintiffs' fight as its own mitigates the threats of delay and unnecessarily prolonged injury to Plaintiffs. If the Court is inclined to grant the City's motion (or Our Family Coalition's), Plaintiffs respectfully suggest that, to minimize duplication of proceedings and protect Plaintiffs' right to maintain control over their own claims, Plaintiffs' counsel be designated Lead Plaintiffs' Counsel for this action, and that the intervenors' participation in this action be limited and coordinated through Lead Counsel. *See, e.g.*, *Stringfellow v. Concerned Neighbors in Action,* 480 U.S. 370, 373 (1987).

## II. ARGUMENT

### A. Our Family Coalition and the Campaign Are Not Entitled To Intervene As Of Right.

Intervention as of right under Federal Rule of Civil Procedure 24(a)(2) is permissible only where "(1) [the applicant] has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *Donnelly v. Glickman,* 159 F.3d 405, 409 (9th Cir. 1998) (internal quotation marks omitted). Because Our Family Coalition and the Campaign must meet *all* four parts of this test, failure to satisfy any one of the criteria requires denial of their motions. *See Donnelly,* 159 F.3d at 409.

Our Family Coalition and the Campaign fail to articulate a "significant protectable interest" in the subject matter of the litigation that may be practically impaired by the disposition of this case. Moreover, they cannot show that the existing parties inadequately represent their interests. They therefore fail to meet the requirements for intervention as of right under Rule 24(a)(2).

---

[1]   Andrew Gumbel, *What The Gay Groups Really Think,* Advocate.com (posted July 22, 2009; removed without explanation July 29, 2009) (attached as Exh. A) (hereinafter "Gumbel").

1    **1.    Neither Our Family Coalition Nor the Campaign Has a Legally**
         **Protectable Interest in This Case That May Be Practically Impaired.**

The Court should deny Our Family Coalition's and the Campaign's motions to intervene as of right because they do not have a "significantly protectable interest" that may be practically impaired or impeded by the disposition of this case.  *Donaldson v. United States*, 400 U.S. 517, 531 (1971); Fed. R. Civ. P. 24(a).

Although the Courts of Appeals are split on whether standing is required for intervention as of right under Rule 24(a), and the question has not been definitively resolved in the Ninth Circuit, *Prete v. Bradbury,* 438 F.3d 949, 956 (9th Cir. 2006), the better reasoned view is that Rule 24(a)'s "significant protectable interest" encompasses a standing requirement, such that one who seeks to intervene must satisfy the requirements of Article III standing and could carry on the litigation even in the absence of the original parties.  *See Building & Constr. Trades Dep't v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994) (intervenor must have standing); *United States v. 36.96 Acres of Land*, 754 F.2d 855, 859 (7th Cir. 1985) (rejecting attempt by public interest group to intervene as plaintiff as of right for lack of standing and noting that "[t]he interest of a proposed intervenor . . . must be greater than the interest sufficient to satisfy the standing requirement").[2]  Indeed, the Ninth Circuit has recognized that the "standing requirement is at least implicitly addressed by [the] requirement that the applicant must assert[] an interest relating to the property or transaction which is the subject of the action."  *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (internal citations and quotation marks omitted).  "[A]t some fundamental level the proposed intervenor must

---

[2]    *See also Greene/Guilford Envtl. Ass'n v. Wykle*, 94 F. App'x 876, 878 n.2 (3d Cir. 2004) (noting "disagreement between circuits as to whether intervenors must demonstrate standing to intervene under Fed. R. Civ. P. 24" without reaching the question); *Mangual v. Rotger-Sabat*, 317 F.3d 45, 61 (1st Cir. 2003) (observing that "the circuits are split on the question of whether standing is required to intervene if the original parties are still pursuing the case and thus maintaining a case or controversy," and allowing intervention because the proposed intervenor clearly had Article III standing); *Planned Parenthood of Mid-Missouri & E. Kansas, Inc. v. Ehlmann*, 137 F.3d 573, 576-77 (8th Cir. 1998) (independent intervenor must have standing); *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (while Article III standing is not required, it is "relevant" to identifying the "interest" required for intervention under Rule 24).  *But see San Juan County v. United States*, 503 F.3d 1163, 1171-72 (10th Cir. 2007) (en banc) (no independent standing for intervenors required); *Ruiz v. Estelle*, 161 F.3d 814, 830 (5th Cir. 1998) (same); *Associated Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir. 1994) (same); *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 190 (2d Cir. 1978) (same).

have a stake in the litigation," and "[f]rom a pragmatic standpoint, . . . any interest of such magnitude as to support Rule 24(a) intervention of right is sufficient to satisfy the Article III standing requirement as well." *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 946 (7th Cir. 2000) (internal quotation marks and brackets omitted).

"[T]he underlying rationale for this requirement is clear:  because a Rule 24 intervenor seeks to participate on an equal footing with the original parties to the suit, he must satisfy the standing requirements imposed on those parties." *Cleveland v. Nuclear Regulatory Comm'n*, 17 F.3d 1515, 1517 (D.C. Cir. 1994); *see also SEC v. Ross*, 504 F.3d 1130, 1150 (9th Cir. 2007) ("Intervention of right simply puts the intervenor into the position he would have been in had the plaintiff (or another party) properly named him to begin with.").  Moreover, "[t]he standing Article III requires must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance," and "[a]n intervenor cannot step into the shoes of the original party unless the intervenor independently fulfills the requirements of Article III." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64-65 (1997) (internal quotation marks omitted) (vacating *Yniguez v. Arizona*, 939 F.2d 727 (9th Cir. 1991)).  It would therefore make little sense to permit a proposed intervenor to intervene even though he lacks standing to carry on the suit in the absence of the original party.  *Cf. Aeronautical Radio, Inc. v. FCC*, 983 F.2d 275, 283-84 (D.C. Cir. 1993) (intervenor must have standing to continue suit if court lacks jurisdiction over suit brought by original parties).

Thus, in deciding whether Our Family Coalition and the Campaign have a "significantly protectable interest" to justify their intervention, *Donaldson*, 400 U.S. at 531, the Court should determine whether their members have standing, *see Arizonans for Official English*, 520 U.S. at 65-66 ("[a]n association has standing to sue . . . only if its members would have standing in their own right").

Here, it appears that under binding Ninth Circuit precedent, Our Family Coalition lacks standing because, unlike Plaintiffs, Our Family Coalition does not allege that any of its members have applied for a marriage license and been denied.  *Hasibuan*, 305 F. App'x at 374 ("because Hasibuan does not assert that he attempted to marry his partner, he also lacks standing to challenge California's marriage laws"); *see also Serena v. Mock*, 547 F.3d 1051, 1054 (9th Cir. 2008)

(plaintiffs lacked standing to challenge grand jury selection procedures because they failed to apply for grand jury service). Rather, Our Family Coalition simply asserts that certain of its members "desire and intend to marry their same-sex partners." Doc #79 at 11 (citing Doc #81 at 5 [OFC Dec. ¶ 9]; Doc #82 at 1-3 [LS Dec. ¶¶ 6, 11]; Doc #83 at 3 [PFLAG Dec. ¶ 5]).[3] But proclamations of intent, no matter how sincere, are insufficient to confer standing. *See Valley Forge Christian College v. Ams. United for Separation of Church & State*, 454 U.S. 464, 486 n.21 (1982) (standing is not measured by the "sincerity of [plaintiffs'] stated objectives and the depth of their commitment to them"). For example, in *Smelt v. County of Orange*, 447 F.3d 673, 682 (9th Cir. 2006), the Ninth Circuit held that plaintiffs (a same-sex couple) lacked Article III standing to challenge the federal Defense of Marriage Act because they were not married under the laws of any state. The court held that, even though they "[n]o doubt wish they could be [married]," "they have not spelled out a legally protected interest, much less one that was injured in a concrete and particularized way." *Id*. at 684. In fact, counsel for Our Family Coalition made this precise argument in their opening brief in that very case. *See* Proposed Intervenor's Opening Br. at 24-37, *Smelt*, 447 F.3d 673 (No. 05-56040). Likewise, because the desire of some of Our Family Coalition's members to marry at some point in the future is not a "legally protected interest" that has been "injured in a concrete and particularized way," they lack standing and therefore fail to establish a significant protectable interest that may be practically impaired or impeded by a disposition in this case. *See Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1152 (2009) ("plaintiffs claiming an organizational standing [must] identify members who have suffered the requisite harm").

Similarly, the Campaign lacks a significant protectable interest in the litigation that may be impaired because it cannot establish any injury sufficient to confer Article III standing. The Campaign simply asserts that it should be permitted to intervene because it supported Prop. 8 and believes that gay and lesbian individuals should not be allowed to marry. Doc #91 at 8. But this is

---

[3]    In fact, many members of Our Family Coalition are already married, Doc #81 at 5 (OFC Dec. ¶ 9), and thus plainly lack standing. *See Smelt v. United States,* No. SACV 09-0286, Doc #36 (C.D. Cal. July 15, 2009) (dismissing challenge to Prop. 8 because plaintiffs were already married).

the same interest shared by any of the numerous Californians who voted in favor of Prop. 8, and the U.S. Supreme Court has repeatedly held that such an undifferentiated interest is insufficient to confer Article III standing. *See, e.g.*, *Arizonans for Official English*, 520 U.S. at 66 (expressing "grave doubts" as to whether initiative proponents have Article III standing to intervene to pursue an appeal in a case challenging the initiative and vacating *Yniquez*); *Schlesinger*, 418 U.S. at 220 ("standing to sue may not be predicated upon an interest of the kind alleged here which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share"); *see also Summers*, 129 S. Ct. at 1149 ("federal courts [must] satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction" (internal quotation marks omitted; emphasis in original)). The Campaign was merely one of many supporters of Prop. 8—not one of the official sponsors, who are already parties to this case. Doc #77. Indeed, the California Supreme Court denied the Campaign's motion to intervene in the state court challenge to Prop. 8 in *Strauss v. Horton*, 207 P.3d 48 (Cal. 2009), after Our Family Coalition's counsel and others opposed their intervention on grounds that they lacked a sufficient interest in the litigation. *Strauss*, Nos. S168047, S168066, S168078 (Cal. Nov. 19, 2008) (order denying motion to intervene); Pet'r Opp. to Mot. of Campaign for California Families to Intervene as Resp't, *Strauss*, 207 P.3d 48 (No. S168047). The Campaign has therefore failed to demonstrate a significant protectable interest in this litigation that may be impaired by the disposition of this case.[4]

---

[4] The Campaign cites *Prete v. Bradbury*, 438 F.3d at 954, but *Prete* actually supports Plaintiffs' position. There, unlike here, the proposed defendant-intervenor was the "chief petitioner" for the challenged measure, *id.* at 952, and the plaintiff conceded that the intervenor had a significant protectable interest in the litigation, *id.* at 954. Moreover, the Ninth Circuit rejected the application for intervention as of right because the proposed intervenor's interests were adequately represented by the defendant. *Id.* at 956-59. The Campaign also cites *Idaho v. Freeman*, 625 F.2d 886, 887 (9th Cir. 1980), and *Sagebrush Rebellion Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983), for the proposition that initiative supporters have a sufficient interest to intervene in a challenge against the initiative. But both decisions pre-date *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), which significantly tightened the requirements for Article III standing, and *Arizonans for Official English*, 520 U.S. at 43. And to the extent they hold that any supporter of an initiative may intervene in a suit challenging that initiative, they cannot be squared with the Supreme Court's clear proscription against citizen standing. *See supra* at 6-7.

## 2.      The Current Parties Adequately Represent the Interests of Our Family Coalition and the Campaign.

The Court, however, need not resolve the question whether a proposed intervenor must satisfy Article III standing requirements—a question which has divided the Courts of Appeals—because Our Family Coalition and the Campaign both have failed to make any showing at all that the existing parties' representation of their interests will be inadequate.

The requirement of inadequacy of representation "is not without teeth." *Prete,* 438 F.3d at 956.  In evaluating adequacy of representation, the Court considers: "'(1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect.'" *United States v. Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996)).  The applicant "bears the burden of demonstrating that existing parties do not adequately represent its interests." *Los Angeles*, 288 F.3d at 398 (internal quotation marks omitted).

"When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises.  If the applicant's interest is identical to that of one of the present parties, a *compelling showing* should be required to demonstrate inadequate representation." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (emphasis added) (internal citations omitted).  Our Family Coalition concedes that such a presumption arises here, because it shares the same ultimate objective with Plaintiffs (*i.e.,* challenging the constitutionality of Prop. 8).  Doc #79 at 16.  Although Our Family Coalition admits it must overcome this presumption, it fails to do so.

Our Family Coalition does not identify a single argument against Prop. 8 that Plaintiffs are unable or unwilling to make.  To the contrary, Our Family Coalition's proposed complaint is virtually identical to Plaintiffs' complaint in all relevant respects, and even copies whole sections verbatim. Doc #80-1 at 6 (¶¶ 7, 10-11), 14-18 (¶¶ 38-52, Prayer for Relief).  Indeed, the complaint alleges no new claims and no new injury, thereby confirming that Our Family Coalition's interests are identical to Plaintiffs'.  And Our Family Coalition's brief in support of its motion confirms that it raises no

1   new issues.  *See* Doc #79 at 19.  This is an independently sufficient basis for the Court to conclude

2   that Plaintiffs are adequate representatives.  *See, e.g.*, *Glass v. UBS Fin. Servs.*, No. C-06-4068, 2007

3   U.S. Dist. LEXIS 8509, at *18 (N.D. Cal. Jan. 17, 2007) (denying intervention where plaintiff

4   intervenor "in his proposed complaint-in-intervention, expressly adopt[ed] all of the allegations of

5   plaintiffs' complaint in [the] action except those that relate[d] to the adequacy of the putative class

6   representatives, and allege[d] no additional substantive causes of action against defendants" (internal

7   quotation marks omitted)).

8        Our Family Coalition grounds its claim of inadequate representation on its assertion that it is

9   representative of the "entire LBGT community" and that the diversity of that community necessarily

10   means that some of its members may have experiences and injuries as a result of not being allowed to

11   marry that differ in some relevant respect from those suffered by Plaintiffs.  *See* Doc #79 at 17-18,

12   21; *see also id.* at 17 ("the interests of older same-sex couples may diverge from those of other same-

13   sex couples").  But the "age[] and ethnic, cultural, and socio-economic backgrounds," Doc #79 at 17,

14   of Plaintiffs have no relevance to the fundamental question at issue in this litigation:  whether Prop. 8

15   denies gay and lesbian individuals the right to marry in violation of the Fourteenth Amendment's

16   guarantees of due process and equal protection.  And Our Family Coalition's proposed complaint

17   confirms as much; it asserts that Prop. 8 injures all "otherwise qualified lesbians and gay

18   individuals"—a class of persons it defines in the broadest possible terms, "an unmarried male or an

19   unmarried female over the age of eighteen who is not otherwise disqualified from eligibility for

20   marriage and is capable of consenting to and consummating marriage."  Doc #80-1 at 4, 15, 16.  It

21   alleges no injury and asserts no claim for relief different from that alleged and asserted by Plaintiffs.

22   The mere fact that Our Family Coalition might bring a different point of view to the litigation is not

23   nearly the "compelling showing" that Plaintiffs cannot adequately represent their "interest relating to

24   the . . . transaction that is the subject of the action" that Rule 24 and controlling precedent requires.

25   The interest asserted by Our Family Coalition is ***identical*** to Plaintiffs'.[5]

26

27

28        5    In any event, even if the age or ethnic, cultural, or socio-economic backgrounds of those
          seeking marriage equality were relevant to their legal entitlement to relief, Plaintiffs already
          [Footnote continued on next page]

Gibson, Dunn &
Crutcher LLP

1    Our Family Coalition's claim of inadequate representation ultimately rests on its assertion that

2    its counsel have unique "experience and expertise" in marriage equality issues and "a unique ability

3    to develop a factual record" on those issues.  Doc #79 at 7.  But when evaluating the adequacy of

4    representation, it is the adequacy of the *parties*—not the adequacy of their *counsel*—that matters.

5    Our Family Coalition cites no case in which a court has permitted intervention as of right based on

6    the "experience and expertise" of the intervenor's chosen counsel.  Lawyers, no matter how

7    experienced or well-meaning, should not be permitted to use intervention to involve themselves in

8    litigation where the parties have chosen to retain other counsel.

9    In fact, even when it is the proposed *intervenor* that claims to have a unique "expertise" in the

10   subject matter of the litigation, the Ninth Circuit has found such claims to be insufficient to establish

11   that the existing parties are inadequate.  In *Prete*, the Ninth Circuit rejected strikingly similar

12   arguments by proposed intervenors who claimed they should be allowed to intervene because they

13   were a public interest group that supported the initiative that was subject to a constitutional challenge

14   in that case.  438 F.3d at 949.  Proposed intervenors argued that the defendant state "[did] not have

15   the breadth of knowledge regarding the [subject of the initiative] to fully develop the record and

16   respond to plaintiff's factual allegations," and that proposed intervenors "[had] particular expertise in

17   the subject of the dispute," including "direct knowledge and experience in [the subject matter of the

18   litigation]."  *Id.* at 958 (internal quotation marks omitted).  The court reasoned that "[a]lthough

19   intervenor-defendants may have some specialized knowledge . . ., they provided no evidence to

20   support their speculation that the [defendant] lacks comparable expertise.  To the contrary, defendant

21   presumably is sufficiently acquainted with [the subject of the litigation] and could also

22   acquire additional specialized knowledge through discovery (e.g., by calling upon intervenor-

23   defendants to supply evidence) or through the use of experts."  *Id.*; *see also Am. Nat'l Bank & Trust

24   Co. v. Chicago*, 865 F.2d 144, 147 (7th Cir. 1989) ("[T]he fact that the Union may have a particular

25   expertise is no ground for mandatory intervention.  If it were, every potential expert witness would

26

27   [Footnote continued from previous page]
              include both gay and lesbian couples, with children and without, of different ages and ethnic
28            and cultural backgrounds.  Doc #7 at 10.

1  meet the interest requirement. . . . [A] group's particular expertise by itself is insufficient to meet the

2  interest requirement.").

3  Any suggestion that Plaintiffs are unwilling to build the factual record the Court has requested

4  is simply wrong.  As Plaintiffs' case management statement makes clear, Plaintiffs and their counsel

5  are ready and able to develop all of the facts identified in the Court's June 30, 2009 order and

6  proceed expeditiously to a full trial on the merits.  *See* Doc #134.  To the extent Our Family

7  Coalition's strategy might differ in some respects from Plaintiffs', mere "differences in strategy . . .

8  are not enough to justify intervention as a matter of right."  *Los Angeles,* 288 F.3d at 402-03

9  (rejecting attempt by community groups to intervene as of right).  In 1986, the Third Circuit applied

10  this principle in a context that foreshadowed this case, affirming the denial of several gay rights'

11  groups' motion for intervention, holding "the fact that the intervenors would have been less prone to

12  agree to the facts and would have taken a different view of the applicable law does not mean that the

13  [existing parties] did not adequately represent their interests in the litigation."  *United States v.*

14  *Philadelphia*, 798 F.2d 81, 90 (3d Cir. 1986) (internal quotation marks omitted).  Indeed, if such

15  "quibbles over litigation tactics" or a "'disagreement with an existing party over trial strategy

16  qualified as inadequate representation, the requirement of Rule 24 would have no meaning.'"  *See*

17  *Jones v. Prince George's County*, 348 F.3d 1014, 1020 (D.C. Cir. 2003) (quoting *Butler, Fitzgerald*

18  *& Potter v. Sequa Corp.*, 250 F.3d 171, 181 (2d Cir. 2001)); *see also Chiglo v. Preston,* 104 F.3d

19  185, 188 (8th Cir. 1997) (prospective intervenor "cannot rebut the presumption of representation by

20  merely disagreeing with the litigation strategy").

21  Our Family Coalition therefore does not offer any "necessary elements to the proceedings that

22  [Plaintiffs] would neglect."  *Los Angeles*, 288 F.3d at 398; *Glass*, 2007 U.S. Dist. LEXIS 8509, at

23  *26.  In the absence of a compelling showing that that Plaintiffs are "ineffectual, incompetent, or

24  unwilling to raise claims or arguments that would benefit" Our Family Coalition, its claims of

25  inadequate representation must fail.  *Jones,* 348 F.3d at 1019.[6]

26  _____

27  [6]  In this vein, it is interesting to note that, although Our Family Coalition claims that its counsel
    was responsible for developing factual records in other marriage cases, *see, e.g.*, Doc #79 at 6,

28  8, 20, those groups actually *opposed* development of a factual record in *In re Marriage Cases*,
    [Footnote continued on next page]

Similarly, the Campaign has failed to put forth a single argument in support of Prop. 8 that is different in any respect from those raised by the official Prop. 8 Proponents, who have already been permitted to intervene on the side of Defendants, Doc #77, and have amply demonstrated that they are capable and willing to defend Prop. 8.  For all these reasons, the Court should deny the motions to intervene as of right.

**B.      The Motions For Permissive Intervention Should Be Denied**

A court may grant permissive intervention where the applicant shows "(1) independent grounds for jurisdiction; (2) the motion is timely; *and* (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common."  *Nw. Forest Res. Council*, 82 F.3d at 839 (emphasis added).  If the court finds that all these conditions are met, "it is then entitled to consider other factors in making its discretionary decision on the issue of permissive intervention." *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

Our Family Coalition and the Campaign fail to meet the requirements for permissive intervention, and even if they did, the *Spangler* factors—many of which track the requirements for intervention of right—would weigh decisively against granting permissive intervention.  While the City appears to be eligible for permissive intervention—its claim of injury arising out of its role as a regulator appears to form the basis for a judicially cognizable claim for relief—the risk of delay arising from the multiplication of parties and proceedings and the resulting harm that will accrue to Plaintiffs suggests that the City's motion for permissive intervention also should be denied.

**1.      Our Family Coalition and the Campaign Are Not Eligible For Permissive Intervention.**

The Court should deny Our Family Coalition's and the Campaign's motions because they fail to meet the requirements for permissive intervention.  For the same reasons they cannot demonstrate a sufficient protectable interest in the litigation to justify intervention as of right, *see supra* at 4-7,

---

[Footnote continued from previous page]
183 P.3d 384, 452 (Cal. 2008), Doc #111-3 at 4-5.  In fact, the City was the sole party to submit a factual record in that case.  Doc #109 at 18.  Thus, it would seem that, more than Our Family Coalition, it is the City that would "bring unique resources to the development of the very factual issues that the Court has identified as central to the resolution of the important constitutional claims at stake."  Doc #79 at 19.

they also have failed to establish "independent grounds for jurisdiction."  *Nw. Forest Res. Council*, 82 F.3d at 839; *see EEOC v. Pan Am. World Airways*, 897 F.2d 1499, 1509-10 (9th Cir. 1990) (party seeking permissive intervention must demonstrate a basis for federal jurisdiction independent of the court's jurisdiction over the underlying action).  Standing is a prerequisite to jurisdiction, and courts may not adjudicate the claims of parties who lack Article III standing.  *Lujan*, 504 U.S. at 560; *see also Summers*, 129 S. Ct. at 1151 ("the requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute"); Fed. R. Civ. P. 82 ("The[] [Federal Rules of Civil Procedure] do not extend or limit the jurisdiction of the district courts").[7]

Likewise, Our Family Coalition and the Campaign have no "claim" that has "a common question of law or fact" with Plaintiffs' claim. Fed. R. Civ. P. 24(b)(2).  "The words 'claim or defense' [in Rule 24(b)(2)] manifestly refer to the kinds of claims or defenses that can be raised in courts of law as part of an actual or impending law suit, as is confirmed by Rule 24(c)'s requirement that a person desiring to intervene serve a motion stating 'the grounds therefor' and 'accompanied by a pleading setting forth the claim or defense for which intervention is sought.'" *Diamond v. Charles*, 476 U.S. 54, 76-77 (1986) (O'Connor, J., concurring).  Thus, for the same reasons they lack a sufficient protectable interest, both groups also have "no claim or defense in this sense; [they] assert[] no actual, present interest that would permit [them] to sue . . . in an action sharing common questions of law or fact with those at issue in this litigation."  *Id*.  Put another way, because they have no claim at all, the proposed intervenors can have no claim that shares common questions of law and fact.

Because Our Family Coalition and the Campaign fail to meet any of the threshold requirements for permissive intervention, the Court's analysis need go no further with respect to their motions.  *Donnelly*, 159 F.3d at 412; *Spangler*, 552 F.2d at 1329.

### 2. The *Spangler* Factors Militate in Favor of Allowing Proposed Intervenors to Participate as Amici Rather Than Parties.

If a party is eligible for permissive intervention, the Court then may weigh the discretionary *Spangler* factors, which include "the nature and extent of the intervenors' interest, their standing to

---

[7]   By contrast, the City has asserted an injury to itself in its role as regulator that would appear to satisfy Article III requirements.  *See* Doc #109 at 12-13.

1   raise relevant legal issues, the legal position they seek to advance, . . . its probable relation to the

2   merits of the case . . . whether the intervenors' interests are adequately represented by other parties,

3   whether intervention will prolong or unduly delay the litigation, and whether parties seeking

4   intervention will significantly contribute to full development of the underlying factual issues in the

5   suit and to the just and equitable adjudication of the legal questions presented."  552 F.2d at 1329.

6   Rule 24 expresses special concern for the delays associated with intervention by providing that

7   courts, in the exercise of their discretion, "must consider whether the intervention will unduly delay

8   or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(2).

9          Even if Our Family Coalition and the Campaign were eligible for permissive intervention, the

10  *Spangler* factors still would dictate the denial of their motions.  As discussed *supra*, neither Our

11  Family Coalition nor the Campaign has standing, neither asserts a legal interest that is independent of

12  those asserted by the existing parties, neither seeks to raise a legal argument that the original parties

13  are unwilling to advance, and the interests of each are adequately represented by the existing parties.

14         The motion of the City admittedly presents a much closer call.  Unlike Our Family Coalition

15  and the Campaign, at least some of the *Spangler* factors weigh in favor of the City.  For example, the

16  City has a unique interest as a regulator that Plaintiffs do not purport to represent, and the

17  extraordinary factual record the City appended to its motion suggests strongly that the City is already

18  well on its way to "contribut[ing] to full development of the underlying factual issues in the suit."

19  *Spangler*, 552 F.2d at 1329.  Plaintiffs respectfully submit, however, that the benefits that might flow

20  from the City's intervention could be reaped through its participation as an *amicus curiae*, whereas

21  addition of new parties to this already complex litigation would inevitably produce multiplication of

22  proceedings, delay, and resulting prejudice.

23         As the Supreme Court has explained, "[i]t is common knowledge that, where a suit is of large

24  public interest, the members of the public often desire to present their views to the court in support of

25  the claim or the defense," but such interventions are inappropriate where they will "result in

26  accumulating proofs and arguments without assisting the court."  *Allen Calculators, Inc. v. Nat'l*

27  *Cash Register Co.*, 322 U.S. 137, 141-42 (1944).  Thus, in *Stadin v. Union Elec. Co.*, 309 F.2d 912,

28  920 (8th Cir. 1962), the court affirmed denial of a motion to intervene because intervention "[would

have brought] into [the] lawsuits added complexity; the inevitable problems attendant upon additional

witnesses, interrogatories and depositions; expanded pretrial activity; greater length of trial; and

elements of confusion," which "in themselves suggest delay and the clouding of the issues involved

in the original causes of action." *See also id*. ("More than one trial court has observed that

[a]dditional parties always take additional time and that they are the source of additional questions,

objections, briefs, arguments, motions and the like which tend to make the proceeding a Donnybrook

Fair." (internal citation and quotation marks omitted)).

      Adding more parties to this litigation could result in a significant delay in the adjudication of

Plaintiffs' claims.  It will likely mean more sets of written discovery, longer depositions, longer

examinations of each witness, and multiple opening statements and closing arguments.  Delay will be

even greater should one or more of the proposed intervenors seek a slower or more drawn out

schedule than the one Plaintiffs hope to pursue in this case.  Moreover, that delay is indisputably

prejudicial to Plaintiffs, who today and every day until Prop. 8 is enjoined are made to suffer

irreparable harm.

      The risk of delay presented by the motion of Our Family Coalition is particularly acute.

When Plaintiffs brought this suit, Our Family Coalition's counsel publicly condemned their litigation

strategy calling it "risky" and "premature."[8]  Instead, they urged supporters of marriage equality to

organize a ballot initiative for the 2010 election so that they could "go back to the voters."[9]  Our

Family Coalition's counsel also suggested that another lawsuit currently pending in federal court in

Massachusetts (a constitutional challenge to the Defense of Marriage Act) is a better vehicle for

---

[8]    Jesse McKinley, *Bush v. Gore Foes Join To Fight Gay Marriage Ban,* N.Y. TIMES, May 27, 2009, at A1 (hereinafter "McKinley").

[9]    *See, e.g.,* ACLU, Lambda Legal, NCLR, et al., *Why The Ballot Box And Not The Courts Should Be The Next Step On Marriage In California* (May 2009), *available at* http://www.aclu.org/pdfs/lgbt/ballot_box_20090527.pdf (calling a "federal lawsuit" a "temptation we should resist" and promoting strategy of "gains in both public opinion and state law").

1  pursuing marriage equality and urged their supporters to let that Massachusetts litigation proceed

2  ahead of any federal constitutional challenge to Prop. 8.[10]

3         Plaintiffs, however, seek to get married and vindicate their federal constitutional rights now

4  and thus brought this lawsuit in the traditional forum for deciding such issues:  the federal courts.

5  When the litigation strategy of a proposed intervenor diverges so substantially from that of the

6  plaintiffs—to the point where the proposed intervenor has opposed the filing of any lawsuit at all—

7  "allowing intervention would only serve to undermine the efficiency of the litigation process."

8  *Donnelly*, 159 F.3d at 412 (affirming denial of permissive intervention) (internal quotation marks

9  omitted).

10        Having declined to bring their own federal challenge to Prop. 8, Our Family Coalition and

11  their counsel should not be allowed to usurp Plaintiffs' lawsuit now that it is underway and moving

12  forward on an expedited basis.  Such intervention poses a substantial risk of interference and delay.

13  And for Plaintiffs, any delay necessarily prolongs their continuing irreparable injuries—days that

14  they could have been joined in marriage, robbed from them and for which no restitution can be made.

15  There is no reason to expose Plaintiffs' to these risks because most, if not all, of the benefits of

16  intervention can be preserved through the participation of these organizations as *amici curiae*.

17  **C.    Any Intervention Should Be Strictly Limited to Avoid Prejudice to Plaintiffs**

18        Plaintiffs oppose any further intervention in their case.  However, if the Court is inclined to

19  permit any intervention, Plaintiffs respectfully request that the Court permit only the City to intervene

20  and strictly limit its participation to prevent delay and ensure a fair and efficient proceeding for

21  Plaintiffs, whose rights are violated each day that Prop. 8 prevents them from marrying.

22        Even in cases of intervention as of right, the Court has ample discretion to impose

23  "appropriate conditions or restrictions responsive among other things to the requirements of efficient

24  conduct of the proceedings."  Fed. R. Civ. P. 24(a) advisory committee's note (1966 amendments).

25  Courts routinely condition intervenors' participation to fit the particular circumstances of a case.  *See,*

26

27
       [10]  ACLU, Lambda Legal, NCLR, et al., *Make Change, Not Lawsuits* (May 2009), *available at*
28            http://www.aclu.org/pdfs/lgbt/make_change_ 20090527.pdf.

Gibson, Dunn &
Crutcher LLP

1   *e.g.*, *Pac. Coast Fed'n of Fishermen's Ass'ns v. Gutierrez*, No. 06-CV-00245, 2008 U.S. Dist. LEXIS

2   80605, at *23 (E.D. Cal. Sept. 2, 2008) (allowing intervention as of right provided that, to avoid

3   delay, intervenors "will not be permitted to . . . duplicate briefing and/or testimony going forward,"

4   "will be limited to one expert witness," and "[t]heir participation will be strictly limited to [certain]

5   issues"); *Coalition for a Sustainable Delta v. Carlson*, No. 08-CV-00397, 2008 U.S. Dist. LEXIS

6   65420, at *10 (E.D. Cal. July 23, 2008) (granting motion to intervene as of right "conditioned upon

7   strictly limiting [intervenors'] participation to issues about which they can provide unique

8   information and/or arguments" and noting that "[f]urther conditions" on briefing and "other measures

9   to avoid duplication may be imposed at the case management conference").

10          Indeed, the U.S. Supreme Court has upheld strict limitations on an intervenor's participation.

11   In *Stringfellow*, the district court granted permissive intervention, provided that the intervenor only

12   assert claims for relief already requested by the original parties, that the intervenor not assert a

13   particular claim for recovery already asserted by one of the existing parties, and that the intervenor

14   not file any motions or conduct its own discovery unless it first conferred with all the original parties

15   and then obtained permission from at least one of the original parties to go forward.  480 U.S. at 373.

16   The Supreme Court upheld the restriction, rejecting the intervenor's argument that the conditions on

17   intervention were so restrictive that they should be treated as a complete denial of the right to

18   intervene.  *Id*. at 377-78.  *See also Churchill County v. Babbitt*, 150 F.3d 1072, 1081 (9th Cir. 1998)

19   (upholding grant of intervention "with the significant limitation that [the intervenor] could only

20   participate in the remedial phase of the trial").

21          Accordingly, if the Court grants the City's or Our Family Coalition's motions to intervene,

22   the Court should appoint Plaintiffs as the Lead Plaintiffs in this case and limit the intervenors'

23   participation to the development of a factual record, in consultation with Plaintiffs.  The intervention

24   motions demonstrate that their primary concern is the development of facts in support of Plaintiffs'

25   claim that Prop. 8 violates their constitutional rights to due process and equal protection, so it makes

26   sense to limit their participation to that role.  *See generally* Docs #79, #109.  Courts commonly limit

27   an intervenor's role to a particular stage of the proceedings for precisely such reasons.  *See, e.g.*, *Van*

28   *Hoomissen v. Xerox Corp.*, 497 F.2d 180, 182-83 (9th Cir. 1974) (affirming decision limiting

intervention to particular issues in order to prevent expansion of suit beyond scope of original complaint); *Pac. Coast Fed'n*, 2008 U.S. Dist. LEXIS 80605, at *23 (to avoid delay, limiting briefing and holding that intervenors as of right "will be limited to one expert witness" and "[t]heir participation will be strictly limited to [certain] issues").[11]

### III.  CONCLUSION

The motions to intervene should be denied.  If the Court is inclined to grant intervention over Plaintiffs' objections, Plaintiffs respectfully suggest that only the City's motion should be granted, and then only on terms that designate Plaintiffs in the lead role so they can maintain control over their lawsuit and avoid further delay in the vindication of their constitutional rights.

DATED:  August 7, 2009

GIBSON, DUNN & CRUTCHER LLP

By:_____/s/_____
                    Theodore B. Olson

and

BOIES, SCHILLER & FLEXNER LLP

David Boies

Attorneys for Plaintiffs KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, AND JEFFREY J. ZARRILLO

---

[11]  *See also, e.g.*, *Bradley v. Milliken*, 620 F.2d 1141, 1142-43 (6th Cir. 1980) (allowing intervention at a remedial phase for the limited purpose of presenting evidence on the question whether, historically, a school district practiced de jure segregation); *Fox v. Glickman Corp.*, 355 F.2d 161, 164 & n.3 (2d Cir. 1965) (affirming intervention limited to the damages phase of trial because intervention in the liability phase "may well result in 'accumulating proofs and arguments without assisting the court'" (quoting *Allen Calculators*, 322 U.S. at 141-42)).