COOPER AND KIRK, PLLC
Charles J. Cooper (DC Bar No. 248070)*
*ccooper@cooperkirk.com*
David H. Thompson (DC Bar No. 450503)*
*dthompson@cooperkirk.com*
Howard C. Nielson, Jr. (DC Bar No. 473018)*
*hnielson@cooperkirk.com*
Peter A. Patterson (OH Bar No. 0080840)*
*ppatterson@cooperkirk.com*
1523 New Hampshire Ave. N.W., Washington, D.C. 20036
Telephone: (202) 220-9600, Facsimile: (202) 220-9601

LAW OFFICES OF ANDREW P. PUGNO
Andrew P. Pugno (CA Bar No. 206587)
*andrew@pugnolaw.com*
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 608-3065, Facsimile: (916) 608-3066

ALLIANCE DEFENSE FUND
Brian W. Raum (NY Bar No. 2856102)*
*braum@telladf.org*
James A. Campbell (OH Bar No. 0081501)*
*jcampbell@telladf.org*
15100 North 90th Street, Scottsdale, Arizona 85260
Telephone: (480) 444-0020, Facsimile: (480) 444-0028

ATTORNEYS FOR DEFENDANTS-INTERVENORS DENNIS HOLLINGSWORTH,
GAIL J. KNIGHT, MARTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM,
MARK A. JANSSON, and PROTECTMARRIAGE.COM – YES ON 8, A
PROJECT OF CALIFORNIA RENEWAL

* Admitted *pro hac vice*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the California Department of Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his | CASE NO. 09-CV-2292 VRW<br><br>**DEFENDANTS-INTERVENORS PROPOSITION 8 PROPONENTS AND PROTECTMARRIAGE.COM'S OPPOSITION TO MOTION TO INTERVENE BY CITY AND COUNTY OF SAN FRANCISCO**<br><br>Date: August 19, 2009<br>Time: 10:00 a.m.<br>Judge: Chief Judge Vaughn R. Walker<br>Location: Courtroom 6, 17th Floor |

official capacity as Clerk-Recorder for the County of Alameda; and DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles,

Defendants,

and

PROPOSITION 8 OFFICIAL PROPONENTS DENNIS HOLLINGSWORTH, GAIL J. KNIGHT, MARTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM, and MARK A. JANSSON; and PROTECTMARRIAGE.COM – YES ON 8, A PROJECT OF CALIFORNIA RENEWAL,

Defendants-Intervenors.
Additional Counsel for Defendants-Intervenors

ALLIANCE DEFENSE FUND
Timothy Chandler (CA Bar No. 234325)
*tchandler@telladf.org*
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 932-2850, Facsimile: (916) 932-2851

Jordan W. Lorence (DC Bar No. 385022)*
*jlorence@telladf.org*
Austin R. Nimocks (TX Bar No. 24002695)*
*animocks@telladf.org*
801 G Street NW, Suite 509, Washington, D.C. 20001
Telephone: (202) 637-4610, Facsimile: (202) 347-3622

* Admitted *pro hac vice*

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................................. i

INTRODUCTION ............................................................................................................................... 1

BACKGROUND ................................................................................................................................. 2

ARGUMENT ...................................................................................................................................... 3

I. THE CITY DOES NOT MEET THE THRESHOLD REQUIREMENTS FOR PERMISSIVE INTERVENTION BECAUSE THIS COURT HAS NO JURISDICTION OVER THE CLAIMS THE CITY SEEKS TO ASSERT ................................................................................................ 5

II. EVEN IF PERMISSIVE INTERVENTION WERE NOT JURISDICTIONALLY BARRED, THE COURT SHOULD, IN ITS DISCRETION, DENY THE CITY'S REQUEST FOR PERMISSIVE INTERVENTION. ... 5

    A. The Interests Asserted By The City Do Not Warrant Its Intervention In This Case. ... 5

    B. The City Does Not Have Standing To Assert Its Claims. ........................................... 7

    C. The City's Interests Are Adequately Represented By Plaintiffs. ................................ 8

    D. Allowing The City To Intervene Will Unduly Delay The Proceedings And Prejudice The Parties, With No Appreciable Benefit To The Court. ........................ 10

    E. The City's Participation As *Amicus* Allows It To Sufficiently Protect Its Interests And Impart Its Knowledge To The Court. ................................................................ 12

CONCLUSION ................................................................................................................................ 14

# TABLE OF AUTHORITIES

**CASES** **PAGE**

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) .................................................................. 9

*Associated General Contractors of California v. San Francisco Unified Sch. Dist.*,
   616 F.2d 1381 (9th Cir. 1980) .................................................................................................. 4

*Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150 (1970) ............................ 7

*Bates v. Jones*, 127 F.3d 870 (9th Cir. 1997) .................................................................................. 12

*Blake v. Pallan*, 554 F.2d 947 (9th Cir. 1977) ......................................................................... 4, 13

*Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*,
   No. 96-4125, 1997 U.S. Dist. LEXIS 24304 (C.D. Cal. Mar. 31, 1997) .................................. 4

*California Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847 (9th Cir. 2009) ................................ 9

*California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775 (9th Cir. 1986) .................................. 8, 9

*City of Newark v. State of New Jersey*, 262 U.S. 192 (1923) ........................................................... 3

*City of South Lake Tahoe v. California Tahoe Reg'l Planning Agency*, 625 F.2d 231
   (9th Cir. 1980) ........................................................................................................................ 4, 7

*City of Trenton v. State of New Jersey*, 262 U.S. 182 (1923) ........................................................... 3

*Coalition for Econ. Equity v. Wilson*, 122 F.3d 692 (9th Cir. 1997) ................................................ 6

*Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237 (6th Cir. 2006) ..................... 4

*Coleman v. Miller*, 307 U.S. 433 (1939) ......................................................................................... 3

*Cox Cable San Diego, Inc. v. City of San Diego*, 188 Cal. App. 3d 952 (Cal. App. Ct. 1987) ........... 4

*Dupree v. United States*, 559 F.2d 1151 (9th Cir. 1977) ................................................................. 7

*EEOC v. Pan American World Airways, Inc.*, 897 F.2d 1499 (9th Cir. 1990) ................................. 4

*Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489 (9th Cir. 1995) ............. 8

*Greene v. United States*, 996 F.2d 973 (9th Cir. 1993) ................................................................... 3

*Hunter v. City of Pittsburgh*, 207 U.S. 161 (1907) ......................................................................... 3

*League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297 (9th Cir. 1997) ............................. 8

*Lockyer v. City and County of San Francisco*, 95 P.3d 459 (Cal. 2004) ..................................... 5, 6

*Lujan v. Defenders of Wildlife*, 504 U.S. 505 (1992) ..................................................................... 7

*Massachusetts v. Microsoft Corp.*, 373 F.3d 1199 (D.C. Cir. 2004) ........................................ 10, 11

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452 (5th Cir. 1984) ......... 6, 10

*Northwest Forest Res. Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996) ...................................... 8

*People ex rel. Freitas v. City and County of San Francisco*, 92 Cal. App. 3d 913
   (Cal. App. Ct. 1979) .................................................................................................................. 3

*Shelter Framing Corp. v. Pension Benefit Guar. Corp.,* 705 F.2d 1502 (9th Cir. 1983),
   *rev'd in part on other grounds,* 467 U.S. 717 (1984) ............................................................. 12

*Silver v. Babbitt*, No. 95-15401, 1995 U.S. App. LEXIS 29739 (9th Cir. Oct. 10, 1995) ................ 12

*Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326 (9th Cir. 1977) ................................. 5, 6, 7, 8

*State of California v. Marin Mun. Water Dist.*, 111 P.2d 651 (1941) ................................................... 4

*Strauss v. Horton*, 207 P.3d 48 (Cal. 2009) ........................................................................................ 5

*Texas v. United States Dep't of Energy*, 754 F.2d 550 (5th Cir. 1985) ............................................... 4

*Trustees of Dartmouth College v. Woodward*, 17 U.S. (4 Wheat.) 518 (1819) ................................. 3

*United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002) ................................................... 6

*Warth v. Seldin*, 442 U.S. 490 (1975) .................................................................................................. 7

*Williams v. Mayor and City Council of Baltimore*, 289 U.S. 36 (1933) ............................................. 3

**RULES**

CAL. CONST., art. XI ............................................................................................................................ 3

FED. R. CIV. P. 24(b)(1)(B) .................................................................................................................. 3

FED. R. CIV. P. 24(b)(3) ................................................................................................................. 5, 10

FED. R. EVID. 201 ............................................................................................................................... 13

**INTRODUCTION**

The City and County of San Francisco (the "City") filed a motion to intervene in this case. The Official Proposition 8 Proponents and the Official Proposition 8 Campaign Committee, ProtectMarriage.com, oppose that motion and respectfully request that the Court deny the relief sought therein.

The City does not seek intervention as of right, instead relying solely on this Court's discretion to grant the far less common permissive intervention. The relevant analytical factors clearly demonstrate that the City's motion should be denied. First and foremost, the "claims" raised by the City in its complaint—that Proposition 8 violates the Fourteenth Amendment—are jurisdictionally barred. As the Supreme Court and the Ninth Circuit have repeatedly held, a political subdivision of a State may not, like some Frankenstein monster, turn on its creator and pursue constitutional claims against it in federal court. But even if that were not the case, the City does not possess significant interests in this case; it does not have standing to assert its claims; and its interests in attacking Proposition 8 are adequately protected by Plaintiffs. The accumulation of these factors shows that the City's motion lacks merit.

Balancing the interests of the City and existing parties further reveals that the City should not be granted intervenor status. Granting intervention will unduly delay the proceedings and prejudice the existing parties, with no appreciable benefit created by the City's participation as a party plaintiff. The City of San Francisco's motion makes clear that it will attempt to inject irrelevant issues into this case, including its insistence that it "will add a unique local government perspective," which has no conceivable relevance to the disposition of this suit. *See* Doc. # 109 at 11. Indeed, the affidavit of the City's Chief Deputy Attorney, Therese Stewart, recounts that in the challenges to Proposition 22 in the California state court system: "The City was the *only* plaintiff advocating for and attempting to develop a full factual record in the *Marriage Cases*; in contrast, other parties advocating for marriage equality argued that the issues in the case were legal and that the only material facts were those establishing plaintiffs' standing." *See* Doc. # 111 at 3, ¶ 4 (emphasis added). Ms. Stewart elaborates: "On a number of occasions, I attempted to explain to the Superior Court the basis for the City's belief that factual record and factual findings were necessary

and important . . . ." *Id.* at ¶ 5. Notwithstanding these repeated attempts to inject needless complexity into those proceedings, the Superior Court rejected the City's efforts to convert a legal question into a fact-bound inquiry. And the California Supreme Court resolved the question without the unnecessary findings sought by the City. Thus, the proceedings in the California state courts vividly demonstrate the burdens and complexity that will surely result if San Francisco is allowed to participate in this case as a party.

Denying intervention will avoid needless prejudice to the parties, while nevertheless allowing the City to protect its interests through *amicus* participation. Thus, the best course here—inflicting the least amount of prejudice on all interested parties—is to deny the City's motion, and instead, allow it to retain *amicus* status in this litigation.

## BACKGROUND

Shortly after commencing this case, Plaintiffs filed a motion for a preliminary injunction, which raised substantive questions about the merits of their claims. (*See* Doc. # 7). The City did not seek to intervene at that time, but instead, filed an *amicus* brief in support of Plaintiffs' motion. (*See* Doc. # 53).

The City, like Plaintiffs, claims that Proposition 8 violates the United States Constitution. It asserts two interests in seeking to advance that claim, neither of which is protected by law. First, the City does not want to enforce a law that its officials believe is unconstitutional. (Doc. # 109 at 2, 12.) Second, the City wants to avoid the supposedly negative financial consequences created by its enforcement of Proposition 8. (Doc. # 109 at 2, 12.) Despite these particularities relating to its status as a local government entity, the City admits that its interests and "perspective" are "closely aligned with [those] of the Plaintiffs." (Doc. # 109 at 13.)

The City now relies on its experience in creating a factual record in a different case as the primary basis for its intervention request. But the City has already provided Plaintiffs' counsel with most if not all of the evidentiary materials that it compiled. Throughout the early months of this litigation, the City has been "work[ing] with Plaintiffs' counsel in a cooperative way," providing them with "copies of many items from the record [it] created in the *Marriage Cases*." (Doc. # 111 at 8 ¶ 24.) It thus appears that the City and Plaintiffs have forged a successful *amicus*-party

relationship, allowing the City to assert its interests and factual evidence through *amicus* briefing, and avoiding undue complexity and prejudice to the parties by unnecessarily adding parties to this litigation.

## ARGUMENT

I. **THE CITY DOES NOT MEET THE THRESHOLD REQUIREMENTS FOR PERMISSIVE INTERVENTION BECAUSE THIS COURT HAS NO JURISDICTION OVER THE CLAIMS THE CITY SEEKS TO ASSERT**

As the City recognizes, a permissive intervenor must assert a "claim or defense" and must demonstrate "an independent ground for jurisdiction." FED. R. CIV. P. 24(b)(1)(B); *Greene v. United States*, 996 F.2d 973, 978 (9th Cir. 1993); Doc. # 109 at 11. The City does not satisfy either of these threshold requirements.

San Francisco seeks to intervene in this case as a plaintiff aligned against the Defendant State of California. Its claim is that the State, in enacting and enforcing Proposition 8, has violated the Fourteenth Amendment of the federal Constitution. (*See* Doc. # 111-23 at 9-10.) That is, the City seeks to sue the State for equal protection and due process violations. But as an arm of the State, CAL. CONST., art. XI, § 1-2,[1] the City cannot assert federal constitutional rights against its creator. As Justice Cardozo explained long ago in a case rejecting a city's equal protection claim against a state, "a municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator." *Williams v. Mayor and City Council of Baltimore*, 289 U.S. 36, 40 (1933).[2]

---

[1] *See also People ex rel. Freitas v. City and County of San Francisco*, 92 Cal. App. 3d 913, 921 (Cal. App. Ct. 1979) ("Municipal corporations are political subdivisions of the state."); Doc. 111-23 ("[T]he City and County of San Francisco is a charter city and county organized and existing under the Constitution and laws of the State of California.").

[2] *See also Coleman v. Miller*, 307 U.S. 433, 440 (1939) ("Being but creatures of the State, municipal corporations have no standing to invoke the … provisions of the Fourteenth Amendment of the Constitution in opposition to the will of their creator."); *City of Newark v. State of New Jersey*, 262 U.S. 192, 196 (1923) (rejecting an argument that the State's enforcement of a statute against a city violates the Equal Protection Clause because "[t]he regulation of municipalities is a matter peculiarly within the domain of the State" and a "City cannot invoke the protection of the Fourteenth Amendment against the State."); *City of Trenton v. State of New Jersey*, 262 U.S. 182, 187 (1923); *Hunter v. City of Pittsburgh*, 207 U.S. 161, 168 (1907) ("Municipal corporations are political subdivisions of the State…. [T]he State is supreme, and … may do as it will, unrestrained by any provision of the Constitution of the United States."); *Trustees of Dartmouth College v. Woodward*, 17 U.S. (4 Wheat.) 518, 629 (1819) ("That the framers of the constitution did (Continued)

The Ninth Circuit has thus upheld the dismissal of a California city's Fourteenth Amendment claims against the State because "[i]t is well established that (political) subdivisions of a state may not challenge the validity of a state statute under the Fourteenth Amendment." *City of South Lake Tahoe v. California Tahoe Reg'l Planning Agency*, 625 F.2d 231, 233-34 (9th Cir. 1980). *See also Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, No. 96-4125, 1997 U.S. Dist. LEXIS 24304, **12-14 & 12 n.7 (C.D. Cal. Mar. 31, 1997) (noting that *South Lake Tahoe* continues to be binding law in the Ninth Circuit and applying it to bar a city from suing the State). And the Sixth Circuit, rejecting sate universities' constitutional challenges to a Michigan constitutional provision adopted by popular referendum, has observed: "It is not clear . . . how the Universities, as subordinate organs of the State, have First Amendment rights against the State or its voters… One does not generally think of the First Amendment as protecting the State from the people but the other way around. . . . " *Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 247 (6th Cir. 2006).

Accordingly, San Francisco possesses no "claim" that it may assert in this litigation and its intervention must be denied. *See Texas v. United States Dep't of Energy*, 754 F.2d 550, 553 (5th Cir. 1985) ("Nor is permissive intervention under Rule 24(b)(2) appropriate, because the utilities have no claim or defense involving common questions of law or fact with those in the ongoing proceeding as required by the rule."). As the Ninth Circuit has explained, "[t]he prevailing view of the federal courts is that the claims of permissive Rule 24(b) intervenors must be supported by independent jurisdictional grounds." *Blake v. Pallan*, 554 F.2d 947, 955 (9th Cir. 1977). With no jurisdiction to hear the City's constitutional claims against the State, this Court cannot grant permissive intervention to the City. *See EEOC v. Pan American World Airways, Inc.*, 897 F.2d 1499, 1510 (9th Cir. 1990) ("King can claim no substantive rights over which the district court

(Cont'd)
not intend to retrain the States in the regulation of their civil institutions, adopted for internal government, and that instrument they have given us, is not to be so construed, may be admitted."); *Associated General Contractors v. San Francisco Unified Sch. Dist.*, 616 F.2d 1381, 1389-90 (9th Cir. 1980) (rejecting San Francisco's claim that a state law is unconstitutional because "[t]he competent entity in such a situation [of disagreement] is always the legislature"); *State of California v. Marin Mun. Water Dist.*, 111 P.2d 651, 655 (Cal. 1941); *Cox Cable San Diego, Inc. v. City of San Diego*, 188 Cal. App. 3d 952, 966 (Cal. App. Ct. 1987).

would have had jurisdiction. Without a jurisdictional basis, there can be no intervention under Rule 24(b).") (internal citations omitted).

## II. EVEN IF PERMISSIVE INTERVENTION WERE NOT JURISDICTIONALLY BARRED, THE COURT SHOULD DENY THE CITY'S REQUEST FOR PERMISSIVE INTERVENTION.

Even if there were not a threshold jurisdictional bar to the City's participation as a party to this case, the required analytical framework for assessing a request for permissive intervention would still counsel strongly against granting the City's motion. "If the trial court determines that the initial conditions for permissive intervention . . . are met, it is then entitled to consider other factors in making its discretionary decision on the issue of permissive intervention." *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977). These factors include: (1) the "nature and extent of [proposed] intervenors' interest"; (2) proposed intervenors' "standing to raise relevant legal issues"; (3) "whether [proposed] intervenors' interests are adequately represented by other parties"; and (4) "whether . . . intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.*; FED. R. CIV. P. 24(b)(3). All of these factors weigh against granting the City's request to intervene.

### A. The Interests Asserted By The City Do Not Warrant Its Intervention In This Case.

A district court, when deciding whether to grant permissive intervention, should consider "the nature and extent of [the proposed] intervenors' interest." *Spangler*, 552 F.2d at 1329. The City asserts two alleged interests in seeking to strike down Proposition 8: (1) "it is compelled to enforce" what it believes to be "a constitutionally infirm law"; and (2) "it bears the financial . . . consequences" of enforcing Proposition 8. (Doc. # 109 at 2, 12.) But neither of these interests justifies the City's intervention.

First, the City does not have *any* interest in refusing to enforce what it believes to be an unconstitutional provision of the California Constitution. Governing state law, such as Proposition 8, "is presumed to be constitutional," *Lockyer v. City and County of San Francisco*, 95 P.3d 459, 476 (Cal. 2004), especially here, where the California Supreme Court recently upheld Proposition 8 as valid under the State Constitution, *see Strauss v. Horton*, 207 P.3d 48, 114 (Cal. 2009). Moreover, no court has held Proposition 8 to be in violation of the United States Constitution.

Thus, under these circumstances, where no judicial body has declared Proposition 8 to be unconstitutional, a local government entity has no legitimate interest in refusing to enforce it. *See Lockyer*, 95 P.3d at 473 (acknowledging that local governments "generally do[] not have the authority, in the absence of a judicial determination of unconstitutionality, to refuse to enforce [state law] on the basis of [a government] official's view that it is unconstitutional").

Second, the City's economic interests are not of the kind considered to be "legally protectable" for intervention purposes.[3] As the en banc Fifth Circuit has explained, to be legally protectable, a proposed intervenor must demonstrate "something more than an economic interest." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir. 1984) (en banc). Instead, the applicant must have "a claim as to which the applicant is the real party in interest," and "a party has no standing to assert a right if it is not his own." *Id.* (quotation marks omitted). "The real party in interest is the party who, by substantive law, possesses the right to be enforced, and not necessarily the person who will ultimately benefit from the recovery." *Id.* (quotation marks omitted). That requirement is not satisfied here, and the City does not contend that it is. The City seeks to enforce the alleged equal protection and due process rights of its individual citizens—rights that belong not to the City, but to its individual citizens. *See, e.g.*, *Coalition for Econ. Equity v. Wilson*, 122 F.3d 692, 704 (9th Cir. 1997) ("[T]he Fourteenth Amendment affords individuals, not groups, the right to demand equal protection…."). That the City allegedly might reap economic rewards from successful litigation of those constitutional claims does not transform those economic rewards into legally protectable interests for intervention purposes.

Thus, the interests asserted by the City are insufficient to warrant its intervention in this case.[4]

---

[3] While a significantly protectable interest is not *required* for permissive intervention, *see United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002) (outlining the requirements for permissive intervention), an applicant's lack of a significantly protectable interest weighs against granting its request to intervene, *Spangler*, 552 F.2d at 1329.

[4] As another possibly relevant interest in this case, the City also references the alleged harm to its citizens caused by Proposition 8. (Doc. # 109 at 13.) As noted, however, those interests belong not to the City, but to its citizens. Any aggrieved citizen (Continued)

**B.     The City Does Not Have Standing To Assert Its Claims.**

A district court should also consider whether the proposed intervenor has "standing to raise relevant legal issues." *Spangler*, 552 F.2d at 1329. The City undoubtedly does not have standing to challenge the constitutionality of Proposition 8. That undeniable fact weighs against its request for intervention.

As demonstrated above, the City does not have standing because it may not advance constitutional claims against the State. *See South Lake Tahoe*, 625 F.2d at 233-34 (California city has no standing to advance federal constitutional claims against the State). Even if the City could bring such a claim, however, in this case it would still not satisfy the prudential requirements of standing. *See Dupree v. United States*, 559 F.2d 1151, 1153 (9th Cir. 1977) (holding that intervention is subject to the "well-established prudential barriers to standing"). First, "the presence of harm to a party does not permit him to assert the rights of third parties in order to obtain redress for himself." *Id.* Here, the City seeks to assert the alleged equal protection and due process rights of individual citizens, which is not sufficient for standing purposes. *Id.* at 1153-54; *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). Second, "the interest sought to be protected by the complainant [must] arguably [be] within the zone of interests to be protected … by the … constitutional guarantee in question." *Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970). The City has not explained how the its purported interests in (i) not having to enforce what it believes are unconstitutional laws and (ii) reaping the alleged financial benefits of same-sex marriages are the types of interests the Fourteenth Amendment is meant to protect. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (holding that the party "invoking federal jurisdiction bears the burden of establishing" standing).

(Cont'd)
who alleges harm from Proposition 8 can file a lawsuit to protect his or her own interests. It is neither the City's right nor duty to do so. Indeed, many of the City's citizens supported Proposition 8 and presumably would be harmed by its invalidation. The City cannot, and does not attempt to, simultaneously protect both sets of interests (and the range of interests that fall in between), which is precisely why such individualized interests are best asserted by individuals. Thus, the City's alleged interest in protecting the interests of some of its citizens (while potentially harming the interests of others) does not support its intervention request.

The City's inability to establish standing distinguishes its request for party-plaintiff status from the request of the three private organizations—Our Family Coalition, Lavender Seniors of the East Bay, and Parents, Families, and Friends of Lesbians and Gays ("PFLAG"). Unlike those private organizations, all of which likely can file their own lawsuits challenging Proposition 8, the City cannot institute a similar legal action. Thus, the judicial efficiency achieved by granting intervention to a party who can otherwise file its own suit is wholly absent here. As a result, allowing the City to intervene will unnecessarily add another party to these proceedings, without the benefit of preventing potential future litigation. *See Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1496 n.8 (9th Cir. 1995) (noting that intervention "often prevent[s] . . . future litigation involving related issues"). This factor weighs heavily against granting the City's motion.

### C. The City's Interests Are Adequately Represented By Plaintiffs.

A district court should also consider "whether [the proposed] intervenors' interests are adequately represented by other parties." *Spangler*, 552 F.2d at 1329. The City, like Plaintiffs, has the ultimate objective of invalidating Proposition 8; thus, a presumption arises that Plaintiffs will adequately represent the City's interests. *See League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305 (9th Cir. 1997) ("[W]here an applicant for intervention and an existing party have the same *ultimate objective*, a presumption of adequacy of representation arises") (quotations and alterations omitted). The City "bears the burden of demonstrating that existing parties do not adequately represent its interests," *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996), and it offers nothing to rebut the presumption of adequate representation.

For example, nowhere does the City contend that Plaintiffs are incapable of or unwilling to introduce relevant evidence or make necessary arguments. *See California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986) (noting that one of the questions in determining adequacy of representation is "whether the present party is capable and willing to make [the proposed intervenor's] arguments"). On the contrary, the City admits that it has worked together "with Plaintiffs' counsel in a cooperative way," sharing "information" and "ideas" about arguments and evidence. (Doc. # 111 at 8 ¶ 24.)

DEFENDANTS-INTERVENORS' OPPOSITION TO MOTION TO INTERVENE BY CITY AND COUNTY OF SAN FRANCISCO – CASE NO. 09-CV-2292 VRW

Nor does the City argue that it will offer any "necessary elements" to the proceedings that Plaintiffs will neglect. *See Tahoe Reg'l Planning Agency*, 792 F.2d at 778 (noting that one of the questions in determining adequacy of representation is "whether the [proposed] intervenor would offer any necessary elements to the proceedings that other parties would neglect").[5] Instead, the City argues only that its intervention as a party might "assist" Plaintiffs and the Court (*see* Doc. # 109 at 11 (arguing that "its trial expertise" might "assist . . . in building a full trial record")), allegations which do not even purport to demonstrate inadequate representation.

In fact, the City all but admits that its interests in challenging Proposition 8 are adequately represented by Plaintiffs. The City, for instance, acknowledges that its interests and "perspective" are "closely aligned with [those] of the Plaintiffs in this action." (Doc. # 109 at 13.) *See Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) ("The most important factor in determining the adequacy of representation is how the [proposed intervenor's] interest compares with the interests of existing parties."). And the City admits that "Plaintiffs are ably represented by experienced attorneys." (Doc. # 109 at 10-11.) In short, the City does not question Plaintiffs' ability to represent its interests in this case.

As further evidence, the City's actions during the first month of this litigation display its apparent trust in Plaintiffs to adequately protect its interests. Within a week of commencing this action, Plaintiffs filed a motion for preliminary injunction, which raised and argued the substantive issues involved in this case. (*See* Doc. # 7.) The legal standard for a preliminary injunction requires the Court to decide whether Plaintiffs "are likely to succeed on the merits" of their claims. *See California Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 849 (9th Cir. 2009). An adverse ruling on that motion—one declaring that Plaintiffs are unlikely to succeed on the merits—would have been very detrimental to the City's stated goal of overturning Proposition 8. But rather than

---

[5] The City does repeatedly mention that its intervention as a party plaintiff "will add a unique local government perspective" to this case. (Doc. # 109 at 11.) But the City does not contend that a local government perspective is necessary for resolving this case; nor does the City even mention why that perspective would be helpful in a lawsuit challenging a statewide constitutional amendment; nor does the City explain why it should be allowed to contravene the will of its creator and superior sovereign, the State. In any event, to the extent that the Court seeks a local government perspective on these issues, it can obtain that from Defendants O'Connell and Logan.

seeking to intervene at that time, the City instead filed an *amicus* brief. (*See* Doc. # 53.) This deference to Plaintiffs demonstrates that the City trusts them to adequately represent its interests.

### D. Allowing The City To Intervene Will Unduly Delay The Proceedings And Prejudice The Parties, With No Appreciable Benefit To The Court.

"In exercising its discretion [to allow permissive intervention], the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." FED. R. CIV. P. 24(b)(3). "The 'delay or prejudice' standard . . . captures all the possible drawbacks of piling on parties." *Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1235 (D.C. Cir. 2004).

The City insists on and is "committed to" creating an evidentiary record "through a full and fair trial in this case." (Doc. # 109 at 14.) But as the Proponents and ProtectMarriage.com have explained in their Case Management Statement, resolving the legal and factual issues in this case does not require a trial. In fact, a long, drawn-out trial will only delay the speedy adjudication of Plaintiffs' claims. Thus, the City's focus on resolving this case through a trial will unnecessarily delay the proceedings.

In any event, the City's participation is not necessary to secure a trial and will not be helpful to the efficient litigation of trial proceedings should the Court ultimately deem them necessary. The City's efforts in the *Marriage Cases* show that it will try to interject irrelevant, extraneous facts and evidence into this case. There, the City insisted on introducing extensive factual evidence that no other plaintiffs or the Superior Court thought were relevant. And despite the Superior Court's "repeatedly stat[ing] . . . that . . . [it] could decide the cases without evidence as a matter of law" (Doc. # 111 at 3 ¶ 4), the City introduced a far-reaching factual record and, in doing so, wasted court resources and unduly complicated the proceedings. The City is poised to do the same in this case. (Doc. # 109 at 14.)

Allowing the City to intervene here would also prejudice the parties. Granting intervention "significantly diminishe[s]" "the control of the original parties over their own lawsuit," *New Orleans Pub. Serv., Inc.*, 732 F.2d at 473; thus, Plaintiffs would lose their strategic autonomy over the litigation. The Proponents and ProtectMarriage.com would also be prejudiced. Adding more

party plaintiffs—particularly those who are "committed" to building an extensive record containing irrelevant materials (*see* Doc. # 109 at 14)—unnecessarily compounds the Proponents and ProtectMarriage.com's work, by requiring them to, among other things, respond to more and potentially duplicative discovery requests and conduct more expert depositions, and it greatly increases the likelihood of irrelevant issues, such as "the local perspective" of San Francisco, entering into this case. *See Microsoft Corp.*, 373 F.3d at 1235 ("[P]rejudice will take the form . . . of . . . extra cost"). Gratuitously piling on party plaintiffs unduly prejudices the Proponents and ProtectMarriage.com, who stand alone in their defense of Proposition 8.

Notably, the delay and prejudice created by the City's intervention are not counterbalanced by any appreciable benefit to the Court. Simply put, allowing the City to intervene would needlessly duplicate and complicate all aspects of this litigation. The City acknowledges that Plaintiffs are "ably represented by experienced attorneys" (*see* Doc. # 109 at 10-11), and that the City has provided Plaintiffs with "information," "ideas," and "thoughts" about the case, as well as "copies of many items from the record [it] created in the *Marriage Cases*" (*see* Doc. # 111 at 8 ¶ 24). Additionally, in conjunction with its motion to intervene, the City filed (what appear to be) nearly all of the declarations it submitted in the *Marriage Cases*. (*See* Docs. # 111-6 – 111-22.) Thus, Plaintiffs have access to, and will likely introduce, most if not all of the evidence the City has developed. In light of this, allowing the City to intervene serves minimal purpose, other than delaying and complicating the proceedings with an unnecessary party whose interests are adequately represented.

The City also alleges that its officials have knowledge about the harmful effects of sexual-orientation discrimination. (Doc. # 109 at 9.) But again, that information is not hidden from Plaintiffs or unattainable by them. In fact, the City has made that information available to Plaintiffs by introducing expert-witness declarations from those City officials as evidence in this case. (*See, e.g.*, Docs. # 111-14, 111-15, 111-16.) And to the extent that Plaintiffs want additional information from those officials, they can acquire it through discovery. Also, it is worth emphasizing that the City's declarations about the effects of sexual-orientation discrimination—like its evidence on the other factual questions discussed in its motion (*see* Doc. # 109 at 7-8)—are not the only evidence

available on that issue. Thus, Plaintiffs can acquire evidence about the effects of sexual-orientation discrimination, should they deem it necessary to their case, without regard for the City's sources.

The City also highlights that its Attorney's Office "has tried dozens of cases in the past few years." (Doc. # 109 at 14.) But that fact is irrelevant. Plaintiffs are "ably represented by experienced attorneys" (*see* Doc. # 109 at 10-11), who no doubt are familiar with how to litigate a case. Thus, regardless of the City's trial experience, its direct involvement as a party plaintiff in this case, where Plaintiffs' attorneys are fully capable and equipped to litigate it, will result only in unnecessary duplication, complication, prejudice, and delay (rather than any appreciable benefit to the Court).

In sum, the prejudice analysis tips sharply in favor of denying the City's request to intervene.

### E. The City's Participation As *Amicus* Allows It To Sufficiently Protect Its Interests And Impart Its Knowledge To The Court.

The City can continue, as it has already begun, to sufficiently protect its interests through *amicus* participation in this case. The availability and sufficiency of *amicus* participation weighs against granting the City's intervention request. *See Bates v. Jones*, 127 F.3d 870, 874 (9th Cir. 1997) (affirming the district court's denial of an organization's motion to intervene because that organization could "sufficiently protect its interest as an advocate for [the relevant issues] by its filing of amicus briefs"); *see also Shelter Framing Corp. v. Pension Benefit Guar. Corp.,* 705 F.2d 1502, 1508 (9th Cir. 1983) (taking into consideration the district court's grant of *amicus* status in finding no abuse of discretion in denial of intervention motion), *rev'd in part on other grounds,* 467 U.S. 717 (1984); *Silver v. Babbitt*, No. 95-15401, 1995 U.S. App. LEXIS 29739, at *8 (9th Cir. Oct. 10, 1995) ("[T]he [district] court's decision to allow appellants to participate in this action as *amicus curiae* supports our finding that the denial of appellants' motion to intervene permissively was not an abuse of discretion.").

The primary basis for the City's intervention motion is its desire to "leverage[]" in this case the work that it did in compiling a "record" for the *Marriage Cases* litigation. (Doc. # 109 at 14.) But by all accounts, the City is already accomplishing that objective through its participation as

12

*amicus*. The City has "assist[ed] the Plaintiffs and their lawyers in this case from the outset," "endeavored to work with Plaintiffs' counsel in a cooperative way," and built a "constructive relationship" with them. (Doc. # 111 at 8 ¶ 24.) Through that relationship, the City has provided "information," "ideas," "thoughts," "an amicus brief," and "copies of many items from the record [it] created in the *Marriage Cases*." (Doc. # 111 at 8 ¶ 24.) Thus, the City, through its role as *amicus*, has already effectively contributed its experience to assist in this litigation. Its participation as a party plaintiff is not necessary to achieve that goal.

*Amicus curiae* participation can be especially effective in this case. As the Proponents and ProjectMarriage.com explain at greater length in their case management statement, the facts at issue are primarily legislative in nature. Legislative facts, unlike adjudicative facts, do not concern the particular parties a case but rather "have relevance to legal reasoning . . . in the formulation of a legal principle or ruling by a judge or court." FED. R. EVID. 201, Advisory Committee Note. When ruling on legislative facts, courts are not bound by the rules governing judicial notice of adjudicative facts, and they thus may consider (among other things) information presented by the brief of a non-party *amicus curiae*. *See id*. Denying the City party status will thus not prejudice its ability to share the benefit of its expertise with the Court.

Permitting a government entity's participation as *amicus* (instead of as intervenor) is particularly appropriate where, as here, the intervention applicant does not allege that it possesses "any necessary element which would be added to the suit because of [its] intervention," but instead "claim[s] that the litigation would be substantially benefitted by [its] knowledge of the [applicable] law and the facts[.]" *See Blake v. Pallan*, 554 F.2d 947, 955 (9th Cir. 1977) ("[T]he Commissioner has not pointed to any necessary element which would be added to the suit because of his intervention. While he does claim that the litigation would be substantially benefitted by his knowledge of the [applicable] law and the facts . . . , such benefits might be obtained by an amicus brief rather than bought with the price of intervention."). In this case, *amicus* participation has allowed the City to inform the Court of its positions. It has also enabled the City's attorneys to provide the Court with the benefit of their legal experience. As a result, the intervention motion should be denied, and instead, the City should continue its participation as *amicus*.

**CONCLUSION**

For the foregoing reasons, this Court should deny the City's motion to intervene in this case.

Dated: August 7, 2009

        COOPER AND KIRK, PLLC
        ATTORNEYS FOR DEFENDANTS-INTERVENORS DENNIS HOLLINGSWORTH, GAIL J. KNIGHT, MARTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM, MARK A. JANSSON, AND PROTECTMARRIAGE.COM – YES ON 8, A PROJECT OF CALIFORNIA RENEWAL

        By: s/Charles J. Cooper
            Charles J. Cooper