COOPER AND KIRK, PLLC
Charles J. Cooper (DC Bar No. 248070)*
*ccooper@cooperkirk.com*
David H. Thompson (DC Bar No. 450503)*
*dthompson@cooperkirk.com*
Howard C. Nielson, Jr. (DC Bar No. 473018)*
*hnielson@cooperkirk.com*
Peter A. Patterson (Ohio Bar No. 0080840)*
*ppatterson@cooperkirk.com*
1523 New Hampshire Ave. N.W., Washington, D.C. 20036
Telephone: (202) 220-9600, Facsimile: (202) 220-9601

LAW OFFICES OF ANDREW P. PUGNO
Andrew P. Pugno (CA Bar No. 206587)
*andrew@pugnolaw.com*
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 608-3065, Facsimile: (916) 608-3066

ALLIANCE DEFENSE FUND
Brian W. Raum (NY Bar No. 2856102)*
*braum@telladf.org*
James A. Campbell (OH Bar No. 0081501)*
*jcampbell@telladf.org*
15100 North 90th Street, Scottsdale, Arizona 85260
Telephone: (480) 444-0020, Facsimile: (480) 444-0028

ATTORNEYS FOR DEFENDANT-INTERVENOR DENNIS HOLLINGSWORTH,
GAIL J. KNIGHT, MARTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM,
MARK A. JANSSON, and PROTECTMARRIAGE.COM – YES ON 8, A
PROJECT OF CALIFORNIA RENEWAL

* Admitted *pro hac vice*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the California Department of Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic | CASE NO. 09-CV-2292 VRW<br><br>**DEFENDANTS-INTERVENORS PROPOSITION 8 PROPONENTS AND PROJECTMARRIAGE.COM'S CASE MANAGEMENT STATEMENT**<br><br>Date:  August 19, 2009<br>Time:  10:00 a.m.<br>Judge:  Chief Judge Vaughn R. Walker<br>Location:  Courtroom 6, 17th Floor |

1   Planning for the California Department of Public
    Health; PATRICK O'CONNELL, in his official
2   capacity as Clerk-Recorder for the County of
    Alameda; and DEAN C. LOGAN, in his official
3   capacity as Registrar-Recorder/County Clerk for
    the County of Los Angeles,
4

5                    Defendants,

6   and

7   PROPOSITION 8 OFFICIAL PROPONENTS
    DENNIS HOLLINGSWORTH, GAIL J.
8   KNIGHT, MARTIN F. GUTIERREZ, HAK-
    SHING WILLIAM TAM, and MARK A.
9   JANSSON; and PROTECTMARRIAGE.COM –
    YES ON 8, A PROJECT OF CALIFORNIA
10  RENEWAL,

11                   Defendant-Intervenors.

12

13  <u>Additional Counsel for Defendant-Intervenors</u>

14

15  ALLIANCE DEFENSE FUND
    Timothy Chandler (CA Bar No. 234325)
    *tchandler@telladf.org*
16  101 Parkshore Drive, Suite 100, Folsom, California 95630
    Telephone: (916) 932-2850, Facsimile: (916) 932-2851
17
    Jordan W. Lorence (DC Bar No. 385022)*
18  *jlorence@telladf.org*
    Austin R. Nimocks (TX Bar No. 24002695)*
19  *animocks@telladf.org*
    801 G Street NW, Suite 509, Washington, D.C. 20001
20  Telephone: (202) 637-4610, Facsimile: (202) 347-3622

21  * Admitted *pro hac vice*

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ..................................................................................................iii

CASE MANAGEMENT STATEMENT ............................................................................... 1

I.  A Trial is Not Necessary to Resolve this Case .......................................................... 3

    A.  There are dispositive legal issues that will resolve this case ......................................... 3

    B.  Trial is not necessary to build a factual record sufficient to decide the case effectively and efficiently ............................................................................................ 4

II.  Proposed Schedule ................................................................................................... 10

    A.  Cross-motions for summary judgment on dispositive legal issues ........................... 11

    B.  Discovery ................................................................................................................ 11

    C.  Comprehensive briefs on remaining disputed issues ................................................ 11

III.  Factual Issues Identified in the Court's June 30, 2009 Order .................................. 13

    A.  The Appropriate Level of Scrutiny Under the Equal Protection Clause .................. 14

        1. The history of discrimination gays and lesbians have faced.................................. 14

        2. Whether the characteristics defining gays and lesbians as a class might in any way affect their ability to contribute to society.................................................. 15

        3. Whether sexual orientation can be changed, and if so, whether gays and lesbians should be encouraged to change it .............................................................. 15

        4. The relative political power of gays and lesbians, including successes of both pro-gay and anti-gay legislation ...................................................................... 15

    B.  Whether the Right Asserted by Plaintiffs Is Deeply Rooted in this Nation's History and Tradition and thus Subject to Strict Scrutiny Under the Due Process Clause ............................................................................................................ 16

    C.  Whether the Asserted State Interest Can Survive Plaintiffs' Constitutional Challenge ................................................................................................................... 16

        1. The longstanding definition of marriage in California .......................................... 17

        2. Whether the exclusion of same-sex couples from marriage leads to increased stability in opposite sex marriage or alternatively whether permitting same-sex couples to marry destabilizes opposite sex marriage ................................. 17

        3. Whether a married mother and father provide the optimal child-rearing environment and whether excluding same-sex couples from marriage promotes this environment.................................................................................... 18

4. Whether and how California has acted to promote these interests in other family law contexts ........................................................................................... 18

D.    Whether or not Prop. 8 Discriminates on the Basis of Sexual Orientation or Gender or Both ........................................................................................................ 18

1. The history and development of California's ban on same-sex marriage ............ 18

2. Whether the availability of opposite-sex marriage is a meaningful option for gays and lesbians ..................................................................................................... 19

3. Whether the ban on same-sex marriage meaningfully restricts options available to heterosexuals ......................................................................................... 19

4. Whether requiring one man and one woman in marriage promotes stereotypical gender roles ......................................................................................... 19

E.    Whether Prop. 8 Was Passed with Discriminatory Intent ........................................ 19

1. The voters' motivation or motivations for supporting Prop. 8, including advertisements and ballot literature considered by California voters ....................... 20

2. The differences in actual practice of registered domestic partnerships, civil unions and marriage, including whether married couples are treated differently from domestic partners in governmental and non-governmental contexts ............... 21

## TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE**

*Baker v. Nelson*, 409 U.S. 810 (1972) ........................................................................... 3

*Carhart v. Gonzales*, 413 F.3d 791 (8th Cir. 2005), *rev'd*, 550 U.S. 124 (2007).............................. 5

*Daggett v. Commission on Governmental Ethics & Election Practices*, 172 F.3 104 (1st Cir. 1999) 6

*Drummond v. Fulton County Dep't of Family & Children's Serv.*,
   563 F.2d 1200 (5th Cir. 1977) ........................................................................................ 6

*Dunagin v. Oxford*, 718 F.2d 738 (5th Cir. 1983)413 F.3d 791 (8th Cir. 2005) ........................... 7, 8

*Equality Found. v. City of Cincinnati*, 128 F.3d 289 (6th Cir. 1997), *cert. denied*,
   525 U.S. 943 (1998)....................................................................................................... 8

*Equality Found. v. City of Cincinnati*, 518 U.S. 1001 (1996) .......................................... 8

*Equality Found. v. City of Cincinnati*, 54 F.3d 261 (6th Cir. 1995)................................... 8

*FCC v. Beach Commc'n*, 508 U.S. 307 (1993)................................................................. 16

*Free v. Peters*, 12 F.3d 700 (7th Cir. 1993)................................................................... 7

*Grutter v. Bollinger*, 539 U.S. 306 (2003)..................................................................... 9

*Indiana H. B. R.R. Co. v. American Cyanamid Co.*, 916 F.2d 1174 (7th Cir. 1990)..................... 5, 7

*In re Marriage Cases*, 183 P. 3d 384 (Cal. 2008).......................................................... 17

*Landell v. Sorrell*, 382 F.3d 91 (2d Cir. 2002) ............................................................. 9

*Langevin v. Chenango Court, Inc.*, 447 F.2d 296 (2d Cir. 1971) ...................................... 5

*Lockhart v. McCree*, 476 U.S. 162 (1986)..................................................................... 7

*Marshall v. Sawyer*, 365 F.2d 105 (9th Cir. 1966) ........................................................ 5

*NOW, Washington, D.C. Chapter v. Social Sec. Admin. of Dep't of Health & Human Serv.*,
   736 F.2d 727 (D.C. Cir. 1984)........................................................................................ 6

*PDK Labs. Inc. v. United States DEA*, 362 F.3d 786 (D.C. Cir. 2004) ............................... 3

*Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210 (1908).................................................. 6

*Romer v. Evans*, 517 U.S. 620 (1996)..................................................................... 19, 20

*Roper v. Simmons*, 543 U.S. 551 (2005)....................................................................... 9

*SASSO v. Union City*, 424 F.2d 291 (9th Cir. 1970)....................................................... 20

*State v. Erickson*, 574 P.2d 1 (Alaska 1978)................................................................. 4, 6

*Strauss v. Horton*, 46 Cal. 4th 364 (Cal. 2009)........................................................................21

*United States v. $124,570 U.S. Currency*, 873 F.2d 1240 (9th Cir. 1989) ..........................................5

*United States v. Singleterry*, 29 F.3d 733 (1st Cir. 1994)....................................................................7

*United States v. Virginia*, 518 U.S. 515 (1996) ....................................................................................9

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ............................................................................16

**RULES**

Fed. R. Evid. 201 ............................................................................................................5, 6, 9

At the Court's direction, *see* July 2, 2009 Tr. at 34:2-12, the Proposition 8 Official Proponents and ProjectMarriage.com ("Proposition 8 Proponents") respectfully submit this case management statement.

## CASE MANAGEMENT STATEMENT

The Proposition 8 Proponents share the Court's goal of resolving the important issues presented by this litigation in a "just, speedy and inexpensive" manner. *See* the Court's June 30, 2009 Order, Doc. # 76 ("June 30 Order") at 9. As we will explain, this end can best be achieved through two stages of briefing—the first focused on dispositive or controlling legal issues, and the second (if necessary) giving full airing to any remaining issues, including those identified by the Court's June 30 Order. *See* Doc. # 76. The parties discussed this plan, and other issues identified by the Court, during a July 20 telephonic conference. In an effort to forge as much consensus as possible and to sharpen for this Court's benefit the remaining areas of disagreement, on August 5, 2009, the Proposition 8 Proponents and the Plaintiffs exchanged respective draft case management statements and shared them with the other parties to this case. Unfortunately, the parties could not agree on a preferred way forward, and thus are submitting separate case management statements rather than a single, joint document.

The Court has asked the parties to "get down to the specifics of how we are going to proceed" in this case. July 2, 2009 Tr. at 34:11-12. We submit that this Court should follow the course set in each of the many gay marriage cases that have been litigated over the course of the last decade. In not one of these cases has a trial been held. Rather, in most cases, the parties have been afforded an opportunity to build a complete factual record on issues not controlled by binding precedent. And then, the courts have resolved the cases on a set of comprehensive briefs drawing upon the factual materials developed by the parties and the large volume of relevant pre-existing literature. As we demonstrate below, the facts at issue here are legislative in nature so any disputes

1

over them can be resolved on the briefs submitted at the close of discovery. Such an approach would serve the goals of speed and efficiency: a massive trial, which could be conducted only after comprehensive summary judgment briefing was complete and ruled upon by the court, would be averted; and at the same time, the appellate courts would have a complete record which they can, and will, review *de novo* since legislative facts are at issue in this case.

The process that we propose is materially indistinguishable from the one used by the California courts in the *Marriage Cases.* The *Marriage Cases* involved many of the same players as this case does. Notably, counsel representing several challengers to California's marriage laws included attorneys from the Lambda Legal Defense and Education Fund, the National Center for Lesbian Rights, and the ACLU of Northern California—the same organizations (and many of the same individual attorneys) representing Proposed Plaintiff-Intervenors Our Family Coalition, Lavender Seniors of the East Bay, and Parents, Families, and Friends of Lesbians and Gays. *See* Doc. # 79 at 1, Doc. # 111-2 at 2-3. They informed the Superior Court on behalf of their clients that "for final disposition of these cases . . . there is no *need for the Court to hold an evidentiary hearing* and make any factual findings because the only material facts in this action are those that establish the Court's jurisdiction to consider and resolve the pending legal claims." Doc. # 111-3 at 5 (emphasis added); *see also id.* at 6-7 ("because . . . the legal question presented . . . may be resolved as a matter of law, . . . there are no disputes of material fact requiring an evidentiary hearing and corresponding factual "findings" by this Court."). The California Superior Court agreed; it did not hold a trial, but instead resolved the case as a matter of law on the legal submissions of the parties. The closely similar issues presented by this case can likewise be resolved as a matter of law.

Even if this Court believes that more factual development is needed, the City of San Francisco's approach in the *Marriage Cases* demonstrates how that development can take place

absent a trial.  Although the City did not seek an evidentiary hearing, it did request that the Court receive expert testimony and make factual findings.  The City acknowledged that the case involved primarily questions of legislative fact, and that courts "have . . . been willing to derive such facts from a variety of sources."  Doc. # 111-1 at 4.  The City sought to support its proposed legislative factual findings with declarations submitted by several experts.  *See id.*; *see also* Doc. # 111 at 6 ("The City submitted to the Superior Court the declarations of twelve expert witnesses.").  If the Court wishes, the parties to this case can similarly build a record without the necessity of trial to assist this Court in addressing any issues of legislative fact material to its decision.

Our statement concludes by addressing with more specificity the factual issues the Court identified in the June 30 order.[1]

I.     **A Trial is Not Necessary to Resolve this Case**

A.     **There are dispositive legal issues that resolve this case**

By dismissing the appeal in *Baker v. Nelson*, 409 U.S. 810 (1972), for want of a substantial federal question, the Supreme Court decided that the Fourteenth Amendment does not require the states to extend marriage to same sex couples.  *See* Proposed Intervenors' Opposition to Plaintiffs' Motion for Preliminary Injunction, Doc. # 36 at 2-6.  It is therefore unnecessary for the Court to address the myriad issues presented by this case.  At the very least, the Court should determine whether or not *Baker* controls before turning its attention to those issues.  *Cf. PDK Labs. Inc. v. United States DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment) ("This is a sufficient ground for deciding this case, and the cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide

---

[1] The parties' discussions have been limited to the facts identified by the Court's June 30 Order.  By discussing them here, we do not intend to forego our ability to raise other factual matters as the case develops.

1   more—counsels us to go no further.").

2       Apart from the dispositive effect of *Baker,* this case presents many other issues that may be

3   decided without significant factual development, either because they are controlled by binding

4   precedent or because they present questions largely legal in nature.  These issues include whether

5   Proposition 8 discriminates on the basis of sexual orientation, the level of equal protection scrutiny

6   applied to laws that discriminate on the basis of sexual orientation, whether Plaintiffs' alleged

7   liberty interest implicates the fundamental right to marry as recognized by controlling case law, the

8   reasonableness of certain interests that Proposition 8 advances, and the relevance of the subjective

9   intent of California's voters.

10

11      An initial round of briefing on dispositive or controlling legal issues would yield several

12  advantages.  First and foremost, such briefing might allow the Court to resolve the case, and thus

13  allow the case to move toward ultimate resolution more quickly.  Second, the Court might resolve

14  certain issues in a way that streamlined future proceedings by making clear that certain issues were

15  legally irrelevant.  In addition, under the schedule we propose, such briefing would not result in any

16  delay since fact discovery would be ongoing.

17

18      **B.**    **Trial is not necessary to build a factual record sufficient to decide the case**
          **effectively and efficiently**

19

20      Should the Court determine that extensive factual development is necessary to decide the

21  issues presented, a trial is not necessary.  Given the number of experts that are likely to be retained

22  and the sheer volume of information that would be presented, a trial in this case would likely

23  stretch on for weeks if not months, consuming considerable time and resources.  And the issues that

24  are likely to be contested at trial (for example, the relative political power of gays and lesbians)

25  may be presented fully and effectively—and much more efficiently—through the submission of

26  comprehensive briefs addressing a factual record complete with documentary evidence, expert

27  reports, depositions of experts, and scholarly and scientific studies.  *Cf. State v. Erickson*, 574 P.2d

28

4

1, 5-6 (Alaska 1978) ("In cases such as this, however, there are literally hundreds of scientific articles and numerous experts.  An effort to present any substantial number of those experts in a courtroom would be prohibitively expensive and unduly time-consuming.  Moreover, in the final analysis, it is questionable whether such an expanded hearing would reveal more reliable or higher quality information than is available by referring to authorities submitted in briefs by both sides.").

The legislative nature of the facts at issue in this case gives the Court considerable flexibility in determining how to proceed.  Legislative facts "are those which have relevance to legal reasoning and the lawmaking process."  FED. R. EVID. 201, Advisory Committee Note.  They are in other words "facts relevant to shaping a general rule," *Indiana H. B. R.R. Co. v. American Cyanamid Co.*, 916 F.2d 1174, 1182 (7th Cir. 1990) (Posner, J.), that "have salience beyond the specific parties to [a] suit," *Carhart v. Gonzales*, 413 F.3d 791, 799 (8th Cir. 2005), *rev'd*, 550 U.S. 124 (2007).  Adjudicative facts, on the other hand, "are simply the facts of the particular case." FED. R. EVID. 201, Advisory Committee Note.  They are "about the parties and their activities, businesses, and properties, as distinguished from general facts which help the tribunal decide questions of law and policy and discretion." *Langevin v. Chenango Court, Inc.*, 447 F.2d 296, 300 (2d Cir. 1971) (Friendly, C.J.) (quotation marks and citation omitted).  *See also United States v. $124,570 U.S. Currency*, 873 F.2d 1240, 1244 (9th Cir. 1989) (Kozinski, J.) ("Because it must consider the general, long-term implications of approving a new type of administrative search, the court will focus on legislative facts—those applicable to the entire class of cases—rather than adjudicative facts—those applicable only to the case before it."); *Marshall v. Sawyer*, 365 F.2d 105, 111 (9th Cir. 1966) ("Adjudicative facts are facts . . . usually answering the questions of who did what, where, when, how, why, with what motive or intent; adjudicative facts are roughly the kind of facts that go to a jury in a jury case.  Legislative facts do not usually concern the immediate parties but are general facts which help the tribunal decide questions of law, policy, and

5

discretion.") (quotation marks omitted).

With these principles in mind, it is not difficult to separate the legislative facts in this case from the adjudicative ones. Examples from the latter category include the plaintiffs' assertions that they are "involved in long-term, serious relationships with individuals of the same sex" and "desire to marry those individuals," "but were denied [marriage licenses] because they are [] same-sex couple[s]." Complaint, Doc. # 1-1 at 7. By contrast, fact issues such as the relative political power of gays and lesbians and whether or not sexual orientation is mutable "hinge on social, political, economic, or scientific facts," and thus fall into the former category. *Erickson*, 574 P.2d at 5-6.

Courts treat legislative facts differently than adjudicative facts in several different respects. *First*, issues of legislative fact are rarely decided through formal trial proceedings, and they need not be submitted to a jury. *See Prentis v. Atlantic Coast Line Co.,* 211 U.S. 210, 227 (1908) (Holmes, J.) ("A judge sitting with a jury is not competent to decide issues of fact; but matters of fact that are merely premises to a rule of law he may decide."). Rather, in accessing legislative facts, "the judge is unrestricted in his investigation and conclusion. He may reject the propositions of either party or of both parties. He may consult the sources of pertinent data to which they refer, or he may refuse to do so. He may make an independent search for persuasive data or rest content with what he has or what the parties present." FED. R. EVID. 201, Advisory Committee Note (quotation marks omitted); *see also Daggett v. Commission on Governmental Ethics & Election Practices*, 172 F.3d 104, 112 (1st Cir. 1999) (Boudin, J.) ("[S]o-called 'legislative facts' . . . usually are not proved through trial evidence but rather by material set forth in the briefs."); *NOW, Washington, D.C. Chapter v. Social Sec. Admin. of Dep't of Health & Human Serv.*, 736 F.2d 727, 738 n. 95 (D.C. Cir. 1984); *Drummond v. Fulton County Dep't of Family & Children's Serv.*, 563 F.2d 1200, 1210-11 (5th Cir. 1977). ("Trials are seldom desirable either on legislative facts or on broad factual issues.") (quotation marks omitted). The information that informs judicial decisions

on such matters is typically contained in books, scholarly journals, and other written sources.  The back-and-forth of examination and cross-examination in a courtroom setting is often not particularly useful for analyzing this type of information.  *See Indiana H. B. R.R. Co.*, 916 F.2d at 1182 (Posner, J.) ("[T]rials are to determine adjudicative facts rather than legislative facts. The distinction is between facts germane to the specific dispute, which often are best developed through testimony and cross-examination, and facts relevant to shaping a general rule, which, as the discussion in this opinion illustrates, more often are facts reported in books and other documents not prepared specially for litigation or refined in its fires.").

*Second*, appellate courts give *de novo* consideration to findings of legislative fact.  *See United States v. Singleterry*, 29 F.3d 733, 740 (1st Cir. 1994) ("The clear error standard does not apply . . . when the fact-finding at issue concerns 'legislative' . . . facts.); *Free v. Peters*, 12 F.3d 700, 706 (7th Cir. 1993) (Posner, J.) ("The district judge announced a rule; and appellate review of rules, and therefore (it follows) of the social scientific or other data on which the rules are based, is plenary."); *Dunagin v. Oxford*, 718 F.2d 738, 748 n.8 (5th Cir. 1983); *cf. Lockhart v. McCree*, 476 U.S. 162, 170 n.3 (1986).  Unlike adjudicative facts, legislative facts underlie broad legal rulings that are binding in future cases.  Deferring to such findings could thus result in important issues of law for an entire circuit (or the entire federal judiciary) turning upon a single trial court's determination of a contested issue of science, sociology, or economics.  *See Dunagin*, 718 F.2d at 748 n.8 ("There are limits to which important constitutional questions should hinge on the views of social scientists who testify as experts at trial. Suppose one trial judge sitting in one state believes a sociologist who has found no link between alcohol abuse and advertising, while another trial judge sitting in another state believes a psychiatrist who has reached the opposite conclusion. . . . Should identical conduct be constitutionally protected in one jurisdiction and illegal in another?").

Thus, it makes little sense to devote the enormous amount of resources necessary to conduct

7

a trial on such issues.  Such trials might assist the Court in making credibility determinations among experts, but in the context of deciding legislative facts, no deference will be given to such determinations.  The appellate courts will instead review the entirety of the paper record, as well as any other sources of information that bear on the legislative issue, whether in the record or not (as discussed below).  We submit that this Court should take the same approach.

An example of an appellate court's treatment of such issues is provided by *Equality Foundation v. City of Cincinnati*, 54 F.3d 261 (6th Cir. 1995).  There, the plaintiffs challenged an amendment to Cincinnati's city charter providing that "no special class status may be granted based upon sexual orientation, conduct or relationships."  *Id.* at 264.  The district court conducted a bench trial "which generated extensive expert testimony reflecting the social, political, and economic standing of homosexuals throughout the nation."  *Id.*  On the basis of its factual findings on these matters, the district court held that homosexuals were a quasi-suspect class.  *Id.*

On appeal, the Sixth Circuit reversed this determination and upheld the challenged law.[2] The Sixth Circuit reviewed the district court's findings *de novo*.  While acknowledging that courts typically review factual findings for clear error, it explained that "where ostensible 'findings of fact' are, in reality, findings of 'ultimate' facts which entail the application of law, or constitute sociological judgments which transcend ordinary factual determinations, such 'findings' must be reviewed *de novo*."  *Id*. at 265.  The court thus subjected the district court's factual determinations to "plenary review."  *Id.*

*Third*, when addressing legislative facts, appellate courts are not limited by the record below.  *See Dunagin*, 718 F.2d at 748 n.8 (explaining, and collecting cases supporting conclusion,

---

[2] The Supreme Court granted, vacated and remanded the Sixth Circuit's decision in light of *Romer*.  *See Equality Found. v. City of Cincinnati*, 518 U.S. 1001 (1996).  On remand, the Sixth Circuit again upheld the challenged law.  *See Equality Found. v. City of Cincinnati*, 128 F.3d 289 (6th Cir. 1997), *cert. denied*, 525 U.S. 943 (1998).

that "[t]he writings and studies of social science experts on legislative facts are often considered and cited by the Supreme Court with or without introduction into the record or even consideration by the trial court"); *see also Landell v. Sorrell*, 382 F.3d 91, 205 (2d Cir. 2002) (Winter, J., dissenting), *rev'd*, 548 U.S. 230 (2006) ("[I]f my colleagues believe that further findings of legislative fact are needed, they can request briefing of the relevant issues by the parties, rather than returning questions of law to the district court only to have us later resolve them *de novo*."). This is demonstrated by the Supreme Court's frequent consideration of information presented by amici. *See, e.g.*, *Roper v. Simmons*, 543 U.S. 551, 569 (2005); *Grutter v. Bollinger*, 539 U.S. 306, 330-32 (2003); *United States v. Virginia*, 518 U.S. 515, 544-45 & nn.13-15 (1996). Thus, findings of a district court are not final in this context since the record is not static and will undoubtedly expand as additional amici weigh in during the appellate process.

*Fourth,* legislative facts are not subject to the rules of judicial notice. *See* FED. R. EVID. 201. This stems from the "fundamental differences" between legislative and adjudicative facts. *Id.*, Advisory Committee Note. The factual underpinnings necessary for deciding a broad rule of law—such as the constitutional contours of the fundamental right to marry or the proper level of judicial scrutiny for distinctions based on sexual orientation—may rarely satisfy the rules for judicial notice. And judges making such consequential decisions, decisions whose precedential effect reaches far beyond the parties to a particular case, should not face any "limitation in the form of indisputability, any formal requirements of notice other than those already inherent in affording opportunity to hear and be heard and exchanging briefs, and any requirement of formal findings at any level." *Id.*

Beyond these considerations which counsel in favor of a resolution on a paper record, there is a final consideration that counsels in favor of our approach: speed. Under our proposal, there will be a single round of briefing at the end of whatever period of discovery the Court allows,

followed by any oral argument that the Court may order.  The case would then be submitted for decision.  But under plaintiffs' proposal for a trial, the course of proceedings in this Court will be drawn out for many more months, at immensely greater expense to the parties.  Proceeding to a trial will entail a round of summary judgment motions, motions in limine, exchanges of witness lists and exhibit lists, other pre-trial motions practice and then a trial with numerous experts testifying to some of the most volatile and hotly disputed issues in American culture today.  Make no mistake, such a trial would take weeks and weeks—and quite possibly months.  The trial would then be followed by post-trial briefing, which would engender further delay.  The additional delay and expense of trial, we submit, would not be justified in the context of disputes over legislative facts.

Plaintiffs are now strongly in favor of resolving this case through a live trial on the merits.  At the July 2 hearing, they took quite a different stance, explaining that "we believe that an affirmative, powerful case can be made that the constitution is being violated . . . based upon facts that are in the declarations of the plaintiffs, based upon matters of which the Court can take judicial notice, based upon facts that have been determined by the California Supreme Court and recognition that has occurred by the United States Supreme Court."  July 2, 2009 Tr. at 23:11-18.  While Plaintiffs have not explained this apparent change in position, we believed then, and continue to believe now, that a powerful legal case for Proposition 8's constitutionality can be made without further discovery or fact development.  Even if the Court disagrees, any outstanding issues can be resolved on the briefs.

## II.   **Proposed Schedule**

The foregoing demonstrates that this case naturally breaks down into two stages.  Stage one brings to the Court's attention, through initial cross-motions for summary judgment, the dispositive and controlling legal issues governing the outcome of this case.  Even if the Court decides that

10

these issues do not suffice to resolve the case, its decisions may nonetheless serve to shape and narrow the subsequent proceedings. Stage two, following a full round of discovery, provides the parties the opportunity to build a complete record for the Court's use in determining any remaining disputed issues. The parties will present this information through a second set of cross-motions which will address all outstanding issues.

**A.**     **Cross-motions for summary judgment on dispositive legal issues**

- Motions filed by September 25, 2009

- Responsive briefs filed by October 30, 2009

- Oral argument held as soon thereafter as the Court's schedule permits

**B.**     **Discovery**

- Fact discovery commences on August 20, 2009

- Fact discovery complete by January 14, 2010

- Plaintiffs' expert reports submitted by February 12, 2010

- Depositions of Plaintiffs' experts completed by March 19, 2010

- Defendants' expert reports submitted by April 16, 2010

- Depositions of Defendants' experts completed by May 21, 2010

**C.**     **Comprehensive briefs on remaining disputed issues**

- Opening Briefs filed by June 4, 2010

- Responsive briefs filed by July 1, 2010

- Oral argument held as soon thereafter as the Court's schedule permits

We note, however, that if the Court grants the pending motions to intervene, a significant elongation of the schedule above would be necessitated. As putative intervenors' motions make clear, they will inject a significant measure of additional complexity and a multiplicity of expert witnesses. Fundamental fairness would dictate that the Proposition 8 Proponents have sufficient

11

time to answer the proposed intervenors' additional theories and claims.

Plaintiffs' proposed discovery schedule (at least as it stood on the date when we exchanged draft case management statements) is patently unrealistic.  For one, they have suggested allowing less than two months for fact discovery.  In addition to deposing Plaintiffs' fact witnesses, we intend to pursue discovery from States that have experience with recognizing same-sex relationships as marriages, including California (due to the marriages recognized pursuant to the *Marriage Cases*) and Massachusetts.  It will undoubtedly take months for the States to provide the necessary data to assess the impact of same sex marriage that our experts will require.  And it will take several more months to analyze that data and prepare expert reports.  Plaintiffs' suggestion that the answers for written discovery be due in 14 days cannot be squared with the breadth of issues that will be covered in discovery and the need to allow third parties adequate time to respond.

The most unrealistic feature of Plaintiffs' proposals, however, is the time table for expert discovery.  First, they suggest a period of less than eight weeks from the August 19 case management conference for exchanging expert reports.  As noted, it is unlikely that the third parties will have produced relevant evidence within this timeframe, and it will be impossible for our experts to have analyzed this data in such a short period.  Moreover, the expert reports that we produce will be the product of hundreds of hours of work researching the underlying issues, identifying potential experts, meeting with and selecting experts from the candidates we identify, and providing needed assistance in the report-development process.  *See* Doc. # 111 at 6 (reporting that City of San Francisco attorneys and their co-counsel in the *Marriage Cases*, in the process of developing a record that included twelve expert declarations, "spent hundreds of hours doing research to understand the issues and identify individuals with expertise on the subjects relating to them, interviewing potential experts about the issues, selecting the experts, working with the experts to develop their declarations, reviewing the declarations proffered by Proposition 22 and

Thomasson, and working with our expert witnesses to respond to them with additional declarations").

Second, Plaintiffs' schedule provides only fourteen days from the date expert reports are to be exchanged to the close of expert discovery. This is a wholly unrealistic pace that will deprive defendant-intervenors of the ability to adequately prepare for such depositions. We plan to depose each expert that proffers a report on behalf of the Plaintiffs, and Plaintiffs have indicated that they plan to present expert testimony on most (if not all) of the fourteen factual issues identified by the Court. Even if each of their experts tackles two such issues, that would still require us to depose one of them every two days (including weekends) from the day we are given the reports, while simultaneously defending Plaintiffs' depositions of our own experts and, for good measure, working furiously to meet the ten-day window for developing rebuttal expert reports.

In addition, the briefing schedule proposed by Plaintiffs is unreasonable. It provides for only a week between the end of expert discovery and the filing of dispositive motions. The parties should be given more time to carefully consider the fruits of discovery so that they can be presented in a way that is helpful to the Court. A minimum of 30 days should be allowed to draft briefs that cover all the materials unearthered in fact and expert discovery. Rushing the briefing will make the Court's task more complicated, and may ultimately delay the resolution of the case. In addition, Plaintiffs make no provision for responsive briefs. Such briefing, however, will aid the Court and will expedite the ultimate resolution of the case.

In the final analysis, the breakneck pace Plaintiffs' suggest is ill-suited to this Court's interest in building a comprehensive, carefully constructed record.

**III.     Factual Issues Identified in the Court's June 30, 2009 Order**

As the discussion below will demonstrate, the parties dispute many of the factual issues identified by the Court's June 30, 2009 Order. Stipulations may be possible on objective, discrete

facts that underlay these broader factual disputes, but the parties remain divided on the ultimate conclusion to be drawn with respect to the vast majority of the issues identified by the Court. Moreover, we continue to maintain that this case is controlled by legal questions and it can—and should—be resolved without resolving any of the factual issues below.  Thus, we are not conceding the relevance of any of these issues.

Because such significant disagreement persists, it is clear that the parties will pursue more discovery than we originally anticipated.  At a minimum, we will likely depose the Plaintiffs and the Plaintiffs' fact and expert witnesses.  Additionally, we may seek documentary materials and other information from California and from other States that extend marriage to same-sex couples.

**A.**     **The Appropriate Level of Scrutiny Under the Equal Protection Clause**

Before addressing the specific factual issues identified by the Court, it bears noting that a logical antecedent to determining whether sexual orientation is a suspect classification is defining sexual orientation.  The Proposition 8 Proponents plan to present evidence that sexual orientation has no settled definition, and that it is a concept whose definition is inherently elusive and subjective.  This fact alone counsels against treating sexual orientation as a suspect legal classification, *see Equality Foundation*, 54 F.3d at 267; at a minimum, it is incumbent upon the parties and the Court to establish a clear definition of sexual orientation for purposes of this litigation.

**1.**     **The history of discrimination gays and lesbians have faced**

We do not dispute that, as a historical matter, gays and lesbians have faced discrimination on account of their sexual conduct.  Plaintiffs, however, have indicated that they do not wish to resolve this matter by stipulation.  Depending upon the nature of the evidence Plaintiffs adduce on this score, the Proposition 8 Proponents may present evidence (including expert opinion) on the nature of discrimination gays and lesbians experienced in the past.  Also, we plan to present

evidence demonstrating that such discrimination has decreased significantly in recent years, both in governmental and non-governmental contexts.

### 2. Whether the characteristics defining gays and lesbians as a class might in any way affect their ability to contribute to society

We do not dispute the ability of gay and lesbian individuals to contribute to society with one exception: the procreative nature of opposite-sex relationships gives them a different ability to impact society.  Plaintiffs, however, have not agreed to resolve this issue by stipulation.  The nature of the evidence presented by the Plaintiffs may therefore make it necessary for the Proposition 8 Proponents to present evidence on this matter as well.

### 3. Whether sexual orientation can be changed, and if so, whether gays and lesbians should be encouraged to change it

We will dispute Plaintiffs' claim that sexual orientation is immutable.  The precise contours of our argument will depend upon the definition of sexual orientation adopted by the Court, but at any rate we plan to present evidence in the form of references to scientific and other scholarly literature, and if Plaintiffs seek to introduce expert opinion on this issue, so shall we.  We do not believe that the question whether gays and lesbians should be encouraged to change their sexual orientation is relevant to the legal issues in this case, and we therefore do not plan to address it.

### 4. The relative political power of gays and lesbians, including successes of both pro-gay and anti-gay legislation

We will present evidence that gays and lesbians wield substantial political power.  Many underlying facts relevant to gauging the political power of gays and lesbians are not subject to dispute.  For example, the parties should be able to agree that a governing body passed a certain law on a certain date.  We anticipate, however, that whether any particular law (or other piece of evidence) is properly construed as reflecting the political power of gays and lesbians, and its relevant weight to the political-power inquiry, will often be disputed.

**B.**   <u>Whether the Right Asserted by Plaintiffs Is Deeply Rooted in this Nation's History and Tradition and thus Subject to Strict Scrutiny Under the Due Process Clause</u>

The Plaintiffs assert a constitutional right to State recognition of same-sex unions as marriages.  That this right is not "deeply rooted in this Nation's history and tradition" is not subject to serious dispute.  Proposition 8 is thus not subject to strict scrutiny under the Due Process Clause.  *See Washington v. Glucksberg*, 521 U.S. 702 (1997).

While the Plaintiffs will disagree with this characterization of the right they assert, the Court can resolve the matter without holding a trial.  The proper construction of an asserted right is ultimately a question of law.  The factual issue the Court has identified as relevant to its judgment—"the history of marriage and whether and why its confines may have changed over time," *see* June 30 Order at 7—is legislative in nature, and largely informed by matters not reasonably subject to dispute.  (Examples include the near-universal nature of marriage as an opposite-sex union as an historical matter and the persistence of this traditional understanding of marriage, reflected by the laws of the vast majority of the States, the federal government, and nations around the globe.)  Moreover, should the Court desire more factual development regarding the history of marriage, the parties can build such a record through references to works of history, expert reports, and deposition testimony of such experts.

**C.**   <u>Whether the Asserted State Interests Can Survive Plaintiffs' Constitutional Challenge</u>

We contend that, as a matter of law, rational basis scrutiny governs review of Proposition 8 under binding Ninth Circuit precedent.  Under this type of review, the justification for California's choice to preserve the traditional institution of marriage "may be based on rational speculation unsupported by evidence or empirical data" and the burden is on the Plaintiffs "to negative every conceivable basis which might support it."  *FCC v. Beach Commc'n*, 508 U.S. 307, 315 (1993) (quotation marks omitted).  It is unnecessary for the Court to hold a trial to determine that the

16

Plaintiffs fail to meet this demanding standard—they essentially must prove that it is inherently irrational to maintain the bedrock social institution of marriage in the form it has always taken. And the facts related to the State's interests are legislative in nature and thus need not be resolved at trial.

### 1.   The longstanding definition of marriage in California

"From the beginning of California statehood, the legal institution of civil marriage has been understood to refer to a relationship between a man and a woman," *In re Marriage Cases*, 183 P. 3d 384, 407 (Cal. 2008)—excluding, of course, the brief period of time between the California Supreme Court's decision in *In re Marriage Cases* and the passage of Proposition 8.  We do not expect the Plaintiffs to challenge this fact, although they have expressed a plan to present contextual evidence related to instances in which California has reaffirmed its longstanding definition of marriage.  Depending upon the nature of this evidence, Proposition 8 Proponents may present evidence related to these issues.

### 2.   Whether the exclusion of same-sex couples from marriage leads to increased stability in opposite sex marriage or alternatively whether permitting same-sex couples to marry destabilizes opposite sex marriage

Phrased either way, the Proposition 8 Proponents contend that this question is not relevant to the Court's rational basis review of Proposition 8.  Rather, the Court's inquiry is limited to whether California's decision to preserve the traditional definition of marriage as the union of one man and one woman rationally serves the State's legitimate interests, such as its interests in promoting responsible procreation and child rearing.  It is Plaintiffs' burden to prove that there is no conceivable, rational basis for distinguishing between opposite-sex unions and same-sex unions with respect to such state interests.  It is not necessary, therefore, for the State to demonstrate, for example, that "permitting same-sex couples to marry destabilizes opposite-sex marriage."  June 30 Order at 7.  Depending on Plaintiffs' evidence, however, the Proposition 8 Proponents may offer

evidence on this latter issue.

### 3. Whether a married mother and father provide the optimal child-rearing environment and whether excluding same-sex couples from marriage promotes this environment

We believe the first of these questions should be rephrased: whether a child's married, biological mother and father ordinarily provide the optimal child-rearing environment. While we do not believe that it is necessary for us to prove that a child's married, biological mother and father provide the optimal child-rearing environment in order to prevail in this case, we may present social science literature and perhaps expert opinion data to demonstrate this fact if it is disputed. We believe the second question is irrelevant, for the reasons stated in Part III.C.2 above.

### 4. Whether and how California has acted to promote these interests in other family law contexts

The parties dispute whether California has acted to promote its interest in having children raised by their married, biological parents in other contexts. While we do not grant that the question is relevant under rational basis review, we are prepared to demonstrate that California continues to promote biological parenting in other contexts. We anticipate that our case will be largely legal in nature. The Plaintiffs, however, have indicated that they plan to present expert testimony on this issue, which we may decide to counter with our own expert evidence.

### D. Whether or not Prop. 8 Discriminates on the Basis of Sexual Orientation or Gender or Both

### 1. The history and development of California's ban on same-sex marriage

The history of California's marriage laws is largely a matter of objective fact. The parties should be able to stipulate to these facts. For instance, that California's definition of marriage as the union of a man and a woman has a legal pedigree as old as the State itself is not a matter that can reasonably be disputed. The sequence of events leading to the passage of Proposition 8 should likewise be suitably resolved by stipulation. Of course, the parties will likely disagree about the

significance of certain facts and about how those facts inform an inquiry into the purpose of Proposition 8.

### 2.   Whether the availability of opposite-sex marriage is a meaningful option for gays and lesbians

Our case does not depend on an argument that opposite-sex marriage is a meaningful option for gays and lesbians.  But it is an undeniable fact that some gays and lesbians do get married to members of the opposite sex.  If the Plaintiffs do not agree to stipulate to this fact, we plan to offer evidentiary support for this claim.

### 3.   Whether the ban on same-sex marriage meaningfully restricts options available to heterosexuals

The Proposition 8 Proponents do not believe that this question is relevant to the legal issues in the case, and therefore do not plan to address it.

### 4.   Whether requiring one man and one woman in marriage promotes stereotypical gender roles

The Proposition 8 Proponents contend that Proposition 8, as a matter of law, does not classify individuals on the basis of gender, and that this question is therefore irrelevant to the legal issues in the case.  While we do not expect the Plaintiffs to agree with us, they have indicated that they do not intend to rely heavily on a contrary claim to prove their case.  We thus do not anticipate developing an extensive record on this point, although should the Court request otherwise we will certainly do so.

### E.   Whether Prop. 8 Was Passed with Discriminatory Intent

The Plaintiffs attempt to liken Proposition 8 to the Colorado constitutional amendment struck down by the Court in *Romer*.  This is a false analogy, but for present purposes what is important is the manner in which the Court addressed the issue of intent.  The case concerned an amendment to the Colorado Constitution ("Amendment 2") enacted by a statewide referendum. *See Romer v. Evans*, 517 U.S. 620, 623 (1996).  The Court ultimately concluded that Amendment 2

19

was "inexplicable by anything but animus toward" homosexuals.  *Id.* at 632.  In reaching this

conclusion, it considered the objective design of Amendment 2 ("making a general announcement

that gays and lesbians shall not have any particular protections from the law"), its effect on gays

and lesbians ("inflict[ing] . . . immediate, continuing, and real injuries" upon them), and the

relationship of this effect to legitimate government interests (the "injuries. . . outrun and belie any

legitimate justifications" that could be claimed for the law, and the "breadth of the Amendment

[was] so far removed from [the offered government] justifications that [the Court found] it

impossible to credit them").  *Id.* at 635.  On the basis of these considerations, the Court concluded

that Amendment 2 did not bear a rational relationship to a legitimate government interest, and was

therefore left with "the inevitable inference that the disadvantage imposed is born of animosity

toward the class of persons affected."  *Id.* at 634.  Notably, the Court did not direct its attention

toward determining the subjective motivation of Colorado's voters.  Its conclusion that Amendment

2 was motivated by animus toward homosexuals followed from its finding that the amendment bore

no rational relationship to any conceivable legitimate government interest.  This Court should take

the same approach here.  Proposition 8, like Colorado's Amendment 2, should stand or fall on the

law's relationship to legitimate governmental interests.  An independent probe into the subjective

motivation of California's voters, complete with discovery aimed at those voters, is both legally

impermissible, *see SASSO v. Union City*, 424 F.2d 291, 295 (9th Cir. 1970), and is unnecessary.

### 1.   The voters' motivation or motivations for supporting Prop. 8, including advertisements and ballot literature considered by California voters

As we have noted, the Court need not and cannot properly conduct an inquiry into the

subjective motivations of California's voters.  Should the Court nonetheless deem such information

relevant, we will likely be able to agree with Plaintiffs on such factual questions as whether

particular ads were run in support of and in opposition to Proposition 8, and whether certain

language was included in the ballot literature distributed to California's voters.

20

### 2. The differences in actual practice of registered domestic partnerships, civil unions and marriage, including whether married couples are treated differently from domestic partners in governmental and non-governmental contexts

The parties should be able to agree on the legal treatment California affords to domestic partnerships, civil unions, and marriages, starting with the State Constitution's continued protection for same-sex couples of "the core set of basic *substantive* legal rights and attributes traditionally associated with marriage, including, most fundamentally, the opportunity of an individual to establish—with the person with whom the individual has chosen to share his or her life—an *officially recognized and protected family* possessing mutual rights and responsibilities and entitled to the same respect and dignity accorded a union traditionally designated as marriage." *Strauss v. Horton*, 46 Cal. 4th 364, 411 (Cal. 2009) (quotation marks omitted, emphases in original).

No such agreement is likely to be forged regarding the treatment of domestic partnerships, civil unions, and marriages in non-governmental contexts. We plan to present evidence, including expert testimony, demonstrating substantial similarity in non-governmental treatment of same-sex couples regardless of the label the government affixes to their relationships.

Dated: August 7, 2009

COOPER AND KIRK, PLLC
ATTORNEYS FOR DEFENDANT-INTERVENOR DENNIS HOLLINGSWORTH, GAIL J. KNIGHT, MARTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM, MARK A. JANSSON, AND PROTECTMARRIAGE.COM – YES ON 8, A PROJECT OF CALIFORNIA RENEWAL

By: _s/Charles J. Cooper
Charles J. Cooper

DEFENDANT-INTERVENORS PROPOSITION 8 PROPONENTS' OPPOSITION TO MOTION TO SHORTEN TIME
CASE NO. 09-CV-2292 VRW