MARY E. MCALISTER
California Bar No. 148570
RENA M. LINDEVALDSEN*
LIBERTY COUNSEL
P.O. Box 11108
Lynchburg, VA 24506
(434) 592-7000 Telephone
(434) 592-7700 Facsimile
court@lc.org Email
Attorneys for Prospective Intervenor
*Admitted pro hac vice

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO, | **Case No. 09-CV 02292 VRW** |
| Plaintiffs | |
| v. | **PROPOSED INTERVENOR CAMPAIGN FOR CALIFORNIA FAMILIES' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS' AND PROPONENTS' OPPOSITION TO THE CAMPAIGN'S MOTION TO INTERVENE AS DEFENDANT** |
| ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California, MARK B. HORTON, in his official capacity as Director of the California Department of Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; and DEAN C. LOGAN, in his official capacity as Registrar-Recorder/ County Clerk for the County of Los Angeles, | DATE: AUGUST 19, 2009 <br> TIME: 10:00 AM <br> JUDGE: CHIEF JUDGE VAUGHN R. WALKER <br> LOCATION: COURTROOM 6, 17TH FLOOR |
| Defendants. | |
| and | |
| PROPOSITION 8 OFFICIAL PROPONENTS DENNIS HOLLINGSWORTH, GAIL J. KNIGHT, MARTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM, and MARK A. JANSSON; and PROTECTMARRIAGE.COM-YES ON 8, A PROJECT OF CALIFORNIA RENEWAL, | |
| Intervenor-Defendants. | |
| _____ | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................... iii

INTRODUCTION ............................................................ 1

LEGAL ARGUMENT .......................................................... 3

I.   PROPONENTS RELY UPON FAULTY LEGAL PREMISES AND FAIL TO DISPUTE
     THAT THE CAMPAIGN IS ENTITLED TO INTERVENE. .................... 3

     A.   The Proponents' Opposition To The Campaign's Motion Is Doomed By
          The Fatal Flaws Of Mistaken Identity And Misstated Scope Of Relief. 4

     B.   The Campaign Has A Significantly Protectable Interest In the Subject
          Matter Of Plaintiffs' Litigation, Which Is Not Merely Proposition 8.   6

     C.   The Campaign's Significant Interests Might Be Impaired By The
          Outcome Of This Proceeding. ................................... 8

     D.   Proponents Have Themselves Demonstrated That Neither They Nor Any
          Other Existing Parties Will Adequately Represent The Campaign's
          Interests. .................................................... 9

     E.   Proponents Agree That The Campaign Meets The Requirements For
          Permissive Intervention.  ..................................... 10

II.  PLAINTIFFS RELY UPON THE SAME FLAWED PREMISES AS DO
     PROPONENTS AND REACH THE SAME INCORRECT CONCLUSION. ..... 11

     A.   The Campaign Has A Significant Protectable Interest In Preserving
          Marriage As The Union Of One Man And One Woman, The True
          Underlying Subject Matter Of This Action. ..................... 12

     B.   Neither Proponents Nor Any Other Existing Party Can Adequately
          Represent The Campaign's Interests.  ......................... 13

     C.   The Campaign Meets The Standards For Permissive Intervention.  . 14

CONCLUSION ............................................................. 15

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*California ex.rel. Van de Kamp v. Tahoe Reg'l Planning Agency*, 792 F.2d 779(9th Cir. 1986)   8

*Idaho v. Freeman*, 625 F.2d 886, 887 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

*Loving v. Virginia*, 388 U.S. 1,12 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 12

*Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . 8, 9, 13, 14

*Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . 8, 9, 13

*Smelt v. County of Orange*, 447 F.3d 673 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*So. Calif. Edison v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Alisal Water Corporation*, 370 F.3d 915, 920 (9th Cir. 2004) . . . . . . . . . . . . 8

*United States v. City of Los Angeles*, 288 F.3d 391,397 (9th Cir. 2002) . . . . . . . . . . . . . . . . . 6

**STATE CASES**

*In re Marriage Cases*,43 Cal.4th 757 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Knight v. Schwarzenegger*, 128 Cal.App.4th 14 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**STATE STATUTES**

California Family Code §§ 297-299.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

California Family Code §§ 300 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 6, 12

California Family Code §301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

California Family Code §308.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

**FEDERAL RULES**

Fed. R. Civ. P. 24(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Proposed Intervenor-Defendant CAMPAIGN FOR CALIFORNIA FAMILIES ("the Campaign") submits the following Memorandum of Points and Authorities in Reply to the Plaintiffs' and Intervenor-Defendants' ("the Proponents" herein) Opposition to the Campaign's Motion to Intervene as a Defendant:

**INTRODUCTION**

Although ostensibly seeking different outcomes in this litigation, Plaintiffs and Proponents share the common goal of preventing the Campaign from participating as an Intervenor-Defendant. These purported adversaries raise substantially similar arguments in their opposition memoranda. More noteworthy, however, is that it is the Campaign's proposed co-Defendants who are the more vocal opponents to the Campaign's participation in the litigation. Plaintiffs reference the Campaign in their single opposition memorandum that substantially focuses on challenging the parties seeking intervention as Plaintiffs. By contrast, the Proponents, who are supposed to be seeking the same outcome as is the Campaign, devote an entire 15-page memorandum and several exhibits to their over-zealous attempt to exclude the Campaign from what should be a common defense of the sanctity of marriage as the union of one man and one woman. In their zeal, Proponents failed to affirm that the evidence they cite in support of their proposition actually addresses the points they claim. Proponents rely upon a single Web page (Exhibit B) as proof that the Campaign opposed Proposition 8. However, Exhibit B was not authored by nor does it mention the Campaign, and, more importantly, it does not even reference Proposition 8, which was still three years from qualifying for the ballot. Furthermore, many of the positions that the Proponents cite as evidence against the Campaign's intervention actually demonstrate why the Campaign should be permitted to intervene.

In their concerted effort to exclude the Campaign from this litigation, Plaintiffs and Proponents misrepresent the scope of Plaintiffs' claims. Both parties focus exclusively on Proposition 8. They assert that invalidation of that amendment is the sole goal of the litigation so that there is no need for additional defendants beyond Proponents. However, as Plaintiffs are well aware, they are seeking more than merely invalidation of Proposition 8, but an injunction against enforcement of Proposition 8 "**and any other California statutes that seek to exclude gays and lesbians from access to civil marriage,**" including California Family Code §§ 300, 301 and 308.5. (Complaint, Doc. # 1-2, ¶¶ 2,

6, 21,24) (emphasis added). Plaintiffs allege that they included the other statutes "in an abundance of caution," to ensure that they obtain the full relief requested. (Complaint, ¶6). They cannot now conveniently ignore those additional statutory provisions, or the constitutional underpinnings of their claims in order to thwart the Campaign's efforts to protect its rights by participating as a Defendant. Similarly, Proponents cannot conveniently ignore the scope of relief sought by Plaintiffs in order to assert a right to act as the only defender of marriage in California. As inconvenient as it might be for both parties, the fact is that Plaintiffs are asking this Court to re-define marriage in California by invalidating **all** statutory and constitutional provisions that identify marriage as the union of one man and one woman. The Campaign's role in implementing and defending the statutes and the underlying fundamental constitutional rights upon which Plaintiffs base their claims places it firmly within the standards for intervention as of right and permissive intervention. Plaintiffs' and Proponents' attempt to narrow the issues to avoid that conclusion is unavailing.[1]

Furthermore, as to Proponents, their emphasis on Proposition 8 to the exclusion of the other statutory provisions and underlying constitutional rights actually proves instead of disproving that the Campaign's motion should be granted. Proponents demonstrate that their focus in this action will be to protect their $37 million investment in Proposition 8. While that is an important aspect of defending against Plaintiffs' allegations, it is not the complete picture of how Plaintiffs' claims will affect fundamental constitutional rights and the legislative process in California. Proponents' assertion to the contrary is itself evidence that they will not adequately represent the Campaign's interest in this significant litigation.

While it is understandable that Plaintiffs would oppose having an additional party to challenge their claims, it is difficult to fathom why Proponents would so vigorously oppose an additional voice

---

[1]    The Campaign has participated as a party state and federal cases alongside Proponents. These include *Knight v. Schwarzenegger* 128 Cal.App.4th 14 (2005); *In re Marriage Cases,* 43 Cal.4th 757 (2008) and *Smelt v. County of Orange*, 447 F.3d 673 (9th Cir. 2006). The *Marriage Cases* was a consolidated action that included a case that the Campaign initiated immediately after Mayor Gavin Newsom began issuing marriage licenses to same-sex couples in San Francisco. The Campaign participated in the case as a party through the trial, intermediate appellate court and Supreme Court of California. In *Smelt,* the Campaign was granted intervention over the objections of many of the parties now part of the Proponents who at the point were not yet official proponents of Proposition 8, which was not yet finalized.

to defend marriage in California, even to the point of agreeing with the Plaintiffs. If Proponents' goal is to preserve marriage as the union of one man and one woman, then there is no logical reason for them to oppose additional support for that position. If their goal is to protect their personal interest in a $37 million political investment regardless of other consequences, then their position makes sense. The Campaign's goal is to preserve marriage as the union of one man and one woman, and to provide this Court with the factual and legal arguments necessary to make a reasoned decision. The need for such information is critical to a proper determination of Plaintiffs' claims, particularly in light of the Attorney General's stated opposition to Proposition 8 and the retention of the definition of marriage as the union of one man and one woman. Since the Court's deadline for seeking intervention has passed, there is no concern about a flood of proposed intervenors who might unreasonably delay the proceedings. The Campaign stands ready to fully participate in this litigation under whatever deadlines are imposed by this Court and respectfully requests that this Court grant it that opportunity.

## LEGAL ARGUMENT

**I.  PROPONENTS RELY UPON FAULTY LEGAL PREMISES AND FAIL TO DISPUTE THAT THE CAMPAIGN IS ENTITLED TO INTERVENE.**

The named Defendants in this matter, the government officials who are legally obligated to defend the California and United States constitutions and California statutes, do not oppose the Campaign's request to, at least nominally, join them in defending against Plaintiffs' claims. (Docket Nos. 114, 116, 122 and 125). Notably, Attorney General Brown has stated that he agrees with Plaintiffs that defining marriage as the union of one man and one woman violates the U.S. Constitution. (Docket No. 39, p. 2). That being the case, it would be logical for the Attorney General, like the Plaintiffs, to object to having another party join the lawsuit to defend the constitutionality of the definition of marriage. However, he has gone on record saying that he does not oppose the Campaign's request to intervene and challenge his interpretation of the Constitution. (Docket No. 122). The Administration has expressed its desire that these issues be decided expeditiously. (Docket No. 46 ). Its non-opposition to the Campaign's motion to intervene affirms that it does not believe that the Campaign's presence in the action will impede an expeditious resolution of the claims, despite Proponents' protestations to the contrary. In light of these statements, the Proponents' vigorous opposition to having another party join in seeking what should be a mutually beneficial outcome is all the more puzzling. Most importantly,

however, the Proponents' opposition to the Campaign's motion is without merit.

A.   **The Proponents' Opposition To The Campaign's Motion Is Doomed By The Fatal Flaws Of Mistaken Identity And Misstated Scope Of Relief.**

Two fundamental flaws infect Proponents' opposition. The first is a case of mistaken identity. Throughout their memorandum, Proponents refer to "CCF" instead of the "Campaign." "CCF" is the acronym for the Campaign for Children and Families[2], a different organization from Campaign for California Families, the organization seeking intervention in this case. It was  Campaign for Children and Families, not the Campaign, that sponsored the VoteYesMarriage.com committee that drafted the statements in Exhibit B  about which Proponents complain.  Exhibit B states that the members of the coalition are Ed Hernandez, Larry Bowler and Randy Thomasson in his role as President of Campaign for **Children and Families** ("CCF"), not Executive Director of the proposed Intervenor, the Campaign. (Exhibit B). The official records of the California Secretary of State show that the Campaign and CCF are two wholly separate, different organizations with different agents for service of process, different corporate numbers and different dates of initial filing.[3] Randy Thomasson leads both organizations, but they are  separate legal entities. Proponents' own exhibit demonstrates that the "open antagonism" and "public opposition"of which Proponents accuse the Campaign in fact refers to statements made by VoteYesMarriage.com and its sponsor, CCF, not the Campaign.

More importantly, the statements targeted by Proponents in Exhibit B do not even refer to Proposition 8, but to earlier proposed marriage amendments that did not qualify for the ballot. Exhibit B cites the language  which the statements Proponents claim is Proposition 8: "A marriage between a man and a woman is the only legal union that is valid or recognized in this state." (Exhibit B, p. 4). The

---

[2]   This distinction is readily discoverable on the organization's Web site: "CAMPAIGN FOR CHILDREN AND FAMILIES (CCF) is a leading West Coast nonprofit, nonpartisan organization representing children and families." *See* http://savecalifornia.com/__ca-release-11-19-08 -pro-family-response-to-california-supreme-court-agreeing-to-hear-challenges-to-peoples-vote-on-pr op.-8.html   (Last visited August 14, 2009).

[3]   Campaign for California Families is listed as Corporation Number C2158388, with an initial filing date of March 25, 1999 and Randy Thomasson listed as agent for service of process. *See* http://kepler.sos.ca.gov/corpdata/ShowAllList?QueryCorpNumber=C2158388 (last visited August 12, 2009). Campaign for Children and Families is listed as Corporation Number C2475761, with an initial filing date of November 26, 2002 and Erik Hartstrom listed as agent for service of process. *See* http://kepler.sos.ca.gov/corpdata/ShowAllList?QueryCorpNumber=C2475761 (last visited August 12, 2009). The two corporations list different business addresses.

language that became Proposition 8, and which is a focus of this action is: "Only marriage between one man and one woman is valid or recognized in California." The critical statements made about proposed marriage amendments, which Proponents claim show the Campaign's animosity toward Proposition 8 were not about Proposition 8 and were not authored by the Campaign. The "open antagonism" that Proponents claim disqualifies the Campaign from participating as an intervenor-Defendant does not exist. What the **Campaign** actually said and did regarding Proposition 8 and the 10-year effort to protect marriage in California is set forth in Randy Thomasson's Declaration, which, as described more fully below, establishes significant, protectable interests not adequately represented by the present parties to the action.

The second fatal flaw in Proponents's opposition, alluded to above, is the misrepresentation of the nature of Plaintiffs' claims for relief. Proponents describe Plaintiffs' action as a constitutional attack on Proposition 8. (Proponents' Memorandum, p. 1, lines 13-15). According to Proponents, the only issue presented by Plaintiffs is the validity of Proposition 8. They argue that they, and they alone are the parties who can save Proposition 8 from Plaintiffs' attacks. Throughout their argument, Proponents reiterate that they were the ones who qualified Proposition 8 for the ballot, raised money for its passage and defended it in court, making them the only parties qualified to protect it. Proponents' assertions regarding their monopoly on protecting Proposition 8 notwithstanding, the allegations of the Complaint reveal that this case is about much more than whether the Proponents' political progeny is valid. Plaintiffs specify that they are seeking an injunction against not only Proposition 8, but "any other California statutes that seek to exclude gays and lesbians from access to civil marriage**,**" including California Family Code §§ 300, 301 and 308.5. Moreover, Plaintiffs preface their claims by referring to the Supreme Court's holding that marriage is "one of the basic

civil rights of man, fundamental to our very existence and survival." *Loving v. Virginia*, 388 U.S. 1, 12 (1967) (Complaint, ¶1). Those allegations signal that Plaintiffs do not intend to merely erase Proponents' initiative amendment from the California Constitution, but to eliminate all vestiges of marriage as the union of one man and one woman throughout California law, under the guise of extending the fundamental constitutional right of marriage to same-sex couples. While Proposition 8 is certainly a part, and perhaps the largest part, of Plaintiff's claims, it is not the only basis for relief.

Proponents' representations that this case deals only with Proposition 8 so that only they are proper Intervenor-Defendants mischaracterizes Plaintiffs' action and nullifies Proponents' arguments against the Campaign's Motion to Intervene.

### B. The Campaign Has A Significantly Protectable Interest In the Subject Matter Of Plaintiffs' Litigation, Which Is Not Merely Proposition 8.

The Court need look no further than Proponents' legal argument headings to see how Proponents have skewed the description of Plaintiffs' claims in order to support their position that they should be the only Intervenor-Defendants in this case. Proponents state that "CCF Does Not Have a Significantly Protectable Interest In Proposition 8" to support their argument that the Campaign cannot meet the requirements for intervention as of right under Fed. R. Civ. P. 24(a). (Proponents' Memorandum, p. 5). The requirement to which Proponents are referring is the second in the Ninth Circuit's four-part test for determining whether a party has satisfied Rule 24(a) – that the applicant has a significantly protectable interest in the subject matter of the action. *United States v. City of Los Angeles*, 288 F.3d 391,397 (9th Cir. 2002). In this case, the subject matter of the action is not, as Proponents claim, Proposition 8. Instead, this action asks whether the fundamental constitutional right of marriage applies to same-sex couples so that all constitutional and statutory provisions defining marriage as the union of one man and one woman must be declared unconstitutional. (Complaint, ¶¶ 1, 2, 6, 21, 24). While Proposition 8 is certainly a prevalent aspect of Plaintiffs' pleadings, it is not the only legislative enactment against which they are seeking injunctive relief. Plaintiffs specifically list California Family Code §§ 300, 301 and 308.5 in their claim for relief to ensure that they obtain the full relief requested. (Complaint, ¶6). Plaintiffs' prefatory paragraph establishes that the genesis of their claim is not Proposition 8 but the institution of marriage as "one of the basic civil rights of man, fundamental to our very existence and survival." *Loving v. Virginia*, 388 U.S. 1, 12 (1967).

When Plaintiffs' claims are viewed in their proper context, it is clear that the Campaign has established that it has a significant protectable interest in the actual subject matter of the action. Plaintiffs' reference to Family Code §§ 300, 301 and 308.5 are particularly significant in showing how the Campaign meets the significant protectable interest standard. Family Code §308.5 was enacted as Proposition 22 on March 8, 2000 and contains the same fourteen words as Proposition 8: "Only marriage between a man and a woman is valid or recognized in California." Family Code §301

incorporates the same definition: "An unmarried male of the age of 18 years or older, and an unmarried female of the age of 18 years or older, and not otherwise disqualified, are capable of consenting to and consummating marriage," as does Family Code §300: "Marriage is a personal relation arising out of a civil contract between a man and a woman...." Numerous other provisions in the Family Code and other statutes incorporate the definition of marriage as one man and one woman, which is undoubtedly the reason for the Plaintiffs' inclusion of "any other California statutes that seek to exclude gays and lesbians from access to civil marriage" in their allegations. Plaintiffs have made clear that they do not want to merely invalidate Proposition 8, but to erase "marriage is the union of one man and one woman" from all California statutes and constitutional provisions.

Marriage as the union of one man and one woman has been a primary focus of the Campaign since its inception. As described in detail in the Declaration of Randy Thomasson, the Campaign has been  defending marriage as the union of one man and one woman since long before Proposition 8 qualified for the ballot, and when Proposition 8 qualified the Campaign supported it and urged voters to approve it. The Campaign's efforts have included filing lawsuits to challenge statutory enactments that undermined the institution of marriage, participating as a party in the consolidated marriage cases and drafting proposed legislation to assist county officials with concerns about issuing marriage licenses to same-sex couples. (Declaration of Randy Thomasson, pp. 2-3). Consequently, the Campaign's interests are not merely "vague, generalized ideological interests" as Proponents allege, but tangible, significant interests in preserving the institution of marriage from the redefinition sought by Plaintiffs.

When the "subject matter of the litigation" is properly identified by the allegations of the Complaint, it is apparent that the Campaign has much more than the "undifferentiated, generalized interest in the outcome of an action" that the Ninth Circuit called "too porous a foundation on which to premise intervention as of right." *So. Calif. Edison v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002). Neither is the Campaign's interest merely a "general interest shared by a substantial portion of the population" that does not meet the intervention standard. *California ex. rel. Van de Kamp v. Tahoe Reg'l Planning Agency,* 792 F.2d 779, 781-782 (9th Cir. 1986).  A substantial portion of the general population does not share the Campaign's years-long history of defending marriage as the union of one man and one woman, nor the Campaign's liability for its efforts to prevent the same re-definition of marriage being sought in this case. Unlike the third-party creditor who had no interest in the

Reply in Support of Campaign Intervention– Case No. 09-CV-02292 VRW                    7

environmental issue in *United States v. Alisal Water Corporation,* 370 F.3d 915, 920 (9th Cir. 2004), the Campaign has a direct interest in the underlying subject matter of the litigation – not merely Proposition 8, but the institution of marriage as the union of one man and one woman.  Consequently, the Campaign meets the requirement of a significant, protectable interest under Ninth Circuit precedent. *Idaho v. Freeman*, 625 F.2d 886, 887 (9th Cir. 1980); *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2005); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983).

## C.   The Campaign's Significant Interests Might Be Impaired By The Outcome Of This Proceeding.

Proponents' cursory conclusion that the Campaign's interests will not be significantly impaired was premised upon their mischaracterization of the subject matter of this litigation as merely the validity of Proposition 8 and of the Campaign's interests as "vague, generalized ideological interests." Since neither characterization is accurate, the resulting conclusion is also incorrect.

The Ninth Circuit's description of the Audubon Society's interest in *Sagebrush Rebellion*, and its conclusion that the society met the impairment standard applies equally to the Campaign in this case. "[T]here can be no serious dispute in this case concerning . . . the existence of a protectable interest on the part of the applicant which may, as a practical matter, be impaired. An adverse decision in this suit would impair the society's interest in the preservation of birds and their habitats." *Sagebrush Rebellion*, 713 F.2d at 527-528. An adverse decision in this suit would impair the Campaign's interest in preserving marriage as the union of one man and one woman, an interest that has spanned several years.

## D.   Proponents Have Themselves Demonstrated That Neither They Nor Any Other Existing Parties Will Adequately Represent The Campaign's Interests.

Proponents' skewing of the Campaign's interests and the underlying subject matter of this action, which they intended to use to demonstrate that they will adequately represent the Campaign's interests actually have the opposite effect. By characterizing this action as a judicial referendum on Proposition 8, Proponents demonstrate that they do not have an accurate picture of what is at stake in this action.  If they cannot articulate the nature and significance of Plaintiffs' claims, then they cannot adequately defend against those  claims on the Campaign's behalf.  If Proponents cannot accurately identify who is seeking to intervene – the Campaign, not CCF – then they cannot accurately identify the party's interests, let alone represent them. Similarly, if they cannot accurately describe the Campaign's

interests in the action, then they cannot adequately represent those interests.

Proponents argue that they have met the criteria that the Ninth Circuit has established to determine whether there will be adequate representation of an intervenor's interests: (1) whether the interests of the existing party and the intervenor are sufficiently similar that the existing party would undoubtedly make the same legal arguments as the intervenor; (2) whether the existing party is capable and willing to make such arguments; and (3) whether the intervenor would add some necessary element not covered by the existing parties to the proceedings. *Prete v. Bradbury*, 438 F.3d 949, 956 (9th Cir. 2005). However, when Proponents' arguments are measured against the actual facts, it is clear that they have not demonstrated that they will adequately represent the Campaign's interests.

Proponents argue that they – "the only legally recognized, official supporters of Proposition 8 –will adequately represent CCF's [sic] generalized interests in defending Proposition 8's validity. Thus CCF's [sic] intervention request should be denied." (Memorandum in Opposition, p. 9, lines 18-19). However, as discussed more fully above, the Campaign is not asserting "generalized interests in defending Proposition 8's validity." Instead, the Campaign has tangible, significant interests in defending its longstanding, costly, efforts to preserve marriage as the union of one man and one woman against redefinition – the actual underlying subject matter (as opposed to mere validity of Proposition 8) of this action. Proponents say that they have the ultimate objective of affirming the constitutionality of Proposition 8 and then presume to know that the Campaign has the same ultimate objective. (Memorandum in Opposition, p. 9, lines 22-25). Since the Plaintiffs' purpose is not to merely invalidate Proposition 8, but to remove all vestiges of marriage as one man and one woman from California statutes and constitution, Proponents' proclamation of their ultimate objective is necessarily an admission that they will not fully defend against Plaintiffs' claims. Furthermore, Proponents' presumption notwithstanding, the Campaign's ultimate objective is not merely affirming the constitutionality of Proposition 8. While that is certainly one of the outcomes that the Campaign hopes will come out of this litigation, the Campaign's ultimate goal is to ensure that marriage remains the union of one man and one woman in California. Consequently, the Campaign's interests will not be "fully subsumed within the Proponents' legally recognized interests in defending the measure that they labored unwaveringly (and spent more than $37 million) to support," as Proponents claim. (Memorandum in Opposition, p. 10, lines 12-15). Neither will the Proponents make every "relevant,

meritorious argument that CCF [sic] would assert." (Memorandum in Opposition, p. 11, lines 17-19). Proponents will not make the same arguments as will the Campaign and have admitted that they are unwilling to make the broader statutory and constitutional arguments that the Campaign will advance. Therefore, under the first two criteria of *Prete* Proponents will not adequately represent the Campaign. As for the third criterion, the Campaign will add a necessary element to the litigation in advancing arguments in defense of marriage as the union of one man and one woman that reach the confines of Proposition 8 and thus address the other issues raised by Plaintiffs.

Proponents' argument make clear that they will not adequately represent the Campaign's interests in this proceeding. The parties agree that the original named defendants will not adequately represent those interests. Consequently, the Campaign's motion to intervene should be granted.

### E.     Proponents Agree That The Campaign Meets The Requirements For Permissive Intervention.

Proponents concede that the Campaign meets the threshold requirements for permissive intervention. (Memorandum in Opposition, p. 14, lines 7-8). However, Proponents urge this Court to deny the Campaign's motion because, they claim, the Campaign failed to meet the requirements for intervention as of right. (Memorandum in Opposition, p. 14, lines 8-16). Since the Campaign has met the requirements for intervention as of right Proponents' request is not well taken.

Proponents further argue that granting the Campaign intervention will unduly delay or prejudice the adjudication of the original parties' rights. Proponents base their argument upon their baseless claim that the Campaign "vociferously opposed" Proposition 8 and is merely as an "equivocal supporter of Proposition 8." (Memorandum in Opposition, pp. 14-15). However, as explained above, the Campaign did not author the statements referred to on Exhibit B, and those statements do not refer to Proposition 8. Therefore, there is no "vociferous opposition" to the proposition. In fact, as demonstrated in Mr. Thomasson's declaration, the Campaign has supported and advocated the language contained in both Proposition 22 and Proposition 8, "only marriage between one man and one woman is valid or recognized in California," since 2000. (Declaration of Randy Thomasson, pp. 1-3).

Proponents also claim that permitting one additional party to intervene to defend marriage as the union of one man and one woman will somehow represent a "piling on of parties" that will create unnecessary delay. (Memorandum in Opposition, p. 14, lines 27-28). That comment exemplifies the

enigmatic nature of Proponents' opposition. If they are truly concerned about upholding marriage as the union of one man and one woman, then they should welcome an additional voice to defend that viewpoint. Furthermore, if they are truly concerned about upholding the definition of marriage, or even just their amendment, which is presently in effect, then they should not be concerned about whether the determination might take a little longer. Most importantly, however, they have not demonstrated that the Campaign's participation would cause a delay. The Campaign has said that it will meet whatever deadlines are imposed by the Court and cooperate with all Court directions. Its participation will cause no more of a delay than will Proponents.

## II. PLAINTIFFS RELY UPON THE SAME FLAWED PREMISES AS DO PROPONENTS AND REACH THE SAME INCORRECT CONCLUSION.

While Plaintiffs do not mis-identify the Campaign as CCF, they do follow the same flawed premises regarding the subject matter of the action and the Campaign's interests as do Proponents. Consequently, they reach the same flawed conclusion that the Campaign does not meet the standards for intervention. As discussed above with regard to Proponents' opposition, Plaintiffs have failed to dispute that the Campaign meets the standards for intervention as of right and permissive intervention under F. R.Civ. P. 24.

### A. The Campaign Has A Significant Protectable Interest In Preserving Marriage As The Union Of One Man And One Woman, The True Underlying Subject Matter Of This Action.

As did the Proponents, Plaintiffs attempt to convince the Court that the sole matter at issue is the validity of Proposition 8, and that the Campaign's only asserted interest is as a supporter of that proposition. (Plaintiff's Memorandum in Opposition, p. 7). Plaintiffs' implication that this case is only about the validity of Proposition 8 contradicts their own allegations. In their Complaint, Plaintiffs seek injunctions against Proposition 8"**and any other California statutes that seek to exclude gays and lesbians from access to civil marriage,**" including California Family Code §§ 300, 301 and 308.5. (Complaint, Doc. ¶¶ 2, 6, 21,24) (emphasis added). Plaintiffs preface their Complaint by referring to the fundamental right of marriage as articulated in *Loving v. Virginia*, 388 U.S. 1,12 (1967) (Complaint,¶1). Plaintiffs also refer to California Family Code §§ 297-299.6 as impermissibly creating a "separate but equal" status for same-sex couples. (Complaint, ¶1). These allegations make clear that Plaintiffs are not merely seeking to invalidate Proposition 8, but to remove any reference to marriage

as the union of one man and one woman in California. Plaintiffs' targets including the Family Code sections that incorporate the definition enacted as Proposition 22, which became Family Code §308.5 and contains the same fourteen words as does Proposition 8. The Campaign worked to get Proposition 22 on the ballot and then fought to preserve it from erosion through the enactment of Family Code §§ 297-299.6 and invalidation in the Marriage Cases. (Declaration of Randy Thomasson, pp. 1-3). Underlying the Campaign's actions, and Plaintiffs' action, is whether marriage will continue as the union of one man and one woman. The Campaign's interest is not merely as one of many supporters of Proposition 8, as Plaintiffs claim, but is a long-standing interest in seeing that marriage remain as the union of one man and one woman. Far from being an "undifferentiated interest" shared by millions of California voters, as Plaintiffs claim, the Campaign's stake in this action is as tangible and significant as is the Proponents' and Plaintiffs'.

Plaintiffs also unsuccessfully try to distinguish the Ninth Circuit precedent that supports the Campaign's motion for intervention. Plaintiffs claim that the Campaign is unlike the proposed intervenor-defendant in *Prete v. Bradbury,* 438 F.3d 949, 954 (9th Cir. 2005), who was the "chief petitioner" for the challenged measure. (Plaintiffs' Memorandum, p.7 n.4). Again, this reflects Plaintiffs' faulty premise that this case is only about Proposition 8. While Proponents are the official sponsors of Proposition 8, the Campaign was a chief proponent of Proposition 22, which contained identical language to Proposition 8, and a primary plaintiiff in the lawsuits seeking to preserve that proposition. Since Proposition 22 and its progeny are part of Plaintiffs' actions, the Campaign is as much of a "chief petitioner" as was the intervenor in *Prete*, and has the same significant protectable interest as he did. *See Prete*, 438 F. 3d at 954.[4] Plaintiffs also claim that *Idaho v. Freeman*, 625 F.2d 886 (9th Cir. 1980) and *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983) are distinguishable because they predate *Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997), which addressed Article III standing. (Plaintiffs' Memorandum, p. 7, n.4). The Ninth Circuit rejected the same claim by the plaintiffs in *Prete*. "Plaintiffs contend, however, that *Arizonans for Official English v. Arizona*, 520 U.S. 43, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (hereinafter " *AOE* "),

---

[4]     While the proposed intervenor in *Prete* did not meet the inadequate representation requirement and so was denied intervention, *Prete,* 438 F.3d at 956-59, the Campaign has satisfied that requirement, as discussed above, and so should be granted intervention.

controls here and bars initiative sponsors from intervening in judicial challenges to the initiative. Plaintiffs misread *AOE*." *Prete*, 438 F.3d at 955. Responding to the plaintiffs' reliance upon the same language from *AOE* referenced by Plaintiffs here ("grave doubts" as to whether initiative proponents have Article III standing, *AOE*, 520 U.S. at 66), the Ninth Circuit said:

> *AOE* did not hold that initiative sponsors do not have an interest in defending the initiative sufficient to support intervention. The main issue presented in AOE was whether the intervenor-applicant there had Article III standing to pursue an appeal when a step taken by the original plaintiff (resignation of her job) rendered the entire case or controversy moot. Such a scenario is not at issue here.

*Prete*, 438 F.3d at 955. Neither is it at issue here. Consequently, as was true with the proposed intervenors in *Prete*, the Audubon Society in *Sagebrush Rebellion*, and the National Organization for Women in *Freeman*, the Campaign has a significant protectable interest in the subject matter and is entitled to intervene as of right.

### B. Neither Proponents Nor Any Other Existing Party Can Adequately Represent The Campaign's Interests.

Once again relying upon their flawed premise that this case is only about Proposition 8 and that the Campaign's only interest is as an incidental supporter of Proposition 8, Plaintiffs wrongly conclude that Proponents will adequately represent the Campaign's interests. (Plaintiffs' Memorandum, p. 12, lines 1-5). Plaintiffs claim that "the Campaign has failed to put forth a single argument in support of Prop. 8 that is different in any respect from those raised by the official Prop. 8 Proponents, who have already been permitted to intervene on the side of Defendants, Doc. #77, and have amply demonstrated that they are capable and willing to defend Prop. 8." (Plaintiffs' Memorandum, p. 12, lines 1-5). As discussed more fully above, Proponents have admitted that they will not make the same arguments as will the Campaign and that they are unwilling to make the broader statutory and constitutional arguments that the Campaign will advance. While the Proponents might raise similar arguments related to Proposition 8 that the Campaign will raise, that does not end the inquiry since Plaintiffs are seeking more than merely invalidation of the proposition. Proponents have made it clear that they have a singular goal of protecting "their proposition." While that is certainly one of the goals of the Campaign, it is not the only goal, and as Plaintiffs have made clear it is not the only target of their litigation. Therefore, the Proponents cannot adequately represent the Campaign's interests and the Campaign's motion should be granted.

### C.    The Campaign Meets The Standards For Permissive Intervention.

Plaintiffs' faulty conclusion about the Campaign's motion for intervention as of right leads to the equally faulty conclusion that the Campaign cannot meet the standards for permissive intervention. Plaintiffs begin their argument with the premise that the Campaign has **no claim** under the intervention as of right standard, and therefore no claim to support permissive intervention. (Plaintiffs' Memorandum, pp. 12-13).  Since the Campaign has established the prerequisites for intervention as of right, Plaintiffs' primary conclusion must fail.

Plaintiffs offer no analysis of the question of whether  the Campaign's claim has a common question of law or fact with Plaintiffs' claims, but merely conclude that the Campaign has no claims. (Plaintiffs' Memorandum, p. 13). Plaintiffs' simplistic conclusion ignores the reality of both parties' interests. For example, the Campaign claims that the definition of marriage as the union of one man and one woman embodied in Proposition 8 and numerous California statutes must be upheld.  Plaintiffs claim that the definition must be invalidated. Obviously, both claims have in common the question of whether marriage should be defined as the union of one man and one woman. The Campaign claims that the fundamental constitutional right of marriage must be understood as the union of one man and one woman. Plaintiffs claim that the fundamental constitutional right of marriage must be understood to include same-sex couples. Both claims have in common the question of the nature and scope of the right of marriage under the United States Constitution. If Plaintiffs' statements regarding the definition of marriage and constitutional rights can be called claims, then the Campaign's statements regarding the definition of marriage and constitutional are claims. Plaintiffs' refusal to recognize the Campaign's claims does not make them disappear.

Finally, Plaintiffs claim that permitting the Campaign to intervene will unnecessarily delay the litigation. However, as was true with Proponents' similar claim, there is no evidence that the Campaign's presence will extend the time that it takes to resolve Plaintiffs' claims. This Court will issue a scheduling order that all parties must follow, and the Campaign will follow that order just as will the other parties. Whether there are four sets of parties or three sets of parties on Defendants' side will not affect the deadlines imposed by the Court. The schedule set in place by this Court for resolution of this case will be in effect whether there are three groups or parties or four groups of parties on the side of Defendants. Permitting the Campaign to intervene will not delay the resolution of the case. It will make

the record upon which this Court must base its decision more complete, which will benefit all concerned.

**CONCLUSION**

The Campaign has a significant, protectable interest in the subject matter of this action – marriage as the union of one man and one woman, not merely Proposition 8. That interest might be impaired by the outcome of this action, and is not adequately represented by the existing parties. Therefore, the Campaign satisfies the requirements for intervention as of right. The Campaign also meets the standards for permissive intervention. For these reasons, the Campaign's Motion to Intervene as a Defendant should be granted.

Dated: August 14, 2009.

Respectfully Submitted,

/s/Mary E. McAlister
MARY E. McALISTER
California Bar No. 148570
RENA M. LINDEVALDSEN*
LIBERTY COUNSEL
*Admitted pro hac vice

**PROOF OF SERVICE**

I am employed at the law firm of Liberty Counsel. I am over the age of 18 and not a party to the within action. My business address is 100 Mountain View Road, Suite 2775, Lynchburg, Virginia 24502.

On August 14, 2009  I served the foregoing document described as:

Reply Memorandum in Support of the Campaign's Motion to Intervene

 on the below-listed parties in this action by the method stated.

I  presented the foregoing to the Clerk of the Court for filing and uploading via the CM/ECF system of the United States District Court, Southern District of California, which will send a notice of electronic filing to the attorneys named on the attached Service List.

Executed on August 14, 2009, at Lynchburg, Virginia.

I declare under penalty of perjury under the laws of the United States of America and State of California that the above is true and correct.


/s/Mary E. McAlister

Mary E. McAlister

**SERVICE LIST**

2

3   Theodore B. Olson                              Timothy  Chandler
    Matthew C. McGill                              ALLIANCE DEFENSE FUND
4   Amir C. Tayranit                               101 Parkshore Dr, Suite 100
    GIBSON, DUNN & CRUTCHER, LLP                   Folsom, CA 95630
5   1050 Connecticut Avenue, NW                    (916) 932-2850
    Washington, D.C. 20036                         tchandler@telladf.org
6   (202) 955-8668
    tolson@gibsondunn.com
7                                                  Andrew P. Pugno
    Theodore J. Boutrous, Jr.                      LAW OFFICES OF ANDREW P. PUGNO
8   Christopher D. Dusseault                       101 Parkshore Dr, Suite 100
    Ethan D. Dettmer                               Folsom, CA 95630
9   Theane Evangelis Kapur                         (916) 608-3065
    Enrique A. Monagas                             andrew@pugnolaw.com
10  GIBSON, DUNN & CRUTCHER, LLP
    333 S. Grand Avenue
11  Los Angeles, CA 90071                          Benjamin W. Bull
    (213) 229-7804                                 Brian W. Raum
12  tboutrous@gibsondunn.com                       James A. Campbell
                                                   ALLIANCE DEFENSE FUND
13  David Boies                                    15100 N. 90th St.
    Theodore H. Uno                                Scottsdale, AZ 85260
14  BOIES, SCHILLER & FLEXNER, LLP                 (480) 444-0020
    333 Main St                                    bbull@telladf.org
15  Armonk, NY 10504                               braum@telladf.org
    (914) 749-8200                                 jcampble@telladf.org
16  dboies@bsfllp.com

17  **Attorneys for Plaintiffs**                   **Attorneys for Proposition 8 Official Proponent**
                                                   **Intervenor Defendants**
18

19  Kenneth C. Mennemeier                          Edmund G. Brown, Jr.
    Kelcie M. Gosling                              Attorney General of California
20  Landon D. Bailey                               Jonathan K. Renner
    MENNEMEIER, GLASSMAN & STROUD,                 Senior Assistant Attorney General
21  LLP                                            Tamar Pachter
    980 9TH St, Suite 1700                         Deputy Attorney General
22  Sacramento, CA 95814-2736                      455 Golden Gate Ave, Suite 11000
    (916) 553-4000                                 San Francisco, CA 94102-7004
23  kcm@mgslaw.com                                 (415) 703-5970
                                                   Tamar.Pachter@doj.ca.gov
24  **Attorneys for Administration Defendants**

25                                                 **Attorneys for Defendant Attorney General**
                                                   **Edmund G. Brown Jr.**
26

27

28

Elizabeth M. Cortez
Assistant County Counsel
Judy W. Whitehurst
Principal Deputy County Counsel
OFFICE OF THE COUNTY COUNSEL
648 Kenneth Hahn Hall of Administration
500 W. Temple St.
Los Angeles, CA 90012-2713
(213) 974-1845
jwhitehurst@counsel.lacounty.gov

**Attorneys for Defendant Dean C. Logan**

Richard E. Winnie
County Counsel
Claude F. Kolm
Deputy County Counsel
Brian E. Washington
Assistant County Counsel
Lindsey G. Stern
Associate County Counsel
OFFICE OF THE COUNTY COUNSEL
County of Alameda
1221 Oak St. Suite 450
Oakland , CA 94612
(510)272-6700
claude.kolm@acgov.org

**Attorneys for Defendant Patrick O'Connell**