DENNIS J. HERRERA, State Bar #139669
City Attorney
THERESE M. STEWART, State Bar #104930
Chief Deputy City Attorney
DANNY CHOU, State Bar #180240
Chief of Complex and Special Litigation
VINCE CHHABRIA, State Bar #208557
ERIN BERNSTEIN, State Bar #231539
CHRISTINE VAN AKEN, State Bar #241755
MOLLIE M. LEE, State Bar #251404
Deputy City Attorneys
City Hall, Room 234
One Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone: (415) 554-4708
Facsimile: (415) 554-4699

Attorneys for Proposed Intervenors
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO,<br><br>　　Plaintiffs,<br><br>　　vs.<br><br>ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the California Department of Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; and DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles,<br><br>　　Defendants. | Case No. 09-CV-2292 VRW<br><br>**CITY AND COUNTY OF SAN FRANCISCO'S REPLY IN SUPPORT OF ITS MOTION TO INTERVENE AS PARTY PLAINTIFF**<br><br>Hearing Date:　August 19, 2009<br>Time:　10:00 a.m.<br>Place:　Courtroom 6, 17th Fl.,<br>　　　450 Golden Gate Ave.<br><br>Trial Date:　Not set |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ....................................................................................................................1

ARGUMENT............................................................................................................................3

    I.      THE CITY'S INTERVENTION IN THIS CASE WILL ADVANCE A COMPLETE AND SPEEDY ADJUDICATION OF THE ISSUES........................3

          A.      Rule 24(b) Affords District Courts Wide Discretion To Allow Intervention. ................................................................................3

          B.      The City's Experience In Creating A Similar Record Coupled With Its Unique Interest And Perspective Strongly Weigh in Favor of Intervention. ................................................................................3

    II.     NEITHER PLAINTIFFS NOR PROPOSITION 8 PROPONENTS HAVE PROVIDED A SOUND BASIS FOR REJECTING INTERVENTION BY THE CITY. ..........................................................................................................7

          A.      Proposition 8 Proponents' Three-Fold Argument Stemming From The City's Status As A Local Government Entity Is Without Merit. ...................7

                1.      Even if Proponents Were Correct About The City's Standing, Article III Standing Is Unnecessary For Intervention......................7

                2.      If The City Is Barred From Intervening For Lack Of Standing, Then Proposition 8 Proponents Should Be Barred As Well. .........10

                3.      Proposition 8 Proponents' Arguments Concerning Independent Jurisdiction Or The City's Lack Of Authority To Bring Its Claim Are Without Merit................................................................11

          B.      The City's Full Participation As Intervenor Will Not Delay The Just And Equitable Adjudication Of The Legal Issues In This Case Or Prejudice The Parties. .................................................................13

CONCLUSION.......................................................................................................................15

# **TABLE OF AUTHORITIES**

**Federal Cases**

*Arizonans for Official English v. Arizona*
  520 U.S. 43 (1997)...........................................................................................................10

*Blake v. Pallan*
  554 F2d 947 (9th Cir. 1977) ............................................................................................11

*City of South Lake Tahoe v. California Tahoe Regional Planning Agency*
  625 F.2d 231 (9th Cir. 1980) ...........................................................................7, 8, 10, 11

*Clinton v. City of New York*
  524 U.S. 417 (1998)...........................................................................................................9

*Coleman v. Miller*
  307 U.S. 443 (1939)..........................................................................................................12

*Department of Commerce v. U.S. House of Representatives*
  525 U.S. 316 (1999)............................................................................................................9

*Diamond v. Charles*
  476 U.S. 54 (1986).............................................................................................................8

*Director, Office of Workers' Compensation Programs v. Perini North River Associates*
  459 U.S. 297 (1983)............................................................................................................9

*The Don't Bankrupt Washington Committee v. Continental Illinois Nat'l Bank*
  *& Trust Co. of Chicago*
  460 U.S. 1077 (1983)........................................................................................................10

*Hazel Green Ranch, LLC v. U.S. Dept. of Interior*
  No. 1:07-CV-00414-OWW-SMS, 2007 WL 2580570 (E.D. Cal. Sept. 5, 2007) .....................11

*In re Marriage Cases*
  43 Cal. 4th 757 (2008) ...................................................................................................4, 6

*In re Visa Check / MasterMoney Antitrust Litigation*
  190 F.R.D. 309 (E.D.N.Y. 2000)........................................................................................3

*Independent Living Center of S. Cal., Inc. v. Maxwell-Jolly*
  572 F.3d 644 (9th Cir. 2009) ............................................................................................12

*Kootenai Tribe of Idaho v. Veneman*
  313 F.3d 1094 (9th Cir. 2002) ...........................................................................2, 3, 8, 14

*Lockyer v. City and County of San Francisco*
  33 Cal. 4th 1055 (2004) ...................................................................................................12

*Loyd v. Alabama Dep't of Corrections*
  176 F.3d 1336 (11th Cir. 1999).........................................................................................9

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992)..............................................................................................10

*McConnell v. Federal Election Comm'n.*
    540 U.S. 93 (2003)..................................................................................................9

*Mi Pueblo San Jose, Inc. v. City of Oakland*, No. C 06-4094 VRW
    2007 WL 578987 (N.D. Cal. Feb. 21, 2007) .......................................................11

*Newby v. Enron Corp.*
    443 F.3d 416 (5th Cir. 2006) ..................................................................................9

*Nikon Corp. v. ASM Lithography B.V.*
    222 F.R.D. 647 (N.D. Cal. 2004)........................................................................8, 9

*Osage Tribe of Indians of Okl. v. United States*
    85 Fed. Cl. 162 (2008) ...........................................................................................3

*Palomar Pomerado Health Sys. v. Belshe*
    180 F.3d 1104 (9th Cir. 1999) ..............................................................................12

*Portland Audubon Soc'y v. Hodel*
    866 F.2d 302 (9th Cir. 1989) ..................................................................................8

*Romer v. Evans*
    517 U.S. 620 (1996).........................................................................................2, 13

*S.E.C. v. United States Realty & Improvement Co.*
    310 U.S. 434 (1940)............................................................................................6, 9

*Sagebrush Rebellion, Inc. v. Watt*
    713 F.2d 525 (9th Cir. 1983) ..............................................................................3, 4

*San Juan County v. United States*
    503 F.3d 1163 (10th Cir. 2007) ..............................................................................9

*Shaw v. Hunt*
    154 F.3d 161 (4th Cir. 1998) ..................................................................................9

*Southwestern Ctr. for Biological Diversity v. Berg*
    268 F.3d 810 (9th Cir. 2001) ................................................................................12

*Spangler v. Pasadena City Bd. of Educ.*
    552 F.2d 1326 (9th Cir. 1977) .....................................................................3, 8, 10

*Thomas v. Mundell*
    572 F.3d 756 (9th Cir. 2009) ..................................................................................7

*United States v. City of Los Angeles*
    288 F.3d 391 (9th Cir. 2002) ............................................................................3, 11

*United States v. Hays*
515 U.S. 737 (1995)....................11

*Williams v. Mayor and City Council of Baltimore*
289 U.S. 36 (1933)....................12

*Yniguez v. State of Arizona*
939 F.2d 727 (9th Cir. 1991) ....................8

**State Statutes & Codes**

CAL. WELF. & INST. CODE
§ 17000 (2009)....................2

**Rules**

Federal Rule of Civil Procedure
24(a) ....................8, 9, 12
24(b)....................3, 8, 9, 10, 11, 15

**Other References**

6 James Wm. Moore, *Moore's Federal Practice*
(3d ed. 2004) ....................3

BCRA
§ 403(b)....................9

Gates, Badgett & Ho, Marriage, Registration and Dissolution by Same-Sex Couples in the U.S. (July 2008) (available at http://www.law.ucla.edu/williamsinstitute/ publications/Policy-Econ0index.html). ....................5

Gates, Same-Sex Couples and the Gay, Lesbian Bisexual Population: New Estimates from the American Community Survey (Oct. 2006) (available at http://www.law.ucla.edu/williamsinstitute/ publications/Policy-Census-index.html)....................5

**INTRODUCTION**

None of the original Defendants in this case—not the State, the Governor or the Counties of Los Angeles and Alameda—oppose intervention by the City and County of San Francisco ("City" or "San Francisco").  Plaintiffs oppose the City's intervention for one reason alone:  a concern that intervention by *any* party will delay resolution of the case.  *See* Doc. 135 at 2, 12, 14.  But Plaintiffs effectively acknowledge that, as to the City, the opposite is true:  "[t]he City Attorney's demonstrated experience in assembling factual evidence pertaining to the constitutional issues presented in this case and its demonstrated willingness to take on Plaintiffs' fight as its own mitigates the threats of delay and unnecessarily prolonged injury to Plaintiffs."  *Id*. at 3; *see also id*. at 14 ("the extraordinary factual record the City appended to its motion suggests strongly that the City is already well on its way to 'contribut[ing] to full development of the underlying factual issues in the suit.'")

Defendant-Intervenor Proposition 8 Proponents ("Proposition 8 Proponents") also oppose the City's intervention, but the premise underlying their argument is false.  They contend the City cannot establish two of the three threshold requirements for permissive intervention – a common claim and an independent basis for jurisdiction – because it lacks Article III standing.  They further contend the Court should not exercise its discretion to allow the City to intervene due to its lack of standing.  But as strongly suggested by the Ninth Circuit and as expressly held by numerous other circuits, standing is not a requirement for permissive intervention.  This is demonstrated by the fact that the Court allowed the Intervenors into the case, even though they lack Article III standing.

Indeed, the Proposition 8 Proponents fundamentally misconstrue the "jurisdiction" requirement for permissive intervention.  This requirement does not relate to standing; it relates to jurisdiction over the claims asserted by the proposed intervenor.  Because the Court clearly has jurisdiction over the City's claims – which are based on federal law and are virtually identical to Plaintiffs' claims – the City meets this requirement here.

In any event, the City has standing.  The cases cited by the Proposition 8 Proponents rely on the premise that the State opposes the lawsuit brought by its political subdivision.  But in this case, the State neither defends the constitutionality of Proposition 8 nor opposes the City's intervention in this case.  Moreover, in the landmark case of *Romer v. Evans*, 517 U.S. 620 (1996), which first applied the

Equal Protection Clause to strike down a law that discriminated against lesbians and gay men, the plaintiffs included the City and County of Denver and two other cities. There is not even a hint in the Supreme Court's decision in *Romer* that those local governments lacked standing to prosecute the case.

Neither the Proposition 8 Proponents nor Plaintiffs take particular issue with what the City has advanced as the most important reasons to allow it to participate as a party: its participation will advance the just and equitable resolution of the constitutionality of Proposition 8 and will be helpful to the Court.[1] *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002) (upholding permissive grant of intervenor status in case "impact[ing] large and varied interests" where "the presence of intervenors would assist the court"). The City has both an interest and a perspective that are unique and will be of value in adjudicating this case. As we discuss in greater detail below, local governments like San Francisco have a concrete financial interest in remedying the exclusion of same-sex couples from marriage that Plaintiffs do not share. Not merely do they lose revenue from the loss of wedding-related sales and hotel taxes, but as the entities with primary responsibility for providing a social safety net in California, *see, e.g.* CAL. WELF. & INST. CODE § 17000 (2009), local governments bear the cost of supporting the basic needs of those whose needs are not met by their families—for example, by providing health care to non-marital family members where an employer will not. Similarly, the City pays some of the costs that Proposition 8's message of second-class status for gay men and lesbians imposes, such as by providing mental and physical health care and support to gay and lesbian youth and adults who suffer the effects of discrimination. Finally, in addition to providing these perspectives that are unlikely to be adequately conveyed by parties presently in the case, the City can assist in the speedy disposition of this case by lending its experience concerning expert witnesses and the key facts on which this case's resolution will likely turn—as Plaintiffs themselves acknowledge. For all of these reasons, the Court should exercise its discretion to permit the City's intervention.

---

[1] To be sure, the Proposition 8 Proponents have strenuously argued that the City's contributions would not advance these interests—but the only reason they assert is that the City would introduce a factual record about matters that the Proposition 8 Proponents—unlike this Court and the Plaintiffs—believe are not relevant. *See, e.g.,* Doc. 137 at 10.

**ARGUMENT**

**I. THE CITY'S INTERVENTION IN THIS CASE WILL ADVANCE A COMPLETE AND SPEEDY ADJUDICATION OF THE ISSUES.**

**A. Rule 24(b) Affords District Courts Wide Discretion To Allow Intervention.**

Under Federal Rule of Civil Procedure 24(b), this Court "may grant permissive intervention where the applicant … shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002).  Once these threshold requirements are met, the question whether to permit intervention is subject to the discretion of the trial court on a "case-by-case basis." *Id.*; *see also Kootenai Tribe*, 313 F.3d at 1111.

The trial court's discretion in making this determination is "broad," *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977), so broad that its determination " 'will rarely be reversed on appeal.' " *Osage Tribe of Indians of Okl. v. United States*, 85 Fed. Cl. 162, 177 (2008) (quoting 6 James Wm. Moore, *Moore's Federal Practice* § 24.10[1], at 24-57 (3d ed. 2004)).  No single factor is dispositive, *In re Visa Check / MasterMoney Antitrust Litigation*, 190 F.R.D. 309, 312 (E.D.N.Y. 2000), but relevant factors that courts may consider include

> "the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case.  The court may also consider whether … the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler*, *supra*, 552 F.2d at 1329 (internal footnotes omitted).

The trial court's discretion, the breadth of these factors, and the fact that none of them is dispositive permits this Court ultimately to decide whether it believes the City's participation as intervenor in the case will be helpful to the Court in resolving the case.  For the reasons we discuss in the next section, it will, and the Court should exercise its discretion in favor of intervention.

**B. The City's Experience In Creating A Similar Record Coupled With Its Unique Interest And Perspective Strongly Weigh in Favor of Intervention.**

No one disputes the City's ability to assemble quickly a comprehensive record concerning the purposes and effects of same-sex couples' exclusion from marriage, and this expertise is a factor that weighs in favor of intervention.  *See Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir.

Idaho 1983). Plaintiffs agree that the City has this capability, noting its "demonstrated experience" in this regard, Doc. 135 at 3, and the "extraordinary factual record" it assembled in *In re Marriage Cases*, 43 Cal. 4th 757 (2008). Doc. 135 at 14. For the Proposition 8 Proponents, the City's expertise in presenting facts concerning the marriage exclusion is precisely the problem; Proponents warn that the City threatens to "introduce[] a far-reaching factual record." Doc. 137 at 10. But such a record is precisely what the Court has identified as necessary to resolve the constitutionality of Proposition 8. Doc. 76 at 6-9. And, as the City argued in its opening brief, the expert declarations it assembled in the *Marriage Cases* and appended to its brief address precisely the questions the Court has identified, such as the history of discrimination against gay men and lesbians, Doc. 111, Ex. 7, the immutability of sexual orientation and the dangers associated with attempting to change it, *id.*, Ex. 10B at pp. 5-8, Ex. 14B at pp. 4-10, and same-sex couples' ability to parent, *id.*, Ex 10A at pp. 4-5, Ex. 10B at pp. 2-5, Ex. 14A at pp. 8-10, Ex. 14B at pp. 10-16. These are complicated issues that the City Attorney's Office has previously demonstrated expertise in addressing—which will, in turn, assist in the speedy disposition of the present case. Proposition 8 Proponents' argument here about the City's ability to contribute meaningfully to this case can only be accepted if the Court believes that such facts are not relevant after all.

Moreover, the City's participation will meaningfully aid the Court because of its unique interest and perspective on this case—as Plaintiffs acknowledge when they agree that the City has a "unique interest as a regulator that Plaintiffs do not purport to represent." Doc. 135 at 14. The City brings an important perspective as the government that at once must deny same-sex couples the right to enter the time-honored and recognized method for establishing a family—namely, the right to marry—and at the same time provide the social safety net resources and services to adults and children that lack wherewithal because they are not part of a recognized and supported family unit. This perspective is shared, of course, by the other counties who are parties to the case, but it is not represented by them because they have chosen for understandable reasons to remain essentially silent in the case.

The perspective San Francisco brings is broader than that the individual plaintiffs are likely to represent. Thus, for example, the City knows and can demonstrate that withholding the stature of marriage from same-sex couples costs governments and, in turn, taxpayers millions of dollars

1  annually, Doc. 111, Ex. 13, and these very real economic costs will contribute to showing Proposition
2  8 is irrational and grounded in prejudice rather than logic or common sense.  Local governments have
3  primary responsibility for the safety net that supports both adults and children who are not supported
4  by themselves or their families.  Nearly a third of San Francisco's budget is devoted to safety-net
5  services, *id.*, Ex. 13 at p. 4, which range from cash assistance and subsidized housing to physical and
6  mental health care, foster care and juvenile dependency services.  The costs of supporting those whose
7  basic needs are not met by themselves or their families create a strong interest on the part of local
8  governments in strong and legally sanctioned family bonds, regardless of whether the family is headed
9  by an opposite-sex or same-sex couple.  *See id.*, Ex. 6 at pp. 14-15.  If there are no legal support
10 obligations running from one member of a couple to the other or to the children in that household,
11 adults and children are far more likely to depend on government support.  *See id.*, Ex. 6 at pp. 14-17,
12 Ex. 13 at pp. 4-5.  Means-based criteria for many government services take account of marital status.
13 *See id.*, Ex. 13 at p. 4.  Moreover, the legal relationships marriage establishes between adults and
14 between parents and children dramatically lessen the likelihood that they will become dependent on
15 government support in situations of death, disability or divorce.  And non-marital family members are
16 often unable to provide other family members with health insurance benefits through employers,
17 leaving members of many non-marital families uninsured and, again, dependent on the government for
18 their health care needs.  *Id.*, Ex. 6 at pp. 8-9, Ex. 13 at p. 5.

19         Nor does the availability of domestic partnership eliminate this problem.  Studies show same-
20 sex couples are far less likely to enter into civil unions or domestic partnerships than marriage. Gates,
21 Badgett & Ho, Marriage, Registration and Dissolution by Same-Sex Couples in the U.S. (July 2008) at
22 p. 2 (available at http://www.law.ucla.edu/williamsinstitute/publications/Policy-Econ0index.html).  In
23 a jurisdiction like San Francisco, which has the highest lesbian and gay population of any metropolitan
24 area in the United States (15.4%), *see* Gates, Same-Sex Couples and the Gay, Lesbian Bisexual
25 Population: New Estimates from the American Community Survey (Oct. 2006) at p. 7 (available at
26 http://www.law.ucla.edu/williamsinstitute/publications/Policy-Census-index.html), the unavailability
27 of marriage to that population means the City and County expends millions of dollars annually that it
28 would not have to spend if same-sex couples could marry.  Doc. 111, Ex. 13 at p. 4-6.  San Francisco

1  also loses millions of dollars of tax revenue annually because of the inability of same-sex couples to
2  marry, primarily from foregone wedding-related sales and hotel taxes. *Id.*, Ex. 13 at pp. 6-8.
3  Although there is no requirement that a permissive intervenor have a direct economic interest in the
4  subject of the litigation, *S.E.C. v. United States Realty & Improvement Co.*, 310 U.S. 434, 459 (1940),
5  the City has such an interest in abundance, and will be able to present this and similar evidence at trial
6  to undermine any assertion of a legitimate state interest in Proposition 8.

7  The City is also in a position to demonstrate that laws like Proposition 8, which (as the
8  California Supreme Court recognized in the *Marriage Cases*, 43 Cal. 4th at 785) perpetuate the
9  stigmatizing message that lesbians and gay men are inferior, second class citizens who do not improve
10 conditions for families headed by opposite-sex couples but instead can tear such families apart. Many
11 opposite-sex parents have children who are lesbian or gay, and because of the stigma associated with
12 homosexuality, some reject their own children. San Francisco is home to many youth who end up on
13 the streets and in the juvenile dependency and delinquency systems after having been rejected by and
14 lost to the families who raised them. See *id.*, Ex. 12 at p. 7. As the provider of last resort for these
15 youth, San Francisco is all too familiar with the effects of laws like Proposition 8 on them and their
16 families. San Francisco also understands in a way not all lesbians and gay men do that the stigma of
17 laws like Proposition 8 often results in estrangement between opposite sex couples and their children,
18 strains relationships between the opposite-sex parents of such children, and deprives parents, siblings,
19 and extended family members of the relationships with the children those lesbians and gay men are
20 raising. These are just some of the ways in which San Francisco's experience and perspective as a
21 City and County generally, and more specifically as the City that is home to more lesbians and gay
22 men per capita than any other city, will provide if it is permitted to intervene in this case. San
23 Francisco's perspective—in addition to its direct experience providing a record in a similar case—will
24 add significantly to the quality of the evidence that will be developed and presented in this case.

25 Finally, the City's distinct interest in this litigation arises from its role as an entity required to
26 enforce Proposition 8. In doing so, it is potentially subject to suit by individuals for violation of their
27 constitutional rights. Such a concern is hardly speculative—two California counties are present in the
28 litigation as defendants. Although the County defendants have not taken a position on the

constitutionality of Proposition 8, the claims asserted by the City are similar to those it would assert as a response or counter-claim to a similar individual suit against it. This interest is distinct not only from Plaintiffs' interests, but also from the groups seeking to intervene as party-plaintiffs.

## II. NEITHER PLAINTIFFS NOR PROPOSITION 8 PROPONENTS HAVE PROVIDED A SOUND BASIS FOR REJECTING INTERVENTION BY THE CITY.

It is notable that the defendant government entities have not opposed the City's request for intervention—including the State of California, whose sovereign interests the Proposition 8 Proponents purport to seek to vindicate with their claims about the City's lack of standing to sue the State. And the only ground Plaintiffs have advanced against intervention by the City is an unsubstantiated concern about delay—a reason that, as we discuss *infra* in Section II.B., has no basis. Indeed, the only forceful opposition to the City's intervention comes from Proposition 8 Proponents, themselves strangers to the original case, who would defend Proposition 8 against any trial evidence this Court permits the City to present. We turn now to the arguments raised by Proponents.

### A. Proposition 8 Proponents' Three-Fold Argument Stemming From The City's Status As A Local Government Entity Is Without Merit.

Proposition 8 Proponents argue alternatively that the City's motion should be denied because the City lacks a claim for relief, the Court lacks jurisdiction over the City's claims, and the City lacks the standing necessary to intervene—all based on the City's status as a local government entity. These arguments are wrong.

#### 1. Even if Proponents Were Correct About The City's Standing, Article III Standing Is Unnecessary For Intervention.

In *City of South Lake Tahoe v. California Tahoe Regional Planning Agency*, 625 F.2d 231 (9th Cir. 1980), the Ninth Circuit held that a political subdivision lacked Article III standing to sue the State and challenge the validity of a state statute under the Fourteenth Amendment. *Id.* at 233-234. The Ninth Circuit has consistently characterized the doctrine of *South Lake Tahoe* as related to Article III standing. *See, e.g., Thomas v. Mundell*, 572 F.3d 756, 760-761 (9th Cir. 2009). Aside from standing, therefore, the *South Lake Tahoe* rule has no bearing on whether the City has a valid claim or whether the Court has jurisdiction to hear that claim. It pertains only to whether the City has standing. But standing is not a prerequisite for permissive intervention. And neither *South Lake Tahoe* nor its

progeny addressed a situation in which a political subdivision sought permissive intervention to participate in an already pending action involving plaintiffs who clearly have standing—much less a situation in which the state had *consented* to the subdivision's intervention. *South Lake Tahoe* and its progeny are thus irrelevant here.

As the Ninth Circuit has strongly suggested and other Circuits have held outright, standing is not required for permissive intervention so long as an existing party to the action has standing. It is not even clear that intervention of right under Federal Rule of Civil Procedure 24(a)—which requires the potential intervenor to demonstrate "a significantly protectable interest"—requires an interest sufficient to establish Article III standing. *Diamond v. Charles*, 476 U.S. 54, 68, 69 & n.21 (1986); *Portland Audubon Soc'y. v. Hodel*, 866 F.2d 302, 308 n. 1 (9th Cir. 1989) ("declin[ing] to incorporate an independent standing inquiry into circuit's [Rule 24(a)] intervention test"). Rule 24(b), by its terms, contains no "interest" requirement for permissive intervention. Not surprisingly, many courts have recognized that Article III standing is not a prerequisite for permissive intervention—again, so long as there is some party who has standing in the case.[2] *E.g.*, *Kootenai Tribe*, 313 F.3d at 1108-1109 (Article III standing required under Rule 24(b) only "in unusual context" of appeal where party aligned with intervenor did not appeal). In *Spangler*, which all parties agree governs permissive intervention, *see* Doc. 135 at 12; Doc. 137 at 5, the Ninth Circuit held that standing is not one of the "initial conditions" for permissive intervention but is instead *one* of many non-dispositive factors a court *may* consider in deciding whether to exercise its discretion to grant permissive intervention. *Spangler*, 552 F.2d at 1329. More recently, both the Ninth Circuit and courts in this district—along with several other circuits—have indicated standing is not a prerequisite for permissive intervention so long as a party with standing is present. *See Kootenai Tribe*, 313 F.3d at 1108-1109; *Yniguez v. State of Arizona*, 939 F.2d 727, 731 (9th Cir. 1991) (party lacking Article III standing who intervenes in trial court cannot pursue appeal absent appellant with Article III standing); *Nikon Corp. v. ASM Lithography B.V.*, 222 F.R.D. 647, 651 (N.D. Cal. 2004) (Rule 24(b) does not "mandate that the

---

[2] If the proposed intervenor raises new claims that are not already raised by the party with standing, that intervenor may be required to have independent standing to assert those claims. However, the City has raised no new claims that Plaintiffs have not already asserted.

1 potential intervenor be a person [or entity] who would have been a proper party at the beginning of the
2 suit") (internal quotation marks omitted); *see also San Juan County v. United States*, 503 F.3d 1163,
3 1172 (10th Cir. 2007) (en banc) ("parties seeking to intervene under Rule 24(a) or (b) need not
4 establish Article III standing so long as another party with constitutional standing on the same side as
5 the intervenor remains in the case.") (internal quotation marks omitted); *Newby v. Enron Corp.* 443
6 F.3d 416, 422 (5th Cir. 2006) ("there is no Article III requirement that intervenors have standing in a
7 *pending* case") (italics in original); *Loyd v. Alabama Dep't of Corrections*, 176 F.3d 1336, 1339 (11th
8 Cir. 1999); *Shaw v. Hunt*, 154 F.3d 161, 165 (4th Cir. 1998) ("a party who lacks standing can
9 nonetheless take part in a case as a permissive intervenor").

10 These decisions are consistent with *United States Realty & Improvement Co.*, 310 U.S. at 459,
11 in which the Supreme Court held that Rule 24(b) "plainly dispenses with any requirement that the
12 intervenor shall have a direct personal or pecuniary interest in the subject of the litigation."  The lack
13 of an independent standing requirement for intervenors is evidenced by the many Supreme Court cases
14 in which the Court has resolved claims of intervenors who lacked Article III standing so long as a
15 party with standing was asserting the same claims.[3]

16 Setting this great weight of authority aside, barring San Francisco from intervening in this
17 action for lack of standing simply makes no sense.  Two other counties—Los Angeles and Alameda—
18 are already parties to this action.  Both of those counties could, if they chose, take the position that the
19 City asserts in its proposed complaint-in-intervention, *i.e.*, that they are forced to administer an
20 unconstitutional law which injures both themselves and their citizens.  Aside from its willingness to

---

[3] *See, e.g., Department of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 330 (1999) ("Nonetheless, because the record before us amply supports the conclusion that several of the appellees have met their burden of proof regarding their standing to bring this suit, we affirm the District Court's holding"); *Director, Office of Workers' Compensation Programs v. Perini North River Associates*, 459 U.S. 297, 303-305, (1983) (holding that presence of one party with standing assures that controversy before Court is justiciable); *McConnell v. Federal Election Comm'n*, 540 U.S. 93, 233 (2003) ("The National Right to Life plaintiffs argue that the District Court's grant of intervention to the intervenor-defendants, pursuant to Federal Rule of Civil Procedure 24(a) and BCRA § 403(b), must be reversed because the intervenor-defendants lack Article III standing.  It is clear, however, that the Federal Election Commission (FEC) has standing, and therefore we need not address the standing of the intervenor-defendants, whose position here is identical to the FEC's"); *Clinton v. City of New York*, 524 U.S. 417, 431 n.19 (1998) ("Because both the City of New York and the health care appellees have standing, we need not consider whether the appellee unions also have standing to sue").

raise these challenges, San Francisco is no different than Los Angeles or Alameda County, and should be allowed to assert the same cross-claims or defenses those parties would be permitted to assert, but have not to date asserted, in this action.[4]

### 2. If The City Is Barred From Intervening For Lack Of Standing, Then Proposition 8 Proponents Should Be Barred As Well.

In arguing the City is barred from intervening by *South Lake Tahoe*, Proposition 8 Intervenors are careful to confine their discussion of Article III standing to the *Spangler* permissive factors for intervention rather than the mandatory threshold factors articulated in Rule 24(b). There is a reason for this careful drafting. If standing were a prerequisite for permissive intervention, Proposition 8 Proponents could not intervene because they lack Article III standing to defend Proposition 8.

"To qualify as a party with standing to litigate, a person must show, first and foremost, 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Proposition 8 Proponents do not satisfy this "injury in fact" requirement. Although they are official proponents of Proposition 8, the Supreme Court has never "identified initiative proponents as Article-III-qualified defenders of the measures they advocated." *Arizonans for Official English*, 520 U.S. at 65. Instead, it has rejected an appeal by initiative proponents who sought to defend the constitutionality of the initiative measure for lack of standing, *see The Don't Bankrupt Washington Committee v. Continental Illinois Nat'l Bank & Trust Co. of Chicago*, 460 U.S. 1077 (1983), and expressed "grave doubts" that initiative proponents have Article III standing. *Arizonans for Official English*, 520 U.S. at 56-57, 65-66. Initiative proponents' interest in enforcement of the law is no different from that of other citizens, and proponents will suffer no concrete injury if the law is struck down. See *id*. ("requisite concrete injury" to initiative proponents "not apparent").[5]

---

[4] Notably, Plaintiffs do not contend that the City lacks standing. *See* Doc. 135 at 12 (the City's "claim of injury arising out of its role as a regulator appears to form the basis for a judicially cognizable claim for relief").

[5] In this respect, Proposition 8 Proponents' claim to intervention is considerably less strong than that of the City, which will suffer substantial economic injury as a consequence of Proposition 8.

CCSF REPLY RE: MOTION TO INTERVENE        10        n:\cxlit\li2009\091484\00575259.doc
CASE NO. 09-CV-2292 VRW

If standing were a prerequisite for permissive intervention it would also be required for intervention of right, and this Court would have considered Proposition 8 Proponents' standing before permitting them to intervene. *United States v. Hays*, 515 U.S. 737, 742 (1995) (federal courts are obliged to consider standing *sua sponte*). Had it done so, it likely would have denied their motion for lack of standing. Indeed, if it now concludes standing is a prerequisite to intervention, the Court should revisit its order and deny the proponents of Proposition 8 the right or permission to intervene.

### 3. Proposition 8 Proponents' Arguments Concerning Independent Jurisdiction Or The City's Lack Of Authority To Bring Its Claim Are Without Merit.

Under Rule 24(b), an "independent grounds for jurisdiction" is a threshold requirement for permissive intervention. *United States v. City of Los Angeles*, 288 F.3d at 403. Proposition 8 Proponents try to graft onto this requirement the contention that the *South Lake Tahoe* line of cases speaks not only to Article III standing but to the Court's jurisdiction over the City's claim that Proposition 8 is unconstitutional. Proponents further argue that the City's lack of Article III standing leads not only to a lack of jurisdiction over the City's claim but to the lack of a claim at all. *See* Doc. 137 at 4 ("Accordingly, San Francisco possesses no 'claim' that it may assert in this litigation and its intervention must be denied" [citing a case concerning the threshold requirement of Rule 24(b) of a common claim or defense].)

Proponents' maneuver is without basis. The question of jurisdiction for purposes of permissive intervention is whether the Court has jurisdiction to resolve the claims asserted by the proposed intervenor. As this Court has recognized, the Ninth Circuit suggests that such jurisdiction exists "when a party seeks to join claims already before the court and does not seek to interject new claims." *Mi Pueblo San Jose, Inc. v. City of Oakland*, No. C 06-4094 VRW, 2007 WL 578987, at *8 (N.D. Cal. Feb. 21, 2007) citing *Blake v. Pallan*, 554 F2d 947, 956 (9th Cir. 1977); *see also Hazel Green Ranch, LLC v. U.S. Dept. of Interior*, No. 1:07-CV-00414-OWW-SMS, 2007 WL 2580570, at *15 (E.D. Cal. Sept. 5, 2007) ("an intervention need not be supported by jurisdictional grounds independent of those that support the original action"). The same is true for the requirement that the City have a common "claim" with the main action: it exists to ensure the commonality of questions presented by an intervenor, not to shoehorn standing into the threshold requirements of Rule 24(b). Indeed, if

Proposition 8 Proponents were correct that lack of standing could prevent a party from showing the threshold requirements for permissive intervention, then it seems highly unlikely that Proponents, who lack Article III standing to litigate their position, could meet the more rigorous threshold element of a "significantly protectable interest" that must be met for mandatory intervention pursuant to Rule 24(a). *Southwestern Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817-18 (9th Cir. 2001) (listing Rule 24(a) requirements).

Moreover, Proposition 8 Proponents' repeated insistence on the inability of the City to challenge its sovereign is odd in light of the State of California's non-opposition to the City's intervention. *See* Doc. 115; Doc. 121. The fact that neither the Governor and his Administration nor the Attorney General challenges the City's presence here is significant because the cases relied on by Proposition 8 Proponents to challenge the City's ability to present its claims, while treated as an instance of Article III standing, are perhaps best regarded as cases regulating what injuries are judicially cognizable in federal court so as to avoid federal courts interfering in internal disputes between a State and its subdivisions. *See Palomar Pomerado Health Sys. v. Belshe*, 180 F.3d 1104, 1109 (9th Cir. 1999) (Hawkins, J., concurring) ("Although the cases spoke in terms of standing, they are more accurately described as substantive holdings that the Constitution does not interfere in states' internal political organization") (internal quotation marks omitted). Doctrinally, the municipal standing cases are akin to sovereign immunity, which is waivable by States. *See Independent Living Center of S. Cal., Inc. v. Maxwell-Jolly,* 572 F.3d 644, 661 (9th Cir. 2009) (sovereign immunity may be waived by consent to suit). Indeed, most of the cases discussed by Proposition 8 Proponents refer to a municipality's inability to bring a federal constitutional challenge "*in opposition to* the will of its creator." *Williams v. Mayor and City Council of Baltimore*, 289 U.S. 36, 40 (1933) (emphasis added); *see also Coleman v. Miller*, 307 U.S. 443, 440 (1939) (same). Here, the City's challenge is not in opposition to the will of the State at all; the State has the same view of Proposition 8's constitutionality as the City and does not oppose the City's motion for intervention.

Proposition 8 Proponents also rely on *Lockyer v. City and County of San Francisco*, 33 Cal. 4th 1055 (2004), which holds that a local government does not have authority to refuse to enforce state law based on its own views of the law's constitutionality. *Id.* at 1085-86. Proponents equate this

1 holding with a lack of authority to *challenge* a state law. But the City does not assert here that it has
2 an interest in unilaterally refusing to enforce the law. Instead, it seeks a judicial determination of
3 Proposition 8's constitutionality precisely because it is bound to enforce Proposition 8. The City's
4 action mirrors that of the City and County of Denver and other local governments when they sued the
5 Colorado governor to enjoin enforcement of Colorado's Amendment 2, which ultimately prevailed in
6 *Romer*, 517 U.S. at 620. Nowhere in *Romer* did the Supreme Court suggest that the standing of local
7 governments in such an action was suspect.

### B. The City's Full Participation As Intervenor Will Not Delay The Just And Equitable Adjudication Of The Legal Issues In This Case Or Prejudice The Parties.

Both Plaintiffs and Proposition 8 Proponents contend that the City's participation will delay the proceedings. *See* Doc. 135 at 14:19-22; Doc. 137 at 10-12. Neither provides any but the vaguest basis for this assertion, and Plaintiffs all but concede the opposite is true.

Plaintiffs intone that "multiplication of parties and proceedings" risks delay, Doc. 135 at 12, 14, but fail to explain why or how they believe the City will slow the case down. Elsewhere, they admit the City's participation will actually expedite the proceedings, noting: "[t]he City Attorney's demonstrated experience in assembling factual evidence pertaining to the constitutional issues presented in this case and its demonstrated willingness to take on Plaintiffs' fight as its own mitigates the threats of delay and unnecessarily prolonged injury to Plaintiffs." *Id*. at 3; *see also id.* at 15 ("extraordinary factual record" City appended to its motion "suggests strongly that the City is already well on its way to 'contribut[ing] to full development of the underlying factual issues in the suit'").

Proposition 8 Proponents' claim that the City will delay the proceedings is predicated exclusively on the City's commitment to create an evidentiary record through a full and fair trial in this case when, in their view, "resolving the legal and factual issues in this case does not require a trial." Doc. 137 at 10. As noted above, however, this is at loggerheads both with the Court's Order of June 30, 2009 and with Plaintiffs' view of the case. Moreover, even without providing for a trial and on the assumption that the case can be resolved on a paper record with minimal discovery, the schedule proposed by Proposition 8 Proponents is more than twice as long as that proposed by Plaintiffs, and Proponents threaten that if a trial is required it will draw the proceedings out "for many more months"

1  and that a trial would "take weeks and weeks—and quite possibly months" and "then be followed by
2  post-trial briefing, which would engender further delay."  Doc. 139 at 10, 11.  By contrast to
3  Proposition 8 Proponents, and as discussed in Section I.B., *supra*, the City has expressed its
4  willingness and demonstrated its ability to assist in the conduct of the proceedings in this case as both
5  the Court and Plaintiffs envision them.  Far from portending delay, the City's experience and
6  familiarity with the issues identified by this Court as important to the resolution of this case and the
7  City's prior work with experts in various academic disciplines who are knowledgeable and can testify
8  about those issues demonstrates that the City's intervention will assist Plaintiffs in moving the case
9  forward more quickly than they could on their own without the benefit of that experience.  Indeed, not
10  only has the City presented the Court with examples of the kinds of expert evidence that it would
11  present, but the City has now contacted these and other potential witnesses and begun determining
12  their willingness and availability to testify.[6]

13  Nor does any party suggest that the City's participation will prevent the case from proceeding
14  within whatever case management schedule the Court adopts—and this fact alone indicates that the
15  City's participation will not unduly delay this case.  *Kootenai Tribe*, 313 F.3d at 1111 n.10 ("because
16  the intervention motions were filed near the case outset and the defendant-intervenors said they could
17  abide the court's briefing and procedural scheduling orders, there was no issue whatsoever of undue
18  delay").  In fact, the City's participation as intervenor could well speed the trial of this case because of
19  its existing relationships with potential experts.

20  To whatever extent the Court is concerned about delay, however, that concern should be
21  allayed by the ordinary means by which courts control proceedings:  the Court's inherent discretion,
22  the Federal Rules of Civil Procedure preventing unreasonably burdensome discovery (including
23  duplicative discovery), and the Federal Rules of Evidence prohibiting irrelevant and redundant
24  evidence.  There is no need for the Court to impose extensive limitations on the City's ability to
25  participate as an intervenor, such as those that Plaintiffs suggest.  Instead, the City believes it would be

---

[6] The City has not submitted a case management conference statement because this Court has not yet granted it permission to participate as a party in the case.  If permitted to intervene, however, the City will submit such a statement within three court days, or sooner if the Court requires.

1  appropriate for the Court to order that Plaintiffs' counsel act as lead counsel in this case and that the
2  City must meet and confer with lead counsel concerning discovery requests and motions before
3  serving them. The parties could later meet and confer concerning any trial restrictions. Such an order
4  would amply ensure that Plaintiffs retain appropriate control over this case and that duplication does
5  not occur, and the Court would be free to revisit its order if events proved otherwise.

### CONCLUSION

The City's perspective and evidence can only assist the Court in fully and expeditiously developing the record to determine the constitutionality of Proposition 8. Because the City meets all of Rule 24(b)'s threshold factors, and because discretionary factors weigh strongly in favor of the City's participation, this Court should grant the City's motion for permissive intervention.

Dated:  August 14, 2009

DENNIS J. HERRERA
City Attorney
THERESE M. STEWART
Chief Deputy City Attorney
DANNY CHOU
Chief of Complex & Special Litigation
VINCE CHHABRIA
ERIN BERNSTEIN
CHRISTINE VAN AKEN
MOLLIE M. LEE
Deputy City Attorneys

By:           /s/
    THERESE M. STEWART

Attorneys for Proposed Intervenor
CITY AND COUNTY OF SAN FRANCISCO