ALAN L. SCHLOSSER (SBN 49957)
ELIZABETH O. GILL (SBN 218311)
ACLU FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
T: (415) 621-2493/F: (415) 255-8437
E-mail: egill@aclunc.org

JON W. DAVIDSON (SBN 89301)
JENNIFER C. PIZER (SBN 152327)
TARA BORELLI (SBN 216961)
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
3325 Wilshire Boulevard, Suite 1300
Los Angeles, CA 90010
T: (213) 382-7600/F: (213) 351-6050
E-mail: jpizer@lambdalegal.org

SHANNON P. MINTER (SBN 168907)
CHRISTOPHER F. STOLL (SBN 179046)
ILONA M. TURNER (SBN 256219)
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, CA 94102
T: (415) 392-6257/F: (415) 392-8442
E-mail: sminter@nclrights.org

Attorneys for Proposed Plaintiff-Intervenors Our Family Coalition;
Lavender Seniors of the East Bay; and Parents, Families, and Friends of Lesbians and Gays

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO,<br><br>  Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the California Department of Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; and DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles,<br><br>  Defendants, | CASE NO. 09-CV-2292 VRW<br><br>**REPLY IN SUPPORT OF MOTION TO INTERVENE AS PARTY PLAINTIFFS**<br><br>The Honorable Chief Judge Vaughn R. Walker<br><br>Date:     August 19, 2009<br>Time:     10:00 a.m.<br>Location: Courtroom 6, 17th Floor<br><br>Trial Date: Not Set |

and

Proposition 8 Official Proponents Dennis Hollingsworth, Gail J. Knight, Martin F. Gutierrez, Hakshing William Tam, and Mark A. Jansson; and ProtectMarriage.com – Yes on 8, a Project of California Renewal,

Defendant-Intervenors.

Additional Counsel for Proposed Plaintiff-Intervenors:

MARK ROSENBAUM (SBN 59940)
LORI RIFKIN (SBN 244081)
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 W. 8th Street
Los Angeles, CA 90017
T: (213) 977-9500/ F: (213) 250-3919
E-mail: mrosenbaum@aclu-sc.org

DAVID BLAIR-LOY (SBN 229235)
ACLU FOUNDATION OF SAN DIEGO AND IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138
T: (619) 232-2121/F: (619) 232-0036
E-mail: dblairloy@aclusandiego.org

MATTHEW A. COLES (SBN 76090)
JAMES D. ESSEKS (SBN 159360)
LGBT & AIDS PROJECT
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10005
T: (212) 549-2500/F: (212) 549-2650
E-mail: jesseks@aclu.org

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ……………………………………………………………………….. 1

II. ARGUMENT ……………………………………………………………………….. 1

    A. The LGBT Community Organizations Have Standing ..………………....…………. 1

    B. Plaintiffs May Not Adequately Represent The LGBT Community Organizations' Interests…………………………………………....……… 5

    C. The LGBT Community Organizations' Full Participation In The Lawsuit Would Increase The Efficiency Of The Litigation And Would Add Specialized Expertise .. 8

III. CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alaskans for a Common Language v. Kritz*,
    3 P.3d 906 (9th Cir. 2000) .................................................................................................. 12

*Aleknagnik Natives Ltd. v. Andrus*,
    648 F.2d 496 (9th Cir. 1981) ................................................................................................ 2

*Desert Outdoor Advertising, Inc. v. City of Moreno Valley*,
    103 F.3d 814 (9th Cir. 1996) ................................................................................................ 2

*Donnelly v. Glickman*,
    159 F.3d 405 (9th Cir. 1998) ......................................................................................... 1, 10

*Forest Conservation Council v. U.S. Forest Serv.*,
    66 F.3d 1489 (9th Cir. 1995) .............................................................................................. 13

*Friends of the Earth, Inc. v. Laidlaw Environmental Servs.*,
    528 U.S. 167 (2000) .............................................................................................................. 2

*Hasibuan v. Mukasey*,
    305 Fed. Appx. 372 (9th Cir. 2008) ..................................................................................... 3

*Hibbs v. Department of Human Resources*,
    273 F.3d 844 (9th Cir. 2001) ................................................................................................ 7

*In re Marriage Cases*,
    43 Cal. 4th 757 (Cal. 2008) ........................................................................................... 6, 11

*In re National Security Agency Telecomm. Records Litig.*,
    No. 06-1791, 2007 WL 549854 (N.D. Cal. Feb. 20, 2007) ................................................. 5

*International Brotherhood of Teamsters v. United States*,
    431 U.S. 324 (1977) .............................................................................................................. 3

*International Union v. Brock*,
    477 U.S. 274 (1986) .............................................................................................................. 7

*Johnson v. California*,
    543 U.S. 499 (2005) .............................................................................................................. 7

*Lawrence v. Texas*,
    539 U.S. 558 (2003) .............................................................................................................. 8

*Lockyer v. City and County of San Francisco*,
  95 P.3d 459 (2004) .................................................................................................. 2

*Lockyer v. United States*,
  450 F.3d 436 (9th Cir. 2006) ............................................................................ 4, 5, 7

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992). ................................................................................................ 3

*Miller-Wohl Co., Inc. v. Commissioner of Labor and Indus.*,
  694 F.2d 203 (9th Cir. 1982) ................................................................................. 12

*Natural Resources Defense Council v. Norton*,
  No. 1:05CV01207, 2006 WL 39094 (E.D. Cal. Jan. 5, 2006) ............................... 12

*Pacific Rivers Council v. U.S. Forest Serv.*,
  No. S05-0953, 2005 WL 2671404 (E.D. Cal. Oct. 19, 2005).............................. 12

*Reno v. American Civil Liberties Union*,
  521 U.S. 844 (1997).............................................................................................. 11

*Romer v. Evans*,
  517 U.S. 620 (1996)...................................................................................... 6, 8, 11

*Sanchez-Trujillo v. I.N.S.*,
  801 F.2d 1571 (9th Cir. 1986)............................................................................... 12

*Serena v. Mock*,
  547 F.3d 1051 (9th Cir. 2008)................................................................................. 3

*Smelt v. County of Orange*,
  447 F.3d 673 (9th Cir. 2006)................................................................................... 3

*South Yuba River Citizens League and Friends of the River v. National
Marine Fisheries Serv.*,
  No. CIV.2-06-2845, 2007 WL 3034887 (E.D. Cal. Oct. 16, 2007).................................. 5

*Southwest Ctr. for Biological Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2001)................................................................................... 5

*Spangler v. Pasadena City Bd. Of Education*,
  553 F.2d 1326 (9th Cir. 1977)................................................................................. 8

*Strauss v. Horton*,
  207 P.3d 48 (Cal. 2009).......................................................................................... 2

*Taniguchi v. Schultz*,
  303 F.3d 950 (9th Cir. 2002).................................................................................. 2

*United States v. City of Los Angeles*,
    288 F.3d 391 (9th Cir. 2002)............................................................................................ 11

*United States v. State of Oregon*,
    913 F.2d 576 (9th Cir. 1990)............................................................................................ 11

*United States v. State of Oregon*,
    839 F.2d 635 (9th Cir. 1988)......................................................................................... 4, 8

*Webster v. Reproductive Health Services*,
    492 U.S. 490 (1989)............................................................................................................ 6

*Witt v. Dep't of the Air Force*,
    527 F.3d 806 (9th Cir. 2008).............................................................................................. 8

**Other Authorities**

ACLU, Lambda Legal and NCLR File Amicus Brief in Federal Challenge
To Prop 8, *available at*
http://www.equalrightsfoundation.org/pressDownloads/AFER_ACLU_Amicus.pdf.............. 10

**Rules**

Fed. R. Civ. Proc. 24............................................................................................................ 12

Ninth Cir. R. 36-3(a)............................................................................................................. 3

I.  **INTRODUCTION**

Proposed Plaintiff-Intervenors Our Family Coalition, Lavender Seniors of the East Bay, and Parents, Families, and Friends of Lesbians and Gays (collectively, the "LGBT Community Organizations") have more than met the liberal standard that governs intervention in this case.[1]  As the Ninth Circuit has made clear, when determining whether intervention is appropriate, courts "are guided primarily by practical and equitable considerations," and they "generally interpret the requirements broadly in favor of intervention." *Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998).

Because the LGBT Community Organizations' motion is timely, they have significant protectable interests in the subject matter of the action that may be impeded or impaired by disposition of the action, and their interests may not be adequately represented by Plaintiffs, the LGBT Community Organizations are entitled to intervene as of right.  Further, the LGBT Community Organizations and their counsel would bring unique experience and expertise to the litigation that would allow the ligation to proceed as efficiently and thoroughly as issues of this magnitude demand, and therefore the Court, in the alternative, should permit the LGBT Community Organizations to intervene.

II. **ARGUMENT**

   A.  **The LGBT Community Organizations Have Standing.**

The LGBT Community Organizations plainly have standing to challenge Proposition 8 on behalf of their members.  Plaintiffs concede that the LGBT Community Organizations have associational standing to challenge Proposition 8 as long as some of the Organizations' individual members themselves have standing to bring such a claim.  (Pls.' Opp. at 5.)  As set forth in the declarations filed in support of the motion to intervene, the LGBT Community Organizations are all membership organizations with lesbian and gay members living in California, who desire and intend to marry their same-sex partners and who are prevented from doing so by Proposition 8.[2]  Regardless

---

[1] The LGBT Community Organizations submit this reply as a consolidated response to the oppositions filed by both Plaintiffs and Defendant-Intervenors.

[2] *See* Declaration of Judith K. Appel, Executive Director of Our Family Coalition ¶¶ 2, 9 ("OFC Dec."), Declaration of Dan Ashbrook, Director of Lavender Seniors ¶¶ 2-3, 6, 11 ("LS Dec."),

[Footnote continued on next page]

of whether standing is or should be a prerequisite to intervention, this showing satisfies the test for associational standing. *See, e.g., Friends of the Earth, Inc. v. Laidlaw Environmental Servs.*, 528 U.S. 167, 181 (2000).

Plaintiffs contend that the LGBT Community Organizations lack standing—and therefore are not entitled and should not be allowed to intervene—because they have not alleged that any of their members "have applied for a marriage license and been denied." (Pls.' Opp. at 5.) It is well established, however, that "standing does not require exercises in futility." *Taniguchi v. Schultz*, 303 F.3d 950, 957 (9th Cir. 2002) (citation omitted) (where statute unambiguously precluded plaintiff from obtaining a discretionary waiver, applying for a waiver was not required for standing to bring an equal protection challenge to statute). For example, in a case in which billboard operators challenged the constitutionality of a city's billboard permit requirements, the Ninth Circuit held that the operators had standing even though they had not applied for permits. *Desert Outdoor Advertising, Inc. v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir. 1996). As the ordinance in that case "flatly prohibited" the billboards at issue, "applying for a permit would have been futile." *Id.*; *see also Aleknagnik Natives Ltd. v. Andrus*, 648 F.2d 496, 499 (9th Cir. 1981) (plaintiffs need not exhaust administrative remedies when doing so would be futile).

The futility doctrine applies here. Proposition 8 prohibits same-sex couples from marrying in California—a prohibition that has been authoritatively construed and upheld against state constitutional challenge by the state supreme court, and one that all local officials issuing marriage licenses are bound to enforce. *See Strauss v. Horton,* 207 P.3d 48 (Cal. 2009); *Lockyer v. City and County of San Francisco*, 95 P.3d 459, 472-473 (Cal. 2004) (county clerk and county recorder in San Francisco lacked discretion to issue marriage licenses to same-sex couples when California Family Code prohibited such marriages, despite their personal belief that restriction was unconstitutional). Because applying for a marriage license as a same-sex couple in California would be futile, the LGBT Community Organizations need not show that their members have done so.

---

[Footnote continued from previous page]

Declaration of Jody M. Huckaby, Executive Director of Parents, Families, and Friends of Lesbians and Gays ("PFLAG") ¶¶ 3,5 ("PFLAG Dec.").

The cases cited by Plaintiffs do not dictate a different conclusion. (Pls.' Opp. at 5-6.) In *Smelt v. County of Orange*, 447 F.3d 673 (9th Cir. 2006), the Ninth Circuit held that an unmarried same-sex couple did not have standing to challenge the constitutionality of the federal Defense of Marriage Act ("DOMA"). As that court explained, the plaintiffs lacked standing because they were not married under the law of any state, and they had not alleged that they had been injured due to the lack of federal recognition of other same-sex couples' marriages. *Id.* at 683-84. By contrast, the LGBT Community Organizations allege that their members include same-sex couples who wish to marry and are personally injured by Proposition 8's preventing them from doing so. Thus, the LGBT Community Organizations' members, like Plaintiffs, allege injury to their members sufficient to confer standing in a suit challenging the constitutionality of Proposition 8.[3]

Indeed, Plaintiffs' standing argument misunderstands the purpose of the "injury in fact" standing requirement, which is to demonstrate a justiciable "case-or-controversy" under Article III. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Here, the controversy is not that particular county clerks denied Plaintiffs' marriage license applications—or that county clerks around the state would deny applications to the LGBT Community Organizations' members. Rather, the justiciable controversy is that Proposition 8 stripped *all* gay and lesbian Californians of their fundamental right to marry. *See International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 365-366 (1977) ("If an employer should announce his policy of discrimination by a sign reading 'Whites Only' on the hiring-office door, his victims would not be limited to the few who ignored the

---

[3] Plaintiffs cite as purportedly "binding precedent" the case of *Hasibuan v. Mukasey*, 305 Fed. Appx. 372 (9th Cir. 2008). In that case, a summary immigration decision involving an asylum appeal, the court in a sentence concluded, without explanation, that "because Hasibaun does not assert that he attempted to marry his partner, he also lacks standing to challenge California's marriage laws." *Id.* As that decision itself expressly indicates, however, under Circuit Rules, this unpublished case carries *no* precedential weight. *See* Ninth Cir. R. 36-3(a). Nor does the case of *Serena v. Mock*, 547 F.3d 1051 (9th Cir. 2008), which Plaintiffs also cite, apply here. In *Serena*, Hispanic residents of Yolo County challenged what they alleged to be systematic exclusion of the Hispanic population from the county's grand juries. Because the residents had not actually applied to be on a grand jury, the court concluded that they lacked standing. *Id.* at 1053. But the challenge in *Serena* was to an alleged discriminatory *practice,* not to a statute that was discriminatory on its face: had they applied to be on grand juries, the Hispanic residents in that case might well have been permitted to serve. Thus, unlike this case, *Serena* did not present a situation in which applying for the benefit or opportunity at issue clearly would have been an exercise in futility.

sign and subjected themselves to personal rebuffs. . . . When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as he who goes through the motions of submitting an application.").[4]

The extent to which the LGBT Community Organizations' legal interests will be compromised if they are not permitted to participate in this lawsuit further confirms their standing. Should it be determined that lesbian and gay couples suffer no constitutional violation by Proposition 8's elimination of their right to marry, the LGBT Community Organizations and their members will have no alternative forum in which to contest that result. *See Lockyer v. U.S.*, 450 F.3d 436, 443 (9th Cir. 2006) (concluding that proposed intervenors' interests would be impaired "[i]f as a result of this litigation, the [] Amendment is struck down, or its sweep is substantially narrowed, the proposed intervenors will have no alternative forum in which they might contest that interpretation of the Amendment"). Moreover, the numerous findings of fact and legal determinations concerning discrimination against the LGBT Community Organizations and their members could have a "persuasive *stare decisis* effect in any parallel or subsequent litigation." *United States v. State of Oregon*, 839 F.2d 635, 638 (9th Cir. 1988). Such a "*stare decisis* effect is an important consideration in determining the extent to which an applicant's interest may be impaired." *Id.*

In sum, because the LGBT Community Organizations' members are directly injured by Proposition 8, the Organizations have standing to challenge the initiative and their members need not engage in the futile exercise of applying for marriage licenses solely to show that local officials enforce the facially discriminatory law.

---

[4] Of course, were this Court to conclude that the LGBT Community Organizations' ability to intervene turns on a showing that their members applied for marriage licenses as same-sex couples and were rejected on that basis, the Organizations readily could take appropriate steps and then make such a showing in an amended complaint.

### B. Plaintiffs May Not Adequately Represent The LGBT Community Organizations' Interests.

The LGBT Community Organizations have demonstrated that their interests "might diverge" from those of Plaintiffs, which is sufficient even to rebut a presumption of adequate representation. (Op. Br. at 11-12); *see Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823-34 (9th Cir. 2001); *see also South Yuba River Citizens League and Friends of the River v. National Marine Fisheries Serv.*, 2007 WL 3034887, Case No. CIV.2-06-2845, *13 (E.D. Cal. Oct. 16, 2007) ("Even where the would-be intervenor has the same 'ultimate objective' as some of the parties, intervention may still be appropriate if its interests might diverge from those of the existing parties.") (citations omitted).

While proposed intervenors who have "identical" interests may be required to make a "compelling showing" of "inadequate representation" by the present parties, Plaintiffs have conceded that the LGBT Community Organizations "might bring a different point of view" to the litigation. (Pls.' Opp. at 9)  As this and other courts consistently have found, such divergence warrants intervention. *See In re National Security Agency Telecomm. Records Litig.*, 2007 WL 549854, Case No. 06-1791 (N.B. Cal. Feb. 20, 2007) (allowing members of the news media to intervene in litigation, even where interests were represented by organizational plaintiffs, because entities provided a distinct "point of view"); *see also Lockyer,* 450 F.3d at 445 (intervenors overcame presumption of adequate representation on showing that they had "more narrow, parochial interests" than the U.S. and brought "a point of view to the litigation not presented by either plaintiffs or defendants").

Here, as Plaintiffs concede, while Plaintiffs and the LGBT Community Organizations share the same goal of seeing Proposition 8 declared unconstitutional, the four existing plaintiffs do not have the same personal stake as the LGBT Community Organizations in the full range of interests and harms that are implicated by the legal claims in this case—such as the distinct ways in which the deprivation of marriage affects gay and lesbian couples raising minor children, seniors, persons who are living in poverty or who have low incomes, and persons from ethnic, cultural or religious traditions that place particular importance on marriage.  (Op. Br. at 11-12; OFC Dec. at ¶¶ 3, 6; LS

Dec. at ¶¶ 3, 5; PFLAG Dec. at ¶¶ 3, 4, 6.)  Contrary to Plaintiffs' contention, these interests are of significant legal relevance to the "fundamental question at issue in this litigation[.]"  (Pls.' Opp. at 9). This Court's ruling (at a minimum) will directly affect the constitutional rights of every segment of the gay and lesbian community in California.  Under applicable precedent, intervention is warranted to ensure that the interests of the entire community of those who will be directly affected by the Court's ruling are represented.

For example, the diversity of interests the LGBT Community Organizations represent is relevant to the question of whether Plaintiffs have a fundamental right to marry.  Answering this question will entail assessment of whether gay and lesbian individuals and couples are capable of participating in, and benefitting from, all of the aspects of marriage that caused marriage to be protected as a fundamental right in the first instance.  Many members of Our Family Coalition and PFLAG are same-sex couples who are now raising young children or hope someday to become parents, who yearn to raise their children in the context of marriage, and who are harmed, along with their children, by their inability to do so.  (OFC Dec. ¶¶ 3-4; PFLAG Dec. ¶ 5.); *cf. In re Marriage Cases*, 183 P.3d 384, 423-424 (Cal. 2008) (protecting marriage as a fundamental right in part because it provides a uniquely secure and stable context in which to create a family and/or raise children). Many members of Lavender Seniors are individuals who have formed lasting relationships with a same-sex partner, but because they are barred from the universally recognized protections provided by marriage, they must live with the fear that their relationships will not be acknowledged, understood, or respected, and their ability to protect their partner, and to be protected themselves, is severely impaired.  (LS Dec. ¶¶ 6-8); *cf. id.* at 423-424 (protecting marriage as a fundamental right because it provides couples with a uniquely secure, respected, and efficient means of protecting and caring for one another in the face of illness, old age, and approaching death).

Similarly, the equal protection claim, under any level of review, turns on the relative strengths of and the relationship between competing state and individual interests.  *See*, *e.g.*, *Romer v. Evans*, 517 U.S. 620 (1996) (considering, under rational basis review, the wide variety of harms to be suffered by thousands of lesbian, gay and bisexual Coloradans because of Amendment 2's

withdrawal of local antidiscrimination protections.).[5]  That it is necessary for the Court to consider carefully the range of distinct individual harms inflicted by Proposition 8 is even more apparent in the context of strict or heightened scrutiny:  Under both tests, the Court must assess, on the one hand, the strength of the state's interest in the challenged measure and, on the other hand, whether and to what degree the measure intrudes upon the rights of the individual.  That balancing is evident in the narrow-tailoring portion of the strict scrutiny analysis, which ensures that the rights of the individual are invaded only so far as is necessary.  *See*, *e.g.*, *Johnson v. California*, 543 U.S. 499, 505 (2005) (explaining strict scrutiny's narrow tailoring requirement); *Hibbs v. Department of Human Resources*, 273 F.3d 844, 855 (9th Cir. 2001) (describing intermediate scrutiny's insistence on classifications being "substantially related to the achievement of an important governmental interest.") (citation omitted).  Having a full understanding of the range of harms that Proposition 8 inflicts on same-sex couples will assist the Court, and the courts in any ensuing appeals, in conducting this legal analysis.

The presence of the broad diversity of lesbian and gay people before the Court will illustrate the full dimensions of the inequality that Proposition 8 imposes in many other ways as well.  For example, the LGBT Community Organizations' members would be able to present evidence on the countless practical as well as dignitary harms that prove why the registered domestic partnership laws do not and cannot afford equal treatment.  *See Int'l Union v. Brock*, 477 U.S. 274, 289 (1986) (extolling the benefits of organizational plaintiffs, who, through their members, can assure "that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult... questions'") (citation omitted).

Finally, as the outcome of this case will leave no alternative forum for the LGBT Community Organizations to contest Proposition 8's constitutionality, the representative diversity and size of the

---

[5]*See also Webster v. Reproductive Health Services*, 492 U.S. 490, 548 (1989) (Justice Blackmun, concurring in part and dissenting in part) ("[T]he Constitution makes no mention of the rational-basis test, or the specific verbal formulations of intermediate and strict scrutiny by which this Court evaluates claims under the Equal Protection Clause.  The reason is simple. . . . [T]hese tests or standards are not, and do not purport to be, rights protected by the Constitution.  Rather, they are judge-made methods for evaluating and measuring the strength and scope of constitutional rights or for balancing the constitutional rights of individuals against the competing interests of government.")

Organizations' memberships reinforce the importance of their equal participation in this case. *See Lockyer*, 450 F.3d at 443. The Court made clear in its initial order and at the July 2, 2009 hearing that the resolution of the claims presented in this case is likely to involve rulings on a number of issues—including whether laws that discriminate against gay people as a class should be subject to heightened scrutiny and whether having a heterosexual orientation makes one a better, or "optimal," parent—that touch on many aspects of the lives of LGBT people. Thus, the Court's factual and legal determinations on these issues might well be found to have profound implications not only in this case, but in cases concerning other forms of relationship recognition, parenting rights and duties, discrimination in public employment, and family benefits, among other issues. As discussed above, a "persuasive *stare decisis* effect in any parallel or subsequent litigation" weighs heavily in favor of intervention. *U.S. v. State of Oregon*, 839 F.2d at 638.

Because the plaintiff couples do not themselves represent the range of interests and harms suffered by the LGBT Community Organizations' members in all their specificity and nuance, Plaintiffs do not adequately represent the interests of the LGBT Community Organizations' members and the LGBT Community Organizations are therefore entitled to intervene as a matter of right.

**C.    The LGBT Community Organizations' Full Participation In The Lawsuit Would Increase The Efficiency Of The Litigation And Would Add Specialized Expertise.**

Plaintiffs themselves recognize that an intervenor with expertise in the factual and legal issues presented could be beneficial to this case. (Pls.' Opp. at 14 (stating that "the extraordinary factual record the City [of San Francisco] appended to its motion suggests strongly that the City is already well on its way to 'contribut[ing] to full development of the underlying factual issues in the suit'") (quoting *Spangler v. Pasadena City Bd. Of Education*, 553 F.2d 1326, 1329 (9th Cir. 1977)).) This recognition should apply with even greater force to the LGBT Community Organizations. One or more of the LGBT Community Organizations' counsel—Lambda Legal, the ACLU, and NCLR—have represented plaintiffs in almost all the landmark federal cases establishing the basic rights of lesbian and gay individuals and couples litigated during the past three decades. Among others, these have included *Lawrence v. Texas*, 539 U.S. 558 (2003), *Romer v. Evans*, 517 U.S. 620 (1996), and *Witt v. Dep't of the Air Force*, 527 F.3d 806 (9th Cir. 2008). Counsel for the LGBT Community

1  Organizations have also represented plaintiffs in nearly every freedom-to-marry case to reach a state
2  supreme court (eight total cases), and in countless other cases involving the civil rights of LGBT
3  people.  (Op. Br. at 5-7.)  This representation frequently has involved the development of expert
4  witness testimony and the presentation and testing of such evidence through deposition and/or at trial
5  on the very issues the Court has identified for trial in this case.  *Id.*[6]

As they have in previous cases, the LGBT Community Organizations' counsel would, in this case, provide both the expertise and experience to move the case forward efficiently, while still according each identified issue the treatment it is due.  On August 17, 2009, the LGBT Community Organizations plan to file a proposed Case Management Statement, consistent with the Court's August 12, 2009 Order.  The Statement will describe in detail the evidence the LGBT Community Organizations would present on the fact issues listed in the Court's June 30, 2009 Order, and will identify the experts whose testimony the Organizations likely would seek to present (many of whom testified in other cases previously litigated by the Organizations' counsel).  Because counsel for the LGBT Community Organizations have a long track record of working with experts on the issues to be addressed at trial, and have worked with some of these experts in multiple cases, they have a hard-won understanding of the arguments against marriage rights for same-sex couples, and the likely experts on both sides of these issues.  This experience will permit the LGBT Community Organizations' counsel to prepare the case expeditiously and to conduct discovery of opposing experts more quickly and efficiently than would be possible for anyone working with these issues and individuals for the first time.

In light of this extensive experience and expertise, Plaintiffs' and Defendant-Intervenors' contention that the LGBT Community Organizations would delay the litigation and thereby prejudice their interests has no merit.  (Pls.' Opp. at 15; Def-Ints' Opp. at 7-8.)  Notwithstanding Plaintiffs' references to public statements made by the LGBT Community Organizations' counsel, there can be

---

[6] The only counsel currently in this litigation who have conducted a trial or depositions with respect to the factual issues identified in the Court's June 30, 2009 Order are counsel for Defendant-Intervenors, the Alliance Defense Fund.  It would unbalance the litigation to allow only those supporting Proposition 8 to have counsel who have done this.

1  no question that the Organizations and their counsel have been dedicated to lesbian and gay equality,
2  and to the marriage rights sought in this case, for many decades.  The Organizations' counsel's
3  statements do not address the merits of this action's marriage equality claim except to support the
4  position, also taken by Plaintiffs, that Proposition 8 is unconstitutional and should be invalidated.
5  Instead, the statements focus on questions of timing and, more relevant to the instant motion, on the
6  distinctive interests of other members of the gay community.[7]  Furthermore, when the LGBT
7  Community Organizations' counsel filed their amicus brief offering a complementary argument for
8  why Plaintiffs should win the case on the merits, the organization funding Plaintiffs' lawsuit issued a
9  press release applauding counsel's experience, expertise and assistance.[8]  In short, none of the
10 various media statements has any bearing on the legal question now before this Court, which is
11 whether the members of the LGBT Community Organizations have a right to protect their distinct,
12 cognizable interests as parties in this case.  The organizations dedicated to representing—Lambda
13 Legal, the ACLU, and NCLR—them seek to do so fully and zealously, in keeping with their
14 professional responsibilities and indeed with their own missions.

15 Plaintiffs' contention that, in itself, the addition of new parties "to this already complex
16 litigation would inevitably produce multiplication of proceedings, delay, and resulting prejudice"
17 (Pls.' Opp. at 14) also has no merit.  Federal courts routinely manage mass tort, complex commercial,
18 and class action cases that require management of scores of lawyers representing numerous,
19 competing private interests.  This case, in contrast, is a paradigmatic civil rights lawsuit, challenging
20 the constitutionality of a measure that targets a disfavored minority.  This Court is called upon to
21 decide whether there will be four or seven plaintiffs (or eight, if the Court also grants the City's

---

[7] Plaintiffs cite to *Donnelly v. Glickman*, 159 F.3d 405 (1998) for the proposition that courts should deny intervention if the proposed intervenor has a litigation strategy that diverges from that of plaintiff.  (Pls.' Opp. at 16.)  In *Donnelly*, however, the court simply upheld the denial of permissive intervention—reviewed on an abuse of discretion standard—to intervenors whose interests were "in direct opposition" to those of plaintiffs.  *Donnelly,* 159 F.3d at 412.  Although the interests of the LGBT Community Organizations and Plaintiffs diverge here in some respects, they are complementary and by no means "in direct opposition."

[8] *See* Amicus Brief of Lambda Legal, ACLU, and NCLR (filed June 25, 2009); *see also* ACLU, Lambda Legal and NCLR File Amicus Brief in Federal Challenge To Prop 8, *available at* http://www.equalrightsfoundation.org/pressDownloads/AFER_ACLU_Amicus.pdf .

motion). Given the early timing of this motion, it is difficult to understand how or why the existing Plaintiffs' interests could conceivably be prejudiced by the participation of organizational plaintiffs whose presence will help to ensure the development of a robust legal and factual record that likely will strengthen the case against Proposition 8.[9] Indeed, it has been the experience of the LGBT Community Organizations' counsel that in groundbreaking civil rights cases such as this one, excellent results can be achieved through the participation of multiple parties and counsel with complementary expertise, who coordinate in a standard professional manner while contributing useful, complementary viewpoints. *See*, *e.g.*, *Romer*, 517 U.S. 620 (in which nine individuals and five local government bodies sued the state of Colorado, represented by Lambda Legal, the ACLU, two large private law firms, two solo experts in state law, and the law departments of three Colorado cities); *In re Marriage Cases*, 183 P.3d 384 (in which the trial court consolidated six separate cases, involving 17 separate law firms, state and municipal law departments, and legal advocacy organizations, and allowed intervention by the proponents of the statutory initiative at issue); *Reno v. American Civil Liberties Union*, 521 U.S. 844 (1997) (challenge to constitutionality of federal statute criminalizing "indecent" speech on the internet) (in which a three-judge district court consolidated two cases, involving four individual, ten corporate, and 33 non-profit plaintiffs, two private law firms, five legal advocacy organizations, and the Department of Justice, for a week-long trial involving extensive expert testimony).

Nor is there merit to Plaintiffs' suggestion that if the LGBT Community Organizations' motion is granted, Plaintiffs should be appointed "Lead Plaintiffs" and the LGBT Community Organizations' participation should be limited "to the development of a factual record, in consultation

---

[9] For purposes of intervention, courts have typically assessed whether delay is prejudicial in the context of the proposed intervenor's *timeliness*—as opposed to the overall potential length of the proceedings. *See*, *e.g.*, *U.S. v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002) (after citing the language regarding delay and prejudice in Rule 24(b), holding that the requirements for permissive intervention are "(1) independent grounds for jurisdiction; (2) the motion is *timely*; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common.") (emphasis added) (citation omitted); *see also U.S. v. Oregon*, 913 F.2d 576, 588-89 (9th Cir. 1990) (denying motion to intervene at late stage in litigation, where intervention likely to disrupt multi-party settlement and thereby prejudice the parties). Neither Plaintiffs nor Defendant-Intervenors have argued that the LGBT Community Organizations' motion to intervene is untimely.

with Plaintiffs." (Pls.' Opp. at 17.) The civil rights cases cited above, in which multiple parties and counsel participated, illustrate that there is no need to appoint lead counsel or to impose strict limitations in this type of relatively straightforward civil rights case with a relatively small number of parties and legal claims. Of course, if the Court deemed it necessary, the Court certainly could impose "appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." Fed. R. Civ. Proc. 24 advisory committee's note (1966). In similar public interest and civil rights cases, such conditions often include coordinated briefing and argument, and reasonable limits on briefing. *See*, *e.g.*, *Natural Resources Defense Council v. Norton*, 2006 WL 39094, No. 1:05CV01207, *12 (E.D. Cal. Jan. 5, 2006) (hereinafter "*NRDC*") (coordinated briefing and oral argument); *Pacific Rivers Council v. U.S. Forest Serv.*, 2005 WL 2671404, No. S05-0953, *2 (E.D. Cal. Oct. 19, 2005) (limits on briefing). From past experience, the LGBT Community Organizations are familiar with such arrangements and are prepared to work cooperatively with the existing parties and to comply equally and diligently with any conditions this Court decides are advisable to avoid duplication, inefficiency, and undue burdens on the court and the parties. *See NRDC*, 2006 WL 39094 at *12.

Lastly, Plaintiffs and Defendant-Intervenors are incorrect that the LGBT Community Organizations could bring the same benefits to the case through the submission of *amicus curiae* briefs. (Pls.' Opp. at 14 ("the benefits that might flow" from intervention "could be reaped through . . . . participation as *amicus curiae*"); Def-Ints.' Opp. at 9-10.) An *amicus curiae* "is not a party to litigation," and "[c]ourts have rarely given party prerogatives to those not formal parties." *Miller-Wohl Co., Inc. v. Commissioner of Labor and Indus.*, 694 F.2d 203, 204 (9th Cir. 1982); *see also Alaskans for a Common Language, Inc. v. Kritz*, 3 P.3d 906, 910-11 (9th Cir. 2000) (even where court gave proposed intervenors additional privileges as *amici curiae*, denial of motion to intervene was final appealable order because order prevented proposed intervenors from participating as parties). As *amici curiae*, the LGBT Community Organizations would not be able to introduce evidence, cross-examine witnesses put on by Defendant-Intervenors, or move to exclude incompetent or unduly prejudicial evidence from the trial. Also, significantly, "[a]n amicus brief may not frame the questions to be resolved in an appeal." *Sanchez-Trujillo v. I.N.S.*, 801 F.2d 1571, 1581 (9th Cir.

1986).  Were they confined to such a limited role, the LGBT Community Organizations would not be able to protect their interests sufficiently, and the Court and Plaintiffs would not benefit to any reasonable degree from the LGBT Community Organizations' expertise and experience, or that of their counsel.  *See Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir. 1995) (imposition of overly limited role on intervenor tantamount to denying intervention).

## III.   CONCLUSION

For the foregoing reasons and the reasons set forth in their Opening Brief, the proposed Plaintiff-Intervenor LGBT Community Organizations respectfully request that the Court grant their motion to intervene as of right.  In the alternative, the LGBT Community Organizations respectfully request that the Court in its discretion permit them to intervene in the action.

Dated:  August 14, 2009

ALAN L. SCHLOSSER
ELIZABETH O. GILL
ACLU Foundation of Northern California

JON W. DAVIDSON
JENNIFER C. PIZER
TARA BORELLI
Lambda Legal Defense and Education Fund, Inc.

SHANNON P. MINTER
CHRISTOPHER F. STOLL
ILONA M. TURNER
National Center for Lesbian Rights

MARK ROSENBAUM
LORI RIFKIN
ACLU Foundation of Southern California

DAVID BLAIR-LOY
ACLU Foundation of San Diego and Imperial Counties

MATTHEW A. COLES
JAMES D. ESSEKS
LGBT & AIDS Project
American Civil Liberties Union Foundation

By:  _____/s/_____
ELIZABETH O. GILL

Attorneys for Proposed Plaintiff-Intervenors Our Family Coalition; Lavender Seniors of the East Bay; and Parents, Families, and Friends of Lesbians and Gays