GIBSON, DUNN & CRUTCHER LLP
Theodore B. Olson, SBN 38137
*tolson@gibsondunn.com*
Matthew D. McGill, *pro hac vice*
Amir C. Tayrani, SBN 229609
1050 Connecticut Avenue, N.W., Washington, D.C. 20036
Telephone: (202) 955-8668, Facsimile: (202) 467-0539

Theodore J. Boutrous, Jr., SBN 132009
*tboutrous@gibsondunn.com*
Christopher D. Dusseault, SBN 177557
Ethan D. Dettmer, SBN 196046
Sarah E. Piepmeier, SBN 227094
Theane Evangelis Kapur, SBN 243570
Enrique A. Monagas, SBN 239087
333 S. Grand Avenue, Los Angeles, California 90071
Telephone: (213) 229-7804, Facsimile: (213) 229-7520

BOIES, SCHILLER & FLEXNER LLP
David Boies, *pro hac vice*
*dboies@bsfllp.com*
Theodore H. Uno, SBN 248603
333 Main Street, Armonk, New York 10504
Telephone: (914) 749-8200, Facsimile: (914) 749-8300

Attorneys for Plaintiffs KRISTIN M. PERRY, SANDRA B. STIER,
PAUL T. KATAMI, and JEFFREY J. ZARRILLO

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the California Department of Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; and DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles,<br><br>Defendants. | CASE NO. 09-CV-2292 VRW<br><br>**PLAINTIFFS' SUPPLEMENTAL CASE MANAGEMENT STATEMENT**<br><br>Date:     August 19, 2009<br>Time:     10:00 a.m.<br>Judge:    Chief Judge Walker<br>Location: Courtroom 6, 17th Floor |

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................................. 1

II. ELEMENTS OF PLAINTIFFS' CLAIMS ............................................................................ 2

    A. CLAIM ONE: DUE PROCESS ................................................................................... 2

    B. CLAIM TWO: EQUAL PROTECTION ....................................................................... 3

    C. CLAIM THREE: VIOLATION OF 42 U.S.C. § 1983 ................................................ 5

III. DEFENDANTS' AND INTERVENORS' DEFENSES ........................................................ 5

    A. THE ATTORNEY GENERAL ..................................................................................... 5

    B. THE ADMINISTRATION ........................................................................................... 5

    C. LOS ANGELES COUNTY ......................................................................................... 5

    D. ALAMEDA COUNTY ............................................................................................... 6

    E. INTERVENORS ........................................................................................................ 6

IV. ADMISSIONS AND STIPULATIONS ............................................................................... 6

    A. ADMISSIONS AND STIPULATIONS WITH RESPECT TO THE ELEMENTS OF PLAINTIFFS' CLAIMS ............................................................................................. 6

    B. ADMISSIONS AND STIPULATIONS WITH RESPECT TO DEFENSES .......................... 8

V. DISCOVERY PLAN ............................................................................................................ 8

    A. LEVEL OF SCRUTINY RELEVANT TO PLAINTIFFS' CLAIMS .................................. 8

    B. THE CAMPAIGN BY WHICH PROPOSITION 8 WAS ADOPTED ............................... 9

    C. CHARACTER OF THE RIGHTS PLAINTIFFS CONTEND ARE INFRINGED OR VIOLATED .............................................................................................................. 9

    D. EFFECT OF PROPOSITION 8 UPON PLAINTIFFS AND SIMILARLY SITUATED INDIVIDUALS ........................................................................................................ 10

    E. EFFECT OF PROPOSITION 8 ON OPPOSITE-SEX COUPLES AND OTHERS NOT IN SAME-SEX RELATIONSHIPS IN CALIFORNIA ....................................................... 10

    F. OTHER ISSUES PERTINENT TO THE PARTIES' CLAIMS OR DEFENSES ................ 10

VI. EXPERT EVIDENCE ....................................................................................................... 10

    A. HISTORY AND ECONOMICS ................................................................................. 11

    B. SOCIOLOGY AND ECONOMICS ............................................................................. 12

**TABLE OF CONTENTS**
**[Continued]**

Page

C. PSYCHOLOGY .................................................................................................. 13

D. POLITICAL SCIENCE........................................................................................ 15

Pursuant to this Court's August 12, 2009 Order, Doc #141, Plaintiffs respectfully submit this Supplemental Case Management Statement.

## I. INTRODUCTION

Plaintiffs are gay and lesbian residents of California who are involved in long-term, committed relationships with individuals of the same sex and who desire to marry those individuals to demonstrate publicly their commitment to their partner and to obtain all the benefits that come with this official recognition of their family relationship. They are now prohibited from doing so as a direct result of Proposition 8 ("Prop. 8"), a California constitutional amendment prohibiting them from marrying the person of their choice. Yet, prior to the passage of Prop. 8, the California Constitution accorded Plaintiffs a constitutional right to marry. Prop. 8 irrationally stripped gay and lesbian individuals—and no one else—of that state constitutional right, and therefore plainly violates the federal constitution. *See Romer v. Evans,* 517 U.S. 620, 632 (1996).

Prop. 8, however, does not preclude same-sex domestic relationships within California. Indeed, California permitted approximately 18,000 same-sex couples who married prior to Prop. 8 to remain legally married. Thus, some individuals in California may be married to individuals of the same sex; yet Plaintiffs and other same-sex couples are denied that fundamental right. Additionally, California has accorded gay and lesbian individuals the right to enter into domestic partnerships, which enables them to obtain many of the substantive legal benefits and privileges that California law provides to individuals who are afforded the right to marry, but denies them access to civil marriage itself. Thus, while Prop. 8 does not preclude same-sex relationships, it denies gay and lesbian individuals such as Plaintiffs access to the highly valued and respected institution of civil marriage, relegating them instead to the lesser-known second-class status of domestic partnership.

The United States Supreme Court has long recognized the right to marry as "one of the vital personal rights essential to the orderly pursuit of happiness by free men," *Loving v. Virginia*, 388 U.S. 1, 12 (1967), and yet Prop. 8 was specifically designed to and does deny gay and lesbian individuals the fundamental right to marry the person they love. Such restrictions, whether enacted by legislation or by popular vote, are impermissible under the constitution. Denying same-sex couples the right to marry does not enhance or protect any legitimate state interest. Granting the right

to marry would not damage, inhibit, or impair any rights of individuals who wish to marry persons of the opposite sex or otherwise impair any legitimate state interest. Prop. 8 is therefore unconstitutional under any standard of review.

## II. ELEMENTS OF PLAINTIFFS' CLAIMS

Plaintiffs assert three claims in this action: (1) violation of the Due Process Clause of the Fourteenth Amendment; (2) violation of the Equal Protection Clause of the Fourteenth Amendment; and (3) violation of 42 U.S.C. § 1983. Plaintiffs set forth the elements of those claims below.

**A.  CLAIM ONE: DUE PROCESS**

    **1.  Prop. 8 Infringes On Plaintiffs' Right To Marry And Fails To Survive Strict Scrutiny**

        a.  Elements:

            (1)  The right to marry is a fundamental right, *Loving v. Virginia,* 388 U.S. 1, 12 (1967);

            (2)  Prop. 8 infringes on Plaintiffs' fundamental right to marry; and

            (3)  Defendants/Intervenors cannot meet their burden of establishing that Prop. 8 is narrowly drawn to further a compelling state interest. *P.O.P.S. v. Gardner,* 998 F.2d 764, 767-68 (9th Cir. 1993).

    **2.  Prop. 8 Infringes On Plaintiffs' Right To Marry And Fails To Survive Intermediate Scrutiny**

        a.  Elements:

            (1)  The right to marry is a significant liberty interest, *see Witt v. Dep't of the Air Force*, 527 F.3d 806, 819 (9th Cir. 2008);

            (2)  Prop. 8 infringes on Plaintiffs' right to marry; and

            (3)  Defendants/Intervenors cannot meet their burden of establishing that Prop. 8 is substantially related to an important state interest. *See id*.

    **3.  Prop. 8 Infringes On Plaintiffs' Right To Marry And Fails To Survive Rational Basis Scrutiny**

        a.  Elements:

            (1)  Prop. 8 infringes on Plaintiffs' right to marry; and

            (2)  Prop. 8 does not bear a rational relationship to an independent and legitimate legislative end. *See Romer v. Evans,* 517 U.S. 620, 632-33 (1996).

4. **Prop. 8 Infringes On Plaintiffs' Right To Privacy And Personal Autonomy And Fails To Survive Strict Scrutiny**

    a. Elements:

        (1) The right to privacy and personal autonomy is a fundamental right, *Lawrence v. Texas,* 539 U.S. 558, 578 (2003).

        (2) Prop. 8 infringes on Plaintiffs' fundamental right to privacy and personal autonomy; and

        (3) Defendants/Intervenors cannot meet their burden of establishing that Prop. 8 is narrowly drawn to further a compelling state interest. *P.O.P.S.,* 998 F.2d at 767-68.

5. **Prop. 8 Infringes On Plaintiffs' Right To Privacy And Personal Autonomy And Fails To Survive Intermediate Scrutiny**

    a. Elements:

        (1) The right to privacy and personal autonomy is a significant liberty interest, *see Witt*, 527 F.3d at 819;

        (2) Prop. 8 infringes on Plaintiffs' right to privacy and personal autonomy; and

        (3) Defendants/Intervenors cannot meet their burden of establishing that Prop. 8 is substantially related to an important state interest. *See id*.

6. **Prop. 8 Infringes On Plaintiffs' Right To Privacy And Personal Autonomy And Fails To Survive Rational Basis Scrutiny**

    a. Elements:

        (1) Prop. 8 infringes on Plaintiffs' right to privacy and personal autonomy; and

        (2) Prop. 8 does not bear a rational relationship to an independent and legitimate legislative end. *See Romer,* 517 U.S. at 632-33.

B. **CLAIM TWO: EQUAL PROTECTION**

1. **Prop. 8 Discriminates On The Basis Of Sexual Orientation And Fails To Survive Strict Scrutiny**

    a. Elements:

        (1) Gay and lesbian individuals are a suspect class;

        (2) Prop. 8 discriminates against gay and lesbian individuals on the basis of their sexual orientation; and

        (3) Defendants/Intervenors cannot meet their burden of establishing that Prop. 8 is narrowly drawn to further a compelling state interest. *Palmore v. Sidoti,* 466 U.S. 429, 432-33 (1984).

2. **Prop. 8 Discriminates On The Basis Of Sexual Orientation And Fails To Survive Intermediate Scrutiny**

    a. Elements:

        (1) Gay and lesbian individuals are a quasi-suspect class;

        (2) Prop. 8 discriminates against gay and lesbian individuals on the basis of their sexual orientation; and

        (3) Defendants/Intervenors cannot meet their burden of establishing that Prop. 8 is substantially related to an important state interest. *United States v. Virginia,* 518 U.S. 515, 524 (1996).

3. **Prop. 8 Discriminates On The Basis of Sexual Orientation And Fails To Survive Rational Basis Scrutiny**

    a. Elements:

        (1) Prop. 8 discriminates against gay and lesbian individuals on the basis of their sexual orientation; and

        (2) Prop. 8's classification based on sexual orientation does not bear a rational relationship to an independent and legitimate legislative end. *Romer,* 517 U.S. at 632-33.

4. **Prop. 8 Discriminates On The Basis Of Sex And Fails To Survive Intermediate Scrutiny**

    a. Elements:

        (1) Prop. 8 discriminates against gay and lesbian individuals on the basis of their sex; and

        (2) Defendants/Intervenors cannot meet their burden of establishing that Prop. 8 is substantially related to an important state interest. *Virginia,* 518 U.S. at 524.

5. **Factors Considered When Determining The Appropriate Level Of Scrutiny To The Extent Not Already Established By Binding Precedent**

    a. Whether gay and lesbian individuals have been subject to a history of discrimination, *Bowen v. Gilliard,* 483 U.S. 587, 602 (1987);

    b. Whether gay and lesbian individuals are defined by a characteristic that bears no relation to ability to perform or contribute to society, *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 440-41 (1985);

    c. Whether gay and lesbian individuals exhibit obviously immutable or distinguishing characteristics that define them as a discrete group, *Bowen,* 483 U.S. at 602; and

    d. Whether gay and lesbian individuals have been prevented from protecting themselves through the political process. *Id.*

C. **CLAIM THREE: VIOLATION OF 42 U.S.C. § 1983**

    1. **Enforcement Of Prop. 8 Violates 42 U.S.C. § 1983**

        a. Elements:

           (1) Defendants are acting under color of state law;

           (2) Prop. 8 violates Plaintiffs' rights under the Due Process or Equal Protection Clause of the Fourteenth Amendment; and

           (3) Defendants are depriving Plaintiffs of their rights, privileges, or immunities secured by the Constitution and laws of the United States.

## III. DEFENDANTS' AND INTERVENORS' DEFENSES

Two of the six Defendants, as well as Intervenors, purport to raise affirmative defenses in their Answers. Doc #9, 41, 42. As part of the meet-and-confer process,[1] Plaintiffs have asked each party that asserted defenses whether it intends to pursue each defense articulated in its Answer. A brief summary of the position of each Defendant and Intervenors is set forth below.

A. **THE ATTORNEY GENERAL**

The Attorney General admits in his Answer that Prop. 8 violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Doc #39 at 8-9. The Attorney General raises no defenses to Plaintiffs' claims.

B. **THE ADMINISTRATION**

Governor Arnold Schwarzenegger, Mark B. Horton, and Linette Scott (collectively "the Administration") either admit or do not dispute in their Answer the allegations of Plaintiffs' Complaint. Doc #46. The Administration raises no defenses to Plaintiffs' claims.

C. **LOS ANGELES COUNTY**

Dean C. Logan, in his capacity as Los Angeles County Registrar-Recorder/County Clerk ("Los Angeles County"), denies in his Answer many of the allegations in Plaintiffs' Complaint. Doc #41. Los Angeles County purports to raise three affirmative defenses: (1) that it has a

---

[1] After receiving the Court's August 12, 2009 Order, Plaintiffs' counsel contacted counsel for each Defendant and Intervenors to reopen the meet-and-confer process and to discuss the issues raised by the Court and how best to respond.

ministerial duty to apply the laws of the State of California; (2) that it has no discretion to issue marriage licenses other than in accordance with State law; and (3) that it acted in good faith.

### D. ALAMEDA COUNTY

Patrick O'Connell, in his capacity as Clerk-Recorder for the County of Alameda ("Alameda County"), denies in his Answer many of the factual allegations in Plaintiffs' Complaint. Doc #42. Although Alameda County purports to raise twenty-one (21) affirmative defenses, it has in the meet-and-confer process narrowed those defenses to the following (identified by the number of the corresponding affirmative defense in its Answer): (1) that it has no discretion in the performance of ministerial duties; (2) that any injury or damage to Plaintiffs was caused by the acts or omissions of others; (9) that its acts were privileged under applicable statutes and case law; (13) that attorneys' fees should not be assessed due to special circumstances mandating its ministerial duties; (19) that damages caused by third parties for whom it is not responsible and thus its conduct was not the proximate or legal cause of such damages; and (20) that it did not take affirmative acts to deprive Plaintiffs of any right or privilege guaranteed by the constitution or laws of the United States.[2]

### E. INTERVENORS

The Intervenors deny in their Answer many of the allegations of Plaintiffs' Complaint. Doc #9. Although Intervenors purport to raise six affirmative defenses, they have in the meet-and-confer process narrowed those defenses to the following (identified by the number of the corresponding affirmative defense in its Answer): (1) that Plaintiffs have failed to state a claim; and (6) that neither the challenged provisions nor the Defendants have deprived Plaintiffs of a right or privilege guaranteed by the Constitution.

## IV. ADMISSIONS AND STIPULATIONS

### A. ADMISSIONS AND STIPULATIONS WITH RESPECT TO THE ELEMENTS OF PLAINTIFFS' CLAIMS

Following receipt of the Court's August 12, 2009 Order, Plaintiffs met-and-conferred with Defendants and Intervenors about the elements of Plaintiffs' claims. Plaintiffs distributed draft

---

[2] Alameda County has indicated that its 20th affirmative defense may "possibly" be included among those that it pursues in this case going forward.

written statements of those elements to Defendants and Intervenors, asking each whether they were willing to stipulate that any or all of the stated elements were satisfied. As of the time of this filing, only Los Angeles and Alameda Counties have agreed to stipulate that any specific element is satisfied. Specifically, the Counties will stipulate that they acted under color of law, thus satisfying the first element of Plaintiffs' Section 1983 claim.

In addition, Plaintiffs circulated to Defendants and Intervenors a list of proposed factual stipulations. Plaintiffs have drawn these facts primarily from two sources: (1) the specific factual findings of state courts that have considered, after extensive proceedings, the constitutionality of excluding gay and lesbian individuals from civil marriage; and (2) proposed findings of law and fact that parties have submitted in those cases. Plaintiffs' proposed stipulations are set forth in Exhibit A hereto.[3] As of the time of this filing, none of the Defendants or Intervenors has agreed to stipulate to the facts presented by Plaintiffs.

Nonetheless, in his Answer, the Attorney General admitted the following facts: (1) Prop. 8 "cannot be squared with guarantees of the Fourteenth Amendment," Doc #39 at 2; (2) "domestic partnerships are not equal to civil marriage, and that this unequal treatment denies lesbians and gay men rights guarantees by the Fourteenth Amendment to the United States Constitution," *id.;* (3) "sexual orientation is a characteristic that bears no relation to a person's ability to perform or contribute to society and that the sexual orientation of gays and lesbians has been associated with a stigma of inferiority and second-class citizenship, manifested by the group's history of legal and social disabilities," *id.* at 5; (4) "the inability to marry the person of their choice denies gays and lesbians, as well as their families, the personal and public affirmation that accompanies state-sanctioned civil marriage," *id.* at 7; (5) "under the California Constitution, gay and lesbian same sex couples are unequal to heterosexual opposite sex couples," *id.* at 10, (6) Prop. 8 "was passed as a

---

[3] By proposing stipulations as to particular facts, Plaintiffs do not concede that they bear the burden of proof as to each such fact or that each such fact must be resolved in their favor to prevail. Lastly, Plaintiffs reserve the right not to rely on any particular fact, even if stipulated, based on the development of their legal theories and other evidence as this case proceeds.

1  result of disapproval of or animus by the majority of voters against same-sex marriages," *id.;* and

2  (7) Prop. 8 "imposed a special disability on gays and lesbians alone[.]" *Id.*

### B. ADMISSIONS AND STIPULATIONS WITH RESPECT TO DEFENSES

The Attorney General and the Administration have raised no defenses to Plaintiffs' claims. Thus, no stipulations are appropriate or necessary as to the claims against those parties. With respect to the defenses raised by Los Angeles County, Alameda County, and the Intervenors, Plaintiffs have carefully reviewed and considered each such purported defense. Plaintiffs have concluded that each such purported defense is without merit, and thus Plaintiffs are unwilling to stipulate to the existence of any such defense to Plaintiffs' claims.

Nonetheless, with respect to Los Angeles County, Plaintiffs have agreed to stipulate that Los Angeles County was a defending party in *In re Marriage Cases,* 183 P.3d 384 (Cal. 2008); and that Los Angeles County was a co-petitioner in *Strauss v. Horton,* 207 P.3d 48 (Cal. 2009).

## V. DISCOVERY PLAN

This section identifies the fact discovery that Plaintiffs presently anticipate seeking from other parties and non-parties.[4] This section does not identify all evidence Plaintiffs intend to gather through means other than formal discovery, such as informal interviews or review of publicly available materials. Plaintiffs address expert discovery in Section VI. As explained in Plaintiffs' initial Case Management Statement, Doc #134, Plaintiffs intend to use written discovery and depositions to build a record with respect to a number of factual issues that are relevant to the Court's evaluation of their claims, and Plaintiffs are prepared to conduct fact discovery on an expedited basis.

### A. LEVEL OF SCRUTINY RELEVANT TO PLAINTIFFS' CLAIMS

Plaintiffs intend to propound interrogatories and requests for admission ("RFAs") to Defendants and Intervenors, and to ask questions in the depositions of these parties and their representatives, in an effort to establish and seek admissions that the factors justifying heightened

---

[4] In addition to use at trial, Plaintiffs plan to use this discovery, and the expert evidence discussed in Section VI, in support of a motion for summary judgment.

Gibson, Dunn & Crutcher LLP

8

09-CV-2292 VRW  PLAINTIFFS' SUPPLEMENTAL CASE MANAGEMENT STATEMENT

scrutiny (set forth in Section II.B.5 above) are satisfied in this case. Plaintiffs do not presently intend to pursue other fact discovery on this issue.

### B. THE CAMPAIGN BY WHICH PROPOSITION 8 WAS ADOPTED

Plaintiffs will present evidence at trial that no compelling or even rational basis exists for Prop. 8's exclusion of gay and lesbian individuals from the institution of civil marriage and for stripping gay and lesbian individuals of their previously recognized right to marry. As part of this showing, Plaintiffs will demonstrate that Prop. 8 was instead driven by irrational considerations, including but not limited to misconceptions, animus and moral disapproval of gay and lesbian individuals. Plaintiffs will demonstrate that Prop. 8 was devised, promoted, and supported by groups and individuals that disapprove of gay and lesbian individuals and did not want the committed, long-term relationships of gay and lesbian individuals to be deemed "as good as" the marital relationships entered into by couples of the opposite sex. Plaintiffs also will demonstrate that some or all of the rationales offered to the voters in support of Prop. 8 do not bear any rational nexus to what Prop. 8 actually does, which is exclude gay and lesbian individuals from the institution of civil marriage.

Plaintiffs intend to serve interrogatories and requests for the production of documents on, and to depose, Intervenors and possibly other individuals and groups involved in the Prop. 8 campaign, including Protectmarriage.com – Yes on 8, A Project of California Renewal (as a corporate entity) and the Official Proponents of Prop. 8—Dennis Hollingsworth, Gail J. Knight, Martin F. Gutierrez, Hak-Shing William Tam, and Mark A. Jansson. Specifically, Plaintiffs plan to seek documents relating to Prop. 8's genesis, drafting, strategy, objectives, advertising, campaign literature, and Intervenors' communications with each other, supporters, and donors. Plaintiffs will also seek documents and deposition testimony relating to the rationales now being offered by Intervenors as legitimate state interests. Plaintiffs also intend to depose Frank Schubert and Jeff Flint of Schubert Flint Public Affairs, the public affairs firm that managed the Yes on Prop. 8 campaign. Mr. Schubert is the president of Schubert Flint Public Affairs, and Mr. Flint is a partner.

### C. CHARACTER OF THE RIGHTS PLAINTIFFS CONTEND ARE INFRINGED OR VIOLATED

Plaintiffs intend to propound interrogatories and RFAs to Defendants and Intervenors, and to ask questions in the depositions of these parties and their representatives, in an effort to seek

admissions and establish the absence of dispute on this issue.  Plaintiffs do not presently intend to pursue other fact discovery on this issue.

### D. EFFECT OF PROPOSITION 8 UPON PLAINTIFFS AND SIMILARLY SITUATED INDIVIDUALS

Plaintiffs intend to propound interrogatories and RFAs to Defendants and Intervenors, and to ask questions in the depositions of these parties and their representatives, in an effort to seek admissions and establish the absence of dispute on this issue.  Plaintiffs do not presently intend to pursue other fact discovery on this issue.

### E. EFFECT OF PROPOSITION 8 ON OPPOSITE-SEX COUPLES AND OTHERS NOT IN SAME-SEX RELATIONSHIPS IN CALIFORNIA

Plaintiffs intend to propound interrogatories and RFAs to Defendants and Intervenors, and to ask questions in the depositions of these parties and their representatives, in an effort to seek admissions and establish the absence of dispute on this issue.  Plaintiffs do not presently intend to pursue other fact discovery on this issue.

### F. OTHER ISSUES PERTINENT TO THE PARTIES' CLAIMS OR DEFENSES

Plaintiffs will serve discovery on Intervenors and Defendants concerning the potential state interests raised by any party to this action.  Plaintiffs will also serve RFAs in an effort to narrow the number of factual issues that need to be resolved at trial and interrogatories to define the scope of and refute any defenses raised by Defendants or Intervenors.

## VI.  EXPERT EVIDENCE

Plaintiffs presently anticipate presenting expert reports and testimony from between five and seven expert witnesses.[5]  This testimony will draw on the witnesses' expertise in five basic subjects: (1) history; (2) economics; (3) sociology; (4) psychology; and (5) political science.  Even before the July 2, 2009 case management conference, Plaintiffs, consulting with the San Francisco City

---

[5] Plaintiffs provide this good faith estimate to respond as directly as possible to the Court's inquiry and to assist the Court in evaluating the specifics of how this case will proceed with respect to expert discovery and testimony.  The actual number of experts whose testimony is presented may change based on factors such as the ability of specific retained experts to address multiple topics and the availability of particular experts once the Court sets the schedule on which this case will proceed.

Attorney's Office, have been actively engaged in identifying the most qualified experts in these fields to testify on their behalf in this matter, and discussions with several experts about their involvement in this matter have taken place. Plaintiffs intend to promptly decide which experts will testify and the subjects as to which each will testify once the schedule in this matter is set (in order to ensure that each expert is available on the governing schedule) and once the issues that will be presented for trial, as opposed to stipulated between the parties, are resolved. Plaintiffs provide below a more specific summary of the expert testimony they intend to offer in each of the five subject matters described above.

### A. HISTORY AND ECONOMICS

Plaintiffs intend to present expert evidence from one or more historians and economists concerning the history and evolution of marriage as a social institution in this country, the discrimination faced by gay and lesbian individuals, the development of an anti-gay movement in this country, and gay and lesbian individuals' relative lack of political power. Plaintiffs intend to demonstrate that civil marriage has never been a static institution. Historically, marriage has changed, sometimes dramatically, to reflect the changing needs, values and understanding of our evolving society. Additionally, Plaintiffs intend to demonstrate that the persecution suffered by gay and lesbian individuals in the United States has been severe and has had significant negative effects on gay and lesbian individuals.

Specifically, Plaintiffs' history experts will address the following topics:

(1) The history of severe, invidious discrimination gay and lesbian individuals have faced and the harm inflicted as a result of that discrimination;

(2) The development of an anti-gay movement in the United States that sought to engender anti-gay animus for political and financial gain;

(3) That lesbians and gay men have been and remain the subject of invidious stereotypes and have long been portrayed in a negative light to the extent they were not rendered invisible because of social prejudice against them;

(4) The discrimination currently faced by gay and lesbian individuals, including the fact that they are still among the most stigmatized groups in the country, that the refusal to

recognize and the animus toward their intimate family relationships has caused them to suffer psychological and economic harm, and that hate crimes against them remain prevalent;

(5) The relative lack of political power of gay and lesbian individuals, including successes of both pro-gay and anti-gay legislation and the current lack of representation in government;

(6) The meaning of marriage in California, including the fact that civil marriage has never been a static institution and has changed over time, sometimes dramatically, to reflect the changing needs, values and understanding of our evolving society;

(7) The fact that race- and gender-based reforms in civil marriage law did not deprive marriage of its vitality and importance as social institution; and

(8) The history and development of California's ban on marriage by same-sex couples.

### B.  SOCIOLOGY AND ECONOMICS

Plaintiffs intend to present expert evidence from one or more sociologists and/or economists concerning families led by same-sex couples, the sociological and economic effect of marriage laws on opposite-sex marriage, and the sociological and economic effect of marriage laws on same-sex couples and their children.  Plaintiffs intend to demonstrate that civil marriage is a deeply meaningful institution to individuals, families, communities, and the State, which brings with it a host of tangible legal rights, privileges, benefits, and obligations.  The tangible and intangible benefits of marriage flow not only to those who marry, but also to their children.  Denying same-sex couples the right to marry harms individuals, families, communities, and the State.

Specifically, Plaintiffs' sociology experts will address the following topics:

(1) The characteristics defining gay and lesbian individuals as a class do not in any way affect their ability to contribute to society;

(2) The exclusion of same-sex couples from marriage does not lead to increased stability in opposite-sex marriage or alternatively, permitting same-sex couples to marry does not destabilize opposite-sex marriage;

  (3) There is no credible evidence suggesting any difference in the quality of the child-rearing environment in households led by same-sex couples than in households led by opposite-sex couples;

  (4) The best interests of a child are equally served by being raised by same-sex parents because lesbian and gay parents are as likely as heterosexual parents to provide supportive and healthy environments for children;

  (5) California's public policy allows gay and lesbian individuals in same-sex relationships to serve as foster parents and to adopt children, and its public policy reflects the State's understanding that sexual orientation bears no relation to an individual's capacity to enter into a stable family relationship that is analogous to marriage and otherwise to participate fully in all economic and social institutions;

  (6) The availability of opposite-sex marriage is not a meaningful option for gay and lesbian individuals;

  (7) The voters' and proponents' motivation or motivations for supporting Prop. 8, including moral disapproval of and irrational views concerning gay and lesbian individuals;

  (8) The differences in actual practice of registered domestic partnerships, civil unions and marriage, including whether married couples are treated differently from domestic partners in governmental and non-governmental contexts; and

  (9) Prohibiting marriage by same-sex couples hurts the State of California and local governments in California financially.

## C. PSYCHOLOGY

Plaintiffs intend present expert evidence from one or more psychologists concerning child development, parenting, family building, gender, sexuality, the importance of sexual orientation in the formation of one's identity, families led by same-sex couples and children within those families, the psychological effect of laws prohibiting marriage by same-sex couples on such couples and their children, and the psychological harm of stigmatization. Plaintiffs intend to demonstrate that relegating lesbian and gay families to a separate legal institution for state recognition marginalizes

and stigmatizes gay families; that there is a significant symbolic disparity between domestic partnership and marriage; that the inability to marry relegates gay and lesbian relationships to second-class status; that the creation of the alternative regime of domestic partnership reinforces anti-gay prejudice, which has the potential to escalate into violence; and that the stigma associated with discrimination and second-class treatment takes a toll on the well-being of gay men and lesbians and their families.

Specifically, Plaintiffs' psychology experts will address the following topics:

(1) The characteristics defining gay and lesbian individuals as a class do not in any way affect their ability to contribute to society;

(2) The medical and psychiatric communities do not consider sexual orientation an illness or disorder;

(3) Same-sex sexual orientation does not result in any impairment in judgment or general social and vocational capabilities;

(4) The State's policy that sexual orientation bears no relation to an individual's ability to raise children, to an individual's capacity to enter into a relationship that is analogous to marriage, or otherwise to participate fully in all economic and social institutions;

(5) Sexual orientation and sexual identity is so fundamental to one's identity that a person should not be required to abandon them;

(6) The exclusion of same-sex couples from marriage does not lead to increased stability in opposite-sex marriage or alternatively, permitting same-sex couples to marry does not destabilize opposite-sex marriage;

(7) There is no credible evidence suggesting any difference in the quality of the child-rearing environment in households led by same-sex couples than in households led by opposite-sex couples;

(8) The availability of opposite-sex marriage is not a meaningful option for gay and lesbian individuals;

(9) An individual's capacity to establish a loving and long-term committed relationship with another person does not depend on the individual's sexual orientation;

(10) An individual's capacity to raise children does not depend on the individual's sexual orientation;

(11) The stigma associated with discrimination and second-class treatment takes a toll on the well-being of gay men and lesbians and their families;

(12) Establishing a separate legal institution for State recognition and support of lesbian and gay families, even if well-intentioned, marginalizes and stigmatizes lesbian and gay families;

(13) There is a significant symbolic disparity between domestic partnership and marriage; and

(14) Denying same-sex couples and their families access to the familiar and favorable official designation "marriage" harms them by denying their family relationships the same dignity and respect afforded to opposite-sex couples and their families.

### D. POLITICAL SCIENCE

Plaintiffs intend to present expert evidence from one or more political scientists concerning the relative political powerlessness of gay and lesbian individuals and the political history and development of California's ban on marriage by same-sex couples. Plaintiffs intend to demonstrate that although social antipathy toward gay and lesbian individuals has moderated, these groups suffer from continuing political disabilities and discrimination.

Specifically, Plaintiffs' political science experts will address the following topics:

(1) The history of discrimination that gay and lesbian individuals have faced;

(2) The development and operation of a well-funded, politically effective national anti-gay movement that has encouraged anti-gay sentiment and hindered gay and lesbian individuals' ability to achieve or sustain fair and equal treatment through the political process at any level of government;

(3) The relative political power of gay and lesbian individuals, including successes of both pro-gay and anti-gay legislation;

(4) The history and development of California's ban on marriage by same-sex couples;

(5) The voters' and proponents' motivation or motivations for supporting Prop. 8, including advertisements and ballot literature considered by California voters;

(6) The differences in actual practice of registered domestic partnerships, civil unions and marriage, including whether married couples are treated differently from domestic partners in governmental and non-governmental contexts; and

(7) Prohibiting marriage by same-sex couples limits the State of California's ability to ensure that its citizens are treated equally regardless of sexual orientation.

DATED: August 17, 2009

GIBSON, DUNN & CRUTCHER LLP

By: _____/s/_____
       Theodore B. Olson

and

BOIES, SCHILLER & FLEXNER LLP

David Boies

Attorneys for Plaintiffs KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO