COOPER AND KIRK, PLLC
Charles J. Cooper (DC Bar No. 248070)*
*ccooper@cooperkirk.com*
David H. Thompson (DC Bar No. 450503)*
*dthompson@cooperkirk.com*
Howard C. Nielson, Jr. (DC Bar No. 473018)*
*hnielson@cooperkirk.com*
Peter A. Patterson (Ohio Bar No. 0080840)*
*ppatterson@cooperkirk.com*
1523 New Hampshire Ave. N.W., Washington, D.C. 20036
Telephone: (202) 220-9600, Facsimile: (202) 220-9601

LAW OFFICES OF ANDREW P. PUGNO
Andrew P. Pugno (CA Bar No. 206587)
*andrew@pugnolaw.com*
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 608-3065, Facsimile: (916) 608-3066

ALLIANCE DEFENSE FUND
Brian W. Raum (NY Bar No. 2856102)*
*braum@telladf.org*
James A. Campbell (OH Bar No. 0081501)*
*jcampbell@telladf.org*
15100 North 90th Street, Scottsdale, Arizona 85260
Telephone: (480) 444-0020, Facsimile: (480) 444-0028

ATTORNEYS FOR DEFENDANT-INTERVENOR DENNIS HOLLINGSWORTH,
GAIL J. KNIGHT, MARTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM,
MARK A. JANSSON, and PROTECTMARRIAGE.COM – YES ON 8, A
PROJECT OF CALIFORNIA RENEWAL

* Admitted *pro hac vice*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the California Department of Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic | CASE NO. 09-CV-2292 VRW<br><br>**DEFENDANTS-INTERVENORS PROPOSITION 8 PROPONENTS AND PROJECTMARRIAGE.COM'S SUPPLEMENTAL CASE MANAGEMENT STATEMENT**<br><br>Date: August 19, 2009<br>Time: 10:00 a.m.<br>Judge: Chief Judge Vaughn R. Walker<br>Location: Courtroom 6, 17th Floor |

Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; and DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles,

Defendants,

and

PROPOSITION 8 OFFICIAL PROPONENTS DENNIS HOLLINGSWORTH, GAIL J. KNIGHT, MARTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM, and MARK A. JANSSON; and PROTECTMARRIAGE.COM – YES ON 8, A PROJECT OF CALIFORNIA RENEWAL,

Defendant-Intervenors.

Additional Counsel for Defendant-Intervenors

ALLIANCE DEFENSE FUND
Timothy Chandler (CA Bar No. 234325)
*tchandler@telladf.org*
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 932-2850, Facsimile: (916) 932-2851

Jordan W. Lorence (DC Bar No. 385022)*
*jlorence@telladf.org*
Austin R. Nimocks (TX Bar No. 24002695)*
*animocks@telladf.org*
801 G Street NW, Suite 509, Washington, D.C. 20001
Telephone: (202) 393-8690, Facsimile: (202) 347-3622

* Admitted *pro hac vice*

In accordance with the Court's August 12, 2009 Order, *see* Doc. # 141, the Defendants-Intervenors ("Proposition 8 Proponents" or "Proponents") respectfully submit this supplemental case management statement. The Court has ordered all parties to provide responses to the following questions:

**1. The specific elements of the claims plaintiffs assert and the defenses, if any, intervenors contend apply.**

Plaintiffs assert claims grounded in the Due Process and Equal Protection Clauses of the Fourteenth Amendment. These claims are foreclosed by the Supreme Court's decision in *Baker v. Nelson*, 409 U.S. 810 (1972). *Baker* notwithstanding, Plaintiffs' claims fail for the following reasons.[1]

**a. Fundamental liberty interest under the Due Process Clause**

To establish a fundamental liberty interest protected by the Due Process Clause, Plaintiffs must offer a "careful description" of their asserted interest and show that it is "objectively, deeply rooted in this nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (quotation marks omitted).

Carefully described, Plaintiffs assert a fundamental liberty interest in extending the civil status of "marriage" to same-sex relationships. This asserted interest is not objectively, deeply rooted in this nation's history and tradition. As for plaintiffs' claims that Proposition 8 infringes upon their sexual autonomy, Proposition 8 does not criminalize or in any way punish private sexual behavior, and thus it does not implicate the liberty interest identified in *Lawrence v. Texas*, 539 U.S. 558 (2003). Significantly, both the majority opinion and the separate concurrence of Justice O'Connor in *Lawrence* made clear that the liberty interest upheld in that case did not entail a right to same-sex marriage. *See id.* at 578 (majority); *id.* at 585 (O'Connor, J., concurring in

---

[1] Proponents do not dispute that in implementing and enforcing Proposition 8, Defendants have acted under the color of state law. But Proponents do not concede that Plaintiffs have
(Continued)

1

judgment).

### b. **Standard of review under the Equal Protection Clause for sexual orientation discrimination**

Plaintiffs claim that discrimination based on sexual orientation should be subject to heightened scrutiny under the Equal Protection Clause. This claim must be rejected under binding Ninth Circuit precedent. *See High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990); *see also See Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1137 (9th Cir. 2003); *Holmes v. California Army Nat'l Guard*, 124 F.3d 1126, 1132 (9th Cir. 1997); *Philips v. Perry*, 106 F.3d 1420, 1425 (9th Cir. 1997). Every other federal circuit that has considered the matter has reached the same conclusion. *See Cook v. Gates*, 528 F.3d 42, 61 (1st Cir. 2008); *Veney v. Wyche*, 293 F.3d 726, 731-32 (4th Cir. 2002); *Johnson v. Johnson*, 385 F.3d 503, 532 (5th Cir. 2004); *Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 261 (6th Cir. 2006); *Ben-Shalom v. Marsh*, 881 F.2d 454, 464 (7th Cir. 1989); *Citizens for Equal Prot. v. Bruning*, 455 F.3d 859, 866 (8th Cir. 2006); *Rich v. Sec'y of the Army*, 735 F.2d 1220, 1229 (10th Cir. 1984); *Lofton v. Sec'y of Dep't of Children and Family Servs.*, 358 F.3d 804, 818 (11th Cir. 2004); *Steffan v. Perry*, 41 F.3d 677, 684 n.3 (D.C. Cir. 1994); *Woodward v. United States*, 871 F.2d 1068, 1076 (Fed. Cir. 1989).

If the court nevertheless determines that this is an open question, Plaintiffs' claim fails nonetheless for several independent reasons.

### i. **Whether Proposition 8 discriminates on the basis of sexual orientation**

At the outset, Plaintiffs must show that Proposition 8 discriminates on the basis of sexual orientation. *See Aleman v. Glickman,* 217 F.3d 1191, 1195 (9th Cir. 2000) ("In resolving [an] equal protection challenge, we must first determine what classification has been created by the [challenged] provision.").

(Cont'd)
satisfied the other elements of their claims that Plaintiffs' have identified.

Plaintiffs cannot make this showing. Proposition 8, by limiting civil marriage to the union of a man and a woman, does not classify individuals on the basis of their sexual orientation.

### ii. Whether same-sex and opposite-sex couples are similarly situated for purposes of civil marriage recognition

Plaintiffs must demonstrate that same-sex couples and opposite-sex couples are similarly situated with respect to marriage. *See Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *Rostker v. Goldberg*, 453 U.S. 57, 79 (1981).

Plaintiffs cannot make this threshold showing. Marriage has always been limited to opposite sex relationships because of the naturally procreative nature of the male-female relationship. Same-sex relationships are different in this relevant respect.

### iii. Whether sexual orientation is a suspect or quasi-suspect classification

As we have explained, rational basis scrutiny applies to laws that classify on the basis of sexual orientation as a matter of binding precedent and is therefore not an open question. Heightened scrutiny, moreover, is reserved for classifications affecting groups that require extraordinary protection from the political process. *See, e.g., United States v. Carolene Products*, 304 U.S. 144, 152 n.4 (1938). To demonstrate that they require this "extraordinary protection," Plaintiffs must show, among other things, that gays and lesbians (1) are "politically powerless," *see, e.g.*, *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 445 (1985); and (2) are defined by an "immutable" characteristic, *see, e.g. Frontiero v. Richardson*, 411 U.S. 677, 686 (1973) (plurality). *See also High Tech Gays*, 895 F.2d at 573.

Plaintiffs cannot show that gays and lesbians meet the requirements for receiving heightened equal protection scrutiny.

### c. Sex Discrimination

To demonstrate that Proposition 8 merits heightened scrutiny as a sex-based classification, Plaintiffs must show that it classifies on the basis of sex. *See Aleman*, 217 F.3d at 1195.

Plaintiffs cannot make this showing, as the overwhelming weight of authority, including every federal court to have addressed this issue, establishes that the traditional definition of marriage does not classify on the basis of sex.

### d. **Rational basis review**

Because Proposition 8 is not, as a matter of law, subject to heightened review under the Due Process Clause or the Equal Protection Clause, it is constitutional if it passes rational basis review. Under this standard, Proposition 8 is presumed to be constitutional and Plaintiffs bear the burden "to negative any reasonably conceivable state of facts that could provide a rational basis" for the law. *Bd. of Trs. of the University of Alabama v. Garrett*, 531 U.S. 356, 367 (2001) (quotation marks omitted).

Plaintiffs cannot meet this standard, as Proposition 8 is rationally related to several legitimate government interests, including, among others:

- Preserving the traditional definition of marriage as the union of a man and a woman.
- Promoting the formation of naturally procreative unions.
- Promoting stability and responsible behavior in naturally procreative relationships.
- Promoting enduring and stable family structures for the responsible raising and care of children by their biological parents.
- Promoting the natural and mutually beneficial bond between parents and their biological children by encouraging parents to raise their biological children.
- Acting incrementally and with caution when considering radical change to the fundamental nature of a bedrock social institution.

### e. **Heightened review**

In the alternative, if the Court determines that either strict or intermediate scrutiny applies, the burden shifts to the defenders of Proposition 8. To satisfy the strict scrutiny standard, a law

4

must be "narrowly tailored to serve a compelling state interest." *Glucksberg*, 521 U.S. at 721 (quotation marks omitted). A law satisfies the intermediate scrutiny standard when it is "substantially related" to an "important" government interest. *United States v. Virginia*, 518 U.S. 515, 533 (1996) (quotation marks omitted).

If necessary, the Proponents will show that Proposition 8 meets these standards.

### f.  **Affirmative defenses**

The Proponents continue to maintain the affirmative defenses that (1) Plaintiffs have failed to state a claim upon which relief can be granted; and (2) neither the challenged provision nor Defendants have deprived Plaintiffs of any right or privilege guaranteed by the United States Constitution.

These defenses will rise or fall with our legal arguments in response to Plaintiffs' claims.

### 2.  **Admissions and stipulations that Proponents are prepared to enter with respect to the forgoing elements and applicable defenses at issue**

Proponents' response to the stipulations proposed by the Plaintiffs are attached as Exhibit B. In addition, Proponents now propose additional stipulations that Proponents are prepared to enter, which are attached as Exhibit A. The parties are unlikely to agree whether or not these stipulations, if entered, suffice to resolve any of the elements identified above.

### 3.  **Proponents' discovery plans**

Set forth below are Proponents' current intentions with respect to discovery. We wish to emphasize that our thinking continues to evolve on these subjects, especially as Plaintiffs' trial and discovery strategy emerges, and we may pursue additional lines of discovery or decide not to pursue issues identified below. Of course, we may also take discovery of plaintiffs.

5

### a. Level of scrutiny relevant to Plaintiffs' claims

#### i. The history of discrimination against gays and lesbians

Depending upon the nature of the evidence adduced by Plaintiffs on this issue, the Proposition 8 Proponents may present evidence (including expert opinion) on the discrimination that gays and lesbians have experienced in the past. Also, we plan to present evidence demonstrating that such discrimination has decreased significantly in recent years, both in governmental and non-governmental contexts. We do not anticipate fact discovery on this issue.

#### ii. Whether the characteristics defining gays and lesbians as a class might in any way affect their ability to contribute to society

Because of their natural and spontaneous ability to create children, opposite-sex relationships have a different impact on society, for good and for ill, than same-sex relationships. We do not dispute that, with the exception of certain matters relating to procreation, the ability of individuals to contribute to society is not affected by the fact that they are gay or lesbian. Plaintiffs, however, have not agreed to resolve this issue by stipulation. The nature of the evidence presented by Plaintiffs may therefore make it necessary for the Proposition 8 Proponents to present evidence on this matter as well. We do not anticipate fact discovery on this issue.

#### iii. Immutability

The Ninth Circuit has held that homosexuality is not an immutable characteristic. To the extent the Court nonetheless desires to receive evidence on this matter, we will dispute Plaintiffs' claim that homosexuality is immutable. The precise contours of our argument will depend upon the definition of sexual orientation adopted by the Court, but we plan to present evidence in the form of references to scientific and other scholarly literature, and if Plaintiffs seek to introduce expert opinion on this issue, we may do so as well.

We will also develop evidence that homosexuality is not immutable by analyzing marriage and domestic partnership records from California. We will obtain this data by issuing subpoenas

to government agencies that maintain these records. In California, we understand that the Office of Vital Records, a branch of the Department of Public Health, maintains statewide marriage records and that the Secretary of State's Office maintains statewide domestic partnership records.

From the domestic partnership records, we will compile a list of all the individuals in California who have entered a same-sex domestic partnership. We will then cross-reference these names with the marriage records to identify individuals were previously or subsequently married to a member of the opposite sex. We may also obtain additional data by issuing subpoenas to relevant government agencies in other states that recognize same-sex relationships.

### iv. The relative political power of gays and lesbians

We will present evidence that gays and lesbians wield substantial political power. Many underlying facts relevant to gauging the political power of gays and lesbians are not subject to dispute as reflected in the detailed stipulations we have drafted on this issue. Those stipulations cover the extensive legal rights that gays and lesbians have attained under state and local law in California. The stipulations also cover the gay and lesbian community's success in blocking state laws that were perceived as adverse to its interests. In addition to this undisputed evidence supporting our proposed stipulations, if Plaintiffs seek to introduce expert evidence on this subject, we may do so as well.

We do not anticipate any fact discovery on this issue.

### b. The campaign by which Proposition 8 was adopted

The Proposition 8 Proponents believe that the subjective motivations of voters and other political participants for supporting Proposition 8 are both legally irrelevant and are protected from discovery by the First Amendment. It is therefore inappropriate to inquire into such matters. The Court should ascertain the Proposition's purpose by reference to the text of the law and its necessary legal implications. If it is appropriate to consider any other evidence, the Court should

7

limit its inquiry to objective matters such as official statements and information presented to the voters. Nevertheless, if Plaintiffs are permitted to take discovery into the subjective motivations and strategies of Proponents and other supporters of Proposition 8, then we will likewise take extensive fact discovery into the motivations and strategies of the individuals and organizations that opposed Proposition 8, possibly including the following individuals and groups:

- Courage Campaign
    - Founder and Chair: Rick Jacobs
    - Chief Operating Officer: Sarah Callahan
    - Advertising/Media Director: Billy Pollina
- No on 8: Equality for All
    - Treasurer: Steven Mele, West Hollywood, CA
    - Other Principal Officers (as listed on Statement of Organization):
        - Heather Carrigan, Los Angeles, CA, Chief Operating Officer, ACLU of Southern California
        - Oscar De La O, Los Angeles, CA, President and CEO, Bienestar Health Services
        - Sue Dunlop, Los Angeles, CA
        - Michael Fleming, Beverly Hills, CA, Executive Director, David Bohnett Foundation
        - Maya Harris, San Francisco, CA
        - Dan Hawes, Los Angeles, CA, Director of Organizing and Training, National Gay and Lesbian Task Force
        - Dennis Herrera, San Francisco, CA, City Attorney of San Francisco
        - Delores Jacobs, San Diego, CA, CEO, San Diego LGBT Community

- Center
- Lorri Jean, Los Angeles, CA, CEO, Los Angeles Gay and Lesbian Center
- Kate Kendall, San Francisco, CA, Executive Director, National Center for Lesbian Rights
- Geoff Kors, Sacramento, CA, Executive Director, Equality California
- Joyce Newstat, San Francisco, CA
- Tawal Panyacosit, San Francisco, CA, Director, Asian and Pacific Islander Equality in San Francisco
- Rashad Robinson, Los Angeles, CA
- Marty Rouse, Washington, DC, National Field Director, Human Rights Campaign
- Kevin Tilden, San Diego, CA
  - Political Consultants
    - Mark Armour, Armour Griffin Media Group
    - Chad Griffin, Armour Griffin Media Group
    - Steve Smith, Dewey Square Group
    - Maggie Linden, Ogilvy Public Relations
- Win Marriage Back
  - Treasurer: Timothy Hohmeier, San Francisco, CA
  - Assistant Treasurer: Steven Mele, West Hollywood, CA
- Human Rights Campaign California Marriage PAC
  - Treasurer: James Rinefierd, Washington, DC
  - Assistant Treasurer: Andrea Green, Washington, DC
- No on Proposition 8, Campaign for Marriage Equality

9

- - - Treasurer: Bonnie Anderson
- Californians Against Eliminating Basic Rights
    - Treasurer: Daralyn Reed, Ykrea, CA
    - Consultants:
        - Kristina Schake, Los Angeles, CA
        - Chad Griffin, Beverly Hills, CA
- The Field Poll, San Francisco, CA
    - Mark DiCamillo
    - Mervin Field
- Public Policy Institute of California
    - Mark Baldassare, Survey Director
- *Los Angeles Times* Poll
    - Susan Pinkus, Director

### c. **Character of the rights plaintiffs contend are infringed or violated**

Plaintiffs assert a constitutional right to State recognition of same-sex unions as marriages. This claim is not "objectively, deeply rooted in this Nation's history and tradition." As the stipulations referenced above reflect, no state recognized same-sex marriage at the time of the Founding, nor at the time of the ratification of the Fourteenth Amendment, nor at any other time prior to 2003. We do not anticipate factual discovery on this issue. But to the extent Plaintiffs seek to introduce an expert opinion on this issue, we may do so as well.

### d. **Effect of Proposition 8 upon Plaintiffs and similarly situated individuals**

As our proposed stipulations reflect, the parties should be able to agree that California affords to domestic partnerships the same "core set of basic *substantive* legal rights and attributes" afforded to married couples. *Strauss v. Horton*, 46 Cal. 4th 364, 411 (Cal. 2009) (quotation marks

omitted, emphases in original).

With respect to the effects of same-sex marriage in the non-governmental context, we plan to take discovery to develop evidence showing substantial equality in non-governmental treatment of same-sex couples regardless of the label the government affixes to their relationships. We also plan to take discovery of the state agencies in California and other states that track the number of couples electing domestic partnerships and the number of couples choosing same sex marriage in various jurisdictions throughout the country. In California, the Office of Vital Records, a branch of the Department of Public Health, maintains statewide marriage records and the Secretary of State's Office maintains statewide domestic partnership records.

### e.  **Effect of Proposition 8 on opposite-sex couples and others not in same-sex relationships in California**

Although the Proposition 8 Proponents do not at this time know whether, or the precise effect that, permitting same sex couples to marry would have on traditional marriage, we intend to inquire into and develop evidence on this issue, by, among other things, seeking records relating to the formation and dissolution of marriages and domestic partnerships from relevant agencies in states that recognize same-sex relationships. In California, the Secretary of State's Office maintains domestic partnership records and domestic partnership dissolution records.

### f.  **Other issues pertinent to the parties' claims or defenses**

As indicated above, Proposition 8 rationally serves a number of legitimate governmental interests. At this time, however, we do not plan on requiring fact discovery to develop evidence related to these interests, with one exception. Proposition 8 promotes the natural and mutually beneficial bond between parents and their biological children by encouraging parents to raise their biological children. We plan to develop evidence that many gay and lesbian individuals desire to have biological rather than adopted or foster children, and that many satisfy these desires with the assistance of technology or by other means. We will seek discovery of the names of Californians

in registered domestic partnerships with the parents listed on birth records from the Department of Health's Office of Vital Records (which maintains birth records) and the Secretary of State's Office (which maintains domestic partnership records). We may also seek discovery from companies and organizations that offer assisted reproductive technology and services to develop evidence on this issue.

**4.      Expert Testimony**

Proponents have not finalized the areas as to which they will submit expert evidence testimony. As previously discussed, much of our need for expert testimony will turn upon the nature of the expert testimony plaintiffs offer. In addition to the foregoing discussion, we set forth below our current views on expert testimony that may be necessary:

- If the Court asks for evidence on the immutability of sexual orientation, we will present evidence demonstrating that homosexuality is not immutable. This evidence may include expert evidence. Proponents' experts will have experience in the field of psychology.

- Proponents may present expert opinion on the nature of discrimination that gays and lesbians experienced in the past.

- Proponents may present expert evidence on the political power of gays and lesbians. The expert(s) would have substantial knowledge of California's political landscape. Such an expert would be a political consultant or a professor of political science, or both.

- Proponents may submit an expert opinion that marriage has always been defined as the union of a man and a woman. Proponents' expert would have extensive knowledge of the institution of marriage.

- Proponents may submit expert opinion that a child's biological parents provide the optimal environment for raising that child. Proponents' expert will have significant experience in psychology, biology, and/or the analysis of family structures.

- Proponents may present expert evidence demonstrating substantial equality in non-governmental treatment of same-sex couples regardless of the label the government affixes to their relationships. Proponents' expert will have knowledge as to the factors that influence non-governmental views towards same-sex relationships.

- As noted above, although the Proposition 8 Proponents do not at this time know whether, or the precise effect that, permitting same sex couples to marry would have on traditional marriage, we may present an expert opinion analyzing the data we acquire regarding the formation and dissolution of domestic partnerships, civil unions, and marriages. Our expert would have extensive knowledge about the institution of marriage and may well have a political science background.

- We may also present an expert opinion analyzing the evidence we discover regarding gay and lesbian individuals' desire to have biological rather than adopted or foster children, and the number of gays and lesbians who satisfy these desires with the assistance of technology or by other means. Proponents' expert will have significant experience in psychology, biology, and/or the analysis of family structures.

Dated: August 17, 2009

COOPER AND KIRK, PLLC
ATTORNEYS FOR DEFENDANTS-INTERVENORS DENNIS HOLLINGSWORTH, GAIL J. KNIGHT, MARTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM, MARK A. JANSSON, AND PROTECTMARRIAGE.COM – YES ON 8, A PROJECT OF CALIFORNIA RENEWAL

By: /s/ Charles J. Cooper
    Charles J. Cooper