Importance of Marriage

1.     The "freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men." Loving v. Virginia, 388 U.S. 1, 12 (1967).

   **Proponents' Response:** Proponents agree to this stipulation.

2.     Civil marriage is deeply meaningful to individuals, families, communities, and the State of California.

   **Proponents' Response:** Proponents agree to this stipulation.

3.     Marriage is a public expression of love and long-term commitment.

   **Proponents' Response:** Proponents do not agree to this stipulation.

4.     No other designation offers the same meaning, obligations, rights and benefits except marriage itself.

   **Proponents' Response:** Proponents anticipate that they will be able to agree to some form of this stipulation but cannot agree to the formulation offered by plaintiffs.

5.     Marriage brings with it many tangible legal rights, privileges, benefits and obligations to the married individuals and also confers significant intangible benefits.

   **Proponents' Response:** Proponents anticipate that they will be able to agree to some form of this stipulation but cannot agree to the formulation offered by plaintiffs.

6.     The tangible and intangible benefits of marriage flow to the married couple's children. Marriage legitimizes children born to the couple and provides a sense of security and support for the family.

   **Proponents' Response:** Proponents agree to this stipulation.

7.     Marriage legitimizes children and provides them a sense of security.

   **Proponents' Response:** Proponents do not agree to this stipulation because it is duplicative.

8.     Plaintiffs desire to marry their partners.

   **Proponents' Response:** Proponents agree to this stipulation.

9. For gay and lesbian individuals, such as Plaintiffs, marriage to an individual of the opposite sex is not a meaningful alternative, because such marriage would force them to negate their sexual orientation and identity.

> **Proponents' Response:** Proponents anticipate that they may be able to agree to some form of this stipulation but cannot agree to the formulation offered by plaintiffs.

History of Marriage

10. Civil marriage has never been a static institution. Historically, it has changed, sometimes dramatically, to reflect the changing needs, values and understanding of our evolving society.

> **Proponents' Response:**
>
> **Counter — Civil marriage has been a remarkably static institution. It has rarely changed throughout history, and then only in minor ways. Despite any changes in its precise contours, it always has been and nearly always still is limited to the union of a man and a woman.**

11. California banned interracial marriage from the founding of the State until the California Supreme Court invalidated the prohibition in Perez v. Sharp, 32 Cal. 2d 711 (1948).

> **Proponents' Response:** Proponents anticipate that they will be able to agree to some form of this stipulation.

12. The doctrine of coverture, under which women, once married, lost their independent legal identity and became the property of their husbands, was once viewed as a central component of the civil institution of marriage.

> **Proponents' Response:** Proponents do not agree to this stipulation.

13. Neither the race- nor gender-based reforms in civil marriage law deprived marriage of its vitality and importance as social institution.

> **Proponents' Response:** Proponents anticipate that they will be able to agree to some form of this stipulation but cannot agree to the formulation offered by plaintiffs.

History of Discrimination

14. The persecution suffered by gays and lesbian individuals in the United States has been severe.

>**Proponents' Response:** Proponents anticipate that they will be able to agree to some form of this stipulation but cannot agree to the formulation offered by plaintiffs.

15.     Gay and lesbian individuals have been subjected to and stigmatized by a long history of purposeful and invidious discrimination that continues to this day.

>**Proponents' Response:** Proponents do not agree to this stipulation.

16.     Gay and lesbian individuals are still among the most stigmatized groups in the country.

>**Proponents' Response**: Proponents do not agree to this stipulation.

17.     Hate crimes against gay and lesbian individuals remain prevalent.

>**Proponents' Response**: Proponents do not agree to this stipulation.

18.     Although social antipathy toward gay and lesbian individuals has moderated, these groups suffer from continuing political disabilities and discrimination.

>**Proponents' Response**: Proponents do not agree to this stipulation.

Impact on Ability to Contribute to Society

19.     Sexual orientation bears no relation to a person's ability to perform or contribute to society.

>**Proponents' Response**:
>
>**Counter – With the exception of certain matters related to procreation, individuals' ability to perform or contribute to society is not affected by whether they are gay or lesbian.**

20.     The medical and psychiatric communities do not consider sexual orientation is no longer considered an illness or disorder.

>**Proponents' Response**: Proponents anticipate that they will be able to agree to some form of this stipulation but cannot agree to the formulation offered by plaintiffs.

21.     Same-sex sexual orientation does not result in any impairment in judgment or general social and vocational capabilities.

>    **Proponents' Response**:  Proponents agree to this stipulation.

22.     It is the policy of the State of California that sexual orientation bears no relation to an individual's ability to raise children, to an individual's capacity to enter into a relationship that is analogous to marriage, or otherwise to participate fully in all economic and social institutions.

>    **Proponents' Response**:  Proponents do not agree to this stipulation.

<u>Whether Sexual Orientation Can Be Changed, and If So, Whether Gay and Lesbian Individuals Should be Encouraged to Change It</u>

23.     "Sexual orientation and sexual identity is so fundamental to one's identity that a person should not be required to abandon them." Hernandez-Montiel v. I.N.S., 225 F.3d 1084, 1093 (9th Cir. 2000).

>    **Proponents' Response**:  Proponents do not agree to this stipulation because it is a legal conclusion and thus not the proper subject of a stipulation.

24.     Sexual orientation is fundamental to a person's identity.

>    **Proponents' Response**:  Proponents anticipate that they may be able to agree to some form of this stipulation but cannot agree to the formulation offered by plaintiffs.

25.     There is no credible evidence that sexual orientation can or should be changed.

>    **Proponents' Response**:  Proponents do not agree to this stipulation.

26.     It can be harmful to an individual to attempt to change his or her sexual orientation.

>    **Proponents' Response**:  Proponents anticipate that they may be able to agree to some form of this stipulation but cannot agree to the formulation offered by plaintiffs.

27.     Forcing an individual to change his or her sexual orientation would infringe on "the protected right of homosexual adults to engage in intimate, consensual conduct," which is "an integral part of human freedom." Lawrence v. Texas, 539 U.S. 558, 576-77 (2003).

>    **Proponents' Response**:  Proponents do not agree to this stipulation because it is a legal conclusion and thus not the proper subject of a stipulation.

28.     Sexual orientation is the kind of distinguishing characteristic that defines gay and lesbian individuals as a discrete group.

> **Proponents' Response**: Proponents anticipate that they may be able to agree to some form of this stipulation but cannot agree to the formulation offered by plaintiffs.

Relative Political Power

29.     Discrimination against gay and lesbian individuals, including through hate crimes, exists to this day.

> **Proponents' Response**: Proponents anticipate that they will be able to agree to some form of this stipulation but cannot agree to the formulation offered by plaintiffs.

30.     There are only three openly gay members of the U.S. House of Representatives and no openly gay Senators.

> **Proponents' Response**: Proponents are unable to stipulate at this time due to a lack of sufficient information.

31.     There are no openly gay governors.

> **Proponents' Response**: Proponents are unable to stipulate at this time due to a lack of sufficient information.

32.     No openly gay person has ever been appointed to a Cabinet Secretary position.

> **Proponents' Response**: Proponents are unable to stipulate at this time due to a lack of sufficient information.

33.     Fifty-two percent of California voters voted in favor of Prop. 8, which denied gay and lesbian individuals the right to marry.

> **Proponents' Response**: Proponents anticipate that they will be able to agree to some form of this stipulation but cannot agree to the formulation offered by plaintiffs.

34.     Fewer than half of the States ban sexual orientation discrimination in employment, housing, and/or accommodations.

> **Proponents' Response**: Proponents anticipate that they will be able to agree to some form of this stipulation but cannot agree to the formulation offered by plaintiffs.

35. Lesbians and gay men have been unable to secure national legislation to protect them from hate crimes.

> **Proponents' Response**: Proponents agree to this stipulation.

36. Lesbians and gay men have been unable to secure national legislation to protect them from discrimination in housing, employment, or public accommodations.

> **Proponents' Response**: Proponents agree to this stipulation.

Stigma of Domestic Partnership

37. Establishing a separate legal institution for State recognition and support of lesbian and gay families, even if well-intentioned, marginalizes and stigmatizes gay families.

> **Proponents' Response**: Proponents do not agree to this stipulation.

38. There is a significant symbolic disparity between domestic partnership and marriage.

> **Proponents' Response**: Proponents agree to this stipulation.

39. Denying same-sex couples and their families access to the familiar and favorable official designation "marriage" harms them by denying their family relationships them the same dignity and respect afforded to opposite-sex couples and their families.

> **Proponents' Response**: Proponents do not agree to this stipulation.

40. The inability to marry relegates gay and lesbian relationships to second-class status.

> **Proponents' Response**: Proponents do not agree to this stipulation.

41. Because two types of relationships—one for same-sex couples and one for opposite-sex couples—exist in California, a gay or lesbian individual is forced to disclose his or her sexual orientation when asked about his or her martial status.

> **Proponents' Response**: Proponents do not agree to this stipulation.

42. In light of the history of discrimination that gay and lesbian individuals have faced, the creation of the alternative regime of domestic partnership reinforces anti-gay prejudice, which has the potential to escalate into violence.

> **Proponents' Response**: Proponents do not agree to this stipulation.

43.   The stigma associated with discrimination and second-class treatment takes a toll on the well-being of gay men and lesbians and their families.

   **Proponents' Response**:  Proponents do not agree to this stipulation.

44.   Private, consensual, sexual relations between gay and lesbian couples are protected by the Due Process Clause of the Fourteenth Amendment.

   **Proponents' Response**:  Proponents do not agree to this stipulation because it is a legal conclusion and thus not the proper subject of a stipulation.

Whether Prop. 8 Promotes Stereotypical Gender Roles

45.   Notions that marriage should be limited to opposite-sex couples reinforces harmful stereotypes regarding innate gender characteristics, and the roles of men and women in child rearing and family responsibilities.

   **Proponents' Response**:  Proponents do not agree to this stipulation.

Voter Motivations

46.   Gay and lesbian individuals had a constitutional right to marry before Prop. 8.

   **Proponents' Response**:

   **Counter – Except for a brief six-month period between the California Supreme Court's decision in the *Marriage Cases* and the adoption of Proposition 8, marriage in California was always been limited to the union of a man and a woman.**

47.   Proposition 8 eliminated the right of gay and lesbian individuals to marry.

   **Proponents' Response**:

   **Counter – Proposition 8 restored the traditional definition of marriage.**

48.   Prop. 8 was intended to strip the designation "marriage" from officially sanctioned relationships of same-sex couples.

   **Proponents' Response**:

   **Counter – Prop. 8 was intended to restore the traditional definition of marriage.**

49.   According to the official General Election Voter Information Guide, Prop. 8 "[c]hange[d] the California Constitution to eliminate the right of same-sex couples to

marry in California." *Strauss v. Horton*, 207 P.3d 48, 77 (Cal. 2009) (internal quotation marks omitted).

> **Proponents' Response:**   Proponents anticipate that they will be able to agree to some form of this stipulation but cannot agree to the formulation offered by plaintiffs.

50.    Prop. 8 was driven by moral disapproval of gay and lesbian individuals.

> **Proponents' Response**:  Proponents do not agree to this stipulation.

51.    The advertising campaign in favor of Prop. 8 demonstrates that its supporters drew on the fears and irrational prejudices of voters.

> **Proponents' Response**:  Proponents do not agree to this stipulation.

Facts Relating to Lack of Rational Basis

52.    Heterosexual individuals with no children and/or no intent to have children, who are incarcerated for serious crimes, who have failed to pay child support obligations or who are adulterers are all permitted to marry.

> **Proponents' Response**:  Proponents anticipate that they may be able to agree to some form of this stipulation but cannot agree to the formulation offered by plaintiffs.

53.    Allowing gay and lesbian individuals to marry will not destabilize marriages of heterosexual individuals.

> **Proponents' Response**:  Proponents do not agree to this stipulation.

54.    Allowing gay and lesbian individuals to marry will not deprive heterosexual individuals of any rights or benefits they currently enjoy.

> **Proponents' Response**:  Proponents do not agree to this stipulation.

55.    It is the policy of the State of California that sexual orientation bears no relation to an individual's ability to raise children, to an individual's capacity to enter into a relationship that is analogous to marriage, or otherwise to participate fully in all economic and social institutions.

> **Proponents' Response**:  Proponents do not agree to this stipulation.

56. The State of California has declared an interest in promoting lesbian and gay family relationships and protecting lesbian and gay family members during life crises, and reducing discrimination on the bases of sex and sexual orientation.

> **Proponents' Response**: Proponents are unable to stipulate at this time due to a lack of sufficient information. Proponents anticipate that they will be able to agree to some form of this stipulation but cannot agree to the formulation offered by plaintiffs.

57. The State of California allows gay men and lesbians in same-sex relationships to serve as foster parents and to adopt children.

> **Proponents' Response**: Proponents agree to this stipulation.

58. An individual's capacity to establish a loving and long-term committed relationship with another person does not depend on the individual's sexual orientation.

> **Proponents' Response**: Proponents anticipate that they will be able to agree to some form of this stipulation but cannot agree to the formulation offered by plaintiffs.

59. An individual's capacity to raise children does not depend on the individual's sexual orientation.

> **Proponents' Response**: Proponents anticipate that they may be able to agree to some form of this stipulation but cannot agree to the formulation offered by plaintiffs.

60. The best interests of a child are equally served by being raised by same-sex parents.

> **Proponents' Response**: Proponents do not agree to this stipulation.

61. Lesbian and gay parents are as likely as heterosexual parents to provide supportive and healthy environments for children.

> **Proponents' Response**: Proponents do not agree to this stipulation.

62. The State of California allows same-sex couples married before Prop. 8 was enacted to remain married.

> **Proponents' Response**: Proponents agree to this stipulation.

63. Approximately 18,000 same-sex couples currently are recognized by the State of California as married. However, if any of those marriages end by reason of death or

9

divorce, the gay and lesbian individuals in those marriages would not be allowed to remarry.

> **Proponents' Response**: Proponents are unable to stipulate at this time due to a lack of sufficient information.

64. Gay and lesbian individuals, including Plaintiffs, have formed lasting, committed, and caring relationships with persons of the same sex, and same-sex couples share their lives and participate in their communities together.

> **Proponents' Response**: Proponents agree to this stipulation.

65. Gay and lesbian individuals, including Plaintiffs Perry and Stier, raise children together.

> **Proponents' Response**: Proponents agree to this stipulation.

66. Prohibiting marriage by same-sex couples hurts the State of California financially.

> **Proponents' Response**: Proponents are unable to stipulate at this time due to a lack of sufficient information.

67. Prohibiting marriage by same-sex couples limits the State of California's ability to ensure that its citizens are treated equally regardless of sexual orientation.

> **Proponents' Response**: Proponents do not agree to this stipulation.