# Exhibit A

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| **PARENTS AND FRIENDS OF** ) <br> **EX-GAYS, INC.** ) <br>   ) <br> Petitioner,  ) <br>   ) <br> v.  ) <br>   ) <br> **GOVERNMENT OF THE DISTRICT** ) <br> **OFFICE OF HUMAN RIGHTS** ) <br>   ) <br> Respondent.  ) <br> _____) | C.A. No.:  2008 CA 003662 P (MPA) <br> Judge:     Maurice Ross |

## MEMORANDUM OPINION

### I.     FACTUAL AND PROCEDURAL HISTORY

#### A.     Introduction

This is an appeal of a decision of the Office of Human Rights ("OHR") in a Letter of Determination dated May 24, 2005, and a subsequent Determination on Complainant's Request for Reconsideration dated November 1, 2005.[1] AR 285-94; 298-98. On May 15, 2008, Petitioner, Parents and Friends of Ex-Gays, Inc. ("PFOX"), brought a Merit Personnel Action before this Court. Petitioner submitted its brief on January 8, 2009, requesting that the Court reverse OHR's decision. On April 7, 2009, Intervenor, National Education Association ("NEA"), and Respondent, District of Columbia ("DC"), submitted their briefs. Respondent joined Intervenor's brief except as to its argument regarding jurisdiction. Finally, Petitioner submitted its reply brief on May 19, 2009.

---

[1]     Reference to the Agency Record will be referred to herein as "AR" followed by the appropriate page number.

**B.     Factual History**

This matter arises from PFOX's application, sent in March 2002, to lease an exhibit booth at NEA's annual convention, EXPO 2002, in Dallas, Texas. AR 286. NEA is headquartered in Washington, DC. Its headquarters include a cafeteria open to the public. Int's Br. 24. EXPO 2002 was a function organized and funded by the NEA for the purpose of supporting NEA delegates in their roles as association leaders. Int's Br. 7. Approximately 9,000 NEA elected delegates and officers from the millions of dues-paying members attend the annual conventions. Id. Exhibitors whose applications were approved by NEA also attended the conference. Id. Admission to the conference was monitored by security guards and all exhibitors and attendees were required to wear NEA badges at all times. Id.

PFOX sought to participate in the convention, in part, to provide information to the public in an effort to promote tolerance and equality for the ex-gay community. AR 286. To complete the application process, PFOX submitted a check for payment of the deposit for the booth to Conventions, Exhibits, Promotions, Inc. ('CEPI'). Id. NEA cashed the deposit check on April 4, 2002. On June 7, 2002, an NEA executive officer, Carolyn Cruise ("Cruise"), called PFOX and spoke with Estella Salvatierra ("Salvatierra"), Vice President of PFOX. Cruise stated that she contacted PFOX to get more information about the organization, even though PFOX's booth application was complete and contained detailed information. Id. At the conclusion of the conversation, Cruise informed PFOX that booth space was very limited and that priority was given to past participants. Id. Immediately after this call, PFOX contacted CEPI to determine the availability of exhibit booths at EXPO 2002. CEPI informed PFOX that two booths were still available and other booths were likely to come open as other organizations canceled. Id.

Furthermore, NEA's website indicated that past patronage by an organization gave them a priority in booth location, but not booth availability. Id.

On June 10, 2002, NEA rejected PFOX's application. AR 286. In the letter of rejection, a lack of exhibit space was cited as the reason for rejection, which at the time the application was rejected, appears to be true. Id. In its briefs to OHR and this Court, however, NEA cites the fact that NEA can reject exhibitors if a group's message or policies are contrary to NEA's policies or has the potential to create a disruption at the convention. AR 36; 287-88. NEA determined PFOX's message contravened NEA's policies and was potentially disruptive because PFOX is a "conversion" group, which the NEA views as hostile to people of various sexual orientations. AR 288.

### C. OHR's Determinations

PFOX brought their charge before OHR on the grounds that the organization and its members had been discriminated against on the basis of sexual orientation in the denial of services as a public accommodation. AR 69. On May 24, 2005, OHR issued a no probable cause determination letter finding against PFOX. AR 285-292. OHR made the following findings: (1) OHR had jurisdiction over the dispute because the denial of PFOX's application occurred in D.C.; (2) NEA provides a public accommodation pursuant to D.C. Code § 2-1401.02; (3) ex-gays are not members of a protected class under the HRA based on the plain language of the statute; and (4) even if PFOX was part of a protected class, NEA rejected PFOX's application for non-discriminatory reasons. AR 285-292. PFOX then filed a request for reconsideration of OHR's determination.

On November 1, 2005, OHR granted PFOX's request for reconsideration of its no probable cause determination and affirmed its prior no probable cause determination. AR 295 -

3

298. OHR ruled that ex-gays are not a protected class because they, by definition, do not possess an immutable characteristic. Citing multiple D.C. and Maryland cases, OHR noted that PFOX defined ex-gays as individuals who chose to leave homosexuality and practice heterosexuality by preference. AR 297.[2] Furthermore, OHR found that even though PFOX represents gays and ex-gays, it did not establish a case of prima facie discrimination because other gay individuals were permitted to attend EXPO 2002. AR 297. Thus, there are two primary issues before the Court: (1) whether OHR properly determined that there was no probable cause to believe that NEA discriminated against PFOX on the basis of sexual orientation and (2) whether OHR had jurisdiction over PFOX's charge of discrimination.

## II.     STANDARD OF REVIEW

The Superior Court has jurisdiction to review a final decision of an agency of the District of Columbia, including an agency's determination of no probable cause. Super. Ct. Agency Rev. R. 1; see Simpson v. Office of Human Rights, 597 A.2d 392, 397-399 (D.C. 1991). The court, however, cannot "set aside the action of the agency if supported by substantial evidence in the record as a whole and not clearly erroneous as a matter of law." Super. Ct. Agency Rev. R. 1(g). "Substantial evidence is relevant evidence such as a reasonable mind might accept as adequate to support a conclusion." Mills v. District of Columbia Dep't of Empl. Servs., 838 A.2d 325, 328 (D.C. 2003) (quoting Black v. District of Columbia Dep't of Employment Servs., 801 A.2d 983, 985 (D.C. 2002)); see also Vogel v. D.C. Office of Planning, 944 A.2d 456, 463-464 (D.C. 2008). As long as the agency's decision is supported by substantial evidence in the record, it must be affirmed "notwithstanding that there may be contrary evidence in the record (as there

---

[2]   OHR cites the following cases for the proposition that immutably must be present for a group to be considered a protected class: Batson v. Powell, 912 F. Supp. 565 (D.D.C. 1996); Arnold v. U.S. Postal Serv., 274 305 (D.C. Cir. 1988); Dean v. D.C., 653 A.2d 307 (D.C. 1995); and Callwood v. Dave & Buster's Inc., 98 F. Supp.2d 694 (D. Md. 2000).

4

usually is)." Ferreira v. District of Columbia Dep't of Employment Servs., 667 A.2d 310, 312 (D.C. 1995).

## III. ANALYSIS

### A. Discrimination Based on Sexual Orientation

#### 1. Ex-gays as a Protected Class

OHR's determination that a characteristic must be immutable to be protected under the HRA is clearly erroneous as a matter of law. OHR ignores the plain language and explicitly stated intent of the HRA. Indeed, the HRA lists numerous protected categories such as religion, personal appearance, familial status, and source of income, which are subject to change. The HRA's purpose is "to secure an end in the District of Columbia to discrimination for any reason other than that of individual merit…." D.C. Code § 2-1401.01; see also Executive Sandwich Shoppe, Inc. v. Carr Realty Corp., 749 A.2d 724, 732 (D.C. 2000) (citation and internal quotations omitted) (holding that the HRA is a powerful, flexible, and far-reaching prohibition against discrimination of many kinds). Pertaining to sexual orientation, moreover, the HRA in §2-1401.02(28) defines sexual orientation as "male or female homosexuality, heterosexuality and bisexuality, by preference or practice." Thus, the HRA's intent and plain language eschews narrow interpretation.

While OHR's analysis and the Title VII cases cited by OHR speak in terms of immutable characteristics, the HRA clearly does not limit itself only to immutable characteristics. The premise of the HRA is simple: to end all discrimination based on anything other than individual merit. Numerous protected classes listed in the HRA include mutable traits. Furthermore, the definition of sexual orientation defines an

5

individual's sexuality as a "preference" or "practice."  D.C. Code §2-1401.01.  OHR's analysis posits that the immutability of a person's preferred sexual orientation categorizes them as a member of a protected class.  In focusing on federal discrimination cases, however, the OHR misses the broad scope of the HRA and the explicit inclusion of the term "practice" in the HRA's definition of sexual orientation.

Certainly no parties in this matter would argue that the phenomenon of individuals practicing heterosexuality, homosexuality, or any combination thereof exists in D.C. and the rest of the world.  Indeed, PFOX partially consists of individuals who practiced homosexuality and now practice heterosexuality.  Thus, OHR's fixation on the "preference" element of the sexual orientation definition in its analysis is clearly erroneous.  Indeed, the inclusion of the word "practice" in the HRA's sexual orientation definition makes sexual orientation and immutability mutually exclusive under the HRA.  Indeed, the Court does not need to delve into the voluminous studies discussed in OHR's and NEA's cited cases regarding the immutability of sexual preferences.  The HRA took such an analysis out of the equation by protecting an individual's sexual practices as well.  Furthermore, the HRA's broad language does not make immutability a requirement to be a member of a protected class.  Therefore, the Court reverses the OHR's ruling that ex-gays are not protected from discrimination under the HRA because it directly contravenes the plain language and intent of the statute.

### 2. NEA's Rejection of PFOX's Application

The Court affirms OHR's ultimate determination that PFOX's application was denied legally.  In NEA's judgment, PFOX is a conversion group hostile toward gays and lesbians.  Thus, even though PFOX vehemently disagrees with NEA's characterization, it is within NEA's

6

right to exclude PFOX's presence at NEA's conventions. NEA cites <u>Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston</u>, 515 U.S. 557 (1995), to support it's jurisdictional argument, but the Court also finds it helpful in the analysis of whether or not NEA's reasons for rejecting PFOX's application were proper. In <u>Hurley</u>, the Supreme Court reversed the Supreme Court of Massachusetts in a unanimous opinion because the state court misapplied the Massachusetts public accommodations law to require private citizens who organize a parade to include among the marchers a group imparting a message that the organizers do not wish to convey. In <u>Hurley</u>, South Boston Allied War Veterans Council (the "Council") denied defendant GLIB's request to march in the Council's St. Patrick's Day parade. <u>Hurley</u> at 557-58. The Supreme Court agreed with the Council's argument that it had no prohibition against homosexuals marching in the parade, rather the Council objected to the message GLIB sought to express in the parade. <u>Id</u>. at 572. The Supreme Court reversed the state court because the state court's interpretation of Massachusetts's public accommodations law essentially forced the Council to alter the message of its parade. <u>Id</u>. at 578-579.

  Furthermore, NEA persuasively argues that its rejection of PFOX's application was proper in light of the facts and <u>Hurley</u>. Indeed, the HRA would not require NEA to accept an application from the Ku Klux Klan or a group viewed by the NEA as anti-labor union or racist. Int's Br. 8-9. Similarly, military organizations and the Boy Scotts of America are excluded from renting exhibit space at the NEA Annual Meetings because of the positions those organizations take with regard to gay and lesbian rights. The analogy is persuasive because NEA rejected PFOX's application not based on their personal traits, but rather because of PFOX's mission and message. Certainly, other exhibitors at EXPO 2002 were homosexuals or heterosexuals, like the members of PFOX, but they were distinguishable from PFOX because the other exhibitors

7

presented exhibits the NEA deemed to be agreement with its policies. Thus, PFOX's arguments miss the point. The NEA did not reject its application because PFOX's members include ex-gays, homosexuals, heterosexuals, or members of any other sexual orientation. Rather, NEA rejected PFOX's application because PFOX's **message and policies** were, in NEA's opinion, contrary to NEA's policies regarding sexual orientation.

PFOX attempts to distinguish Hurley by citing NEA's resolution promoting tolerance of different sexual orientations, unlike the position of the South Boston Allied War Veterans Council. NEA's resolutions are immaterial because it is not for OHR or the Court to use its own interpretation of NEA's resolutions in place of NEA's own good faith interpretation. PFOX, furthermore, cites no legal authority to support its assertion that it is proper for the Court to usurp NEA's ability to interpret its own policies. Essentially, PFOX asks the Court, through the HRA, to do the very thing that the Supreme Court in Hurley held that anti-discrimination laws must not do: force a group or individual to alter their message by including another's message which is at odds with a position taken by the group or individual. Hurley at 580. PFOX asks the Court to force NEA to give PFOX an exhibit booth at its annual convention. Therefore, the Court affirms OHR's ultimate finding that NEA did not discriminate against PFOX on the basis of sexual orientation when NEA denied PFOX's application for an exhibit booth at EXPO 2002.

There is substantial record evidence to support OHR's finding. In its answers to OHR's interrogatories and Request for Production of Documents, NEA explained the reasons for its denial of exhibit space to PFOX as follows:

> As th[e] application [for exhibit space EXPO 2002] makes clear, NEA "reserves the right to deny applications on the basis of proposed exhibit content, as set for in the GENERAL PURPOSE STATEMENT." The General Purpose Statement indicates that information presented by exhibitors on social issues should be "in accordance with NEA policy." Complainant's application was denied because the proposed content of the exhibit booth was deemed contrary to NEA policy, which

8

inter alia, promotes acceptance of gays and lesbians, supports educational initiatives designed to eliminate misconceptions about gays and lesbians, and seeks to improve conditions and opportunities for gay and lesbian students and teachers. Complainant's mission, which advocates "promoting alternatives to homosexuality" so that more gays and lesbians "can have the opportunity to make the choice to leave homosexuality," was determined to be inconsistent with those policies.

NEA also reserves the right to deny an application if "[t]he applicant's booth activities will be disruptive and/or will interfere with the business proceedings." Another factor contributing to the denial of Complaint's application was the potential for disruption that the organization's proposed exhibit would present. Because of the opposition of NEA's gay and lesbian caucus to "conversion" groups such as Complainant, NEA. . . believed that Complainant's exhibit could result in protests or other demonstrations which might be disruptive and/or interfere with business proceedings.

AR at 159-60.

### 3. Pretext

There also is substantial record evidence to support OHR's finding that NEA's denial of PFOX's was not a pretext for discrimination. In considering claims of discrimination under HRA, the D.C. courts apply the familiar three-part test from McDonnell Douglas and its progeny.[3] The plaintiff has the initial burden to make a prima facie showing of discrimination by a preponderance of the evidence. The burden then shifts to the defendant to produce evidence that it took the challenged action for legitimate, nondiscriminatory reasons. The burden then shifts back to the plaintiff to prove, by the preponderance of the evidence, that each of the defendant's articulated justifications for its decision was not true, i.e., did not actually motivate the defendant, but was a pretext for discrimination.

As set forth in its Answers to OHR's Interrogatories and Request for Production of Documents, NEA articulated three legitimate, nondiscriminatory reasons for its denial of exhibit

---

[3] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Hollis v. Fed. Nat'l Mortg. Ass'n, 760 A.2d 563, 571-72 (D.C. 2009); O'Donell v. Associated Gen. Contractors of Am., Inc., 645 A.2d 1084, 1086 (D.C. 1994); Atl. Richfield Co v. D.C. Comm'n on Human Rights, 515 A.2 1095, 1099 (D.C. 1986).

9

space to PFOX: (1) NEA believed that the information PFOX sought to distribute to NEA delegates at EXPO 2002 was inconsistent with NEA's policies supporting gay rights, (2) NEA believed that PFOX's booth could provoke protests and other demonstrations that would be potentially disruptive of the Annual Meeting; and (3) on June 10, 2002, when the decision was made to deny PFOX's application, CEPI had informed NEA that exhibit space was sold out. (R. at 159-60.) Because NEA met is burden of production, the burden then shifted back to PFOX to prove by the preponderance of the evidence that NEA's legitimate, nondiscriminatory reasons for denying exhibit space to PFOX were not its true reasons, but were in fact, a pretext for discriminating against it on the basis of sexual orientation.

The OHR found that even if PFOX had established a prima facie case of discrimination, NEA articulated legitimate nondiscriminatory reason for its actions. Although PFOX contested NEA's evidence, the OHR sided with NEA. OHR's findings are supported by NEA's answers to the complaint, briefs, and sworn statements. Accordingly, there is substantial record evidence to support OHR's decision, and it shall be affirmed.

## C. OHR's Jurisdiction

The Court affirms OHR's determination that it had jurisdiction over PFOX's charge of discrimination. The HRA "is a broad remedial statute, to be generously construed," but it does have jurisdictional limits. Blodgett v. The University Club, 930 A.2d 210, 218 (D.C. 2007). The discrimination PFOX alleges must have occurred in a place of public accommodation for the HRA to apply. A place of public accommodation is defined by D.C. Code §2-1401.02(34) as almost any place, except "any institution, club, or place of accommodation which is in its nature distinctly private…." Even distinctly private places can be considered places of public accommodation, however, if such a place: "(A) has 350 or more members; (B) serves meals on a

regular basis; and (C) regularly receives payment for dues, fees, use of space, facilities, services, meals, or beverages directly or indirectly from or on behalf of nonmembers for the furtherance of trade or business." D.C. Code § 2-1401.02(24).

It is undisputed that the NEA, in some respect, meets the criteria for a place of public accommodation under the HRA because it has over 350 members, sells meals at its cafeteria in its D.C. headquarters, and accepts membership dues. NEA does dispute, however, that EXPO 2002 was a place of public accommodation under the HRA. Int's Br. 21. OHR asserted jurisdiction over NEA in this case because the broad construction of the HRA and because of the Supreme Court's ruling in Directors of Rotary Int'l v. Rotary Club of Duarte, 481 U.S. 537 (1987), regarding public accommodations. NEA argues that because EXPO 2002 was in Texas and by invitation only, the HRA does not apply. Both of NEA's arguments, however, are unpersuasive.

As an initial matter, it is useful to recite some pertinent facts. While EXPO 2002 did occur in Texas, the application process occurred at least in part through NEA's headquarters in D.C. Furthermore, PFOX is not alleging that their membership showed up at EXPO 2002 and NEA discriminated against them. Indeed, PFOX argues that they were discriminated against in the course of the exhibit booth application process. Thus, the location of NEA's convention is inapposite. To find otherwise would vitiate the broad intent of the HRA.

The fact that EXPO 2002 was not open to the public, moreover, is equally unpersuasive based on the facts in this matter. While attendance at EXPO 2002 required an ID badge, the application process was open to the public. Indeed, any group could fill out an application form, include a check, and send the package to NEA for consideration. Thus, the Rotary does not apply here. PFOX filed its complaint based on NEA's discrimination of it and its members in the

11

application process, which was open to the public. Therefore, the Court affirms OHR's finding that it had jurisdiction over this matter.

## IV. CONCLUSION AND RELIEF

PFOX asks the Court to reverse OHR's final decision finding no probable cause that NEA discriminated against PFOX on the basis of sexual orientation when it denied public accommodation services to PFOX by refusing to provide PFOX with exhibit space at EXPO 2002. As a matter of law, OHR erred in determining that ex-gays are not a protected class under the HRA. Regardless of whether or not OHR erred in its classification of ex-gays, it correctly found that PFOX's exhibit booth application was rejected for non-discriminatory reasons. Furthermore, while EXPO 2002 was held in Texas, OHR did have jurisdiction over the charge because the rejection of PFOX's application occurred in D.C., where NEA was headquartered. Therefore, Petitioner's request to reverse the OHR's decision, the requested relief, is **DENIED**. An order denying PFOX's request will be concurrently issued with this Memorandum Opinion.

**Accordingly**, it is this, **26th** day of **June 2009**, hereby,

**ORDERED** that the Petition for Review be, and it hereby is, **GRANTED**,

**FURTHER ORDERED** that the decision of OHR that there is no probable cause for Petitioner's complaint of discrimination is hereby **AFFIRMED**; and

**FURTHER ORDERED** that the status hearing previously set for October 2, 2009, at 9:00 A.M. is hereby **VACATED**.

*Maurice A. Ross*
JUDGE MAURICE A. ROSS

Copies to:

| | | |
|---|---|---|
| James Thomas Maloney, Esq.<br>Maloney & Mohsen PLLC<br>5039 Connecticut Avenue, NW<br>Building 1<br>Washington, DC 20008-11299 | Ross Buchholz, Esq.,<br>Assistant Attorney General<br>Office of the Attorney<br>General<br>441 Fourth Street, NW,<br>Suite N-1060 Washington,<br>DC 20001 | Cynthia Chmielewski, Esq.<br>National Education<br>Association<br>1201 Sixteenth Street, N.W.<br>Suite 820<br>Washington, DC 20036 |