GIBSON, DUNN & CRUTCHER LLP
Theodore B. Olson, SBN 38137
*tolson@gibsondunn.com*
Matthew D. McGill, *pro hac vice*
Amir C. Tayrani, SBN 229609
1050 Connecticut Avenue, N.W., Washington, D.C. 20036
Telephone: (202) 955-8668, Facsimile: (202) 467-0539

Theodore J. Boutrous, Jr., SBN 132009
*tboutrous@gibsondunn.com*
Christopher D. Dusseault, SBN 177557
Ethan D. Dettmer, SBN 196046
Sarah E. Piepmeier, SBN 227094
Theane Evangelis Kapur, SBN 243570
Enrique A. Monagas, SBN 239087
333 S. Grand Avenue, Los Angeles, California 90071
Telephone: (213) 229-7804, Facsimile: (213) 229-7520

BOIES, SCHILLER & FLEXNER LLP
David Boies, *pro hac vice*
*dboies@bsfllp.com*
Theodore H. Uno, SBN 248603
333 Main Street, Armonk, New York 10504
Telephone: (914) 749-8200, Facsimile: (914) 749-8300

Attorneys for Plaintiffs KRISTIN M. PERRY, SANDRA B. STIER,
PAUL T. KATAMI, and JEFFREY J. ZARRILLO

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the California Department of Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; and DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles,<br><br>Defendants. | CASE NO. 09-CV-2292 VRW<br><br>**PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S JOINT OPPOSITION TO DEFENDANT-INTERVENORS' MOTION FOR A PROTECTIVE ORDER**<br><br>Date:     September 25, 2009<br>Time:     10:00 a.m.<br>Judge:    Chief Judge Walker<br>Location: Courtroom 6, 17th Floor |

Gibson, Dunn & Crutcher LLP

09-CV-2292 VRW  PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S JOINT OPPOSITION TO
DEFENDANT-INTERVENORS' MOTION FOR A PROTECTIVE ORDER

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 2

    A. The Disputed Discovery Is Relevant to the Factual Disputes the Court Identified as Requiring Resolution and to the State Interests Advanced by Defendant-Intervenors .................................................................................................. 2

        1. Defendant-Intervenors Misconstrue Relevance Standards and Conflate Relevance with Admissibility ............................................................... 3

        2. Plaintiffs' Discovery Is Reasonably Calculated to Lead to the Discovery of Party Admissions and Impeachment Evidence Regarding Defendants' Positions in this Case and the Factual Disputes Identified by the Court ....................................................................... 4

        3. Plaintiffs' Discovery Is Reasonably Calculated to Lead to the Discovery of Admissible Evidence Concerning the "Motivations for Supporting Prop. 8" ................................................................. 5

        4. Defendant-Intervenors' Position Is Internally Inconsistent and Designed to Prevent Discovery Going to Issues Relevant to this Case ............................................................................................................. 7

    B. Defendant-Intervenors' Claim to a Sweeping First Amendment Privilege Against Party Discovery Is Makeweight ......................................................... 8

III. CONCLUSION .................................................................................................................... 13

Gibson, Dunn & Crutcher LLP

i

09-CV-2292 VRW  PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S JOINT OPPOSITION TO DEFENDANT-INTERVENORS' MOTION FOR A PROTECTIVE ORDER

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Adolph Coors Co. v. Wallace*,
  570 F. Supp. 202 (N.D. Cal. 1983) .................................................................................................. 8

*Anderson v. Hale*,
  No. 00-C-2021, 2001 WL 503045 (N.D. Ill. May 10, 2001) ....................................................... 8, 11

*Bates v. City of Little Rock*,
  361 U.S. 516 (1960) ......................................................................................................................... 8

*Bates v. Jones,*
  131 F.3d 843 (9th Cir. 1997)(en banc) ............................................................................................ 6

*Brock v. Local* 375,
  860 F.2d 346 (9th Cir. 1988) ........................................................................................................ 8, 9

*Castaneda v. Burger King Corp.,* --- F.R.D. ---,
  2009 WL 2748932 (N.D. Cal. Aug. 19, 2009) ................................................................................. 3

*Christ Covenant Church v. Town of Sw. Ranches*,
  No. 07-60516, 2008 U.S. Dist. LEXIS 49483 (S.D. Fla. June 29, 2008) ......................................... 9

*City of Los Angeles v. County of Kern,*
  462 F. Supp. 2d 1105 (C.D. Cal. 2006) ................................................................................. 5, 6, 10

*Crawford v. Board of Education,*
  458 U.S. 527 (1982) ......................................................................................................................... 6

*Del Campo v. Kennedy,*
  236 F.R.D. 454 (N.D. Cal. 2006) ..................................................................................................... 3

*Dep't of Agric. v. Moreno,*
  413 U.S. 528 (1973) ......................................................................................................................... 5

*Dole v. Service Employees Union*,
  950 F.2d 1456 (9th Cir. 1991) ......................................................................................................... 8

*Gibson v. Florida Legislative Investigation Committee*,
  372 U.S. 539 (1963) ......................................................................................................................... 8

*Grandbouche v. Clancy*,
  825 F.2d 1463 (10th Cir. 1987) ....................................................................................................... 9

*In re Motor Fuel Temperature Sales Practices Litig.*,
  No. 07-MD-1840-KHV, 2009 U.S. Dist. LEXIS 66005 (D. Kan. May 28, 2009) ............... 8, 10, 11

ii

Gibson, Dunn & Crutcher LLP

09-CV-2292 VRW  PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S JOINT OPPOSITION TO DEFENDANT-INTERVENORS' MOTION FOR A PROTECTIVE ORDER

**TABLE OF AUTHORITIES**
**[Continued]**

Page(s)

*Jones v. Bates,*
   127 F.3d 839 (9th Cir. 1997) .................................................................................................. 6

*NAACP v. Alabama*,
   357 U.S. 449 (1958) ................................................................................................................. 8

*Pers. Adm'r of Mass. v. Feeney,*
   442 U.S. 256, 260 (1979) ........................................................................................................ 5

*S.D. Farm Bureau, Inc. v. Hazeltine,*
   340 F.3d 583 (8th Cir. 2003) ................................................................................................... 5

*SASSO v. Union City,*
   424 F.2d 291 (9th Cir. 1970) ................................................................................................... 6

*Washington v. Davis,*
   426 U.S. 229 (1976) ................................................................................................................. 5

*Washington v. Seattle Sch. Dist. No. 1,*
   458 U.S. 457 (1982) ................................................................................................................. 5

*Wilkinson v. FBI*,
   111 F.R.D. 432 (C.D. Cal. 1986) .......................................................................................... 10

**RULES**

Fed. R. Evid. 801(d) ...................................................................................................................... 5

Gibson, Dunn &
Crutcher LLP

iii

09-CV-2292 VRW  PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S JOINT OPPOSITION TO
DEFENDANT-INTERVENORS' MOTION FOR A PROTECTIVE ORDER

## I. INTRODUCTION

Defendant-Intervenors—the official proponents of Proposition 8 and intervenors in this case—seek a protective order preventing any and all discovery into documents or communications concerning Proposition 8, except those "available to the public at large." Doc #187-14 at 3. Despite Plaintiffs' attempts to negotiate the scope of discovery and willingness to maintain the confidentiality of specific information where confidentiality is appropriate, Defendant-Intervenors instead stake out a rigid, across-the-board position that virtually none of their documents are discoverable no matter what they may say or address. Defendant-Intervenors' position, and their broad-strokes motion for protective order, lack merit.

In defense of their position, Defendant-Intervenors try to distract this Court from the numerous important issues in play in this case, and to recast the case altogether as one about "protection of core First Amendment activities." Doc #187 at 7. But this case is, and always has been, about the vindication of Plaintiffs' rights under the United States Constitution—rights that are violated every day that California's Proposition 8 remains in effect. In order to build their case and be in a position to address issues that may arise at trial, Plaintiffs are entitled under the Federal Rules of Civil Procedure to liberal discovery of any non-privileged information that may lead to the discovery of admissible evidence.

Defendant-Intervenors' attempt to portray themselves as like any other "California voter or any person who weighed in on the Prop. 8 debate," *id.* at 10, is disingenuous and must fail. Defendant-Intervenors voluntarily made themselves parties to this case. As such, they have a responsibility, not necessarily co-extensive with that of third-parties, to produce any and all non-privileged documents that are relevant to *any* issue that may be part of a trial of Plaintiffs' important claims. Moreover, Defendant Intervenors' attempt to invoke the First Amendment to block the discovery of virtually all of their documents cannot be supported. Defendant-Intervenors' attempts to avoid such discovery entirely and shield relevant documents—documents that may contradict the very arguments they advance in this case—lack merit, and their motion should be denied.

Gibson, Dunn & Crutcher LLP

1

09-CV-2292 VRW  PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S JOINT OPPOSITION TO DEFENDANT-INTERVENORS' MOTION FOR A PROTECTIVE ORDER

## II.  ARGUMENT

A. **The Disputed Discovery Is Relevant to the Factual Disputes the Court Identified as Requiring Resolution and to the State Interests Advanced by Defendant-Intervenors**

Defendant-Intervenors have consistently argued that "there are no genuine issues of material fact that must be resolved at trial" and that they "are entitled to judgment as a matter of law."  Doc #172-1 at 30.  It thus comes as no surprise that they believe *all* discovery propounded to them is irrelevant and that the Court need only rely on public records and prior California Supreme Court opinions to adjudicate this matter.  Doc #187 at 9, 11-13.  While Plaintiffs believe that there are certain issues in this case that can be resolved in *Plaintiffs'* favor as a matter of law and without resort to detailed factual inquiry (and so argued in their motion for a preliminary injunction), the Court has set this case for trial in January 2010 and set a discovery schedule within which the parties must prepare the case for a full trial on the merits.  The issues on which Plaintiffs intend to prepare a record for trial include, but are not limited to, the fifteen specific factual issues that the Court identified in its June 30, 2009 Order.  Doc #76 at 7-9.

In spite of the Court's direction that the parties prepare this case for trial, Defendant-Intervenors have steadfastly maintained their position that no trial is needed and that there are no factual issues to be resolved.  This motion is simply the latest manifestation of that position, as Defendant-Intervenors ask the Court to prohibit virtually all discovery sought by Plaintiffs, taking the remarkable position that even readily accessible "documents that were available to the electorate at large" are not relevant or admissible.  Doc #187 at 9 n.2.  Thus, according to Defendant-Intervenors, documents distributed to millions of potential voters specifically laying out why they should support Prop. 8 are not discoverable if the list of recipients was targeted, for example, to all registered Republicans or voters who had supported particular causes in the past.  Defendant-Intervenors also would take the position that *no* internal document, or communication with a third party, including consultants or other vendors assisting them on the campaign, could possibly be relevant regardless of what it says, even if it would constitute a binding admission or a statement directly at odds with representations that Defendant-Intervenors now make to the Court.

2

Gibson, Dunn & Crutcher LLP

09-CV-2292 VRW  PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S JOINT OPPOSITION TO DEFENDANT-INTERVENORS' MOTION FOR A PROTECTIVE ORDER

In an effort to reach compromise, Plaintiffs negotiated in good faith with Defendant-Intervenors to narrow document requests, even offering to enter into confidentiality agreements in order to address their fears of harassment and reprisal. *See* Declaration of Matthew D. McGill, ¶ 2-3, attached hereto as Exh. A. Plaintiffs' offers to compromise, however, were rejected. *Id.* at ¶ 3.

### 1. Defendant-Intervenors Misconstrue Relevance Standards and Conflate Relevance with Admissibility

Defendant-Intervenors' limited view of what is relevant and discoverable runs counter to the broad scope of discovery permitted by the Federal Rules of Civil Procedure. "The scope of discovery under Rule 26 is broad; '[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'" *Castaneda v. Burger King Corp.,* --- F.R.D. ---, 2009 WL 2748932, at *2 (N.D. Cal. Aug. 19, 2009) (quoting Fed. R. Civ. P. 26(b)(1)) (alteration in original). Here, Defendant-Intervenors assert that they will only produce documents "available to the public at large." Doc #187-14 at 3. This position is plainly designed to prevent Plaintiffs from ever seeing anything but the most carefully crafted and broadly disseminated messages relating to their campaign. And Defendant-Intervenors offer no explanation of why a communication to the voters "at large" may be relevant, but a communication to a targeted but still large group of voters could not possibly be relevant.

Moreover, Defendant-Intervenors' position confuses the separate standards for admissibility at trial and for discovery by improperly seeking to limit Plaintiffs' discovery to those documents admissible at trial. *See* Doc #187 at 10 ("The Supreme Court, however, has never authorized the use of the type of [nonpublic] information at issue here to ascertain the purpose of an initiative"). But "[a]s emphasized in the Advisory Committee Notes [to Rule 26], the language of Rule 26(b) 'make[s] clear the broad scope of examination and that it may cover *not only* evidence for use at trial but also inquiry into matters in themselves *inadmissible as evidence* but which will lead to the discovery of evidence.'" *Del Campo v. Kennedy,* 236 F.R.D. 454, 457 (N.D. Cal. 2006) (emphasis added) (alteration in original). Defendant-Intervenors cannot draw a bright line, as they attempt to here, that a document is under no circumstances discoverable unless it was shared with the public at large.

3

09-CV-2292 VRW  PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S JOINT OPPOSITION TO DEFENDANT-INTERVENORS' MOTION FOR A PROTECTIVE ORDER

Gibson, Dunn & Crutcher LLP

Furthermore, Defendant-Intervenors focus myopically on a single issue—voter intent—while ignoring all other issues to which Plaintiffs' discovery requests may be relevant and other purposes for which documents produced may be admissible. Doc #187 at 10. Specifically, and as explained below, Plaintiffs' discovery requests are reasonably calculated to lead to the discovery of (1) admissible evidence concerning the rationality and strength of Defendant-Intervenors' purported state interests and whether voters could reasonably accept them as a basis for supporting Prop. 8, and (2) admissible evidence related to the factual disputes the Court identified as matters to be resolved at trial in its June 30, 2009 Order. As such, the discovery Plaintiffs seek is reasonably calculated to lead to the discovery of admissible evidence and is thus discoverable.[1]

### 2. Plaintiffs' Discovery Is Reasonably Calculated to Lead to the Discovery of Party Admissions and Impeachment Evidence Regarding Defendants' Positions in this Case and the Factual Disputes Identified by the Court

Defendant-Intervenors advance just one argument about the relevance of the disputed discovery: that it is irrelevant because the requests seek to "ascertain the purpose of an initiative." Doc #187 at 10. While Plaintiffs believe that much of their discovery is in fact relevant to this issue, Plaintiffs' discovery is *not*, and does not have to be, limited just to the discovery of the motivations for supporting Prop. 8; rather, the discovery propounded is also calculated to lead to the discovery of party admissions and impeachment evidence regarding the purported state interests that Defendant-Intervenors' advance and the factual disputes identified in the Court's June 30, 2009 Order. Certainly statements made by Defendant-Intervenors that are at odds with the positions they are taking in this action would not just be discoverable, but would be *admissible* at trial as a party admission, or could

---

[1] The discovery does not intrude on the "subjective, unexpressed motivations" of Prop. 8's proponents. Doc #187 at 8. Defendant-Intervenors refuse to produce communications they made to tens of thousands of voters, on the theory that those communications were targeted and not made available to every voter in the State. They refuse to produce communications, even when made outside of their own organization, that would demonstrate their conclusions about what voters might accept as purposes and rationales for Prop. 8. They refuse to produce information that would show the size and strength of forces mustered against gay and lesbian individuals, even as they assert that gay and lesbian individuals are a politically powerful group. Defendant-Intervenors' evaluation of Prop. 8 and communications with others about it are relevant to understanding the "immediate objective" and "ultimate effect" of Prop. 8, Doc #76 at 9, necessary to prepare for depositions and cross-examination at trial, and reasonably calculated to lead to the discovery of other relevant information.

4

09-CV-2292 VRW  PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S JOINT OPPOSITION TO DEFENDANT-INTERVENORS' MOTION FOR A PROTECTIVE ORDER

be used as impeachment evidence. *See*, *e.g.*, Fed. R. Evid. 801(d). Indeed, given the Defendant-Intervenors' role as the official proponents of Prop. 8, their voluntary and willful participation in the case, and their role as the defenders of Prop. 8 in this case, their prior statements or admissions regarding the purported state interests they now advance and the factual underpinnings of those asserted interests are relevant as to whether these interests are indeed legitimate. Simply put, Plaintiffs have the right to discover these prior statements or admissions to properly challenge Defendant-Intervenors' current characterizations of the positions they espouse in this case.

### 3. Plaintiffs' Discovery Is Reasonably Calculated to Lead to the Discovery of Admissible Evidence Concerning the "Motivations for Supporting Prop. 8"

Similarly, whether a defendant acted with discriminatory intent or purpose is a relevant consideration in an equal protection challenge. *See Washington v. Davis,* 426 U.S. 229, 239-40 (1976); *Washington v. Seattle Sch. Dist. No. 1,* 458 U.S. 457, 484-85 (1982) ("when facially neutral legislation is subjected to equal protection attack, an inquiry into intent is necessary to determine whether the legislation in some sense was designed to accord disparate treatment on the basis of racial considerations."); *see also Pers. Adm'r of Mass. v. Feeney,* 442 U.S. 256, 260 (1979); *Dep't of Agric. v. Moreno,* 413 U.S. 528, 534-35 (1973). The Court has already recognized the relevance of this evidence, identifying the "motivations for supporting Prop. 8" as one of the fifteen factual disputes that likely need to be resolved at trial. Doc #76 at 9.

More specifically, where intent is relevant, "the Court may look to the nature of the initiative campaign to determine the intent of the drafters and voters in enacting it." *City of Los Angeles v. County of Kern,* 462 F. Supp. 2d 1105, 1114 (C.D. Cal. 2006) (citing *Seattle Sch. Dist. No. 1,* 458 U.S. at 471); *see also S.D. Farm Bureau, Inc. v. Hazeltine,* 340 F.3d 583, 593-96 (8th Cir. 2003) ("Plaintiffs have the burden of proving discriminatory purpose and can look to several sources to meet that burden."). In *South Dakota Farm Bureau,* the Court considered whether the drafters of a referendum purposely discriminated against interstate commerce. 340 F.3d at 593. The Court observed that "[t]he most obvious [source of evidence] would be direct evidence that the drafters of Amendment E or the South Dakota populace that voted for Amendment E intended to discriminate against out-of-state businesses." *Id*. Accordingly, the Court reviewed both public and nonpublic

5

Gibson, Dunn & Crutcher LLP

09-CV-2292 VRW  PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S JOINT OPPOSITION TO DEFENDANT-INTERVENORS' MOTION FOR A PROTECTIVE ORDER

materials, including notes from the amendment drafting meetings and testimony by individuals involved with the drafting of the proposed amendment, focusing on the "desire" of the drafters to block out of state entities from farming in South Dakota. *Id.* The court noted that it would be impossible to ascertain the intention of all of the voters; however, the Court did "have evidence of the intent of individuals who drafted the amendment that went before the voters. It is clear that those individuals had a discriminatory purpose." *Id.* at 596. Thus, on the strength of the drafters' public and nonpublic statements, the court held that the referendum was unconstitutional as it was motivated by a discriminatory purpose. *Id.* at 596-98.

Defendant-Intervenors' reliance on *SASSO v. Union City,* 424 F.2d 291 (9th Cir. 1970) is unavailing.[2] *SASSO* is not on point, both because it did not concern a discovery dispute, and also because Plaintiffs are not seeking the "private attitudes of voters." That decision sheds no light on whether the beliefs of Prop. 8's official proponents—*voluntary parties* to this litigation who willfully sought out party status and likely will present testimony at trial—are relevant to a determination of discriminatory purpose. Furthermore, *SASSO* was decided in 1970, six years before the Supreme Court decided *Washington v. Davis,* 426 U.S. 229 (1976), which held that a neutral law does not violate the Equal Protection Clause solely because it results in a racially disproportionate impact; instead, the disproportionate impact must be traced to a purpose to discriminate on the basis of a protected class. In *Washington,* the Supreme Court held that whether there was a discriminatory intent in passing a law was a relevant inquiry. 426 U.S. at 239-40. Accordingly, discovery into Defendant-Intervenors' "motivations for supporting Prop. 8" is relevant and appropriate.

---

[2] Defendant-Intervenors' reliance on other case law cited in its motion is equally misplaced. *Jones v. Bates,* 127 F.3d 839 (9th Cir. 1997) was reversed en banc. *Bates v. Jones,* 131 F.3d 843 (9th Cir. 1997)(en banc). The en banc panel determined that the proper inquiry was voter notice, not voter intent and did not address the type of discovery at issue in this action. *See id.* at 846. *Crawford v. Board of Education,* 458 U.S. 527 (1982) is irrelevant to this inquiry as it concerned a legislatively created referendum—not the type of discovery at issue in this action. Finally, Defendant-Intervenors' reliance on California law is unavailing given that federal courts "may look to the nature of the initiative campaign to determine the [discriminatory] intent of the drafters and voters in enacting it." *City of Los Angeles,* 462 F. Supp. 2d at 1114.

6

09-CV-2292 VRW  PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S JOINT OPPOSITION TO DEFENDANT-INTERVENORS' MOTION FOR A PROTECTIVE ORDER

Gibson, Dunn & Crutcher LLP

### 4. Defendant-Intervenors' Position Is Internally Inconsistent and Designed to Prevent Discovery Going to Issues Relevant to this Case

Defendant-Intervenors maintain that the only documents they will produce are communications that were "available to the public at large." Doc #187-14 at 3. This "compromise position," Doc #187 at 9 n.2, is at odds with the reality of their Yes on 8 campaign, which relied heavily on targeted messaging, which by definition constitutes messages *not* "available to the public at large." *See* F. Schubert & J. Flint, *Passing Prop 8*; *Smart Timing and Messaging Convinced California Voters to Support Traditional Marriage*, Politics (Feb. 2009), attached hereto as Exh. B. Accordingly, the documents that will be produced under Defendant-Intervenors' "compromise position" will not accurately reflect the "motivations for supporting Prop. 8" or provide Plaintiffs with a complete picture of relevant evidence regarding their purported state interests and the factual disputes identified by the Court. Such a limitation would allow Defendant-Intervenors to paint an incomplete picture of the information they deliberately communicated to voters and the positions they took on issues that are now directly relevant to this lawsuit. The Court should not allow the Defendant-Intervenors the opportunity to game their discovery obligations.

Ironically, Defendant-Intervenors' argument that Plaintiffs' discovery is irrelevant is undermined by the discovery *they* propounded on third-parties, which seeks the same information that Defendant-Intervenors now argue is irrelevant and privileged.[3] Doc #182 at 4-48. While Defendant-Intervenors are asserting the complete irrelevance of any documents that they possess as a party to this litigation, they simultaneously are aggressively pursuing documentary evidence from other parties and non-parties alike.

///

///

///

---

[3] Since Prop. 8 was passed and became the law of California, information obtained from its proponents is obviously relevant to the issues in this litigation in a way that information sought from those who unsuccessfully opposed it is not.

7

Gibson, Dunn & Crutcher LLP

### B. Defendant-Intervenors' Claim to a Sweeping First Amendment Privilege Against Party Discovery Is Makeweight

Defendant-Intervenors contend that even if the documents Plaintiffs seek are discoverable, ***all of them*** nevertheless are subject to a First Amendment privilege against disclosure. That sweeping claim of privilege fails for at least three reasons.

1. Although Defendant-Intervenors' communications concerning the Prop. 8 referendum campaign are core political speech and undeniably entitled to broad First Amendment protection, Defendant-Intervenors should not now be heard to complain that Plaintiffs are seeking discovery of the communications most relevant to Plaintiffs' claims for relief. Rather than participate as *amici curiae*, Defendant-Intervenors elected to intervene in this action as parties, and they cannot now evade the responsibilities that attach to the party status they voluntarily assumed, including the obligation to comply with reasonable requests for discovery.

Defendant-Intervenors cite several cases upholding a First Amendment privilege against compelled disclosure of confidential membership information, but in ***none*** of those cases was the entity resisting disclosure a voluntary participant in underlying litigation. In *NAACP v. Alabama*, 357 U.S. 449 (1958), the NAACP was the respondent to an equity suit brought by the Attorney General of Alabama. *Id.* at 452-53. *Bates v. City of Little Rock*, 361 U.S. 516 (1960) involved generally-applicable ordinances requiring organizations within the municipalities to provide lists of their members. *Id.* at 517-18. *Gibson v. Florida Legislative Investigation Committee*, 372 U.S. 539 (1963) concerned a legislative committee's subpoena to which the NAACP was the respondent. *Id.* at 540. Likewise, *Dole v. Service Employees Union*, 950 F.2d 1456 (9th Cir. 1991) and *Brock v. Local* 375, 860 F.2d 346 (9th Cir. 1988), involved subpoenas issued by the Department of Labor to certain labor unions. *See Dole*, 950 F.2d at 1458; *Brock*, 860 F.2d at 348.[4]

---

[4] The district court rulings cited by Defendant-Intervenors are no different. *See In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-1840-KHV, 2009 U.S. Dist. LEXIS 66005 (D. Kan. May 28, 2009) (defendants resisting discovery of communications with trade associations); *Anderson v. Hale*, No. 00-C-2021, 2001 WL 503045 (N.D. Ill. May 10, 2001) (defendant resisting subpoena of third-party electronic records); *Adolph Coors Co. v. Wallace*, 570 F. Supp. 202 (N.D. Cal. 1983) (defendant LGBT advocacy group resisting discovery from plaintiffs). Though, in *Coors*, the district court seemed to frown upon the notion that one could "impl[y] a waiver of . . . constitutional safeguards by reason of the party's decision

[Footnote continued on next page]

8

Gibson, Dunn & Crutcher LLP

09-CV-2292 VRW  PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S JOINT OPPOSITION TO DEFENDANT-INTERVENORS' MOTION FOR A PROTECTIVE ORDER

1    Unlike the NAACP and the unions in *Dole* and *Brock*, Defendant-Intervenors chose to be
2 parties in this litigation.  And their resistance to Plaintiffs' reasonable discovery is particularly
3 inappropriate given that, in their recent motion for summary judgment, Defendant-Intervenors have
4 squarely placed at issue the subjective intentions of Prop. 8's supporters by denying that Prop. 8 was
5 motivated by discriminatory animus toward gay and lesbian individuals.  *See* Doc #172-1 at 107 ("It
6 is simply implausible that in acting with surgical precision to preserve and restore the venerable
7 definition of marriage, the people of California somehow transformed that institution into an
8 instrument of bigotry against gays and lesbians."); *id.* at 111 ("Plaintiffs' claim that animus against
9 gays and lesbians is the only possible explanation for the enactment of Proposition 8 is false").
10 Similarly, in their case management statement, Defendant-Intervenors announced that they would not
11 be able to reach stipulations with Plaintiffs regarding any of the factual underpinnings of the
12 governmental interests on which they now rely.  *See*, *e.g.*, Doc #139 at 23 (refusing to take a position
13 on "[w]hether the exclusion of same-sex couples from marriage leads to increased stability in
14 opposite sex marriage or alternatively whether permitting same-sex couples to marry destabilizes
15 opposite sex marriage").  It is therefore Defendant-Intervenors' own litigating positions that
16 necessitate the discovery sought by Plaintiffs.

17    2.  Defendant-Intervenors have failed to demonstrate how the discovery Plaintiffs seek will
18 diminish Defendant-Intervenors' associational freedoms.  Quite unlike nearly all of the cases
19 Defendant-Intervenors cite, Plaintiffs' discovery requests do not seek ProtectMarriage.com's
20 membership list, or a list of donors to the "Yes on 8" cause—even though the latter is available for
21 public inspection under California law.  California Sec'y of State, Campaign Finance: Proposition
22 008, http://cal-access.sos.ca.gov/Campaign/Measures/Detail.aspx?id=1302602&session=2007 (last

---

[Footnote continued from previous page]
to instigate litigation," the district court itself recognized that "given the facts at bar" the issue was not implicated there.  570 F. Supp. at 209.  Defendant-Intervenors do cite two cases where the party initiating the litigation thereafter resisted discovery, *see Grandbouche v. Clancy*, 825 F.2d 1463 (10th Cir. 1987); *Christ Covenant Church v. Town of Sw. Ranches*, No. 07-60516, 2008 U.S. Dist. LEXIS 49483 (S.D. Fla. June 29, 2008), but in each case the court found that the First Amendment privilege could not be sustained where the plaintiff "ha[d] placed certain information into issue."  *Grandbouche*, 825 F.2d at 1467; *see also Christ Covenant Church*, 2009 U.S. Dist LEXIS 49483, at *28-*32.

Gibson, Dunn & Crutcher LLP

9
09-CV-2292 VRW  PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S JOINT OPPOSITION TO DEFENDANT-INTERVENORS' MOTION FOR A PROTECTIVE ORDER

1  visited Sept. 18, 2009). Plaintiffs rather seek documents relating to the issues the Court has identified
2  as central to this litigation and Defendant-Intervenors' factual contentions concerning the same,
3  including "the nature of the initiative campaign to determine the intent of the drafters and voters in
4  enacting it." *City of Los Angeles*, 462 F. Supp. 2d at 1114.

5  Courts in this Circuit have rejected claims of First Amendment privilege where a litigant
6  seeks to apply it "not to specific membership documents, but instead to prevent any discovery of her
7  files." *Wilkinson v. FBI*, 111 F.R.D. 432, 436 (C.D. Cal. 1986); *see also id.* ("While it is clear that
8  the privilege may be asserted with respect to specific requests for documents raising these core
9  associational concerns, it is equally clear that the privilege is not available to circumvent general
10 discovery."). Yet, relying principally on an unpublished district court decision from Kansas,
11 Defendant-Intervenors argue that ***all*** of their political advocacy communications except those
12 disseminated to the "electorate at large" are privileged from disclosure. Doc #187 at 18 (citing *In re*
13 *Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-1840-KHV, 2009 U.S. Dist. LEXIS
14 66005 (D. Kan. May 28, 2009)).

15 Above and beyond the fact that Defendant-Intervenors chose to participate in the lawsuit and
16 chose to place their political communications in issue, there at least two features that distinguish this
17 case from *In re Motor Fuel Temperature Sales Practices Litigation*.

18 First, Defendant-Intervenors' claim of privilege is not remotely limited to "confidential
19 communications." *Motor Fuel Litigation*, 2009 U.S. Dist. Lexis 66005, at *45. To the contrary,
20 Defendant-Intervenors' claim of privilege sweeps in all documents responsive to Plaintiffs' request
21 except those that were disclosed to the "electorate at large." Doc #187 at 9 n.2; *see also* Doc #187-7
22 at 6 (Moss Decl.). On Defendant-Intervenors' view, all communications that were targeted in any
23 manner or fashion to particular recipients are privileged—even if the communications were received
24 by tens of thousands (or more) California voters. *See* Exh. A (McGill Decl.) at ¶ 3. Thus,
25 Defendant-Intervenors' claim of privilege sweeps in every article of mail they ever sent—postal or
26 electronic.

27 At the other end of the spectrum, Defendant-Intervenors' claim of privilege also sweeps in all
28 of their communications with their paid political consultants notwithstanding the fact that those

10

Gibson, Dunn & Crutcher LLP

09-CV-2292 VRW  PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S JOINT OPPOSITION TO
DEFENDANT-INTERVENORS' MOTION FOR A PROTECTIVE ORDER

consultants have published articles describing their strategy, Exh. B, and indeed, have sought accolades from trade associations for that strategy. *See* "*The 18th Annual Pollie Awards & Conference,*" attached hereto as Exh. C (identifying Schubert Flint Public Affairs' work on the "Yes on 8" campaign as the recipient of multiple 2009 Pollie Awards).

When communications and strategies are widely disseminated and discussed (indeed, trumpeted) in public—as were many of the documents Defendant-Intervenors now claim are privileged from disclosure—it is difficult to envision how disclosure of those documents to Plaintiffs could chill Defendant-Intervenors' speech.

And, in fact, Defendant-Intervenors have made no credible showing of how the discovery *Plaintiffs* have requested *in this case* is likely to lead to reprisals against Defendant-Intervenors or their supporters. This is the second feature that distinguishes this case from *In re Motor Fuel Temperature Sales Practices Litigation*.

Defendant-Intervenors have produced declarations that describe "many instances of harassment and retaliation against Protect Marriage's donors and volunteers that occurred after their affiliation with Protect Marriage became public." Doc #187-2 at 5 (Prentice Decl.). But the inescapable fact is that Defendant-Intervenors' affiliation with Protect Marriage has been widely known to the public for more than a year, as has that of their political consultant, Frank Schubert. There is no additional chilling effect on their speech that will accrue, at this late date, from their disclosure of the documents Plaintiffs seek. The public is already aware of the Defendant-Intervenors' "deeply held moral and political views," Doc #187-12 at 4 (Tam Decl.), and Defendant-Intervenors have suggested no reason why compliance with discovery is likely to generate a new round of reprisals. Indeed, even Defendant-Intervenors' own out-of-circuit authorities recognize that "where a Plaintiff does not ask for a membership list, nor ... seek to identify a single anonymous ... member" but rather seek only "to discover what the publicly identified ... members know about [the subject of Plaintiff's claims] through their personal information and communications with other people," it "cannot be said that Plaintiff's subpoenas constitute an arguable threat to associational rights by creating an apparent chilling effect." *Anderson v. Hale,* No. 00-C-2021, 2001 WL 503045, at *6. (N.D. Ill. May 10, 2001); *see also In re Motor Fuel Temperature Sales Practices Litig.*, 2009

U.S. Dist. LEXIS 66005, at *44 ("To the extent, however, that defendants seek protection of associational membership lists or financial contributor lists that have been publicly disclosed, ... A chilling effect caused by additional disclosure cannot be presumed.").

Even still, to assuage any concerns about the threat of reprisals, in their last meet-and-confer on September 10, Plaintiffs offered to entertain ***any*** reasonable confidentiality agreement or procedure for redaction or sealing if Defendant-Intervenors had a good-faith belief that particular documents raised a threat of reprisal to persons whose affiliation with Protect Marriage is not already widely known to the public. Exh. A at ¶ 3. Defendant-Intervenors, however, refused to discuss any potential procedures for designation and treatment of confidential documents. This suggests that the vow of Defendant-Intervenors and their agents to "drastically alter how [they] communicate in the future," if they are made to comply with ordinary discovery requests, Doc #187-10 at 4 (Jansson Decl.), is motivated less by a fear of reprisals than an unwillingness to fulfill the obligations of a party to litigation in federal court.

3. Even under the balancing test that Defendant-Intervenors argue is applicable, Defendant-Intervenors' claim of privilege must fail. The Court has advised the parties that it wishes to conduct a trial on various factual questions that undergird the constitutional questions raised by Plaintiffs' claims for relief. As detailed above, Plaintiffs' requests for discovery are plainly relevant to those inquiries and, absent discovery, Plaintiffs have no means available to obtain the documents they seek from Defendant-Intervenors. And to the extent that Defendant-Intervenors have a well-founded, good-faith belief that particular documents could generate reprisals if disclosed to the public, Plaintiffs are willing to negotiate any reasonable confidentiality measures to ensure that the First Amendment rights of Defendant-Intervenors, their agents, and their supporters, are not chilled.

///

///

///

12

09-CV-2292 VRW  PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S JOINT OPPOSITION TO DEFENDANT-INTERVENORS' MOTION FOR A PROTECTIVE ORDER

Gibson, Dunn & Crutcher LLP

## III.  CONCLUSION

For the foregoing reasons, Plaintiffs and Plaintiff-Intervenor respectfully urge this Court to deny Defendant-Intervenors' motion for protective order and require that they produce all documents responsive to Plaintiffs' First Set of Requests for Production on or before September 28, 2009.

DATED:  September 18, 2009

                              GIBSON, DUNN & CRUTCHER LLP

                              By:            /s/
                                          Theodore B. Olson

                              and

                              BOIES, SCHILLER & FLEXNER LLP

                              David Boies

                              Attorneys for Plaintiffs KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO


                              DENNIS J. HERRERA
                              City Attorney
                              THERESE M. STEWART
                              Chief Deputy City Attorney
                              DANNY CHOU
                              Chief of Complex and Special Litigation
                              RONALD P. FLYNN
                              VINCE CHHABRIA
                              ERIN BERNSTEIN
                              CHRISTINE VAN AKEN
                              MOLLIE M. LEE
                              Deputy City Attorneys


                              By:            /s/
                                          Therese M. Stewart

                              Attorneys for Plaintiff-Intervenor
                              CITY AND COUNTY OF SAN FRANCISCO

Gibson, Dunn & Crutcher LLP

13

09-CV-2292 VRW  PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S JOINT OPPOSITION TO DEFENDANT-INTERVENORS' MOTION FOR A PROTECTIVE ORDER

**ATTESTATION PURSUANT TO GENERAL ORDER NO. 45**

Pursuant to General Order No. 45 of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.

> By: /s/ Theodore B. Olson
> Theodore B. Olson

Gibson, Dunn & Crutcher LLP

14

09-CV-2292 VRW  PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S JOINT OPPOSITION TO DEFENDANT-INTERVENORS' MOTION FOR A PROTECTIVE ORDER