COOPER AND KIRK, PLLC
Charles J. Cooper (DC Bar No. 248070)*
*ccooper@cooperkirk.com*
David H. Thompson (DC Bar No. 450503)*
*dthompson@cooperkirk.com*
Howard C. Nielson, Jr. (DC Bar No. 473018)*
*hnielson@cooperkirk.com*
Nicole J. Moss
*nmoss@cooperkirk.com* (DC Bar No. 472424)
Jesse Panuccio
*jpanuccio@cooperkirk.com* (DC Bar No. 981634)
Peter A. Patterson (Ohio Bar No. 0080840)*
*ppatterson@cooperkirk.com*
1523 New Hampshire Ave. N.W., Washington, D.C. 20036
Telephone: (202) 220-9600, Facsimile: (202) 220-9601

LAW OFFICES OF ANDREW P. PUGNO
Andrew P. Pugno (CA Bar No. 206587)
*andrew@pugnolaw.com*
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 608-3065, Facsimile: (916) 608-3066

ALLIANCE DEFENSE FUND
Brian W. Raum (NY Bar No. 2856102)*
*braum@telladf.org*
James A. Campbell (OH Bar No. 0081501)*
*jcampbell@telladf.org*
15100 North 90th Street, Scottsdale, Arizona 85260
Telephone: (480) 444-0020, Facsimile: (480) 444-0028

ATTORNEYS FOR DEFENDANT-INTERVENORS DENNIS HOLLINGSWORTH, GAIL J. KNIGHT, MARTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM, MARK A. JANSSON, and PROTECTMARRIAGE.COM – YES ON 8, A PROJECT OF CALIFORNIA RENEWAL

* Admitted *pro hac vice*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of | CASE NO. 09-CV-2292 VRW<br><br>**DEFENDANT-INTERVENORS' REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**<br><br>Date: September 25, 2009<br>Time: 10:00 a.m.<br>Judge: Chief Judge Vaughn R. Walker<br>Location: Courtroom 6, 17th Floor |

the California Department of Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; and DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles,

          Defendants,

and

PROPOSITION 8 OFFICIAL PROPONENTS DENNIS HOLLINGSWORTH, GAIL J. KNIGHT, MARTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM, and MARK A. JANSSON; and PROTECTMARRIAGE.COM – YES ON 8, A PROJECT OF CALIFORNIA RENEWAL,

          Defendant-Intervenors.

<u>Additional Counsel for Defendant-Intervenors</u>

ALLIANCE DEFENSE FUND
Timothy Chandler (CA Bar No. 234325)
*tchandler@telladf.org*
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 932-2850, Facsimile: (916) 932-2851

Jordan W. Lorence (DC Bar No. 385022)*
*jlorence@telladf.org*
Austin R. Nimocks (TX Bar No. 24002695)*
*animocks@telladf.org*
801 G Street NW, Suite 509, Washington, D.C. 20001
Telephone: (202) 393-8690, Facsimile: (202) 347-3622

* Admitted *pro hac vice*

---

DEFENDANT-INTERVENORS' REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER
CASE NO. 09-CV-2292 VRW

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

I.   THE DISCOVERY AT ISSUE ................................................................................. 1

II.  RELEVANCE ............................................................................................................. 1

III. FIRST AMENDMENT PRIVILEGE ........................................................................ 6

CONCLUSION ........................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases** **Page**

*37712, Inc. v. Ohio Dept. of Liquor Control*, 113 F.3d 614 (6th Cir. 1997) ........................................ 5

*Adolph Coors Co. v. Wallace*, 570 F. Supp. 202 (N.D. Cal. 1983) ....................................................... 7

*American Constitutional Law Foundation, Inc. v. Meyer*, 120 F.3d 1092 (10th Cir. 1997), *aff'd*
  *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182 (1999) ................................. 9

*Anderson v. Hale*, 2001 U.S. Dist. LEXIS 6127 (N.D. Ill. 2001) .......................................................... 9

*Arthur v. Toledo*, 782 F.2d 565 (6th Cir. 1986) ............................................................................. 2, 3, 5

*Australia/Eastern USA Shipping Conference v. United States*, 537 F. Supp. 807 (D.D.C. 1987) ..... 10

*Barcenas v. Ford Motor Co.*, 2004 U.S. Dist. LEXIS 25279 (N.D. Cal. 2004) ................................... 2

*Bates v. Jones*, 131 F.3d 843 (9th Cir. 1997) ........................................................................................ 5

*Board of County Commissioners v. Umbehr*, 518 U.S. 668 (1996) ...................................................... 7

*Beinin v. Center for the Study of Popular Culture*, 2007 U.S. Dist. LEXIS 47546
  (N.D. Cal. 2007) ............................................................................................................................... 7

*Black Panthers Party v. Smith*, 661 F.2d 1243 (D.C. Cir. 1981),
  *granted, vacated as moot, and remanded by* 458 U.S. 1118 (1982) ............................................... 7

*Buckley v. American Constitutional Law Foundation*, 525 U.S. 182 (1999) ....................................... 9

*City of Los Angeles v. County of Kern*, 462 F. Supp.2d 1105 (C.D. Cal. 2006) .................................. 4

*Christ Covenant Church v. Southwest Ranches*, 2008 U.S. Dist. LEXIS 49483 (S.D. Fla. 2008) ..... 7

*Dawson v. Delaware*, 503 U.S. 159 (1992) ........................................................................................ 10

*Equality Found. v. Cincinnati*, 128 F.3d 289 (6th Cir. 1997) ............................................................... 5

*FCC v. Beach Communications, Inc.*, 508 U.S. 307 (1993) .................................................................. 2

*Grandbouche v. Clancy,* 825 F.2d 1463 (10th Cir. 1987) ..................................................................... 7

*Heartland Surgical Specialty Hosp. v. Mid-west Div., Inc.*, 2007 U.S. Dist. LEXIS 19475 (D.
  Kan. 2007) ........................................................................................................................................ 9

*International Action Center v. United States*, 207 F.R.D. 1 (D.D.C. 2002) .................................... 7, 8

*International Society for Krishna Consciousness, Inc. v. Lee*, 1985 U.S. Dist. LEXIS 22188
  (S.D.N.Y. 1985) ................................................................................................................................ 7

*McIntyre v. Ohio Elections Commission*, 514 U.S. 334 (1995) ........................................................... 2

*In re: Motor Fuel Temperature Sales Practices Litigation*, 2009 U.S. Dist. LEXIS 66005 (D. Kan. 2009) .................................................................................................................................. 8, 10

*Paul v. HCI Direct, Inc.*, 2003 U.S. Dist. LEXIS 12170 (C.D. Cal. 2003) .......................................... 6

*SASSO v. Union City*, 424 F.2d 291 (9th Cir. 1970) ........................................................................ 2

*Seattle School District No. 1 v. Washington*, 473 F. Supp. 996 (W.D. Wash. 1979) ......................... 2

*Seattle School District No. 1 v. Washington*, 633 F.2d 1338 (1980) ................................................. 5

*South Dakota Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583 (8th Cir. 2003) ..................................... 6

*Strom v. United States*, 583 F. Supp. 2d 1264 (W.D. Wash. 2008) ................................................... 3

*U.S. R.R. Retirement Board v. Fritz*, 449 U.S. 166 (1980) ................................................................ 2

*Washington v. Davis*, 426 U.S. 229 (1976) ....................................................................................... 3

*Washington v. Seattle School District No. 1*, 458 U.S. 457 (1982) ............................................... 3, 5

*Watchtower v. Bible & Tract Society of New York, Inc. v. Stratton*, 536 U.S. 150 (2002) ............ 1, 9

*Wilkinson v. FBI*, 111 F.R.D. 432 (C.D. Cal. 1986) ......................................................................... 8

**Other**

Fed. R. Evid. 402 ................................................................................................................................ 3

## I. THE DISCOVERY AT ISSUE

Ignoring the actual content of their own document requests, Plaintiffs attempt to shift the focus of what is at issue in this motion by claiming that Defendant-Intervenors (hereinafter, also "Proponents") seek a protective order shielding "documents distributed to millions of potential voters … if the list of recipients was targeted, for example, to all registered Republicans…." Doc # 191 at 6. *See also id.* at 15. In fact, we have already produced such documents (*e.g.*, mass mailings, mass emails, text of robo calls) and continue our efforts to gather and produce any such public material that may remain in Proponents' custody and control. This motion is really about Plaintiffs' demands for disclosure of Proponents' *nonpublic* and/or anonymous communications,[1] including (but not limited to) the Proponents' communications targeted to (and/or received from) (i) persons who donated money to or otherwise volunteered to assist the Prop. 8 campaign; (ii) agents and contractors of the campaign, including political consultants; and even (iii) family, friends, and colleagues. Despite Plaintiffs' assurances, Plaintiffs have not cabined their requests to public or even widely-distributed information. To the contrary, their requests reach virtually *all* material in any way related to Prop. 8 in the possession of any Defendant-Intervenor. This includes drafts of documents that were never intended to, and never did, see public light. It also includes documents created *after* the Prop. 8 election. Plaintiffs have also noticed similarly sweeping document subpoenas on two of Protect Marriage's campaign consultants. *See* Exs. A, B.

## II. RELEVANCE

1. Plaintiffs appear to contend that because the Federal Rules grant wide latitude in discovery, they prescribe no limits at all. But the Rules are not so unbounded: "'some threshold showing of

---

[1] Anonymity in political speech, even public speech, is protected from compelled disclosure by the First Amendment. *See Watchtower v. Bible & Tract Soc'y of N.Y., Inc. v. Stratton*, 536 U.S. 150, 167 (2002) ("The fact that circulators revealed their physical identities d[oes] not foreclose our consideration of the circulators' interest in maintaining their anonymity."). Similarly, the First Amendment protects even the public, but anonymous, speech of a Proponent of Prop. 8.

1

relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.'" *Barcenas v. Ford Motor Co.*, 2004 U.S. Dist. LEXIS 25279, at *6 (N.D. Cal. 2004) (quoting *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)).

2. In justifying discovery into the Prop. 8 campaign, Plaintiffs previously asserted their need to gather evidence about the intent of the electorate. *See* Docs # 134 at 9, # 157 at 12. That was the bait; now comes the switch. Plaintiffs now claim that the main reason they require discovery into virtually every communication made by anyone included in or associated with Protect Marriage is a need to gather "admissions and impeachment evidence regarding the purported state interests that Defendant-Intervenors' advance and the factual disputes identified in the Court's June 30, 2009 Order." Doc # 191 at 8. This shift in focus does not save Plaintiffs' requests.

Plaintiffs seek "communications … that would demonstrate [Proponents'] conclusions about what voters might accept as purposes and rationales for Prop. 8." Doc # 191 at 8 n.1. But such communications simply do not matter here, for Prop. 8 must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). This is a wholly objective inquiry, and "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the [electorate]." *Id.* at 315; *see also U.S. R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980) ("this Court has never insisted that a legislative body articulate its reasons for enacting a statute").[2] Accordingly, whether a particular purpose or rationale for Prop. 8 was actually

---

[2] This objective test makes sense, of course, because the question of whether the electorate actually acted on a particular rationale cannot be answered, or even informed, by resort to the information at issue here. *See McIntyre v. Oh. Elec. Comm'n*, 514 U.S. 334, 343 (1995) ("the Court[] [has] … embraced a respected tradition of anonymity in the advocacy of political issues," which is "best exemplified by the secret ballot"); *SASSO v. Union City*, 424 F.2d 291, 295 (9th Cir. 1970); *Arthur v. Toledo*, 782 F.2d 565, 573-74 (6th Cir. 1986); *Seattle School Dist. No. 1 v. Washington*, 473 F.

presented to, or considered by, the electorate is "entirely irrelevant" to this case. And whether the Defendant-Intervenors, or any particular voter, subjectively knew of, believed in, announced, or denounced a particular rational basis (in public or private) is likewise irrelevant.

Thus, if Prop. 8 serves any *conceivable* legitimate governmental purpose, that purpose obviously cannot be negated by any "admission of a party opponent" that Plaintiffs might claim to find in the Proponents' nonpublic communications.[3] Indeed, Plaintiffs surely are not serious in suggesting that Proponents' communications, whether public or private, could somehow constitute an admission that is binding on the electorate and the State of California. For the same reason, it simply matters not whether the Proponents' nonpublic communications support or *contradict* any of the particular legitimate state interests that Prop. 8 conceivably serves.

Lastly, even if the information at issue here were relevant for these purposes, it would still be privileged under the First Amendment. Parties regularly make statements (such as those to their lawyers) that would constitute admissions of a party opponent or impeachment evidence—yet such statements are neither discoverable nor admissible.

3. Citing *Washington v. Davis*, 426 U.S. 229 (1976), and *Washington v. Seattle Sch. Dist. No. 1*, 458 U.S. 457 (1982), Plaintiffs contend that "whether a defendant acted with discriminatory intent or purpose is a relevant consideration in an equal protection challenge." Doc # 191 at 9. These cases, however, hold that the lawmakers' intent is relevant *only* for the purpose of determining whether a facially neutral law was nevertheless intended to discriminate on the basis of race. In this

---

Supp. 996, 1014 (W.D. Wash. 1979) ("as to the subjective intent of the voters … the secret ballot raises an impenetrable barrier"). Moreover, even if such material could be compelled from Proponents without infringing on the First Amendment, it would not suffice to show the entire electorate's motives. As the Sixth Circuit has explained, even if some voters have an improper motive, that motive cannot be ascribed to the electorate at large and thus cannot serve to invalidate an act of the electorate that "has an otherwise valid reason for its decision." *Arthur*, 782 F.2d at 574.

[3] *See* FED. R. EVID. 402; *Strom v. United States*, 583 F. Supp. 2d 1264, 1269 n.3 (W.D. Wash. 2008) (striking evidence because although it "may … be considered an admission of a party opponent … such evidence [wa]s not relevant").

case, however, Proponents are not disputing that Prop. 8 can be viewed as creating a classification based on sexual orientation for purposes of the Equal Protection Clause. *See* Doc # 172-1 at 55. Further, as we have demonstrated, controlling Ninth Circuit precedents (as well as persuasive precedents from every other Circuit to address the issue) clearly hold that sexual orientation, unlike race, is not a suspect classification. *See id.* at 56. Accordingly, unlike the question at issue in *Davis* and *Seattle*—which determined whether the challenged measures were subject to strict scrutiny or only rational basis review—the question whether Prop. 8 classifies on the basis of sexual orientation has no effect on the type of scrutiny to which Prop. 8 is subject, and is thus irrelevant for purposes of the Equal Protection Clause. For all of these reasons, *Davis* and *Seattle* have no application here.

Plaintiffs, quoting *City of Los Angeles v. County of Kern*, 462 F. Supp. 2d 1105, 1114 (C.D. Cal. 2006), *vacated* 2009 U.S. App. LEXIS 20078 (9th Cir. 2009), repeatedly assert that "the Court may look to the nature of the initiative campaign to determine the intent of the drafters and voters in enacting it." Doc 191 at 9, 10, 14. That case involved equal protection and dormant commerce clause challenges to a county referendum limiting importation of "sludge" from Los Angeles. The Court rejected the equal protection claim, noting: "[T]he fact that [the referendum] apparently was motivated in part by animus [against Los Angeles] . . . is not fatal for equal protection purposes, so long as that animus was accompanied by other plausible, legitimate legislative goals." *Id.* at 1111. Looking solely to the text of the referendum itself, the Court concluded that "[o]n this record, such legitimate goals exist." *Id.* Similarly, in determining that the referendum was intended to discriminate against interstate commerce, the Court looked solely to the text of the referendum and to the public advertising supporting it. *See id.* at 1113-14.

In all events, even if intent were relevant here, none of the Supreme Court's cases dealing with an equal protection challenge to a referendum has delved into the type of information Plaintiffs seek

4

here.[4] Simply put, "the Supreme Court … has [n]ever inquired into the motivation of voters in an equal protection clause challenge to a referendum election involving a facially neutral referendum unless racial discrimination was the only possible motivation behind the referendum results." *Arthur*, 782 F.2d at 573; *accord Equal. Found. v. Cincinnati*, 128 F.3d 289, 293 n.4 (6th Cir. 1997); *37712, Inc. v. Ohio Dep't of Liquor Ctrl.*, 113 F.3d 614, 620 n.11 (6th Cir. 1997).

4. Plaintiffs assert a hodge-podge of reasons why this Court should ignore the Ninth Circuit's controlling opinion in *SASSO*.[5] First, Plaintiffs claim that *SASSO* is inapposite because they are not seeking information about the "private attitudes of voters." Doc # 191 at 10. Well, then exactly what is "evidence concerning the 'motivations for supporting Prop. 8'"? *Id.* at 9. Second, Plaintiffs claim that Proponents cannot rely on *SASSO* because we chose to intervene. Plaintiffs fail to explain why the relevance of certain information in an equal protection challenge is determined by the identity of the parties to the litigation. If Proponents had not joined this lawsuit, would Plaintiffs have thus conceded that Proponents' nonpublic communications are irrelevant? What then justifies the sweeping third-party subpoenas that Plaintiffs have noticed on Proponents' campaign consultants? Third, Plaintiffs argue that *SASSO* is no longer controlling in light of subsequent Supreme Court cases. But the Ninth Circuit has never questioned *SASSO* and, as noted, the Sixth Circuit—in

---

[4] For example, *Seattle* affirmed the finding, made by both the district court and the Ninth Circuit, that the referendum at issue "was effectively drawn for racial purposes." 458 U.S. at 471. But in making this finding, the district court explicitly held that "[i]t is, of course, impossible to ascertain the subjective intent of those who enacted Initiative 350" and "[o]ne must simply look elsewhere than within the minds of the voters." 473 F. Supp. at 1013-14. The district court thus engaged in an objective inquiry, looking to "[t]he very words of the initiative"; publicly-known facts that "the voters in general … were well aware" of; "the historical background," and a "departure from the procedural norm." *Id.* at 1015-16. For its part, the Ninth Circuit "f[ound] it unnecessary to discuss … discriminatory purpose" and looked only at the initiative's language and effect. 633 F.2d 1338, 1342-43 (9th Cir. 1980). Thus, at every level of adjudication, nonpublic materials such as those at issue here were irrelevant to the equal protection claim in *Seattle*.

[5] Plaintiffs rightly note that *Bates* received en banc consideration, but fail to note that, like both the panel majority and dissent, the court looked to nothing more than the language the ballot measure, the official ballot materials, public "media attention," and decisions of the California Supreme Court. 131 F.3d 843, 846 (9th Cir. 1997) (en banc). Plaintiffs try to paint *Bates* as a case about "notice," but such a formulation does not save them from the implications of *Bates*. If the case is about "notice," it is about what the voters knew—an inquiry that is indistinguishable from intent.

5

full view of subsequent Supreme Court cases—has adopted *SASSO*'s holding and rationale. *See Paul v. HCI Direct, Inc.*, 2003 U.S. Dist. LEXIS 12170, at *10-18 (C.D. Cal. 2003) (courts may not ignore binding authority even if parallel or higher authority "implicitly" calls it into question).[6]

5. Plaintiffs and Plaintiff-Intervenors claim that we are seeking from third parties the very same type of information at issue in this motion. This charge was false when first represented to the Court in Plaintiff-Intervenors' letter, Doc # 182, as we pointed out in our motion, Doc # 187 at 10 n.5. In an effort to dispel any confusion, we specifically alerted Plaintiff-Intervenors that this was not the case. And, well before Plaintiffs' response was submitted, we sent an additional letter to the third parties instructing them not to produce such materials, *see* Ex. C, which was copied to all counsel. We are perplexed, and dismayed, that Plaintiffs continue to advance this false charge.[7]

## III. FIRST AMENDMENT PRIVILEGE

Plaintiffs concede that Proponents' "communications concerning the Prop. 8 referendum campaign are core political speech and undeniably entitled to First Amendment protection." Doc # 191 at 12. And they do not contest that when information about support for Prop. 8 has become public, it has led to, in Plaintiffs' counsels' words, "widespread economic reprisals" and chilling of First Amendment activity. Yet they dismiss our First Amendment claim as "makeweight."

1. Plaintiffs argue that Defendant-Intervenors waived any and all First Amendment privileges by joining this lawsuit.[8] As an initial matter, we note again that Plaintiffs have noticed third-party subpoenas upon the Proponents' campaign consultants for the same type of discovery at issue here.

---

[6] Eschewing controlling Ninth Circuit precedent, Plaintiffs can cite only *South Dakota Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583 (8th Cir. 2003), as support for their position. But even the Eighth Circuit turned to official ballot materials as the "most compelling" evidence of intent. *Id.* at 594. Accordingly, the materials cited by the Eighth Circuit were unnecessary to its decision. In any event, *SASSO* controls in this Circuit and, along with *Arthur*, is the better reasoned case.

[7] These third parties have also lodged relevance and privilege objections. *See* Exs. D, E.

[8] Plaintiffs also argue that a waiver exists where a party places the requested information at issue. Doc # 191 at 12 n.4, 13. Yet Proponents have not placed the intent of the electorate or their subjective belief in a particular rational basis at issue; instead, we maintain that such inquiries are legally irrelevant and, unless and until the Court rules otherwise, do not plan to present any evidence

6

In any event, this Court has flatly rejected such an argument, holding that a "generic distinction" creating a "waiver of [First Amendment] safeguards by reason of the party's decision to instigate litigation" would prove to be "as much a potential 'chill' upon hallowed First Amendment freedoms by indirectly penalizing its exercise, as would be a direct assault." *Adolph Coors Co. v. Wallace*, 570 F. Supp. 202, 209 (N.D. Cal. 1983). Thus, in *Beinin v. Center for the Study of Popular Culture*, this Court found that a *plaintiff* had validly asserted First Amendment rights with respect to a defendant's discovery requests; the fact that the plaintiff had brought the suit did not matter. 2007 U.S. Dist. LEXIS 47546 (N.D. Cal. 2007). *See also Int'l Action Ctr. v. United States*, 207 F.R.D. 1 (D.D.C. 2002) (granting protective order to plaintiffs with regard to information about "political activities"); *Black Panthers Party v. Smith*, 661 F.2d 1243, 1266 (D.C. Cir. 1981), *granted, vacated as moot, and remanded by* 458 U.S. 1118 (1982)[9]; *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 1985 U.S. Dist. LEXIS 22188, at *27 (S.D.N.Y. 1985) (granting plaintiffs' claim of First Amendment privilege against "an extensive inquiry into [their] associations and …finances").[10]

These cases are in keeping with the longstanding "unconstitutional conditions" doctrine, which "holds that the government 'may not deny a benefit on a basis that infringes his constitutionally protected . . . freedom of speech' even if he has no entitlement to that benefit." *Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 674 (1996). Although Proponents may be in this lawsuit

---

about them, nor to call Proponents as fact witnesses. *See* Doc # 172-1 at 95-98, 101-03.

[9] "Even though the *Black Panther* decision was later vacated as moot … there is no suggestion in later case law in th[e] [D.C.] Circuit that its reasoning or analysis has been rejected or abandoned." *Int'l Action Ctr.*, 207 F.R.D. at 3 n.6. Indeed, many cases dealing with *NAACP* claims often rely on the case as persuasive. *See, e.g.*, *Coors* 570 F. Supp. at 210.

[10] Plaintiffs try to cast *Grandbouche v. Clancy,* 825 F.2d 1463 (10th Cir. 1987) and *Christ Covenant Church v. Southwest Ranches*, 2008 U.S. Dist. LEXIS 49483 (S.D. Fla. 2008), as supporting their absolute waiver argument. But both courts specifically applied the *NAACP* balancing test despite the fact that it was invoked by party-plaintiffs; the courts simply held that the invoking party's status as plaintiff could be taken into account in analyzing the balance. *Grandbouche* specifically stated that even in light of this factor "information sought by defendants may, on balance, be protected from disclosure." 825 F.2d at 1467. Here, where the documents sought have no relevance (unlike those in *Christ Covenant*) the balance must be struck for the party claiming privilege. Moreover, Proponents are not plaintiffs—they have intervened to defend the People's

voluntarily, their right to defend in Court a ballot initiative they sponsored and that was passed by the majority of voters in California (an initiative that would go undefended but for their intervention) cannot be conditioned on Proponents effectively leaving all First Amendment rights at the courthouse doors. Yet this is precisely what Plaintiffs demand.

2. Plaintiffs contend that they "do not seek ProtectMarriage.com's membership list, or a list of donors." Doc # 191 at 13. But Plaintiffs' document requests clearly implicate disclosure of organizational charts; email distribution lists (of donors, members, or supporters); lists of donors contributing less than the threshold amount triggering public disclosure; and identities of all correspondents, whether or not their identities have previously been publicly disclosed. Further, as we have demonstrated, numerous cases have held that the First Amendment shields not only membership or donor lists, but also other private information of the types at issue here. *See* Doc # 187 at 18-19 & nn. 18-19 (listing cases); *see also Int'l Action Ctr.*, 207 F.R.D. at 2-4 (protective order barring discovery into "political activities."). Plaintiffs attempt to deal with only one of these cases, arguing that we seek to shield documents beyond those at issue in *Motor Fuel*.[11] But *Motor Fuel* broadly shielded "documents related to lobbying and legislative affairs," including "internal communications and evaluations about advocacy of their members' positions on contested political issues, as well as their actual lobbying on such issues." 2009 U.S. Dist. LEXIS 66005, at *43-47 (D. Kan. 2009). *See also*

---

vote because their official representatives would not.

[11] Ignoring the other cases from this Circuit cited in our opening brief, Plaintiffs cite a single case for the proposition that "[c]ourts in this Circuit have rejected claims of First Amendment privilege where a litigant seeks to apply it [to] … 'discovery of her files.'" Doc # 191 at 10 (quoting *Wilkinson v. FBI*, 111 F.R.D. 432, 436 (C.D. Cal. 1986)). But *Wilkinson* concerned a request for blanket immunity from *any* discovery into 30 years' worth of "documents, tapes and microfilm" that had already been donated to a historical society. 111 F.R.D. at 434. It was not clear in *Wilkinson* how many of the documents reflected core First Amendment activity, and the court found that there was *no* showing that "the information sought would impair the group's associational activities." *Id.* at 437. Here, Plaintiffs concede that the documents at issue are core political speech and we have made a showing of the impairment that would result from disclosure. *Wilkinson* also found that the *NAACP* doctrine had been applied only to membership lists and thus refused to entertain any claim of privilege for other types of documents. In light of the Supreme Court's holdings about the nature of speech in a referendum campaign, and the cases that have applied the *NAACP* doctrine more

*Heartland Surgical Specialty Hosp. v. Mw. Div., Inc.*, 2007 U.S. Dist. LEXIS 19475, at *20 (D. Kan. 2007) ("documents related to … strategy of advocating for bills in the Kansas legislature").

Plaintiffs also contend that because the "public is already aware" of Defendant-Intervenors' affiliations with Protect Marriage, all of Defendant-Intervenors' political communications should be subject to compelled public disclosure. Plaintiffs ignore what was already explained in our opening brief: public disclosure of affiliation with a group or cause is far different from—and reveals far less than—disclosure of specific communications.[12] *See Am. Const. Law Found. v. Meyer*, 120 F.3d 1092, 1103 (10th Cir. 1997), *aff'd*, *Buckley v. Am. Const. Law Found.*, 525 U.S. 182 (1999).[13]

3. Plaintiffs claim that Proponents' First Amendment privilege cannot stand because Plaintiffs are willing to entertain "any reasonable confidentiality agreement." Doc # 191 at 16. But a confidentiality agreement cannot obviate the fact that the information sought is irrelevant and thus Defendant-Intervenors should not have to shoulder the onerous burden of reviewing and producing it. Indeed, where information has little relevance and implicates First Amendment concerns, courts have rejected confidentiality agreements. *See Anderson*, 2001 U.S. Dist. LEXIS 6127 (allowing an attorneys-eyes-only restriction for relevant information that had only a remote possibility of reach-

---

broadly, such a view is no longer tenable.

[12] Plaintiffs argue that *Anderson v. Hale* stands for the blanket proposition that once a person's organizational affiliation is publicly known, all of that person's other First Amendment activity loses protection. But the dispute in *Anderson* was about Internet "subscription information" and "neither party [could] describe exactly what information" was at issue. 2001 U.S. Dist. LEXIS 6127, at *46 (N.D. Ill. 2001). The only argument the defendants raised with regard to the publicly-disclosed members was that production of subscription information might reveal the identity of anonymous members. *Id.* at *14. The Court found this possibility "too remote and speculative" as defendants had failed to show that production would "reveal the identity of an anonymous … member." *Id.* at *19 & n.5. Indeed, the court relied on a finding that the discovery would reveal information that was highly relevant and, at least in part, had nothing to do with the associational activities in question. *Id.* at *17-18. With respect to anonymous members, however, the Court refused all discovery, finding that it struck at the heart of the association's activities and was supported by only "a general statement regarding … relevancy." *Id.* at *22-25. And contrary to Plaintiffs' suggestion here, a "factual record of past harassment ma[de] the chilling effect of disclosure apparent." *Id.* at *23.

[13] Plaintiffs' claim that public discussion by Proponents' campaign consultant of some aspects of the campaign renders nugatory all claims of privilege over any undisclosed First Amendment activity. Speakers are free to choose for themselves what to make public and what to keep private. *See Watchtower*, 536 U.S. at 167.

9

ing associational rights, but rejecting *any* disclosure where greater claims of First Amendment privilege existed). Further, it is not clear what Plaintiffs would deem a "reasonable" agreement, but we suspect it would include the ability to introduce the information at trial and on appeal. Public disclosure would thus occur regardless of confidentiality in the discovery phase. Most important, First Amendment chill occurs from any compelled disclosure—even limited disclosure. *Austl./E. USA Shipping Conf. v. United States*, 537 F. Supp. 807, 810 (D.D.C. 1982) ("There is no doubt that the overwhelming weight of authority is to the effect that forced disclosure of first amendment activities creates a chilling effect which must be balanced against the interests in obtaining the information."). This is especially so when the party receiving the information is the disclosing party's political opponent. *See Motor Fuel*, 2009 U.S. Dist. LEXIS 66005 at *50 ("Disclosure of the associations' evaluations of possible lobbying and legislative strategy certainly could be used by plaintiffs to gain an unfair advantage over defendants in the political arena."); Ex. F (showing City Attorney Herrera's extensive anti-Prop. 8 political activities). Thus, the First Amendment "prohibits the State from requiring information from an organization that would impinge on First Amendment associational rights if there is no connection between the information sought and the State's interest." *Dawson v. Delaware*, 503 U.S. 159, 168 (1992). Indeed, if "reasonable" confidentiality agreements were the answer in cases such as this, the Supreme Court would have adopted them in cases like *NAACP*; yet, courts crediting claims of First Amendment privilege routinely shield parties from any production, just as with valid claims of the attorney-client and other privileges.

## CONCLUSION

For the foregoing reasons, the Court should grant this motion for a protective order.

Dated: September 22, 2009    COOPER AND KIRK, PLLC
    ATTORNEYS FOR DEFENDANTS-INTERVENORS

    By:    /s/Charles J. Cooper
        Charles J. Cooper