GIBSON, DUNN & CRUTCHER LLP
Theodore B. Olson, SBN 38137
*tolson@gibsondunn.com*
Matthew D. McGill, *pro hac vice*
Amir C. Tayrani, SBN 229609
1050 Connecticut Avenue, N.W., Washington, D.C. 20036
Telephone: (202) 955-8668, Facsimile: (202) 467-0539

Theodore J. Boutrous, Jr., SBN 132009
*tboutrous@gibsondunn.com*
Christopher D. Dusseault, SBN 177557
Ethan D. Dettmer, SBN 196046
Sarah E. Piepmeier, SBN 227094
Theane Evangelis Kapur, SBN 243570
Enrique A. Monagas, SBN 239087
333 S. Grand Avenue, Los Angeles, California 90071
Telephone: (213) 229-7804, Facsimile: (213) 229-7520

BOIES, SCHILLER & FLEXNER LLP
David Boies, *pro hac vice*
*dboies@bsfllp.com*
Theodore H. Uno, SBN 248603
333 Main Street, Armonk, New York 10504
Telephone: (914) 749-8200, Facsimile: (914) 749-8300

Attorneys for Plaintiffs KRISTIN M. PERRY, SANDRA B. STIER,
PAUL T. KATAMI, and JEFFREY J. ZARRILLO

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the California Department of Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; and DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles,<br><br>　　　　　Defendants. | CASE NO. 09-CV-2292 VRW<br><br>**DECLARATION OF CHRISTOPHER D. DUSSEAULT IN SUPPORT OF PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S JOINT OPPOSITION TO DEFENDANT-INTERVENORS' MOTION FOR SUMMARY JUDGMENT**<br><br>[FED. R. CIV. P. 56(f)] |

Gibson, Dunn &
Crutcher LLP

09-CV-2292 VRW  DECLARATION OF CHRISTOPHER D. DUSSEAULT [FED. R. CIV. P. 56(f)]

I, Christopher D. Dusseault, declare as follows:

1. I am a partner at the law firm of Gibson, Dunn & Crutcher LLP, and I am one of the attorneys of record for Plaintiffs Kristin M. Perry, Sandra B. Stier, Paul T. Katami, and Jeffrey J. Zarrillo ("Plaintiffs") in this action. I make this declaration in support of Plaintiffs' and Plaintiff-Intervenor City and County of San Francisco's (collectively, "Plaintiffs") Joint Opposition to Defendant-Intervenors' Motion for Summary Judgment. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify hereto.

2. Defendant-Intervenors' Motion for Summary Judgment (the "Motion") seeks summary judgment on Plaintiffs' and Plaintiff-Intervenor's respective complaints, in their entirety. Plaintiffs respond that the Court can and should deny Defendant-Intervenors' Motion on its merits because the Motion is legally unfounded and because publicly available facts demonstrate the existence of genuine issues. However, in the alternative and in the event that the Court believes there are any issues on which Plaintiffs must present additional evidence to avoid summary judgment, Plaintiffs ask this Court to deny Defendant-Intervenors' Motion pursuant to Rule 56(f) given that discovery in this action is not yet complete. In the following paragraphs, I explain how Plaintiffs, through no fault of their own, have not yet been able to obtain discovery of relevant evidence going to the factual issues that this Court may need to resolve to decide Plaintiffs' claims, and how the discovery Plaintiffs are presently pursuing and intend to pursue before the discovery cut-off will lead to such information.

3. At this stage of this case, Plaintiffs do not yet have access to, and thus are unable to present to the Court, all of the evidence going to each of the factual issues raised by their claims. This is not due to any delay by Plaintiffs, but rather because discovery in this case only recently began. The Court commenced discovery in this case on August 19, 2009, just over one month ago. Plaintiffs promptly served written discovery on Defendant-Intervenors just two days later, on August 21, 2009 and received partial responses on September 11, 2009, two days after Defendant-Intervenors filed this Motion. Defendant-Intervenors have thus far refused to produce any documents other than those available to the electorate at large, withholding from production any and all documents that were distributed to targeted (albeit potentially quite large) groups of recipients, and

also withholding all internal documents or communications with third parties regardless of their content.  Defendant-Intervenors have filed a motion for protective order that will be heard on September 25, 2009.  As a result of Defendant-Intervenors' position, Plaintiffs have been denied access to documents that may well demonstrate genuine issues of fact on some or all of the factual issues in this case.  Additionally, expert discovery is incomplete and is, in fact, just beginning.  The Court set October 2, 2009 as the date by which expert disclosures are due.  Accordingly, Plaintiffs do not yet have final expert reports that may be used to oppose summary judgment, nor do they have access to the expert testimony that Defendant-Intervenors will disclose on that same date.  Relatedly, no rebuttal expert testimony is available at this time.  In addition, because Defendant-Intervenors have not yet produced all non-privileged documents responsive to Plaintiffs' document requests, Plaintiffs have not yet been able to depose fact witnesses who will testify, among other things, about such documentary evidence.  Plaintiffs are also pursuing third party discovery.  Because the cutoff set by this Court for all discovery other than rebuttal experts is November 30, 2009, Plaintiffs still have more than two months under the current schedule to build their factual record in this case.  Plaintiffs have in no way delayed or sought continuances of discovery, and to the contrary have advocated an aggressive schedule that will allow the parties to move promptly to trial or other disposition in their favor on a complete record.  Simply put, Defendant-Intervenors are seeking summary judgment at a time when the parties are in the midst of the fact and expert discovery needed to build a complete factual record in this case.

4.      In the paragraphs that follow, I will set forth the facts that Plaintiffs intend to establish through discovery, and believe will be revealed in the course of discovery, and how those facts go to issues raised by Plaintiffs' claims, as to which Defendant-Intervenors would now ask the Court to rule in their favor as a matter of law.

5.      <u>The Right to Marry is a Fundamental Right</u>:  With the benefit of further discovery, Plaintiffs expect to discover facts demonstrating that the history of marriage, and the evolution of this civil institution over time, establishes that the fundamental right to marry necessarily means the right to marry the person of one's choice.  Plaintiffs are currently working with historians to review and analyze the history of marriage.  Plaintiffs expect that their experts will opine that civil marriage has

1  never been a static institution and has changed over time, sometimes dramatically, to reflect the
2  changing needs, values and understanding of our evolving society. Plaintiffs also expect to obtain
3  significant concessions from Defendant-Intervenors' experts with regard to the history and nature of
4  marriage that will show either that it is undisputed that Plaintiffs' claims involve a recognized
5  fundamental right or, at the very least, that a genuine issue of material fact exists as to that point.
6  Additionally, through document requests and deposition testimony, Plaintiffs expect to obtain
7  admissions and impeachment evidence from the Defendant-Intervenors themselves that would be
8  binding on them as a party. The evidence sought by Plaintiffs will refute, among other things,
9  Defendant-Intervenors' contention that "[t]he central purpose of marriage has always been to
10 promote naturally procreative sexual relationships and to channel them into stable, enduring unions
11 for the sake of producing and raising the next generation." Doc #172-1 at 21, 77.

12       6. <u>Prop. 8 Discriminates on the Basis of Sexual Orientation</u>: With the benefit of further
13 discovery, Plaintiffs expect to discover facts demonstrating that Prop. 8 discriminates against, and
14 disproportionately impacts, gay and lesbian individuals, depriving them of rights and opportunities
15 enjoyed by those with a different sexual orientation. Plaintiffs also expect to discover facts
16 demonstrating that same-sex couples and opposite-sex couples are similarly situated with respect to
17 marriage. Plaintiffs are currently working with experts to review and analyze the social and
18 psychological conditions of marriage to demonstrate that same-sex couples and opposite-sex couples
19 are similarly situated with respect to marriage and that Prop. 8 discriminates on the basis of sexual
20 orientation by denying gay and lesbian individuals the right to marry that is enjoyed by virtually all
21 other citizens. Plaintiffs also expect to obtain significant concessions from Defendant-Intervenors'
22 experts that will demonstrate how Prop. 8 discriminates on the basis of sexual orientation.
23 Additionally, through document requests and deposition testimony, Plaintiffs expect to obtain
24 admissions and impeachment evidence from the Defendant-Intervenors themselves that would be
25 binding on them as a party, for example demonstrating that Prop. 8 deprives gay and lesbian
26 individuals of options and rights with respect to marriage in ways that it does not deprive
27 heterosexual individuals. The evidence sought by Plaintiffs will refute, among other things,
28 Defendant-Intervenors' contention that "same-sex couples are not situated similarly to their opposite-

sex counterparts" because "the institution of marriage is and always has been bound up with the procreative nature of sexual relationships between men and women." Doc #172-1 at 54-55.

7. <u>Prop. 8 Discriminates on the Basis of Sex</u>: With the benefit of further discovery, Plaintiffs expect to discover facts demonstrating that marriage laws in California, and the rest of the Nation, historically enforced societally prescribed gender roles for women and men and that, except for Prop. 8 and other laws that limit marriage to opposite-sex couples, marriage has been transformed from an institution of gender inequality and sex-based roles to one in which the sex of the spouses is immaterial to their legal obligations and benefits. Plaintiffs are currently working with experts to review and analyze the social and psychological conditions of marriage to demonstrate that Prop. 8 discriminates on the basis of sex. Plaintiffs also expect to obtain significant concessions from Defendant-Intervenors' experts with regard to Prop. 8's discrimination on the basis of sex, for example recognizing that many conceptions that people may have with respect to an "optimal" relationship or parenting environment are based on gender stereotypes that cannot withstand scrutiny. Additionally, through document requests and deposition testimony, Plaintiffs expect to obtain admissions and impeachment evidence from the Defendant-Intervenors themselves that would be binding on them as a party acknowledging that Prop. 8 denies rights to individuals based upon their sex. The evidence sought by Plaintiffs will refute, among other things, Defendant-Intervenors' contention that "[t]he traditional definition of marriage reaffirmed by Prop. 8 does not discriminate on the basis of sex." Doc #172-1 at 66.

8. <u>Strict Scrutiny Applies to Plaintiffs' Claims</u>: With the benefit of further discovery, Plaintiffs expect to discover facts demonstrating that gay and lesbian individuals have been subject to a history of discrimination, *see Bowen v. Gilliard,* 483 U.S. 587, 602 (1987); that gay and lesbian individuals are defined by a characteristic that bears no relation to ability to perform or contribute to society, *see City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 440-41 (1985); that gay and lesbian individuals exhibit obviously immutable or distinguishing characteristics that define them as a discrete group, *see Bowen,* 483 U.S. at 602; and that gay and lesbian individuals have been prevented from protecting themselves through the political process. *See id.* Plaintiffs are currently working with various experts on these issues and expect to find persuasive evidence supporting their position

that strict scrutiny applies to their claims. Plaintiffs also expect to obtain significant concessions from Defendant-Intervenors' experts with regard to the factors considered when determining the appropriate level of scrutiny. Additionally, through document requests and deposition testimony, Plaintiffs expect to obtain admissions and impeachment evidence from the Defendant-Intervenors themselves that would be binding on them as a party on some or all of these issues. The evidence sought by Plaintiffs will refute, among other things, Defendant-Intervenors' contention that "sexual orientation is not immutable" and that "gays and lesbians wield substantial political power." Doc #172-1 at 57, 63.

9. <u>There are No Rational Bases for Prop. 8</u>: With the benefit of further discovery, Plaintiffs expect to discover facts demonstrating that no compelling or even rational basis exists for Prop. 8's exclusion of gay and lesbian individuals from the institution of civil marriage and for stripping gay and lesbian individuals of their previously recognized right to marry. Furthermore, Plaintiffs expect to discover facts demonstrating that all of the rationales offered to the voters in support of Prop. 8 do not bear any rational nexus to what Prop. 8 actually does, which is exclude gay and lesbian individuals from the institution of civil marriage. Plaintiffs expect to discover facts refuting Defendant-Intervenors' assertion that the primary purpose of marriage is the furtherance of "naturally procreative" relationships and the stabilization of "traditional" families, consisting of "biological parents" and their "biological children." Plaintiffs are currently working with experts to demonstrate that the various purported state interests Defendant-Intervenors advance are neither legitimate nor rationally related to Prop. 8. Plaintiffs also expect to obtain significant concessions from Defendant-Intervenors' experts with regard to the purported state interests Defendant-Intervenors advance, including acknowledgments that there is no nexus between Prop. 8 and its stated justifications. Additionally, through document requests and deposition testimony, Plaintiffs expect to obtain admissions and impeachment evidence from the Defendant-Intervenors themselves that would be binding on them as a party, for example concessions that certain justifications for Prop. 8 being advanced in this litigation are not rational and would not be accepted by rational voters. Indeed, many of these justifications were never presented to the voters, likely for that reason. The evidence sought by Plaintiffs will refute Defendant-Intervenors' contentions that, among other things, "The

people of California have a legitimate interest in calling different things by different names"; "The people of California have a legitimate interest in taking a cautious, incremental approach in addressing controversial social issues"; "Establishing parallel institutions allows California flexibility to separately address the needs of different types of relationships"; "The traditional institution of marriage promotes the formation of naturally procreative unions"; "The traditional institution of marriage promotes stability and responsibility in naturally procreative relationships"; "The traditional institution of marriage promotes the natural and mutually beneficial bond between parents and their biological children"; "California does not undermine the legitimacy of its marriage laws by extending domestic partnership benefits to same-sex couples"; "California does not undermine its marriage laws by allowing couples who cannot or intend not to have children to marry"; and "California has a legitimate interest in ensuring that its marriages are recognized in other jurisdictions. Doc #172-1 at 70-100.

10. <u>Prop. 8 Undermines the Interests of the State and Local Governments</u>: With the benefit of further discovery, Plaintiffs expect to discover facts demonstrating that institutionalized discrimination, like Prop. 8, actually and significantly harms lesbian and gay adults and youth, as well as their families and children. As a result, the government incurs significant costs to address and ameliorate these harms. Indeed, Plaintiffs expect to discover evidence showing that this discrimination undermines the important interest of the State and local governments in ensuring that all of their citizens are physically and emotionally healthy, able to support themselves and their families, and economically and socially productive. Plaintiffs are currently working with experts to demonstrate and quantify these harms. Plaintiffs are also seeking documentary evidence from the State that will address California's laws and public policies governing families, including those headed by gay and lesbian individuals as well as those headed by opposite-sex couples. Plaintiffs also expect to obtain significant concessions from Defendant-Intervenors' experts with regard to these harms. Additionally, through document requests and deposition testimony, Plaintiffs expect to obtain admissions and impeachment evidence from the Defendant-Intervenors themselves that would be binding on them as a party. The evidence sought by Plaintiffs will refute, among other things,

1  Defendant-Intervenors' contention that "it is rational for the people of California to preserve the
2  traditional institution of marriage." Doc #172-1 at 48.

3      11.    <u>Prop. 8 Was Passed with a Discriminatory Intent</u>: With the benefit of further
4  discovery, Plaintiffs expect to discover facts demonstrating that the purported state interests raised by
5  Defendant-Intervenors are neither legitimate nor rationally related to Prop. 8. As part of this
6  showing, Plaintiffs expect to discover facts demonstrating that Prop. 8 was instead driven by
7  irrational considerations, including but not limited to misconceptions, animus and moral disapproval
8  of gay and lesbian individuals, and that Prop. 8 was devised, promoted, and supported by groups and
9  individuals that morally disapprove of gay and lesbian individuals and did not want the committed,
10 long-term relationships of gay and lesbian individuals to be deemed "okay" or "as good as" the
11 marital relationships entered into by couples of the opposite sex. Also, evidence developed in
12 discovery showing that the justifications now being offered for Prop. 8 are neither compelling nor
13 rational tends to prove the presence of animus due to the absence of any other rational justification
14 for the initiative. Plaintiffs have sought discovery from Defendant-Intervenors and their campaign
15 consultants, which together with depositions Plaintiffs plan to take of persons and organizations who
16 orchestrated and implemented the Yes on 8 campaign, will demonstrate that the purpose of Prop. 8
17 was to prevent the State from endorsing the message that lesbian and gay couples and families are
18 equal to heterosexual couples and families. Additionally, through document requests and deposition
19 testimony, Plaintiffs expect to obtain admissions and impeachment evidence from the Defendant-
20 Intervenors themselves that would be binding on them as a party. The evidence sought by Plaintiffs
21 will refute, among other things, Defendant-Intervenors' contention that "It is simply implausible that
22 in acting with surgical precision to preserve and restore the venerable definition of marriage, the
23 people of California somehow transformed that institution into an instrument of bigotry against gays
24 and lesbians," and that "Plaintiffs' claim that animus against gays and lesbians is the only possible
25 explanation for the enactment of Proposition 8 is false[.]" Doc #172-1 at 107, 111.

26      12.    Plaintiffs have not yet had a meaningful opportunity to engage in such discovery, and
27 indeed are now only at the beginning of what is, quite appropriately, an expedited discovery process.
28 Accordingly, in the event that the Court believes there are any issues on which Plaintiffs must present

additional evidence to avoid summary judgment, Plaintiffs respectfully request that this Court deny Defendant-Intervenors' Motion pursuant to Rule 56(f) given that discovery in this action is not yet complete. Such a result should not, however, be used in any way to delay the resolution of Plaintiffs' claims on the merits.

I declare, under penalty of perjury under the laws of the United States, that these facts are true and correct and that this Declaration is executed this 23rd day of September 2009 at Los Angeles, California.

                                                     /s/ Christopher D. Dusseault
                                                         Christopher D. Dusseault

**ATTESTATION PURSUANT TO GENERAL ORDER NO. 45**

Pursuant to General Order No. 45 of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.

                          By: /s/ Theodore B. Olson
                                Theodore B. Olson