COOPER AND KIRK, PLLC
Charles J. Cooper (DC Bar No. 248070)*
*ccooper@cooperkirk.com*
David H. Thompson (DC Bar No. 450503)*
*dthompson@cooperkirk.com*
Howard C. Nielson, Jr. (DC Bar No. 473018)*
*hnielson@cooperkirk.com*
Nicole J. Moss (DC Bar No. 472424)*
*nmoss@cooperkirk.com*
Jesse Panuccio (DC Bar No. 981634)*
*jpanuccio@cooperkirk.com*
Peter A. Patterson (Ohio Bar No. 0080840)*
*ppatterson@cooperkirk.com*
1523 New Hampshire Ave. N.W., Washington, D.C. 20036
Telephone: (202) 220-9600, Facsimile: (202) 220-9601

LAW OFFICES OF ANDREW P. PUGNO
Andrew P. Pugno (CA Bar No. 206587)
*andrew@pugnolaw.com*
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 608-3065, Facsimile: (916) 608-3066

ALLIANCE DEFENSE FUND
Brian W. Raum (NY Bar No. 2856102)*
*braum@telladf.org*
James A. Campbell (OH Bar No. 0081501)*
*jcampbell@telladf.org*
15100 North 90th Street, Scottsdale, Arizona 85260
Telephone: (480) 444-0020, Facsimile: (480) 444-0028

ATTORNEYS FOR DEFENDANT-INTERVENOR DENNIS HOLLINGSWORTH,
GAIL J. KNIGHT, MARTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM,
MARK A. JANSSON, and PROTECTMARRIAGE.COM – YES ON 8, A
PROJECT OF CALIFORNIA RENEWAL

* Admitted *pro hac vice*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO, <br><br> Plaintiffs, <br><br> v. <br><br> ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the California Department of Public Health and State Registrar of | CASE NO. 09-CV-2292 VRW <br><br> The Honorable Vaughn R. Walker, Chief Judge <br><br> NOTICE OF APPEAL |

Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; and DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles,

Defendants,

and

PROPOSITION 8 OFFICIAL PROPONENTS DENNIS HOLLINGSWORTH, GAIL J. KNIGHT, MARTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM, and MARK A. JANSSON; and PROTECTMARRIAGE.COM – YES ON 8, A PROJECT OF CALIFORNIA RENEWAL,

Defendant-Intervenors.

Additional Counsel for Defendant-Intervenors

ALLIANCE DEFENSE FUND
Timothy Chandler (CA Bar No. 234325)
*tchandler@telladf.org*
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 932-2850, Facsimile: (916) 932-2851

Jordan W. Lorence (DC Bar No. 385022)*
*jlorence@telladf.org*
Austin R. Nimocks (TX Bar No. 24002695)*
*animocks@telladf.org*
801 G Street NW, Suite 509, Washington, D.C. 20001
Telephone: (202) 393-8690, Facsimile: (202) 347-3622

* Admitted *pro hac vice*

Notice is hereby given under Fed. R. App. P. 3 that Defendant-Intervenors hereby appeal to the United States Court of Appeals for the Ninth Circuit from the order of the Northern District of California (Doc # 214), dated October 1, 2009, to the extent it denies Defendant-Intervenors' Motion for a Protective Order (Doc # 187).

Dated: October 7, 2009

By: _____

Charles J. Cooper*
D.C. Bar No. 248070
COOPER AND KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
Fax: (202) 220-9601
Attorney for Defendant-Intervenors
* *Admitted pro hac vice*



USCA DOCKET # (IF KNOWN)

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
## CIVIL APPEALS DOCKETING STATEMENT

PLEASE ATTACH ADDITIONAL PAGES IF NECESSARY.

| TITLE IN FULL: | | |
|---|---|---|
| KRISTIN M. PERRY, et al., v. ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California, et al.<br><br>(Please see Attachment A for full title.) | **DISTRICT:** N. Dist. of California | **JUDGE:** Hon. Vaughn Walker, C.J. |

| DISTRICT COURT NUMBER: | 09-CV-2292 VRW |
|---|---|

| DATE NOTICE OF APPEAL FILED:<br><br>Oct 7, 2009 | IS THIS A CROSS APPEAL?<br><br>☐ YES |
|---|---|

IF THIS MATTER HAS BEEN BEFORE THIS COURT PREVIOUSLY, PLEASE PROVIDE THE DOCKET NUMBER AND CITATION (IF ANY):

No. 09-16959

**BRIEF DESCRIPTION OF NATURE OF ACTION AND RESULT BELOW:**

The underlying action is a federal constitutional challenge to a provision of the California Constitution defining marriage as between a man and a woman. The order under review involves a denial of a First Amendment privilege raised by Defendant-Intervenors.

**PRINCIPAL ISSUES PROPOSED TO BE RAISED ON APPEAL:**

Whether participants in a referendum campaign have a valid First Amendment privilege shielding from discovery nonpublic and/or anonymous documents reflecting core political speech and associational activity with little or no relevance to the merits of the case.

**PLEASE IDENTIFY ANY OTHER LEGAL PROCEEDING THAT MAY HAVE A BEARING ON THIS CASE (INCLUDE PENDING DISTRICT COURT POST-JUDGMENT MOTIONS):**


**DOES THIS APPEAL INVOLVE ANY OF THE FOLLOWING:**

☐ Possibility of Settlement
☐ Likelihood that intervening precedent will control outcome of appeal
☒ Likelihood of a motion to expedite or to stay the appeal, or other procedural matters (Specify)

Defendant-Intervenors are currently seeking a stay of discovery in the district court and will seek expedited appeal.

☐ Any other information relevant to the inclusion of this case in the Mediation Program


☐ Possibility parties would stipulate to binding award by Appellate Commissioner in lieu of submission to judges

## LOWER COURT INFORMATION

| JURISDICTION | | DISTRICT COURT DISPOSITION | |
|---|---|---|---|
| FEDERAL | APPELLATE | TYPE OF JUDGMENT/ORDER APPEALED | RELIEF |

**JURISDICTION**

**FEDERAL**

☒ FEDERAL QUESTION

☐ DIVERSITY

☐ OTHER (SPECIFY):

**APPELLATE**

☐ FINAL DECISION OF DISTRICT COURT

INTERLOCUTORY
☒ DECISION APPEALABLE AS OF RIGHT

☐ INTERLOCUTORY ORDER CERTIFIED BY DISTRICT JUDGE (SPECIFY):

☒ OTHER (SPECIFY):

Mandamus, in the alternative

**TYPE OF JUDGMENT/ORDER APPEALED**

☐ DEFAULT JUDGMENT

☐ DISMISSAL/JURISDICTION

☐ DISMISSAL/MERITS

☐ SUMMARY JUDGMENT

☒ JUDGMENT/COURT DECISION

☐ JUDGMENT/JURY VERDICT

☐ DECLARATORY JUDGMENT

☐ JUDGMENT AS A MATTER OF LAW

☐ OTHER (SPECIFY):

**RELIEF**

☐ DAMAGES:

SOUGHT   $

AWARDED $

☐ INJUNCTIONS:

☐ PRELIMINARY

☐ PERMANENT

☐ GRANTED

☐ DENIED

☐ ATTORNEY FEES:

SOUGHT   $

AWARDED $

☐ PENDING

☐ COSTS:   $

## CERTIFICATION OF COUNSEL

**I CERTIFY THAT:**

1. COPIES OF ORDER/JUDGMENT APPEALED FROM ARE ATTACHED.

2. A CURRENT SERVICE LIST OR REPRESENTATION STATEMENT WITH TELEPHONE AND FAX NUMBERS IS ATTACHED (SEE 9TH CIR. RULE 3-2).

3. A COPY OF THIS CIVIL APPEALS DOCKETING STATEMENT WAS SERVED IN COMPLIANCE WITH FRAP 25.

4. I UNDERSTAND THAT FAILURE TO COMPLY WITH THESE FILING REQUIREMENTS MAY RESULT IN SANCTIONS, INCLUDING DISMISSAL OF THIS APPEAL.

| | |
|---|---|
| _(signature)_ **Signature** | Oct 7, 2009 **Date** |

## COUNSEL WHO COMPLETED THIS FORM

| NAME | Charles J. Cooper | | |
|---|---|---|---|
| FIRM | Cooper & Kirk, PLLC | | |
| ADDRESS | 1523 New Hampshire Ave., NW | | |
| CITY | Washington | STATE D.C. | ZIP CODE 20036 |
| E-MAIL | jpanuccio@cooperkirk.com | TELEPHONE | 202-220-9600 |
| FAX | 202-220-9601 | | |

**\*\*THIS DOCUMENT SHOULD BE FILED IN DISTRICT COURT WITH THE NOTICE OF APPEAL. \*\***
**\*\*IF FILED LATE, IT SHOULD BE FILED DIRECTLY WITH THE U.S. COURT OF APPEALS.\*\***

# Attachment A

TITLE IN FULL:

KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO,

Plaintiffs

and

CITY AND COUNTY OF SAN FRANCISCO,

Plaintiff-Intervenor

v.

ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the California Department of Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; and DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles,

Defendants

and

PROPOSITION 8 OFFICIAL PROPONENTS DENNIS HOLLINGSWORTH, GAIL J. KNIGHT, MARKTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM, and MARK A. JANSSON; and PROTECTMARRIAGE.COM—YES ON 8, A PROJECT OF CALIFORNIA RENEWAL,

Defendant-Intervenors.

## REPRESENTATION AND SERVICE LIST

**Attorneys for Plaintiffs Kristin M. Perry, Sandra B. Stier, Paul T. Katami, and Jeffrey J. Zarillo:**

Theodore B. Olson
Matthew C. McGill
Amir C. Tayrani
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, NW
Washington, D.C. 20036
(202) 955-8668
Fax: (202) 467-0539
tolson@gibsondunn.com

Theodore J. Boutrous, Jr.
Christopher D. Dusseault
Ethan D. Dettmer
Theane Evangelis Kapur
Enrique A. Monagas
GIBSON, DUNN & CRUTCHER, LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 229-7804
Fax: (213) 229-7520
tboutrous@gibsondunn.com

David Boies
Theodore H. Uno
BOIES, SCHILLER & FLEXNER, LLP
333 Main St
Armonk, NY 10504
(914) 749-8200
Fax: (914) 749-8300
dboies@bsfllp.com

**Attorneys for Plaintiff-Intervenor City and County of San Francisco:**

Dennis J. Herrera, City Attorney
Therese Stewart, Chief Deputy City
  Attorney
Danny Chou, Chief of Complex and Special
  Litigation
Vince Chhabria, Deputy City Attorney
Erin Bernstein, Deputy City Attorney
Christine Van Aken, Deputy City Attorney
Mollie M. Lee, Deputy City Attorney
CITY AND COUNTY OF SAN
  FRANCISCO
OFFICE OF THE CITY ATTORNEY
1 Dr. Carlton B. Goodlett Place
Room 234
San Francisco, CA  4102-4682
(415) 554-4708
Fax: (415) 554-4655
Therese.stewart@sf.gov.org

**Attorneys for Defendants Governor Arnold Schwarzenegger, Director Mark B. Horton, and Deputy Director Linette Scott:**

Kenneth C. Mennemeier
Andrew Walter Stroud
MENNEMEIER GLASSMAN & STROUD
LLP
980 9th St, Ste 1700
Sacramento, CA 95814
(916) 553-4000
Fax: (916) 553-4011
kcm@mgslaw.com

**Attorneys for Defendant Attorney
General Edmund G. Brown, Jr.:**

Gordon Bruce Burns
Attorney General's Office, Dept. of Justice
1300 I Street, 17th Floor
Sacramento, CA 95814
(916) 324-3081
Gordon.Burns@doj.ca.gov

Tamar Pachter
Office of the California Attorney General
455 Golden Gate Ave, Suite 11000
San Francisco, CA 94102-7004
(415) 703-5970
Fax: (415) 703-1234
Tamar.Pachter@doj.ca.gov


**Attorney for Defendant Clerk-Recorder
Patrick O'Connell:**

Claude Franklin Kolm
COUNTY OF ALAMEDA
1221 Oak Street, Suite 450
Oakland, CA 94612-4296
(510) 272-6710
claude.kolm@acgov.org


**Attorney for Defendant Registrar-
Recorder Dean C. Logan:**

Judy Whitehurst
OFFICE OF COUNTY COUNSEL –
COUNTY OF LOS ANGELES
500 West Temple St
Los Angeles, CA 90012
(213) 974-1845
JWhitehurst@counsel.lacounty.gov


**Attorneys for Defendant-Intervenors
Dennis Hollingsworth, Gail J. Knight,
Martin F. Gutierrez, Hak-Shing William
Tam, Mark A. Jansson, and
ProtectMarriage.com—Yes on 8, A
Project of California Renewal**:

Charles J. Cooper
David H. Thompson
Howard C. Neilson, Jr.
Nicole J. Moss
Jesse Panuccio
Peter A. Patterson
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 22036
(202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

Andrew P. Pugno
LAW OFFICES OF ANDREW P. PUGNO
101 Parkshore Dr., Ste. 100
Folsom, CA 95630
(916) 608-3065
andrew@pugnolaw.com

Brian W. Raum
James A. Campbell
ALLIANCE DEFENSE FUND
15100 N. 90th St.
Scottsdale, AZ 85260
(480) 444-0020
braum@telladf.org

1

2

3                    IN THE UNITED STATES DISTRICT COURT

4                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6   KRISTIN M PERRY, SANDRA B STIER,        No    C 09-2292 VRW
    PAUL T KATAMI and JEFFREY J
7   ZARRILLO,                                     ORDER

8             Plaintiffs,

9   CITY AND COUNTY OF SAN FRANCISCO,

10            Plaintiff-Intervenor,

11                 v

12  ARNORLD SCHWARZENEGGER, in his
    official capacity as governor of
13  California; EDMUND G BROWN JR, in
    his official capacity as attorney
14  general of California; MARK B
    HORTON, in his official capacity
15  as director of the California
    Department of Public Health and
16  state registrar of vital
    statistics; LINETTE SCOTT, in her
17  official capacity as deputy
    director of health information &
18  strategic planning for the
    California Department of Public
19  Health; PATRICK O'CONNELL, in his
    official capacity as clerk-
20  recorder of the County of
    Alameda; and DEAN C LOGAN, in his
21  official capacity as registrar-
    recorder/county clerk for the
22  County of Los Angeles,

23            Defendants,

24  DENNIS HOLLINGSWORTH, GAIL J
    KNIGHT, MARTIN F GUTIERREZ,
25  HAKSHING WILLIAM TAM and MARK A
    JANSSON, as official proponents
26  of Proposition 8,

27            Defendant-Intervenors.
    _____/
28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    The defendant-intervenors, who are the official

2    proponents of Proposition 8 ("proponents") move for a protective

3    order against the requests contained in one of plaintiffs' first

4    set of document requests.  Doc #187.  Proponents object to

5    plaintiffs' request no 8, which seeks "[a]ll versions of any

6    documents that constitute communications relating to Proposition 8,

7    between you and any third party, including, without limitation,

8    members of the public or the media."  Doc #187 at 8.  Proponents

9    also object to all other "similarly sweeping" requests.  Id at 8 n

10   1.  Proponents argue the discovery sought:  (1) is privileged under

11   the First Amendment; (2) is not relevant; and (3) places an undue

12   burden on proponents.  Doc #187 at 9.  Plaintiffs counter that the

13   discovery sought is relevant and not privileged.  Doc #191.

14   During the course of briefing the dispute for the court,

15   the parties appear to have resolved at least one issue, as

16   proponents now agree to produce communications targeted to discrete

17   voter groups.  Doc #197 at 6.  The agreement appears only partially

18   to resolve the parties' differences.  Because of the broad reach of

19   request no 8 and the generality of proponents' objections, the

20   unresolved issues will almost certainly arise in other discovery,

21   as well as to require resolution of the parties' differences with

22   respect to request no 8.  Accordingly, the court held a lengthy

23   hearing on September 25, 2009 and seeks by this order not only to

24   address the parties' remaining dispute with respect to request no 8

25   but also provide guidance that will enable them to complete

26   discovery and pretrial preparation expeditiously.

27   \\

28   \\

2

I

As an initial matter, and because plaintiffs' request no 8 is quite broad, the court must determine what discovery remains disputed.  Proponents object to disclosing documents that fall into five categories:  "(i) communications between and among [d]efendant-[i]ntervenors, campaign donors, volunteers, and agents; (ii) draft versions of communications never actually distributed to the electorate at large; (iii) the identity of affiliated persons and organizations not already publicly disclosed; (iv) post-election information; and (v) the subjective and/or private motivations of a voter or campaign participant."  Doc #187 at 9. But in their reply memorandum, proponents explain that they only object to "nonpublic and/or anonymous communications" (emphasis in original), "drafts of documents that were never intended to, and never did, see public light" and "documents created after the Prop 8 election."  Doc #197.  Plaintiffs have stated they "do not seek ProtectMarriage.com's membership list or a list of donors to the 'Yes on 8' cause."  Doc #191 at 13.

Plaintiffs have told proponents that they are seeking communications between proponents and "their agents, contractors, attorneys, donors or others" to the extent the communications are responsive and not otherwise privileged.  Doc #187-6 at 2. Plaintiffs argue that the election materials put before the voters are insufficient to discern the intent or purpose of Prop 8.  The questions whether Prop 8 was passed with discriminatory intent and whether any claimed state interest in fact supports Prop 8 underlie plaintiffs' Equal Protection challenge, at least in part.  See, e g, Doc #157 at 12.  Proponents assert that Prop 8 was intended

3

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1 simply to preserve the traditional characteristic of marriage as an

2 opposite-sex union.  See, e g, Doc #159 at 5.  As a result of these

3 conflicting positions, the intent or purpose of Prop 8 is central

4 to this litigation.  The issue on which resolution of the present

5 discovery dispute turns is whether that intent should be divined

6 solely from proponents' public or widely circulated communications

7 or disseminations or whether their communications with third

8 parties not intended for widespread dissemination may also

9 illuminate that intent.  Before deciding that issue, the court

10 first addresses the grounds on which proponents seek a protective

11 order.

12

13                                    II

14          Proponents seek to invoke the First Amendment qualified

15 privilege to refrain from responding to any discovery that would

16 reveal political communications as well as identities of

17 individuals affiliated with the Prop 8 campaign whose names have

18 not already been disclosed.  Doc #197 at 14.  The free

19 associational prong of the First Amendment has been held to provide

20 a qualified privilege against disclosure of all rank-and-file

21 members of an organization upon a showing that compelled disclosure

22 likely will adversely affect the ability of the organization to

23 foster its beliefs.  National Ass'n for A of C P v Alabama, 357 US

24 449, 460-63 (1958) ("NAACP"); see also Adolph Coors Co v Wallace,

25 570 F Supp 202, 205 (ND Cal 1983).  This qualified privilege has

26 been found especially important if the disclosures would subject

27 members to reprisals for the exercise of their associational rights

28 under the First Amendment or otherwise deter exercise of those

                                    4

1 rights.  Here, however, plaintiffs are not seeking disclosure of
2 membership lists.  Doc #191 at 13.  Indeed, many names associated
3 with ProtectMarriage.com and the Yes on 8 campaign have already
4 been disclosed.  See ProtectMarriage.com v Bowen, 09-0058-MCE Doc
5 #88 (ED Cal Jan 30, 2009).

6 The California Political Reform Act of 1974 requires
7 disclosure of a great deal of information surrounding the Prop 8
8 campaign, including the identity of, and specific information
9 about, financial supporters.  Cal Govt Code § 81000 et seq.
10 Proponents have not shown that responding to plaintiffs' discovery
11 would intrude further on proponents' First Amendment associational
12 rights beyond the intrusion by the numerous disclosures required
13 under California law — disclosures that have already been widely
14 disseminated.  Proponents asserted at the September 25 hearing that
15 these California state law disclosure requirements extend to the
16 outer boundaries of what can be required of political actors to
17 reveal their activities.  But the information plaintiffs seek
18 differs from that which is regulated by these state disclosure
19 requirements.

20 The First Amendment qualified privilege proponents seek
21 to invoke, unlike the attorney-client privilege, for example, is
22 not an absolute bar against disclosure.  Rather, the First
23 Amendment qualified privilege requires a balancing of the
24 plaintiffs' need for the information sought against proponents'
25 constitutional interests in claiming the privilege.  See Adolph
26 Coors, 570 F Supp at 208.  In this dispute, the interests the
27 parties claim are fundamental constitutional rights.  Proponents
28 argue that their First Amendment associational rights are at stake

United States District Court
For the Northern District of California

while plaintiffs contend that Prop 8 violates their Equal
Protection and Due Process rights and that denial of their
discovery request jeopardizes the vindication of those rights.  The
claimed rights at issue thus appear to be of similar importance.

One tangible harm that proponents have claimed, and
events made known to the court substantiate, lies in threats and
harassment proponents claim have been suffered by known supporters
of Prop 8.  Identifying new information about Prop 8 supporters
would, proponents argue, only exacerbate these problems.  Doc #187.

The court is aware of the tendentious nature of the Prop
8 campaign and of the harassment that some Prop 8 supporters have
endured.  See Doc #187-11.  Proponents have not however adequately
explained why the discovery sought by plaintiffs increases the
threat of harm to Prop 8 supporters or explained why a protective
order strictly limiting the dissemination of such information would
not suffice to avoid future similar events.  In sum, while there is
no doubt that proponents' political activities are protected by the
First Amendment, it is not at all clear that the discovery sought
here materially jeopardizes the First Amendment protections.
Furthermore, whether the First Amendment qualified privilege should
bar all or any part of plaintiffs' discovery request is open to
question under the circumstances of this case.

The key Supreme Court case upon which proponents rely,
NAACP v Alabama, supra, involved a civil contempt against the NAACP
for its failure to reveal the names and addresses of "all its
Alabama members and agents, without regard to their positions or
functions in the Association."  357 US at 451.  As noted,
plaintiffs do not here seek the names and addresses of proponents'

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

rank-and-file members or volunteers.  More importantly, the protection against disclosure afforded by the holding in NAACP appears fairly restricted.

Alabama sought "a large number of the Association's records and papers, including bank statements, leases, deeds, and records of all Alabama 'members' and 'agents' of the Association." 357 US at 453.  The NAACP produced "substantially all the data called for" except for its lists of rank-and-file members.  Id at 454.  Notably, the NAACP did not object "to divulging the identity of its members who are employed by or hold official positions" in the organization or to providing various other business records. Id at 464-65.  The Court contrasted the NAACP's extensive disclosures with that in an earlier case in which another organization made no disclosures at all.  Id at 465-66.  Alabama's request for rank-and-file membership lists in NAACP was predicated solely on its interest in enforcement of the state's foreign corporation registration statute.  Id at 464.

The Court observed that the disclosure of the names of rank-and-file members seemed to lack a "substantial bearing" on whether the NAACP, as a foreign corporation, should be authorized to do business in Alabama.  Id at 464.  The interest of Alabama in disclosure of rank-and-file membership lists thus was insubstantial relative to the significant interests of the NAACP and its members in carrying out their First Amendment and other activities that included – in 1956 – "financial support and [ ] legal assistance to Negro students seeking admission to the state university" and support of "a Negro boycott of the bus lines in Montgomery to compel the seating of passengers without regard to race."  Id at

7

1    452.

2            Similarly, in a later case, the Supreme Court upheld a
3    qualified First Amendment privilege against disclosure of NAACP
4    membership lists where there was "no relevant correlation" between
5    the purpose for which the lists were sought, enforcement of
6    occupational license taxes, and the identity of NAACP rank-and-file
7    members.  <u>Bates v Little Rock</u>, 361 US 516, 525 (1960).  On like
8    grounds, the Supreme Court reversed a contempt conviction of the
9    president of the NAACP Miami branch who refused to produce NAACP
10   membership lists at a 1959 hearing of a state legislative committee
11   investigating "infiltration of Communists" into various
12   organizations.  <u>Gibson v Florida Legislative Committee</u>, 372 US 539
13   (1963).  No evidence in that case suggested that the NAACP was
14   "either Communist dominated or influenced," id at 548, undermining
15   the required nexus between the membership lists and the purpose for
16   which they were sought.  Furthermore, at the hearing, the branch
17   president answered questions concerning membership in the NAACP and
18   responded to questions about a number of persons previously
19   identified as communists or members of communist front or other
20   affiliated organizations.  Id at 543.  Here, too, the qualified
21   First Amendment privilege protected only membership lists, and the
22   NAACP or its officials made significant disclosures apart from
23   membership lists.

24           These cases from the civil rights struggles of the 1950s
25   would thus appear to offer proponents scant support for refusing to
26   produce information other than rank-and-file membership lists which
27   plaintiffs, in any event, do not seek.  Nor does proponents'
28   position gain much traction from <u>McIntyre v Ohio Elections Comm'n</u>,

United States District Court

For the Northern District of California

514 US 334 (1995), which reversed petitioner's conviction, upheld by the Ohio Supreme Court, for anonymously distributing leaflets regarding a referendum on a proposed school tax levy in violation of a statute prohibiting unsigned campaign materials. Petitioner "acted independently," not as part of a campaign committee or organization. Id at 337. Proponents, by contrast, are the official proponents of Prop 8 with responsibility under state law for compliance with electoral and campaign requirements. See Cal Election Code § 342; Cal Gov't Code § 8204.7.

Proponents, moreover, have not demonstrated that the procedure for invoking any First Amendment privilege applicable to their communications with third parties differs from that of any other privilege, such as the attorney-client privilege and trial preparation or work product protection. A party seeking to withhold discovery under a claim of privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed * * * in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." FRCP 26(b)(5)(A)(ii). Proponents have failed to aver that they have prepared a privilege log that would comply with the requirement of FRCP 26(b)(5)(A)(ii), a necessary condition to preservation of any privilege. This failure ordinarily could be fatal to any assertion of a privilege. Burlington Nort & Santa Fe Ry v Dist Ct, Mt, 408 F3d 1142, 1149 (9th Cir 2005).

Proponents suggested at the September 25 hearing that the enumeration requirement of FRCP 26 does not apply to a First Amendment privilege, based as it is on fundamental constitutional

9

United States District Court

For the Northern District of California

principles rather than common law, the origin of the attorney-
client privilege and work product protection.  Proponents contend
that as the communications regarding Prop 8 involve political
speech or association, Doc #197 at 11-12, they are entitled to a
greater degree of confidentiality than common law privileges.  In
fact, as noted, it appears that any First Amendment privilege is a
qualified privilege affording less expansive protection against
discovery than the absolute privileges, such as the attorney-client
and similar privileges.  The First Amendment privilege proponents
seek to invoke requires a balancing of interests that simply are
not weighed in the area of attorney-client communications, and that
balancing tends to limit or confine the First Amendment privilege
to those materials that rather directly implicate rights of
association.

       In striking the appropriate balance, the court notes that
in addition to the substantial financial and related disclosures
required by California law, a rather striking disclosure concerning
campaign strategy has already voluntarily been made by at least
one, if not the principal, campaign manager-consultant employed by
proponents.  Plaintiffs have attached to their memorandum a
magazine article written by Frank Schubert and Jeff Flint, whose
public affairs firm managed the Yes on 8 campaign.  Doc #191-2.  In
the article, Schubert and Flint refer specifically to campaign
strategy and decisions, noting that they needed to convince voters
"that there would be consequences if gay marriage were to be
permanently legalized."  Id at 3.  Schubert and Flint make clear
that their goal in the campaign was to "rais[e] doubts."  Id.  They
explain the campaign's "three broad areas" of focus as "religious

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

freedom," "individual freedom of expression" and "how this new 'fundamental right' would be inculcated in young children through the public schools." Id. Schubert and Flint refer to the help of "a massive volunteer effort through religious denominations." Id. The article describes, in great detail, how Schubert and Flint conceptualized the Yes on 8 television advertising campaign, culminating with "the break of the election": footage of "bewildered six-year-olds at a lesbian wedding." Id at 4-5.

These extensive disclosures about the strategy of proponents' campaign suggest that relatively little weight should be afforded to proponents' interest in maintaining the confidentiality of communications concerning campaign strategy. If harm is threatened from disclosure of proponents' campaign strategy, it seems likely to have been realized by the candid description of the Prop 8 campaign's strategy already disseminated by Schubert and Flint. In any event, the unfortunate incidents of harassment to which proponents point as having occurred appear mostly to have been directed to proponents' financial supporters whose public identification was required by California law.

III

Proponents argue that the discovery sought is not relevant and therefore not discoverable. Under FRCP 26(b)(1), discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense," but "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Accordingly, the court need not determine at this juncture whether

11

United States District Court
For the Northern District of California

the information sought would be admissible at trial; instead, the court must determine whether the information sought is "reasonably calculated" to lead to discovery of admissible evidence.

Plaintiffs assert that the discovery sought is relevant to "the rationality and strength of [proponents'] purported state interests and whether voters could reasonably accept them as a basis for supporting Prop 8," as well as other factual disputes. Doc #191 at 8. Additionally, plaintiffs believe the discovery will lead to "party admissions and impeachment evidence." Id.

Plaintiffs' strongest argument appears to be that some of the information sought about proponents' communications with third parties may be relevant to the governmental interest that proponents claim Prop 8 advances. Id. Relevant information may exist in communications between proponents and those who assumed a large role in the campaign, including the campaign executive committee and political consultants, as that information well may have been conveyed to the ultimate decision-makers, the voters, and thus discloses the intent Prop 8 serves.

Key in this regard is the extent to which the requested discovery could be relevant "to ascertain the purpose" of Prop 8. Doc #187 at 10. Legislative purpose may be relevant to determine whether, as plaintiffs claim, Prop 8 violates the Equal Protection Clause. Washington v Davis, 426 US 229, 239-41 (1976) (holding that a law only violates the Equal Protection component of the Fifth Amendment when the law reflects a "discriminatory purpose," regardless of the law's disparate impact); see also Personnel Adm'r of Massachusetts v Feeney, 442 US 256, 274 (1979) ("purposeful discrimination is the condition that offends the Constitution.")

12

(citation omitted).  The analysis remains the same whether the challenged measure was enacted by a legislature or directly by voters.  <u>Washington v Seattle School Dist no 1</u>, 458 US 457, 484-85 (1982).

Proponents point to <u>Southern Alameda Span Sp Org v City of Union City, Cal</u>, 424 F2d 291, 295 (9th Cir 1970) ("<u>SASSO</u>"), and <u>Bates v Jones</u>, 131 F3d 843, 846 (9th Cir 1997) (en banc), for the proposition that the subjective intent of a voter is not a proper subject for judicial inquiry.  In <u>SASSO</u>, the court determined that "probing the private attitude of the voters" would amount of "an intolerable invasion of the privacy that must protect an exercise of the franchise."  424 F2d at 295.  In <u>Bates</u>, the court looked only to publicly available information to determine whether voters had sufficient notice of the effect of a referendum.  131 F3d at 846.  While these cases make clear that voters cannot be asked to explain their votes, they do not rule out the possibility that other evidence might well be useful to determine intent.

Plaintiffs' proposed discovery is not outside the scope of what some courts have considered in determining the intent behind a measure enacted by voters.  The Eighth Circuit has held that courts may look to the intent of drafters of an initiative to determine whether it was passed with a discriminatory intent.  <u>South Dakota Farm Bureau, Inc v Hazeltine</u>, 340 F3d 583, 594 (8th Cir 2003).  At least one district court in this circuit has considered drafter intent along with voter intent.  <u>City of Los Angeles v County of Kern</u>, 462 F Supp 2d 1105, 1114 (CD Cal 2006).  The parties acknowledge that the line demarking relevance in this context is not clearly drawn.  The difficulty of line-drawing stems

13

from the fact that, as the California Supreme Court put it well, "motive or purpose of [a legislative enactment] is not relevant to its construction absent reason to conclude that the body which adopted the [enactment] was aware of that purpose and believed the language of the proposal would accomplish it." Robert L v Superior Court, 30 Cal 4th 894, 904 (2003).

In the case of an initiative measure, the enacting body is the electorate as a whole. The legislative record for an initiative cannot, therefore, be compiled with the precision that the legislative history of an enactment by a legislative body can be put together. This would seem to suggest, as the Eighth Circuit implied in South Dakota Farm Bureau, that the scope of permissible discovery might well be broader in the case of an initiative measure or a referendum than a law coming out of a popularly elected, and thus democratically chosen, legislative body. However that may be, the mix of information before and available to the voters forms a legislative history that may permit the court to discern whether the legislative intent of an initiative measure is consistent with and advances the governmental interest that its proponents claim in litigation challenging the validity of that measure or was a discriminatory motive.

Proponents have agreed to disclose communications they targeted to voters, including communications to discrete groups of voters. Doc #197 at 6. But at the September 25 hearing, proponents stated that they did not believe "non-public" communications to confirmed Prop 8 supporters or to those involved in the Prop 8 campaign could be relevant to the intent determination. Proponents point out that those communications were

14

United States District Court
For the Northern District of California

1   not directly before the voters.  But it does appear to the court

2   that communications between proponents and political consultants or

3   campaign managers, even about messages contemplated but not

4   actually disseminated, could fairly readily lead to admissible

5   evidence illuminating the messages disseminated to voters.  At

6   least some of these contemplated, but not delivered, messages may

7   well have diffused to voters through sources other than the

8   official channels of proponents' campaign.  Furthermore, of course,

9   what was decided not to be said in a political campaign may cast

10  light on what was actually said.  The line between relevant and

11  non-relevant communications is not identical to the public/non-

12  public distinction drawn by proponents.  At least some "non-public"

13  communications from proponents to those who assumed a large role in

14  the Prop 8 campaign could be relevant to the voters' understanding

15  of Prop 8 and to the ultimate determination of intent.

16          While it appears that plaintiffs' request no 8 seeks

17  relevant disclosures, the request itself is broader than necessary

18  to obtain all relevant discovery.  Proponents point out that even

19  if some of the discovery sought by plaintiffs might be relevant,

20  "virtually every communication made by anyone included in or

21  associated with Protect Marriage" cannot be relevant.  Doc #197 at

22  7.  The court agrees.  Further, of course, no amount of discovery

23  could corral all of the information on which voters cast their

24  ballots on Prop 8.  Proponents' undue burden objection is thus

25  well-taken.  It should suffice for purposes of this litigation to

26  gather enough information about the strategy and communications of

27  the Prop 8 campaign to afford a record upon which to discern the

28  intent underlying Prop 8's enactment.  Plaintiffs' request no 8,

United States District Court
For the Northern District of California

currently encompassing any communication between proponents and any third party, is simply too broad.

Narrowing of plaintiffs' request is required. In their discussions, the parties have focused on the appropriate distinction — that between documents which relate to public communications with third parties and purely private communications among proponents. Hence, discovery directed to uncovering whether proponents harbor private sentiments that may have prompted their efforts is simply not relevant to the legislative intent behind Prop 8. That does not mean that discovery should be limited strictly to communications with the public at large. Documents pertaining to the planning of the campaign for Prop 8 and the messages actually distributed, or contemplated to be distributed, to voters would likely to lead to discovery of admissible evidence, as such documents share a clear nexus with the information put before the voters. Communications distributed to voters, as well as communications considered but not sent appear to be fair subjects for discovery, as the revision or rejection of a contemplated campaign message may well illuminate what information was actually conveyed to voters. Communications that took place after the election date may similarly be relevant if they are connected in some way to the pre-election messages conveyed to the voters. But discovery not sufficiently related to what the voters could have considered is not relevant and will not be permitted.

Plaintiffs are therefore DIRECTED to revise request no 8 to target those communications most likely to be relevant to the factual issues identified by plaintiffs.

\\

16

United States District Court

For the Northern District of California

1    While it is not the province of the court to redraft
2 plaintiffs' request no 8 or to interpose objections for proponents,
3 the foregoing highlights general areas of appropriate inquiry.  It
4 seems to the court that request no 8 is appropriate to the extent
5 it calls for (1) communications by and among proponents and their
6 agents (at a minimum, Schubert Flint Public Affairs) concerning
7 campaign strategy and (2) communications by and among proponents
8 and their agents concerning messages to be conveyed to voters,
9 without regard to whether the voters or voter groups were viewed as
10 likely supporters or opponents or undecided about Prop 8 and
11 without regard to whether the messages were actually disseminated
12 or merely contemplated.  In addition, communications by and among
13 proponents with those who assumed a directorial or managerial role
14 in the Prop 8 campaign, like political consultants or
15 ProtectMarriage.com's treasurer and executive committee, among
16 others, would appear likely to lead to discovery of admissible
17 evidence.

18

19                                    IV

20    Proponents motion for a protective order is GRANTED in
21 part and DENIED in part.  Doc #187.  Proponents have not shown that
22 the First Amendment privilege is applicable to the discovery sought
23 by plaintiffs.  Because plaintiffs' request no 8 is overly broad,
24 plaintiffs shall revise the request and tailor it to relevant
25 factual issues, individuals and entities.  The court stands ready
26 to assist the parties in pursuing specific additional discovery in
27 line with the guidance provided herein and, if necessary, to assist
28 the parties in fashioning a protective order where necessary to

ensure that disclosures through the discovery process do not result in adverse effects on the parties or entities or individuals not parties to this litigation.


        IT IS SO ORDERED.


                         _____
                         VAUGHN R WALKER
                         United States District Chief Judge

United States District Court
For the Northern District of California