# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

KRISTIN M PERRY, SANDRA B STIER, PAUL T KATAMI and JEFFREY J ZARRILLO,

    Plaintiffs,

CITY AND COUNTY OF SAN FRANCISCO,

    Plaintiff-Intervenor,

    v

ARNOLD SCHWARZENEGGER, in his official capacity as governor of California; EDMUND G BROWN JR, in his official capacity as attorney general of California; MARK B HORTON, in his official capacity as director of the California Department of Public Health and state registrar of vital statistics; LINETTE SCOTT, in her official capacity as deputy director of health information & strategic planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as clerk-recorder of the County of Alameda; and DEAN C LOGAN, in his official capacity as registrar-recorder/county clerk for the County of Los Angeles,

    Defendants,

DENNIS HOLLINGSWORTH, GAIL J KNIGHT, MARTIN F GUTIERREZ, HAKSHING WILLIAM TAM, MARK A JANSSON and PROTECTMARRIAGE.COM – YES ON 8, A PROJECT OF CALIOFORNIA RENEWAL, as official proponents of Proposition 8,

    Defendant-Intervenors.

    No   C 09-2292 VRW

    ORDER

_____/

Defendant-intervenors, the official proponents of Proposition 8 ("proponents") move for a limited stay of discovery pending resolution of a purported appeal or mandamus petition in the alternative. Doc #220. Plaintiffs oppose any delay in discovery in light of the upcoming trial date and ask the court to compel proponents to respond to their discovery requests in seven days. Doc #225.

To obtain a stay, proponents "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." <u>Winter v Natural Resources Defense Council, Inc</u>, -- US --, 129 SCt 365, 374 (2008). A "possibility" of success is "too lenient." Id at 375; see also <u>American Trucking Associations, Inc v City of Los Angeles</u>, 559 F3d 1046, 1052 (9th Cir 2009). Because, for the reasons explained below, proponents have met no part of this test, proponents' motion for a stay is DENIED.

I

Proponents are unlikely to succeed on their appeal or mandamus petition because (1) the court of appeals lacks jurisdiction over the appeal and mandamus petition and (2) the appeal lacks merit.

\\
\\
\\
\\

2

**A**

Proponents have noticed an appeal of the court's October 1 order, Doc #214, "to the extent it denies [proponents'] Motion for a Protective Order (Doc #187)." Doc #222. The motion for a protective order cites to <u>National Ass'n for the A of C P v Alabama</u>, 357 US 449 (1958) ("<u>NAACP</u>") (invoking a qualified First Amendment privilege to protect NAACP rank-and-file membership lists against disclosure), and its progeny to claim a qualified First Amendment privilege against discovery of any of proponents' communications with third parties. Doc #187. Proponents' docketing statement in the Ninth Circuit describes the October 1 order as an "INTERLOCUTORY DECISION APPEALABLE AS OF RIGHT." Id at 5. However proponents may characterize the October 1 order, it is manifestly not a final judgment appealable as of right under 28 USC § 1291, nor did proponents seek, or the court find suitable, an interlocutory appeal under 28 USC § 1292(b). Proponents' right to seek review of the October 1 order must therefore rest on the collateral order doctrine or on grounds warranting mandamus by the court of appeals. Neither of these, however, provides an adequate foundation for the instant appeal or mandamus petition.

**1**

The collateral order doctrine allows appeal under section 1291 of "a narrow class of decisions that do not terminate the litigation but must, in the interest of achieving a healthy legal system, nonetheless be treated as final." <u>Digital Equipment Corp v Desktop Direct, Inc</u>, 511 US 863, 867 (1994). The October 1 order was not such a decision.

Ordinarily, of course, the court of appeals lacks jurisdiction to review discovery orders before entry of judgment. Truckstop.net, LLC v Sprint Corp, 547 F3d 1065, 1067 (9th Cir 2008). As interpreted by the Ninth Circuit, the collateral order doctrine allows the court of appeals to exercise jurisdiction over interlocutory appeals of certain orders denying application of a discovery privilege, but only when the order: "(1) conclusively determine[s] the disputed question; (2) resolve[s] an important issue completely separate from the merits of the action; and (3) [is] effectively unreviewable on appeal from final judgment." United States v Austin, 416 F3d 1016, 1020 (9th Cir 2005) (citations omitted). As long as the question remains "tentative, informal or incomplete, there may be no intrusion by appeal." Id (citing Cohen v Beneficial Loan Corp, 337 US 541, 546 (1949)).

In Austin, the Ninth Circuit found that it lacked jurisdiction to review the district court's order that "statements made during discussions between inmates in their cells with no lawyers present are not covered as confidential communications under the joint defense privilege." 416 F3d at 1019. The court held that the third prong of the jurisdictional test was not satisfied because defendants had not "raised any specific privilege claims" over specific communications. Id at 1023.

Here, the October 1 order was not a conclusive determination because proponents had not asserted the First Amendment privilege over any specific document or communication. Proponents' blanket assertion of privilege was unsuccessful, but whether the privilege might apply to any specific document or information was not finally determined in the October 1 order.

4

Moreover, because the First Amendment qualified privilege that proponents seek to invoke requires the court to balance the harm of disclosure against the relevance of the information sought, the applicability of the qualified privilege cannot be determined in a vacuum but only with reference to a specific document or particular information.

Proponents have made no effort to identify specific documents or particular information to which the claim of qualified privilege may apply. Notably, proponents have failed to serve and file a privilege log, a prerequisite to the assertion of any privilege. See <u>Burlington North & Santa Fe Ry Co v United States Dist Court for Dist of Mont</u>, 408 F3d 1142, 1149 (9th Cir 2005). Furthermore, the balancing required to apply the qualified privilege must consider whether any injury or risk to the producing party can be eliminated or mitigated by a protective order. The October 1 order directed the parties to discuss the terms of a protective order and expressed the court's willingness to assist the parties in fashioning such an order. Doc #214 at 17.

The cases proponents cite to support appellate jurisdiction under the collateral order doctrine deal with absolute privileges, like the attorney-client privilege. See Doc #220 at 5 n3 (citing <u>In re Napster, Inc Copyright Litigation</u>, 479 F3d 1078 (9th Cir 2007) (attorney-client privilege); <u>Bittaker v Woodford</u>, 331 F3d 715 (9th Cir 2003) (attorney-client privilege); <u>United States v Griffin</u>, 440 F3d 1138 (9th Cir 2006) (marital privilege)). These cases allow a collateral appeal at least in part because an order denying a claim of absolute privilege usually resolves a question independent from the merits of the underlying case. See

5

In re Napster, 479 F3d at 1088-89.

An order denying a claim of qualified privilege, which balances the harm of production against the relevance of the discovery sought, is not so easily divorced from the merits of the underlying proceeding. The question whether discovery is relevant is necessarily enmeshed in the merits, as it involves questions concerning "the substance of the dispute between the parties." Van Cauwenberghe v Biard, 486 US 517, 528 (1988). Here, for example, the question of relevance is related to the merits of plaintiffs' claims, as the relevance of the information sought would be greater were the court to apply an exacting level of scrutiny to plaintiffs' Equal Protection claims. Doc #214 at 12-13.

2

Proponents also apparently seek mandamus if the appellate court does not accept their interlocutory appeal. Mandamus is a "drastic" remedy that is appropriately exercised only when the district court has failed to act within the confines of its jurisdiction, amounting to a "judicial 'usurpation of power.'" Kerr v United States District Court, 426 US 394, 402 (1976) (citing Will v United States, 389 US 90, 95-96 (1967)). A party seeking mandamus must show that he has "no other adequate means to attain the relief he desires" and that "his right to issuance of the writ is clear and indisputable." Kerr, 426 US at 403 (citations omitted).

In Kerr, petitioners sought a writ of mandamus to vacate the district court's order that petitioners produce personnel files and prisoner files after plaintiffs sought the discovery as part of

their class action against the California Department of Corrections. 426 US at 396-97. Petitioners had asserted that the discovery sought was both irrelevant and privileged. Id. The Court denied mandamus at least in part because petitioners' privilege claim had not been asserted with "requisite specificity." Id at 404.[1] Petitioners therefore had a remedy remaining in the district court: petitioners could assert their privilege claim over a specific document or set of documents and allow the district court to make the privilege determination in the first instance. Id.

Here, the court might yet apply proponents' purported privilege in the manner described in Kerr. Proponents have not identified specific documents they claim are privileged and have not given the court an opportunity to determine whether any claim of privilege might apply to a specific document. Additionally, as the court explained in its October 1 order, it is not "clear and indisputable" that proponents should succeed on their First Amendment claim of privilege. Doc #214 at 4-11. Proponents, as the official supporters of a California ballot initiative, are situated differently from private citizen advocates. Cf McIntyre v Ohio Elections Comm'n, 514 US 334, 351 (1995) (distinguishing between "individuals acting independently and using only their own modest resources" and official campaigns). McIntyre determined whether an individual who distributed leaflets in opposition to a

---

[1] Under quite different, and indeed rather unique, circumstances, the Court has directed an appellate court to consider a writ of mandamus even when petitioners had not asserted privilege claims over specific discovery. See Cheney v United States Dist Court for D C, 542 US 367, 390-391 (2004).

7

local tax levy could be forced to disclose her identity on the leaflet pursuant to an Ohio statute. Id at 338. In this case, plaintiffs' discovery requests do not appear to call for disclosure of identities of persons "acting independently and using their own modest resources," but simply the individuals acting as, or in coordination with, the official sponsors of the Yes on 8 campaign. Plainly, there is a difference between individuals or groups who have assumed the privilege of enacting legislation or constitutional provisions and individuals who merely favor or oppose the enactment. To the extent that plaintiffs' discovery might disclose the identity of individuals entitled to some form of anonymity, an appropriate protective order can be fashioned. A blanket bar against plaintiffs' discovery is unwarranted. Proponents case for mandamus relief is therefore tenuous at best.

B

Having determined that the court of appeals is unlikely to accept proponents' appeal[2] or order mandamus relief, the court turns more specifically to the merits of proponents' motion to stay discovery pending the court of appeals' consideration of proponents' proceedings in that court. For the reasons previously noted and discussed further below, proponents are unlikely to succeed on the merits of their resort to the court of appeals, and their case for irreparable harm is weak.

\\

\\

---

[2] The court of appeals has issued an order to show cause why the appeal should not be dismissed. Ct Appls Docket #09-17241, Doc #8.

8

In its October 1 order, the court declined proponents' invitation to impose a blanket bar against plaintiffs' discovery of proponents' communications with third parties. Doc #214 at 4-11. Proponents contend that a blanket bar against such discovery was required by the First Amendment. Doc #187 at 15 (citing <u>NAACP</u>, 357 US at 460; <u>Bates v City of Little Rock</u>, 361 US 516, 523 (1960); <u>Gibson v Florida Legislative Comm</u>, 372 US 539 (1963)). Proponents misread the October 1 order as foreclosing any application of a First Amendment qualified privilege to the discovery plaintiffs seek. The court simply decided that proponents had not established the grounds necessary to invoke the First Amendment qualified privilege while also sustaining in part proponents' objection to the scope of plaintiffs' eighth document request.

At the risk of repetition, proponents are not likely to succeed on the merits of their appeal for the following reasons: (1) proponents have not put forth a strong case that the entirety of discovery sought by plaintiffs in the eighth document request is protected by a qualified First Amendment privilege when plaintiffs do not seek disclosure of ProtectMarriage.com's rank-and-file membership lists, Doc #214 at 4-11; (2) <u>McIntyre</u>, 514 US 334 (1995), does not support the application of a First Amendment qualified privilege because McIntyre was acting independently, not legislating, and because <u>McIntyre</u> dealt with the constitutionality of an Ohio statute, not the application of a qualified privilege in the context of civil discovery, Doc #214 at 8-9; and (3) proponents have not properly preserved their privilege claim in light of both the numerous disclosures already made surrounding the Yes on 8

9

campaign and of proponents' failure to produce a privilege log. Doc #214 at 10-11.

It simply does not appear likely that proponents will prevail on the merits of their appeal.

2

The question whether proponents are likely to suffer irreparable harm if a stay is not entered is difficult to answer in a vacuum. The court does not know at this juncture exactly what documents or information would be disclosed in the absence of a stay. Generally, the threat of a constitutional violation suggests the likelihood of irreparable harm. Community House, Inc v City of Boise, 490 F3d 1041 (9th Cir 2007). But it does not appear that the entirety of communications responsive to plaintiffs' eighth document request is covered by the First Amendment qualified privilege. Doc #214 at 4-11.

As the court explained in its October 1 order, Prop 8 supporters claim to have faced threats, harassment and boycotts when their identities were revealed; however, proponents have not made a showing that the discovery sought in this case would lead to further harm to any Prop 8 supporter. Doc #214 at 6. Proponents offer nothing new in the instant motion to support their claim that disclosure would lead to irreparable harm. See Doc #220 at 5.

A protective order provides a means by which discovery could continue without the threat of harm proponents seek to avoid. But proponents have not sought a protective order directed to specific disclosures. The possibility that harm could be eliminated or substantially minimized through a protective order

10

suggests that a stay of discovery is not required.

3

In light of the court's determination that proponents have neither demonstrated a likelihood of success on the merits nor shown that they are likely to suffer irreparable harm if the stay is not issued, it is unnecessary to address the remaining factors required for proponents to obtain a stay. Nevertheless, the court will touch on them briefly.

Whether the balance of equities tips in proponents' favor depends upon a comparison of the harm proponents claim they would face if a stay were not granted with the harm plaintiffs would face if a stay were granted. Winter, 129 SCt at 376. As just explained, proponents' projected harm could be remedied through a protective order. Plaintiffs assert they too face harm as they seek to vindicate what they claim is a violation of their constitutional rights. Doc #225 at 13. A stay would serve to delay discovery and potentially postpone the scheduled January 2010 trial. A "mere assertion of delay does not constitute substantial harm." United States v Phillip Morris Inc, 314 F3d 612, 622 (9th Cir 2003). But because proponents have not articulated any meaningful harm, the balance of equities nevertheless tips in plaintiffs' favor in light of the potential for delay.

4

Finally, the court must determine whether a stay is in the public interest. Proponents assert that the denial of a stay will "curtail the First Amendment freedoms surrounding voter-

11

initiated measures." Doc #220 at 7. Plaintiffs counter that citizens have an interest in seeing plaintiffs' constitutional claims determined on the merits as quickly as possible. Doc #225 at 14. It appears that a protective order would likely remedy any harm to the public identified by proponents. It also appears that a limited discovery stay would not significantly affect the public interest in a prompt resolution of plaintiffs' claims. Thus, the public interest does not appear to weigh strongly in favor of any party's position.

II

Even in the unlikely event that the court of appeals exercises jurisdiction over proponents' appeal or mandamus petition, a discovery stay is inappropriate. Proponents have not demonstrated that they are likely to succeed on the merits of their claims or that they face irreparable harm in the absence of a stay. The balance of equities appears to tip in favor of denying a stay, and the public interest does not point clearly one way or another. Accordingly, proponents' motion to stay discovery is DENIED.

Plaintiffs seek an order compelling discovery within seven days. Doc #225. But it is not clear whether the discovery sought can practically be produced within the next seven days. While it is imperative to proceed promptly with discovery to keep these proceedings on schedule, the court prefers to look to the good faith and professionalism of proponents' able counsel to respond to plaintiffs' modified eighth document request in a timely manner. The court stands ready to assist the parties.

\\

Accordingly, the parties are directed to contact the clerk within five days to schedule a telephone conference to discuss the progress of their efforts.

IT IS SO ORDERED.

_____
**VAUGHN R WALKER**
**United States District Chief Judge**