1 | EDMUND G. BROWN JR.
Attorney General of California
2 | JONATHAN K. RENNER
Senior Assistant Attorney General
3 | GORDON BURNS
Deputy Solicitor General
4 | TAMAR PACHTER
Deputy Attorney General
5 | State Bar No. 146083
  455 Golden Gate Avenue, Suite 11000
6 |  San Francisco, CA  94102-7004
  Telephone:  (415) 703-5970
7 |  Fax:  (415) 703-1234
  E-mail:  Tamar.Pachter@doj.ca.gov
8 | *Attorneys for Defendants*
*Attorney General Edmund G. Brown Jr.*
9

10 | IN THE UNITED STATES DISTRICT COURT

11 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13

14

15 | **KRISTIN M. PERRY, et al.,**

Plaintiffs,

16

17 | **v.**

18 | **ARNOLD SCHWARZENEGGER, et al.,**

Defendants.

19

3:09-cv-02292-VRW

**ATTORNEY GENERAL'S OPPOSITION TO MOTION TO REALIGN**

Date:  Submitted on the papers
Judge:  Hon. Vaughn R. Walker, Chief Judge
Trial Date:  January 11, 2010
Action Filed:  May 27, 2009

20
21
22
23
24
25
26
27
28

Attorney General's Opposition to Motion to Realign
(*Perry, et al. v. Schwarzenegger, et al.*, No. 3:09-cv-02292-VRW)

1

**TABLE OF CONTENTS**

2

**Page**

3    Introduction and Summary of Argument ...................................................................................... 1

4    Statement of Relevant Facts ...................................................................................................... 2

     Legal Argument .......................................................................................................................... 4

5          I.       Realignment is inappropriate when federal jurisdiction is not in doubt. ............... 4

6                   A.    *City of Indianapolis* realignment is tied to determining jurisdiction .......... 5

7                   B.    *Larios* is not controlling and was wrongly decided ................................... 7

                    C.    The Attorney General's disagreement with Proponents about the
8                         validity of Proposition 8 does not prejudice them or justify
                          realignment...................................................................................................... 9

9                   D.    The interests of the parties are complex, and efforts to label and
10                        realign the parties' interests will do nothing to resolve the case............... 10

           II.      Even if *City of Indianapolis* applied, it would not provide grounds for
11                  making an involuntary plaintiff of the Attorney General...................................... 11

12   Conclusion ................................................................................................................................. 13

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Attorney General's Opposition to Motion to Realign
(*Perry, et al. v. Schwarzenegger, et al.*, No. 3:09-cv-02292-VRW)

1

## TABLE OF AUTHORITIES

2
**Page**

3
**CASES**

4
*Adams v. Morton*

5
   581 F.2d 1314 (9th Cir. 1978).................................................................................... 8, 9

6
*American Motorists Ins. Co. v. Trane Co.*
   657 F.2d 146 (7th Cir. 1981)...................................................................................... 6

7

8
*Buckley v. City of Redding*
   66 F.3d 188 (9th Cir. 1995)........................................................................................ 5

9
*Cactus Corner, LLC v. U.S. Dept. of Agriculture*

10
   346 F. Supp. 2d 1075 (E.D. Cal. 2004)...................................................................... 7

11
*Caprio v. Wilson*
   513 F.2d 837 (9th Cir. 1975)..................................................................................... 12

12
*City of Indianapolis v. Chase Nat. Bank*

13
   314 U.S. 63 (1941).............................................................................................*passim*

14
*City of Springfield v. Washington Public Power Supply System*
   752 F.2d 1423 (9th Cir. 1985)................................................................................... 8

15

16
*Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*
   819 F.2d 1519 (9th Cir. 1987)................................................................................ 6, 8

17
*Delchamps, Inc. v. Alabama State Milk Control Bd.*

18
   324 F. Supp. 117 (M.D. Ala. 1971) ......................................................................... 12

19
*Development Finance Corp. v. Alpha Housing & Health Care, Inc.*
   54 F.3d 156 (3d Cir. 1995)..................................................................................... 6, 7

20

21
*Dolch v. United California Bank*
   702 F.2d 178 (9th Cir. 1983)................................................................................. 6, 12

22
*Eikel v. States Marine Lines, Inc.*

23
   473 F.2d 959 (5th Cir. 1973)..................................................................................... 12

24
*Finley v. United States*
   490 U.S. 545 (1989).................................................................................................4-5

25

26
*Goosby v. Osser*
   409 U.S. 512 (1973)................................................................................................... 8

27
*Hansen v. United States*

28
   191 F.R.D. 492 (D. Virgin Islands 2000).............................................................12-13

ii

Attorney General's Opposition to Motion to Realign
(*Perry, et al. v. Schwarzenegger, et al.*, No. 3:09-cv-02292-VRW)

**TABLE OF AUTHORITIES**
(continued)

**Page**

*In re Digimarc Corp. Derivative Litigation*
   549 F.3d 1223 (9th Cir. 2008)....................................................................................... 6

*I.N.S. v. Chadha*
   462 U.S. 919 (1983) ...................................................................................................... 9

*Larios v. Perdue*
   306 F. Supp. 2d 1190 (N.D. Ga. 2003) .................................................... 7, 8, 9, 10

*Lewis v. Odell*
   503 F.2d 445 (2d Cir. 1974) ......................................................................................... 6

*Maryland Casualty Co. v. W.R. Grace & Co.*
   23 F.3d 617 (2d Cir. 1993) ................................................................................. 4, 5, 6

*Mottola v. Nixon*
   464 F.2d 178 (9th Cir. 1972)........................................................................................ 7

*Nevada Eighty-Eight, Inc. v. Title Insurance Co. of Minnesota*
   753 F. Supp. 1516 (D. Nev. 1990) ......................................................................... 6, 7

*Pope v. United States*
   323 U.S. 1 (1944) .......................................................................................................... 9

*Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*
   204 F.3d 867 (9th Cir. 2000)................................................................................. 6, 12

*Smith v. Salish Kootenai College*
   43 F.3d 1127 (9th Cir. 2006)........................................................................................ 6

*Standard Oil Co. v. Perkins*
   347 F.2d 379 (9th Cir. 1965)....................................................................................5-6

*Still v. DeBuono*
   927 F. Supp. 125 (S.D.N.Y. 1996).............................................................................. 7

*Strauss v. Horton*
   46 Cal.4th 364 (2009) ...................................................................................... 2, 3, 9, 11

*Wade v. Mississippi Co-op. Extension Service*
   528 F.2d 508 (5th Cir. 1976)........................................................................................ 7

*Zurn Industries, Inc. v. Acton Construction Co., Inc.*
   847 F.2d 234 (5th Cir. 1988)................................................................................ 5, 12

iii

## TABLE OF AUTHORITIES
### (continued)

**Page**

**STATUTES**

28 United States Code
   § 1331................................................................................................................ 5, 8
   § 1332................................................................................................................... 8

42 United States Code
   § 1973 c. ............................................................................................................... 7
   § 1983................................................................................................................... 4

**CONSTITUTIONAL PROVISIONS**

United States Constitution
   Article III, § 2............................................................................................... 5, 7, 8

**COURT RULES**

Federal Rules of Civil Procedure
   Rule 5.1 .............................................................................................................. 11
   Rule 19 ................................................................................................................. 6
   Rule 19(a)............................................................................................................ 12
   Rule 19(a)(2) .................................................................................................. 4, 12
   Rule 21 ................................................................................................................. 6

Attorney General's Opposition to Motion to Realign
(*Perry, et al. v. Schwarzenegger, et al.*, No. 3:09-cv-02292-VRW)

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Apparently, matters of public record have escaped Defendant Intervenors, the proponents of Proposition 8 (Proponents).  This would explain their belated and overheated motion to realign the Attorney General as a plaintiff.

The Attorney General argued in 2008 before the California Supreme Court that Proposition 8 should be invalidated.  The Attorney General's Answer in this case, filed in June, admitted the material allegations of the complaint.  After granting the City and County of San Francisco's (San Francisco) motion to intervene as a plaintiff, the Court ordered the Attorney General to cooperate with counsel for San Francisco in conducting discovery.  Yet Proponents purport to be shocked by recent clues indicating that the Attorney General might not support their arguments, and indeed, may in fact support the case being advanced by the Plaintiffs and San Francisco, and may be cooperating with them.  This has so offended Proponents that they now insist that the Attorney General be moved to the other side of the "v."

Proponents' outrage is both unconvincing and legally irrelevant.  Proponents may be disappointed by the Attorney General's admissions that Proposition 8 violates federal constitutional guarantees.  But neither these admissions nor the Attorney General's cooperation with the Plaintiffs and San Francisco are grounds to realign the Attorney General as a plaintiff.  Realignment of parties according to their interests is not an end it itself.  It is merely a tool to test the court's jurisdiction to hear the case (as demonstrated by each and every case on which Proponents rely).  Here, the court's jurisdiction is indisputable.  It is the Proponents' roles as defendants that create the essential adversarial relationship which satisfies constitutional limits on federal jurisdiction.  That jurisdiction is utterly unaffected by the Attorney General's alignment.  Further, Proponents point to no prejudice.  Nothing requires Proponents to take any of the other defendants into their confidence to share privileged information or litigation strategy, and they wisely have not done so.  The motion to realign is just an invitation to rearrange the furniture.  It does nothing to advance the just and efficient resolution of the case.

The Proponents also overreach by asking the Court to order the Attorney General to file a complaint.  Proponents ask for this relief in their proposed order, but do not mention it in their

1

1   motion or brief.  *Compare* Doc. #216 *with* Doc. #216-1.  This case, however, is not part of the

2   limited class of cases in which a court may compel a party to serve as an involuntary plaintiff.

3   The Proponents cannot use this Court to force the Attorney General (or the Administration or the

4   Counties,[1] for that matter), either to defend or to challenge Proposition 8.  That is a decision

5   within the Attorney General's discretion.

6   **STATEMENT OF RELEVANT FACTS**

7       Proposition 8 was adopted in November 2008.  On December 19, 2008, the Attorney

8   General filed papers with the California Supreme Court in *Strauss v. Horton,* arguing that

9   Proposition 8 was invalid under state law.  See http://appellatecases.courtinfo.ca.gov/

10  search/case/briefing.cfm?dist=0&doc_id=1899725&doc_no=S168047; Doc. #8 at p. 16.

11      This case was filed on May 22, 2009 (Doc. #1), four days before the California Supreme

12  Court upheld Proposition 8.  See *Strauss v. Horton*, 46 Cal.4th 364 (2009).  On May 28, the

13  Proponents moved to intervene as defendants.  Doc. #8.  In their motion, Proponents

14  acknowledged that the Attorney General sought to have Proposition 8 invalidated in the *Strauss*

15  case.  *Id.* at pp. 11-12.  On June 11, the Attorney General filed a notice of non-opposition to the

16  Proponents' motion to intervene.  Doc. #35.

17      On June 12, 2009, the Attorney General filed his Answer in this matter, admitting the

18  material allegations of the Complaint.  Doc. #39.  The other defendants declined to take a

19  position.  Doc. #41, #42, #46.  Only the Proponents contested the material allegations of the

20  Complaint and advocated the validity of Proposition 8.  Doc. #9.

21      The Court subsequently considered and ruled on several motions to intervene, including

22  Proponents', at hearing on August 19, 2009.  Doc. #162.  In granting San Francisco's motion to

23  intervene as a plaintiff, the Court said:

24

25

26      [1] "The Administration" refers to Defendants Governor Arnold Schwarzenegger, Department of Public Health Director and State Registrar of Vital Statistics Mark B. Horton, and Department of Public Health Deputy Director of Health Information & Strategic Planning Linette Scott.  "The Counties" refers to Defendants Alameda Clerk-Recorder Patrick O'Connell and Los Angeles Registrar-Recorder and County Clerk Dean C. Logan.

27

28

2

Attorney General's Opposition to Motion to Realign
  (*Perry, et al. v. Schwarzenegger, et al.*, No. 3:09-cv-02292-VRW)

1

2

3

4

5

> Because it is San Francisco's governmental interest that warrants the decision to allow it to intervene, it seems that San Francisco shares interests with the State Defendants, the Governor and the Attorney General.  Furthermore, as the Attorney General has taken the position that Proposition 8 is unconstitutional, it would appear appropriate in the interest of a speedy determination of the issues that the Attorney General and San Francisco work together in presenting facts pertaining to the affected governmental interests.

6

7

> Counsel for San Francisco and the Attorney General are therefore directed to confer, and if possible, agree on ways to present these facts so as to avoid unnecessary duplication of effort and delay.

8   *Id.* at 56: 21-57:8.  On August 25, 2009, the Attorney General filed his answer to San Francisco's

9   Complaint in Intervention, admitting the material allegations.  Doc. #166.

10   After the hearing, all parties exchanged messages and held meetings in an effort to agree on

11   ways to meet the ambitious schedule for trial in January.  See accompanying Declaration of

12   Tamar Pachter (Pachter Decl.) ¶ 3.  The parties stipulated to accept electronic service of discovery

13   requests and responses, and circulated a list of attorneys to be served.  Pachter Decl. ¶ 3.

14   Plaintiffs' counsel Theodore Olson was the name at the top of that list.  Pachter Decl. ¶ 3.

15   During the early discovery period, Proponents' counsel asked for and received from the

16   Attorney General informal assistance in propounding discovery.  See Pachter Decl. ¶ 4.  As the

17   Court directed, the Attorney General also cooperated with San Francisco in identifying sources of

18   discovery.  Pachter Decl. ¶ 4.  In addition, the parties, including counsel for the Proponents,

19   discussed stipulating to shortening the discovery response time to 21 days.  Pachter Decl. ¶ 5.

20   Although many of the parties did so stipulate, the Attorney General declined, but agreed to

21   produce discovery responses as soon as possible.  Pachter Decl. ¶ 5.

22   The Attorney General's responses to Plaintiffs' requests for admissions were completed on

23   September 23; they were due on September 24.  Pachter Decl. ¶ 6.  Deputy Attorney General

24   Tamar Pachter, who was responsible for serving the responses, was due to take several days of

25   leave beginning at noon on September 23 and so arranged to have the responses electronically

26   served before her departure.  Pachter Decl. ¶ 6.  Unfortunately, the e-mail "group" created for the

27   purpose of serving the responses was a group of one:  only Mr. Olson's email address, which was

28   first on the list, had been successfully added to the address group.  Pachter Decl. ¶ 6.  When the

3

Attorney General's Opposition to Motion to Realign
  (*Perry, et al. v. Schwarzenegger, et al.*, No. 3:09-cv-02292-VRW)

1   email was sent, the attachments included the Attorney General's responses and a service list

2   including counsel for all parties. Pachter Decl. ¶ 6. The message however, only went to Mr.

3   Olson. Pachter Decl. ¶ 6. When the error was discovered, it was corrected, and the responses

4   were re-sent to all counsel on Friday, September 25, with the proof of service sent on September

5   23, as well as a new proof of service. Pachter Decl. ¶ 6.

6           The Attorney General asked Plaintiffs and San Francisco to provide a copy of their

7   opposition brief so that he could determine if he wanted to join in it. Pachter Decl. ¶ 7. On

8   September 23, the Attorney General filed a two-sentence response and joinder in opposition to the

9   Proponents' motion for summary judgment. Doc. #200. That response did not adopt the

10  arguments in the opposition filed later that day by the Plaintiffs and San Francisco, but it did join

11  in opposing entry of summary judgment. *Id.* at pp. 1-2.

12                                  **LEGAL ARGUMENT**

13          The Court should deny the motion to realign. First, realignment is a tool for determining

14  whether the court has subject matter jurisdiction, not an end it itself. *See, e.g., Maryland*

15  *Casualty Co. v. W.R. Grace & Co.*, 23 F.3d 617, 623 (2d Cir. 1993) (citing *City of Indianapolis v.*

16  *Chase Nat. Bank*, 314 U.S. 63, 69 (1941)). Because the Court's jurisdiction is not in doubt, there

17  are no grounds for realignment. Second, when a court realigns parties, that realignment is only

18  for purposes of determining jurisdiction – the labels and the pleadings do not change. There are

19  very limited circumstances, not present here, in which a court may compel a party to be an

20  involuntary plaintiff. *See* Fed. R. Civ. P. 19(a)(2). In particular, courts have avoided joining or

21  realigning government officials as involuntary plaintiffs, finding that the decision to seek

22  affirmative relief is within their discretion.

23  **I.    REALIGNMENT IS INAPPROPRIATE WHEN FEDERAL JURISDICTION IS NOT IN DOUBT.**

24          Notably, Proponents have not moved to dismiss this case for lack of subject matter

25  jurisdiction. That is because this Court has jurisdiction to resolve this case irrespective of the

26  Attorney General's party designation.

27          Jurisdiction requires both statutory and constitutional authority. *Finley v. United States*,

28  490 U.S. 545, 547-48 (1989) (holding that two things are necessary to create jurisdiction, "'[t]he

                                                4

Attorney General's Opposition to Motion to Realign
 (*Perry, et al. v. Schwarzenegger, et al.*, No. 3:09-cv-02292-VRW)

1   Constitution must have given to the court the capacity to take it, and an act of Congress must have

2   supplied it'"). The complaint alleges that state laws violate rights secured by the Constitution in

3   violation of 42 U.S.C. section 1983, a federal statute that authorizes the cause of action. Doc. #1;

4   *see Buckley v. City of Redding,* 66 F.3d 188, 190 (9th Cir. 1995). It therefore "arises under" the

5   Constitution, meeting statutory requirements for federal question jurisdiction found in 28 U.S.C.

6   section 1331. There is also an actual controversy between the Plaintiffs and San Francisco, on the

7   one hand, and the Proponents on the other, about whether Proposition 8 violates the Due Process

8   and Equal Protection clauses of the Fourteenth Amendment. *Compare* Doc. #1 *with* Doc. #26

9   and Doc. #161 *with* Doc. #165. This adversity of interests satisfies the constitutional "case or

10  controversy" limitation on federal jurisdiction found in Article III, section 2 of the Constitution.

11        Neither the Attorney General's admissions nor his cooperation with the Plaintiffs and San

12  Francisco can destroy the existence of that live controversy or the jurisdiction of the court to

13  resolve it. Accordingly, there are no grounds for realignment.

14        **A.    *City of Indianapolis* Realignment is Tied to Determining Jurisdiction.**

15        *City of Indianapolis v. Chase Nat. Bank*, 314 U.S. 63 (1941), is the leading Supreme Court

16  case on realignment. The question before the *City of Indianapolis* court was not whether the

17  parties were properly aligned so that all defendants shared the same interests and all plaintiffs

18  shared the same interests. Instead, the question was whether the court had subject matter

19  jurisdiction, specifically, whether the requirements of diversity jurisdiction were satisfied if the

20  court looked behind the party designations and aligned the parties according to their real interests

21  in the matter in controversy. *Id.* at 69. The Supreme Court's concern was preventing the

22  artificial manufacture of federal jurisdiction by manipulating alignment of parties. *Maryland*

23  *Casualty*, 23 F.3d at 623. *See Zurn Industries, Inc. v. Acton Construction Co., Inc.*, 847 F.2d 234,

24  237 (5th Cir. 1988) (holding that "[t]he objective of *City of Indianapolis* realignment is only to

25  insure that there is a *bona fide* dispute between citizens of different states").

26        When jurisdiction is not at stake, the essential predicate for realignment of parties under

27  *City of Indianapolis* is missing. It is only when jurisdiction is in doubt that the Ninth Circuit has

28  considered realignment. In *Standard Oil Co. v. Perkins*, 347 F.2d 379, 382 (9th Cir. 1965), the

5

1    court held that the parties may be realigned either to confer or to defeat jurisdiction.  *Accord*

2    *Smith v. Salish Kootenai College*, 43 F.3d 1127, 1133 (9th Cir. 2006) (considering tribal

3    jurisdiction).  In *Dolch v. United California Bank*, 702 F.2d 178, 179 (9th Cir. 1983), the court

4    considered realignment on appeal from a motion to dismiss for lack of subject matter jurisdiction.

5    Relying on *City of Indianapolis,* it held that "for jurisdictional purposes" the parties must be

6    realigned if the interests of a defendant coincide with those of the plaintiff, and affirmed the

7    dismissal for lack of jurisdiction.  *Id.* at 181-82.  In *Continental Airlines, Inc. v. Goodyear Tire &*

8    *Rubber Co.*, 819 F.2d 1519, 1522-23 (9th Cir. 1987), the court sua sponte raised a potential defect

9    in diversity jurisdiction.  It found that jurisdiction was lacking when the parties were properly

10   aligned under *City of Indianapolis*, and dismissed the non-diverse party under Federal Rules of

11   Civil Procedure, Rule 21, to preserve diversity jurisdiction.  *Id.* at 1523-24.  In *Prudential Real*

12   *Estate Affiliates, Inc. v. PPR Realty*, *Inc.,* 204 F.3d 867, 872-73 (9th Cir. 2000), the court rejected

13   a jurisdictional challenge based on improper alignment of parties.  It concluded that the allegedly

14   non-diverse parties were "mere stakeholders," whose citizenship could be ignored in determining

15   jurisdiction.[2]  *Id.* at 873-74.  Most recently, in *In re Digimarc Corp. Derivative Litigation*, 549

16   F.3d 1223, 1238 (9th Cir. 2008), the court declined to realign the parties for jurisdictional

17   purposes.

18       Similarly, the cases on which Proponents rely all focused on the court's jurisdiction.  See

19   *Maryland Casualty,* 23 F.3d at 621-24 (declining to realign to destroy diversity jurisdiction);

20   *Lewis v. Odell*, 503 F.2d 445, 446 (2d Cir. 1974) (appealing dismissal for lack of subject matter

21   jurisdiction); *Development Finance Corp. v. Alpha Housing & Health Care, Inc.*, 54 F.3d 156,

22   160 (3d Cir. 1995) (holding that where party designations have jurisdictional consequences, court

23   must align the parties before determining jurisdiction); *American Motorists Ins. Co. v. Trane Co.*,

24       [2] Proponents sometimes refer to the Attorney General as a "nominal defendant," though
     they do not ascribe any particular significance to the designation. Doc. #216 at pp. 6, 8. In cases
25   like *Prudential Real Estate Affiliates*, however, courts have ignored "nominal" parties for
     purposes of jurisdictional analysis and realignment. 204 F.3d at 873 (refusing to consider
26   citizenship of, or to realign, parties joined as mere stakeholders). *See also Nevada Eighty-Eight,*
     *Inc. v. Title Insurance Co. of Minnesota*, 753 F. Supp. 1516, 1526 (D. Nev. 1990) (declining to
27   realign third party defendants who are not necessary or indispensable under Rule 19). Thus,
     styling the Attorney General a "nominal defendant" does not advance Proponents' argument.

28

6

1    657 F.2d 146, 149-151 (7th Cir. 1981) (considering realignment for purposes of determining

2    diversity jurisdiction); *Nevada Eighty-Eight, Inc. v. Title Ins. Co. of Minnesota*, 753 F. Supp.

3    1516, 1521-26 (D. Nev. 1990) (considering motion to dismiss for lack of subject matter

4    jurisdiction).  Sometimes the jurisdictional issue is not diversity jurisdiction, but removal

5    jurisdiction, see *Still v. DeBuono*, 927 F. Supp. 125, 129-131 (S.D.N.Y. 1996), or standing, see

6    *Mottola v. Nixon*, 464 F.2d 178, 179-181 (9th Cir. 1972), but in each case the court discussed

7    realignment only as a tool to assess its jurisdiction to entertain the case.  These cases do not

8    govern here, where jurisdiction is not in question.

9           **B.     *Larios* Is Not Controlling and Was Wrongly Decided.**

10          Proponents also cite *Larios v. Perdue,* 306 F. Supp. 2d 1190 (N.D. Ga. 2003), the only case

11   in which a court has held that parties should be realigned according to their interests even when it

12   would not determine the court's jurisdiction.  This Court is not bound by that case, *see Cactus*

13   *Corner, LLC v. U.S. Dept. of Agriculture*, 346 F. Supp. 2d 1075, 1105-06 (E.D. Cal. 2004), nor

14   should it be persuaded by it.

15          *Larios* was a redistricting challenge before a three-judge panel pursuant to section 5 of the

16   Voting Rights Act, 42 U.S.C. § 1973c.  306 F. Supp. 2d at 1194.  As here, there was no motion to

17   dismiss for lack of jurisdiction.  Three of the defendants moved to realign another defendant, state

18   Senator Eric Johnson, as a plaintiff solely because his interests were aligned with the plaintiffs'

19   and opposed to their own.  *Id.* at 1195.  Like the Attorney General, Senator Johnson did not deny

20   any of the material allegations of the complaint, and opposed the defendants' motion to dismiss.

21   *Id.* at 1196.  The district court granted the motion, even though the realignment had no impact on

22   the court's jurisdiction, holding that "the need to realign a party whose interests are not adverse to

23   those of his opponent(s) exists regardless of the basis for federal jurisdiction." *Id.* at 1195.  But

24   the cases on which the court relied do not support this statement.  Instead, they support the more

25   limited proposition that realignment is not limited to determining *diversity* jurisdiction.  See

26   *Development Finance Corp.,* 54 F.3d at 159; *Wade v. Mississippi Co-op. Extension Service*, 528

27   F.2d 508, 521-22 (5th Cir. 1976).

28
                                                  7

1    The *Larios* court's analysis, which would permit realignment for its own sake, untethered to

2    a determination of jurisdiction, does not withstand scrutiny.  The court correctly noted that the

3    need for adversity between parties stems not just from the diversity statute, but from the

4    constitutional case and controversy requirement of Article III, which limits federal jurisdiction to

5    live contests between adversaries.  306 F. Supp. 2d at 1196-97.  But, as here, in *Larios* there was

6    a contest that satisfied both Article III and the federal question statute and that survived in spite of

7    the fact that Senator Johnson's sympathies lay with the plaintiffs:  the controversy between the

8    plaintiffs and the moving defendants over the redistricting plan.  *See City of Springfield v.*

9    *Washington Public Power Supply System*, 752 F.2d 1423, 1426-27 (9th Cir. 1985) (holding that

10   case or controversy requirement was not destroyed by concessions of government defendants, in

11   part because intervenor contested the allegations of the complaint).

12   Diversity jurisdiction is destroyed by a single non-diverse opposing party.  *See Continental*

13   *Airlines*, 819 F.2d at 1522-23.  Unlike diversity, federal question jurisdiction endures so long as

14   there is a single live controversy arising under federal law between any two opposing parties.[3]

15   *See Goosby v. Osser*, 409 U.S. 512, 516-17 (1973) (holding that federal jurisdiction was not

16   destroyed when Attorney General conceded allegations of complaint because other parties

17   vigorously contested the case); *Adams v. Morton*, 581 F.2d 1314, 1319 (9th Cir. 1978) (holding

18   that government's concession did not destroy federal jurisdiction, in part because intervenors

19   effectively contested the complaint); *City of Springfield*, 752 F.2d 1426-27.  If this were not the

20   case, then this Court's jurisdiction would be in jeopardy even if the Attorney General were

21   realigned as a plaintiff, because the Administration and the Counties, while not admitting the

22   allegations of the complaints, are not contesting them, they are taking no position.  Doc. #41, #42,

23   #46, #169.

24

25       [3] Federal question jurisdiction is not destroyed by a single defendant who admits the
     allegations of the complaint, so long is there is one defendant who contests the material
26   allegations of the complaint.  The *Larios* court unintentionally admitted exactly this point by
     noting that "were Senator Johnson the sole defendant in this action, there would be no justiciable
27   case or controversy here."  306 F. Supp. 2d at 1197 n.2.  By implication, because Senator Johnson
     was not the sole defendant, there was no jurisdictional doubt warranting his realignment.
28

                                                    8

Attorney General's Opposition to Motion to Realign
  (*Perry, et al. v. Schwarzenegger, et al.*, No. 3:09-cv-02292-VRW)

1    The *Larios* court and Proponents are mistaken in arguing that a government official's

2    decision not to contest a case amounts to collusion, or demeans the adversary process, or deprives

3    the court of Article III jurisdiction.  Flatly rejecting these very arguments, the Supreme Court

4    said, "it would be a curious result if, in the administration of justice, a person could be denied

5    access to the courts because the Attorney General of the United States agreed with the legal

6    arguments asserted by the individual."  *I.N.S. v. Chadha*, 462 U.S. 919, 939 (1983); *see also Pope*

7    *v. United States,* 323 U.S. 1, 11 (1944).  Even in the absence of a co-defendant with a more robust

8    conflict, a government defendant's agreement on the merits of the plaintiff's case does not

9    destroy jurisdiction, in part because the government has a duty to enforce the law until a court

10   declares it invalid.  *See, e.g.*,  *Chadha*, 462 U.S. at 939-40 (noting that even though a federal

11   agency conceded the invalidity of deportation law, absent a favorable ruling, it still would have

12   deported the petitioner); *Adams*, 581 F.2d at 1319 (noting that even though government agreed

13   with plaintiff's statutory interpretation, it could not act on that interpretation until the claims were

14   adjudicated).  In none of these cases did the court realign parties.  Similarly here, although the

15   Attorney General agrees that Proposition 8 is invalid under the federal constitution, he

16   nevertheless has an obligation to enforce the law until a court declares it invalid.  The Attorney

17   General's admissions have no effect on this Court's jurisdiction, and do not require realignment.

18        In short, few would quarrel with the conclusion that the need for a federal court to assess its

19   *jurisdiction* is equally strong in federal question cases as it is in diversity cases.  But the *Larios*

20   court's conclusion that there is a need to assess *alignment of the parties* irrespective of the court's

21   jurisdiction, 306 F. Supp. 2d at 1197, is a leap wholly unjustified by case law or logic.

22   **C.    The Attorney General's disagreement with Proponents about the validity**
         **of Proposition 8 does not prejudice them or justify realignment.**
23

24        The Proponents' motion is a solution in search of a problem.  Undeniably, realigning the

25   Attorney General as a plaintiff would change nothing in terms of assessing this Court's

26   jurisdiction.  Instead, Proponents affect great indignation about their suspicions that the Attorney

27   General is cooperating with the Plaintiffs and San Francisco against them.  These charges draw

28   attention, but should not distract from the less colorful reality that Proponents do not and cannot

9

1    show that they suffer any palpable prejudice.  Proponents have known for some time that in the

2    Attorney General's opinion, the validity of Proposition 8 is legally suspect; and that he previously

3    worked with San Francisco and other parties to convince the California Supreme Court to find

4    that Proposition 8 is invalid under state law.  After all, Proponents litigated against the Attorney

5    General in *Strauss v. Horton*.  See Doc. # 8 at p. 16.  The notion that Proponents ever expected

6    the Attorney General to defend Proposition 8 in this case, or in any way to be their "friend," Doc.

7    #216 at p. 7, is absurd.  And although they grumble about cooperation between the Attorney

8    General and Plaintiffs, Proponents do not explain how realigning the Attorney General will

9    ameliorate this complaint.

10        Equally absurd is Proponents' argument that the Court should realign the Attorney General

11   because he disagrees with them, agrees with the Plaintiffs, and is not behaving like their "friend."

12   Doc. #216 at p. 7.  Save for the flawed decision in *Larios*, Proponents cite no case in which a

13   court realigned a party solely because he was not a "friend" to a co-party.  Yet, based on a service

14   error and the timing of service and filing, Proponents jump to the conclusion first, that counsel for

15   the Attorney General intentionally left them off the service list for responses to requests for

16   admission to create an advantage for Plaintiffs; and second, that the Attorney General "must

17   have" reviewed the Plaintiffs' opposition to the motion for summary judgment before joining in

18   opposition.  Doc. #216 at pp. 9-10.  This is all less than compelling, even silly, given that there

19   was no material difference between the Attorney General's responses to requests for admissions

20   and the admissions made in the answers he filed and served many months before (*compare* Doc.

21   #39 and #166 *with* Doc. #204-1), and that the Attorney General's response to the motion for

22   summary judgment did no more join in the outcome the Plaintiffs predictably requested, *i.e.*, that

23   summary judgment be denied (Doc. # 200).

24        **D.    The interests of the parties are complex, and efforts to label and realign the
           parties' interests will do nothing to resolve the case.**

25

26        As demonstrated above, *City of Indianapolis* and its progeny do not support realigning the

27   Attorney General, nor do the Proponents suffer any prejudice that realignment might address.

28   The Court should also decline any invitation to use its discretion to realign the parties according

                                                        10

     Attorney General's Opposition to Motion to Realign
       (*Perry, et al. v. Schwarzenegger, et al.*, No. 3:09-cv-02292-VRW)

1   to their interests.  Although there is surface appeal to the argument that everyone on the same

2   team should wear the same uniform, the Court should beware of entering a thicket of complex

3   interests.  Sorting them out would just sap the limited resources of the parties and the Court, and

4   do nothing to resolve this case efficiently or justly.

5          For example, although the Attorney General's interests are not aligned with the Proponents,

6   neither are they necessarily aligned with the Plaintiffs, or for that matter, with San Francisco, in

7   all respects.  It was within the Attorney General's discretion to move to be realigned as a plaintiff,

8   or to intervene as a plaintiff and ask the federal court to decide the validity of state law.  *See* Fed.

9   R. Civ. P. 5.1.  Instead, the Attorney General chose to accept and be bound by the California

10  Supreme Court's decision in *Strauss v. Horton.*  Once sued, however, the Attorney General had

11  an obligation to respond to the Complaint, and in responding had a duty to uphold the federal

12  constitution as he sees it, which led to admitting the material allegations of the complaints.  Doc.

13  # 39, #166.  Admitting the allegations of the complaint is not equivalent to seeking affirmative

14  relief.  In addition, the Attorney General has sometimes opposed the Plaintiffs and joined the

15  Proponents.  He opposed the Plaintiffs' motion for a preliminary injunction, and did not join the

16  Plaintiffs in opposing the Proponents' (or other proposed intervenors') motion to intervene.  Doc.

17  #34; #35, #95, #121, #122.

18         Realigning parties according to interest is not a simple matter, and the Attorney General is

19  only the beginning.  Questions will inevitably arise about whether the Administration and the

20  Counties, who are taking no position on the validity of Proposition 8, are properly aligned.

21  Because there is no legal or practical reason to realign the Attorney General, and because it would

22  only entangle the Court in thorny questions that would delay rather than advance this case, the

23  motion should be denied.

24  **II.    EVEN IF *CITY OF INDIANAPOLIS* APPLIED, IT WOULD NOT PROVIDE GROUNDS FOR
        MAKING AN INVOLUNTARY PLAINTIFF OF THE ATTORNEY GENERAL.**

25

26         Proponents' Proposed Order would have the Court order "that Attorney General Brown is

27  realigned as a plaintiff in this action, *and that he shall accordingly file a complaint* with the

28  Court."  Doc. #216-1, emphasis added.  Proponents' motion and memorandum, however, do not

                                                11

1   request this relief or address whether the Court can or should compel the Attorney General to file

2   a complaint.  See Doc. #216.

3        The Attorney General is aware of no case involving *City of Indianapolis* realignment in

4   which the party realigned was ordered to change either his party label or his pleading.  This is in

5   part, as discussed above, because realignment under *City of Indianapolis* is *for jurisdictional*

6   *purposes* only; it does not realign the parties for all purposes.  *See, e.g., City of Indianapolis,* 314

7   U.S. at 70 (discussing the doctrine governing "alignment of parties for purposes of determining

8   diversity of citizenship"); *Prudential Real Estate Affiliates*, 204 F.3d at 874 (declining "to realign

9   the parties for purposes of determining the existence of diversity jurisdiction"); *Dolch*, 702 F.2d

10  at 181 (noting that under *City of Indianapolis,* "the named defendant must be realigned as a

11  plaintiff for jurisdictional purposes"); *Zurn Industries*, 847 F.2d at 238 (noting that efforts of

12  court to sort disputes and map a reasonable process for trial "should not include a realignment for

13  diversity purposes"); *Eikel v. States Marine Lines, Inc.*, 473 F.2d 959, 962-63 & n.3 (5th Cir.

14  1973) (distinguishing between joining a party as an involuntary plaintiff under Rule 19(a)(2) and

15  realigning a party for purposes of jurisdiction).

16       Even in the context of a motion to join a party, the court may join an involuntary plaintiff

17  only in very limited circumstances that do not apply here.  *See* Fed. R. Civ. P. 19(a)(2); *Caprio v.*

18  *Wilson*, 513 F.2d 837, 839-840 (9th Cir. 1975) (holding that a party may be joined as an

19  involuntary plaintiff only when he has a trust relationship with the plaintiff that obligates him to

20  allow the plaintiff to use his name in the action); *Eikel*, 473 F.2d at 961-62 (same).  The law

21  disfavors forced joinder of a party as plaintiff based on the general rule that in our adversary

22  system, only a party who initiates a lawsuit should be saddled with the procedural burdens of a

23  plaintiff.  *Id.* at 962.

24       Courts have also resisted ordering the government and government officials to involuntarily

25  bear a plaintiff's burdens, finding that these decisions are within government's discretion, in

26  which the courts should not interfere.[4]  In *Caprio v. Wilson*, the Ninth Circuit declined to join the

27          [4] For this reason, Proponents' citation to *Delchamps, Inc. v. Alabama State Milk Control*
    *Bd.*, 324 F. Supp. 117 (M.D. Ala. 1971), is inapposite.  In that case, the Attorney General himself
28                                                                                          (continued…)

                                          12

1    Post Office as an involuntary plaintiff, holding that its decision to commence or join and action

2    against the defendants rested "in its sound discretion."  513 F.2d at 840.  In *Hansen v. United*

3    *States*, 191 F.R.D. 492 (D. Virgin Islands 2000), the district court denied a motion to realign the

4    government of the Virgin Islands as a plaintiff, holding that "[t]he Attorney General has

5    determined that this is not an appropriate case for the government to pursue."  *Id.* at 495.

6    Similarly here, the Attorney General chose not to intervene as a plaintiff to seek affirmative relief,

7    and the Court should not interfere with his exercise of discretion.  Indeed, ordering the Attorney

8    General to assume the burdens of a plaintiff would be prejudicial at this late date, considering the

9    fact that the deadline has passed for expert disclosure and that the deadline for factual discovery

10   is fast approaching.  The motion to realign should be denied.

11                                               **CONCLUSION**

12        For the foregoing reasons, the Attorney General asks the Court to deny the motion to

13   realign him as a plaintiff.

14

15   Dated:  October 28, 2009                          Respectfully Submitted,

16                                                     EDMUND G. BROWN JR.
                                                       Attorney General of California
17                                                     JONATHAN K. RENNER
                                                       Senior Assistant Attorney General
18                                                     GORDON BURNS
                                                       Deputy Solicitor General
19

20
                                                       */S/ TAMAR PACHTER*
21                                                     TAMAR PACHTER
                                                       Deputy Attorney General
22                                                     *Attorneys for Defendant*
                                                       *Attorney General Edmund G. Brown Jr.*
23

24   SA2009310603
     AG Op to Motion to Realign 10272009.doc

25

26

27   _____
     (…continued)
28   moved to be realigned. *Id.* at 117-18.

                                                    13