COOPER AND KIRK, PLLC
Charles J. Cooper (DC Bar No. 248070)*
*ccooper@cooperkirk.com*
David H. Thompson (DC Bar No. 450503)*
*dthompson@cooperkirk.com*
Howard C. Nielson, Jr. (DC Bar No. 473018)*
*hnielson@cooperkirk.com*
Nicole J. Moss (DC Bar No. 472424)*
*nmoss@cooperkirk.com*
Jesse Panuccio (DC Bar No. 981634)*
*jpanuccio@cooperkirk.com*
Peter A. Patterson (OH Bar No. 0080840)*
*ppatterson@cooperkirk.com*
1523 New Hampshire Ave. N.W., Washington, D.C. 20036
Telephone: (202) 220-9600, Facsimile: (202) 220-9601

LAW OFFICES OF ANDREW P. PUGNO
Andrew P. Pugno (CA Bar No. 206587)
*andrew@pugnolaw.com*
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 608-3065, Facsimile: (916) 608-3066

ALLIANCE DEFENSE FUND
Brian W. Raum (NY Bar No. 2856102)*
*braum@telladf.org*
James A. Campbell (OH Bar No. 0081501)*
*jcampbell@telladf.org*
15100 North 90th Street, Scottsdale, Arizona 85260
Telephone: (480) 444-0020, Facsimile: (480) 444-0028

ATTORNEYS FOR DEFENDANT-INTERVENORS DENNIS HOLLINGSWORTH,
GAIL J. KNIGHT, MARTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM,
MARK A. JANSSON, and PROTECTMARRIAGE.COM – YES ON 8, A
PROJECT OF CALIFORNIA RENEWAL

* Admitted *pro hac vice*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO, <br><br> Plaintiffs, <br><br> CITY AND COUNTY OF SAN FRANCISCO, <br><br> Plaintiff-Intervenor, <br><br> v. <br><br> ARNOLD SCHWARZENEGGER, in his official | CASE NO. 09-CV-2292 VRW <br><br> **DEFENDANT-INTERVENORS' REPLY IN SUPPORT OF MOTION TO REALIGN DEFENDANT EDMUND G. BROWN, JR.** <br><br> Date: Submitted on the papers <br> Location: Courtroom 6, 17th Floor <br> Judge: Chief Judge Vaughn R. Walker |

i

capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the California Department of Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; and DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles,

     Defendants,

and

PROPOSITION 8 OFFICIAL PROPONENTS DENNIS HOLLINGSWORTH, GAIL J. KNIGHT, MARTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM, and MARK A. JANSSON; and PROTECTMARRIAGE.COM – YES ON 8, A PROJECT OF CALIFORNIA RENEWAL,

     Defendant-Intervenors.

<u>Additional Counsel for Defendant-Intervenors</u>

ALLIANCE DEFENSE FUND
Timothy Chandler (CA Bar No. 234325)
*tchandler@telladf.org*
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 932-2850, Facsimile: (916) 932-2851

Jordan W. Lorence (DC Bar No. 385022)*
*jlorence@telladf.org*
Austin R. Nimocks (TX Bar No. 24002695)*
*animocks@telladf.org*
801 G Street NW, Suite 509, Washington, D.C. 20001
Telephone: (202) 393-8690, Facsimile: (202) 347-3622

* Admitted *pro hac vice*

ii

DEFENDANT-INTERVENORS' REPLY IN SUPPORT OF MOTION TO REALIGN DEFENDANT EDMUND G. BROWN, JR. – CASE NO. 09-CV-2292 VRW

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 1

I. Realignment Is Proper For Reasons Other Than Assessing Jurisdiction. ............................... 1

II. The Current Alignment Of the Attorney General Prejudices Defendant-Intervenors And Undermines The Adversarial Nature Of The Proceedings. ............................................. 3

III. The Interests Of Attorney General Brown and Plaintiffs Are Clearly Aligned. .................... 5

IV. The Attorney General Is Not A "Nominal" Party In The Sense Urged By Plaintiffs. ........... 7

V. The Attorney General's Preference to be Labeled a Defendant in this Action Does Not Empower Him To Thwart The Requirement Of Adversity. ............................................. 7

CONCLUSION .......................................................................................................................... 8

# TABLE OF AUTHORITIES

**Cases**                                   **Page**

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) .................................................................... 6

*California ex rel. Vand de Kamp v. Tahoe Reg'l Planning Auth.*, 792 F.2d 775
   (9th Cir. 1986) ........................................................................................................................ 6

*Christie v. Standard Ins. Co.*, No. C 02-02520 WHA, 2002 U.S. Dist. LEXIS 22062
   (N.D. Cal. July 19, 2002) ................................................................................................ 2, 3, 4

*Delchamps, Inc. v. Alabama State Milk Control Bd.*, 324 F. Supp. 117 (M.D. Ala. 1971) .... 2, 6

*Dolch v. United California Bank*, 702 F.2d 178 (9th Cir. 1983) .............................................. 1, 2

*In re Marriage Cases*, 183 P.3d 384 (Cal. 2008) ........................................................................ 4

*Independent. Towers of Wash. v. Wash.*, 350 F.3d 925 (9th Cir. 2003) ..................................... 4

*Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63 (1941) ............................................................... 7

*Larios v. Perdue*, 306 F. Supp. 2d 1190 (N.D. Ga. 2003) ................................................... 2, 3, 4

*League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831
   (5th Cir. 1993) ........................................................................................................................ 3

*Lockyer v. City and County of San Francisco*, 33 Cal. 4th 1055 (2004) .................................... 6

*Plumtree Software Inc. v. Datamize, LLC*, No. C 02-5693 VRW, 2003 U.S. Dist.
   LEXIS 26948 (N.D. Cal. Oct. 6, 2003) ......................................................... 2, 3, 4, 5, 7

*Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867 (9th Cir. 2000) .......... 5

*Standard Oil Co. v. Perkins*, 347 F.2d 379 (9th Cir. 1965) ........................................................ 5

*Still v. DeBuono*, 927 F. Supp. 125 (S.D.N.Y. 1996) ................................................................. 7

*United States v. Johnson*, 319 U.S. 302 (1943) .......................................................................... 4

## INTRODUCTION

There is no defensible reason for allowing the Plaintiffs and Plaintiff-Intervenors (hereinafter collectively referred to as "Plaintiffs") to maintain an ally in defendants' camp. No one denies that the Attorney General is substantively aligned with Plaintiffs on whether Proposition 8 is constitutional—the primary issue in this case. No one denies—and the Attorney General essentially admits—that he is collaborating with Plaintiffs on discovery and evidentiary matters. The obvious reality is that the Attorney General is a plaintiff in all but name. Little wonder that Plaintiffs and the Attorney General want to keep him on the defense side where he can provide them with made-to-order concessions useful to their common mission of invalidating Proposition 8. Their objections to realignment, however, are make-weight. Evidentiary and practical concerns—not just jurisdictional grounds—are established reasons for realignment. Word games do not suffice: the Attorney General is a nominal *defendant*, not a nominal party, which is why Plaintiffs have already argued that his admissions are entitled to great weight. The disagreement between Plaintiffs and the Attorney General over the preliminary injunction motion was a matter of tactics, not ultimate objective—and, in any event, that issue is irrelevant going forward. And, lastly, speculation about what legal positions a new Attorney General may or may not take upon assuming office in January 2011 is immaterial to properly aligning *this* Attorney General for a trial scheduled for January 2010. If a new Attorney General decides to defend Proposition 8 rather than assail it, he or she may seek, with our enthusiastic endorsement, to be redesignated as a defendant. For now, however, the Attorney General is a *de facto* plaintiff and should be denominated as such.

## ARGUMENT

### I. Realignment Is Proper For Reasons Other Than Assessing Jurisdiction.

The Attorney General's primary argument is that realignment is proper only in cases in which the alignment of the parties affects the Court's jurisdiction. *See* Doc # 239 at 4-7. Indeed, the Attorney General states that "each and every case" relied upon in our opening brief demonstrates that realignment is "merely a tool to test the court's jurisdiction." *Id*. at 6. Both of these contentions are simply wrong.

As the Ninth Circuit has explained, "[t]he courts, not the parties, are responsible for aligning

the parties according to their interests in the litigation." *Dolch v. United California Bank*, 702 F.2d 178, 181 (9th Cir. 1983). While this responsibility may be most pressing in situations in which the alignment of the parties goes to the Court's jurisdiction—*i.e.*, its very power to hear a dispute—the Attorney General has not identified any case law suggesting that the Court's authority is limited to such situations. This Court, in fact, has held otherwise. *See Plumtree Software Inc. v. Datamize, LLC*, No. C 02-5693 VRW, 2003 U.S. Dist. LEXIS 26948, at *4-*8 (N.D. Cal. Oct. 6, 2003) (holding that district court has the authority to realign parties despite absence of jurisdictional issue); *see also Christie v. Standard Ins. Co.*, No. C 02-02520 WHA, 2002 U.S. Dist. LEXIS 22062, at *19-*20 (N.D. Cal. July 19, 2002) (realigning party for discovery purposes in absence of jurisdictional controversy).

And, as we explained in our opening brief, district courts have realigned government defendants as plaintiffs even where the courts' jurisdiction did *not* hinge on the decision. *See* Doc # 216 at 12-13. The Attorney General attempts to distinguish one of those cases, *Delchamps, Inc. v. Alabama State Milk Control Bd.*, 324 F. Supp. 117 (M.D. Ala. 1971), on the ground that the government official in question (the Attorney General of Alabama) "himself moved to be realigned." Doc # 239 at 17 n.4. But as we have explained, the proper alignment of the parties is for the Court, not the parties, to decide, *see Dolch*, 702 F.2d at 181; the Court's authority and responsibility thus does not depend upon which party seeks realignment.

The Attorney General does not even attempt to distinguish another such case, *Larios v. Perdue*, 306 F. Supp. 2d 1190 (N.D. Ga. 2003); rather, he claims it "was wrongly decided." Doc # 239 at 12 (capitalization altered), *see also id.* at 14. This claim, of course, stands or falls with the Attorney General's assertion that the Court lacks authority to realign the parties when jurisdiction is not at issue—an assertion that, as we have explained, is incorrect. Indeed, the Attorney General's discussion of *Larios* only succeeds in emphasizing its factual and legal similarities to this case. *Larios* is directly on point and confirms the need for realignment where a public official, sued in his official capacity, walks arm-in-arm with the plaintiffs. The *Larios* court realigned the President of the Georgia Senate because:

- his positions were "wholly consonant" with those of the plaintiffs;

- his answer did not deny any of the substantive allegations in plaintiffs' complaint;
- he opposed the motions of his co-defendants; and
- he took positions adverse to co-defendants in response to questions posed by the court.

*See Larios*, 306 F. Supp. 2d at 1196.

"Simply put, [the Attorney General] has taken—and undoubtedly will continue to take—precisely the same positions espoused by the plaintiffs in this case, and his interests, as reflected in those positions, are aligned with those of the plaintiffs and not with those of [Defendant-Intervenors]. Thus, … realignment plainly is appropriate." *Id.*[1]

### II. The Current Alignment of the Attorney General Prejudices Defendant-Intervenors and Undermines the Adversarial Nature of the Proceedings.

Unlike the Attorney General, Plaintiffs do not contest this Court's authority to realign parties for nonjurisdictional purposes. Doc # 240 at 3. They argue, however, that it would be inappropriate to realign the Attorney General because he has stated an intention not to produce evidence at trial. *Id*. True as that may be, it is by no means the *sine qua non* of the realignment inquiry. As this Court recognized in *Plumtree*, courts look to the "primary purpose" of the litigation and "should align the parties in accordance with the primary dispute in the controversy." 2003 U.S. Dist. LEXIS 26948, at *8.[2] The primary dispute here, of course, centers on the validity of Proposition 8 under the United States Constitution. On that question, the Attorney General and Plaintiffs stand united against Defendant-Intervenors, and the party alignment in this case should reflect that reality. "To allow the current alignment would frustrate the adversarial purpose of the judicial system." *Christie*, 2002 U.S. Dist. LEXIS 22062, at *20.

Events to date in this litigation illustrate that a misaligned party can, among other things, lead parties to attempt to manipulate the presentation of and weight to be accorded evidence. For

---

[1] *See also League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 844 (5th Cir. 1993) (en banc) ("[I]f the Attorney General changes his views on the merits of the case" to agree with plaintiffs' legal theories, "realigning him with the plaintiffs may be appropriate.").

[2] In *Plumtree* the Court did consider whether realignment would "aid in the logical presentation of the evidence at trial," but this consideration was tied to determining the dispute's "primary purpose." 2003 U.S. Dist. LEXIS 26948, at *12-*13. Moreover, it was only one of six considerations the Court identified as supporting that determination.

example, despite the Attorney General's contention that he would "play a minor role in creating the evidentiary record," Doc # 127 at 2, Plaintiffs engaged him in discovery by presenting him with detailed requests for admission. The Attorney General obligingly responded by making the vast majority of the requested admissions. *See* Doc # 204-1. Plaintiffs then attached the Attorney General's admissions as Exhibit A to their opposition to Defendant-Intervenors' summary judgment motion, asserting that they were "binding." Doc # 202 at 32.

This, of course, was a blatant attempt to use the Attorney General's miscast role as a defendant in this action to the detriment of the defense of Proposition 8.[3] And while the Attorney General's admissions—even as a co-defendant—are not binding upon Defendant-Intervenors, *see* Doc # 213 at 31 n.19, neither judicial economy nor a system of justice premised upon adversity between parties is served by enabling such a charade.[4] *See Christie*, 2002 U.S. Dist. LEXIS 22062, *20 (realignment required "[f]rom a practical standpoint"); *Plumtree*, 2003 U.S. Dist. LEXIS 26948, at *8-*16 (realignment ordered, in part, to aid orderly adjudication of case); *Larios*, 306 F.Supp. 2d at 1195. Indeed, should the Attorney General continue as a defendant there is every reason to expect that Plaintiffs will continue to attempt to exploit that status to their advantage. It is one thing for the Attorney General to opt not to defend in court a measure adopted by the people of California; it is quite another for a court to allow that decision to strip those voters of the right to the fair and fully adversarial process that is every litigant's due. *See United States v. Johnson*, 319 U.S. 302, 305 (1943) (Actual adverseness of the parties is "a safeguard essential to the integrity of the judicial process, and one which we have held to be indispensable to adjudication of constitutional questions by this Court."); *Independent Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir.

---

[3] Regardless of whether the service of the Attorney General's admissions only upon Plaintiffs was intentional, Plaintiffs' attempt to use them against Defendant-Intervenors certainly was.

[4] The Attorney General chides us for any expectation that he would be our "friend" in this litigation, pointing to the position he took in *Strauss v. Horton*. *See* Doc # 239 at 15. *Strauss*, of course, did not involve the validity of Proposition 8 under the federal Constitution. In any event, the Attorney General can hardly claim that his position in one case concerning the traditional definition of marriage can be used to predict his position in subsequent cases on the issue. For example, in *In re Marriage Cases*, 183 P.3d 384 (Cal. 2008), the Attorney General put forward a robust defense of the validity, under the California Constitution, of Proposition 22, which is worded identically to Proposition 8.

2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). Realigning the Attorney General as a party plaintiff will ensure that the proceedings in this case are truly adversarial in nature.

### III. The Interests Of Attorney General Brown and Plaintiffs Are Clearly Aligned.

Despite his position that Proposition 8 violates the Due Process and Equal Protection Clauses of the Constitution, the Attorney General argues that he should not be realigned as a plaintiff because his interests are not "necessarily aligned with the Plaintiffs, or for that matter, with San Francisco, in all respects." Doc # 239 at 16. Whether his interests are aligned with Plaintiffs "in all respects," however, is irrelevant. What matters is the Attorney General's position on the constitutionality of Proposition 8, "the primary dispute in the controversy." *Plumtree*, 2003 U.S. Dist. LEXIS 26948, at *9. That the Attorney General chose not to bring his own suit in the first instance is of no moment, as he is now actively opposing Proposition 8. *Cf. Standard Oil Co. v. Perkins*, 347 F.2d 379, 382 (9th Cir. 1965) (affirming district court decision to realign defendant as plaintiff, reasoning that "[t]o say that [party] did not agree with [plaintiff] that an action should have been brought, is not to say that he occupied the position of a defendant having an immediate stake in the suit"). And the additional disagreements cited by the Attorney General—regarding Plaintiffs' motion for a preliminary injunction and various intervention motions—are clearly "subsidiary" in nature. *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 874 (9th Cir. 2000); *see also id.* (explaining that parties' "alignment … in securing and maintaining [a] preliminary injunction relates only to the subsidiary issue of whether [a party] is entitled to maintain the status quo ante pending resolution of the ultimate dispute, and not to the ultimate dispute itself").[5]

Plaintiffs, on the other hand, attempt to distance their interests from the Attorney General's by casting the "primary matter in dispute" as "whether Prop. 8 should be immediately enjoined." Doc # 240 at 5 (quotation marks omitted). This characterization, however, is a not-so-subtle

---

[5] What is more, the Attorney General overstates the disagreement between him and Plaintiffs. Contrary to his assertion, *see* Doc # 239 at 16, Plaintiffs did not oppose Defendant-Intervenors' motion to intervene in this case. *See* Doc # 31.

5

attempt to elevate to the status of "ultimate" or "primary" dispute subsidiary considerations relating to Plaintiffs' prior motion for a preliminary injunction, such as whether the Court should "maintain the status quo ante pending resolution of the ultimate dispute." *Prudential Real Estate*, 204 F.3d at 874.[6]

In addition, the Attorney General's failure to "invoke his authority as the chief legal officer of California to direct state officials not to enforce Prop. 8," Doc # 240 at 4, does not represent a conflict with respect to the primary issue in dispute in this litigation. As an initial matter, Plaintiffs cite no authority supporting this purported authority of the Attorney General, and the Attorney General effectively disclaims having such authority. *See* Doc # 239 at 14 (stating that he "has an obligation to enforce the law until a court declares it invalid").[7] More importantly, the relevant issue for realignment purposes is the parties' position with respect to the constitutionality of Proposition 8—the primary dispute in this controversy. The Attorney General's interests in that dispute are fundamentally aligned with those of Plaintiffs.[8]

---

[6] In the related context of intervention, the Ninth Circuit has held that where the applicant for intervention and an existing party "have the same ultimate objective" a presumption of adequate representation—sufficient to deny intervention if not overcome—arises. *See California ex rel. Vand de Kamp v. Tahoe Reg'l Planning Auth.*, 792 F.2d 775, 778 (9th Cir. 1986); *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). Although Plaintiffs downplay the importance of parties' ultimate objectives in this context, they have represented to the Ninth Circuit that a putative intervenor who shares the same ultimate objective as Defendant-Intervenors in this case is adequately represented and thus should not be granted intervention. *See* Plaintiffs'-Appellees' Response Br. at 24, *Perry v. Schwarzenegger*, No. 09-16959 (9th Cir. Oct. 9, 2009) (quoting *Arakaki*).

[7] The idea that the Attorney General could order state officials to disregard Proposition 8 is difficult to square with the California Supreme Court's decision in *Lockyer v. City and County of San Francisco*, 33 Cal. 4th 1055 (2004). *Lockyer*, of course, made clear that executive branch officials may not issue *ipse dixit* constitutional rulings and refuse to enforce duly-enacted laws. The California Supreme Court held that the separation of powers under the California Constitution placed the power to declare a statute unconstitutional with the courts. *See Lockyer*, 33 Cal. 4th at 1068-69 (citing *Kendall v. United States*, 37 U.S. (12 Pet.) 524, 613 (1838)).

[8] Plaintiffs' assertion that a new Attorney General with a different view may be elected in November 2010, *see* Doc # 240 at 4, is similarly baseless as a reason for declining realignment for a case going to trial in January 2010. The Court is bound to ensure that the case as currently captioned is truly adversarial. Should a new Attorney General take a different view, the courts may elect to align him or her as a defendant once more. *See Delchamps*, 324 F. Supp. at 117-18 (granting motion of "successor" Attorney General to be realigned as a party plaintiff).

### IV. The Attorney General Is Not A "Nominal" Party In The Sense Urged By Plaintiffs.

While it is true that the Attorney General has proven himself a "nominal *Defendant*" (Doc # 216 at 6 (emphasis added))—meaning that he is a defendant in name only because of his substantive alliance with Plaintiffs—he is not a mere bystander without a stake in the matter, as Plaintiffs attempt to recast him. *See* Doc # 240 at 3. The Attorney General's participation in the case, his duty as "chief legal officer of the State" to "uniformly and adequately" enforce the law at issue, Cal. Const., art. 5, sec. 13, his representation of the People's interests in a case that attacks the constitutionality of an initiative passed by a majority of citizens, the fact that he (or his office) will be bound by any judgment, and the fact that Plaintiffs themselves named him as a party in this action, all undermine the attempt to minimize the Attorney General's standing. Given these interests, the Attorney General is faced with "substantial legal rights or detriments flowing from the resolution of the primary matter in dispute," *Prudential Real Estate*, 204 F.3d at 874, and the Court cannot simply disregard him for purposes of realignment.

### V. The Attorney General's Preference to be Labeled a Defendant in this Action Does Not Empower Him To Thwart The Requirement Of Adversity.

Finally, the Attorney General argues that realigning him as a plaintiff would interfere with his discretion to decide the substantive positions he will take in a matter. Doc # 239 at 17-18. But the Attorney General has already made his choice by acceding to Plaintiffs' substantive position in the case. *See* Doc # 239 at 16. He cannot now straddle the line—adopting plaintiffs' substantive position but doing so under the guise of a defendant. "Obviously, to be recognized as a 'defendant' …, a party must be in an adversarial relationship with the plaintiff." *Still v. DeBuono*, 927 F. Supp. 125, 130 (S.D.N.Y. 1996).

In summary, the Court is bound to "look beyond the pleadings and arrange the parties according to their sides in the dispute." *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941) (quotations omitted). Attorney General Brown should be realigned as a party plaintiff because he has embraced Plaintiffs' claims that Proposition 8 violates the Fourteenth Amendment. Allowing him to continue as a defendant invites collusion and undermines the adversarial nature of these

DEFENDANT-INTERVENORS' REPLY IN SUPPORT OF MOTION TO REALIGN DEFENDANT EDMUND G. BROWN, JR. – CASE NO. 09-CV-2292 VRW

proceedings.

## CONCLUSION

For the foregoing reasons, Attorney General Brown should be realigned as a party plaintiff.

Dated: November 4, 2009

COOPER AND KIRK, PLLC

ATTORNEYS FOR DEFENDANT-INTERVENORS DENNIS HOLLINGSWORTH, GAIL J. KNIGHT, MARTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM, MARK A. JANSSON, AND PROTECTMARRIAGE.COM – YES ON 8, A PROJECT OF CALIFORNIA RENEWAL

By: /s/Charles J. Cooper
Charles J. Cooper