IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KRISTIN M PERRY, SANDRA B STIER, PAUL T KATAMI and JEFFREY J ZARRILLO,

    Plaintiffs,

CITY AND COUNTY OF SAN FRANCISCO,

    Plaintiff-Intervenor,

    v

ARNOLD SCHWARZENEGGER, in his official capacity as governor of California; EDMUND G BROWN JR, in his official capacity as attorney general of California; MARK B HORTON, in his official capacity as director of the California Department of Public Health and state registrar of vital statistics; LINETTE SCOTT, in her official capacity as deputy director of health information & strategic planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as clerk-recorder of the County of Alameda; and DEAN C LOGAN, in his official capacity as registrar-recorder/county clerk for the County of Los Angeles,

    Defendants,

DENNIS HOLLINGSWORTH, GAIL J KNIGHT, MARTIN F GUTIERREZ, HAKSHING WILLIAM TAM, MARK A JANSSON and PROTECTMARRIAGE.COM – YES ON 8, A PROJECT OF CALIOFORNIA RENEWAL, as official proponents of Proposition 8,

    Defendant-Intervenors.

_____/

No C 09-2292 VRW

ORDER

The court has received defendant-intervenors' ("proponents") in camera submission containing a sample of documents potentially responsive to plaintiffs' revised eighth document request. Doc #251. Proponents assert that the documents are protected by the qualified First Amendment privilege and that in any event the documents are not relevant. Id; see also Doc #187 (proponents' motion for a protective order); Doc #220 (proponents' motion to stay discovery).

The court denied proponents' blanket assertion of privilege, Doc #214, but offered to review a sample of the documents at issue in camera to determine if the privilege might apply to some of proponents' documents, Doc #246, Nov 2 Hrg Tr at 42-43. While plaintiffs have not seen the documents, they are in possession of proponents' privilege log, Doc #250-1, which identifies the submitted documents by number and provides a simple description of the documents.

The court has reviewed proponents' in camera submission and finds that while the qualified First Amendment privilege does not provide the documents much, if any, protection against disclosure, many of the documents submitted by proponents are simply not responsive to plaintiffs' discovery request.

I

The documents submitted by proponents are at most subject to a limited application of the qualified First Amendment privilege. Proponents have argued vigorously that the privilege should protect all campaign communications as well as identities of all individuals whose association with the campaign has not yet

2

been made public. Doc ##187, 220. Proponents have not however identified a way in which the qualified privilege could protect the disclosure of campaign communications or the identities of high ranking members of the campaign. See Doc #187 at 14-19 (citing <u>National Ass'n for the A of C P v Alabama</u>, 357 US 449 (1958) ("<u>NAACP</u>") and its progeny, which protect only the identity of rank-and-file organization members, along with <u>McIntyre v Ohio Elections Comm'n</u>, 514 US 334, 351 (1995), which protects "individuals acting independently and using only their own modest resources."). If the qualified privilege identified by proponents protects anything, it is the identities of rank-and-file volunteers and similarly situated individuals. Plaintiffs have indicated that they do not oppose redaction of these names. Doc #250 at 2 n1.

II

Plaintiffs' eighth document request is likely to lead to the discovery of admissible evidence to the extent the evidence relates to messages or themes conveyed to California voters or is otherwise likely to lead to this relevant information. See <u>Washington v Seattle School Dist No 1</u>, 458 US 457, 463-463 (relying in part on messages relayed to voters to hold that a busing initiative was "directed solely at desegregative busing"); see also <u>Robert L v Superior Court</u>, 30 Cal 4th 894, 905 (2003) (relying on "materials that were before the voters" to interpret a California initiative and rejecting "evidence of the drafters' intent that was not presented to the voters").

Here, communications discussing campaign messaging or advertising strategy, including targeted messaging, are generally

3

responsive; communications regarding fundraising strategy, polling information or hiring decisions are generally not responsive, unless the communications deal with themes or messages conveyed to voters in more than a tangential way. To assist the parties in proceeding with discovery, the court has analyzed each of the sixty documents submitted by proponents and determined for the reasons explained below that only the following twenty-one are responsive to plaintiffs' discovery request: 3, 4, 6, 7, 9, 11, 12, 17, 27, 28, 29, 30, 48, 49, 50, 51, 53, 55, 56, 58 and 60. These documents discuss messages or themes conveyed to voters through advertising or direct messaging. The remaining documents are either not responsive to plaintiffs' request or are so attenuated from the themes or messages conveyed to voters that they are, for practical purposes, not responsive.

**A**

Documents 3, 4, 6, 7, 9, 11, 12, 17, 27, 28, 29, 30, 48, 49, 50, 51, 53, 55, 56, 58 and 60 are responsive because they relate to the messages or themes the campaign attempted to or did convey to voters. These documents deal directly with advertising or messaging strategy and themes.

- Doc 3 discusses talking points for a meeting with a newspaper editorial board.
- Doc 4 discusses edits to a television advertisement.
- Doc 6 discusses edits to flyers targeted to a group of voters.
- Doc 7 contains emails and attachments dealing with arguments to be presented to voters in some form.

4

- Doc 9 discusses a campaign targeted to certain voters.
- Doc 11 discusses messages conveyed during the campaign's grassroots outreach.
- Doc 12 analyzes materials for the ballot pamphlet.
- Doc 17 discusses voter reaction to a theme in campaign advertising.
- Doc 27 contains line edits of the ballot arguments.
- Doc 28 is a meeting agenda outlining the campaign's advertising themes.
- Doc 29 is a draft of a campaign flyer.
- Doc 30 is a proposal for themes to be conveyed during the campaign.
- Doc 48 is an email exchange discussing language to be used in conveying a message to voters.
- Doc 49 is generally relevant as an email exchange discussing information for voters contained on the campaign's public website, although an email from a private citizen within the exchange may not itself be relevant to campaign messaging and could, therefore, be redacted.
- Doc 50 discusses focus group responses to various campaign themes.
- Doc 51 contains talking points to be conveyed to voters.
- Doc 53 is a grassroots plan to convey specific messages to voters.
- Doc 55 discusses a potential message to be conveyed in response to an opposition advertisement.

\\

- **Doc 56 deals with television advertisements to convey certain messages to voters.**
- **Doc 58 is a post-election summary of successful themes conveyed to voters.**
- **Doc 60 is a draft of a television advertisement.**

These documents are responsive because they discuss in relative detail the messages and themes that the campaign attempted to convey to the voters.

B

Documents 1, 2, 5, 10, 14, 15, 16, 18, 23, 31, 32, 33, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 46, 52, 57, and 59 say nothing about campaign messages or themes to be conveyed to the voters and are therefore not responsive.

- **Docs 1 and 2 are memos discussing the mechanics of operating a campaign.**
- **Doc 5 deals solely with the petition drive to qualify Prop 8 for the ballot.**
- **Doc 10 is an email exchange discussing internal campaign strategy.**
- **Docs 14, 15 and 16 discuss mechanics of the campaign's internal structure.**
- **Doc 18 is an email exchange discussing a campaign contribution.**
- **Doc 23 is an email exchange discussing polling numbers.**
- **Doc 31 similarly discusses poll results and also contains a long email that appears mostly to be musings regarding poll results.**

- **Doc 32 deals with volunteer coordination and organization.**
- **Doc 33 seeks information about a specific volunteer.**
- **Doc 35 deals with the campaign's structure and arrangements with other entities.**
- **Doc 36 contains the campaign's steering committee meeting minutes, which discuss organizational structure.**
- **Doc 37 provides draft poll questions.**
- **Doc 38 discusses a strategy to obtain volunteers.**
- **Doc 39 is a list of potential donors.**
- **Doc 40 is an email exchange discussing recruitment of a potential staff member.**
- **Doc 41 is a fundraising letter seeking money to help qualify Prop 8 for the ballot.**
- **Doc 42 discusses volunteer organization.**
- **Docs 43 and 44 discuss meetings with major donors.**
- **Doc 46 deals with the mechanics of petition drives.**
- **Doc 52 deals principally with the mechanics of operating a phone bank.**
- **Doc 57 discusses polling numbers.**
- **Doc 59 is a post-election email discussing a supporter apparently not officially associated with the campaign.**

Because these documents do not discuss campaign messages to voters, they are not responsive to plaintiffs' discovery request.

\\
\\
\\
\\

C

Documents 8, 13, 19, 20, 21, 22, 24, 25, 26, 34, 45, 47 and 54 are not responsive because they say nothing about campaign messaging or themes to be conveyed to voters, even though they discuss topics that might relate to messages ultimately adopted or considered by the campaign. Because the documents do not discuss voters or their potential reactions, they are not responsive.

- Doc 8 contains internal emails discussing recent articles about gay marriage and its effects.
- Doc 13 may be protected by the attorney-client privilege; moreover, it is not relevant because it is an internal memorandum discussing proposed language for Prop 8 in a way that is at most marginally pertinent to advertising strategy.
- Docs 19, 20, 21 and 22 discuss a potential volunteer consultant and ways the volunteer might aid campaign strategies.
- Docs 24, 25 and 26 deal with polling and voter data; while the email exchanges contain some brainstorming regarding messaging, the content is too attenuated to have a reasonable likelihood of leading to the discovery of admissible evidence.
- Doc 34 discusses strategy for disseminating a message but does not discuss the message itself.
- Doc 45 deals with the appropriate language to use for the text of Prop 8.
- Doc 47 contains an email exchange discussing a targeted fundraising drive.

- **Doc 54 deals with a potential disclaimer in an advertisement but does not touch on any campaign messages to be conveyed to voters.**

In some ways these documents fall in the margin of potentially responsive discovery; nevertheless, the court deems them not responsive because their relationship to messages or themes conveyed to voters is attenuated enough that it appears as a practical matter unlikely to lead to discovery of admissible evidence.

III

The court recognizes that the documents provided for in camera review are merely a sample of the hundreds of documents in proponents' possession and that the determination whether the remaining documents are responsive in light of the foregoing instruction may not be mechanical. Nevertheless, the court hopes that the foregoing affords proponents sufficient and specific enough guidance to cull their inventory of documents and other materials in order to respond to plaintiffs' document request. The court looks to the parties' able counsel to work out a production schedule.

The court also directs the parties to proceed promptly to take the principal depositions they believe are necessary to prepare for trial. In doing so, the parties should recognize that the unreasonable withholding of requested documents may frustrate appropriate deposition discovery and creates a risk of multiple depositions of the same witness.

\\

The court stands ready to assist the parties should further disputes arise.  In the undersigned's absence, any such disputes are referred to Magistrate Joseph Spero, 28 USC § 636(b)(1)(A).

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge