1  COOPER AND KIRK, PLLC
   Charles J. Cooper (DC Bar No. 248070)*
2  *ccooper@cooperkirk.com*
   David H. Thompson (DC Bar No. 450503)*
3  *dthompson@cooperkirk.com*
   Howard C. Nielson, Jr. (DC Bar No. 473018)*
4  *hnielson@cooperkirk.com*
   Nicole J. Moss (DC Bar No. 472424)*
5  *nmoss@cooperkirk.com*
   Jesse Panuccio (DC Bar No. 981634)*
6  *jpanuccio@cooperkirk.com*
   Peter A. Patterson (Ohio Bar No. 0080840)*
7  *ppatterson@cooperkirk.com*
   1523 New Hampshire Ave. N.W., Washington, D.C. 20036
8  Telephone: (202) 220-9600, Facsimile: (202) 220-9601

9  LAW OFFICES OF ANDREW P. PUGNO
   Andrew P. Pugno (CA Bar No. 206587)
10 *andrew@pugnolaw.com*
   101 Parkshore Drive, Suite 100, Folsom, California 95630
11 Telephone: (916) 608-3065, Facsimile: (916) 608-3066

12 ALLIANCE DEFENSE FUND
   Brian W. Raum (NY Bar No. 2856102)*
13 *braum@telladf.org*
   James A. Campbell (OH Bar No. 0081501)*
14 *jcampbell@telladf.org*
   15100 North 90th Street, Scottsdale, Arizona 85260
15 Telephone: (480) 444-0020, Facsimile: (480) 444-0028

16 ATTORNEYS FOR DEFENDANT-INTERVENOR DENNIS HOLLINGSWORTH,
   GAIL J. KNIGHT, MARTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM,
17 MARK A. JANSSON, and PROTECTMARRIAGE.COM – YES ON 8, A
   PROJECT OF CALIFORNIA RENEWAL

18 * Admitted *pro hac vice*

19

## UNITED STATES DISTRICT COURT
20 ## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 21  KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO, | |
| 22 | |
| 23  Plaintiffs, | CASE NO. 09-CV-2292 VRW |
| 24  v. | The Honorable Vaughn R. Walker, Chief Judge |
| 25  ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. | |
| 26  BROWN, JR., in his official capacity as Attorney | **NOTICE OF APPEAL** |
| 27  General of California; MARK B. HORTON, in his official capacity as Director of the California | |
| 28 | |

Department of Public Health and State Registrar of
Vital Statistics; LINETTE SCOTT, in her official
capacity as Deputy Director of Health Information
& Strategic Planning for the California Department
of Public Health; PATRICK O'CONNELL, in his
official capacity as Clerk-Recorder for the County
of Alameda; and DEAN C. LOGAN, in his official
capacity as Registrar-Recorder/County Clerk for
the County of Los Angeles,

Defendants,

and

PROPOSITION 8 OFFICIAL PROPONENTS
DENNIS HOLLINGSWORTH, GAIL J.
KNIGHT, MARTIN F. GUTIERREZ, HAK-
SHING WILLIAM TAM, and MARK A.
JANSSON; and PROTECTMARRIAGE.COM –
YES ON 8, A PROJECT OF CALIFORNIA
RENEWAL,

Defendant-Intervenors.

Additional Counsel for Defendant-Intervenors

ALLIANCE DEFENSE FUND
Timothy Chandler (CA Bar No. 234325)
tchandler@telladf.org
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 932-2850, Facsimile: (916) 932-2851

Jordan W. Lorence (DC Bar No. 385022)*
jlorence@telladf.org
Austin R. Nimocks (TX Bar No. 24002695)*
animocks@telladf.org
801 G Street NW, Suite 509, Washington, D.C. 20001
Telephone: (202) 393-8690, Facsimile: (202) 347-3622

* Admitted pro hac vice

1     Notice is hereby given under Fed. R. App. P. 3 that Defendant-Intervenors hereby

2  appeal to the United States Court of Appeals for the Ninth Circuit from the orders of the Northern

3  District of California (Docs # 214, 237, 252), dated October 1, October 23, and November 11,

4  2009, to the extent they deny Defendant-Intervenors' Motion for a Protective Order (Doc # 187)

5
6  and/or require the production of documents asserted as privileged under the First Amendment.

7  Dated: November 12, 2009

8

9                                        By: _____
                                             Charles J. Cooper*
10                                           D.C. Bar No. 248070
                                             COOPER AND KIRK, PLLC
11                                           1523 New Hampshire Ave., NW
                                             Washington, D.C.  20036
12                                           (202) 220-9600
                                             Fax: (202) 220-9601
13                                           Attorney for Defendant-Intervenors
                                             * Admitted pro hac vice
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                             1

A-11 (rev. 7/00)                                                                                          Page 1 of 2



USCA DOCKET # (IF KNOWN)

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
## CIVIL APPEALS DOCKETING STATEMENT

PLEASE ATTACH ADDITIONAL PAGES IF NECESSARY.

| TITLE IN FULL: | DISTRICT: N. Dist. of California | JUDGE: Hon. Vaughn Walker, C.J. |
|---|---|---|

**TITLE IN FULL:**

KRISTIN M. PERRY, et al., v. DENNIS HOLLINGSWORTH, et al.

(Please see Attachment A for full title.)

DISTRICT: N. Dist. of California    JUDGE: Hon. Vaughn Walker, C.J.

DISTRICT COURT NUMBER: 09-CV-2292 VRW

DATE NOTICE OF APPEAL FILED:
Nov 12, 2009

IS THIS A CROSS APPEAL?
☐ YES

IF THIS MATTER HAS BEEN BEFORE THIS COURT PREVIOUSLY, PLEASE PROVIDE THE DOCKET NUMBER AND CITATION (IF ANY):
No. 09-16959; No. 09-17241

BRIEF DESCRIPTION OF NATURE OF ACTION AND RESULT BELOW:

The underlying action is a federal constitutional challenge to a provision of the California Constitution defining marriage as between a man and a woman. The orders under review involve a denial of a motion for a protective order, predicated on First Amendment privilege and relevance grounds.

PRINCIPAL ISSUES PROPOSED TO BE RAISED ON APPEAL:

Whether participants in a referendum campaign have a valid First Amendment privilege shielding from discovery nonpublic and/or anonymous documents reflecting core political speech and associational activity with little or no relevance to the merits of the case.

PLEASE IDENTIFY ANY OTHER LEGAL PROCEEDING THAT MAY HAVE A BEARING ON THIS CASE (INCLUDE PENDING DISTRICT COURT POST-JUDGMENT MOTIONS):

Defendant-Intervenors previously appealed the district court's Order of October 1, 2009. The Ninth Circuit Case No. is 09-17241. Defendant-Intervenors will seek to consolidate this appeal with that appeal.

DOES THIS APPEAL INVOLVE ANY OF THE FOLLOWING:

☐ Possibility of Settlement
☐ Likelihood that intervening precedent will control outcome of appeal
☒ Likelihood of a motion to expedite or to stay the appeal, or other procedural matters (Specify)

Defendant-Intervenors will seek a stay of discovery from this Court.

☐ Any other information relevant to the inclusion of this case in the Mediation Program

☐ Possibility parties would stipulate to binding award by Appellate Commissioner in lieu of submission to judges

## LOWER COURT INFORMATION

| JURISDICTION | | DISTRICT COURT DISPOSITION | |
|---|---|---|---|
| FEDERAL | APPELLATE | TYPE OF JUDGMENT/ORDER APPEALED | RELIEF |

**JURISDICTION**

**FEDERAL**

☒ FEDERAL QUESTION

☐ DIVERSITY

☐ OTHER (SPECIFY):

**APPELLATE**

☐ FINAL DECISION OF DISTRICT COURT

☐ INTERLOCUTORY DECISION APPEALABLE AS OF RIGHT

☐ INTERLOCUTORY ORDER CERTIFIED BY DISTRICT JUDGE (SPECIFY):

☒ OTHER (SPECIFY):

Collateral order doctrine; mandamus

**DISTRICT COURT DISPOSITION**

**TYPE OF JUDGMENT/ORDER APPEALED**

☐ DEFAULT JUDGMENT
☐ DISMISSAL/JURISDICTION
☐ DISMISSAL/MERITS
☐ SUMMARY JUDGMENT
☐ JUDGMENT/COURT DECISION
☐ JUDGMENT/JURY VERDICT
☐ DECLARATORY JUDGMENT
☐ JUDGMENT AS A MATTER OF LAW
☒ OTHER (SPECIFY):

Interlocutory discovery orders.

**RELIEF**

☐ DAMAGES:
  SOUGHT $
  AWARDED $
☐ INJUNCTIONS:
  ☐ PRELIMINARY
  ☐ PERMANENT
  ☐ GRANTED
  ☐ DENIED
☐ ATTORNEY FEES:
  SOUGHT $
  AWARDED $
☐ PENDING
☐ COSTS: $

## CERTIFICATION OF COUNSEL

**I CERTIFY THAT:**

1. COPIES OF ORDER/JUDGMENT APPEALED FROM ARE ATTACHED.

2. A CURRENT SERVICE LIST OR REPRESENTATION STATEMENT WITH TELEPHONE AND FAX NUMBERS IS ATTACHED (SEE 9TH CIR. RULE 3-2).

3. A COPY OF THIS CIVIL APPEALS DOCKETING STATEMENT WAS SERVED IN COMPLIANCE WITH FRAP 25.

4. I UNDERSTAND THAT FAILURE TO COMPLY WITH THESE FILING REQUIREMENTS MAY RESULT IN SANCTIONS, INCLUDING DISMISSAL OF THIS APPEAL.

**Signature**

Nov 12, 2009

**Date**

## COUNSEL WHO COMPLETED THIS FORM

| NAME | Jesse Panuccio | | |
|---|---|---|---|
| FIRM | Cooper & Kirk, PLLC | | |
| ADDRESS | 1523 New Hampshire Ave., NW | | |
| CITY | Washington | STATE D.C. | ZIP CODE 20036 |
| E-MAIL | jpanuccio@cooperkirk.com | TELEPHONE | 202-220-9600 |
| FAX | 202-220-9601 | | |

**\*\*THIS DOCUMENT SHOULD BE FILED IN DISTRICT COURT WITH THE NOTICE OF APPEAL. \*\***
**\*\*IF FILED LATE, IT SHOULD BE FILED DIRECTLY WITH THE U.S. COURT OF APPEALS.\*\***

## Attachment A

TITLE IN FULL:

KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO,

Plaintiffs

and

CITY AND COUNTY OF SAN FRANCISCO,

Plaintiff-Intervenor

v.

ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the California Department of Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; and DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles,

Defendants

and

PROPOSITION 8 OFFICIAL PROPONENTS DENNIS HOLLINGSWORTH, GAIL J. KNIGHT, MARKTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM, and MARK A. JANSSON; and PROTECTMARRIAGE.COM—YES ON 8, A PROJECT OF CALIFORNIA RENEWAL,

Defendant-Intervenors.

## REPRESENTATION AND SERVICE LIST

**Attorneys for Plaintiffs Kristin M. Perry, Sandra B. Stier, Paul T. Katami, and Jeffrey J. Zarillo:**

Theodore B. Olson
Matthew C. McGill
Amir C. Tayrani
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, NW
Washington, D.C. 20036
(202) 955-8668
Fax: (202) 467-0539
tolson@gibsondunn.com

Theodore J. Boutrous, Jr.
Christopher D. Dusseault
Ethan D. Dettmer
Theane Evangelis Kapur
Enrique A. Monagas
GIBSON, DUNN & CRUTCHER, LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 229-7804
Fax: (213) 229-7520
tboutrous@gibsondunn.com

David Boies
Theodore H. Uno
BOIES, SCHILLER & FLEXNER, LLP
333 Main St
Armonk, NY 10504
(914) 749-8200
Fax: (914) 749-8300
dboies@bsfllp.com

**Attorneys for Plaintiff-Intervenor City and County of San Francisco:**

Dennis J. Herrera, City Attorney
Therese Stewart, Chief Deputy City
  Attorney
Danny Chou, Chief of Complex and Special
  Litigation
Vince Chhabria, Deputy City Attorney
Erin Bernstein, Deputy City Attorney
Christine Van Aken, Deputy City Attorney
Mollie M. Lee, Deputy City Attorney
CITY AND COUNTY OF SAN
  FRANCISCO
OFFICE OF THE CITY ATTORNEY
1 Dr. Carlton B. Goodlett Place
Room 234
San Francisco, CA  4102-4682
(415) 554-4708
Fax: (415) 554-4655
Therese.stewart@sf.gov.org

**Attorneys for Defendants Governor Arnold Schwarzenegger, Director Mark B. Horton, and Deputy Director Linette Scott:**

Kenneth C. Mennemeier
Andrew Walter Stroud
MENNEMEIER GLASSMAN & STROUD
LLP
980 9th St, Ste 1700
Sacramento, CA 95814
(916) 553-4000
Fax: (916) 553-4011
kcm@mgslaw.com

**Attorneys for Defendant Attorney General Edmund G. Brown, Jr.:**

Gordon Bruce Burns
Attorney General's Office, Dept. of Justice
1300 I Street, 17th Floor
Sacramento, CA 95814
(916) 324-3081
Gordon.Burns@doj.ca.gov

Tamar Pachter
Office of the California Attorney General
455 Golden Gate Ave, Suite 11000
San Francisco, CA 94102-7004
(415) 703-5970
Fax: (415) 703-1234
Tamar.Pachter@doj.ca.gov

**Attorney for Defendant Clerk-Recorder Patrick O'Connell:**

Claude Franklin Kolm
Lindsey G. Stern
COUNTY OF ALAMEDA
1221 Oak Street, Suite 450
Oakland, CA 94612-4296
(510) 272-6710
claude.kolm@acgov.org

**Attorney for Defendant Registrar-Recorder Dean C. Logan:**

Judy Whitehurst
OFFICE OF COUNTY COUNSEL –
COUNTY OF LOS ANGELES
500 West Temple St
Los Angeles, CA 90012
(213) 974-1845
JWhitehurst@counsel.lacounty.gov

**Attorneys for Defendant-Intervenors Dennis Hollingsworth, Gail J. Knight, Martin F. Gutierrez, Hak-Shing William Tam, Mark A. Jansson, and ProtectMarriage.com—Yes on 8, A Project of California Renewal:**

Charles J. Cooper
David H. Thompson
Howard C. Neilson, Jr.
Nicole J. Moss
Jesse Panuccio
Peter A. Patterson
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 22036
(202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

Andrew P. Pugno
LAW OFFICES OF ANDREW P. PUGNO
101 Parkshore Dr., Ste. 100
Folsom, CA 95630
(916) 608-3065
andrew@pugnolaw.com

Brian W. Raum
James A. Campbell
ALLIANCE DEFENSE FUND
15100 N. 90th St.
Scottsdale, AZ 85260
(480) 444-0020
braum@telladf.org

United States District Court
For the Northern District of California

1

2

3            IN THE UNITED STATES DISTRICT COURT

4         FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6   KRISTIN M PERRY, SANDRA B STIER,      No    C 09-2292 VRW
    PAUL T KATAMI and JEFFREY J
7   ZARRILLO,                                   ORDER

8            Plaintiffs,

9   CITY AND COUNTY OF SAN FRANCISCO,

10           Plaintiff-Intervenor,

11           v

12  ARNORLD SCHWARZENEGGER, in his
    official capacity as governor of
13  California; EDMUND G BROWN JR, in
    his official capacity as attorney
14  general of California; MARK B
    HORTON, in his official capacity
15  as director of the California
    Department of Public Health and
16  state registrar of vital
    statistics; LINETTE SCOTT, in her
17  official capacity as deputy
    director of health information &
18  strategic planning for the
    California Department of Public
19  Health; PATRICK O'CONNELL, in his
    official capacity as clerk-
20  recorder of the County of
    Alameda; and DEAN C LOGAN, in his
21  official capacity as registrar-
    recorder/county clerk for the
22  County of Los Angeles,

23           Defendants,

24  DENNIS HOLLINGSWORTH, GAIL J
    KNIGHT, MARTIN F GUTIERREZ,
25  HAKSHING WILLIAM TAM and MARK A
    JANSSON, as official proponents
26  of Proposition 8,

27           Defendant-Intervenors.
                                      /
28

1         The defendant-intervenors, who are the official
2 proponents of Proposition 8 ("proponents") move for a protective
3 order against the requests contained in one of plaintiffs' first
4 set of document requests. Doc #187. Proponents object to
5 plaintiffs' request no 8, which seeks "[a]ll versions of any
6 documents that constitute communications relating to Proposition 8,
7 between you and any third party, including, without limitation,
8 members of the public or the media." Doc #187 at 8. Proponents
9 also object to all other "similarly sweeping" requests. Id at 8 n
10 1. Proponents argue the discovery sought: (1) is privileged under
11 the First Amendment; (2) is not relevant; and (3) places an undue
12 burden on proponents. Doc #187 at 9. Plaintiffs counter that the
13 discovery sought is relevant and not privileged. Doc #191.

14         During the course of briefing the dispute for the court,
15 the parties appear to have resolved at least one issue, as
16 proponents now agree to produce communications targeted to discrete
17 voter groups. Doc #197 at 6. The agreement appears only partially
18 to resolve the parties' differences. Because of the broad reach of
19 request no 8 and the generality of proponents' objections, the
20 unresolved issues will almost certainly arise in other discovery,
21 as well as to require resolution of the parties' differences with
22 respect to request no 8. Accordingly, the court held a lengthy
23 hearing on September 25, 2009 and seeks by this order not only to
24 address the parties' remaining dispute with respect to request no 8
25 but also provide guidance that will enable them to complete
26 discovery and pretrial preparation expeditiously.
27 \\
28 \\

United States District Court
For the Northern District of California

2

1                                          I

2          As an initial matter, and because plaintiffs' request no

3   8 is quite broad, the court must determine what discovery remains

4   disputed.  Proponents object to disclosing documents that fall into

5   five categories:  "(i) communications between and among

6   [d]efendant-[i]ntervenors, campaign donors, volunteers, and agents;

7   (ii) draft versions of communications never actually distributed to

8   the electorate at large; (iii) the identity of affiliated persons

9   and organizations not already publicly disclosed; (iv) post-

10  election information; and (v) the subjective and/or private

11  motivations of a voter or campaign participant."  Doc #187 at 9.

12  But in their reply memorandum, proponents explain that they only

13  object to "nonpublic and/or anonymous communications" (emphasis in

14  original), "drafts of documents that were never intended to, and

15  never did, see public light" and "documents created after the Prop

16  8 election."  Doc #197.  Plaintiffs have stated they "do not seek

17  ProtectMarriage.com's membership list or a list of donors to the

18  'Yes on 8' cause."  Doc #191 at 13.

19          Plaintiffs have told proponents that they are seeking

20  communications between proponents and "their agents, contractors,

21  attorneys, donors or others" to the extent the communications are

22  responsive and not otherwise privileged.  Doc #187-6 at 2.

23  Plaintiffs argue that the election materials put before the voters

24  are insufficient to discern the intent or purpose of Prop 8.  The

25  questions whether Prop 8 was passed with discriminatory intent and

26  whether any claimed state interest in fact supports Prop 8 underlie

27  plaintiffs' Equal Protection challenge, at least in part.  See,

28  e g, Doc #157 at 12.  Proponents assert that Prop 8 was intended

                                    3

1 simply to preserve the traditional characteristic of marriage as an
2 opposite-sex union. See, e g, Doc #159 at 5. As a result of these
3 conflicting positions, the intent or purpose of Prop 8 is central
4 to this litigation. The issue on which resolution of the present
5 discovery dispute turns is whether that intent should be divined
6 solely from proponents' public or widely circulated communications
7 or disseminations or whether their communications with third
8 parties not intended for widespread dissemination may also
9 illuminate that intent. Before deciding that issue, the court
10 first addresses the grounds on which proponents seek a protective
11 order.

12

13                                    II

14            Proponents seek to invoke the First Amendment qualified
15 privilege to refrain from responding to any discovery that would
16 reveal political communications as well as identities of
17 individuals affiliated with the Prop 8 campaign whose names have
18 not already been disclosed. Doc #197 at 14. The free
19 associational prong of the First Amendment has been held to provide
20 a qualified privilege against disclosure of all rank-and-file
21 members of an organization upon a showing that compelled disclosure
22 likely will adversely affect the ability of the organization to
23 foster its beliefs. National Ass'n for A of C P v Alabama, 357 US
24 449, 460-63 (1958) ("NAACP"); see also Adolph Coors Co v Wallace,
25 570 F Supp 202, 205 (ND Cal 1983). This qualified privilege has
26 been found especially important if the disclosures would subject
27 members to reprisals for the exercise of their associational rights
28 under the First Amendment or otherwise deter exercise of those

United States District Court
For the Northern District of California

                                      4

1 rights. Here, however, plaintiffs are not seeking disclosure of
2 membership lists. Doc #191 at 13. Indeed, many names associated
3 with ProtectMarriage.com and the Yes on 8 campaign have already
4 been disclosed. See ProtectMarriage.com v Bowen, 09-0058-MCE Doc
5 #88 (ED Cal Jan 30, 2009).

6       The California Political Reform Act of 1974 requires
7 disclosure of a great deal of information surrounding the Prop 8
8 campaign, including the identity of, and specific information
9 about, financial supporters. Cal Govt Code § 81000 et seq.
10 Proponents have not shown that responding to plaintiffs' discovery
11 would intrude further on proponents' First Amendment associational
12 rights beyond the intrusion by the numerous disclosures required
13 under California law — disclosures that have already been widely
14 disseminated. Proponents asserted at the September 25 hearing that
15 these California state law disclosure requirements extend to the
16 outer boundaries of what can be required of political actors to
17 reveal their activities. But the information plaintiffs seek
18 differs from that which is regulated by these state disclosure
19 requirements.

20       The First Amendment qualified privilege proponents seek
21 to invoke, unlike the attorney-client privilege, for example, is
22 not an absolute bar against disclosure. Rather, the First
23 Amendment qualified privilege requires a balancing of the
24 plaintiffs' need for the information sought against proponents'
25 constitutional interests in claiming the privilege. See Adolph
26 Coors, 570 F Supp at 208. In this dispute, the interests the
27 parties claim are fundamental constitutional rights. Proponents
28 argue that their First Amendment associational rights are at stake

United States District Court
For the Northern District of California

                                5

1 while plaintiffs contend that Prop 8 violates their Equal
2 Protection and Due Process rights and that denial of their
3 discovery request jeopardizes the vindication of those rights. The
4 claimed rights at issue thus appear to be of similar importance.

5        One tangible harm that proponents have claimed, and
6 events made known to the court substantiate, lies in threats and
7 harassment proponents claim have been suffered by known supporters
8 of Prop 8. Identifying new information about Prop 8 supporters
9 would, proponents argue, only exacerbate these problems. Doc #187.

10        The court is aware of the tendentious nature of the Prop
11 8 campaign and of the harassment that some Prop 8 supporters have
12 endured. See Doc #187-11. Proponents have not however adequately
13 explained why the discovery sought by plaintiffs increases the
14 threat of harm to Prop 8 supporters or explained why a protective
15 order strictly limiting the dissemination of such information would
16 not suffice to avoid future similar events. In sum, while there is
17 no doubt that proponents' political activities are protected by the
18 First Amendment, it is not at all clear that the discovery sought
19 here materially jeopardizes the First Amendment protections.
20 Furthermore, whether the First Amendment qualified privilege should
21 bar all or any part of plaintiffs' discovery request is open to
22 question under the circumstances of this case.

23        The key Supreme Court case upon which proponents rely,
24 NAACP v Alabama, supra, involved a civil contempt against the NAACP
25 for its failure to reveal the names and addresses of "all its
26 Alabama members and agents, without regard to their positions or
27 functions in the Association." 357 US at 451. As noted,
28 plaintiffs do not here seek the names and addresses of proponents'

6

United States District Court
For the Northern District of California

1 rank-and-file members or volunteers. More importantly, the
2 protection against disclosure afforded by the holding in NAACP
3 appears fairly restricted.

4     Alabama sought "a large number of the Association's
5 records and papers, including bank statements, leases, deeds, and
6 records of all Alabama 'members' and 'agents' of the Association."
7 357 US at 453. The NAACP produced "substantially all the data
8 called for" except for its lists of rank-and-file members. Id at
9 454. Notably, the NAACP did not object "to divulging the identity
10 of its members who are employed by or hold official positions" in
11 the organization or to providing various other business records.
12 Id at 464-65. The Court contrasted the NAACP's extensive
13 disclosures with that in an earlier case in which another
14 organization made no disclosures at all. Id at 465-66. Alabama's
15 request for rank-and-file membership lists in NAACP was predicated
16 solely on its interest in enforcement of the state's foreign
17 corporation registration statute. Id at 464.

18     The Court observed that the disclosure of the names of
19 rank-and-file members seemed to lack a "substantial bearing" on
20 whether the NAACP, as a foreign corporation, should be authorized
21 to do business in Alabama. Id at 464. The interest of Alabama in
22 disclosure of rank-and-file membership lists thus was insubstantial
23 relative to the significant interests of the NAACP and its members
24 in carrying out their First Amendment and other activities that
25 included - in 1956 - "financial support and [ ] legal assistance to
26 Negro students seeking admission to the state university" and
27 support of "a Negro boycott of the bus lines in Montgomery to
28 compel the seating of passengers without regard to race." Id at

7

1  452.

2         Similarly, in a later case, the Supreme Court upheld a
3  qualified First Amendment privilege against disclosure of NAACP
4  membership lists where there was "no relevant correlation" between
5  the purpose for which the lists were sought, enforcement of
6  occupational license taxes, and the identity of NAACP rank-and-file
7  members.  Bates v Little Rock, 361 US 516, 525 (1960).  On like
8  grounds, the Supreme Court reversed a contempt conviction of the
9  president of the NAACP Miami branch who refused to produce NAACP
10  membership lists at a 1959 hearing of a state legislative committee
11  investigating "infiltration of Communists" into various
12  organizations.  Gibson v Florida Legislative Committee, 372 US 539
13  (1963).  No evidence in that case suggested that the NAACP was
14  "either Communist dominated or influenced," id at 548, undermining
15  the required nexus between the membership lists and the purpose for
16  which they were sought.  Furthermore, at the hearing, the branch
17  president answered questions concerning membership in the NAACP and
18  responded to questions about a number of persons previously
19  identified as communists or members of communist front or other
20  affiliated organizations.  Id at 543.  Here, too, the qualified
21  First Amendment privilege protected only membership lists, and the
22  NAACP or its officials made significant disclosures apart from
23  membership lists.

24         These cases from the civil rights struggles of the 1950s
25  would thus appear to offer proponents scant support for refusing to
26  produce information other than rank-and-file membership lists which
27  plaintiffs, in any event, do not seek.  Nor does proponents'
28  position gain much traction from McIntyre v Ohio Elections Comm'n,

United States District Court
For the Northern District of California

8

1  514 US 334 (1995), which reversed petitioner's conviction, upheld
2  by the Ohio Supreme Court, for anonymously distributing leaflets
3  regarding a referendum on a proposed school tax levy in violation
4  of a statute prohibiting unsigned campaign materials.  Petitioner
5  "acted independently," not as part of a campaign committee or
6  organization.  Id at 337.  Proponents, by contrast, are the
7  official proponents of Prop 8 with responsibility under state law
8  for compliance with electoral and campaign requirements.  See Cal
9  Election Code § 342; Cal Gov't Code § 8204.7.

10         Proponents, moreover, have not demonstrated that the
11  procedure for invoking any First Amendment privilege applicable to
12  their communications with third parties differs from that of any
13  other privilege, such as the attorney-client privilege and trial
14  preparation or work product protection.  A party seeking to
15  withhold discovery under a claim of privilege must "describe the
16  nature of the documents, communications, or tangible things not
17  produced or disclosed * * * in a manner that, without revealing
18  information itself privileged or protected, will enable other
19  parties to assess the claim."  FRCP 26(b)(5)(A)(ii).  Proponents
20  have failed to aver that they have prepared a privilege log that
21  would comply with the requirement of FRCP 26(b)(5)(A)(ii), a
22  necessary condition to preservation of any privilege.  This failure
23  ordinarily could be fatal to any assertion of a privilege.
24  Burlington Nort & Santa Fe Ry v Dist Ct, Mt, 408 F3d 1142, 1149
25  (9th Cir 2005).

26         Proponents suggested at the September 25 hearing that the
27  enumeration requirement of FRCP 26 does not apply to a First
28  Amendment privilege, based as it is on fundamental constitutional

9

principles rather than common law, the origin of the attorney-client privilege and work product protection. Proponents contend that as the communications regarding Prop 8 involve political speech or association, Doc #197 at 11-12, they are entitled to a greater degree of confidentiality than common law privileges. In fact, as noted, it appears that any First Amendment privilege is a qualified privilege affording less expansive protection against discovery than the absolute privileges, such as the attorney-client and similar privileges. The First Amendment privilege proponents seek to invoke requires a balancing of interests that simply are not weighed in the area of attorney-client communications, and that balancing tends to limit or confine the First Amendment privilege to those materials that rather directly implicate rights of association.

In striking the appropriate balance, the court notes that in addition to the substantial financial and related disclosures required by California law, a rather striking disclosure concerning campaign strategy has already voluntarily been made by at least one, if not the principal, campaign manager-consultant employed by proponents. Plaintiffs have attached to their memorandum a magazine article written by Frank Schubert and Jeff Flint, whose public affairs firm managed the Yes on 8 campaign. Doc #191-2. In the article, Schubert and Flint refer specifically to campaign strategy and decisions, noting that they needed to convince voters "that there would be consequences if gay marriage were to be permanently legalized." Id at 3. Schubert and Flint make clear that their goal in the campaign was to "rais[e] doubts." Id. They explain the campaign's "three broad areas" of focus as "religious

10

1  freedom," "individual freedom of expression" and "how this new
2  'fundamental right' would be inculcated in young children through
3  the public schools." Id. Schubert and Flint refer to the help of
4  "a massive volunteer effort through religious denominations." Id.
5  The article describes, in great detail, how Schubert and Flint
6  conceptualized the Yes on 8 television advertising campaign,
7  culminating with "the break of the election": footage of
8  "bewildered six-year-olds at a lesbian wedding." Id at 4-5.

9         These extensive disclosures about the strategy of
10 proponents' campaign suggest that relatively little weight should
11 be afforded to proponents' interest in maintaining the
12 confidentiality of communications concerning campaign strategy. If
13 harm is threatened from disclosure of proponents' campaign
14 strategy, it seems likely to have been realized by the candid
15 description of the Prop 8 campaign's strategy already disseminated
16 by Schubert and Flint. In any event, the unfortunate incidents of
17 harassment to which proponents point as having occurred appear
18 mostly to have been directed to proponents' financial supporters
19 whose public identification was required by California law.

20

21                              III

22         Proponents argue that the discovery sought is not
23 relevant and therefore not discoverable. Under FRCP 26(b)(1),
24 discovery is limited to "any nonprivileged matter that is relevant
25 to any party's claim or defense," but "[r]elevant information need
26 not be admissible at the trial if the discovery appears reasonably
27 calculated to lead to the discovery of admissible evidence."
28 Accordingly, the court need not determine at this juncture whether

                              11

United States District Court
For the Northern District of California

1 the information sought would be admissible at trial; instead, the
2 court must determine whether the information sought is "reasonably
3 calculated" to lead to discovery of admissible evidence.

4      Plaintiffs assert that the discovery sought is relevant
5 to "the rationality and strength of [proponents'] purported state
6 interests and whether voters could reasonably accept them as a
7 basis for supporting Prop 8," as well as other factual disputes.
8 Doc #191 at 8.  Additionally, plaintiffs believe the discovery will
9 lead to "party admissions and impeachment evidence."  Id.

10      Plaintiffs' strongest argument appears to be that some of
11 the information sought about proponents' communications with third
12 parties may be relevant to the governmental interest that
13 proponents claim Prop 8 advances.  Id.  Relevant information may
14 exist in communications between proponents and those who assumed a
15 large role in the campaign, including the campaign executive
16 committee and political consultants, as that information well may
17 have been conveyed to the ultimate decision-makers, the voters, and
18 thus discloses the intent Prop 8 serves.

19      Key in this regard is the extent to which the requested
20 discovery could be relevant "to ascertain the purpose" of Prop 8.
21 Doc #187 at 10.  Legislative purpose may be relevant to determine
22 whether, as plaintiffs claim, Prop 8 violates the Equal Protection
23 Clause.  Washington v Davis, 426 US 229, 239-41 (1976) (holding
24 that a law only violates the Equal Protection component of the
25 Fifth Amendment when the law reflects a "discriminatory purpose,"
26 regardless of the law's disparate impact); see also Personnel Adm'r
27 of Massachusetts v Feeney, 442 US 256, 274 (1979) ("purposeful
28 discrimination is the condition that offends the Constitution.")

12

*United States District Court*
*For the Northern District of California*

1    (citation omitted). The analysis remains the same whether the
2    challenged measure was enacted by a legislature or directly by
3    voters. Washington v Seattle School Dist no 1, 458 US 457, 484-85
4    (1982).

5           Proponents point to Southern Alameda Span Sp Org v City
6    of Union City, Cal, 424 F2d 291, 295 (9th Cir 1970) ("SASSO"), and
7    Bates v Jones, 131 F3d 843, 846 (9th Cir 1997) (en banc), for the
8    proposition that the subjective intent of a voter is not a proper
9    subject for judicial inquiry. In SASSO, the court determined that
10   "probing the private attitude of the voters" would amount of "an
11   intolerable invasion of the privacy that must protect an exercise
12   of the franchise." 424 F2d at 295. In Bates, the court looked
13   only to publicly available information to determine whether voters
14   had sufficient notice of the effect of a referendum. 131 F3d at
15   846. While these cases make clear that voters cannot be asked to
16   explain their votes, they do not rule out the possibility that
17   other evidence might well be useful to determine intent.

18          Plaintiffs' proposed discovery is not outside the scope
19   of what some courts have considered in determining the intent
20   behind a measure enacted by voters. The Eighth Circuit has held
21   that courts may look to the intent of drafters of an initiative to
22   determine whether it was passed with a discriminatory intent.
23   South Dakota Farm Bureau, Inc v Hazeltine, 340 F3d 583, 594 (8th
24   Cir 2003). At least one district court in this circuit has
25   considered drafter intent along with voter intent. City of Los
26   Angeles v County of Kern, 462 F Supp 2d 1105, 1114 (CD Cal 2006).
27   The parties acknowledge that the line demarking relevance in this
28   context is not clearly drawn. The difficulty of line-drawing stems

13

United States District Court
For the Northern District of California

1  from the fact that, as the California Supreme Court put it well,
2  "motive or purpose of [a legislative enactment] is not relevant to
3  its construction absent reason to conclude that the body which
4  adopted the [enactment] was aware of that purpose and believed the
5  language of the proposal would accomplish it." Robert L v Superior
6  Court, 30 Cal 4th 894, 904 (2003).

7         In the case of an initiative measure, the enacting body
8  is the electorate as a whole. The legislative record for an
9  initiative cannot, therefore, be compiled with the precision that
10  the legislative history of an enactment by a legislative body can
11  be put together. This would seem to suggest, as the Eighth Circuit
12  implied in South Dakota Farm Bureau, that the scope of permissible
13  discovery might well be broader in the case of an initiative
14  measure or a referendum than a law coming out of a popularly
15  elected, and thus democratically chosen, legislative body. However
16  that may be, the mix of information before and available to the
17  voters forms a legislative history that may permit the court to
18  discern whether the legislative intent of an initiative measure is
19  consistent with and advances the governmental interest that its
20  proponents claim in litigation challenging the validity of that
21  measure or was a discriminatory motive.

22         Proponents have agreed to disclose communications they
23  targeted to voters, including communications to discrete groups of
24  voters. Doc #197 at 6. But at the September 25 hearing,
25  proponents stated that they did not believe "non-public"
26  communications to confirmed Prop 8 supporters or to those involved
27  in the Prop 8 campaign could be relevant to the intent
28  determination. Proponents point out that those communications were

United States District Court
For the Northern District of California

14

1 | not directly before the voters. But it does appear to the court
2 | that communications between proponents and political consultants or
3 | campaign managers, even about messages contemplated but not
4 | actually disseminated, could fairly readily lead to admissible
5 | evidence illuminating the messages disseminated to voters. At
6 | least some of these contemplated, but not delivered, messages may
7 | well have diffused to voters through sources other than the
8 | official channels of proponents' campaign. Furthermore, of course,
9 | what was decided not to be said in a political campaign may cast
10 | light on what was actually said. The line between relevant and
11 | non-relevant communications is not identical to the public/non-
12 | public distinction drawn by proponents. At least some "non-public"
13 | communications from proponents to those who assumed a large role in
14 | the Prop 8 campaign could be relevant to the voters' understanding
15 | of Prop 8 and to the ultimate determination of intent.

16 | While it appears that plaintiffs' request no 8 seeks
17 | relevant disclosures, the request itself is broader than necessary
18 | to obtain all relevant discovery. Proponents point out that even
19 | if some of the discovery sought by plaintiffs might be relevant,
20 | "virtually every communication made by anyone included in or
21 | associated with Protect Marriage" cannot be relevant. Doc #197 at
22 | 7. The court agrees. Further, of course, no amount of discovery
23 | could corral all of the information on which voters cast their
24 | ballots on Prop 8. Proponents' undue burden objection is thus
25 | well-taken. It should suffice for purposes of this litigation to
26 | gather enough information about the strategy and communications of
27 | the Prop 8 campaign to afford a record upon which to discern the
28 | intent underlying Prop 8's enactment. Plaintiffs' request no 8,

United States District Court
For the Northern District of California

15

currently encompassing any communication between proponents and any third party, is simply too broad.

Narrowing of plaintiffs' request is required. In their discussions, the parties have focused on the appropriate distinction — that between documents which relate to public communications with third parties and purely private communications among proponents. Hence, discovery directed to uncovering whether proponents harbor private sentiments that may have prompted their efforts is simply not relevant to the legislative intent behind Prop 8. That does not mean that discovery should be limited strictly to communications with the public at large. Documents pertaining to the planning of the campaign for Prop 8 and the messages actually distributed, or contemplated to be distributed, to voters would likely to lead to discovery of admissible evidence, as such documents share a clear nexus with the information put before the voters. Communications distributed to voters, as well as communications considered but not sent appear to be fair subjects for discovery, as the revision or rejection of a contemplated campaign message may well illuminate what information was actually conveyed to voters. Communications that took place after the election date may similarly be relevant if they are connected in some way to the pre-election messages conveyed to the voters. But discovery not sufficiently related to what the voters could have considered is not relevant and will not be permitted.

Plaintiffs are therefore DIRECTED to revise request no 8 to target those communications most likely to be relevant to the factual issues identified by plaintiffs.

\\

1          While it is not the province of the court to redraft
2 plaintiffs' request no 8 or to interpose objections for proponents,
3 the foregoing highlights general areas of appropriate inquiry.   It
4 seems to the court that request no 8 is appropriate to the extent
5 it calls for (1) communications by and among proponents and their
6 agents (at a minimum, Schubert Flint Public Affairs) concerning
7 campaign strategy and (2) communications by and among proponents
8 and their agents concerning messages to be conveyed to voters,
9 without regard to whether the voters or voter groups were viewed as
10 likely supporters or opponents or undecided about Prop 8 and
11 without regard to whether the messages were actually disseminated
12 or merely contemplated.   In addition, communications by and among
13 proponents with those who assumed a directorial or managerial role
14 in the Prop 8 campaign, like political consultants or
15 ProtectMarriage.com's treasurer and executive committee, among
16 others, would appear likely to lead to discovery of admissible
17 evidence.

18

19                                IV

20          Proponents motion for a protective order is GRANTED in
21 part and DENIED in part.   Doc #187.   Proponents have not shown that
22 the First Amendment privilege is applicable to the discovery sought
23 by plaintiffs.   Because plaintiffs' request no 8 is overly broad,
24 plaintiffs shall revise the request and tailor it to relevant
25 factual issues, individuals and entities.   The court stands ready
26 to assist the parties in pursuing specific additional discovery in
27 line with the guidance provided herein and, if necessary, to assist
28 the parties in fashioning a protective order where necessary to

United States District Court
For the Northern District of California

17

1  ensure that disclosures through the discovery process do not result
2  in adverse effects on the parties or entities or individuals not
3  parties to this litigation.

4

5

6           IT IS SO ORDERED.

7

8

9                              VAUGHN R WALKER
                               United States District Chief Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**18**

United States District Court
For the Northern District of California

1

2     **IN THE UNITED STATES DISTRICT COURT**

3    **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

4

5

| | | |
|---|---|---|
| **KRISTIN M PERRY, SANDRA B STIER,** | **No** | **C 09-2292 VRW** |
| **PAUL T KATAMI and JEFFREY J** | | |
| **ZARRILLO,** | | **ORDER** |

6

7    **Plaintiffs,**

8 **CITY AND COUNTY OF SAN FRANCISCO,**

9    **Plaintiff-Intervenor,**

10    **v**

11 **ARNOLD SCHWARZENEGGER, in his**

12 **official capacity as governor of California; EDMUND G BROWN JR, in**

13 **his official capacity as attorney general of California; MARK B**

14 **HORTON, in his official capacity as director of the California**

15 **Department of Public Health and state registrar of vital**

16 **statistics; LINETTE SCOTT, in her official capacity as deputy**

17 **director of health information & strategic planning for the**

18 **California Department of Public Health; PATRICK O'CONNELL, in his**

19 **official capacity as clerk-recorder of the County of**

20 **Alameda; and DEAN C LOGAN, in his official capacity as registrar-**

21 **recorder/county clerk for the County of Los Angeles,**

22    **Defendants,**

23 **DENNIS HOLLINGSWORTH, GAIL J**

24 **KNIGHT, MARTIN F GUTIERREZ, HAKSHING WILLIAM TAM, MARK A**

25 **JANSSON and PROTECTMARRIAGE.COM – YES ON 8, A PROJECT OF**

26 **CALIOFORNIA RENEWAL, as official proponents of Proposition 8,**

27

28    **Defendant-Intervenors.**
    _____/

**United States District Court**
**For the Northern District of California**

1        Defendant-intervenors, the official proponents of
2   Proposition 8 ("proponents") move for a limited stay of discovery
3   pending resolution of a purported appeal or mandamus petition in
4   the alternative.  Doc #220.  Plaintiffs oppose any delay in
5   discovery in light of the upcoming trial date and ask the court to
6   compel proponents to respond to their discovery requests in seven
7   days.  Doc #225.

8        To obtain a stay, proponents "must establish that [they
9   are] likely to succeed on the merits, that [they are] likely to
10  suffer irreparable harm in the absence of preliminary relief, that
11  the balance of equities tips in [their] favor, and that an
12  injunction is in the public interest."  Winter v Natural Resources
13  Defense Council, Inc, -- US --, 129 SCt 365, 374 (2008).  A
14  "possibility" of success is "too lenient."  Id at 375; see also
15  American Trucking Associations, Inc v City of Los Angeles, 559 F3d
16  1046, 1052 (9th Cir 2009).  Because, for the reasons explained
17  below, proponents have met no part of this test, proponents' motion
18  for a stay is DENIED.

19

20                              I

21       Proponents are unlikely to succeed on their appeal or
22  mandamus petition because (1) the court of appeals lacks
23  jurisdiction over the appeal and mandamus petition and (2) the
24  appeal lacks merit.
25  \\
26  \\
27  \\
28  \\

                              2

United States District Court
For the Northern District of California

1

A

2       Proponents have noticed an appeal of the court's October

3 1 order, Doc #214, "to the extent it denies [proponents'] Motion

4 for a Protective Order (Doc #187)." Doc #222. The motion for a

5 protective order cites to National Ass'n for the A of C P v

6 Alabama, 357 US 449 (1958) ("NAACP") (invoking a qualified First

7 Amendment privilege to protect NAACP rank-and-file membership lists

8 against disclosure), and its progeny to claim a qualified First

9 Amendment privilege against discovery of any of proponents'

10 communications with third parties. Doc #187. Proponents'

11 docketing statement in the Ninth Circuit describes the October 1

12 order as an "INTERLOCUTORY DECISION APPEALABLE AS OF RIGHT." Id at

13 5. However proponents may characterize the October 1 order, it is

14 manifestly not a final judgment appealable as of right under 28 USC

15 § 1291, nor did proponents seek, or the court find suitable, an

16 interlocutory appeal under 28 USC § 1292(b). Proponents' right to

17 seek review of the October 1 order must therefore rest on the

18 collateral order doctrine or on grounds warranting mandamus by the

19 court of appeals. Neither of these, however, provides an adequate

20 foundation for the instant appeal or mandamus petition.

21

22                                      1

23       The collateral order doctrine allows appeal under section

24 1291 of "a narrow class of decisions that do not terminate the

25 litigation but must, in the interest of achieving a healthy legal

26 system, nonetheless be treated as final." Digital Equipment Corp v

27 Desktop Direct, Inc, 511 US 863, 867 (1994). The October 1 order

28 was not such a decision.

3

1        Ordinarily, of course, the court of appeals lacks

2  jurisdiction to review discovery orders before entry of judgment.

3  <u>Truckstop.net, LLC v Sprint Corp</u>, 547 F3d 1065, 1067 (9th Cir

4  2008).  As interpreted by the Ninth Circuit, the collateral order

5  doctrine allows the court of appeals to exercise jurisdiction over

6  interlocutory appeals of certain orders denying application of a

7  discovery privilege, but only when the order:  "(1) conclusively

8  determine[s] the disputed question; (2) resolve[s] an important

9  issue completely separate from the merits of the action; and (3)

10  [is] effectively unreviewable on appeal from final judgment."

11  <u>United States v Austin</u>, 416 F3d 1016, 1020 (9th Cir 2005)

12  (citations omitted).  As long as the question remains "tentative,

13  informal or incomplete, there may be no intrusion by appeal."  Id

14  (citing <u>Cohen v Beneficial Loan Corp</u>, 337 US 541, 546 (1949)).

15        In <u>Austin</u>, the Ninth Circuit found that it lacked

16  jurisdiction to review the district court's order that "statements

17  made during discussions between inmates in their cells with no

18  lawyers present are not covered as confidential communications

19  under the joint defense privilege."  416 F3d at 1019.  The court

20  held that the third prong of the jurisdictional test was not

21  satisfied because defendants had not "raised any specific privilege

22  claims" over specific communications.  Id at 1023.

23        Here, the October 1 order was not a conclusive

24  determination because proponents had not asserted the First

25  Amendment privilege over any specific document or communication.

26  Proponents' blanket assertion of privilege was unsuccessful, but

27  whether the privilege might apply to any specific document or

28  information was not finally determined in the October 1 order.

United States District Court
For the Northern District of California

1  Moreover, because the First Amendment qualified privilege that
2  proponents seek to invoke requires the court to balance the harm of
3  disclosure against the relevance of the information sought, the
4  applicability of the qualified privilege cannot be determined in a
5  vacuum but only with reference to a specific document or particular
6  information.

7         Proponents have made no effort to identify specific
8  documents or particular information to which the claim of qualified
9  privilege may apply.  Notably, proponents have failed to serve and
10 file a privilege log, a prerequisite to the assertion of any
11 privilege.  See <u>Burlington North & Santa Fe Ry Co v United States</u>
12 <u>Dist Court for Dist of Mont</u>, 408 F3d 1142, 1149 (9th Cir 2005).
13 Furthermore, the balancing required to apply the qualified
14 privilege must consider whether any injury or risk to the producing
15 party can be eliminated or mitigated by a protective order.  The
16 October 1 order directed the parties to discuss the terms of a
17 protective order and expressed the court's willingness to assist
18 the parties in fashioning such an order.  Doc #214 at 17.

19         The cases proponents cite to support appellate
20 jurisdiction under the collateral order doctrine deal with absolute
21 privileges, like the attorney-client privilege.  See Doc #220 at 5
22 n3 (citing <u>In re Napster, Inc Copyright Litigation</u>, 479 F3d 1078
23 (9th Cir 2007) (attorney-client privilege); <u>Bittaker v Woodford</u>,
24 331 F3d 715 (9th Cir 2003) (attorney-client privilege); <u>United</u>
25 <u>States v Griffin</u>, 440 F3d 1138 (9th Cir 2006) (marital privilege)).
26 These cases allow a collateral appeal at least in part because an
27 order denying a claim of absolute privilege usually resolves a
28 question independent from the merits of the underlying case.  See

United States District Court
For the Northern District of California

5

1  In re Napster, 479 F3d at 1088-89.

2          An order denying a claim of qualified privilege, which
3  balances the harm of production against the relevance of the
4  discovery sought, is not so easily divorced from the merits of the
5  underlying proceeding.  The question whether discovery is relevant
6  is necessarily enmeshed in the merits, as it involves questions
7  concerning "the substance of the dispute between the parties."  Van
8  Cauwenberghe v Biard, 486 US 517, 528 (1988).  Here, for example,
9  the question of relevance is related to the merits of plaintiffs'
10 claims, as the relevance of the information sought would be greater
11 were the court to apply an exacting level of scrutiny to
12 plaintiffs' Equal Protection claims.  Doc #214 at 12-13.

13

14                                  2

15          Proponents also apparently seek mandamus if the appellate
16 court does not accept their interlocutory appeal.  Mandamus is a
17 "drastic" remedy that is appropriately exercised only when the
18 district court has failed to act within the confines of its
19 jurisdiction, amounting to a "judicial 'usurpation of power.'"
20 Kerr v United States District Court, 426 US 394, 402 (1976) (citing
21 Will v United States, 389 US 90, 95-96 (1967)).  A party seeking
22 mandamus must show that he has "no other adequate means to attain
23 the relief he desires" and that "his right to issuance of the writ
24 is clear and indisputable."  Kerr, 426 US at 403 (citations
25 omitted).

26          In Kerr, petitioners sought a writ of mandamus to vacate
27 the district court's order that petitioners produce personnel files
28 and prisoner files after plaintiffs sought the discovery as part of

                                  6

United States District Court
For the Northern District of California

their class action against the California Department of
Corrections. 426 US at 396-97. Petitioners had asserted that the
discovery sought was both irrelevant and privileged. Id. The
Court denied mandamus at least in part because petitioners'
privilege claim had not been asserted with "requisite specificity."
Id at 404.[1] Petitioners therefore had a remedy remaining in the
district court: petitioners could assert their privilege claim
over a specific document or set of documents and allow the district
court to make the privilege determination in the first instance.
Id.

Here, the court might yet apply proponents' purported
privilege in the manner described in Kerr. Proponents have not
identified specific documents they claim are privileged and have
not given the court an opportunity to determine whether any claim
of privilege might apply to a specific document. Additionally, as
the court explained in its October 1 order, it is not "clear and
indisputable" that proponents should succeed on their First
Amendment claim of privilege. Doc #214 at 4-11. Proponents, as
the official supporters of a California ballot initiative, are
situated differently from private citizen advocates. Cf McIntyre v
Ohio Elections Comm'n, 514 US 334, 351 (1995) (distinguishing
between "individuals acting independently and using only their own
modest resources" and official campaigns). McIntyre determined
whether an individual who distributed leaflets in opposition to a

---

[1]Under quite different, and indeed rather unique, circumstances,
the Court has directed an appellate court to consider a writ of
mandamus even when petitioners had not asserted privilege claims over
specific discovery. See Cheney v United States Dist Court for D C,
542 US 367, 390-391 (2004).

7

1 local tax levy could be forced to disclose her identity on the
2 leaflet pursuant to an Ohio statute. Id at 338. In this case,
3 plaintiffs' discovery requests do not appear to call for disclosure
4 of identities of persons "acting independently and using their own
5 modest resources," but simply the individuals acting as, or in
6 coordination with, the official sponsors of the Yes on 8 campaign.
7 Plainly, there is a difference between individuals or groups who
8 have assumed the privilege of enacting legislation or
9 constitutional provisions and individuals who merely favor or
10 oppose the enactment. To the extent that plaintiffs' discovery
11 might disclose the identity of individuals entitled to some form of
12 anonymity, an appropriate protective order can be fashioned. A
13 blanket bar against plaintiffs' discovery is unwarranted.
14 Proponents case for mandamus relief is therefore tenuous at best.

15

16                                   B

17          Having determined that the court of appeals is unlikely
18 to accept proponents' appeal[2] or order mandamus relief, the court
19 turns more specifically to the merits of proponents' motion to stay
20 discovery pending the court of appeals' consideration of
21 proponents' proceedings in that court. For the reasons previously
22 noted and discussed further below, proponents are unlikely to
23 succeed on the merits of their resort to the court of appeals, and
24 their case for irreparable harm is weak.
25 \\
26 \\
27 ───────────────────

28     [2] The court of appeals has issued an order to show cause why the
appeal should not be dismissed. Ct Appls Docket #09-17241, Doc #8.

United States District Court
For the Northern District of California

8

1

1

2          In its October 1 order, the court declined proponents'
3  invitation to impose a blanket bar against plaintiffs' discovery of
4  proponents' communications with third parties. Doc #214 at 4-11.
5  Proponents contend that a blanket bar against such discovery was
6  required by the First Amendment. Doc #187 at 15 (citing NAACP, 357
7  US at 460; Bates v City of Little Rock, 361 US 516, 523 (1960);
8  Gibson v Florida Legislative Comm, 372 US 539 (1963)). Proponents
9  misread the October 1 order as foreclosing any application of a
10  First Amendment qualified privilege to the discovery plaintiffs
11  seek. The court simply decided that proponents had not established
12  the grounds necessary to invoke the First Amendment qualified
13  privilege while also sustaining in part proponents' objection to
14  the scope of plaintiffs' eighth document request.

15          At the risk of repetition, proponents are not likely to
16  succeed on the merits of their appeal for the following reasons:
17  (1) proponents have not put forth a strong case that the entirety
18  of discovery sought by plaintiffs in the eighth document request is
19  protected by a qualified First Amendment privilege when plaintiffs
20  do not seek disclosure of ProtectMarriage.com's rank-and-file
21  membership lists, Doc #214 at 4-11; (2) McIntyre, 514 US 334
22  (1995), does not support the application of a First Amendment
23  qualified privilege because McIntyre was acting independently, not
24  legislating, and because McIntyre dealt with the constitutionality
25  of an Ohio statute, not the application of a qualified privilege in
26  the context of civil discovery, Doc #214 at 8-9; and (3) proponents
27  have not properly preserved their privilege claim in light of both
28  the numerous disclosures already made surrounding the Yes on 8

United States District Court
For the Northern District of California

9

1  campaign and of proponents' failure to produce a privilege log.
2  Doc #214 at 10-11.

3      It simply does not appear likely that proponents will
4  prevail on the merits of their appeal.

5

6                                   2

7      The question whether proponents are likely to suffer
8  irreparable harm if a stay is not entered is difficult to answer in
9  a vacuum.  The court does not know at this juncture exactly what
10 documents or information would be disclosed in the absence of a
11 stay.  Generally, the threat of a constitutional violation suggests
12 the likelihood of irreparable harm.  Community House, Inc v City of
13 Boise, 490 F3d 1041 (9th Cir 2007).  But it does not appear that
14 the entirety of communications responsive to plaintiffs' eighth
15 document request is covered by the First Amendment qualified
16 privilege.  Doc #214 at 4-11.

17     As the court explained in its October 1 order, Prop 8
18 supporters claim to have faced threats, harassment and boycotts
19 when their identities were revealed; however, proponents have not
20 made a showing that the discovery sought in this case would lead to
21 further harm to any Prop 8 supporter.  Doc #214 at 6.  Proponents
22 offer nothing new in the instant motion to support their claim that
23 disclosure would lead to irreparable harm.  See Doc #220 at 5.

24     A protective order provides a means by which discovery
25 could continue without the threat of harm proponents seek to avoid.
26 But proponents have not sought a protective order directed to
27 specific disclosures.  The possibility that harm could be
28 eliminated or substantially minimized through a protective order

                                   10

United States District Court
For the Northern District of California

1 | suggests that a stay of discovery is not required.

2

3 | 3

4 | In light of the court's determination that proponents
5 | have neither demonstrated a likelihood of success on the merits nor
6 | shown that they are likely to suffer irreparable harm if the stay
7 | is not issued, it is unnecessary to address the remaining factors
8 | required for proponents to obtain a stay.  Nevertheless, the court
9 | will touch on them briefly.

10 | Whether the balance of equities tips in proponents' favor
11 | depends upon a comparison of the harm proponents claim they would
12 | face if a stay were not granted with the harm plaintiffs would face
13 | if a stay were granted.  Winter, 129 SCt at 376.  As just
14 | explained, proponents' projected harm could be remedied through a
15 | protective order.  Plaintiffs assert they too face harm as they
16 | seek to vindicate what they claim is a violation of their
17 | constitutional rights.  Doc #225 at 13.  A stay would serve to
18 | delay discovery and potentially postpone the scheduled January 2010
19 | trial.  A "mere assertion of delay does not constitute substantial
20 | harm."  United States v Phillip Morris Inc, 314 F3d 612, 622 (9th
21 | Cir 2003).  But because proponents have not articulated any
22 | meaningful harm, the balance of equities nevertheless tips in
23 | plaintiffs' favor in light of the potential for delay.

24

25 | 4

26 | Finally, the court must determine whether a stay is in
27 | the public interest.  Proponents assert that the denial of a stay
28 | will "curtail the First Amendment freedoms surrounding voter-

United States District Court
For the Northern District of California

1 initiated measures." Doc #220 at 7. Plaintiffs counter that
2 citizens have an interest in seeing plaintiffs' constitutional
3 claims determined on the merits as quickly as possible. Doc #225
4 at 14. It appears that a protective order would likely remedy any
5 harm to the public identified by proponents. It also appears that
6 a limited discovery stay would not significantly affect the public
7 interest in a prompt resolution of plaintiffs' claims. Thus, the
8 public interest does not appear to weigh strongly in favor of any
9 party's position.

10

11                                    II

12          Even in the unlikely event that the court of appeals
13 exercises jurisdiction over proponents' appeal or mandamus
14 petition, a discovery stay is inappropriate. Proponents have not
15 demonstrated that they are likely to succeed on the merits of their
16 claims or that they face irreparable harm in the absence of a stay.
17 The balance of equities appears to tip in favor of denying a stay,
18 and the public interest does not point clearly one way or another.
19 Accordingly, proponents' motion to stay discovery is DENIED.

20          Plaintiffs seek an order compelling discovery within
21 seven days. Doc #225. But it is not clear whether the discovery
22 sought can practically be produced within the next seven days.
23 While it is imperative to proceed promptly with discovery to keep
24 these proceedings on schedule, the court prefers to look to the
25 good faith and professionalism of proponents' able counsel to
26 respond to plaintiffs' modified eighth document request in a timely
27 manner. The court stands ready to assist the parties.
28 \\

12

1    Accordingly, the parties are directed to contact the
2 clerk within five days to schedule a telephone conference to
3 discuss the progress of their efforts.

4

5    IT IS SO ORDERED.

6

7

8    VAUGHN R WALKER
     United States District Chief Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13

1

2              IN THE UNITED STATES DISTRICT COURT

3          FOR THE NORTHERN DISTRICT OF CALIFORNIA

4

5   KRISTIN M PERRY, SANDRA B STIER,      No    C 09-2292 VRW
    PAUL T KATAMI and JEFFREY J
6   ZARRILLO,                                  ORDER

7              Plaintiffs,

8   CITY AND COUNTY OF SAN FRANCISCO,

9              Plaintiff-Intervenor,

10             v

11  ARNOLD SCHWARZENEGGER, in his
    official capacity as governor of
12  California; EDMUND G BROWN JR, in
    his official capacity as attorney
13  general of California; MARK B
    HORTON, in his official capacity
14  as director of the California
    Department of Public Health and
15  state registrar of vital
    statistics; LINETTE SCOTT, in her
16  official capacity as deputy
    director of health information &
17  strategic planning for the
    California Department of Public
18  Health; PATRICK O'CONNELL, in his
    official capacity as clerk-
19  recorder of the County of
    Alameda; and DEAN C LOGAN, in his
20  official capacity as registrar-
    recorder/county clerk for the
21  County of Los Angeles,

22             Defendants,

23  DENNIS HOLLINGSWORTH, GAIL J
    KNIGHT, MARTIN F GUTIERREZ,
24  HAKSHING WILLIAM TAM, MARK A
    JANSSON and PROTECTMARRIAGE.COM -
25  YES ON 8, A PROJECT OF
    CALIOFORNIA RENEWAL, as official
26  proponents of Proposition 8,

27             Defendant-Intervenors.
                                      /
28

_United States District Court_
_For the Northern District of California_

1          The court has received defendant-intervenors'
2  ("proponents") in camera submission containing a sample of
3  documents potentially responsive to plaintiffs' revised eighth
4  document request.  Doc #251.  Proponents assert that the documents
5  are protected by the qualified First Amendment privilege and that
6  in any event the documents are not relevant.  Id; see also Doc #187
7  (proponents' motion for a protective order); Doc #220 (proponents'
8  motion to stay discovery).

9          The court denied proponents' blanket assertion of
10 privilege, Doc #214, but offered to review a sample of the
11 documents at issue in camera to determine if the privilege might
12 apply to some of proponents' documents, Doc #246, Nov 2 Hrg Tr at
13 42-43.  While plaintiffs have not seen the documents, they are in
14 possession of proponents' privilege log, Doc #250-1, which
15 identifies the submitted documents by number and provides a simple
16 description of the documents.

17         The court has reviewed proponents' in camera submission
18 and finds that while the qualified First Amendment privilege does
19 not provide the documents much, if any, protection against
20 disclosure, many of the documents submitted by proponents are
21 simply not responsive to plaintiffs' discovery request.

22
23                                  I

24         The documents submitted by proponents are at most subject
25 to a limited application of the qualified First Amendment
26 privilege.  Proponents have argued vigorously that the privilege
27 should protect all campaign communications as well as identities of
28 all individuals whose association with the campaign has not yet

                                   2

1  been made public.  Doc ##187, 220.  Proponents have not however
2  identified a way in which the qualified privilege could protect the
3  disclosure of campaign communications or the identities of high
4  ranking members of the campaign.  See Doc #187 at 14-19 (citing
5  National Ass'n for the A of C P v Alabama, 357 US 449 (1958)
6  ("NAACP") and its progeny, which protect only the identity of rank-
7  and-file organization members, along with McIntyre v Ohio Elections
8  Comm'n, 514 US 334, 351 (1995), which protects "individuals acting
9  independently and using only their own modest resources.").  If the
10  qualified privilege identified by proponents protects anything, it
11  is the identities of rank-and-file volunteers and similarly
12  situated individuals.  Plaintiffs have indicated that they do not
13  oppose redaction of these names.  Doc #250 at 2 n1.

14
15                               II

16          Plaintiffs' eighth document request is likely to lead to
17  the discovery of admissible evidence to the extent the evidence
18  relates to messages or themes conveyed to California voters or is
19  otherwise likely to lead to this relevant information.  See
20  Washington v Seattle School Dist No 1, 458 US 457, 463-463 (relying
21  in part on messages relayed to voters to hold that a busing
22  initiative was "directed solely at desegregative busing"); see also
23  Robert L v Superior Court, 30 Cal 4th 894, 905 (2003) (relying on
24  "materials that were before the voters" to interpret a California
25  initiative and rejecting "evidence of the drafters' intent that was
26  not presented to the voters").

27          Here, communications discussing campaign messaging or
28  advertising strategy, including targeted messaging, are generally

                               3

United States District Court
For the Northern District of California

responsive; communications regarding fundraising strategy, polling information or hiring decisions are generally not responsive, unless the communications deal with themes or messages conveyed to voters in more than a tangential way. To assist the parties in proceeding with discovery, the court has analyzed each of the sixty documents submitted by proponents and determined for the reasons explained below that only the following twenty-one are responsive to plaintiffs' discovery request: 3, 4, 6, 7, 9, 11, 12, 17, 27, 28, 29, 30, 48, 49, 50, 51, 53, 55, 56, 58 and 60. These documents discuss messages or themes conveyed to voters through advertising or direct messaging. The remaining documents are either not responsive to plaintiffs' request or are so attenuated from the themes or messages conveyed to voters that they are, for practical purposes, not responsive.

A

Documents 3, 4, 6, 7, 9, 11, 12, 17, 27, 28, 29, 30, 48, 49, 50, 51, 53, 55, 56, 58 and 60 are responsive because they relate to the messages or themes the campaign attempted to or did convey to voters. These documents deal directly with advertising or messaging strategy and themes.

- Doc 3 discusses talking points for a meeting with a newspaper editorial board.
- Doc 4 discusses edits to a television advertisement.
- Doc 6 discusses edits to flyers targeted to a group of voters.
- Doc 7 contains emails and attachments dealing with arguments to be presented to voters in some form.

4

United States District Court
For the Northern District of California

1    •    Doc 9 discusses a campaign targeted to certain voters.

2    •    Doc 11 discusses messages conveyed during the campaign's

3         grassroots outreach.

4    •    Doc 12 analyzes materials for the ballot pamphlet.

5    •    Doc 17 discusses voter reaction to a theme in campaign

6         advertising.

7    •    Doc 27 contains line edits of the ballot arguments.

8    •    Doc 28 is a meeting agenda outlining the campaign's

9         advertising themes.

10   •    Doc 29 is a draft of a campaign flyer.

11   •    Doc 30 is a proposal for themes to be conveyed during the

12        campaign.

13   •    Doc 48 is an email exchange discussing language to be

14        used in conveying a message to voters.

15   •    Doc 49 is generally relevant as an email exchange

16        discussing information for voters contained on the

17        campaign's public website, although an email from a

18        private citizen within the exchange may not itself be

19        relevant to campaign messaging and could, therefore, be

20        redacted.

21   •    Doc 50 discusses focus group responses to various

22        campaign themes.

23   •    Doc 51 contains talking points to be conveyed to voters.

24   •    Doc 53 is a grassroots plan to convey specific messages

25        to voters.

26   •    Doc 55 discusses a potential message to be conveyed in

27        response to an opposition advertisement.

28   \\

                              5

United States District Court
For the Northern District of California

1          •    Doc 56 deals with television advertisements to convey

2               certain messages to voters.

3          •    Doc 58 is a post-election summary of successful themes

4               conveyed to voters.

5          •    Doc 60 is a draft of a television advertisement.

6    These documents are responsive because they discuss in relative

7    detail the messages and themes that the campaign attempted to

8    convey to the voters.

9

10                                    B

11          Documents 1, 2, 5, 10, 14, 15, 16, 18, 23, 31, 32, 33,

12   35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 46, 52, 57, and 59 say

13   nothing about campaign messages or themes to be conveyed to the

14   voters and are therefore not responsive.

15         •    Docs 1 and 2 are memos discussing the mechanics of

16              operating a campaign.

17         •    Doc 5 deals solely with the petition drive to qualify

18              Prop 8 for the ballot.

19         •    Doc 10 is an email exchange discussing internal campaign

20              strategy.

21         •    Docs 14, 15 and 16 discuss mechanics of the campaign's

22              internal structure.

23         •    Doc 18 is an email exchange discussing a campaign

24              contribution.

25         •    Doc 23 is an email exchange discussing polling numbers.

26         •    Doc 31 similarly discusses poll results and also contains

27              a long email that appears mostly to be musings regarding

28              poll results.

                                      6

1          •     **Doc 32 deals with volunteer coordination and**
2                **organization.**
3          •     **Doc 33 seeks information about a specific volunteer.**
4          •     **Doc 35 deals with the campaign's structure and**
5                **arrangements with other entities.**
6          •     **Doc 36 contains the campaign's steering committee meeting**
7                **minutes, which discuss organizational structure.**
8          •     **Doc 37 provides draft poll questions.**
9          •     **Doc 38 discusses a strategy to obtain volunteers.**
10         •     **Doc 39 is a list of potential donors.**
11         •     **Doc 40 is an email exchange discussing recruitment of a**
12               **potential staff member.**
13         •     **Doc 41 is a fundraising letter seeking money to help**
14               **qualify Prop 8 for the ballot.**
15         •     **Doc 42 discusses volunteer organization.**
16         •     **Docs 43 and 44 discuss meetings with major donors.**
17         •     **Doc 46 deals with the mechanics of petition drives.**
18         •     **Doc 52 deals principally with the mechanics of operating**
19               **a phone bank.**
20         •     **Doc 57 discusses polling numbers.**
21         •     **Doc 59 is a post-election email discussing a supporter**
22               **apparently not officially associated with the campaign.**
23  Because these documents do not discuss campaign messages to voters,
24  they are not responsive to plaintiffs' discovery request.
25  \\
26  \\
27  \\
28  \\

                                     **7**

United States District Court
For the Northern District of California

1

C

2          Documents 8, 13, 19, 20, 21, 22, 24, 25, 26, 34, 45, 47
3    and 54 are not responsive because they say nothing about campaign
4    messaging or themes to be conveyed to voters, even though they
5    discuss topics that might relate to messages ultimately adopted or
6    considered by the campaign.  Because the documents do not discuss
7    voters or their potential reactions, they are not responsive.

8          •    Doc 8 contains internal emails discussing recent articles
9               about gay marriage and its effects.

10         •    Doc 13 may be protected by the attorney-client privilege;
11              moreover, it is not relevant because it is an internal
12              memorandum discussing proposed language for Prop 8 in a
13              way that is at most marginally pertinent to advertising
14              strategy.

15         •    Docs 19, 20, 21 and 22 discuss a potential volunteer
16              consultant and ways the volunteer might aid campaign
17              strategies.

18         •    Docs 24, 25 and 26 deal with polling and voter data;
19              while the email exchanges contain some brainstorming
20              regarding messaging, the content is too attenuated to
21              have a reasonable likelihood of leading to the discovery
22              of admissible evidence.

23         •    Doc 34 discusses strategy for disseminating a message but
24              does not discuss the message itself.

25         •    Doc 45 deals with the appropriate language to use for the
26              text of Prop 8.

27         •    Doc 47 contains an email exchange discussing a targeted
28              fundraising drive.

United States District Court
For the Northern District of California

8

1

• **Doc 54 deals with a potential disclaimer in an**

2 **advertisement but does not touch on any campaign messages**

3 **to be conveyed to voters.**

4 In some ways these documents fall in the margin of potentially
5 responsive discovery; nevertheless, the court deems them not
6 responsive because their relationship to messages or themes
7 conveyed to voters is attenuated enough that it appears as a
8 practical matter unlikely to lead to discovery of admissible
9 evidence.

10

11 **III**

12 The court recognizes that the documents provided for in
13 camera review are merely a sample of the hundreds of documents in
14 proponents' possession and that the determination whether the
15 remaining documents are responsive in light of the foregoing
16 instruction may not be mechanical. Nevertheless, the court hopes
17 that the foregoing affords proponents sufficient and specific
18 enough guidance to cull their inventory of documents and other
19 materials in order to respond to plaintiffs' document request. The
20 court looks to the parties' able counsel to work out a production
21 schedule.

22 The court also directs the parties to proceed promptly to
23 take the principal depositions they believe are necessary to
24 prepare for trial. In doing so, the parties should recognize that
25 the unreasonable withholding of requested documents may frustrate
26 appropriate deposition discovery and creates a risk of multiple
27 depositions of the same witness.

28 \\

9

1          The court stands ready to assist the parties should
2  further disputes arise.  In the undersigned's absence, any such
3  disputes are referred to Magistrate Joseph Spero, 28 USC §
4  636(b)(1)(A).

6          IT IS SO ORDERED.

9          VAUGHN R WALKER
           United States District Chief Judge

10