Pages 1 - 24

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JOSEPH C. SPERO

KRISTIN M. PERRY,                    )
SANDRA B. STIER, PAUL T. KATAMI,     )
and JEFFREY J. ZARRILLO,             )
                                     )
              Plaintiffs,            )
                                     )
VS.                                  ) NO. C 09-2292-VRW
                                     )
ARNOLD SCHWARZENEGGER, in his        )
official capacity as Governor of     )
California; EDMUND G. BROWN, JR.,    )
in his official capacity as          )
Attorney General of California;      )
MARK B. HORTON, in his official      )
capacity as Director of the          )
California Department of Public      )
Health and State Registrar of        )
Vital Statistics; LINETTE SCOTT,     )
in her official capacity as Deputy   )
Director of Health Information &     )
Strategic Planning for the           )
California Department of Public      )
Health; PATRICK O'CONNELL, in his    )
official capacity as                 )
Clerk-Recorder for the County of     )
Alameda; and DEAN C. LOGAN, in his   )
official capacity as                 )
Registrar-Recorder/County Clerk      )
for the County of Los Angeles,       )
                                     ) San Francisco, California
              Defendants.            ) Thursday
                                     ) November 19, 2009
_____) 10:00 a.m.

**TRANSCRIPT OF PROCEEDINGS**

**Reported By:**   *Katherine A. Powell, CSR #5812, RPR, CRR*
                   *Official Reporter - U.S. District Court*

**APPEARANCES (via telephone):**

**For Plaintiffs:**          GIBSON, DUNN & CRUTCHER
                             333 South Grand Avenue
                             Los Angeles, California  90071
                   BY:   **MATTHEW D. MC GILL, ESQUIRE**


**For Plaintiffs:**          DENNIS J. HERRERA, CITY ATTORNEY
                             Office of the City Attorney
                             1390 Market Street, Sixth Floor
                             San Francisco, California  94102-5408
                   BY:   **MOLLIE LEE, ATTORNEY AT LAW**


**For Defendant:**           MENNEMEIER, GLASSMAN & STROUD
                             980 9th Street, Suite 1700
                             Sacramento, California  95814-2736
                   BY:   **ANDREW WALTER STROUD, ESQUIRE**


**For Defendant:**           STATE ATTORNEY GENERAL'S OFFICE
                             455 Golden Gate Avenue, Suite 11000
                             San Francisco, California  94102-7004
                   BY:   **TAMAR PACHTER, ATTORNEY AT LAW**


**For Defendant
Intervenors:**               COOPER & KIRK
                             1523 New Hampshire Avenue, N.W.
                             Washington, D.C.  20036
                   BY:   **NICOLE MOSS, ESQUIRE**

**P R O C E E D I N G S**

1

2  **NOVEMBER 19, 2009**                                        **10:00 A.M.**

3

4          **THE CLERK:**  Calling case C 09-2292, Kristin M. Perry

5  versus Arnold Schwarzenegger.

6          Counsel, please state your appearances.

7          **MR. MCGILL:**  This is Matthew McGill, from Gibson,

8  Dunn & Crutcher, for the plaintiffs.

9          **MS. MOSS:**  This is Nicole Moss, with Cooper & Kirk,

10  for the defendant intervenors.

11          **MR. STROUD:**  This is Andrew Stroud, Mennemeier,

12  Glassman & Stroud, on behalf of Governor Schwarzenegger and the

13  Administration defendants.

14          **MS. PACHTER:**  This is Tamar Pachter on behalf of the

15  California Attorney General.

16          **MS. LEE:**  This is Mollie Lee on behalf of plaintiff

17  intervenor, the City and County of San Francisco.

18          **THE COURT:**  Thank you, counsel.

19          We're here because I have received two letters, one

20  dated --

21          (Interruption in the proceedings.)

22          **UNIDENTIFIED SPEAKER:**  Hello?

23          **THE COURT:**  Just wait one second.  There is an alarm

24  going off in the building, which we are going to let pass.

25          One letter dated November 16th, from Mr. Dettmer, and

*Katherine Powell Sullivan, CSR, RPR, CRR*
*Official Reporter - U.S. District Court*
*(415) 794-6659*

1  one dated November 17th, from Nicole Moss, counsel for the

2  defendant intervenors.

3          And those are the issues raised by -- those two

4  letters are the issues that I wanted to address in this

5  proceeding.  And I have a couple of questions I wanted you to

6  address in your remarks.

7          The first is, when the -- it seems to me that

8  Chief Judge Walker's November 11th order had two parts to it,

9  really.  One dealt with some 20-odd specific documents that

10 were ordered produced, and the rest dealt with culling out,

11 based on the categories that he set forth, the remainder of the

12 documents that were responsive to document request number 8,

13 that would be produced.

14         The first question is, when is it practical to

15 produce those two types of documents?

16         The second question is, when you anticipate actually

17 beginning the deposition that Chief Judge Walker ordered to

18 commence, as I recall, promptly.

19         And, finally -- and I just throw this out for

20 discussion, because I don't actually know all the ins and outs

21 of your thinking on these matters -- whether there is any

22 utility or interest in discussing a stipulated order from the

23 Court that the production of the particular documents at issue

24 be without a waiver of the qualified privilege at issue.

25         So those are my areas of concern.  Of course, I would

1  want to hear any other areas of concern that you want to

2  address, as well.

3          Why don't we just take it in order, starting with

4  counsel for plaintiffs.

5          **MR. MCGILL:**  Thank you, Judge Spero.

6          This is Matthew McGill, from Gibson, Dunn & Crutcher

7  for the plaintiffs.

8          Taking your questions in the order in which you

9  presented them, first, when is it practical to present -- to

10 produce these two types of documents?

11         We believe it's practical for the defendant

12 intervenors to produce immediately at least the 21 documents

13 that they submitted to Judge Walker in camera.

14         As to the other documents that are of the types that

15 Judge Walker identified as not privileged and responsive, I

16 expect that Ms. Moss can address that in greater detail.

17         But I understand, from our ongoing correspondence

18 with them, the defendant intervenors, that they have been

19 working diligently to review and assemble the documents for

20 production, and will do so -- you know, and will be able to do

21 so in reasonably short order.

22         The holdup, at this point, to any production is their

23 belief that they can continue to withhold production until

24 their request for a stay is litigated soley within the Ninth

25 Circuit and then in the Supreme Court of the United States

1  after that.

2          And Ms. Moss has informed us that the defendant

3  intervenors, in fact, do not intend to produce any documents

4  identified by Judge Walker as privileged -- as not privileged

5  and responsive, until their stay litigation has run its course.

6          With respect to your second question, about the

7  timing of depositions, we have tentatively agreed on a number

8  of deposition dates in the first two weeks of December for the

9  defendant intervenors and other as-identified members of the

10 *Yes On 8* executive committee.

11         The deposition timing, of course, is subject to our

12 ability to review and -- to receive and review these documents.

13         We will push forward with those depositions on the

14 December dates, even in the absence of the documents.  But we

15 would, I expect, ask Judge Walker to allow us to depose those

16 people a second time, as his November 11th order contemplates,

17 once we receive the documents, if we are not to get them until

18 December.

19         The third question, as to a protective order, we have

20 offered to the defendant intervenors, from the very outset of

21 this privilege dispute, that we would agree to accept the

22 documents on an attorneys' eyes only basis, until such time as

23 their privilege claims were litigated in the District Court and

24 their state claims were litigated, and we could resolve the

25 admissibility of those documents and their status under the

1  protective order at a date closer to trial.

2          My understanding of the defendant intervenors'

3  position is that they are not amenable to producing, even under

4  an attorneys' eyes only protective order.

5          And that position strikes us, frankly, as quite

6  unreasonable, given that under the Ninth Circuit precedent that

7  governs these claims of First Amendment privilege, which

8  would -- the most recent of which is the Dole case, which is

9  950 F.2d 1456.

10          In that case, Judge Reinhardt, writing for the Ninth

11 Circuit, found that certain documents were indeed privileged

12 under the First Amendment, and held that the remedy for that

13 was an attorneys' eyes only protective order.

14          So we have offered to the defendant intervenors, at

15 least on a provisional basis, the relief that the Ninth

16 Circuit, at least in the past, has authorized as appropriate in

17 these cases of First Amendment privilege.

18          **THE COURT:**  All right.  Let me hear from the

19 intervenors.

20          **MS. MOSS:**  Good morning, Judge.  This is Nicole Moss

21 for defendant intervenors.

22          Taking your questions again in order, as Mr. McGill

23 did, he is correct, certainly, that as a practical matter we

24 could produce the 21 documents identified by Chief Judge Walker

25 in his November 11th order very quickly.

1            But Mr. McGill has also, I think, correctly pointed

2    out, our position isn't so much one of the practicality of

3    producing those documents; it's our concern that we continue to

4    have the assertion of our First Amendment privilege.

5            And we have sought a stay with the Ninth Circuit.

6    And we have asked that that request for a stay be considered in

7    an expedited manner.

8            And we do not believe that it's appropriate to have

9    any of the documents over which we have asserted First

10   Amendment privilege produced until the Ninth Circuit has had an

11   opportunity to review and weigh in on these claims.

12           In terms of the practical question for the remainder

13   of the documents, we have diligently reviewed them to be in a

14   position to be able to produce, if that is what is ultimately

15   decided by the appellate courts.

16           As a practical matter, I can say that we can begin a

17   rolling production in fairly short order.  But it would have to

18   be a rolling production.

19           One significant reason for that is, Judge Walker's

20   November 11th order provided additional guidance on what sorts

21   of documents, in fact, have to be produced in response to

22   plaintiffs' discovery requests.

23           So we are having, now, to go back through, in light

24   of that guidance, and look at the documents and determine which

25   of those documents that we previously asserted privilege to are

1  really just off the table now, not because of privilege issues

2  but because Judge Walker has made clear they are not

3  responsive.

4          And so we could begin a rolling production.  I -- I

5  would say, within two weeks -- we could begin a short rolling

6  production probably within a week; although, that hits us up

7  against -- a week from today, of course, is Thanksgiving.

8          **THE COURT:**  Wait.  I guess I don't understand that.

9          You got the judge's order eight days ago.  There's a

10  limited universe here.  It may be several thousand documents,

11  but you're saying you won't be ready to produce any documents

12  until maybe as much as two weeks or maybe next week?

13          **MS. MOSS:**  No.  We certainly can begin producing as

14  soon as we -- this is Nicole Moss again, for the defendant

15  intervenors.

16          We could certainly begin producing documents, at

17  least some amount of them, fairly quickly, within a day or two,

18  if we were dealing solely with the practical -- solely with the

19  practical questions of production.

20          Immediately upon receiving Judge Walker's orders, we

21  began a review to determine, in light of the guidance he gave,

22  which documents were still at issue.

23          Our concern more about -- and I'm sorry if I was not

24  clear on this.  When we start talking two weeks, what we would

25  request -- we realize what plaintiffs have asked for is an

1  order that we produce on a date certain within three days.  And

2  what we would request would be 14 days.

3          And the reason for that is this:  If there is a date

4  certain entered by the District Court for when we have to

5  produce these documents, we would have the ability, under the

6  Ninth Circuit rules, to seek emergency treatment of our stay

7  motion.

8          As it stands, we've asked for expedited treatment of

9  that motion.  But we can't do more at this point.

10          We are not opposed to a date certain being entered so

11  that we can avail ourselves of the rules for seeking emergency

12  treatment.

13          But we think that three days is not a reasonable

14  amount of time to give the Ninth Circuit, to be able to have

15  full briefing on the matter and to give it the appropriate

16  consideration that it is due.

17          And so that is why when I say -- a week puts us up

18  against Thanksgiving.

19          So we believe that what would be reasonable would be

20  if the Court were inclined to enter an order requiring

21  (inaudible) for production, that it be two weeks.

22          And, in that way, we would comply, of course, with

23  whatever briefing schedule the Ninth Circuit set.  And we would

24  immediately upon getting such an order certified to the Ninth

25  Circuit for the emergency treatment as we're entitled to do

1   under the rules.

2         **THE COURT:**  Two weeks from when?

3         **MS. MOSS:**  Two weeks from whenever the order would be

4   entered.  If that were today, then from today or from tomorrow.

5         **THE COURT:**  So you are thinking December 3rd?

6         **UNIDENTIFIED SPEAKER:**  Judge --

7         **THE COURT:**  Let me just finish with asking Ms. Moss

8   some questions.

9         So you are thinking December 3rd?

10        **MS. MOSS:**  Yes, Your Honor.

11        **THE COURT:**  And when are the tentative dates of the

12  first deposition?

13        **MS. MOSS:**  The tentative date of the first deposition

14  is actually December 1st.

15        **THE COURT:**  Okay.  And when you say December 3rd -- I

16  see.  Okay.

17        Well, but you don't want the rolling production to

18  start until December 3rd?

19        **MS. MOSS:**  That is -- this is Nicole Moss.

20        Yes, that is correct.

21        We believe that that would give the Ninth Circuit

22  sufficient time, we hope.  I mean, it -- to -- to be able to

23  consider the issue and to issue whatever opinion it's going to

24  issue.

25        And, certainly, if it goes in our favor and agrees

1  with us that these documents are protected by the First

2  Amendment, then there would be no production.

3           And if it disagrees, then we would have whatever

4  ability exists to go up to the Supreme Court, potentially.

5           But --

6           **THE COURT:**  During which time you wouldn't produce

7  documents?

8           **MS. MOSS:**  That is correct.

9           **THE COURT:**  Well, and when did you expect the Supreme

10 Court to actually react to your proposed hypothetical petition

11 for review of any failure to stay the matter by the Circuit?

12          **MS. MOSS:**  Well, we certainly, as we have done

13 throughout dealing with this matter, we would seek that

14 immediately and would ask for -- for a decision as quickly as

15 possible.

16          **THE COURT:**  But envision, then, from the Court's

17 perspective, there is a trial date in January.  There is a

18 discovery cutoff, I think, actually coming up the end of this

19 month for some discovery, if I'm not mistaken.

20          What you're saying is, asking me to endorse a

21 schedule which essentially says, in the absence of the chief

22 judge being here, the trial date's going off.  Right?

23          **MS. MOSS:**  Well, I -- I -- potentially, Your Honor.

24          If we -- if we ultimately do not prevail on our First

25 Amendment issues, and there's -- and have to produce the

```
 1   documents, certainly, it would be sometime in December that the
 2   documents would get produced.
 3            THE COURT:  If you were lucky.
 4            I mean, if the Supreme Court, under your scenario,
 5   responded immediately, which seems unlikely, but if they
 6   responded immediately, then sometime later in December, just
 7   before the trial, you would be producing the documents.
 8            It's at least as likely you wouldn't get any answer
 9   until January.
10            I'm concerned that going down -- that I don't have
11   the luxury, given the schedule the Chief Judge has set, to go
12   along with a schedule that is as extended as you want.
13            He set a rather -- he set a specific schedule and a
14   specific trial date.  And I think one of the tasks of the Court
15   is to manage discovery so it is within that trial date.
16            But I understand your position on the matter.
17            Tell me, just because I'm new to this part of the
18   process, your reaction to the utility of a stipulated
19   protective order, which apart from being attorneys' eyes only
20   and the protections that that might, as the Chief suggested,
21   engender in terms of people's disclosures having a negative
22   effect, that the Court could actually enter an order -- and I
23   don't know the effect of it in this context -- saying it's not
24   a waiver of your qualified immunity rights.  Qualified -- not
25   immunity rights, qualified privilege rights.
```

1                Do you have any reaction to that?

2          **MS. MOSS:**  Yes, Your Honor.

3                And, again, for the court reporter, this is Nicole

4    Moss.

5                We would be opposed to that.  And we don't believe

6    that it would fully and appropriately protect the First

7    Amendment rights that are being asserted by the proponents in

8    the marriage campaign.

9                We think the chilling effects that we're concerned

10   with happens with disclosure, even if it's only to the

11   attorneys.  And so we do not view that as an adequate remedy.

12               Two other real quick points, if I may make, is to

13   be -- to note that some of the delay that has occurred, if you

14   want to call it delay, we have expeditiously sought our

15   appeals, filed them within 24 to 36 hours of getting a ruling.

16               Plaintiffs, on their part, have yet to file a

17   response to our motion -- stay motion in the Ninth Circuit.

18               So to the extent that they're concerned about

19   expedition, something that was fully within their control, they

20   have not yet done, and would have helped to tee this issue up

21   sooner, potentially, for the Ninth Circuit.

22               While I understand the concern that the trial date is

23   set, we believe that the First Amendment issues that we are

24   asserting, that these are very precious First Amendment rights,

25   and we have been asserting them in good faith, and have been

1  working as diligently as possible to be able to meet all the

2  deadlines, including expending a tremendous amount of resources

3  on reviewing documents that are, in our view, not subject to

4  production and are privileged, but, certainly, working in good

5  faith to be in a position to be able to produce those if we are

6  ultimately proven wrong.

7          And I'm not sure there is much else we can do

8  consistent with asserting what we believe to be very

9  fundamental First Amendment rights.

10          **THE COURT:**  Well, that's fine.  And I don't doubt

11  your good faith.

12          And I think the Chief Judge has made it clear that he

13  thinks that all counsel are proceeding in a professional

14  fashion, and has great respect for the positions of all the

15  parties in the matter.  That's not the question.

16          The question is whether there is a way through this

17  which is consistent with the judge's schedule that he has set,

18  because I think from the perspective of, if I may say, a

19  magistrate judge working on discovery in his absence, I think I

20  am bound to try to implement that schedule.

21          And I just don't see how I can do it if you have a

22  rolling production that begins on December 3rd.  A rolling

23  production that ends around then, perhaps, but not one that

24  begins around then.

25          You've had more than a week, already, to review the

1   documents.  I certainly would give you more than a week to

2   complete your review.  But I don't know that I could,

3   consistent with the schedule the Court has set, do it by then.

4        And maybe that gets you what you need, because you'll

5   be able to take that to the Court of Appeals and then get a

6   decision.

7        Okay.  All right.  There was someone else who wanted

8   to make -- did you have any further comments you wanted to

9   make, Ms. Moss?

10        **MS. MOSS:**  No, Your Honor.

11        **THE COURT:**  Okay.

12        **MR. MCGILL:**  Judge Spero, this is Matthew McGill for

13   the plaintiffs.

14        I just have two quick reactions to Ms. Moss's

15   comments, the first of which is:  The defendant intervenors

16   could have moved on an emergency basis in the Ninth Circuit.

17        Ninth Circuit Rule 27.3 provides for two different

18   procedures under which a movant can obtain relief either within

19   7 or 21 days.

20        And, yet, the defendant intervenors availed

21   themselves of neither procedure, and, instead, put us on a

22   schedule that in the normal course would end on December 3rd,

23   which is three days after the close of fact discovery.

24        Ms. Moss is correct, we have not yet responded.  And

25   that, you know, there's all the obvious reasons for that, which

1   include the fact that depositions are ongoing of expert

2   witnesses, and other hearings and other commitments in other

3   cases.

4          My second reaction is that Ms. Moss says that an

5   attorneys' eyes only protective order would not be sufficient

6   to protect her and her clients' interests.

7          And the Ninth Circuit simply disagrees with that

8   point of view.  And that's made clear by the results in the

9   Dole case.

10          **THE COURT:**  I take it that Ms. Moss disagrees with

11   that evaluation of the Dole case.

12          **MS. MOSS:**  Your Honor, this is Nicole Moss.  If I may

13   briefly respond.

14          Certainly, the Dole case we do disagree, and we think

15   there is a -- a very big difference between that case and here

16   is that the parties in Dole agreed to a confidentiality

17   agreement.

18          And here we, from the outset, have made clear that

19   while we would work in good faith to create a protective order

20   in the event we lose our First Amendment claims, it was not a

21   remedy for the harm that we believe would result.

22          And, secondly, I simply disagree with Mr. McGill on

23   what the Ninth Circuit rules require.

24          We do not believe that we have the right under those

25   rules to seek emergency treatment of our motion until there is

1 a date certain set.  Which, based on the November 11 order,

2 there was not.

3         And so it's not for lack of wanting to have this

4 dealt with expeditiously.  It's, in our view, lack of the

5 ability to invoke that in the Ninth Circuit.

6         **THE COURT:**  You don't think there was a date certain

7 set, notwithstanding the fact that there was a discovery

8 cutoff?

9         **MS. MOSS:**  There is -- based on our -- and I can say

10 that we have discussed this -- we have -- you know, we

11 considered this carefully, and discussed it with the staff

12 attorneys at the Ninth Circuit, to see if it would be

13 appropriate to file such a motion.  We were advised that no.

14        So, you know, again, we do not oppose having that

15 entered so that we can seek that kind of expedited treatment

16 but we --

17        **THE COURT:**  Did you tell the staff at the Ninth

18 Circuit that you were ordered to produce the documents, and you

19 had to produce them by November 30th, which was the discovery

20 cutoff?

21        **MS. MOSS:**  That is my understanding.

22        **THE COURT:**  That's your --

23        **MS. MOSS:**  I didn't personally have the conversation,

24 but that is my understanding.

25        **THE COURT:**  My guess is that's not the way the

1   conversation went.  But it's of no matter.  I know that

2   everyone has been proceeding in good faith and wants to --

3   obviously, wants to prevail, but wants to have their issues

4   addressed in the first instance.  So I'm not terribly concerned

5   about that.  It's a side issue to me.

6          Here's what I am going to do.  I will get out an

7   order this afternoon on this matter.  One piece of it is I am

8   going to order the parties to meet and confer immediately on a

9   stipulated protective order.

10          It's not going to be -- it's going to be a normal

11   stipulated protective order, not one that's addressed at a

12   nonwaiver of the particular privileges involved -- I understand

13   your position on that -- but, so that in the event there is a

14   production or that I order a production, the parties can apply

15   to those documents an appropriate level of protection.

16          So I am going to order the parties to negotiate on a

17   stipulated protective order to protect confidentiality.

18          There is an excellent form of a protective order on

19   the courts' Web site.  If you'll just click on "Forms" you'll

20   pull up the stipulated protective order.  And then there are

21   various levels of production -- of confidentiality.

22          And that needs to be done immediately.  If you're

23   unable to do it by early next week, then the Court will enter

24   one without the parties' stipulation, based on the showings in

25   the prior proceedings before Judge Walker.

```
 1              So I understand that you'll be doing this in a
 2    fashion that you don't think it's an adequate remedy.
 3              And somebody will decide some day whether you are
 4    correct or incorrect.  But, in the meantime, I want to have
 5    that in place.
 6              So that's a heads-up that that is likely to be
 7    required to be done in the next day or two.  Meaning today or
 8    tomorrow.
 9              Yes, ma'am.
10         MS. MOSS:  Your Honor, Nicole -- I'm sorry.  This is
11    Nicole Moss again.
12              If it's at all helpful for you to know, we have
13    exchanged versions of a protective order.  And they were
14    modeled off the one that you are referencing.
15              The -- apart from the remedy issue, a main concern
16    that defendant intervenors had and that we have incorporated
17    into the protective order that we proposed is that on the
18    plaintiff intervenors -- on the plaintiffs' side, it would be
19    the plaintiff intervenor, City and County of San Francisco, and
20    potentially others have individual attorneys who were
21    themselves involved in the No On 8 campaign.
22              And we were quite concerned that even with an
23    attorney eyes only protective order, that some of these
24    documents would be turned over to what are effectively the
25    political opponents of protectmarriage.com.
```

1        And so we had drafted protections into a protective

2   order to account for that fact.  And that has -- and we've

3   submitted that to plaintiffs, and have not heard back from them

4   on that.

5            **THE COURT:**  Well, good.  Work that out.  That would

6   be great.

7            **MS. MOSS:**  That was an issue that was potentially

8   pending.

9            **MR. MCGILL:**  This is Matthew McGill for the

10  plaintiffs, Your Honor.

11       I would -- this provision that Ms. Moss has

12  identified suffers from numerous flaws, not the least of which

13  is it fails to define involvement in the *No On 8* campaign.

14       But I want to let -- it seems most particularly

15  directed at the -- at Dennis Herrera, the City Attorney of

16  San Francisco, so I think it would be appropriate for me to

17  invite Ms. Lee, who represents the City and County of San

18  Francisco, to respond.

19           **MS. LEE:**  This is Mollie Lee.

20       Responding to defendant intervenors' concerns about

21  information becoming available to their political opponents,

22  from what I have seen, they haven't identified any basis for

23  refusing to enter a protective order on those grounds.

24       There's certainly nothing, that I'm aware of, that

25  would indicate that information that was provided under the

1   Court's standard form of a protective order -- which I think

2   provides that the information must be used for litigation

3   purposes only -- would in any way be used for campaign

4   purposes.

5          So we still haven't seen any articulation of what

6   their particular concern is.  We would be happy to discuss it

7   with them if they can tell us exactly what they're concerned

8   about, and the specific individuals about whom they are

9   concerned.

10          **THE COURT:**  Well, this is an issue you should all

11   work out.  I mean, this is, as they say, not rocket science.

12          I appreciate the City Attorney's position that they

13   haven't articulated a basis, but I'm sure you know exactly what

14   they're talking about.

15          With respect to the identification of specific

16   individuals, maybe that needs to be done.  But this is the kind

17   of thing that counsel as skilled as the counsel in this case

18   should well be able to work out.

19          If there's any particular disputed provision, then

20   you actually tried to work out the details of it, and both

21   shown flexibility on those details, but at the bottom line you

22   can't, then I'd be happy to make a call and say "include it

23   this way" or "include it that way."  And you can come to me at

24   any time for that.

25          But, in any event, we're going to have a protective

1  order in place.  And I'm just saying I want you to expedite

2  those negotiations.  I want those to occur today and tomorrow.

3          Because next week we are going to have a protective

4  order, and it will be either one you have negotiated or it will

5  be one you have not negotiated, because I think there's a basis

6  in the prior orders of the Chief Judge for having such an

7  order.  I want it to be done right away.

8          But, I want to emphasize that I expect both sides to

9  be flexible in that regard.  I don't -- you know, this -- this

10 is a matter which is of importance to both sides.

11         But with regards to the detail of this particular

12 provision in this particular protective order, not everything

13 in it is crucial.  And I'm sure that you will all be flexible

14 and professional in your negotiations, but those need to be

15 done immediately.

16         Would anyone else like to be heard?

17         Silence, I'm hearing in this case.  That must be very

18 unusual.

19         (Laughter)

20         **THE COURT:**  All right.  Well, thank you very much.

21         I appreciate your making yourselves available for

22 this hearing so promptly.  We will try to react equally

23 promptly and get you out an order this afternoon.

24         If you need another telephonic hearing or want to

25 submit letters regarding some narrow issue at the end of your

1  negotiations on a protective order, I would be happy to address

2  that or any other issue that comes up.  All right?

3            Thank you very much.  We'll stand in recess.

4            (Counsel thank the Court.)

5            (At 10:33 a.m. the proceedings were adjourned.)

6                         -   -   -   -

7

8                    **CERTIFICATE OF REPORTER**

9          I certify that the foregoing is a correct transcript

10 from the record of proceedings in the above-entitled matter.

11

12 DATE:   Friday, November 20, 2009

13

                    s/b Katherine Powell Sullivan

14         _____

15      Katherine Powell Sullivan, CSR #5812, RPR, CRR
                    U.S. Court Reporter

16

17

18

19

20

21

22

23

24

25