GIBSON, DUNN & CRUTCHER LLP
Theodore B. Olson, SBN 38137
*tolson@gibsondunn.com*
Matthew D. McGill, *pro hac vice*
1050 Connecticut Avenue, N.W., Washington, D.C. 20036
Telephone: (202) 955-8668, Facsimile: (202) 467-0539

Theodore J. Boutrous, Jr., SBN 132009
*tboutrous@gibsondunn.com*
Christopher D. Dusseault, SBN 177557
Ethan D. Dettmer, SBN 196046
333 S. Grand Avenue, Los Angeles, California 90071
Telephone: (213) 229-7804, Facsimile: (213) 229-7520

BOIES, SCHILLER & FLEXNER LLP
David Boies, *pro hac vice*
*dboies@bsfllp.com*
333 Main Street, Armonk, New York 10504
Telephone: (914) 749-8200, Facsimile: (914) 749-8300

Jeremy M. Goldman, SBN 218888
*jgoldman@bsfllp.com*
1999 Harrison Street, Suite 900, Oakland, California 94612
Telephone: (510) 874-1000, Facsimile: (510) 874-1460

Attorneys for Plaintiffs
KRISTIN M. PERRY, SANDRA B. STIER,
PAUL T. KATAMI, and JEFFREY J. ZARRILLO

Dennis J. Herrera, SBN 139669
Therese M. Stewart, SBN 104930
Danny Chou, SBN 180240

One Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone: (415) 554-4708, Facsimile (415) 554-4699

Attorneys for Plaintiff-Intervenor
CITY AND COUNTY OF SAN FRANCISCO

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN M. PERRY, *et al.*,<br><br>Plaintiffs,<br><br>and<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, *et al.*,<br><br>Defendants<br><br>and<br><br>PROPOSITION 8 OFFICIAL PROPONENTS<br>DENNIS HOLLINGSWORTH, *et al.*,<br><br>Defendant-Intervenors. | CASE NO. 09-CV-2292 VRW<br><br>**PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S TRIAL MEMORANDUM**<br><br>**Final Pretrial Conference**<br><br>Date: December 16, 2009<br>Time: 10:00 a.m.<br>Judge: Chief Judge Walker<br>Location: Courtroom 6, 17th Floor<br><br>Trial Date: January 11, 2010<br><br>(Proposed Findings of Fact, Exhibit List, Witness List, Designation of Discovery Excerpts, and Motions *in Limine* filed herewith) |

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................. 1

II. SUMMARY OF FACTS ................................................................................ 2

III. PLAINTIFFS' CLAIMS .............................................................................. 3

    A.    Prop. 8 Violates The Due Process Clause Of The Fourteenth
Amendment ........................................................................................... 3

        1.    Prop. 8 Substantially Impairs Plaintiffs' Fundamental Right To
Marry ........................................................................................ 4

        2.    Prop. 8 Is Not Narrowly Tailored To Further A Compelling
State Interest ............................................................................ 5

                a.    Procreation. .................................................................. 6

                b.    "Responsible Procreation." ........................................ 7

                c.    Tradition. ...................................................................... 7

                d.    Recognition of California Marriages by Other
States. .......................................................................... 8

                e.    Administrative Convenience. .................................... 9

                f.    Moral Disapproval. ..................................................... 9

    B.    Prop. 8 Violates The Equal Protection Clause Of The Fourteenth
Amendment ......................................................................................... 10

        1.    Prop. 8 Discriminates Against Gay And Lesbian Individuals On
The Basis Of Their Sexual Orientation ............................. 11

        2.    Prop. 8 Discriminates Against Gay And Lesbian Individuals On
The Basis Of Their Sex .......................................................... 14

    C.    Prop. 8 Violates Section 1983 ....................................................... 15

IV. CONCLUSION ............................................................................................ 15

Gibson, Dunn &
Crutcher LLP

i

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Adarand Constructors, Inc. v. Pena,*
515 U.S. 200 (1995)........................................................................................ 11

*Bowen v. Gilliard,*
483 U.S. 587 (1987)........................................................................................ 11

*Bowers v. Hardwick,*
478 U.S. 186 (1986)........................................................................................ 13

*Brown v. Bd. of Educ.,*
347 U.S. 483 (1954).......................................................................................... 5

*Carey v. Population Servs. Int'l,*
431 U.S. 678 (1977)...................................................................................... 4, 5

*Christian Science Reading Room Jointly Maintained v. City & County of San Francisco,*
784 F.2d 1010 (9th Cir. 1986)........................................................................ 11

*City of Cleburne v. Cleburne Living Ctr.,*
473 U.S. 432 (1985)............................................................................ 1, 11, 12

*City of Ladue v. Gilleo,*
512 U.S. 43 (1994)............................................................................................ 6

*Cleveland Bd. of Educ. v. LaFleur,*
414 U.S. 632 (1974).......................................................................................... 4

*Craig v. Boren,*
429 U.S. 190 (1976).......................................................................................... 9

*Elisa B. v. Superior Court,*
117 P.3d 660 (Cal. 2005)................................................................................. 7

*Fla. Star v. B.J.F.,*
491 U.S. 524 (1989).......................................................................................... 6

*Flores v. Morgan Hill Unified Sch. Dist.,*
324 F.3d 1130 (9th Cir. 2003)........................................................................ 14

*Griswold v. Connecticut,*
381 U.S. 479 (1965).............................................................................. 4, 6, 11

*Hernandez-Montiel v. INS,*
225 F.3d 1084 (9th Cir. 2000)................................................................. 12, 13

*High Tech Gays v. Defense Industrial Security Clearance Office,*
895 F.2d 563 (9th Cir. 1990)......................................................................... 13

*In re Golinski,*
No. 09-80173, 2009 WL 2222884 (9th Cir. Jan. 13, 2009)........................... 10

*In re Levenson,*
No. 09-80172, 2009 WL 3878233 (9th Cir. Nov. 18, 2009) ..................... 8, 14

*In re Marriage Cases,*
183 P.3d 384 (Cal. 2008) ........................................................................ *passim*

*Kerrigan v. Comm'r of Pub. Health,*
957 A.2d 407 (Conn. 2008) ....................................................... 5, 11, 12, 13

*Knight v. Superior Court,*
26 Cal. Rptr. 3d 687 (Cal. Ct. App. 2005) ..................................................... 7

ii

# TABLE OF AUTHORITIES
## [Continued]

Page(s)

*Kristine M. v. David P.*,
37 Cal. Rptr. 3d 748 (Cal. Ct. App. 2006) ................................................ 7

*Lawrence v. Texas*,
539 U.S. 558 (2003) ............................................................. *passim*

*Loving v. Virginia*,
388 U.S. 1 (1967) .................................................... 3, 4, 14, 15

*M.L.B. v. S.L.J.*,
519 U.S. 102 (1996) ............................................................... 4

*Mass. Bd. of Ret. v. Murgia*,
427 U.S. 307 (1976) ........................................................... 1, 12

*P.O.P.S. v. Gardner*,
998 F.2d 764 (9th Cir. 1993) ..................................................... 4

*Palmore v. Sidoti*,
466 U.S. 429 (1984) ............................................................. 10

*Reitman v. Mulkey*,
387 U.S. 369 (1967) ............................................................. 14

*Romer v. Evans*,
517 U.S. 620 (1996) ...................................................... *passim*

*Sharon S. v. Superior Court*,
73 P.3d 554 (Cal. 2003) .......................................................... 7

*Strauss v. Horton*,
207 P.3d 48 (Cal. 2009) .......................................................... 3

*Turner v. Safley*,
482 U.S. 78 (1987) ....................................................... *passim*

*United States v. Hancock*,
231 F.3d 557 (9th Cir. 2000) ..................................................... 10

*United States v. Virginia*,
518 U.S. 515 (1996) .......................................................... 5, 15

*Varnum v. Brien*,
763 N.W.2d 862 (Iowa 2009) .................................................. 10, 11

*Williams v. Illinois*,
399 U.S. 235 (1970) .............................................................. 7

*Witt v. Dep't of the Air Force*,
527 F.3d 806 (9th Cir. 2008) .................................................... 13

*Zablocki v. Redhail*,
434 U.S. 374 (1978) ...................................................... *passim*

## STATUTES

42 U.S.C. § 1983 ........................................................... 3, 15

Cal. Fam. Code § 9000(b) ......................................................... 7

Cal. Penal Code § 2601(e) ..................................................... 6, 10

Cal. Stats. 2003, ch. 421 § 1(b) .................................................. 7

Cal. Welf. & Inst. Code § 16013 .................................................. 7

Cal. Fam. Code § 308(a-c) (effective Jan. 1, 2010) ................................ 9

Gibson, Dunn &
Crutcher LLP

iii

1

## I.  INTRODUCTION

2          Plaintiffs have brought this suit to gain access to "the most important relation in life"—

3   marriage.  *Zablocki v. Redhail*, 434 U.S. 374, 384 (1978).  As gay and lesbian Californians, they alone

4   are barred by Proposition 8 from marrying the person they love.  At trial, Plaintiffs will demonstrate

5   that Prop. 8 infringes their fundamental right to marry, impermissibly classifies them on the basis of

6   their sexual orientation and sex, and fails to satisfy any level of scrutiny.  As California's chief law

7   enforcement officer has conceded, Prop. 8 therefore violates Plaintiffs' rights to due process and equal

8   protection.  Doc # 39 at 2.

9           Specifically, Plaintiffs will show that they are denied the fundamental right to marry, and that

10  domestic partnerships are an unequal and unconstitutional substitute for the "expression[] of emotional

11  support and public commitment" associated only with marriage.  *Turner v. Safley*, 482 U.S. 78, 95

12  (1987).  Proponents therefore have the burden of demonstrating that Prop. 8 is narrowly drawn to serve

13  a compelling government interest.  But they fail to demonstrate even a single legitimate interest that it

14  even rationally serves.  In fact, when asked by this Court to identify any harm to opposite-sex marriage

15  that would result from permitting gay and lesbian individuals to marry, counsel for Proponents

16  tellingly responded, "I don't know."  Doc # 228 at 23.  At trial, Plaintiffs will present evidence that

17  convincingly dismantles each of the purported state interests now cobbled together by Proponents,

18  demonstrating that Prop. 8 is an irrational, indefensible, and unconstitutional measure.

19          Plaintiffs also will establish that Prop. 8 is a suspect classification that discriminates against

20  them on the basis of their status, including their sexual orientation and their sex.  Plaintiffs will present

21  evidence regarding the "history of purposeful unequal treatment" of gay and lesbian individuals, and

22  the "disabilities [they have suffered] on the basis of stereotyped characteristics not truly indicative of

23  their abilities."  *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 313 (1976) (internal quotation marks

24  omitted).  This evidence will establish that this classification singling out gay and lesbian individuals is

25  likely the result of some combination of misunderstanding, moral disapproval, or "prejudice and

26  antipathy" (*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)), and should therefore

27  be subjected to the most searching scrutiny.

28

1    But regardless of the level of scrutiny, Proponents cannot meet their burden to demonstrate that

2    Prop. 8 serves a single compelling, important, or even legitimate state interest.  Like the state

3    constitutional amendment adopted by initiative and struck down by the U.S. Supreme Court in *Romer*

4    *v. Evans*, 517 U.S. 620 (1996), Prop. 8 repealed the constitutional protection against "discrimination

5    based on sexual orientation," and put gay and lesbian individuals "in a solitary class" with respect to

6    marriage.  *Id*. at 627.  Prop. 8 is therefore an irrational measure that targeted only gay and lesbian

7    Californians and purposeful stripped them—and only them—of their fundamental state constitutional

8    right to marry, in violation of equal protection.

9    Plaintiffs will demonstrate at trial that discriminatory laws such as Prop. 8, "once thought

10    necessary and proper in fact serve only to oppress."  *Lawrence v. Texas*, 539 U.S. 558, 579 (2003).

11    Because Prop. 8 violates the fundamental liberties guaranteed by our Constitution, it cannot stand.[1]

12                              **II.  SUMMARY OF FACTS**

13    Plaintiffs are gay and lesbian residents of California who are involved in long-term, committed

14    relationships with, and desire to marry, individuals of the same sex to demonstrate publicly their

15    commitment to one another and to obtain all the benefits that come with official recognition of their

16    family relationships.  Plaintiffs Perry and Stier are lesbian individuals who have been in a committed

17    relationship for ten years, and Plaintiffs Katami and Zarrillo are gay individuals who have been in a

18    committed relationship for eight years.  Both couples are prohibited from marrying because of Prop. 8.

19    Before Prop. 8 was narrowly passed by California voters in November 2008, the California

20    Constitution afforded gay and lesbian individuals the right to marry.  Then Prop. 8 amended the

21    California Constitution by adding a new Article I, § 7.5, which provides that "[o]nly marriage between

22    a man and woman is valid or recognized in California," stripping them of their previously recognized

23    right to marry.  Prop. 8 was a direct response to the California Supreme Court's decision in *In re*

24

25    [1]    Plaintiffs and Plaintiff-Intervenor have filed concurrently with this memorandum their
proposed findings of fact, exhibit list, witness list, motions *in limine*, and designation of discovery
excerpts.  Because discovery is not yet complete and Proponents have not yet produced all documents

26    they have been ordered by this Court to produce, Plaintiffs and Plaintiff-Intervenor reserve the right to
seek the production of as-yet-unproduced evidence, object to evidence proffered by Proponents in the

27    future, offer as additional exhibits documents that Proponents failed timely to produce, and seek
exclusion of testimony or other evidence based upon Proponents' failure to produce certain evidence or

28    positions during discovery that certain evidence is privileged or otherwise not discoverable.

*Marriage Cases*, 183 P.3d 384 (Cal. 2008), which held that California Family Code §§ 300 and 308.5 were unconstitutional under the California Constitution because they prohibited gay and lesbian individuals from marrying. *Id*. at 452. Prop. 8 "[c]hange[d] the California Constitution to eliminate the right of same-sex couples to marry in California." *Strauss v. Horton*, 207 P.3d 48, 77 (Cal. 2009) (internal quotation marks omitted). The California Supreme Court, California's highest authority on the laws of this State, had expressly recognized that relegating gay and lesbian individuals to the separate status of domestic partnerships was inherently unequal and discriminatory, even if domestic partnerships provide many of the same substantive rights as marriage. But now, gay and lesbian couples are once again relegated to the separate but unequal status of domestic partnerships. Yet at the same time, California permits the approximately 18,000 same-sex couples who married before Prop. 8 was passed to remain legally married. *Strauss*, 207 P.3d at 65.

Plaintiffs applied for marriage licenses in May 2009, and were denied licenses solely because of their status as gay and lesbian individuals who wish to marry someone of their own sex. They filed this suit shortly thereafter, challenging Prop. 8 under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution and seeking a preliminary and permanent injunction enjoining Defendants from enforcing Prop. 8. The official proponents of Prop. 8 moved to intervene in the case as defendants, and their unopposed motion was granted on June 30, 2009. Doc # 76. On August 19, 2009, the City of San Francisco was also permitted to intervene as a plaintiff. Doc # 160. On October 14, 2009, the Court denied Proponents' motion for summary judgment and reiterated the need for a trial to resolve the many factual issues presented. Doc # 226. The trial on Plaintiffs' claims is set to commence on January 11, 2010.

## III. PLAINTIFFS' CLAIMS

Plaintiffs will assert three separate claims at trial: (1) Prop. 8 violates the Due Process Clause of the Fourteenth Amendment; (2) Prop. 8 violates the Equal Protection Clause of the Fourteenth Amendment; and (3) Prop. 8 violates 42 U.S.C. § 1983.

### A. Prop. 8 Violates The Due Process Clause Of The Fourteenth Amendment

The "freedom to marry" is "one of the vital personal rights essential to the orderly pursuit of happiness by free men." *Loving v. Virginia*, 388 U.S. 1, 12 (1967). It is well-established that "freedom

1   of personal choice in matters of marriage and family life is one of the liberties protected by the Due

2   Process Clause." *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639 (1974). Indeed, the U.S.

3   Supreme Court has recognized that the right to marry is a right of liberty (*Zablocki*, 434 U.S. at 384),

4   privacy (*Griswold v. Connecticut*, 381 U.S. 479, 486 (1965)), intimate choice (*Lawrence*, 539 U.S. at

5   574), and association (*M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996)). This right is so fundamental that it

6   extends to incarcerated inmates. *Turner*, 482 U.S. at 95.

7   At trial, Plaintiffs will establish that Prop. 8 violates their due process rights to autonomy in

8   "matters of marriage and family life." *Cleveland Bd. of Educ.*, 414 U.S. at 639. Because Prop. 8

9   "directly and substantially impair[s] those rights[, it] require[s] strict scrutiny." *P.O.P.S. v. Gardner*,

10  998 F.2d 764, 767-68 (9th Cir. 1993). It therefore can be upheld only if Proponents can prove that it is

11  "narrowly drawn" to further a "compelling state interest[]." *Carey v. Population Servs. Int'l*, 431 U.S.

12  678, 686 (1977). But Proponents cannot meet their burden at trial.

13  **1.    Prop. 8 Substantially Impairs Plaintiffs' Fundamental Right To Marry**

14  On its face, Prop. 8 prohibits individuals of the same sex from marrying, thereby denying gay

15  and lesbian individuals access to "the most important relation in life." *Zablocki*, 434 U.S. at 384. This

16  prohibition directly contravenes the U.S. Supreme Court's pronouncement that "[c]hoices about

17  marriage" are "sheltered by the Fourteenth Amendment against the State's unwarranted usurpation,

18  disregard, or disrespect." *M.L.B.*, 519 U.S. at 116. Gay and lesbian individuals such as Plaintiffs are

19  therefore denied this fundamental choice, which is provided to all other citizens.

20  As this Court has already recognized, the right at stake in this case is the very right to marry

21  itself; it does not require recognition of a new right to "same-sex marriage." "The Supreme Court

22  cases discussing the right to marry do not define the right at stake in those cases as a subset of the right

23  to marry depending on the factual context in which the issue presented itself." Doc # 228 at 79-80; *see*

24  *generally Loving*, 388 U.S. at 1; *Turner*, 482 U.S. at 78; *see also Marriage Cases*, 183 P.3d at 421

25  (Plaintiffs "are not seeking . . . a new constitutional right"). Thus, the right to marriage has always

26  been based on the constitutional liberty to select the partner of one's choice—not on the partner chosen.

27  The ability to enter into domestic partnerships is not a constitutionally permissible substitute

28  for the esteemed institution of marriage. Proponents have conceded that domestic partnerships are not

1   equal to marriage.  *See* Doc # 204-3 at 5, 14.  And Plaintiffs will present evidence at trial regarding the

2   significant symbolic disparity between domestic partnerships and civil unions, on the one hand, and

3   marriage, on the other, as well as actual, practical differences between these classifications in

4   governmental and non-governmental contexts.  Plaintiffs and their experts will testify that denying

5   same-sex couples and their families access to the designation "marriage" harms them by denying their

6   family relationships the same dignity and respect afforded to opposite-sex couples and their families.

7   Indeed, ensuring that gay and lesbian relationships were *not* officially accorded the same dignity,

8   respect, and status as heterosexual marriages was one of the core underlying purposes of Prop. 8.

9        It is beyond dispute that a State cannot meet its constitutional obligations of equal protection by

10   conferring separate-but-unequal rights on a socially disfavored group.  *See United States v. Virginia*,

11   518 U.S. 515, 554 (1996).  Doing so impermissibly brands the disfavored group with a mark of

12   inferiority.  *Brown v. Bd. of Educ.*, 347 U.S. 483, 494 (1954); *see also Marriage Cases*, 183 P.3d at

13   402, 434, 445 (Prop. 8 expresses "official view that [same-sex couples'] committed relationships are of

14   lesser stature than the comparable relationships of opposite-sex couples" and confers "mark of second-

15   class citizenship"); *Kerrigan v. Comm'r of Pub. Health*, 957 A.2d 407, 417 (Conn. 2008) (same).  And

16   Plaintiffs, their experts, and other witnesses will testify to the stigma associated with discrimination

17   and second-class treatment, and the harm it causes gay men and lesbians and their families.

18        Because California's separate-but-unequal regime of domestic partnerships for same-sex

19   couples and marriage for opposite-sex couples materially and substantially burdens the rights of gay

20   and lesbian individuals, it can survive only if it is "narrowly drawn" to serve a "compelling state

21   interest[]."  *Carey*, 431 U.S. at 686.

22        **2.    Prop. 8 Is Not Narrowly Tailored To Further A Compelling State Interest**

23        Proponents are unable to identify a single legitimate—let alone important or compelling—state

24   interest served by Prop. 8, or that Prop. 8 is sufficiently tailored to meet any such interest.[2]

25

26   _____

27    [2]   On November 30, 2009, Proponents asserted a slew of newly formulated state interests in their
     Amended Response to Plaintiffs' First Set of Interrogatories.  But these purported interests are merely
28   variations of the same general categories of interests discussed and refuted below.

**a.    Procreation.**  It is well-established that procreation is not the only purpose of marriage.  *See Griswold,* 381 U.S. at 485 (married individuals have a constitutional right to use contraception).  Rather, marriage is an "expression[] of emotional support and public commitment," an exercise in spiritual unity, and a fulfillment of one's self.  *Turner*, 482 U.S. at 95-96.  As this Court has recognized, "when the [Supreme] Court, in *Zablocki*, [434 U.S. at 374,] overturned the Wisconsin law requiring payment of outstanding child support before marriage, the Court was concerned with an individual's right to marry; not with children.  If the right to marry is about 'survival of the race,' then a child support restriction would be unobjectionable."  Doc # 228 at 80-81.

Promoting procreation cannot serve as a legitimate basis for denying individuals their constitutionally protected right to marry.  If it could, "it would be constitutionally permissible for the state to preclude an individual who is incapable of bearing children from entering into marriage," even with a person of the opposite sex.  *Marriage Cases*, 183 P.3d at 431.  But as the Court pointed out at the October 14, 2009 hearing, California allows a 95-year-old groom and an 83-year-old bride to marry.  Doc # 228 at 13.  Even Proponents have never suggested that a State could constitutionally deny heterosexual individuals the right to marry one another simply because one or both of them is infertile and they are incapable of procreating together.  The State even guarantees the right of incarcerated inmates to marry, despite the lower standard for restrictions on the rights of inmates.  *See* Cal. Penal Code § 2601(e); *see also Turner*, 482 U.S. at 99.  Thus, even if procreation could serve as a legitimate state interest, Prop. 8 is an unconstitutionally underinclusive means of promoting procreation because it allows individuals of the opposite sex who are biologically unable to have children, or who simply do not desire children, to marry.  *See Fla. Star v. B.J.F*., 491 U.S. 524, 540-41 (1989) (statute prohibiting publication in some media but not others was fatally underinclusive); *see also City of Ladue v. Gilleo*, 512 U.S. 43, 52 (1994) (underinclusiveness "diminish[es] the credibility of the government's rationale for restricting" constitutional rights).

Moreover, Proponents have no evidence whatsoever to support the proposition that barring gay and lesbian individuals from marrying promotes procreation.  At trial, Plaintiffs will present expert testimony and other evidence that Prop. 8 neither encourages gay and lesbian individuals to marry persons of the opposite sex, nor increases the number of marriages between heterosexual couples.

Gibson, Dunn &
Crutcher LLP

1   These experts will testify that the exclusion of same-sex couples from marriage does not lead to

2   increased stability in opposite-sex marriage, and permitting same-sex couples to marry does not

3   destabilize opposite-sex marriage.

4          **b.     "Responsible Procreation."**  Proponents contend that Prop. 8 promotes so-

5   called "responsible procreation" by "channel[ing] opposite-sex relationships into the lasting, stable

6   unions that are best for raising children of the union."  Doc # 172-1 at 72.  There simply is no factual

7   basis for the claim that allowing same-sex marriages undermines the stability of or otherwise harms

8   opposite sex-marriages.  Doc # 228 at 23.  At trial, Plaintiffs will present evidence dismantling the

9   unfounded notion that same-sex couples are worse parents than opposite-sex parents.  That evidence

10  will show that children of same-sex parents are as likely to be healthy and well adjusted as children

11  raised in opposite-sex households.  It also will show that children raised in same-sex households are

12  not any more likely to be gay or lesbian than other children.  Plaintiffs' experts will testify that there is

13  no credible evidence suggesting any difference in the quality of the child-rearing environment in

14  households led by same-sex couples than in households led by opposite-sex couples, and that the best

15  interests of a child are equally served by being raised by same-sex parents.  Proponents also cannot

16  demonstrate that excluding same-sex couples from civil marriage would undermine the relationship

17  parents have with their biological children.  To the contrary, promoting marriage of same-sex couples

18  will promote the best interests of the children of those couples, ensuring that they are raised in stable,

19  married households.  And California law already recognizes the equal parenting ability of same-sex

20  couples by allowing such couples to adopt and foster parent and by applying parentage rules to same-

21  sex partners as they are applied to opposite-sex partners.[3]

22         **c.     Tradition.**  As a legal matter, tradition alone cannot justify a State's

23  infringement of the constitutional right to marry.  "[N]either the antiquity of a practice nor the fact of

24  steadfast legislative and judicial adherence to it through the centuries insulates it from constitutional

25  attack."  *Williams v. Illinois*, 399 U.S. 235, 239 (1970).  And as the Supreme Court recognized in

---

26      [3]   *See, e.g.*, Cal. Welf. & Inst. Code § 16013; Cal. Fam. Code § 9000(b); *Elisa B. v. Superior*
27  *Court*, 117 P.3d 660, 664 (Cal. 2005); *Sharon S. v. Superior Court*, 73 P.3d 554, 561 (Cal. 2003);
    *Kristine M. v. David P.*, 37 Cal. Rptr. 3d 748, 751 (Cal. Ct. App. 2006); *Knight v. Superior Court*, 26
28  Cal. Rptr. 3d 687, 698 (Cal. Ct. App. 2005); *see also* Cal. Stats. 2003, ch. 421 § 1(b).

*Lawrence*, "times can blind us to certain truths and later generations can see that laws once thought necessary and proper in fact serve only to oppress."  539 U.S. at 579.

Moreover, the evidence at trial also will show that there is no such thing as "traditional marriage," at least as Proponents use that phrase, because marriage historically has not been a static institution.  Rather, the legal rules defining marriage have evolved over time.  Plaintiffs' experts will testify that marriage has changed over time to reflect the changing needs, values, and understanding of our evolving society.  They also will testify that race- and gender-based reforms in civil marriage law did not deprive marriage of its vitality and importance as a social institution.

Proponents have failed to identify any harm to opposite-sex marriage as a result of permitting gay and lesbians individuals to marry.  In the hearing on October 14, 2009, when asked "how it would harm opposite-sex marriages," counsel for Proponents responded, "I don't know."  Doc # 228 at 23. While Proponents will try to present expert testimony to fill this fatal gap and create the specter that allowing gay and lesbian individuals to marry the person they love would somehow destroy marriage for everyone else, their "sky is falling" predictions are not credible, logical, or supported.  Plaintiffs' experts will testify that excluding same-sex couples from marriage does not increase the stability of opposite-sex marriage and, conversely, permitting same-sex couples to marry does not destabilize opposite-sex marriage.  *See In re Levenson*, No. 09-80172, 2009 WL 3878233, at *4 (9th Cir. Nov. 18, 2009) (Reinhardt, J.) ("[G]ays and lesbians will not be encouraged to enter into marriages with members of the opposite sex by the government's denial of benefits to same-sex spouses, . . . so, the denial cannot be said to 'nurture' or 'defend' the institution of heterosexual marriage.").

> d.     **Recognition of California Marriages by Other States.**  Proponents claim that California has an interest in preventing same-sex couples from marrying to ensure that its marriages are recognized outside the State.  But California already recognizes over 18,000 same-sex marriages performed before Prop. 8 was enacted.  Moreover, it is hardly credible for Proponents to suggest that Prop. 8 was enacted at their urging because of concern that same-sex marriages performed here would not be recognized elsewhere—*i.e.*, that there would be *too little* legal recognition of such marriages; the express purpose plainly was to ban these marriages.  Nor is it tenable for Proponents to defend

Prop. 8 on the ground that other States also unconstitutionally deny gays and lesbian individuals access to "the most important relation in life." *Zablocki*, 434 U.S. at 384 (internal quotation marks omitted).

      **e.**    **Administrative Convenience.**  Proponents have asserted that Prop. 8's prohibition on same-sex marriage eases the State's and the federal government's burden of distinguishing between same-sex marriages and opposite-sex marriages. As an initial matter, it is well-established that administrative ease is an insufficient ground for discrimination. *See Craig v. Boren*, 429 U.S. 190, 198 (1976). Moreover, the evidence will show that there is no support for the alleged connection between Prop. 8 and administrative efficiency, or the need for California to lessen the federal government's burdens as a result of its own discriminatory marriage law (DOMA). Finally, this purported interest is further undermined by the fact that Prop. 8 did not affect the 18,000 or so marriages of same-sex couples that are still valid in California, and the fact that the Governor has signed into law a bill that will recognize valid same-sex marriages performed outside California before the passage of Prop. 8. *See* Cal. Fam. Code § 308(a-c) (effective Jan. 1, 2010). Plaintiffs will demonstrate at trial that this irrational patchwork serves no legitimate state interest.

      **f.**    **Moral Disapproval.**  Prop. 8's true purpose appears to be moral disapproval of gay men and lesbians and their families. *See, e.g.*, Exh. A (Defendant-Intervenors' Amended Responses to Plaintiffs' First Set of Interrogatories ¶¶ 21, 22). Plaintiffs will present evidence that Prop. 8 was indeed motivated by moral disapproval and irrational views concerning gay and lesbian individuals, and by a desire to relegate a disfavored group of citizens to the separate and unequal institution of domestic partnership. For example, the evidence will show that the campaign materials used in conjunction with Prop. 8 emphasize messages that bear no relationship whatsoever to any of the state interests proffered by Proponents in this case. The evidence will demonstrate that the campaign was in fact designed not to appeal to the value of "traditional marriage," but rather to appeal to fear and disapproval of gay and lesbian individuals and their family relationships. For example, in a letter to a group of voters, one of the official proponents of Prop. 8, Defendant-Intervenor Hak-Shing William Tam, urged them to support Prop. 8 because, if it did not pass, "[o]ne by one, other states will fall into Satan's hands." He warned that "[e]very child, when growing up, would fantasize marrying someone of the same sex," and that the "gay agenda" is to "legalize having sex with children." Exh. B.

1    The Supreme Court, however, has squarely held that "[m]oral disapproval" of gay men and

2    lesbians, "like a bare desire to harm the group, is an interest that is insufficient to satisfy" even rational

3    basis review.  *Lawrence*, 539 U.S. at 582; *see Romer*, 517 U.S. at 644 (purpose of measure struck

4    down was "moral disapproval of homosexual conduct") (Scalia, J., dissenting); *Palmore v. Sidoti*, 466

5    U.S. 429, 433 (1984) (while "[p]rivate biases may be outside the reach of the law," the "law cannot,

6    directly or indirectly, give them effect" at the expense of a disfavored group); *In re Golinski*, No. 09-

7    80173, 2009 WL 2222884, at *2 (9th Cir. Jan. 13, 2009) (Kozinski, J.) ("disapproval of homosexuality

8    isn't itself a proper legislative end").  *A fortiori*, it cannot satisfy strict or intermediate scrutiny.[4]

9    None of Proponents' purported state interests can withstand the slightest scrutiny.  Indeed,

10   California law prohibits gay and lesbian individuals from marrying the person of their choice, even

11   while it allows murders, child molesters, rapists, abusers, serial divorcers, and philanderers to marry.

12   It even guarantees incarcerated inmates the right to marry.  *See* Cal. Penal Code § 2601(e); *Turner*, 482

13   U.S. at 99.  There is no rational—let alone important or compelling—reason for such a distinction.  *Cf.*

14   *Varnum v. Brien*, 763 N.W.2d 862, 900 (Iowa 2009) (protecting children cannot justify marriage

15   discrimination where "child abusers, sexual predators, . . . [and] violent felons" are allowed to marry).

16   **B.    Prop. 8 Violates The Equal Protection Clause Of The Fourteenth Amendment**

17   A "law is subject to strict scrutiny if it targets a suspect class or burdens the exercise of a

18   fundamental right."  *United States v. Hancock*, 231 F.3d 557, 565 (9th Cir. 2000).  Prop. 8 should be

19   subjected to strict scrutiny because, in addition to burdening the fundamental right to marry of gay and

20   lesbian individuals, it also targets that group for disfavored treatment.  And as explained above, Prop. 8

21   is not narrowly tailored to serve a compelling state interest.  Prop. 8 also violates equal protection

22   because it impermissibly discriminates on the basis of sexual orientation and sex.

---

24   [4]    Proponents also have asserted that California has an interest in not becoming a so-called
     "marriage mill" for residents of other States.  "[T]his claimed interest, in the Court's view, is essentially
25   insubstantial."  Doc # 228 at 89.  Proponents appear to concede as much, failing to assert this purported
     interest in their recent Amended Response to Plaintiffs' First Set of Interrogatories.  In any event, the
26   evidence will show that there is no basis for the proposition that California does not want non-residents
     to marry in the State.  But even if there were, California, which freely allows out-of-state couples of
27   the opposite sex to marry here, cannot choose to serve this alleged interest by targeting only gay and
     lesbian couples—and not heterosexual couples—from other States.  *See Romer*, 517 U.S. at 631 (laws
28   that place a "special disability" on gay and lesbian individuals violate equal protection).

Case3:09-cv-02292-VRW   Document281   Filed12/07/09   Page15 of 21

**1.    Prop. 8 Discriminates Against Gay And Lesbian Individuals On The Basis Of Their Sexual Orientation**

a.      Prop. 8 plainly denies gay and lesbian individuals access to a civil institution, marriage, that the State makes available to virtually all others.  Lesbians and gay men are indisputably similarly situated to heterosexual individuals because sexual orientation is irrelevant to a person's desire to marry the person he or she loves.  *See Kerrigan*, 957 A.2d at 424 (gay and lesbian persons "share the same interest in a committed and loving relationship as heterosexual persons and . . .  the same interest in having a family and raising their children in a loving and supportive environment"); *Varnum*, 763 N.W.2d at 883 (Iowa 2009) (same).  As the evidence will show, regardless of a person's sexual orientation, marriage is "the most important relation in life" (*Zablocki*, 434 U.S. at 384 (internal quotation marks omitted)), and an "expression[] of emotional support and public commitment" (*Turner*, 482 U.S. at 95).  And the right to marry does not depend on a person's procreative capacity. *See, e.g.*, *id.* (incarcerated inmates have a right to marry); *see also Griswold*, 381 U.S. at 485.

b.      Prop. 8 should be subjected to heightened scrutiny because gay and lesbian individuals are a suspect or quasi-suspect class.  A classification is suspect or quasi-suspect if it targets a group that has been subjected to a history of discrimination (*Bowen v. Gilliard*, 483 U.S. 587, 602 (1987)), and is defined by a "characteristic" that "frequently bears no relation to ability to perform or contribute to society" (*City of Cleburne*, 473 U.S. at 440-41 (internal quotation marks omitted)).  Other facts that may be relevant to the suspect classification inquiry include whether the group exhibits "obvious, immutable, or distinguishing characteristics that define them as a discrete group," and whether it is "politically powerless."  *Bowen*, 483 U.S. at 602.  *But see Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 235 (1995) (all racial classifications are suspect, even though many racial groups wield substantial political power); *Christian Science Reading Room Jointly Maintained v. City & County of San Francisco*, 784 F.2d 1010, 1012 (9th Cir. 1986) (although not immutable, "religion meets the requirements for treatment as a suspect class").

These criteria are easily satisfied here.  First, Proponents concede, as they must, that gay and lesbian individuals have been subjected to a long history of discrimination.  Doc # 228 at 84-85. Moreover, the Supreme Court has already recognized that "for centuries there have been powerful voices to condemn homosexual conduct as immoral."  *Lawrence*, 539 U.S. at 571; *see also Murgia*,

**1.    Prop. 8 Discriminates Against Gay And Lesbian Individuals On The Basis Of Their Sexual Orientation**

a.      Prop. 8 plainly denies gay and lesbian individuals access to a civil institution, marriage, that the State makes available to virtually all others.  Lesbians and gay men are indisputably similarly situated to heterosexual individuals because sexual orientation is irrelevant to a person's desire to marry the person he or she loves.  *See Kerrigan*, 957 A.2d at 424 (gay and lesbian persons "share the same interest in a committed and loving relationship as heterosexual persons and . . .  the same interest in having a family and raising their children in a loving and supportive environment"); *Varnum*, 763 N.W.2d at 883 (Iowa 2009) (same).  As the evidence will show, regardless of a person's sexual orientation, marriage is "the most important relation in life" (*Zablocki*, 434 U.S. at 384 (internal quotation marks omitted)), and an "expression[] of emotional support and public commitment" (*Turner*, 482 U.S. at 95).  And the right to marry does not depend on a person's procreative capacity. *See, e.g.*, *id.* (incarcerated inmates have a right to marry); *see also Griswold*, 381 U.S. at 485.

b.      Prop. 8 should be subjected to heightened scrutiny because gay and lesbian individuals are a suspect or quasi-suspect class.  A classification is suspect or quasi-suspect if it targets a group that has been subjected to a history of discrimination (*Bowen v. Gilliard*, 483 U.S. 587, 602 (1987)), and is defined by a "characteristic" that "frequently bears no relation to ability to perform or contribute to society" (*City of Cleburne*, 473 U.S. at 440-41 (internal quotation marks omitted)).  Other facts that may be relevant to the suspect classification inquiry include whether the group exhibits "obvious, immutable, or distinguishing characteristics that define them as a discrete group," and whether it is "politically powerless."  *Bowen*, 483 U.S. at 602.  *But see Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 235 (1995) (all racial classifications are suspect, even though many racial groups wield substantial political power); *Christian Science Reading Room Jointly Maintained v. City & County of San Francisco*, 784 F.2d 1010, 1012 (9th Cir. 1986) (although not immutable, "religion meets the requirements for treatment as a suspect class").

These criteria are easily satisfied here.  First, Proponents concede, as they must, that gay and lesbian individuals have been subjected to a long history of discrimination.  Doc # 228 at 84-85. Moreover, the Supreme Court has already recognized that "for centuries there have been powerful voices to condemn homosexual conduct as immoral."  *Lawrence*, 539 U.S. at 571; *see also Murgia*,

Gibson, Dunn & Crutcher LLP

11

1    427 U.S. at 313.  At trial, numerous experts will testify to the long history of purposeful discrimination

2    against gay and lesbian individuals, which continues to this day.  They also will recount the

3    development of an anti-gay movement in the United States, the invidious stereotypes of lesbians and

4    gay men, and the significant negative effects of the severe persecution suffered by these groups.

5         Second, sexual orientation "bears no relation to ability to perform or contribute to society."  *See*

6    *City of Cleburne*, 473 U.S. at 441; Doc # 228 at 84-85; *see also, e.g.*, *Marriage Cases*, 183 P.3d at 442;

7    *Kerrigan*, 957 A.2d at 434.  Sexual orientation therefore differs dramatically from age or mental

8    disability, which warrant only rational basis scrutiny.  *Murgia*, 427 U.S. at 314.  At trial, Plaintiffs will

9    present the testimony of experts who will establish that there are no "real and undeniable" differences

10   in an individual's ability to function in and contribute to society as a result of his or her sexual

11   orientation.  *City of Cleburne*, 473 U.S. at 444.  These experts will testify that the medical and

12   psychiatric communities do not consider sexual orientation an illness or disorder.  They also will

13   testify that the capacity to enter into a loving and long-term committed relationship or to have and raise

14   children does not depend on sexual orientation.  In addition, California's public policy allows gay and

15   lesbian individuals in same-sex relationships to serve as foster parents and to adopt children (*see supra*

16   n.3), and this public policy reflects the State's understanding that sexual orientation bears no relation to

17   an individual's capacity to enter into a stable family relationship that is analogous to marriage and

18   otherwise to participate fully in all economic and social institutions.

19        That gay and lesbian individuals have "experienced a history of purposeful unequal treatment"

20   and have "been subjected to unique disabilities on the basis of stereotyped characteristics not truly

21   indicative of their abilities" (*Murgia*, 427 U.S. at 313 (internal quotation marks omitted)), are sufficient

22   to establish that classifications singling them out are likely the result of "prejudice and antipathy" (*City*

23   *of Cleburne*, 473 U.S. at 440).  The remaining two factors that may be relevant, although not

24   necessary, to the level of scrutiny—immutability and political powerlessness—are easily met here.  As

25   Plaintiffs' experts will testify, "[s]exual orientation and sexual identity are immutable," and

26   "[h]omosexuality is as deeply ingrained as heterosexuality."  *Hernandez-Montiel v. INS*, 225 F.3d

27   1084, 1093 (9th Cir. 2000) (internal quotation marks omitted).  Sexual orientation is "fundamental to

28   one's identity," and gay and lesbian individuals "should not be required to abandon" it to gain access to

1    fundamental rights that are guaranteed to all.  *Id.*  Marriage to a person of the opposite sex thus is not a

2    meaningful alternative for gay and lesbian individuals, because "making such a choice would require

3    the negation of the person's sexual orientation."  *Marriage Cases*, 183 P.3d at 441.

4        Lastly, the evidence will show that gay and lesbian individuals indisputably have less political

5    power than other groups that have been designated as suspect or quasi-suspect for equal protection

6    purposes, including African-Americans and women.  Plaintiffs' history and political science experts

7    will testify to the continuing political disabilities and discrimination faced by gay and lesbian

8    individuals, their current lack of representation in government, and that, when compared to other

9    disadvantaged groups, gay and lesbian individuals remain relatively powerless.  They will testify that

10   lesbians and gay men are still among the most stigmatized groups in the country, and that social

11   prejudices against them and even hate crimes remain widespread.  They will also testify to the

12   development and operation of a well-funded, politically effective national anti-gay movement that has

13   encouraged anti-gay sentiment and hindered the ability of gay and lesbian individuals to achieve or

14   sustain fair and equal treatment through the political process.

15       In sum, "the bigotry and hatred that gay persons have faced are akin to, and, in certain respects,

16   perhaps even more severe than, those confronted by some groups that have been accorded heightened

17   judicial protection."  *Kerrigan*, 957 A.2d at 446.  All the relevant factors point to the inescapable

18   conclusion that strict scrutiny—or, at a minimum, heightened scrutiny—is appropriate for

19   classifications based on sexual orientation.[5]

20

21       [5]    *High Tech Gays v. Defense Industrial Security Clearance Office*, 895 F.2d 563 (9th Cir. 1990),

22   does not compel a different conclusion.  There, the Ninth Circuit reasoned that, "by the [*Bowers v. Hardwick*, 478 U.S. 186 (1986),] majority holding that the Constitution confers no fundamental right

23   upon homosexuals to engage in sodomy, and because homosexual conduct can thus be criminalized, homosexuals cannot constitute a suspect or quasi-suspect class entitled to greater than rational basis

24   review for equal protection purposes."  895 F.2d at 571.  Because *Lawrence* explicitly overruled *Hardwick*, this Court is free to revisit whether sexual orientation is a suspect or quasi-suspect

25   classification.  *See Witt v. Dep't of the Air Force*, 527 F.3d 806, 820-21 (9th Cir. 2008).  Nor does *Witt* prevent the Court from reevaluating this issue.  That case involved an equal protection challenge to the

26   "Don't Ask, Don't Tell" policy that was not premised on the differential treatment of heterosexuals and gay and lesbians individuals.  *See* 527 F.3d at 821; *id.* at 823-24 & n.4 (Canby, J., concurring in part

27   and dissenting in part); *see also* Doc # 228 at 39 (Court: "'Don't ask; don't tell' condemns conduct or expression, whereas we're not dealing here with expressive conduct; we're dealing with a

28   classification.").

c.      Prop. 8 is unconstitutional even under rational basis review because it irrationally strips gay and lesbian individuals of the right to marry—a right they previously enjoyed under the California Constitution. *See Romer*, 517 U.S. at 627. Laws that single out unpopular groups—including gay and lesbian individuals—for disfavored treatment are constitutionally suspect. *See Flores v. Morgan Hill Unified Sch. Dist*., 324 F.3d 1130, 1137 (9th Cir. 2003) ("state employees who treat individuals differently on the basis of their sexual orientation violate the constitutional guarantee of equal protection"); *see also Reitman v. Mulkey*, 387 U.S. 369, 381 (1967) (striking down a voter-enacted California constitutional provision that eliminated existing state-law protections of minorities against housing discrimination). In *Romer*, the Supreme Court held that a Colorado constitutional amendment prohibiting governmental protection of gay and lesbian individuals against discrimination violated equal protection because it "withdr[ew] from homosexuals, but no others, specific legal protection" and "impose[d] a special disability upon those persons alone." 517 U.S. at 627, 631. The Court emphasized that a "bare . . . desire to harm a politically unpopular group cannot constitute a *legitimate* governmental interest." *Id*. at 634 (internal quotation marks omitted; emphasis in original); *see also In re Levenson*, 2009 WL 3878233, at *4 (Under *Romer*, "the denial of federal benefits to same-sex spouses cannot be justified as an expression of the government's disapproval of homosexuality, preference for heterosexuality, or desire to discourage gay marriage."). Likewise, Prop. 8 imposes a "special disability" on gay and lesbian individuals because it deprives them—and them alone—of their preexisting state constitutional right to marry and by definition is meant to harm them. 517 U.S. at 631. It therefore violates equal protection under any level of scrutiny.

Because the evidence will show that Prop. 8 does not further any legitimate—let alone important or compelling—government interest, it is nothing more than "arbitrary and invidious discrimination" prohibited by the Equal Protection Clause. *Loving*, 388 U.S. at 10.

**2.      Prop. 8 Discriminates Against Gay And Lesbian Individuals On The Basis Of Their Sex**

Prop. 8 also violates the Equal Protection Clause because it unconstitutionally discriminates on the basis of sex. Prop. 8 prohibits a man from marrying a person that a woman would be free to marry, and vice-versa. That both sexes—gay men and lesbians—suffer from Prop. 8's discriminatory

1    classification does not render it constitutional or cure the distinctions it draws expressly based on sex.

2    As the Supreme Court held in *Loving*, the mere "fact of equal application [to both the white and

3    African American members of the couple] d[id] not immunize the statute from the very heavy burden

4    of justification which the Fourteenth Amendment has traditionally required of state statutes drawn

5    according to race."  388 U.S. at 9.  Moreover, as Plaintiffs' experts will testify, the so-called

6    "traditional" marriage that Proponents claim Prop. 8 was intended to preserve is one that defined roles

7    based on sex and reflects a time of *de jure* and *de facto* gender inequality.

8         Classifications based on sex are unconstitutional unless the State proves that they are

9    "substantially related" to an "important governmental objective[]."  *Virginia*, 518 U.S. at 533 (internal

10   quotation marks omitted).  But as explained above, the evidence at trial will demonstrate that Prop. 8 is

11   not substantially related to any important governmental interest.

12   **C.    Prop. 8 Violates Section 1983**

13        At trial, Plaintiffs will prove that Defendants are acting under color of state law in enforcing

14   Prop. 8, and, as explained above, that Prop. 8 violates Plaintiffs' rights under the Due Process and

15   Equal Protection Clauses of the Fourteenth Amendment.  Defendants therefore are depriving Plaintiffs

16   of their rights, privileges, or immunities secured by the Constitution and laws of the United States in

17   violation of 42 U.S.C. § 1983.

18                        **IV.    CONCLUSION**

19        For all the foregoing reasons, Plaintiffs expect to prevail at trial.

20                                         Respectfully Submitted,

21   DATED:  December 7, 2009            GIBSON, DUNN & CRUTCHER LLP
                                         Theodore B. Olson
22                                       Theodore J. Boutrous, Jr.
                                         Christopher D. Dusseault
23                                       Ethan D. Dettmer
                                         Matthew D. McGill
24                                       Amir C. Tayrani
                                         Sarah E. Piepmeier
25                                       Theane Evangelis Kapur
                                         Enrique A. Monagas
26

27

28                                       By:_____/s/_____
                                                          Theodore B. Olson

1    and

2    BOIES, SCHILLER & FLEXNER LLP
David Boies
3    Jeremy M. Goldman
Roseanne C. Baxter
4    Richard J. Bettan
Beko O. Richardson
5    Theodore H. Uno

6    Attorneys for Plaintiffs
KRISTIN M. PERRY, SANDRA B. STIER,
7    PAUL T. KATAMI, and JEFFREY J. ZARRILLO

8

9    DENNIS J. HERRERA
City Attorney
10   THERESE M. STEWART
Chief Deputy City Attorney
11   DANNY CHOU
Chief of Complex and Special Litigation
12   RONALD P. FLYNN
VINCE CHHABRIA
13   ERIN BERNSTEIN
CHRISTINE VAN AKEN
14   MOLLIE M. LEE
Deputy City Attorneys

16   By:_____/s/_____
         Therese M. Stewart

17

18   Attorneys for Plaintiff-Intervenor
CITY AND COUNTY OF SAN FRANCISCO

09-CV-2292 VRW  PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S TRIAL MEMORANDUM

Gibson, Dunn & Crutcher LLP

1

## **ATTESTATION PURSUANT TO GENERAL ORDER NO. 45**

2        Pursuant to General Order No. 45 of the Northern District of California, I attest that

3  concurrence in the filing of the document has been obtained from each of the other signatories to this

4  document.

5

                                    By:_____/s/_____
6                                              Theodore B. Olson

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP