COOPER AND KIRK, PLLC
Charles J. Cooper (DC Bar No. 248070)*
*ccooper@cooperkirk.com*
David H. Thompson (DC Bar No. 450503)*
*dthompson@cooperkirk.com*
Howard C. Nielson, Jr. (DC Bar No. 473018)*
*hnielson@cooperkirk.com*
Nicole J. Moss (DC Bar No. 472424)*
*nmoss@cooperkirk.com*
Peter A. Patterson (OH Bar No. 0080840)*
*ppatterson@cooperkirk.com*
1523 New Hampshire Ave. N.W., Washington, D.C. 20036
Telephone: (202) 220-9600, Facsimile: (202) 220-9601

LAW OFFICES OF ANDREW P. PUGNO
Andrew P. Pugno (CA Bar No. 206587)
*andrew@pugnolaw.com*
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 608-3065, Facsimile: (916) 608-3066

ALLIANCE DEFENSE FUND
Brian W. Raum (NY Bar No. 2856102)*
*braum@telladf.org*
James A. Campbell (OH Bar No. 0081501)*
*jcampbell@telladf.org*
15100 North 90th Street, Scottsdale, Arizona 85260
Telephone: (480) 444-0020, Facsimile: (480) 444-0028

ATTORNEYS FOR DEFENDANT-INTERVENORS DENNIS HOLLINGSWORTH,
GAIL J. KNIGHT, MARTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM,
MARK A. JANSSON, and PROTECTMARRIAGE.COM – YES ON 8, A
PROJECT OF CALIFORNIA RENEWAL

* Admitted *pro hac vice*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO,<br><br>Plaintiffs,<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his | CASE NO. 09-CV-2292 VRW<br><br>**DEFENDANT-INTERVENORS' MEMORANDUM IN OPPOSITON TO PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S MOTION *IN LIMINE* TO EXCLUDE THE EXPERT REPORT, OPINION, AND TESTIMONY OF KENNETH P. MILLER**<br><br>**Pretrial Conference**<br><br>Date:   December 16, 2009<br>Time:   10:00 a.m.<br>Judge:  Chief Judge Vaughn R. Walker |

1  official capacity as Director of the California
   Department of Public Health and State Registrar of
2  Vital Statistics; LINETTE SCOTT, in her official
   capacity as Deputy Director of Health Information
3  & Strategic Planning for the California Department
   of Public Health; PATRICK O'CONNELL, in his
4  official capacity as Clerk-Recorder for the County
   of Alameda; and DEAN C. LOGAN, in his official
5  capacity as Registrar-Recorder/County Clerk for
   the County of Los Angeles,
6
7                     Defendants,
8  and
9  PROPOSITION 8 OFFICIAL PROPONENTS
   DENNIS HOLLINGSWORTH, GAIL J.
10 KNIGHT, MARTIN F. GUTIERREZ, HAK-
   SHING WILLIAM TAM, and MARK A.
11 JANSSON; and PROTECTMARRIAGE.COM –
   YES ON 8, A PROJECT OF CALIFORNIA
12 RENEWAL,
13                 Defendant-Intervenors.
14

15     Additional Counsel for Defendant-Intervenors
16
17 ALLIANCE DEFENSE FUND
   Timothy Chandler (CA Bar No. 234325)
18 *tchandler@telladf.org*
   101 Parkshore Drive, Suite 100, Folsom, California 95630
19 Telephone: (916) 932-2850, Facsimile: (916) 932-2851

20 Jordan W. Lorence (DC Bar No. 385022)*
   *jlorence@telladf.org*
21 Austin R. Nimocks (TX Bar No. 24002695)*
   *animocks@telladf.org*
22 801 G Street NW, Suite 509, Washington, D.C. 20001
   Telephone: (202) 393-8690, Facsimile: (202) 347-3622
23
   * Admitted *pro hac vice*
24
25
26
27
28

Location:  Courtroom 6, 17th Floor

Trial Date:  January 11, 2010

DEFENDANT-INTERVENORS' OPPOSITION TO MOTION *IN LIMINE* RE MILLER
CASE NO. 09-CV-2292 VRW

Plaintiffs and Plaintiff-Intervenor (collectively, "Plaintiffs") contend that certain paragraphs contained in Dr. Kenneth P. Miller's expert rebuttal report do not present rebuttal information and are improperly duplicative of another expert's report.  Defendant-Intervenors ("Proponents") respectfully submit that Plaintiffs' claims lack merit, and thus that their motion *in limine* to exclude Dr. Miller's expert report, opinion, and testimony should be denied.

## FACTS

In an August 19, 2009 Minute Entry the Court established October 2, 2009, as the deadline for producing expert reports pursuant to Federal Rule of Civil Procedure 26(a)(2)(B).  *See* Doc # 160.  The parties accordingly exchanged expert reports on that date; among the reports submitted by Proponents was one written by Dr. Paul Nathanson, *see* Doc # 280-4; among those submitted by Plaintiffs was one written by Dr. Gary M. Segura, *see* Doc # 280-3.  The parties agreed to exchange rebuttal expert reports on November 9.  On that date, Proponents produced an expert rebuttal report written by Dr. Kenneth P. Miller.  *See* Doc # 280-6.

Plaintiffs filed a motion *in limine* on December 7 asking this Court to exclude paragraphs 53-72 of Dr. Miller's expert rebuttal report on the grounds that the information (a) is not rebuttal information and (b) duplicates Dr. Nathanson's report.  Doc # 280 at 5.  A recounting of the relevant expert reports demonstrates that Plaintiffs' claims are without merit.

### Report of Dr. Paul Nathanson

Dr. Nathanson's report examines the views of religious organizations, religious people, and gay rights advocates in California to answer three questions:

(1) Is religion inherently incompatible with the redefinition of marriage to include gay couples?
(2) Does religious support for the historical definition of marriage necessarily entail animus toward gay people, thus amounting to bigotry and "bad faith"?
(3) Do secular advocates for gay marriage ignore religion?

Doc # 280-4 at 6.  Dr. Nathanson's report answers each of the questions it poses in the negative.  As these questions indicate, the "material aspect" of Proponents' case that Dr. Nathanson's report "logically advances" is that Proposition 8 should not be invalidated on the ground that it was driven by animus or any other improper motivation.  *Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1315 (9th Cir. 1995).

1

**Report of Dr. Gary M. Segura**

Dr. Segura's report addresses "the relative political power of gays and lesbians as a class of citizens, and their level of political vulnerability." Doc # 280-3 at 3. The report, among other things, identifies several purported manifestations of gays' and lesbians' political powerlessness, *id.* at 5-9, and alleged factors contributing to such powerlessness, *id.* at 9-13. Among the contributing factors Dr. Segura identifies are "moral and political condemnation" and "powerful, numerous, and well-funded opposition." *Id.* at 13. In his discussion of each of these factors, set out in full below, Dr. Segura assigns a primary role to religious beliefs:

> **Moral and Political Condemnation:** While the pluralist framework envisions shifting majorities and rotation in office, Old Testament prohibitions of homosexuality serve to create, in many of America's religious communities, a permanent majority that believes homosexual conduct is sinful and immoral and that it should be condemned and discouraged. The General Social Survey (downloadable from the National Opinion Research Center) regularly asks a representative sample of Americans to evaluate whether homosexual relations are "wrong." In 2008, those data show that 51.5% of Americans still report that sex between two persons of the same sex is "always wrong" while another 10.3% agree that it is "sometimes" or "almost always" wrong. Moreover, the shift in the direction of tolerance is neither large nor rapid. A decade ago, a module from the same survey shows the comparable numbers as 56% and 11.8% respectively.

> **Powerful, Numerous, and Well-Funded Opposition:** The moral condemnation of homosexual acts fuels and supports political opposition to protections and benefits for gays and lesbians. Campbell and Robinson (2007) found that opposition to same-sex marriages united leadership and core believers across religious traditions. Similarly, the San Francisco Chronicle reported that the campaign in favor of Proposition 8 was conceived and funded by a cooperative effort of the Roman Catholic Archbishop of San Francisco and the senior leadership of the Mormon Church. Churches provide a well-funded, widely spread, untaxed medium in which individuals opposed to gay and lesbian policy goals can disseminate political messages and campaign materials, as well as engage in fundraising. Moreover, national religious movements like Focus on the Family, the Traditional Values Coalition, the Family Research Council, and other groups provide a national network for pressuring elected officials, fundraising, message testing, media dissemination and publication, mobilization and coordination across states and jurisdictions. This nationwide co-ordination, for example, explains how 14 statewide initiatives appeared in a single year, 2004. Cahill (2007) documents the vast economic resources of these organizations and their willingness to provide them to political efforts to prevent or reverse rights, benefits, or protections for gays and lesbians. Gays and lesbians lack the resources, numbers, and reach to counter this kind of committed, organized opposition to their interests.

*Id.*

Dr. Segura's report concludes that gays and lesbians do not have political power in the sense that they have not demonstrated that they can "compel" favorable outcomes from the political system. *Id.* at 5.

**Rebuttal Report of Dr. Kenneth P. Miller**

Dr. Miller's rebuttal report expressly sets out to "address[] issues raised by plaintiffs' expert witness, Dr. Gary M. Segura." Doc # 280-6 at 2. To do so, his report "present[s] evidence that gays and lesbians … have achieved significant political power in California and elsewhere in the United States." *Id.* Part of this evidence consists of "the expanding coalition supporting LGBT rights" in California. *Id.* at 12. As Dr. Miller explains, gays and lesbians have strong allies in organized labor, corporations, professional associations, newspapers, political parties, state and local elected officials, and churches and other faith-based organizations. *Id.* at 12-31. Paragraphs 53 through 72, part of this discussion of gays' and lesbians' political coalition, address churches and other faith-based organizations. They show, among other things, that religious groups were on both sides of the debate over Proposition 8.

**ARGUMENT**

**I.     Dr. Miller's Report Rebuts Dr. Segura's**

Federal Rule of Civil Procedure 26(a)(2) provides that parties are not only to disclose the identities of their expert witnesses but also that in many circumstances they are required to accompany this disclosure with "a written report … prepared and signed by the witness." For experts whose "evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party['s]" initial expert disclosures, the rules establish a default deadline of 30 days following those initial disclosures for a party to disclose their identity and reports. FED. R. CIV. P. 26(a)(2)(C)(ii). Plaintiffs' claim that the challenged paragraphs of Dr. Miller's report was not timely disclosed rests on their contention that they do not consist of rebuttal material; Plaintiffs in other words do not challenge the timeliness of the disclosure if it is properly deemed rebuttal information—as is clearly the case.

As we have explained, Dr. Segura's report aims to provide evidence on the subject of the "relative political power of gays and lesbians." Doc # 280-3 at 3. The challenged discussion in Dr. Miller's report would rebut Dr. Segura's evidence on this "same subject matter" even if Dr. Segura did not discuss religion *at all*. FED. R. CIV. P. 26(a)(2)(C)(ii); *see TC Sys. Inc. v. Town of Colonie*, 213 F. Supp. 2d 171, 180 (N.D.N.Y 2002) (declining to "narrowly construe the phrase

3

1   'same subject matter' beyond its plain language" because to do so "would impose an additional

2   restriction on parties that is not included in the Rules"); *Lindner v. Meadow Gold Dairies, Inc.*,

3   249 F.R.D. 625, 636 (D. Haw. 2008) (explaining that so long as a rebuttal report contradicts or

4   rebuts the "subject matter" of principal reports it does not matter that a rebuttal expert did not

5   review those reports).  As Dr. Miller's report explains, religious groups form part of the political

6   coalition that champions the gay and lesbian rights movement in California.  This growing political

7   coalition "helps explain why the movement has been so successful in achieving legislative

8   victories in California over the past decade, and why it can continue to rely on democratic

9   institutions to pursue its goals."  Doc # 280-6 at 12.  Evidence of the membership and activities of

10  this political coalition serves to "explain, repel, counteract or disprove" Segura's claim that gays

11  and lesbians are politically powerless—even apart from of his discussion of religion—and is thus

12  "properly admissible" as rebuttal evidence.  *Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D. N.J.

13  2004).

14          Dr. Segura's report, however, *does* discuss religion's role in affecting the political power of

15  gays and lesbians.  And as the lengthy excerpt from his report included above demonstrates, it does

16  so extensively.  His bottom line assertion is that "[g]ays and lesbians lack the resources, numbers,

17  and reach to counter [the] kind of committed, organized opposition to their interests" inspired by

18  religion.  Doc # 280-3 at 13.

19          Plaintiffs, not Dr. Miller, have "seized upon a single line" and attempted to make it the sum

20  and substance of Dr. Segura's testimony.[1]  Doc # 280 at 10-11.  While the implications of that

21

22          [1] Plaintiffs' reference to *United States v. Southern California Edison Co.*, 1:01-CV-5167,

23  2005 U.S. Dist. LEXIS 24592, at *14-16 (E.D. Cal. Sept. 23, 2005) is thus inapposite.  The other
    cases Plaintiffs' cite likewise fail to advance their cause.  In *Jarritos, Inc. v. Los Jarritos*, 05-02380,

24  2007 U.S. Dist LEXIS 32245 (N.D. Cal. May 2, 2007), *rev'd  on other grounds, Jarritos, Inc. v.
    Reyes*, No. 07-16083, 2009 U.S.  App. LEXIS 18225 (9th Cir. Aug. 14, 2009), the Court excluded

25  rebuttal reports that "fail[ed] to consider or address the substance" of the expert-in-chief's report,
    *id*. at *19. Dr. Miller's report, however, is entirely keyed to rebutting Dr. Segura's.  In *J.W. v. City

26  of Oxnard*, 07-06171, 2008 WL 4810298 (C.D. Cal. Oct. 27, 2009) the Court excluded rebuttal
    testimony on a subject—police procedures—that was not the subject of *any* expert testimony by the

27  opposing party, *id*. at *4.  That is plainly not the case here.  Finally, in *Lindner v. Meadow Gold
    Dairies, Inc.*, 249 F.R.D. 625 (D. Haw. 2008), although Court did exclude a portion of a rebuttal

28  (Continued)

line—"that the campaign in favor of Proposition 8 was conceived and funded by a cooperative effort of the Roman Catholic Archbishop of San Francisco and the senior leadership of the Mormon Church," Doc # 280-3 at 13—*are* rebutted by Dr. Miller's evidence that religious groups were on both sides of the debate over Proposition 8, Dr. Miller's evidence also repudiates Dr. Segura's broader arguments that gays and lesbians are politically powerless in the face of a coordinated movement allegedly fueled by religiously-inspired moral and political condemnation of gays and lesbians.[2]

## II.    Dr. Miller's Report Does Not Improperly Duplicate Dr. Nathanson's Report

Plaintiffs also contend that Dr. Miller's report improperly duplicates Dr. Nathanson's report, insinuating that "Proponents are likely violating the rules governing rebuttal reports in an attempt to substitute a new expert for a prior expert with whom they may now not wish to proceed." Doc # 280 at 12. Plaintiffs have no basis for this charge. As an initial matter, Proponents' pretrial disclosures indicate that they "expect to present" Dr. Nathanson's testimony at trial. Doc # 292 at 3 & n.1. Moreover, there is nothing improper about the fact that Dr. Miller's report contains information similar to that contained in Dr. Nathanson's.

First, while Dr. Miller and Dr. Nathanson present similar evidence about religious attitudes toward Proposition 8 and same-sex marriage, they employ that evidence for different reasons. Dr. Nathanson's report, as we have explained, is intended primarily to demonstrate that religion played a role on both sides of the Proposition 8 campaign, that religious opposition to Proposition 8 is not tantamount to animus against gays and lesbians and, in short, that Proposition 8 is not tainted by animus or any other improper motivations. Dr. Miller's rebuttal report, on the other hand, addresses a different subject—the political power of gays and lesbians. The challenged paragraphs of his

(Cont'd)
report, the excluded part did not "contradict or rebut *anything*" in the reports it was allegedly countering, *id.* at 637 (emphasis added).
[2] Plaintiffs also complain that the challenged section of Dr. Miller's rebuttal report takes up "six single-spaced pages." Doc # 280 at 6. Those six pages, however, are all in service of rebutting Dr. Segura's expert report regarding the political power of gays and lesbians. Dr. Miller's "expert rebuttal report does exactly what it says: it rebuts, in the form of a *complete statement* of all of the opinions expressed by the author, the report of the opposing party's expert." *Long Term Capital Holdings v. United States*, 3:01-CV-1290, 2003 U.S. Dist. LEXIS 13256, *7-8 (D. Conn. May 15, 2003) (emphasis added).

report are contained under the broader heading of "The Expanding LGBT Rights Coalition," Doc # 280-6 at 12, and they help to demonstrate that members of the religious community are a part of this coalition.[3]

Second, it is of no moment that Proponents could have anticipated that a rebuttal to Plaintiffs' political power expert may include a discussion of the California religious community's position on Proposition 8 and same-sex marriage generally.  In order to prevail on their claim that gays and lesbians are a "suspect class" under the Equal Protection Clause, Plaintiffs must show that gays and lesbians are politically powerless.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 445 (1985); *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 573 (9th Cir. 1990).  "In most cases," the rule writers have explained, "the party with the burden of proof on an issue should disclose its expert testimony on that issue before other parties are required to make their disclosures with respect to that issue."  Notes of Advisory Committee on 1993 Amendments, FED. R. CIV. PROC. 26.  The Court surely did nothing in this case to upset the default rule that rebuttal reports are not due until after the parties make their initial expert disclosures.  *See* FED. R. CIV. PROC. 26(a)(2)(C)(ii).  And Plaintiffs' have pointed to no authority for the argument that Proponents should have disclosed the challenged paragraphs of Dr. Miller's rebuttal report with their initial expert disclosures if they knew or suspected there would be a need for the evidence. *See* Doc # 280 at 12.  To the contrary, "[a]ll that is required is for the [rebuttal] information to repel other expert testimony."  *Crowley*, 322 F. Supp. 2d at 551.  If Plaintiffs' position were the rule, it "would lead to the inclusion of vast amounts of arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation" of another expert's testimony would prevent the expert from introducing the information at all.  *Id.*

---

[3] *Scientific Components Corp. v. Sirenza Microdevices, Inc.*, 03-CV-1251, 2008 U.S. Dist. LEXIS 92703 (E.D.N.Y. Nov. 13, 2008), is thus off-point.  Indeed, while in that case the district court held that one part a rebuttal expert's report was improperly repetitive, it rejected a similar challenge with respect to two other parts of the rebuttal expert's report. *Id.* at *9.  In one of those instances, both the initial expert and the rebuttal expert discussed low frequency oscillation in amplifiers, but for different purposes.  The initial report offered "a general overview" of the subject, while the rebuttal report contrasted it to "noise" in response to an alleged confusion of these phenomena in an expert report submitted by the opposing party.  *Id.* at *10 & n.2.  The Court held that this was "appropriate rebuttal testimony."  *Id.* at *10.

1

**CONCLUSION**

2        For these reasons, Plaintiffs' Motion *in Limine* to Exclude the Expert Report, Opinion, and

3  Testimony of Kenneth P. Miller should be denied.

4

5  Dated:        December 11, 2009

6                                                    COOPER AND KIRK, PLLC
                                                     ATTORNEYS   FOR   DEFENDANT-INTERVENORS
                                                     DENNIS   HOLLINGSWORTH,   GAIL   J.   KNIGHT,
7                                                    MARTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM,
                                                     MARK A. JANSSON, AND PROTECTMARRIAGE.COM –
8                                                    YES ON 8, A PROJECT OF CALIFORNIA RENEWAL

9

10                                                   By: /s/Charles J. Cooper
                                                         Charles J. Cooper

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28