# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Kristin M. Perry; Sandra B.
Stier; Paul T. Katami; Jeffrey J.
Zarrillo,
        *Plaintiffs-Appellees,*

v.

Proposition 8 Official
Proponents,
    *Defendant-intervenor-Appellee,*

Campaign for California Families,
    *Defendant-intervenor-Appellant,*

and

ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. HORTON in his official capacity as Director of the California Department of Public Health & State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles,
                        *Defendants,*

DENNIS HOLLINGSWORTH; GAIL J. KNIGHT; HAK-SHING WILLIAM TAM; MARK A. JANSSON; PROTECTMARRIAGE.COM- YES ON 8, A PROJECT OF CALIFORNIA RENEWAL,
                        *Defendant-intervenors,*

MARTIN F. GUTIERREZ,
                        *Defendant-intervenor.*

No. 09-16959

D.C. No.
3:09-cv-02292-VRW

OPINION

PERRY v. CAMPAIGN FOR CALIFORNIA FAMILIES            15349

Appeal from the United States District Court
for the Northern District of California
Vaughn R. Walker, Chief District Judge, Presiding

Argued and Submitted
November 4, 2009—Stanford, California

Filed November 19, 2009

Before: Pamela Ann Rymer, M. Margaret McKeown and
N. Randy Smith, Circuit Judges.

Opinion by Judge McKeown

## COUNSEL

Mary E. McAlister and Mathew D. Staver, Liberty Counsel, Lynchburg, Virginia, for the intervenor-appellant.

Matthew D. McGill and Theodore B. Olson, Gibson, Dunn & Crutcher LLP, Washington, DC, for the plaintiffs-appellees.

Charles J. Cooper and Howard C. Nielson, Cooper and Kirk, PLLC, Washington, DC for the intervenor-appellees.

## OPINION

McKEOWN, Circuit Judge:

We consider whether a public interest organization is entitled to intervene in a suit challenging the constitutionality of Proposition 8 ("Prop. 8"), a state ballot initiative restricting the definition of marriage to the union of a man and a woman under California law. The Campaign for California Families ("the Campaign") seeks to intervene in part because it alleges that the Official Proponents of Prop. 8 and ProtectMarriage.com—parties to the suit—will not adequately represent all the Campaign's interests in the litigation. The reality is that the Campaign and those advocating the constitutionality of Prop. 8 have identical interests—that is, to uphold Prop. 8. Any differences are rooted in style and degree, not the ultimate bottom line. Divergence of tactics and litigation strategy is not tantamount to divergence over the ultimate objective of the suit. Because the existing parties will adequately represent the Campaign's interests, we affirm the district court's denial of intervention as of right. We also dismiss the appeal in part because the district court did not abuse its discretion in denying permissive intervention.

## BACKGROUND

On November 4, 2008, voters approved Prop. 8, a state ballot initiative that amended the California Constitution to pro-

vide that "[o]nly marriage between a man and a woman is valid or recognized in California." CAL. CONST. art. I, § 7.5. On May 22, 2009, Kristen M. Perry and several gay and lesbian residents of California who wish to marry (together, "Perry") filed suit seeking a declaration that Prop. 8 and any other California law that bars same-sex marriage are unconstitutional under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution, and an injunction preventing the State from enforcing Prop. 8 and any other similar California law. The defendant Governor, state administrative officers, and county clerks declined to take any position on the constitutionality of Prop. 8. The defendant California Attorney General responded that he agreed that Prop. 8 was unconstitutional. The district court granted an unopposed motion to intervene by the Official Proponents of Prop. 8 and ProtectMarriage.com—a ballot committee under California law (together, "the Proponents")—so that they could defend the constitutionality of Prop. 8.

The Campaign unsuccessfully moved to intervene as a defendant as well.[1] The district court denied the Campaign's motion to intervene as of right because the Campaign failed to show that it had a significantly protectable interest in the subject matter of the litigation, that the disposition of the action might practically impair or impede its ability to protect its interest, or that its interest was not adequately represented by the existing parties to the action. The Campaign's motion for permissive intervention failed for similar reasons. Finally, the district court noted that the Campaign could seek leave to file amicus briefs on "specific legal issues that [it] believe[s] require elaboration or explication that the parties fail to provide."

---

[1]As to other parties seeking intervention, the district court granted the City of San Francisco's motion to intervene in part, but denied intervention to a coalition of gay and lesbian advocacy groups.

## ANALYSIS

### I. INTERVENTION AS OF RIGHT

We have jurisdiction to review the denial of intervention as of right as a "final decision" under 28 U.S.C. § 1291. *League of United Latin Am. Citizens v. Wilson* (*LULAC*), 131 F.3d 1297, 1302 (9th Cir. 1997). We review such decisions de novo. *Prete v. Bradbury*, 438 F.3d 949, 953 (9th Cir. 2006). An applicant for intervention as of right must satisfy four criteria under Federal Rule of Civil Procedure 24(a)(2):

> (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties.

*Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003) (citing *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)). Failure to satisfy any one of the requirements is fatal to the application, and we need not reach the remaining elements if one of the elements is not satisfied. *See California ex rel. Van de Kamp v. Tahoe Reg'l Planning Agency*, 792 F.2d 779, 781 (9th Cir. 1986). As we explain below, the Campaign failed to show that the Proponents will not adequately represent its interests in the litigation. Consequently, we do not address any of the other requirements of Rule 24(a)(2).[2]

---

[2]Perry suggests that the Campaign lacks standing to seek intervention as of right because it possesses only a generalized interest in the litigation. We have yet to decide whether putative intervenors must satisfy standing independently of the parties to the case. The circuits are split on this issue. *See Prete*, 438 F.3d at 956 n.8 (citing cases). In any event, because the district court correctly denied the Campaign's motion to intervene under Rule

## II. ADEQUACY OF REPRESENTATION

**[1]** The "most important factor" to determine whether a proposed intervenor is adequately represented by a present party to the action is "how the [intervenor's] interest compares with the interests of existing parties." *Arakaki*, 324 F.3d at 1086 (citations omitted). Where the party and the proposed intervenor share the same "ultimate objective," a presumption of adequacy of representation applies, and the intervenor can rebut that presumption only with a "compelling showing" to the contrary. *Id.* (citing *LULAC*, 131 F.3d at 1305).

### A. THE CAMPAIGN AND THE PROPONENTS SHARE THE SAME "ULTIMATE OBJECTIVE" IN THE SUIT

**[2]** Despite the Campaign's quibble over fine details, even "interpret[ing] the requirements broadly in favor of intervention," *Donnelly*, 159 F.3d at 409 (citation omitted), it is apparent to us that the ultimate objective of the Campaign and the Proponents is identical—defending the constitutionality of Prop. 8 and the principle that the traditional definition of marriage is the union of a man and a woman. In an effort to sidestep this unity of interest, the Campaign argues that it bears an interest beyond defending the constitutionality of Prop. 8: namely, "the constitutionality of defining marriage as the union of a man and a woman, which goes beyond merely the language of Proposition 8." This is so, according to the Campaign, because Perry's suit does not implicate the validity of Prop. 8 alone, but rather "any California law that defines marriage as the union of a man and a woman," including "numer-

---

24, we do not consider standing here. *See id.* (noting that "we need not reach [the issue of standing] because . . . the district court erred in granting intervenor-defendants' motion to intervene on grounds other than whether intervenor-defendants had independent standing"); *see also Portland Audubon Soc. v. Hodel*, 866 F.2d 302, 308 n.1 (9th Cir. 1989) (noting that "we in the past have resolved intervention questions without making reference to standing doctrine").

ous statutes and other legislative enactments that refer to marriage, including measures that the Campaign sponsored, helped to enact[,] and worked to preserve." The Campaign's only example of such a measure is Proposition 22, codified as CAL. FAM. CODE § 308.5 (2000), which provided that "[o]nly marriage between a man and a woman is valid or recognized in California" and was invalidated by the California Supreme Court in *In re Marriage Cases*, 183 P.3d 384, 452-53 (Cal. 2008). The Campaign also cites its lawsuits against California AB205, which granted marriage rights to same-sex couples, and against San Francisco Mayor Gavin Newsom when he attempted to issue marriage licenses to same-sex couples, as well as its work in defense of Prop. 8 as evidence of the Campaign's "broader" interest in defending the opposite-sex definition of marriage in California.

[3] When pressed at oral argument to put some meat on the bare bones of the claim that its interest is broader than that of the Proponents, the Campaign was unable to do so. Taken together, the Campaign's statements simply circle back to Prop. 8. Indeed, the only marriage-related measure outside of Prop. 8 cited by the Campaign, Proposition 22, is verbatim identical to Prop. 8. We agree with the district court that the Campaign failed to explain "how Proposition 8, if upheld as constitutional, would fail to assure this claimed broader interest in defining marriage as only an opposite-sex union."

[4] As the district court aptly held, the Campaign's interest in defending the opposite-sex definition of marriage under California law is not "meaningfully distinct" from the Proponents' interest in defending the constitutionality of Prop. 8. Rather, whether California may constitutionally define marriage as the union of a man and a woman will be wholly determined by the ultimate ruling on the constitutionality of Prop. 8, because any California law defining marriage as the union of a man and a woman would be invalidated if Prop. 8 were found to be unconstitutional, and affirmed if Prop. 8

were held to be constitutional. Given the identity of interests, the presumption of adequate representation applies.[3]

## B. THE CAMPAIGN HAS FAILED TO REBUT THE PRESUMPTION OF ADEQUATE REPRESENTATION

[5] Because the Proponents' and the Campaign's interests are essentially identical, the Campaign may only defeat the presumption of adequate representation with a "compelling showing" to the contrary. *Arakaki*, 324 F.3d at 1086; *see also Prete*, 438 F.3d at 957-59 (holding that a public interest organization seeking intervention to defend a state constitutional ballot initiative failed to defeat the presumption of adequate representation when the ultimate objective of both the organization and the defendant party was to uphold the measure's validity). We assess the Campaign's rebuttal argument in terms of the three *Arakaki* factors:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Arakaki*, 324 F.3d at 1086 (citing *Tahoe Reg'l Planning Agency*, 792 F.2d at 778).

The Campaign has failed to make a "compelling showing" that the Proponents will not mount an adequate defense of

---

[3]The Campaign also asserts an interest in "fostering strong families and protecting children." Both these concerns are included in the "subject of the action," *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001) (internal quotation marks and citation omitted), only insofar as the opposite-sex definition of marriage propounds to advance them. This interest is not meaningfully distinct from the Proponents' interest in defending Prop. 8.

Prop. 8 against Perry's due process and equal protection claims. Even taking all of the Campaign's well-pleaded and nonconclusory allegations as true, *Berg*, 268 F.3d at 820, the record establishes that the Proponents are capable and willing to make the Campaign's arguments in support of Prop. 8 and will not neglect any elements necessary to the defense of Prop. 8.

**[6]** The Campaign bases its argument almost entirely on the Proponents' Case Management Statement, proposed stipulations, and responses to Perry's proposed stipulations, which the Proponents submitted in response to the district court's request that they provide "[a]dmissions and stipulations that the parties are prepared to enter with respect to the . . . elements" of Perry's claims. Citing these documents, the Campaign asserts that the Proponents have conceded valuable legal ground and will not make arguments the Campaign is willing to make. These very documents illustrate that the Campaign overstates its case and that any differences between Proponents and the Campaign are primarily differences as to litigation tactics.

Proponents' Case Management Statement, for example, amply illustrates their intention to mount a vigorous defense of the constitutionality of Prop. 8. Proponents detail the legal theories necessary to sustain Prop. 8 and state that they contest the existence of a fundamental liberty interest in same-sex marriage, declare that Prop. 8 does not discriminate on the basis of sexual orientation and that same-sex and opposite-sex couples are not similarly situated groups, and argue that sexual orientation is not a suspect or quasi-suspect classification. The Proponents also contend that Prop. 8 is sufficiently related to several legitimate governmental interests, such as

> [p]reserving the traditional definition of marriage as the union of a man and a woman[;] [p]romoting the formation of naturally procreative unions[;] [p]romoting stability and responsible behavior in

naturally procreative relationships[;] [p]romoting enduring and stable family structures for the responsible raising and care of children by their biological parents[;] [p]romoting the natural and mutually beneficial bond between parents and their biological children by encouraging parents to raise their biological children[;] [and] [a]cting incrementally and with caution when considering radical change to the fundamental nature of a bedrock social institution.

Despite this robust defense of Prop. 8, the Campaign argues that the Proponents have shown their willingness to stipulate to specific facts proposed by Perry that "would virtually establish, as a matter of law, that sexual orientation is a suspect class under the . . . criteria [set forth in *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432 (1985)] . . . [and] that there is no rational basis for defining marriage as the union of a man and a woman." The Campaign also argues that these concessions will jeopardize its interest in follow-on litigation.

These sweeping allegations turn out to be just that—an unsupported broadside against the Proponents' litigation strategy. Proponents have not made concessions that would sell the Campaign down the river. Instead, in certain discrete areas, the Proponents found limited agreement with Perry. For the most part, however, the Proponents made clear again and again that while "they may be able to agree to some form of [the] stipulation, [they] cannot agree to the formulation offered by plaintiffs."

A review of the record shows that the Campaign has distorted Proponents' position in a number of respects. For example, contrary to the Campaign's assertions, the Proponents did not indicate they would stipulate across the board to the existence of continuing discrimination against gays and lesbians.[4] Instead, the Proponents explicitly refused to agree to the following stipulations:

---

[4] Proponents did indicate a willingness to consider stipulating to some form of the proposition that "[d]iscrimination against gay and lesbian individuals, including through hate crimes, exists to this day."

>    15.  Gay and lesbian individuals have been subjected to and stigmatized by a long history of purposeful and invidious discrimination that continues to this day.
>
>    16.  Gay and lesbian individuals are still among the most stigmatized groups in the country.
>
>    17.  Hate crimes against gay and lesbian individuals remain prevalent.
>
>    18.  Although social antipathy toward gay and lesbian individuals has moderated, these groups suffer from continuing political disabilities and discrimination.

Proponents also affirmatively stated their intention "to present evidence demonstrating that . . . discrimination [against gays and lesbians] has decreased significantly in recent years, both in governmental and non-governmental contexts," as well as "evidence that gays and lesbians wield substantial political power" today.

Further, while Proponents did "anticipate that they may be able to agree to some form of th[e] stipulation" that "[s]exual orientation is fundamental to a person's identity" and that "[i]t can be harmful to an individual to attempt to change his or her sexual orientation," they refused to agree to Perry's proposed formulation. The Proponents also refused to stipulate that "[t]here is no credible evidence that sexual orientation can or should be changed," and affirmatively represented their intention to "dispute Plaintiffs' claim that homosexuality is immutable."

Similarly, Proponents "anticipate[d] that they may be able to agree to some form of th[e] stipulation" that "[a]n individual's capacity to raise children does not depend on the individual's sexual orientation," but refused to agree to Perry's

proposed formulation. The Proponents also refused to stipulate that "[t]he best interests of a child are equally served by being raised by same-sex parents," or that "[l]esbian and gay parents are as likely as heterosexual parents to provide supportive and healthy environments for children," and indicated that they "may submit expert opinion that a child's biological parents provide the optimal environment for raising that child."

The Campaign's contention that Proponents are willing to "stipulate to, and therefore . . . not present evidence on" the issue of gays and lesbians' past persecution; the fact that sexual orientation is a "kind of distinguishing characteristic" that defines gays and lesbians as a "discrete group"; and the idea that an individual's ability to form long-term committed relationships does not depend on sexual orientation, is also overstated. Rather, Proponents indicated that they might be able to agree to *some* form of the stipulation, but rejected Perry's proposed formulation.

[7] In the end, out of sixty-seven proposed stipulations, the Proponents were willing to stipulate to only three facts that the Campaign highlights that it would not have conceded: (1) that, except for procreation, being homosexual does not affect an individual's ability to perform or contribute to society; (2) that being homosexual does not "result in any impairment in judgment or general social and vocational capacities"; and (3) that, "[a]s a matter of history, individuals practicing a homosexual lifestyle have experienced discrimination." These differences are not sufficient to satisfy the Campaign's rebuttal burden of a "compelling showing" of inadequate representation. *See Arakaki*, 324 F.3d at 1086.

Our review of these claims, coupled with the Campaign's statements at oral argument, leads us to conclude that the real differences between the Proponents and the Campaign boil down to strategy calls. Indeed, as the Proponents pointed out, they would be hard pressed to deny that gays and lesbians

have experienced discrimination in the past in light of the Ninth Circuit's ruling in *High Tech Gays v. Def. Indus. Sec. Clearance Office* that "homosexuals have suffered a history of discrimination." 895 F.2d 563, 573 (9th Cir. 1990).

**[8]** Although it appears that the Proponents may not defend Prop. 8 in the exact manner that the Campaign would, the Campaign has not shown that Proponents have conceded any "*necessary* elements to the proceeding." *Arakaki*, 324 F.3d at 1086 (emphasis added). Rather, the Proponents' Case Management Statement documents their intention to mount a full and vigorous defense of Prop. 8's constitutionality. To the extent that there is disagreement between the Proponents and the Campaign, it is best characterized as a dispute over litigation strategy or tactics. As we have held, "mere[ ] differences in [litigation] strategy . . . are not enough to justify intervention as a matter of right." *United States v. City of Los Angeles*, 288 F.3d 391, 402-03 (9th Cir. 2002); *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996) (holding that "minor differences in opinion" between the parties and proposed intervenor "fail[ ] to demonstrate inadequacy of representation"); *see also Daggett v. Comm'n on Governmental Ethics and Election Practices*, 172 F.3d 104, 112 (1st Cir. 1999) (noting that "[o]f course, the use of different arguments as a matter of litigation judgment is not inadequate representation *per se*").

Finally, the Campaign argues that the number of parties on each side of the litigation will result in an "unbalanced presentation [that] will not create the fully developed factual record and fully adversarial proceeding necessary to resolve the significant constitutional questions Plaintiffs have raised." The Campaign cites no authority for this proposition. Indeed, adequate representation is surely not a numbers game. Having an equal number of parties on each side is hardly the *sine qua non* of adequate representation in an adversarial process. In judging representation, we look to substance, not numbers.

### III. PERMISSIVE INTERVENTION

Exercising its discretion, the district court denied permissive intervention for reasons similar to those underpinning its decision on intervention as of right: the Campaign and the Proponents' interests are indistinguishable; the Proponents represent those interests adequately; and allowing the Campaign to intervene would unduly delay proceedings. We review this decision for abuse of discretion. *LULAC*, 131 F.3d at 1307. Absent a finding of abuse of discretion, we must dismiss the appeal for lack of jurisdiction. *Id.* at 1308.

A district court may grant permissive intervention under Federal Rule of Civil Procedure 24(b)(1)(B) where the applicant "shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Nw. Forest Res. Council*, 82 F.3d at 839. Where a putative intervenor has met these requirements, the court may also consider other factors in the exercise of its discretion, including "the nature and extent of the intervenors' interest" and "whether the intervenors' interests are adequately represented by other parties." *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977). Rule 24(b)(3) also *requires* that the court "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3).

**[9]** The district court's denial of intervention based on the identity of interests of the Campaign and the Proponents and the Proponents' ability to represent those interests adequately is supported by our case law on intervention in other contexts. *See, e.g.*, *United States ex rel. Richards v. De Leon Guerrero*, 4 F.3d 749, 756 (9th Cir. 1993) (denying permissive intervention in a subpoena enforcement proceeding seeking disclosure of Northern Mariana Island tax records where the government party to the case made the same arguments as the taxpayer

intervenors, and the government party would adequately represent the intervenors' privacy interests).

**[10]** The district court also reasoned that "permitting . . . the Campaign to intervene might very well delay the proceedings, as each group would need to conduct discovery on substantially similar issues."[5] The Campaign's intervention was unnecessary given that the parties were "capable of developing a complete factual record encompassing [its] interests." (noting that "the participation of [the Campaign] . . . in all probability would consume additional time and resources of both the Court and the parties that have a direct stake in the outcome of these proceedings").

**[11]** Although the Campaign contends that such statements betrayed the district court's improper interest in "expediency," the district court questioned the Proponents to ensure that they would adequately represent the Campaign's interests and develop a sufficient factual record. Rule 24(b)(3) also obligated the district court to consider whether the Campaign's intervention would "unduly delay or prejudice the adjudication of the original parties' rights." It was well within the district court's discretion to find that the delay occasioned by intervention outweighed the value added by the Campaign's participation in the suit.

## CONCLUSION

**[12]** The Campaign has not shown that it is entitled to intervention. We affirm the district court's denial of the Campaign's motion to intervene as of right and dismiss the Campaign's appeal of the denial of permissive intervention for lack of jurisdiction.

---

[5]The Campaign conceded that its intervention would cause delay, noting in its opening brief that "the Campaign has so much to contribute that it would slow down the proceedings."

**AFFIRMED IN PART AND DISMISSED IN PART.**