COOPER AND KIRK, PLLC
Charles J. Cooper (DC Bar No. 248070)*
*ccooper@cooperkirk.com*
David H. Thompson (DC Bar No. 450503)*
*dthompson@cooperkirk.com*
Howard C. Nielson, Jr. (DC Bar No. 473018)*
*hnielson@cooperkirk.com*
Nicole J. Moss (DC Bar No. 472424)*
*nmoss@cooperkirk.com*
Jesse Panuccio (DC Bar No. 981634)*
*jpanuccio@cooperkirk.com*
Peter A. Patterson (Ohio Bar No. 0080840)*
*ppatterson@cooperkirk.com*
1523 New Hampshire Ave. N.W., Washington, D.C. 20036
Telephone: (202) 220-9600, Facsimile: (202) 220-9601

LAW OFFICES OF ANDREW P. PUGNO
Andrew P. Pugno (CA Bar No. 206587)
*andrew@pugnolaw.com*
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 608-3065, Facsimile: (916) 608-3066

ALLIANCE DEFENSE FUND
Brian W. Raum (NY Bar No. 2856102)*
*braum@telladf.org*
James A. Campbell (OH Bar No. 0081501)*
*jcampbell@telladf.org*
15100 North 90th Street, Scottsdale, Arizona 85260
Telephone: (480) 444-0020, Facsimile: (480) 444-0028

ATTORNEYS FOR DEFENDANT-INTERVENORS DENNIS HOLLINGSWORTH, GAIL J. KNIGHT, MARTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM, MARK A. JANSSON, and PROTECTMARRIAGE.COM – YES ON 8, A PROJECT OF CALIFORNIA RENEWAL

* Admitted *pro hac vice*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the | CASE NO. 09-CV-2292 VRW<br>Chief Judge Vaughn R. Walker<br><br>**DEFENDANT-INTERVENORS' NOTICE OF FILING OF PRIVILEGE LOG** |

California Department of Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; and DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles,

        Defendants,

and

PROPOSITION 8 OFFICIAL PROPONENTS DENNIS HOLLINGSWORTH, GAIL J. KNIGHT, MARTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM, and MARK A. JANSSON; and PROTECTMARRIAGE.COM – YES ON 8, A PROJECT OF CALIFORNIA RENEWAL,

        Defendant-Intervenors.

<u>Additional Counsel for Defendant-Intervenors</u>

ALLIANCE DEFENSE FUND
Timothy Chandler (CA Bar No. 234325)
*tchandler@telladf.org*
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 932-2850, Facsimile: (916) 932-2851

Jordan W. Lorence (DC Bar No. 385022)*
*jlorence@telladf.org*
Austin R. Nimocks (TX Bar No. 24002695)*
*animocks@telladf.org*
801 G Street NW, Suite 509, Washington, D.C. 20001
Telephone: (202) 393-8690, Facsimile: (202) 347-3622

* Admitted *pro hac vice*

## TABLE OF CONTENTS

**Cases** **Page**

TABLE OF AUTHORITIES ................................................................................................................ i

NOTICE OF FILING ........................................................................................................................ 1

## TABLE OF AUTHORITIES

**Cases** **Page**

*Perry v. Schwarzenegger*, No. 09-17241 slip op. (9th Cir. Dec. 11, 2009) ........................... 7-8, 10-12

At the pre-trial hearing on December 16, 2009, the Court requested that Defendant-Intervenors ("Proponents") submit a log of documents that are responsive to Plaintiffs' Requests for Production but privileged under the First Amendment or another privilege. Accordingly, Proponents hereby respectfully submit the attached privilege log cataloguing documents privileged under the First Amendment, as attorney-client communications, and/or as attorney work-product. As explained at the December 16, 2009 hearing, this log identifies privileged documents that are responsive to Plaintiffs' discovery requests as those requests were limited by the Court's October 1 and November 11, 2009 orders. *See* Doc # 214; Doc # 252.

Based on Plaintiffs' representations at the December 16 hearing and in correspondence, it appears that they are now seeking large categories of documents that this Court held were not discoverable on relevance and/or responsiveness grounds in the October 1 and November 11 orders. Many of these documents are subject to Proponents' First Amendment privilege assertions, but Proponents were not required to log them (and they are not included in the attached log) because this Court's October 1 and November 11 orders had placed them outside the scope of permissible discovery. We respectfully submit that Proponents would be severely and unfairly prejudiced were the Court to reverse course at this late date—just three weeks before the commencement of trial—and require that documents previously ruled not discoverable on non-privilege grounds be added to the privilege log.

In the pages that follow, we detail the relevant procedural history to provide the Court with a clear understanding of what has already been produced and what remains potentially at issue, in light of what has already been decided, both by this Court and by the Ninth Circuit.

1. In their August 17 case management statement, Plaintiffs stated that they would seek document and deposition discovery into "Prop 8's genesis, drafting, strategy, objectives, advertising, campaign literature, and [Proponents'] communications with each other, supporters, and donors."

Doc # 157 at 12.  Proponents objected to this sweeping discovery from the start, *see, e.g.*, Doc # 159 at 9, and at the August 19 case management hearing "urge[d] the Court to give us an opportunity to fight this out in briefing to the Court before" discovery commenced.  Hr'g of Aug. 19, 2009, Tr. at 60.  Counsel for Plaintiffs opposed such briefing, assured the Court that Plaintiffs would not "have a problem … in limiting discovery," represented that Plaintiffs "would not be inquiring into" the "subjective, unexpressed motivations" of Proponents, and requested that the Court provide the parties the opportunity to "work out among themselves" any discovery disputes about whatever "gray area" remained.  *Id.* at 63-64.  The Court agreed and allowed discovery to go forward without initial briefing as to the permissible scope of discovery.

2. Two days later, Plaintiffs propounded sweeping document requests that sought virtually all documents in Proponents' possession.  *See* Doc # 187-3.  There was no "gray area" because Plaintiffs sought everything.  Proponents objected—on First Amendment, other privilege, relevance, burden, and other grounds—to producing many of the documents implicated by Plaintiffs' request.  *See, e.g.*, Doc # 187-4 at ¶ 2 (attorney-client and work-product privilege objection), ¶¶ 4 & 8 (First Amendment privilege objection), ¶ 5 (objecting to producing documents equally available from public sources or third parties), ¶ 6 (relevance objection).  Proponents agreed to produce (and have produced) documents that they distributed to large swaths of the electorate, including discrete voter groups.  *See* Doc # 197 at 6; Doc # 214 at 2.  That is, both the individual Proponents and Protect-marriage.com have produced the materials they distributed to voters as voters—television advertisements, radio advertisements, newspaper advertisements, press releases, posters, flyers, event notification flyers, website content, blast emails, and even PowerPoint presentations delivered to small church congregations.  To date, Proponents have reviewed in excess of 90,000 documents and have provided Plaintiffs with approximately 2,000 documents constituting communications to voter

1  groups, large and small. Plaintiffs have listed many of these documents on their exhibit list. Doc #
2  283-1.

3      3.     But with respect to production objectionable on First Amendment, relevance, and burden grounds, Proponents moved on September 15—well before responses to Plaintiffs' discovery requests were due—for a protective order limiting the scope of discovery (with respect to both documents and testimony). *See* Doc # 187 (motion); Doc # 187-14 (proposed order). Proponents objected to "Plaintiffs' demands for disclosure of Proponents' *nonpublic* and/or anonymous communications, including (but not limited to) the Proponents' communications targeted to (and/or received from) (i) persons who donated money to or otherwise volunteered to assist the Prop. 8 campaign; (ii) agents and contractors of the campaign, including political consultants; and even (iii) family, friends, and colleagues." Doc # 197 at 6 (footnote omitted). Proponents highlighted as an example Plaintiffs' Request No. 8, which sought "*all* correspondence Defendant-Intervenors may have had with any 'third party' bearing any relationship to Proposition 8 whatsoever." Doc # 187 at 8. Proponents also explained and objected that Plaintiffs "[o]ther Requests are similarly sweeping." *Id.* at 8 n.1. Plaintiffs refused to narrow their requests and opposed Proponents' motion in full. Doc # 191.

    4.     On October 1, this Court "granted in part and denied in part" Proponent's motion for a protective order. Doc # 214 at 17. The Court explained that, while "communications … about messages" to the electorate "could fairly lead to admissible evidence illuminating the messages disseminated to voters," "'virtually every communication made by anyone included in or associated with Protect Marriage' cannot be relevant." *Id.* at 15-16. Accordingly, the Court held that "Plaintiffs' request no 8, currently encompassing any communication between proponents and any third party, is simply too broad." *Id.* at 16. The Court held that "discovery directed to uncovering whether proponents harbor private sentiments that may have prompted their efforts is simply not

3

relevant." *Id.* at 16. The Court also held that "[c]ommunications that took place after the election may … be relevant *if* they are connected in some way to the pre-election messages conveyed to the voters." *Id.* (emphasis added). The Court flatly concluded: "discovery not sufficiently related to what the voters could have considered is not relevant and will not be permitted." *Id.*

In directing the Plaintiffs to redraft Request No. 8—which, as the Court noted, sought communications with "*any* third party"—the Court explained that a redrafted request would be

> appropriate to the extent it calls for (1) communications by and among proponents and their agents … concerning campaign strategy and (2) communications by and among proponents and their agents concerning messages to be conveyed to voters, without regard to whether the voters or voter groups were viewed as likely supporters or opponents or undecided about Prop 8 and without regard to whether the messages were actually disseminated or merely contemplated. In addition, communications by and among proponents with those who assumed a directorial or managerial role in the Prop 8 campaign, like political consultants or Protectmarriage.com's treasurer or executive committee, among others, would appear likely to lead to discovery of admissible information.

*Id.* at 17.[1]

5. At a telephonic hearing on November 2, 2009, the Court ruled that Proponents may submit for *in camera* review "a limited number of those documents" Proponents maintain are privileged under the First Amendment from disclosure in response to Plaintiffs' discovery requests. Hr'g of Nov. 2, 2009, Tr. at 42-43. *See also* Doc # 247 (minute order). Following that *in camera* review process, the Court issued an order on November 11 that clarified that "Plaintiffs eighth document request is likely to lead to the discovery of admissible evidence to the extent the evidence relates to messages or themes conveyed to California voters or is otherwise likely to lead to this relevant information." Doc # 252 at 3. The Court explained that only 21 of the 60 documents submitted had to be produced. The other 39 documents were "either not responsive to plaintiffs' request or are so attenuated from the themes or messages conveyed to voters that they are, for

---

[1] On October 5, Plaintiffs, "[p]ursuant to the Court's Order," propounded a "revised request for production number 8." Doc # 220-1 at 5. Plaintiffs did not then contend that the revised request seeks, and Proponents have not read the revised request to seek, more than what

4

practical purposes, not responsive." *Id.* at 4. The Court deemed nondiscoverable documents that "say nothing about campaign messages or themes to be conveyed to the voters," including documents that "discuss topics that might relate to messages ultimately adopted or considered by the campaign" but do not "discuss voters or their potential reactions." *Id.* at 6, 8. The Court protected from disclosure, for example, documents and information relating to:

> "fundraising strategy, polling information or hiring decisions"; "the mechanics of operating a campaign"; "the petition drive to qualify Prop 8 for the ballot"; "internal campaign strategy"; the "mechanics of the campaign's internal structure"; "a campaign contribution"; "polling numbers," "poll results," and "musings regarding poll results"; "volunteer coordination and organization"; a "specific volunteer"; "the campaign's structure and arrangements with other entities"; "draft poll questions"; "potential donors"; "recruitment of a potential staff member"; fundraising letters; "volunteer organization"; "meetings with major donors"; "mechanics of petition drives"; "mechanics of operating a phone bank"; "a supporter … not officially associated with the campaign"; internal discussions about "recent articles about gay marriage and its effects"; discussions about "proposed language for Prop 8 [that is] at most marginally pertinent to advertising strategy"; "a potential volunteer consultant and ways the volunteer might aid campaign strategies"; discussions about "disseminating a message but not [about] the message itself"; "the appropriate language to use for the text of Prop 8"; "a targeted fundraising drive."

*Id.* at 4, 6-9.

6. The upshot of the October 1 and November 11 orders was that Proponents' discovery obligations with respect to communications with third parties—aside from communications to voters as voters—were limited in two significant respects. First, only communications by and among Proponents, the managers and directors of Protectmarriage.com, and their agents were discoverable. Second, only communications concerning messages to be conveyed to voters were discoverable. Other communications—for example, a communication with "a supporter … not officially associated with the campaign" and "the campaign's structure and arrangements with other entities," Doc # 252 at 6-9—were not discoverable. Thus, under this Court's rulings, Proponents were not required to produce, or log as privileged, countless e-mails and other communications unrelated to campaign

---

is permitted under the Court's orders.

messaging and advertising strategy. Likewise, it follows that Proponents and their agents were not required to testify about communications and topics that were not discoverable through requests for production.

7. Proponents appealed the October 1 and November 11 orders "to the extent they deny Defendant-Intervenors' Motion for a Protective Order (Doc # 187) and/or require the production of documents asserted as privileged under the First Amendment." Doc # 253 at 3. *See also* Doc # 222. Specifically, Proponents challenged this Court's ruling that confidential communications among Proponents and their agents (at the directorial or managerial level) concerning campaign messaging must be produced. Proponents did not challenge (in either this Court or in the Ninth Circuit) Plaintiffs' request for television advertisements, flyers, blast e-mails, and other communications that went to the public (although Proponents have consistently maintained that these public materials, too, are irrelevant to voter intent). And, of course, Proponents did not challenge this Court's October 1 and November 11 order to the extent they limited the scope of discoverable materials. Likewise, Plaintiffs did not cross appeal these orders to the extent they granted Proponents' motion and limited the scope of "relevant" and "appropriate" discovery at issue. Indeed, during oral argument before the Ninth Circuit, Plaintiffs' counsel relied upon the limitations in those orders in urging the Court of Appeals to reject Proponents' appeal on the internal communications. *See* Recording of Oral Argument, *Perry v. Schwarzenegger*, No. 09-17241 (Dec. 1, 2009), *available at* http://www.ca9.uscourts.gov/media/view_subpage.php?pk_id=0000004515 (this Court did "a very commendable job of coming up with a standard in th[e] November 11 order" of what is "not to be produced"; the November 11 order "la[id] down the standards that would govern the balancing going forward as to documents"). Thus, the Ninth Circuit had before it *only* the twenty-one *in camera* documents this Court ordered produced—and *not* the thirty-nine documents this Court held

6

were protected from discovery. *See* Order, *Perry v. Schwarzenegger*, No. 09-17241 (9th Cir. Nov. 25, 2009).

8.   Accordingly, in its opinion, the Ninth Circuit recounted the production called for in the October 1 and November 11 orders, *Perry v. Schwarzenegger*, No. 09-17241, slip op. at 8-9 (Dec. 11, 2009), and explicitly stated: "The parties … disagree about what types of evidence may be relied upon to demonstrate voter intent.  These issues are beyond the scope of this appeal.  We assume without deciding that the district court has decided these questions correctly," *id.* at 34 n.11.  *See also id.* at 12 ("assum[ing] without deciding" that this Court was "correct" in its rulings on "whether plaintiffs may rely on certain types of evidence to prove that Proposition 8 was enacted for an improper purpose").  In other words, the Ninth Circuit did not have before it, and left in place as law of the case, this Court's orders restricting the scope of relevant and appropriate discovery and granting Proponents' motion for a protective order to that extent.  With respect to the 21 documents and like materials that this Court had ordered produced, the Ninth Circuit held that Proponents' First Amendment privilege barred discovery of those materials.  The Court explained that, "bearing in mind other sources of information" and that "[t]he information plaintiffs seek is attenuated from the issue of voter intent," Plaintiffs "have not shown a sufficiently compelling need for the information" at issue.  *Id.* at 36-37.

9.   This procedural history has resulted in the privilege log filed herewith.  The October 1 order responded to discovery that sought "'virtually every communication made by anyone included in or associated with Protect Marriage'" (including communications with "any third party') and explained that only a limited universe of such communications could be considered "relevant" or "appropriate" in this case.  Doc # 214 at 15-17.  The documents Proponents submitted for *in camera* review were selected because Proponents believed they fell within the metes and bounds of what the October 1 order deemed as "relevant" and "appropriate."  The November 11 order made clear that a

7

nearly two-thirds of those documents were not, in fact, responsive to what the Court deemed "relevant" and "appropriate" areas for inquiry in discovery. Accordingly, the Court stated in the November 11 order: "[T]he court hopes that the foregoing affords proponents sufficient and specific enough guidance to cull their inventory of documents and other materials in order to respond to plaintiffs' document request." Doc # 252 at 9. The Ninth Circuit held that these materials are privileged from disclosure on First Amendment grounds, but that "some form of a privilege log is required." *Perry*, slip op. at 7 n.1. The log submitted herewith thus catalogues the documents that this Court has deemed "relevant" and "appropriate" for discovery, but that the Ninth Circuit has deemed privileged from disclosure under the First Amendment.

10.  This procedural history has also dictated the course of depositions. Despite this Court's and the Ninth Circuit's rulings on the permissible scope of discovery (on relevance or privilege grounds), Plaintiffs have sought through testimony at depositions information they are barred from seeking through production of documents. *Compare, e.g.*, Doc # 214 at 16 ("[D]iscovery directed to uncovering whether proponents harbor private sentiments that may have prompted their efforts is simply not relevant."), *with* Dep. of W. Tam, Tr. 49:11-13 ("Was your goal in writing this letter to encourage people to vote in favor of Proposition 8?") (attached as Ex. 2). Accordingly, Proponents' counsel objected at depositions to the many questions that seek precisely the information that this Court and the Ninth Circuit have deemed nondiscoverable.

11.  Unfortunately, despite the protracted litigation over this issue in both this Court and in the Ninth Circuit, the discovery dispute does not appear to be at an end. As has been true throughout the discovery period, Plaintiffs are yet again altering their demands, often from day to day and in violation of controlling orders in this case.[2] It now appears to be Plaintiffs' position that they are

---

[2] *Compare* Hr'g of Aug. 19, 2009 Tr. 64 (representing that Plaintiffs "would not be inquiring into" "subjective, unexpressed motivations" "because [Plaintiffs] do not believe that those would actually go to the issues that [they] are presenting to the Court"), *and* Doc # 214 at 16

8

entitled to production, in response to Request Nos. 1 or 6, of precisely the same materials this Court held were not discoverable under the original or revised Request No. 8. Request No. 1 seeks documents "distributed to voters" and Request No. 6 seeks all documents "prepared for public distribution." Doc # 187-3 at 5. Plaintiffs now contend that these requests encompass (1) all communications, even one-on-one communications to any voter and (2) any documents distributed by a Defendant-Intervenor to anyone outside what Plaintiffs call the campaign "control group"—i.e., "the group identified in [Plaintiffs] revised document request number 8." Hr'g of Dec. 16, 2009, Tr. (rough) at 30:13; Ltr. from E. Dettmer to C. Cooper (Dec. 14, 2009) at 1 (attached as Ex. 3).

12. There are at least two problems with this position. First, it converts Request Nos. 1 and 6 into original Request No. 8—the very request that this Court ruled was "simply too broad." Doc # 214 at 16. That is, under Plaintiffs' newly asserted position, the "voters" in Request No. 1 and the "public" in Request No. 6 include any person residing in California who was not part of the Protectmarraige.com "control group." In other words, it appears Plaintiffs now demand under Requests Nos. 1 and 6 "[a]ll documents … between [Proponents] and any third party"—i.e., *exactly* what original Request No. 8 sought. *Id.* at 2.[3] But this Court found the information sought by original Request No. 8 to be overly broad, burdensome, and largely irrelevant, and it directed Plaintiffs to

---

("discovery directed to uncovering whether proponents harbor private sentiments that may have prompted their efforts is simply not relevant"), *with* Dep. of W. Tam, Tr. 49:11-13 ("Was your goal in writing this letter to encourage people to raise funds for passing Proposition 8?") (attached as Ex. 2). *Compare* Doc # 187-6 at 2 ("I am writing to confirm that Plaintiffs' First Set of Requests for Production does not seek internal communications among and between your clients regarding Proposition 8 and the related political campaign."), *with* Doc # 220-1 at 5 (seeking "communications … between … Defendant-Intervenors").

[3] In a letter dated December 15, 2009 (attached as Ex. 4), Proponents asked Plaintiffs to "please clarify" whether they were seeking under these requests what they are barred from seeking under Request No. 8. To date, Plaintiffs have offered no response or clarification. Similarly, in a letter dated December 10, 2009 (attached as Ex. 5), Proponents responded to discovery concerns raised by Plaintiffs in an earlier letter—specifically, to concerns over a handful of documents identified by Plaintiffs. Having provided a full explanation of why those documents were not produced, Proponents have heard nothing further from Plaintiffs on this front despite Proponents' representation that "[w]e are happy to address any legitimate, additional concerns Plaintiffs may have."

revise the request according to its instructions. *See* Doc # 214 at 15-16 ("Plaintiffs request no 8, currently encompassing any communication between proponents and any third party, is simply too broad."). As the Court noted, "no amount of discovery could corral all of the information on which voters cast their ballots on Prop 8," and thus the Court restricted the scope of permissible discovery in the October 1 and November 11 orders. *Id.* at 15. And with respect to Plaintiffs' revised Request No. 8, the Ninth Circuit held "[w]e are not presented here with a carefully tailored request for the production of highly relevant information that is unavailable from other sources that do not implicate First Amendment associational interests." *Perry*, slip. op. at 37 n.13. Plaintiffs cannot seriously contend that reading Requests Nos. 1 and 6 to encompass everything *original* Request No. 8 encompassed is such a "carefully tailored" request. Indeed, if the information at issue before the Ninth Circuit—communications among campaign leaders about messaging and advertising strategy—was "attenuated from the issue of voter intent," *id.* at 36-37, then it follows a fortiori that the materials now demanded by Plaintiffs are utterly irrelevant.

Second, Plaintiffs' current position necessarily suggests that Proponents' First Amendment association rights are limited to communications with participants in the specifically denominated and legally recognized campaign committee, and communications with any other known political associates are not protected by the First Amendment. For example, if Gail Knight or Dr. William Tam—who, although official proponents, had virtually nothing to do with Protectmarriage.com's campaign—nonetheless worked with a neighbor or family member to draft a flyer in favor of Proposition 8, it appears to be Plaintiffs' contention that private communications about that flyer (as opposed to the flyer itself) receive *no* First Amendment protection. So, too, for any members of the ACLU who might have engaged in private associational and political speech outside the confines of

that particular organization. Turning their prior representations on their head,[4] Plaintiffs now appear to argue that individuals receive less protection than official groups.[5]

13.     There is no support for Plaintiffs' position in the caselaw, and the Ninth Circuit here has made clear that "compelled disclosure of political affiliations and activities" must be justified by a compelling state interest, that the "existence of a prima facie case [of privilege] turns not on the type of information sought, but on whether disclosure of the information will have a deterrent effect on the exercise of protected activities," that "[i]mplicit in the right to associate with others to advance one's shared political beliefs is the right to exchange ideas and formulate strategy and messages, and to do so in private," and that "[a]ssociations, *no less than individuals*, have the right to shape their own messages." *Perry*, slip op. at 24, 29-30, 31 n.9 (emphasis added). The Court credited Proponent Mark Jansson's statement that "if the personal, non-public communications [he] … had regarding this ballot initiative" are disclosed through compulsory process, his speech will be chilled. *Id.* at 32 (quotation marks omitted). Mr. Jansson, and some of the other Proponents, engaged in such nonpublic communications not only within the confines of some "control group," but also with known political associates who banded together to support Proposition 8. Those communications

---

[4] *See* Recording of Oral Argument, *Perry v. Schwarzenegger*, No. 09-17241 (Dec. 1, 2009) (Plaintiffs counsel representing that internal communications of Defendant-Intervenors are differently situated than those of other persons and groups because "here these are the official proponents" and arguing that "these are the official proponents of proposition 8, they took an official status, they drafted proposition 8. They then subjected themselves to disclosure laws in California. They subjected themselves to disclosure their identity, their disclosures in their responsibilities that they took. So they're in a very different position then the organizations you mentioned and Mrs. McIntyre, in the *McIntyre* case.").
[5] Third, if Plaintiffs are correct that they are entitled to production under other requests of what they were barred from obtaining under Request No. 8, then it would follow that Plaintiffs are entitled under Request No. 3, for example, to Protectmarriage.com's internal drafts of television ads—for that request seeks "all versions" of such ads, including internal drafts that were never distributed outside a "control group." *See* Doc # 187-3 at 5. Plaintiffs have failed to explain how this request, and other similar requests, would not violate the Ninth Circuit's ruling. *See Perry*, slip op. at 30 (recognizing individual and associational right to "formulate strategy and messages, and to do so in private"); Doc # 252 at 4 (showing that one of the documents protected by the Ninth Circuit's opinion "discusses edits to a television advertisement").

are no less protected, and no more public (or made "to voters") than those that took place between and among the "control group."

14. The Ninth Circuit has already drawn the line between what is and is not within the First Amendment privilege it recognized, and its line differs markedly from that suggested by Plaintiffs. The Court held that Proponents could not "avoid disclosure of broadly disseminated material by stamping them 'private' and claiming an 'associational bond' with large swaths of the electorate." *Id*. at 36, n.12. Proponents have adhered to this line, and have produced all communications that went to the electorate at large or to discrete groups of voters, while withholding private communications to their known political associates, whom they communicated with not to implore them to vote, but in a joint (albeit unofficial) effort to campaign for or discuss Prop 8.

15. If the Court were to now withdraw the relevance/responsiveness limitations set forth in the October 1 and November 11 orders, many of the additional documents Plaintiffs seek would still not be discoverable because they fall within the heartland of the privilege recognized by the Ninth Circuit. Nevertheless, Proponents would be severely prejudiced by such a ruling because it would entail an exponential increase in the size of the privilege log. For example, if the limitations in the November 11 order were removed, Proponents would have to re-review and potentially log upwards of 10,000 additional documents. And if the limitations set out in the October 1 order were removed, Proponents would have to re-review and log upwards of an additional 30,000 documents. It has been our experience thus far in this case that, depending on the nature of the documents at issue, an attorney can review and log ten to twenty-five documents per hour. As we head into trial, the number of attorneys and legal assistants available for this task will diminish and the task may be all but impossible. Indeed, even if Proponents devoted three attorneys working full time to reviewing and logging 10,000 additional documents, it would not be possible to accomplish the task before the start of trial.

16. The prejudice to Proponents would be compounded to the extent the Court contemplates the continuation of litigation concerning these discovery disputes after the commencement of trial. While Plaintiffs appear to have an almost limitless reservoir of lawyers from two of the Nation's largest law firms, Proponents' resources are far more limited, and necessarily must be devoted to presenting Proponents' case at trial. Especially when one considers Plaintiffs' candid admission that these materials are not central to their case—indeed, Plaintiffs' counsel actually suggested that "there would be a way to ensure that any ruling that was favorable to us did not rise or fall on those documents" so as to avoid any appellate exposure that otherwise might arise, Hr'g of Dec. 16, 2009, Tr. (rough) at 44—Proponents should not be forced to divert their attention from the presentation of their case on the merits to further defense of the their First Amendment rights. If the discovery lines are to change at this late date, then the only alternative consistent with fair proceedings is postponement of trial until these discovery matters are settled.

17. Moreover, it is not only Plaintiffs who have relied on the relevance and First Amendment rulings to date. As has been made known to this Court and the Ninth Circuit, both Plaintiffs and Proponents have subpoenaed numerous third-party groups for the same types of documents Plaintiffs have sought from Proponents. If the lines for relevance and production are to change again, all of those groups will have to re-review and produce or log their potentially massive inventory of internal documents. And if the Court does deem these communications relevant, Proponents will be severely prejudiced in presenting their case absent the ability to collect and review these documents prior to trial.[6]

---

[6] At the December 16 hearing, Plaintiffs raised the issue of disclosure of the identity of the Doe member of the Protectmarriage.com ad hoc executive committee. As Proponents' counsel explained to the Court, the Doe member is represented by separate counsel and is asserting his privilege claim independently through that counsel. We have now been informed by Doe's counsel that he responded to Plaintiffs' third party subpoena on November 9, 2009, with an offer to negotiate the terms of document production and a deposition. Doe's counsel further informs us that the two parties are now negotiating the issue of disclosure of Doe's identity.

13

DEFENDANT-INTERVENORS' NOTICE OF FILING OF PRIVILEGE LOG
CASE NO. 09-CV-2292 VRW

| | |
|---|---|
| Dated: December 21, 2009 | Respectfully submitted, |
| | By:  /s/Charles J. Cooper |
| | Charles J. Cooper |
| | COOPER AND KIRK, PLLC |
| | ATTORNEYS FOR DEFENDANTS-INTERVENORS |

---

Until such time as those negotiations are complete or Doe's privilege claim is litigated, we are submitting the attached privilege log with Doe's name identified as "Doe Executive Committee Member."

14