# Exhibit 5

# Cooper & Kirk

Lawyers
A Professional Limited Liability Company
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036

Jesse Panuccio
jpanuccio@cooperkirk.com

(202) 220-9600
Fax (202) 220-9601

December 10, 2009

*VIA ELECTRONIC MAIL*

Ethan D. Dettmer
555 Mission Street
Suite 3000
San Francisco, CA 94105-2933

Re: *Perry v. Schwarzenegger, et al.*, N.D. Cal. Case No. C-09-2292-VRW

Dear Ethan:

I write in response to your letter of December 8, 2009.

*First*, with regard to the "What If We Lose" document, my letter of December 7, 2009, adequately explains the reasons the document was not previously produced. We disagree with your characterization of the document as "self-evidently … not in the nature of correspondence between friends, but rather was a campaign letter to voters as voters." Dettmer Ltr. of Dec. 8, 2009 at 2. The "What If We Lose" document is self-evidently—and as testified to by Dr. Tam—a communication to his known political and religious associates about a matter of political and moral conviction to him. As it exists in his files, it is not an exhortation to voters qua voters.

You also state that it was appropriate for Mr. Boutrous to represent to the Ninth Circuit Court of Appeals that the "What If We Lose" document was "sent to thousands of people" or "transmitted to hundreds of thousands of people." As explained in my December 7 letter, Dr. Tam did not distribute this letter to hundreds of thousands, or even thousands, of people, so Mr. Boutrous's contrary representations to the Court of Appeals in that regard are inaccurate and most unfortunate. Had Plaintiffs approached Proponents with their concerns in advance, these erroneous representations could have been avoided.

Further, you state that Proponents' claim of privilege is "constantly-evolving." Dettmer Ltr. of Dec. 8, 2009 at 1. That is not so; the scope of Proponents' claim has not shifted. To be sure, as in the case of the "What If We Lose," document, we have withdrawn the claim of privilege when we have learned that a document has been publicly disclosed. But that hardly represents a change in the nature of our privilege claim. What has been evolving, however, are Plaintiffs' claims with regard to the scope of requested—and permissible—discovery in this case. For example, as has been documented elsewhere, your position regarding the scope of internal documents sought has changed often during the discovery period. Moreover, your letter of December 8 represents a sharp departure from Mr. Boutrous's representations to the Ninth Circuit that that the November 11 order "laid down the

# Cooper & Kirk
Lawyers

Ethan D. Dettmer, Esq.
December 10, 2009
Page 2 of 5

standards that would govern the balancing going forward as to documents," and that the November 11 order "does narrow and lay down standards for production that we think are consistent with the First Amendment."

*Second*, we disagree with your position that you may obtain through discovery requests other than revised Request No. 8 that which the District Court has ruled irrelevant to any issue in this case. *See* Doc 214 at 15-18 (describing, with respect to nonpublic documents, the scope of "*all relevant discovery*"); Doc. 252 at 3 (describing what discovery might "lead to this relevant information"). By your reading of Request No. 1, any document sent by any Proponent to any California resident (i.e., a voter) is responsive and should be produced. Just as with Plaintiffs' original Request No. 8, this would sweep in virtually every document in Proponents' possession, would violate Proponents' First Amendment privilege, would exceed the bounds of relevant discovery, and would represent an unacceptable discovery burden. *See* Doc. 214 at 15 ("[T]he request itself is broader than necessary to obtain *all relevant discovery*. Proponents point out that even if some of the discovery sought by plaintiffs might be relevant, 'virtually every communication made by anyone included in or associated with Protect Marriage' cannot be relevant. Proponents' undue burden objection is thus well-taken.") (emphasis added). In any event, to the extent you are relying on the October 1 and November 11 orders' denial of Proponents' claim of First Amendment privilege, the Ninth Circuit has now stayed those orders, and we object to your attempts to circumvent and relitigate in the District Court the appellate process that is still pending. The Ninth Circuit has promised to issue its guidance on the privilege issue "promptly," and while their schedule may not fit within the "demand[s]" of your letter, Proponents believe the proper course is to await that Court's guidance.

*Third*, you state that your "partner Matt McGill informs [you] that … Ms. Moss agreed during a telephone call on November 20 that Chief Judge Walker's November 11 Order addressed responsiveness *only* in connection with request number eight." Dettmer Ltr. of Dec. 8, 2009 at 2. I have consulted with Ms. Moss and our understanding of the call is as follows. The call was initiated to discuss negotiations over the attorneys-eyes-only protective order that has been the subject of dispute among the parties. Mr. McGill expressed the view that just because one of the documents Proponents submitted for *in camera* review is not responsive to Request No. 8, that does not mean the document is not responsive to another request. He asked if Ms. Moss agreed with his interpretation of the Court's orders. Ms. Moss explicitly responded that it depended on what Mr. McGill meant because Proponents did not interpret Plaintiffs' requests to allow Plaintiffs to obtain under a different request that which the Court found irrelevant or overly burdensome under Request No. 8. Ms. Moss clearly stated Proponents' position that the other Requests had to be read and interpreted consistent with the Court's limiting order. When Ms. Moss asked Mr. McGill for an example of what he was referring to, he cited Request No. 11, which asks for "[d]ocuments sufficient to show the title of everyone employed by Protect Marriage, at any time, including but not limited to organizational charts." Doc # 187-3. Ms. Moss informed Mr. McGill that, yes, in theory if there are documents that are responsive to Request No. 11 separate and apart from Request No. 8, we would not view the Court's orders as preventing their production if they were not otherwise subject to a claim of privilege. Request No. 1 was not discussed. Plaintiffs' current view that all communications with "voters" (voters being defined so

# Cooper & Kirk
   Lawyers

Ethan D. Dettmer, Esq.
December 10, 2009
Page 3 of 5

broadly as to be essentially no different from Plaintiffs' request for all communications with "third-parties") was not raised by Mr. McGill or agreed to by Ms. Moss.

   *Fourth*, you identify in your letter several additional documents that you believe are responsive, nonprivileged, and not subject to any valid objection—namely, Exhibits 4, 10, 12, 14 and 31 introduced at Dr. Tam's deposition. I address each exhibit in turn:

- Exhibit 4 is a document that was posted on a church website on May 27, 2009, well after the Proposition 8 election. It mentions Prop 8 in passing, and then only with regard to subsequent litigation over the enacted constitutional amendment. It is, both in substance and by the logic of its date of production, not a communication to voters or Protect Marriage donors in the Prop 8 election. The document is not responsive to any of Plaintiffs' requests.

- Exhibit 10 is a newsletter, dated Jan-Feb 2006. It does not discuss Prop 8, for which the signature-gathering phase did not even begin until November 2007. The proposed constitutional amendment mentioned in the newsletter was a failed attempt to place a measure on the June 2006 ballot, well prior to the November 2008 election over Prop 8. The document is not responsive to any of Plaintiffs' requests.

- Exhibit 12 was described by Dr. Tam at his deposition as "written to churches and other Christian leaders informing them that ProtectMarriage.com was trying to put in a Constitution amendment petition drive, signature petition drive and asking the Chinese churches it to help in collecting signatures for putting a ballot in the 2006 election. So [it] has nothing to do with Prop 8." Tam Dep. Tr. 84:6-11. Accordingly, the document is not responsive to any of Plaintiffs' requests.

- Exhibit 14 is Dr. Tam's biography, available on his personal website. It provides his general biographical background and contains one mention of the phrase "Prop 8": "Working with ProtectMarriage.com, he coinitiated the California Marriage Amendment, Proposition 8." In other words, the biography states the historical fact that Dr. Tam was an official Proponent of Prop 8, the very fact announced on the face of every pleading in this case. It could be argued that this single reference to Prop 8 brings the document within the outermost technical bounds of Plaintiffs' Request No. 6. We regret the oversight.

- Exhibit 31 is a letter that, according to your own office's translation, is addressed to "Pastors and Spiritual Followers" and discusses "a motion to amend the Constitution through a June 2006 proposal to California voters." Once again, Prop 8 was on the ballot in November of 2008, and the signature-gathering phase with respect to Prop 8 did not begin until November 2007. The document is not responsive to any of Plaintiffs' requests.

Accordingly, save for Dr. Tam's website biography's passing reference to his status as an official Proponent, it appears that every other document you have specifically identified as the source of your

# Cooper & Kirk
Lawyers

Ethan D. Dettmer, Esq.
December 10, 2009
Page 4 of 5

concern over production is not responsive to any document request Plaintiffs have propounded.  If you disagree, please explain your theory for how those requests would encompass the documents identified in your letter.

Finally with regard to document production, as I stated in my letter of December 7, in any large scale production—especially requiring review of tens of thousands of documents and occurring on an expedited basis—it is possible, indeed inevitable, that occasionally responsive documents will be overlooked despite diligent, good faith efforts at identification and production.  Whenever we have become aware of such a circumstance, we have supplemented our production pursuant to the Federal Rules, and we will continue to do so should that prove necessary.

*Fifth*, with respect to deposition testimony, you state that "[u]nsurprisingly, [my] quotation to authority is highly selective."  Dettmer Ltr. of Dec. 8, 2009 at 2.  It is not clear what is meant by this statement, as you do not actually refute or otherwise provide additional context for the authority cited.  In any event, your position appears to be that so long as a deponent has discussed something in public, all of his or her thoughts about that matter are open to discovery—including that which the deponent chose to leave unsaid, as well as the deponent's subjective purposes and understanding of that which was said.  We disagree with that argument and have contested it every time you have raised it, including before the Ninth Circuit.

You specifically cite "questions about the process of drafting the language of Prop 8" as ones you would like to present at depositions.  Dettmer Ltr. of Dec. 8, 2009 at 3.  I refer you to the District Court's order of November 11.  *See* Doc # 252 at 8 (holding that "an internal memorandum discussing proposed language for Prop 8 in a way that is at most marginally pertinent to advertising strategy" is "*not relevant*").  Such internal and nonpublic discussions are also subject to Proponents' claim of privilege.[1]

*Sixth*, you "demand" that Proponents' "provide [Plaintiffs] with a meaningful privilege log with respect to any and all documents withheld on the basis of privilege."  Dettmer Ltr. of Dec. 8, 2009 at 3.  Again, as you are aware, both Proponents' privilege and relevance objections are pending before the Ninth Circuit Court of Appeals, as are Plaintiffs' contentions regarding the scope and necessity of a privilege log in this case.  That Court has promised to issue further guidance as to these matters "promptly," but until such time it has stayed the District Court's orders relating to them.  I reiterate Proponents' objection to Plaintiffs' attempt to relitigate these issues in the District Court while matters subject to the Ninth Circuit's stay are still pending in that Court.  In any event, as we have previously explained, compilation of a privilege log in this context would be enormously burdensome and would not assist "the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged," *Burlington North & Santa Fe Ry. Co. v. United States Dist. Court for the District of Montana*, 408 F.3d 1142, 1150 (9th Cir. 2005).  *See also, e.g.*, Doc # 238 at 2.  Such an

---

[1] The portion of Mr. Gutierrez's deposition that you cite (Tr. 33:20-35:15) does not even appear to contain a question "about the process of drafting the language of Prop 8."  I also note that your attachment only provides the transcript up to 34:22.

Cooper & Kirk
Lawyers

Ethan D. Dettmer, Esq.
December 10, 2009
Page 5 of 5

effort would only serve to unnecessarily delay proceedings without significantly assisting the Court or counsel in their respective assessments of Proponents' privilege claims.

    Thank you for continuing to explain your concerns regarding discovery. We are happy to address any legitimate, additional concerns Plaintiffs may have.

Sincerely,

Jesse Panuccio

Cc:    Counsel of record