GIBSON, DUNN & CRUTCHER LLP
Theodore B. Olson, SBN 38137
*tolson@gibsondunn.com*
Matthew D. McGill, *pro hac vice*
1050 Connecticut Avenue, N.W., Washington, D.C. 20036
Telephone: (202) 955-8668, Facsimile: (202) 467-0539

Theodore J. Boutrous, Jr., SBN 132009
*tboutrous@gibsondunn.com*
Christopher D. Dusseault, SBN 177557
Ethan D. Dettmer, SBN 196046
333 S. Grand Avenue, Los Angeles, California 90071
Telephone: (213) 229-7804, Facsimile: (213) 229-7520

BOIES, SCHILLER & FLEXNER LLP
David Boies, *pro hac vice*
*dboies@bsfllp.com*
333 Main Street, Armonk, New York 10504
Telephone: (914) 749-8200, Facsimile: (914) 749-8300

Jeremy M. Goldman, SBN 218888
*jgoldman@bsfllp.com*
1999 Harrison Street, Suite 900, Oakland, California 94612
Telephone: (510) 874-1000, Facsimile: (510) 874-1460

Attorneys for Plaintiffs
KRISTIN M. PERRY, SANDRA B. STIER,
PAUL T. KATAMI, and JEFFREY J. ZARRILLO

Dennis J. Herrera, SBN 139669
Therese M. Stewart, SBN 104930
Danny Chou, SBN 180240

One Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone: (415) 554-4708, Facsimile (415) 554-4699

Attorneys for Plaintiff-Intervenor
CITY AND COUNTY OF SAN FRANCISCO

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN M. PERRY, *et al.*,<br><br>                         Plaintiffs,<br><br>and<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>                         Plaintiff-Intervenor,<br><br>        v.<br><br>ARNOLD SCHWARZENEGGER, *et al.*,<br><br>                         Defendants,<br><br>and<br><br>PROPOSITION 8 OFFICIAL PROPONENTS DENNIS HOLLINGSWORTH, *et al.*,<br><br>                         Defendant-Intervenors. | CASE NO. 09-CV-2292 VRW<br><br>**PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S RESPONSE TO DEFENDANT-INTERVENORS' NOTICE OF FILING OF PRIVILEGE LOG**<br><br>Trial Date:    January 11, 2010 |

## I.    Introduction.

Proponents launched a broad, $40 million campaign to pass Prop. 8, but it is becoming increasingly clear that they are now trying after the fact to selectively disavow portions of the campaign that embarrass them but that they paid for, sponsored, or endorsed.  The documents Plaintiffs are seeking go directly to this important point—the messages and themes conveyed by the Yes on 8 campaign to California voters—and are thus highly relevant and should be produced.

Proponents were ordered to produce a privilege log that would afford Plaintiffs and the Court the opportunity to determine whether Proponents' privilege claims are appropriate.  Dec. 16, 2009 Tr. 80:11-85:2.  On December 21, 2009, Proponents filed a privilege log and "Notice of Filing of Privilege Log" that, together, demonstrate that Proponents have withheld large numbers of documents they should have produced long ago.  Doc #314, 314-1.  Proponents' fundamental argument is that certain categories of documents sent by the Proponents to voters are irrelevant to this case, and not responsive to Plaintiffs' discovery requests, because they were not sent to the voters "as voters."  *See* Doc #314 at 8.  This is plainly wrong, and based on a tortured, unreasonable, and untenable reading of this Court's orders and Plaintiffs' discovery requests.  Any claim that the First Amendment protects these documents from production is contrary to the Ninth Circuits' recent order, as is Proponents' "contention that producing any privilege log would impose an unconstitutional burden."  Docs ##214, 252; *Perry v. Schwarzenegger,* No. 09-17241, slip op. at 7 n.1 (9th Cir. Dec. 11, 2009).

Proponents also use their lengthy "Notice of Filing" to justify their pervasive and unfounded instructions not to answer simple and basic deposition questions, including questions about communications to voters and whether they were in fact communications to voters "as voters." Proponents' justifications of these instructions are as baseless as their explanations for the inadequacy of their privilege log.

## II.    Proponents' Production And Privilege Log Are Profoundly Deficient.

*Four months* after they were served Plaintiffs' discovery requests, Proponents have still failed to preserve their claim of privilege with an adequate privilege log.  Now, in their continued effort to evade this threshold requirement, they claim, remarkably, that external communications with discrete

Gibson, Dunn &
Crutcher LLP

1

09-CV-2292 VRW   PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S RESPONSE TO
DEFENDANT-INTERVENORS' NOTICE OF FILING OF PRIVILEGE LOG

groups of voters are privileged, non-responsive, and not relevant to the matters at issue in this case—a position directly at odds with their prior representations to this Court.  Plaintiffs respectfully request that the Court order Proponents to produce documents responsive to Plaintiffs' discovery requests that are outside the Ninth Circuit's articulation of the First Amendment qualified privilege or attorney-client/work product protection.  To the extent Proponents maintain that specific documents are privileged, Plaintiffs respectfully request that the Court order Proponents to produce a revised privilege log identifying those documents.

### A.    Plaintiffs Seek Relevant Communications With Voters, Donors, And Potential Donors And Voters.

Proponents' current position is based on the claim that Plaintiffs "are now seeking large categories of documents that this Court held were not discoverable on relevance and/or responsiveness grounds in the October 1 and November 11 orders."  Doc #314 at 4.  This is baseless.  Indeed, despite Proponents' lengthy and tortured argument to the contrary, this Court denied Proponents' motion for protective order, except as to overbreadth objection concerning Request No. 8.  The Court's October 1 order noted that "Proponents object to *plaintiffs' request no 8*,"  Doc #214 at 2 (emphasis added), and held that Plaintiffs "request no 8 is overly broad."  *Id*. at 17 .  While, as the Court noted, Proponents also made a general objection to "all other '*similarly sweeping*' requests," *id*. (emphasis added), the Court granted no relief on this objection.

Instead, the Court granted the motion only as to Request No. 8, and in the course of doing so sought to "provide guidance that will enable [the parties] to complete discovery and pretrial preparation expeditiously."  *Id.*  Among other things, the Court made clear that "[c]ommunications distributed to voters . . . appear to be fair subjects for discovery," *id*. at 16, and "discovery not sufficiently related to what the voters could have considered is not relevant and will not be permitted."  *Id*.  The Court squarely rejected the notion that "discovery should be limited strictly to communications with the public at large."  *Id*.  And the Court noted that "proponents now agree to produce communications targeted to discrete voter groups."  *Id.* at 2.

In light of these standards, the Court directed the Plaintiffs  "to revise *request no 8* to target those communications most likely to be relevant to the factual issues identified by plaintiffs."  *Id*.

Gibson, Dunn &
Crutcher LLP

(emphasis added).  Similarly, the November 11 order unequivocally set forth the limit of the Court's inquiry: "The court has received Defendant-intervenors' ('proponents') in camera submission containing a sample of documents potentially responsive to plaintiffs' *revised eighth document request*. . . . [M]any of the documents submitted by proponents are simply not responsive to plaintiffs' discovery *request*."  Doc #252 at 2 (emphases added).

Therefore, the Court left Plaintiffs' remaining discovery requests undisturbed.[1]  Indeed, the scope of Plaintiffs' Requests Nos. 1-7 and 9-15 are consistent with the discovery the Court determined to be relevant with respect to Request No. 8—"the mix of information before and available to the voters."  *See* Doc #214 at 14.  For example, Request No. 1 seeks documents "that were *distributed* to voters."  Request No. 6 seeks "communications prepared for *public distribution*."  Plainly, these requests are likely to lead to the discovery of admissible evidence relating to "the messages or themes conveyed to California voters."  *See* Doc #252 at 3.  The documents Plaintiffs seek can come as no surprise to Proponents, given that they include the very documents Proponents represented to the Court they would produce without objection, Doc #214 at 14 ("Proponents have agreed to disclose communications they targeted to voters, including communications to discrete groups of voters.").  And indeed Proponents *have* produced documents the campaign distributed to voters.  *E.g.*, Doc #314 at 5.  Given that revised Request No. 8 did *not* request public communications between the Proponents and ProtectMarriage.com on the one hand, and voters and donors or potential voters and donors, on the other, *see id.* at 7 & n.1, it is clear that, contrary to their assertions in their "Notice of Filing," Proponents themselves correctly understood that the Court did not limit discovery to only those documents responsive to Request No. 8.

## B.  Proponents' "Voters As Voters" Relevance And Responsiveness Distinction Is Meaningless.

Proponents' claim that communications to supporters are non-responsive and irrelevant to the case as long as they are not to "voters as voters," is not only inconsistent with this Court's orders, but

---

[1]  Proponents rightly concede that the Ninth Circuit did not alter this Court's relevance determinations.  Doc #314 at 10 (citing *Perry v. Schwarzenegger*, No. 09-17241, slip op. at 8-9 (9th Cir. Dec. 11, 2009) ("We assume without deciding that the district court has decided these [relevance] questions correctly.")).

also defies common sense.  Proponent William Hak-Shing Tam's "What if We Lose" document is a perfect example of the absurdity of Proponents' position.  *See* Doc #289-1.  Proponents initially claimed that this document would have been privileged and therefore not subject to production, except for the fact that it had been posted to the internet without Dr. Tam's permission.[2]  *See*, *e.g.*, Doc #297-1 at 2.

But Proponents' claim that the "What if We Lose" document and other documents like it are not relevant to the case or responsive to Plaintiffs' discovery is truly astonishing.[3]  This document was admittedly sent to California voters and was plainly, on its face, intended to encourage people to campaign for and vote for Prop. 8, and to donate to the "Yes on 8" campaign:

> we better team up at the current battle to defeat same-sex marriage. Collectively, we have a chance to win.  Right now, each church sacrifice a little.  For 48 days, delay your projects, put your resources ($ and manpower) into Prop 8. We'd have great power if we pool our resources together. Let's win this battle. After victory, your congregation would be energized and go back to the original projects with joy and cheer. They may want to give more and build a bigger building to thank God.  Our God would be pleased and bless us more.

Doc #289-1.  Not only does Dr. Tam's letter to (unnamed) "Dear Friends" exhort them to donate to and work for the Prop. 8 campaign, it also offers arguments about why Prop. 8 is important, and it is signed by him in his official capacity as the Executive Director of the Traditional Family Coalition. *Id*.  Proponents' claim that this type of document is not relevant to the matters at issue in this case, such as the voters' motivations and purpose in passing Prop. 8, simply cannot be credited, and the fact that Proponents even advance it demonstrates how desperately they want to avoid producing

---

[2]  While the factual basis for Proponents' claim that this document was sent to only "a limited group of family, personal friends, and political and religious associates," *id.*, is implausible on the face of the document alone, Proponents have not allowed this assertion or similar assertions about similar documents to be tested through deposition questioning. *See*, Section III, *infra*.  In any event, as discussed in the next section, the Ninth Circuit has rejected Proponents' claim of privilege for documents not "private" to the campaign. *Perry v. Schwarzenegger*, slip op. at 36 n.12.

[3]  Any claim that such documents are not responsive simply cannot be credited. *E.g.*, Req. No. 1 ("All documents constituting literature, pamphlets, flyers, direct mail, advertisements, emails, text messages, press releases, or other materials that were distributed to voters, donors, potential donors, or members of the media regarding Proposition 8.").

Gibson, Dunn &
Crutcher LLP

1  damaging documents and materials disseminated to particular groups of voters and supporters as part

2  of their broad campaign to pass this unconstitutional law.

3  **C.      Publicly-Disseminated Documents Cannot Be Privileged.**

4  As is now readily apparent, in addition to claiming that documents such as the "What if We

5  Lose" document are irrelevant and non-responsive, Proponents have been deliberately withholding

6  them and refusing to include them on their privilege log by reclassifying communications targeted to

7  groups of voters as "private," or as "efforts to campaign for" Prop. 8.  *See*, *e.g.*, Doc #314 at 15

8  ("Proponents have . . . produced all communications that went to the electorate at large or to discrete

9  groups of voters, while withholding private communications to their known political associates,

10  whom they communicated with not to implore them to vote, but in a joint (albeit unofficial) effort to

11  campaign for or discuss Prop 8."); Dec. 16, 2009 Tr. at 81:3-85:3.

12  But the First Amendment qualified privilege does not protect Proponents' external

13  communications that could reasonably have been expected to have influenced citizens to vote for or

14  otherwise support passage of Prop. 8.  While the Ninth Circuit's decision holds that "private, internal

15  campaign communications concerning the formulation of campaign strategy and messages" are

16  protected from disclosure under the First Amendment, its holding is expressly "limited" to such

17  "***private, internal***" communications.  Slip Op. at 36 n.12 (emphasis added).  To allow Proponents to

18  characterize any document they please as a "private, internal campaign communication" by declaring

19  some undefined "associational bond" with any number of groups or individuals who received it

20  would erase the limits the Ninth Circuit placed on the invocation of the First Amendment privilege.

21  Indeed, as the Ninth Circuit ruled, "Proponents cannot avoid disclosure of broadly disseminated

22  materials by stamping them 'private' and claiming an 'associational bond' with large swaths of the

23  electorate." *Id*. at 36 n.12 (citing *In re Motor Fuel Temperature Sales Practices Litig.,* 258 F.R.D.

24  407, 415 (D. Kan. 2009) ("The court wishes to make clear that defendants have met their prima facie

25  burden only with respect to the associations' internal evaluations of lobbying and legislation,

26  strategic planning related to advocacy of their members' positions, and actual lobbying on behalf of

27  members.  Any other communications to, from, or within trade associations are not deemed protected

28  under the First Amendment associational privilege.")).

Gibson, Dunn &
Crutcher LLP

5

09-CV-2292 VRW   PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S RESPONSE TO
DEFENDANT-INTERVENORS' NOTICE OF FILING OF PRIVILEGE LOG

Flouting this holding, Proponents are apparently claiming privilege over highly relevant documents, presumably including documents similar to Dr. Tam's "What if We Lose" letter, Doc #289-1, by claiming these documents were sent "to a limited group of family, personal friends, and political and religious associates (not to [] hundreds of thousands of people[.])." *See* Doc #297-1 at 3. The Ninth Circuit rejected this argument when it limited the privilege to "private, internal campaign communications" and cited *In re Motor Fuel Temperature Sales Practices Litig.* for the proposition that "***any*** other communications to, from, or within [the campaign] are not deemed protected under the First Amendment associational privilege," regardless if they were sent to thousands of people or a much smaller number of people. Slip Op. at 36 n.12 (emphasis added).

Proponents' claim that the "First Amendment privilege does extend to communications between people who have banded together, whether officially or unofficially, to advance a political cause," Dec. 16, 2009 Tr. at 81:15-18, proves the fallacy of their position. If this claim is taken at face value, then any number of plainly non-privileged communications must be considered privileged: a fundraising or news email from the executive director of the ACLU, the NRA, or the Democratic Party to the entire membership of his or her organization would be considered privileged and non-discoverable, even though it was sent to thousands, tens of thousands, or even millions of people. This simply cannot be the case, despite the fact that those people have "banded together, whether officially or unofficially, to advance a political cause."

Moreover, even if Proponents had some good faith basis for claiming privilege over these supposedly "private" communications, there is no excuse for their failure to include the documents on their privilege log so that Plaintiffs and this Court can evaluate, and, if appropriate, test these sweeping privilege claims. As Proponents' counsel conceded at the pre-trial conference, "[w]e have to figure out what is public and what is private. There is no doubt that we need to do that." Dec. 16, 2009 Tr. at 83-84. But instead of including all potentially responsive documents on their privilege log so that the parties and the Court can evaluate their claim of "private" communications, Proponents have unilaterally employed their own invented definition after the December 16th hearing to relieve themselves of their obligation to list untold numbers of documents on the privilege log in

Gibson, Dunn &
Crutcher LLP

the first place.  This flatly violates the prior orders of this Court, the Ninth Circuit's ruling, and Rule 26.

**D.      Plaintiffs Seek Relief From This Court To Resolve This Dispute.**

Plaintiffs respectfully request that this Court issue an order requiring Proponents to comply with their discovery obligations, including producing documents responsive to Request No. 1 ("All documents constituting literature, pamphlets, flyers, direct mail, advertisements, emails, text messages, press releases, or other materials that were distributed to voters, donors, potential donors, or members of the media regarding Proposition 8.") and Request No. 6 ("All documents constituting communications prepared for public distribution and related to Proposition 8, including without limitation speeches, scripts, talking points, articles, notes, and automated telemarketing phone calls"), and to produce a privilege log for any purported privileged documents forthwith.

**E.      Plaintiffs, And Not Proponents, Have Been Prejudiced By This Gamesmanship.**

In light of their tortured arguments, Proponents' claim that *they* "would be severely and unfairly prejudiced were the Court to reverse course at this late date . . . and require that documents previously ruled not discoverable on non-privilege grounds be added to the privilege log" is outrageous.  Proponents' obstinate refusal to provide a meaningful privilege log in a timely fashion has prejudiced Plaintiffs and their ability to proceed with discovery.  *See* Doc #214 at 9.  Had Proponents provided a complete log in a timely fashion, instead of waiting until three weeks before trial to provide an incomplete privilege log, Plaintiffs could have contested their unfounded and improper relevance and other objections much earlier in this process.  *Perry v. Schwarzenegger*, No. 09-17241, slip op. at 7 n.1 (9th Cir. Dec. 11, 2009) ("The district court also observed that Proponents had failed to produce a privilege log required by Federal Rule of Civil Procedure 26(b)(5)(A)(ii).  We agree that some form of a privilege log is required and reject Proponents' contention that producing any privilege log would impose an unconstitutional burden.").

**III.   Proponents' Refusal To Answer Basic Deposition Questions Is Improper.**

Proponents' many objections and instructions not to answer questions at the fact depositions in this case have impeded fact discovery and are without merit.  For example, at the deposition of Dr. Tam, one of the Proponents of Prop. 8 and an intervenor in this case, Dr. Tam was asked what his

Gibson, Dunn &
Crutcher LLP

7

09-CV-2292 VRW   PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S RESPONSE TO
DEFENDANT-INTERVENORS' NOTICE OF FILING OF PRIVILEGE LOG

goal was in writing the "What if We Lose" letter. Proponents' counsel objected based on relevance and First Amendment protection. Tam Dep. (Dec. 1, 2009) at 38:13-52:3. As another example, ProtectMarriage.com's campaign co-managers, Frank Schubert and Jeff Flint, were directed not to answer questions about an article they wrote for Politics Magazine about how their organization won the Prop. 8 campaign – including foundational questions such as whether they wrote the article to publicize their firm and potentially attract more business. Schubert Dep. (Dec. 17, 2009) at 36:2-41:4; Flint Dep. (Dec. 18, 2009) at 72:16-74:24. As yet another example, at the deposition of Dennis Hollingsworth, another Proponent and intervenor, Senator Hollingsworth was asked what he understood the language of the official ballot argument to mean. Again, Proponents' counsel objected, advising that an answer "calls for the personal understanding and sentiment and opinion of the witness. The language speaks for itself and I direct the client not to answer." Hollingsworth Dep. (Dec. 10, 2009) at 49:16-25.

Plaintiffs, however, are not seeking "whether proponents harbor private sentiments that may have prompted their efforts." Doc #214 at 16. Instead, the Plaintiffs have asked questions at depositions regarding the Proponents' *public statements* about Proposition 8. These are, by definition, *not* "unexpressed motivations or beliefs." There is clearly an important difference between discovery into unexpressed, subjective beliefs of individuals simply because they supported a ballot measure such as Prop. 8, on the one hand, and discovery about documents and communications that those same people voluntarily chose to make to voters and potential voters. Once a Proponent chose to communicate with voters and potential voters about Prop. 8, it is certainly permissible for Plaintiffs to ask about that communication. It is similarly permissible for Plaintiffs to ask whether the author believes the statement or contention he or she is making in the communication, or alternatively whether he or she was deliberately making a false statement.[4]

---

[4] Furthermore, Proponents fail to demonstrate how explanations regarding their public documents or statements are protected by the First Amendment associational qualified privilege. Indeed, the Ninth Circuit limited the privilege to "private, internal campaign *communications*" and did not endorse Proponents' indefensibly expansive view. Slip Op. at 36 n.12 (emphasis added).

With respect to their objections and instructions not to answer based on relevance, Proponents cannot seriously contend that their mischaracterization of early discussions about the scope of discovery in this case establishes a sweeping prohibition of discovery going to basic questions about documents produced in this case and/or authored by Proponents.  In any event, even if Plaintiffs' questions sought *irrelevant* information, Proponents' instruction not to answer is wholly inappropriate.  Fed. R. Civ. P. 30(c)(2) ("[T]he testimony is taken subject to any objection.").  Yet, Proponents have taken the unsupportable position "that Proponents and their agents [are] not required to testify about communications and topics that [are] not discoverable through requests for production" based on a relevancy objection alone.  Doc #314 at 9.

## IV.    Conclusion.

In light of the foregoing, Plaintiffs respectfully request an order 1) directing Proponents to immediately comply with their discovery obligations as set forth in section II. D., above; 2) directing Proponents to produce a supplemental privilege log sufficiently describing *all* documents withheld from production and the basis for the withholding; and 3) the Court's guidance on the proper scope of instructions not to answer questions in connection with any remaining depositions and with trial testimony in this matter.

Respectfully submitted,

DATED:  December 28, 2009

GIBSON, DUNN & CRUTCHER LLP
Theodore B. Olson
Theodore J. Boutrous, Jr.
Christopher D. Dusseault
Ethan D. Dettmer
Matthew D. McGill
Amir C. Tayrani
Sarah E. Piepmeier
Theane Evangelis Kapur
Enrique A. Monagas

By:_____/s/_____
                    Theodore B. Olson

///

///

///

Gibson, Dunn &
Crutcher LLP

9

09-CV-2292 VRW   PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S RESPONSE TO
DEFENDANT-INTERVENORS' NOTICE OF FILING OF PRIVILEGE LOG

1   and

2   BOIES, SCHILLER & FLEXNER LLP
    David Boies
3   Jeremy M. Goldman
    Roseanne C. Baxter
4   Richard J. Bettan
    Beko O. Richardson
5   Theodore H. Uno

6   Attorneys for Plaintiffs
    KRISTIN M. PERRY, SANDRA B. STIER,
7   PAUL T. KATAMI, and JEFFREY J. ZARRILLO

8
    DENNIS J. HERRERA
9   City Attorney
    THERESE M. STEWART
10  Chief Deputy City Attorney
    DANNY CHOU
11  Chief of Complex and Special Litigation
    RONALD P. FLYNN
12  VINCE CHHABRIA
    ERIN BERNSTEIN
13  CHRISTINE VAN AKEN
    MOLLIE M. LEE
14  Deputy City Attorneys

15
    By:_____/s/_____
16                    Therese M. Stewart

17  Attorneys for Plaintiff-Intervenor
    CITY AND COUNTY OF SAN FRANCISCO
18

19

20

21

22

23

24

25

26

27

28

## **ATTESTATION PURSUANT TO GENERAL ORDER NO. 45**

Pursuant to General Order No. 45 of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.

By: _____/s/_____
Theodore B. Olson

Gibson, Dunn &
Crutcher LLP