1  BRIAN R. CHAVEZ-OCHOA
   CALIFORNIA STATE BAR # 190289
2  CHAVEZ-OCHOA LAW OFFICES, INC.
   4 JEAN STREET, SUITE 4
3  VALLEY SPRINGS, CALIFORNIA 95252
   (209) 772-3013, FAX (209) 772-3090
4
   VINCENT P. MCCARTHY, SR. COUNSEL
5  CONNECTICUT STATE BAR # 100195
   AMERICAN CENTER FOR LAW AND JUSTICE, NE
6  11 W. CHESTNUT HILL ROAD
   LITCHFIELD, CT 06759
7  (860) 567-9485, FAX (860) 567-9513
   *Motion for Admission Pro Hac Vice Pending*
8
   Attorneys for Non-Party Dr. Jim Garlow
9  and Non-Party Pastor Miles McPherson

10

11                 **UNITED STATES DISTRICT COURT**

12                 **NORTHERN DISTRICT OF CALIFORNIA**

13

14  KRISTEN M. PERRY, *et al.,*          ) Case No.: 3:09-cv-02292
                      Plaintiffs,        )
15                                       ) **MEMORANDUM OF LAW IN SUPPORT**
    and                                  ) **JAMES L. GARLOW'S MOTION TO**
16  CITY AND COUNTY OF SAN               ) **QUASH SUBPOENA AND FOR**
    FRANCISCO,                           ) **PROTECTIVE ORDER**
17                  Plaintiff-Intervenor, )
                                         ) Trial Date:    January 11, 2010
18                                       )
          vs.                            )
19                                       )
    ARNOLD SCHWARZENEGGER, *et al.,*     )
20                   Defendants          )
21                                       )
    and                                  )
22  PROPOSITION 8 OFFICIAL PROPONENTS )
    DENNISE HOLLINGSWORTH, *et al.,*     )
23                 Defendant –Intervenors. )
24

25        Movant, Jim Garlow, by counsel, respectfully submits this Memorandum of Law in

26  support of his Motion to Quash Subpoena pursuant to Fed. R. Civ. P. 45.

27  ///

28  ///

                                        1
            09-CV-2292 VRW   Memo of Law Supporting Garlow Motion to Quash

**INTRODUCTION**

Jim Garlow is the Pastor of Skyline Church in La Mesa, California. He holds no public office, he is not an official Proponent of Proposition 8, he was not involved in the drafting of Proposition 8, and he is not a party to this litigation. Pastor Garlow has, in his role as pastor of his church, and as a member of the general public, spoken in favor of Proposition 8's passage and has supported marriage as the union of one man and one woman.

Shortly after the Christmas holiday, and less than 15 days before the scheduled trial in this matter, he was served with a subpoena from Plaintiffs' counsel requiring him to appear and testify at the trial on January 11, 2010. The subpoena violates core First Amendment principles, is unduly burdensome, and does not further the purpose of providing necessary information relevant to the Plaintiffs' claims; it is not even reasonably calculated to lead to the discovery of relevant information. Simply put, Pastor Garlow's words, actions, thoughts, beliefs, and subjective motivations—and those of his church staff and members—have zero relevance to the question of whether the State of California has deprived the Plaintiffs of their right to due process and the equal protection of the law. The balance between Pastor Garlow's First Amendment interests and the Plaintiffs' alleged need for his testimony tips heavily in Pastor Garlow's favor. As such, the subpoena should be quashed.

I.      **Standard Applicable to the Motion.**

"A party who objects to a discovery request as an infringement of the party's First Amendment rights is in essence asserting a First Amendment privilege." *Perry v. Schwarzenegger*, 2010 U.S. App. LEXIS 170, *27 (9th Cir. 2010). "Courts have applied a presumption of privilege to information that goes to the core of a group's associational activities,

finding that disclosure of such information would very likely chill freedom of association." *In re: Motor Fuel Temperature Sales Practices Litigation*, 258 F.R.D. 407, 413 (D. Kans. 2009).

While many of the cases discussing the First Amendment privilege discussed in this memorandum deal with discovery subpoenas rather than trial appearance subpoenas, it is readily apparent that the threat to First Amendment rights that trial appearance subpoenas can pose will often be *greater* than the threat posed by discovery subpoenas. While a deposition or a document submitted to counsel during discovery will, in many cases, only be viewed by the parties, testimony given in open court has a much wider audience. This is especially true where, as here, a case has generated heightened public interest, and testimony will actually be televised. In addition, since parties can obtain more information through discovery than would be admissible at trial, cases holding that a person or organization could not be subjected to a discovery subpoena due to the First Amendment are certainly relevant to a First Amendment objection to a trial appearance subpoena.

"The First Amendment's protection 'extends not only to the organization itself, but also to its staff, members, contributors, and others who affiliate with it.'" *Wyoming v. U.S. Dep't of Agriculture*, 208 F.R.D. 449, 454 (D.D.C. 2002) (citation omitted). "[C]ourts have held that the threat to First Amendment rights may be more severe in discovery than in other areas because a party may try to gain advantage by probing into areas an individual or a group wants to keep confidential." *Id.* (citing *Britt v. Superior Court of San Diego County*, 574 P.2d 766 (Cal. 1978)).

As the Ninth Circuit recently explained in an interlocutory appeal in this case,

> [i]n this circuit, a claim of First Amendment privilege is subject to a two-part framework. The party asserting the privilege "must demonstrate . . . a 'prima facie showing of arguable first amendment infringement.'" "This prima facie showing requires appellants to demonstrate that enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or

1   'chilling' of, the members' associational rights." "If appellants can make the
2   necessary prima facie showing, the evidentiary burden will then shift to the
3   government . . . [to] demonstrate that the information sought through the
    [discovery] is rationally related to a compelling governmental interest . . . [and]
4   the 'least restrictive means' of obtaining the desired information." More
5   specifically, the second step of the analysis is meant to make discovery that
    impacts First Amendment associational rights available only after careful
6   consideration of the need for such discovery, but not necessarily to preclude it.
    The question is therefore whether the party seeking the discovery "has
7   demonstrated an interest in obtaining the disclosures it seeks . . . which is
    sufficient to justify the deterrent effect . . . on the free exercise . . . of [the]
8   constitutionally protected right of association."

9   *Perry*, 2010 U.S. App. LEXIS 170, at \*28-30 (citations omitted).

10      The court added:

11      To implement this standard, we "balance the burdens imposed on individuals and
12      associations against the significance of the . . . interest in disclosure," to
        determine whether the "interest in disclosure . . . outweighs the harm." This
13      balancing may take into account, for example, the importance of the litigation, the
        centrality of the information sought to the issues in the case, the existence of less
14      intrusive means of obtaining the information, and the substantiality of the First
15      Amendment interests at stake. Importantly, the party seeking the discovery must
        show that the information sought is *highly* relevant to the claims or defenses in the
16      litigation—a more demanding standard of relevance than that under Federal Rule
        of Civil Procedure 26(b)(1). The request must also be carefully tailored to avoid
17      unnecessary interference with protected activities, and the information must be
18      otherwise unavailable.

19  *Id.* at \*30-32 (citations omitted) (emphasis added); *see also In re: Motor Fuel*, 258 F.R.D. at 412,
20  n.11.

21  **II.     Pastor Garlow Has a Prima Facie Case that Requiring Him to Comply With the
22           Subpoena Would Violate His First Amendment Rights and Have a Chilling Effect
23           Upon His Future Expressive Activities.**

24      A pastor's advocacy regarding religious, moral, and public policy issues implicates a

25  plethora of core First Amendment protections, including the freedoms of speech, religion, and

26  expressive association. Requiring a pastor to testify in open court about his preaching, belief

27

28

        09-CV-2292 VRW   Memo of Law Supporting Garlow Motion to Quash

1
2
system, or thoughts would only be justified in rare, exceptional circumstances; such circumstances do not exist in this case.

3
4
### A.     Lenient Standard for Establishing a Prima Facie Case.

5
6
7
The Ninth Circuit recently explained that "[t]he existence of a prima facie case [of a First Amendment violation] turns not on the type of information sought, but on whether disclosure of the information will have a deterrent effect on the exercise of protected activities." *Perry*, 2010

8
9
10
11
12
13
14
U.S. App. LEXIS 170, at *33. Importantly, the standard for making a prima facie showing is not onerous but merely requires the objecting person to create a "reasonable inference . . . that disclosure *could* have a chilling effect on protected activities." *Id.* at *39 (emphasis added). The person objecting to a subpoena may make "'a 'prima facie showing of arguable first amendment infringement'' by demonstrating 'consequences which objectively suggest an impact on, or 'chilling' of, . . . associational rights.'" *Id.* at *37-38 (citation omitted).

15
16
17
18
19
20
21
22
23
24
"[A] concrete showing of infringement upon associational rights is not necessary for the privilege to apply." *In re: Motor Fuel*, 258 F.R.D. at 414, n.24 (citations omitted). The person need only "show that disclosure of the documents would *arguably* chill freedom of association" by, for example, dissuading members to join the organization "because of fear that exposure of their beliefs would subject them to economic reprisal or other public hostility." *Id.* at 412-13 (emphasis added) (citing *NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958); *Heartland Surgical Specialty Hospital, LLC v. Midwest Division, Inc.*, 2007 U.S. Dist. LEXIS 19475 (D. Kan. 2007)).

25
### B.     High Importance of the Rights Involved.

26
27
28
The standard for establishing a prima facie case of infringement upon First Amendment rights is not difficult to meet precisely because "the right of individuals to associate for the

09-CV-2292 VRW   Memo of Law Supporting Garlow Motion to Quash

advancement of political beliefs is fundamental." *San Francisco County Democratic Cent. Comm. v. Eu*, 826 F.2d 814, 827 (9th Cir. 1987), *aff'd sub nom Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214 (1989) (citation omitted). It is well established that "[the] freedom of political association . . . is of a high order," and "[c]ompelled disclosures concerning protected First Amendment political associations have a profound chilling effect on the exercise of political rights." *Perry*, 2010 U.S. App. LEXIS 170, at \*14 (citing *Gibson v. Florida Legislative Investigation Comm.*, 372 U.S. 539, 557 (1963)).

The First Amendment protects the "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion," *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984), and "[a]n individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were not also guaranteed." *Id.* at 622. "Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association. . . . [I]t is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters, and state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny." *NAACP*, 357 U.S. at 460. The First Amendment protects both popular and unpopular organizations. *See, e.g., Heartland Surgical*, 2007 U.S. Dist. LEXIS 19475, at \*17; *Britt*, 574 P.2d at 772.

"[T]he government must justify its actions not only when it imposes direct limitations on associational rights, but also when governmental action 'would have the practical effect 'of discouraging' the exercise of constitutionally protected political rights.' Such actions have a

1  chilling effect on, and therefore infringe, the exercise of fundamental rights. Accordingly, they

2  'must survive exacting scrutiny.'" *Perry*, 2010 U.S. App. LEXIS 170, at *26 (citations omitted).

3
4  The fact that a private party, rather than the government, is seeking the Movant's testimony in

5  this instance does not lessen the applicability of the First Amendment privilege. *Id.* at *27, n.5;

6  *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987); *Heartland Surgical*, 2007 U.S.

7  Dist. LEXIS 19475, at *13; *Britt*, 574 P.2d at 773-74.

8
9  Just last month, the Ninth Circuit held in an interlocutory appeal in this case that the

10  Proponents were entitled to withhold production of their internal campaign communications

11  regarding campaign strategy and advertising due to a First Amendment privilege. *Perry*, 2010

12  U.S. App. LEXIS 170, at *2-3. The court explained:

13  > The freedom to associate with others for the common advancement of political
14  > beliefs and ideas lies at the heart of the First Amendment. Where, as here,
      > discovery would have the practical effect of discouraging the exercise of First
15  > Amendment associational rights, the party seeking discovery must demonstrate a
      > need for the information sufficient to outweigh the impact on those rights.
16  > Plaintiffs have not on the existing record carried that burden in this case.

17  *Id.* at *3.

18  ### C.      Participation in Ballot Initiative Campaigns.

19
20  "There is no question that participation in campaigns is a protected activity," id. at *33,

21  and the disclosure of information that can have a deterrent effect on participation in such

22  campaigns implicates core First Amendment values. *See id.* at *26-27. As one court has

23  explained,

24  > [m]embership lists are not the only information afforded First Amendment
25  > protection. . . . "[I]t is crucial to remember that we are considering the essence of
      > First Amendment freedoms—the freedom to protest policies to which one is
26  > opposed, and the freedom to organize, raise money, and associate with other like-
      > minded persons so as to effectively convey the message of the protest."
27

28  *Wyoming*, 208 F.R.D. at 454 (citation omitted).

09-CV-2292 VRW   Memo of Law Supporting Garlow Motion to Quash

1  It is not necessary to demonstrate that the person subpoenaed or other members of the

2  organization have actually been subjected to harassment, violence, or reprisals in order to allege

3
4  a chilling effect sufficient to implicate the First Amendment. *Perry*, 2010 U.S. App. LEXIS 170,

5  at *39-40 (citing *AFL-CIO v. FEC*, 333 F.3d 168, 176 (D.C. Cir. 2003)). In the interlocutory

6  appeal in this case, the Ninth Circuit found convincing a statement from a member of

7  ProtectMarriage.com's ad hoc executive committee that disclosure of his communications and

8  personal viewpoints would deter his involvement in ballot initiative campaigns in the future. *Id.*

9  at *38-39.[1]

10

11  Particularly relevant to the situation at hand is the Ninth Circuit's observation that the

12  First Amendment privilege would be implicated by subpoenas seeking information from

13  religious organizations who support ballot measures:

14  
15  The district court applied an unduly narrow conception of First Amendment
   privilege. Under that interpretation, associations that support or oppose initiatives
16  face the risk that they will be compelled to disclose their internal campaign
   communications in civil discovery. This risk applies not only to the official
17  proponents of initiatives and referendums, *but also to the myriad social,
   economic, religious and political organizations that publicly support or oppose
18  ballot measures*. The potential chilling effect on political participation and debate
   is therefore substantial, even if the district court's error were eventually corrected
19  on appeal from final judgment. . . .

20  *Id.* at *20-21 (emphasis added).

21
22  Just as "the threat that internal campaign communications will be disclosed in civil

23  litigation can discourage organizations from joining the public debate over an initiative," id. at

24  *34, n.8, the threat of a pastor being subpoenaed to testify at trial regarding his personal

25  involvement in a ballot initiative campaign, internal discussions that may have occurred between

26  members of the church's governing board regarding involvement in the campaign, or the details

27
---
28  [1] While the court's holding was "limited to *private, internal* campaign communications concerning the *formulation of campaign strategy and messages*," id. at *42, n.12, the First Amendment principles discussed in the opinion are applicable to the present motion.

8

09-CV-2292 VRW   Memo of Law Supporting Garlow Motion to Quash

of the church's religious and moral beliefs, can certainly discourage churches from becoming involved in initiative campaigns. That concern is particularly relevant in this situation considering all the harassment and misconduct that has already been directed toward supporters of Proposition 8, including religious leaders and houses of worship. *See, e.g.,* Letter of Charles J. Cooper, Counsel for Defendant-Intervenors, Docket No. 324, at 6-7 (Dec. 28. 2009) (citations omitted) (noting that "the record of . . . harassment against Proposition 8 supporters is well documented"); Thomas M. Messner, *The Price of Prop. 8*, available at http://www.heritage.org/research/family/bg2328.cfm (detailing numerous instances of "harassment, intimidation, vandalism, racial scapegoating, blacklisting, loss of employment, economic hardships, angry protests, violence, at least one death threat, and gross expressions of anti-religious bigotry" against supporters of Proposition 8); *see also Trunk v. City of San Diego*, 2007 U.S. Dist. LEXIS 75787, *18 (S.D. Cal. 2007) ("the Court must be particularly vigilant to accord non-party activists and political opponents such as LiMandri the broad protection the Ninth Circuit has held they are entitled to, to prevent the possible misuse of deposition subpoenas as tools of oppression, intimidation, or harassment").

Moreover, the Ninth Circuit also recognized that forced disclosure may chill protected activities by revealing a group's activities, strategies, or tactics to those who oppose their efforts, thereby frustrating their policy goals and giving their opponents an unfair advantage in the political arena. *See Perry*, 2010 U.S. App. LEXIS 170, at *37, n.10 (citing *AFL-CIO*, 333 F.3d at 176-77; *In re Motor Fuel*, 258 F.R.D. at 415). Subjecting citizen-advocates who support or oppose ballot initiatives to subpoenas requiring them to testify in open court concerning their activities, beliefs, and motivations will clearly force other members of the general public to think twice before speaking out regarding future ballot initiatives.

09-CV-2292 VRW   Memo of Law Supporting Garlow Motion to Quash

**II.    The Plaintiffs Cannot Meet Their High Burden of Demonstrating a Need to Require Pastor Garlow to Testify That is Sufficiently Compelling to Justify the Deterrent Effect on His First Amendment Rights.**

Since the Movant has made a prima facie showing of infringement upon his First Amendment rights, the evidentiary burden shifts to the Plaintiffs to "demonstrate[] an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *Perry*, 2010 U.S. App. LEXIS 170, at *29-30 (citations omitted); *see also In re Motor Fuel*, 258 F.R.D. at 415 (citation omitted) ("The burden thus shifts to plaintiffs 'to show how the balancing of factors weighs in support of compelling disclosure of the information covered by the First Amendment privilege'").

One court described the balancing test as follows:

> At the second step of the burden-shifting analysis, plaintiffs have the opportunity to prove that their interests in obtaining the information outweigh defendants' interests in not disclosing the information. In conducting this balancing of interests, the court must consider the following factors: "(1) the relevance of the evidence; (2) the necessity of receiving the information sought; (3) whether the information is available from other sources; and (4) the nature of the information."

*In re: Motor Fuel*, 258 F.R.D. at 415 (quoting *Grandbouche*, 825 F.2d at 1466).

The Plaintiffs must prove that the testimony sought from the Movant "is *highly* relevant to the claims or defenses in the litigation—a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 2010 U.S. App. LEXIS 170, at *31 (emphasis added); *see also Heartland Surgical*, 2007 U.S. Dist. LEXIS 19475, at *23; *Doe v. 2themart.com*, 140 F. Supp. 2d 1088, 1096-97 (W.D. Wash. 2001). "The Tenth Circuit has described this as 'certain relevance,' which means that the information must go to the 'heart of the matter.'" *In re: Motor Fuel*, 258 F.R.D. at 415 (citing *Grandbouche*, 825 F.2d at 1467).

09-CV-2292 VRW   Memo of Law Supporting Garlow Motion to Quash

1    Neither the subpoena to Pastor Garlow nor the correspondence accompanying it even

2    suggest why the Plaintiffs seek his testimony, or why that testimony is allegedly relevant to the

3    issues in this case. In any event, Pastor Garlow's testimony is wholly irrelevant to the issue of

4    whether the State of California has violated the Plaintiffs' constitutional rights. Pastor Garlow is

5    not a government official, nor is he a "state actor" subject to constitutional restraints. Any words

6    spoken, actions taken, or beliefs held regarding Proposition 8 are his alone and are not

7    attributable to the State of California, nor can they be deemed to indicate the official purpose of

8    Proposition 8. Quite frankly, Plaintiffs' attempt to cobble together an impermissible official

9    purpose through the statements and actions of various private actors is beyond the pale. Over 7

10   million Californians voted in favor of Proposition 8.[2] They came from a diverse array of

11   political, religious, economic, social, and cultural backgrounds. The testimony of one, one

12   hundred, or even one thousand of these voters regarding their thought processes and motivations

13   for voting in favor of Proposition 8 would bear no relevance to the official purpose of

14   Proposition 8.

15         Importantly, in the interlocutory appeal in this case, the Ninth Circuit said with respect to

16   the Proponents' internal campaign communications:

17         Plaintiffs can obtain much of the information they seek from other sources,
       without intruding on protected activities. . . . Whether campaign messages were
18       designed to appeal to voters' animosity toward gays and lesbians is a question that
       appears to be susceptible to expert testimony, without intruding into private
19       aspects of the campaign. Whether Proposition 8 bears a rational relationship to a
       legitimate state interest is primarily an objective inquiry.

20   *Perry*, 2010 U.S. App. LEXIS 170, at \*42. The subjective thought processes of the official

21   Proponents, and the millions of Californians that supported Proposition 8, are simply irrelevant

22   to Proposition 8's official purpose. Even assuming for the sake of argument that the subpoena

---

[2] Cal. Sec. of State Debra Bowen, *Statement of Vote, November 4, 2008 General Election*, at 7, *available at* http://www.sos.ca.gov/elections/sov/2008_general/sov_complete.pdf.

could be expected to lead to a small amount of minimally relevant information, Federal Rules of Evidence 402 and 403 dictate that such evidence may be excluded where, as here, its probative value is substantially outweighed by considerations of constitutional privilege or needless presentation of cumulative evidence.

In addition, numerous courts have held that the fact that the person or organization subject to a subpoena is not a party to the lawsuit weighs against requiring disclosure. *In re: Motor Fuel*, 258 F.R.D. at 416 (quoting *Heartland Surgical*, 2007 U.S. Dist. LEXIS 19475, at *24; *see also Katz v. Batavia Marine & Sporting Supplies*, 984 F.2d 422, 424 (Fed. Cir. 1993); *Trunk*, 2007 U.S. Dist. LEXIS 75787, at *16; *Echostar Comms. Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 394 (D. Colo. 1998).

In *Trunk v. City of San Diego*—a case involving an Establishment Clause challenge to the federal government's acquisition of the Mount Soledad Veterans Memorial—the court granted a motion to quash a deposition subpoena served on a non-party attorney (LiMandri) who had been actively involved in advising members of Congress regarding proposed legislation that he actively supported. The plaintiffs alleged that his testimony was relevant to determining the Congressional purpose for the statute. 2007 U.S. Dist. LEXIS 75787, at *7.

While the plaintiffs sought to "uncover LiMandri's own 'interests in, motivations behind or activities in support of' Public Law 109-272," the court held that the relevant Establishment Clause cases "do not, however, stand for the principle that the actions of private activists are particularly relevant to the inquiry of legislative purpose." *Id.* at *9-10. The court held that "the information the JWV Plaintiffs might uncover by deposing LiMandri is of minimal value. LiMandri's own private activism and beliefs are irrelevant to this case." *Id.* at *20. The court noted that "[t]he Ninth Circuit has also made clear that any lobbying action cannot, from a legal

standpoint, be viewed as 'causing' the legislation that resulted in the transfer of land." *Id.* at *7-8 (citation omitted).

In a similar vein, Pastor Garlow's advocacy in favor of Proposition 8's passage is irrelevant to this case. His advocacy cannot be said to have caused the passage of Proposition 8, and whatever subjective beliefs he may hold that influenced his decision to support Proposition 8 do not, in any way, replace, supplement, or influence the official purposes of Proposition 8.

**CONCLUSION**

1.     For the foregoing reasons, Movant Miles McPherson respectfully requests that the subpoena requiring him to appear and testify be quashed.

2.     Movant further requests a hearing on this motion before the date that he is called as a witness in this matter. Movant has not previously requested an expedited hearing, but he has asked counsel for Plaintiffs when he will be called to testify. Counsel for Plaintiffs could give movant no answer, other than not in the first two days of the trial.

Respectfully submitted,


/S/ Brian R. Chavez-Ochoa
Brian R. Chavez-Ochoa
CHAVEZ-OCHOA LAW OFFICES, INC.
Attorney for Non-Party Dr. Jim Garlow
and Non-Party Pastor Miles McPherson
4 Jean Street, Suite 4
Valley Springs, CA 95252
(209) 772-3013

Vincent P. McCarthy, Sr. Counsel
Connecticut State Bar # 100195
AMERICAN CENTER FOR LAW AND JUSTICE, NE
11 W. Chestnut Hill Road
Litchfield, CT 06759
(860) 567-9485
*Motion for Admission Pro Hac Vice Pending*

///

1

**CERTIFICATE OF SERVICE**

2

I HEREBY CERTIFY that a true and correct copy of <u>Memorandum of Law in Support of</u>

3

<u>James L. Garlow's Motion to Quash Subpoena</u> was served on all parties required to be served

4

5

this 11th day of January, 2010, by the following methods and addressed as follows:

6

By ELECTRONIC SERVICE:

7

| | |
|---|---|
| Elizabeth O. Gill | Theodore J. Boutrous, Jr. |
| Alan Lawrence Schlosser | Ethan D. Dettmer |
| Kevin Trent Snider | Christopher Dean Dusseault |
| Jennifer Lynn Monk | Jeremy Michael Goldman |
| Robert Henry Tyler | Theane Evengelis Kapur |
| Gordon Bruce Burns | Matthew Dempsey McGill |
| Tamar Pachter | Enrique Antonio Monagas |
| Rena M. Lindevaldsen | Theodore B. Olson |
| Mary Elizabeth McAlister | Sarah Elizabeth Piepmeier |
| Jesse Panucio | Josh Schiller |
| Eric Brianna Bernstein | Amir Cameron Tayrani |
| Danny Yeh Chou | Theodore Hideyuki Uno |
| Ronald P. Flynn | Tara Lynn Borelli |
| Christine Van Aken | Matthew Albert Coles |
| David E. Bunim | Jon Warren Davison |
| James J. Brosnahan | James Dixon Esseks |
| Tobias Barrington Wolff | Shannon Minter |
| James A. Campbell | Jennifer Carol Pizer |
| Timothy D. Chandler | Alan Lawrence Schlosser |
| Charles J. Cooper | Christopher Francis Stoll |
| Jordan W. Lorence | Ilona Margaret Turner |
| Howard C. Neilson, Jr. | Charles Salvatore LiMandri |
| Austin R. Nimocks | Judy Whitehurst |
| Peter A. Patterson | Thomas R. Burke |
| Andrew Perry Pugno | Claude Franklin Kolm |
| Brian E. Raum | Manuel Francisco Martinez |
| David H. Thompson | Rosanne C. Baxter |
| Kenneth C. Mennemieier | Michael W. Kirk |
| Andrew Walter Stroud | Eric Grant |
| Richard J. Bettan | Terry Lee Thompson |
| David Boies | Patrick John Gorman |

26

///

27

///

28

(Signature on Following Page)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,
Signed at Valley Springs, California on
January 11, 2010.


<u>/S/ Brian R. Chavez-Ochoa</u>
Brian R. Chavez-Ochoa
CHAVEZ-OCHOA LAW OFFICES, INC.
Attorney for Non-Party Dr. Jim Garlow
and Non-Party Pastor Miles McPherson
4 Jean Street, Suite 4
Valley Springs, CA 95252
(209) 772-3013

09-CV-2292 VRW   Memo of Law Supporting Garlow Motion to Quash