# EXHIBIT D



# JUDICIAL COUNCIL OF CALIFORNIA
## ADMINISTRATIVE OFFICE OF THE COURTS
303 Second Street, South Tower
San Francisco, California 94107
Phone 415/396-9100•FAX 415/396-9388

TO:            Members of the Judicial Council

FROM:          Task Force on Photographing, Recording and Broadcasting in
               the Courtroom
               Hon. Richard Huffman, Chair
               Ms. Dale Anne Sipes, Staff Coordinator

DATE:          May 10, 1996

SUBJECT:       Report from the Task Force on Photographing,
               Recording and Broadcasting in the Courtroom

## Contents

|                                                                      | Page |
|----------------------------------------------------------------------|------|
| I. Background.........................................................| 3    |
| II. Present Task Force Charge.........................................| 5    |
| III. Task Force Methodology..........................................| 6    |

        A.    Tasks Conducted and Comment Received
              Prior to February, 1996 Report to Judicial Council

        B.    New Comment Received by Task Force

| IV. Task Force Analysis on Issue of Whether to Ban Cameras............| 11   |
| V. Task Force Analysis on Other Issues...............................| 18   |

        A. Presumption as to Coverage
        B. Definitions and Scope
        C. Other Coverage and Coverage by Court Personnel
        D. Procedures for Obtaining Permission for Media Coverage

094

E. Equipment, Personnel and Pooling
F. Sanctions

VI. Recommendation to the Judicial Council...................................   **25**


Appendices............................................................................   **27**

A--Task Force Minority Report on Issue of Pretrial Criminal Coverage
B--Text of Proposed Amended Rule 980
C--Text of Circulated Proposed Amended Rule 980
D--Summary of Comments on Proposed Rule Amendments
E--Persons Offering Oral/Written Testimony to the Task Force

095

## I. Background

### A. History of Rule 980

Film and electronic media coverage of criminal and civil courtroom proceedings at the trial and appellate levels in the California state courts has been allowed on a permanent basis since July 1, 1984, when new rule 980 of the California Rules of Court took effect.

The permanent rule governing film and electronic coverage was the culmination of a five-and-a-half-year process during which the question of such coverage was considered by a special committee of the Judicial Council of California. An experimental rule was adopted, and the effect of film and electronic media coverage was reviewed. California was the first state to conduct a statewide evaluation of such an experiment.

The Judicial Council embarked on the evaluation process in December 1978, when it approved a one-year experimental program to permit broadcasting and photographing of court proceedings in selected courts with the judge's and parties' consent and without cost to the council or the courts. It also recommended the appointment of an advisory committee to develop a program for coverage, draft necessary rules, and suggest evaluation procedures.

In January 1979, the Chief Justice appointed the 28-member Special Committee on the Courts and the Media. The experimental program began on July 1, 1980. Subsequently, the council extended the expiration date of the rules to December 31, 1981, to permit review of a report by an outside consultant who monitored and evaluated the experiment, before considering adopting the rules as permanent. In consideration of the consultant's final report and recommendations, the council on January 1, 1982, repealed one of the rules, substituted some new language, and extended the expiration date of the experimental rules to December 31, 1982. The council once again extended the expiration date of the experiment to December 31, 1983. This allowed further evaluation of comments received regarding the effects of coverage on witnesses and jurors.

At its November 19, 1983, meeting the council authorized the circulation for comment the text of a draft permanent rule permitting film and electronic media coverage of courtroom proceedings. The expiration date of the experimental rules was extended to June 30, 1984, to allow time for comment on the draft permanent rule. The permanent rule took effect July 1, 1984.

096

In evaluating the experiment begun in 1980, two major questions were considered:

(1) Will the presence and operation of broadcast, recording, or photographic equipment in a courtroom be a significant distraction for trial participants, disrupt proceedings, or impair judicial dignity and decorum?

(2) Will trial participants or prospective trial participants, knowing that their words or pictures will be or are being recorded for possible use on television and radio or in newspapers and magazines, change their behavior in a way that interferes with the fair and efficient administration of justice?

According to the consultant's report on the experiment, during the 15-month testing period, there was little awareness of, or distraction caused by, media presence. Among the findings:

- Three-quarters of those surveyed were either unaware or "a little aware" of the coverage.

- Four-fifths of the participants surveyed either were not distracted by the extended media coverage or were distracted only at first.

- Ninety percent of the judges and attorneys surveyed said the presence of cameras interfered only slightly or not at all with courtroom dignity and decorum.

- Twenty-five percent of the jurors said there was a negative impact on the courtroom environment.

- Most judges, attorneys, and jurors said the media coverage did not affect the behavior of the various participants.

## B. Cameras in the Courtroom in Other Jurisdictions

Most states have some laws—whether permanent, experimental, or a mix—concerning cameras in the courtroom. Some allow such coverage only at the appellate level; others allow coverage of only certain types of cases. Three states do not permit cameras in court: Indiana, Mississippi, and South Dakota.

The use of cameras in the federal courts has been allowed on an experimental basis. A pilot project, approved by the policymaking Judicial Conference of the United States in September 1990 and begun in July 1991, permitted the photographing, recording, and broadcasting of civil proceedings in circuit courts in

San Francisco and New York, as well as district courts in Indiana, Massachusetts, Michigan, New York, Pennsylvania, and Washington. In 1994, the Judicial Conference voted to end the three-year experiment, The ban on such coverage, dating back to 1937, was restored.

On March 12, 1996, the Judicial Conference voted to leave it to individual circuit Courts of Appeals to set their own rules regarding cameras in federal courtrooms but agreed to urge each appeals court to pass a local rule reflecting the conference's 1994 policy position against permitting cameras in civil trials.  Ten days later, the Ninth U.S. Circuit Court of Appeals announced that cameras will be allowed inside its courtrooms during oral arguments in civil cases but not in direct criminal appeals or extradition proceedings.  The court also will allow cameras in death penalty appeals and habeas corpus proceedings.

## II. Present Task Force Charge

The Task Force on Photographing, Recording, and Broadcasting in the Courtroom was appointed in October 1995 and charged with:

1. Evaluating whether rule 980 should be amended or remain as it currently appears in the California Rules of Court;

2. Evaluating if criteria to be applied by the court in determining whether to allow film and electronic equipment in courtrooms should be revised;

3. Evaluating whether film and electronic media coverage should be prohibited in all state court proceedings, in certain types of proceedings, or in certain portions of proceedings;

4. Evaluating whether there should be an expansion of the circumstances under which film and electronic media coverage of state court proceedings is now permitted;

5. Evaluating the criteria for the operation of cameras and other electronic recording equipment, including pool cameras, in courtrooms.

098

III. Task Force Methodology

A. Tasks Conducted and Commentary Received Prior to February, 1996, Report to Judicial Council

Prior to presenting its initial report and recommendations to the Judicial Council in February 1996, the 13-member task force met four times in person and many times by conference call; conducted a statewide survey of judges, public defenders, and prosecutors; solicited the views of many bar groups; attended an educational forum and hosted a public hearing on the topic of cameras in the courtroom; and received and reviewed scores of letters, telephone calls, reports, newspaper and journal articles, previously conducted studies, and other information.

The task force received a substantial amount of written material from participants on both sides of the controversy. In addition, the members attended a forum at McGeorge School of Law in Sacramento and held a public hearing in San Francisco in order to gain as much knowledge as possible of the views of judges, journalists, victims' rights organizations, representatives of various segments of the bar, and members of the public.

The following outlines the general nature of the material presented to the task force to assist it in arriving at its recommendations to the Judicial Council in February, 1996.

1. Proponents of a Ban on Cameras in the Courtroom

Following the Simpson trial in Los Angeles, a number of persons have called for an outright ban on cameras in the courtroom for all California trial courts. Many proponents of such a ban have argued this particular form of coverage detracts from the dignity and solemnity of court proceedings and intrudes on privacy interests of witnesses, jurors, victims, and defendants. In particular, they point to the undisputed media excesses in Simpson case coverage and the perceived impact of the expanded coverage on the trial participants. They conclude the benefit of increased public access to trials is offset by the "circus-like" atmosphere that can easily be created in a high-profile case.

In support of a ban, the task force received a letter from State Senator Quentin Kopp opposing the use of cameras in all California trial courts, civil and criminal. We also heard from the Governor's Legal Affairs Secretary, Mr. Daniel Kolkey, who conveyed the Governor's concern about cameras in criminal trial courtrooms because of the potential for impairing the dignity of court proceedings; the erosion

099

of public confidence that can occur from a trial where the participants are substantially affected by the publicity; and the potential adverse impact of such coverage on witnesses and jurors. The Governor urged that cameras be banned from all criminal trials.

The task force also considered the materials prepared by the Rule 980 Committee of the Superior Court of Los Angeles, whose findings were endorsed by the presiding judge and the supervising criminal judge of that court and presented by Judge Mary Ann Murphy at the task force's public hearing.

From the materials and testimony presented, we may conclude that the Los Angeles experience with high-profile cases is unique in the state where at any time there may be six or seven truly high-profile cases in progress, all with requests for extended media coverage.

The institutional factors of court staff and resources, as well as physical access to court facilities, are all severely impacted by this form of news coverage in that county. For example, Los Angeles judges have sometimes directly experienced adverse impacts on their courts from media conduct in the hallways or from reported intrusions on the privacy of jurors and witnesses. They have been forced to deal with violations of court orders which have adversely affected the conduct of trials or the privacy of witnesses. Trial judges have experienced the phenomenon of media "experts" providing nightly commentary as to which side "won" and "lost" points in trial. For all these reasons, representatives of the Superior Court of Los Angeles have urged an outright ban on cameras in the courtroom.

## 2. Snapshot Survey of Judges, Prosecutors, and Public Defenders

In order to gain input from all California judges, the task force distributed survey questionnaires to each member of the judiciary at the trial and appellate levels. Over 600 responses were received.

Appendix D to the February, 1996 task force report to the Judicial Council includes a complete review of important survey findings, including the following:

### All Judge-respondents

- 55 percent prefer that video cameras be banned from courtrooms

- 63 percent indicate that the courtroom presence of video cameras impairs judicial dignity and courtroom decorum

- 70 percent indicate video broadcast media in the court have a negative effect on parties' right to a fair trial

- At least 69 percent would prefer to have discretion to allow video broadcast media in the courtroom

- 59 percent note that the O.J. Simpson trial changed their opinion of the value of broadcast media in the courtroom; of these, 94 percent now believe televised court proceedings are less valuable than they believed before the O.J. Simpson trial

- 51 percent believe Rule 980 needs modification

Judge-respondents Who Reported Experience with Cameras in Their Court

- 96 percent reported that the presence of a video camera did not affect the outcome of the hearing or trial in any way

- 77 percent reported no affect on their ability to maintain courtroom order and control of proceedings

- 68 percent reported at least a small increase in their administrative/supervisory burden

- 81 percent believed the video camera did not intrude into the attorney-client privilege

- 86 percent reported no decrease in persons willingness to serve as jurors as a result of video broadcast media in the courtroom

- 75-80 percent noted there were not more attempts made to offer unnecessary motions, evidence, or witnesses in cases where the judge allowed a video camera in the courtroom

Coming directly on the heels on the O.J. Simpson experience, it is not surprising that judges have more negative ideas about cameras in the courtroom than they did in the early 1980s. Although the majority of the judge-respondents favored a ban, those judges who actually had experience with cameras in their courts tended to be less likely to support a total ban. The clear majority (69%) favored strengthening the discretionary authority of judges to deal with film and electronic media. Many respondents had specific suggestions about how to improve rule 980 (detailed in

101

8

the February, 1996, Task Force Report to the Judicial Council, Appendix D Attachments 4 and 5) in order to avoid the negative or potential negative impact of video broadcast media in court.

The task force also sent surveys to the elected district attorneys and the heads of various public defender's offices, but we did not receive a statistically significant sampling of those persons' views. Those who did respond supported a ban on cameras or, at a minimum, conditioned the presence of cameras on the consent of the parties. A representative of the California District Attorneys Association appeared at the public hearing to urge removal of cameras from criminal trials.

### 3. Supporters of Cameras in the Courtroom

Arrayed against those opposing cameras in the courtrooms were representatives of various media organizations, the American Judicature Society, attorneys' associations, and several groups representing victims rights' organizations. The victims' groups were somewhat divided on the issue as they are concerned with limiting unnecessary intrusions into the privacy of witnesses and victims; yet they also believe that increased public awareness of the justice system fostered by media coverage augurs well for the rights of victims. The victims' groups urged a variety of measures to aid judges in maintaining the dignity of the proceedings and in protecting the interests of those who must participate in the system.

The proponents of the present rule or of expanding media coverage pointed most often to the experience of the approximately 14-year period in which California has had a rule permitting film and electronic media coverage of the courts. They argue that on balance, the rule has been a success, and that problems which occur can ordinarily be solved by the sound exercise of judicial discretion.

The point was made during the various presentations that the public today gains the bulk of its news from television. Currently, few people in society have the time to come to the courthouse to observe trials, and there is seldom enough space in today's courtrooms to accommodate them. Programs such as *Court TV* have provided access to judicial proceedings for millions of people who would otherwise have little opportunity to observe the courts in action.

Moreover, the proponents have argued the principle that the American judicial system was designed to be as open as possible. Examples were given of trials in the past where a large percentage of citizens were able to and did attend trials in their communities. The task force was reminded of the recommendations of the report *Justice in the Balance/2020* presented to the Judicial Council, which envisioned a future with far greater electronic access to the courts than is true

today, even taking into account the existing rule permitting some electronic coverage of the courts. We were reminded that the Judicial Council's Long-Range Strategic Plan includes efforts to increase public access to the courts.

In short, those who sought to maintain access for film and electronic media to the courts suggested that a rule such as existing rule 980, which places these decisions in the sound discretion of the trial courts, will continue to strike the appropriate balance between (1) protecting courtroom dignity, (2) protecting the parties' right to fairness, and (3) increasing public access to the courts.

### B. New Comment Received by Task Force

At its February 23, 1996, business meeting, the Judicial Council (1) approved the task force's report, including the proposed amended rule 980, for circulation and (2) requested the task force to report back to the council at its May 17, 1996, business meeting. The task force designated April 8, 1996, as the deadline for comments. The task force received 60 comments as of April 8, 1996, and an additional 15 thereafter.

Following the close of the comment period, the task force members met on April 22, 1996, for a final opportunity to consider specific suggestions and revisions contained within the comments and to reconsider both the broad policy questions raised as a result of the comments, and the smaller policy issues and specific language changes offered.

The six tables in Appendix D list the names of all commenters (Table 1) and, for those comments received by the April 8 deadline (or shortly thereafter), sort them as follows:

| Table 2: | Suggested Revisions to the Proposed New Rule 980 |
|---|---|
| Table 3: | Respondents Who Agree with the Substantive Portions of the New Rule |
| Table 4: | Respondents Who Think the New Rule Does Not Sufficiently Restrict Cameras |
| Table 5: | Respondents Who Think the New Rule is Too Restrictive |
| Table 6: | Respondents With Specific Suggestions Who Did Not Express An Opinion Of the Proposed Rule |

In each table, highlights of the comments are offered, but are not intended to be fully descriptive of the lengthy comments received. A complete notebook of the comments is available from the Judicial Council.

**103**

The following general groups of people submitted comments:
Academicians (2), Bar Associations (3), Citizens (14), County Supervisors (1),
Courts and Judges (15, representing at least 147 judges and the California Judges
Association), former Executive Branch leaders (3), Legislators (1), Media
Attorneys (7, representing at least 18 media outlets), Media Publishers, News
Directors, Journalist Groups (15), Public Defenders (1), Victims Groups (2).

## IV.  Task Force Analysis on Issue of Whether to Ban Cameras

After the proposed amendment to rule 980 was distributed for public
comment, the task force received numerous comments from a broad range of
respondents. Those comments included thoughtful suggestions and criticisms from
supporters and opponents of the position taken in the proposed amendments to the
rule. Many of those suggestions or criticisms have been analyzed and incorporated
into changes made in the revised draft of rule 980 attached to this report
(Appendix B). Those comments will be dealt with specifically in those portions of
the report dealing with specific amendments to the language of the proposed rule.

Many of the comments were directed to the broader policy question of <u>whether
there should be a total ban on film and electronic coverage</u> in the California trial
courts, whether rule 980 as it currently exists should remain in effect, or whether
there should be a substantial expansion of access by electronic and film media
equipment to court proceedings. On the basic policy questions, the comments,
though forceful and articulate on both sides, added little new information to the
pool of data available to the task force at the time of the original drafting to the
proposed amended rule. Those, such as the Los Angeles Superior Court and
Governor Wilson, who opposed coverage of some or all proceedings, remain
opposed to that coverage today. Those in the media or their representatives, who
eloquently argued against any restriction of their ability to cover court
proceedings, continue to argue for the retention of existing rule 980 or for further
liberalization of electronic media access to proceedings.

The polar positions represented by the comments recently received were forcefully
articulated to the task force in a number of methods before the circulation of the
rule. The task force heard the various positions articulated when it attended the
public forum at McGeorge Law School in December of 1995, and again when it
held a public hearing in San Francisco in January of 1996. Additionally, the task
force considered at the time of the original drafting of the rule hundreds of pages
of written submissions and studies on both sides of the policy issues presented.
Thus, while comments on the question of whether or not any or all proceedings of
the California trial court should be open to electronic and film coverage were read
and seriously considered by the task force members in assessing whether or not to

11

recommend a different position on those questions to the Judicial Council, such comments did not add to the body of information known at the time of the original drafting.

One of the principal policy questions addressed by the task force in its original report was whether to recommend banning electronic and film coverage of all California trial court proceedings. In our original report, we recommended against such a course of action and offered an approach which proposed to close certain pretrial criminal proceedings to electronic and film coverage and to place some limitations on the coverage of all trials, civil or criminal. The decision as to whether to allow such coverage of the remainder of the trial court proceedings would be left to the sound discretion of the trial court judges, guided by a listing of factors to be weighed and considered in making such decision.

The possibility of restricting film and electronic coverage of trial courts to any degree greater than that provided in existing rule 980 has been consistently opposed by the news media. Their representatives and a number of judges, as well as other persons, believed the entire issue should be left to the discretion of the courts. Those who preferred a ban on such coverage remain convinced that is the preferred approach, but do support the task force's proposal to impose some restrictions as at least an improvement over the existing rule.

Hence, the Governor and the Los Angeles Superior Court, who prefer a total ban on this form of coverage, support the task force recommendation for some restriction. The California Judges Association, the Los Angeles and San Diego Municipal Courts, the Orange County Superior Court, Placer County Superior Court, the Los Angles Public Defender, Los Angeles County Bar Association, and California State Bar Association appear to support the proposed restrictions contained within the draft amended rule.

Opponents of the proposed restrictions include the media, former Governor George Deukmejian, former Attorney General John Van de Kamp, the Superior Courts in San Benito and Solano Counties, and a majority of the judges of the Sacramento County courts (12 to 8).

After reviewing the comments, the task force reconsidered its position on the questions of whether the Council should be urged to approve the proposed restrictions on electronic and film coverage of pretrial criminal proceedings and certain portions of trials in civil and criminal cases.

The task force unanimously continues to support its proposal for restrictions on the matters subject to film and electronic coverage during civil and criminal trials. All

105

hut three members of the task force also continue to believe the proposed restrictions on film and electronic coverage in pretrial criminal matters are necessary to a rule which strikes the proper balance between the rights to a fair trial in criminal cases and the important policy of promotion increased public access to the courts.[1]

Our earlier report expressed the task force review of the importance of restriction electronic and film coverage in pretrial criminal proceedings. There we offered the following discussion:

"(b) Basis for the Proposed Limitations on Coverage. The material presented to the task force raised a number of legitimate concerns regarding the potential of extended media coverage to create adverse impacts on the fairness of the judicial process, particularly in criminal cases. Specifically, there were concerns as to whether witnesses and jurors may be adversely influenced by such coverage. Concerns were also expressed regarding the real potential that participants in criminal cases, including attorneys and witnesses, will be influenced to act in a particular manner for the benefit of the media. It is believed by many that, at least in some cases, attorneys have brought motions, made arguments, or raised issues mainly in an attempt to influence public opinion through media.

"The task force recognizes these concerns are not new; however, they have been raised and emphasized, at the present time, when the courts have gained more experience with the litigation of publicized cases. The proposed changes represent an effort by the task force to find an acceptable balance between the goal of increased public access to the courts and the duty of the courts to provide fair and reliable adjudication of disputes.

---

[1]    The three members of the task force who disagree with a total ban on film and electronic coverage of pretrial criminal matters have prepared a minority report, included as Appendix A. During the task force discussions on this issue, those members seemed to agree with the majority with regard to excluding film and electronic coverage of arraignments and bail hearings on the basis that such proceedings have a great potential for prejudice, but that the likelihood such expanded coverage will inform the public as to the justice system seemed remote indeed. Thus, it appears the differences between the majority and minority views relate to the coverage of preliminary examinations and pretrial motions (as distinguished from motion proceedings in trial) which would remain the subject of the proposed restrictions. For the reasons which will follow in the body of our report, the majority continues to urge adoption of the proposed rule with its restriction on extended coverage of all pretrial criminal proceedings.

13

"(c) Examples: Adverse Impact of Pre-trial Coverage. It is difficult to quantify the impact on witnesses and jurors that is created by the additional coverage provided by the film and electronic media. It seems clear, however, that extensive coverage of pre-trial proceedings in criminal cases may result in serious adverse impacts on the fairness of the adjudicative process. For example, when potential witnesses and/or jurors have access to certain material as presented by the media, it may affect a witness's version of events or may affect the ability of a juror to be impartial.

"Expanded coverage of arraignments of criminal defendants presents an example of concerns expressed to the task force. Witnesses may observe the coverage of the arraignment and thus be influenced in their identifications or perceptions. Pre-trial coverage of the defendant, for example, who may be in custody with obvious security measures in place, may subsequently reduce the effectiveness of the efforts by the trial judge to eliminate the prejudice of custody by allowing the defendant to appear at trial in ordinary clothing, as opposed to jail clothing, and without obvious restraints. Similar concerns exist with any expanded coverage of preliminary hearings, bail review hearings and other pre-trial matters.

"(d) Task Force Conclusion Regarding Criminal Pre-Trial Coverage. Any assessment of the proper manner of dealing with what seems to be a clear potential for prejudice to the parties' rights to a fair trial also requires consideration of the public's right to access. As previously noted, the proposed changes do not eliminate the right of the public and the media to attend the courts; the changes focus only on electronic and film coverage. Accordingly, the problem is where to place the balance of the competing interests.

"Pre-trial matters in criminal cases are by definition preliminary. These matters address custody, timing, admissibility of evidence, and the procedures to be followed by the court. Guilt and innocence remain to be determined by the trier of fact based upon the admissible evidence at trial. While the media are free to report that which occurs in public hearings, contemporaneous broadcast of all or significant part of such preliminary matters add little to the public's knowledge of the case. Contemporaneous broadcast

... ...... a real potential for adverse impacts on the fairness of trial proceedings.

"As the survey results have indicated, trial courts have exercised their discretion and have done a good job of attempting to eliminate prejudice. It is the sense of the task force, however, that such efforts are, after all, attempts, and their effectiveness is very difficult to measure. Thus, after reviewing the serious concerns raised by many of the opponents of electronic and film coverage of criminal cases, the task force concluded the balance should be struck by taking proposed steps toward insuring fairness and reliability if the criminal trial process. Any incremental benefit of film and electronic coverage of preliminary matters is outweighed by its potential for harm. Similarly, by recommending the limitation of electronic media coverage to only those events seen by the trier of fact, the risk that a juror will hear information that might improperly influence the outcome of the case will be negligible. Also, the concern of some, that lawyers are trying to 'play' to the public at large, will be addressed.

"(e) Proposed Limitations on Trial Coverage. Existing rule 980 places a number of limitations on film and electronic coverage of trials. The proposed revisions would add further limitations.

"First, the changes would limit coverage to those matters heard by the trier of fact. Necessarily, such limitations would exclude coverage of in limine motions, sidebar conferences, and matters heard outside the presence of the jury. Such additional restrictions are premised on the belief that the principal purpose of the trial is to determine the truth in a dignified and reliable manner. Trials are not primarily intended to be educational or to be a source of entertainment. Even though extended broadcast of trials provides some additional access to the public (as compared to nontelevised public trial), the task force concluded, however, that broadcast of matters not considered by the trier of fact poses a great risk of adverse effects on the trial process, which outweighs the added value of public access.

"Much of the concern expressed in the general criticism of extended broadcast coverage included the potential for jury contamination from the broadcast of material not heard by the jurors in court, and the potential influence of such matters on the

15

108

testimony of witnesses. As previously suggested, the material presented to the task force also raised the real possibility that attorneys may raise issues, bring motions, er make arguments primarily in an effort to influence public opinion. The task force found these concerns to be legitimate and concluded that the propose limitations struck the better balance of the competing interests.

"(f) Proposed Limitation on Spectator Coverage. Some co.....t is warranted regarding the proposed limitation on the abii.....f the media to film spectators. Often media coverage of trials includes coverage of the spectators and their reactions to the events at trial. Certainly trials, particularly criminal trials, can have dramatic and emotional moments: A victim's family members may become distraught as a result of testimony regarding the crime; a defendant's relative may react emotionally to a verdict, ruling, or sentence.

"While the task force recognized the dramatic value of such events and the desire of the media to be able to display such events, it was determined that such coverage has the potential of significant intrusion into the privacy interests of such spectators. It was also determined that this kind of coverage of spectator reaction to trial events does not advance the public's knowledge of the workings of the courts or the basis of the verdict in a given case. It was felt such coverage was more in the nature of entertainment or drama, and that persons attending trials, particularly family members of those involved in the case, should not be subjected to such intrusions as the price of their attendance. Persons who wish to speak to the media or to be subject to broadcast interviews can do so outside of the courtroom, thus affording the media a source of coverage without subjecting spectators in the court to unwanted intrusions into their privacy."[2]

Although we discussed these matters at length, it is appropriate after a period of comment, criticism, and reflection to offer some further discussion.

It is important to keep clearly in mind that which has been stressed before. This proposed rule with the restrictions it contains would not close any proceeding now

---

[2] February, 1996 Report to Judicial Council from Task Force on Photographing, Recording and Broadcasting in the Courtroom, pp. 12-14.

109

16

open to the public and to the news media. Reporters from every form of new media will remain free to attend such proceedings and to report their observations to whatever extent they deem appropriate. Hence, the debate on the proposed restrictions is not one of access by the entire media, rather it deals with the use of film and electronic equipment as a tool in reporting that which the reporters can observe. Such characterization is not meant to denigrate the importance of electronic and film media as a method of news distribution. Rather, it is an effort to dispel notions the proposed rule somehow closes important proceedings or denies access by members of certain media organizations to the courts.

The proposed rule, likewise, does not seek to make any determination as to what is or is not "newsworthy" or to make critical comment about the manner in which court proceedings are presented or the editorial policy of any media entity. Those are matters over which the courts do not and should not have control.

It is important, however, in assessing the impact of electronic and film coverage on the fairness of the process in criminal cases to recognize some modicum of reality regarding the nature of such coverage in criminal cases. In actual practice, full coverage of pretrial proceedings on commercial stations is highly unlikely. The matters are indeed preliminary, often technical in nature, and rarely lend themselves to "gavel to gavel" coverage. The vast majority of such televised or broadcast proceedings will be limited to a brief moment of what an editor feels is the most newsworthy portion of the proceeding. Often, arraignments are popular forms of electronic and film coverage as the arraignment provides the first film footage of the defendant. The arraignment itself provides little information to the public and often is presented without sound so that the public is given a video image of the defendant, often in custody, perhaps even restrained, while the reporter relates the new. In short, the footage is most often a prop or adjunct to a reporter's story.

A fair examination of such coverage of other pretrial matters would produce much the same result. The matter is often broadcast as a "sound bite" or a small segment believed important by the particular news entity. This report offers no criticism of that procedure, but does believe it informs the debate on the question of the increased access of the public gained by electronic and film coverage, as opposed to the same news reporter providing the same data without the video image or the sound bite of the news excerpt.

We have digressed with the observations of the manner of ordinary presentation of pretrial criminal matters in the electronic media only to set what we think to be a more realistic assessment of the potential harm to the fairness of the overall

criminal adjudication process as against the incremental benefit of public information by allowing such expanded coverage.

The task force remains convinced of the potential prejudice to the fairness of criminal trials as a result of expanded coverage of pretrial criminal matters much the same as the task force is convinced its recommendations restricting such coverage in civil and criminal trials are important for the reasons previously set out in this report. It is appropriate to add to those comments a response to a familiar observation with regard to the survey conducted by the task force at the time of the original report. Proponents of a policy of no restrictions on coverage frequently point to question 34 of the judicial survey, "Did the presence of a video camera affect the outcome of the hearing or trial in any way?" Of the total respondents who had experience with video cameras, 96 percent said no. Of those respondents in the Los Angeles Superior Court who had experience with cameras, 90 percent said no, with 10 percent answering yes. This number has been used as support for the proposition that there is no detrimental impact of electronic and film coverage in any proceeding, including pretrial proceedings and those matters in trial outside the presence of the trier of fact.

Respectfully, the task force believes such arguments take the questions out of context. For example, a respondent who dealt with an arraignment, preliminary hearing, bail hearing, continuance or pretrial motion could easily answer the question of whether video cameras affected the outcome of such hearing in the negative. The hearing was not affected. Whether such coverage impacted witnesses or jurors or impaired the overall fairness of the process would be unknown to that person. Hence, the selection of the single question and statistic as was often done in the comments receive by the task force is to ignore the remainder of the survey results. More importantly, the answer does not address the concern raised in the materials presented to the task force of the impact of extended coverage of pretrial criminal matters and trial matters not presented to the trier of fact on the jury pool and witnesses in those proceedings.

While numerous changes have been made to the proposed rule originally submitted to the Council, the task force continues to support and to urge the Council's adoption of the proposed restrictions in pretrial criminal proceedings and in the trial of both criminal and civil cases. We think such restrictions are necessary to strike a fair balance between the important questions of public access to the courts and fairness, dignity, and reliability of the adjudication process.

111

## V. Task Force Analysis

### A. Presumption as to Coverage

In the circulated amended rule, there is no presumption either for or against granting permission to photograph, record, or broadcast court proceedings. Task force discussion surrounding this provision centered on the unanimous opinion that a coverage decision should be completely within the judge's discretion in each instance. Also, the importance of not creating an additional workload for the courts was stressed. While wanting to promote appropriate public access to the court system, it was felt that a presumption either for or against allowing electronic media access leads to a burden which must be overcome, possibly through a hearing where evidence and witnesses are offered and findings are made.

The task force strongly opposes any rule or implication that the coverage decision requires a court hearing. It was felt that by offering judges more clearly defined procedures and factors to consider, a presumption becomes unnecessary.

When the proposed rule was circulated, we received a number of suggestions that it should include a presumption for or against coverage. Depending on the position of the commentator as to narrowing or expanding the scope of film and electronic coverage of trial courts, we were urged to set the presumption in favor of such position.

The task force has again considered whether the rule should contain a presumption that one side or the other should be required to overcome. We continue to believe the rule should express its neutrality as to the proper exercise of discretion. The draft rule contains a listing of factors for consideration by judicial officers and an expression that findings and statements of decision are not required in ruling on applications for coverage. All of that material is designed to guide the courts in their decision making, but, in the last analysis, leaves the decision to the sound discretion of the judicial officer making the ruling. We continue to recommend the rule expressly declare the absence of a presumption on the issue of coverage. (See proposed amended rule 980 (a))

### B. Definitions and Scope

1. **Media Coverage.** It was determined that "media coverage" is the standard term to be used to mean photographing, recording, or broadcasting of court proceedings by the media using television, radio, photographic, or recording equipment, and that the phrase "film or electronic media coverage" is deleted. (See proposed amended rule 980(b)(1))

2. **Court.** In the draft amended rule that was circulated, the task force proposed changing the title to reflect the "court," rather than "courtroom" and more broadly defining "court" to include the courtroom at issue, the courthouse, and the area immediately surrounding the court facility." It was hoped that the rule would be available, for example, to address logistical issues that may be interfering with activities outside of the courtroom at issue, such as the kind of difficulties faced by the Los Angeles Superior Court system during the O.J. Simpson trial.

After receiving numerous comments and concerns about the constitutionality of the proposed language, the proposed rule eliminates "and the area immediately surrounding the courthouse"; instead, "including its entrances and exits" is added. The proposed change takes into consideration that courts may differ in their configurations and that local rules (such as those referred to in this proposed rule at (e)(4)) may be devised to best deal with particular situations. (See proposed amended rule 980(b)(3))

3. **Judge.** At the suggestion of several commenters, "judge" is defined as "judicial officer" to include justices and commissioners. (See proposed amended rule 980(b)(4))

## C. Other Coverage and Coverage by Court Personnel

This section brings forward the language in the original rule that, except as provided in this rule, court proceedings shall not be photographed, recorded, or broadcast (original rule 980 (d)). At the suggestion of several commenters, added to this is the following proposed clarifying statement: "This rule does not prohibit courts from photographing or videotaping sessions for judicial education or publications and is not intended to apply to closed-circuit television broadcasts solely within the courthouse or between court facilities that are controlled by the court and court personnel." (See proposed amended rule 980(c))

## D. Procedures for Obtaining Permission for Media Coverage

1. **Request for Order.** The above-described limitations placed on pretrial electronic media coverage makes it possible to recommend improvements to the process by which media agencies seek permission to cover a court proceeding. The existing process for requesting an order for media coverage refers to filing a request for an order "a reasonable time before the portion of the proceeding to be covered." This provision was criticized by many as vague and unhelpful. Requests are often made at the last minute, which makes it difficult to provide

113

meaningful notice to the parties or to provide them an opportunity to inform the court, in its exercise of discretion, on parties' views of the question of coverage.

Under the proposed new rule, media agencies will typically know ahead of time when a trial or other proceeding where coverage is permissible is scheduled to occur. Therefore, the new recommended procedure changes "a reasonable time" to a period of five court days. The added time for notice seems reasonable in light of the proposed changes in the type of proceedings which may be the subject of extended coverage. If the case is of sufficient interest that the media wish to film or broadcast the trial, the date of the trial or post-trial proceeding will be known in advance. The task force could perceive no good reason why requests could not be made five days in advance of the event. The burden thereby placed on the media, to be timely in its requests, does not seem onerous or unreasonable.

Several commenters were concerned that the five day requirement is impractical and imposes an undue burden on the media, particularly for civil pretrial proceedings. The task force reconsidered this provision and proposes to add a good cause exception to be exercised by the trial judge. Some task force members expressed concern that some media outlets might be dilatory and request a good cause exception in circumstances where they could have or should have known about a proceeding at least five days prior. The trial judge, however, will also know when a date was set and available as information to media outlets and can exercise discretion accordingly. (See proposed amended rule 980(e)(1))

2. Hearing. The proposed rule provides that the judge may hold a hearing on the request for media coverage or rule on the request without a hearing. The following sentence that was proposed in the circulated amended rule was deleted by the task force: "If there is a hearing, at least two court day's notice shall be given to the parties and each media agency requesting coverage." The task force believes that this additional notice provision is unnecessary and confusing. The other notice requirement in the rule is sufficient. The trial judge will be able to ensure that there is adequate time for the parties to prepare in the event of a hearing on the request. In the event that there is no hearing, the Judicial Council forms implementing this rule (to be developed) will be a vehicle to ensure that information concerning the media request for coverage is gathered. (See proposed amended rule 980 (e)(2))

3. Factors to be Considered by the Judge. The draft rule which was circulated for comment contained a list of 12 factors for the court to consider in making decisions on media request, plus the omnibus factor of "[a]ny other factor the judge deems relevant." Some of the factors promote general public interests, some safeguard the rights of the various parties to the litigation, and some ensure

114

that other proceedings and business in the courthouse are not disrupted by the presence of electronic media.

During the public hearing, media agencies expressed frustration that coverage decisions are now made summarily, without offering guidance that would allow the media to make better or more appropriate requests. Although the proposed amended rule does not require a hearing on the request, by specifying a list of factors, media agencies wishing to cover court proceedings are put on notice as to the kind of information the judge will take into consideration in making the coverage decision.

Comments received from various sources contained a number of suggestions concerning this list of factors. After review of these suggestions, the task force revised the draft rule to include two additional factors. Specifically, we have added to the list in subdivision (e)(3) the following:

> "(vi) Effect on any minor who is a party, prospective witness, victim, or other participant in the proceeding;

> "(vii) Effect of coverage on the willingness of witnesses to cooperate, including the risk that coverage will engender threats to the health or safety of any witness."

These factors were added to deal with adverse impacts expanded coverage may have on participants in court proceedings. Threats to witnesses are all too common is some types of criminal cases and members of the bar have reported actual difficulties in securing the cooperation of witnesses in televised cases. These factors will direct the judge's attention to such issues if appropriate to any particular case. The inclusion of the reference to minors in factor (vi) was added because we removed the prohibition from filming minors at trial in subdivision (e)(6)(iii)(D). The task force felt such matter was better left to trial court discretion because in some instance minors are transferred to adult court for trial under Welfare and Institutions Code section 707, and thus will be prosecuted as adults for significant offenses. It therefore seemed appropriate to leave the question of coverage of such persons to the trial court's guided discretion.

The Los Angles Superior Court and the California Judges Association submitted an extensive list of proposed factors to replace those contained in the draft rule, After review of the proposed list, the task force declined to adopt it. First, it was felt the list in the current draft was sufficiently inclusive to provide meaningful guidance to the courts. Second, the current listing is neutral; that is the list directs the judge's attention to important considerations without suggesting or implying

115

hi

LE 1

## RULE 980 - INVITATION TO COMMENT
### Comments Received as of April 8, 1996

| | Respondent | Comment |
|---|---|---|
| 1. | **Michael D. Antonovich** Chairman of the Board/ Supervisor, Fifth District Los Angeles, California | Opposes allowing cameras in the courtroom due to lengthening time of trial and driving up costs. |
| 2. | **Gordon Wilcher** - Ridgecrest, California | Supports allowing cameras in the courtroom. Suggests changes be made via a ballot initiative for voters. |
| 3. | **Alexander B. Aikman** Management Consulting & Training, Folsom, CA | Concerns over new rule precluding any future uses of television in court proceedings and courthouses. |
| 4. | **Hon. Joseph F. Biafore, Jr.** - Santa Clara Superior Court | Supports proposed changes. |
| 5. | **Gene Erbin & Cathy Christian** on behalf of CBS, NBC, ABC & CNN Nielsen, Merksamer, Parinello, Mueller & Naylor Sacramento, CA | Stringently opposes proposed changes. Request second task force public hearing. ... proposed ... |
| 6. | **Hon. Peggy Hora** - Alameda County Municipal Court | Supports total judicial discretion. |
| 7. | **Hon. H. Ronald Domnitz** - San Diego Municipal Court | Opposes changes. Supports judicial discretion, except poss... during jury selection. |
| 8. | **Hon. George Deukmejian** - Los Angeles, California | Is concerned that proposed rule abandons judicial discretion |
| 9. | **Hon. L. Jeffrey Wiatt** - Van Nuys Superior Court | Proposes amendments to subdivisions (d), (b)(3), (e)(1), ... (e)(2), (e)(3) and (e)(1). |
| 10. | **Hon. Peter J. Mirich** - Los Angeles Municipal Court | Endorses amended rule as proposed. |
| 11. | **Hon. Margaret M. Hay** - Los Angeles Municipal Court | Endorses amended rule as proposed. |
| 12. | **Arthur and Alice Yuwiler** Public Citizens, Woodland Hills, California | Unsolicited comment. Supports ban on media in the court... |
| 13. | **Stephen R. Trousdale & Lori Streifler** The Society of Professional Journalists | Opposes changes. |
| 14. | **John K. Van De Kamp** Dewey Ballantine - Los Angeles, California | Proposes adoption of principle reaffirming individual judicial discretion. |
| 15. | **Hon. James B. Jennings** - Santa Barbara Superior Court | Opposes changes in light of State of California v. Simpson. |
| 16. | **David R. Stringer** Times-Herald, Vallejo, California | Opposes changes. Supports judicial discretion. |

116

TABLE I

## RULE 980 - INVITATION TO COMMENT
### Comments Received as of April 8, 1996

| | Respondent | Comment |
|---|---|---|
| 17. | **Michael P. Judge**<br>Public Defender - Los Angeles County | Specific syntactical changes to subdivision 6.  Proposes ban on coverage in juvenile court proceedings. |
| 18. | **Samuel H. Pillsbury**<br>Loyola Law School, Los Angeles, California | Proposes a delay in broadcasting live trial coverage for a period of up to 24 hours. |
| 19. | **Steven Brill**<br>Court TV, New York, New York | Changes to 980(e)(6) are too broad, as ban will be an unacceptable discrimination against a more accurate portrayal of the case. |
| 20. | **Hon. Thomas P. Breen, San Benito Superior Court** | Opposes proposed changes. |
| 21. | **Hon. James F. Moelk**<br>On behalf of 14 Solano County Superior Court Judges | Rule 980 should remain unchanged. |
| 22. | **William Bennett Turner, Esq.**<br>Rogers, Joseph, O'Donnell & Quinn | Urges Judicial Council to reject the amendments proposed by the task force.  Six specific points. |
| 23. | **Hon. James L. Roeder, Hon. W. Jackson Willoughby**<br>Commr. Frances Kearney, Margaret Wells, Esq.<br>Placer County Integrated Trial Courts, Auburn, CA | Agrees with media proposal. |
| 24. | **Commissioner Geoffrey N. Carter**<br>Oakland-Piedmont-Emeryville Judicial District | Supports proposed changes to rule 980, particularly the restriction on spectator coverage. |
| 25. | **Hon. Mel Red Recana**<br>Presiding Judge, Los Angeles Municipal Court | Supports proposed amendments re: filming of spectators in courtroom; of bench, attorney/client, and attorney/attorney conferences; clarification of term "court."  Recommendation re: JC approval of media order. |
| 26. | **John van Heteren, Public Citizen, Foster City, CA** | Proposes delay between court proceeding and broadcasting. |
| 27. | **Bill Lord, News Director, NBC Los Angeles, CA** | Opposes any changes to rule 980. |
| 28. | **Howard S. Williams, Vista, CA.** | Believes changes discriminate against print media.  Supports banning media coverage re: privacy issues. |
| 29. | **David S. Ettinger, Chair -  Gary Lieberman, Member**<br>The Appellate Courts Committee of the L.A. Bar Association | Offers comments regarding: (1) clarification on rule's application to appellate courts; (2) presumption in favor of permitting broadcasting; and (3) personal recording devices for oral argument on appeal. |
| 30. | **Stan Stantham, California Broadcasters Association** | Strongly opposes proposed changes. |

117

RULE 980 - INVITATION TO COMMENT
Comments Received as of April 8, 1996

| | Respondent | Comment |
|---|---|---|
| 31. | Brent Baader, News Director, KPWB TV, Sacramento, CA | Opposes proposed changes to rule 980. |
| 32. | Marc Klaas<br>Marc Klaas Foundation for Children<br>Sausalito, California | Opposes proposed changes to rule 980 based on recent decision by San Clara Superior Court Judge Hastings to bar cameras for the murder tri of their daughter, Polly Klaas. |
| 33. | Elizabeth Bullock, Public Citizen, Oceanside, California | Issue should be placed on a ballot for voter decision. |
| 34. | Patricia McDonald, Public Citizen, Oceanside, California | Opposes proposed changes to rule 980. |
| 35. | James E. Rogan, Majority Leader<br>California Legislature, Sacramento, California | Opposes proposed changes to rule 980 based on experience with cameras in the court as former Glendale Municipal Court judge. |
| 36. | Andrew McGuire, Executive Director<br>Trauma Foundation, San Francisco, California | Opposes proposed changes to rule 980. |
| 37. | Mr. & Mrs. Donald A. DeGenaro, Public Citizens<br>Escondido, California | Opposes proposed changes to rule 980. |
| 38. | Robert H. Madden, Public Citizen<br>Escondido, California | Opposes proposed changes to rule 980. |
| 39. | Dan Adams, Reporter - KXTV News<br>Sacramento, California | Opposes proposed changes to rule 980. |
| 40. | Hon. Paul Boland, President<br>California Judges Association, San Francisco, California | Supports a revised and more restrictive rule 980 which lin media access to certain proceedings and specific conditio |
| 41. | John H. Trumbo, Reporter<br>Auburn Journal, Auburn, California | Opposes proposed changes to rule 980. |
| 42. | Ms. Charity Kenyon<br>Diepenbrock, Wulff, Plant & Hannegan, LLP<br>Sacramento, California | Proposes maintenance of the discretion accorded by the permit and supervise film coverage of all aspects of public proceedings, including pretrial hearings. |

118

TABLE 1

RULE 980 - INVITATION TO COMMENT
Comments Received as of April 8, 1996

| | Respondent | Comment |
|---|---|---|
| 43. | Ms. Laurie D. Zelon, President<br>Los Angeles County Bar Association | Amendments as proposed provide helpful guidelines to trial courts.<br>Further modifications proposed to: (e)(1), (e)(3)(v), and (e)(4). |
| 44. | Mr. R. Sherman Rivers, Public Citizen, Sacramento, CA | Opposes changes to rule 980. |
| 45. | Mrs. Shanon L. Shaw, Public Citizen, Carlsbad, CA | Opposes changes to rule 980. |
| 46. | Mr. Hal Fishman, Managing Editor<br>KTLA 5 News, Los Angeles, CA | Opposes changes to rule 980. |
| 47. | Ms. Claire Abelman, Public Citizen, Oceanside, CA | Opposes changes to rule 980. |
| 48. | Ms. Jeanette Havlik, Public Citizen, Oceanside, CA | Opposes changes to rule 980. |
| 49. | Ms. Jane E. Kirtley, Esq., Executive Director<br>Ms. Rebecca Daugherty, Esq., Staff Attorney<br>Ms. Caley Feldman, Journalism Intern<br>The Reporters Committee for Freedom of the Press<br>Arlington, Virginia | Amendments as proposed are a step in the wrong direction. |
| 50. | Hon. Mary Ann Murphy - Los Angeles Superior Court<br>On Behalf of: Hon. Gary Klausner, Hon. James Bascue,<br>Los Angeles County Superior Court Rule 980 Committee<br>Civil Law & Procedure Committee<br>Criminal Law & Procedure Committee of the<br>California Law & Procedure Association | Supports a rule prohibiting electronic media in California court.<br>Comments include proposals re: rule 980(a)(2), (e)(1), (e)(2),<br>(e)(6)(iv), (e)(4), (e)(5), (e)(6), (e)(7)(i), (e)(7)(ii), (e)(7)(iv),  and (e).. |
| 51. | Nielsen, Merksamer, Parrinello, Mueller & Naylor<br>Sacramento, California | ADDITIONAL COMMENTS TO LETTER OF MARCH 1, 1996 |
| 52. | Mr. David Duitch, News Director<br>KXTV 10, Sacramento, CA | Opposes changes to rule 980. |
| 53. | Hon. William R. Ridgeway, Presiding Judge<br>On Behalf Of: Sacramento Superior & Municipal Courts | Supports amendments re: factors concerning judicial discretion.<br>Opposes outright ban on criminal pretrial coverage (12 judges); supports<br>outright ban on criminal pretrial coverage (8 judges).  Unanimously<br>opposes vesting final decision to allow media to anyone other than the<br>judge.  Supports filing media requests no later than 24 hours before<br>event, with a good cause exception. |

RULE 980 - INVITATION TO COMMENT
Comments Received as of April 8, 1996

E 1

| | Respondent | Comment |
|---|---|---|
| 54. | Mr. Tom Brokaw TV News Commentator NBC News, New York | Opposes changes to rule 980. |
| 55. | Ms. Kelli Sager, Davis Wright Tremaine - Los Angeles, CA On Behalf Of: Los Angeles Times, California Community News Corporation, Inc. The Copley Press City News Service of Los Angeles, Inc. The Press-Enterprise, Riverside, California The Ventura County Star Thompson L.A. News Group California Newspaper Publishers Association California First Amendment Coalition Greater Los Angeles & San Diego Professional Chapters of the Society of Professional Journalists Northern & Central California Chapters of the SPJ | Opposes the following changes: 1) Banning still & broadcast cameras from pretrial and other court proceedings. 2) Media application for film coverage 5 days prior to court proceedings. 3) Banning camera coverage of pretrial proceedings. 4) Banning camera coverage of proceedings held outside the jury's presence. 5) Disagrees with the recommendation that the trial judge need not issue a "statement of decision." |
| 56. | Mr. Jeffrey B. Kahan - Member Los Angeles County Bar Association Committee on Law Enforcement | Generally opposes cameras in the courtroom; supports delayed broadcast. |
| 57. | Mr. Joe McConnell, President Northern California Radio-Television News Directors Ass'n San Mateo, CA | Opposes changes to rule 980. |
| 58. | Ms. Kathleen A. Kirby, Reed Smith Shaw & McClay Washington, D.C. | Submits that rule 980 should be amended to create a presumption of openness regarding media coverage of all criminal and civil proceedings available to the public, and to require judges to cite compelling reasons for excluding cameras. |
| 59. | Mr. Irv Kass, News Director KNSD 7 & 39, San Diego, California | Opposes changes to rule 980. |
| 60. | Hon. Ted Millard - Orange County Superior Court Mr. Everett W. Dickey, Chair, Rules & Forms Committee | Supports proposed changes to rule 980; suggests no order denying/limiting/modifying coverage should be appealable or of a petition for extraordinary relief. |

120

**TABLE 1**

**RULE 980 - INVITATION TO COMMENT - RECEIVED LATE**

| | Respondent | Comment |
|---|---|---|
| 61. | Mr. Daniel M. Kolkey, Counsel to Gov. Peter Wilson Sacramento, CA | Supports a ban on film and electronic media coverage of criminal trials. Six specific points. |
| 62. | Professor John Cary Sims, McGeorge School of Law Sacramento, CA | Opposes ban on pretrial proceedings in criminal cases as well as limiting trial broadcasts to the proceedings seen by the finder of fact. |
| 63. | Mr. Royal Oakes On Behalf of: Law Offices of Barger & Wolen, LLP, representing Radio & Television News Association of Southern California Los Angeles, CA | Strenuously objects to ban on criminal pre-trial proceedings; objects to categorical limit on matters not heard by trier of fact; objects to five-day advance requests by media for electronic coverage; believes a coverage hearing should be held; objects to ban on spectator coverage; objects to restrictions outside the courtroom. |
| 64. | Ms. Margaret Lacson, Anchor/Producer The Filipino Report, KTSF-Channel 26, San Francisco, CA | Opposes changes to rule 980. |
| 65. | Mr. Michael Burke, News Director KTXL/Fox TV, Sacramento, CA | Strongly opposes changes to rule 980. |
| 66. | Mr. & Mrs. Craig Harris, Public Citizens – Escondido, CA | Opposes changes to rule 980. |
| 67. | Ms. Patsy Hendrix, Public Citizen, San Marcos, CA | Opposes changes to rule 980. |
| 68. | J. Clark Kelso, Professor of Law/Director Institute for Legislative Practice, McGeorge School of Law Sacramento, California | Author of "A Legal Assessment of Proposed Amendments to California Rule of Court 980." |
| 69. | Bong Hwan Kim, Executive Director Korean Youth & Community Center, Los Angeles, CA | Opposes proposed changes to rule 980. |
| 70. | Barbara Witmer, Public Citizen, San Bernardino, CA | Supports removal of cameras in the courts. |
| 71. | Capt. W. O. Garland, Los Angeles Police Department On behalf of the Law Enforcement & Justice Committee of the Los Angeles County Bar Association | Supports proposed revisions to rule 980, specifically: prohibiting all electronic coverage in pre-trial proceedings in criminal cases and all hearings on motions presented outside the jury's presence; uniformly apply rule to presiding judges - subject to approval by a judicial board. |
| 72. | D. Kent Pedersen, Court Administrator San Diego Municipal Court | Hand-written proposed changes to rule 980 attached. |
| 73. | Lawrence Wallack, Ph.D., Public Citizen, Kensington, CA | Opposes proposed changes to rule 980. |
| 74. | Peter Sussman, President Society of Professional Journalists – Oakland, California | Opposes proposed changes to rule 980.  Supports comments of William Bennett Turner. |
| 75. | Daniel G. McIntosh, President, Beverly Hills Bar Ass'n. | Copy of Ad Hoc Committee Report attached. |

121

RULE 980 TASK FORCE - COMMENTS RECE[IVED] OF APRIL 8, 1996 ON PROPOSED NEW RULE 980

TABLE 2: Suggested revisions to the proposed new rule 980

Does not include general recommendations such as "ban cameras" or "retain the current rule"

| Section | Description | Suggested Revisions | Respondents (Underscores indicate specific language) |
|---|---|---|---|
| (a) | Introduction | A. Rule should express intent to control media conduct. | 40, 50 |
| | | B. Presume access for cameras. | 18, 19, 28, 29, 30, 58 |
| (b)(1) | Definition of "media coverage" | A. Clarification. | 40 |
| (b)(2) | Definition of "media" | | |
| (b)(3) | Definition of "court" | A. Include areas surrounding the courthouse. | 9, 11, 25 |
| | | B. Do not expand definition to include the courthouse. | 30, 49, 63 |
| (b)(4) | Definition of "judge" | A. Include appellate court justices. | 29 |
| (c) | Photographing, recording, and broadcasting prohibited | A. Do not limit radio and still photography. | 22 |
| (d) | Personal recording devices | A. Limit personal recording devices to media. | 9 |
| | | B. Allow personal recording devices for oral argument on appeal. | 29 |
| (e) | Media coverage | | |
| (e)(1) | Request for order | A. Delete five day notification requirement. | 43, 49, 55, 63 |
| | | B. Clarify manner of giving notice, maybe including phone or fax. | 9 |
| | | C. Discretion to the trial or supervising judge. | 25, 49, 50, 53 |
| | | D. Delete five day notification requirement for pretrial proceedings. | 51, 53 |
| | | E. Consider including a "good cause" exception to any notice requirement. | 53 |
| (e)(2) | Hearing | A. General rewording. | 9 |
| | | B. Clarify that court is not required to make findings. | 50 |
| | | C. Require a hearing for Rule 980 applications. | 63 |
| (e)(3) | Factors to be considered by the judge | A. Delete language in (v) re: privacy rights. | 43 |
| | | B. General rewording. | 9 |
| | | C. Include more factors. | 40, 50, 61 |
| | | D. Clarify factors. | 62 |

RULE 980 TASK FORCE - COMMENTS RECEIVED AS OF APRIL 8, 1996 ON PROPOSED NEW RULE 980

TABLE 2:  Suggested revisions (p the proposed new rule 980
Does not include general recommendations such as "ban cameras" or "retain the current rule"

| Section | Description | Suggested Revisions | Respondents (Underscores indicate specific language) |
|---|---|---|---|
| (e)(4) | Order permitting media coverage | A. Require a statement of decision. | 30, 43, 51, 58, 61, 64 |
| | | B. General rewording. | 9, 40 |
| | | C. Indemnify court from injury or damage caused by electronic media. | 50 |
| | | D. Include supervising judge to regulate media activity in the courthouse. | 50 |
| (e)(5) | Modified order | A. General rewording. | 40 |
| | | B. Provide judge with means to monitor and terminate coverage. | 50 |
| (e)(6) | Coverage | A. Prohibit filming of sidebar conferences. | 40 |
| | | B. Filming ceases when judge leaves bench or declares a recess. | 40 |
| | | C. Do not exclude significant testimony from broadcasts of ... | 56 |
| | | D. Prohibit filming jurors in the courthouse and surrounding areas. | 50 |
| | | E. Do not ban cameras from pretrial proceedings. | 18, 19, 22, 42, 49, 51, 53, 58, 62, 63 |
| | | F. Do not limit coverage to matters heard by the trier of fact. | 58, 62, 63 |
| | | G. Do not restrict coverage of minors and/or spectators. | 22, 42, 49, 58, 63 |
| | | H. Rewording to remove ambiguity. | 17 |
| (e)(7) | Equipment and personnel | A. Oppose limiting number of still photographers. | 40 |
| | | B. Clarify ambiguities and require that still cameras be covered with hard blimps. | 50 |
| (e)(8) | Media pooling | | |
| (f) | Sanctions | A. Clarify that violation by one member of media sufficient to terminate all coverage. | 50 |
| (g) | Additional | A. No right to appeal judge's decision on camera request. | 11, 40, 60 |
| | | B. Include severability clause. | 40, 50 |
| | | C. Require cameras to be in a fixed position and prohibit zooming and panning. | 50 |
| | | D. Delay video broadcasts. | 18, 26 |
| | | E. Allow radio coverage of all proceedings. | 57 |
| | | F. Rules for juvenile cases should be clarified. | 64 |
| | | G. Do not preclude the use of television technology by the court. | 3 |

COMMENTS RECEIVED AS OF APRIL 8, 1996 ON PROPOSED NEW RULE 980

RULE 980 TASK FORCE

TABLE 3: Respondents who agree with the substantive portions of the new rule

| # | Respondent | Type | Recommendations |
|---|------------|------|-----------------|
| 43 | Laurie Zelon, President<br>Los Angeles Bar Association | Bar | A. Require written findings in (e)(4) if a hearing is denied.<br>B. Delete five day notification requirement in (e)(1).<br>C. Language in (e)(3)(v). |
| 4 | Hon. Joseph F. Biafore, Jr.<br>Santa Clara Superior Court | Judiciary | A. Supports Task Force proposal. |
| 9 | Hon. L. Jeffrey Wiatt<br>Los Angeles Superior Court | Judiciary | A. Language in (d) to limit personal recording devices to media.<br>B. Language in (b)(3) to include areas surrounding the courthouse.<br>C. Language in (e)(1) to clarify manner of giving notice, maybe including phone or fax.<br>D. Language in (e)(2), (e)(3), and (e)(4). |
| 10 | Hon. Peter J. Mirich<br>Los Angeles Municipal Court | Judiciary | A. Supports Task Force proposal. |
| 11 | Hon. Margaret M. Hay<br>Los Angeles Superior Court | Judiciary | A. No right to appeal judge's decision on camera request.<br>B. Language in (b)(3) to include county property adjoining the courthouse. |
| 24 | Commissioner Geoffrey N. Carter<br>Oakland-Piedmont-Emeryville Municipal Court | Judiciary | A. Supports limiting spectator coverage.<br>B. Televise more 'fun of the mill' trials. |
| 25 | Hon. Mel Red Recana, Presiding Judge<br>on behalf of Los Angeles Municipal Court | Judiciary | A. Language in (e)(1) should give discretion to the trial or supervising judge.<br>B. Language in (b)(3) to include other areas of the courthouse.<br>C. Supports prohibitions on filming spectators, bench conferences, and conferences between attorneys, clients, and witnesses. |
| 40 | Hon. Paul Boland, President<br>California Judges Association | Judiciary | A. Language in (e)(1) should give discretion to the trial judge.<br>B. Language in (e)(3) to include more factors.<br>C. Language in (e)(8) to prohibit filming of sidebar conferences.<br>D. Oppose (e)(7)(1) limiting number of still photographers.<br>E. No right to appeal judge's decisions by non parties.<br>F. Rule should express intent to control media conduct.<br>G. Rule should include severability clause.<br>H. Language in (b)(2), (e)(4), (e)(5), (e)(6). |

RULE 980 TASK FORCE

COMMENTS RECEIVED AS OF APRIL 8, 1996 ON PROPOSED NEW RULE 980

TABLE 4: Respondents who think the new rule does not sufficiently restrict cameras

| # | Respondent | Type | Recommendations |
|---|---|---|---|
| 58 | Jeffrey B. Kahan - Member<br>Los Angeles Bar Association Committee on<br>Law Enforcement | Bar | A. Ban cameras from courtrooms.<br>B. Do not exclude significant testimony from broadcasts of trials. |
| 12 | Arthur and Alice Yurwiter, Woodland Hills | Citizen | A. Ban cameras from courtrooms. |
| 50 | Hon. Mary Ann Murphy<br>Los Angeles Superior Court<br>on behalf of:<br>Hon. Gary Klausner, Presiding Judge<br>Hon. James Bascue, Supervising Criminal<br>Courts Judge<br>Los Angeles County Superior Court Rule<br>980 Committee<br>Civil Law and Procedure Committee of the<br>California Judges Association<br>Criminal Law and Procedure Committee of<br>the California Judges Association | Judiciary | A. Ban electronic media from courtrooms.<br>B. (b)(2) should not prohibit the court from videotaping its sessions.<br>C. Language in (e)(1) to give discretion for allowing cameras to the supervising judge if no judge assigned.<br>D. Language in (e)(3) adding factors to be considered.<br>E. Rule should have a severability clause.<br>F. Amend (e)(4) to indemnify court from injury or damage caused by electronic media.<br>G. Amend (e)(5) to provide judge with the means to monitor and instantly terminate coverage.<br>H. Rule should state that the court has complete control over the conduct of electronic media.<br>I. Require cameras to be in a fixed position and prohibit zooming and panning.<br>J. Language in (e)(2), (e)(4), (e)(6), (e)(7), (f). |
| 1 | Michael D. Antonovich, Chairman<br>Los Angeles Board of Supervisors | Government | A. Ban cameras from courtrooms. |
| 61 | Daniel M. Kolkey, Counsel to Gov. Wilson<br>on behalf of Governor Wilson | Government | A. Ban cameras from courtrooms.<br>B. Language in (e)(4) and (e)(8) to require a finding by the court to grant television coverage.<br>C. More factors in (e)(3). |

RULE ... ASK FORCE
COMMENTS RECEIVED AS OF APRIL 8, 1996 ON PROPOSED NEW RULE 980

TABLE 5: Respondents who think the new rule is too restrictive

| # | Respondent | Type | Recommendations |
|---|-----------|------|-----------------|
| 16 | Professor Samuel H. Pillsbury Loyola Law School, Los Angeles | Academic | A. Do not ban cameras from pretrial proceedings. B. Presume access for cameras. C. Delay video broadcasts. |
| 62 | Professor John Cary Sims McGeorge School of Law, Sacramento | Academic | A. Do not ban cameras from pretrial proceedings. B. Do not limit coverage to matters heard by the trier of fact. |
| 22 | William Bennett Turner, Esq. Rogers, Joseph, O'Donnell, & Quinn, San Francisco | Bar | A. Judicial Council should not govern how the media covers the courts. B. Do not ban cameras from criminal or civil pretrial proceedings. C. Do not limit radio and still photography. D. Do not restrict coverage of minors or spectators. E. Limit judicial discretion. |
| 29 | David Ettinger, Chair Gary Lieberman, Member Los Angeles Bar Association Appellate Courts Committee | Bar | A. Language in (b)(4) to include appellate court justices. B. Presume access to cameras. C. Allow personal recording devices for oral argument on appeal. |
| 2 | Gordon Witcher, Ridgecrest | Citizen | A. Allow cameras in general. B. Let voters decide issue through initiative process. |
| 34 | Patricia McDonald, Oceanside | Citizen | A. Keep cameras in court. |
| 37 | Donald and Dorothy De Genaro, Escondido | Citizen | A. Keep cameras in court. |
| 38 | Robert Madden, Escondido | Citizen | A. Keep cameras in court. |
| 44 | Sherman Rivera, Sacramento | Citizen | A. Keep cameras in court. |
| 45 | Shanon Shaw, Carlsbad | Citizen | A. Keep cameras in court. |
| 47 | Claire Abelman, Oceanside | Citizen | A. Keep cameras in court. |
| 48 | Jeanette Havlik, Oceanside | Citizen | A. Keep cameras in court. |
| 66 | Craig Harris & Marsha Jurgens-Harris, Escondido | Citizen | A. Keep cameras in court. |
| 67 | Patsy Hendrix, San Marcos | Citizen | A. Keep cameras in court. |
| 28 | Howard Williams, Vista | Citizen | A. Presume access to cameras. |

f:\user\bfyer\comments.doc

126

RULE 980 TASK FORCE

COMMENTS RECEIVED AS OF APRIL 8, 1996 ON PROPOSED NEW RULE 980

TABLE 5: Respondents who think the new rule is too restrictive

| # Respondent | Type | Recommendations |
|---|---|---|
| 6| Hon. Peggy Hora<br>San Leandro-Hayward Municipal Court | Judiciary | A. Retain judicial discretion for prohibiting cameras. |
| 7| Hon. H. Ronald Domnitz<br>San Diego Municipal Court | Judiciary | A. Retain Rule 980; except possibly exclude cameras from jury selection.<br>B. More judicial education in media relations. |
| 15| Hon. James B. Jennings<br>Santa Barbara Superior Court | Judiciary | A. No changes while Simpson case affects judgment. |
| 20| Hon. Thomas P. Breen<br>San Benito Superior Court | Judiciary | A. Retain Rule 980. |
| 21| Hon. James F. Moelk, Presiding Judge<br>On behalf of Solano Superior Court | Judiciary | A. Retain Rule 980. |
| 23| Hon. James L. Roeder, Hon. W. Jackson Willoughby, Commissioner Frances Kearney, Margaret Wells, Esq.<br>Placer County Courts | Judiciary | A. Retain Rule 980. |
| 53| Hon. William Ridgeway, Presiding Judge<br>on behalf of Sacramento courts | Judiciary | A. Retain judicial discretion for prohibiting cameras in pretrial proceedings.<br>B. Discretion to prohibit cameras solely with trial judge.<br>C. Support 5 day provision for trials but would oppose as too long for pretrial proceedings.<br>D. Consider including a "good cause" exception to any notice requirement. |
| 13| Stephen R. Trousdale, Lori Streifler<br>The Society of Professional Journalists, Los Angeles | Media | A. Retain Rule 980. |
| 16| David Stringer, Publisher<br>Times-Herald, Vallejo | Media | A. Judicial discretion for prohibiting cameras. |
| 19| Steven Brill, Chairman and CEO<br>Court TV, New York | Media | A. Do not ban cameras from pretrial proceedings.<br>B. Presume access for cameras. |
| 27| Bill Lord, News Director<br>NBC Los Angeles | Media | A. Keep cameras in the court. |

vstbysf/comments.doc

COMMENTS RECEIVED AS OF Aid. 8, 1998 ON PROPOSED NEW RULE 980

TASK FORCE

TABLE 5: Respondents who think the new rule is too restrictive

| # | Respondent | Type | Recommendations |
|---|---|---|---|
| 30 | Stan Statham, Executive Director<br>California Broadcaster's Association,<br>Sacramento | Media | A. Presume access to cameras for all hearings.<br>B. Do not expand definition of courtrooms to courthouse.<br>C. Require judges to demonstrate why a case can't be televised. |
| 31 | Brent Baader, News Director<br>KPWB TV, Sacramento | Media | A. Keep cameras in court. |
| 39 | Dan Adams, Reporter<br>KXTV News, Sacramento | Media | A. Keep cameras in court. |
| 41 | John Trumbo, Reporter<br>Auburn Journal, Auburn | Media | A. Retain Rule 980. |
| 42 | Charity Kenyon<br>Diepenbrock, Wulff, Plant & Hannegan, LLP<br>On behalf of: McClatchy Newspapers<br>(publisher of the Sacramento Bee)<br>KTXL TV, Sacramento<br>KOVR TV, Sacramento | Media | A. Retain judicial discretion for prohibiting cameras in pretrial proceedings.<br>B. Do not limit coverage of spectators and minors.<br>C. Clarify factors used to grant or deny coverage. |
| 46 | Hal Fishman, Managing Editor<br>KTLA News, Los Angeles | Media | A. Retain judicial discretion for prohibiting cameras. |
| 49 | Jane E. Kirtley, Executive Director<br>Rebecca Daugherty, Esq., Staff Attorney<br>Caley Feldman, Journalism Intern<br>The Reporters Committee for Freedom of<br>the Press, Arlington, Virginia | Media | A. Do not ban cameras from pretrial proceedings.<br>B. Do not ban coverage of jurors, spectators, or minors.<br>C. Five day notification requirement is too long.<br>D. Oppose extending the rule from the courtroom to the courthouse. |
| 51 | Nielsen, Merksamer, Parrinello, Mueller &<br>Naylor, Sacramento<br>Attorneys for ABC, NBC, CNN, and CBS | Media | A. Retain judicial discretion for prohibiting cameras from pretrial<br>proceedings.<br>B. If Rule 980 is changed, requests to cover pre trial proceedings should<br>require less than five days notice.<br>C. Require written statement when denying access to cameras. |
| 52 | David Duitch, News Director<br>KXTV TV, Sacramento | Media | A. Keep cameras in court. |
| 54 | Tom Brokaw, TV News Commentator<br>NBC News, New York | Media | A. Keep cameras in court. |

f:\users\bye\comments.doc

128

RULE 980 TASK FORCE
COMMENTS RECEIVED AS OF APRIL 8, 1996 ON PROPOSED NEW RULE 980

TABLE 5: Respondents who think the new rule is too restrictive

| # | Respondent | Type | Recommendations |
|---|---|---|---|
| 55 | Kelli L. Sager<br>Davis Wright Tremaine, Los Angeles<br>On behalf of: Los Angeles Times,<br>California Community News Corporation,<br>The Copley Press,<br>City News Service of Los Angeles,<br>The Press-Enterprise, Riverside<br>The Ventura County Star<br>Thompson LA News Group<br>California Newspaper Association<br>California First Amendment Coalition<br>Greater Los Angeles and San Diego<br>Professional Chapters of the Society of<br>Professional Journalists<br>Northern and Central California Chapters of<br>the Society of Professional Journalists | Media | A. Retain judicial discretion to prohibit still cameras and video broadcast at any proceedings.<br>B. Oppose 5 day application requirement. |
| 57 | Joe McConnell, President<br>Radio-Television News Directors<br>Association of Northern California, San<br>Mateo | Media | A. Keep cameras in court.<br>B. Allow radio coverage of all proceedings. |
| 58 | Kathleen A. Kirby<br>Reed Smith Shaw & McClay,<br>Washington DC<br>on behalf of Radio-Television News<br>Directors Association of Northern California | Media | A. Require statement of decision to prohibit cameras.<br>B. Presume access to cameras.<br>C. Oppose ban of cameras from pretrial proceedings.<br>D. Oppose limiting coverage to matters presented to the jury.<br>E. Oppose prohibition of coverage of bench conferences and spectators |
| 59 | Irv Kass, News Director<br>KNSD TV, San Diego | Media | A. Retain Rule 980 or enhance the level access provided. |

'\users\byer\comments.doc

129

COMMENTS RECEIVED AS OF ~~~~ ~~~~ 6, 1998 ON PROPOSED NEW RULE 980

RU~~~~ ~~~~ASK FORCE

TABLE 5:  Respondents who think the new rule is too restrictive

| # | Respondent | Type | Recommendations |
|---|-----------|------|-----------------|
| 63 | **Royal Oakes**<br>Barger & Wolen, Los Angeles<br>on behalf of Radio-Television News<br>Directors Association of Northern California | Media | A.  Do not ban cameras from pretrial proceedings.<br>B.  Do not limit coverage to matters heard by the trier of fact.<br>C.  Require a hearing for Rule 980 applications.<br>D.  Oppose 5-day notice requirement.<br>E.  Oppose ban on photographing spectators.<br>F.  Oppose extending courtroom to courthouse. |
| 64 | **Margaret Lascon, Anchor/Producer**<br>KTSF TV, San Francisco | Media | A.  Judges should not be able to ban cameras from courts.<br>B.  Judges should be required to publicly explain any decision to prohibit<br>cameras.<br>C.  Rules for juvenile cases should be clarified.<br>D.  Minors and parents should be given first priority in deciding on whether<br>their case should be televis~~ed~~. |
| 65 | **Michael Burke, News Director**<br>KTXL TV, Sacramento | Media | A.  Opposes changes to Rule 980. |
| 8 | **Hon. George Deukmejian, Los Angeles** | Government | A.  Retain judicial discretion to prohibit cameras from all proceedings. |
| 14 | **John K. Van De Kamp**<br>Dewey Ballantine, Los Angeles | Government | A.  Retain judicial discretion to prohibit cameras from all proceedings. |
| 35 | **James Rogan, Assembly Majority Leader**<br>California Legislature | Government | A.  Retain Rule 980. |
| 32 | **Marc Klaas**<br>Marc Klaas Foundation, Sausalito | Victim | A.  Keep cameras in court. |
| 36 | **Andrew McGuire, Executive Director**<br>Trauma Foundation, San Francisco | Victim | A.  Keep cameras in court. |

/t:users\byer\comments.doc

130

RULE 980 TASK FORCE

COMMENTS RECEIVED AS OF APRIL 8, 1996 ON PROPOSED NEW RULE 980

TABLE 8: Respondents with specific suggestions who did not express an opinion of the proposed rule

| # | Respondent | Type | Recommendations |
|---|------------|------|-----------------|
| 17 | Michael Judge<br>Los Angeles County Public Defender | Bar | A. Language in (e)(6). |
| 28 | John van Heteren, Foster City | Citizen | A. Broadcast tape delayed court proceedings. |
| 33 | Elizabeth Bullock, Oceanside | Citizen | A. Let voters decide on media restrictions. |
| 60 | Hon. Ted Millard, Presiding Judge<br>Everett W. Dickey, Rules and Forms<br>Committee Chair<br>on behalf of Orange Superior court | Judiciary | A. Language denying appeal of rulings on Rule 980 applications. |
| 3 | Alexander B. Aikman<br>Management, Consulting, & Training,<br>Folsom | Other | A. Language to not preclude the use of television technology by the court. |

f••ereByw1comments.doc

131

any particular result. The listing of factors in the Law and the California Judges Association proposals both in content and structure appeared to the task force to strongly lead to a decision in most cases to deny coverage. We believe the Judicial Council should not communicate a preference for or against coverage, except in those limited areas discussed in this report where policy requires restriction of electronic and film coverage.

Also, during the task force meeting, members received notice that the work of the task force was endorsed by the State Bar Board of Governors with one amendment. Specifically, the amendment was to (3) [Factors to be considered by the judge], to read "In ruling on the request, the judge shall consider the fairness to the parties and the following other factors. While the board may feel that the list does not adequately lend importance to the factor of fairness to the parties, the task force felt that several factors covered this issue.

Thus, the revised amended rule recommends adoption of the list of fifteen factors contained in the current draft. (See proposed amended rule 980 (e)(3))

    **4. Order Permitting Media Coverage.** In addition to not requiring findings or a statement of decision, the order permitting media coverage may incorporate any local rule or order of the presiding judge regulating media activity outside of the courtroom, in order to accommodate situations such as multiple notorious trials occurring in the same courthouse. Permission to cover may also be conditioned on the media agency's agreement to pay for increased court-incurred costs. Also, each media agency is specifically made responsible for ensuring that all its personnel know and follow the order permitting coverage, and avoid situations where substitute staff operate outside the scope of the order.

As a result of comment received, the words "presiding judge" in the second sentence are changed to "presiding or supervising judge." The following sentence is deleted: "Unless the order states otherwise, the order shall not apply to proceedings that are continued except for normal recesses, weekends, and holidays." The task force felt that the scope of the order in continuance situations will be made clear on the judge's order form. In response to suggestions that the order elaborate on the types of court-incurred costs that may be included, the task force felt that, under the proposed amended rule, there is already ample authority for the court to assess those costs that are appropriate to the situation. (See proposed amended rule 980(4))

    **5. Modified Order.** To the first sentence setting out that the order permitting media coverage may be modified or terminated on the judge's own motion or upon application to the judge, the following phrase is added: "without

the necessity of a prior hearing or written findings." Comments suggested that this additional wording will clarify the judge's discretionary authority. (See proposed amended rule 980(5))

6. Allowable Coverage. As described above, the task force members voted to retain the existing draft language banning media coverage of criminal pretrial proceedings, including arraignments, bail hearings, preliminary hearings, jury selection, and motions to suppress or exclude evidence. Three task force members opposed to the proposed draft language, urged to provide a minority report with their views on this issue, have provided such a document, attached as Appendix A.

To further clarify the rule's application, the members agreed to add a sentence specifying that media coverage of civil pretrial proceedings is permissible. It was also agreed to add two suggestions from among the comments received — that the penalty phase of a special circumstance case shall be deemed to be part of the criminal trial, not a criminal sentence hearing, and to specify that media coverage is permissible for appellate proceedings. This subdivision of the rule was considerably restructured, in more of an outline form, to clarify areas of prohibited and permissible coverage.

The circulated rule's prohibitions on coverage of proceedings held in chambers, proceedings closed to the public, conferences between an attorney and client, witness, or aide, between attorneys, or between counsel and the judge at the bench, and coverage of jurors or spectators remain. Reference to "minors" was deleted by the task force, and added to the list of factors listed for the judge to consider. (See proposed amended rule 980 (e)(3)(vi)) The task force concurred with those commenters who felt that permission to cover minors should be made in each case by the trial judge. (See proposed amended rule 980(6) and (7))

E. Equipment, Personnel, and Pooling

Task force members reviewed the provisions of Rule 980 regarding equipment, personnel, and pooling and made some minor modifications. It was felt that the rule did not need to specify exactly how many cameras or lenses shall be permitted and that trial judges could deal with each case appropriately. It was also felt that reference to "motorized drives, moving lights, flash attachments, and sudden lighting changes" is not necessary. The rule notes that the equipment shall not produce distracting sound or light. It will be quite clear to the trial judge if noises or lights are being emitted from the media equipment, and the judge can immediately terminate media coverage if this occurs. Furthermore, the task force felt the rule should use language that will stand the test of time regarding

24

133

developing technology, and not be so specific that a rule change will [...] to accommodate the latest equipment.

For clarity, the task force proposes revising the first sentence as follows: "If two or more media agencies request media coverage of a proceeding, they shall file a statement of agreed arrangements." (See proposed amended rule 980(9))

### F. Sanctions

Violation of the rule or an order made under the rule may be the basis for an order terminating coverage, a citation for contempt of court, or an order imposing monetary or other sanctions as provided by law. (It appears that modification of the sanctions statute will be necessary.) (See proposed amended rule 980(f))

## VI. Recommendation to the Judicial Council

The existing California Rules of Court, rule 980, has been in effect for over 11 years following a 6-year period of experimentation and study by the Judicial Council. While it is generally agreed that the existing rule has been applied successfully, recent developments, including high-profile trials and today's citizenry's increasing dependence on the electronic media for information, has resulted in the judiciary's reevaluation of rule 980.

The Task Force on Photographing, Recording, and Broadcasting in the Courtroom sought and considered the views of all interested parties, including judges, media representatives, victims' rights groups, and representatives of various segments of the bar, an educational forum, surveys, and reports. The task force's proposed amendments to rule 980 are reflective of broad and, in many cases, disparate views, and strike a balance between the sometimes competing interests of ensuring participants' rights to fair and dignified trials and preserving public access to our system of justice.

Immediately following Judicial Council approval to circulate its report and recommendations of February 23, 1996, the task force widely disseminated the report and proposed amendments to rule 980. The task force received 75 comments. At its final meeting on April 22, 1996, the task force reconsidered the broad policy questions and specific suggestions within the comments, resulting in this report and the new version of proposed amended rule 980 that appears in Appendix B.

Recommendation

The Task Force on Photographing, Recording, and Broadcasting in the Courtroom recommends that the Judicial Council (1) approve proposed amended rule 980, for implementation effective January 1, 1997, and (2) request the task force to develop the associated forms to implement the rule.

Attachments

135

# Appendices

**136**

Appendix A--

Task Force Minority Report on Issue of Pretrial Criminal Coverage

137

# Judicial Council of California

## Administrative Office of the Courts

303 Second Street, South Tower • San Francisco, California 94107 • Phone 415/396-9100 FAX 415/396-9358

TO:       Members of the Judicial Council

FROM:    Minority Members of the Task Force on Photographing,
Recording and Broadcasting in the Courtroom
Hon. Patrick J. Morris
Hon. Florence-Marie Cooper
Mr. Howard Hanson

DATE:    May 9, 1996

RE:       Minority Position Regarding Ban of
<u>Cameras in all Pre-Trial Criminal Proceedings</u>

<u>Recommendation</u>

We recommend that the Judicial Council adopt the majority report and proposed amended Rule 980, except that the minority proposes a less restrictive ban on criminal pre-trial proceedings as follows:

    (a) Media coverage of any Municipal Court arraignment or initial bail hearing is prohibited; and

    (b) Thereafter, the permission for media coverage is within the discretion of the judge whose decision shall be based on the factors listed in Rule 980(e)(3), and the following additional factors:

- the presence of any unresolved identification issues;
- the potential for interference with any ongoing law-enforcement activity;
- the impact upon the testimony of witnesses; and
- the parties' ability to select a fair and unbiased jury.

29

**138**

## Summary

This minority report recommends a less restrictive ban on pre-trial criminal proceedings and otherwise agrees with the majority report in all respects. The reasons for disagreeing with the complete ban include:

1. It is inconsistent with the council's support of judicial discretion.
2. It is inconsistent with the council's policy of allowing unrestricted public access to court proceedings.
3. It does not promote respect for our system.
4. The proposed ban would preclude coverage of a great percentage of criminal proceedings.
5. The proposed ban is not supported by judges who have had experience with cameras in their courtroom.
6. There are unique benefits to be derived from televising a preliminary hearing.
7. Leaders of both political parties support the increased access to our courts, which electronic coverage provides.
8. There are distinct advantages of cameras over print coverage.
9. Pre-trial proceedings are particularly appropriate to be open to the public.

## Analysis

The following discussion sets forth the reasons for the minority's opposition to a total ban on film and electronic media coverage in criminal and pre-trial proceedings. The minority recognizes that particular problems are posed by the publicity surrounding a case at its very early stages. Of greatest concern are the following issues:

- A decision whether to allow cameras to cover the initial municipal court arraignment must be made by a judicial officer with virtually no information about the case to help in weighing factors for and against such coverage.
- Film coverage of the defendant at that arraignment almost invariably shows him in jail clothing and shackles.
- Even if it is later determined that cameras should be banned from all further proceedings, that prejudicial film of the defendant is available to, and repeatedly used by the media as background to future stories.

As a general proposition, however, California judges can and should be trusted to fairly and reasonably exercise their discretion at all stages of a criminal proceeding, including pre-trial, trial, and post-trial matters. In an era when the legislature and the voting public seem committed to stripping judges of their power

to make decisions on a case-by-case basis, we believe the council should be clearly seen to support judicial discretion.

1.    It is inconsistent with the council's support of judicial discretion.

In response to proposed legislation, the Judicial Council, through its Advisory Committees, has consistently opposed bills which attempt to deprive courts of discretion.

2.    It is inconsistent with the council's policy of allowing unrestricted public access to court proceedings.

The council adopted the December 1993, Report of the Commission on the Future of the Courts, which contains the following statement:

> In order to promote better public understanding of justice and the justice system, press and public access to court proceedings and data should be virtually unrestricted absent some compelling interest.

3.    It does not promote respect for our system.

To exclude cameras on the heels of a trial which has been severely criticized will give the appearance that we are afraid of exposure or have something to hide.  We should maintain our policy of openness to televised coverage of all court proceedings, so that the public will be fully informed about the criminal justice process and thereby gain respect for our system.

"People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc. v. Virginia*, (1980) 448 U.S. 555, 572.

> [T]he respect due the courts was, 'by the clamorous unmannerliness of the people lost, and order, gravity, and decorum which should manifest the authority of a court in the court itself neglected.'  The response, however, was not to restrict the openness of the trials to the public, but instead to prescribe rules for the conduct of those attending them. *Richmond, supra,* at 567, quoting the mid-1600s Virginia Assembly.

·31·

**140**

At our January 1996 public hearing, the task force heard an address by Frances Zemans on behalf of the American Judicature Society. She cautioned against making a decision which would further restrict access to our courts. She strongly advocated in favor of cameras in the nation's courts, to encourage and increase public interest in and respect for our system of justice. The trend in other jurisdictions is to give courts greater discretion to allow televised coverage of court proceedings, not to reduce it.

**4.    The proposed ban would preclude coverage of a great percentage of criminal proceedings.**

Most criminal court hearings are pre-trial. Only a small fraction of felonies go to trial. Limiting the public's view of the work of criminal courts by banning all pre-trial electronic coverage is a substantial reduction of public access which is not justified.

**5.    The proposed ban is not supported by judges who have had experience with cameras in their courtrooms.**

The majority of judges who have had the most experience with camera coverage do not prefer a ban on such coverage. Almost all judges who have had camera experience reported no impact on the outcome of the proceeding. The fear of contamination of juries, intimidation of witnesses, or interference with a fair trial is not borne out by experience.

The same reasons for retaining discretion as to trial coverage apply to pre-trial proceedings. There is no rational basis to say that judges can apply a list of factors for coverage of a trial, but are incapable to applying a list of different factors at earlier stages.

**6.    There are unique benefits to be derived from televising a preliminary hearing.**

The preliminary hearing and pre-trial motions help emphasize just how fair the process is and are often critical junctures in the development of the case for trial. Film and electronic media coverage of these hearings add substantial understanding of, and therefore respect for, the criminal justice system.

Judge Kathleen Kennedy-Powell, who handled the preliminary hearing in the Simpson case, reported that she received letters from all over the state and the country, almost all of which contained positive and complimentary observations

141

about our system of justice. Many who wrote reported that they had gained fresh insight and knowledge about the workings of the criminal justice system.

The ability to broadcast the hearing in its entirety was a valuable tool which conveyed information that would have reached very few through the print media, in spite of the high interest in the case. Through the Simpson preliminary hearing, the nation was exposed to the daily workings of our court system and to a judge who made the hard decisions judges make every day.

7.    Leaders of both political parties support the increased access to our courts, which electronic coverage provides.

> The proposed new Rule unwisely abandons judicial discretion and replaces it with a sweeping prohibition on the vast majority of proceedings. Notwithstanding the notoriety surrounding recent cases, it surprises and disappoints me to see the judicial branch reduce public access and voluntarily surrender its discretion to judge individual cases.
> **(Former Governor George Deukmejian)**

> I . . . tend to believe that overall public scrutiny of our courtrooms should improve the quality of performance in the courtroom by all concerned.
> **(Former Attorney General John Van de Kamp)**

8.    There are distinct advantages of cameras over print coverage.

Through a camera lens, the members of the public see what really occurs and are not limited to a reporter's impressions of what happened. If the constable blundered, they can watch the evidence unfold, not just spot a headline saying that incriminating evidence was suppressed. Cameras in the courtroom increase the capacity of the individual to evaluate proceedings independently of media experts.

9.    Pre-trial proceedings are particularly appropriate to be open to the public.

In *Press-Enterprise v. Riverside County Superior Court*, 104 S.Ct. 2735, the United States Supreme Court stressed the presumption of openness for pre-trial hearings. The First Amendment requires defendants seeking to close them to demonstrate that pre-trial coverage posed more than a reasonable likelihood of damaging their Sixth Amendment Rights. "The preliminary hearing is often the

33

final and most important in the criminal proceeding. . . with the absence of a jury, it can provide an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge."

Recommendation

We therefore recommend that the Judicial Council adopt the majority report and proposed amended Rule 980, except that the minority proposes a less restrictive ban on criminal pre-trial proceedings as follows:

 (a) Media coverage of any Municipal Court arraignment or initial bail hearing is prohibited; and

 (b) Thereafter, the permission for media coverage is within the discretion of the judge whose decision shall be based on the factors listed in Rule 980(e)(3), and the following additional factors:

- the presence of any unresolved identification issues;
- the potential for interference with any ongoing law-enforcement activity;
- the impact upon the testimony of witnesses; and
- the parties' ability to select a fair and unbiased jury.

Appendix B

Text of Proposed Amended Rule 980

2

3   Rule 980.  Photographing, recording, and broadcasting in ~~the courtroom~~ court

4        (a)  [Introduction]  The judiciary is responsible for ensuring the fair and equal

5   administration of justice.  The judiciary adjudicates controversies, both civil and

6   criminal, in accordance with established legal procedures in the calmness and

7   solemnity of the courtroom.  Photographing, recording, and broadcasting of courtroom

8   proceedings may be permitted as circumscribed in this rule if executed in a manner

9   that ensures that the fairness and dignity of the proceedings are not adversely affected.

10  This rule does not create a presumption for or against granting permission to

11  photograph, record, or broadcast court proceedings.

12        ~~(a)~~(b)  [Definitions]  For the purposes of this rule,

13        (1)  ~~"Film or electronic media coverage"~~ "Media coverage" means any

14  photographing, recording, or broadcasting of court proceedings by the media using

15  television, radio, photographic, or recording equipment.

16        (2)  "Media" or "media agency" means any person or organization engaging in

17  news gathering or reporting and includes any newspaper, radio or television station or

18  network, news service, magazine, trade paper, in-house publication, professional

19  journal, or other news-reporting or news-gathering agency.

20        (3)  "Court" means the courtroom at issue, the courthouse, and its entrances

21  and exits.

22        (4)  "Judge" means the judicial officer assigned to or presiding at the

23  proceeding, except as provided in subdivision (e)(1) if no judge has been assigned.

24        (c)  [Photographing, recording, and broadcasting prohibited]  Except as

25  provided in this rule, court proceedings shall not be photographed, recorded, or

26  broadcast.  This rule does not prohibit courts from photographing or videotaping

27  sessions for judicial education or publications and is not intended to apply to closed-

1   circuit television broadcasts solely within the courthouse or between court facilities if

2   the broadcasts are controlled by the court and court personnel.

3      (c)(d) [Personal recording devices] ~~Unless otherwise ordered for cause,~~ The

4   judge may permit inconspicuous personal recording devices ~~may~~ to be used by

5   persons in a courtroom to make sound recordings as personal notes of the

6   proceedings.  A person proposing to use a recording device shall ~~inform~~ obtain

7   permission from the ~~court~~ judge in advance.  The recordings shall not be used for any

8   purpose other than as personal notes.

9      (b)(e) [Media coverage] ~~Film or electronic~~ Media coverage ~~is~~ shall be

10   permitted only on written order of the ~~court~~ judge as provided in this subdivision.

11   The ~~court~~ judge in his or her discretion may permit, refuse, limit, or terminate ~~film or~~

12   ~~electronic~~ media coverage ~~in the interests of justice to protect the rights of the parties~~

13   ~~and the dignity of the court, or to assure the orderly conduct of the proceedings~~.  This

14   rule does not otherwise limit or restrict the right of the media to cover and report court

15   proceedings.

16      (1) (Request for order)  A The media may request ~~for an~~ order ~~shall be made~~

17   permitting media coverage on a form approved by the Judicial Council;.  The form

18   shall be filed ~~a reasonable time~~ at least five court days before the portion of the

19   proceeding to be covered unless good cause is shown.  A completed, proposed order

20   on a form approved by the Judicial Council shall be filed with the request.  The judge

21   assigned to the proceeding shall rule upon the request.  If no judge has been assigned,

22   the request shall be submitted to the judge supervising the calendar department, and

23   thereafter be ruled upon by the judge assigned to the proceeding. The clerk shall

24   promptly ~~inform~~ notify the parties ~~of the~~ that a request has been filed.

25      (2) (Hearing)  The judge may hold a hearing on the request or rule on the

26   request without a hearing.

27      (3) (Factors to be considered by the judge)  In ruling on the request, the

28   judge shall consider the following factors:

145

1        (i)  Importance of maintaining public trust and confidence in the judicial

2   system;

3        (ii)  Importance of promoting public access to the judicial system;

4        (iii)  Consent of the parties;

5        (iv)  Nature of the case;

6        (v)  Privacy rights of all participants in the proceeding, including witnesses,

7   jurors, and victims;

8        (vi)  Effect on any minor who is a party, prospective witness, victim, or other

9   participant in the proceeding;

10       (vii)  Effect of coverage on the willingness of witnesses to cooperate, including

11  the risk that coverage will engender threats to the health or safety of any witness;

12       (viii)  Effect on excluded witnesses who would have access to the televised

13  testimony of prior witnesses;

14       (ix)  Scope of the coverage and whether partial coverage might unfairly

15  influence or distract the jury;

16       (x)  Difficulty of jury selection if a mistrial is declared;

17       (xi)  Security and dignity of the court;

18       (xii)  Undue administrative or financial burden to the court or participants;

19       (xiii)  Interference with neighboring courtrooms;

20       (xiv)  Maintaining orderly conduct of the proceeding;

21       (xv)  Any other factor the judge deems relevant.

22       (4)  (Order permitting media coverage)  The judge ruling on the request to

23  permit media coverage is not required to make findings or a statement of decision.

24  The order may incorporate any local rule or order of the presiding or supervising

25  judge regulating media activity outside of the courtroom.  The judge may condition

26  the order permitting media coverage on the media agency's agreement to pay any

27  increased court-incurred costs resulting from the permitted media coverage (for

28  example, for additional court security or utility service).  ~~Unless the order states~~

37

1   ~~otherwise, it does not apply to proceedings that are continued except for normal~~

2   ~~recesses, weekends, and holidays.~~ Each media agency shall be responsible for

3   ensuring that all its media personnel who cover the court proceeding know and follow

4   the provisions of the court order and this rule.

5       (5) (Modified order)  The order permitting media coverage may be modified

6   or terminated on the judge's own motion or upon application to the judge without the

7   necessity of a prior hearing or written findings.  Notice of the application and any

8   modification or termination ordered pursuant to the application shall be given to the

9   parties and each media agency permitted by the previous order to cover the

10  proceeding.

11      (2) (6) (Prohibited coverage) ~~Proceedings held in chambers, proceedings~~

12  ~~closed to the public, and jury selection shall not be photographed, recorded, or~~

13  ~~broadcast.  Conferences between an attorney and client, witness or aide, between~~

14  ~~attorneys, or between counsel and the court at the bench shall not be recorded or~~

15  ~~received by sound equipment.  Closeup photography of jurors is prohibited.~~ The

16  judge shall not permit media coverage of the following:

17      (i)  Criminal

18          (A)  Pretrial proceedings, including arraignments, bail hearings,

19              preliminary hearings, jury selection, and motions to suppress or

20              exclude evidence

21          (B)  Trial proceedings not observed by the jury or trier of fact

22      (ii)  Civil

23          Trial proceedings not observed by the jury or trier of fact

24      (iii)  General

25          (A)  Proceedings held in chambers

26          (B)  Proceedings closed to the public

27          (C)  Conferences between an attorney and a client, witness, or aide,

28              between attorneys, or between counsel and the judge at the bench

1        (D) ~~Jurors or spectators~~

2        (7) (Permitted coverage) The judge may permit media coverage of the

3 following:

4        (i)   Criminal

5           (A) Trial proceedings observed by the jury or trier of fact, including

6              special circumstances penalty proceedings under Penal Code

7              section 190 et seq.

8           (B) Sentencing hearings

9           (C) Postverdict proceedings

10        (ii) Civil

11           (A) Pretrial proceedings

12           (B) Trial proceedings observed by the jury or trier of fact

13        (iii) Appellate (Supreme Court, Courts of Appeal, and appellate department

14           of a superior court)

15           Oral argument (as permitted by the appellate court)

16        ~~(3)~~(8) (Equipment and personnel) The ~~court~~ judge may require media

17 ~~personnel~~ agencies to demonstrate that proposed personnel and equipment ~~complies~~

18 comply with this rule. The ~~court~~ judge may specify the placement of media personnel

19 and equipment to permit reasonable media coverage without disruption of the

20 proceedings.

21        Unless the ~~court~~ judge in ~~its~~ his or her discretion ~~and for good cause~~ orders

22 otherwise, the following rules shall apply:

23        (i) One television camera and one still photographer~~, with not more than two~~

24 ~~cameras and four lenses, are~~ shall be permitted.

25        (ii) The equipment used shall not produce distracting sound or light. Signal

26 lights or devices to show when equipment is operating shall not be visible. ~~Motorized~~

27 ~~drives, moving lights, flash attachments, or sudden lighting changes shall not be used.~~

1    (iii) ~~Existing courtroom sound and lighting systems shall be used without~~

2    ~~modification.~~ An order ~~granting permission to modify~~ permitting or requiring

3    modification of existing sound or lighting systems is deemed to require that the

4    modifications be installed, maintained, and removed without public expense or

5    disruption of proceedings. Microphones and wiring shall be unobtrusively located in

6    places approved by the ~~court~~ judge and shall be operated by one person.

7    (iv) Operators shall not move equipment or enter or leave the courtroom while

8    the court is in session, or otherwise cause a distraction.

9    (v) Equipment or clothing shall not bear the insignia or marking of a media

10   agency.

11   ~~(4)~~(9) (Media pooling) If two or more ~~than one~~ media ~~agency~~ agencies of ~~one~~

12   the same type ~~wish to cover~~ request media coverage of a proceeding, they shall file a

13   statement of agreed arrangements. If they are unable to agree, the ~~court~~ judge may

14   deny ~~film or electronic~~ media coverage by that type of media agency.

15   ~~(d) [Other photographing, recording, or broadcasting] Any other~~

16   ~~photographing, recording, or broadcasting of court proceedings is prohibited unless~~

17   ~~specifically authorized by the court.~~

18   ~~(e)~~(f) [~~Unauthorized use~~ Sanctions] Any ~~unauthorized use of photographs,~~

19   ~~recordings, or transmissions~~ violation of this rule or an order made under this rule is

20   an unlawful interference with the proceedings of the court and may be the basis for an

21   order terminating media coverage, a citation for contempt of court, or an order

22   imposing monetary or other sanctions as provided by law.

Appendix C

### Text of Circulated Proposed Amended Rule 980
### (Comments Received Were Directed to this Version of the Rule)

**Rule 980.  Photographing, recording, and broadcasting in ~~the courtroom~~ court**

(a)  [Introduction]  The judiciary is responsible for ensuring the fair and equal administration of justice.  The judiciary adjudicates controversies, both civil and criminal, in accordance with established legal procedures in the calmness and solemnity of the courtroom.  Photographing, recording, and broadcasting of courtroom proceedings may be permitted as circumscribed in this rule if executed in a manner that ensures that the fairness and dignity of the proceedings are not adversely affected. This rule does not create a presumption for or against granting permission to photograph, record, or broadcast court proceedings.

~~(a)~~ (b) [Definitions]  For the purposes of this rule.

(1)  "Film or electronic media coverage" or "media coverage" or "coverage" means any photographing, recording, or broadcasting of court proceedings by the media using television, radio, photographic, or recording equipment.~~,~~

(2)  "Media" or "media agency" means any person or organization engaging in news gathering or reporting and includes any newspaper, radio or television station or network, news service, magazine, trade paper, in-house publication, professional journal, or other news-reporting or news-gathering agency.~~,~~

(3)  "Court" means the courtroom at issue, the courthouse, and the area immediately surrounding the courthouse;

(4)  "Judge" means the judge assigned to or presiding at the proceeding, except as provided in subdivision (e)(1) if no judge has been assigned.

(c)      [Photographing, recording, and broadcasting prohibited]  Except as provided in this rule, court proceedings shall not be photographed, recorded, or broadcast.

(c)(d) [Personal recording devices] Unless otherwise ordered for cause, The judge may permit inconspicuous personal recording devices may to be used by persons in a courtroom to make sound recordings as personal notes of the proceedings. A person proposing to use a recording device shall inform obtain permission from the court judge in advance. The recordings shall not be used for any purpose other than as personal notes.

(b) (e) [Media coverage] Film or electronic media coverage is shall be permitted only on written order of the court judge as provided in this subdivision. The court judge in his or her discretion may refuse, limit, or terminate film or electronic media coverage in the interests of justice to protect the rights of the parties and the dignity of the court, or to assure the orderly conduct of the proceedings. This rule does not otherwise limit or restrict the right of the media to cover and report court proceedings.

(1) [Request for order] A The media may request for an order shall be made permitting coverage on a form approved by the Judicial Council. The form shall be filed a reasonable time at least five court days before the portion of the proceeding to be covered. A completed, proposed order on a form approved by the Judicial Council shall be filed with the request. The request shall be heard by the judge assigned to the proceeding. If no judge has been assigned, the request shall be heard by the judge supervising the calendar department. The clerk shall promptly inform notify the parties of the that a request has been filed.

(2) [Hearing] The judge may hold a hearing on the request or rule on the request without a hearing. If there is a hearing, at least two court days' notice shall be given to the parties and each media agency requesting coverage.

(3) [Factors to be considered by the judge] In ruling on the request, the judge shall consider the following factors:

(i) Importance of maintaining public trust and confidence in the judicial system;

(ii) Importance of promoting public access to the judicial system;

(iii)   Consent of the parties;

(iv)   Nature of the case;

(v)   Privacy rights of all proceeding participants, including witnesses, jurors, and victims;

(vi)   Effect on excluded witnesses who would have access to the televised testimony of prior witnesses;

(vii)   Scope of the coverage and whether partial coverage might unfairly influence or distract the jury;

(viii)   Difficulty of jury selection if a mistrial is declared;

(ix)   Security and dignity of the court;

(x)   Undue administrative or financial burden to the court or participants;

(xi)   Interference with neighboring courtrooms;

(xii)   Maintaining orderly conduct of the proceeding;

(xiii)  Any other factor the judge deems relevant.

(4)  [Order permitting media coverage]  The judge ruling on the request to permit media coverage is not required to make findings or a statement of decision. The order may incorporate any local rule or order of the presiding judge regulating media activity outside of the courtroom.  The judge may condition the order permitting coverage on the media agency's agreement to pay any increased court-incurred costs resulting from the permitted coverage (for example, for additional court security or utility service).  Unless the order states otherwise, ~~it does~~ the order shall not apply to proceedings that are continued except for normal recesses, weekends, and holidays.  Each media agency shall be responsible for ensuring that all their media personnel who cover the court proceeding know and follow the provisions of the court order and this rule.

(5)  [Modified order]  The order permitting media coverage may be modified or terminated on the judge's own motion or upon application to the judge.  Notice of the

43

application and any modification or termination ordered pursuant to the applications shall be given to the parties and each media agency permitted by the previous order to cover the proceeding.

(2)(6)  [Prohibited Coverage]  The judge shall not permit media coverage of criminal pretrial proceedings, including arraignments, bail hearings, preliminary hearings, jury selection, and motions to suppress or exclude evidence.  The judge may permit coverage during a civil or criminal trial of the proceedings observed by the jury or trier of fact only; except the judge may, within his or her discretion, permit coverage of criminal sentencing hearings and postverdict proceedings.  The judge shall not permit coverage of the following:

(i)  proceedings held in chambers;.

(ii)  proceedings closed to the public, and jury selection shall not be photographed, recorded, or broadcast.;

(iii)  conferences between an attorney and a client, witness, or aide, between attorneys, or between counsel and the court judge at the bench shall not be recorded or received by sound equipment.  Closeup photography of;

(iv)  jurors, spectators, or minors who are parties or witnesses is prohibited.

(3)(7)  [Equipment and personnel]  The court judge may require media personnel to demonstrate that proposed personnel and equipment complies comply with this rule.  The court judge may specify the placement of media personnel and equipment to permit reasonable coverage without disruption of the proceedings.

Unless the court judge in its his or her discretion and for good cause orders otherwise, the following rules shall apply:

(i)  One television camera and one still photographer, with not more than two cameras and four lenses, are shall be permitted.

(ii)  The equipment used shall not produce distracting sound or light.  Signal lights or devices to show when equipment is operating shall not be visible.  Motorized

153

drives, moving lights, flash ~~attachments~~ mechanisms, or sudden lighting changes shall not be used.

(iii)  Existing courtroom sound and lighting systems shall be used without modification.  An order granting permission to modify existing systems is deemed to require that the modifications be installed, maintained, and removed without public expense or disruption of proceedings.  Microphones and wiring shall be unobtrusively located in places approved by the ~~court~~ judge and shall be operated by one person.

(iv)  Operators shall not move equipment or enter or leave the courtroom while the court is in session, or otherwise cause a distraction.

(v)  Equipment or clothing shall not bear the insignia or marking of a media agency.

~~(4)~~(8)  [Media pooling]  If more than one media agency of ~~one~~ the same type wish to cover a proceeding, they shall file a statement of agreed arrangements.  If they are unable to agree, the ~~court~~ judge may deny film or electronic media coverage by that type of media agency.

~~(d)  [Other photographing, recording, or broadcasting]  Any other photographing, recording, or broadcasting of court proceedings is prohibited unless specifically authorized by the court.~~

~~(e)~~ (f)  [~~Unauthorized use~~ Sanctions]  Any ~~unauthorized use of photographs, recordings, or transmissions~~ violation of this rule or an order made under this rule is an unlawful interference with the proceedings of the court and may be the basis for an order terminating coverage, a citation for contempt of court, or an order imposing monetary or other sanctions as provided by law.

## Appendix D

## Summary of Comments on Proposed Rule Amendments

Table 1:    Rule 980 - Invitation to Comment
            Comment Received by April 8
            Comment Received Late
Table 2:    Suggested Revisions to the Proposed New Rule 980
Table 3:    Respondents Who Agree with the Substantive Portions of the New
            Rule
Table 4:    Respondents Who Think the New Rule Does Not Sufficiently
            Restrict Cameras
Table 5:    Respondents Who Think the New Rule is Too Restrictive
Table 6:    Respondents With Specific Suggestions Who Did Not Express An
            Opinion Of the Proposed Rule

155

**Appendix E**

Persons Offering Oral/Written Testimony to the Task Force on
Photographing, Recording and Broadcasting in the Courtroom
(Up until the time the first proposed amended rule 980 was circulated)
(November, 1995-February 27, 1996)

1. Judge Steven J. Stone - Court of Appeal, Second Appellate District
2. Harry C. Gilbert - Capps, Staples, Ward, Hastings & Dodson, Walnut Creek, CA
3. J. Michael Mullins - District Attorney, Sonoma County
4. Taffy Patton - Cable In The Classroom
5. Howard S. Williams - Vista, CA
6. Judge John Gallagher - Fresno, CA
7. Judge James Ford - Sacramento Superior Court
8. Michael Rushford - Criminal Justice Legal Foundation
9. Bob Rawitch - California Society of Newspaper Editors
10. William Bennett Turner, Esq. - San Francisco, CA
11. Kelly Rudiger - Doris Tate Crime Victims Bureau
12. Families & Friends of Murder Victims - Fairfield, CA
13. Sam Knott - El Cajon, CA
14. Daniel G. McIntosh - Beverly Hills Bar Association
15. Jack T. Weedin - California Public Defender's Association
16. Joan Wolff - The Lawyers' Club of San Francisco
17. Susan Gembrowski & Cliff Albert - Society of Professional Journalists, San Diego
18. Edwin R. Croft - Alameda, CA
19. John S. Martel - Farella Braun & Martel, San Francisco, CA
20. Carl I. Sisskind - KFMB TV 8, San Diego, CA
21. Howard Hanson - County Clerk/Court Administrator, San Rafael, CA
22. Steven Brill - Court TV, New York
23. David Bartlett - RTNDA - The Association of Electronic Journalists
24. Cathy A. Christian - Nielsen, Merksamer, Parrinello, Mueller & Naylor, Sacramento, CA
25. Charles Kuralt - New York, NY
26. Senator Quentin L. Kopp
27. Peter Keane, Esq. - KPIX Legal Analyst
28. Royal Oakes, Esq. - Radio & T.V. News Association of Southern California
29. Linda Seebach, Jim Wheaton & Bill Turner, Esq. - Society of Professional Journalists
30. Manuel Medrano - KNBC, Los Angeles
31. Stan Statham - California Broadcasters Association
32. Jim Brelsford, Esq. - Steinhart & Falconer, San Francisco, CA

43

33. Jim Ewert - California Newspaper Publishers Association
34. Patrick Mahoney, Esq. - San Francisco City Attorneys Office
35. Hon. Mary Ann Murphy - Los Angeles Superior Court
36. Robert Warren, Esq. Professor John Sims & Vic Biondi - ABC, CBS, NBC & CNN
37. Geraldine O'Connor - Office of Sen. Quentin L. Kopp
38. Frances Zemans - American Judicature Society
39. Neil Shapiro - Northern California Chapter of Radio & TV Directors
40. Terry Francke - First Amendment Coalition
41. Dan Kolkey - Office of Gov. Pete Wilson
42. Judge Judith McConnell - San Diego Superior Court
43. Thomas J. Orloff - District Attorney, Alameda County
44. Dr. Nancy Jewell Cross - Justice Network

f:\users\sipes\cameras\mayrufo.doc

**157**

### Appendix E
Persons Offering Oral/Written Testimony to the Task Force on
Photographing, Recording and Broadcasting in the Courtroom
(Up until the time the first proposed amended rule 980 was circulated)
(November, 1995-February 27, 1996)

1. Judge Steven J. Stone - Court of Appeal, Second Appellate District
2. Harry C. Gilbert - Capps, Staples, Ward, Hastings & Dodson, Walnut Creek, CA
3. J. Michael Mullins - District Attorney, Sonoma County
4. Taffy Patton - Cable In The Classroom
5. Howard S. Williams - Vista, CA
6. Judge John Gallagher - Fresno, CA
7. Judge James Ford - Sacramento Superior Court
8. Michael Rushford - Criminal Justice Legal Foundation
9. Bob Rawitch - California Society of Newspaper Editors
10. William Bennett Turner, Esq. - San Francisco, CA
11. Kelly Rudiger - Doris Tate Crime Victims Bureau
12. Families & Friends of Murder Victims - Fairfield, CA
13. Sam Knott - El Cajon, CA
14. Daniel G. McIntosh - Beverly Hills Bar Association
15. Jack T. Weedin - California Public Defender's Association
16. Joan Wolff - The Lawyers' Club of San Francisco
17. Susan Gembrowski & Cliff Albert - Society of Professional Journalists, San Diego
18. Edwin R. Croft - Alameda, CA
19. John S. Martel - Farella Braun & Martel, San Francisco, CA
20. Carl I. Sisskind - KFMB TV 8, San Diego, CA
21. Howard Hanson - County Clerk/Court Administrator, San Rafael, CA
22. Steven Brill - Court TV, New York
23. David Bartlett - RTNDA - The Association of Electronic Journalists
24. Cathy A. Christian - Nielsen, Merksamer, Parrinello, Mueller & Naylor, Sacramento, CA
25. Charles Kuralt - New York, NY
26. Senator Quentin L. Kopp
27. Peter Keane, Esq. - KPIX Legal Analyst
28. Royal Oakes, Esq. - Radio & T.V. News Association of Southern California
29. Linda Seebach, Jim Wheaton & Bill Turner, Esq. - Society of Professional Journalists
30. Manuel Medrano - KNBC, Los Angeles
31. Stan Statham - California Broadcasters Association
32. Jim Brelsford, Esq. - Steinhart & Falconer, San Francisco, CA

48

33. Jim Ewert - California Newspaper Publishers Association
34. Patrick Mahoney, Esq. - San Francisco City Attorneys Office
35. Hon. Mary Ann Murphy - Los Angeles Superior Court
36. Robert Warren, Esq. Professor John Sims & Vic Biondi - ABC, CBS, NBC & CNN
37. Geraldine O'Connor - Office of Sen. Quentin L. Kopp
38. Frances Zemans - American Judicature Society
39. Neil Shapiro - Northern California Chapter of Radio & TV Directors
40. Terry Francke - First Amendment Coalition
41. Dan Kolkey - Office of Gov. Pete Wilson
42. Judge Judith McConnell - San Diego Superior Court
43. Thomas J. Orloff - District Attorney, Alameda County
44. Dr. Nancy Jewell Cross - Justice Network

f:\users\sipes\cameras\mayrufo.doc

**159**