# Exhibit O

Hak-Shing William Tam                                December 1, 2009
San Francisco, CA

```
 1    invitations?  Did you -- how did they --
 2         A    I receive invitations.
 3         Q    I see.  So you would receive an
 4    invitation to go speak at a church and you would
 5    go speak at the church?
 6         A    Yes.
 7         Q    Can you say about how many such
 8    meetings you attended during that time period,
 9    January to November 2008?
10              MS. MOSS:  I am going to -- again I am
11    going to object on First Amendment grounds to the
12    extent that you are asking him to discuss things
13    that were not public and that were part of his
14    sort of private, personal political activities
15    that are not publicly known.  If you want to ask
16    him about things that he did that were public with
17    radio, media, television, that sort of thing, that
18    is fine.  But I think we are getting into areas
19    where his answer is going to necessarily require
20    him to reveal his private associational
21    activities.
22              MR. DETTMER:  Okay.  And, you know, I
23    know we -- just we are going to have a lawyer
24    discussion here for just a second, and you are
25    obviously welcome to listen.
```

1              I mean, I do want to know those things

2       and I think we have a right to it.  But obviously

3       that is being litigated right now.

4              MS. MOSS:  Understood.

5              MR. DETTMER:  I think maybe one thing

6       that we should just as a housekeeping matter work

7       out, I don't want to waste our time asking a whole

8       bunch of questions that you are going to instruct

9       him not to answer.  But I also don't want you to

10      argue later that I have waived the right to ask

11      those questions.  So can we just have an agreement

12      that I don't have to ask him a whole bunch of

13      questions that you are going to object to,

14      instruct him not to answer?

15             MS. MOSS:  I think that is fair.  I

16      think we both understand that this issue is beyond

17      us, it is being decided today down in Pasadena

18      potentially.  And then we will obviously --

19             MR. DETTMER:  Okay.  So you are not

20      going to argue waiver just because we have not

21      gone through all the steps?

22             MS. MOSS:  I am not going to argue

23      waiver.  I am very clear I am going to object to

24      any question that we believe would intrude upon

25      the First Amendment privileges that we have

Hak-Shing William Tam                                    December 1, 2009
San Francisco, CA

1    asserted.  I understand we have a disagreement

2    over that.  I understand that Judge Walker has

3    made clear that if we ultimately do not prevail on

4    this that it may mean that you would have to

5    redepose Mr. Tam.  And I am not going to argue

6    that -- I know you have to ask every question.

7                MR. PUGNO:  Can I confer with her just

8    a moment?

9                MR. DETTMER:  Sure.  Shall we go off

10   the record?

11               THE VIDEOGRAPHER:   The time is

12   9:24 a.m., and we are off the record.

13               (Recess 9:24 a.m.-9:28 a.m.)

14               THE VIDEOGRAPHER:   The time is

15   9:28 a.m., and we are back on the record.

16               MR. DETTMER:  Okay.  So we just have

17   had a brief discussion off the record about this

18   paragraph 27 and sort of the extent of the First

19   Amendment privilege that defendant-intervenors are

20   asserting.

21               And what I have explained what I want

22   to get into is basically just sort of the

23   explanation behind this paragraph 27 and what

24   Dr. Tam did.  And I made clear that I don't want

25   to get into the contents of his -- specific

1    contents of his communications at this point

2    because of the First Amendment discussions that we

3    have been having a disagreement about.  However, I

4    do want to get into the extent of his

5    communications, how often he had meetings with

6    people, you know, how many people attended,

7    basically fleshing out this first sentence of

8    paragraph 27, and actually all of paragraph 27.

9            I am not going to ask you about the

10   identities of specific individuals right now based

11   on, you know, the notion that I can come back

12   later and ask about those if we prevail on the

13   First Amendment issue and on the understanding

14   that you are not going to argue there is any kind

15   of waiver around that.  And I understand that you

16   do not want me to get into even how many meetings

17   there were, how many people attended, or anything

18   like that.

19           MS. MOSS:  Okay.  To be clear, general,

20   general responses about the sorts of activities

21   that he was involved in as reflected in

22   paragraph 27 I don't believe are objectionable.

23   But to the extent that the answer would require

24   him to discuss the groups or organizations or

25   persons who he was meeting with, I believe that

1    that information is covered by the associational

2    privilege of the First Amendment.

3            So to the extent that the answer is

4    about public activities, things that were publicly

5    known that he -- and by public, I mean open to --

6    available to the general public, not to specific

7    groups, I will let him answer those questions.

8    And so, you know, it may be that we have to do it

9    on a question by question basis.  But as a general

10   matter I do not think that you have the right to

11   inquire into how many meetings he had or who he

12   spoke with or how many people were there if it is

13   private and not publicly available because it

14   implicates his associational political rights.

15           MS. STEWART:  If we just have an

16   understanding for the record of what his private

17   versus what is public?  Because if I am

18   understanding his earlier testimony, he said he

19   spoke to church groups.  If he spoke to a

20   congregation of 100 people, is that public or

21   private?  If the church was open to the public,

22   was that public or private?  Let's get down to

23   brass tacks here.  What is the deal?

24           MS. MOSS:  I believe that that is

25   private.

1        Q    Let me read this second paragraph into
2    the record.  It says, I hope we all wake up now
3    and really work to pass Prop 8.  We have only 48
4    days left.  Even if you have church building
5    projects, mission projects, concert projects, et
6    cetera, please consider postponing them and put
7    all the church man/woman power to work on Prop 8.
8    We cannot lose this critical battle.  If we lose,
9    this will very likely happen -- and then there is
10   an ellipsis.
11           Point 1 under that is -- and I will
12   read it into the record -- same sex marriage will
13   be a permanent law in California.  One by one,
14   other states would fall into Satan's hand.
15           Do you believe that to be true?
16           MS. MOSS:  On First Amendment grounds I
17   am going to instruct him not to answer.
18       **A    I am not going to answer that.**
19   BY MR. DETTMER:
20       Q    Okay.  Let me ask you a slightly, I
21   guess, broader question.  Do you believe that
22   Satan is behind the same sex marriage movement?
23       **A    I'm not going to answer that.**
24           MS. MOSS:  Again I am going to object
25   on First Amendment grounds.