# Exhibit O

```
 1  invitations?  Did you -- how did they --
 2       A    I receive invitations.
 3       Q    I see.  So you would receive an
 4  invitation to go speak at a church and you would
 5  go speak at the church?
 6       A    Yes.
 7       Q    Can you say about how many such
 8  meetings you attended during that time period,
 9  January to November 2008?
10            MS. MOSS:  I am going to -- again I am
11  going to object on First Amendment grounds to the
12  extent that you are asking him to discuss things
13  that were not public and that were part of his
14  sort of private, personal political activities
15  that are not publicly known.  If you want to ask
16  him about things that he did that were public with
17  radio, media, television, that sort of thing, that
18  is fine.  But I think we are getting into areas
19  where his answer is going to necessarily require
20  him to reveal his private associational
21  activities.
22            MR. DETTMER:  Okay.  And, you know, I
23  know we -- just we are going to have a lawyer
24  discussion here for just a second, and you are
25  obviously welcome to listen.
```

```
 1              I mean, I do want to know those things
 2    and I think we have a right to it.  But obviously
 3    that is being litigated right now.
 4              MS. MOSS:  Understood.
 5              MR. DETTMER:  I think maybe one thing
 6    that we should just as a housekeeping matter work
 7    out, I don't want to waste our time asking a whole
 8    bunch of questions that you are going to instruct
 9    him not to answer.  But I also don't want you to
10    argue later that I have waived the right to ask
11    those questions.  So can we just have an agreement
12    that I don't have to ask him a whole bunch of
13    questions that you are going to object to,
14    instruct him not to answer?
15              MS. MOSS:  I think that is fair.  I
16    think we both understand that this issue is beyond
17    us, it is being decided today down in Pasadena
18    potentially.  And then we will obviously --
19              MR. DETTMER:  Okay.  So you are not
20    going to argue waiver just because we have not
21    gone through all the steps?
22              MS. MOSS:  I am not going to argue
23    waiver.  I am very clear I am going to object to
24    any question that we believe would intrude upon
25    the First Amendment privileges that we have
```

```
 1   asserted.  I understand we have a disagreement
 2   over that.  I understand that Judge Walker has
 3   made clear that if we ultimately do not prevail on
 4   this that it may mean that you would have to
 5   redepose Mr. Tam.  And I am not going to argue
 6   that -- I know you have to ask every question.
 7           MR. PUGNO:  Can I confer with her just
 8   a moment?
 9           MR. DETTMER:  Sure.  Shall we go off
10   the record?
11           THE VIDEOGRAPHER:   The time is
12   9:24 a.m., and we are off the record.
13           (Recess 9:24 a.m.-9:28 a.m.)
14           THE VIDEOGRAPHER:   The time is
15   9:28 a.m., and we are back on the record.
16           MR. DETTMER:  Okay.  So we just have
17   had a brief discussion off the record about this
18   paragraph 27 and sort of the extent of the First
19   Amendment privilege that defendant-intervenors are
20   asserting.
21           And what I have explained what I want
22   to get into is basically just sort of the
23   explanation behind this paragraph 27 and what
24   Dr. Tam did.  And I made clear that I don't want
25   to get into the contents of his -- specific
```

```
 1    contents of his communications at this point
 2    because of the First Amendment discussions that we
 3    have been having a disagreement about.  However, I
 4    do want to get into the extent of his
 5    communications, how often he had meetings with
 6    people, you know, how many people attended,
 7    basically fleshing out this first sentence of
 8    paragraph 27, and actually all of paragraph 27.
 9              I am not going to ask you about the
10    identities of specific individuals right now based
11    on, you know, the notion that I can come back
12    later and ask about those if we prevail on the
13    First Amendment issue and on the understanding
14    that you are not going to argue there is any kind
15    of waiver around that.  And I understand that you
16    do not want me to get into even how many meetings
17    there were, how many people attended, or anything
18    like that.
19              MS. MOSS:  Okay.  To be clear, general,
20    general responses about the sorts of activities
21    that he was involved in as reflected in
22    paragraph 27 I don't believe are objectionable.
23    But to the extent that the answer would require
24    him to discuss the groups or organizations or
25    persons who he was meeting with, I believe that
```

```
 1    that information is covered by the associational
 2    privilege of the First Amendment.
 3            So to the extent that the answer is
 4    about public activities, things that were publicly
 5    known that he -- and by public, I mean open to --
 6    available to the general public, not to specific
 7    groups, I will let him answer those questions.
 8    And so, you know, it may be that we have to do it
 9    on a question by question basis.  But as a general
10    matter I do not think that you have the right to
11    inquire into how many meetings he had or who he
12    spoke with or how many people were there if it is
13    private and not publicly available because it
14    implicates his associational political rights.
15            MS. STEWART:  If we just have an
16    understanding for the record of what his private
17    versus what is public?  Because if I am
18    understanding his earlier testimony, he said he
19    spoke to church groups.  If he spoke to a
20    congregation of 100 people, is that public or
21    private?  If the church was open to the public,
22    was that public or private?  Let's get down to
23    brass tacks here.  What is the deal?
24            MS. MOSS:  I believe that that is
25    private.
```

**Hak-Shing William Tam**                                **December 1, 2009**
**San Francisco, CA**

```
 1        Q   Let me read this second paragraph into
 2   the record.  It says, I hope we all wake up now
 3   and really work to pass Prop 8.  We have only 48
 4   days left.  Even if you have church building
 5   projects, mission projects, concert projects, et
 6   cetera, please consider postponing them and put
 7   all the church man/woman power to work on Prop 8.
 8   We cannot lose this critical battle.  If we lose,
 9   this will very likely happen -- and then there is
10   an ellipsis.
11           Point 1 under that is -- and I will
12   read it into the record -- same sex marriage will
13   be a permanent law in California.  One by one,
14   other states would fall into Satan's hand.
15           Do you believe that to be true?
16           MS. MOSS:  On First Amendment grounds I
17   am going to instruct him not to answer.
18        A   I am not going to answer that.
19   BY MR. DETTMER:
20        Q   Okay.  Let me ask you a slightly, I
21   guess, broader question.  Do you believe that
22   Satan is behind the same sex marriage movement?
23        A   I'm not going to answer that.
24           MS. MOSS:  Again I am going to object
25   on First Amendment grounds.
```