COOPER AND KIRK, PLLC
Charles J. Cooper (DC Bar No. 248070)*
*ccooper@cooperkirk.com*
David H. Thompson (DC Bar No. 450503)*
*dthompson@cooperkirk.com*
Howard C. Nielson, Jr. (DC Bar No. 473018)*
*hnielson@cooperkirk.com*
Nicole J. Moss (DC Bar No. 472424)*
*nmoss@cooperkirk.com*
Jesse Panuccio (DC Bar No. 981634)*
*jpanuccio@cooperkirk.com*
Peter A. Patterson (Ohio Bar No. 0080840)*
*ppatterson@cooperkirk.com*
1523 New Hampshire Ave. N.W., Washington, D.C. 20036
Telephone: (202) 220-9600, Facsimile: (202) 220-9601

LAW OFFICES OF ANDREW P. PUGNO
Andrew P. Pugno (CA Bar No. 206587)
*andrew@pugnolaw.com*
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 608-3065, Facsimile: (916) 608-3066

ALLIANCE DEFENSE FUND
Brian W. Raum (NY Bar No. 2856102)*
*braum@telladf.org*
James A. Campbell (OH Bar No. 0081501)*
*jcampbell@telladf.org*
15100 North 90th Street, Scottsdale, Arizona 85260
Telephone: (480) 444-0020, Facsimile: (480) 444-0028

ATTORNEYS FOR DEFENDANT-INTERVENORS DENNIS HOLLINGSWORTH,
GAIL J. KNIGHT, MARTIN F. GUTIERREZ, MARK A. JANSSON,
and PROTECTMARRIAGE.COM – YES ON 8, A PROJECT OF CALIFORNIA RENEWAL

* Admitted *pro hac vice*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the | CASE NO. 09-CV-2292 VRW<br>Chief Judge Vaughn R. Walker<br><br>**DEFENDANT-INTERVENORS' DENNIS HOLLINGSWORTH, GAIL J. KNIGHT, MARTIN F. GUTIERREZ, MARK A. JANSSON, AND PROTECTMARRIAGE.COM'S OBJECTIONS TO DISCOVERY ORDERS OF MAGISTRATE JUDGE SPERO** |

California Department of Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; and DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles,

          Defendants,

and

PROPOSITION 8 OFFICIAL PROPONENTS DENNIS HOLLINGSWORTH, GAIL J. KNIGHT, MARTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM, and MARK A. JANSSON; and PROTECTMARRIAGE.COM – YES ON 8, A PROJECT OF CALIFORNIA RENEWAL,

          Defendant-Intervenors.

---

Additional Counsel for Defendant-Intervenors

ALLIANCE DEFENSE FUND
Timothy Chandler (CA Bar No. 234325)
*tchandler@telladf.org*
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 932-2850, Facsimile: (916) 932-2851

Jordan W. Lorence (DC Bar No. 385022)*
*jlorence@telladf.org*
Austin R. Nimocks (TX Bar No. 24002695)*
*animocks@telladf.org*
801 G Street NW, Suite 509, Washington, D.C. 20001
Telephone: (202) 393-8690, Facsimile: (202) 347-3622

* Admitted *pro hac vice*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

BACKGROUND .......................................................................................................................... 1

OBJECTIONS .............................................................................................................................. 9

    A.   OBJECTIONS TO RELEVANCE RULINGS .......................................................... 9

    B.   OBJECTIONS TO FIRST AMENDMENT PRIVILEGE RULINGS .......................... 11

    C.   OBJECTIONS TO PRODUCTION SCHEDULE AND BURDEN RULINGS ............ 15

CONCLUSION ........................................................................................................................... 16

# TABLE OF AURHORITIES

**Cases**                                                                                                                                   **Page**

*Dole v. Service Employees Union, AFL-CIO, Local 280*, 950 F.2d 1456 (9th Cir. 1991) ............... 7, 12

*Perry v. Schwarzenegger*, No. 09-17241, amended slip op. (9th Cir. Jan. 4, 2010) ........ 6, 7, 11, 12, 15

*Perry v. Schwarzenegger*, No. 09-17241, slip op. (9th Cir. filed Dec. 11, 2009) .................................. 4

Order, *Perry v. Schwarzenegger*, No. 09-17241 (9th Cir. Dec. 30, 2009) ............................................ 6

Chamber Order, *Perry v. Schwarzenegger*, No. 09-17241 (9th Cir. Dec. 16, 2009) ............................ 6

Order, *Perry v. Schwarzenegger*, No. 09-17241 (9th Cir. Nov. 25, 2009) ........................................... 4

**Other**

Recording of Oral Argument, *Perry v. Schwarzenegger*, No. 09-17241 (9th Cir. Dec. 1, 2009), *available at* http://www.ca9.uscourts.gov/media/view_subpage.php?pk_id=0000004515 ................... 4

FED. R. CIV. P. 72(a) ............................................................................................................................. 1

Pursuant to Fed. R. Civ. P. 72(a), Defendant-Intervenors ProtectMarriage.com, Dennis Hollingsworth, Mark Jansson, Gail Knight, and Martin Gutierrez (collectively, "Proponents"), respectfully assert the following objections to the oral and written Orders of Magistrate Judge Joseph C. Spero, entered on January 6 and 7, 2010.  *See* Hr'g of Jan. 6, 2010; Doc # 372.

## BACKGROUND

On August 19, 2009, Plaintiffs propounded sweeping Requests for Production that sought virtually all documents in Proponents' possession relating in any way to Proposition 8.  *See* Doc # 187-3.  Proponents objected—on First Amendment, other privilege, relevance, burden, and other grounds—to producing many of the documents implicated by Plaintiffs' request.  *See, e.g.*, Doc # 187-4 at ¶ 2 (attorney-client and work-product privilege objection), ¶¶ 4 & 8 (First Amendment privilege objection), ¶ 5 (objecting to producing documents equally available from public sources or third parties), ¶ 6 (relevance objection).  Proponents agreed to produce (and have produced) documents (including television advertisements, radio advertisements, newspaper advertisements, press releases, posters, flyers, event notification flyers, website content, letters, emails, and PowerPoint presentations) that they distributed to the electorate, including to discrete voter groups as small as individual church congregations.  *See* Doc # 197 at 6; Doc # 214 at 2.

To the extent the requests sought more, however, Proponents, on September 15, 2009, moved for a protective order based on relevance, burden, and First Amendment privilege grounds.  Specifically, Proponents objected to "Plaintiffs' demands for disclosure of Proponents' *nonpublic* and/or anonymous communications," Doc # 197 at 6, such as confidential drafts of communications and documents.  Proponents highlighted as an example Plaintiffs' Request No. 8, which sought "*all* correspondence Defendant-Intervenors may have had with any 'third party' bearing any relationship to Proposition 8 whatsoever."  Doc # 187 at 8.  Proponents also explained and objected that Plaintiffs "[o]ther Requests are similarly sweeping."  *Id.* at 8 n.1.

On October 1, this Court "granted in part and denied in part" Proponent's motion for a protective order. Doc # 214 at 17. The Court held that discovery could be had to "determine[e] the intent behind a measure enacted by voters." *Id.* at 13. The Court explained that while "Proponents have agreed to disclose communications they targeted to voters, including communications to discrete groups of voters," they argued that " 'non-public' communications to confirmed Prop 8 supporters or to those involved in the Prop 8 campaign could [not] be relevant to the intent determination." *Id.* at 14. The Court disagreed, and held that "[t]he line between relevant and non-relevant communications is not identical to the public/nonpublic distinction" and "[a]t least some 'non-public' communications from proponents to those who assumed a large role in the Prop 8 campaign could be relevant." *Id.* at 15. The Court held, however, that a discovery request "encompassing any communication between proponents and any third party[] is simply too broad." *Id.* at 16. The Court thus required a "[n]arrowing" of such a request "to target those communications most likely to be relevant to the factual issues identified by plaintiffs." *Id.* at 16. The Court explained that a request seeking third party communications "is appropriate to the extent it calls for (1) communications by and among proponents and their agents … concerning campaign strategy and (2) communications by and among proponents and their agents concerning messages to be conveyed to voters," and (3) "communications by and among proponents with those who assumed a directorial or managerial role in the Prop 8 campaign, like political consultants or ProtectMarriage.com's treasurer and executive committee, among others." *Id.* at 17.

Proponents maintained that this narrowing still implicated nonpublic documents that were privileged under the First Amendment. The Court thus held that Proponents could submit "a limited number of those documents" for *in camera* review. Hr'g of Nov. 2, 2009, Tr. at 42-43. *See also* Doc # 247 (minute order). Proponents submitted such a sample along with a sealed declaration of Ronald Prentice, responding to the Court's request for "the identity of all those who were in management

responsibility for the campaign." Hr'g of Nov. 2, 2009, Tr. at 44. Following that *in camera* review process, the Court explained that only 21 of the 60 documents submitted had to be produced. The other 39 documents were "either not responsive to plaintiffs' request or are so attenuated from the themes or messages conveyed to voters that they are, for practical purposes, not responsive." Doc. 252 at 4. The Court deemed nondiscoverable documents that "say nothing about campaign messages or themes to be conveyed to the voters," including documents that "discuss topics that might relate to messages ultimately adopted or considered by the campaign" but do not "discuss voters or their potential reactions." *Id.* at 6, 8. The Court held that Proponents did not have to produce documents in the sample relating to:

> "fundraising strategy, polling information or hiring decisions"; "the mechanics of operating a campaign"; "the petition drive to qualify Prop 8 for the ballot"; "internal campaign strategy"; the "mechanics of the campaign's internal structure"; "a campaign contribution"; "polling numbers," "poll results," and "musings regarding poll results"; "volunteer coordination and organization"; a "specific volunteer"; "the campaign's structure and arrangements with other entities"; "draft poll questions"; "potential donors"; "recruitment of a potential staff member"; fundraising letters; "volunteer organization"; "meetings with major donors"; "mechanics of petition drives"; "mechanics of operating a phone bank"; "a supporter … not officially associated with the campaign"; internal discussions about "recent articles about gay marriage and its effects"; discussions about "proposed language for Prop 8 [that is] at most marginally pertinent to advertising strategy"; "a potential volunteer consultant and ways the volunteer might aid campaign strategies"; discussions about "disseminating a message but not [about] the message itself"; "the appropriate language to use for the text of Prop 8"; "a targeted fundraising drive."

*Id.* at 4, 6-9. The Court stated that it

> recognizes that the documents provided for in camera review are merely a sample of the hundreds of documents in proponents' possession and that the determination whether the remaining documents are responsive in light of the foregoing instruction may not be mechanical. Nevertheless, the court hopes that the foregoing affords proponents sufficient and specific enough guidance to cull their inventory of documents and other materials in order to respond to plaintiffs' document request.

*Id.*

Proponents appealed the October 1 and November 11 orders "to the extent they deny Defendant-Intervenors' Motion for a Protective Order (Doc # 187) and/or require the production of documents

3

asserted as privileged under the First Amendment." Doc # 253 at 3; s*ee also* Doc # 222. Specifically, Proponents challenged this Court's ruling that confidential communications among Proponents and their agents (at the directorial or managerial level) concerning campaign messaging must be produced. Proponents did not challenge Plaintiffs' request for documents that were distributed to the public (although Proponents have consistently maintained that these public materials, too, are irrelevant to voter intent). And, of course, Proponents did not challenge this Court's October 1 and November 11 order to the extent they limited the scope of discoverable materials. Likewise, Plaintiffs did not cross appeal these orders to the extent they granted Proponents' motion and limited the scope of "relevant" and "appropriate" discovery at issue. Indeed, during oral argument before the Ninth Circuit, Plaintiffs' counsel relied upon the limitations in those orders in urging the Court of Appeals to reject Proponents' appeal on the internal communications. *See* Recording of Oral Argument, *Perry v. Schwarzenegger*, No. 09-17241 (9th Cir. Dec. 1, 2009), *available at* http://www.ca9.uscourts.gov/media/view_subpage.php?pk_id=0000004515 (this Court did "a very commendable job of coming up with a standard in th[e] November 11 order" of what is "not to be produced"; the November 11 order "la[id] down the standards that would govern the balancing going forward as to documents"). Thus, the Ninth Circuit had before it the twenty-one *in camera* documents this Court ordered produced—but not the thirty-nine documents this Court held were protected from discovery. *See* Order, *Perry v. Schwarzenegger*, No. 09-17241 (9th Cir. Nov. 25, 2009).

The Ninth Circuit issued an opinion on December 11, 2009, reversing this Court's orders requiring Proponents to produce internal, nonpublic documents. The Ninth Circuit held that it was "firmly convinced" that the production order constituted a "clear error" of law justifying the extraordinary remedy of a writ of mandamus. *See Perry v. Schwarzenegger*, No. 09-17241, slip op. at 20 (9th Cir. Dec. 11, 2009).

Following issuance of the Ninth Circuit's opinion, this Court held a final pretrial conference, at

4

which the Court ordered Proponents to produce a privilege log. Counsel for Proponents explained that such a log could be produced in short order if Proponents could rely on "sorting for responsiveness based on the November 11th order." Hr'g of Dec. 16, 2009, Tr. at 76-77. The Court responded: "let's do the best we can on Monday, and that should move things along considerably." *Id.* at 77-78.

On December 21, Proponents produced a privilege log and filed a Notice of Filing that set out the procedural history leading to the creation of the log. *See* Doc # 314. The log contained 2,016 entries; each entry listed the document's author(s), recipient(s), date(s), and subject matter(s). Where an author or recipient's name was privileged from disclosure, a "doe" designation was used. The descriptions of the documents set out the basis for the privilege assertion. For example, entry 225 was described as an email between Frank Schubert, Ron Prentice, and Andrew Pugno regarding "nonpublic, confidential messaging discussions concerning preparation of a ProtectMarriage.com email." And entry 644 was described as an email from Mark Jansson to Does 1-4 regarding "nonpublic, confidential messaging discussions regarding potential messages to communicate to the public." And entry 963 was described as an email from Maggie Gallagher to members of the ProtectMarriage.com executive committee (and their attorney) regarding "nonpublic, confidential communications concerning potential messaging for the ProtectMarriage.com campaign."

Plaintiffs responded to Proponents' notice of filing by requesting that the Court enter an order compelling production in response to Request Nos. 1, 6, and 8. *See* Doc # 325 at 8. Plaintiffs failed to specify exactly what type of documents was wanting from Proponents' prior production, but the gravamen of their complaints leading up to this filing were that, having won protection from the Ninth Circuit on the documents implicated by the October 1 and November 11 orders, Proponents should now produce documents that those orders ruled out as irrelevant. *See, e.g.*, Doc # 314-3. Plaintiffs also alleged that Proponents' privilege log was "incomplete" and not "meaningful," Doc # 325 at 8, but failed to elaborate on what was meant by those allegations or to challenge any specific entry on the

5

1  log.

2  On December 30, this Court referred the dispute over the document requests to Magistrate Judge
3  Spero. Doc # 332 at 2. On January 5, 2010, Magistrate Judge Spero set a hearing for the next day,
4  January 6.

5  Meanwhile, the mandate from the Ninth Circuit still had not issued. Instead, on December 16,
6  2009, the parties were notified that a Circuit Judge had called for a vote on whether the Court would
7  rehear the case en banc. *See* Chambers Order, *Perry v. Schwarzenegger*, No. 09-17241 (9th Cir. Dec.
8  16, 2009). Plaintiffs then also petitioned for rehearing en banc on the evening of December 24, 2009.
9  *See* Appellees' Pet. for Rehearing and Rehearing En Banc, *Perry v. Schwarzenegger*, No. 09-17241
10 (9th Cir. filed Dec. 24, 2009). On December 30, 2009, the Ninth Circuit denied the petition for
11 rehearing en banc. *See* Order, *Perry v. Schwarzenegger*, No. 09-17241 (9th Cir. Dec. 30, 2009).

12 On January 4, 2010, the Ninth Circuit panel issued an amended opinion. *See Perry v. Schwar-*
13 *zenegger*, No. 09-17241, amended slip op. (9th Cir. Jan. 4, 2010). In that opinion, the Ninth Circuit
14 recounted the production called for in the October 1 and November 11 orders, *id.* at 8-9, and explicitly
15 stated: "The parties … disagree about what types of evidence may be relied upon to demonstrate voter
16 intent. These issues are beyond the scope of this appeal. We assume without deciding that the district
17 court has decided these questions correctly," *id.* at 34 n.11. *See also id.* at 12 ("assum[ing] without
18 deciding" that this Court was "correct" in its rulings on "whether plaintiffs may rely on certain types of
19 evidence to prove that Proposition 8 was enacted for an improper purpose"). In other words, the Ninth
20 Circuit did not have before it, and left in place as law of the case, this Court's orders restricting the
21 scope of relevant and appropriate discovery and granting Proponents' motion for a protective order to
22 that extent. With respect to the 21 documents and like materials that this Court had ordered produced,
23 the Ninth Circuit held that Proponents' First Amendment privilege barred discovery of those materials.
24 The Court explained that, "bearing in mind other sources of information" and that "[t]he information

plaintiffs seek is attenuated from the issue of voter intent," Plaintiffs "have not shown the requisite need for the information sought." *Id.* at 36-38.

The Ninth Circuit explained that this Court had "applied an unduly narrow conception of First Amendment privilege" under which "associations that support or oppose initiatives face the risk that they will be compelled to disclose their internal campaign communications"—a risk that applies both to "the official proponents of initiatives and referendums" and also "the myriad social, economic, religious and political organizations that publicly support or oppose ballot measures." *Id.* at 19. The Ninth Circuit explained that "[t]he freedom of members of a political association to deliberate internally over strategy and messaging is an incident of associational autonomy." *Id.* at 30 n.9. *See also id.* at 30 ("Implicit in the right to associate with others to advance one's shared political beliefs is the right to exchange ideas and formulate strategy and messages, and to do so in private."); *id.* at 33 (citing *Dole v. Service Employees Union, AFL-CIO, Local 280*, 950 F.2d 1456, 1459-61 (9th Cir. 1991), for proposition that disclosure of rank-and-file "members" communications within an association established a prima facie violation of the First Amendment). The Court thus had "little difficulty concluding that [the privilege guarded against compelled] disclosure of internal campaign contributions." *Id.* at 29. The Court explained that such disclosure could "discourag[e] individuals from joining campaigns," "discourage organizations from joining the public debate," and "have a deterrent effect on the free flow of information within campaigns *Id.* at 30. The Court also noted that a "protective order limiting the dissemination of disclosed associational information" was insufficient to mitigate harm to the First Amendment. *Id.* at 26 n.6. In a passage new to the amended opinion, the Court stated that its holding was "limited to *private, internal* campaign communications concerning the *formulation of campaign strategy and messages*…. Our holding is therefore limited to communications among the core group of persons engaged in the formulation of campaign strategy and messages." Slip op. at 36 n.12. The Court did not, in the footnote, further define "core group." *Id.*

7

At the January 6 hearing and in a written order "memoriali[zing] the oral order made at that hearing," Doc #372 at 2, Magistrate Judge Spero ruled with respect to the scope of relevance and privilege. With respect to privilege, Magistrate Judge Spero held that it extended only to communications between and among a specific group of leaders, advisors, and vendors of ProtectMarriage.com. *See id.* at 2, 4. Magistrate Judge Spero held that "[c]ommunications to anyone outside the core group are not privileged under the First Amendment." *Id.* at 5. Magistrate Judge Spero also held that Proponents could not claim a privilege over communications from or within any political group or association other than ProtectMarriage.com, including political groups and leaders involved in the larger Yes on 8 coalition. *Id.* at 2-3. Magistrate Judge Spero reasoned that Proponents' had failed to provide evidence relating to the core groups of other organizations. *Id.* at 3; Hr'g of Jan. 6, 2010, Tr. at 90-92.

With respect to relevance, Magistrate Judge Spero deemed responsive "all documents responsive to requests 1, 6, and 8 that contain, refer or relate to any arguments for or against Proposition 8 other than communications solely among the core group." Doc # 372 at 5. Magistrate Judge Spero held that the limits set out in the October 1 and November 11 orders no longer applied. Hr'g of Jan. 6, 2010, Tr. at 18, 89. Magistrate Judge Spero held that while Proponents did not have to produce the 39 documents deemed nonresponsive in the November 11 order, Proponents could no longer apply those limits to "like documents" because "[i]t's too amorphous" and "could mean anything"—Proponents "came up with a version of it. [Plaintiffs] came up with another version of it. The Circuit came up with a[] third version of it." *Id.* at 88-89.

With respect to production schedule and burden on Proponents, Magistrate Judge Spero ordered Plaintiffs to being a rolling production no later than January 10, 2010 at 12 PM and to complete production no later than January 17, 2010 at 12 PM. Magistrate Judge Spero ordered Proponents to log all communications among the "core group" regardless of whether they contain, refer or relate to

8

any arguments for or against Proposition 8. Doc # 372 at 5. Magistrate Judge Spero rejected Proponents' pleas that this production schedule placed an unfair and impossible burden on Proponents as they simultaneously litigated the actual trial in this case. Hr'g of Jan. 6, 2010, Tr. at 114-15.

## OBJECTIONS

Proponents respectfully submit the following objections to Magistrate Judge Spero's orders of January 7 and 8, 2010.

### A. OBJECTIONS TO RELEVANCE RULINGS

1. Magistrate Judge Spero held that this Court's October 1 and November 11 orders were confined to Request No. 8 and placed no limits on what documents Plaintiffs may seek under their Request Nos. 1 and 6. The October 1 order stated that a request that sought communications "with any third party" was "simply too broad" and that "virtually every communication made by anyone included in or associated with Protect Marriage cannot be relevant." Doc # 214 at 15. Thus, aside from "communications targeted to voters, including communications to discrete groups of voters"—which Proponents "agreed to disclose"—the Court held that "[i]t should suffice for purposes of this litigation" that Proponents produce communications concerning "messaging" and "strategy" by and among proponents and their agents" and also "those who assumed a directorial or managerial role in the Prop 8 campaign." *Id.* at 15-17. These parameters, in light of Proponents' concession to produce "communications targeted to voters" ensured that a request seeking communications to all third parties would not be "broader than necessary to obtain *all* relevant discovery." *Id.* at 15. Proponents submitted to the Court sixty documents that fell within these parameters. The Court held that thirty-nine of those documents did not need to be produced because they "say nothing about campaign messages or themes to be conveyed to the voters and are therefore not responsive" or because "their relationship to messages or themes conveyed to voters is attenuated enough that it appears as a practical matter unlikely to lead to discovery of admissible evidence." Doc # 252 at 6, 9. Proponents were to use this

9

"sufficient and specific enough guidance to cull their inventory of documents and other materials in order to respond to plaintiffs' document request"—a request that grew out of the Court's October 1 order directing Plaintiffs' to narrow the original request seeking documents sent to *any third party*. Accordingly, it simply does not follow that Plaintiffs or Magistrate Judge Spero may now rely on Request No. 1 (seeking documents distributed "to voters") or Request No. 6 (seeking documents "prepared for public distribution"), Doc # 187-3, to obtain documents sent to *any third party*. Such a definition of "voter" or "public" renders those terms, and the relevancy limits of this Court's prior orders, meaningless.

2. Magistrate Judge Spero ruled that Proponents need not produce the thirty-nine documents excluded by the November 11 order, yet also ruled that those guidelines could not be extended to "like documents." Hr'g of Jan. 6, 2010, Tr. at 88. This ruling is inconsistent with the November 11 order's statement that it was meant to provide "sufficient and specific enough guidance [Proponents to allow them] to cull their inventory." Doc # 252 at 9. Magistrate Judge Spero ruled that this "sufficient and specific" guidance was "too amorphous" because it could "mean anything." Hr'g of Jan. 6, 2010, Tr. at 88. Magistrate Judge Spero noted that "[Proponents] came up with a version of it. [Plaintiffs] came up with a version of it. The Circuit came up with another version of it." *Id.* at 89. But Proponents, in good faith, sorted their inventory along the category lines set out in the November 11 order. Neither Plaintiffs nor Magistrate Judge Spero have explained how that sorting was less than faithful to the November 11 order, was otherwise inadequate or inconsistent with Proponents' discovery obligations, or led to an "amorphous" process.

3. As the above quotation from the hearing indicates, Magistrate Judge Spero also relied on the Ninth Circuit opinion in making relevance determinations. *See* Hr'g of Jan. 6, 2010, Tr. at 89:6-9 ("The Circuit came up with another version of it."); *id.* at 66:25-67:1 (relying on Ninth Circuit opinion to "figure out what is reasonably relevant to the case"). This was error, for the Ninth Circuit repeat-

edly and expressly stated it was not reaching relevance and responsiveness issues already determined in the October 1 and November 11 orders. *Perry v. Schwarzenegger*, No. 09-17241, amended slip op. at 12, 34 n.11. The law of the case on relevance is found in the October 1 and November 11 orders, not the Ninth Circuit opinion.

4.  It appears that Magistrate Judge Spero's order does not even apply the limitations in the October 1 and November 11 order to Request No. 8 itself. *See* Doc # 372 at 5 ("Proponents are therefore ordered to produce all documents responsive to requests 1, 6 *and 8* that contain, refer or relate to any arguments for or against Proposition 8 …"). Even Plaintiffs concede that those orders apply to Request No. 8 and thus Magistrate Judge Spero's conclusion in this regard constitutes error.

5.  Proponents object to Magistrate Judge Spero's conclusion that *any* document is relevant to the issues in this case if it "contain[s], refer[s] or relate[s] to any arguments for or against Proposition 8." Doc # 372 at 5. Proponents reiterate and incorporate the relevance objections stated in their motion for a protective order and supporting papers. *See* Doc #s 187, 197.

### B. OBJECTIONS TO FIRST AMENDMENT PRIVILEGE RULINGS

6.  Magistrate Judge Spero held that "proponents must revise their privilege log to include, as protected by the First Amendment privilege, *all* documents consisting of communications between or among members of the core group." Doc # 372 at 5 (emphasis added). In light of the relevance limitation in that same order—that Proponents only need produce documents "that contain, refer or relate to any arguments for or against Proposition 8," *id.*—it is not clear why *all* "core group" documents must be logged. Typically, a party need only log those privileged documents that are relevant and responsive. Proponents object to being required to log many thousands of documents that are not otherwise responsive under the relevance limitations set down by the Court.

7.  The defining of the "core group" by Magistrate Judge Spero has led to anomalous results

and to infringements of Proponents' First Amendment rights. For example, under the terms of the "core group" as defined by Magistrate Judge Spero, Proponents would have to produce nearly *one-fourth* of the 21 documents the Ninth Circuit specifically held were privileged from disclosure in this case (because those documents include a single recipient or sender who was not a "core" member of ProtectMarriage.com under Magistrate Spero's definition). Moreover, Magistrate Judge Spero ruled that certain vendors—such as Marketing Communications Services, Inc.—could not be considered part of the "core group" even though those vendors, by the nature of their business, were provided, on a confidential basis, with draft materials (such as draft television ad scripts) considered internal to the campaign and never meant for public distribution. Compelled disclosure of such materials violates Proponents' First Amendment privilege.

In *Perry v. Schwarzenegger*, No. 09-17241, slip op. (9th Cir. Jan. 4, 2010), the Ninth Circuit held that "[i]mplicit in the right to associate with others to advance one's shared political beliefs is the right to exchange ideas and formulate strategy and messages, and to do so in private." *Id.* at 30. The Court explained that this right is shared by both "individuals" and "associations," *id.* at 31 n.9, including "the myriad social, economic, religious and political organizations that publicly support ballot measures," *id.* at 19. The Ninth Circuit explained that "[t]he freedom of members of a political association to deliberate internally over strategy and messaging is an incident of associational autonomy." *Perry*, amended slip op. at 30 n.9. *See also id.* at 30 ("Implicit in the right to associate with others to advance one's shared political beliefs is the right to exchange ideas and formulate strategy and messages, and to do so in private."); *id.* at 33 (citing *Dole v. Service Employees Union, AFL-CIO, Local 280*, 950 F.2d 1456, 1459-61 (9th Cir. 1991), for proposition that disclosure of rank-and-file "members" communications within an association established a prima facie violation of the First Amendment). The protection afforded by the First Amendment "turns not on the type of information sought, but on whether disclosure of the information will have a deterrent effect on the exercise of

protected activities." *Id.* at 29. "A political campaign's communications and activities encompass a vastly wider range of sensitive material protected by the First Amendment than would be true in the normal discovery context," *id.* at 21, and disclosure of that material can deter, inter alia, "participation in campaigns" and "free flow of information within campaigns," *id.* at 29-30. The Ninth Circuit credited Mr. Jansson's statement that disclosure of "personal, non-public communications [he] ha[s] had regarding this ballot initiative" will chill his exercise of protected First Amendment activity. *Id.* at 32. And the Court found it to be "self-evident … that important First Amendment interests are implicated by the plaintiffs' discovery request" here, which sought documents among members of the campaign and its vendors and advisors. *Id.* at 33.

The definition of the "core group" requires production of thousands of documents shared confidentially among those who "associate[d] with others to advance [their] shared political beliefs, and [did] so in private." *Id.* at 30. Proponents respectfully object on First Amendment grounds.

8.      Magistrate Judge Spero held that Proponents could not claim privilege over communications made in their capacity as members of any formal political association other than ProtectMarriage.com or as part of an informal political association. This holding runs afoul of the First Amendment. Magistrate Judge Spero based the holding, in part, on waiver. But prior to January 4, 2010, no party was on notice that it would have to define a "core group" in order to preserve First Amendment privilege.[1] And prior to the January 6 hearing itself, no party was on notice as to how this Court would interpret and apply the concept of "core group." Moreover, it is simply untrue that Proponents never raised the issue of First Amendment protection for communications that took place outside the

---

[1] Magistrate Judge Spero repeatedly referenced the November 5, 2010 Prentice declaration as the only evidence in the record regarding the ProtectMarriage.com "core group." But as this concept was not introduced until January 4, that declaration was logically not written to define such a group. Instead, it was a response to this Court's request to "disclose [for *in camera* review] the identity of all those who were in a position of management responsibility for the campaign." Hr'g of Nov. 2, 2009, Tr. at 44. It should go without saying that the circle of those

ProtectMarriage.com umbrella. Instead, Proponents motion for a protective order was filed on behalf of *all* Defendant-Intervenors, not just ProtectMarriage.com. *See* Doc # 187. And this issue was repeatedly raised to the Court at the December 16, 2009 hearing. *See, e.g.*, Hr'g of Dec. 16, 2009, Tr. at 57. *See also* Doc # 314 at 10-11.[2] The Ninth Circuit held that this Court's original conception of the First Amendment privilege threatens the rights of the "the myriad social, economic, religious and political organizations that publicly support or oppose ballot measures." *Perry*, amended slip op. at 19. Magistrate Judge Spero's order again threatens the rights of those myriad groups "to advance [their] shared political beliefs" during the Prop 8 campaign.

9. Proponents object to Magistrate Judge Spero's orders to the extent they hold that two different associations cannot receive First Amendment protection for communications made between persons in the groups during a political campaign in which they are allied. As with any large campaign, the ProtectMarriage.com effort necessarily involved the support and cooperative effort of other allied persons and groups who may not have held a formal title or position within ProtectMarriage.com (and vice versa). But those other allied persons or groups were part of the political coalition, and sometimes shared with ProtectMarriage.com internal, confidential information to devise general campaign strategy and messages. Proponents object to the disclosure of such nonpublic communications on First Amendment grounds.

10. Proponents object to the attorneys eyes only protective order entered by Magistrate Judge Spero. In particular, Proponents object to the disclosure of documents to the attorneys for the City and County of San Francisco. First, as Proponents have repeatedly noted, they object to a protective order

---

with "management responsibility" and those "engaged in the formulation of campaign strategy and messages" are not one and the same.

[2] Moreover, vendors, individuals, and other groups have repeatedly objected to Plaintiffs' sweeping Rule 45 subpoenas on First Amendment grounds. Those other groups and persons who associated with Proponents nonetheless have concomitant First Amendment rights that they have sought to protect during this discovery process and that Proponents are also obliged to protect.

14

that requires disclosure to attorneys who have known and entrenched roles in the political battle over the issues present in this case. *See* Doc 197 at 10 (noting the City Attorney's many political connections to the No on 8 groups). *See also Perry*, amended slip op. at 32 & n.10 (noting that disclosure of internal communications creates impermissible chill if it "could be used by plaintiffs to gain an unfair advantage over defendants in the political arena."). Second, the City's intervention in this case is limited and had nothing to do with messages conveyed to the electorate about Proposition 8. A party that has no need for confidential and highly confidential documents should not be permitted access to them under an attorneys eyes only protective order.

### C.   OBJECTIONS TO PRODUCTION SCHEDULE AND BURDEN RULINGS

11.   Proponents object to the production and privilege log schedule set out in Magistrate Judge Spero's order. Given that Magistrate Judge Spero redrew the relevance and privilege lines, the schedule adopted in the order is a simply unrealistic and prejudicial in light of the ongoing trial proceedings. Proponents incorporate and reassert the objections they stated to this schedule at the January 6 hearing.

12.   Proponents also object to any suggestion that they are responsible for the production schedule ordered by Magistrate Judge Spero. *See* Hr'g of Jan. 6, 2010, Tr. at 112:5-9, 115. As previously explained in detail, *see* Doc # 314, Proponents' efforts in discovery have been geared toward complying, on an expedited schedule and constantly shifting demands from Plaintiffs, with sweeping discovery that, as found by the Ninth Circuit, violated Proponents' First Amendment rights. With each successive opinion—the October 1 order, the November 11 order, the December 11 Ninth Circuit opinion, the January 4 amended opinion, and now the January 8 order—Proponents have endeavored to meet their discovery obligations while also defending their constitutional rights to free association and speech. For the Court to punish those good faith efforts—especially when they have

been vindicated at least in large part on appeal—is clear error.

## **CONCLUSION**

For the foregoing reasons, the Court should reverse the orders of Magistrate Judge Spero issued on January 7 and 8, 2010.

Dated: January 13, 2010

COOPER AND KIRK, PLLC
ATTORNEYS FOR DEFENDANTS-INTERVENORS DENNIS HOLLINGSWORTH, GAIL KNIGHT, MARTIN GUTIERREZ, MARK JANSSON, AND PROTECTMARRIAGE.COM

By: /s/Charles J. Cooper
Charles J. Cooper