GIBSON, DUNN & CRUTCHER LLP
Theodore B. Olson, SBN 38137
*tolson@gibsondunn.com*
Matthew D. McGill, *pro hac vice*
Amir C. Tayrani, SBN 229609
1050 Connecticut Avenue, N.W., Washington, D.C. 20036
Telephone: (202) 955-8668, Facsimile: (202) 467-0539

Theodore J. Boutrous, Jr., SBN 132009
*tboutrous@gibsondunn.com*
Christopher D. Dusseault, SBN 177557
Ethan D. Dettmer, SBN 196046
Sarah E. Piepmeier, SBN 227094
Theane Evangelis Kapur, SBN 243570
Enrique A. Monagas, SBN 239087
333 S. Grand Avenue, Los Angeles, California 90071
Telephone: (213) 229-7804, Facsimile: (213) 229-7520

BOIES, SCHILLER & FLEXNER LLP
David Boies, *pro hac vice*
*dboies@bsfllp.com*
333 Main Street, Armonk, New York 10504
Telephone: (914) 749-8200, Facsimile: (914) 749-8300

Jeremy M. Goldman, SBN 218888
*jgoldman@bsfllp.com*
Theodore H. Uno, SBN 248603
1999 Harrison Street, Suite 900, Oakland, California 94612
Telephone: (510) 874-1000, Facsimile: (510) 874-1460

Attorneys for Plaintiffs
KRISTIN M. PERRY, SANDRA B. STIER,
PAUL T. KATAMI, and JEFFREY J. ZARRILLO

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN M. PERRY, *et al.,*<br><br>               Plaintiffs,<br><br>and<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>              Plaintiff-Intervenor,<br><br>    v.<br><br>ARNOLD SCHWARZENEGGER, *et al.,*<br><br>              Defendants,<br><br>and<br><br>PROPOSITION 8 OFFICIAL PROPONENTS<br>DENNIS HOLLINGSWORTH, *et al.,*<br><br>           Defendant-Intervenors. | CASE NO. 09-CV-2292 VRW<br><br>**DECLARATION OF REBECCA JUSTICE LAZARUS IN SUPPORT OF RESPONSE TO PROPONENTS' OBJECTIONS TO DISCOVERY ORDERS OF MAGISTRATE JUDGE SPERO**<br><br>Trial Date:  January 11, 2010<br>Judge:  Chief Judge Walker<br>Location:  Courtroom 6, 17th Floor |

Gibson, Dunn &
Crutcher LLP

I, Rebecca Justice Lazarus, declare as follows:

1.      I am an attorney licensed to practice law in the State of California and in the Northern District of California.  I am an associate in the law firm of Gibson, Dunn & Crutcher LLP, counsel of record for Plaintiffs Kristin M. Perry, Sandra B. Stier, Paul T. Katami, and Jeffrey J. Zarrillo(collectively, "Plaintiffs") in the above-captioned matter.  I have personal knowledge of the facts stated herein and could and would testify competently thereto if called upon to do so.

2.      Attached hereto is a true and correct copy of relevant excerpts from the certified transcript of the deposition of Ronald Prentice, taken on December 17, 2009.

I declare, under the penalty of perjury under the laws of the United States that these facts are true and correct and that this Declaration is executed this 15th day of January 2009 at San Francisco, California.

_____/s/_____
Rebecca Justice Lazarus

Gibson, Dunn &
Crutcher LLP

1

1

## ATTESTATION PURSUANT TO GENERAL ORDER NO. 45

2      Pursuant to General Order No. 45 of the Northern District of California, I attest that

3  concurrence in the filing of the document has been obtained from the other signatory to this

4  document.

5                                             /s/ Ethan D. Dettmer

6                                             Ethan D. Dettmer

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

---oOo---


KRISTIN M. PERRY, et al.,

         Plaintiffs,

    vs.                     Case No. 09-CV-2292 VRW

ARNOLD SCHWARZENEGGER,
et al.,

         Defendants.
_____/




Deposition of

RONALD PRENTICE

Volume I

Thursday, December 17, 2009




REPORTED BY:  LESLIE CASTRO, CSR #8876




BONNIE L. WAGNER & ASSOCIATES
Court Reporting Services
41 Sutter Street, Suite 1605
San Francisco, California 94104
(415) 982-4849

Page 50

| | | |
|---|---|---|
| 10:01:57 | 1 | compensation; is that correct? |
| 10:01:58 | 2 | A.   Correct.  I believe that I operate as its |
| 10:02:02 | 3 | executive director without compensation. |
| 10:02:06 | 4 | Q.   And what are your responsibilities as |
| 10:02:14 | 5 | executive director for California Renewal? |
| 10:02:19 | 6 | A.   Prior to -- there has been no activity by |
| 10:02:27 | 7 | California Renewal leading up to the |
| 10:02:36 | 8 | ProtectMarriage.com-Yes on 8 campaign. |
| 10:02:41 | 9 | Q.   I'm not sure I understand what you just said |
| 10:02:43 | 10 | so let me try to ask.  You say there's been no activity |
| 10:02:49 | 11 | by California Renewal leading up to the Yes on 8 |
| 10:02:55 | 12 | campaign.  I'm trying to understand the connection |
| 10:03:00 | 13 | between California Renewal and ProtectMarriage. |
| 10:03:04 | 14 | Is there one? |
| 10:03:06 | 15 | A.   When you say "ProtectMarriage," are you |
| 10:03:08 | 16 | referring to the ProtectMarriage.com-Yes on 8 campaign? |
| 10:03:13 | 17 | Q.   Yes. |
| 10:03:14 | 18 | A.   The sponsoring entity was the (c)(4) |
| 10:03:17 | 19 | California Renewal. |
| 10:03:19 | 20 | Q.   The sponsoring entity of the initiative |
| 10:03:24 | 21 | measure? |
| 10:03:24 | 22 | A.   Yes, of ProtectMarriage.com-Yes on 8 campaign |
| 10:03:30 | 23 | committee. |
| 10:03:40 | 24 | Q.   So just to be clear:  California Renewal was |
| 10:03:43 | 25 | the sponsor of -- |

Page 51

| | | |
|---|---|---|
| 10:03:44 | 1 | (Mr. Pugno enters the room.) |
| 10:03:47 | 2 | MS. STEWART:  Q -- the entity, the Yes on 8 |
| 10:03:51 | 3 | ProtectMarriage entity or are you saying it was the |
| 10:03:54 | 4 | sponsor of the initiative itself, the ballot measure. |
| 10:03:59 | 5 | A.   To the best of my knowledge, the way that I |
| 10:04:01 | 6 | would frame it would be that the initiative was put |
| 10:04:20 | 7 | forth by the campaign committee called |
| 10:04:24 | 8 | ProtectMarriage.com-Yes on 8. |
| 10:04:32 | 9 | Q.   Okay. |
| 10:04:32 | 10 | So ProtectMarriage.com-Yes on 8 actually was |
| 10:04:36 | 11 | the official proponent or an official proponent of |
| 10:04:41 | 12 | Proposition 8; is that correct? |
| 10:04:44 | 13 | MS. MOSS:  Object to the extent it calls for a |
| 10:04:46 | 14 | legal conclusion. |
| 10:04:48 | 15 | MS. STEWART:  I'm asking for his understanding |
| 10:04:49 | 16 | counsel. |
| 10:04:52 | 17 | THE WITNESS:  I believe that there was a campaign |
| 10:04:56 | 18 | committee formed and there were individual proponents. |
| 10:05:01 | 19 | MS. STEWART:  Q But just from a lay person's |
| 10:05:03 | 20 | understanding, how was ProtectMarriage.com, the entity, |
| 10:05:07 | 21 | involved in that process? |
| 10:05:13 | 22 | A.   ProtectMarriage.com-Yes on 8, to the best of |
| 10:05:15 | 23 | my understanding, is primarily formed ballot measure |
| 10:05:18 | 24 | committee. |
| 10:05:19 | 25 | Q.   And who formed that ballot measure committee? |

Page 52

| | | |
|---|---|---|
| 10:05:23 | 1 | A.   It was created by an ad hoc executive |
| 10:05:26 | 2 | committee. |
| 10:05:27 | 3 | Q.   And earlier you said something about |
| 10:05:32 | 4 | California Renewal being the sponsoring -- I can't |
| 10:05:37 | 5 | remember the language you used -- but member or |
| 10:05:39 | 6 | sponsoring -- in some way sponsoring.  And I was unclear |
| 10:05:48 | 7 | whether you were saying they sponsored the formation of |
| 10:05:52 | 8 | ProtectMarriage.com or something else. |
| 10:05:55 | 9 | Can you explain? |
| 10:05:57 | 10 | A.   Well, I'm not sure that I can explain it much |
| 10:05:59 | 11 | better than I have because of my lack of legal |
| 10:06:02 | 12 | intellect.  And it would have to do with that there is a |
| 10:06:13 | 13 | board of directors, too. |
| 10:06:18 | 14 | California Renewal who gave authority to an ad |
| 10:06:24 | 15 | hoc executive committee to move forward with a |
| 10:06:28 | 16 | primarily-formed ballot measure called |
| 10:06:34 | 17 | ProtectMarriage.com-Yes on 8. |
| 10:06:40 | 18 | Q.   I would say that's not an intellect issue, I |
| 10:06:45 | 19 | think it was very clear. |
| 10:06:46 | 20 | A.   Thank-you.  Let's just hope it's accurate. |
| 10:06:49 | 21 | MS. MOSS:  Can we take a bathroom break? |
| 10:06:54 | 22 | THE VIDEOGRAPHER:  Off record at 10:08. |
| 10:09:30 | 23 | (Brief break.) |
| 10:09:30 | 24 | (Ms. Piepmeier is not present.) |
| 10:14:51 | 25 | THE VIDEOGRAPHER:  Back on the record at 10:14. |

Page 53

| | | |
|---|---|---|
| 10:15:01 | 1 | MS. STEWART:  Q Mr. Prentice, when you were |
| 10:15:03 | 2 | employed by Focus on the Family, what was the |
| 10:15:06 | 3 | approximate annual budget of that organization? |
| 10:15:11 | 4 | A.   Approximately -- well, it varied within those |
| 10:15:13 | 5 | ten years.  Anywhere from 125 million to 145 million. |
| 10:15:35 | 6 | Q.   Earlier you mentioned that the board of |
| 10:15:36 | 7 | directors of California Renewal gave authority to an ad |
| 10:15:39 | 8 | hoc committee to move forward to create |
| 10:15:42 | 9 | ProtectMarriage.com or what became ProtectMarriage.com. |
| 10:15:49 | 10 | A.   Became the ballot measure committee. |
| 10:15:56 | 11 | Q.   What did -- well, first of all, who was on the |
| 10:16:01 | 12 | ad hoc committee? |
| 10:16:04 | 13 | A.   Of? |
| 10:16:04 | 14 | Q.   You said the board of directors of California |
| 10:16:08 | 15 | Renewal gave authority to an ad hoc committee.  And I |
| 10:16:11 | 16 | was wondering who was on that committee. |
| 10:16:15 | 17 | MS. MOSS:  And in responding to that, I'm going to |
| 10:16:17 | 18 | instruct you to the extent that there's a member of that |
| 10:16:20 | 19 | committee who has asked us to keep his identity |
| 10:16:23 | 20 | confidential while he pursues his claim of privilege, I |
| 10:16:27 | 21 | would instruct you not to reveal that identity. |
| 10:16:30 | 22 | Otherwise, you can respond. |
| 10:16:32 | 23 | MS. STEWART:  And are you going to follow your |
| 10:16:35 | 24 | counsel's instruction? |
| 10:16:35 | 25 | A.   Yes. |

## Page 58

1    A.  I would say that ProtectMarriage.com was
2  used -- I would say "yes," and definitely say a
3  broad-based coalition -- loose -- loosely.
4    Q.  And when you say "loosely," what do you mean?
5    A.  It's a loosely-formed coalition.
6    Q.  And who -- what were the organizations that
7  were part of that loosely-based coalition?
8    MS. MOSS:  I'm going to object to the extent
9  that -- two grounds:  One, I still don't think it's
10  clear exactly which --
11    THE WITNESS:  I agree.
12    MS. MOSS:  -- entity, ProtectMarriage.com entity
13  that you're referring to.  But secondly, to the extent
14  you understand or believe -- understand what entity
15  she's referring to, if it's the Yes on 8 committee, if
16  they were affiliated with organizations and that's
17  publicly known, you can disclose that.  If there was any
18  private affiliations that are not publicly known, I
19  instruct you not to answer.
20    THE WITNESS:  And I interpret your question to
21  refer to the Yes on 8 campaign.  And there were people
22  that would go on to the website and sign on endorsing
23  it.  And that's how loose and how broad-based we
24  interpreted the coalition to be.
25    MS. STEWART:  Q  And so when the website here

## Page 59

1  refers to a broad-based coalition of organizations,
2  churches and individuals, was that coalition formed
3  solely by people signing on to the website?
4    A.  Well, actually, as I see at the bottom of
5  this, it says "2005."  So this may be -- if it's 2005,
6  it obviously came before the formation of the ballot
7  measure committee.
8    And I don't know even then whether -- well,
9  there's a page on the left it says "Endorsement" so I
10  guess there was opportunity for people to align with
11  this general cause.
12    Q.  So let me go back to 2005 then.
13    And ask you:  Was -- was there an entity to
14  your knowledge called ProtectMarriage.com in 2005?
15    A.  No, not an entity.  There have been times
16  over -- there have been -- ProtectMarriage.com has been
17  more a general -- general purpose of -- for the benefit
18  of traditional marriage.  And there have been -- and
19  prior to the Yes on 8 campaign, there was not an
20  official entity.
21    Q.  Was there something other than an official
22  entity that you understood ProtectMarriage.com to refer
23  to before -- let's say before 2008?
24    A.  I think that I understood ProtectMarriage.com
25  prior to the ballot measure committee to be, again, a --

## Page 60

1  a generally directed purpose, not an entity.
2    Q.  Was it a coalition?
3    A.  Only to the extent that people aligned with a
4  generally directed purpose.
5    Q.  Do you recall who was part of that coalition
6  prior to the 2008?
7    A.  Prior to the forming of the ballot measure
8  committee, as it reads here, it's a broad-based
9  coalition of organizations, churches and individuals,
10  and so there was no list.  There was no -- there was no
11  entity.
12    Q.  Was there a website?
13    A.  Apparently, this came off of a website and
14  it's copyright '05.
15    Q.  And did you have anything to do with that
16  website prior to 2008?
17    A.  I did not have anything to do with the
18  creation of the website, no.
19    Q.  Do you know who did?
20    A.  There has been a -- a changing relatively
21  fluid group of individuals who attempted to keep the
22  public informed of what was going on legally with
23  marriage.
24    Q.  But do you know who created the
25  ProtectMarriage.com website that existed before 2008?

## Page 61

1    A.  I go not know who is responsible for its
2  creation.
3    Q.  Was it someone who worked for the California
4  Family Council?
5    A.  No.
6    Q.  And I believe you said that California Renewal
7  had no employees; correct?
8    A.  Correct.
9    Q.  So you have no idea, as you sit here, who was
10  responsible for creating the ProtectMarriage.com website
11  before 2008?
12    A.  Well, I have some idea in that I've referred
13  to a fluid committee of people.  But I do not -- I do
14  not know precisely who pulled this trigger.
15    Q.  If you look at the bottom of Exhibit 1,
16  there's a copyright designation it says "Copyright 2005
17  ProtectMarriage.com."
18    Do you see that?
19    A.  Yes.
20    Q.  And then it also says "After all rights
21  reserved," it says "ProtectMarriage.com, a project of
22  California Renewal."
23    Do you see that?
24    A.  Yes.
25    Q.  Was there a project of California Renewal in

Page 270

1      DEPOSITION OFFICER'S CERTIFICATE
2
3      STATE OF CALIFORNIA            )
4                                     ) Ss.
5      COUNTY OF CONTRA COSTA         )
6
7          I LESLIE CASTRO, CSR, hereby certify:
8          I am a duly qualified Shorthand Reporter in
9      the State of California, holder of Certificate Number
10     8876 issued by the Court Reporter's Board of California
11     and which is in full force and effect.  (Fed R. Civ. P.
12     28(a)).
13         I am authorized to administer oaths of
14     affirmations pursuant to California Code of Civil
15     Procedure, Section 2093(b), and prior to being examined,
16     the deponent was first duly sworn by me.  (Fed. R. Civ.
17     P. 28(a), 30(f) (1)).
18         I am not a relative or employee or attorney or
19     counsel of any of the parties, nor am I a relative or
20     employee of such attorney or counsel, nor am I
21     financially interested in this action.  (Fed. R. Civ. P.
22     28).
23         I am the deposition officer that
24     stenographically recorded the testimony in the foregoing
25     deposition and the foregoing transcript is a true record

Page 271

1      of the testimony given by the deponent.  (Fed. R. Civ.
2      P. 30(f) (1)).
3          Before completion of the deposition, review of
4      the transcript [ ] was  [X ] was not requested.  If
5      requested, any changes made by the deponent (and
6      provided to the reporter) during the period allowed, are
7      appended hereto.  (Fed. R. Civ. P. 30(a)).
8
9
10
11
12     Dated:  28th of December, 2009.
13
14
15
16     _____
17     LESLIE CASTRO, CSR
       State of California
18     CSR License No. 8876
19
20
21
22
23
24
25

Page 272

1      ERRATA SHEET
2
3      PAGE  LINE   CHANGE
4      ____  ____   _____
5      ____  ____   _____
6      ____  ____   _____
7      ____  ____   _____
8      ____  ____   _____
9      ____  ____   _____
10     ____  ____   _____
11     ____  ____   _____
12     ____  ____   _____
13     ____  ____   _____
14     ____  ____   _____
15     ____  ____   _____
16     ____  ____   _____
17     ____  ____   _____
18     ____  ____   _____
19     ____  ____   _____
20     _
21         I, RONALD PRENTICE, have made the following changes
22     to my deposition taken in the matter of PERRY, ET AL.
23     vs. SCHWARZENEGGER, ET AL. taken on DECEMBER 17, 2009.
24     DATE:_____  _____
                    RONALD PRENTICE
25

Page 273

1      CERTIFICATION OF WITNESS
2
3
4          I, RONALD PRENTICE, hereby declare that I have read
5      the foregoing testimony, and the same is true and a
6      correct transcription of my said testimony except as I
7      have corrected.
8
9
10
11     _____
               Signature
12
13
14
15     _____
               Date
16
17
18
19
20
21
22
23
24
25

Page 274

BONNIE L. WAGNER & ASSOCIATES
COURT REPORTING SERVICE
41 SUTTER STREET, SUITE 1605
SAN FRANCISCO, CALIFORNIA 94104
(415) 982-4849

January 4, 2010
Ronald Prentice
c/o Nicole J. Moss, Esq.
Cooper & Kirk
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Re:  Perry, et al.  vs.
     Schwarzenegger, et al.

Dear Mr. Prentice:
You are hereby notified that pursuant to the California
Code of Civil Procedure Section 2019(E), your deposition
is available for your review within 35 days from the
date of this letter.

If you are represented by an attorney in this matter
contact your attorney before contacting this office.
Do not ask that we send you the original deposition.
State law does not allow us to do so.

Yours very truly,


Leslie Castro, CSR
Bonnie L. Wagner & Associates

CC: Original Transcript
    All Counsel