GIBSON, DUNN & CRUTCHER LLP
Theodore B. Olson, SBN 38137
*tolson@gibsondunn.com*
Matthew D. McGill, *pro hac vice*
Amir C. Tayrani, SBN 229609
1050 Connecticut Avenue, N.W., Washington, D.C. 20036
Telephone: (202) 955-8668, Facsimile: (202) 467-0539

Theodore J. Boutrous, Jr., SBN 132009
*tboutrous@gibsondunn.com*
Christopher D. Dusseault, SBN 177557
Ethan D. Dettmer, SBN 196046
Sarah E. Piepmeier, SBN 227094
Theane Evangelis Kapur, SBN 243570
Enrique A. Monagas, SBN 239087
333 S. Grand Avenue, Los Angeles, California 90071
Telephone: (213) 229-7804, Facsimile: (213) 229-7520

BOIES, SCHILLER & FLEXNER LLP
David Boies, *pro hac vice*
*dboies@bsfllp.com*
333 Main Street, Armonk, New York 10504
Telephone: (914) 749-8200, Facsimile: (914) 749-8300

Jeremy M. Goldman, SBN 218888
*jgoldman@bsfllp.com*
Theodore H. Uno, SBN 248603
1999 Harrison Street, Suite 900, Oakland, California 94612
Telephone: (510) 874-1000, Facsimile: (510) 874-1460

Attorneys for Plaintiffs
KRISTIN M. PERRY, SANDRA B. STIER,
PAUL T. KATAMI, and JEFFREY J. ZARRILLO

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KRISTIN M. PERRY, *et al.,*<br><br>　　　　　Plaintiffs,<br>and<br>CITY AND COUNTY OF SAN FRANCISCO,<br>　　　　　Plaintiff-Intervenor,<br>　v.<br>ARNOLD SCHWARZENEGGER, *et al.,*<br>　　　　　Defendants,<br>and<br>PROPOSITION 8 OFFICIAL PROPONENTS DENNIS HOLLINGSWORTH, *et al.,*<br>　　　　　Defendant-Intervenors. | CASE NO. 09-CV-2292 VRW<br><br>**PLAINTIFFS' RESPONSE TO PROPONENTS' MOTION TO AMEND JANUARY 8, 2010 DISCOVERY ORDER**<br><br>Trial Date: January 11, 2010<br><br>Judge: Chief Judge Walker<br>　　　Magistrate Judge Joseph C. Spero<br><br>Location: Courtroom 6, 17th Floor |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL AND PROCEDURAL BACKGROUND.................................................... 2

    A. Proponents First Sought A Protective Order To Shield Them From Complying With Their Discovery Obligations ................................................... 2

    B. Proponents Continued To Refuse To Produce Documents Responsive To Plaintiffs' Requests Even After The Ninth Circuit Confirmed That The First Amendment Privilege Applied Only To A "Core Group" Of The Yes On 8 Campaign ....................................................................................... 3

    C. This Court Defined The "Core Group" Based On Representations Made By Counsel At The January 6, 2010 Hearing and the January 7, 2010 Prentice Declaration And Again Ordered Proponents To Produce Documents ............................................................................................................ 4

    D. Proponents' Actions Following The January 8, 2010 Discovery Order ............. 5

III. STANDARD OF REVIEW ............................................................................................ 5

IV. ARGUMENT .................................................................................................................. 5

    A. The Third Prentice Declaration Is Insufficient To Justify Amendment Of The January 8, 2010 Discovery Order ............................................................. 6

        1. The Third Prentice Declaration Is Insufficient On Its Face ............................ 6

        2. Proponents' Attempt to Associate These Individuals With The "Core Group" Are Contradicted By The Record ............................................ 10

    B. Proponents' Request Is Untimely And Prejudicial To Plaintiffs' Case ....................... 11

V. CONCLUSION ............................................................................................................. 14

## I. INTRODUCTION

Fifty-three minutes before the court-ordered deadline for completion of their supplemental document production, counsel for Proponents sent to Plaintiffs a self-styled "motion to amend" the Court's January 8, 2010 order concerning discovery. That motion, tendered nine days after the January 8, 2010 order and minutes before the discovery deadline, seeks to enlarge the "core group" of ProtectMarriage.com to include four individuals, one of whom, Bill Criswell, this Court already decided was *not* in the core group.

Solely on the basis of this undecided motion to amend, Proponents have withheld 97 admittedly responsive documents from production. For at least two reasons, that motion—Proponents' latest and hopefully last effort to evade their discovery obligations—should be denied and Proponents should be ordered to produce immediately the 97 documents they have withheld.

*First*, Mr. Prentice's declaration is insufficient to demonstrate that the four individuals he seeks to sweep into the core group—Bill Criswell, Richard Peterson, Robb Wirthlin, and John Doe[1] —actually formulated campaign strategy or messages. It is certainly insufficient to sweep in Mr. Criswell, who has declared under penalty of perjury that he was *not* involved in the formulation of the Yes on 8 campaign's strategy or messages.

*Second*, Proponents' motion—made one week into the trial of this case and just minutes before the expiration of the court-ordered deadline for completion of their supplemental production—has (once again) prejudiced the Plaintiffs' ability to build a factual record in support of their constitutional claims for relief. Even if Mr. Prentice had inadvertently omitted certain persons from his January 7, 2010 declaration, there could be no excuse for waiting until minutes before the January 17, 2010 deadline to bring this purported omission to the Court's and Plaintiffs' attention. Both the tortured course of dealing on this issue and Mr. Prentice's flimsy justifications for both his initial forgetfulness and his delay make abundantly clear that Proponents waited until January 17 to make this "motion to amend" to delay production of the 97 documents until Plaintiffs have rested their

---

[1] Proponents provided to Plaintiffs an unredacted version of Mr. Prentice's Third Declaration. Plaintiffs will refer to the individual whose name Proponents have redacted as John Doe so that this opposition may become part of the public record.

1

09-CV-2292 VRW   PLAINTIFFS' RESPONSE TO PROPONENTS' MOTION TO AMEND JANUARY 8, 2010 DISCOVERY ORDER

case—or perhaps even until the close of evidence. That would be obviously prejudicial to Plaintiffs and this Court should not allow it, particularly not after Proponents withheld the vast bulk of their responsive documents until after the first week of trial.

Plaintiffs are entitled to immediate production of the 97 documents being wrongfully withheld by Proponents. If the Court wishes to hold a hearing to consider these issues, Plaintiffs request that the hearing be held on January 19, 2010 in order to minimize any further prejudice to Plaintiffs.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Proponents First Sought A Protective Order To Shield Them From Complying With Their Discovery Obligations

On August 19, 2009, Plaintiffs propounded their first set of requests for document production on Proponents. Doc #187-3. In response to Plaintiffs' document request, Proponents sought a protective order prohibiting *any* discovery into documents or communications concerning Prop. 8, except to the extent the Proponents themselves had chosen to make a communication available to the general public, on the grounds that such discovery would intrude on their First Amendment rights. Doc #175.

On October 1, 2009, this Court granted the protective order in part, and denied it in part. Doc #214. This Court held that Plaintiffs' Request for Production No. 8 ("Request No. 8"), seeking all communications relating to Prop. 8 between Proponents and any third party, was "overly broad" and directed Plaintiffs to revise Request No. 8. *Id*. at 16. However, this Court also rejected Proponents' assertion that the First Amendment precluded any discovery into the Proponents' nonpublic communications. *Id*.

As a result of this Court's ruling, on October 5, 2009, Plaintiffs revised Request No. 8 to conform with this Court's October 1, 2009 order. *See* Declaration of Rebecca Justice Lazarus ("Justice Lazarus Decl.") ¶ 2, Exh. A.[2]

---

[2]    Plaintiffs' revision limited Request No. 8 to "those who (1) had any role in managing or directing ProtectMarriage.com or the Yes on 8 campaign, or (2) provided advice, counseling, information, or services with respect to efforts to encourage persons to vote for Prop. 8 or otherwise to educate persons about Prop. 8, including its meaning, intent, effects if enacted, or effects if rejected; including communications among and between any two or more of the following persons or entities: Defendant-Intervenors, members of the Ad Hoc Committee
[Footnote continued on next page]

2

Gibson, Dunn & Crutcher LLP

Despite this Court's repeated denial of Proponents' request for a blanket prohibition on discovery of their non-public communications and Plaintiffs' willingness to enter into an "attorneys-eyes only" protective order, Proponents continued to refuse to produce any non-public documents. Indeed, in what would become a familiar refrain, counsel for Proponents made clear that "[w]hile there is a possibility of a stay, we must respectfully decline to produce any documents over which we are asserting a claim of privilege." Doc #256, Exh. A. Plaintiffs therefore requested the Court to direct immediate production of the documents. Doc #256. The matter was referred to Magistrate Judge Spero, who entered an order on November 19, 2009, directing Proponents to produce documents responsive to Plaintiffs' discovery request on a rolling basis, "to conclude not later than the close of fact discovery on November 30, 2009." Doc #258.

**B.     Proponents Continued To Refuse To Produce Documents Responsive To Plaintiffs' Requests Even After The Ninth Circuit Confirmed That The First Amendment Privilege Applied Only To A "Core Group" Of The Yes On 8 Campaign**

Proponents continued to resist production of documents after the Ninth Circuit issued an opinion on December 11, 2009, reversing this Court's orders holding that the First Amendment privilege had no application to Request No. 8, but stating that the privilege was "limited to private, internal campaign communications concerning formulation of campaign strategy and messages." *See Perry v. Schwarzenegger*, No. 09-17241, slip op. at 16228 n.12 (9th Cir. Dec. 11, 2009). Proponents took the position that any documents they had not disclosed had already been deemed irrelevant by the Court, or were "private, internal campaign communications" subject to the privilege. The Court again referred the dispute regarding the production of relevant documents to Magistrate Judge Spero. *See* Doc #332.

On January 4, 2010, the Ninth Circuit issued an amended opinion. *Perry v. Schwarzenegger*, No. 09-17241, amended slip op. (9th Cir. Jan. 4, 2010). That opinion clarified that the First

---

[Footnote continued from previous page]
described at the September 25, 2009 hearing in this matter, Frank Schubert, Jeff Flint, Sonia Eddings Brown, Andrew Pugno, Chip White, Ron Prentice, Cheri Spriggs Hernandez, Rick Ahern, Laura Saucedo Cunningham, Schubert Flint Public Affairs, Lawrence Research, Bader & Associates, Bieber Communications, Candidates Outdoor Graphic Service Inc., Cardinal Communication Strategies, Church Communication Network Inc., The Monaco Group, Connell Donatelli, Message Impact Consulting, K Street Communications, Marketing Communications Services, Sterling Corp., and JRM Enterprises." *Id*.

Amendment privilege protecting "private, internal communications concerning the formulation of strategy and messages" was limited to communications among the "core group of persons engaged in the formulation of campaign strategy and messages." *Id*. at 602-03 n.12. The opinion did not define who could be included within the "core group"; instead, the Ninth Circuit left it to the district court, "which is best acquainted with the facts of this case and the structure of the 'Yes on 8' campaign" to determine who should be included in the core group that is protected by the First Amendment. *Id*. at 603 n.12.

### C. This Court Defined The "Core Group" Based On Representations Made By Counsel At The January 6, 2010 Hearing and the January 7, 2010 Prentice Declaration And Again Ordered Proponents To Produce Documents

On January 6, 2010, the parties appeared before this Court regarding the scope of the First Amendment privilege claimed by Proponents. *See*, *e.g.*, Jan. 6, 2009 Hr'g Tr. at 8. Proponents agreed to produce a supplemental declaration by Ron Prentice, Chair of the Executive Committee for ProtectMarriage.com, identifying the "core group" of individuals and entities subject to the privilege. *See* Jan. 6, 2009 Hearing Tr. at 103:12-20. On January 7, 2010, Prentice filed a declaration "regarding who may be defined as a 'core group' within ProtectMarriage.com for purposes of formulation of campaign strategy and messaging." Doc #364-1 at 3 ("Second Prentice Declaration"). On January 8, 2010, this Court found that the Proponents only claimed a First Amendment privilege over communications among members of the core group of Yes on 8 and ProtectMarriage.com. Doc #372 at 3. Turning to the identity of the core group set out in the Second Prentice Declaration, this Court included within the core group nearly all of the individuals and entities named by Mr. Prentice, but did not include Mr. Criswell (who had sworn under penalty of perjury that he, through his company, was not involved in the formulation of campaign strategy or messages (Doc #351-1 at 2)) or his company, MCSI. This Court then held that communications to anyone outside the core group would not be protected by the First Amendment. *See id.* at 5. The Court further ordered that Proponents begin producing all relevant, non-privileged documents on a rolling basis beginning at noon on January 10, 2010, and concluding not later than noon on Sunday, January 17, 2010. *Id.*

**D.     Proponents' Actions Following The January 8, 2010 Discovery Order**

After stating to the Court that they had at least 30,000 potentially responsive documents (Jan. 6, 2010 Hr'g Tr. at 110), on January 10, 2010, Proponents produced over 1,400 pages of documents to Plaintiffs. Justice Lazarus Decl. at ¶ 3.

Proponents followed up that meager production with fifteen pages of objections to the January 8, 2010 discovery order filed on January 13, 2010. Doc #446. Proponents then produced approximately 12,000 pages of documents over the next two days, before producing 9,000 pages in the 12-hour period before the January 17 noon deadline for completion. Justice Lazarus Decl. at ¶¶ 4-6, 9.

At 11:07 AM on that day, however, counsel for Proponents notified counsel for Plaintiffs that Proponents intended to file a Motion to Amend the January 8 Order and a third (January 17, 2010) declaration of Ron Prentice as soon as the ECF system became available. Justice Lazarus Decl. at ¶ 7, Exh. B. Proponents represented that their production was "complete," but subsequently clarified that Proponents had withheld ninety-seven (97) documents from production on the grounds set forth in Proponents' then-unfiled motion to amend. Justice Lazarus Decl. at ¶¶ 8, 10; Exhs. C, D.

### III.     STANDARD OF REVIEW

The courts have made clear that a motion for reconsideration should only be granted under extraordinary circumstances. In particular, "reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah County v. ACandS, Inc*., 5 F.3d 1255, 1263 (9th Cir. 1993). This standard clearly applies to the court's own interlocutory orders. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma*, 571 F.3d 873, 880 (9th Cir. 2009). Although this standard is most frequently discussed in the context of a district court's orders, it has also been applied in this district where a party requests that a magistrate judge modify an existing order. *Niva v. United States*, 2009 WL 3617767, at *5 (N.D. Cal. Oct. 29, 2009).

### IV.     ARGUMENT

In the instant motion, Proponents seek reconsideration of the Court's January 8, 2010 order and request that the Court enlarge the "core group of persons engaged in the formulation of campaign

5

strategy and messages" to include four additional individuals. *Perry v. Schwarzenegger*, No. 09-17241, amended slip op. at 602-03 n.12. They contend that the Second Prentice Declaration inadvertently "omitted" Richard Peterson, Robb Wirthlin, Bill Criswell and John Doe (described in the Redacted Third Prentice Declaration as a "professional opinion research consultant"). Doc #474 at 4. That this "oversight" came to Proponents' attention only after the trial has been going on for a week, six days after advertisements featuring both Mr. Peterson and Mr. Wirthlin were admitted into evidence, three days after Proponents filed objections to the January 8, 2010 order, and minutes before their long-resisted production of documents to Plaintiffs was scheduled to be complete is, in a word, incredible. It is a transparent effort to deprive Plaintiffs of any ability to use these documents in their case-in-chief, and may well constitute an effort to prevent the development of any factual record concerning **Proponents'** assertion, made in Court on January 11, 2010, that the ubiquitous Yes on 8 campaign theme, "Protect Our Children," actually meant "protect our children from the possibility of age-inappropriate sex education" rather than "protect our children from homosexuals." Jan. 11, 2010 Trial Tr. at 122:25 - 123:2.[3] Proponents' motion should be denied.

**A.   The Third Prentice Declaration Is Insufficient To Justify Amendment Of The January 8, 2010 Discovery Order**

**1.   The Third Prentice Declaration Is Insufficient On Its Face**

Mr. Prentice's newest declaration claims that the four persons he seeks to sweep into ProtectMarriage.com's "core group" were omitted from the Second Prentice Declaration by his "oversight" caused by (1) "the difficulty of remembering the precise scope of involvement of all persons engaged in the formulation of strategy and messages in such a massive and complex citizens' campaign extending over months"; (2) the extreme time constraints faced by legal counsel and Proponents in preparing for this trial"; and (3) his own personal work schedule." *Id*. at 5 (citing ¶ 3 of Third Prentice Declaration). None of these justifications survives even casual scrutiny.

---

[3]   Proponents' counsel, Brian Raum, introduced a video featuring Mr. Wirthlin into evidence and asked Plaintiff Paul Katami several questions based on the video, including whether he "think[s] kids as young as first and second grade should be taught about . . . sex? In other words, traditional sex education, should that start in first and second grade?" Jan. 11, 2010 Trial Tr. at 122:25 - 123:2.

***Bill Criswell.*** Proponents' claim that they did not "remember[]" the scope of Mr. Criswell's involvement should be dismissed out of hand. Doc #474 at 5. Mr. Prentice explicitly mentioned Mr. Criswell in the Second Prentice Declaration and the Court found the representations made in that declaration insufficient to justify including Mr. Criswell in the "core group."

Mr. Criswell (and his declaration denying any participation in the formulation of campaign strategy and messages) was discussed specifically—by name—at the January 7, 2010 hearing. *See* Jan. 6, 2010 Hr'g Tr. at 62. Mr. Prentice responded to that colloquy by asking the Court to include within the core group Mr. Criswell's firm, MCSI (with Mr. Criswell's name in parentheses). Doc #364-1 (Second Prentice Decl. at ¶ 7(vii)). The gambit failed after Plaintiffs opposed MCSI's inclusion within the core group on the strength of Mr. Criswell's declaration (which denied that either Mr. Criswell *or his firm* had any involvement in campaign messaging or strategy). Doc #367 at 2. Thus, none of Mr. Prentice's three excuses hold up: his counsel knew of Plaintiffs' objection to Mr. Criswell's inclusion in the core group on January 6; he tried to skate around Mr. Criswell's declaration by seeking MCSI's inclusion in the core group; the Court rejected his argument; and for ten days Proponents did nothing.[4]

*Nothing* has changed since the Court considered and rejected Proponents' contention that Mr. Criswell was part of the "core group." See Doc #364 (Second Prentice Decl. at ¶ 7(vii) (arguing that MCSI *and* Mr. Criswell should be considered part of the core group)); Doc #372 at 4 (declining to include them within the core group). Mr. Prentice's attempt to sweep Mr. Criswell into the "core group" is still contradicted directly by Mr. Criswell's own sworn (and less self-serving) statements that neither he nor MCSI "participate[d] in conceptualizing or devising the advertising campaign," and that "[a]t not time did [he or MCSI] develop or assist in the development of message(s) or theme(s) conveyed by the campaign to the voting populace." Doc #351-1 at 2. (Decl. of Bill Criswell in Support of Mot. to Quash). The Court should reject Proponents' attempt to relitigate this issue.

---

[4] Even if Mr. Prentice's argument to include Mr. Criswell within the core group were to be considered afresh, it would have to be rejected. Mr. Prentice's argument that Mr. Criswell was regularly "exposed" to communications that were otherwise exclusive to the core group, *see* Doc #474-1 at 4, is not an argument for privilege; *it is an argument for waiver.*

7

09-CV-2292 VRW   PLAINTIFFS' RESPONSE TO PROPONENTS' MOTION TO AMEND JANUARY 8, 2010 DISCOVERY ORDER

*Messrs. Peterson, Wirthlin and Doe.* Proponents' effort to add Mr. Peterson, Mr. Wirthlin, and Mr. Doe based on Mr. Prentice's propitious and sudden recollection of their role also should be rejected. Proponents apparently did not "remember" how central Messrs. Wirthlin, Peterson and Doe were to the formulation of campaign strategy and messages in November, when Mr. Prentice submitted his first declaration regarding the internal structure of the Prop. 8 campaign. Nor did they recollect these individuals' supposedly pivotal roles in the course of the January 6, 2010 hearing before this Court or in their submissions to the Court following that hearing, *see, e.g.*, Jan. 6, 2010 Hr'g Tr. at 35-36, or even after advertisements featuring Messrs. Peterson and Wirthlin were admitted into evidence on January 11. Jan. 11, 2010 Trial Tr. at 122:25 – 123:2. This is despite the fact that counsel for Proponents have been called upon to discuss and describe the key participants in the Yes on Prop. 8 campaign on numerous occasions. *See, e.g.*, Nov. 2, 2009 Hr'g Tr. at 40 (discussing the fact that Proponents' documents included names of individuals privy to internal campaign messages and strategies); *id*. at 44 (requiring that Proponents "disclose the identity of *all those* who were in a position of management responsibility as part of the *in camera* disclosure, so that [the Court] could make some kind of a determination whether it seems reasonable that the identity of such individuals would have the kind of chilling effect that [Proponents] contend applies to this situation") (emphasis added); Justice Lazarus Decl. at ¶ 11, Exh. E, at 91:14 – 94:8 (Prentice Dep. Tr. Dec. 17, 2009). Indeed, counsel for Proponents have represented to the Court that they have conducted extensive (and repeated) reviews of the documents that reflect these individuals' role in the campaign, yet now assert that they forgot that these four gentlemen played a pivotal role in the formulation of campaign strategy and messages. And it is certainly puzzling that Proponents' memory of their supposedly crucial role was not jogged in the course of their briefing of multiple objections to the January 8 order, filed on January 13, 2010. *See* Doc #446.

Mr. Prentice states that both Mr. Peterson and Mr. Wirthlin "personally appeared on behalf of ProtectMarriage.com in statewide television advertisements of the campaign, and participated directly with other members of the core group to formulate the specific campaign messages [they] delivered in those television advertisements." Third Prentice Decl. Doc #474-1 at ¶ 3(a)-(b). Mr. Prentice does not say that either Mr. Peterson or Mr. Wirthlin actually formulated campaign

messages themselves—only that they "participated . . . with other members" who formulated the specific campaign messages. The Court should not, at this late date, accept this careful wordsmithing as a representation that Peterson or Wirthlin were in the "core group." Indeed, Mr. Wirthlin is supposedly an ordinary citizen of **Massachusetts**. *See* PX0116. No reasonable definition of ProtectMarriage.com's "core" could encompass ordinary persons dispersed across the length and breadth of the Nation. And that Proponents would even attempt to stretch the definition that far simply reveals the lengths to which they will go to frustrate Plaintiffs' (and the Court's) efforts to build a factual record concerning Plaintiffs' constitutional claims.[5]

Mr. Prentice states that John Doe was "a professional opinion research consultant who was hired by ProtectMarriage.com to conduct focus groups and other voter opinion research, which were essential parts of the internal formulation of the campaign's strategy and messaging. Third Prentice Decl. Doc #474-1 at ¶ 3(c). But even if Mr. Doe *contributed* to the formulation of "parts" of campaign strategy and messaging, this is insufficient to establish that he was a member of the "core group of persons engaged in the formulation of campaign strategy and messages." Indeed, if such assertions were sufficient, the limitation imposed by the concept of the "core group" would be meaningless because it would encompass virtually anyone who participated in the campaign— precisely the standard that the Ninth Circuit rejected when it amended its opinion to limit the privilege to a "core group." In any event, Proponents' proffered failure of memory is not credible and certainly insufficient to justify amendment of this Court's careful order.

Likewise, Proponents' complaints concerning the "extreme time constraints" associated with preparation for trial and the press of Mr. Prentice's "work schedule" cannot support their request for amendment of the discovery order. This Court made clear as early as July 2009 that this case would proceed to trial in January 2010. The time constraints placed on both parties by the expedited nature

---

[5] Even if Mr. Peterson and Mr. Wirthlin could be swept into the "core group" at this late date— and they cannot—Proponents still would not be entitled to withhold documents concerning advertisements featuring them because Proponents have placed the meaning and potential interpretation of these advertisements directly in issue. *See supra* note 3. Those documents thus would meet the heightened standard of relevance the Ninth Circuit said could warrant disclosure of even an otherwise privileged "core group" document. *See Perry v. Schwarzenegger*, No. 09-17241, amended slip op. at 604 n.13.

of these proceedings has not prevented Proponents from vigorously litigating their asserted First Amendment rights to resist Plaintiffs' discovery and fighting public transmission of the proceedings all the way to the Supreme Court. *See Hollingsworth v. Perry*, No. 09A648 (U.S. Jan. 13, 2010) (per curiam). It cannot justify Proponents' proposed revisions to the discovery order. By the same token, Mr. Prentice's assertion that his work schedule impaired his memory both when he filed his first declaration more than two and a half months ago and his second declaration in connection with Proponents' specific agreement to provide information on the "core group" to the Court at the January 6, 2010 hearing, but not at the close of Proponents' supplemental production, is difficult to swallow. This is particularly true given that this Court warned Proponents at the January 6, 2010 hearing that their under seal filing of the Second Prentice Declaration had to "completely convince[]" the Court that they were "correct." *Id*. at 108. Presumably, counsel for Proponents communicated the importance of accuracy to Mr. Prentice and it is no answer to dismiss it as a casual oversight.

### 2. Proponents' Attempt to Associate These Individuals With The "Core Group" Are Contradicted By The Record

Until this point, Proponents have never claimed that Messrs. Peterson, Wirthlin, and John Doe were members of the "core group of persons engaged in the formulation of campaign strategy and messages." Indeed, this claim, and the assertion that these individuals escaped the memory of Mr. Prentice and his counsel, is belied by several statements made by undisputed "core group" members in their depositions. Members of the Executive Committee, and campaign managers Frank Schubert and Jeff Flint, have known about, and discussed, Messrs. Peterson and Wirthlin without any suggestion that those individuals were within their claim of privilege. These individuals, and any role they played in the campaign, were well-known to Proponents.

For example, although Committee Member Ed Dolejsi refused to answer dozens of questions based on his asserted First Amendment privilege, he openly discussed participating in a rally at which "the Worthlands [sic] from Massachusetts . . . spoke," and identified the Wirthlins as "a couple who were involved in a dispute in Massachusetts about the use of certain textbooks in their schools," but never suggested they were among the campaign's

1  decisionmakers.  Justice Lazarus Decl. at ¶ 12, Exh. F, at 93:25 – 94:7 (Dolejsi Dep. Tr.); *see*
2  *also* Justice Lazarus Decl., Exh. E, at 152:2 – 152:6 (Prentice Dep. Tr. Dec. 17, 2009)
3  (discussing the Wirthlins' participation in the bus tour).  Similarly, Jeff Flint answered over a
4  dozen questions about Professor Peterson's involvement in the case without ever suggesting
5  that he was responsible for the formulation of messages, *see* Justice Lazarus Decl. at ¶ 13,
6  Exh. G, at 110:16 – 112:20 (Flint Dep. Tr.).
7       To the contrary, Mr. Prentice and others have consistently insisted that the group of
8  individuals with actual authority to make decisions on behalf of ProtectMarriage.com is small,
9  and would not appear to encompass Messrs. Peterson and Wirthlin.  The Executive
10 Committee, consisting of Prentice, Dolejsi, Mark Jansson, and Doug Swardstrom, and general
11 counsel Andy Pugno, apparently made most of the strategic decisions of the campaign in
12 conjunction with ProtectMarriage.com's vendors.  Justice Lazarus Decl., Exh. E, at 83:19 –
13 84:2.  ProtectMarriage.com had no employees.  *Id.* at 90:23.  And both Prentice and Dolejsi
14 have testified under oath that ProtectMarriage.com did not have a steering committee.  Justice
15 Lazarus Decl. at ¶ 14, Exh. H, at 97:11 – 97:13 (Prentice Dep. Tr. Dec. 18, 2009); Exh. F, at
16 165:1 – 165:6.  Because Messrs. Peterson and Wirthlin are neither members of the Executive
17 Committee, vendors, or employees of ProtectMarriage.com, the recent claim that they
18 somehow played an important role in the development of campaign messages or themes rings
19 hollow.
20      In this same vein, the late addition of Mr. Doe to the list of vendors central to the
21 campaign is difficult to accept.  In his deposition, Mr. Prentice was asked about, or identified,
22 a long list of vendors who played a "major" role in the campaign.  *See* Justice Lazarus Decl.,
23 Exh. E, at 91:16.  But Mr. Doe never made that list.
24 **B.     Proponents' Request Is Untimely And Prejudicial To Plaintiffs' Case**
25      The trial in this case began one week ago – on January 11, 2010.  Even if the individuals
26 named in the Third Prentice Declaration were members of the "core group" (which they are not),
27 Proponents' failure to assert their status until moments before the deadline for their supplemental
28 production constitutes waiver of their right to assert a privilege over documents authored or received

1  by those individuals.  There is simply no excuse that could justify Proponents' delay; this is not a
2  case of excusable neglect.  This Court has already considered whether Mr. Criswell should be a
3  member of the core group and found that he is not.  Messrs. Wirthlin and Peterson appeared
4  prominently in ads featured on the first day of trial.

5      Proponents attempt to excuse their conduct by pointing to the "time pressures" in this case
6  and complain that they lacked sufficient time after the Ninth Circuit issued its amended opinion to
7  determine which individuals should be included in the core group.  Doc #474 at 7.  But Proponents
8  were ordered to produce a privilege log that would afford Plaintiffs and the Court the opportunity to
9  determine whether their privilege claims were appropriate more than a month ago. Dec. 16, 2009 Tr.
10 at 80-85.  In order to prepare that log, Proponents had to review the thousands of documents listed on
11 that log (as well as, presumably, the many they did not log, but had not yet produced on their baseless
12 view of relevance).  Messrs. Criswell, Wirthlin and Peterson all appear prominently on Proponents'
13 privilege log (and given Proponents' inclusion of various "Does" on that log, it is certainly not
14 unlikely that the John Doe listed in the Third Prentice Declaration also appears).  Proponents sat on
15 whatever rights they may have had to maximize the prejudice to Plaintiffs—all on the heels of their
16 production of over 22,500 pages of documents as well as numerous video and audio files over the
17 course of the first week of trial, with nearly half delivered in the last twelve hours before the January
18 17, 2010 noon deadline.  Justice Lazarus Decl. ¶¶ 3-6, 9.  In light of this extensive review,
19 Proponents' claim that the failure to ever mention these individuals constituted "[i]nnocent
20 omissions" is not credible.

21     Proponents' decisions to notify Plaintiffs of their intent to file the instant motion fifty minutes
22 before their court-ordered deadline to complete their supplemental document production and
23 withhold 97 documents on the grounds set forth in that motion adds to the burden on, and prejudice
24 to, Plaintiffs.  Proponents argue that "there is no prejudice to Plaintiffs in reopening the Order to add
25 these additional names to the core group" because "Plaintiffs have no right to privileged documents
26 in the first place and, given the short time frame since production, cannot be said to have relied on
27 them to their detriment in preparing and trying the case."  Doc #474 at 7-8.  But this Court's January
28 8 order establishes that these 97 documents are *not* privileged.  Proponents' actions have improperly

1  usurped the Court's role—arrogating to themselves an extension of the deadline imposed for

2  completion of their supplemental production and thus shortening any time within which Plaintiffs

3  could review and use these documents in their case in chief.

4        There can be little doubt that Proponents' actions, in the middle of trial, have and will

5  continue to prejudice Plaintiffs. Indeed, it is likely that the withheld documents will cast further light

6  on the Prop. 8 campaign including its motivations and the role of various persons and entities in the

7  massive coordinated effort to pass Prop. 8. Throughout discovery and in the first week of trial,

8  Proponents have tried to distance themselves from the campaign communications of various

9  individuals and groups who disseminated incendiary literature about California's gays and lesbians

10 during the Prop. 8 campaign. To achieve this end, Proponents have claimed that

11 ProtectMarriage.com was a separate entity from other organizations campaigning for Prop 8. For

12 example, ProtectMarriage.com's chairman, Ron Prentice would only admit that ProtectMarriage.com

13 was a "coalition . . . to the extent that people aligned with a generally directed purpose" and described

14 the coalition as "loosely formed." Justice Lazarus Decl., Ex. E at 50:2-4; 58:4-5. But the documents

15 produced to date convincingly show that ProtectMarriage.com worked hand-in-hand with these

16 groups in formulating one another's messages in the Prop. 8 campaign. And it is likely that the 97

17 documents currently being withheld by Proponents will cast further light on those messages and the

18 motivations of the official campaign for "Yes on 8. Proponents' obstruction effectively denies

19 Plaintiffs the opportunity to question witnesses about these documents and authenticate these

20 documents because they are still being withheld from production.[6]

---

[6] Even if any of these individuals came within the "core group" (and they clearly do not), Proponents' decision to put this question at issue establishes that Plaintiffs' request for their documents would meet the heightened standard of relevance set forth in the Ninth Circuit's order. *Perry v. Schwarzenegger*, No. 09-17241, amended slip op. at 604, n.13 ("We do not foreclose the possibility that some of Proponents' internal campaign communications may be discoverable. We are not presented here with a carefully tailored request for the production of highly relevant information that is unavailable from other sources that do not implicate First Amendment associational interests. We express no opinion as to whether any particular request would override the First Amendment interests at stake.")

13

09-CV-2292 VRW   PLAINTIFFS' RESPONSE TO PROPONENTS' MOTION TO AMEND JANUARY 8, 2010 DISCOVERY ORDER

Gibson, Dunn & Crutcher LLP

## V. CONCLUSION

This motion is another in a series of attempts by Proponents to avoid their obligations under the Federal Rules as well as applicable court orders. Proponents have provided no justification for their actions and have (yet again) prejudiced Plaintiffs' ability to vindicate their constitutional rights. As such, Plaintiffs respectfully request that the Court deny Proponents' motion and order them to produce the documents they continue to withhold immediately. If the Court wishes to hold a hearing to consider these issues, Plaintiffs request that the hearing be held on January 19, 2010 in order to minimize any further prejudice to Plaintiffs.

Respectfully submitted,

DATED: January 19, 2010

GIBSON, DUNN & CRUTCHER LLP
Theodore B. Olson
Theodore J. Boutrous, Jr.
Christopher D. Dusseault
Ethan D. Dettmer
Matthew D. McGill
Amir C. Tayrani
Sarah E. Piepmeier
Theane Evangelis Kapur
Rebecca Justice Lazarus
Enrique A. Monagas

By: _____/s/_____
Ethan D. Dettmer

and

BOIES, SCHILLER & FLEXNER LLP
David Boies
Jeremy M. Goldman
Roseanne C. Baxter
Richard J. Bettan
Beko O. Richardson
Theodore H. Uno
Joshua I. Schiller

Attorneys for Plaintiffs
KRISTIN M. PERRY, SANDRA B. STIER,
PAUL T. KATAMI, and JEFFREY J. ZARRILLO