1  STEPHEN V. BOMSE (State Bar No. 40686)
   sbomse@orrick.com
2  ORRICK, HERRINGTON & SUTCLIFFE LLP
   405 Howard Street
3  San Francisco, California 94105-2669
   Tel: (415) 773-5700
4  Fax: (415) 773-5759

5  ALAN L. SCHLOSSER (State Bar No. 49957)
   aschlosser@aclunc.org
6  ELIZABETH O. GILL (State Bar No. 218311)
   egill@aclunc.org
7  ACLU FOUNDATION OF NORTHERN CALIFORNIA
   39 Drumm Street
8  San Francisco, CA 94111
   Tel: (415) 621-2493
9  Fax: (415) 255-8437

10 Attorneys for No on Proposition 8, Campaign for Marriage Equality:
   A Project of the American Civil Liberties Union of Northern California

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO,<br><br>        Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the California Department of Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; and DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles,<br><br>        Defendants. | CASE NO. 09-CV-2292 VRW<br><br>**Opposition of No on Proposition 8, Campaign for Marriage Equality: A Project of the American Civil Liberties Union of Northern California To Defendant-Intervenors' Motion to Shorten Time for Motion to Compel Compliance With Nonparty Document Subpoenas**<br><br>Judge:      Chief Judge Walker<br>Location:   Courtroom 6, 17th Floor<br>Trial Date:  January 11, 2010 |

CASE NO. 09-CV-2292 VRW

Dockets.Justia.com

**INTRODUCTION**

This is the response of No on Proposition 8, Campaign for Marriage Equality: A Project of the American Civil Liberties Union of Northern California ("ACLU") to an administrative motion, served late in the afternoon on Friday, January 15, by Defendant-Intervenors, the Proponents of Proposition 8 ("Proponents").  (Doc # 473.)  The administrative motion demands that this Court issue an order requiring several non-parties, including the ACLU, to respond on the merits to Proponents' motion to compel compliance with a third-party subpoena—issued more than two months ago—by the close of business on January 18.

The ACLU opposes the administrative motion, as well as the underlying motion to compel. The response date proposed by Proponents (which, in fact, has already passed) is entirely unreasonable—not to mention, infeasible—in light of the fact that the ACLU and the other entities named in the motion are not parties to this action and could not fully or fairly respond to Proponents' motion within the time specified.  Moreover, the underlying motion to compel is, itself, untimely under this Court's Local Rules, appears to seek documents that the ACLU already has produced, and to the extent it seeks documents that the ACLU has not produced, is based on the mistaken premise that discovery rulings that apply to a party and proponent of a ballot initiative somehow apply automatically to nonparty opponents of that same ballot initiative.

The ACLU therefore respectfully requests that the Court deny both Proponents' administrative motion and their motion to compel.  Should the Court decide to consider the motion to compel at all, the ACLU requests until at least January 25, 2010 to file its opposition.

**RELEVANT BACKGROUND**

Proponents present their demand to the Court as one of great emergency.  What the record actually shows, however, is that the only emergency here is one of Proponents' own making.

Over five months ago, on August 27, 2009, Proponents served administrative subpoenas on a number of entities, including the ACLU, that had worked in opposition to Proposition 8.  The content of these subpoenas was identical to discovery requests that plaintiffs had served on Proponents, seeking information and documents about the Yes on 8 campaign, except of course the subpoenas sought information and documents related to the No on 8 campaign.  In a cover letter, Proponents

explained that they were opposing the discovery requests served on them by plaintiffs to the extent such requests sought internal campaign communications on grounds of relevance and privilege under the First Amendment. But Proponents "warned" the subpoena recipients that should Proponents lose their discovery dispute over internal campaign communications, then Proponents would seek the same types of documents from the No on 8 entities, including the ACLU.

As demanded by the subpoena, the ACLU sent Proponents a response in September 2009. In the response, the ACLU agreed to produce documents that it had disseminated to the general public and that could not be obtained easily from another source. However, it objected to the rest of the requests on grounds of relevance, burden, and constitutional privilege. In particular, the ACLU objected that as a nonparty *opponent* of Proposition 8 it was situated significantly differently than the *proponents* of the initiative, who had also intervened in the litigation as parties. On November 2, 2009—after an organization-wide effort to collect relevant documents—the ACLU produced the documents it said it would produce. Those documents provided Proponents with information that was disseminated to voters and that could have influenced their views regarding Proposition 8. (*See* Doc # 472 at p. 5 (arguing that Proponents need documents relating to the No on 8 campaign to ensure that they are able to build a record of the mix of information before and available to voters).)

Proponents have never specially responded to either the ACLU's September 2009 responses and objections. Indeed, Proponents have appeared to have little interest in much of the material they now say they need on an emergency basis. The sole focus of Proponents' efforts with respect to the ACLU and the other nonparty entities from which they now seek to compel production is such parties' internal campaign communications—or the same set of communications that Proponents themselves tried to protect from plaintiffs.

As this Court is well aware, the "long dispute," as Proponents describe it, between plaintiffs and Proponents over Proponents' internal campaign communications involved numerous court hearings in the district court, as well as two appeals to the Ninth Circuit, in which the parties engaged in vigorous and lengthy debates over the relevance of *Proponents'* internal campaign communications and the scope of the First Amendment privilege protecting those documents. That series of skirmishes ultimately resulted in an order by the Ninth Circuit recognizing a claim of First

Amendment privilege as to private, internal campaign communications concerning the formulation of campaign strategy and messages, but also recognizing the general relevance of *Proponents'* campaign communications. (*Perry v. Hollingsworth*, Case No. 09-17241, pp. 34-35 & n.12 (9th Cir. Dec. 3, 2009, as amended Jan. 4, 2010) ("9th Cir. Order").

Meanwhile, Proponents' approach to their own subpoenas ebbed and flowed with the tide of the battle they were waging to protect their internal campaign communications from production. Thus, after having taken no steps whatsoever with respect to their subpoenas against third-parties for over two months, Proponents in early November (following this Court's October 1, 2009 ruling against them) suddenly contacted the subpoenaed non-party entities, including the ACLU, and demanded that the entities produce their internal campaign communications. Given the delay, as well as the intervening orders issued by this Court, the ACLU demanded that Proponents issue a new subpoena—to which the ACLU, again, of course, objected.[1] By the time the ACLU had submitted its response to Proponents' second subpoena (on November 20, 2009), the Ninth Circuit had issued a stay against this Court's October 1, 2009 Order (Doc # 214), so Proponents again chose to go into hibernation with respect to enforcement of their third-party subpoenas—notwithstanding the fact that Proponents obviously were well aware that there was a discovery cut-off in the case, as well as an impending trial in early January.

This most recent period of silence extended from November not only until long after the close of discovery, but until after the trial actually was under way. Then, last week, following an order by the Court directed to Proponents, the ACLU received a letter demanding that it provide Proponents with a list of "core" group members whose documents might be subject to privilege plus a log of all communications supposedly subject to such a privilege. The letter further demanded that the ACLU should begin the "immediate" production of "relevant, non-privileged documents." The ostensible basis for this demand was not Proponents' most recent subpoena. Rather, the supposed basis for it was this Court's January 8, 2010 Order (Doc # 372), which, Proponents asserted, somehow applies to

---

[1] The November 14, 2009 subpoena and the ACLU's objections to it are attached as Exhibits 2 and 4, respectively, to Proponents' Motion to Compel.

nonparties, such as the ACLU, even though those nonparties were not involved in any proceedings before the Court that led to issuance of that order, much less mentioned in it. Nonetheless, Proponents' letter asserted that if the ACLU did not respond by providing their "list" within one day and did not begin "immediately" producing documents, Proponents would file a motion to compel—a threat that they have now fulfilled with the filing late last Friday of such a motion. That motion was accompanied by the instant request for an order shortening time, which insists that unless Proponents' motion is heard, and its demands for production enforced, on an absurdly rapid schedule Proponents will suffer "irreparable harm," since the trial at which the subpoenaed parties' documents would be used is now under way.

### ARGUMENT

**A.    Proponents' Motion Is Untimely.**

Proponents appear to be acting under the impression that as proponents of Proposition 8 they are entitled to some sort of discovery "tit for tat" with the opponents of Proposition 8. That is, whatever they are required to produce as proponents of the initiative, their opponents are required, without more, to produce the same. While Proponents' motivation is surely obvious, their legal reasoning is flawed. Plaintiffs were entitled to serve subpoenas seeking documents from third-party entities who opposed Proposition 8—or any third parties, for that matter—but if they were unsatisfied with the responses of those entities, they needed to move to compel months ago.

First, Proponents' motion is in direct violation of Local Rule 6-2, which requires all motions to compel to be filed no later than seven days after the discovery cutoff. As the discovery cutoff in this case took place on November 30, 2009, the last day for Proponents to file their motion to compel was December 7, 2009. Proponents cavalierly assert that this date can be ignored because the rule allows the motion deadline to be extended by Court order for good cause shown, and because the Court has continued to hear discovery disputes among the parties after the early December cut-off date. Yet the Court has only continued to hear discovery disputes among the *parties* to this litigation, presumably because such disputes were in process at the time the deadline passed.

As of December 7, 2009, there was no outstanding dispute between Proponents and the ACLU—the ACLU responded to Proponents' November 14, 2009 subpoena with objections on

November 20, 2009, and did not hear a word until last week.  Nor is the ACLU aware of any effort by Proponents to notify the Court that they would need to extend the motion to compel deadline with respect to third-party subpoenas, despite the urgent importance which Proponents now ascribe to these subpoenas.

Second, even if the current motion is not barred absolutely under Local Rule 6-2, it should be stricken on the basis of laches, waiver or estoppel.  If there is an emergency here now, it is one of Proponents' own making and they should not be heard to seek relief on that account.  Plaintiffs issued their original subpoena to the ACLU and other nonparty No on 8 entities over five months ago.  Despite the efforts of the ACLU and the other entities to comply with those subpoenas, both by producing relevant, non-privileged documents and by asserting relevance and privilege objections, Proponents have not actually engaged with the subpoenas they issued in any way.  Instead of bringing any dispute to the Court's attention in a timely way, and allowing these issues to be adjudicated at the same time as Proponents' own relevance and privilege objections to discovery demands from the Plaintiffs, Proponents have made their demands on the No on 8 entities solely in accordance with their own discovery trajectory.

The reasoning behind this decision was plainly strategic.  Proponents chose to avoid any effort to compel production by the non-party No on 8 entities in order to avoid taking inconsistent positions that might prejudice their desire to avoid production of their own documents.  There is nothing wrong with Proponents making that strategic judgment, but it comes at a cost: Proponents were free to pursue discovery from non-parties for the past five months even as they were resisting discovery by plaintiffs, but they chose not to do so.  Having made that judgment, Proponents cannot now seek to avoid the consequences of their prior strategy or use that judgment as a basis for claiming an emergency and seeking both a hearing and, ultimately, compliance on an insupportably and infeasibly rushed schedule.

Were compliance to be ordered at this very late date (despite the fact that the ACLU and other nonparties are not similarly situated to Proponents), the burden and prejudice that would result to the subpoenaed nonparties would be enormous.  Indeed, given the fact that the case is now mid-trial, it is likely not even feasible that the ACLU or other nonparty No on 8 entities could produce documents

that could be used at trial.

**B.     Proponents' Motion Is Based on an Order That Does Not Apply to the ACLU.**

Another fatal problem with Proponents' motion is that while they purport to be seeking to enforce their November subpoena, that is not what they are actually attempting to do.  Instead, what Proponents are seeking is compliance with the order that this Court issued on January 8, 2010.  (Doc # 372.)  Pursuant to the Ninth Circuit's ruling on internal campaign communications, that order directed the Proponents to make a certain limited production of documents after identifying and excluding a "core group" or people who could claim privilege under the First Amendment pursuant to the Ninth Circuit's decision in this case.

That order does not apply by its terms to the ACLU or other nonparties, nor were such groups involved in any of the briefing or hearing which led to that ruling.  Nonetheless, Proponents sent a letter to the ACLU on January 12, 2010 that demanded that the ACLU identify a "core group" of individuals who are entitled to claim privilege, that it create a privilege log with respect to any withheld documents and that it begin the immediate production of what Proponents described (without further specification) as "relevant, non-privileged documents."  In short, what Proponents have done is issue a new document discovery request in the form of a letter incorporating an order that, on its face, has absolutely no application to the ACLU or other third parties and, then, ignore the period for compliance with this new request by assuming that nonparties are somehow bound by this Court's January 8, 2010 order.

This sleight-of-hand is not a matter of exalting form over substance.  A party seeking the production of documents from a nonparty must serve a subpoena to which objections may be lodged.  Fed. R. Civ. P. 45.  If there are such objections, a hearing needs to be held on them and a ruling made.  *Id.*  In this case, that would mean considering the position of the ACLU after a full and fair opportunity for it to brief the issue and after a hearing on its objections.  The fact that the parties to the litigation may have had their rights adjudicated in certain ways following a hearing to which they were parties does not mean that an order issued as to those parties becomes, without more, a new discovery request to nonparties, let alone an order with which those nonparties must comply.

**C. No Prejudice Will Occur Should the Court Deny Proponents' Administrative Motion, as Plaintiffs' Underlying Motion to Compel Is Without Merit.**

Proponents claim in their administrative motion that they will suffer "substantial prejudice" if they are not permitted to move to compel on their nonparty subpoenas to No on 8 entities, because they will otherwise not be able to present to the Court a "complete record" of the "mix of information before and available to the voters" in enacting Proposition 8. (Doc #473 at p.2.) Even if evidence of the information before and available to voters in opposition to Proposition 8 is relevant, the argument that Proponents need to obtain this information from nonparty No on 8 entities or that this information should include such entities' internal, non-privileged campaign communications is entirely without merit.

In brief, and without addressing all the arguments the ACLU would make in its opposition to the motion to compel, Proponents cannot meet the burden test set forth in the Federal Rules of Civil Procedure. Proponents claim that they want the Court to order the ACLU—a nonparty to the litigation—to produce its internal, non-privileged No on 8 campaign communications in order to show the "mix of information before and available to the voters." Yet Proponents are already planning on submitting significant evidence regarding the information before and available to the voters in opposition to Proposition 8, including the No on 8 campaign information produced by the ACLU. (*See* Proponents' Exh. List, Doc # 291, pp.119-20.) Proponents therefore cannot argue that they will not be able to present such evidence without the ACLU and the other subpoenaed nonparties' internal, non-privileged campaign communications, and the imposition on the ACLU in producing such material—particularly on the extremely truncated timetable proposed by Proponents—is without question an undue burden.

Moreover, Proponents have made no showing that any of the ACLU's or other nonparty No on 8 entity's internal, non-privileged campaign communications are relevant to this lawsuit. Under both this Court's October 1, 2009 Order and the Ninth Circuit's order, Proponents' internal campaign communications were only relevant to this litigation because they were the internal campaign communications of Proposition 8's *proponents*. (Doc # 214 at pp. 12-14; 9th Cir. Order at pp. 34-35.) The internal campaign communications of those *opposed* to Proposition 8 are doubly

1  irrelevant here—both because they do not elucidate why voters passed the measure and because, by
2  definition, they were not disseminated to the public.  Indeed, there has been no order in this Court or
3  the Ninth Circuit that suggests that this same rationale would apply to the opponents of an initiative,
4  and indeed it would not.

   **D.  As a Nonparty, the ACLU Should Be Provided Reasonable Time to Respond to the Motion to Compel.**

7  For all of the foregoing reasons, Proponents' motion should be summarily denied without
8  imposing the burden of a full response on entities that are not parties to the litigation and which,
9  according to the express terms of the Federal Rules, are to be protected from undue burdens as the
10 result of litigation involving others.  Fed. R. Civ. P. 45.
11 If the Court wishes to hear the matter, however, then the ACLU requests that it be granted
12 until at least the 25th of January to respond.  Unlike the parties to the case that have been dedicating
13 enormous resources to this matter knowing when it would be in trial, the present motion arose only at
14 the last moment this past week.  Even requiring a response on the 25th will impose substantial
15 burdens on the ACLU.  As described above, opposing Proponents' motion on the merits would
16 involve argument on First Amendment privilege (which may apply differently to different campaign
17 structures), relevance, and burden.  That cannot be done in any time less than the time requested—
18 anything less would deny the ACLU due process.

## **CONCLUSION**

20 For the foregoing reasons, Proponents' motion to compel should be denied summarily or, in
21 the alterative, their motion for an order shortening time should be granted only to the extent of
22 requiring a response from the ACLU and other third party respondents no earlier than January 25.

| | | |
|---|---|---|
| 1 | Dated: January 19, 2009 | STEPHEN V. BOMSE |
| 2 | | Orrick, Herrington & Sutcliffe LLP |
| 3 | | ALAN L. SCHLOSSER |
| | | ELIZABETH O. GILL |
| 4 | | ACLU Foundation of Northern California |

By:    _/s/STEPHEN V. BOMSE_
       STEPHEN V. BOMSE

Attorneys for No on Proposition 8, Campaign for Marriage Equality: A Project of the American Civil Liberties Union of Northern California