STEPHEN V. BOMSE (State Bar No. 40686)
sbomse@orrick.com
JUSTIN M. ARAGON (State Bar No. 241592)
jaragon@orrick.com
SARAH C. MARRIOTT (State Bar No. 241301)
smarriott@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94105-2669
Tel.:   (415) 773-5700
Fax:   (415) 773-5759

ALAN L. SCHLOSSER (State Bar No. 49957)
aschlosser@aclunc.org
ELIZABETH O. GILL (State Bar No. 218311)
egill@aclunc.org
ACLU FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel.:   (415) 621-2493
Fax:   (415) 255-8437

*Attorneys for*
NO ON PROPOSITION 8,
CAMPAIGN FOR MARRIAGE EQUALITY:
A PROJECT OF THE AMERICAN CIVIL
LIBERTIES UNION OF NORTHERN CALIFORNIA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO,<br><br>Plaintiffs,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the California Department of Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; and DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles,<br><br>Defendants. | CASE NO. 09-CV-2292 VRW<br><br>**OPPOSITION OF NO ON PROPOSITION 8, CAMPAIGN FOR MARRIAGE EQUALITY: A PROJECT OF THE AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA TO DEFENDANT-INTERVENORS' MOTION TO COMPEL COMPLIANCE WITH NONPARTY DOCUMENT SUBPOENAS**<br><br>Judge:      Chief Judge Walker<br>Location:  Courtroom 6, 17th Floor<br>Trial Date: January 11, 2010 |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................... 1

STATEMENT OF RELEVANT FACTS .................................................................................... 2

    A.    Proponents' Initial Subpoena and the ACLU's Response and Compliance ...................... 2

    B.    The Debate over Privilege, Proceedings in the Ninth Circuit, and the "November" Subpoena ............................................................................................................................ 3

    C.    Proponents' January 12th "Letter" Subpoena ................................................................... 4

    D.    The Motion to Compel ....................................................................................................... 4

ARGUMENT ................................................................................................................................ 5

    A.    Proponents' Motion Is Untimely ........................................................................................ 5

    B.    Proponents' Motion Seeks Information and Documents That Are Not Relevant .............. 7

    C.    Proponents' Motion Seeks Information and Documents That Are Privileged ................ 11

    D.    Any Potential Relevance of the Documents Sought by Proponents Is Vastly Outweighed by the Burdens Associated with Compliance ............................................... 14

CONCLUSION ........................................................................................................................... 16

- i -

OPP. OF NO ON PROPOSITION 8, CAMPAIGN FOR MARRIAGE EQUALITY: A PROJECT OF THE ACLU OF N. CAL. TO DEFT.-INTERVENORS' MOT. TO COMPEL COMPLIANCE WITH NONPARTY DOCUMENT SUBPOENAS
CASE NO. 09-CV-2292 VRW

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bates v. Jones*,
  131 F.3d 843 (9th Cir. 1997) .................................................................................................... 9

*Beinin v. Ctr. for the Study of Popular Culture*,
  2007 U.S. Dist. LEXIS 47546 (N.D. Cal. 2007) ..................................................................... 10

*Central Council of the Tlingit & Haida Indians v. Chugach Native Ass'n*,
  502 F.2d 1323 (9th Cir. 1974) ............................................................................................. 6, 7

*City of Cuyahoga Falls v. Buckeye Comm. Found.*,
  538 U.S. 188 (2003) ................................................................................................................ 8

*Dart Indus. Co. v. Westwood Chem. Co.*,
  649 F.2d 646 (9th Cir. 1980) ............................................................................................ 10, 16

*Draper v. Coombs*,
  792 F.2d 915 (9th Cir. 1986) ................................................................................................... 5

*Goodworth Holdings Inc. v. Suh*,
  239 F. Supp. 2d 947 (N.D. Cal. 2002) .................................................................................. 5, 6

*Hecht v. Harris, Upham & Co.*,
  430 F.2d 1202 (9th Cir. 1970) ................................................................................................. 6

*In re Motor Fuel Temperature Sales Practices Litig.*,
  2009 U.S. Dist. LEXIS 66005 (D. Kan. 2009) ...................................................................... 10

*Laxalt v. McClatchy*,
  116 F.R.D. 455 (D. Nev. 1986) ............................................................................................. 10

*OKI Am., Inc. v. Advanced Micro Devices, Inc.*,
  2006 U.S. Dist. LEXIS 66441 (N.D. Cal. 2006) ..................................................................... 6

*Perry v. Hollingsworth*,
  No. 09-17241, slip op. (9th Cir. Dec. 3, 2009, as amended Jan. 4, 2010) ...................... *passim*

*Perry v. Schwarzenegger*,
  No. 09-17241, slip op. (9th Cir. Jan. 4, 2010) ......................................................................... 1

*Richards of Rockford, Inc. v. Pacific Gas & Elec. Co.*,
  71 F.R.D. 388 (N.D. Cal. 1976) ............................................................................................ 10

- ii -

OPP. OF NO ON PROPOSITION 8, CAMPAIGN FOR MARRIAGE EQUALITY: A
PROJECT OF THE ACLU OF N. CAL. TO DEFT.-INTERVENORS' MOT. TO
COMPEL COMPLIANCE WITH NONPARTY DOCUMENT SUBPOENAS
CASE NO. 09-CV-2292 VRW

*Roberts v. U.S. Jaycees*,
 468 U.S. 609 (1984) .......................................................................................................... 12

*South Dakota Farm Bureau, Inc. v. Hazeltine*,
 340 F.3d 583 (8th Cir. 2003) ............................................................................................. 10

*Strauss v. Horton*,
 46 Cal. 4th 364 (2009) ........................................................................................................ 9

*Valeria v. Davis*,
 307 F.3d 1036 (9th Cir. 2002) ............................................................................................. 8

*Washington v. Seattle Sch. Dist. No. 1*,
 459 U.S. 457 (1982) ............................................................................................................ 8

*Watts v. SEC*,
 482 F.3d 501 (D.C. Cir. 2007) .......................................................................................... 10

**RULES**

Fed. R. Civ. P. 45(c)(1) ............................................................................................... 10, 11, 16

N.D. Cal. Local R. 26-2 ....................................................................................................... 5, 6

**MISCELLANEOUS**

Jane Schacter, *The Pursuit of "Popular Intent": Interpretive Dilemmas in Direct
 Democracy,* 105 Yale L.J. 107 (1995) ............................................................................... 10

- iii -

OPP. OF NO ON PROPOSITION 8, CAMPAIGN FOR MARRIAGE EQUALITY: A PROJECT OF THE ACLU OF N. CAL. TO DEFT.-INTERVENORS' MOT. TO COMPEL COMPLIANCE WITH NONPARTY DOCUMENT SUBPOENAS
CASE NO. 09-CV-2292 VRW

# INTRODUCTION

Nonparty No on Proposition 8, Campaign for Marriage Equality: A Project of the American Civil Liberties Union of Northern California ("ACLU") submits this opposition to the motion by Defendant-Intervenors, the Proponents of Proposition 8 ("Proponents"), ostensibly to compel compliance with a third-party subpoena issued in November, 2009, but, actually, to enforce a request asserted in a letter to the ACLU dated January 12, 2010. That letter, in turn, is based upon a January 8, 2010 Order by Magistrate Judge Spero which directed *Proponents* to produce certain categories of non-public documents related to the "intent" of Proposition 8.

Proponents' motion should be denied for each of the following reasons:

1. The Court should not even entertain Proponents' motion because it is untimely under the Local Rules and because Proponents are guilty of laches or should be held to be estopped or to have waived the right to seek to enforce their subpoena as a result of their own strategic decision not to seek enforcement of their document subpoena previously.

2. The January 8 Order by Magistrate Judge Spero does not purport to apply to nonparties such as the ACLU, nor should it be interpreted to do so since the documents sought from the ACLU are not relevant to the issues that are before the Court.

3. To the extent the information sought is not irrelevant, a significant percentage of it is likely privileged under the First Amendment as interpreted by the Ninth Circuit in its January 4, 2010 Amended Opinion in this case, *Perry v. Schwarzenegger,* No. 09-17241; that issue would need to be addressed specifically as to the ACLU's documents, potentially on a document-by-document basis.

4. Finally, the motion should be denied because compliance would be extremely burdensome, both on an absolute basis and, even more clearly, when the burden is compared to the extremely limited pertinence (if any) of the information sought.

- 1 -

OPP. OF NO ON PROPOSITION 8, CAMPAIGN FOR MARRIAGE EQUALITY: A PROJECT OF THE ACLU OF N. CAL. TO DEFT.-INTERVENORS' MOT. TO COMPEL COMPLIANCE WITH NONPARTY DOCUMENT SUBPOENAS
CASE NO. 09-CV-2292 VRW

## STATEMENT OF RELEVANT FACTS

**A.    Proponents' Initial Subpoena and the ACLU's Response and Compliance.**

On August 27, 2009, Proponents served administrative subpoenas on a number of entities, including the ACLU, that had worked in opposition to Proposition 8. The content of these subpoenas was identical to discovery requests that plaintiffs had served on Proponents seeking information and documents about the Yes on 8 campaign, except of course the subpoenas sought information and documents related to the No on 8 campaign. In a cover letter, Proponents explained that they were opposing the discovery requests served on them by plaintiffs to the extent such requests sought internal campaign communications on grounds of relevance and privilege under the First Amendment. But Proponents "warned" the subpoena recipients that should Proponents lose their discovery dispute over internal campaign communications, then Proponents would seek the same types of documents from the No on 8 entities, including the ACLU.

As demanded by the subpoena, the ACLU sent Proponents a response in September 2009. In the response, the ACLU agreed to produce documents that it had disseminated to the general public and that could not be obtained easily from another source. However, it objected to the rest of the requests on grounds of relevance, burden, and constitutional privilege. In particular, the ACLU objected that as a nonparty *opponent* of Proposition 8 it was situated significantly differently than the *proponents* of the initiative, who also had intervened in the litigation as parties.

On November 2, 2009—after an organization-wide effort to collect relevant documents—the ACLU produced the documents it said it would produce. *See* Declaration of Elizabeth Gill ("Gill Decl.") ¶ 4. Those documents provided Proponents with information that was disseminated to voters and that could have influenced their views regarding Proposition 8. The types of documents produced included information regarding Proposition 8 sent by the ACLU to various e-mail lists or placed in its newsletter; a No on 8 "toolkit" including arguments against Proposition 8, sample letters to newspaper editors, etc.; invitations to ACLU No on 8 events; and flyers for various rallies. *Id.* The ACLU used as a cut-off the California Government Code's

- 2 -

OPP. OF NO ON PROPOSITION 8, CAMPAIGN FOR MARRIAGE EQUALITY: A PROJECT OF THE ACLU OF N. CAL. TO DEFT.-INTERVENORS' MOT. TO COMPEL COMPLIANCE WITH NONPARTY DOCUMENT SUBPOENAS
CASE NO. 09-CV-2292 VRW

definition of "mass mailing," which refers to anything sent to at least 200 people. *Id.*

## B. The Debate over Privilege, Proceedings in the Ninth Circuit, and the "November" Subpoena.

As this Court is well aware, the "long dispute," as Proponents describe it, between plaintiffs and Proponents over Proponents' internal campaign communications involved numerous court hearings in the district court, as well as two appeals to the Ninth Circuit, in which the parties engaged in vigorous and lengthy debates over the relevance of *Proponents*' internal campaign communications and the scope of the First Amendment privilege protecting those documents. That series of skirmishes ultimately resulted in an opinion by the Ninth Circuit recognizing a claim of First Amendment privilege as to private, internal campaign communications concerning the formulation of campaign strategy and messages, but also recognizing the general relevance of *Proponents*' campaign communications. *Perry v. Hollingsworth*, No. 09-17241, slip op. at 34-35 & n.12 (9th Cir. Dec. 3, 2009, as amended Jan. 4, 2010).

Meanwhile, Proponents' approach to their own subpoenas ebbed and flowed with the tide of the battle they were waging to protect their internal campaign communications from production. Thus, after having taken no steps whatsoever with respect to their subpoenas against third parties for over two months, in early November (following this Court's October 1, 2009 ruling against them), Proponents suddenly contacted the subpoenaed nonparty entities, including the ACLU, and demanded that those entities produce their internal campaign communications. Given the delay, as well as the intervening orders issued by this Court, the ACLU demanded that Proponents issue a new subpoena—to which the ACLU, again, of course, objected.[1] By the time the ACLU had submitted its response to Proponents' second subpoena (on November 20, 2009), the Ninth Circuit had issued a stay of this Court's October 1, 2009 Order (Doc # 214), so Proponents again chose to go into hibernation with respect to enforcement of their third-party

---

[1] The November 14, 2009 subpoena and the ACLU's objections to it are attached as Exhibits 2 and 4, respectively, to Proponents' Motion to Compel.

- 3 -

OPP. OF NO ON PROPOSITION 8, CAMPAIGN FOR MARRIAGE EQUALITY: A PROJECT OF THE ACLU OF N. CAL. TO DEFT.-INTERVENORS' MOT. TO COMPEL COMPLIANCE WITH NONPARTY DOCUMENT SUBPOENAS
CASE NO. 09-CV-2292 VRW

1  subpoenas—notwithstanding the fact that Proponents obviously were well aware that there was a
2  discovery cutoff in the case, as well as an impending trial in early January.

### C.    Proponents' January 12th "Letter" Subpoena.

Proponents' most recent period of silence extended from November not only until long after the close of discovery, but until the trial actually was under way.  Then, following an order by the Court directed to Proponents, the ACLU received a letter on January 12, 2010, demanding that it provide Proponents with a list of "core" group members whose documents might be subject to privilege, plus a log of all communications supposedly subject to such a privilege.  The letter further demanded that the ACLU should begin the "immediate" production of "relevant, non-privileged documents."

The basis for this demand was not Proponents' November subpoena, which made no reference to a "core group" or to the other terms of the January 12th letter.  Rather, the supposed basis was this Court's January 8, 2010 Order (Doc # 372), which, Proponents asserted, somehow applies to nonparties, such as the ACLU, even though those nonparties were not involved in any proceedings before the Court that led to issuance of that order, much less mentioned in it. Nonetheless, Proponents' letter asserted that if the ACLU did not respond by providing their "list" within one day and did not begin "immediately" producing documents, Proponents would file a motion to compel—a threat that they now have fulfilled with the filing of the instant motion.

### D.    The Motion to Compel.

In marked contrast to the vigor with which Proponents asserted the importance of the constitutional protection of non-public campaign materials when it was their information that was at issue, Proponents' own motion to compel documents from the ACLU consists of a brief, and entirely conclusory, discussion of relevance plus a single page of argument that does not even mention the Ninth Circuit's opinion, let alone purport to reconcile their motion to its teachings.

The only purported "explanation" of why the documents Proponents are now seeking are relevant is a statement in the "Introduction" to their motion that the Court has "determined" that it should have before it "'the mix of information before and available to the voters'" (Motion to

1  Compel at 1, quoting Doc # 214 at 14) and that "the voters did not hear and consider the voice of
2  only ProtectMarriage.com." *Id.* Their so-called "Argument"—which, as noted, does not so much
3  as mention the Ninth Circuit's decision, or any other authority for that matter—merely repeats the
4  same conclusory contention: "The Court cannot possibly build a 'complete' and balanced
5  record . . . if the other side of the debate . . . is completely absent from the record." *Id.* at 5.

## ARGUMENT

### A. Proponents' Motion Is Untimely.

While Proponents' motion should be denied on the merits for reasons explained hereafter, the Court need not even reach that issue since the motion is manifestly untimely. As an initial matter, it is in direct violation of Local Rule 26-2, which requires all motions to compel to be filed no later than seven days after the discovery cutoff. As the discovery cutoff in this case took place on November 30, 2009, the last day for Proponents to file their motion to compel was December 7, 2009. Proponents argue that this date can be ignored because the rule allows the motion deadline to be extended by Court order for good cause shown, and because the Court has continued to hear discovery disputes among the parties after the early December cutoff date. Yet the Court has only continued to hear discovery disputes among the *parties* to this litigation, presumably because such disputes were in process at the time the deadline passed. Proponents have shown no such good cause for their failure to pursue discovery from the ACLU in a timely manner.

As of December 7, 2009, there was no outstanding dispute between Proponents and the ACLU—the ACLU responded to Proponents' November 14, 2009 subpoena with objections on November 20, 2009, and did not hear a word until mid-January. Nor is the ACLU aware of any effort by Proponents to notify the Court that they would need to extend the motion to compel deadline with respect to third-party subpoenas, despite the urgent importance which Proponents now ascribe to these subpoenas. In light of Proponents' clear failure to comply with Local Rule 26-2, despite the ACLU's timely response to Proponents' discovery requests, Proponents' motion to compel should be denied. *See Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986) (affirming denial of motion to compel based on untimeliness); *Goodworth Holdings Inc. v. Suh*, 239 F.

- 5 -

OPP. OF NO ON PROPOSITION 8, CAMPAIGN FOR MARRIAGE EQUALITY: A PROJECT OF THE ACLU OF N. CAL. TO DEFT.-INTERVENORS' MOT. TO COMPEL COMPLIANCE WITH NONPARTY DOCUMENT SUBPOENAS
CASE NO. 09-CV-2292 VRW

1  Supp. 2d 947, 966 (N.D. Cal. 2002) (denying motion to compel filed after the expiration of Rule
2  26-2 time limit as "inexcusably late"); *see also OKI America, Inc. v. Advanced Micro Devices,*
3  *Inc.*, 2006 U.S. Dist. LEXIS 66441 (N.D. Cal. 2006) (denying party's motion to compel because
4  its delay past the Rule 26-2 deadline was unjustified and noting that "[n]umerous judges in this
5  district have denied motions to compel on the bases that they were untimely filed").

6        Even if the current motion were not barred absolutely under Local Rule 26-2, it should be
7  stricken on the basis of laches, waiver or estoppel. If there is an emergency here now, it is one of
8  Proponents' own making and they should not be heard to seek relief on that account. *See Central*
9  *Council of the Tlingit & Haida Indians v. Chugach Native Ass'n*, 502 F.2d 1323, 1325 (9th Cir.
10 1974) (doctrine of laches applies where there is "(1) lack of diligence by the party against whom
11 the defense is asserted, and (2) prejudice to the party asserting the defense"); *Hecht v. Harris,*
12 *Upham & Co.*, 430 F.2d 1202, 1208 (9th Cir. 1970) (waiver is "the voluntary or intentional
13 relinquishment of a known right"). Plaintiffs issued their original subpoena to the ACLU and
14 other nonparty No on 8 entities over five months ago. Despite the efforts of the ACLU and the
15 other entities to comply with those subpoenas, both by producing relevant, non-privileged
16 documents and by asserting relevance and privilege objections, Proponents have not actually
17 engaged with the subpoenas they issued in any way. Instead of bringing any dispute to the
18 Court's attention in a timely fashion, and allowing these issues to be adjudicated at the same time
19 as Proponents' own relevance and privilege objections to discovery demands from the Plaintiffs,
20 Proponents have made their demands on the No on 8 entities solely in accordance with their own
21 discovery trajectory.

22       The reasoning behind this approach was plainly strategic. Proponents chose to avoid any
23 effort to compel production by the nonparty No on 8 entities in order to avoid taking inconsistent
24 positions that might prejudice their desire to avoid production of their own documents. There is
25 nothing wrong with Proponents making that strategic judgment, but it comes at a cost: Proponents
26 were free to pursue discovery from nonparties for the past five months even as they were resisting
27 discovery by plaintiffs, but instead they chose a course of action indicating the intent to waive
28 their right to pursue discovery from nonparties. Having made that judgment, Proponents cannot

- 6 -

OPP. OF NO ON PROPOSITION 8, CAMPAIGN FOR MARRIAGE EQUALITY: A PROJECT OF THE ACLU OF N. CAL. TO DEFT.-INTERVENORS' MOT. TO COMPEL COMPLIANCE WITH NONPARTY DOCUMENT SUBPOENAS
CASE NO. 09-CV-2292 VRW

1  now seek to avoid the consequences of their prior strategy or use that judgment as a basis for

2  claiming an emergency and seeking both a hearing and, ultimately, compliance on an

3  insupportably and infeasibly rushed schedule.  As described below in Section D, compliance with

4  Proponents' subpoena (beyond the responsive documents that the ACLU already has produced to

5  Proponents) will be extremely burdensome.  Proponents' belated demand that the ACLU begin

6  producing documents on an "immediate, rolling" basis exacerbates this burden even further.  *See*

7  *Central Council of the Tlingit & Haida Indians*, 502 F.2d at 1325.

8  **B.     Proponents' Motion Seeks Information and Documents That Are Not Relevant.**

9         In a transparent effort to avoid the need to demonstrate relevance, or to address privilege

10  issues, Proponents attempt to turn the sackcloth of defeat before Magistrate Judge Spero into a

11  magic cloak of victory by simply assuming that the Court's January 8, 2010 Order (Doc # 372),

12  directed to them as parties and as the official proponents of Proposition 8, somehow applies

13  automatically—and without further ado, evidence or legal analysis—to *nonparties* who were

14  *opponents* of Proposition 8, such as the ACLU.  That effort, however, is fatally flawed in several

15  respects.

16         As a threshold matter, not only does the January 8 Order not purport to apply to third

17  parties, but it could not do so, since those nonparties were not involved in any of the briefing or

18  the hearing which led to that ruling.  Moreover, that Order forms the basis for Proponents' current

19  motion even though it purports to be a motion to enforce Proponents' November, 2009 subpoena.

20  That inappropriate procedure is reason enough to deny Proponents' motion, but the critical issues

21  here go beyond formalities or technicalities.  Proponents cannot use an order directed only to

22  them as a way to avoid the burdens that apply to a party seeking to enforce a subpoena in the face

23  of objections, such as those that have been asserted by the ACLU.  That is particularly true in

24  light of the fact that nonparty opponents of Proposition 8 are situated quite differently than the

25  Proponents, who are parties to the instant litigation as well as the official sponsors of

26  Proposition 8.  These differences are critical both with respect to relevance and—as we

27  demonstrate in the next section—to the application of the First Amendment privilege.

28         1. If Proponents wish this Court to order nonparties to comply—on an expedited basis, no

1  less—with a burdensome request for documents that is fraught with potential constitutional

2  infirmities, then their ticket to the dance is a motion that is well-supported and specific in

3  explaining why the information they seek is relevant and why their opponents' objections should

4  be overruled. Tested by that standard, Proponents should be turned away before the first foxtrot.

5        On its face, Proponents' motion fails to offer even the most superficial showing of

6  relevance. Not only is their entire "argument" one page in length, but the only stated basis of

7  relevance is a conclusory *non-sequitur* that because the Court wants to have in the record the

8  "mix" of information that was before the voters and that may have induced them to vote in favor

9  or Proposition 8, it necessarily needs to have information from the opponents as well. For

10  Proponents' motion even to merit consideration, they needed to explain in full, with appropriate

11  factual detail as well as any legal authority relied upon, the actual relevance of the documents

12  they seek. Merely asserting that there was a "two sided" debate over Proposition 8 without

13  explanation or elaboration of why "both sides" of that debate bear upon the issues before the

14  Court is not an answer to that critical question.

15        2. The real reason why Proponents make no showing of relevance is that they have none

16  to make. While Proponents obviously are disappointed that they have been unsuccessful in

17  convincing the Court that nothing about "intent" is pertinent to the issues in this case, that does

18  not mean that statements made to influence voters to *reject* Proposition 8 illuminate why voters

19  who voted in favor of it did so. Put differently, "tit for tat" is a tactic, not an explanation, let

20  alone a justification.

21        The relevance in this case of documents regarding campaign communications is that they

22  may demonstrate the existence of a discriminatory intent on the part of the voters. *See* October 1,

23  2009 Order (Doc # 214) at 15. While several courts have found campaign-related documents in

24  other cases to be relevant to discriminatory intent,[2] none of the cases has suggested that the

---

[2] *See, e.g., City of Cuyahoga Falls v. Buckeye Comm. Found.*, 538 U.S. 188, 196-97 (2003); *Washington v. Seattle School Dist. No. 1*, 459 U.S. 457, 471 (1982); *Valeria v. Davis*, 307 F.3d 1036, 1041 n.8 (9th Cir. 2002).

- 8 -

OPP. OF NO ON PROPOSITION 8, CAMPAIGN FOR MARRIAGE EQUALITY: A PROJECT OF THE ACLU OF N. CAL. TO DEFT.-INTERVENORS' MOT. TO COMPEL COMPLIANCE WITH NONPARTY DOCUMENT SUBPOENAS
CASE NO. 09-CV-2292 VRW

1  existence of such intent could be discerned from the statements—private or public— of
2  *opponents*. To the contrary, the only circumstances in which the arguments of an initiative's
3  opponents have been considered pertinent (along with those of the measure's proponents) is
4  where there is a debate over the "meaning" of facially ambiguous words, as in *Bates v. Jones,* 131
5  F.3d 843,846 (9th Cir. 1997) (ballot materials consulted to see whether initiative was meant to
6  impose "lifetime" or only "consecutive" term limits). Here, of course, there is, and can be, no
7  dispute as to the meaning of Proposition 8, and any questions that might have existed concerning
8  its application were answered definitively by the California Supreme Court in *Strauss v. Horton,*
9  46 Cal. 4th 364 (2009).

10      Tested against this standard, there is no meritorious argument in favor of relevance that
11  Proponents could advance. Thus, we think that it is safe to assume that Proponents are not going
12  to claim that the reasons why many voters in this State voted *against* Proposition 8 is an issue in
13  this lawsuit. Equally clearly, we assume that Proponents do not intend to argue that the "intent"
14  of people who voted "No" on Proposition 8 establishes the intent of those who voted "Yes." That
15  leaves those voters who did vote "Yes." However, inasmuch as the things that the opponents of
16  the initiative threw into the "mix" in an attempt to influence them were—by definition—
17  unsuccessful in persuading those voters to oppose it, that information, too, necessarily is beside
18  the point.[3]

19      3. Proponents' brief and conclusory relevance argument fails for a third reason.
20  According to their motion, what the Court has expressed interest in is the "mix of information

---

[3] Although it is not the ACLU's burden to come up with arguments regarding relevance in order to respond to them, we assume that Proponents will argue that, by its terms, Magistrate Judge Spero's January 8 Order applies to documents that "contain, refer or relate to arguments for *or against* Proposition 8." Doc # 372 at 5 (emphasis added). But the mere passing reference to such documents in text—without the slightest elaboration or explanation—cannot possibly bear the weight that Proponents may seek to ascribe to it. Given the fact that, as explained in the text above, arguments in opposition to Proposition 8 cannot inform the reasons why voters would have voted in favor of the initiative, the only reason for ordering Proponents to produce documents referencing arguments against Proposition 8 is because Proponents might, then, set forth their suggested "answers" to those arguments. That, in turn, could inform the intent behind a "Yes on 8" vote.

- 9 -

OPP. OF NO ON PROPOSITION 8, CAMPAIGN FOR MARRIAGE EQUALITY: A PROJECT OF THE ACLU OF N. CAL. TO DEFT.-INTERVENORS' MOT. TO COMPEL COMPLIANCE WITH NONPARTY DOCUMENT SUBPOENAS
CASE NO. 09-CV-2292 VRW

1  *before and available to the voters.*" Motion at 1, quoting Doc # 214 at 14 (emphasis added).
2  However, to a very large extent, the information regarding Proposition 8 in the ACLU's
3  possession that it disseminated publicly to potential voters *has been produced. See* page 2, *supra*;
4  *see also* Gill Decl. ¶ 4. The vast majority of the documents that the ACLU declined to produce
5  either had nothing to do with the arguments in favor of or against Proposition 8 (and thus are
6  wholly irrelevant) or were about "strategy and messaging" and, thus, are privileged.
7        Moreover, were the ACLU to wade through the e-mail communications of its staff to find
8  the relatively small cache of non-public, non-privileged documents that theoretically fall within
9  the category that Proponents claim bears upon the reasons why Proposition 8 was passed, such
10 documents surely would be less useful than the evidence that Proponents already have obtained
11 from the ACLU in response to their original subpoena. That, of course, is not only the ACLU's
12 view, but the view of Proponents. Responding to the plaintiffs' reliance on *South Dakota Farm*
13 *Bureau, Inc. v. Hazeltine*, 340 F.3d 583 (8th Cir. 2003), they noted that "even the Eighth Circuit
14 turned to official ballot materials as the 'most compelling' evidence of intent." Proponents Reply
15 (Doc # 197) at 6 n.6, citing 340 F.3d at 594.[4]
16     4. There also is a critically important distinction between discovery requests to
17 nonparties, as opposed to litigants. Courts are far more concerned with burdens placed on
18 nonparties even where no constitutional issues are at stake.[5] In fact, the federal rules expressly
19 direct courts to prevent imposing undue discovery burdens on nonparties. *See* Fed. R. Civ. P.

---

[4] In fact, courts in general have been reluctant to consider anything other than official ballot materials for any purpose. *See* Jane Schacter, *The Pursuit of "Popular Intent:" Interpretive Dilemmas in Direct Democracy,* 105 Yale L.J. 107, 122 (1995).

[5] *See, e.g.*, *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) ("[T]here appear to be quite strong considerations indicating that discovery would be more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents"); *Richards of Rockford, Inc. v. Pacific Gas & Elec. Co.*, 71 F.R.D. 388, 390 (N.D. Cal. 1976) (stating that nonparty status must be considered in deciding whether or not to compel discovery); *Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D. Nev. 1986) (describing the "well established [rule] that nonparties to litigation enjoy greater protection from discovery than normal parties); *Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007) ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" in Rule 45 inquiry).

- 10 -

OPP. OF NO ON PROPOSITION 8, CAMPAIGN FOR MARRIAGE EQUALITY: A PROJECT OF THE ACLU OF N. CAL. TO DEFT.-INTERVENORS' MOT. TO COMPEL COMPLIANCE WITH NONPARTY DOCUMENT SUBPOENAS
CASE NO. 09-CV-2292 VRW

1  45(c)(1) ("A party or attorney responsible for issuing and serving a subpoena must take
2  reasonable steps to avoid imposing undue burden or expense on a person subject to the
3  subpoena"). These considerations are all the more relevant where, in addition, the third party
4  interposes First Amendment objections. *Beinin v. Ctr. for the Study of Popular Culture*,
5  2007 U.S. Dist. LEXIS 47546, at *16 (N.D. Cal. 2007); *In re Motor Fuel Temperature Sales*
6  *Practices Litig.*, 2009 U.S. Dist. LEXIS 66005, at *43-47 (D. Kan. 2009).

7       5. Finally, it is essential to take account of the current state of the litigation. Since the
8  trial not only has commenced, but the taking of witness testimony has concluded, there is no
9  possible argument that the information sought from the ACLU is relevant because it might lead to
10 the discovery of admissible evidence. Further, since the ACLU is not a party, nothing that is
11 contained in its documents could be offered into evidence as an admission. To the contrary, the
12 trial would need to be re-opened for the taking of testimony in order for Proponents to seek to
13 introduce any documents that might be produced in the face of what we presume would be
14 hearsay objections from plaintiffs. Had Proponents wanted to do this, they have had ample
15 opportunity—indeed, they list documents produced by the ACLU in their trial exhibit list (*see*
16 Proponents' Exh. List, Doc # 291, at 119-20), yet they made no effort to subpoena a
17 representative of the ACLU to testify at trial.

18 **C.**  **Proponents' Motion Seeks Information and Documents That Are Privileged.**

19      Having fought vigorously—and largely successfully—to assert that non-public campaign
20 documents are privileged against discovery, Proponents do not so much as mention the First
21 Amendment in their motion. Presumably, that is because they believe that that battle is now over
22 following the Ninth Circuit's Amended Opinion in *Perry*. On this point, at least, the ACLU
23 agrees with Proponents. However, the decision in that case consists not of a single footnote on
24 page 36 of the Court's opinion, as Proponents' motion appears to assume, but all of the principles
25 established by the decision as a whole, properly applied to the particular document request now
26 before this Court. While Proponents' motion can be denied without reaching issues of privilege
27 for the many other reasons explained in this memorandum, if the Court does not deny the motion
28 for those reasons, the ACLU's privilege objections will need to be addressed.

- 11 -

OPP. OF NO ON PROPOSITION 8, CAMPAIGN FOR MARRIAGE EQUALITY: A PROJECT OF THE ACLU OF N. CAL. TO DEFT.-INTERVENORS' MOT. TO COMPEL COMPLIANCE WITH NONPARTY DOCUMENT SUBPOENAS
CASE NO. 09-CV-2292 VRW

1      The Ninth Circuit held that an important First Amendment interest attaches to non-public
2   campaign documents—particularly those dealing with campaign strategy and messages—and that
3   such documents may be ordered produced in litigation only pursuant to a showing of heightened
4   relevance, where necessary "to serve compelling state interests . . . that cannot be achieved
5   through means significantly less restrictive of associational freedoms." *Perry,* slip op at 23,
6   quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984); *see also* slip. op. at 35-36.  Having set
7   out the general standards applicable to private campaign documents in the bulk of its opinion, the
8   court of appeals did observe, in footnote 12, that its holding was limited to documents concerning
9   the "*formulation of campaign strategy and messages.*" *Perry,* slip. op at 36 n. 12.  The ACLU
10  does not question that limitation here, any more than it questions the application of it *to*
11  *Proponents* by Magistrate Judge Spero in his January 8 Order.  Neither of those decisions,
12  however, resolves the particular issues of privilege that remain to be considered with respect to
13  the documents of nonparty ACLU.
14       Footnote 12 was a footnote for good reason.  It was intended to apply to the specific
15  circumstances of the requests served by plaintiffs on Proponents and to the structure of the Yes on
16  8 campaign.  In fact, the court of appeals stopped short of even ruling on any specific requests in
17  its decision.  Instead, it remanded the case to the district court for application of its opinion in
18  light of the fact that this Court was "best acquainted with the facts of this case and the structure of
19  the 'Yes on 8' campaign." *Id.*  Following that remand, Magistrate Judge Spero evaluated the
20  evidence before him in reaching his conclusions regarding application of the Ninth Circuit's
21  decision to Proponents.
22       The same process—starting from the ground floor—would be required in order to assess
23  properly any claim of privilege by the ACLU.  That is, the Court would need to understand the
24  structure of the campaign against Proposition 8 and how any communications within that
25  structure relate to the principles announced by the Ninth Circuit.  As explained in the Declaration
26  of Elizabeth Gill submitted herewith, there were many organizations involved in communications
27  about how to defeat Proposition 8.  Gill Decl. ¶ 8.  While there was an umbrella campaign
28  organization consisting of several groups such as the ACLU, Equality California and others, with

1  an executive committee overseeing their efforts, numerous groups and individuals working
2  independently to defeat Proposition 8 communicated with the ACLU about their efforts, including
3  strategy and messaging. *Id.*
4      It demonstrably would violate the First Amendment—as specifically interpreted in
5  *Perry*—to hold that no First Amendment privilege attaches to such communications, and that the
6  privilege applies only to a "core" group of individuals who sat on the executive committee of the
7  umbrella campaign organization. The very essence of the associational rights that are the basis
8  for the Ninth Circuit decision is that individuals and groups have the right to come together to
9  advance shared political interests without their communications being routinely, or casually,
10 subject to discovery in civil litigation: "The freedom to associate with others for the common
11 advancement of political beliefs and ideas lies at the heart of the First Amendment. Where, as
12 here, discovery would have the practical effect of discouraging the exercise of First Amendment
13 associational rights, the party seeking such discovery must demonstrate a need for the information
14 sufficient to outweigh the impact on those rights." *Perry,* slip. op. at 4-5.
15     In sum, not only does this Court's January 8 Order—premised on its knowledge, *inter
16 alia*, of the "structure of the 'Yes on 8' campaign"—not apply by its terms to nonparty opponents,
17 such as the ACLU, but there is no basis for casually transporting the facts applicable to
18 Proponents to the groups and individuals who worked together to defeat Proposition 8. To order
19 the production of communications between those groups and individuals unmistakably would
20 violate their First Amendment rights.
21     In making this point, the ACLU does not contend that every e-mail that passed between
22 individuals and groups involved in trying to defeat Proposition 8 necessarily is privileged. Efforts
23 directed at "persuasion or recruitment" presumably would not be subject to a claim of privilege,
24 as the Ninth Circuit held. As noted above, however, the ACLU *already has produced* documents
25 it disseminated to the general public, after undergoing an organization-wide search to collect such
26 documents. The prospect of going through the many thousands of primarily e-mail
27 communications for the purpose of locating the few remaining documents that were not widely
28 disseminated but that might fall outside of the privilege bounds established by the Ninth Circuit,

is daunting—not so much separating wheat from chaff as searching for a handful of needles within several enormous haystacks. *See* Gill Decl. ¶¶ 9-12; Section D, *infra.*

### D. Any Potential Relevance of the Documents Sought by Proponents Is Vastly Outweighed by the Burdens Associated with Compliance.

Balanced against the dubious relevance of the documents Proponents now seek and the likelihood that a significant percentage of them would be privileged, the effort required by the ACLU to retrieve this material would be both extreme as well as a profound misuse of the ACLU's limited resources. Proponents are not requesting a simple thing: their demands, if granted to any material extent, would be overwhelming to the ACLU, causing a substantial strain on both the human and financial resources of the organization.

Complying with Proponents' demands would force the ACLU not only to retrieve documents and communications from the ACLU staff involved in the No on 8 campaign, but also search for communications between and among the numerous groups and individuals the ACLU partnered with during that campaign. Gill Decl. ¶¶ 8-9. This search would result in a vast collection of documents that, then, would need to be further reviewed not only for responsiveness, but also for privilege. *Id.* ¶ 11. For example, among the ACLU staff involved in the No on 8 campaign, there are approximately 61,046 potentially relevant communications, all stored on the staffs' Microsoft Outlook files. *Id.* ¶ 9. When simple search terms are applied to these Outlook files, such as "Proposition 8," "Prop. 8," "No on 8"—terms that are by no means exhaustive— there are still approximately 25,091 potentially responsive communications. *Id.*

Such a volume of potentially pertinent material poses an insurmountable logistical hurdle for the ACLU. First, over and above the sort of simple—and inadequate—Outlook searches discussed above, the ACLU is not equipped with the E-discovery search tools needed to properly sift through 61,046 potentially relevant communications. *Id.* An outside vendor would be required and precious resources would thus need to be spent. In fact, merely agreeing upon search terms for such an endeavor would be an enormous—not to mention, expensive—task.

Second, even assuming that pertinent search terms could be applied, the remaining collection of potentially relevant communications would still number in the tens of thousands.

1  (We know, for instance, that there are at least 25,091 communications that contain "Proposition
2  8," or "Prop. 8," or "No on 8.")  *Id.*  Each of these communications would need to be reviewed on
3  a document-by-document basis not only for responsiveness (or partial responsiveness—in which
4  case substantial redactions would need to be made) but for attorney-client privilege (since
5  campaigns, not surprisingly, often need to consult with counsel) as well as the First Amendment
6  privilege articulated by the Ninth Circuit.  *Id.* ¶ 11; *see also* Section C, *supra.*  For the reasons
7  explained above, the ACLU submits that a large proportion of the documents sought here would
8  be privileged under the Ninth Circuit's decision in *Perry.*  Most of the balance will likely turn out,
9  upon examination, to be of no interest to anyone.  Gill Decl. ¶ 12.

10  Not only does the ACLU not have the human resources to conduct this sort of extensive
11  review (*id.* ¶ 11), but requiring it to be undertaken would fail any rational cost-benefit analysis.
12  Documents that might be of interest are those discussing non-public strategy and messages, but
13  those are privileged.  Meanwhile, documents discussing who was to bring the potato salad to the
14  No on 8 picnic may not be protected by the First Amendment, but—like the flowers that bloom in
15  the spring—they have "nothing to do with the case."  In short, this is a subpoena which, to an
16  overwhelming extent, seeks information that is either privileged or demonstrably of no
17  conceivable interest to anyone in this case.

18  Requiring the ACLU to produce a privilege log not only is no solution, but it would
19  compound the burden issue—imposing an extraordinary additional burden in cost and time for no
20  conceivable benefit.  Short of a suggestion that the ACLU might seek to withhold certain
21  communications as "internal" when they are, in fact, public, the only thing that a privilege log
22  would reveal is that many of the documents at issue are subject to First Amendment protection as
23  reflecting thoughts and strategies of Proposition 8's political opponents, whether as leaders of
24  some official No on 8 campaign organization or as part of the broader network of groups and
25  individuals that worked to defeat the initiative.  A document-by-document "log" so stating would
26  be no more than very expensive and time-consuming "make work."

27  Given that there are potentially thousands of documents that not only would need to be
28  reviewed for privileged, but that, then, would need to be logged separately, we are talking about a

- 15 -

1  task of immense proportions. Yet, as we have noted, the Federal Rules are clear that where the
2  rights of nonparties are at issue, such excessive burdens must be avoided. *See* Fed. R. Civ. P.
3  45(c)(1); *Dart Indus. Co.*, 649 F.2d at 649. In fact, whether the issue be the burden of review
4  alone, or such a review combined with the further task of creating a privilege log, when one
5  considers the issues of relevance, privilege and burden together, not to mention the fact that the
6  vast bulk of the relevant non-privileged documents that might be pertinent have been produced
7  previously, there is simply no way that Proponents' motion can be justified to even the slightest
8  extent.

## CONCLUSION

For the foregoing reasons, Proponents' motion to compel should be denied.


Dated: February 2, 2010

STEPHEN V. BOMSE
JUSTIN M. ARAGON
SARAH C. MARRIOTT
Orrick, Herrington & Sutcliffe LLP

ALAN L. SCHLOSSER
ELIZABETH O. GILL
ACLU Foundation of Northern California


By:     /s/
        STEPHEN V. BOMSE

Attorneys for No on Proposition 8, Campaign for Marriage Equality: A Project of the American Civil Liberties Union of Northern California

- 16 -

OPP. OF NO ON PROPOSITION 8, CAMPAIGN FOR MARRIAGE EQUALITY: A PROJECT OF THE ACLU OF N. CAL. TO DEFT.-INTERVENORS' MOT. TO COMPEL COMPLIANCE WITH NONPARTY DOCUMENT SUBPOENAS
CASE NO. 09-CV-2292 VRW