1  ALAN L. SCHLOSSER (SBN 49957)
   aschlosser@aclunc.org
2  ELIZABETH O. GILL (SBN 218311)
   egill@aclunc.org
3  ACLU FOUNDATION OF NORTHERN CALIFORNIA
   39 Drumm Street
4  San Francisco, CA 94111
   T: (415) 621-2493/F: (415) 255-8437
5
   JON W. DAVIDSON (SBN 89301)
6  jdavidson@lambdalegal.org
   JENNIFER C. PIZER (SBN 152327)
7  jpizer@lambdalegal.org
   TARA BORELLI (SBN 216961)
8  tborelli@lambdalegal.org
   LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
9  3325 Wilshire Boulevard, Suite 1300
   Los Angeles, CA 90010
10 T: (213) 382-7600/F: (213) 351-6050

11 SHANNON P. MINTER (SBN 168907)
   sminter@nclrights.org
12 CHRISTOPHER F. STOLL (SBN 179046)
   cstoll@nclrights.org
13 ILONA M. TURNER (SBN 256219)
   iturner@nclrights.org
14 NATIONAL CENTER FOR LESBIAN RIGHTS
   870 Market Street, Suite 370
15 San Francisco, CA 94102
   T: (415) 392-6257/F: (415) 392-8442

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN M. PERRY, *et al.*,<br><br>    Plaintiffs,<br>and<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>    Plaintiff-Intervenor,<br><br>    v.<br><br>ARNOLD SCHWARZENEGGER, *et al.*,<br><br>    Defendants,<br>and<br><br>PROPOSITION 8 OFFICIAL PROPONENTS DENNIS HOLLINGSWORTH, *et al.*,<br><br>    Defendant-Intervenors. | CASE NO. 09-CV-2292 VRW<br><br>**BRIEF OF *AMICI CURIAE* AMERICAN CIVIL LIBERTIES UNION, LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC., AND NATIONAL CENTER FOR LESBIAN RIGHTS**<br><br>Judge:         Chief Judge Walker<br>Location:    Courtroom 6, 17th Floor |

Additional Counsel:

MARK ROSENBAUM (SBN 59940)
mrosenbaum@aclu-sc.org
LORI RIFKIN (SBN 244081)
lrifkin@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 W. 8th Street
Los Angeles, CA 90017
T: (213) 977-9500/ F: (213) 250-3919

DAVID BLAIR-LOY (SBN 229235)
dblairloy@aclusandiego.org
ACLU FOUNDATION OF SAN DIEGO AND IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138
T: (619) 232-2121/F: (619) 232-0036

MATTHEW A. COLES (SBN 76090)
mcoles@aclu.org
JAMES D. ESSEKS (SBN 159360)
jesseks@aclu.org
LGBT & AIDS PROJECT
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10005
T: (212) 549-2500/F: (212) 549-2650

# **TABLE OF CONTENTS**

**Section**                                                                                                    **Page(s)**

TABLE OF AUTHORITIES .................................................................................................... ii

SUMMARY OF ARGUMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................ 1

I.      PROPOSITION 8 IS UNIQUE. ............................................................................. 1

II.     PROPOSITION 8 CONSTITUTES A PER SE VIOLATION OF
THE EQUAL PROTECTION CLAUSE. ............................................................... 4

III.    PROPOSITION 8 FAILS THE STANDARD OF REVIEW
MANDATED BY *WITT v. DEPARTMENT OF THE AIR FORCE*. ...................... 8

IV.    THE UNIQUE CHARACTERISTICS OF PROPOSITION 8
ESTABLISH THAT IT FAILS EVEN PROPER APPLICATION
OF RATIONAL BASIS REVIEW. ....................................................................... 12

CONCLUSION ....................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                          **Page(s)**

*Brown v. Bd. of Educ.*, 347 U.S. 483 (1954) ................................................................... 14

*Charisma R. v. Kristina S.*, 44 Cal. Rptr. 3d 332 (Cal. Ct. App. 2006) ............................ 14

*City of Cleburne, Texas v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985) ........ 5, 7, 13

*Eisenstadt v. Baird,* 405 U.S. 438 (1972) ........................................................................ 12

*Elisa B. v. Superior Court*, 117 P.3d 660 (Cal. 2005) ..................................................... 14

*FCC v. Beach Communications, Inc.*, 508 U.S. 307 (1993) ............................................ 12

*Heckler v. Mathews*, 465 U.S. 728 (1984). ........................................................................ 7

*Heller v. Doe*, 509 U.S. 312 (1993) ............................................................................ 12, 13

*Hooper v. Bernalillo County Assessor*, 472 U.S. 612 (1985) .......................................... 12

*Kelo v. City of New London*, 545 U.S. 469 (2005) ...................................................... 7, 13

*Lawrence v. Texas*, 539 U.S. 558 (2003) ............................................................... 9, 11, 13

*In re Marriage Cases*, 183 P.2d 384 (Cal. 2008).................................. 2, 3, 5, 7, 9, 10, 11

*Mississippi University for Women v. Hogan*, 458 U.S. 718 (1982) ................................... 7

*Palmore v. Sidoti*, 466 U.S. 429 (1984) ............................................................................. 7

*Plessy v. Ferguson*, 163 U.S. 537 (1896) ........................................................................... 5

*Plyler v. Doe*, 457 U.S. 202 (1982) .................................................................................... 5

*Reitman v. Mulkey*, 387 U.S. 369 (1967) ....................................................................... 2, 6

*Romer v. Evans,* 517 U.S. 620 (1996) ..................................................... 3, 4, 5, 6, 8, 12, 14

*Rowan v. Runnels*, 46 U.S. 134 (1847) .............................................................................. 3

*Sharon S. v. Superior Court*, 73 P.3d 554 (Cal. 2003) ..................................................... 14

*Strauss v. Horton*, 207 P.3d 48 (Cal. 2009) ............................................................ 3, 8, 13

*U.S. v. Virginia*, 518 U.S. 515, (1996) ............................................................................. 14

*U.S. Department of Agriculture v. Moreno*, 413 U.S. 528 (1973) ................ 6, 7, 12, 13, 14

*Weinberger v. Wiesenfeld*, 420 U.S. 636 (1975) .............................................................. 13

*Witt v. Dep't of the Air Force*, 527 F.3d 806 (9th Cir. 2008) ........................ 1, 8, 9, 11, 15

# TABLE OF AUTHORITIES

(Continued)

**Statutes**                                                                                                           **Page(s)**

Cal. Const., art. I, Section 7.5 ........................................................................................ 8

Cal. Const., art. I, Section 7 ........................................................................................... 8

Cal. Fam. Code § 297.5(d) ............................................................................................ 14

Cal. Fam. Code § 9000(b) ............................................................................................. 14

Cal. Welf. & Inst. Code § 16013(a) ............................................................................... 14

**Other**                                                                                                               **Page(s)**

California General Election, *Tuesday, November 4, 2008, Official Voter Information Guide, Proposition 8*, available at http://voterguide.sos.ca.gov/past/2008/general/argu-rebut/argu-rebutt8.htm ................... 14

## SUMMARY OF ARGUMENT

*Amici* submit this brief to explain why Proposition 8 is unconstitutional for several reasons that are complementary to those presented by Plaintiffs, but that have not been the focus of previous briefing in this case.

*Amici* agree with Plaintiffs that Proposition 8 unconstitutionally denies same-sex couples the fundamental right to marry and unconstitutionally discriminates based on the suspect grounds of sexual orientation and sex, by failing to be narrowly tailored and necessary to fulfill a compelling state interest or even substantially related to the achievement of an important state interest. *Amici* further agree with Plaintiffs that Proposition 8 is unconstitutional because, just like other laws that prohibit same-sex couples from marrying, it does not even rationally further any legitimate state interest. However, *Amici* urge the Court expressly to rule in addition, and in the alternative to these bases, that because of the unique history and nature of Proposition 8:

(1)     Proposition 8 constitutes a per se violation of the Equal Protection Clause and is unconstitutional regardless of the level of scrutiny applicable to it;

(2)     Proposition 8 cannot meet the intermediate standard of review enunciated in *Witt v. Dep't of the Air Force*, 527 F.3d 806 (9th Cir. 2008); and

(3)     Proposition 8, in particular, fails proper application of rational basis review.

## ARGUMENT

**I.     PROPOSITION 8 IS UNIQUE.**

Forty-five states currently do not allow same-sex couples to marry in their jurisdiction. The ban on same-sex couples marrying brought about by Proposition 8, however, is different from those other states' laws in at least two important respects. First, unlike the law in every other jurisdiction, Proposition 8 amended the state's constitution after same-sex couples' right to marry had been conclusively held to be a component of that constitution's guarantee of equality, and it did so by creating an exception to the state's equal protection clause that applies only to gay people. Second, and again unlike every other state's law adopted to restrict marriage, Proposition 8 stripped from lesbians and gay men the right to the privileged designation and status of marriage, while leaving the substantive, legal rights and obligations of same-sex, state-registered couples both intact and, under

state constitutional requirements, identical to the rights and obligations of different-sex married couples. Both of these circumstances establish beyond question that the purpose of Proposition 8 was to declare same-sex couples unequal under the law to different-sex couples. California recognizes that same-sex couples are similarly situated to different-sex couples, but Proposition 8 requires that same-sex couples' relationships be designated as unequal to the relationships of heterosexual couples who marry, thereby denying the families of same-sex couples the dignity and respect afforded different-sex couples' families through marriage. As explained below, these aspects of Proposition 8 make it unconstitutional regardless of whether other measures, adopted in other circumstances, are unconstitutional.

The present litigation is in many ways the federal analogue of *In re Marriage Cases*, 183 P.3d 384 (Cal. 2008). In that case, the California Supreme Court held that the state constitution's guarantee of equal protection required that same-sex couples be accorded the same right that California provides different sex-couples to enter into the relationship designated by the state as marriage, rather than be limited to the separate, parallel institution of domestic partnership. *Id.* at 402, 451-52. As the court pointed out, the issue presented in that case differed from that presented in most previous state marriage litigation. *Id.* at 397. Instead, the court explained:

> [T]he legal issue we must resolve is not whether it would be constitutionally permissible under the California Constitution for the state to limit marriage only to opposite-sex couples while denying same-sex couples any opportunity to enter into an official relationship with all or virtually all of the same substantive attributes, but rather whether our state Constitution prohibits the state from establishing a statutory scheme in which both opposite-sex and same-sex couples are granted the right to enter into an officially recognized family relationship that affords all of the significant legal rights and obligations traditionally associated under state law with the institution of marriage, but under which the union of an opposite-sex couple is officially designated a "marriage" whereas the union of a same-sex couple is officially designated a "domestic partnership." The question we must address is whether, under these circumstances, the failure to designate the official relationship of same-sex couples as marriage violates the California Constitution.

*Id.* at 398. Similarly, the core question presented here is whether excluding same-sex couples from marriage while maintaining California's separate domestic partnership scheme violates the federal constitution.[1]

---

[1] As the U.S. Supreme Court explained in *Reitman v. Mulkey*, 387 U.S. 369, 373 (1967), courts properly examine the constitutionality of a measure in terms of its "historical context and the

[Footnote continued on next page]

1  The California Supreme Court ruled in the *Marriage Cases* that same-sex couples and different-sex couples are similarly situated under California law,[2] and that California's equal protection clause did not permit a scheme of treating the couples substantively the same but designating the relationships differently.  Doing so inevitably imposed "a mark of second-class citizenship," *id.* at 445, that denies the families of same-sex couples "the same dignity, respect, and stature as that accorded to all other officially recognized family relationships," *id.* at 434.[3]  In addition, the court found that relegating same-sex couples and their children to the status of domestic partnerships rather than marriage would expose them "to significant [practical] difficulties and complications," *id.* at 446, and "appreciable harm," *id.* at 401.

As authoritatively interpreted in *Strauss v. Horton*, 207 P.3d 48 (Cal. 2009),[4] Proposition 8 intentionally re-imposed this unequal status by amending the state's constitution to craft an "exception" to the guarantee of equality for gay people, *id.* at 61, 63, 98,[5] so that same-sex couples and their families would once again be denied equal dignity and respect and face the difficulties,

---

[Footnote continued from previous page]

conditions existing prior to its enactment," as well the measure's "immediate objective" and "ultimate effect," and federal courts are to give careful consideration to state courts' views about a state measure's "purpose, scope and operative effect."

[2] *In re Marriage Cases*, 183 P.3d at 435, n.54 (concluding that contention that same-sex and different-sex couples are not similarly situated with regard to the purpose of the state's marriage laws "clearly lacks merit"); *see also id.* at 428 (like heterosexuals, "gay individuals are fully capable of entering into the kind of loving and enduring committed relationships that may serve as the foundation of a family and of responsibly caring for and raising children").

[3] *See also id*. at 402 (noting as well the risk that such separate and distinct designation of same-sex couples' relationships could have "the effect of perpetuating a more general premise … that gay individuals and same-sex couples are in some respects 'second-class citizens' who may, under the law, be treated differently from, and less favorably than, heterosexual individuals or opposite-sex couples.").

[4] The U.S. Supreme Court has long held that state high court constructions of state laws are authoritative and binding on federal courts. *See*, *e.g.*, *Rowan v. Runnels*, 46 U.S. 134, 139 (1847) (holding that the U.S. Supreme Court "will always feel itself bound to respect the decisions of the State courts, and from the time they are made will regard them as conclusive in all cases upon the construction of their own constitution and laws"); *see also Romer v. Evans,* 517 U.S. 620, 626 (1996) (finding state supreme court's construction of amendment to its state constitution "authoritative").

[5] *See also Strauss*, 207 P.3d at 78 ("Proposition 8 must be understood as creating a limited exception to the state equal protection clause . . . .").

complications, and harms that result from the second-class status of domestic partnership. The discussion below explains why these unique aspects of Proposition 8 render it unconstitutional, in addition to the reasons advanced by Plaintiffs.

## II. PROPOSITION 8 CONSTITUTES A PER SE VIOLATION OF THE EQUAL PROTECTION CLAUSE.

There are some things that the Equal Protection Clause prohibits so absolutely that they can be considered per se violations of the clause's guarantee. The government may not decide that two groups of people are similarly situated with regard to the purposes of a law, but nonetheless have that law treat them differently. The government may not treat some people differently than others merely to declare them unequal. And the government may not permanently forbid itself from protecting a group of people against unequal treatment. Proposition 8 unconstitutionally does all these things.

In the typical challenge to government action that treats two groups of people differently, courts initially determine what level of scrutiny to apply to the decision to classify the groups for different treatment under the law. Then, applying such scrutiny, courts determine whether the government has a legitimate and sufficiently strong reason for the different treatment, and whether an adequate relationship exists "between the classification adopted and the object to be attained." *Romer v. Evans*, 517 U.S. at 632 (referring to this as the "conventional inquiry" undertaken in equal protection challenges). There are some cases, however, where this conventional inquiry need not be pursued and where the level of scrutiny does not matter: in cases where the unequal treatment is simply forbidden.

In *Romer*, the Supreme Court recognized that some laws not only fail to withstand the level of scrutiny applicable to them, but they violate the Equal Protection Clause in other ways. The *Romer* Court struck down an amendment to the Colorado Constitution that permanently prohibited all branches of government in that state from protecting gay, lesbian, and bisexual individuals, and only them, against discrimination. *Romer*, 517 U.S. at 620. The Court explained that certain laws must be understood to violate the Fourteenth Amendment's equality guarantee because they deny equal protection of the laws "in the most literal sense." *Id.* at 633; *see also id.* at 635 (describing how the state constitutional amendment struck down in the case failed this test "in addition" to the

conventional inquiry).  Proposition 8 violates the Equal Protection Clause in ways that are similar but not identical to the amendment at issue in *Romer*.  Unlike *Romer*, Proposition 8 does not broadly deny gay people the right to seek government protections against unequal treatment.  *Id.* at 632-33.  Like *Romer*, however, Proposition 8 is the "rare" kind of law that unconstitutionally violates core equality principles.  *Id*. at 633.

The Supreme Court has explained that the Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Plyler v. Doe*, 457 U.S. 202, 216 (1982) ("all persons similarly circumstanced shall be treated alike").  Proposition 8 flouts this essential principle of equal protection.  Even though, as noted above, California has determined and continues to maintain that same-sex couples and different-sex couples are similarly situated with regard to the purposes of California's marriage laws,[6] Proposition 8 nonetheless requires that the two groups be treated differently.  In other words, unlike all other state restrictions on marriage for same-sex couples, Proposition 8 amended the state's constitution in order to treat same-sex relationships differently from different-sex relationships (providing lesbian and gay couples with a status that is less respected and dignified), *while at the same time* continuing to recognize that same-sex couples are similarly situated to different-sex couples with regard to the purposes of marriage and continuing to govern their differently-designated relationships using the same substantive rules.

Like the state constitutional amendment invalidated in *Romer*, Proposition 8 thereby accomplishes nothing other than to "singl[e] out a certain class of citizens for disfavored legal status."  *Romer*, 517 U.S. at 633.  By imposing this "mark of second class citizenship," *In re Marriage Cases*, 183 P.3d at 445, Proposition 8 violates the fundamental equal protection principle that "the Constitution neither knows nor tolerates classes among citizens."  *Romer*, 517 U.S. at 623, quoting *Plessy v. Ferguson*, 163 U.S. 537, 559 (1896) (Harlan, J., dissenting).  This kind of violation

---

[6] *See Plyler*, 457 U.S. 202 at 216 ("The initial discretion to determine what is 'different' and what is 'the same' resides in the legislatures of the States.").

of the Equal Protection Clause warrants no further examination and, like the *Romer* Court, this Court should conclude that Proposition 8 violates the Equal Protection Clause under any standard of review.

Further, Proposition 8's purpose of declaring the relationships and families of lesbian and gay couples unequal to those of heterosexuals[7] contravenes a second cardinal precept of the Equal Protection Clause: that government cannot treat groups of people differently simply to designate them unequal. *See*, *e.g.*, *Romer*, 517 U.S. at 635 ("We must conclude that Amendment 2 classifies homosexuals not to further a proper legislative end but to make them unequal to everyone else. This Colorado cannot do."); *id*. at 633 (there must be some "independent" government objective that the differential treatment serves in order to "ensure that classifications are not drawn for the [improper] purpose of [simply] disadvantaging the group burdened by the law") (internal citation omitted); *U.S. Dept. of Agriculture v. Moreno*, 413 U.S. 528, 534-35 (1973) ("*Moreno*") ("[I]f the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare … desire to harm a politically unpopular group cannot constitute a legitimate government interest. As a result, '[a] purpose to discriminate against hippies cannot, in and of itself and without reference to [some independent] considerations in the public interest, justify the 1971 amendment.'") (quoting district court opinion in the case; brackets in original); *see also Reitman*, 387 U.S. at 380-81 ("Here we are dealing with a provision which does not just repeal an existing law" in that the amendment to

---

[7] This purpose is demonstrated by the very nature of what Proposition 8 did (that is, continuing to allow same-sex couples to obtain the identical substantive rights and obligations of marriage under a different designation, while barring them from the more cherished institution of marriage itself), without the necessity of specific findings of fact related to the voters' intent in enacting Proposition 8. Nonetheless, Plaintiffs have adduced significant evidence that this was the voters' intent. For example, Plaintiffs' expert witness Dr. Ilan Meyer testified that "Proposition 8 . . . sends a message that gay relationships are not to be respected; that they are of secondary value, if of any value at all; that they are certainly not equal to those of heterosexuals." (Trial Tr. 854:10-14; *see also id.* at 863:2-6 (Meyer) ("Proposition 8 "sends a message that it is okay to reject. Not only that it is okay, that this is very highly valued by our Constitution to reject gay people, to designate them a different class of people in terms of their intimate relationships.").) Individual plaintiffs also testified that domestic partnership is a brand of second-class citizenship. (Trial Tr. 82:13-83:9 (Zarillo), 115:10-116:9 (Katami).) Based on both Proposition 8's very nature and the evidence presented at trial, the Court should find as a matter of fact that Proposition 8 was passed for the purpose of making same-sex couples unequal to different-sex couples.

the California Constitution in that case, as here, made "discriminat[ion] … one of the basic policies of the State.").[8]

Laws like Proposition 8 that were adopted for the improper purpose of giving effect to private prejudice are so offensive to equal protection that they also violate the Clause no matter the standard of review that might otherwise apply to the classification at issue. For example, in *Palmore v. Sidoti*, 466 U.S. 429 (1984), the Supreme Court struck down a lower court order granting sole custody to a father because his ex-wife, a white woman, was in a new relationship with a black man, which the lower court found would have a damaging impact on the child. *Id.* at 434. Because the family court's decision was in fact made on the basis of an impermissible consideration—catering to private racial bias in society—analysis of the governmental interest and its connection to the classification, even under the strict scrutiny usually applied to race classifications, was unnecessary. The classification simply fell. *Id.* at 433-34. This rule is equally applicable to classifications that otherwise get lower forms of scrutiny. *See Kelo v. City of New London*, 545 U.S. 469, 490-91 (2005) (Kennedy, J., concurring) ("a court applying rational-basis review under the Equal Protection Clause must strike down a government classification that is clearly intended to injure a particular class of private parties, with only incidental or pretextual public justifications"); *see also Cleburne*, 473 U.S. at 446-47, 448-49; *Moreno*, 413 U.S. at 533-36.

Finally, not only is Proposition 8's purpose of branding the families of lesbian and gay couples as deserving of less dignity, respect, and stature than their married heterosexual counterparts a per se violation of equal protection but, like the constitutional amendment invalidated in *Romer* as a "literal violation" of the Equal Protection Clause, Proposition 8 accomplishes its purpose in a

---

[8] As noted in *In re Marriage Cases*, 183 P.3d at 401-02, 446, one of the problems with Proposition 8's imposition of a hierarchy of relationships is that it exposes same-sex couples and their children to appreciable practical harms and may perpetuate the general, false premise that gay individuals and couples may be treated less favorably under the law than heterosexual individuals and couples. *See Heckler v. Mathews*, 465 U.S. 728, 739-40 (1984) ("as we have repeatedly emphasized, discrimination itself, by perpetuating 'archaic and stereotypic notions'' or by stigmatizing members of the disfavored group as 'innately inferior' and therefore as less worthy participants in the political community, *Mississippi University for Women v. Hogan*, 458 U.S. 718, 725 (1982), can cause serious non-economic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group.") (internal citations omitted).

particularly pernicious way—by inserting a mandate of inequality into the state constitutional equality guarantee itself. *See* Cal. Const., art. I, Section 7.5 (adopted by Proposition 8), amending Cal. Const., art. I, Section 7 (which provides that "A person may not be … denied equal protection of the laws"). By carving out a gay "exception" to the guarantee of equal protection in the California Constitution, *Strauss*, 207 P.3d at 78, Proposition 8 "literally" causes the California equal protection clause to provide less "protection" against inequality to lesbians and gay men than it accords everyone else when it comes to access to the status and designation of marriage.[9] Indeed, Proposition 8 could be considered in some ways even worse than the amendment struck down in *Romer*. That amendment repealed and barred *statutory* (and perhaps common law) protections of gay people against discrimination in employment, housing, education, public accommodations, and health and welfare services, *Romer*, 517 U.S. at 623, 628-29, whereas Proposition 8 repealed and barred state *constitutional* protection of equal status, respect, and dignity for same-sex couples and their families, turning the state's equal protection clause, in effect, into a clause mandating *unequal* protection.

For all of these reasons, in addition to the other reasons why Proposition 8 should be held to be unconstitutional, Proposition 8 should be found to constitute a per se violation of the Equal Protection Clause that is invalid regardless of the applicable level of scrutiny.

### III.  PROPOSITION 8 FAILS THE STANDARD OF REVIEW MANDATED BY *WITT v. DEPARTMENT OF THE AIR FORCE*.

As noted above, *Amici* agree with Plaintiffs that strict scrutiny applies in this case because Proposition 8 infringes a fundamental right and discriminates based on a suspect classification. *Amici* urge the Court to rule in addition, however, that apart from that, Proposition 8 could not meet the standard of review mandated by the Ninth Circuit's recent decision in the *Witt* case. 527 F.3d at 806.

---

[9] For example, after Proposition 8's passage, racial and ethnic minorities, religious minorities, the disabled, seniors, and even left-handed people remain protected under California's equal protection clause against being denied equal access to the institution of marriage. Only gay people are denied that protection.

The Ninth Circuit held in *Witt* that, "when the government attempts to intrude upon the personal and private lives of homosexuals, in a manner that implicates the rights identified in *Lawrence* [*v. Texas*, 539 U.S. 558 (2003)], the government must advance an important governmental interest, the intrusion must significantly further that interest, and the intrusion must be necessary to further that interest." *Witt*, 527 F.3d at 819. Although *Witt* arose under the "Don't Ask, Don't Tell" law that bans openly gay people from serving in the military, the same liberty interest found to be burdened in *Witt* is implicated by Proposition 8.

In *Witt*, the plaintiff, Major Margaret Witt, was suspended from duty as an Air Force reservist nurse because she had a relationship with a civilian woman. *Id.* at 809. Major Witt challenged her suspension, arguing that, because her discharge was based on her same-sex relationship, the Supreme Court's decision in *Lawrence* required the court to examine the discharge under a heightened form of review. *Id.* at 814.[10] The court agreed, rejecting the government's argument that the applicable level of scrutiny was rational basis review. *Id.* at 816 ("We cannot reconcile what the Supreme Court did in *Lawrence* with the minimal protections afforded by traditional rational basis review.").

Like "Don't Ask, Don't Tell," Proposition 8 disadvantages those who are involved in same-sex relationships because they are in same-sex relationships. As the California Supreme Court found in the *Marriage Cases*, consigning same-sex couples to domestic partnerships rather than marriage denies their family relationship "respect and dignity equal to that accorded the family relationship of opposite-sex couples." *In re Marriage Cases*, 183 P.3 at 445.[11] That court further found that the

---

[10] The analysis that the *Witt* court engaged in was as-applied, rather than facial. *Witt*, 527 F.3d at 819. In that case, however, the interests the government argued were advanced by "Don't Ask Don't Tell"—such as "unit cohesion"—were susceptible to being examined on an individualized basis to determine whether exclusion of a particular individual from military service was necessary to further the government's claimed interest. *Id*. at 821-22. While as-applied constitutional adjudications may be preferred, *id*. at 819, it would not make sense to apply the balancing test enunciated in *Witt* to Proposition 8 on a case-by-case basis because the impact on the government interests Proposition 8 is argued to advance do not vary based on factors unique to the members of the same-sex couples who wish to marry.

[11] *See also In re Marriage Cases*, 183 P.3 at 426 (pointing out that the right to marry includes "an individual's right to be free from undue governmental intrusion into (or interference with) integral features of this relationship—that is the right of marital or familial privacy") and 446 (concluding that "the existence of two separate family designations—one available only to opposite-sex couples and the other to same-sex couples—impinges upon" the right of privacy by requiring disclosure of an individual's sexual orientation when answering "in everyday social, employment and governmental

[Footnote continued on next page]

1  domestic partnership status deprives individuals in same-sex relationships of the "ability to invest in
2  and rely upon a loving relationship with another adult in a way that may be crucial to the individual's
3  development as a person and achievement of his or her full potential." *Id.* at 424 (explaining that
4  marriage provides a unique expectation of permanence).  It also penalizes persons in same-sex
5  relationships by limiting their ability to gain the support of extended family members and preventing
6  them from exercising "an important element of self-expression that can give special meaning to one's
7  life." *Id.* at 425.

8    This Court should make similar findings with respect to Proposition 8.  Each of the plaintiffs
9  testified that they experienced the deprivation of the status of marriage as harmful in these distinct
10 and varied ways.  (*See*, *e.g.*, Trial Tr. 82:16-83:1 (Zarillo) (domestic partnership status does not
11 confer same respect as marriage); 116:2-5 (Katami) (denial of marriage prevents "full access to being
12 a full participant as a citizen of our country and our state"); 143:1 (Perry) ("[the denial of marriage is]
13 not letting me experience my full potential, because I am not permitted to experience everything I
14 might feel if this barrier were removed"); 159:16-20 (Perry) (the denial of marriage is humiliating
15 and leads to a lesser sense of self: "So if Prop 8 were undone and kids like me growing up in
16 Bakersfield right now could never know what this felt like, then I assume that their entire lives would
17 be on a higher arch.  They would live with a higher sense of themselves that would improve the
18 quality of their entire life."); 179:7-17 (Stier) ("The first time somebody said to me, 'Are you
19 married,' and I said 'Yes,' I would think, 'Ah, that feels good. It feels good and honest and true.' I
20 would feel more secure. I would feel more accepted. I would feel more pride. I would feel less
21 protective of my kids. I would feel less like I had to protect my kids or worry about them or worry

---

[Footnote continued from previous page]

settings" that he or she is in a domestic partnership rather than a marriage, "and may expose gay individuals to detrimental treatment by those who continue to harbor prejudices" against lesbians and gay men).

that they feel any shame or sense of not belonging. So I think there are immediate, very real and very desirable personal gains that I would experience.").[12]

Indeed, Proposition 8 strikes closer to the heart of the right identified in *Lawrence* than "Don't Ask, Don't Tell" because, like the "sodomy" law at issue in *Lawrence*, Proposition 8 seeks to impose a disadvantage on the relationship itself. Like Texas, see *Lawrence*, 539 U.S. at 575, 578, California seeks to "demean" the relationships of gay persons and to impose a stigma because they have entered into relationships that are legally identical in rights and obligations to those of heterosexuals but that are with persons of the same sex. Like Texas, California seeks to impose that stigma on the relationship itself, burdening it with the "mark of second-class citizenship." *In re Marriage Cases*, 183 P.3d at 445. This the state cannot do unless imposing such a burden is so critical to state interests that it outweighs the damage done to individual liberty.[13]

---

[12] Plaintiffs' experts also testified that Proposition 8 has these effects. (*See*, *e.g.*, Trial Tr. 826-880 (testimony of Dr. Meyer that the denial of marriage constitutes "structural stigma," which results in numerous ill effects—social and medical—for lesbians and gay men) and 1331-1350 (testimony of Dr. Lee Badgett that the denial of marriage leads to individual and familial economic harms for lesbians and gay men).). Even more tellingly, *Defendant-Intervenors' expert* David Blankenhorn testified that the denial of marriage resulted in these harms to lesbian and gay individuals, as well as their partners and families. (*See*, *e.g.*, Trial Tr. 2803:13-15 ("I believe that adopting same-sex marriage would be likely to improve the well-being of gay and lesbian households and their children."), 2805:8-20 (quoting from a previous publication by the witness: "I believe that today the principle of equal human dignity must apply to gay and lesbian persons. . . . In that sense insofar as we are a nation founded on this principle, we would be more . . . American on the day we permitted same-sex marriage than we were on the day before."), and 2848:16-21 (quoting from a previous publication by the witness: "Same-sex marriage would meet the stated needs and desires of lesbian and gay couples who want to marry. In so doing, it would improve the happiness and well-being of gay and lesbian individuals, couples and family members.").

[13] While it is true that the Supreme Court noted in *Lawrence* that that case did not "involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter," 539 U.S. at 578, the Court did not say its decision had *no* implications for issues related to marriage. In any event, *Amici* are not arguing here that *Lawrence* generally compels allowing same-sex couples to marry, but rather that *Lawrence* prohibits the state from demeaning those who form adult intimate relationships with others of the same-sex by relegating them to a lesser status than those who form adult intimate relationships of which a majority of voters approve, thereby denying same-sex relationships "equal dignity and respect." *In re Marriage Cases*, 183 P.3d at 400. As *Lawrence* emphasized, the constitutional right to liberty protects the "dignity" of adults who enter same-sex relationships, 539 U.S. at 567, and entitles lesbians and gay men "to respect for their private lives," *id.* at 578. Because Proposition 8 "intrude[s] upon the personal and private lives of homosexuals, in a manner that implicates the rights identified in *Lawrence*," *Witt*, 527 F.3d at 819, at least the intermediate level of scrutiny described in *Witt* must be applied in the present case.

The evidence adduced at trial demonstrates that this test cannot be met in this case. *Amici* accordingly urge this Court to rule—in addition to the other reasons why the measure is unconstitutional—that Proposition 8's requirement that same-sex couples obtain the rights of marriage through an institution of lesser dignity and respect because their intimate relationships are with another person of the same sex rather than of a different sex does not significantly further, and is not necessary to advance, any important government interest, and therefore is unconstitutional according to the controlling precedent the Ninth Circuit laid down in *Witt*.

### IV. THE UNIQUE CHARACTERISTICS OF PROPOSITION 8 ESTABLISH THAT IT FAILS EVEN PROPER APPLICATION OF RATIONAL BASIS REVIEW.

Proponents have argued that, under rational basis review, Plaintiffs bear "the burden to negative every conceivable basis that might support" Proposition 8. (Defs-Ints.' Tr. Br. at p.6.). While the Supreme Court defers almost completely to legislative choices about where to draw lines in economic and regulatory contexts, it is more careful in cases involving individual liberty and human dignity.[14] The Court has applied this more careful approach to rational basis analysis particularly where there is reason to suspect that the classification may not have been drawn for legitimate reasons. Enactments that are outside "our constitutional tradition" are one reason to be wary. *See*, *e.g.*, *Romer v. Evans*, 517 U.S. at 633; *see also Hooper v. Bernalillio County Assessor*, 472 U.S. 612, 619-23 (1985) (tax exemption for some Vietnam Veterans failed rational basis test after careful review showed only possible purpose was not legitimate). A basis to suspect that a law's objective in fact was to disadvantage a politically unpopular group or to express moral disapproval is another reason. *See Romer*, 517 U.S. at 633 ("By requiring that the classification bear a rational relationship

---

[14] *See*, *e.g.*, *Eisenstadt v. Baird,* 405 U.S. 438, 446-55 (1972) (closely analyzing and ultimately rejecting under rational basis review rationales offered for Massachusetts' ban on purchase of contraceptives by people who were not married); *Moreno,* 413 U.S. at 533-38 (closely analyzing and ultimately rejecting on rational basis review rationales offered for federal ban on food stamps for households containing unmarried persons); *Heller v. Doe*, 509 U.S. 312, 321-30 (1993) (closely analyzing and ultimately upholding on rational basis review rationales offered for different standards of proof for involuntary commitment of mentally ill and mentally retarded persons); *cf. FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993) (upholding economic regulation against equal protection challenge where "any reasonably conceivable state of facts [exists] that could provide a rational basis for the classification").

12
CASE NO. 09-CV-2292 VRW  BRIEF OF *AMICI CURIAE*

to an independent and legitimate legislative end, we ensure that classifications are not drawn for the purpose of disadvantaging the group burdened by the law.").[15] For the same reasons that Proposition 8 should be deemed a per se violation of the Equal Protection Clause, Proposition 8 is suspicious for both reasons, warranting a close rational basis analysis.

When applying the rational basis test carefully, courts go beyond the mere labels used to describe the purposes said to be advanced by a classification to make sure that in fact the classification was aimed at a legitimate state interest. In other words, courts look at the *actual* purpose of a classification.[16] In addition, courts demand an intellectually respectable explanation of how the classification might be thought to advance its intended purposes. *See*, *e.g.*, *Moreno*, 413 U.S. at 533-38 (carefully thinking through whether an exclusion of unmarried persons could really be thought to prevent fraud); *Heller*, 509 U.S. at 321-30 (taking pains to see if it really was possible to think that differences between mentally ill and mentally retarded persons could justify different standards of proof in commitment proceedings).

*Amici* agree with Plaintiffs that none of the laws across the nation that prohibit same-sex couples from marrying can meet this test. But, apart from that, what Proposition 8 did surely fails the proper application of rational basis review. Because Proposition 8 did not change the ability of same-sex couples to obtain California's substantive rights and obligations of marriage by entering a domestic partnership, *Strauss*, 207 P.3d at 76, it cannot be justified by any reasons having to do with

---

[15] *See also Lawrence*, 539 U.S. at 580 (O'Connor, J., concurring) ("When a law exhibits such a desire to harm a politically unpopular group, we have applied a more searching form of rational basis review to strike down such laws under the Equal Protection Clause."); *see also Kelo*, 545 U.S. at 490-91 (Kennedy, J., concurring) (distinguishing between the rational basis test applied to "economic regulation" and the test applied to classifications unjustifiedly intended to injure a particular group of people).

[16] In so doing, the Supreme Court has looked as well to traditional sources of legislative intent to "illuminate the purposes" behind a law. *See Moreno*, 413 U.S. at 534 (reviewing legislative history to determine the purpose behind a statute that differentiated between households with married persons and households with unmarried persons); *see also Cleburne*, 473 U.S. at 447-50 (reviewing city council records to determine the purpose behind a zoning ordinance that differentiated between group homes for the mentally disabled and other group homes); *Weinberger v. Wiesenfeld*, 420 U.S. 636, 648 n.16 (1975) ("This Court need not in equal protection cases accept at face value assertions of legislative purposes, when an examination of the legislative scheme and its history demonstrates that the asserted purpose could not have been a goal of the legislation.") (internal citations omitted).

those rights and obligations.  Proposition 8 likewise cannot be justified by any purported differences in parenting by same-sex and different-sex couples because Proposition 8 did nothing to change California law that provides precisely the same substantive parenting rights and obligations to domestic partners and spouses, Cal. Fam. Code §§ 297.5(d), 9000(b), and that otherwise treats parents in same-sex relationships identically to parents in different-sex relationships.[17]

Any justification tendered for Proposition 8 must explain why it continued to allow same-sex couples to get all of the substantive rights and benefits of marriage, but not its preferred status and designation.  There is only one possible explanation:  A majority of voters did not want the relationships of same-sex couples to be considered the same as the relationships of different-sex couples.  Why else create an "exception" to the state equal protection guarantee in order to withhold the designation that signified equality?  As the ballot arguments supporting Proposition 8 confirm, the measure limited same-sex couples to the lesser status of domestic partnership rather than marriage in order to avoid creating the impression that same-sex relationships are "okay" and that there is "no difference" between the relationships of same-sex and different-sex relationships."[18]  This, however, is nothing more than a "classification of persons undertaken for its own sake," which is "something the Equal Protection Clause does not permit."  *Romer*, 517 U.S. at 635.  Under our system of government, laws cannot be adopted with the intent or effect of simply conveying that some people are not the equal of others.  *See id.* at 623, 633-34; *see also U.S. v. Virginia*, 518 U.S. 515, 557 (1996); *Moreno*, 413 U.S. at 534; *Brown v. Bd. of Educ.*, 347 U.S. 483, 494 (1954).

## CONCLUSION

For the reasons set forth above, *Amici* respectfully urge the Court that Proposition 8 is unconstitutional not only because it violates the fundamental right to marry and because all laws prohibiting same-sex couples from marrying violate equal protection, but also, in the alternative, to

---

[17] *See*, *e.g.*, *Elisa B. v. Superior Court*, 117 P.3d 660 (Cal. 2005); *Sharon S. v. Superior Court*, 73 P.3d 554 (Cal. 2003); *Charisma R. v. Kristina S.*, 44 Cal. Rptr. 3d 332 (Cal. Ct. App. 2006); Cal. Welf. & Inst. Code § 16013(a).

[18] California General Election, *Tuesday, November 4, 2008, Official Voter Information Guide, Proposition 8*, *available at* http://voterguide.sos.ca.gov/past/2008/general/argu-rebut/argu-rebutt8.htm.

rule that, because of the unique history and nature of Proposition 8, it constitutes a per se violation of the Equal Protection Clause; it fails the intermediate standard of review enunciated in *Witt*; and its relegation of same-sex couples to registered domestic partnership rather than marriage fails proper application of rational basis review.

Dated:  February 3, 2009

ALAN L. SCHLOSSER
ELIZABETH O. GILL
ACLU Foundation of Northern California

JON W. DAVIDSON
JENNIFER C. PIZER
TARA BORELLI
Lambda Legal Defense and Education Fund, Inc.

SHANNON P. MINTER
CHRISTOPHER F. STOLL
ILONA M. TURNER
National Center For Lesbian Rights

MARK ROSENBAUM
ACLU Foundation of Southern California

DAVID BLAIR-LOY
ACLU Foundation of San Diego and Imperial Counties

MATTHEW A. COLES
JAMES D. ESSEKS
LGBT & AIDS Project
American Civil Liberties Union Foundation

By: _____/s/_____
      ELIZABETH O. GILL

Attorneys for *Amici Curiae* American Civil Liberties Union, Lambda Legal Defense and Education Fund, Inc., and National Center for Lesbian Rights