STEVEN E. MITCHEL, CSBN 124435
Attorney at Law:
912 Cole Street #320
San Francisco, CA 94117
Tel: (415) 350-1676
Email: mitchelsteve@yahoo.com

Attorney for Amicus Curiae
THE PROGRESSIVE PROJECT,
COLAGE

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO,<br><br>Plaintiff,<br><br>vs.<br><br>SCHWARZENEGGER, et al,<br><br>Defendant. | Case No: 3:09-cv-02292<br><br>**MOTION FOR LEAVE TO FILE** BRIEF OF THE PROGRESSIVE PROJECT AND COLAGE AS [PROPOSED] *AMICI CURIAE* |

The Progressive Project ("TPP") and COLAGE respectfully move this Court, pursuant to Federal Rule of Appellate Procedure 29(b), for leave to file the brief submitted herewith, as *amici curiae* in support of Plaintiffs.

The *amici curiae* have an immediate and vital interest in the outcome of this case based upon their work to achieve full equality under the law for all children and their families. Through their work, the *amici* have significant experience working with children and families that have been negatively impacted by marriage inequality and by prejudicial treatment. Additionally, the

*amici* have worked with children and families who have been positively impacted along these axes by marriage equality.

TPP is a national network that organizes individuals and communities to participate in political action and public life. TPP's work is guided by the core values love, authenticity, empathy, community responsibility and equality of access and opportunity. Since its founding in 2004, TPP has been involved in efforts to achieve equality for Lesbian, Gay, Bisexual and Transgender ("LGBT") people in both public and private life. TPP has engaged its national network in campaigns to advance marriage equality in five states and also has developed civil rights innovations which promote agency and resiliency within the LGBT community and which actively involve straight allies in efforts to achieve equality.

Founded in 1990, COLAGE is the only national, youth-driven network of people with lesbian, gay, bisexual, transgender or queer parents. Living in a world that treats families differently and discriminates can be isolating or challenging. Therefore, COLAGE helps the millions of children who have one or more LGBT parents become strong advocates for themselves and their families. With 40 chapters and an active membership of youth and families in 40 states, including its largest membership in California, COLAGE has nearly 20,000 active supporters.

The *Amici* have a proven commitment to promoting the equality for all Americans, and have an abiding interest in the welfare of children of lesbians and gays. For these reasons, and those set forth in the attached brief, TPP and COLAGE respectfully request leave to file a brief *amici curiae* in support of Plaintiffs.

Respectfully submitted,

Dated: February 3, 2010

__*/s/ Steven E. Mitchel*__

STEVEN E. MITCHEL
Attorney at Law

STEVEN E. MITCHEL, CSBN 124435
Attorney at Law:
912 Cole Street #320
San Francisco, CA 94117
Tel: (415) 350-1676
Email: mitchelsteve@yahoo.com

Attorney for Amicus Curiae
THE PROGRESSIVE PROJECT, COLAGE

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO,<br><br>Plaintiffs,<br><br>vs.<br><br>SCHWARZENEGGER, et al,<br><br>Defendants. | Case No: 09-cv-2292-VRW<br><br>BRIEF OF [PROPOSED] *AMICI CURIAE* THE PROGRESSIVE PROJECT AND COLAGE IN SUPPORT OF PLAINTIFF |

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**........................................i

**I. STATEMENT OF INTEREST**........................................1

**II. ARGUMENT**........................................2

**A. INTRODUCTION**........................................2

**B. THE DENIAL OF MARRIAGE RIGHTS CAUSES HARM TO CHILDREN**........................................3

i. California's Proposition 8 Unjustly Discriminates Against and Stigmatizes Children Of Lesbian And Gay Parents........................................4

ii. Denying A Child's Parents The Right To Marry Harms the Health and Welfare of the Child........................................10

**C. GIVING LEGAL RECOGNITION TO SAME-SEX COUPLES RESULTS IN POSITIVE EFFECTS ON CHILDREN.**........................................12

**D. CONCLUSION**........................................14

# TABLE OF AUTHORITIES

**Constitutional Provisions**

Cal. Const. Art. I, § 7.5. .......... 2, 13

**Statutes**

10 U.S.C. § 654 .......... 3

Cal. Fam. Code § 3011 .......... 4

**Cases**

Troxel v. Granville, 530 U.S. 57, 68-69 (2000) .......... 3, 4

M.L.B. v. S.L.J., 519 U.S. 102, 116 (1996) .......... 1

Reno v. Flores, 507 U.S. 292, 304 (1993) .......... 3

Smith v. Organization of Foster Families for Equality and Reform, 431 U.S. 816, 844 (1977) .......... 4

Stanley v. Illinois, 405 U.S. 645, 651 (1972) .......... 1

Wisconsin v. Yoder, 406 U.S. 205, 231-33 (1972) .......... 3

Boddie v. Connecticut, 401 U.S. 371, 376 (1971) .......... 1

Pierce v. Soc'y of the Sisters of the Holy Names of Jesus and Mary, 268 U.S. 510, 535 (1925) .......... 3

Harper v. Poway Unified School District, 445 F.3d 1166, 1178-79 (9th Cir. 2006) .......... 13

Parker v. Hurley, 474 F.Supp.2d 261, 263 (D.Mass. 2007) .......... 13

Kerrigan v. Comm'r of Public Health, 957 A.2d 407, 435 (Conn. 2008) .......... 4, 6

Varnum v. Brien, 763 N.W.2d 862 (Iowa 2009) .......... 6

Goodridge v. Dept. of Public Health, 798 N.E.2d 941, 964 (Mass. 2003). .......... 6, 11

Snetsinger v. Montana University System, 104 P.3d 445, 454-55 (Mont. 2004) .......... 4

Lewis v. Harris, 908 A.2d 196, 203 (N.J. 2006). .......... 6

Baker v. State, 744 A.2d 864, 882 (Vt. 1999). .......... 5

**Other Authorities**

Abbie E. Goldberg, Lesbian and Gay Parents and their Children: Research on the Family Life Cycle. Washington, DC: American Psychological Association (2009) .......... 4, 9

Bianca D.M. Wilson, LGBT Family Collaborative, Our Families: Attributes Of Bay Area Lesbian, Gay, Bisexual & Transgender Parents And Their Children 1, 1 (2007), available at http://www.sfcenter.org/pdf/OurFamilyReport.pdf. .......... 2

Center for Disease Control and Prevention, Births, Marriages, Divorces, and Deaths: Provisional Data for 2008, National Vital Statistics Reports, Volume 57, Number 19, Table 2b, available at http://www.cdc.gov/nchs/data/nvsr/nvsr57/nvsr57_19.htm. .......... 10

Christopher Ramos et al., The Effects of Marriage Equality in Massachusetts: A survey of the experiences and impact of marriage on same sex couples, 2009 THE WILLIAMS INST. 1...... 11, 13

ELCA Assembly Opens Ministry to Partnered Gay and Lesbian Lutherans, Evangelical Lutheran Church of America. (Aug. 2009), available at http://www.elca.org/Who-We-Are/Our-Three-Expressions/Churchwide-Organization/Communication-Services/News/Releases.aspx?a=4253 8

Fiona Tasker, Lesbian Mothers, Gay Fathers, and Their Children: A Review, 26(3) DEV. & BEHAV. PEDIATRICS, 224 (2005) .......... 4, 5, 7

Gary W. Evans et al., Childhood Poverty and Health: Cumulative Risk Exposure and Stress Dysregulation,18(11) PSYCHOL. SCIENCE.953, 953 (2007).......... 11

George Herek, Legal Recognition of Same-Sex Marriages in the United States: A Social Science Perspective, 61 AM. PSYCHOLOGIST, 607, 612 (2006). .......... 4, 11, 12

Godwin S. Ashiabi, Keri K. O'Neal, Children's Health Status: Examining the Associations among Income Poverty, Material Hardship, and Parental Factors, 9 PLOS ONE, 7 (2007) .......... 11

Henny M.V. Bos et al., The USA National Longitudinal Lesbian Family Study (NLLFS): Homophobia, Psychological Adjustment, and Protective Factors, 12(4), J. OF LESBIAN STUD., 455, 456 (2008) .......... 4, 5

Interview by Kara Suffredini, Director of Public Policy and Community Engagement at The Family Equality Council, with Gary Gates, Distinguished Scholar, Williams Institute, UCLA School of Law (Jan. 2010) .......... 2

Interview by Meghann Burke with Pam DiStefano and Liz Forti, in Brookline, Mass. (Jan. 23, 2010).......... 9

James G. Palewski et al., The Effects of Marriage, Civil Union, and Domestic Partnership Laws on the Health and Well-being of Children, 118 vol. 1 PEDIATRICS,349, 361 (2006)............ 5, 6, 7

Karen Seccombe, Families in Poverty in the 1990s: Trends, Causes, Consequences, and Lessons Learned, 62(4) J. OF MARRIAGE & FAM., 1094, 1102 (2000);.................................................... 11

LGBT Ministries, United Church of Christ. (2010) available at http://www.ucc.org/lgbt/ ............. 8

Marriage Equality, Unitarian Univeralist Association. (2010), available at http://www.uua.org/socialjustice/issues/bgltequality/marriageequality/index.shtml..................... 8

Mary Frances Schjonberg, Bishops Call for Passage of State 'Marriage-Equality' Bill, The Episcopal Church. EPISCOPAL LIFE ONLINE. (Dec. 8, 2009), available at http://ecusa.anglican.org/81803_117621_ENG_HTM.htm ......................................................... 8

Mission Statement and Organizational Description from the More Light Presbyterians. (2010), available at http://www.mlp.org/index.php?topic=aboutUs ....................................................... 8

Mission Statement from the Association of Welcoming and Affirming Baptists. (2006), available at http://www.wabaptists.org/who_we_are/mission.htm ........................................................... 8

Randy Albelda et al., Poverty in the Lesbian, Gay, and Bisexual Community, 2009 THE WILLIAMS INST. 3.......................................................................................................................... 10

Resolution Adopted by the CCAR on Gay and Lesbian Marriage, Central Conference of American Rabbis. (March 1996), available at http://data.ccarnet.org/cgi-bin/resodisp.pl?file=gl&year=1996 ........................................................................................................................... 9

Sarah Wildman, Children Take the Stage in Same-Sex Marriage Push, N.Y. TIMES, Jan. 20, 2010, E1, available at http://www.nytimes.com/2010/01/21/fashion/21kids.html. ................................ 6

Sharon S. Rostosky, et al., Marriage Amendments and Psychological Distress in Lesbian, Gay, and Bisexual (LGB) Adults. J. OF COUNSELING PSYCH. Jan; 56, 62 (Jan. 2009). ......................... 7

Sheila Foster, Difference and Equality: A Critical Assessment of the Concept of Diversity, 1993 Wis. L. Rev. 105 (1993) ............................................................................................ 5

Tavia Simmons & Martin O'Connell, U.S. Census Bureau, Table 2. Married-Couple and Unmarried-Partner Households for the United States, Regions, States, and for Puerto Rico: 2000, in Census 2000 Special Reports: Married and Unmarried-Partner Households 4 (Feb. 2003),

www.census.gov/prod/2003pubs/censr-5.pdf (last visited Feb. 3, 2010); see id. at Table 4. Selected Household and Family Characteristics of Married-Couple and Unmarried-Partner Households for the United States, Regions, States, and for Puerto Rico: 2000............................ 2

Telephone Interview by Jasmine Beach-Ferrara with Beth Teper, Executive Director, COLAGE, Jeff DeGroot, Fellow, COLAGE and Monica Canfield-Lenfest, Kids of Trans Program, COLAGE (Jan. 27, 2010)........................................................................................... 7, 8

Telephone Interview by Meghann Burke with Stephen Ribisi Jr., Assistant Professor of Curriculum and Instruction, Univ. of Mass. Boston (Jan. 22, 2010). .................................... 9, 14

Testimony of Christopher Cooper, "Opening Statement," Perry v. Schwarzenegger, 09-cv-2292-VRW (Jan. 11, 2010), at 55, line 11-15 ........................................................................... 8

Testimony of David Blankenhorn, Perry v. Schwarzenegger, 09-cv-2292-VRW (Jan. 27, 2010), at 2839, line 22-24........................................................................................................... 3

Testimony of Michael Lamb, Ph.D., Testimony of Proceedings, Perry v. Schwarzenegger, 09-cv-2292-VRW (Jan. 15, 2010), at 1025, lines 4-8 ................................................................ 2

Testimony of Sandra B. Stier, Testimony of Proceedings, Perry v. Schwarzenegger, 09-cv-2292-VRW (Jan. 11, 2010)......................................................................................................... 12

Weinstein, Andrew L., The Crossroads of a Legal Fiction and the Reality of Families, 61 ME. L. REV. 319, 325 (2009) ......................................................................................................... 4

## I. STATEMENT OF INTEREST

The *amici curiae* have an immediate and vital interest in the outcome of this case based upon their work to achieve full equality under the law for all children and their families. Through their work, the *amici* have significant experience working with children and families that have been negatively impacted by marriage inequality and by prejudicial treatment. Additionally, the *amici* have worked with children and families who have been positively impacted along these axes by marriage equality.

Founded in 2004, The Progressive Project ("TPP") is a national network that organizes individuals and communities to participate in political action and public life. TPP has engaged its national network in campaigns to advance marriage equality in five states. It has developed civil rights innovations that promote agency and resiliency within the Lesbian, Gay, Bisexual and Transgender ("LGBT") community and which actively involve heterosexual allies in efforts to achieve equality. Founded in 1990, COLAGE is the only national, youth-driven network of people with lesbian, gay, bisexual, transgender or queer parents. COLAGE helps the millions of children who have one or more LGBT parents become strong advocates for themselves and their families. With 40 chapters and an active membership of youth and families in 40 states, including its largest membership in California, COLAGE has nearly 20,000 active supporters. *Amici* have a proven commitment to promoting the equality for all Americans and an abiding interest in the welfare of children of lesbians and gays.

\\

\\

\\

## II. ARGUMENT

### A. INTRODUCTION

Children of lesbian and gay parents are harmed by California's Proposition 8 ("Prop 8"), which excludes their parents from the option to marry and denies their families equal standing under the law and the many societal benefits conferred by marriage. See Cal. Const. Art. I, § 7.5. This brief draws upon empirical evidence from medical and social scientific studies, case law, and anecdotal evidence from interviews and testimony in support of the conclusion that Prop 8 harms children of lesbian and gay parents. The harm inflicted by California's intrusion on a fundamental right runs afoul of basic liberties inherent in both citizenship and humanity. The U.S. Supreme Court has held that "[c]hoices about marriage, family life, and the upbringing of children are among associational rights this Court has ranked as 'of basic importance in our society,' rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect." M.L.B. v. S.L.J., 519 U.S. 102, 116 (1996) (quoting Boddie v. Connecticut, 401 U.S. 371, 376 (1971)).[1] Ideally, parents wish to protect their children from violence and discrimination and will look to their extended communities, including schools, places of worship, and government, for such protections. The California constitution, however, perpetuates stigma and discrimination against children of gay men and lesbians and their families. See Cal. Const. Art. I, § 7.5.

Lesbian and gay couples create families despite discriminatory marriage laws. Based on the 2000 census and the American Community Survey data, experts estimate that there are currently one million lesbian and gay parents in the United States raising two million children

---

[1] See also Stanley v. Illinois, 405 U.S. 645, 651 (1972) (establishing the rights to conceive and to raise one's children as essential).

under the age of eighteen.[2] These families live in 99.3 percent of counties in the U.S. and are highly concentrated on the coasts as well as in the South and Midwest, where marriage and other legal protections are rare.[3] Of the 92,138 known same-sex households in California documented in the 2000 Census, 27 percent include children.[4] Nationally, an estimated 34 percent of cohabitating female couples and 22 percent of cohabitating male couples have children under age 18 living in the home.[5] These children are harmed by laws, like Prop 8, that single out same-sex couples and deny them the right to marry.

### B. THE DENIAL OF MARRIAGE RIGHTS CAUSES HARM TO CHILDREN.

Plaintiffs' expert Michael Lamb, Ph.D. established in his testimony that children of lesbians and gays develop comparably to the children of heterosexuals.[6] Defendant-Intervenors'

---

[2] Figures drawn from the census data are likely to vastly underestimate the real number of same-sex couples raising children. This is the case because the census has no way of reporting single-LGBT parents, and because many same-sex couples are not "out" on the census due to fear of discrimination and stigma (e.g., LGBT people still face loss of jobs if they are "out" because most states have not prohibited employment discrimination on the basis of sexual orientation; discharge from the military is mandated by law under "Don't Ask, Don't Tell," 10 U.S.C. § 654). Interview by Kara Suffredini, Director of Public Policy and Community Engagement at The Family Equality Council, with Gary Gates, Distinguished Scholar, Williams Institute, UCLA School of Law (Jan. 2010) [hereinafter Interview with Gates]. See Bianca D.M. Wilson, LGBT Family Collaborative, Our Families: Attributes Of Bay Area Lesbian, Gay, Bisexual & Transgender Parents And Their Children 1, 1 (2007), available at http://www.sfcenter.org/pdf/OurFamilyReport.pdf (last visited Feb. 3, 2010).

[3] See James G. Palewski et al., The Effects of Marriage, Civil Union, and Domestic Partnership Laws on the Health and Well-being of Children, 118 Pediatrics, 349, 351 (2006) [hereinafter Palewski]; see also Interview with Gates, supra.

[4] Tavia Simmons & Martin O'Connell, U.S. Census Bureau, Table 2. Married-Couple and Unmarried-Partner Households for the United States, Regions, States, and for Puerto Rico: 2000, in Census 2000 Special Reports: Married and Unmarried-Partner Households 4 (Feb. 2003), www.census.gov/prod/2003pubs/censr-5.pdf (last visited Feb. 3, 2010); see id. at Table 4. Selected Household and Family Characteristics of Married-Couple and Unmarried-Partner Households for the United States, Regions, States, and for Puerto Rico: 2000.

[5] Id. at Table 4. Selected Household and Family Characteristics of Married-Couple and Unmarried-Partner Households for the United States, Regions, States, and for Puerto Rico: 2000.

[6] Testimony of Michael Lamb, Ph.D. Testimony of Proceedings, 09-cv-2292-VRW (Jan. 15, 2010), at 1025, lines 4-8 ("research focused on this question document[s] very conclusively that

own witness, David Blankenhorn, stated "I do believe it is almost certainly true that gay and lesbian couples and their children would benefit by having gay marriage."[7] Beyond the notion that children are *not* harmed by being raised by gay or lesbian parents, this brief argues that they *are* in fact harmed by discriminatory laws, a conclusion that is supported by medical research, social science research, the experiences of children whose families are headed by same-sex couples, and the teachings of faith traditions that recognize the right of same-sex couples to marry and honor the sanctity of the families they form.[8] Prop 8 and similar marriage bans in other states cause financial, legal, and psychosocial harm to children. This section of the brief discusses how discriminatory marriage laws cause (1) stigmatic harm to children of lesbians and gays and (2) injury to the health and welfare of children.

i. California's Proposition 8 Unjustly Discriminates Against and Stigmatizes Children Of Lesbian And Gay Parents.

The best interest of the child drives most, if not all, court decisions involving custody disputes, as that concept is a bedrock principle in family law. In determining the best interest of the child, California courts consider the health, safety, and welfare of the child, as well as the nature of the contact between parents and children.[9] It is without dispute that every child has an

---

children who are raised by gay and lesbian parents are just as likely to be well-adjusted as children raised by heterosexual parents.").

[7] Testimony of David Blankenhorn, Perry v. Schwarzenegger, 09-cv-2292-VRW (Jan. 27, 2010), at 2839, line 22-24.

[8] See Troxel v. Granville, 530 U.S. 57, 63 (2000) ("demographic changes of the past century make it difficult to speak of an average American family").

[9] Cal. Fam. Code § 3011 (West 2004); see also Troxel, 530 U.S. at 68-69 (if "a parent adequately cares for his or her children (*i.e.,* is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.") (citing Reno v. Flores, 507 U.S. 292, 304 (1993); see also Wisconsin v. Yoder, 406 U.S. 205, 231-33 (1972)) (holding that parents have a fundamental right to determine the religious upbringing of their children without State interference); Pierce v. Soc'y of the Sisters of the Holy Names of Jesus and Mary, 268 U.S. 510, 535 (1925) ("The child is not the mere creature of the state; those who nurture him and direct his

interest in receiving love, kindness, and support from his/her family. Courts examine information about a family to determine whether the parents or prospective adoptive parents are "fit."[10] Courts have noted that "children raised by gay and lesbian parents have been found to develop no differently than children raised by heterosexual parents in terms of self-esteem, psychological well-being, cognitive functioning and social adjustment, despite claims to the contrary." Snetsinger v. Montana University System, 104 P.3d 445, 454-55 (Mont. 2004) (Nelson, J., concurring); see also Kerrigan v. Commissioner of Public Health, 957 A.2d 407, 435 (Conn. 2008) ("it is the public policy of this state that sexual orientation bears no relation to an individual's ability to raise children.").

Consistent with Dr. Lamb's testimony, findings of more than twenty-five studies conducted over the last three decades overwhelmingly indicate "that same-sex and heterosexual relationships do not differ in their essential psychosocial dimensions; that a parent's sexual orientation is unrelated to her or his ability to provide a healthy and nurturing family environment; and that marriage bestows substantial psychological, social, and health benefits."[11] Further, research clearly demonstrates that the psychosocial development and well-being of children raised by gay and lesbian couples is comparable to that of their peers raised by heterosexual parents.[12]

---

destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations."); Weinstein, Andrew L., The Crossroads of a Legal Fiction and the Reality of Families, 61 Me. L. Rev. 319, 325 (2009).

[10] See Troxel, 530 U.S. at 68-69.

[11] See, e.g., George Herek, Legal Recognition of Same-Sex Marriages in the United States: A Social Science Perspective, 61 Am. Psychologist, 607, 612 (2006) [hereinafter Herek].

[12] See, e.g., Fiona Tasker, Lesbian Mothers, Gay Fathers, and Their Children: A Review, 26(3) Dev. & Behav. Pediatrics, 224, 240 (2005) [hereinafter Tasker]; Herek, supra, note 11 at 613; Henny M.V. Bos et al., The USA National Longitudinal Lesbian Family Study (NLLFS): Homophobia, Psychological Adjustment, and Protective Factors, 12(4), J. of Lesbian Stud., 455, 456 (2008) [hereinafter Bos NLLFS]; Abbie E. Goldberg, Lesbian and Gay Parents and their Children: Research on the Family Life Cycle. Washington, DC: American Psychological Association (2009) [hereinafter Goldberg]. See also Smith v. Organization of Foster Families for

The children of gay and lesbian parents do, however, experience the harms of homophobia and social stigma sanctioned by the lack of formal recognition of their parents' relationship.[13]

When laws sanction marriage inequality, family relationships are *not protected* for a specific class of families. The concept of "protection" in the context of Prop 8 refers to treating a family equally in public and private life.[14] The American Academy of Pediatrics articulates an "inextricable link between the health and well-being of all children, the support and encouragement of all parents, and the *protection* of strong family relationships."[15] State action denying marriage equality thus harms children.[16]

As state courts have increasingly recognized, marriage bans cause stigmatic harm to children. The Vermont Supreme Court reasoned that, "[i]f anything, the exclusion of same-sex couples from the legal protections incident to marriage exposes *their* children to the precise risks that the State argues the marriage laws are designed to secure against." Baker v. State, 744 A.2d 864, 882 (Vt. 1999). The Massachusetts Supreme Judicial Court held that excluding same-sex couples from marriage "will not make children of opposite-sex marriages more secure, but it does prevent children of same-sex couples from enjoying the immeasurable advantages that flow from

---

Equality and Reform, 431 U.S. 816, 844 (1977) (noting that "[n]o one would seriously dispute that a deeply loving and interdependent relationship between an adult and a child in his or her care may exist even in the absence of blood relationship").

[13] See, e.g., Tasker, supra, note 12 at 237; Palewski, supra, note 13 at 361; Bos NLLFS, supra, note 12, at 456.

[14] See Sheila Foster, Difference and Equality: A Critical Assessment of the Concept of Diversity, 1993 Wis. L. Rev. 105 (1993) (analyzing contrasting definitions of equal protection including equal treatment, which refers to state conduct without discrimination and equal results, which refers to outcomes of government actions).

[15] See, e.g., Palewski, supra, note 3 at 361 (emphasis added).

[16] See, e.g., Henny M.W. Bos & Frank Van Balen Children in Planned Lesbian Families: Stigmatisation, Psychological Adjustment and Protective Factors, 10(3) Culture, Health & Sexuality, 221, 222 (2008); Palewski, supra, note 3 at 357.

the assurance of a stable family structure in which the children will be reared, educated, and socialized." Goodridge v. Dept. of Public Health, 798 N.E.2d 941, 964 (Mass. 2003).

The New Jersey Supreme Court followed suit when it agreed that laws prohibiting marriage equality inflicted social and economic harm on children. Lewis v. Harris, 908 A.2d 196, 203, 216-17 (N.J. 2006). Shortly thereafter, the Connecticut Supreme Court similarly observed that the marriage exclusion "is likely to have an especially deleterious effect on children of same sex couples." Kerrigan, 957 A.2d at 474. Citing a study from the American Academy of Pediatrics, American Psychiatric Association, American Psychological Association, National Association of Social Workers, and Child Welfare League of America, the Iowa Supreme Court found that "[a]lmost every professional group that has studied the issue indicates children are not harmed when raised by same-sex couples, but to the contrary, benefit from them." Varnum v. Brien, 763 N.W.2d 862, 874 (Iowa 2009). Most recently, ten-year old Kasey Nicholson-McFadden testified before the New Jersey State House that "it doesn't bother me to tell kids my parents are gay. It bothers me to say they aren't married. It makes me feel that our family is less than their family."[17]

The American Academy of Pediatrics finds that "children whose parents are of the same gender may experience social marginalization and become the objects of ridicule and harassment by other children and adults who do not understand or who disapprove of gay and lesbian parenting."[18] In attempting to avoid harassment, both gay and lesbian parents and their children report taking steps to avoid prejudiced responses by "closeting" the family at times. "The child, like his or her parents, will constantly have to make decisions about when it is safe to 'come out'

---

[17] See, e.g., Sarah Wildman, Children Take the Stage in Same-Sex Marriage Push, N.Y. Times, Jan. 20, 2010, E1, available at http://www.nytimes.com/2010/01/21/fashion/21kids.html.
[18] See, e.g., Palewski, supra, note 3 at 357.

about his or her family and be aware of the possibility of homophobia in each new social situation encountered."[19] Children of gay and lesbian parents who have been denied the right to marry observe that there is a "constant stress" and "common experience of isolation and invisibility" associated with "being told that your family is not real."[20]

Children can also be traumatized by seeing their gay or lesbian parents stigmatized or by the fear of being a target of homophobia.[21] The campaign to pass Prop 8 subjected the families of same-sex couples to political attacks that questioned the legitimacy of their family bonds. Heightened stigmatization occurs during campaigns to pass measures like Prop 8, and lesbian and gay people experience an increased level of psychological distress when a marriage ban has recently passed in their state.[22] Researchers have found that lesbian and gay people respond to campaigns to restrict civil rights with feelings of shock, fear, anger, sadness, shame and negative feelings about themselves.[23] While research has not been completed on the subject, advocates report that the children of same-sex couples have similar responses, particularly during earlier developmental stages.[24] During and after the campaign to pass Prop 8, the young children of same-sex couples consistently reported fears that their families would be "torn apart" and that their parents would be forced to separate.[25] Children have asked their same-sex parents: "are they going to take me away from you?"[26]

---

[19] See, e.g., Tasker, supra, note 12, at 237.
[20] Telephone Interview by Jasmine Beach-Ferrara with Beth Teper, Executive Director, COLAGE, Jeff DeGroot, Fellow, COLAGE and Monica Canfield-Lenfest, Kids of Trans Program, COLAGE (Jan. 27, 2010) [hereinafter Interview with Teper, DeGroot, Canfield-Lenfest].
[21] See, e.g., Tasker, supra, note 12, at 237.
[22] See Sharon S. Rostosky, et al., Marriage Amendments and Psychological Distress in Lesbian, Gay, and Bisexual (LGB) Adults, J. of Counseling Psych.; 56, 62 (Jan. 2009).
[23] See id. at 57.
[24] Interview with Teper, DeGroot, Canfield-Lenfest, supra, note 20.
[25] Id.
[26] Id.

By giving the false impression that cultural, moral, and/or religious definitions of so-called "traditional" marriage are univocal, the proponents of Prop 8 contribute to stigmatizing the children of same-sex couples.[27] In fact, there is no consensus – religious, cultural, or otherwise – on this subject as evidenced by the growing number of faith traditions that support marriage equality.[28]

Granting marriage equality to same-sex couples does not eliminate stigma, but it can provide a sense of societal belonging, reducing this stigma. The experiences of families headed by same-sex couples living in Massachusetts, where marriage equality has been the law since 2004, offer key insights into this question. Interviewees report that fears of stigma persist but that actual stigma is diminished by the benefits and legitimizing effects of marriage. For example, a gay male couple who moved from California to Massachusetts in 2005 chose to legally marry because of the benefits tied to marriage, particularly for their two children.[29] Legal recognition allows the family

---

[27] Testimony of Charles J. Cooper, "Opening Statement," Perry v. Schwarzenegger, 09-cv-2292-VRW (Jan. 11, 2010), at 55, line 11-15 ("the traditional definition of marriage as the union of a man and a woman [is a] definition that has prevailed in virtually every society in recorded history, since long before the advent of modern religions.").

[28] See, e.g., Mary Frances Schjonberg, Bishops Call for Passage of State 'Marriage Equality' Bill, Episcopal Life Online (Dec. 8, 2009), http://ecusa.anglican.org/81803_117621_ENG_HTM.htm (last visited Feb. 3, 2010); see also United Church of Christ, LGBT Ministries (2010), http://www.ucc.org/lgbt/ (last visited Feb. 3, 2010); Unitarian Universalist Association, Marriage Equality (2010), http://www.uua.org/socialjustice/issues/bgltequality/marriageequality/index.shtml (last visited Feb. 3, 2010); Association of Welcoming and Affirming Baptists, Our Mission (2006), http://www.wabaptists.org/who_we_are/mission.htm (last visited Feb. 3, 2010); More Light Presbyterians, About Us (2010), http://www.mlp.org/index.php?topic=aboutUs (last visited Feb. 3, 2010); Evangelical Lutheran Church of America, ELCA Assembly Opens Ministry to Partnered Gay and Lesbian Lutherans (Aug. 2009), http://www.elca.org/Who-We-Are/Our-Three-Expressions/Churchwide-Organization/Communication-Services/News/Releases.aspx?a=4253 (last visited Feb. 3, 2010); Central Conference of American Rabbis, Resolution Adopted by the CCAR on Gay and Lesbian Marriage (March 1996), http://data.ccarnet.org/cgi-bin/resodisp.pl?file=gl&year=1996 (last visited Feb. 3, 2010).

[29] Telephone Interview by Meghann Burke with Stephen Ribisi Jr., Assistant Professor of Curriculum and Instruction, Univ. of Mass. Boston (Jan. 22, 2010) [hereinafter Ribisi].

to talk "openly" and with "confidence" about their connection to the rest of the community.[30] In Massachusetts, the parents can explain to their six-year old son that his family looks different than other families and "leave it there for now," rather than having to explain why the law treats them differently. A lesbian couple moved from North Carolina to Massachusetts in 2004 due to the opportunity to obtain full parental rights inherent in marriage. They stated that they moved to Massachusetts because parents always seek to keep their children safe.[31] Marriage equality in Massachusetts demonstrates that granting legal recognition to same-sex couples does not lead to instability for children of opposite-sex marriages and significantly benefits children of same-sex couples.[32] Marriage equality reduces institutional discrimination against LGBT families and, thus, promotes healthier child development.

ii. Denying A Child's Parents The Right To Marry Harms the Health and Welfare of the Child

Marriage has incontrovertibly been proven to have beneficial effects on family stability. Same-sex families demonstrate less financial stability, a trend that is traced to factors such as unequal treatment in the workplace and denial of the right to marry.[33] Studies show that poverty

---

[30] Id.; see, e.g., Goldberg, supra, note 12.

[31] Interview by Meghann Burke with Pam DiStefano and Liz Forti, in Brookline, Mass. (Jan. 23, 2010).

[32] In fact, provisional statistics released by the Centers for Disease Control and Prevention show that divorce, which has a direct effect on more children than does marriage equality, has declined since Massachusetts began recognizing same-sex marriage in 2004. In the year Goodridge was decided, the divorce rate in Massachusetts was 2.2 divorces per 1,000 people. See Center for Disease Control and Prevention, Table 3: Births, Marriages, Divorces, and Deaths: Provisional Data for 2004, in 53 National Vital Statistics Reports 21, http://www.cdc.gov/nchs/products/nvsr.htm#vol53. In 2008, the divorce rate dropped to 2.0 divorces per 1,000 people – the lowest in the nation. See Center for Disease Control and Prevention, Table 2b: Births, Marriages, Divorces, and Deaths: Provisional Data for 2008, in 57 National Vital Statistics Reports 19, http://www.cdc.gov/nchs/data/nvsr/nvsr57/nvsr57_19.htm (last visited Feb. 3, 2010).

[33] See, e.g., Randy Albelda et al., Poverty in the Lesbian, Gay, and Bisexual Community, 2009 The Williams Inst. 3.

rates for children of same-sex couples are twice as high as poverty rates for children of married couples.[34] In fact, "[o]ne out of every five children under 18 years old living in a same-sex couple family is poor compared to almost one in ten children in different-sex married couple families."[35] There is good reason to think that access to the institution of marriage will enable same-sex families to achieve greater financial stability, which is in the best interest of children. As observed by the Massachusetts Supreme Court, the "fact remains that marital children reap a measure of family stability and economic security based on their parents' legally privileged status that is largely inaccessible, or not as readily accessible, to nonmarital children." Goodridge, 798 N.E.2d at 956-957. The institution of marriage brings with it not only 1,138 rights but also clear economic benefits, including eligibility for public housing; access to employer-based health insurance; access to spouse benefits; ability to take advantage of the federal Family Medical Leave Act to care for a sick partner or nonbiological/not-jointly-adopted children; ability to obtain joint homeowner and automobile insurance policies and take advantage of family discounts; ability to file joint income tax returns and take advantage of family-related deductions; and children's rights to financial support from and ongoing relationships with both parents should the partnership be dissolved.[36] As a result of denying gay men and lesbians the choice to exercise their right to marry, children in LGBT households are disproportionately exposed to the risk factors of living in poverty.[37]

---

[34] See, e.g., id. at 2.
[35] See id.
[36] See Palewski, supra, note 13, at 352.
[37] Poverty is associated with lower health status in children by both objective measures such as birth outcomes, acute and chronic disease as well as parental report. See Karen Seccombe, Families in Poverty in the 1990s: Trends, Causes, Consequences, and Lessons Learned, 62(4) J. of Marriage & Fam. 1094, 1102 (2000); see also Godwin S. Ashiabi, Keri K. O'Neal, Children's Health Status: Examining the Associations among Income Poverty, Material Hardship, and Parental Factors, 9 Plos One, 7 (2007). Exposure of children to poverty in their early life can lead

Emerging data suggests that government recognition of same-sex relationships is likely to "enhance the well-being of their children because children benefit when their parents are financially secure, physically and psychologically healthy, and not subjected to high levels of stress."[38] A 2009 study on the impact of granting marriage equality in Massachusetts found that:

> nearly half (48 percent) [of respondents] report that being married means that they worry less about legal problems, and 30 percent report that one member of the couple receives health benefits from an employer as a result of being married. Of those with children, nearly all respondents (93 percent) agreed or somewhat agreed that their children are happier and better off as a result of their marriage. Very few respondents with children (5 percent) reported that their children were teased as a result of their marriages, while many reported that their children felt more secure and protected, gained a sense of stability, and saw their families validated by society as a result of marriage.[39]

Additionally, "a stable legal bond with the parent gives a child much needed security and continuity and minimizes the likelihood of conflicting or competing claims by nonparents for the child's custody."[40] The relief sought by Plaintiffs in this case – that of recognizing the right of same-sex couples to marry – would alleviate harm that children of lesbian and gay parents suffer as a result of state-sanctioned discrimination.[41]

### C. GIVING LEGAL RECOGNITION TO SAME-SEX COUPLES RESULTS IN POSITIVE EFFECTS ON CHILDREN.

The Yes on 8 campaign's attempts to link the passage of Prop 8 to changes in California's educational code as a result of recognizing marriage equality was motivated by anti-gay bias. Prop 8 reads: "Only marriage between a man and a woman is valid or recognized in California."

---

to life-long disparities in health regardless of later socio-economic status. See Gary W. Evans et al., Childhood Poverty and Health: Cumulative Risk Exposure and Stress Dysregulation,18(11) Psychol. Science 953, 953 (2007).

[38] See, e.g., Herek, supra, note 11 at 616 (internal citations omitted).

[39] See, e.g., Christopher Ramos et al., The Effects of Marriage Equality in Massachusetts: A Survey Of The Experiences And Impact Of Marriage On Same Sex Couples, 2009 The Williams Inst. 1 [hereinafter Ramos].

[40] See, e.g., Herek, supra, note 11 at 616.

Cal. Const. Art. I, § 7.5. Accordingly, invalidating Prop 8 will leave California's current educational code unchanged. Nevertheless, the Yes on 8 campaign promoted Prop 8 by stating that if Prop 8 were not passed, public schools would be required to teach that marriage by same-sex couples is "okay."[42] First, that argument appeals directly to anti-gay prejudice by openly stating that the purpose of Prop 8 is to rebut any perception that the relationships of same-sex couples are equal to those of heterosexual couples.[43] Second, the Yes on 8 campaign's allegations were false.[44] Furthermore, incorporating discussions of family diversity into school curriculum has a positive effect on children with diverse family structures.[45]

In fact, to the extent that marriage equality has secondary effects inside the classroom, marriage equality has the capacity to alleviate the social stigma on children of same-sex parents.[46] Same-sex couples raise children, with or without legal recognition. Many schools in California and across the country already include discussions of LGBT families.[47] Permitting same-sex couples to marry in California would not directly affect what school districts include in their curricula, but it would enable the children of same-sex couples to participate equally in

---

[41] See id. at 618.
[42] Yes on 8 Advertisement, It's Already Happened (2008), http://www.youtube.com/watch?v=0PgjcgqFYP4&feature=related (last visited Jan. 31, 2010) (falsely stating that "when Massachusetts legalized gay marriage, schools began teaching second graders that boys can marry boys") [hereinafter Advertisement].
[43] Testimony of Sandra B. Stier, Testimony of Proceedings, 09-cv-2292-VRW (Jan. 11, 2010), at 177, lines 5-11 ("I felt like the constant reference to children was manipulative and harmful to me, us as a couple, and our children.").
[44] Advertisement, supra, note 42.
[45] See Ramos, supra, note 39 at 1.
[46] See id. ("Many parents reported that their children felt more secure and protected. Others noted that their children gained a sense of stability. A third common response was that marriage allowed children to see their families as being validated or legitimated by society or the government.").
[47] See, e.g., Parker v. Hurley, 474 F.Supp.2d 261, 263 (D.Mass. 2007) (citing Harper v. Poway Unified School District, 445 F.3d 1166, 1178-79 (9th Cir. 2006) (overruled on other grounds)) ("attempting to teach young, elementary school students to respect gays and lesbians is also

discussions about students' family structures. Steve Ribisi Jr., Assistant Professor of Curriculum and Instruction at University of Massachusetts Boston and gay father, observes that granting marriage equality in Massachusetts, in his view, enables his son to talk about his family without feeling invisible – a sentiment echoed by other interviewees.[48] All gay and lesbian parents interviewed for this brief commented that legal recognition of their parents' marriages allows their children to feel that their family is "real."

Providing the same legal protections, including access to civil marriage, equally to all couples alleviates stigmatic harm to children that occurs as a result of state-sanctioned discrimination. Moreover, when cultural diversity, including family diversity, is respected in schools, children benefit from a learning environment untainted by bias.

## D. CONCLUSION

The *amici curiae* respectfully submit this brief to remind the Court of the harm suffered by children whose parents are denied access to the institution of marriage. Prop 8 harms children of same-sex parents by denying their families the rights and privileges of marriage and by stigmatizing their families. The undersigned, therefore, urge the Court to strike down Prop 8 as unconstitutional.

Respectfully submitted,

Dated: February 3, 2010

_/s/ *Steven E. Mitchel*__

STEVEN E. MITCHEL
Attorney at Law

---

rationally to the legitimate pedagogical purpose of fostering an educational environment in which gays, lesbians, and the children of same-sex parents will be able to learn as well.").

[48] Ribisi, supra, note 29.

## APPENDIX I: SIGNATORIES TO *AMICI* BRIEF OF THE PROGRESSIVE PROJECT AND COLAGE[1]

1. **Chris Adrian, M.D.**, is a pediatrician at the University of California, San Francisco in San Francisco, CA.

2. **Rebecca Allison, M.D., FACP, FACC**, is a cardiologist Phoenix, AZ and is the President of the Gay and Lesbian Medical Association.

3. **Paula Amato, M.D.**, is an Associate Professor in the Department of Obstetrics & Gynecology at Oregon Health & Science University in Portland, OR, and is a member of the Board of Directors of the Gay and Lesbian Medical Association.

4. **Kevin Ard, M.D.**, is a Clinical Fellow in Medicine, Harvard Medical School and a Resident in Internal Medicine at Brigham and Women's Hospital in Boston, MA.

5. **The Very Reverend Dr. Brian Baker,** Episcopal priest, is the Dean of Trinity Cathedral in Sacramento, CA.

6. **Jesse Barnes, M.D.**, is a Resident Physician in Family Medicine at the University of New Mexico in Albuquerque, NM, and a member of the American Association of Family Physicians.

7. **The Reverend Dr. William M. Barter** is a Licensed Clinical Psychologist, a Pastor in Evangelical Lutheran Church in America, and a member of the Maine Psychological Association and Religious Coalition for the Freedom to Marry. He is based in Portland, ME.

8. **Amy B. Basford-Pequet** is an Associate Clinical Social Worker and a Psychiatric Social Worker I at Mills-Peninsula Health Services in Burlingame, CA.

9. **The Reverend Diana Lee Beach, D.Min.**, is a retired Episcopal priest based in Thomaston, ME.

10. **Erik R. Berg** is a certified public school teacher at John D. Philbrick Elementary School in Boston, MA.

11. **Rabbi Howard A. Berman** is the Rabbi at Boston Jewish Spirit in Boston, MA and a member of the Central Conference of American Rabbis.

12. **Rameen Beroukhim, M.D. Ph.D.**, is an Assistant Professor of Medicine at Harvard Medical School and a practicing Physician in the Division of Medical Oncology, Division of Cancer Biology, at Dana-Farber Cancer Institute in Boston, MA.

---

[1] Signatories have endorsed the TPP/COLAGE amici brief in their individual capacities and their institutional affiliations are for identification purposes only.

13. **Emma Bonacich, LCSW**, is a Psychiatric Social Worker at Alameda County Medical Center in San Leandro, CA.

14. **Abigail Bond, LCSW**, is a Licensed Clinical Social Worker at DCS Mental Health, Inc. in Medford, MA.

15. **Hal Bornstein, M.D.**, is a Child Psychiatrist in Oakland, CA.

16. **The Reverend Dr. John A. Buehrens** is the Minister of First Parish in Needham, Past-President of the Unitarian Universalist Association, and National Co-Chair of Freedom to Marry. He is based in Needham, MA.

17. **Stephanie Bouis, MSW, LCSW**, is a Social Worker in Durham, NC, and a member of the National Association of Social Workers.

18. **The Reverend Jerene Broadway, M. Div.**, is an ordained Baptist minister in Black Mountain, NC, and a member of the Alliance of Baptists and the Baptist Peace Fellowship of North America.

19. **Professor Margaret Burnham** is a Professor of Law at Northeastern University School of Law in Boston, MA.

20. **Gregory Lewis Bynum, Ph.D.**, is an Assistant Professor in the Department of Educational Studies at the School of Education, State University of New York, New Paltz in New Paltz, NY.

21. **Silaja Cheruvu, M.D.**, is a Resident Physician at the University of New Mexico in Albuquerque, NM.

22. **The Reverend Karen Christensen** is ordained in the United Church of Christ and is Pastor at First Congregational Church of Buxton in Bar Mills, ME.

23. **The Reverend Emily Click, Ph.D.**, is ordained in the United Church of Christ and is the Assistant Dean for Ministry Studies at Harvard Divinity School in Cambridge, MA.

24. **Jessie R. Cohen, LICSW**, is an Intensive Outpatient Clinician at Kaiser Permanente Child and Family Service Department in Oakland, CA; and a member of the National Association of Social Workers (CA Chapter) and of the Kaiser Oakland Transgender Surgery Review Board.

25. **Sherry M. Cohen, MEd, MSW**, is a Licensed Independent Clinical Social Worker in Newton, MA, and a member of National Association of Social Workers.

26. **Tom Conry** is a certified public school teacher at Madison High School in Portland, OR.

27. **The Reverend Janet M. Cooper Nelson** is the Chaplain of the University/Director of Office of the Chaplains & Religious Life at Brown University in Providence, RI.

**28.** **Professor Clare Dalton** is a Distinguished Professor of Law Emerita at Northeastern University School of Law in Boston, MA.

**29.** **Kathryn Davis, LCSW**, is a Psychiatric Social Worker at the Department of Public Health, City and County of San Francisco in San Francisco, CA.

**30.** **The Reverend Deborah Davis-Johnson** is an ordained American Baptist minister and is Pastor at Immanuel Baptist Church in Portland, ME.

**31.** **Pracha Eamranond, M.D.**, is an Attending Physician at Brigham and Women's Hospital in Boston, MA.

**32.** **Elizabeth Eaman, M.D.**, is a Physician in Tacoma, WA, and a member of the Executive Board of the Gay and Lesbian Medical Association.

**33.** **The Reverend Richard Edens** is an ordained minister in the United Church of Christ and Co-Senior Pastor at United Church of Chapel Hill in Chapel Hill, NC.

**34.** **The Reverend Dr. Jill Edens** is an ordained minister in the United Church of Christ and Co-Senior Pastor at United Church of Chapel Hill in Chapel Hill, NC.

**35.** **Claire Farel, M.D., MPH**, is a Clinical and Research Fellow in the Division of Infectious Diseases at Massachusetts General Hospital and Brigham and Women's Hospital in Boston, MA.

**36.** **Andrew Finstuen, Ph.D.**, is the Director of the International Honors Program and a Visiting Assistant Professor in the Department of Religion at Pacific Lutheran University in Tacoma, WA.

**37.** **Lisa R. Fortuna, M.D., MPH**, is an Assistant Professor of Psychiatry and the Director of Child and Adolescent Multicultural Health Research at the University of Massachusetts Medical School in Worcester, MA. She is also a seminarian at Episcopal Divinity School.

**38.** **The Reverend Anne C. Fowler**, an Episcopal Priest, is Rector at St John's Episcopal Church in Jamaica Plain, MA, and President of Massachusetts Religious Coalition for the Freedom to Marry.

**39.** **Jonathan Galanis** is a certified public school teacher at The Springfield Renaissance School in Springfield, MA.

**40.** **The Reverend Miriam C. Gelfer**, an Episcopal priest, is the Rector of Grace Episcopal Church and the Dean of the Charles River Deanery in Newton, MA.

**41. Cheryl A. Giles, Psy.D.**, is a Licensed Clinical Psychologist and the Frances Greenwood Peabody Professor of the Practice in Pastoral Care and Counseling at Harvard Divinity School in Cambridge, MA.

**42. Abbie E. Goldberg, Ph.D.**, is an Assistant Professor of Psychology at Clark University in Worcester, MA, and a member of both the National Council on Family Relations and the American Psychological Association.

**43. Pastor Michael J. Gray**, ordained in the United Methodist Church, is Pastor at Old Orchard Beach United Methodist Church in Old Orchard Beach, ME, and a member of the Reconciling Ministries Network and the Center for Progressive Christianity.

**44. John A.R. Grimaldi, M.D.**, is a lecturer at Harvard Medical School and an Associate Attending Psychiatrist in the Department of Psychiatry at Brigham and Women's Hospital in Boston, MA.

**45. Ole-Petter R. Hamnvik, M.D.**, is a Clinical Fellow at Harvard Medical School and a Resident in Internal Medicine at Brigham and Women's Hospital in Boston, MA.

**46. Lisa K. Happ, Ph.D.**, is a Licensed Psychologist in Washington, D.C., and a member of the American Psychological Association.

**47. David Harrison, M.D.**, is a Board Certified Internist and Pediatrician at Massachusetts General Hospital in Boston, MA.

**48. Susan M. Harvey** is a certified public school teacher and an advisor to the Gay Straight Alliance at Littleton High School in Littleton, MA.

**49. The Reverend Dr. Jodi Cohen Hayashida** is a minister at the First Universalist Church, Unitarian Universalist in Auburn, ME, and a member of the Unitarian Universalist Minister's Association and the Religious Coalition for the Freedom to Marry.

**50. The Reverend Mary Higgins** is the District Executive of Northern New England District of the Unitarian Universalist Association. She is based in Concord, NH.

**51. The Reverend Joe Hoffman, M.Div.**, is the Senior Minister at First Congregational United Church of Christ in Asheville, NC.

**52. Lynn Hunt, M.D.**, is a Clinical Professor in the Department of Pediatrics at the University of California, Irvine; a Fellow in the American Academy of Pediatrics; a member of the Board of Directors of the Gay and Lesbian Medical Association; and a member of the Board of Directors of the American Academy of Pediatrics, District IX (CA). She is based in Santa Ana, CA.

**53. Barry Izenstein, M.D., FACP**, is an Endocrinologist and Primary Care Physician at Endocrine Associates of Western Massachusetts in Springfield, MA.

**54.** **Vanessa Jacobsohn, M.D.**, is a Family Physician at First Choice Community Healthcare in Albuquerque, NM.

**55.** **The Reverend Dr. Mykel Johnson** is Minister at the Allen Avenue Unitarian Universalist Church in Portland, ME; and a member of the Executive Committee of the Religious Coalition Against Discrimination, and a Co-Convener of the Religious Coalition for the Freedom to Marry in Maine.

**56.** **Rabbi Hillel Katzir** is the Spiritual leader of Temple Shalom Synagogue; an Adjunct Professor at Bangor Theological Seminary; Chair of the Advocacy Committee, Maine Holocaust and Human Rights Center; a member of the Board of Advocates for Children in Lewiston, Maine; and a member of the Religious Coalition for Reproductive Rights and Rabbis for Human Rights. From 1998 to 2001, he worked as an attorney for Children's Protective Services of New Mexico. He is currently based in Auburn, ME.

**57.** **Bessa Kautz, NP**, is a Nurse Practitioner in San Rafael, CA.

**58.** **R. Melvin Keiser, Ph.D.**, is a Professor Emeritus of Religious Studies at Guilford College. He is based in Black Mountain, NC.

**59.** **Elizabeth A. Kelley** is a certified public school teacher at Littleton High School in Littleton, MA.

**60.** **Karen L. King, Ph.D.**, is the Hollis Professor of Divinity at Harvard Divinity School in Cambridge, MA.

**61.** **The Reverend Dr. Jennifer Wright Knust, Ph.D., MPhil., M.Div.**, is ordained by the American Baptist Churches, USA and is an Assistant Professor of New Testament and Christian Origins at Boston University School of Theology in Boston, MA.

**62.** **Aurora Kushner, M.S.**, is a certified public school teacher at The Springfield Renaissance School in Springfield, MA.

**63.** **Tara Lagu, M.D., MPH,** is an Assistant Professor at Tufts University School of Medicine and practices at the Center for Quality and Safety Research at Baystate Medical Center in Springfield, MA.

**64.** **Kara Langley, MSW, LCSW**, is a School Social Worker at The Education Cooperative in Walpole, MA.

**65.** **Katherine P. Lemon, M.D., Ph.D.**, is a Pediatric Infectious Diseases Specialist in Needham, MA.

**66.** **Peter Lindenauer, M.D., MSc.**, is an Associate Professor of Medicine at Tufts University School of Medicine in Boston, MA.

**67. Laurie Livingston, Ed.D**, is a Licensed Psychologist; an Instructor in Psychology at Harvard Medical School; and a member of the Massachusetts Psychological Association Member, the American Psychological Association and its Division 44 for the Study of Lesbian, Gay, Bisexual and Transgender Issues. She is based in Brookline, MA.

**68. The Reverend Douglas S. Long** is the Senior Minister of Umstead Park United Church of Christ in Raleigh, NC.

**69. The Reverend Jim Lowder, M.Div., M.S.W.**, is an ordained Baptist minister in Black Mountain, NC, and a member of the Alliance of Baptists and the Baptist Peace Fellowship of North America.

**70. George D. Lundberg, M.D.**, is the President and Board Chair of The Lundberg Institute, a Consulting Professor at Stanford University, a member of the Institute of Medicine of the National Academy of Sciences, and the Former Editor in Chief of the Journal of the American Medical Association. He is based in Los Gatos, CA.

**71. The Reverend Alan B. MacKillop** is a retired Episcopal priest and an officer of the Manchester, NH, chapter of the National Association for the Advancement of Colored People.

**72. The Reverend David W. Malone** is an honorably retired ordained minister in the Presbyterian Church USA and is based in Boston, MA.

**73. The Reverend Kerry A. Maloney** is the Director of Religious and Spiritual Life at Harvard Divinity School in Cambridge, MA

**74. Kim G. Marriott, Ph.D.**, is a Licensed Clinical Psychologist in Portland, OR.

**75. Rabbi Emily Mathis** is a Rabbi at Temple Beth Shalom in Peabody, MA.

**76. Jennifer Mathews, M.D.**, is a Family Physician at the Family Medical Center in Hendersonville, NC.

**77. The Reverend Dr. John B. McCall** is an ordained minister in the United Church of Christ and is based in Maine.

**78. Robert McDonald, Ph.D.**, is a Licensed Psychologist in Asheville, NC, and a member of the American Psychological Association, the North Carolina Psychological Association, and the North Carolina Psychology and Law Committee.

**79. Dan McKanan, Ph.D.**, is the Emerson Senior Lecturer at Harvard Divinity School in Cambridge, MA.

**80. Graham McMahon, M.D., MMSc, MRCPI**, is an Assistant Professor of Medicine at Harvard Medical School; an Editor for Medical Education at the New England Journal of Medicine; and a Physician in the Division of Endocrinology, Diabetes and Hypertension at Brigham and Women's Hospital in Boston, MA.

**81. Margot Meitner, MSW, LICSW**, is a Psychotherapist in Brookline, MA, a rabbinical student at Hebrew College, and a member of the National Association for Social Workers.

**82. The Reverend Jeffrey W. Mello, M.Div., M.S.W.**, an Episcopal priest, is the Rector of St. Paul's Church in Brookline, MA.

**83. Colleen Monaghan, M.D.**, is an Instructor at Harvard Medical School and a Pediatrician and Internist at Martha Eliot Health Center in Jamaica Plain, MA.

**84. Hector R. Moncada, LCSW**, is a Psychiatric Social Worker at San Mateo County Behavioral Health and Recovery Services in San Mateo, CA.

**85. Diane L. Moore, Ph.D.**, is a Professor of the Practice, Religious Studies and Education and the Director of the Program in Religious Studies and Education at Harvard Divinity School in Cambridge, MA.

**86. Anne L. Murray, M.D.**, is an Attending Physician at Central Health Center, Providence Community Health Centers and a Clinical Instructor at Women and Infants Hospital at Brown University in Providence, RI.

**87. The Reverend Matthew Myer Boulton, Ph.D.**, is ordained by the Christian Church-Disciples of Christ and is an Associate Professor of Ministry Studies at Harvard Divinity School in Cambridge, MA.

**88. Ross Neisuler, M.D.**, is a retired physician in Newton, MA.

**89. Wendy G. Newton, Psy.D.**, is a psychologist in Portland, OR.

**90. Henry Ng, M.D. FAAP**, is an Internist and Pediatrician in Cleveland, OH; Board Secretary of the Gay Lesbian Medical Association; a member of the American College of Physicians; and a Fellow of the American Academy of Pediatrics.

**91. Noel Nickle, MSW, LICSW**, is a Mitigation Specialist in Asheville, NC, and member of the National Association of Social Workers.

**92. Patricia M. Nolan** has served as an elected member of Cambridge School Committee in Cambridge, MA, since 2004.

**93. The Reverend Corey F. O'Brien** is the Associate Minister at North Prospect Union United Church of Christ in Medford, MA.

94. **The Reverend Kelly A. O'Connell** is the Rector, St. Mark's Episcopal Church in Toledo, OH.

95. **Kate O'Hanlan, M.D., FACOG, FACS, SGO**, is a Physician at the Laparoscopic Institute for Gynecologic Oncology in Portola Valley, CA.

96. **Kate Oliver, MSW, LCSW-C**, is a Licensed Clinical Social Worker at A Healing Place in Columbia, MD, and is a member of the Committee on Sexual Minority Issues for the National Association of Social Workers, M.D. Chapter.

97. **Sarae Pacetta, M.A. in Early Childhood Education**, is an Adjunct Professor at Boston University in Boston, MA, and a member of the National Association for the Education of Young Children.

98. **The Reverend Terry R Pannell**, an Episcopal priest, is Rector at The Church of St Mary of the Harbor in Provincetown, MA.

99. **The Reverend Dr. Stephanie Paulsell** is the Amory Houghton Professor of the Practice of Ministry Studies at Harvard Divinity School in Cambridge, MA.

100. **Michelle V. Porche, Ed.D.**, is a Senior Research Scientist at the Wellesley Centers for Women at Wellesley College in Wellesley, MA.

101. **Janet B. Reigel, Psy.D.**, is a Licensed Psychologist in Portland, OR.

102. **The Reverend Marilyn Robb** is ordained by the United Methodist Church and is a member of the Reconciling Retired Clergy and the Ecumenical Clergy of Maine in Portland, ME.

103. **The Reverend Annie Rousseau, M.Div.**, is an ordained minister in the United Church of Christ in Jamaica Plain, MA.

104. **Kathy Rowell** is the Assistant General Counsel of the Tennessee Department of Children's Services and a Board Certified Child Welfare Law Specialist in the state of Tennessee. She is based in Chattanooga, TN.

105. **The Reverend Barbara S. Sagat** is a retired minister ordained in the Metropolitan Community Churches in Winslow, ME.

106. **Stacey Schamber, LICSW**, is a Social Worker in Boston, MA.

107. **Gordon Schiff, M.D.**, is an Associate Professor of Medicine at Harvard Medical School and the Associate Director of Center for Patient Safety Research and Practice at Brigham and Women's Hospital in Boston, MA.

108. **Perry Sheffield, M.D.**, is a Pediatrician at Mount Sinai School of Medicine in New York, NY.

**109. Travis Sherer, PA-C**, is the Director at Large of the Gay and Lesbian Medical Association and practices at Montefiore Medical Center in Bronx, NY.

**110. Lydia C. Siegel, M.D., MPH**, is a Physician in Boston, MA, and a member of the Member, Massachusetts Council, American College of Physicians.

**111. The Reverend Chad Smith**, ordained in the Christian Church-Disciples of Christ, is a certified public school teacher in Boston, MA.

**112. Cathi Sitzman, Ph.D.**, is a Licensed Psychologist in Washington, D.C., and a member of the American Psychological Association.

**113. Dina L. Solomon, LICSW**, is a Licensed Independent Social Worker in Bedford, NH.

**114. Laura Stamas** is a certified public school teacher at Four Rivers Public Charter School in Greenfield, MA.

**115. The Reverend Sharon Stover**, ordained in the Metropolitan Community Churches, is a minister at Living Water Spiritual Center in Winslow, ME.

**116. The Very Reverend John P. Streit, Jr.**, is an ordained Episcopal priest and Dean at the Cathedral Church of St. Paul in Boston, MA.

**117. Karen Sweet** is a certified public school teacher at Newton South High School in Newton, MA.

**118. MaryAnn Watjen, MSW, LCSW**, is a Clinical Social Worker in Asheville, NC.

**119. Scott Weber, EdD, Ph.D-c, MSN, RN**, is an Assistant Professor and Health and Community Systems Coordinator at the University of Pittsburgh School of Nursing in Pittsburgh, PA; and serves on the Board of Directors of the Gay and Lesbian Medical Association.

**120. The Reverend Pamela L. Werntz**, an Episcopal priest, is the Rector of Emmanuel Church in Boston, MA.

**121. Alexis Williams, M.D.**, is a Family Physician in San Francisco, CA, and member of the American Association of Family Physicians.

**122. Erica Wilson, M.D.**, is an Instructor in Medicine at Harvard Medical School and a Palliative Care Physician at Massachusetts General Hospital in Boston, MA.

**123. Douglas E. Wingeier, Ph.D.**, is an Emeritus Professor of Practical Theology at Garrett-Evangelical Theological Seminary in Evanston, IL.

**124. Anne-Marie Witzburg** is a certified public school teacher and an advisor to the

Gay-Straight Alliance at Westwood High School. She is also a member of the Westwood Human Rights Committee in Westwood, MA.

**125. Elizabeth R Wolf, M.D.**, is a Pediatrician in Sanibel, FL.

**126. The Reverend J. Mark Worth** is a Unitarian Universalist minister in Castine, ME.

**127. Lisa Ziegler-Chamblee** is a certified public school teacher at 7/8 Learning Center, Lincoln School in Brookline, MA.