W. Ruel Walker (SBN 103892)
Kelly Kay, *Of Counsel*  (SBN 107691)
THE LAW OFFICES OF RUEL WALKER
6116 Taft Ave.
Oakland, CA 94618
Telephone:  (510) 653-3099
Facsimile:  (510) 653-3070
E-mail:  ruelwalker@gmail.com

Attorneys for *Amici Curiae*
THE AMERICAN ASSOCIATION FOR MARRIAGE &
FAMILY THERAPY, CALIFORNIA DIVISION;
THE CALIFORNIA ASSOCIATION OF MARRIAGE AND
FAMILY THERAPISTS ("CAMFT");
CAMFT-EAST BAY CHAPTER; CAMFT-LOS ANGELES CHAPTER;
CAMFT-MARIN COUNTY CHAPTER; CAMFT-SAN FRANCISCO CHAPTER;
THE AMERICAN FAMILY THERAPY ACADEMY;
GAYLESTA, INC; THE LESBIAN AND GAY PSYCHOTHERAPY
ASSOCIATION OF SOUTHERN CALIFORNIA, INC.;
THE WOMEN'S THERAPY CENTER; CALIFORNIA THERAPISTS
FOR MARRIAGE EQUALITY; and
THE GOTTMAN INSTITUTE

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN M. PERRY, *et al.*, | Civil Case No.: 09-2292-VRW |
| Plaintiffs, and | |
| | **MOTION FOR LEAVE TO FILE BRIEF *AMICUS CURIAE* OF THE AMERICAN ASSOCIATION FOR MARRIAGE & FAMILY THERAPY, CALIFORNIA DIVISION;** |
| CITY AND COUNTY OF SAN FRANCISCO, | **THE CALIFORNIA ASSOCIATION OF MARRIAGE AND FAMILY THERAPISTS ("CAMFT");** |
| Plaintiff-Intervenor, | **CAMFT-EAST BAY; CAMFT-LOS ANGELES; CAMFT-MARIN COUNTY; CAMFT-SAN FRANCISCO; THE AMERICAN** |
| v. | **FAMILY THERAPY ACADEMY; GAYLESTA, INC.; THE LESBIAN** |
| ARNOLD SCHWARZENEGGER, *et al.*, | **AND GAY PSYCHOTHERAPY ASSOCIATION OF SOUTHERN** |
| Defendants, and | **CALIFORNIA, INC.; THE WOMEN'S THERAPY CENTER; CALIFORNIA THERAPISTS FOR MARRIAGE** |
| PROPOSITION 8 OFFICIAL PROPONENTS DENNIS HOLLINGSWORTH, *et al.*, | **EQUALITY; and THE GOTTMAN INSTITUTE, IN SUPPORT OF THE** |
| Defendant-Intervenors. | **UNCONSTITUTIONALITY OF PROPOSITION 8** |

MOTION FOR LEAVE TO FILE BRIEF AMICUS CURIAE
OF AAMFT-CALIFORNIA, CAMFT, et al.
Civil Case No.: 09-2292-VRW

SF: 131182-1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT the American Association for Marriage & Family Therapy, California Division; the California Association of Marriage and Family Therapists ("CAMFT"); CAMFT-East Bay Chapter; CAMFT-Los Angeles Chapter; CAMFT-Marin County Chapter; CAMFT-San Francisco Chapter; Gaylesta, Inc. (the Gay, Lesbian, Bisexual, Transgender Psychotherapist Association of the San Francisco Bay Area); the American Family Therapy Academy; the Lesbian and Gay Psychotherapy Association of Southern California, Inc. ("LAGPA"); the Women's Therapy Center; California Therapists for Marriage Equality; and The Gottman Institute hereby move this Court for leave to file a brief as *amici curiae* in the above-captioned case in support of Plaintiffs' case that California's Proposition 8 is unconstitutional under the Constitution of the United States.  A copy of the proposed brief is appended as an exhibit to this motion.

## I.      STANDARD FOR MOTION FOR LEAVE TO FILE BRIEF AS *AMICI CURIAE*

"District courts frequently welcome *amicus* briefs from non-parties concerning legal issues that have potential ramifications beyond the parties directly involved or if the amicus has unique information or perspective that can help the court, beyond the help that the lawyers for the parties are able to provide."  *Sonoma Falls Devs., LLC v. Nev. Gold & Casinos, Inc.*, 272 F. Supp. 2d 919, 925 (N.D. Cal. 2003) (quoting *Cobell v Norton*, 246 F. Supp. 2d 59, 62 (D.D.C. 2003)).  Those standards are met here.  In this case, the Court has specifically indicated a willingness to consider *amicus* briefs from non-parties who can offer a specialized perspective on the issues now before it.  Trial Tr. at 2946-47.

## II.    STATEMENT OF IDENTITY AND INTEREST OF *AMICI CURIAE*

The *amici* organizations are professional associations for psychotherapists and mental health professionals.  The large majority of their collective membership consists of licensed marriage and family therapists and other mental health professionals who work closely with couples, families and children in mental health and well-being issues.  They therefore have among them extensive experience with the two subjects addressed in their brief: (a) whether Proposition 8 can be sustained on the ground that it promotes the state's interest in the welfare of children, and (b) whether same-sex couples and their families experience stigma from being deprived of an equal right to marry.

**The American Association for Marriage and Family Therapy**, **California Division**, ("AAMFT-California Division") is chartered by the national association, AAMFT, to provide leadership for members who live in the state of California.  AAMFT is one of the leading professional associations in the world for therapists who practice in the areas of marriage and family therapy.  Since its founding in 1942, AAMFT has been involved with the problems, needs and changing patterns of couples and family relationships.  The association leads the way to increasing understanding, research and education in the field of marriage and family therapy, and ensuring that the public's needs are met by well-trained practitioners. AAMFT, California Division, has been incorporated since 1986, and has approximately 3,600 members.

**The California Association of Marriage and Family Therapists** ("CAMFT") is the leading professional organization in the state for marriage and family therapists.  CAMFT's membership includes approximately 30,000 licensed and aspiring marriage and family therapists and other mental health professionals.  CAMFT is dedicated to advancing the profession as an art and a science, to advocating for the professionals within the profession, to maintaining high

standards of professional ethics, to upholding the qualifications for the profession, and to expanding the recognition and awareness of the profession.  It has been a part of the mental health community in California since 1964 and has nearly thirty chartered chapters throughout the state, including fellow *amici* **CAMFT-East Bay Chapter** (more than 800 members), **CAMFT-Los Angeles Chapter** (more than 250 members), **CAMFT-Marin County Chapter** (more than 350 members), and **CAMFT-San Francisco Chapter** (more than 350 members).

The **American Family Therapy Academy** was founded in 1977 and has a membership of some 550 leading family therapy teachers, clinicians, program directors, policy makers, researchers, and social scientists.  As a non-profit organization, it is dedicated to clinical excellence and advancing systemic thinking and practices for families in their social context.  Its membership comes from throughout the United States and abroad and gathers together in a yearly conference to discuss innovations in theory, practice, and research while continuing  to maintain its commitment to integrating issues of social justice into all aspects of the field of family therapy.

**GAYLESTA, Inc.** (the Gay, Lesbian, Bisexual, Transgender Psychotherapists Association of the Greater San Francisco Bay Area) is an affiliation of approximately 240 therapists, founded in 1987 to provide mental health services including specialized therapist referrals, education, and consultation.  With the broad range of specializations among its members, GAYLESTA serves as a unique resource for the Lesbian, Gay, Bisexual, Transgender, Queer ("LGBTQ") communities, other service providers, and the community at large.  GAYLESTA works in coalition with other LGBTQ and mental health organizations to challenge homophobia, promote the acceptance of alternative families, and gain equal social and legal recognition of LGBTQ intimate relationships.

The **Lesbian and Gay Psychotherapy Association of Southern California, Inc.** ("LAGPA") was founded in 1992 as an organization of mental health professionals interested in the psychological well being of gays, lesbians, bisexuals, and transgender individuals. LAGPA works to strengthen professional knowledge and competence, provides educational community outreach, and promotes a positive identity for members of the gay, lesbian, bisexual and transgender community. LAGPA has 140 active members, including professionals and students, and a database of approximately 800 therapists.

The **Women's Therapy Center** ("WTC") was founded in El Cerrito in 1978 as a nonprofit organization to provide affordable long-term psychotherapy to women, adolescent girls, and couples. WTC also provides in-depth professional training each year for approximately 24 students and interns working toward licensure, as well as continuing education and professional support for its more than licensed members, and an advanced training program in couple's therapy. At WTC, 41 licensed therapists serve voluntarily as faculty and supervisors.

**California Therapists for Marriage Equality** ("CTME") formed in 2009 as a group of licensed marriage and family therapists, psychologists, licensed clinical social workers and other mental health professionals advocating for marriage and parenting equality. It has over 200 members who identify across the spectrum of sexual orientation and gender expression and identity. CTME works closely with regional and statewide professional organizations advocating for therapeutic education and training for mental health practitioners working with same-gender couples and their families. It was through the activities of California Therapists for Marriage Equality that the idea for this *amicus* brief began.

**The Gottman Institute** in Seattle, Washington, was co-founded by Drs. John and Julie Schwartz Gottman to serve couples directly and to provide training to mental health

professionals in applying leading-edge, long-term scientific research for the purpose of helping

couples and preventing divorce. Clinical Director Julie Schwartz Gottman, Ph.D., was recently

honored as the Washington State Psychologist of the Year. Her research on children raised by

lesbian parents has been relied upon frequently by organizations and courts seeking to make

determinations about gay and lesbian adoption and same-sex marriage. John Gottman, Ph.D.,

widely known for his work on marital stability and divorce prediction, is the author of 190

published academic articles and author or co-author of 40 books, and has earned numerous

awards, including four National Institute of Mental Health Research Scientist Awards and

the American Association for Marriage and Family Therapy Distinguished Research Scientist

Award. The Gottmans have intensively researched what predicts divorce or marital success,

have provided workshops to thousands of heterosexual and same-sex couples, and are

considered a leading clinical and research influence for marital therapists throughout the world.

### III.   *AMICI CURIAE*'S EXPERTISE WILL BENEFIT THIS COURT

On the basis of their collective clinical experience working with couples, families, and

children, *amici* meet the broad discretionary standard for filing their brief as friends of the

Court. At trial, evidence was presented concerning a) whether same-sex couples are less

effective parents than heterosexual couples, and b) stigmatization and the psychological and

social repercussions borne by gay men and women as a consequence of being denied equal

rights to marry. Given their considerable expertise with these issues, a*mici* have "unique

information [and] perspective that can help the [C]ourt," by adding broad clinical experience

and scientific context to this record evidence. *Sonoma Falls*, *supra*, 272 F. Supp. 2d at 925.

Moreover, given "the potential ramifications beyond the parties directly involved," in that this

case will determine the rights of an entire population of gay men and women, it is especially

important that the Court consider the views of third-party organizations that are dedicated to the clinical and scientific understanding of the social and psychological issues now before it.  *Id.*

Accordingly, *amici* respectfully offer their analysis of these issues to assist the Court in its deliberations.

### IV.    CONCLUSION

For the foregoing reasons, the American Association for Marriage and Family Therapy, California Division; the California Association of Marriage and Family Therapists; CAMFT-East Bay Chapter; CAMFT-Los Angeles Chapter; CAMFT-Marin County; CAMFT-San Francisco Chapter; the American Family Therapy Academy; Gaylesta, Inc.; Lesbian and Gay Psychotherapy Association of Southern California, Inc.; the Women's Therapy Center; California Therapists for Marriage Equality; and The Gottman Institute respectfully request this Court's leave to submit the attached brief as *amici curiae*.

/S/

By: _____

DATED:  February 3, 2010

Kelly Kay
  *of Counsel*
  THE LAW OFFICES OF RUEL WALKER

Attorney for *Amici Curiae*
THE AMERICAN ASSOCIATION FOR MARRIAGE & FAMILY THERAPY, CALIFORNIA DIVISION;
THE CALIFORNIA ASSOCIATION OF MARRIAGE AND FAMILY THERAPISTS ("CAMFT"); CAMFT-EAST BAY; CAMFT-LOS ANGELES; CAMFT-MARIN COUNTY; CAMFT-SAN FRANCISCO; THE AMERICAN FAMILY THERAPY ACADEMY; GAYLESTA, INC.; THE LESBIAN AND GAY PSYCHOTHERAPY ASSOCIATION OF SOUTHERN CALIFORNIA, INC.; THE WOMEN'S THERAPY CENTER; CALIFORNIA THERAPISTS FOR MARRIAGE EQUALITY; and
THE GOTTMAN INSTITUTE

MOTION FOR LEAVE TO FILE BRIEF AMICUS CURIAE
OF AAMFT-CALIFORNIA, CAMFT, et al.
Civil Case No.: 09-2292-VRW

6

SF: 131182-1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SIGNATURE ATTESTATION

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/S/) within this efiled document.


Kelly Kay
*of Counsel*
THE LAW OFFICES OF RUEL WALKER

MOTION FOR LEAVE TO FILE BRIEF AMICUS CURIAE
OF AAMFT-CALIFORNIA, CAMFT, et al.
Civil Case No.: 09-2292-VRW

7

SF: 131182-1

W. Ruel Walker (SBN 103892)
Kelly Kay, *Of Counsel*  (SBN 107691)
THE LAW OFFICES OF RUEL WALKER
6116 Taft Ave.
Oakland, CA 94618
Telephone:  (510) 653-3099
Facsimile:  (510) 653-3070
E-mail:  ruelwalker@gmail.com

Attorneys for *Amici Curiae*
THE AMERICAN ASSOCIATION FOR MARRIAGE &
FAMILY THERAPY, CALIFORNIA DIVISION;
THE CALIFORNIA ASSOCIATION OF MARRIAGE AND
FAMILY THERAPISTS ("CAMFT");
CAMFT-EAST BAY CHAPTER; CAMFT-LOS ANGELES CHAPTER;
CAMFT-MARIN COUNTY CHAPTER; CAMFT-SAN FRANCISCO CHAPTER;
THE AMERICAN FAMILY THERAPY ACADEMY;
GAYLESTA, INC; THE LESBIAN AND GAY PSYCHOTHERAPY
ASSOCIATION OF SOUTHERN CALIFORNIA, INC.;
THE WOMEN'S THERAPY CENTER; CALIFORNIA THERAPISTS
FOR MARRIAGE EQUALITY; and
THE GOTTMAN INSTITUTE

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN M. PERRY, *et al.*, | Civil Case No.: 09-2292-VRW |
| Plaintiffs, and | **BRIEF *AMICUS CURIAE* OF THE AMERICAN ASSOCIATION FOR MARRIAGE & FAMILY THERAPY, CALIFORNIA DIVISION*;* THE CALIFORNIA ASSOCIATION OF MARRIAGE AND FAMILY THERAPISTS ("CAMFT"); CAMFT-EAST BAY; CAMFT-LOS ANGELES; CAMFT-MARIN COUNTY; CAMFT-SAN FRANCISCO; THE AMERICAN FAMILY THERAPY ACADEMY; GAYLESTA, INC.; THE LESBIAN AND GAY PSYCHOTHERAPY ASSOCIATION OF SOUTHERN CALIFORNIA, INC.; THE WOMEN'S THERAPY CENTER; CALIFORNIA THERAPISTS FOR MARRIAGE EQUALITY; and THE GOTTMAN INSTITUTE, IN SUPPORT OF THE UNCONSTITUTIONALITY OF PROPOSITION 8** |
| CITY AND COUNTY OF SAN FRANCISCO, | |
| Plaintiff-Intervenor, | |
| v. | |
| ARNOLD SCHWARZENEGGER, *et al.*, | |
| Defendants, and | |
| PROPOSITION 8 OFFICIAL PROPONENTS DENNIS HOLLINGSWORTH, *et al.*, | |
| Defendant-Intervenors. | |

1
2
3
4

# TABLE OF CONTENTS

INTERESTS OF *AMICI CURIAE*…………………………………………………………..3

INTRODUCTION …………………………………………………………………………….4

DISCUSSION

    I. BOTH *AMICI*'S COLLECTIVE CLINICAL EXPERIENCE AND
    THE RELEVANT SCIENTIFIC RESEARCH SUPPORT THE
    CONCLUSION THAT PROPOSITION 8 HAS NO RATIONAL
    BASIS IN THE STATE'S INTEREST IN PROTECTING
    THE WELFARE OF CHILDREN …………………………………………………….5

        A. Proposition 8 Violates the Fourteenth Amendment
        Unless It Is Rationally Related To A Legitimate State
        Interest, At The Least……………………………………………………………….5

        B. There Is No Evidence Or Logic That Supports A
        Conclusion That Denying Marriage To Same-Sex Couples
        Would Encourage Heterosexual Couples To
        Marry And  Procreate……………………………………………………………….7

        C. The Purported "Legitimate State Interest" Based on
        the Welfare of Children Actually Harms The Welfare Of
        Children Of Same-Sex Parents…………………………………………...…8

        D. No Empirical Scientific Evidence Supports The Conclusion That
        Heterosexual Couples Are Better Parents Than Same-Sex Couples…..9

    II. *AMICI* AGREE THAT SAME-SEX COUPLES AND THEIR CHILDREN
    SUFFER STIGMA FROM BEING DEPRIVED OF AN EQUAL
    RIGHT TO MARRY…………………………………………………………………11

CONCLUSION………………………………………………………………………………12

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**CASES:**

*Carey v. Population Servs. Int'l, Inc.*, 431 U.S. 678 (1977) ………………………………..6

*Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985)…………………………………6, 8

*Eisenstadt v. Baird*, 405 U.S. 438 (1972)……………………………………...……6

*Palmore v. Sidotti*, 466 U.S. 429 (1984)……………………………………………………8

*P.O.P.S. v. Gardner*, 998 F.2d 764 (9th Cir. 1993) …………………………………..6

*Romer v. Evans*, 517 U.S. 620 (1996)……………………………………………………6, 8

**OTHER AUTHORITIES:**

American Psychiatric Association, *Position Statement on Homosexuality
and Civil Rights* (1973) *printed in* 131 Am. J. Psychiatry 497 (1974) ………………..5

American Psychological Association, *Minutes of the Annual Meeting of the
Council of Representatives*, 30 Am. Psychologist 620, 633 (1975) ………………… 5

Timothy J. Biblarz & Judith Stacey, *How Does the Gender of Parents Matter?*,
Journal of Marriage and Family 72 (February 2010)……………………………………9

Abbie Goldberg, *Lesbian and Gay Parents and Their Children*,
pp. 134-141 (2010) ………………………………………………………...9

D. Linville & M. O'Neil, *Family Therapy with Same-Sex Parents*,
Family Therapy Magazine 36 (2008) ………………………………………………..10

C.J. Patterson, *Family Relationships of Lesbian & Gay Men*,
62 J. Marriage & Fam. 1052 (2000) …………………………………………………...10

J. Pawelski et al., *The Effects of Marriage, Civil Union, and Domestic
Partnership Laws on the Health and Well-being of Children*,
118 Pediatrics 349, 358-60 (2006) …………………………………………………...10

E.C. Perrin & Committee on Psychological Aspects of Child and Family Health,
*Technical Report: Coparent or Second-Parent Adoption by
Same-Sex Parents*, 109 Pediatrics 341 (2002 ……………………………………….10

T. Simmons & M. O'Connell, *Married-Couple and Unmarried Partner
Households: 2000*, at 4 (U.S. Census Bureau 2003) (Tables 1 and 2) ……………… 5

INTERESTS OF *AMICI CURIAE*

The organizations submitting this brief *amicus curiae* are professional associations of psychotherapists and mental health professionals–the large majority of their collective membership consists of licensed psychotherapists who work closely with couples, families, and children: the American Marriage & Family Therapist Association, California Division; the California Association of Marriage and Family Therapists ("CAMFT"); CAMFT-East Bay Chapter; CAMFT-Los Angeles Chapter; CAMFT-Marin County Chapter; CAMFT-San Francisco Chapter; the American Family Therapy Academy; GAYLESTA, Inc. (the Gay, Lesbian, Bisexual, Transgender Therapist Association of the San Francisco Bay Area); the Lesbian and Gay Psychotherapy Association of Southern California, Inc. ("LAGPA"); the Women's Therapy Center; California Therapists for Marriage Equality; and The Gottman Institute.  Collectively, they represent more than 85,000 marriage and family therapists and other mental health professionals.  Descriptive statements for each of the *amici* are contained in the accompanying Motion for Leave to File Amicus Brief.

Mental health professionals serving a range of couples and families see firsthand the benefits of marriage, social support, and supportive family law for the clients they serve—and they also see the harmful effects of societal discrimination.  Because *amici* and their members are so deeply engaged in counseling couples, families and children, they offer this Court a particularly useful clinical and scientific perspective in resolving two issues presented in this litigation: (a) whether Proposition 8 can be sustained on the ground that it promotes the state's legitimate interest in the welfare of children, and (b) whether same-sex couples and their families experience stigma from being deprived of an equal right to marry.

**INTRODUCTION**

One of the central issues facing this Court is whether Proposition 8 and its discriminatory impact on same-sex couples and families advances a legitimate state interest sufficient to meet the requirements of the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the U.S. Constitution.  The primary justification for Proposition 8 offered by Defendant-Intervenors is that eliminating the right to marry of same-sex couples protects the state's interest in the welfare of children, supposedly by *encouraging* heterosexual committed relationships that promote a child being raised by a married father and mother.  This justification ultimately rests on the argument that heterosexual couples are more effective as parents than same-sex couples.  *Amici* demonstrate below that this purported legitimate state interest for Proposition 8 is contrary to both logic and the empirical scientific record, and thus provides no support for its constitutionality.

*Amici* also submit that there is overwhelming evidence that same-sex couples and families suffer stigma from being denied equal access to marriage, as demonstrated in the brief *amicus curiae* submitted to this Court by the American Anthropological Association; the American Psychocoanalytic Association; the National Association of Social Workers; the National Association of Social Workers, California Chapter; and the American Academy of Pediatrics, California.

MOTION FOR LEAVE TO FILE BRIEF AMICUS CURIAE
OF AAMFT-CALIFORNIA, CAMFT, et al.
Civil Case No.: 09-2292-VRW

12

SF: 131182-1

**DISCUSSION**

**I.**

**BOTH *AMICI*'S COLLECTIVE CLINICAL EXPERIENCE AND THE RELEVANT SCIENTIFIC RESEARCH SUPPORT THE CONCLUSION THAT PROPOSITION 8 HAS NO RATIONAL BASIS IN THE STATE'S INTEREST IN PROTECTING THE WELFARE OF CHILDREN**

**A. Proposition 8 Violates the Fourteenth Amendment Unless It Is Rationally Related To A Legitimate State Interest, At The Least**

In 1973, the American Psychiatric Association recognized that homosexuality "implies no impairment in judgment, stability, reliability, or general social or vocational capabilities."[1] The American Psychological Association publicly adopted the same conclusion in 1975.[2] Thus, it should not be surprising that gays and lesbians, with the same degree of mental health and the same aspirations and values as other human beings, form lasting and rewarding couple relationships and family relationships.  In fact, the 2000 U.S. Census showed that there are more than 594,000 households in the U.S. headed by same-sex couples, about 92,100 of them in California.[3]  This case is about whether the State of California should be allowed to strip those same-sex couple and family relationships of the right to civil marriage, along with the benefits and social acceptance that heterosexual couples gain through access to that institution.

The determinative question, of course, is whether the exclusionary line drawn by Proposition 8, allowing heterosexuals to marry but relegating gays and lesbians to the less-

---

[1]  Am. Psychiatric Ass'n, *Position Statement on Homosexuality and Civil Rights* (1973) *printed in* 131 Am. J. Psychiatry 497 (1974).

[2]  Am. Psychol. Ass'n, *Minutes of the Annual Meeting of the Council of Representatives*, 30 Am. Psychologist 620, 633 (1975).

[3]  T. Simmons & M. O'Connell, *Married-Couple and Unmarried Partner Households: 2000*, at 4 (U.S. Census Bureau 2003) (Tables 1 and 2).

desirable status of "domestic partnership," is rationally related to a legitimate state purpose.[4]
*See*, *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985).  The "rational basis" test is
applied more exactly when liberty interests are at stake.  *See, e.g., Eisenstadt v. Baird*, 405
U.S. 438, 446-455 (1972).  It also is applied more carefully when the negative consequences of
the state line-drawing affect only a minority category of persons that has traditionally suffered
discrimination from the majority.  *See, e.g., Romer v. Evans*, 517 U.S. 620, 633 (1996).  Both of
these reasons for careful examination are present in the current case, because Proposition 8
denies a fundamental right of liberty to a category of persons that has suffered from historical
discrimination.

The Defendant-Intervenor's argument based on Proposition 8's purportedly "promoting
the welfare of children"—that preventing same-sex couples from marrying actually *encourages*
heterosexual marriages that result in a child being raised by both a father and mother—cannot
be supported logically or factually, for three different reasons.

---

[4]  *Amici* agree with the Plaintiffs that Proposition 8 is subject to the strictest form of
constitutional review, because it removes a fundamental right based on sexual orientation and
gender.  *See, P.O.P.S. v. Gardner*, 998 F.2d 764, 767-68 (9th Cir. 1993); *Carey v. Population
Servs. Int'l, Inc.*, 431 U.S. 678, 686 (1977).  But *amici* argue here that Proposition 8 fails even
the lower "rational basis" test, as applied in this factual context.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.  There Is No Evidence Or Logic That Supports A Conclusion That Denying Marriage To Same-Sex Couples Would Encourage Heterosexual Couples To Marry And Procreate**

The first logical and factual failure of this supposed rational for Proposition 8 is that there is no empirical scientific or research evidence that denying marriage to same-sex couples somehow encourages greater rates of marriage among heterosexual couples—much less that it promotes their greater rate of marriage and greater rate of procreation, and therefore leads to a higher percentage of children being raised by one mother and one father.  In fact the supposed mechanism by which the state's denying same-sex couples the right to marry could possibly encourage heterosexual couples to marry and procreate is hard to imagine, since heterosexuals would remain equally free to marry before and after the same right is extended to same-sex couples.  The only *conceivable* mechanism by which Proposition 8 could achieve this supposed encouragement of heterosexual marriage would be based on the assumption that there is an attitude among a significant percentage of single heterosexuals that their personal goals of marriage and having children would become less desirable (to the point of personally abandoning them) if the institution of marriage were somehow "devalued" by being made available to a less worthy or respectable group of human beings than they are.  That attitude itself would be invidious discrimination, since it necessarily depends upon the view that gays and lesbians are inherently less worthy human beings than heterosexuals.

*Amici* know of no empirical evidence in the relevant scientific literature, nor within their collective clinical experience, of such an extreme and illogical attitude in any significant part of the heterosexual population.  Although a majority of the heterosexual population in California may be opposed to legalizing same-sex marriage as a matter of social policy, that is very different from concluding that a significant number of heterosexuals who are otherwise ready to

marry and start a family might decide *not* to marry and have children, merely because the institution of marriage had somehow been lessened in value by allowing same-sex couples to marry.[5]  And even if there were evidence of such an extreme attitude, it is well established that invidious discrimination by one segment of society against another segment cannot justify the government's support of further discrimination against that minority.  *See, e.g.*, *Palmore v. Sidotti*, 466 U.S. 429, 433 (1984).

If there is no evidence of any mechanism by which denying the right to marry to same-sex couples could possibly *encourage* heterosexual couples to marry and procreate, then perhaps the primary purpose of Proposition 8 is revealed: to discourage same-sex couples from forming lasting relationships and procreating, in order to protect the privilege, benefits, and status of marriage reserved for the heterosexual majority.  This kind of naked discrimination through the political power and will of the majority is, of course, exactly what the Due Process and Equal Protection Clauses of the Fourteenth Amendment prohibit.  *See, e.g., Romer, supra*, 517 U.S. at 635*, Cleburne v. Cleburne Living Center*, *supra*, 473 U.S. 432 at 446-447.

**C.  The Purported "Legitimate State Interest" Based on the Welfare of Children**
**  Actually Harms The Welfare Of Children Of Same-Sex Parents**

Second, the state's legitimate interest in the welfare of children (which *amici* of course strongly affirm) is not rationally served by Proposition 8 because it purportedly elevates the welfare of the children of heterosexual couples at the expense of the welfare of the children of same-sex couples—a further discriminatory impact.

---

[5] *Amici* submit that it strains the imagination that any heterosexual couple otherwise committed to marriage and having a family could so easily be discouraged from getting married themselves, and question whether a significant number of such persons exists.

*Amici* submit it is indisputable that the children of same-sex couples, if their parents could marry, would benefit from greater stability, social acceptance, and clarity of legal relationships with both parents, among other things.  In fact, Defendant-Intervenor's expert David Blankenhorn conceded this point in his trial testimony.[6]  Trial Tr. at 2803, 2839.

Therefore, even if there were evidence that the state's valid interest in the welfare of children should and must apply equally to the welfare of all children affected by the law or constitutional provision at issue, not just the children of heterosexual couples—or, at the least, the line separating the advantaged children from the disadvantaged children cannot be based on raw discrimination against the parents of the latter, as so plainly appears to be the case here.

**D. No Empirical Scientific Evidence Supports The Conclusion That Heterosexual Couples Are Better Parents Than Same-Sex Couples**

Finally, and most importantly, the essential premise of this purported legitimate state interest is that heterosexual couples are simply better parents than same-sex couples.  The collective clinical experience of *amici* and their membership, however, is that same-sex couples are as effective in parenting as heterosexual couples.

That collective experience is confirmed by an examination of the empirical scientific literature by and for mental health professionals.  No peer-reviewed research supports a conclusion that same-sex couples are less effective parents than heterosexual couples.  *See* summaries of the relevant research in*, e.g.*, T.J. Biblarz & J. Stacey, *How Does the Gender of Parents Matter?*, Journal of Marriage and Family 72 (February 2010) ("At this point, no

---

[6] At pages 2846-2853 of the Trial Transcript, Mr. Blankenhorn agrees that there are at least 12 quite substantial ways that same-sex families and society in general would benefit from California's allowing same-sex marriage, emphasizing the undisputed burden that Prop 8 places upon same-sex families, supposedly in return for a benefit to the children of heterosexual couples.  But empirical science actually does not support the existence of that benefit.

research supports the widely held conviction that the gender of parents matters for child well-being."); A. Goldberg, *Lesbian and Gay Parents and Their Children*, pp. 134-141 (2010); D. Linville & M. O'Neil, *Family Therapy with Same-Sex Parents*, Family Therapy Magazine 36 (2008); C.J. Patterson, *Family Relationships of Lesbian & Gay Men*, 62 J. Marriage & Fam. 1052 (2000); J. Pawelski et al., *The Effects of Marriage, Civil Union, and Domestic Partnership Laws on the Health and Well-being of Children*, 118 Pediatrics 349, 358-60 (2006) ("More than 25 years of research have documented that there is no relationship between parents' sexual orientation and any measure of a child's emotional, psychosocial, and behavioral adjustment."); E.C. Perrin & Committee on Psychological Aspects of Child and Family Health, *Technical Report: Coparent or Second-Parent Adoption by Same-Sex Parents*, 109 Pediatrics 341 (2002). *See also*, Trial Transcript at 1010-1011, 1014-1015, 1025.

The American Psychological Association has also confirmed that scientific research unanimously supports the conclusion that same-sex parents are as effective as heterosexual parents:

> [T]here is *no* scientific evidence that parenting effectiveness is related to sexual orientation: Lesbian and gay parents are as likely as heterosexual parents to provide supportive and healthy environments for children. . . . [T]he children of lesbian and gay parents are as likely as those of heterosexual parents to flourish.

Am. Psychol. Ass'n, *Resolution on Sexual Orientation, Parents, and Children* (2004) (emphasis added).[7]

---

[7]  This document is available on the website of the APA at www.apa.org/about/governance/council/policy/parenting.aspx (last accessed 1/29/10).

In its Position Statement supporting the legal recognition of same-sex marriage, the American Psychiatric Association also agreed that scientific research is unanimous on this point:

[N]o research has shown that the children raised by lesbians and gay men are less well adjusted than those reared within heterosexual relationships.

Am. Psychiatric Ass'n, *Position Statement: Support of Legal Recognition of Same-Sex Civil Marriage* (2005).[8]

Therefore, because the rationale for Proposition 8 purportedly based on "promoting the welfare of children" completely lacks a logical and factual foundation, Proposition 8 cannot be deemed to be "rationally related to a legitimate state interest" based upon this rationale.  *See, Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985).

## II.

### *AMICI* AGREE THAT SAME-SEX COUPLES AND THEIR CHILDREN SUFFER STIGMA FROM BEING DEPRIVED OF AN EQUAL RIGHT TO MARRY

The second issue relevant to the clinical experience of *amici* organizations' membership is whether same-sex couples and families suffer stigma from being denied the right to marry. The collective clinical experience of the members of *amici* is that such stigma is pervasive and highly destructive, and this collective experience is confirmed by an examination of the research literature by and for mental health professionals on this subject.

---

[8]  This document is available at the website of the American Psychiatric Association: http://www.psych.org/Departments/EDU/Library/APAOfficialDocumentsandRelated/PositionStatements/200502.aspx (last accessed 1/29/10).

The brief *amicus curiae* of the American Anthropological Association; the American Psychocoanalytic Association; the National Association of Social Workers; the National Association of Social Workers, California Chapter; and the American Academy of Pediatrics, California, offers an extensive analysis of the scholarly and professional research on this subject.  *Amici* agree with this analysis and hereby join in the argument presented in that brief *amicus curiae*.

## CONCLUSION

*Amici curiae* respectfully urge this Court to recognize that Proposition 8 is based on nothing more than an unexamined and erroneous assumption that same-sex couples are not as capable of being effective parents as heterosexual couples.  Common sense indicates that Proposition 8 would never have passed by the narrow margin that it did, without veiled appeals by its proponents to this erroneous prejudice.

That erroneous prejudice may be held by a narrow majority of Californians, but the Fourteenth Amendment of the United States Constitution prohibits that narrow majority of

voting citizens from imposing their erroneous views by force of law on a minority that has been

historically subject to invidious discrimination.  The time to end that invidious and

unconstitutional discrimination is now.  There is no doubt that it will be ended sooner or later—

justice is on the side of California offering marriage on an equal basis to *all* its couples who

desire to form lasting bonds to support their families.  *Amici curiae* respectfully request this

Court to act to bring about that inevitable day of justice sooner, for the benefit of untold

thousands of California families who long for it.

DATED:  February 3, 2010

By: _____
/S/
Kelly Kay
*of Counsel*
THE LAW OFFICES OF RUEL WALKER

Attorney for *Amici Curiae*
THE AMERICAN ASSOCIATION FOR
MARRIAGE & FAMILY THERAPY,
CALIFORNIA DIVISION;
THE CALIFORNIA ASSOCIATION OF
MARRIAGE AND FAMILY THERAPISTS
("CAMFT");
CAMFT-EAST BAY; CAMFT-LOS
ANGELES; CAMFT-MARIN COUNTY;
CAMFT-SAN FRANCISCO; THE
AMERICAN FAMILY THERAPY
ACADEMY; GAYLESTA, INC.; THE
LESBIAN AND GAY PSYCHOTHERAPY
ASSOCIATION OF SOUTHERN
CALIFORNIA, INC.; THE WOMEN'S
THERAPY CENTER; CALIFORNIA
THERAPISTS FOR MARRIAGE
EQUALITY; and
THE GOTTMAN INSTITUTE

MOTION FOR LEAVE TO FILE BRIEF AMICUS CURIAE
OF AAMFT-CALIFORNIA, CAMFT, et al.
Civil Case No.: 09-2292-VRW

21

SF: 131182-1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SIGNATURE ATTESTATION**

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/S/) within this efiled document.


Kelly Kay
*of Counsel*
THE LAW OFFICES OF RUEL WALKER