CV-09-2292 VRW

FILED
FEB 0 1 2010
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## Exhibit Amending Amicus Brief by Michael Wolf

In following the case thus far, I have seen two aspects of the case which are facially important, yet appear to have been overseen by both plaintiffs and defense in the matter before the court. I am therefore presenting these matters as testimony offered only as a friend to the court in the interest of justice amending my brief of Amicus Curi

### Statements on Marriage

1.  Marriage has yet to be clearly defined in this hearing, at least as a definition which holds true to society, and to tradition. While never myself married, I have counseled my step mother and best friend on marriage, been a student of marriage, been a groomsman at a Catholic/Chinese marriage, a groomsman at a Christian/Bhudist marriage, and attended many other marriages.

    But I have also been in love, been in relationships where marriage was a consideration I pondered.

    To me, and I believe this to be a universal truth, marriage is the bond between two persons who decide that they wish to spend the remainder of their lives together. To me and I believe to all, marriage, therefore, is a publicly witnessed commitment by two persons in love who wish to make it known to their family and friends, and often but not always before God, that they wish to commit to each other forever.

    Put more simply, marriage is the bond that makes two as one. Two individuals become so committed to each other, so in love, that they no longer wish to exist as separate individuals, but wish to join as one person, to live as a unit.

I find that these descriptions of marriage, a public commitment to each other, a joining of two to become one, are universal despite differences which span both culture and history.

2.   Traditional marriage vows affirm this commitment, and these vows, as we know them in America today, span secular and non-secular marriage, and are nearly universal in nature between and outside of the various religions.

But these vows are almost universally about the commitment I described above. To my knowledge, only in rare cases are these vows made by the bride and groom, or rather, the two parties of a marriage, in light of a commitment to religion, but are about commitment to each other.  Commitment to religious practice is separate.

Traditional marriage vows do have many variations, but the most common vows go something like this:

> "[Name], do you take [Name] to be your wedded [husband/wife] to live together in marriage. Do you promise to love, comfort, honor and keep [him/her] For better or worse, for richer or poorer, in sickness and in health. And forsaking all others, be faithful only to [him/her] so long as you both shall live?"[1]

These vows, while often dictated in religious wedding ceremony by a minister or equivalent, are without direct religious statement; that is, they can be considered secular in nature.  Thus, while the vows are made in public and, in religious tradition, before God; they are solely promises made to each other by the enjoining partners.

No mention is made in any traditional marriage vow that I am aware of that includes any mention of children.  This would seem to counter the Defense supposition that marriage is about procreation.

---

[1] Copied from http://www.weddingclipart.com/guide/wedding-vows/Traditional-Wedding-Vows.html

### Applicability to the Case

From the informal arguments stated herein, it can be quite easily surmised that only staunch tradition necessitates that marriage be between one man, and one woman, as Proposition 8 attempts to define.

But tradition makes no such direct definition.  Certainly we are all accustomed to the preacher pronouncing "…man and wife," but this is due to social tradition in the majority.  I myself have witnessed both firsthand, as well as recounting secondhandedly, these vows and the commitments they represent, being made between couples which were comprised of two women, or two men.

And when we consider the definition of marriage, before Proposition 8, that it is a commitment to a lifelong relationship between two persons who love each other, defining marriage as Proposition 8 does, directly impedes the right of two people who just happen to be of the same gender, from making such a commitment which can be legally recognized.  Does Proposition 8 mean that California voters believe that two men, or two women cannot love each other and commit to each other as a man and woman can?

And despite assertions by the Defense, does marriage necessitate procreation, and does procreation necessitate marriage.  The vows of marriage seem to contradict such arguments.

I urge the court to consider these facts, if not having been considered yet.  I recognize that these points were not made by the plaintiffs according to the reviews of the case as I have followed it daily thanks to Howard Mintz's reporting in the San Jose Mercury news, which I access through the internet.  I ask this, because I too was once in

love with another man, and while that relationship did not produce the commitment I hoped for (he was in fact a psychopath, and love was one-sided), my experience with love and the fears I had of public denial of the love I came to know was equally possible with a man as it could have been with a woman compels me to do my part to ensure that these considerations are known to this court.

I firmly believe that the voters of California never intended to say that two men, or two women, were not capable of the love and commitment to each other that same-sex couples have enjoyed legal recognition of since the inception of California and indeed the United States. Rather, I believe that voters were mislead by a frenzy of propaganda and religious fervor that created a movement which glossed over the facts I have presented here in favor of paranoia due to nothing more than homophobia (and I use that term in its literal meaning – an unreasonable fear of homosexuality.)

Contrary to the Plaintiffs, I believe that Proposition 8 was put into place by voters not to discriminate against the ability of two people, regardless of gender, to join together in a public commitment. I believe that it discriminates not because of gender by intention, but rather by coincidence; and that the intent of voters was to prohibit religious sanctification of the bond between same-sex couples; a violation, by intent, of the Establishment Clause.

I thank this court for the opportunity to present my statements and the brief to which they were attached by amendment.

*Michael Wolf* (signature)

Michael Wolf, Amicus Curi