1   STEPHEN V. BOMSE (State Bar No. 40686)
    sbomse@orrick.com
2   JUSTIN M. ARAGON (State Bar No. 241592)
    jaragon@orrick.com
3   SARAH C. MARRIOTT (State Bar No. 241301)
    smarriott@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    405 Howard Street
5   San Francisco, California 94105-2669
    Tel.:   (415) 773-5700
6   Fax:    (415) 773-5759

7   ALAN L. SCHLOSSER (State Bar No. 49957)
    aschlosser@aclunc.org
8   ELIZABETH O. GILL (State Bar No. 218311)
    egill@aclunc.org
9   ACLU FOUNDATION OF NORTHERN CALIFORNIA
    39 Drumm Street
10  San Francisco, CA 94111
    Tel.:   (415) 621-2493
11  Fax:    (415) 255-8437

12  *Attorneys for*
    NO ON PROPOSITION 8,
13  CAMPAIGN FOR MARRIAGE EQUALITY:
    A PROJECT OF THE AMERICAN CIVIL
14  LIBERTIES UNION OF NORTHERN CALIFORNIA

15              **UNITED STATES DISTRICT COURT**

16            **NORTHERN DISTRICT OF CALIFORNIA**

17  KRISTIN M. PERRY, SANDRA B. STIER, PAUL          CASE NO. 09-CV-2292 VRW
    T. KATAMI, and JEFFREY J. ZARRILLO,
18                                                    **SUPPLEMENTAL DECLARATION OF**
                        Plaintiffs,                   **ELIZABETH GILL IN SUPPORT OF**
19                                                    **OPPOSITION OF NO ON PROPOSITION 8,**
               v.                                     **CAMPAIGN FOR MARRIAGE EQUALITY:**
20  ARNOLD SCHWARZENEGGER, in his official            **A PROJECT OF THE AMERICAN CIVIL**
    capacity as Governor of California; EDMUND G.     **LIBERTIES UNION OF NORTHERN**
21  BROWN, JR., in his official capacity as Attorney  **CALIFORNIA TO DEFENDANT-**
    General of California; MARK B. HORTON, in his     **INTERVENORS' MOTION TO COMPEL**
22  official capacity as Director of the California   **COMPLIANCE WITH NONPARTY**
    Department of Public Health and State Registrar of **DOCUMENT SUBPOENAS**
23  Vital Statistics; LINETTE SCOTT, in her official
    capacity as Deputy Director of Health Information
24  & Strategic Planning for the California Department
    of Public Health; PATRICK O'CONNELL, in his      Judge:        Chief Judge Walker
25  official capacity as Clerk-Recorder for the County Location:     Courtroom 6, 17th Floor
    of Alameda; and DEAN C. LOGAN, in his official    Trial Date:   January 11, 2010
26  capacity as Registrar-Recorder/County Clerk for the
    County of Los Angeles,
27
                        Defendants.
28

I, Elizabeth Gill, hereby declare:

1. I am a Staff Attorney for the LGBT & AIDS Project of the ACLU Foundation and for the ACLU Foundation of Northern California. I am counsel of record for non-party No on Proposition 8, Campaign for Marriage Equality: A Project of the American Civil Liberties Union of Northern California, which is a state-registered political action committee ("ACLU PAC"). The ACLU of Northern California also reported the time I spent working to defeat Proposition 8 through the ACLU PAC. I have personal knowledge of the matters contained in this declaration, except where such facts are stated to be based on information and belief, and those facts I believe to be true. If called to testify to the matters set forth in this declaration, I could do so competently.

2. I submit this declaration in response to the Court's February 11, 2010 order (Docket # 589) requesting that non-party ACLU PAC submit a declaration "identifying the core group of individuals engaged in the formulation of campaign strategy and messaging."

3. In my capacity as Staff Attorney, I spent a significant amount of time between June 2008 and November 2008 working to defeat Proposition 8. I did this work in two ways: (1) I worked with numerous other individuals and organizations for an umbrella campaign organization "No on 8 – Equality for All," of which the ACLU of Northern California was a member; and (2) I worked with others within the ACLU on various activities directed toward defeating the initiative (such as communicating to ACLU members about the initiative, holding fundraisers at the ACLU, etc). I also oversaw the work of several other ACLU employees to defeat Proposition 8. All of this work was reported as required as contributions to an issue campaign by the ACLU PAC.

4. The other employees at the ACLU who worked to defeat Proposition 8 between June 2008 and November 2008 (collectively, "the ACLU employees") were:

> Paul Cates, Public Education Director, LGBT & AIDS Project
> Matthew Coles, Director, LGBT & AIDS Project
> Rebecca Farmer, Media Relations Director, ACLU of Northern California
> Shayna Gelender, Field Organizer, ACLU of Northern California
> Maya Harris, Executive Director, ACLU of Northern California
> Ashley Morris, Field Organizer, ACLU of Northern California

➢ Gigi Pandian, Graphic Design and Public Production Manager, ACLU of Northern California

➢ Skylar Porras, Director San Jose office, ACLU of Northern California

➢ Catrina Roallos, Web Content Manager and New Media Strategist, ACLU of Northern California

➢ Laura Saponara, Communications Director, ACLU of Northern California

5.     Like me, most of these other ACLU employees worked to defeat Proposition 8 in two ways—by participating in the Equality for All campaign, and by working on ACLU-specific activities directed toward defeating the initiative.  For all the ACLU employees, the formulation of campaign strategy and messaging took place in several different ways.

6.     First, a number of the ACLU employees communicated regularly with other participants in the Equality for All campaign about campaign strategy and messaging.  Maya Harris and Matt Coles were on the Equality for All Executive Committee; I was on the Statewide Campaign Committee; and Shayna Gelender and Ashley Morris worked for the Equality for All campaign as field organizers.  As described in Geoff Kors's supplemental declaration (which I herein incorporate by reference as it pertains to the structure of Equality for All), communication about the formulation of campaign strategy and messaging happened at all levels of the Equality for All campaign structure.  For example, the Executive Committee communicated regarding the statewide campaign strategy and messaging to be used in television and other statewide media advertising; the Statewide Campaign Committee communicated regarding the implementation of this strategy and messaging in regionally specific ways (such as a messaging strategy for voters in Fresno); and the field organizers in Northern California communicated regarding the strategy of field outreach in Northern California and the messaging used by volunteers when talking to voters.  As also explained in Geoff Kors's declaration, the individuals who made up the Equality for All campaign were sometimes paid campaign staff and sometimes (like the ACLU employees) employees of one of Equality for All's member organizations. And all tiers of the Equality for All campaign communicated with various consultants regarding campaign strategy and messaging.

7.     Second, the ACLU employees communicated with activists around Northern

California about campaign strategy and messaging.  For example, starting in the summer of 2008, Shayna Gelender and I travelled around Northern California starting "local action committees"—or groups of volunteers dedicated to working to defeat Proposition 8 in their community.  By the end of the campaign, we were regularly working with approximately 10 such groups (in Chico, Contra Costa County, Davis, Monterey, Sacramento, Salinas, San Jose, Santa Clara County, Santa Cruz, and San Mateo County).  Together with the individuals in these groups, we strategized as to how best to reach voters in those communities, and formulated messaging tailored to those communities.  In a number of the communities, we and the local groups planned and held press conferences, in which local politicians and prominent citizens spoke against Proposition 8.

8.      Third, the ACLU employees communicated with one another about campaign strategy and messaging.  As explained above, in addition to participating in the umbrella campaign organizations and assisting regional activists, the ACLU engaged in its own activities directed toward defeating Proposition 8.  For example, the ACLU sent out e-mails to its e-mail lists asking its members to vote against Proposition 8 and telling them what they could do to help defeat the measure.  While the ACLU has already produced the final version of all the e-mails it sent out about Proposition 8 (along with all the other material it publicly disseminated), the ACLU employees communicated internally about the content of the e-mails, who they should be sent to, etc.

9.      In all these three instances, there may have been many communications between the ACLU employees and Equality for All participants, regional activists, or other ACLU employees that did not involve the formulation of campaign strategy and messaging.  Indeed, having worked on the campaign, I can say that a significant percentage of the e-mail I sent and received involved logistics (such as: who is bringing No on 8 signs to the rally).  But the only way to determine whether a particular communication between an ACLU employee and one of many other individuals who worked to defeat Proposition 8 reflects non-public campaign strategy information that we believe is privileged under the First Amendment is to review the communication.  Given the nature of the Equality for All campaign, as well as the way the ACLU employees worked to defeat Proposition 8, it would not be possible to pre-select a number of individuals with whom the ACLU employees communicated and then limit a determination of privilege to those individuals.

10.     In describing the formulation of campaign strategy and messaging in these different ways, I am not suggesting that the ACLU's communications even with targeted groups of voters constitute the formulation of campaign strategy and messaging or are subject to any form of First Amendment privilege.  All of the persons with whom the ACLU employees formulated campaign strategy and messaging were themselves working to defeat Proposition 8—as part of the umbrella Equality for All campaign, as part of a regional group dedicated to the defeat of the initiative, or as an ACLU employee, member, or volunteer.  It was my experience in working to defeat Proposition 8, however, that campaign strategy and messaging were not just handed down by a high-level group in an organized campaign structure; rather, individuals and groups working all over the state to defeat the measure were themselves strategizing as to how best to do so and how best to get a "No on 8" message out to California voters.

11.     If I and the other ACLU employees had not been able to engage in the open and frank communication regarding campaign strategy and messaging with the many different types of individuals identified above, it would seriously have hindered our ability to mount political opposition to Proposition 8.  In much of the work the ACLU employees did to defeat Proposition 8, numerous plans were discarded before a final strategy was settled on, and numerous drafts of the messaging that eventually went to voters was prepared.  Individuals and groups working together against Proposition 8 also exchanged honest communications about strategic and messaging differences and concerns.  Such robust exchange of ideas and free flow of information is necessary both to reaching consensus among diverse individuals and groups working together and to achieving the best, most polished final strategy and messaging.

12.     Were it the case that communications about campaign strategy and messaging were accessible through litigation, it would also deter the ACLU from participating in other, similar political activity.  Almost every year, the ACLU of Northern California works against or in support of one or more California ballot initiatives that affect civil rights.  In 2008 alone, the ACLU of Northern California took an official position on five ballot initiatives: we advocated "no" on four (4, 8, 6, and 9) and "yes" on one (5).  The ACLU of Northern California also actively participated in campaigns to defeat the four initiatives we advocated against.  This participation would not be

possible—or would be extremely limited—if such participation threatened to expose the ACLU's strategy and messaging on the issues presented by the ballot initiatives.  As an organization with long-term political goals the ACLU of Northern California would become quite wary of participating in an initiative campaign if the cost of doing so were the sharing of all of our strategies, messaging, and tactics with our opponents.

13.   Indeed, many of these issues that were raised in the Proposition 8 campaign are issues that I personally continue to address in political fora around the state.  For example, one of the claims made by the Proposition 8 proponents ("Proponents") was that Proposition 8 would protect California children "from being taught in public schools that 'same-sex marriage' is the same as traditional marriage." (Official Ballot Materials, Argument in Favor of Proposition 8.)  Even though Proposition 8 passed, the debate over public school curricula and LGBT issues is ongoing in many parts of California.  Thus in 2009, I worked with parents and school officials in the Alameda Unified School District who were confronting a controversy over an LGBT-inclusive curriculum passed by the Board.  If the private, internal discussions of campaign strategy and messaging on this issue during the Proposition 8 campaign were required to be revealed to our political opponents, they would have an unfair advantage in the political arena and our political goals would be frustrated.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on February 22, 2010 at San Francisco, California.

_Elizabeth Gill_
Elizabeth Gill