IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KRISTIN M PERRY, SANDRA B STIER,
PAUL T KATAMI and JEFFREY J
ZARRILLO,

    Plaintiffs,

CITY AND COUNTY OF SAN FRANCISCO,

    Plaintiff-Intervenor,

    v

ARNOLD SCHWARZENEGGER, in his
official capacity as governor of
California; EDMUND G BROWN JR, in
his official capacity as attorney
general of California; MARK B
HORTON, in his official capacity
as director of the California
Department of Public Health and
state registrar of vital
statistics; LINETTE SCOTT, in her
official capacity as deputy
director of health information &
strategic planning for the
California Department of Public
Health; PATRICK O'CONNELL, in his
official capacity as clerk-
recorder of the County of
Alameda; and DEAN C LOGAN, in his
official capacity as registrar-
recorder/county clerk for the
County of Los Angeles,

    Defendants,

DENNIS HOLLINGSWORTH, GAIL J
KNIGHT, MARTIN F GUTIERREZ,
HAKSHING WILLIAM TAM, MARK A
JANSSON and PROTECTMARRIAGE.COM –
YES ON 8, A PROJECT OF
CALIOFORNIA RENEWAL, as official
proponents of Proposition 8,

    Defendant-Intervenors.
_____/

No   C 09-2292 VRW

ORDER

Defendant-intervenors, the official proponents of Proposition 8 ("proponents"), moved on January 15, 2010 to compel three nonparty entities, Californians Against Eliminating Basic Rights ("CAEBR"), Equality California and No on Proposition 8, Campaign for Marriage Equality, A Project of the American Civil Liberties Union (the "ACLU") (collectively the "No on 8 groups") to produce documents related to the campaign against Proposition 8. Doc #472. Proponents' document subpoenas to the No on 8 groups were intended to mirror the requests plaintiffs served on proponents. Id at 5. On January 8, 2010, the court ordered proponents to produce all documents that "contain, refer or relate to arguments for or against Proposition 8," except those communications solely among members of proponents' core group. Doc #372 at 5. Proponents now ask the court to order a similar production from the No on 8 groups. Doc #472 at 7-8. Equality California and the ACLU oppose proponents' motion to compel, Doc ##543, 546, and CAEBR argues it has produced all responsive nonprivileged documents. Doc #541. The court heard argument on the motion on February 25, 2010. Doc #602.

I

The procedural history of proponents' motion to compel is intertwined with the circuitous course discovery took as the parties prepared the case for trial on an expedited basis. Pursuant to FRCP 45, proponents served the No on 8 groups with document subpoenas on August 27, 2009. Doc #472-1 at 10, 19, 28. Proponents simultaneously opposed on relevance and privilege grounds similar document requests served on them by plaintiffs.

2

Doc #187. The court agreed in part with proponents' relevance arguments and ordered plaintiffs to revise an overly broad document request. Doc #214 at 17. In response to the court's order, proponents revised their identical request to the No on 8 groups. Doc #472-3 at 6-7, 15-16, 24-25.

Proponents continued to assert a First Amendment privilege over documents related to proponents' campaign for Proposition 8 both in this court and in the Ninth Circuit. While proponents' privilege claim was being litigated, proponents informed the No on 8 groups that proponents expected the No on 8 groups to produce only those documents similar to those proponents were obligated to produce. Doc #472-3. The discovery cut-off of November 30, 2009 passed without a final resolution of the scope of proponents' First Amendment privilege claim.

On January 4, 2010, the Ninth Circuit issued an opinion providing final guidance to define the scope of the First Amendment privilege. <u>Perry v Schwarzenegger</u>, 591 F3d 1147 (9th Cir 2010). The opinion makes clear that proponents' First Amendment privilege is limited to "*private, internal* campaign communications concerning the *formulation of campaign strategy and messages* * * * among the core group of *persons* engaged in the formulation of strategy and messages." Id at 1165 n12 (emphasis in original). Pursuant to the Ninth Circuit opinion, on January 8, 2010 the court ordered proponents to produce all documents that "contain, refer or relate to arguments for or against Proposition 8," except those communications solely among members of proponents' core group. Doc #372 at 5. On January 15, 2010, four days after the trial began, proponents filed the instant motion.

3

II

The No on 8 groups take different positions on the merits of proponents' motion. CAEBR asserts that it has already produced all responsive documents and that proponents' motion is moot as directed to it. Doc #541. Equality California argues that, because it is a nonparty and because it worked to oppose Proposition 8, its internal campaign communications are not relevant and production would be unduly burdensome. Doc #546 at 7-10. The ACLU argues the documents proponents seek are irrelevant and privileged. Doc #543 at 11-18.

A

The court first considers whether proponents' motion is timely. Pursuant to Civ LR 26-2, all motions to compel discovery must be filed within seven days of the discovery cut-off. In this case, Civ LR 26-2 dictates that proponents' motion should have been filed by December 7, 2009. Proponents' motion was filed more than a month later, on January 15, 2010. Nevertheless, because discovery (and litigation regarding the scope of the First Amendment Privilege) has continued beyond the cut-off and because the No on 8 groups are not parties and are not meaningfully prejudiced by the timing of proponents' motion, the court will consider the merits of the motion. In addition, this motion was filed within one week of this court's final decision defining the scope of proponents' First Amendment privilege and ordering production of nonprivileged documents. The court will, however, consider the timing of the motion as it relates to burden pursuant to FRCP 45(c)(1).

**B**

Next, the court considers whether proponents' subpoenas seek relevant documents. Proponents assert that they seek the documents to help elucidate voter intent and the purpose of Proposition 8 and because the documents may address the political power of gays and lesbians. Doc #584 at 7-14. Pursuant to FRCP 26(b)(1), a party may obtain nonprivileged discovery that is relevant to any claim or defense, and "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." While a party may obtain discovery from a nonparty, the party must take "reasonable steps to avoid imposing an undue burden or expense" on the nonparty. FRCP 45(c)(1).

Perry, 591 F3d 1147, provides perhaps the best authority to determine whether the communications sought by proponents are relevant. The Ninth Circuit held that plaintiffs' document requests to proponents, which sought documents similar to those at issue in the instant motion, were "reasonably calculated to lead to the discovery of admissible evidence on the issues of voter intent and the existence of a legitimate state interest." Perry, 591 F3d at 1164.

The ACLU points out that the Ninth Circuit's opinion was tailored to the dispute between plaintiffs and proponents and that documents relating to strategy and messages against Proposition 8 are not relevant because Proposition 8 passed. See Doc #543 at 13. According to the ACLU, the intent of voters who voted against Proposition 8 is not relevant, because those voters did not enact a constitutional amendment, and the No on 8 groups' documents are not

5

relevant to the question why some voters chose to support Proposition 8, because those voters rejected the arguments. Id.

While the intent of those who voted against Proposition 8 is not relevant, the mix of information available to voters who supported Proposition 8 is relevant under FRCP 26 to the questions of intent and state interest. That mix of information includes arguments considered and ultimately rejected by voters, including arguments against Proposition 8. As was the case with the proponents, the documents and communications at issue may shed light on the meaning and impact of the messages that were sent to the voters. Thus, the subpoenaed documents are relevant and must be produced to the extent the documents are not privileged and contain, refer or relate to arguments for or against Proposition 8.

### III

The No on 8 groups assert that at least some of the documents in their possession are protected by the First Amendment privilege. Again, the Ninth Circuit's opinion in <u>Perry</u>, 591 F3d 1147, provides the best guidance to determine the scope of the First Amendment privilege in the context of initiative campaigns. As the Ninth Circuit explained, it was deciding "an important issue of first impression – the scope of the First Amendment privilege against compelled disclosure of internal campaign communications." Id at 1157.

In the context of an initiative campaign, a campaign organization may assert a First Amendment privilege over "*private, internal* campaign communications concerning the *formulation of*

6

*campaign strategy and messages* * * * among the core group of *persons* engaged in the formulation of campaign strategy and messages." Id at 1165 n12 (emphasis in original). Despite the ACLU's argument to the contrary, Doc #543 at 16, nothing in <u>Perry</u> limits footnote 12's application to "the specific circumstance of the requests served by plaintiffs on Proponents and to the structure of the Yes on 8 campaign." The footnote does not determine definitively who belongs in the core group of persons; instead, the footnote provides guidance for the court to make the final determination who is a member of a campaign organization's core group. Id. That guidance is applicable to the instant dispute. Accordingly, the court will apply the First Amendment privilege to communications about strategy and messages internal to each No on 8 group's core group. The privilege applies only to communications within a campaign organization — communications between or among independent campaign organizations are not covered by the First Amendment privilege.

The No on 8 groups submitted supplemental declarations to explain and support their core groups. Doc #593 (CAEBR); Doc #597 (ACLU); Doc #598 (Equality California). Following the February 25 hearing, Equality California submitted a supplemental declaration to define a core group for an umbrella organization known as No on 8 – Equality for All ("Equality for All"). Doc #609. The No on 8 groups' declarations raise two questions: (1) which individuals were sufficiently involved in the development of strategy and messages that they should be included in each organization's core group; and (2) the application of the First Amendment privilege to the No on 8 groups. The court begins with the first question.

**7**

## A

### 1

CAEBR filed the declaration of Marisa Moret to support individuals it believes should be included in its core group. Doc #593. The Moret declaration lists individuals, their role in the campaign and their reasons for being included within the core group. Doc #593. The court credits the Moret declaration and finds that CAEBR's core group consists of:

> Ben Barnz, Marisa Moret and Patti Rockenwanger (CAEBR board members); Dennis Herrera (CAEBR chair); employees of Griffin Schake, Armour Media Group and Bonner Group, Inc (campaign consulting firms that had significant input into campaign strategy and messages); Diane Hamwi and Mark Walsh (fundraising consultants who played a significant role in campaign strategy and formulating messages); and Monique Moret Stevens (CAEBR advisor); and assistants to the named individuals acting on the named individuals' behalves.

### 2

Equality California submitted the February 22 declaration of Geoff Kors in support of its core group. Doc #598 ¶¶16-17. The declaration explains the individuals' roles regarding formulation of strategy and messages. Id. The court credits the February 22 Kors declaration and finds the following individuals are members of Equality California's core group:

\\
\\
\\
\\
\\
\\

1  John Duran, Cary Davidson, Tim Hohmeier, Deb Kinney, Diane
   Abbitt, Jim Abbott, Dave Baron, Xavier Barrera, Brandon
2  Brawner, Betsy Butler, Jody Cole, Larry Colton, Doug Dombek,
   Jeff Haber, Mike Hutcheson, Roslyn Jones, Tom Maddox, Shannon
3  Minter, James Nguyen, Jeff Orr, Dennis Rasor, Jaime Rook, Rick
   Saputo, Linda Scaparotti, Eric Siddall, Alan Uphold (members
4  of Equality California's board of directors); Jean Adams, Ali
   Bay, Ian Barrera, Jim Carroll, Maya Scott-Chung, Liam Cooper,
5  Doug Flater, Joe Goldman, Daniel Gould, Kendra Harris, Ted
   Jackson, Kaitlin Karkos, Alice Kessler, Seth Kilbourn, Hannah
6  Johnson, Geoff Kors, Erica Liscano, Shumway Marshall, Randy
   Medenwald, Miranda Meisenback, Trina Olson, Michelle Ortiz,
7  Zorina Price, Leanne Pittsford, Jennifer Sample, George
   Simpson, Sean Sullivan, Sarah Tomastik and Clarence Williams
8  (Equality California staff members engaged in the formulation
   of strategy and messages); and assistants to the named
9  individuals acting on the named individuals' behalves.

Equality California has also sought to include certain individuals associated with the Equality California Institute in its core group. Id at ¶ 18. Equality California has not demonstrated that the Institute engaged in the formulation of strategy and messages for Equality California; accordingly, these individuals are not included in the Equality California core group.

3

The ACLU filed the declaration of Elizabeth Gill to identify the core group of individuals involved in the development of campaign strategy and messages for the ACLU. Doc #597. The Gill declaration explains that the ACLU staff members listed worked "on ACLU-specific activities toward defeating [Proposition 8]." Id at ¶ 5. The court credits the Gill declaration and finds the following individuals are members of the ACLU's core group:

\\
\\
\\
\\

9

>Elizabeth Gill, Paul Cates, Matthew Coles, Rebecca Farmer, Shayna Gelender, Maya Harris, Ashley Morris, Gigi Pandian, Skylar Porras, Catrina Roallos, Laura Saponara (employees of the ACLU who worked to defeat Proposition 8); and assistants to the named individuals acting on the named individuals' behalves.

4

According to the February 22 Geoff Kors declaration, which the ACLU incorporates by reference, Doc #597 ¶6, the umbrella organization Equality for All was formed in 2005 to fight against any proposition that would limit marriage to opposite-sex couples. Doc #598 ¶5. Initially, the organization consisted of approximately 35 organizations, which registered Equality for All as a political action committee with the State of California. Id. During the Proposition 8 campaign, Equality for All had an executive committee, a campaign committee and campaign staff. Id ¶¶7-9. Proponents did not serve Equality for All with a document subpoena.

The March 3 declaration of Geoff Kors identifies individuals and consulting firms involved in the development of strategy and messages for Equality for All. Doc #609. The declaration identifies the Equality for All executive committee, campaign committee, campaign staff and consultants. Id at ¶¶ 5-8. At the February 25 hearing, the court directed Equality California to submit the supplemental declaration and to support the inclusion, in the core group of Equality for All, of individuals in the campaign committee, staff members and consultants who were instrumental in developing strategy and messages.

The March 3 Kors declaration identifies the individual campaign committee members and staff but makes no showing regarding

United States District Court
For the Northern District of California

those individuals' roles in the Equality for All campaign. Id at ¶¶ 6-7. Accordingly, the court lacks a basis to include these individuals in Equality for All's core group. The March 3 Kors declaration does, however, support through explanation the inclusion of the campaign consultants and consulting firms listed in Doc #609 ¶ 8. Because the February 22 Kors declaration explains that the Equality for All executive committee "collectively made decisions of great importance to the campaign," members of the executive committee listed in Doc #609 ¶ 5 will be included in the Equality for All core group.

For the foregoing reasons, the court finds that the Equality for All core group consists of:

> Dale Kelly Bankhead, Heather Carrigan, Cary Davidson, Oscar de la O, Sue Dunlap, Michael Fleming, Patrick Guierrero, Maya Harris, Dan Hawes, Dennis Herrera, Delores Jacobs, Lorri L Jean, Kate Kendall, Geoff Kors, Steve Mele, Joyce Newstat, Tawal Panyacosit Jr, Rashad Robinson, Marty Rouse, Kevin Tilden and Andy Wong (the Equality for All executive committee); Steve Smith, Lilia Tamm, Molly Weedn and other employees of Dewey Square Group, LLC; Maggie Linden, Lindsey Nitta, Eddie Fernandez, Kris Hanson and other employees of Ogilvy Public Relations; Chad Griffin, Mark Armour and other employees of Amour Griffin Media Group, Inc; Kasey Perry and other employees of Perry Communications; Yvette Martinez and Javier Angulo of Progressive Strategy Partners LLC; Patrick Guerriero and James Dozier of Gill Action; Adam Freed; Joe Rodota; Guy Cecil; Rick Claussen; Gale Kaufman; Nick Donatiello; Phyllis Watts; Thalia Zepatos; Steve Mele and other employees of M L Associates LLC; Kimberly Ray; Marjan Philhour; Stephanie Berger and other employees of Berger Hirschberg; Shayna Elgin; Mary Pat Bonner and employees of The Bonner Group; John Gile; Thom Lynch; Larry Huynh and other employees of Blackrock Associates LLC; Alice Huffman of A C Public Affairs Inc; Wendy Liao and other employees of the I W Group; Justin Garrett and other employees of Logo Online/MTV Networks; Chris Nolan and other employees of Spot-On; Suzanne Stanford and other employees of Ofrenda; Eric Jaye of Storefront Political Media; David Binder and other employees of Binder Research; and Celinda Lake and other employees of Lake Associates; and assistants to the named individuals acting on the named individuals' behalves.

11

**B**

The court has determined a core group for each No on 8 group as well as Equality for All and must now decide how to apply the First Amendment privilege to the relevant campaign communications. Communications solely within a No on 8 group's core group are privileged under the First Amendment. <u>Perry</u>, 591 F3d 1165 n12. Here, some individuals, like Geoff Kors, Maya Harris and Dennis Herrera, are within core groups of more than one organization. Accordingly, the scope of the First Amendment privilege could arguably depend on the capacity in which a core group member is communicating. For example, whether a communication between Geoff Kors and Maya Harris is privileged may depend on whether Geoff Kors was communicating in his Equality California or Equality for All capacity. But because the effort required by such an inquiry might amount to an undue burden on the No on 8 groups under FRCP 45(c)(1), the court will not require production of any communications about strategy and messages between core group members who belong to that core group, regardless of the capacity in which the core group member is communicating. Thus, members of the Equality for All core group may assert a privilege over responsive communications solely within the Equality for All core group – even if there is an argument that one of the parties to the communication was not participating in his or her capacity as a member of that particular core group.

For the reasons explained above, the court finds that the First Amendment privilege covers communications regarding strategy and messages within each No on 8 group's core group as defined

above. The First Amendment privilege does not cover communications between separate organizations.

## IV

Because proponents seek discovery from third parties, the court recognizes the need to ensure that any burden borne by the third parties is not undue. FRCP 45(c)(1). Accordingly, the No on 8 groups shall be required only to undertake the following steps in searching electronic documents to respond to proponents' subpoenas.[1]

First, the No on 8 groups shall only be required to review electronic documents containing at least one of the following terms: "No on 8;" "Yes on 8;" "Prop 8;" "Proposition 8;" "Marriage Equality;" and "ProtectMarriage.com."

Second, Equality California shall only be required to search its central email server for responsive electronic documents, identified in the March 3 declaration of Geoff Kors as the Microsoft Exchange email server. Doc #609 at 9 ¶10.

While the foregoing limitations do not eliminate the burden of production on third parties, they do reduce costs and focus the production on only the most responsive documents.

\\
\\
\\
\\

---

[1] This restriction, however, does not apply to paper documents. The No on 8 groups shall search paper documents for documents that contain, refer or relate to arguments for or against Proposition 8.

13

IV

For the reasons explained above, proponents' motion to compel, Doc #472, is GRANTED.  Each No on 8 group is DIRECTED to produce all documents in its possession that contain, refer or relate to arguments for or against Proposition 8, except those communications solely among members of its core group.  The No on 8 groups shall begin a rolling production of nonprivileged responsive documents as soon as possible to conclude not later than Wednesday, March 31, 2010.  The No on 8 groups may produce documents pursuant to the terms of the protective order, Doc #425, if they wish.  The No on 8 groups are not required to produce a privilege log.

IT IS SO ORDERED.

JOSEPH C SPERO
United States Magistrate Judge