STEPHEN V. BOMSE (State Bar No. 40686)
sbomse@orrick.com
JUSTIN M. ARAGON (State Bar No. 241592)
jaragon@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94105-2669
Tel.: (415) 773-5700
Fax: (415) 773-5759

ALAN L. SCHLOSSER (State Bar No. 49957)
aschlosser@aclunc.org
ELIZABETH O. GILL (State Bar No. 218311)
egill@aclunc.org
ACLU FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel.: (415) 621-2493
Fax: (415) 255-8437

*Attorneys for*
NO ON PROPOSITION 8,
CAMPAIGN FOR MARRIAGE EQUALITY:
A PROJECT OF THE AMERICAN CIVIL
LIBERTIES UNION OF NORTHERN CALIFORNIA

(Additional Counsel Listed on Signature Page)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

KRISTIN M. PERRY, *et al.*,

Plaintiffs,

and

CITY AND COUNTY OF SAN FRANCISCO,

Plaintiff-Intervenor,

v.

ARNOLD SCHWARZENEGGER, *et al.*,

Defendants,

and

PROPOSITION 8 OFFICIAL PROPONENTS DENNIS HOLLINGSWORTH, *et al.*,

Defendant-Intervenors.

CASE NO. 09-CV-2292 VRW

**OBJECTIONS OF NO ON PROPOSITION 8, CAMPAIGN FOR MARRIAGE EQUALITY: A PROJECT OF THE AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA AND EQUALITY CALIFORNIA TO MARCH 5, 2010 ORDER OF MAGISTRATE JUDGE SPERO**

Judge: Chief Judge Walker
Location: Courtroom 6, 17th Floor

# TABLE OF CONTENTS

**Page**

BACKGROUND ........ 1

OBJECTIONS ........ 3

A. The Information That the Order Requires to Be Produced Is Either Entirely Irrelevant or of Such Tenuous Relevance to the Issues in the Case That It Was Clear Error to Require Production in Light of the Posture of the Case and the Substantial Burden Involved in Production. ........ 4

1. The Order Applied an Incorrect Legal Standard in Determining Relevance. ........ 4

2. Objectors' Documents Are Irrelevant. ........ 5

3. Even If the Documents in Question Could Have Some Relevance, It Is Vastly Outweighed by the Burden of Production. ........ 7

B. The Order's Privilege Analysis Is Legally Erroneous ........ 8

C. In All Events, the Order Should Be Modified to Preclude Disclosure to Anyone Involved in the Proposition 8 Campaign or Who May Be Involved in a Future Political Campaign Involving the Right of Same-Sex Couples to Marry. ........ 12

CONCLUSION ........ 13

# TABLE OF AUTHORITIES

**Page**

## Cases

*Perry v. Schwarzenegger*,
591 F.3d 1147 (9th Cir. 2010)........................................ 1, 9

*United States v. Grinnell Corporation*,
384 U.S. 563 (1966)........................................ 6

*Upjohn v. United States*,
449 U.S. 383 (1981)........................................ 11-12

*Waller v. Financial Corporation of America*,
828 F.2d 579 (9th Cir. 1987)........................................ 12

## Statutes

Fed. R. Civ. P. 26(b)(1)........................................ 3

Fed. R. Civ. P. 45(c)(1)........................................ 7

Fed. R. Civ. P. 72(a)........................................ 1, 3

Pursuant to Federal Rule of Civil Procedure 72(a), Non-Parties Equality California ("EQCA") and No on Proposition 8, Campaign for Marriage Equality: A Project of the American Civil Liberties Union of Northern California ("ACLU") (collectively "Objectors") respectfully object, on the grounds set forth below, to the Order of Magistrate Judge Joseph C. Spero entered on March 5, 2010, Doc # 610 ("Order").

## BACKGROUND

As the latest chapter in a long-running dispute over the production of non-public campaign documents, Objectors have been directed to produce, on a rolling basis but not later than March 31, 2010, documents involving the "campaign strategy and messages" of Objectors in their efforts to prevent the passage of Proposition 8, "except those communications solely among members of [a] core group" as defined in the Order. Order at 14. Given the Court's familiarity with all relevant aspects of this lengthy saga, Objectors limit their statement of the background to matters directly pertinent to their objections.

On January 4, 2010, the Ninth Circuit issued its amended opinion granting a writ of mandamus to vacate prior orders by this Court directing Defendant-Intervenors ("Proponents") to produce non-public campaign documents. *Perry v. Schwarzenegger,* 591 F.3d 1147 (9th Cir. 2010). The court concluded that the compelled disclosure of such documents would violate the First Amendment by infringing the right of those involved in a political campaign to associate and communicate freely about campaign issues, thereby creating a chilling effect on the political process. *Id.* Notwithstanding the broad associational right it recognized, the court noted, in footnote 12 of its opinion, that this right did not extend to all communications associated with a campaign but, rather, was limited to campaign strategy and messaging which, in turn, depended upon "the structure of the 'Yes on 8' campaign." *Id.* at n.12. The court further observed that the First Amendment did not protect communications involving subjects other than strategy or messaging, such as "persuasion, recruitment or motivation". *Id.*

Since application of the Ninth Circuit's opinion to certain of Proponents' documents could not be resolved on the basis of the record before that court, including particularly the "structure" of the Yes on 8 campaign, the court remanded the case for further consideration of the plaintiffs' requests in

light of its opinion. Following remand, on January 8, 2010, Magistrate Judge Spero issued an order in which he concluded that certain of Proponents' requested documents involving "strategy" or "messaging" could shed light upon the reasons why the electorate voted in favor of Proposition 8 and, therefore, were relevant under Rule 26 to the issues of voter intent and to the legitimacy of asserted state interests supporting the disputed initiative. (Doc # 372.) After reviewing Proponents' submissions regarding the structure of the Yes on 8 campaign, Judge Spero held that communications among certain specified individuals involved in the campaign were protected from disclosure under the First Amendment but that communications involving messaging or strategy between and among other individuals were not privileged and should be produced. *Id.* On January 20, 2010, this Court denied Proponents' objections to that order. (Doc # 496.)

Meanwhile, following issuance of the January 8 order, Proponents renewed their own parallel requests for the production of non-public campaign communications by certain of their political opponents, including Objectors, and they demanded that Objectors immediately produce documents regarding campaign messages or strategy except for those involving only members of Objectors' "core group".[1] After Objectors declined to produce documents pursuant to this renewed demand, Proponents moved to compel production. Objectors opposed on grounds of timeliness, relevance, privilege, and burden and further submitted detailed declarations regarding the structure of the No on 8 campaign from employees of Equality California (Doc # 598) and the ACLU (Doc # 597). Objectors further pointed out that, in response to subpoenas served on them during the summer of 2009, they had voluntarily produced all public documents in their possession related to campaign strategy and messages.

Magistrate Judge Spero held a hearing on the motion to compel on February 25, 2010, at the conclusion of which he directed EQCA to submit certain additional information concerning the

---

[1] Proponents chose not to pursue their requests for the production of non-public campaign communications from Equality for All, the umbrella campaign entity that EQCA and the ACLU, among other groups, joined for the purpose of defeating Proposition 8. (Kors Decl. at 5 (Doc # 598); Kors Supp. Decl. at 1 (Doc # 609).)

structure of the No on 8 campaign not later than March 3, 2010. A further declaration of Geoff Kors responding to that request was timely filed. (Doc # 609.)

On March 5, 2010, Magistrate Judge Spero granted the motion to compel to the extent set forth in his Order. Specifically, Judge Spero found that the motion was timely despite the procedural posture of the case; that the documents requested were relevant under the broad discovery standards of Rule 26(b)(1), Fed. R. Civ. P; that, under footnote 12 of the Ninth Circuit's opinion, the First Amendment privilege applied only to a certain, small group of "core" individuals "within a campaign organization"(as enumerated in the Order) and "communications between or among independent campaign organizations are not covered by the First Amendment privilege"; and that it was not unduly burdensome for Objectors to be directed to produce non-electronic documents related to campaign strategy or messaging and to locate and produce non-privileged and relevant documents by searching through all electronic communications containing the terms "No on 8"; "Yes on 8"; Prop 8"; "Proposition 8"; "Marriage Equality"; or "ProtectMarriage.com". Objectors were directed to begin production on a rolling basis "as soon as possible" and to conclude such production not later than March 31, 2010. Objectors were excused from producing a privilege log. (*See* Order at 14.)

## OBJECTIONS

Objectors respectfully object to the Order on the ground that it is "contrary to law" and "clearly erroneous" for the reasons set forth hereafter. Fed. R. Civ. P. 72(a). Insofar as these objections are made on the ground that the Magistrate Judge applied an incorrect legal standard, the objections are separate and independent. To the extent that objection is made on the ground that the Order is clearly erroneous, however, the objections should be considered interdependent and cumulative. Thus, for example, relevance must be assessed with respect to the timing of the motion in relation to the posture of the case. For the same reason, burden is directly intertwined not only with the posture of the case but with the—at best—tenuous relevance of the information sought in relation to the issues in the case.

**A. The Information That the Order Requires to Be Produced Is Either Entirely Irrelevant or of Such Tenuous Relevance to the Issues in the Case That It Was Clear Error to Require Production in Light of the Posture of the Case and the Substantial Burden Involved in Production.**

Objectors have been directed to produce, after the close of testimony, documents regarding campaign strategy and messaging, excepting only communications among a group of participants in the campaign against Proposition 8 that the Order deemed "core". The theory of the Order is that this information, somehow, will shed light upon the purpose of the voters in enacting that initiative, because the "mix of information" considered by voters who decided to vote in favor of Proposition 8 would (or at least might) have included "arguments against Proposition 8" that those Yes on 8 voters—by definition[2]—did not find persuasive. *See* Order at 6. While Objectors submit that this information is entirely irrelevant, it is sufficient for present purposes that any attenuated or theoretical relevance such documents might have is vastly outweighed by (a) other evidence in the case; (b) the posture of the litigation; and (c) the burden involved in production. Thus, the Order directing the production of such information is clearly erroneous.

1. <u>The Order Applied an Incorrect Legal Standard in Determining Relevance.</u>

As an initial matter, the Order applied an incorrect standard of relevance and is therefore erroneous as a matter of law. Objectors do not assert that the Court lacks power to order production at this stage of the case. The posture of the litigation, however, bears upon the standard of relevance to be applied.[3] The Order explicitly references, and relies upon, the ordinary standard of "discovery" relevance—quoting the portion of Rule 26 which allows discovery of information that may "lead to the discovery of admissible evidence". Order at 5. Yet, the discovery phase of this case has long-since passed. In fact, there has been a trial and the taking of testimony has concluded.

---

[2] Magistrate Judge Spero agrees that the "intent" of those who voted against Proposition 8 is not relevant. *See* Order at 6.

[3] Magistrate Judge Spero held that since there was no prejudice to Objectors, the Proponents' motion to compel was not inherently untimely. Order at 4. Objectors do not seek review of that determination. However, Magistrate Judge Spero purported to acknowledge that the "timing of the motion" needed to be considered "as it relates to burden pursuant to FRCP 45(c)(1)." *Id.* Yet nothing in the text of the Order suggests that any consideration actually was given to this interrelationship.

Those are critical facts which distinguish the situation involved in the January 8 Order from the situation here. First, the very fact that relevance cannot be justified under a discovery standard is sufficient, without more, to require reversal. Simply put, there is nothing for the documents at issue to "lead to". Unless the documents themselves can come in as probative evidence on issues in the case, there is no justification for ordering their production. Second, unlike Proponents, who are before the Court as litigants, Objectors are non-parties and their documents cannot be offered as admissions. To the contrary, any documents from Objectors that Proponents offered for the purpose of establishing indirectly what the "intent" of Proposition 8 was on the part of voters must be offered for the truth of the matter asserted in the documents, and that renders them inadmissible as hearsay.[4]

2. Objectors' Documents Are Irrelevant.

Whatever the applicable standard, the notion that the issues in this case will be materially enlightened by production of the documents at issue here cannot be seriously credited. Moreover, when such relevance is considered in light of the posture of the case and, most important, the burden involved in review and production, the Order is clearly erroneous.

First, this Court is not being asked to write a history of the campaign over Proposition 8—it is being asked to pass upon its constitutionality. Objectors do not question that evidence of what was said to voters during the campaign could help the Court understand why voters who voted in favor of the initiative did so (albeit only in an indirect and inferential sense), but the same simply cannot be said of documents from the initiative's opponents. A message in opposition to the passage of Proposition 8 may well have been something that was *considered* by a Yes on 8 voter, but, by definition, it did not persuade that voter. The question presented here is why a voter who voted in favor of Proposition 8 did so, but that cannot be illuminated by No on 8 documents in any realistic or meaningful sense. Indeed, it is for that reason that Proponents ultimately were reduced to arguing that the documents they seek could be relevant because some voter may have been so offended by something said by the No on 8 campaign that she changed her vote to Yes from No. But when that

---

[4] It is for that reason that plaintiffs relied on the party admission exception to the hearsay rule in their motion to compel production of the Proponents' documents.

kind of argument is the best that can be offered in support of a post-trial motion to compel the production of documents by non-parties, the only sensible conclusion to be drawn is that there is no serious argument in support of production. What Proponents want is simply a "free peek" at their political opponents' inside information, and that is a misuse of the litigation process.

Second, unlike Proponents' documents, which could be pertinent to intent and legitimacy because of arguments that the Proponents chose *not* to make (thereby revealing what Proponents believed Proposition 8 was really about or was intended to accomplish), the same thing cannot be said of No on 8 documents. The Order says that the "mix of information" (an isolated phrase that appears to have taken on a life of its own in connection with the various motions involving non-public campaign documents) includes "arguments considered and ultimately rejected by voters." Yet the only way that the No on 8 documents could be part of the "mix" of information considered by a Yes on 8 voter is if that information actually was heard by that voter—*i.e.* if it was *public.* But if it was public, then EQCA and the ACLU already have produced it voluntarily.

Even assuming that there is some EQCA or ACLU document that was not public, but is also not privileged, and that affected a Yes on 8 voter, its attenuated relevance cannot justify Objectors' burden. Objectors' burden, as non-parties resisting a demand for their documents, is not to demonstrate that there is no conceivable piece of paper that could lead, by some chain of inference piled upon inference, to some morsel of evidence bearing upon an issue in the case. The term "fishing expedition" was coined long ago to describe, and to defeat, production demands of that attenuated sort. But this is not merely "fishing"—it is casting for brook trout in the Atlantic Ocean. The odds of a catch do not justify the exercise, let alone (as we discuss in a moment) its cost. Or, to borrow an equally apt observation from the ancient lore of antitrust, Proponents' quest here is for a "strange red-haired, bearded, one-eyed, man with a limp". *United States v. Grinnell Corporation,* 384 U.S. 563, 591 (1966) (Fortas, J., dissenting). It is possible that there could be such a person, but the effort involved in ascertaining his existence and the trivial value of what he would contribute if found simply are not sufficient to justify the effort involved in the search.

3. Even If the Documents in Question Could Have Some Relevance, It Is Vastly Outweighed by the Burden of Production.

Relevance is not an issue to be considered in isolation, of course. It is tied inextricably and importantly to burden. As the Order recognizes, the Federal Rules themselves direct the court to avoid imposing an undue burden on non-parties. Fed. R. Civ. P. Rule 45(c)(1). While the Magistrate Judge made some efforts (discussed below) to reduce the burden and cost of compliance, he did not place relevance and burden on a scale. But that is exactly what he should have done. Given the posture of the case and the improbability of finding non-public yet non-privileged documents that are so material to the issues in the case that the Court would re-open the trial in order to admit them, it is "undue" to impose the burdens on Objectors that are detailed in the declarations they have submitted (which burdens are not disputed by anyone). Although the costs here may not seem immense when measured by the standards of a securities or antitrust class action among Fortune 500 companies, they are very substantial for non-profit organizations.[5]

The limitation of Objectors' search to documents containing only certain terms is directionally a good idea, but the articulation of the terms that must be searched is a virtual guarantee that nothing having anything to say about Proposition 8 will be eliminated from the review process. The ACLU ran a test search on a much more limited set of terms, which resulted in a universe of more than 60,000 e-mails that will need to be sorted manually to determine if they are "core group" communications and, then, those that are not will need to be reviewed to determine if a "strategy" or "message" was part of the document. (*See* Gill Decl. at 2 (Doc # 544).) EQCA estimated that three staff members, out of the twenty-nine staff members who make up the core group at EQCA, have

---

[5] At the hearing on February 25, Judge Spero suggested that the burden here was not all that great because Objectors were being represented on a pro bono basis by large law firms. That suggestion is not reiterated in the Order and, perhaps, was only meant facetiously. If seriously intended, however, it needs to be firmly rejected. Pro bono resources for legal services are every bit as scarce as charitable dollars—particularly in the current legal climate. The fact that lawyers are willing to offer their individual time to help organizations such as the ACLU and Equality California address issues of important public policy does not mean that those lawyers—let alone their entire law firms—may be conscripted to review documents in order to ameliorate the cost of complying with an otherwise unduly burdensome subpoena.

almost 60,000 email messages from the relevant time period. (*See* Carroll Decl. at 1 (Doc # 547); Kors Decl. at 6 (Doc. # 598).)[6]

Public interest resources are scarce resources, in terms of both people and dollars. The burden of complying with this order is no small matter for Objectors, and it was clear error not to conclude that that burden vastly outweighs any possible relevance of the documents at issue.

**B. The Order's Privilege Analysis Is Legally Erroneous**

The most important error made by the Order is its analysis of the privilege issue. Objectors consider this to be a matter of great importance—not simply as it applies in this case, but as it may be applied to political campaigns in the future. We therefore respectfully submit that the Order is incorrect as a matter of law and must be vacated for that reason.

As Judge Spero reads footnote 12 of the Ninth Circuit's opinion, the existence of a First Amendment privilege for campaign communications turns not only upon the nature of the communications but upon the identity of the people involved in them, that is, whether they were part of something known as a "core group". Further, Judge Spero's decision treats communications about strategy and messages in "silos". That is, communications among people in different organizations (save for a very select and formal group at the top of a formal campaign structure) are, by the Order's definition, automatically non-privileged. These conclusions not only are *not* compelled by the Ninth Circuit's decision (including, specifically, footnote 12), but they cannot be squared with the overall decision, which recognizes a broad zone of protection for campaign communications in order both to avoid a chilling effect on political discourse as well as to protect the right of individuals to associate to advance shared political goals.

The Ninth Circuit opinion unquestionably recognizes that there is a constitutionally protected interest in free discourse related to political campaigns, and that interest, and the purpose for which it was recognized, therefore must be the starting point and the touchstone of analysis. That being said,

[6] Judge Spero's Order also failed to consider the other burden-reducing steps proposed in the March 3 Kors Declaration, such as limiting the review and production of email to each EQCA staff member's Sent folder or eliminating the review and production of email to only key EQCA staff members. (Kors Supp. Decl. at 9 (Doc # 609).) These steps would significantly reduce the burden on third party EQCA.

Objectors do not dispute that there are limits to the protections afforded to campaign communications by the First Amendment. Thus, for example, the observation in footnote 12 that communications for a purpose such as "persuasion" or "recruitment" would not fall within the First Amendment appears sound. Similarly, communications among people who have some attenuated connection to a political campaign but who were not involved in efforts to develop or implement campaign strategy or messages might not properly be considered privileged since their activities bear no functional relation to the reason why internal campaign communications enjoy constitutional protection. The line actually drawn by the Order, however, is far too restrictive when considered in light of the constitutional rights recognized by the Ninth Circuit's opinion.

The instruction from the Ninth Circuit, while admittedly not fully explicated (it was a *footnote,* after all), was for this Court to consider the privilege in relation to the way the campaign in question was structured. The court plainly viewed that as a case specific inquiry, which is why it remanded the matter to the district court "which is best acquainted with…the structure of the 'Yes on 8' campaign." 591 F.3d at 1165 n.12. While the court did refer in passing to a "core group" of people whose communications would be protected, footnote 12 also plainly contemplated that that group needed to be defined "in light of the First Amendment associational interests the privilege is intended to protect." *Id*. In other words, the issue of whose communications were protected needed to be approached and defined in a functional, not a talismanic, sense.

The actual structure of the No on 8 campaign was provided to the court in the form of a declaration from Elizabeth Gill of the ACLU and two declarations from Geoff Kors, the Executive Director of Equality California. As their declarations—which were not contested factually—make clear, the No on 8 campaign involved communications about strategy and messages both within and among the organizations working at both a statewide and a local level to defeat passage of the initiative. (*See* Gill Supp. Decl. at 2-3 (Doc # 597); Kors Decl. at 3-6 (Doc # 598); Kors Supp. Decl. at 2-8 (Doc # 609).) The essential point of these submissions was to explain to the Court that the process of developing and implementing the strategy and messages of the No on 8 campaign was not limited to a small group of people operating within individual organizations or on a statewide basis. While Objectors fully appreciate that giving effect to the reality of that structure would result in a

broad definition of "core group," the approach adopted by Magistrate Judge Spero would impermissibly deprive people involved in the *function* of campaign strategy and messaging from the protections of the First Amendment that the opinion of the Ninth Circuit in this case recognized.

For example, Judge Spero's Order denied "core group" status to three groups of people who participated in the No on 8 Equality for All campaign: the EQCA Institute Board of Directors, the Equality for All Campaign Committee and the Equality for All Campaign Staff. As described in Mr. Kors' Declaration and Supplemental Declaration, each of these groups played vital roles in formulating campaign strategy and messaging in various areas of the campaign.[7] The Campaign Committee not only ratified the decisions of the Executive Committee, but also "regularly engaged in the formulation of campaign strategy and messaging" by adapting the generalized messaging developed by the Executive Committee members to more specific voter groups across the state as well as formulating strategy and messaging for those groups. (Kors Decl. at 4 (Doc #598).) The process of formulating messaging to reach a discrete group of voters in Sacramento County or on a college campus surely is worthy of the same First Amendment protection as the process of formulating messaging for a statewide television advertisement.

These observations apply both to the "vertical" (communications within an organization among people responsible for helping to establish and then implement campaign strategy and messages) and the "horizontal" (communications among people in different organizations) aspects of the Order. However, Objectors submit that denying any privilege to the latter type of communication

---

[7] Thus, as described in the February 22 Kors Declaration, "Equality for All campaign staff working in the different topical areas regularly engaged in the formulation of campaign strategy and messaging. For example: (a) the campaign staff dedicated to working on college campuses came up with a unique strategy and different messaging to get the "No on 8" message out on campuses (in part, they combined the "No on 8" messaging with "No on 4" messaging, another initiative of interest to younger voters (involving parental notification for abortion)); (b) the field staff dedicated to hosting phone banks, during which Equality for All volunteers would call potential voters, were constantly revising their strategies in reaching out to volunteers and in the messaging scripts communicated over the phone to voters; and (c) the fundraising staff working on getting people to host house parties (to raise money for the Equality for All campaign) developed house party tool kits that were regionally tailored and that included campaign messaging." Further, "[t]he EQCA Institute Board of Directors was communicated with regarding campaign strategy and messaging and involved in formulating EQCA's fundraising efforts to defeat Proposition 8." (Kors Decl. at 4-5, 6 (Doc #598).)

is particularly egregious. People in different organizations quite obviously communicate in support of their shared political objectives, and those communications occur not merely at the highest, formal level of a campaign but at all levels where coordination occurs. This is particularly the case where, as here, the political campaign is actually comprised of individual organizations, each of which is independently dedicated to achieving the same political goal, but choose to work together under an umbrella campaign organization for the express purpose of coordinating campaign strategy and messaging. *See* Kors Decl. at 3-5 (Doc # 598). Given the actual structure of the No on 8 campaign, communications at all levels between and among the organizations that participated in the campaign necessarily implicate the associational and political interests that are at the heart of the Ninth Circuit's opinion.[8]

To illustrate the error of this approach in vivid terms: If the reasoning of the Order were applied to a literal battle, as opposed to the virtual "war" of an election, then communications by Dwight Eisenhower of elements of the plan for the D-Day invasion to individuals not at the "core" level of command, so that those "non-core" people could perform their critical functions, would not be deemed privileged. Similarly, if people on the staff of the U.S. Army communicated about the invasion with people on the staff of the Royal Air Force those, too, would be excluded from protection.

The United States Supreme Court considered a closely analogous issue in *Upjohn v. United States,* 449 U.S. 383 (1981). The issue in that case was whether the attorney-client privilege could be limited to a so-called "control group"—senior executives of a corporation. The Court decisively rejected that approach, recognizing that what mattered was the function of the person in relation to the reasons for having a privilege. As the Court noted, in terms equally apt here: "The control group test…frustrates the very purpose of the privilege." *See* 449 U.S. at 392. What was relevant, said the Court, was who were the people who participated in the activities that gave rise to the need for attorney-client communications. Those often would be "[m]idle-level and indeed lower-level

---

[8] In fact, the Order does not even deem the representatives of each organization that participated in the Equality for All umbrella No on 8 campaign—the Campaign Committee—part of the "core group" that is protected by the First Amendment privilege.

employees" as it would only be "natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client…." *Id.* at 391.[9] So, too, in the case of political campaigns, many people not at a senior level of campaign responsibility nonetheless participate integrally in the development of campaign messages or strategies—particularly on a localized level. If the communications by and to these people are not entitled to First Amendment protection, then there can be little doubt that the conduct of campaigns will be significantly chilled, not to mention the rights of people to associate to advance shared political objectives. *See* Gill Supp. Decl. at 4-5 (Doc #597).

In short, it is one thing to say that certain *types* of communication are not privileged (although those communications most likely would not involve matters of non-public strategy or messages). However, it simply places too much weight on an unexplicated phrase in a footnote to hold that communications between people involved in the creation and implementation of strategies and messages for the campaign (on a statewide or local basis) are not protected by the First Amendment. Thus, the refusal of Magistrate Judge Spero to extend the privilege in the manner proposed by Objectors in the Kors and Gill declarations constitutes error as a matter of law.

**C. In All Events, the Order Should Be Modified to Preclude Disclosure to Anyone Involved in the Proposition 8 Campaign or Who May Be Involved in a Future Political Campaign Involving the Right of Same-Sex Couples to Marry.**

For the reasons set forth above, the Order must be reversed and the Proponents' motion to compel must be denied. In all events, however, there is no possible justification for allowing Objectors' documents (or their contents) to be disclosed to anyone involved in the campaign over Proposition 8 or future campaigns involving the marriage rights of same-sex couples. No legitimate purpose can be served by such disclosure and the harm to those who favor allowing same sex couples the right to marry (and who may need to gain that right through a future electoral campaign) is

---

[9] Without meaning to belabor the point, the law similarly recognizes that parties sharing a common interest in litigation enjoy a "joint defense" privilege which protect communications between counsel for different parties. *See, e.g., Waller v. Financial Corporation of America,* 828 F.2d 579, 583 n.7 (9th Cir. 1987).

obvious.[10] Therefore, the Order, in all events, should be modified to provide: (a) that disclosure of any documents shall be limited to attorneys at Cooper and Kirk PLLC who affirm that they will not in the future participate in any political campaign involving same-sex marriage, and (b) that no document produced by Objectors shall be admitted into evidence without first providing Objectors with the right to object and/or to seek restrictions upon access to the document at issue.

## CONCLUSION

For the foregoing reasons, the Order should be vacated and Proponents' motion to compel should be denied.

Dated: March 11, 2010

STEPHEN V. BOMSE
JUSTIN M. ARAGON
Orrick, Herrington & Sutcliffe LLP

ALAN L. SCHLOSSER
ELIZABETH O. GILL
ACLU Foundation Of Northern California

By: ________/s/__________
STEPHEN V. BOMSE

Attorneys for No on Proposition 8, Campaign for Marriage Equality: A Project of the American Civil Liberties Union of Northern California

LYNN H. PASAHOW
CAROLYN CHANG
LESLIE KRAMER
LAUREN WHITTEMORE
Fenwick & West LLP

Attorneys for Equality California

[10] For example, the letter sent to an EQCA donor that demanded that the donor provide a donation in the same amount to the Yes on 8 campaign or risk a boycott effort directed towards its customers was signed by Andrew Pugno in his role as General Counsel of ProtectMarriage.com. *See* Doc # 601, Ex. A. In this capacity, Mr. Pugno now represents ProtectMarriage.com as a Defendant-Intervenor.