COOPER AND KIRK, PLLC
Charles J. Cooper (DC Bar No. 248070)*
*ccooper@cooperkirk.com*
David H. Thompson (DC Bar No. 450503)*
*dthompson@cooperkirk.com*
Howard C. Nielson, Jr. (DC Bar No. 473018)*
*hnielson@cooperkirk.com*
Nicole J. Moss (DC Bar No. 472424)*
*nmoss@cooperkirk.com*
Jesse Panuccio (DC Bar No. 981634)*
*jpanuccio@cooperkirk.com*
Peter A. Patterson (Ohio Bar No. 0080840)*
*ppatterson@cooperkirk.com*
1523 New Hampshire Ave. N.W., Washington, D.C. 20036
Telephone: (202) 220-9600, Facsimile: (202) 220-9601

LAW OFFICES OF ANDREW P. PUGNO
Andrew P. Pugno (CA Bar No. 206587)
*andrew@pugnolaw.com*
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 608-3065, Facsimile: (916) 608-3066

ALLIANCE DEFENSE FUND
Brian W. Raum (NY Bar No. 2856102)*
*braum@telladf.org*
James A. Campbell (OH Bar No. 0081501)*
*jcampbell@telladf.org*
15100 North 90th Street, Scottsdale, Arizona 85260
Telephone: (480) 444-0020, Facsimile: (480) 444-0028

ATTORNEYS FOR DEFENDANT-INTERVENORS DENNIS HOLLINGSWORTH,
GAIL J. KNIGHT, MARTIN F. GUTIERREZ, MARK A. JANSSON,
and PROTECTMARRIAGE.COM – YES ON 8, A
PROJECT OF CALIFORNIA RENEWAL

* Admitted *pro hac vice*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

KRISTIN M. PERRY, SANDRA B. STIER,
PAUL T. KATAMI, and JEFFREY J.
ZARRILLO,

      Plaintiffs,

    v.

ARNOLD SCHWARZENEGGER, in his official
capacity as Governor of California; EDMUND
G. BROWN, JR., in his official capacity as At-
torney General of California; MARK B. HOR-

CASE NO. 09-CV-2292 VRW

**DEFENDANT-INTERVENORS DEN-
NIS HOLLINGSWORTH, GAIL
KNIGHT, MARTIN GUTIERREZ,
MARK JANSSON, AND PROTECT-
MARRIAGE.COM'S OBJECTIONS
TO MAGISTRATE JUDGE SPERO'S
MARCH 5, 2010 ORDER GRANTING
MOTION TO COMPEL**

TON, in his official capacity as Director of the California Department of Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; and DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles,

Date:    March 16, 2010
Time:    10:00 a.m.
Judge:  Chief Judge Vaughn R. Walker
Location:  Courtroom 6, 17th Floor

                    Defendants,

and

PROPOSITION 8 OFFICIAL PROPONENTS DENNIS HOLLINGSWORTH, GAIL J. KNIGHT, MARTIN F. GUTIERREZ, HAKSHING WILLIAM TAM, and MARK A. JANSSON; and PROTECTMARRIAGE.COM – YES ON 8, A PROJECT OF CALIFORNIA RENEWAL,

                    Defendant-Intervenors.

<u>Additional Counsel for Defendant-Intervenors</u>

ALLIANCE DEFENSE FUND
Timothy Chandler (CA Bar No. 234325)
*tchandler@telladf.org*
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 932-2850, Facsimile: (916) 932-2851

Jordan W. Lorence (DC Bar No. 385022)*
*jlorence@telladf.org*
Austin R. Nimocks (TX Bar No. 24002695)*
*animocks@telladf.org*
801 G Street NW, Suite 509, Washington, D.C. 20001
Telephone: (202) 393-8690, Facsimile: (202) 347-3622

* Admitted *pro hac vice*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................ii

BACKGROUND ................................................................................. 1

OBJECTIONS ................................................................................. 9

CONCLUSION................................................................................. 17

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Page**

*Baker v. Ark. Blue Cross*, No. 08-13974, 2009 U.S. Dist. LEXIS 50367
    (N.D. Cal. May 29, 2009) ...................................................................................... 13

*Burt Hill, Inc. v. Hassan*, No. 09-1285, 2010 U.S. Dist. LEXIS 7492
    (W.D. Pa. Jan. 29, 2010) ...................................................................................... 13

*Edelen v. Campbell Soup Co.*, No. 08-299, 2010 U.S. Dist. LEXIS 18693
    (N.D. Ga. Mar. 2, 2010) ........................................................................................ 13

*In re Rail Freight Fuel Surcharge Antitrust Litig.*, Misc. No. 07-489,
    2009 U.S. Dist. LEXIS 99187 (D.D.C. Oct. 23, 2009) ....................................... 13

*McNulty v. Reddy Ice Holdings, Inc.*, No. 08-13178, 2010 U.S. Dist. LEXIS 5310
    (E.D. Mich. Jan. 25, 2010) ................................................................................... 13

*Oracle USA, Inc. v. SAP AG*, No. 07-1658, 2009 U.S. Dist. LEXIS 91432
    (N.D. Cal. Sept. 17, 2009) .................................................................................... 13

*Park v. Korean Air Lines Co.*, No. 07-5107, 2009 U.S. Dist. LEXIS 107647
    (C.D. Cal. Nov. 18, 2009) ..................................................................................... 13

*Perry v. Schwarzenegger*, 09-17241 (9th Cir. Jan. 4, 2010) .................................... 10

*Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010) .......................................... 6

*Quinby v. WestLB AG*, 245 F.R.D. 94 (S.D.N.Y. 2006) ........................................... 13

*Tuite v. Henry*, 98 F.3d 1411 (D.C. Cir. 1996) ....................................................... 10

**Other**

Fed. R. Civ. P. 45(d)(2)(A)(ii) .................................................................................... 9

Fed. R. Civ. P. 45(c)(1) ............................................................................................... 9

Fed. R. Civ. P. 72(a) ............................................................................................... 1, 9

John Wildermuth, *Prop. 8 among costliest measures in history*,
    S.F. Gate, Feb. 3, 2009, *at* http://articles.sfgate.com/2009-02-03/bay-
    area/17190799_1_same-sex-marriage-equality-california-campaign ..................... 1

Pursuant to Fed. R. Civ. P. 72(a), Defendant-Intervenors ProtectMarriage.com, Dennis Hollingsworth, Mark Jansson, Gail Knight, and Martin Gutierrez (collectively, "Proponents"), respectfully assert the following objections to portions of the Order of Magistrate Judge Joseph C. Spero, entered on March 5, 2010.  *See* Doc # 610.

## **BACKGROUND**

The Proposition 8 election was preceded by one of the most extensive and expensive ballot measure campaigns in California's history.  *See, e.g.*, John Wildermuth, *Prop. 8 among costliest measures in history*, S.F. GATE, Feb. 3, 2009, *at* http://articles.sfgate.com/2009-02-03/bay-area/17190799_1_same-sex-marriage-equality-california-campaign.  ProtectMarriage.com—one of the Defendant-Intervenors in this case—was the principal, but certainly not the only, organization promoting passage of Proposition 8.  Aligned against Proposition 8 were a variety of organizations that together outspent ProtectMarriage.com—to a total tab of $45 million.  *See id.*

As the Court is aware, Plaintiffs have contended that virtually every document created by Proponents during the course of the campaign is relevant to their constitutional challenge to Proposition 8.  *See* Doc # 187-3 (Plaintiffs' Requests for Production).  Proponents have long objected to the sweeping scope of Plaintiffs' discovery requests, on First Amendment privilege, relevance, and burden grounds.  *See, e.g.*, Doc #s 187, 197.  Proponents have repeatedly maintained, however, that to the extent the Court deemed such discovery relevant and nonprivileged, Proponents would be obliged to seek reciprocal discovery from the groups and persons who campaigned against Proposition 8.  *See, e.g.*, Doc # 187 at 10-11.

Proponents thus issued document subpoenas to several organizations that mounted major campaigns in opposition to Proposition 8, including Californians Against Eliminating Basic Rights ("CAEBR"), Equality California, and No on Proposition 8, Campaign for Marriage Equality, A Project of the American Civil Liberties Union of Northern California ("ACLU") (collectively, "the No-on-8

1

groups"). *See* Doc #s 472-1, 472-2.  The document requests in the subpoenas mirrored those in Plaintiffs' requests to Proponents.  For example, the subpoenas require the No-on-8 groups to produce: (i) "all documents … or other materials that you distributed to voters, donors, potential donors, or members of the media regarding Proposition 8," and (ii) "all documents constituting communications that you prepared for public distribution relating to Proposition 8"; and (iii) "all versions of any documents that reflect communications relating to Proposition 8 between you and any third party." Doc # 472-1.[1]  Because Proponents' motion seeking a limitation on the permissible scope of discovery was being litigated in this Court and the Ninth Circuit, Proponents advised the No-on-8 groups that the requests were to be read to extend no further (but no less extensively) than the permissible scope of discovery as ultimately defined by this Court.  Proponents kept the No-on-8 groups apprised of developments on this front and continually reminded them of their obligations to produce pursuant to Rule 45.  *See* Doc # 472-3.

The No-on-8 groups objected to the subpoenas on several grounds, including relevance, privilege, and burden.  *See* Doc # 472-4.  For example, the ACLU objected that "[t]he Subpoena seeks information that is irrelevant to the issues in the case," that "[t]he Subpoena seeks material that is protected and privileged from disclosure pursuant to the First Amendment," and that "[c]ompliance with the Subpoena would impose an undue burden on [the] ACLU."  *See id.* at 3-4.  And Equality California objected to the subpoena "on the ground that the information and/or documents sought in the requests are irrelevant," and to the extent it "seeks information and documents that were not publicly distributed on privacy grounds and to the extent it violated protections guaranteed by the United States Constitution."  *Id.* at 49-50.  Indeed, Equality California flatly stated it "will not produce any information or documents that were not publicly distributed."  *Id.* at 50.  And CAEBR objected that the subpoena:  is "unduly burdensome"; "requires disclosing confidential research and proprietary

---

[1] Pursuant to Plaintiffs' alteration of their Request No. 8, this last request was later altered
(Continued)

information"; infringes "the right to privacy and freedom of association"; and "seeks documents that are not relevant to this action." *Id.* at 28-34.

On October 1 and November 11, this Court set limitations on the permissible scope of a request that seeks documents regarding Prop 8 issued to "any third party." *See* Doc #s 214, 252.  On January 6, 2010, however—after the First Amendment privilege issue had been litigated in the Ninth Circuit—Magistrate Judge Spero withdrew those limitations, ruling that "[w]e're going back."  Hr'g of Jan. 6, 2010, Tr. at 89.  On January 8, Magistrate Judge Spero ruled that the "First Amendment privilege protects 'private, internal campaign communications concerning the *formulation of strategy and messages,* ' " and that "[c]ommunications to anyone outside the core group are not privileged under the First Amendment."  Doc # 372 at 2, 5 (quoting *Perry v. Schwarzenegger,* 09-17241, slip op. at 36 n.12 (9th Cir. Jan. 4, 2010) (emphasis in original)).  Magistrate Judge Spero further held that any such "documents that contain, refer or relate to arguments for or against Proposition 8" are "relevant" and must be produced, and that that "all documents consisting of communications between or among members of the core group" must be logged.  *Id.* at 5.  Magistrate Judge Spero held that a "short production schedule is necessary in light of the trial scheduled to begin on January 11, 2010."  *Id.* at 5-6.

Proponents filed extensive objections to Magistrate Judge Spero's rulings, including objections based on First Amendment privilege, relevance, and burden.  *See* Doc # 446.  This Court rejected those objections *in toto*, ruling that Magistrate Judge Spero's rulings were "quite correct."  Trial Tr. 1485:6. *See also* Doc # 496.  With respect to Proponents' burden objections—specifically, Proponents' objection that Magistrate Judge Spero required review and production of tens of thousands of documents over a single week while trial was occuring—the Court stated that "in light of the ongoing trial, it was not in error to set an ambitious, but orderly, production schedule."  *Id.* at 3.

_____

to mirror Plaintiffs' revised request.  *See* Doc # 472-3 (Letters of Oct. 9, 2009); Doc # 472-2.

On January 12, 2010, Proponents advised the No-on-8 groups of Magistrate Judge Spero's rulings and requested that they identify their "core group" by close of business on January 13 and then begin immediate, rolling production of all responsive, nonprivileged documents. *See* Doc # 472-5. The No-on-8 groups apprised Proponents that, despite this Court's orders defining the permissible scope of document requests in this case, they stood by previous objections and would not produce all documents responsive to the requests in the subpoenas. *See* Doc # 472-6.

Accordingly, Proponents, on January 15, filed a motion to compel production from the No-on-8 groups. *See* Doc # 472. In light of the ongoing trial, Proponents also filed a motion to shorten time for briefing and a hearing on the motion to compel. *See* Doc # 473. The Court did not grant the motion to shorten time. Instead, at the end of trial, on January 27, the Court called for a response from the No-on-8 groups, to be filed by February 2, 2010. *See* Doc # 526; Trial Tr. 2941-42. At the close of trial, Proponents stated that they were "not in a position to formally rest [their] case until [the motion to compel the No on 8 groups is] resolved." Trial Tr. 2941:21-22. Proponents explained: "If we were to receive documents from the No On 8 campaign, then we might want leave to submit those documents and/or call witnesses pertaining to those subject matters." *Id.* at 2941:23-25.

The No-on-8 groups filed their responses on February 2, along with declarations in support. *See* Doc #s 541, 542 (CAEBR's response); Doc #s 543, 544 (ACLU's response); Doc #s 546, 547 (Equality California's response). On February 4, the Court referred the motion to compel to Magistrate Judge Spero. *See* Doc # 572. On February 9, Magistrate Judge Spero ordered CAEBR to "file a declaration justifying the inclusion in its core group of the individuals identified" in a letter to Proponents spelling out certain documents that were being retained on a basis of First Amendment privilege. Doc # 585 at 1. CAEBR filed such a declaration on February 12. *See* Doc # 593. On February 11, Magistrate Judge Spero ordered the ACLU and Equality California to each submit, by February 22, additional declarations "identify[ing] only those individuals who were involved in that

4

organization's campaign; the declarations [were] not [to] include individuals or entities from other organizations." Doc # 589 at 2. On February 22, the ACLU and Equality California submitted declarations in response to the February 11 order. *See* Doc #s 597, 598. Both declarations went well beyond discussing individuals and entities "involved in that organization's campaign" and instead offered extensive representations about other organizations and the structure of the larger campaign waged in opposition to Proposition 8. On February 24, after the deadline set by Magistrate Judge Spero, Equality California submitted another declaration describing the structure of the overall campaign in opposition to Proposition 8 rather than the specific persons involved in Equality California's "core group." *See* Doc # 601.

Magistrate Judge Spero held a hearing on Proponents' motion to compel on February 25. At the hearing, Equality California submitted as an exhibit two graphs purporting to show the structure of an entity called "Equality for All Campaign." *See* Doc #s 602, 603. Following the hearing, Magistrate Judge Spero ordered Equality California to file "an affidavit … of executive committee members, campaign committee members and consultants as well as a description of reasonable search term methodology of Equality CA's mail servers." Doc # 602. At 11:54 p.m. on March 3, Equality California submitted a declaration that again contravened the Court's instructions and listed the names of hundreds of individuals and entities involved in the "Equality for All Campaign." *See* Doc # 609. The declaration also explained that Equality California had performed an extensive analysis of its electronic files. *See id.* at 9. Equality California proposed that "the following search terms be used to reduce the number of email [*sic*] to be reviewed: 'No on 8,' 'Yes on 8,' 'Prop 8,' 'Proposition 8,' 'Equality for All,' 'Marriage Equality,' and 'ProtectMarriage.com.' " *Id.* at 10. Equality California also explained that "[a]pproximately 75 people at EQCA could have potentially relevant emails" stored on their individual hard drives, and that each of those persons had the ability to remove relevant emails from the organization's central email server and to store them on those local hard drives. *Id.* at 9.

At 2:48 p.m. on March 5, Magistrate Judge Spero issued an order granting Proponents' motion to compel. *See* Doc # 610. First, Magistrate Judge Spero concluded that Proponents sought relevant documents from the No-on-8 groups because "the mix of information available to voters who supported Proposition 8 is relevant … to the questions of intent and state interest. That mix of information includes arguments … against Proposition 8…. [T]he documents and communications at issue may shed light on the meaning and impact of the messages that were sent to the voters." *Id.* at 6.

Second, Magistrate Judge Spero held that "nothing in [the Ninth Circuit's amended opinion in *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010),] limits footnote 12's application to the specific circumstances of the requests served by Plaintiffs on Proponents and to the structure of the Yes on 8 campaign." *Id.* at 7 (quotation marks omitted). Accordingly, the Ninth Circuit opinion, and footnote 12, were applicable to the instant dispute and "the court … appl[ied] the First Amendment privilege to communications about strategy and messages internal to each No on 8 group's core group." *Id.* Consistent with this Court's repeated prior rulings, Magistrate Judge Spero held that "[t]he privilege applies only to communications within a campaign organization—communications between or among independent campaign organizations are not covered by the First Amendment privilege." *Id. See also id.* at 13 ("The First Amendment does not cover communications between separate organizations.").

Third, Magistrate Judge Spero defined the individuals that qualified as each No-on-8 group's "core group." *Id.* at 8-10. Magistrate Judge Spero also defined a "core group" for "Equality for All." *Id.* at 10-11. Among others included in CAEBR's "core group" were San Francisco City Attorney Dennis Herrera (the chair of CAEBR) and Armour Media Group, which Magistrate Judge Spero described as a "campaign consulting firm[] that had significant input into campaign strategy and messages." *Id.* at 8. Included in Equality California's "core group" were fifty-five individuals (plus assistants to those individuals). Magistrate Judge Spero also defined a "core group" for Equality for

6

All, which included over fifty individuals and firms (plus assistants to those individuals and employees of those firms). *Id.* at 11. City Attorney Dennis Herrera was included in the Equality for All "core group." *Id.*

Fourth, the Court noted that "some individuals … are within the core group of more than one organization" and "the scope of the First Amendment privilege could arguably depend on the capacity in which a core group member is communicating." *Id.* at 12. Nonetheless, on burden grounds, Magistrate Judge Spero held that he would "not require the production of any communications about strategy and messages between core group members who belong to that core group, regardless of the capacity in which the core group member is communicating." *Id.*

Fifth, Magistrate Judge Spero held that to avoid "undue burden" on the No-on-8 groups, they "shall only be required to review electronic documents containing at least one of" six of the seven search terms proposed by Equality California in its March 3 declaration ("Equality for All" was omitted). *Id.* at 10, 13. Magistrate Judge Spero also held that "Equality California shall only be required to search its central email server for responsive electronic documents." *Id.* Magistrate Judge Spero stated that these limitations were sufficient to "reduce costs and focus the production on only the most responsive documents." *Id.*

Sixth, Magistrate Judge Spero held that the "No on 8 groups are not required to produce a privilege log." *Id.* at 14.

In sum, subject to the search-term limitations, the March 5 order requires each of the three No-on-8 groups—CAEBR, ACLU, and Equality California—to produce any and "all documents in its possession that contain, refer or relate to arguments for or against Proposition 8, except those communications solely among members of its core group." *Id*. Thus, by way of example, so long as a document meets the relevance standard, the following must be produced under the March 5 order:

- documents distributed solely within a single No-on-8 group, so long as one person outside

7

the "core group" sent or received it within the organization;

- documents sent by an employee or member or volunteer of one No-on-8 group (say Equality California) to an employee, member, or volunteer of another group (say the ACLU or Equality for All or any of the other dozens of organizations involved in the No-on-8 campaign);

- documents sent by a member of one group's "core group" (say the ACLU's) to another group's "core group" (say Equality California's);

- documents sent by a No on 8 group (say the ACLU) to a single donor or voter, including friends, family, colleagues, and others that members of the group may have associated with for political purposes;

- documents constituting drafts of what would later become public advertisements, so long as one person outside the "core group" sent or received them;

- documents containing internal discussion about media and public-relations strategy, proposed talking points, polling analysis, focus-group research, and the like, so long as one person outside the "core group" sent or received them.

On March 9, Proponents moved Magistrate Judge Spero to reconsider the list of search terms set out in the March 5 order. *See* Doc # 611. Proponents explained that those terms had been unilaterally submitted by the searching party and that Proponents did not have opportunity to respond to those terms after they were suggested and before the March 5 order issued. *See id.* at 3-4. Proponents explained that the search terms adopted would result in the likely sorting out of thousands of documents highly relevant under this Court's orders. *Id.* at 4. Proponents thus suggested the addition of a limited number of terms designed to capture relevant documents. *Id.* Magistrate Judge Spero rejected the motion the next day. *See* Doc # 612.

On March 11, the ACLU and Equality California jointly filed objections to the March 5 order.

*See* Doc # 614.

## OBJECTIONS

Taking as a given this Court's rulings and the Ninth Circuit's prior opinion in this case, Proponents do not, in the main, object to the March 5 order.[2] Magistrate Judge Spero was correct in concluding that, based on this Court's prior rulings, Proponents' motion to compel had to be granted. Nonetheless, Proponents do object to a few discrete portions of, and omissions from, the March 5 order and thus, pursuant to Fed. R. Civ. P. 72(a), respectfully submit the following objections:

1. In the March 5 order, Magistrate Judge Spero "recognize[d] the need to ensure that any burden borne by the third parties is not undue." Doc # 610 at 13 (quoting Fed. R. Civ. P. 45(c)(1)). The order thus outlines two steps that Magistrate Judge Spero felt would satisfy this criterion: the use of search terms and the limitation of Equality California's search to its central email server. *Id.* The end of the March 5 order, however, also states that the "No on 8 groups are not required to produce a privilege log." *Id.* at 14. This holding is not linked to ensuring that the burden is not undue pursuant to Rule 45; indeed, no explanation is given for this holding. Proponents respectfully submit that there is no basis for waiving the privilege log requirement and that this ruling was "clearly erroneous and contrary to law." Fed. R. Civ. P. 72(a).

Rule 45 explicitly states that "[a] person withholding subpoenaed information under a claim that it is privileged … *must* … describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(d)(2)(A)(ii) (emphasis added). Accordingly, it cannot be an undue burden under Rule 45 to require a party to comply with the explicit requirements of Rule 45. And both this Court and the Ninth Circuit rejected Proponents' arguments that the First Amendment privilege could be advanced without a log; instead, both Courts explicitly

9

held that a log is required to assess the validity of, and to preserve, the First Amendment privilege. *See* Doc # 214 at 9-10; Doc # 237 at 5 (holding that "a privilege log" is a "prerequisite to the assertion of any privilege"); *Perry v. Schwarzenegger*, No. 09-17241, slip op. at 7 n.1 (N.D. Cal. Jan. 4, 2010); Hr'g of Dec. 16, 2009, Tr. at 50:7-11, 54:17-21, 62:16-18 ("It's pretty clear the Court of Appeals said in order to preserve this privilege, you have to prepare a privilege log."), 76:13-17 ("It does seem to me that if there is anything crystal clear in the Ninth Circuit panel's decision—and it is, by and large, a very clear and thoughtful opinion—it is that the preservation of this First Amendment privilege requires the production of a privilege log."), 77:9-10; Hr'g of Jan. 6, 2010, Tr. at 118:6 ("You were required to put a privilege log together."); Doc # 372 at 5 ("[P]roponents must revise their privilege log to include, as protected by the First Amendment privilege, all documents consisting of communications between or among members of the core group."). *See also Tuite v. Henry*, 98 F.3d 1411, 1416-17 (D.C. Cir. 1996). Indeed, Magistrate Judge Spero held that nothing in the Ninth Circuit's *Perry* opinion limits its breadth to claims of First Amendment privilege by Proponents. *See* Doc # 610 at 7. This being so—and because, as this Court has held, "if there is anything crystal clear in the Ninth Circuit panel's decision … it is that the preservation of this First Amendment privilege *requires* the production of a privilege log," Hr'g of Dec. 16, 2009, Tr. 76:13-17 (emphasis added)—there is simply no basis in law for waiving the requirement that the No-on-8 groups must submit a privilege log in order to successfully preserve their First Amendment privilege.

2.   Proponents object, as grossly underinclusive, to the list of search terms included in the March 5 order, and to the extent necessary, to Magistrate Judge Spero's later rejection of additional search terms, *see* Doc # 612.

The March 5 order identifies six search terms that the No-on-8 groups may use to limit the

---

[2] Nonetheless, Proponents continue to maintain that on First Amendment privilege, relev-
(Continued)

10

electronic documents they must review.  These search terms were adopted verbatim from the

declaration of Equality California, submitted late in the evening on March 3.  *See* Doc # 609 at ¶ 15.

Unfortunately, the March 5 order issued before Proponents had finished preparing a response to this

declaration (including its many other contestable assertions, such as the submission of hundreds of

names of persons and entities clearly not in Equality California's "core group," *see id.* at ¶¶ 5-8).

Proponents object to Magistrate Judge Spero's adoption of these search terms to the extent

that they do not take into account anything other than the unilateral submission of the searching

party.  In the hopes of negating the need to file an objection with this Court regarding this issue, on

March 9 Proponents submitted to Magistrate Judge Spero a motion to reconsider this portion of the

order.  Proponents accepted (and still accept) that the use of search terms is a reasonable method of

limiting the burden on the No-on-8 groups, but suggested that some additional terms would increase

the likelihood of capturing the universe of documents highly relevant under this Court's prior orders.

In particular, Proponents requested that Magistrate Judge Spero add the following terms to the list:

> campaign; ad; advertisement; script; draft; emotion*; famil*; focus* w/3 group; poll*;
> message; Newsom; relig*; school*; "whether you like it or not"; attorney w/3 gener-
> al*; Brown; AG; governor*; Prentice; bigot; right-wing*; hate; ballot; vote; Obama;
> procreat*; harass*; violence; fear; intimidat*; motivat*; Massachusetts; Mass.; MA;
> equal*; dignity; stigma*; fair*; educat*; parent*; moral*; Unitarian; Episcopal*;
> Mormon*; Catholic*; Christian*; LDS; Latter Day Saints; Jew*; evangelical*; fun-
> damental*; "activist judg*"; Wirthlin; editorial*; child*; church*; curriculum; demo-
> graphic*.[3]

Doc # 611 at 4.  Magistrate Judge Spero denied the motion.  Proponents object to the limited nature

of the search terms adopted in the March 5 order and to Magistrate Judge Spero's failure to consider

the Proponents' proposal of additional search terms before issuing the order.  Accordingly,

Proponents respectfully request that the Court amend the March 5 order to include the above terms.

Magistrate Judge Spero denied the motion for reconsideration on procedural and substantive

---

ance, and burden grounds this Court's prior and predicate orders and rulings constitute error.

[3] When  a term has a "*" symbol this indicates that the search should be for any variant of
(Continued)

grounds.  Because Proponents could have, and now do, simply come directly to the Court with their

objections under Rule 72(a), the procedural grounds Magistrate Judge Spero adopted for rejecting

the motion are inconsequential here.[4]  *Id.*  But to the extent Magistrate Judge Spero's March 10

order provides additional substantive reasons for the March 5 order's list of search terms, Propo-

_____

the root term.

    [4]  In any event, neither procedural ground was sufficient to deny Proponents' motion.  The first procedural ground advanced by Magistrate Judge Spero was that Proponents failed to seek leave to file a motion for reconsideration.  *See* Doc # 612 at 2.  Had this been the only ground for denial, it could have been easily cured by Proponents simply resubmitting the filing as an attachment to a motion for leave.  The second procedural ground advanced by Magistrate Judge Spero was that "Proponents did not address concerns regarding electronic search terms at [the February 25 hearing] or in the week between the hearing and the court's order."  *Id.* at 2-3.  That is true.  Proponents did not and do not object to the use of reasonable search terms to limit the burden on the No-on-8 groups; so there was no reason for Proponents to object to Magistrate Judge's suggestion at the hearing that such reasonable terms might be employed.  *See* Hr'g of Feb. 25, 2010, Tr. 50:19-23 ("Why don't you in your submission on the 3rd, take a stab at describing what might be a *reasonable* search methodology…..") (emphasis added).  Magistrate Judge Spero then issued an order directing Equality California to submit "an affidavit … of executive committee members, campaign committee members and consultants as well as a description of [a] reasonable search methodology of Equality CA's mail servers."  *See* Doc # 602.  Again, Proponents did not object to the use of a "reasonable search methodology" and thus had nothing to respond to at that point.  Equality California then submitted a voluminous declaration, with hundreds of names and many different proposed restrictions on search methodology, at 11:54 p.m. PST on March 3.  *See* Doc # 609.  It is at this point that Proponents had something to respond to, but the March 5 order issued less than 40 hours later.  Prior to issuing the March 5 order, the Court had granted the No-on-8 groups repeated opportunities to respond to Proponents' motion as well as long periods in which to do so.  *Compare* Doc # 472 (motion to compel submitted on January 15, 2010), *and* Doc # 473 (motion to shorten time to respond to motion to compel submitted on January 15), *with* Doc # 526 (order of January 26 granting No-on-8 groups until February 2 to respond), *and* Doc # 585 (order setting hearing for February 22 and affording CAEBR opportunity to submit additional evidence in support of its privilege claim), *and* Doc # 589 (order of February 11 affording ACLU and Equality California opportunity to submit additional evidence in support of its privilege claim), *and* Doc # 590 (order resetting hearing to February 25 to accommodate schedule of ACLU), *and* Doc # 602 (order of February 26 affording Equality California third opportunity to submit evidence in support of its privilege claim).  Indeed, Magistrate Judge Spero even allowed submissions by the No-on-8 groups that were clearly out of time.  *Compare* Doc # 585 (order requiring declaration by Equality California to be filed by February 22), *with* Doc # 601 (declaration submitted on February 24).  Given this course of dealings, in which the No-on-8 groups have been given great leniency in, and long timeframes for, responding to issues surrounding the motion to compel, it was unreasonable and clearly erroneous for Magistrate Judge Spero not to hear from Proponents on the issue of search terms simply because Proponents had not submitted a response in less than two business days (and without any notice that this was required).  Indeed, as noted in text, it is hardly consistent with fair
    (Continued)

nents object that those reasons are clearly erroneous.  Magistrate Judge Spero stated that "Proponents have not made a showing that their proposed search terms would capture a significant number of *responsive* documents that otherwise would not be produced" and therefore the terms would add "unnecessary burden."  Doc # 612.  But Proponents are not in control of the No-on-8 groups' electronic files, so it is hard to imagine how Proponents could make a showing that proposed search terms "would capture a significant number of responsive documents."[5]  Indeed, only the No-on-8 groups were in a position to ensure that certain search terms would yield certain results.  *See* Hr'g of Feb. 25, 2010, Tr. 34:19-21 (statement of counsel for ACLU) ("I tried to figure out what are the search terms that we might use that could get this quickly down to nothing."); *id.* at 48:1-2 (statement of counsel for Equality California) (stating that Equality California "r[an] some basic word searches and figure[ed] out how many e-mails that might pick up").  That is why it was clearly erroneous for Magistrate Judge Spero to adopt terms that the searching party *unilaterally* tested and then proposed.  Indeed, while the use of search terms is a common practice, courts allow both parties to have input into that process.  *See, e.g.*, *Oracle USA, Inc. v. SAP AG*, No. 07-1658, 2009 U.S. Dist. LEXIS 91432, at *33-35 (N.D. Cal. Sept. 17, 2009); *Baker v. Arkansas Blue Cross*, No. 08-13974, 2009 U.S. Dist. LEXIS 50367, at *4-5 (N.D. Cal. May 29, 2009); *Edelen v. Campbell Soup Co.*, No. 08-299, 2010 U.S. Dist. LEXIS 18693, at *16-17 (N.D. Ga. Mar. 2, 2010); *Burt Hill, Inc. v. Hassan*, No. 09-1285, 2010 U.S. Dist. LEXIS 7492, at *34 (W.D. Pa. Jan. 29, 2010); *McNulty v. Reddy Ice Holdings, Inc.*, No. 08-13178, 2010 U.S. Dist. LEXIS 5310, at *8 n.4 (E.D. Mich. Jan. 25, 2010); *Park v. Korean Air Lines Co.*, No. 07-5107, 2009 U.S. Dist. LEXIS 107647, at *9 (C.D. Cal. Nov. 18, 2009); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, Misc. No. 07-489, 2009 U.S. Dist. LEXIS 99187, at *14, 40-41 (D.D.C. Oct. 23, 2009); *Quinby v. WestLB AG*, 245 F.R.D. 94, 99

---

judicial process for search terms to be adopted based on the *searching party's* unilateral submission.
[5] It is equally true that Equality California made no showing that its proposed terms *would* capture a significant number of responsive documents.

(S.D.N.Y. 2006).

3.   The March 5 order states that Equality California may limit its search for responsive documents to "its central email server."  Doc # 610. at 13.  But as Equality California forthrightly explained in its declaration, "[a]pproximately 75 people at EQCA could have potentially relevant emails" on their individual hard drives that are not on the central email server.  Doc # 609 at ¶ 9.  The declaration also makes clear that "individual staff members can archive email messages" at any time to remove them from the central server.  *Id.*  Proponents thus object to the March 5 order's elimination of approximately 75 sources of documents that are potentially highly relevant under this Court's orders.  Proponents also object to the March 5 order to the extent it does not require Equality California to cease archiving any and all emails from the central server.  Indeed, if the central-server limitation is to stand (and it should not), Equality California should be required to produce all responsive documents that were archived after the date the organization first received a subpoena and was thus on notice of its duty to preserve.

4.   The March 5 order makes findings regarding the persons who should be considered part of the "core group" of Equality for All.  Doc # 610 at 10-11.  Equality for All was not named in Proponents' motion to compel, so it is somewhat unclear why Magistrate Judge Spero made these findings.  Proponents object to these findings as clearly erroneous and contrary to law because they were made without any evidence placed before Magistrate Judge Spero by Equality for All itself.

5.   In any event, there appears to be only one practical implication for these findings:  if a member of one of the No-on-8 groups' "core groups" was also a member of Equality for All's "core group," it is possible that that member will have in his or her possession a document that was distributed solely among the Equality for All core group.  The March 5 order could be read to hold that the No-on-8 group is not required to produce this document.  This was clear error under this Court's prior rulings.  Proponents, over their objections, were required to produce other groups'

14

internal and highly sensitive documents that they possessed solely because of their membership in that other group. *See, e.g.*, Trial Tr. at 1614:11-1621:22 (rejecting privilege claim objection asserted by member of ProtectMarriage.com executive committee over document shared solely among the leadership of a separate religious organization of which he was also a member); *id.* at 1628-33.

6.   For this same reason, Magistrate Judge Spero clearly erred in ruling that certain indi-viduals could be a member of more than one core group.  For example, the March 5 order includes Dennis Herrera as a core group member of both CAEBR and Equality for All.  *See* Doc # 610 at 8, 11.  Proponents object to the inclusion of any individual or entity in more than one organization's "core group" because such inclusion is contrary to the law as set down by this Court's prior rulings. *Compare, e.g.*, Doc # 446 at 17 (objecting to order compelling production by Proponents because it "held that Proponents could not claim privilege over communications made in their capacity as members of any formal political association other than ProtectMarraige.com or as part of an informal political association"), *with* Trial Tr. 1485:6 (ruling that order compelling Proponents was "quite correct"), *and* Doc # 496 (rejecting objections to order compelling Proponents).  Likewise, it was clear error for Magistrate Judge Spero to hold that "the court will not require production of any communications about strategy and messages between core group members who belong to that core group, regardless of the capacity in which the core group member is communicating."  Doc # 610 at 12.  Under this Court's rulings, there is simply no First Amendment privilege that can extend across organizations, and so there is no basis in controlling law to allow the No-on-8 groups to withhold such documents.

7.   This Court has held that media vendors who received confidential drafts of messages and/or internal emails regarding strategy and messaging cannot be considered part of an organiza-tion's "core group" and thus communications including those persons receive no First Amendment protection.  *Compare* Doc # 364-1 at ¶ 7.vii, *with* Doc # 372 at 4-5.  *Compare also* Doc # 474, *with*

Hr'g of Jan. 20, 2010, *and* Doc # 499.  It was thus error for Magistrate Judge Spero to include the Armour Media Group and Armour Griffin Media Group, Inc. in CAEBR's and Equality for All's "core groups."

8.  The March 5 order notes that "CAEBR asserts that it has already produced all responsive documents and that proponents' motion is moot as directed to it."  Doc # 610 at 4.  The order then goes on to define a "core group" for CAEBR and states that "[e]ach No on 8 group is DIRECTED to produce all documents in its possession that contain, refer or relate to arguments for or against Proposition 8, except those communications solely among members of its core group." *Id.* at 14.  The March 5 order does not, however, include anything further about CAEBR's contention that the motion is moot based on the productions the group has already made.  As Proponents pointed out in their reply in support of the motion to compel, CAEBR's prior production of approximately sixty documents, many of them duplicates and heavily redacted, is on its face not a credible production of all responsive documents.  *See* Doc # 584 at 5-7.  Indeed, CAEBR argued that *twenty* individuals should be part of its "core group" and Magistrate Judge Spero credited that argument.  *See* Doc # 593 at ¶¶ 3-5; Doc # 610 at 8.  Yet CAEBR has not produced a *single* document authored or received by most of these individuals.  *See* Doc # 584 at 7.  CAEBR admits in its declaration that it engaged in "one-on-one solicitations, one-on-one meetings between potential donors and CAEBR Chair City Attorney Dennis Herrera, and a small number of fundraising events."  Doc # 593 at ¶ 3.  It also admits that Marisa Moret, a Board Member and Secretary of CAEBR, "was responsible for communicating with CAEBR consultants and reporting any pertinent information related to the committee to Mr. Herrera." *Id.* at ¶ 4(d).  It also admits that the organization and its consultants were involved in "formulating and coordinating campaign strategy and messaging" and that it has "internal draft messaging and strategy material." *Id.* at ¶ 4(g) & (e).  Yet despite all these communications, one-on-one meetings with individuals outside the CAEBR "core group," and efforts to

16

formulate messages and strategies, it is CAEBR's contention that approximately 400 total pages of production (much of it duplicative and redacted) has resulted in satisfaction of its obligations under the subpoena.  This is not a credible position.  To whatever extent the March 5 order does not require CAEBR to comply fully with its obligations under Rule 45, Proponents object and request that this Court order full and complete production by CAEBR— including documents possessed by its Chair containing, referring or relating to arguments for or against Proposition 8—by March 31, 2010.

## CONCLUSION

For the foregoing reasons, the Court should correct the above-identified portions of the Order of Magistrate Judge Spero issued on March 5, 2010.

Dated: March 15, 2010                                   Respectfully submitted,

COOPER AND KIRK, PLLC
ATTORNEYS FOR DEFENDANTS-INTERVENORS
DENNIS HOLLINGSWORTH, GAIL KNIGHT, MARTIN
GUTIERREZ, MARK JANSSON, AND PROTECTMAR-
RIAGE.COM

By:      /s/Charles J. Cooper
            Charles J. Cooper