COOPER AND KIRK, PLLC
Charles J. Cooper (DC Bar No. 248070)*
*ccooper@cooperkirk.com*
David H. Thompson (DC Bar No. 450503)*
*dthompson@cooperkirk.com*
Howard C. Nielson, Jr. (DC Bar No. 473018)*
*hnielson@cooperkirk.com*
Nicole J. Moss (DC Bar No. 472424)*
*nmoss@cooperkirk.com*
Jesse Panuccio (DC Bar No. 981634)*
*jpanuccio@cooperkirk.com*
Peter A. Patterson (Ohio Bar No. 0080840)*
*ppatterson@cooperkirk.com*
1523 New Hampshire Ave. N.W., Washington, D.C. 20036
Telephone: (202) 220-9600, Facsimile: (202) 220-9601

LAW OFFICES OF ANDREW P. PUGNO
Andrew P. Pugno (CA Bar No. 206587)
*andrew@pugnolaw.com*
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 608-3065, Facsimile: (916) 608-3066

ALLIANCE DEFENSE FUND
Brian W. Raum (NY Bar No. 2856102)*
*braum@telladf.org*
James A. Campbell (OH Bar No. 0081501)*
*jcampbell@telladf.org*
15100 North 90th Street, Scottsdale, Arizona 85260
Telephone: (480) 444-0020, Facsimile: (480) 444-0028

ATTORNEYS FOR DEFENDANT-INTERVENORS DENNIS HOLLINGSWORTH,
GAIL J. KNIGHT, MARTIN F. GUTIERREZ, MARK A. JANSSON,
and PROTECTMARRIAGE.COM – YES ON 8, A
PROJECT OF CALIFORNIA RENEWAL

* Admitted *pro hac vice*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO,<br><br>    Plaintiffs,<br><br>    v.<br><br>ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. HOR- | CASE NO. 09-CV-2292 VRW<br><br>**DEFENDANT-INTERVENORS DENNIS HOLLINGSWORTH, GAIL KNIGHT, MARTIN GUTIERREZ, MARK JANSSON, AND PROTECT-MARRIAGE.COM'S   RESPONSE TO OBJECTIONS BY THE ACLU AND EQUALITY CALIFORNIA TO MAGISTRATE JUDGE SPERO'S MARCH 5, 2010 ORDER GRANTING MOTION TO COMPEL** |

TON, in his official capacity as Director of the
California Department of Public Health and State
Registrar of Vital Statistics; LINETTE SCOTT,
in her official capacity as Deputy Director of
Health Information & Strategic Planning for the
California Department of Public Health; PA-
TRICK O'CONNELL, in his official capacity as
Clerk-Recorder for the County of Alameda; and
DEAN C. LOGAN, in his official capacity as
Registrar-Recorder/County Clerk for
the County of Los Angeles,

        Defendants,

and

PROPOSITION 8 OFFICIAL PROPONENTS
DENNIS HOLLINGSWORTH, GAIL J.
KNIGHT, MARTIN F. GUTIERREZ, HAK-
SHING WILLIAM TAM, and MARK A. JANS-
SON; and PROTECTMARRIAGE.COM – YES
ON 8, A PROJECT OF CALIFORNIA RE-
NEWAL,

        Defendant-Intervenors.

Date:    March 16, 2010
Time:   10:00 a.m.
Judge:  Chief Judge Vaughn R. Walker
Location:  Courtroom 6, 17th Floor

Additional Counsel for Defendant-Intervenors

ALLIANCE DEFENSE FUND
Timothy Chandler (CA Bar No. 234325)
*tchandler@telladf.org*
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 932-2850, Facsimile: (916) 932-2851

Jordan W. Lorence (DC Bar No. 385022)*
*jlorence@telladf.org*
Austin R. Nimocks (TX Bar No. 24002695)*
*animocks@telladf.org*
801 G Street NW, Suite 509, Washington, D.C. 20001
Telephone: (202) 393-8690, Facsimile: (202) 347-3622

* Admitted *pro hac vice*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

BACKGROUND .................................................................................................................... 1

STANDARD OF REVIEW ...................................................................................................... 1

RESPONSES TO THE ACLU AND EQUALITY CALIFORNIA'S OBJECTIONS ................ 2

A.      Relevance............................................................................................................... 2

B.      Burden.................................................................................................................... 11

C.      First Amendment Privilege.................................................................................... 14

D.      Limiting Disclosure .............................................................................................. 15

CONCLUSION....................................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Bhan v. NME Hosps., Inc.*, 929 F.2d 1404 (9th Cir. 1991) ........................ 1

*Clarke v. Securities Indus. Ass'n*, 479 U.S. 388 (1987) ........................ 10

*First Nat'l Maintenance Corp. v. NLRB*, 452 U.S. 666 (1981)................... 10

*Indiana Democratic Party v. Rokita*, 458 F. Supp. 2d 775 (S.D. Ind. 2006) ............ 5

*Keithley v. Homestore.com, Inc.*, 629 F. Supp. 2d 972 (N.D. Cal. 2008) .................. 1

*Marshall v. Sawyer*, 365 F.2d 105 (9th Cir. 1966)........................ 5

*Perriera v. Allstate Ins. Co.*, No. 96-56025, 1997 U.S. App. LEXIS 33531
  (9th Cir. Nov. 20, 1997)........................ 4

*Rutti v. Lojack Corp.*, No. 07-56599, 2010 U.S. App. LEXIS 4278 (9th Cir. Mar. 2, 2010)....... 9

*United States v. Castro*, 887 F.2d 988 (9th Cir. 1989) ........................ 5

*United States v. Elekwachi*, No. 96-10014, 1997 U.S. App. LEXIS 6381
  (9th Cir. Apr. 2, 1997) ........................ 5

*United States v. Huguez-Ibarra*, 954 F.2d 546 (9th Cir. 1992) ................... 5

*United States v. Tamura*, 694 F.2d 591 (9th Cir. 1982) ........................ 5

*United Steelworkers v. Weber*, 443 U.S. 193 (1979)........................ 10

**Other**

FED. R. CIV. P. 72(a) ........................ 1

FED. R. EVID. 201........................ 5

FED. R. EVID. 801........................ 4

FED. R. EVID. 801(c) ........................ 4

FED. R. EVID. 801(d)(2) ........................ 4

FED. R. EVID. 803(1)........................ 5

FED. R. EVID. 803(3) ........................ 5

FED. R. EVID. 803(6)........................ 5

H. R. Rep. No. 245, 80th Cong., 1st Sess., 71 (1947) ........................ 10

9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER,
  FEDERAL PRACTICE AND PROCEDURE § 2409 (3d ed. 2008)................... 6

Defendant-Intervenors ProtectMarriage.com, Dennis Hollingsworth, Mark Jansson, Gail Knight, and Martin Gutierrez (collectively, "Proponents"), respectfully submit this response to the Objections to the March 5, 2010 order of Magistrate Judge Spero filed by Equality California and No on Proposition 8, Campaign for Marriage Equality: A Project of the American Civil Liberties Union. *See* Doc #s 610, 614.

## **BACKGROUND**

On March 5, 2010, Magistrate Judge Spero granted Proponents' motion to compel production from Californians Against Eliminating Basic Rights ("CAEBR"), Equality California, and No on Proposition 8, Campaign for Marriage Equality: A Project of the American Civil Liberties Union ("ACLU"). *See* Doc # 610. Proponents had served document subpoenas on these organizations pursuant to Fed. R. Civ. P. 45. Those subpoenas, and this instant dispute, arose in the context of the more general question of whether internal campaign documents constitute permissible discovery and admissible evidence in a constitutional challenge to a law enacted by voter initiative or referendum.

Equality California and the ACLU (hereinafter the "No-on-8 Objectors") filed objections to the March 5 order on March 11, 2010. *See* Doc # 614. CAEBR has not filed any objections to the March 5 order. Proponents have also today filed limited objections to specific portions of the March 5 order. The background of the instant dispute is set out in greater detail in Proponents' objections and thus is not repeated here.

## **STANDARD OF REVIEW**

Magistrate Judge Spero's order may not be set aside unless it is "clearly erroneous or is contrary to law." FED. R. CIV. PROC. 72(a). *See also Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1414 (9th Cir. 1991); *Keithley v. Homestore.com, Inc.*, 629 F. Supp. 2d 972, 974 (N.D. Cal. 2008). Under this standard, the portions of Magistrate Judge Spero's order challenged by Equality California and the ACLU should not be disturbed.

1

## RESPONSES TO THE ACLU AND EQUALITY CALIFORNIA'S OBJECTIONS

The No-on-8 Objectors level four categories of objections against the March 5 order: relevance, burden, privilege, and scope of disclosure.  Taking as a given this Court's rulings and the Ninth Circuit's prior opinion in this case, these objections must fail.  In the portions of the order objected to by the No-on-8 Objectors, Magistrate Judge Spero carefully applied the controlling law already set down in this case.[1]

### A.    Relevance

First, the No-on-8 Objectors contend that Magistrate Judge Spero applied "an incorrect standard of relevance."  Doc # 614 at 7.  They do not, however, identify what standard of relevance would have been proper.  Nor do they cite any authority—not a procedural rule or a single case—for the proposition that the legal standard employed in March 5 order was "erroneous as a matter of law."  *Id.*  Accordingly, the No-on-8 Objectors have not carried their burden on this point.

The No-on-8 Objectors instead contend that "the discovery phase of this case has long-since passed" and "there has been a trial and the taking of testimony has concluded."  *Id.* at 7.  From this baseline, the No-on-8 Objectors argue that "there is nothing for the documents at issue to 'lead to' " and the Court cannot order production of the documents unless "the documents themselves can come in as probative evidence."  *Id.* at 8.  The No-on-8 Objectors then argue that the documents cannot be introduced because they are not party admissions and would constitute hearsay.  *Id.*  The No-on-8 Objectors cite no legal authority for these points, and thus it cannot be said that the March 5 order's failure to incorporate them was clearly erroneous or contrary to law.  But even setting that aside, the argument still fails at every step.

There is nothing to distinguish the timing of the March 5 order from the Court's January 8 or-

---

[1] Nonetheless, Proponents continue to maintain that on First Amendment privilege, relevance, burden, and scope-of-disclosure grounds this Court's prior and predicate orders and rulings constitute error.

der compelling production of Proponents' similar internal campaign documents, which also issued after formal discovery had closed. *See* Doc # 372. As Magistrate Judge Spero explained, and as the Court is well aware, the expedited nature of this case, along with the Ninth Circuit's unanticipated alteration of its opinion on January 4, 2010, caused "discovery (and litigation regarding the scope of the First Amendment privilege) [to] continu[e] beyond the cut-off." Doc # 610 at 4. *Cf.* Doc # 584 at 17-19 (explaining why Proponents' motion was timely). The No-on-8 Objectors' argument here appears to be a circuitous root to charging that Proponents' motion to compel was not timely, but the No-on-8 Objectors explicitly disclaim any challenge to the March 5 order's finding of timeliness. *See* Doc # 614 at 7 n.3; FED. R. CIV. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to."). And the No-on-8 Objectors are simply wrong in stating that "there has been a trial and the taking of testimony has concluded." Doc # 614 at 7. On January 27, the following colloquy occurred between the Court and counsel for Proponents:

> MR. THOMPSON: And then, finally, Your Honor, we did note, as the Court is aware, that our motions to compel are outstanding. And we're not in a position to formally rest our case until those are resolved. If we were to receive documents from the No On 8 campaign, then we might want leave to submit those documents and/or call witnesses pertaining to those subject matters. But other than that, we have no further witnesses and no further documents.

> THE COURT: Very well. We have either this morning or last evening issued an order calling for a response from the third parties that you have subpoenaed, the three organizations, and have also given the plaintiffs an opportunity to chime in, if they wish to do so.

Trial Tr. 2941:19-2942: 7. Accordingly, the documents at issue, if not admissible or relevant themselves, most certainly can "lead to" additional relevant evidence in the form of witness testimony.[2]

---

[2] Indeed, it would not have been appropriate to force Proponents to rest their case on January 25, before this motion was conclusively decided and the documents produced. Proponents filed their motion to compel while trial was still in full swing, along with a motion to shorten time to have the matter resolved as expeditiously as possible. The No-on-8 Objectors resisted such expedition and the Court chose to wait to resolve the motion until after January 25. That delay, which was not caused or supported by Proponents, should not now be held against them in
(Continued)

3

In any event, even if no further witnesses are called, the No-on-8 Objectors are simply wrong to contend that these documents could only be introduced as admissions of party opponents. Several of the documents introduced by Plaintiffs were *not* created by Proponents (and thus are not admissions), but rather simply were documents that Proponents had in their possession. *See* FED. R. EVID. 801(d)(2); Trial Tr. at 1628-33 (admission of PX 2555 over objection); *id.* at 2368-69 (admission of PX 2655 over hearsay objection); *id.* at 2388 (admission of PX 2455); *id.* at 2931 (admission of PX 2403); *id.* at 2392-93 (admission of PX 2385 over hearsay objection). And the No-on-8 Objectors are wrong to conclude that the documents would otherwise constitute hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial … offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). This Court has held that documents such as those at issue here "form[] a legislative history that may permit the [C]ourt to discern whether the legislative intent of [Proposition 8] … was a discriminatory motive." Doc # 214 at 14. Thus, the documents need not be submitted as statements of the declarants for purposes of proving the truth of the matter asserted therein, but rather to shed light on the potential motivations of the non-declarant voters. As Magistrate Judge Spero explained at the February 25 hearing, "whether these [documents] are … 'hearsay' … certainly depends on what the purpose those documents were being put [into evidence for]." Hr'g of Feb. 25, 2010, Tr. at 22:13-17. *See also id.* at 25:16-19 ("[Y]ou can't tell, actually, the total mix that the voters got and what their intent was, even in passing it, unless you have both sides."). Documents admitted for such purposes are simply not hearsay. *See, e.g.* FED. R. EVID. 801 advisory committee's note to subdivision (c) ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as

---

their efforts to present the "complete record" the Court has called for, Doc # 76 at 5, including "the mix of information before and available to the voters," Doc # 214 at 14, which includes any document that "contain[s], refer[s] or relate[s] to arguments for or against Proposition 8," Doc #372 at 5.

4

to the truth of anything asserted, and the statement is not hearsay."); *Perriera v. Allstate Ins. Co.*, No. 96-56025, 1997 U.S. App. LEXIS 33531, at *3-4 (9th Cir. Nov. 20, 1997) ("The district correctly held the contested evidence was not hearsay because it went to knowledge rather than to the truth of the matter asserted."); *United States v. Elekwachi*, No. 96-10014, 1997 U.S. App. LEXIS 6381, at *6-7 (9th Cir. Apr. 2, 1997) ("When an out of court statement is being used not for its truth but to prove knowledge, it is not hearsay.") (citing *United States v. Huguez-Ibarra*, 954 F.2d 546, 552 (9th Cir. 1992); *United States v. Castro*, 887 F.2d 988, 1000 (9th Cir. 1989)); *United States v. Tamura*, 694 F.2d 591, 598 (9th Cir. 1982) (admitting telexes describing a bribery scheme not for the truth of their contents but for the nonhearsay purpose of showing defendant's knowledge of the scheme).[3]

Moreover, many of the issues in this case are legislative facts. *See* FED. R. EVID. 201, advisory committee note (Legislative facts "are those which have relevance to legal reasoning and the lawmaking process."); *Marshall v. Sawyer*, 365 F.2d 105, 111 (9th Cir. 1966) ("Legislative facts do not usually concern the immediate parties but are general facts which help the tribunal decide questions of law, policy, and discretion.").  And the Court may take judicial notice of documents that are probative legislative facts; the hearsay rules do not apply.  *See, e.g.*, *Indiana Democratic Party v. Rokita*, 458 F. Supp. 2d 775, 843-44 (S.D. Ind. 2006)

---

[3] Moreover, some of the documents may qualify as exceptions to the hearsay rule.  *See* FED. R. EVID. 803(1) ("[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" is "not excluded by the hearsay rule"); FED. R. EVID. 803(3) ("[a] statement of the declarant's then-existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)" is "not excluded by the hearsay rule"); FED. R. EVID. 803(6) ("[a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity" is "not excluded by the hearsay rule").  The state of mind of the No-on-8 groups may be probative, for instance, of the political power of gays and lesbians or (under this Court's rulings) of voter intent, and if the documents are probative of these facts, then this they would qualify under the Rule 803(1) exception.

(denying motion to exclude "newspaper articles, transcribed oral statements, letters/press releases, committee reports, websites, polls, and journal articles" as "unsworn, unauthenticated, and contain[ing] hearsay" because case presented question requiring rational basis review and thus "the submissions are admissible to the extent that they tend to establish a reasonable justification for [the challenged law]"); 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2409 (3d ed. 2008) ("The Evidence Rules authorize the taking of judicial notice of adjudicative facts but leave notice of legislative facts to development by the federal courts.").

Second, the No-on-8 Objectors argue that while Proponents' statements to voters "could help the Court understand why voters who voted in favor of the initiative did so … in an indirect and inferential sense," the statements of the opponents of Proposition 8 "cannot … illuminate[]" this question "in any realistic or meaningful sense."  Doc # 614 at 8.[4]  As

---

[4] In their initial briefing, the No-on-8 Objectors were more fulsome in their objections to the lines of inquiry this case has involved.  They contended that their "internal, confidential, and non-public campaign communications have no bearing on and cannot possibly reflect the rationale the … voters adopted in support of Prop. 8."  Doc # 546 at 8.  *See also* Doc # 543 at 14.  As the Court is well aware, Proponents agree wholeheartedly with this position as it applies to both sides' documents and thus believe it was clear error for this Court to allow discovery, and introduction as evidence, of such documents.  *See, e.g.*, Doc # 187 at 10-14; Doc # 197 at 6-11; Petitioners' Mot. for a Stay, *Perry v. Hollingsworth*, No. 09-17241 (9th Cir. Nov. 13, 2009) at 19 ("disclosure of Proponents' internal *nonpublic* communications with their political associates would reveal *nothing* about the voters' intent").  Nonetheless, Proponents must litigate this case based on the controlling rulings of this Court, and those rulings hold that discovery requests seeking all communications "to voters" or the "public," Doc # 187-3 at 5, properly seek "relevant discovery" and, "other than communications solely among the core group," require production of *any* documents distributed to *any* person that "contain, refer or relate to arguments for or against Proposition 8," Doc # 372 at 5.

The No-on-8 Objectors charge that "[w]hat Proponents want is simply a 'free peak' at their political opponents' inside information, and that is a misuse of the litigation process."  Doc # 614 at 9.  As the above procedural history demonstrates, and as the No-on-8 Objectors well know, it has been the Proponents who have fervently and relentlessly argued that the type of documents at issue here are utterly irrelevant to this case and that discovery of such documents violates the constitutional rights of those (on both sides) who participated in the Proposition 8 campaign.  *See* Letter from Stephen V. Bomse, Counsel for ACLU of Northern California to Molly C. Dwyer, Clerk of the Court, United States Court of Appeals for the Ninth Circuit (Nov. 27, 2009), *Perry*, No. 09-17241, at 2 n.4 ("In fairness, Proponents served their subpoenas only after they received requests for production from Plaintiffs.  Proponents further advised the subpoenaed parties that Proponents were seeking internal campaign communications only in the event that they were
(Continued)

Magistrate Judge Spero recognized, however, there is no basis in this Court's opinions for distinguishing in any way between the nonpublic documents of those who campaigned in support of Proposition 8 and those who campaigned against it. *See* Doc # 610 at 6; Hr'g of Feb. 25, 2010, Tr. at 25:12-19 ("[A]nd the judge has already decided this …. [Y]ou can't tell, actually, the total mix that the voters got and what their intent was, even in passing it, unless you have both sides."). On the contrary, the Court has held that: (i) it must examine "the history and development of California's ban on same-sex marriage" and the " 'historical context and the conditions existing prior to [Prop 8's] enactment,' " including "advertisements and ballot literature considered by California voters," Doc # 76 at 8-9;[5] (ii) that "the *mix* of information before and available to the voters forms a legislative history that may permit the [C]ourt to discern whether the legislative intent of an initiative measure … was a discriminatory motive," Doc # 214 at 14 (emphasis added); and (iii) that "documents that contain, refer or relate to arguments for *or against* Proposition 8 … [constitute] relevant discovery," Doc # 372 at 5 (emphasis added). These relevance principles, by their express terms and by their logic, are in no way limited to Proponents' documents. If they were, the Court would have had no occasion to state that "the mix" of information is relevant or that documents containing arguments "against" Proposition 8 are relevant.

Nonetheless, the No-on-8 Objectors maintain that materials relating to opposition to a ballot measure cannot possibly be relevant to the intent of those voters who approved the measure. But given that the Court deems it appropriate to venture beyond the text of a ballot measure itself (to the ballot arguments, to public advertisements, or to nonpublic information),

---

obliged to produce such documents."). Proponents lost that fight in this Court, and unless or until the controlling legal rules change, must litigate the case on those terms. A suggestion that so litigating the case on these terms is "a misuse of the litigation process" is baseless.

[5] The No-on-8 Objectors thus appear to simply disagree with this Court's prior holdings. *See* Doc # 614 at 8 ("[T]his Court is not being asked to write a history of the campaign over Proposition 8….").

it follows as a matter of logic that a voter who ultimately voted in support of that measure may have been influenced not only by materials supporting the measure, but also by materials expressing opposition. Most informed voters weigh both sides of a debate—they credit some arguments, dismiss others, and reconsider others in light of new information (from both sides). It is this "mix of information" that informs a voter's choice and the balance he or she ultimately strikes in coming to a final decision. If public ads and private campaign documents are indeed relevant, then such materials from both sides are necessary to evaluate the reasons why voters for Proposition 8 ultimately struck that balance. *See* Hr'g of Feb. 25, 2010, Tr. at 6:6-19 (statement of the Court) ("[T]he information before the voters … was a conversation…. People went back and forth on various topics. And so the idea that only the communications in the outside world to the voters from one side are relevant seems to make no sense. If … the entire mix of information before the voters is what the judge would look at, … then it seems to me that internal communications from either side, within either side, would be relevant to elucidate the messages that got transmitted."); *id.* at 27:5-11. Thus, materials expressing opposition to Proposition 8 form part of the "mix of information" voters may have considered and are equally relevant to materials expressing support (to whatever extent such materials are relevant at all). And there can be no argument that the No-on-8 Objectors possess a significant quantity of this pertinent information. *See* Hr'g of Feb. 25, 2010, Tr. at 40:15-20 (statement of counsel for Equality California) ("[T]his was a statewide campaign that was targeting every single discrete group of voters that you could imagine … and had to employ very different strategies and messaging to reach all of those regions and groups.").

Thus, it is simply not true that Proponents have been "reduced to arguing that the documents they seek could be relevant because some voter may have been so offended by something said by the No on 8 campaign that she changed her vote to Yes from No." Doc #

8

614 at 8.  Though even if this were true, it is not clear why such an argument would be insufficient to carry the day.  Voters may well be motivated to vote for (or against) a law in reaction against the statements, arguments, and messages presented by its opponents (or its supporters).  Such a possibility seems especially likely in a highly contentious campaign such as that surrounding Proposition 8, where passionate—and sometimes intemperate—statements and arguments were presented by some extremists on both sides of the debate.  For example, some voters may have reacted negatively to the religious intolerance displayed by some aspects of the No-on-8 campaign, and the documents of the No-on-8 Objectors may shed light on how such ads and messages were counterproductive.  Or the documents might show that voters reacted negatively to the violence committed against supporters of Proposition 8 by its opponents.[6]

This Court has characterized "the mix of information before and available to the voters" as "a legislative history" relevant to this case.  Doc # 214 at 14.  Courts that examine legislative history for other purposes regularly examine materials supporting *and opposing* the law in question.  *See, e.g.*, *Rutti v. Lojack Corp.*, No. 07-56599, 2010 U.S. App. LEXIS 4278, at *16

---

[6] The No-on-8 Objectors also contend that Proponents' nonpublic documents are relevant because they may reveal the "arguments that the Proponents chose *not* to make (thereby revealing what Proponents believed Proposition 8 was really about or was intended to accomplish)," whereas "the same thing cannot be said of No on 8 documents."  Doc # 614 at 9.  It is true that *exactly* the same thing cannot be said of the Yes-on-8 and No-on-8 documents, for "Yes" and "No" are, indeed, different words.  But (accepting the paradigm established by this Court's orders) arguments that the No-on-8 campaign chose *not* to make may reveal that the opponents (i.e., those who, *inter alia*, drafted the official ballot argument against Prop 8) credited that voters might have intent that is not rooted in animus but instead in rational bases.

It is also worth noting that in the course of making this argument, the No-on-8 Objectors contend that they "already have produced … voluntarily" all "public" documents.  Doc # 614 at 9.  The No-on-8 Objectors have crafted their own definition of "public," however, which they explained as hewing to "the definition of 'mass mailing' provided by the California Government code §82041.5, which refers to anything sent to at least 200 people."  Doc # 544 at ¶ 4.  *See also* Doc # 543 at 6-7.  This Court, however, has squarely rejected that definition of "public" documents.  *Compare* Hr'g of Jan. 6, 2010, Tr. at 73:19-24 ("And in terms of trying to find an objective dividing line between sending something out to voters or sending something out to your own associates, California law specifically identifies the number 200 … as the dividing line."), *with* Doc # 372 at 5 (ordering production of "*all* documents" regardless of number of recipients) (emphasis added).

9

(9th Cir. Mar. 2, 2010) ("The failure of the minority report to stimulate any change in the bill indicates that Congress did not object to employers setting conditions on their employees use of company cars for commuting."); *First Nat'l Maintenance Corp. v. NLRB*, 452 U.S. 666, 675 n.14 (1981) ("The adoption, instead, of the general phrase now part of § 8(d) was clearly meant to preserve future interpretation by the Board. *See* H. R. Rep. No. 245, 80th Cong., 1st Sess., 71 (1947) (minority report)."); *Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 414-15 (1987) (Stevens, J., concurring in part) (citing minority report as evidence of legislative compromise that was ultimately reached); *United Steelworkers v. Weber*, 443 U.S. 193, 232-44 (1979) (Burger, C.J., dissenting) (discussing how varying views of proponents and opponents of a bill affected its final version and meaning).  Accordingly, to the extent the Court has ruled it must examine the "legislative history" of Prop 8, and that the documents possessed by political campaigns are part of that "legislative history," the documents possessed by the losing campaign are also a critical component of that record.

Moreover, the No-on-8 Objectors focus solely on the relevance of the documents at issue with respect to voter intent.  But one of the important issues in this case is whether or not gays and lesbians are politically powerless.  And at trial Plaintiffs introduced internal documents created by supporters of Proposition 8 for the alleged proposition that there are "powerful political forces arrayed against gay men and lesbians in connection with the Proposition 8 campaign."  Trial Tr. 1614:12-1615:2 (direct examination of Professor Segura, Plaintiffs' expert on the political power of gays and lesbians).  Documents possessed by the No-on-8 groups will likely be highly relevant to whether, in fact, gays and lesbians lack political power.  For example, even in the very limited production provided by CAEBR on February 1, there is evidence that the No-on-8 campaign had high level contacts within, or the backing of:  the presidential campaigns of Hilary Clinton and Barack Obama; major Hollywood and media

10

figures; and major corporations.  *See* Doc # 584-1 at 6 ("former LGBT Director for Hillary for President" stating that "it is clear that on LGBT issues, Senator Obama is with our community" and stating that the author is "part of Obama LGBT Steering Committee and LGBT Finance Committee"); *id.* at 8-9 (arguing that the No-on-8 campaign has to be "as organized, well funded and aggressive as [the Yes-on-8 campaign]" and questioning whether "Brad" would appear "at a carefully orchestrated media event" or "help set an example for other entertainment and business leaders to follow"); *id.* at 11 (indicating support from Levi Strauss & Co.).  The documents being withheld by the No-on-8 groups are thus relevant to this issue, as they may show the coalition of powerful political forces aligned against Proposition 8 and in support of the political goals of gays and lesbians.  Yet without access to these documents, Proponents' experts were unable to address issues put into contention by Plaintiffs.  Trial Tr. 2667:10-18 (cross examination of Professor Miller) ("**Q.**  As part of your work, did you investigate the extent to which the groups favoring Proposition 8, the religious groups favoring Proposition 8, contributed far more in money and manpower than the groups opposing Proposition 8?  Did you investigate that?  **A.** I wasn't able to determine in a quantitative way the monetary and organizational contributions of the progressive churches to the No On 8 campaign.  I didn't have any access to the No On 8 campaign's internal documents to know about that.").

## B.  <u>Burden</u>

The No-on-8 Objectors argue that considerations of burden should preclude their having to produce a single internal campaign document.  Doc # 614 at 9-11.  It is important at the outset to note that this argument is based on the No-on-8 Objectors' theory that such documents are of minimal relevance.  *See id.* at 10.  As demonstrated above, under the direct language and explicit logic of this Court's orders, such documents are highly relevant and thus the scales do not settle at the balance the No-on-8 Objectors would prefer.  In light of the relevance of these documents under

11

this Court's orders, the March 5 order represents a careful balancing of relevance and burden.  *See* Doc # 610 at 13 ("the court recognizes the need to ensure that any burden borne by the third parties is not undue").  As Magistrate Judge Spero noted at the hearing, however, the need to avoid undue burden does not mean the elimination of burden altogether.  Hr'g of Feb. 25, 2010, Tr. at 8:5-6.  Rule 45 exists because third parties sometimes possess information that is relevant to the claims in a lawsuit.  Under this Court's relevance rulings—that the "the mix of information before and available to the voters forms a legislative history that may permit the [C]ourt to discern whether the legislative intent of an initiative measure," Doc # 214 at 14—the No-on-8 Objectors possess such information and thus must be compelled to produce it.  Indeed, suppose that California's Attorney General had chosen to defend Proposition 8 and Proponents had not had to intervene.  Given all that the Court has said regarding the probative nature of Proponents' internal and confidential campaign documents and their centrality to this litigation, would Proponents have been spared the burdens and harm of production and compelled disclosure of such purportedly essential materials simply because they were third parties?

   In particular, the No-on-8 Objectors claim that the search terms adopted in the March 5 order will result in an overly burdensome review and production process.  But the No-on-8 Objectors can hardly complain about these terms now, as they are the verbatim terms that the No-on-8 Objectors themselves argued that Magistrate Judge Spero should adopt—and that was after the No-on-8 Objectors had a week to unilaterally review their documents and decide on what search terms to propose.  Indeed, the March 5 order actually includes one *less* term than the list proposed by the No-on-8 Objectors.  *Compare* Doc # 609 (declaration submitted by Equality California) (arguing that "the following search terms be used to reduce the number of email to be reviewed: 'No on 8,' 'Yes on 8,' 'Prop 8,' 'Proposition 8,' 'Equality for All,' 'Marriage Equality,' and 'ProtectMarriage.com.'"), *with* Doc # 610 at 13 ("[T]he No on 8 groups shall only be required to review

electronic documents containing at least one of the following terms: No on 8,' 'Yes on 8,' 'Prop 8,' 'Proposition 8,' 'Marriage Equality,' and 'ProtectMarriage.com.'").[7]  The No-on-8 Objectors can hardly now come to the Court and claim that Magistrate Judge Spero has imposed an undue burden upon them when the March 5 order gives them *more* than they asked for with respect to search terms.  If waiver has any application at all, it applies here.[8]

The burden arguments raised by the No-on-8 Objectors before Magistrate Judge Spero were the same as those raised by Proponents from the beginning of the discovery period straight through to the January 6 hearing.  The Court has rejected these arguments as grounds for prohibiting the type of discovery at issue here.  *See* Doc # 372; Doc # 496.  Thus, the only possible difference between Proponents and the No-on-8 Groups is that the latter are not intervenors in the lawsuit.  Magistrate Judge Spero accounted for this difference, imposing certain burden reducing measures—and even those measures were overly generous in light of the Court's ruling concerning the relevance of these documents and the role the No-on-8 Objectors played in both the campaign surrounding Proposition 8 and this very litigation.  *See* Doc # 584 at 16-17 (spelling out the vast sums of money spent by the No on 8 campaign in the election and the No-on-8 Objectors' attempts to intervene in this lawsuit and the significant resources they have already committed to supporting Plaintiffs).  The Court has deemed the "mix of information before and available to the voters," Doc # 214 at 14, including any documents "that contain, refer or relate to any arguments for or against Proposition 8," Doc # 372 at 5, as critical to its efforts to review the "legislative history" of Prop 8 and to determine whether the

---

[7] As Proponents' objections make clear, the list of six search terms adopted in the March 5 order is actually vastly underinclusive and thus can hardly be said to be unduly burdensome, especially when compared to the review and production Proponents had to undertake, which was not constrained by *any* search terms or other reasonable limitations whatsoever.

[8] The No-on-8 Objectors claim that "Judge Spero's Order also failed to consider the other burden-reducing steps proposed in the March 3 Kors Declaration."  Doc # 614 at 11 n.6.  A more accurate statement would be that the March 5 order refused to adopt every single proposal put forth by Equality California for vastly limiting the scope of relevant documents it would have to produce.  The proposals—such as limiting searches only to the "sent" mail folders of specific individuals—were untenable on their face.

13

1    "legislative intent … was a discriminatory motive," Doc # 214 at 14.  Given that the Court is

2    deciding a question of public law, and that the No-on-8 Objectors have spent millions (including on

3    resources in this case) to affect that public law, the additional burdens of complying with a subpoena

4    are outweighed by the evidentiary needs in this case.

5    **C.    First Amendment Privilege**

6            The No-on-8 Objectors argue that the March 5 order's First Amendment privilege analysis

7    constitutes error, and that this is "a matter of great importance—not simply as it applies in this case,

8    but as it may be applied to political campaigns in the future."  Doc # 614 at 11.  Indeed.  As Propo-

9    nents explained to the Ninth Circuit, "[i]f this type of core political speech is not privileged under the

10   speech and associational protections of the First Amendment from ordinary discovery in post-election

11   litigation, then nothing is, and the political process surrounding initiative elections in California, and

12   everywhere else, will be profoundly and permanently chilled."  Defendant-Intervenors-Appellants'

13   Mot. for a Stay, *Perry v. Hollingsworth*, No. 09-17241, at 2 (9th Cir. Nov. 13, 2009).  The No-on-8

14   Objectors provide a very eloquent and true defense of the First Amendment principles that have been

15   in play in this litigation from the first instant Plaintiffs embarked on their scorched-earth discovery

16   crusade.  And Proponents agree that those principles should have prevailed.  But this Court has spoken

17   in a series of orders and rulings explicitly *rejecting* all of the arguments that the Proponents have

18   previously made and that the No-on-8 Objectors now make.  And it is by those rulings and orders that

19   parties subject to the jurisdiction of this Court must abide unless or until a higher court reverses those

20   decisions.  And adherence to those prior rulings is precisely what is reflected in the portions of March

21   5 order objected to by the No-on-8 Objectors.  *See* Hr'g of Feb. 25, 2010, Tr. at 7:2-9 ("it's really

22   interesting to read the 'No on 8' papers … because I've read all those arguments before…. [I]t is

14

exactly the same sort of thing that the … proponents were trying to persuade [the Court of].").[9]

## D.   Limiting Disclosure

The March 5 order permits the No-on-8 groups to "produce documents pursuant to the terms of the protective order, Doc # 425, if they wish," which allows for designation of materials as "highly confidential – attorneys eyes only." Doc # 610 at 14. The Court, over Proponents' objections, deemed this procedure sufficient to protect Proponents' confidential campaign information. *Compare* Doc # 446 at 18-19, *with* Doc # 496. The No-on-8 Objectors argue, however, that this is not good enough for

---

[9] The No-on-8 Objectors main claim is that it was error to "treats communications about strategy and messages in 'silos' " and that Magistrate Judge Spero's reading of footnote 12 of the Ninth Circuit's opinion "cannot be squared with the overall decision." Doc # 614 at 11. *See also id.* at 11-15. This Court has heard this argument before—by Proponents in many varied iterations and circumstances—and has flatly and repeatedly rejected it. *Compare* Hr'g of Jan. 6, 2010, Tr. at 28:18-20 ("Let's not lose sight of the forest for the trees. It's not fair to take one footnote of a Ninth Circuit opinion and say that is the opinion."), *with* Doc # 372, *and* Doc # 496. *See also* Doc # 187 at 9 n.4; Sealed Declaration of Ronald Prentice (Nov. 5, 2009) at ¶ 9; Hr'g of Dec. 16, 2009, Tr. 57:7-11 ("So there is no First Amendment right for individuals, is what they claim. You have to be a member of a 501c3, and then you get First Amendment protection if you have an official title. Which, by the way, in a volunteer campaign you often don't have."); Hr'g of Jan. 6, 2010, Tr. 29:5-11 ("So to argue that you have to carry a business card that says 'Core Group' on it and then you get First Amendment protections, but if you don't carry that business card, you lose your First Amendment protections if you are corresponding with somebody about an associational—a political matter and the formulation of messages, I think is not a proper reading of the opinion."); Doc. 446 at 17 ("The definition of the 'core group' requires production of thousands of documents shared confidentially among those who 'associate[d] with others to advance [their] shared political beliefs, and [did] so in private.' Proponents respectfully object on First Amendment grounds.") (quoting *Perry*, slip op. at 30); *id.* ("Magistrate Judge Spero held that Proponents could not claim privilege over communications made in their capacity as members of any formal political association other than ProtectMarriage.com or as part of an informal political association. This holding runs afoul of the First Amendment."); *id.* at 18 ("Proponents object to Magistrate Judge Spero's orders to the extent they hold that two different associations cannot receive First Amendment protection for communications made between persons in the groups during a political campaign in which they are allied. As with any large campaign, the ProtectMarriage.com effort necessarily involved the support and cooperative effort of other allied persons and groups who may not have held a formal title or position within ProtectMarriage.com (and vice versa). But those other allied persons or groups were part of the political coalition, and sometimes shared with ProtectMarriage.com internal, confidential information to devise general campaign strategy and messages. Proponents object to the disclosure of such nonpublic communications on First Amendment grounds."); Trial Tr. at 1614:11-1621:22 (rejecting privilege objection asserted by member of ProtectMarriage.com executive committee made over document shared solely among the leadership of a separate religious association of which he was also a leader); *id.* at 1628-33 (overruling First Amendment objection regarding internal church document that was in possession of church member who was also a member of ProtectMarriage.com executive committee).

them and that disclosure should be limited "to attorneys at Cooper and Kirk PLLC who affirm that they will not in the future participate in any political campaign involving same-sex marriage." Doc # 614 at 6.  It is ironic in the extreme for the No-on-8 Objectors to be bringing this objection to the Court.  Mr. Herrera is an attorney representing Plaintiff-Intervenor in this case, but he was also deeply involved in the campaign against Proposition 8—so deeply involved that the No-on-8 Objectors demanded that he receive "core group" status, which the March 5 order grants him twice over.  Yet when Proponents raised the exact same concerns about Mr. Herrera's receiving the same type of documents from the Yes-on-8 campaign, Mr. Herrera vehemently protested that the request to limit disclosure was "insulting," that he and his deputies "take their role as Officers of the Court seriously," and that it should not be assumed that he and other lawyers who were deeply involved in the No-on-8 campaign "will not abide by the terms of a protective order issued in this case." Doc # 263 at 1.  *See also* Doc # 182 (letter from Mr. Herrera supporting disclosure of Proponents' confidential campaign documents); Doc # 273 (same); Doc # 393 (motion seeking leave to amend protective order to allow City attorneys access to confidential documents); Doc # 197 at 15.  The Court agreed and allowed Mr. Herrera and other City attorneys who were active in the No-on-8 campaign to have full and unfettered access to they Yes-on-8 campaign's most sensitive internal documents.  *See* Hr'g of Jan. 6, 2010, Tr. at 101:10-102:3.  Proponents do not understand the No-on-8 Objectors (who claim Mr. Herrera as part of their "core group") to suggest that the Court should assume that Proponents' attorneys will be any less diligent or responsible than Mr. Herrera and his office in meeting their ethical obligations under the protective order and the rules of the Bar.  Moreover, forcing an attorney to attest that he or she will never "participate in any political campaign involving same-sex marriage" is, to put it mildly, a bit much.  Under this proposed regime, Proponents' attorneys presumably could not participate in the 2012 presidential election if the issue of same-sex marriage is raised.  This case features enough First Amendment issues already that this additional wrinkle need not be introduced.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The No-on-8 Objectors also ask that the Court specify that "no document produced by Objectors shall be admitted into evidence without first providing Objectors with the right to object and/or seek restrictions upon access to the document at issue."  Doc # 614 at 13.  To the extent the No-on-8 groups produce documents pursuant to the protective order's provisions, Proponents do not oppose such a requirement so long as it permits for the orderly and timely resolution of any disputes.

## CONCLUSION

For the foregoing reasons, the Court should overrule the Objections of the ACLU and Equality California to the March 5, 2010 order.

Dated: March 15, 2010                              Respectfully submitted,

COOPER AND KIRK, PLLC
ATTORNEYS FOR DEFENDANTS-INTERVENORS DENNIS HOLLINGSWORTH, GAIL KNIGHT, MARTIN GUTIERREZ, MARK JANSSON, AND PROTECTMAR-RIAGE.COM

By:      /s/Charles J. Cooper
         Charles J. Cooper