**United States District Court**
For the Northern District of California

1

2          IN THE UNITED STATES DISTRICT COURT

3         FOR THE NORTHERN DISTRICT OF CALIFORNIA

4

5    KRISTIN M PERRY, SANDRA B STIER,
     PAUL T KATAMI and JEFFREY J
6    ZARRILLO,

7              Plaintiffs,

8    CITY AND COUNTY OF SAN FRANCISCO,

9              Plaintiff-Intervenor,

10             v

11   ARNOLD SCHWARZENEGGER, in his
     official capacity as governor of
12   California; EDMUND G BROWN JR, in
     his official capacity as attorney
13   general of California; MARK B              No    C 09-2292 VRW
     HORTON, in his official capacity
14   as director of the California               ORDER
     Department of Public Health and
15   state registrar of vital
     statistics; LINETTE SCOTT, in her
16   official capacity as deputy
     director of health information &
17   strategic planning for the
     California Department of Public
18   Health; PATRICK O'CONNELL, in his
     official capacity as clerk-
19   recorder of the County of
     Alameda; and DEAN C LOGAN, in his
20   official capacity as registrar-
     recorder/county clerk for the
21   County of Los Angeles,

22             Defendants,

23   DENNIS HOLLINGSWORTH, GAIL J
     KNIGHT, MARTIN F GUTIERREZ,
24   HAKSHING WILLIAM TAM, MARK A
     JANSSON and PROTECTMARRIAGE.COM –
25   YES ON 8, A PROJECT OF
     CALIOFORNIA RENEWAL, as official
26   proponents of Proposition 8,

27             Defendant-Intervenors.
     _____/
28

United States District Court
For the Northern District of California

On January 15, 2010, defendant-intervenors, the official proponents of Proposition 8 ("proponents") moved to compel production of documents from three nonparties:  Californians Against Eliminating Basic Rights ("CAEBR"), Equality California and No on Proposition 8, Campaign for Marriage Equality, A Project of the American Civil Liberties Union (the "ACLU") (collectively the "No on 8 groups").  Doc #472.  The court referred the motion to Magistrate Judge Spero pursuant to 28 USC § 636(b)(1)(A) on February 4, 2010.  Doc #572.  The magistrate heard argument on February 25, 2010 and, on March 5, 2010, granted the motion to compel and ordered the No on 8 groups to produce nonprivileged documents that "contain, refer or relate to arguments for or against Proposition 8."  Doc #610 at 14.  The ACLU and Equality California objected to the magistrate's order pursuant to FRCP 72(a) on March 11, 2010.  Doc #614.  Proponents filed their objections on March 15, 2010.  Doc #619.  CAEBR did not object to the magistrate's order.  The court heard argument on the objections on March 16, 2010.

I

The magistrate's order requires the No on 8 groups to produce nonprivileged documents that "contain, refer or relate to arguments for or against Proposition 8" not later than March 31, 2010.  Doc #610.  The order relies on the Ninth Circuit's amended opinion, <u>Perry v Schwarzenegger</u>, 591 F3d 1147, 1164 (9th Cir 2010), to determine that proponents' subpoenas may lead to the discovery of admissible evidence under FRCP 26.  Doc #610 at 5.  The order also relies on <u>Perry</u>, 591 F3d at 1165 n12, to determine the scope

of the No on 8 groups' First Amendment privilege.  Doc #610 at 6-7.
Finally, the order adopts measures to reduce the burden of
production on the No on 8 groups.  Id at 12-14.

A magistrate judge's discovery order may be modified or
set aside if it is "clearly erroneous or contrary to law."  FRCP
72(a).  The magistrate's factual determinations are reviewed for
clear error, and the magistrate's legal conclusions are reviewed to
determine whether they are contrary to law.  United States v
McConney, 728 F2d 1195, 1200-1201 (9th Cir 1984) (overruled on
other grounds by Estate of Merchant v CIR, 947 F2d 1390 (9th Cir
1991)).  The clear error standard allows the court to overturn a
magistrate's factual determinations only if the court reaches a
"definite and firm conviction that a mistake has been committed."
Wolpin v Philip Morris Inc, 189 FRD 418, 422 (CD Cal 1999) (citing
Federal Sav & Loan Ins Corp v Commonwealth Land Title Ins Co, 130
FRD 507 (DDC 1990)).  The magistrate's legal conclusions are
reviewed de novo to determine whether they are contrary to law.
Equal Employment Opportunity Commission v Lexus of Serramonte, No
05-0962 SBA, Doc #68 at 4; William W Schwarzer, et al, Federal
Civil Procedure Before Trial, 16:278.

When the court reviews the magistrate's determination of
relevance in a discovery order, "the Court must review the
magistrate's order with an eye toward the broad standard of
relevance in the discovery context.  Thus, the standard of review
in most instances is not the explicit statutory language, but the
clearly implicit standard of abuse of discretion."  Geophysical Sys
Corp v Raytheon Co, Inc, 117 FRD 646, 647 (CD Cal 1987).  The court
should not disturb the magistrate's relevance determination except

3

United States District Court
For the Northern District of California

where it is based on "an erroneous conclusion of law or where the record contains no evidence on which [the magistrate] rationally could have based that decision." Wolpin, 189 FRD at 422 (citation omitted).  The abuse of discretion standard does not apply to a discovery order not concerned with relevance.

     For the reasons explained below, the magistrate's order is neither clearly erroneous nor contrary to law.  Accordingly, all objections to the order are DENIED.


                                  II

     The ACLU and Equality California object to the magistrate's order on the basis that the magistrate's FRCP 26 analysis was clearly erroneous and that the magistrate's application of the First Amendment privilege was contrary to law. Doc #614.  The court addresses each objection in turn.


                                  A

     The ACLU and Equality California argue that the magistrate clearly erred and abused his discretion in determining that proponents' subpoenas would lead to relevant information under FRCP 26.  Doc #614 at 7.  This objection has three parts:  first, that the magistrate applied the FRCP 26 relevance standard when a more searching standard was appropriate; second, that the subpoenas do not seek relevant documents under any standard of relevance; and third, that the magistrate failed to weigh the marginal relevance of the documents against the heavy burden production of the documents would impose.

4

1

To determine whether proponents' subpoenas seek discoverable documents, the magistrate applied the standard set forth in FRCP 26(b)(1) that "a party may obtain nonprivileged discovery that is relevant to any claim or defense, and '[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'" Doc #610 at 5 (citing FRCP 26(b)(1)). The ACLU and Equality California argue as a matter of law that because the discovery period is closed and the trial has all but concluded,[1] the magistrate should have applied a more searching standard of relevance than is found in FRCP 26. Doc #614 at 7.

The ACLU and Equality California cite no authority for the proposition that the court should apply a more searching standard of relevance when the formal discovery cutoff has passed. Even if a more searching standard is appropriate for post-trial discovery motions, the instant motion to compel was filed before trial proceedings concluded. See Doc #610 at 4 (discussing the procedural history of proponents' motion to compel). Thus, even if a post-trial motion to compel could be subject to a more searching standard of relevance, the ACLU and Equality California have not shown the magistrate erred as a matter of law in concluding the typical standard applies in this case. The objection on this point is accordingly DENIED.

---

[1]Live witness testimony concluded on January 27, 2010, although proponents did not officially rest their case pending resolution of the instant motion to compel. Doc #531 at 107-108 (Trial Tr 1/27/10). The court has not yet scheduled closing arguments, and proponents have stated they do not plan to call additional witnesses.

United States District Court
For the Northern District of California

2

The magistrate determined that the documents sought through proponents' subpoenas met the standard of relevance under FRCP 26(b)(1).  Doc #610 at 6.  The magistrate relied on <u>Perry</u>, 591 F3d at 1164, which held that a document request seeking similar campaign documents from proponents was "reasonably calculated to lead to the discovery of admissible evidence on the issues of voter intent and the existence of a legitimate state interest."  The magistrate then determined that documents from the No on 8 campaign could be relevant to the question why voters approved Proposition 8, as the messages from the No on 8 campaign were part of the mix of information available to the voters.  Doc #610 at 6.

The ACLU and Equality California argue that the documents sought are simply not relevant to the question of voter intent.  But because the Ninth Circuit has determined that campaign documents may lead to discovery of admissible evidence, and because the Ninth Circuit's holding is not limited to campaign documents from the side that succeeded in persuading voters, the magistrate did not clearly err in determining that the documents sought by proponents meet the FRCP 26 relevance standard.  The magistrate considered and rejected the contrary argument, finding that campaign documents from both sides of the Proposition 8 campaign met the FRCP 26 standard of relevance.  Because the record supports a finding that campaign documents from both sides meet the standards of discoverability laid out in FRCP 26, the magistrate's relevance determination is not clearly erroneous.

3

Having determined that proponents' subpoenas seek discoverable documents under FRCP 26, the magistrate then adopted measures to reduce the burden of production on the No on 8 groups. Doc #610 at 12.  The measures adopted to reduce burden, including adopting a list of electronic search terms, restricting Equality California's electronic document search to a central server, not requiring a privilege log and not requiring production of any document constituting a communication solely within a core group, appear tailored to eliminate unnecessary burdens and focus production on documents most likely to be relevant to proponents' case.

The ACLU and Equality California argue the magistrate erred as a matter of law in failing to consider relevance and burden on a sliding scale.  Doc #614 at 10.  The ACLU and Equality California argue proponents have demonstrated only a marginal relevance, if any, for the documents sought in the subpoenas.

Indeed, proponents' showing of relevance is minimal. Proponents rely without elaboration on the court's previous orders and the Ninth Circuit's opinion in Perry to assert that the subpoenas seek relevant documents under FRCP 26.  In response to the court's question at the March 16 hearing why proponents need the documents, proponents referred to the court's order that the mix of information available to the voters could help determine the state interest in Proposition 8 and asserted that documents from No on 8 groups could add to the mix.  Proponents also argue that the documents might speak to the political power of gays and lesbians, although proponents do not appear to have made use of publicly

United States District Court

For the Northern District of California

available documents in this regard during trial.  See Doc #620 at

15 (stating that proponents "were unable to address issues put into

contention by Plaintiffs," like contributions to the No on 8

campaign by progressive churches, even though information about

such donations is available to the public under the Political

Reform Act of 1974, Cal Govt Code § 81000 et seq).  Although

proponents describe the documents sought as "highly relevant," Doc

#620 at 15, proponents do not attempt to make a showing that their

need for the documents meets the heightened standard necessary to

overcome the No on 8 groups' First Amendment privilege.  See Perry,

591 F3d at 1164-1165 (applying the "First Amendment's more

demanding heightened relevance standard" whether the party seeking

discovery has "demonstrated an interest in obtaining the

disclosures which is sufficient to justify the deterrent effect on

the free exercise of the constitutionally protected right of

association.") (citing NAACP v Alabama, 357 US 449, 463).  Thus,

proponents have failed to make a showing that the documents they

seek are highly relevant to the claims they are defending against.

Nevertheless, proponents' showing satisfies the standard

of discoverability set forth in FRCP 26, and the magistrate did not

err in ordering the No on 8 groups to comply with the proponents'

subpoenas and to produce nonprivileged documents.  Indeed, the

magistrate carefully weighed the marginal relevance of proponents'

discovery against the burden cast on the No on 8 groups.  In doing

so, the magistrate took substantial steps to ensure compliance with

the subpoenas would not amount to an undue burden on the No on 8

groups.  Doc #610 at 13.  To the extent the ACLU and Equality

California argue the magistrate's order imposes an undue burden on

United States District Court
For the Northern District of California

them, they have failed to substantiate the burden the magistrate's order imposes. See Doc #614 at 10-11 (citing to Doc #544, the declaration of Elizabeth Gill, filed before the magistrate issued the order compelling production). At the March 16 hearing, counsel for the ACLU stated he could not quantify the cost of production but that he believed the parties' submissions before the magistrate were sufficient to support the claim that the production ordered by the magistrate amounts to an undue burden. Tellingly, the ACLU and Equality California have made no showing regarding the burden on the No on 8 groups in complying with the magistrate's order. The court cannot, therefore, conclude that the magistrate clearly erred in compelling production despite the burden compliance may impose.

For the foregoing reasons, the court declines to disturb the magistrate's rulings regarding burden and relevance. The objections of the ACLU and Equality California on these points are DENIED.

**B**

The court now turns to the objections of the ACLU and Equality California regarding the magistrate's application of the First Amendment privilege. The ACLU and Equality California argue the magistrate's application of the First Amendment privilege is contrary to law as the privilege requires a "more demanding heightened relevance standard" for the campaign documents. See Perry, 591 F3d at 1164. The ACLU and Equality California also object that the magistrate erred in failing to include groups of individuals in Equality for All's core group.

**1**

Because the No on 8 groups assert a First Amendment privilege against disclosure of their campaign documents, the magistrate determined the scope of the privilege. Doc #610 at 6. In doing so, the magistrate relied on <u>Perry</u>, 591 F3d at 1165 n12, which held that the First Amendment privilege is limited to "*private, internal* campaign communications concerning the *formulation of campaign strategy and messages* * * * among the core group of *persons* engaged in the formulation of strategy and messages." The magistrate thus determined a core group of individuals whose communications within a No on 8 group are entitled to protection against disclosure under the First Amendment. The magistrate determined that the privilege extends to communications within a core group but not to communications between or among different groups, as such communications are by definition not "internal." Doc #610 at 7.

The ACLU and Equality California object that the magistrate erred as a matter of law by focusing on individuals whose communications are privileged. Instead, the ACLU and Equality California argue the magistrate should have adopted a more functional approach to the privilege based on the structure of the campaign. But the ACLU and Equality California make no suggestion concerning how the court should implement their suggested functional approach and in any event failed to furnish the magistrate information from which a functional interpretation of the core group as defined in footnote 12 could be derived.

The footnote, and indeed the entire amended opinion, supports the magistrate's determination that the First Amendment

privilege is limited to a core group of individuals.  Unlike the attorney-client privilege in the corporate context, see <u>Upjohn Co v United States</u>, 449 US 383, 392 (1981) (holding that a control group test "frustrates the very purpose" of the attorney-client privilege), the First Amendment privilege protects against disclosure only those communications intentionally kept within a group engaged in strategy and message formulation.

To explain the scope of the First Amendment privilege, the Ninth Circuit relied on <u>In re Motor Fuel Temperature Sales Practices Litigation</u>, 258 FRD 407, 415 (D Kan 2009) (O'Hara, MJ) (applying the First Amendment privilege to trade associations' internal communications regarding lobbying, planning and advocacy). The Kansas district court considered objections to the magistrate's order and held that the magistrate erred as a matter of law in concluding that internal trade association communications were inherently privileged.  <u>In re Motor Fuel Temperature Sales Practices Litigation</u>, -- FRD --, 2010 WL 786583, *5 (D Kan March 4, 2010) (Vratil, J).  Instead, the law requires those claiming a First Amendment associational privilege to put forth a prima facie case that disclosure would have a chilling effect on their associational rights.  Id at *5-*6; see also <u>Perry</u>, 591 F3d at 1162-1163 (finding that proponents had made a prima facie case for application of the First Amendment privilege against compelled disclosure based on declarations tending to show disclosure would chill their associational rights).  Thus:

**[A] party seeking First Amendment association privilege [must] demonstrate an objectively reasonable probability that disclosure will chill associational rights, i e that disclosure will deter membership due to fears of threats, harassment or reprisal from either government officials or private parties which may affect members' physical well-being, political activities or economic interests.**

In re Motor Fuels, -- FRD --, 2010 WL 786583 at *8.

The ACLU and Equality California presented some evidence to the magistrate regarding the chilling effect of compelled disclosure. The ACLU submitted the declaration of Elizabeth Gill, who stated that disclosure of campaign strategy and messages "would have hindered [the ACLU's] ability to mount political opposition to Proposition 8" because it would have inhibited a "robust exchange of ideas and free flow of information." Doc #597 at ¶11. Gill declared further that compelled disclosure would make the ACLU "quite wary" of participating in political campaigns in the future. Id at ¶12. Equality California submitted the declaration of James Brian Carroll, who stated that disclosure of communications internal to Equality California would restrict its ability to organize and fund a political campaign. Doc #601. The showing ACLU and Equality California make is similar to the showing made by proponents and accepted by the Ninth Circuit. Perry, 591 F3d at 1163 (noting that proponents' evidence was "lacking in particularity but consistent with the self-evidence conclusion" that a discovery request seeking internal campaign communications implicates important First Amendment questions).

Because the prima facie case of chill made by the ACLU and Equality California is substantially the same as the prima facie case made by proponents, the magistrate did not err as a matter of law in applying the First Amendment privilege standard

United States District Court
For the Northern District of California

set forth in <u>Perry</u>, 591 F3d at 1165 n12. That standard protects internal communications among a core group of persons, as disclosure of these communications may lead to the chilling effects described in the Gill and Carroll declarations. The standard does not protect campaign communications that are not private and internal. Nothing in the Gill and Carroll declarations suggests the standard as applied is insufficient to protect the No on 8 groups' associational rights.

This follows from the magistrate's correct focus on the individuals engaged in the formulation of strategy and messages whose communications were not intended for public distribution. The functional approach advocated by the ACLU and Equality California ignores the important limiting principle that a communication must be private to be privileged under the First Amendment.

The ACLU and Equality California object to the magistrate's determination to limit the scope of the First Amendment privilege to communications within but not between core groups. See Doc #610 at 12-13. The objection is not well-taken. The magistrate did not err as a matter of law in concluding that the First Amendment privilege does not cover communications between [or among] separate organizations. Doc #610 at 12-13. A communication "internal" to an organization is by definition wholly within that organization. The ACLU and Equality California would have the court stretch the meaning of "internal" to embrace a broad coalition of groups that took a position against Proposition 8. See Doc #609 at 2-6 ("Equality for All Campaign Committee Members"). The problem with attempting to categorize

13

communications among individuals associated with a laundry list of groups is that the ACLU and Equality California failed to furnish the magistrate or the undersigned with a comprehensible limiting principle by which to define a communication between or among persons affiliated with such organizations as internal.  No evidence in the record supports a finding that communications among a broad coalition of groups are private and internal.

**2**

The ACLU and Equality California argue that the magistrate erred in failing to include in the Equality for All core group the Equality California Institute Board of Directors, the Equality for All Campaign Committee and Equality for All Campaign Staff.  Doc #614 at 13.  The ACLU and Equality California argue that the February 22 Kors declaration, Doc #598, supports a finding that members of these groups were involved in the formulation of strategy and messages for Equality for All.  But the February 22 Kors declaration makes no showing concerning who in the these groups should be included in the Equality for All core group.  Because the No on 8 groups did not present evidence sufficient for the magistrate to include any individual from these groups as part of the core group for Equality for All, the magistrate's decision to exclude the groups is supported by the record and is therefore not clearly erroneous.

At the February 25, 2010 hearing, the magistrate asked counsel for Equality California for an affidavit to support inclusion of individuals from the campaign committee and campaign staff in the Equality for All core group.  Doc #613 at 44 (Hrg Tr

**United States District Court**
For the Northern District of California

2/25/10).   Counsel agreed to identify individuals "who played a larger role than others" in the development of strategy and messages.   Id at 45.   In response to the magistrate's inquiry, the No on 8 groups submitted the March 3 Kors declaration, which fails to identify individuals in the campaign committee and campaign staff who were engaged in the formulation of strategy and messages, Doc #609 at ¶¶6-7.   The March 3 Kors declaration thus did not provide the magistrate with the evidence he sought at the February 25 hearing.   Based on the March 3 Kors declaration, the magistrate concluded that the individuals' roles had not been explained and that "the court lacks a basis to include these individuals in Equality for All's core group."   Doc #610 at 11.   The magistrate's finding that the No on 8 groups did not provide the magistrate with information necessary to include the campaign committee and campaign staff in the core group is thus supported by the record.

The Equality California Institute was described at the February 25, 2010 hearing as "involved with the effort of Equality California with regards to fundraising."   Doc #613 at 46.   The No on 8 groups made no further showing that the Institute developed campaign strategy and messages for the Proposition 8 campaign for any No on 8 group.   Accordingly, the magistrate did not clearly err in refusing to include the Equality California Institute in a core group.

The magistrate's application of the First Amendment privilege is not contrary to law, and the magistrate's core group determinations are supported by the record and are therefore not clearly erroneous.   Accordingly, the court declines to disturb the magistrate's First Amendment rulings.

3

The ACLU objects that the order should be modified "to preclude disclosure to anyone involved in the Proposition 8 campaign or who may be involved in a future political campaign involving the right of same-sex couples to marry." Doc #614 at 15. Because the ACLU did not raise this point with the magistrate, the magistrate did not clearly err in failing to include the restriction, and the court need not consider the objection further. See <u>United States v Howell</u>, 231 F3d 615, 621 (9th Cir 2000). The objection is accordingly DENIED.

III

Proponents bring eight objections to the magistrate's order. Doc #619 at 13-21. The court addresses each in turn.

A

Proponents object that the magistrate did not require the No on 8 groups to prepare a privilege log and did not offer an explanation why no privilege log would be required. Doc #619 at 13. The magistrate's order states: "The No on 8 groups are not required to produce a privilege log." Doc #610 at 14. While the order provides no additional explanation, the magistrate explained at the February 25 hearing that he was "willing to discuss whether it's a reasonable burden to produce privilege logs. That may be undue. The distinction between privileged and nonprivileged is going to be whether or not it's a communication within a very well-defined core group." Doc #613 at 8 (Hrg Tr 2/25/10). The court thus concludes the magistrate's decision not to require a privilege

log was a measure intended to reduce the production burden on the No on 8 groups.

Proponents argue that under FRCP 45(d)(2)(A)(ii), a nonparty claiming a privilege must prepare some form of a privilege log to preserve the privilege.  Moreover, the Ninth Circuit held that "some form of a privilege log is required" to preserve the First Amendment privilege.  <u>Perry</u>, 591 F3d at 1153 n1. Nevertheless, no rule prevents the court from waiving the privilege log requirement to reduce a nonparty's burden.  The magistrate's rulings to reduce the burden on the No on 8 groups are more fully addressed in subsection II(A)(3), above.  In any event, the magistrate concluded that waiving the privilege log requirement was appropriate, because the privilege can be tested without a log as it depends only on the identities of those communicating.  See Doc #613 at 8.  Because that conclusion neither contrary to law nor clearly erroneous, proponents' objection on this point is DENIED.

**B**

The magistrate ordered that the No on 8 groups are only "required to review electronic documents containing at least one of the following terms:  'No on 8;' 'Yes on 8;' 'Prop 8;' 'Proposition 8;' 'Marriage Equality;' and 'ProtectMarriage.com.'"  Doc #610 at 13.  The magistrate explained the limitation was intended "to ensure that any burden borne by the third parties is not undue." Id.  Proponents object that the search terms are underinclusive and argue the magistrate erred in failing to allow proponents the opportunity to present additional search terms to the court.  Doc #619 at 14-15.

United States District Court
For the Northern District of California

At the February 25 hearing, the magistrate stated his intent to cabin production with search terms like "Proposition 8, 'No on 8,' 'Yes on 8,' Prop 8 — something like that."  Doc #613 at 46.  Proponents were thus on notice that the magistrate intended a limited number of search terms.  The magistrate directed Equality California to submit an additional declaration on core group issues and burden and then stated he intended to "put out a ruling shortly" after he received the declaration.  Id at 60.  Despite this notice, proponents failed to seek the opportunity to respond to Equality California's declaration.  It was not clearly erroneous for the magistrate to rule on the motion to compel without awaiting a response from proponents, because proponents had not requested the opportunity to provide the magistrate with a response.

Moreover, the magistrate's decision to adopt only a small number of search terms is not clearly erroneous.  Proponents suggest an expansive list of search terms, including generic terms like "ad" or "equal*."  Doc #619 at 15.  The search terms suggested by proponents do not appear tailored to cabin production.  Indeed, it would appear that the search term "equal*" would capture every document in Equality California's possession.  It was thus not in error for the magistrate to conclude that a narrow list of search terms would be appropriate to reduce undue burden on the No on 8 groups.  Proponents' objection on this point is therefore DENIED.

C

The magistrate also ordered, as a measure to reduce burden, that "Equality California shall only be required to search its central email server for responsive electronic documents."  Doc

#610 at 13.  The magistrate relied on the March 3 declaration of Geoff Kors, which states that "[a]pproximately 75 people at [Equality California] could have potentially relevant emails on their hard drives" and that producing email from the 75 hard drives "could take more than a week" at a cost of around "$30,000."  Doc #609 at ¶9.  The March 3 Kors declaration states further that Equality California has "approximately 27 to 30 gigabytes of email stored" on central email server, and that it would take "several days" at a cost of "$14,000 to $20,000" to collect and process email stored on the central server.  Id at ¶10.

The magistrate determined that the additional burden the search of 75 hard drives would impose was not worth the cost.  That determination is not clearly erroneous in light of the volume of documents stored on the central server.

Proponents object that the magistrate did not "require Equality California to cease archiving any and all emails from the central server."  Doc #619 at 18.  To the extent proponents are concerned that Equality California may attempt to spoliate evidence, proponents may seek to bring the appropriate motion. There was nothing before the magistrate or brought to this court's attention that suggests any such attempt.  The magistrate did not, in any event, err in failing to include this specific instruction in the order.  Proponents' objection to the magistrate's order regarding the central email server is accordingly DENIED.

D

As the court of appeals noted in Perry, delineation of the core group is central to determining the scope of the First

United States District Court

For the Northern District of California

1  Amendment privilege and this determination rests on the specific

2  facts of the case.  The magistrate applied the standard set in

3  Perry, 591 F3d at 1165 n12, to determine for each No on 8 group a

4  core group of persons whose internal communications may be

5  privileged under the First Amendment.  Doc #610 at 6.  Based on the

6  specific facts of the No on 8 campaign, the magistrate also

7  determined a core group of persons for the umbrella No on 8

8  organization Equality for All.  Id at 10-11.  Proponents object

9  that the magistrate had no reason to determine a core group for

10 Equality for All, because proponents did not subpoena documents

11 from Equality for All and because Equality for All did not place

12 evidence before the magistrate.  Doc #619 at 18.

13      The magistrate relied on the declarations of Geoff Kors,

14 Doc ##598, 609, to determine a core group for Equality for All.

15 The February 22 Kors declaration explains that Equality for All

16 "acted as an umbrella campaign organization for more than 100

17 member organizations," including the three No on 8 groups subject

18 to proponents' subpoenas.  Doc #598 at ¶6.  The magistrate examined

19 the Kors declarations to determine who should and should not be

20 included in the Equality for All core group, as more fully

21 explained in section II(B)(2), above.  Because the evidence showed

22 a formal relationship between Equality for All and the No on 8

23 groups, it was not an error for the magistrate to conclude that

24 individuals associated with the Equality for All umbrella

25 organization who were engaged in the formulation of strategy and

26 messages may claim a privilege over communications within the

27 umbrella organization.  Nor was it clearly erroneous to rely on the

28 declarations of Geoff Kors, a member of Equality for All's

executive committee, to define Equality for All's core group.
Proponents' objection on this point is accordingly DENIED.

E

The magistrate found based on the evidence presented that certain individuals have core group status in more than one organization.  The magistrate noted that "the scope of the First Amendment privilege could arguably depend on the capacity in which a core group member [of more than one No on 8 group] is communicating."  Doc #610 at 12.  Nevertheless, the magistrate's order does "not require production of any communications about strategy and messages between core group members who belong to that core group," as the effort required to inquire into the capacity in which a core group member is communicating "might amount to an undue burden."  Id.

Proponents object that the magistrate's order in this regard is contrary to the court's previous holding that proponents could not assert a First Amendment privilege over communications with other groups.  Doc #619 at 18-19.  The court previously held that proponents had "only claimed a First Amendment privilege over communications among members of the core group of Yes on 8 and ProtectMarriage.com," and that even if proponents had preserved the privilege, they had "failed to meet their burden of proving that the privilege applies to any documents in proponents' possession, custody or control."  Doc #372 at 3.  Here, even if the communications might not be protected by the First Amendment privilege, the magistrate did not clearly err in refusing to order their production because the burden of determining whether the

United States District Court
For the Northern District of California

communications are in fact privileged would be undue.  The court's previous order is not inconsistent with the magistrate's order. Accordingly, proponents' objection on this point is DENIED.

F

Related to the objection discussed in subsection E, above, proponents object as inconsistent with the court's previous order that the magistrate included certain individuals in more than one core group.  Doc #619 at 19.  The previous order denied proponents' claim of privilege over communications to other Yes on 8 organizations, because "[t]here [was] no evidence before the court regarding any other campaign organization."  Doc #372 at 2-3. Here, in contrast, the magistrate found that the No on 8 groups had supported through declarations inclusion of individuals in more than one No on 8 core group.  The magistrate's finding is based on evidence regarding the No on 8 campaign and is not inconsistent with the court's previous order or contrary to law.  Proponents' objection on this point is therefore DENIED.

G

Proponents object that Armour Media Group and Armour Griffin Media Group Inc were included in the core groups of CAEBR and Equality for All on the ground that the court has previously held that media vendors cannot be considered part of an organization's core group.  Doc #619 at 19-20.  The magistrate appears to have included Armour Griffin Media Group Inc in the Equality for All core group based on the March 3 Geoff Kors declaration, Doc #609 at ¶8 (stating that the Armour Griffin Media

22

United States District Court

For the Northern District of California

Group "produced advertising" and "participated in formulating campaign messaging").  The magistrate apparently relied on the Moret declaration to include Armour Media Group in the CAEBR core group.  Doc #593 at ¶4(f) (stating that Armour Media Group "conducted polling and assisted CAEBR in its early formulation of campaign strategy and messaging").  Because the Kors and Moret declarations support inclusion of the media groups in the core groups, the magistrate's decision to include the media groups is not clearly erroneous.  Proponents objection on this point is DENIED.

H

The magistrate ordered each No on 8 group, including CAEBR, to "produce all documents in its possession that contain, refer or relate to arguments for or against Proposition 8, except those communications solely among members of its core group."  Doc #610 at 14.  The magistrate did not address CAEBR's assertion that it had already completed its production.  Proponents argue the magistrate erred in failing to address whether CAEBR's production was "credible," as CAEBR produced only sixty documents.  Doc #619 at 20.  But the magistrate did not err as a matter of law in failing to address CAEBR's production.  The magistrate set the standard for CAEBR's production.  Proponents can if necessary address any problems with CAEBR's production by appropriate motion.  Proponents' objection on this point is therefore DENIED.

United States District Court
For the Northern District of California

IV

For the reasons explained above, the magistrate's order granting proponents' motion to compel discovery from the No on 8 groups is neither clearly erroneous nor contrary to law. Accordingly, the objections of the ACLU and Equality California, Doc #614, and of proponents, Doc #619, are DENIED.

The magistrate's order contemplates that production will take place on a rolling basis to conclude not later than March 31, 2010.  Doc #610 at 14.  The court adopts the schedule set by the magistrate.  If proponents wish to supplement their trial record with documents obtained through this production, they must make the appropriate motion or submission not later than Monday, April 12, 2010.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge