1   LYNN H. PASAHOW (CSB NO. 054283)
    lpasahow@fenwick.com
2   CAROLYN CHANG (CSB NO. 217933)
    cchang@fenwick.com
3   LESLIE KRAMER (CSB NO. 253313)
    lkramer@fenwick.com
4   LAUREN WHITTEMORE (CSB NO. 255432)
    lwhittemore@fenwick.com
5   FENWICK & WEST LLP
    555 California Street, Suite 1200
6   San Francisco, CA 94104
    Telephone:    (415) 875-2300
7   Facsimile:    (415) 281-1350

8   Attorneys for Third-Party Equality California

9
    (Additional Counsel Listed on Signature Page)
10

11              UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14  KRISTIN M. PERRY, et al.,                     Case No.  09-CV-2292 VRW

15              Plaintiffs,
                                                  **The Honorable Vaughn R. Walker,**
16  and                                           **Chief Judge**
    CITY AND COUNTY OF SAN FRANCISCO,
17              Plaintiff-Intervenor,
                                                  **JOINT NOTICE OF APPEAL**
18          v.

19  ARNOLD SCHWARZENEGGER, et al.,

20              Defendants,
    and
21  PROPOSITION 8 OFFICIAL PROPONENTS
    DENNIS HOLLINGSWORTH, et al.,
22
23                  Defendant-Intervenors.

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FILED

MAR 2 4 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| 1 | Notice is hereby given under Fed. R. App. P. 3 that third parties Equality California |

1    Notice is hereby given under Fed. R. App. P. 3 that third parties Equality California

2    ("EQCA") and No on Proposition 8, Campaign for Marriage Equality, A Project of the American

3    Civil Liberties Union ("ACLU") hereby jointly appeal to the United States Court of Appeals for

4    the Ninth Circuit from the orders of the Northern District of California dated March 5, 2010 (Doc.

5    # 610) and March 23, 2010 (Doc. # 623), to the extent that they require EQCA and the ACLU to

6    produce documents which are protected by the First Amendment privilege.

7

8

9    Dated: March 24, 2010                           FENWICK & WEST LLP

10

11   By: _____
                                                     Lauren Whittemore

12                                                   Attorneys for Equality California

13

14

15                                                   STEPHEN V. BOMSE
                                                     JUSTIN M. ARAGON
16                                                   Orrick, Herrington & Sutcliffe LLP

17                                                   ALAN L. SCHLOSSER
                                                     ELIZABETH O. GILL
18                                                   ACLU Foundation Of Northern California

19                                                   Attorneys for No on Proposition 8, Campaign
                                                     for Marriage Equality: A Project of the
20                                                   American Civil Liberties Union of Northern
                                                     California

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO



USCA DOCKET # (IF KNOWN)

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
## CIVIL APPEALS DOCKETING STATEMENT

PLEASE ATTACH ADDITIONAL PAGES IF NECESSARY.

| **TITLE IN FULL:** | DISTRICT: N. District of California | JUDGE: Hon. Vaughn Walker, C.J. |
|---|---|---|
| KRISTIN M. PERRY, et al., v. ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California, et al.<br><br>(Please see Attachment A for full title.) | DISTRICT COURT NUMBER: 09-CV-2292 VRW | |
| | DATE NOTICE OF APPEAL FILED:<br>March 24, 2010 | IS THIS A CROSS APPEAL?<br>☐ YES |
| | IF THIS MATTER HAS BEEN BEFORE THIS COURT PREVIOUSLY, PLEASE PROVIDE THE DOCKET NUMBER AND CITATION (IF ANY):<br>No. 09-17241 | |

BRIEF DESCRIPTION OF NATURE OF ACTION AND RESULT BELOW:

The underlying action is a federal constitutional challenge to a provision of the California Constitution which denies same-gender couples the right to marry. The orders under review involve a denial of a First Amendment privilege raised by third parties No on Proposition 8, Campaign for Marriage Equality: A Project of the American Civil Liberties Union of California and Equality California.

PRINCIPAL ISSUES PROPOSED TO BE RAISED ON APPEAL:

Whether the Magistrate Judge and the District Court Judge erred in refusing to recognize a First Amendment privilege for non-public communications involve campaign strategy or messaging among individuals involved in the formulation of such strategy or messaging both within and among organizations working in common to defeat Proposition 8.

PLEASE IDENTIFY ANY OTHER LEGAL PROCEEDING THAT MAY HAVE A BEARING ON THIS CASE (INCLUDE PENDING DISTRICT COURT POST-JUDGMENT MOTIONS):

DOES THIS APPEAL INVOLVE ANY OF THE FOLLOWING:

☐ Possibility of Settlement
☐ Likelihood that intervening precedent will control outcome of appeal
☒ Likelihood of a motion to expedite or to stay the appeal, or other procedural matters (Specify)

Chief Judge Walker has granted a stay of discovery until March 29, 2010 and Third Parties seek expedited appeal.

☐ Any other information relevant to the inclusion of this case in the Mediation Program

☐ Possibility parties would stipulate to binding award by Appellate Commissioner in lieu of submission to judges

## LOWER COURT INFORMATION

| JURISDICTION | | DISTRICT COURT DISPOSITION | |
|---|---|---|---|
| FEDERAL | APPELLATE | TYPE OF JUDGMENT/ORDER APPEALED | RELIEF |

**FEDERAL**

☒ FEDERAL QUESTION

☐ DIVERSITY

☐ OTHER (SPECIFY):

**APPELLATE**

☒ FINAL DECISION OF DISTRICT COURT

☐ INTERLOCUTORY DECISION APPEALABLE AS OF RIGHT

☐ INTERLOCUTORY ORDER CERTIFIED BY DISTRICT JUDGE (SPECIFY):

☒ OTHER (SPECIFY):

Mandamus, in the alternative

**TYPE OF JUDGMENT/ORDER APPEALED**

☐ DEFAULT JUDGMENT

☐ DISMISSAL/JURISDICTION

☐ DISMISSAL/MERITS

☐ SUMMARY JUDGMENT

☒ JUDGMENT/COURT DECISION

☐ JUDGMENT/JURY VERDICT

☐ DECLARATORY JUDGMENT

☐ JUDGMENT AS A MATTER OF LAW

☐ OTHER (SPECIFY):

**RELIEF**

☐ DAMAGES:

SOUGHT $

AWARDED $

☐ INJUNCTIONS:

☐ PRELIMINARY

☐ PERMANENT

☐ GRANTED

☐ DENIED

☐ ATTORNEY FEES:

SOUGHT $

AWARDED $

☐ PENDING

☐ COSTS: $

## CERTIFICATION OF COUNSEL

**I CERTIFY THAT:**

1. COPIES OF ORDER/JUDGMENT APPEALED FROM ARE ATTACHED.

2. A CURRENT SERVICE LIST OR REPRESENTATION STATEMENT WITH TELEPHONE AND FAX NUMBERS IS ATTACHED (SEE 9TH CIR. RULE 3-2).

3. A COPY OF THIS CIVIL APPEALS DOCKETING STATEMENT WAS SERVED IN COMPLIANCE WITH FRAP 25.

4. I UNDERSTAND THAT FAILURE TO COMPLY WITH THESE FILING REQUIREMENTS MAY RESULT IN SANCTIONS, INCLUDING DISMISSAL OF THIS APPEAL.

_____          March 24, 2010
            **Signature**                        **Date**

## COUNSEL WHO COMPLETED THIS FORM

| NAME | Lauren Whittemore |
|---|---|
| FIRM | Fenwick & West LLP |
| ADDRESS | 555 California Street, 12th Floor |

| CITY | San Francisco | STATE | CA | ZIP CODE | 94104 |
|---|---|---|---|---|---|
| E-MAIL | lwhittemore@fenwick.com | TELEPHONE | 415-875-2300 | | |
| FAX | 415-281-1350 | | | | |

**\*\*THIS DOCUMENT SHOULD BE FILED IN DISTRICT COURT WITH THE NOTICE OF APPEAL. \*\***
**\*\*IF FILED LATE, IT SHOULD BE FILED DIRECTLY WITH THE U.S. COURT OF APPEALS.\*\***

## Attachment A

TITLE IN FULL:

KRISIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO,

Plaintiffs

and

CITY AND COUNTY OF SAN FRANCISCO,

Plaintiff-Intervenor

v.

ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the California Department of Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; and DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles,

Defendants,

and

PROPOSITION 8 OFFICIAL PROPONENTS DENNIS HOLLINGSWORTH, GAIL J. KNIGHT, MARTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM, and MARK A. JANSSON; and PROTECTMARRIAGE.COM – YES ON 8, A PROJECT OF CALIFORNIA RENEWAL,

Defendant-Intervenors.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

KRISTIN M PERRY, SANDRA B STIER,
PAUL T KATAMI and JEFFREY J
ZARRILLO,

            Plaintiffs,

CITY AND COUNTY OF SAN FRANCISCO,

            Plaintiff-Intervenor,

            v

ARNOLD SCHWARZENEGGER, in his
official capacity as governor of
California; EDMUND G BROWN JR, in
his official capacity as attorney             No    C 09-2292 VRW
general of California; MARK B
HORTON, in his official capacity              ORDER
as director of the California
Department of Public Health and
state registrar of vital
statistics; LINETTE SCOTT, in her
official capacity as deputy
director of health information &
strategic planning for the
California Department of Public
Health; PATRICK O'CONNELL, in his
official capacity as clerk-
recorder of the County of
Alameda; and DEAN C LOGAN, in his
official capacity as registrar-
recorder/county clerk for the
County of Los Angeles,

            Defendants,

DENNIS HOLLINGSWORTH, GAIL J
KNIGHT, MARTIN F GUTIERREZ,
HAKSHING WILLIAM TAM, MARK A
JANSSON and PROTECTMARRIAGE.COM -
YES ON 8, A PROJECT OF
CALIOFORNIA RENEWAL, as official
proponents of Proposition 8,

            Defendant-Intervenors.
_____/

For the Northern District of California

United States District Court

1             **Defendant-intervenors, the official proponents of**

2 **Proposition 8 ("proponents"), moved on January 15, 2010 to compel**

3 **three nonparty entities, Californians Against Eliminating Basic**

4 **Rights ("CAEBR"), Equality California and No on Proposition 8,**

5 **Campaign for Marriage Equality, A Project of the American Civil**

6 **Liberties Union (the "ACLU") (collectively the "No on 8 groups") to**

7 **produce documents related to the campaign against Proposition 8.**

8 **Doc #472. Proponents' document subpoenas to the No on 8 groups**

9 **were intended to mirror the requests plaintiffs served on**

10 **proponents. Id at 5. On January 8, 2010, the court ordered**

11 **proponents to produce all documents that "contain, refer or relate**

12 **to arguments for or against Proposition 8," except those**

13 **communications solely among members of proponents' core group. Doc**

14 **#372 at 5. Proponents now ask the court to order a similar**

15 **production from the No on 8 groups. Doc #472 at 7-8. Equality**

16 **California and the ACLU oppose proponents' motion to compel, Doc**

17 **##543, 546, and CAEBR argues it has produced all responsive**

18 **nonprivileged documents. Doc #541. The court heard argument on**

19 **the motion on February 25, 2010. Doc #602.**

20

21                               **I**

22             **The procedural history of proponents' motion to compel is**

23 **intertwined with the circuitous course discovery took as the**

24 **parties prepared the case for trial on an expedited basis.**

25 **Pursuant to FRCP 45, proponents served the No on 8 groups with**

26 **document subpoenas on August 27, 2009. Doc #472-1 at 10, 19, 28.**

27 **Proponents simultaneously opposed on relevance and privilege**

28 **grounds similar document requests served on them by plaintiffs.**

United States District Court
For the Northern District of California

1 Doc #187. The court agreed in part with proponents' relevance
2 arguments and ordered plaintiffs to revise an overly broad document
3 request. Doc #214 at 17. In response to the court's order,
4 proponents revised their identical request to the No on 8 groups.
5 Doc #472-3 at 6-7, 15-16, 24-25.

6       Proponents continued to assert a First Amendment
7 privilege over documents related to proponents' campaign for
8 Proposition 8 both in this court and in the Ninth Circuit. While
9 proponents' privilege claim was being litigated, proponents
10 informed the No on 8 groups that proponents expected the No on 8
11 groups to produce only those documents similar to those proponents
12 were obligated to produce. Doc #472-3. The discovery cut-off of
13 November 30, 2009 passed without a final resolution of the scope of
14 proponents' First Amendment privilege claim.

15       On January 4, 2010, the Ninth Circuit issued an opinion
16 providing final guidance to define the scope of the First Amendment
17 privilege. Perry v Schwarzenegger, 591 F3d 1147 (9th Cir 2010).
18 The opinion makes clear that proponents' First Amendment privilege
19 is limited to "*private, internal* campaign communications concerning
20 the *formulation of campaign strategy and messages* * * * among the
21 core group of *persons* engaged in the formulation of strategy and
22 messages." Id at 1165 n12 (emphasis in original). Pursuant to the
23 Ninth Circuit opinion, on January 8, 2010 the court ordered
24 proponents to produce all documents that "contain, refer or relate
25 to arguments for or against Proposition 8," except those
26 communications solely among members of proponents' core group. Doc
27 #372 at 5. On January 15, 2010, four days after the trial began,
28 proponents filed the instant motion.

For the Northern District of California
United States District Court

3

B

Next, the court considers whether proponents' subpoenas seek relevant documents. Proponents assert that they seek the documents to help elucidate voter intent and the purpose of Proposition 8 and because the documents may address the political power of gays and lesbians. Doc #584 at 7-14. Pursuant to FRCP 26(b)(1), a party may obtain nonprivileged discovery that is relevant to any claim or defense, and "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." While a party may obtain discovery from a nonparty, the party must take "reasonable steps to avoid imposing an undue burden or expense" on the nonparty. FRCP 45(c)(1).

Perry, 591 F3d 1147, provides perhaps the best authority to determine whether the communications sought by proponents are relevant. The Ninth Circuit held that plaintiffs' document requests to proponents, which sought documents similar to those at issue in the instant motion, were "reasonably calculated to lead to the discovery of admissible evidence on the issues of voter intent and the existence of a legitimate state interest." Perry, 591 F3d at 1164.

The ACLU points out that the Ninth Circuit's opinion was tailored to the dispute between plaintiffs and proponents and that documents relating to strategy and messages against Proposition 8 are not relevant because Proposition 8 passed. See Doc #543 at 13. According to the ACLU, the intent of voters who voted against Proposition 8 is not relevant, because those voters did not enact a constitutional amendment, and the No on 8 groups' documents are not

5

1   relevant to the question why some voters chose to support
2   Proposition 8, because those voters rejected the arguments.  Id.

3        While the intent of those who voted against Proposition 8
4   is not relevant, the mix of information available to voters who
5   supported Proposition 8 is relevant under FRCP 26 to the questions
6   of intent and state interest.  That mix of information includes
7   arguments considered and ultimately rejected by voters, including
8   arguments against Proposition 8.  As was the case with the
9   proponents, the documents and communications at issue may shed
10  light on the meaning and impact of the messages that were sent to
11  the voters.  Thus, the subpoenaed documents are relevant and must
12  be produced to the extent the documents are not privileged and
13  contain, refer or relate to arguments for or against Proposition 8.

14
15
16                                III

17        The No on 8 groups assert that at least some of the
18  documents in their possession are protected by the First Amendment
19  privilege.  Again, the Ninth Circuit's opinion in Perry, 591 F3d
20  1147, provides the best guidance to determine the scope of the
21  First Amendment privilege in the context of initiative campaigns.
22  As the Ninth Circuit explained, it was deciding "an important issue
23  of first impression – the scope of the First Amendment privilege
24  against compelled disclosure of internal campaign communications."
25  Id at 1157.

26        In the context of an initiative campaign, a campaign
27  organization may assert a First Amendment privilege over "private,
28  internal campaign communications concerning the formulation of

United States District Court
For the Northern District of California

                                 6

1 *campaign strategy and messages* * * * among the core group of
2 *persons* engaged in the formulation of campaign strategy and
3 messages."   Id at 1165 n12 (emphasis in original).   Despite the
4 ACLU's argument to the contrary, Doc #543 at 16, nothing in <u>Perry</u>
5 limits footnote 12's application to "the specific circumstance of
6 the requests served by plaintiffs on Proponents and to the
7 structure of the Yes on 8 campaign."   The footnote does not
8 determine definitively who belongs in the core group of persons;
9 instead, the footnote provides guidance for the court to make the
10 final determination who is a member of a campaign organization's
11 core group.   Id.   That guidance is applicable to the instant
12 dispute.   Accordingly, the court will apply the First Amendment
13 privilege to communications about strategy and messages internal to
14 each No on 8 group's core group.   The privilege applies only to
15 communications within a campaign organization — communications
16 between or among independent campaign organizations are not covered
17 by the First Amendment privilege.

18        The No on 8 groups submitted supplemental declarations to
19 explain and support their core groups.   Doc #593 (CAEBR); Doc #597
20 (ACLU); Doc #598 (Equality California).   Following the February 25
21 hearing, Equality California submitted a supplemental declaration
22 to define a core group for an umbrella organization known as No on
23 8 - Equality for All ("Equality for All").   Doc #609.   The No on 8
24 groups' declarations raise two questions:   (1) which individuals
25 were sufficiently involved in the development of strategy and
26 messages that they should be included in each organization's core
27 group; and (2) the application of the First Amendment privilege to
28 the No on 8 groups.   The court begins with the first question.

United States District Court
For the Northern District of California

A

1

CAEBR filed the declaration of Marisa Moret to support individuals it believes should be included in its core group. Doc #593. The Moret declaration lists individuals, their role in the campaign and their reasons for being included within the core group. Doc #593. The court credits the Moret declaration and finds that CAEBR's core group consists of:

> Ben Barnz, Marisa Moret and Patti Rockenwanger (CAEBR board members); Dennis Herrera (CAEBR chair); employees of Griffin Schake, Armour Media Group and Bonner Group, Inc (campaign consulting firms that had significant input into campaign strategy and messages); Diane Hamwi and Mark Walsh (fundraising consultants who played a significant role in campaign strategy and formulating messages); and Monique Moret Stevens (CAEBR advisor); and assistants to the named individuals acting on the named individuals' behalves.

2

Equality California submitted the February 22 declaration of Geoff Kors in support of its core group. Doc #598 ¶¶16-17. The declaration explains the individuals' roles regarding formulation of strategy and messages. Id. The court credits the February 22 Kors declaration and finds the following individuals are members of Equality California's core group:

\\

\\

\\

\\

\\

\\

United States District Court
For the Northern District of California

8

United States District Court
For the Northern District of California

1     John Duran, Cary Davidson, Tim Hohmeier, Deb Kinney, Diane
Abbitt, Jim Abbott, Dave Baron, Xavier Barrera, Brandon
2     Brawner, Betsy Butler, Jody Cole, Larry Colton, Doug Dombek,
Jeff Haber, Mike Hutcheson, Roslyn Jones, Tom Maddox, Shannon
3     Minter, James Nguyen, Jeff Orr, Dennis Rasor, Jaime Rook, Rick
Saputo, Linda Scaparotti, Eric Siddall, Alan Uphold (members
4     of Equality California's board of directors); Jean Adams, Ali
Bay, Ian Barrera, Jim Carroll, Maya Scott-Chung, Liam Cooper,
5     Doug Flater, Joe Goldman, Daniel Gould, Kendra Harris, Ted
Jackson, Kaitlin Karkos, Alice Kessler, Seth Kilbourn, Hannah
6     Johnson, Geoff Kors, Erica Liscano, Shumway Marshall, Randy
Medenwald, Miranda Meisenback, Trina Olson, Michelle Ortiz,
7     Zorina Price, Leanne Pittsford, Jennifer Sample, George
Simpson, Sean Sullivan, Sarah Tomastik and Clarence Williams
8     (Equality California staff members engaged in the formulation
of strategy and messages); and assistants to the named
9     individuals acting on the named individuals' behalves.

10     Equality California has also sought to include certain

11 individuals associated with the Equality California Institute in

12 its core group. Id at ¶ 18. Equality California has not

13 demonstrated that the Institute engaged in the formulation of

14 strategy and messages for Equality California; accordingly, these

15 individuals are not included in the Equality California core group.

16

17                     3

18     The ACLU filed the declaration of Elizabeth Gill to

19 identify the core group of individuals involved in the development

20 of campaign strategy and messages for the ACLU. Doc #597. The

21 Gill declaration explains that the ACLU staff members listed worked

22 "on ACLU-specific activities toward defeating [Proposition 8]." Id

23 at ¶ 5. The court credits the Gill declaration and finds the

24 following individuals are members of the ACLU's core group:

25 \\

26 \\

27 \\

28 \\

9

1    Elizabeth Gill, Paul Cates, Matthew Coles, Rebecca Farmer,
     Shayna Gelender, Maya Harris, Ashley Morris, Gigi Pandian,
2    Skylar Porras, Catrina Roallos, Laura Saponara (employees of
     the ACLU who worked to defeat Proposition 8); and assistants
3    to the named individuals acting on the named individuals'
     behalves.
4

5

                                    4

6         According to the February 22 Geoff Kors declaration,

7    which the ACLU incorporates by reference, Doc #597 ¶6, the umbrella

8    organization Equality for All was formed in 2005 to fight against

9    any proposition that would limit marriage to opposite-sex couples.

10   Doc #598 ¶5.  Initially, the organization consisted of

11   approximately 35 organizations, which registered Equality for All

12   as a political action committee with the State of California.  Id.

13   During the Proposition 8 campaign, Equality for All had an

14   executive committee, a campaign committee and campaign staff.  Id

15   ¶¶7-9.  Proponents did not serve Equality for All with a document

16   subpoena.

17        The March 3 declaration of Geoff Kors identifies

18   individuals and consulting firms involved in the development of

19   strategy and messages for Equality for All.  Doc #609.  The

20   declaration identifies the Equality for All executive committee,

21   campaign committee, campaign staff and consultants.  Id at ¶¶ 5-8.

22   At the February 25 hearing, the court directed Equality California

23   to submit the supplemental declaration and to support the

24   inclusion, in the core group of Equality for All, of individuals in

25   the campaign committee, staff members and consultants who were

26   instrumental in developing strategy and messages.

27        The March 3 Kors declaration identifies the individual

28   campaign committee members and staff but makes no showing regarding

                                    10

1  those individuals' roles in the Equality for All campaign.  Id at

2  ¶¶ 6-7.  Accordingly, the court lacks a basis to include these

3  individuals in Equality for All's core group.  The March 3 Kors

4  declaration does, however, support through explanation the

5  inclusion of the campaign consultants and consulting firms listed

6  in Doc #609 ¶ 8.  Because the February 22 Kors declaration explains

7  that the Equality for All executive committee "collectively made

8  decisions of great importance to the campaign," members of the

9  executive committee listed in Doc #609 ¶ 5 will be included in the

10  Equality for All core group.

11  For the foregoing reasons, the court finds that the

12  Equality for All core group consists of:

13  Dale Kelly Bankhead, Heather Carrigan, Cary Davidson, Oscar de
    la O, Sue Dunlap, Michael Fleming, Patrick Guierrero, Maya
14  Harris, Dan Hawes, Dennis Herrera, Delores Jacobs, Lorri L
    Jean, Kate Kendall, Geoff Kors, Steve Mele, Joyce Newstat,
15  Tawal Panyacosit Jr, Rashad Robinson, Marty Rouse, Kevin
    Tilden and Andy Wong (the Equality for All executive
16  committee); Steve Smith, Lilia Tamm, Molly Weedn and other
    employees of Dewey Square Group, LLC; Maggie Linden, Lindsey
17  Nitta, Eddie Fernandez, Kris Hanson and other employees of
    Ogilvy Public Relations; Chad Griffin, Mark Armour and other
18  employees of Amour Griffin Media Group, Inc; Kasey Perry and
    other employees of Perry Communications; Yvette Martinez and
19  Javier Angulo of Progressive Strategy Partners LLC; Patrick
    Guerriero and James Dozier of Gill Action; Adam Freed; Joe
20  Rodota; Guy Cecil; Rick Claussen; Gale Kaufman; Nick
    Donatiello; Phyllis Watts; Thalia Zepatos; Steve Mele and
21  other employees of M L Associates LLC; Kimberly Ray; Marjan
    Philhour; Stephanie Berger and other employees of Berger
22  Hirschberg; Shayna Elgin; Mary Pat Bonner and employees of The
    Bonner Group; John Gile; Thom Lynch; Larry Huynh and other
23  employees of Blackrock Associates LLC; Alice Huffman of A C
    Public Affairs Inc; Wendy Liao and other employees of the I W
24  Group; Justin Garrett and other employees of Logo Online/MTV
    Networks; Chris Nolan and other employees of Spot-On; Suzanne
25  Stanford and other employees of Ofrenda; Eric Jaye of
    Storefront Political Media; David Binder and other employees
26  of Binder Research; and Celinda Lake and other employees of
    Lake Associates; and assistants to the named individuals
27  acting on the named individuals' behalves.

28

United States District Court
For the Northern District of California

11

**B**

The court has determined a core group for each No on 8 group as well as Equality for All and must now decide how to apply the First Amendment privilege to the relevant campaign communications. Communications solely within a No on 8 group's core group are privileged under the First Amendment. Perry, 591 F3d 1165 n12. Here, some individuals, like Geoff Kors, Maya Harris and Dennis Herrera, are within core groups of more than one organization. Accordingly, the scope of the First Amendment privilege could arguably depend on the capacity in which a core group member is communicating. For example, whether a communication between Geoff Kors and Maya Harris is privileged may depend on whether Geoff Kors was communicating in his Equality California or Equality for All capacity. But because the effort required by such an inquiry might amount to an undue burden on the No on 8 groups under FRCP 45(c)(1), the court will not require production of any communications about strategy and messages between core group members who belong to that core group, regardless of the capacity in which the core group member is communicating. Thus, members of the Equality for All core group may assert a privilege over responsive communications solely within the Equality for All core group - even if there is an argument that one of the parties to the communication was not participating in his or her capacity as a member of that particular core group.

For the reasons explained above, the court finds that the First Amendment privilege covers communications regarding strategy and messages within each No on 8 group's core group as defined

12

1 **above. The First Amendment privilege does not cover communications**
2 **between separate organizations.**

3

4                                    **IV**

5          **Because proponents seek discovery from third parties, the**
6 **court recognizes the need to ensure that any burden borne by the**
7 **third parties is not undue. FRCP 45(c)(1). Accordingly, the No on**
8 **8 groups shall be required only to undertake the following steps in**
9 **searching electronic documents to respond to proponents'**
10 **subpoenas.[1]**

11          **First, the No on 8 groups shall only be required to**
12 **review electronic documents containing at least one of the**
13 **following terms: "No on 8;" "Yes on 8;" "Prop 8;" "Proposition 8;"**
14 **"Marriage Equality;" and "ProtectMarriage.com."**

15          **Second, Equality California shall only be required to**
16 **search its central email server for responsive electronic**
17 **documents, identified in the March 3 declaration of Geoff Kors as**
18 **the Microsoft Exchange email server. Doc #609 at 9 ¶10.**

19          **While the foregoing limitations do not eliminate the**
20 **burden of production on third parties, they do reduce costs and**
21 **focus the production on only the most responsive documents.**

22 **\\**
23 **\\**
24 **\\**
25 **\\**

26

United States District Court
For the Northern District of California

27          [1]**This restriction, however, does not apply to paper documents.**
28 **The No on 8 groups shall search paper documents for documents that**
**contain, refer or relate to arguments for or against Proposition 8.**

                                    13

IV

For the reasons explained above, proponents' motion to compel, Doc #472, is GRANTED. Each No on 8 group is DIRECTED to produce all documents in its possession that contain, refer or relate to arguments for or against Proposition 8, except those communications solely among members of its core group. The No on 8 groups shall begin a rolling production of nonprivileged responsive documents as soon as possible to conclude not later than Wednesday, March 31, 2010. The No on 8 groups may produce documents pursuant to the terms of the protective order, Doc #425, if they wish. The No on 8 groups are not required to produce a privilege log.

IT IS SO ORDERED.

JOSEPH C SPERO
United States Magistrate Judge

14

1

2          **IN THE UNITED STATES DISTRICT COURT**

3         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

4

5  KRISTIN M PERRY, SANDRA B STIER,
   PAUL T KATAMI and JEFFREY J
6  ZARRILLO,

7              Plaintiffs,

8  CITY AND COUNTY OF SAN FRANCISCO,

9              Plaintiff-Intervenor,

10             **v**

11 ARNOLD SCHWARZENEGGER, in his
   official capacity as governor of
12 California; EDMUND G BROWN JR, in
   his official capacity as attorney
13 general of California; MARK B              No   C 09-2292 VRW
   HORTON, in his official capacity
14 as director of the California              ORDER
   Department of Public Health and
15 state registrar of vital
   statistics; LINETTE SCOTT, in her
16 official capacity as deputy
   director of health information &
17 strategic planning for the
   California Department of Public
18 Health; PATRICK O'CONNELL, in his
   official capacity as clerk-
19 recorder of the County of
   Alameda; and DEAN C LOGAN, in his
20 official capacity as registrar-
   recorder/county clerk for the
21 County of Los Angeles,

22             Defendants,

23 DENNIS HOLLINGSWORTH, GAIL J
   KNIGHT, MARTIN F GUTIERREZ,
24 HAKSHING WILLIAM TAM, MARK A
   JANSSON and PROTECTMARRIAGE.COM -
25 YES ON 8, A PROJECT OF
   CALIOFORNIA RENEWAL, as official
26 proponents of Proposition 8,

27             Defendant-Intervenors.
                                    /
28

United States District Court
For the Northern District of California

On January 15, 2010, defendant-intervenors, the official proponents of Proposition 8 ("proponents") moved to compel production of documents from three nonparties: Californians Against Eliminating Basic Rights ("CAEBR"), Equality California and No on Proposition 8, Campaign for Marriage Equality, A Project of the American Civil Liberties Union (the "ACLU") (collectively the "No on 8 groups"). Doc #472. The court referred the motion to Magistrate Judge Spero pursuant to 28 USC § 636(b)(1)(A) on February 4, 2010. Doc #572. The magistrate heard argument on February 25, 2010 and, on March 5, 2010, granted the motion to compel and ordered the No on 8 groups to produce nonprivileged documents that "contain, refer or relate to arguments for or against Proposition 8." Doc #610 at 14. The ACLU and Equality California objected to the magistrate's order pursuant to FRCP 72(a) on March 11, 2010. Doc #614. Proponents filed their objections on March 15, 2010. Doc #619. CAEBR did not object to the magistrate's order. The court heard argument on the objections on March 16, 2010.

I

The magistrate's order requires the No on 8 groups to produce nonprivileged documents that "contain, refer or relate to arguments for or against Proposition 8" not later than March 31, 2010. Doc #610. The order relies on the Ninth Circuit's amended opinion, Perry v Schwarzenegger, 591 F3d 1147, 1164 (9th Cir 2010), to determine that proponents' subpoenas may lead to the discovery of admissible evidence under FRCP 26. Doc #610 at 5. The order also relies on Perry, 591 F3d at 1165 n12, to determine the scope

1 of the No on 8 groups' First Amendment privilege. Doc #610 at 6-7.
2 Finally, the order adopts measures to reduce the burden of
3 production on the No on 8 groups. Id at 12-14.

4 A magistrate judge's discovery order may be modified or
5 set aside if it is "clearly erroneous or contrary to law." FRCP
6 72(a). The magistrate's factual determinations are reviewed for
7 clear error, and the magistrate's legal conclusions are reviewed to
8 determine whether they are contrary to law. United States v
9 McConney, 728 F2d 1195, 1200-1201 (9th Cir 1984) (overruled on
10 other grounds by Estate of Merchant v CIR, 947 F2d 1390 (9th Cir
11 1991)). The clear error standard allows the court to overturn a
12 magistrate's factual determinations only if the court reaches a
13 "definite and firm conviction that a mistake has been committed."
14 Wolpin v Philip Morris Inc, 189 FRD 418, 422 (CD Cal 1999) (citing
15 Federal Sav & Loan Ins Corp v Commonwealth Land Title Ins Co, 130
16 FRD 507 (DDC 1990)). The magistrate's legal conclusions are
17 reviewed de novo to determine whether they are contrary to law.
18 Equal Employment Opportunity Commission v Lexus of Serramonte, No
19 05-0962 SBA, Doc #68 at 4; William W Schwarzer, et al, Federal
20 Civil Procedure Before Trial, 16:278.

21 When the court reviews the magistrate's determination of
22 relevance in a discovery order, "the Court must review the
23 magistrate's order with an eye toward the broad standard of
24 relevance in the discovery context. Thus, the standard of review
25 in most instances is not the explicit statutory language, but the
26 clearly implicit standard of abuse of discretion." Geophysical Sys
27 Corp v Raytheon Co, Inc, 117 FRD 646, 647 (CD Cal 1987). The court
28 should not disturb the magistrate's relevance determination except

United States District Court
For the Northern District of California

3

1 where it is based on "an erroneous conclusion of law or where the
2 record contains no evidence on which [the magistrate] rationally
3 could have based that decision." Wolpin, 189 FRD at 422 (citation
4 omitted). The abuse of discretion standard does not apply to a
5 discovery order not concerned with relevance.

6        For the reasons explained below, the magistrate's order
7 is neither clearly erroneous nor contrary to law. Accordingly, all
8 objections to the order are DENIED.

9

10                                    II

11        The ACLU and Equality California object to the
12 magistrate's order on the basis that the magistrate's FRCP 26
13 analysis was clearly erroneous and that the magistrate's
14 application of the First Amendment privilege was contrary to law.
15 Doc #614. The court addresses each objection in turn.

16

17                                    A

18        The ACLU and Equality California argue that the
19 magistrate clearly erred and abused his discretion in determining
20 that proponents' subpoenas would lead to relevant information under
21 FRCP 26. Doc #614 at 7. This objection has three parts: first,
22 that the magistrate applied the FRCP 26 relevance standard when a
23 more searching standard was appropriate; second, that the subpoenas
24 do not seek relevant documents under any standard of relevance; and
25 third, that the magistrate failed to weigh the marginal relevance
26 of the documents against the heavy burden production of the
27 documents would impose.

28

4

United States District Court
For the Northern District of California

1

1

2          To determine whether proponents' subpoenas seek
3 discoverable documents, the magistrate applied the standard set
4 forth in FRCP 26(b)(1) that "a party may obtain nonprivileged
5 discovery that is relevant to any claim or defense, and '[r]elevant
6 information need not be admissible at the trial if the discovery
7 appears reasonably calculated to lead to the discovery of
8 admissible evidence.'" Doc #610 at 5 (citing FRCP 26(b)(1)). The
9 ACLU and Equality California argue as a matter of law that because
10 the discovery period is closed and the trial has all but
11 concluded,[1] the magistrate should have applied a more searching
12 standard of relevance than is found in FRCP 26. Doc #614 at 7.

13          The ACLU and Equality California cite no authority for
14 the proposition that the court should apply a more searching
15 standard of relevance when the formal discovery cutoff has passed.
16 Even if a more searching standard is appropriate for post-trial
17 discovery motions, the instant motion to compel was filed before
18 trial proceedings concluded. See Doc #610 at 4 (discussing the
19 procedural history of proponents' motion to compel). Thus, even if
20 a post-trial motion to compel could be subject to a more searching
21 standard of relevance, the ACLU and Equality California have not
22 shown the magistrate erred as a matter of law in concluding the
23 typical standard applies in this case. The objection on this point
24 is accordingly DENIED.

25

26          [1]Live witness testimony concluded on January 27, 2010, although
27 proponents did not officially rest their case pending resolution of
   the instant motion to compel. Doc #531 at 107-108 (Trial Tr 1/27/10).
28 The court has not yet scheduled closing arguments, and proponents have
   stated they do not plan to call additional witnesses.

2

The magistrate determined that the documents sought through proponents' subpoenas met the standard of relevance under FRCP 26(b)(1). Doc #610 at 6. The magistrate relied on Perry, 591 F3d at 1164, which held that a document request seeking similar campaign documents from proponents was "reasonably calculated to lead to the discovery of admissible evidence on the issues of voter intent and the existence of a legitimate state interest." The magistrate then determined that documents from the No on 8 campaign could be relevant to the question why voters approved Proposition 8, as the messages from the No on 8 campaign were part of the mix of information available to the voters. Doc #610 at 6.

The ACLU and Equality California argue that the documents sought are simply not relevant to the question of voter intent. But because the Ninth Circuit has determined that campaign documents may lead to discovery of admissible evidence, and because the Ninth Circuit's holding is not limited to campaign documents from the side that succeeded in persuading voters, the magistrate did not clearly err in determining that the documents sought by proponents meet the FRCP 26 relevance standard. The magistrate considered and rejected the contrary argument, finding that campaign documents from both sides of the Proposition 8 campaign met the FRCP 26 standard of relevance. Because the record supports a finding that campaign documents from both sides meet the standards of discoverability laid out in FRCP 26, the magistrate's relevance determination is not clearly erroneous.

6

3

Having determined that proponents' subpoenas seek discoverable documents under FRCP 26, the magistrate then adopted measures to reduce the burden of production on the No on 8 groups. Doc #610 at 12. The measures adopted to reduce burden, including adopting a list of electronic search terms, restricting Equality California's electronic document search to a central server, not requiring a privilege log and not requiring production of any document constituting a communication solely within a core group, appear tailored to eliminate unnecessary burdens and focus production on documents most likely to be relevant to proponents' case.

The ACLU and Equality California argue the magistrate erred as a matter of law in failing to consider relevance and burden on a sliding scale. Doc #614 at 10. The ACLU and Equality California argue proponents have demonstrated only a marginal relevance, if any, for the documents sought in the subpoenas.

Indeed, proponents' showing of relevance is minimal. Proponents rely without elaboration on the court's previous orders and the Ninth Circuit's opinion in Perry to assert that the subpoenas seek relevant documents under FRCP 26. In response to the court's question at the March 16 hearing why proponents need the documents, proponents referred to the court's order that the mix of information available to the voters could help determine the state interest in Proposition 8 and asserted that documents from No on 8 groups could add to the mix. Proponents also argue that the documents might speak to the political power of gays and lesbians, although proponents do not appear to have made use of publicly

7

available documents in this regard during trial. See Doc #620 at 15 (stating that proponents "were unable to address issues put into contention by Plaintiffs," like contributions to the No on 8 campaign by progressive churches, even though information about such donations is available to the public under the Political Reform Act of 1974, Cal Govt Code § 81000 et seq). Although proponents describe the documents sought as "highly relevant," Doc #620 at 15, proponents do not attempt to make a showing that their need for the documents meets the heightened standard necessary to overcome the No on 8 groups' First Amendment privilege. See Perry, 591 F3d at 1164-1165 (applying the "First Amendment's more demanding heightened relevance standard" whether the party seeking discovery has "demonstrated an interest in obtaining the disclosures which is sufficient to justify the deterrent effect on the free exercise of the constitutionally protected right of association.") (citing NAACP v Alabama, 357 US 449, 463). Thus, proponents have failed to make a showing that the documents they seek are highly relevant to the claims they are defending against.

Nevertheless, proponents' showing satisfies the standard of discoverability set forth in FRCP 26, and the magistrate did not err in ordering the No on 8 groups to comply with the proponents' subpoenas and to produce nonprivileged documents. Indeed, the magistrate carefully weighed the marginal relevance of proponents' discovery against the burden cast on the No on 8 groups. In doing so, the magistrate took substantial steps to ensure compliance with the subpoenas would not amount to an undue burden on the No on 8 groups. Doc #610 at 13. To the extent the ACLU and Equality California argue the magistrate's order imposes an undue burden on

8

1 them, they have failed to substantiate the burden the magistrate's
2 order imposes.  See Doc #614 at 10-11 (citing to Doc #544, the
3 declaration of Elizabeth Gill, filed before the magistrate issued
4 the order compelling production).  At the March 16 hearing, counsel
5 for the ACLU stated he could not quantify the cost of production
6 but that he believed the parties' submissions before the magistrate
7 were sufficient to support the claim that the production ordered by
8 the magistrate amounts to an undue burden.  Tellingly, the ACLU and
9 Equality California have made no showing regarding the burden on
10 the No on 8 groups in complying with the magistrate's order.  The
11 court cannot, therefore, conclude that the magistrate clearly erred
12 in compelling production despite the burden compliance may impose.

13      For the foregoing reasons, the court declines to disturb
14 the magistrate's rulings regarding burden and relevance.  The
15 objections of the ACLU and Equality California on these points are
16 DENIED.

17

18                                B

19      The court now turns to the objections of the ACLU and
20 Equality California regarding the magistrate's application of the
21 First Amendment privilege.  The ACLU and Equality California argue
22 the magistrate's application of the First Amendment privilege is
23 contrary to law as the privilege requires a "more demanding
24 heightened relevance standard" for the campaign documents.  See
25 Perry, 591 F3d at 1164.  The ACLU and Equality California also
26 object that the magistrate erred in failing to include groups of
27 individuals in Equality for All's core group.

28

United States District Court
For the Northern District of California

9

1

1

2    Because the No on 8 groups assert a First Amendment
3 privilege against disclosure of their campaign documents, the
4 magistrate determined the scope of the privilege.  Doc #610 at 6.
5 In doing so, the magistrate relied on Perry, 591 F3d at 1165 n12,
6 which held that the First Amendment privilege is limited to
7 "*private, internal* campaign communications concerning the
8 *formulation of campaign strategy and messages* * * * among the core
9 group of *persons* engaged in the formulation of strategy and
10 messages."  The magistrate thus determined a core group of
11 individuals whose communications within a No on 8 group are
12 entitled to protection against disclosure under the First
13 Amendment.  The magistrate determined that the privilege extends to
14 communications within a core group but not to communications
15 between or among different groups, as such communications are by
16 definition not "internal."  Doc #610 at 7.

17    The ACLU and Equality California object that the
18 magistrate erred as a matter of law by focusing on individuals
19 whose communications are privileged.  Instead, the ACLU and
20 Equality California argue the magistrate should have adopted a more
21 functional approach to the privilege based on the structure of the
22 campaign.  But the ACLU and Equality California make no suggestion
23 concerning how the court should implement their suggested
24 functional approach and in any event failed to furnish the
25 magistrate information from which a functional interpretation of
26 the core group as defined in footnote 12 could be derived.

27    The footnote, and indeed the entire amended opinion,
28 supports the magistrate's determination that the First Amendment

United States District Court
For the Northern District of California

10

1 privilege is limited to a core group of individuals. Unlike the
2 attorney-client privilege in the corporate context, see Upjohn Co v
3 United States, 449 US 383, 392 (1981) (holding that a control group
4 test "frustrates the very purpose" of the attorney-client
5 privilege), the First Amendment privilege protects against
6 disclosure only those communications intentionally kept within a
7 group engaged in strategy and message formulation.

8        To explain the scope of the First Amendment privilege,
9 the Ninth Circuit relied on In re Motor Fuel Temperature Sales
10 Practices Litigation, 258 FRD 407, 415 (D Kan 2009) (O'Hara, MJ)
11 (applying the First Amendment privilege to trade associations'
12 internal communications regarding lobbying, planning and advocacy).
13 The Kansas district court considered objections to the magistrate's
14 order and held that the magistrate erred as a matter of law in
15 concluding that internal trade association communications were
16 inherently privileged. In re Motor Fuel Temperature Sales
17 Practices Litigation, -- FRD --, 2010 WL 786583, *5 (D Kan March 4,
18 2010) (Vratil, J). Instead, the law requires those claiming a
19 First Amendment associational privilege to put forth a prima facie
20 case that disclosure would have a chilling effect on their
21 associational rights. Id at *5-*6; see also Perry, 591 F3d at
22 1162-1163 (finding that proponents had made a prima facie case for
23 application of the First Amendment privilege against compelled
24 disclosure based on declarations tending to show disclosure would
25 chill their associational rights). Thus:

26
27
28

11

1
2
3
4

> [A] party seeking First Amendment association privilege
> [must] demonstrate an objectively reasonable probability that
> disclosure will chill associational rights, i e that
> disclosure will deter membership due to fears of threats,
> harassment or reprisal from either government officials or
> private parties which may affect members' physical well-
> being, political activities or economic interests.

5   In re Motor Fuels, -- FRD --, 2010 WL 786583 at *8.

6          The ACLU and Equality California presented some evidence
7   to the magistrate regarding the chilling effect of compelled
8   disclosure.   The ACLU submitted the declaration of Elizabeth Gill,
9   who stated that disclosure of campaign strategy and messages "would
10  have hindered [the ACLU's] ability to mount political opposition to
11  Proposition 8" because it would have inhibited a "robust exchange
12  of ideas and free flow of information."   Doc #597 at ¶11.   Gill
13  declared further that compelled disclosure would make the ACLU
14  "quite wary" of participating in political campaigns in the future.
15  Id at ¶12.   Equality California submitted the declaration of James
16  Brian Carroll, who stated that disclosure of communications
17  internal to Equality California would restrict its ability to
18  organize and fund a political campaign.   Doc #601.   The showing
19  ACLU and Equality California make is similar to the showing made by
20  proponents and accepted by the Ninth Circuit.   Perry, 591 F3d at
21  1163 (noting that proponents' evidence was "lacking in
22  particularity but consistent with the self-evidence conclusion"
23  that a discovery request seeking internal campaign communications
24  implicates important First Amendment questions).

25         Because the prima facie case of chill made by the ACLU
26  and Equality California is substantially the same as the prima
27  facie case made by proponents, the magistrate did not err as a
28  matter of law in applying the First Amendment privilege standard

United States District Court
For the Northern District of California

12

set forth in <u>Perry</u>, 591 F3d at 1165 n12. That standard protects internal communications among a core group of persons, as disclosure of these communications may lead to the chilling effects described in the Gill and Carroll declarations. The standard does not protect campaign communications that are not private and internal. Nothing in the Gill and Carroll declarations suggests the standard as applied is insufficient to protect the No on 8 groups' associational rights.

This follows from the magistrate's correct focus on the individuals engaged in the formulation of strategy and messages whose communications were not intended for public distribution. The functional approach advocated by the ACLU and Equality California ignores the important limiting principle that a communication must be private to be privileged under the First Amendment.

The ACLU and Equality California object to the magistrate's determination to limit the scope of the First Amendment privilege to communications within but not between core groups. See Doc #610 at 12-13. The objection is not well-taken. The magistrate did not err as a matter of law in concluding that the First Amendment privilege does not cover communications between [or among] separate organizations. Doc #610 at 12-13. A communication "internal" to an organization is by definition wholly within that organization. The ACLU and Equality California would have the court stretch the meaning of "internal" to embrace a broad coalition of groups that took a position against Proposition 8. See Doc #609 at 2-6 ("Equality for All Campaign Committee Members"). The problem with attempting to categorize

13

1 communications among individuals associated with a laundry list of
2 groups is that the ACLU and Equality California failed to furnish
3 the magistrate or the undersigned with a comprehensible limiting
4 principle by which to define a communication between or among
5 persons affiliated with such organizations as internal. No
6 evidence in the record supports a finding that communications among
7 a broad coalition of groups are private and internal.

8

9                                    2

10        The ACLU and Equality California argue that the
11 magistrate erred in failing to include in the Equality for All core
12 group the Equality California Institute Board of Directors, the
13 Equality for All Campaign Committee and Equality for All Campaign
14 Staff.  Doc #614 at 13.  The ACLU and Equality California argue
15 that the February 22 Kors declaration, Doc #598, supports a finding
16 that members of these groups were involved in the formulation of
17 strategy and messages for Equality for All.  But the February 22
18 Kors declaration makes no showing concerning who in the these
19 groups should be included in the Equality for All core group.
20 Because the No on 8 groups did not present evidence sufficient for
21 the magistrate to include any individual from these groups as part
22 of the core group for Equality for All, the magistrate's decision
23 to exclude the groups is supported by the record and is therefore
24 not clearly erroneous.

25        At the February 25, 2010 hearing, the magistrate asked
26 counsel for Equality California for an affidavit to support
27 inclusion of individuals from the campaign committee and campaign
28 staff in the Equality for All core group.  Doc #613 at 44 (Hrg Tr

                                    14

2/25/10). Counsel agreed to identify individuals "who played a larger role than others" in the development of strategy and messages. Id at 45. In response to the magistrate's inquiry, the No on 8 groups submitted the March 3 Kors declaration, which fails to identify individuals in the campaign committee and campaign staff who were engaged in the formulation of strategy and messages, Doc #609 at ¶¶6-7. The March 3 Kors declaration thus did not provide the magistrate with the evidence he sought at the February 25 hearing. Based on the March 3 Kors declaration, the magistrate concluded that the individuals' roles had not been explained and that "the court lacks a basis to include these individuals in Equality for All's core group." Doc #610 at 11. The magistrate's finding that the No on 8 groups did not provide the magistrate with information necessary to include the campaign committee and campaign staff in the core group is thus supported by the record.

The Equality California Institute was described at the February 25, 2010 hearing as "involved with the effort of Equality California with regards to fundraising." Doc #613 at 46. The No on 8 groups made no further showing that the Institute developed campaign strategy and messages for the Proposition 8 campaign for any No on 8 group. Accordingly, the magistrate did not clearly err in refusing to include the Equality California Institute in a core group.

The magistrate's application of the First Amendment privilege is not contrary to law, and the magistrate's core group determinations are supported by the record and are therefore not clearly erroneous. Accordingly, the court declines to disturb the magistrate's First Amendment rulings.

15

1

3

2    The ACLU objects that the order should be modified "to
3   preclude disclosure to anyone involved in the Proposition 8
4   campaign or who may be involved in a future political campaign
5   involving the right of same-sex couples to marry." Doc #614 at 15.
6   Because the ACLU did not raise this point with the magistrate, the
7   magistrate did not clearly err in failing to include the
8   restriction, and the court need not consider the objection further.
9   See United States v Howell, 231 F3d 615, 621 (9th Cir 2000). The
10  objection is accordingly DENIED.

11

12                                III

13   Proponents bring eight objections to the magistrate's
14  order. Doc #619 at 13-21. The court addresses each in turn.

15

16                                A

17   Proponents object that the magistrate did not require the
18  No on 8 groups to prepare a privilege log and did not offer an
19  explanation why no privilege log would be required. Doc #619 at
20  13. The magistrate's order states: "The No on 8 groups are not
21  required to produce a privilege log." Doc #610 at 14. While the
22  order provides no additional explanation, the magistrate explained
23  at the February 25 hearing that he was "willing to discuss whether
24  it's a reasonable burden to produce privilege logs. That may be
25  undue. The distinction between privileged and nonprivileged is
26  going to be whether or not it's a communication within a very well-
27  defined core group." Doc #613 at 8 (Hrg Tr 2/25/10). The court
28  thus concludes the magistrate's decision not to require a privilege

16

1  log was a measure intended to reduce the production burden on the
2  No on 8 groups.

3         Proponents argue that under FRCP 45(d)(2)(A)(ii), a
4  nonparty claiming a privilege must prepare some form of a privilege
5  log to preserve the privilege. Moreover, the Ninth Circuit held
6  that "some form of a privilege log is required" to preserve the
7  First Amendment privilege. Perry, 591 F3d at 1153 n1.
8  Nevertheless, no rule prevents the court from waiving the privilege
9  log requirement to reduce a nonparty's burden. The magistrate's
10 rulings to reduce the burden on the No on 8 groups are more fully
11 addressed in subsection II(A)(3), above. In any event, the
12 magistrate concluded that waiving the privilege log requirement was
13 appropriate, because the privilege can be tested without a log as
14 it depends only on the identities of those communicating. See Doc
15 #613 at 8. Because that conclusion neither contrary to law nor
16 clearly erroneous, proponents' objection on this point is DENIED.
17
18                               B

19         The magistrate ordered that the No on 8 groups are only
20 "required to review electronic documents containing at least one of
21 the following terms: 'No on 8;' 'Yes on 8;' 'Prop 8;' 'Proposition
22 8;' 'Marriage Equality;' and 'ProtectMarriage.com.'" Doc #610 at
23 13. The magistrate explained the limitation was intended "to
24 ensure that any burden borne by the third parties is not undue."
25 Id. Proponents object that the search terms are underinclusive and
26 argue the magistrate erred in failing to allow proponents the
27 opportunity to present additional search terms to the court. Doc
28 #619 at 14-15.

United States District Court
For the Northern District of California

17

1                At the February 25 hearing, the magistrate stated his

2 intent to cabin production with search terms like "Proposition 8,

3 'No on 8,' 'Yes on 8,' Prop 8 — something like that." Doc #613 at

4 46. Proponents were thus on notice that the magistrate intended a

5 limited number of search terms. The magistrate directed Equality

6 California to submit an additional declaration on core group issues

7 and burden and then stated he intended to "put out a ruling

8 shortly" after he received the declaration. Id at 60. Despite

9 this notice, proponents failed to seek the opportunity to respond

10 to Equality California's declaration. It was not clearly erroneous

11 for the magistrate to rule on the motion to compel without awaiting

12 a response from proponents, because proponents had not requested

13 the opportunity to provide the magistrate with a response.

14                Moreover, the magistrate's decision to adopt only a small

15 number of search terms is not clearly erroneous. Proponents

16 suggest an expansive list of search terms, including generic terms

17 like "ad" or "equal*." Doc #619 at 15. The search terms suggested

18 by proponents do not appear tailored to cabin production. Indeed,

19 it would appear that the search term "equal*" would capture every

20 document in Equality California's possession. It was thus not in

21 error for the magistrate to conclude that a narrow list of search

22 terms would be appropriate to reduce undue burden on the No on 8

23 groups. Proponents' objection on this point is therefore DENIED.

24

25                                  C

26                The magistrate also ordered, as a measure to reduce

27 burden, that "Equality California shall only be required to search

28 its central email server for responsive electronic documents." Doc

United States District Court
For the Northern District of California

18

1 #610 at 13.  The magistrate relied on the March 3 declaration of
2 Geoff Kors, which states that "[a]pproximately 75 people at
3 [Equality California] could have potentially relevant emails on
4 their hard drives" and that producing email from the 75 hard drives
5 "could take more than a week" at a cost of around "$30,000."  Doc
6 #609 at ¶9.  The March 3 Kors declaration states further that
7 Equality California has "approximately 27 to 30 gigabytes of email
8 stored" on central email server, and that it would take "several
9 days" at a cost of "$14,000 to $20,000" to collect and process
10 email stored on the central server.  Id at ¶10.

11      The magistrate determined that the additional burden the
12 search of 75 hard drives would impose was not worth the cost.  That
13 determination is not clearly erroneous in light of the volume of
14 documents stored on the central server.

15      Proponents object that the magistrate did not "require
16 Equality California to cease archiving any and all emails from the
17 central server."  Doc #619 at 18.  To the extent proponents are
18 concerned that Equality California may attempt to spoliate
19 evidence, proponents may seek to bring the appropriate motion.
20 There was nothing before the magistrate or brought to this court's
21 attention that suggests any such attempt.  The magistrate did not,
22 in any event, err in failing to include this specific instruction
23 in the order.  Proponents' objection to the magistrate's order
24 regarding the central email server is accordingly DENIED.

25

26                                    D

27      As the court of appeals noted in Perry, delineation of
28 the core group is central to determining the scope of the First

19

United States District Court
For the Northern District of California

1 Amendment privilege and this determination rests on the specific
2 facts of the case.   The magistrate applied the standard set in
3 Perry, 591 F3d at 1165 n12, to determine for each No on 8 group a
4 core group of persons whose internal communications may be
5 privileged under the First Amendment.   Doc #610 at 6.   Based on the
6 specific facts of the No on 8 campaign, the magistrate also
7 determined a core group of persons for the umbrella No on 8
8 organization Equality for All.   Id at 10-11.   Proponents object
9 that the magistrate had no reason to determine a core group for
10 Equality for All, because proponents did not subpoena documents
11 from Equality for All and because Equality for All did not place
12 evidence before the magistrate.   Doc #619 at 18.

13          The magistrate relied on the declarations of Geoff Kors,
14 Doc ##598, 609, to determine a core group for Equality for All.
15 The February 22 Kors declaration explains that Equality for All
16 "acted as an umbrella campaign organization for more than 100
17 member organizations," including the three No on 8 groups subject
18 to proponents' subpoenas.   Doc #598 at ¶6.   The magistrate examined
19 the Kors declarations to determine who should and should not be
20 included in the Equality for All core group, as more fully
21 explained in section II(B)(2), above.   Because the evidence showed
22 a formal relationship between Equality for All and the No on 8
23 groups, it was not an error for the magistrate to conclude that
24 individuals associated with the Equality for All umbrella
25 organization who were engaged in the formulation of strategy and
26 messages may claim a privilege over communications within the
27 umbrella organization.   Nor was it clearly erroneous to rely on the
28 declarations of Geoff Kors, a member of Equality for All's

1  executive committee, to define Equality for All's core group.
2  Proponents' objection on this point is accordingly DENIED.
3
4                                    E

5          The magistrate found based on the evidence presented that
6  certain individuals have core group status in more than one
7  organization.  The magistrate noted that "the scope of the First
8  Amendment privilege could arguably depend on the capacity in which
9  a core group member [of more than one No on 8 group] is
10 communicating."  Doc #610 at 12.  Nevertheless, the magistrate's
11 order does "not require production of any communications about
12 strategy and messages between core group members who belong to that
13 core group," as the effort required to inquire into the capacity in
14 which a core group member is communicating "might amount to an
15 undue burden."  Id.

16         Proponents object that the magistrate's order in this
17 regard is contrary to the court's previous holding that proponents
18 could not assert a First Amendment privilege over communications
19 with other groups.  Doc #619 at 18-19.  The court previously held
20 that proponents had "only claimed a First Amendment privilege over
21 communications among members of the core group of Yes on 8 and
22 ProtectMarriage.com," and that even if proponents had preserved the
23 privilege, they had "failed to meet their burden of proving that
24 the privilege applies to any documents in proponents' possession,
25 custody or control."  Doc #372 at 3.  Here, even if the
26 communications might not be protected by the First Amendment
27 privilege, the magistrate did not clearly err in refusing to order
28 their production because the burden of determining whether the

                                    21

For the Northern District of California

United States District Court

1 communications are in fact privileged would be undue. The court's
2 previous order is not inconsistent with the magistrate's order.
3 Accordingly, proponents' objection on this point is DENIED.

4

5                                   F

6        Related to the objection discussed in subsection E,
7 above, proponents object as inconsistent with the court's previous
8 order that the magistrate included certain individuals in more than
9 one core group. Doc #619 at 19. The previous order denied
10 proponents' claim of privilege over communications to other Yes on
11 8 organizations, because "[t]here [was] no evidence before the
12 court regarding any other campaign organization." Doc #372 at 2-3.
13 Here, in contrast, the magistrate found that the No on 8 groups had
14 supported through declarations inclusion of individuals in more
15 than one No on 8 core group. The magistrate's finding is based on
16 evidence regarding the No on 8 campaign and is not inconsistent
17 with the court's previous order or contrary to law. Proponents'
18 objection on this point is therefore DENIED.

19

20                                   G

21        Proponents object that Armour Media Group and Armour
22 Griffin Media Group Inc were included in the core groups of CAEBR
23 and Equality for All on the ground that the court has previously
24 held that media vendors cannot be considered part of an
25 organization's core group. Doc #619 at 19-20. The magistrate
26 appears to have included Armour Griffin Media Group Inc in the
27 Equality for All core group based on the March 3 Geoff Kors
28 declaration, Doc #609 at ¶8 (stating that the Armour Griffin Media

United States District Court
For the Northern District of California

                                   22

1 Group "produced advertising" and "participated in formulating
2 campaign messaging"). The magistrate apparently relied on the
3 Moret declaration to include Armour Media Group in the CAEBR core
4 group. Doc #593 at ¶4(f) (stating that Armour Media Group
5 "conducted polling and assisted CAEBR in its early formulation of
6 campaign strategy and messaging"). Because the Kors and Moret
7 declarations support inclusion of the media groups in the core
8 groups, the magistrate's decision to include the media groups is
9 not clearly erroneous. Proponents objection on this point is
10 DENIED.

11

12                                    H

13          The magistrate ordered each No on 8 group, including
14 CAEBR, to "produce all documents in its possession that contain,
15 refer or relate to arguments for or against Proposition 8, except
16 those communications solely among members of its core group." Doc
17 #610 at 14. The magistrate did not address CAEBR's assertion that
18 it had already completed its production. Proponents argue the
19 magistrate erred in failing to address whether CAEBR's production
20 was "credible," as CAEBR produced only sixty documents. Doc #619
21 at 20. But the magistrate did not err as a matter of law in
22 failing to address CAEBR's production. The magistrate set the
23 standard for CAEBR's production. Proponents can if necessary
24 address any problems with CAEBR's production by appropriate motion.
25 Proponents' objection on this point is therefore DENIED.

26

27

28

United States District Court
For the Northern District of California

                                    23

1

IV

2      For the reasons explained above, the magistrate's order
3 granting proponents' motion to compel discovery from the No on 8
4 groups is neither clearly erroneous nor contrary to law.
5 Accordingly, the objections of the ACLU and Equality California,
6 Doc #614, and of proponents, Doc #619, are DENIED.

7      The magistrate's order contemplates that production will
8 take place on a rolling basis to conclude not later than March 31,
9 2010.  Doc #610 at 14.  The court adopts the schedule set by the
10 magistrate.  If proponents wish to supplement their trial record
11 with documents obtained through this production, they must make the
12 appropriate motion or submission not later than Monday, April 12,
13 2010.

14

15      IT IS SO ORDERED.

16

17

18                                VAUGHN R WALKER
                                 United States District Chief Judge
19

20

21

22

23

24

25

26

27

28

24

## UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| EQUALITY CALIFORNIA, ACLU FOUNDATION OF NORTHERN CALIFORNIA, | No.: |
|---|---|
| Claimants/Appellants, | D.C. # C-92-3000-DLJ |
| v. | (N.D. Cal. 09-CV-2292 VRW |
| Kristin M. Perry, Sandra B. Stier, Paul T. Katami, and Jeffrey ZJ. Zarrillo, | |
| Plaintiff and Appellee. | |

## REPRESENTATION STATEMENT

The undersigned represent EQUALITY CALIFORNIA and NO ON PROPOSITION 8, CAMPAIGN FOR MARRIAGE EQUALITY: A PROJECT OF THE AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA ACLU FOUNDATION OF NORTHERN CALIFORNIA, claimants and appellants in this matter, and no other party. Attached is a service list that shows all of the parties to the action below, and identifies their counsel by name, firm, address, and telephone number, where appropriate. (F.R.A.P. 12(b); Circuit Rule 3-2(b).)

Respectfully Submitted,

Lynn H. Pasahow (CSB No. 054283)
Carolyn Chang (CSB No. 217933)
Leslie Kramer (CSB No. 253313)
Lauren Whittemore (CSB 255432)
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone: (650) 988-8500
Facsimile: (650) 938-5200

Attorneys for Appellant
EQUALITY CALIFORNIA


Stephen V. Bomse (CSB 40686)
Justin M. Aragon (CSB 241592)
Orrick, Herrington & Stucliffe LLP
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700
Facsimile: (415) 773-5759


Alan L. Schlosser (CSB 49957)
Elizabeth O. Gill (CSB 218311)
ACLU Foundation of Northern
California
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

Attorneys for Appellant
NO ON PROPOSITION 8, CAMPAIGN FOR
MARRIAGE EQUALITY: A PROJECT OF
THE AMERICAN CIVIL LIBERTIES
UNION OF NORTHERN CALIFORNIA

# REPRESENTATION AND SERVICE LIST

**Attorneys for Plaintiffs Kristin M. Perry, Sandra B. Stier, Paul T. Katami, and Jeffrey J. Zarillo:**

Theodore B. Olson
Matthew C. McGill
Amir C. Tayrani
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, NW
Washington, D.C. 20036
(202) 955-8668
Fax: (202) 467-9539
tolson@gibsondunn.com

Theodore J. Boutrous, Jr.
Christopher D. Dusseault
Ethan D. Dettmer
Theane Evangelis Kapur
Enrique A. Monagas
GIBSON, DUNN & CRUTCHER, LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 229-78-4
Fax : (213) 229-7520

David Boies
Theodore H. Uno
BOIES, SCHILLER & FLEXNER, LLP
333 Main St
Armonk, NY 10504
(914) 749-8200
Fax: (914) 749-8300
**dboies@bsfllp.com**

**Attorneys for Plaintiff-Intervenor City And County of San Francisco:**

Dennis J. Herrera, City Attorney
Therese Stewart, Chief Deputy City Attorney
Danny Chou, Chief of Complex and Special Litigation
Vince Chhabria, Deputy City Attorney
Erin Bernstein, Deputy City Attorney
Christine Van Aken, Deputy City Attorney
Mollie M. Lee, Deputy City Attorney
CITY AND COUNTY OF SAN FRANCISCO
OFFICE OF THE CITY ATTORNEY
1 Dr. Carlton B. Goodlett Place
Room 234
San Francisco, CA 94102-4682
(415) 554-4708
Fax: (415) 554-4655
Therese.stewart@sf.gov.org

**Attorneys for Defendants Governor Arnold Schwarzenegger, Director Mark B. Horton, and Deputy Director Linette Scott:**

Kenneth C. Mennemeier
Andrew Walter Stroud
MENNEMEIER GLASSMAN & STROUD LLP
980 9th St., Ste 1700
Sacramento, CA 95814
(916) 553-4000
Fax: (916) 553-4011
kcm@mgslaw.com

**Attorneys for Defendant Attorney**
**General Edmund G. Brown, Jr.:**

Gordon Bruce Burns
Attorney General's Office, Dept. of Justice
1300 I Street, 17th Floor
Sacramento, CA 95814'
(916) 324-3081
Gorden.Burns@doj.ca.gov

Tamar Pachter
Office of the California Attorney General
455 Golden Gate Ave., Sutie 11000
San Francisco, CA 94102-7004
(415) 703-5970
Fax: (415) 703-1234
Tamar.Pachter@doj.ca.gov

**Attorney for Defendant Clerk-Recorder**
**Patrick O'Connell :**

Claude Franklin Kolm
COUNTY OF ALAMEDA
1221 Oak Street, Suite 450
Oakland, CA 94612-4296
(510) 272-6710
Claude.kolm@acgov.org

**Attorney for Defendant Registrar-**
**Recorder Dean C. Logan:**

Judy Whitehurst
OFFICE OF COUNTY COUNSEL –
COPUNTY OF LOS ANGELES
500 West Temple Street
Loa Angeles, CA 90012
(213) 974-1845
JWhitehurst@counsel.lacounty.gov

**Attorneys for Defendatn-Intervenors**
**Dennis Hollinsgworth, Gail J. Knight,**
**Martin F. Gutierrez, Hak-Shing William**
**Tam, Mark A. Jansson, and**
**ProtectMarriage.com – Yes on 8, A**
**Project of California Renewal:**

Charles J. Cooper
David H. Thompson
Howard C. Neilson, Jr.
Nicole J. Moss
Jesse Panuccio
Peter A. Patterson
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 22036
(202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

Andrew P. Pugno
LAW OFFICES OF ANDREW P. PUGNO
101 Parkshore Dr., Ste. 100
Folsom, CA 95630
(916) 608-3065
Andrew@pugnolaw.com

Brian W. Raum
James A. Campbell
ALLIANCE DEFENSE FUND
15100 N. 90th St.
Scottsdale, AZ 85260
(480) 444-0020
braum@telladf.org

**Attorney for Californians Against
Eliminating Basic Rights**

James C. Harrison
Remcho, Johansen & Purcell, LLP
201 Dolores Avenue
San Leandro, CA 94577
510/346-6200
jharrison@rjp.com

Kari Lynn Krogseng
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111-4067
415.393.2000
kari.krogseng@bingham.com