COOPER AND KIRK, PLLC
Charles J. Cooper (DC Bar No. 248070)*
*ccooper@cooperkirk.com*
David H. Thompson (DC Bar No. 450503)*
*dthompson@cooperkirk.com*
Howard C. Nielson, Jr. (DC Bar No. 473018)*
*hnielson@cooperkirk.com*
Nicole J. Moss (DC Bar No. 472424)*
*nmoss@cooperkirk.com*
Peter A. Patterson (Ohio Bar No. 0080840)*
*ppatterson@cooperkirk.com*
1523 New Hampshire Ave. N.W., Washington, D.C. 20036
Telephone: (202) 220-9600, Facsimile: (202) 220-9601

LAW OFFICES OF ANDREW P. PUGNO
Andrew P. Pugno (CA Bar No. 206587)
*andrew@pugnolaw.com*
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 608-3065, Facsimile: (916) 608-3066

ALLIANCE DEFENSE FUND
Brian W. Raum (NY Bar No. 2856102)*
*braum@telladf.org*
James A. Campbell (OH Bar No. 0081501)*
*jcampbell@telladf.org*
15100 North 90th Street, Scottsdale, Arizona 85260
Telephone: (480) 444-0020, Facsimile: (480) 444-0028

ATTORNEYS FOR DEFENDANT-INTERVENORS DENNIS HOLLINGSWORTH,
GAIL J. KNIGHT, MARTIN F. GUTIERREZ, MARK A. JANSSON, and
PROTECTMARRIAGE.COM – YES ON 8, A
PROJECT OF CALIFORNIA RENEWAL

* Admitted *pro hac vice*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO,<br><br>        Plaintiffs,<br><br>    v.<br><br>ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the California Department of Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, | CASE NO. 09-CV-2292 VRW<br><br>**DEFENDANT-INTERVENORS DENNIS HOLLINGSWORTH, GAIL KNIGHT, MARTIN GUTIERREZ, MARK JANSSON, AND PROTECT-MARRIAGE.COM'S MOTION TO STRIKE/RECONSIDER**<br><br>Date:     June 10, 2010<br>Time:    10:00 a.m.<br>Judge:   Chief Judge Vaughn R. Walker<br>Location:  Courtroom 6, 17th Floor |

in her official capacity as Deputy Director of
Health Information & Strategic Planning for the
California Department of Public Health; PA-
TRICK O'CONNELL, in his official capacity as
Clerk-Recorder for the County of Alameda; and
DEAN C. LOGAN, in his official capacity as
Registrar-Recorder/County Clerk for
the County of Los Angeles,

                Defendants,

and

PROPOSITION 8 OFFICIAL PROPONENTS
DENNIS HOLLINGSWORTH, GAIL J.
KNIGHT, MARTIN F. GUTIERREZ, HAK-
SHING WILLIAM TAM, and MARK A. JANS-
SON; and PROTECTMARRIAGE.COM – YES
ON 8, A PROJECT OF CALIFORNIA RE-
NEWAL,

                Defendant-Intervenors.

<u>Additional Counsel for Defendant-Intervenors</u>

ALLIANCE DEFENSE FUND
Timothy Chandler (CA Bar No. 234325)
*tchandler@telladf.org*
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 932-2850, Facsimile: (916) 932-2851

Jordan W. Lorence (DC Bar No. 385022)*
*jlorence@telladf.org*
Austin R. Nimocks (TX Bar No. 24002695)*
*animocks@telladf.org*
801 G Street NW, Suite 509, Washington, D.C. 20001
Telephone: (202) 393-8690, Facsimile: (202) 347-3622

* Admitted *pro hac vice*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES

BACKGROUND ........................................................................................................... 1

ARGUMENT ............................................................................................................... 2

    A.    The Ninth Circuit's Recent Guidance Shows That This Court's Prior First Amendment Rulings Were Legally Erroneous. ....................................................... 2

    B.    Pursuant to the Ninth Circuit's Guidance, Certain Exhibits and Associated Portions of the Trial Transcript Must Be Stricken from the Record. ................ 3

        1.    *PX 2656 (and Trial Tr. 2365:10-25; Trial Tr. 2366:9-12)* ................................. 4

        2.    *The portions of PX 2773 Bates numbered DEFINT_PM_018899-900 (and Trial Tr. 2375:13-21).* ................................................................... 4

        3.    *The portions of PX 2350 containing email correspondence (and Trial Tr. 1030:13-14; Trial Tr. 1037:25-1038:2; Trial Tr. 1039:13-14).* ......................... 5

        4.    *PX 2385 (and Trial Tr. 2394:5-15).* ................................................................ 5

        5.    *PX 2389 (and Trial Tr. 1603:12-1604:22; Trial Tr. 1606:19-1610:6).* ............... 5

        6.    *PX 2403.* .......................................................................................... 6

        7.    *PX 2455 (and Trial Tr. 2389:8-14).* ................................................................ 6

        8.    *PX 2554 (and Trial Tr. 1622:5-1623:25; Trial Tr. 1627:7-1628:15).* ................. 7

        9.    *PX 2555 (and Trial Tr. 1633:6-18; Trial Tr. 1633:23-1637:9).* ......................... 7

        10.    *PX 2561 (and Trial Tr. 1642:8-21; Trial Tr. 2669:23-2670:21).* ...................... 8

        11.    *PX 2562 (and Trial Tr. 1643:14-1644:10).* ..................................................... 8

        12.    *PX 2589 (and Trial Tr. 2386:6-8).* ................................................................. 9

        13.    *PX 2598 (and Trial Tr. 1645:4-1646:6).* ......................................................... 9

14.  *PX 2599 (and Trial Tr. 1975:8-1977:5; Trial Tr. 1995:5-19); PX 2630 (and Trial Tr. 1994:20-21; Trial Tr. 1995:2-4); PX 2631 (and Trial Tr. 1992:20-1993:4; Trial Tr. 1993:21-25).* ............................................................... 9

15.  *PX 2620 (and Trial Tr. 1898:16; Trial Tr. 1899:1-10; Trial Tr. 1899:25-1900:18).* ................................................................. 10

16.  *PX 2633 (and Trial Tr. 1965:3-1971:8; Trial Tr. 1980:16-1981:6; Trial Tr. 1981:21-1982:2 Trial Tr. 1991:24-1992:4; Trial Tr. 1992:13-19.)....* 10

17.  *PX 2650 (and Trial Tr. 1911:23-1912:15).* ........................................ 11

18.  *PX 2651 (and Trial Tr. 1906:21-1908:6).* ......................................... 11

19.  *PX 2640 (and Trial Tr. 1905:3-8; Trial Tr. 1906:6-12)* .................................. 12

20.  PX 2627 (and Trial Tr. 1999:12-18; Trial Tr. 1999:24-2002:13) ……………...12

C.   Plaintiffs' Arguments Regarding the Import of the Ninth Circuit's Guidance Are Untenable. .......................................................................... 12

CONCLUSION .............................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>                                                                                                    <u>**Page**</u>

*Mohawk Indus. v. Carpenter*, 130 S. Ct. 599 (2009).............................................................. 3

*Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010)............................................ *passim*

*Perry v. Schwarzenegger*, No. 09-17241 (filed Nov. 13, 2009)......................................... 13

*Perry v. Schwarzenegger*, No. 10-15649 (9th Cir. Apr. 12, 2010)........................................ 1, 3, 6, 15

**TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:**  PLEASE TAKE NOTICE that on June 10 at 10:00 a.m., or as soon as feasible before that date, before the Honorable Vaughn R. Walker, United States District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Defendant-Intervenors Dennis Hollingsworth, Gail Knight, Martin Gutierrez, Mark Jansson, and ProtectMarriage.com will move the Court for an order striking privileged documents, and associated testimony, from evidence.[1]

The issue to be decided is:  In light of Ninth Circuit authority demonstrating that this Court's privilege rulings constituted error, should documents and testimony admitted into evidence on the basis of those rulings be stricken from the record?

## **BACKGROUND**

Proponents have consistently objected on relevance and First Amendment grounds to the compelled production of nonpublic documents revealing confidential political speech and association engaged in by citizens associating together for common political purposes during the Proposition 8 ballot measure campaign.  *See, e.g.*, Doc # 187; Trial Tr. at 453.  The Court rejected these objections, in part, because some of the documents were communications sent or received by persons outside of the ProtectMarriage.com "core group"—the sole association of persons that this Court ruled could claim the protections of the First Amendment against requests for compelled disclosure of nonpublic communications with political associates about the formulation of political strategy and messaging. *See, e.g.*, Docs # 214, 252, 372, 496; Trial Tr. 1614-33.  The Ninth Circuit has now clarified that determining the proper scope of First Amendment privilege in this case does not turn on "whether [persons are] members of a single organization or entity," and that the "operative inquiry is whether they are part of an *association* subject to First Amendment protection."  Order, *Perry v. Schwarzenegger*, No. 10-15649 (9th Cir. Apr. 12, 2010), at 9 (hereinafter *Perry II*).  On the basis of this

---

[1] We have noticed this motion for a hearing on the next available date on the Court's ca-
(Continued)

guidance, Proponents now move the Court to strike certain exhibits (or portions of exhibits) and associated portions of the trial transcript from the record.[2]

## ARGUMENT

**A.     The Ninth Circuit's Recent Guidance Shows That This Court's Prior First Amendment Rulings Were Legally Erroneous.**

In its January 4 opinion, the Ninth Circuit explained that "[i]mplicit in the right to associate with others to advance one's shared political beliefs is the right to exchange ideas and formulate strategy and messages, and to do so in private." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1162 (9th Cir. 2010) (hereinafter *Perry I*). The opinion explained that the privilege was not limited to "official proponents of initiatives and referendums, but also [extends] to the myriad social, economic, religious and political organizations that publicly support or oppose ballot measures." *Id.* at 1158. Footnote 12 of the opinion stated that the "holding is limited to communications among the core group of *persons* engaged in the formulation of campaign strategy and messages," *id.* at 1165 n.12, and this Court interpreted that language to mean that the privilege was rigidly restricted to communications solely among those persons in a single, legally-demarcated entity.

Rejecting Proponents' claims of First Amendment privilege, this Court admitted into the record documents constituting communications between persons in different organizations who were nonetheless engaged in, and associating for the purpose of, the exchange of ideas and formulation of strategy and messages with respect to the shared political goal of campaigning in favor of Proposition 8 and/or promoting traditional marriage. For example, when Plaintiffs moved to admit PX 2554, Proponents objected that the document, on its face, was an email communication between ProtectMarriage.com executive committee member Mark Jansson and "leadership of a particular church" (of

---

lendar but have no objection to an expedited briefing and hearing schedule.
[2] By moving to strike at this time, Proponents do not waive any relevance or First Amendment objections to this Court's prior discovery and evidentiary rulings and orders, and herein renew our objections to preserve them for appeal.

which he was also a volunteer member).  Trial Tr. 1615.  Proponents objected that "it would be very

troublesome to say that religious organizations, churches, lose their ability to communicate within their

leadership in the church because the church works with other churches and other organizations, even in

a cooperative way in a campaign."  Trial Tr. 1615-16.  The Court stated that it did not "understand

how, if it is a document that relates to the Prop 8 campaign, in the files and possession of one of the

defendant-intervenors, … it can have some kind of privilege attached to it," and held that the document

"obviously falls outside the First Amendment privilege as defined by the Ninth Circuit.  *Id.* at 1618.

*See also id.* at 1621 (" [Mr. Jansson's] role [in the campaign] relates to his religious affiliation.  I'm not

aware of any privilege that attaches to that ….").

On April 12, 2010, the Ninth Circuit made clear that this interpretation of its January 4 opinion

constituted error, stating:

> [T]he district court said as a matter of law that "the First Amendment privilege does not
> cover communications between [or among] separate organizations."  Doc #623 at 13
> (brackets in original).  If the district court meant that the privilege cannot apply to per-
> sons who are part of a political association spanning more than one organization or entity,
> then this interpretation was questionable.  Under *Perry I*, the privilege applies to the core
> group of *persons* engaged in the formulation of strategy and messages, whether or not
> they are members of a single organization or entity.  The *operative inquiry* is whether
> they are part of an *association* subject to First Amendment protection.  We did not hold
> that the privilege cannot apply to a core group of associated persons spanning more than
> one entity.

*Perry II* at 8-9 (first emphasis added).  And as the Ninth Circuit stated in its January 4 opinion, the

associations subject to First Amendment privilege are simply those persons who come together "to

advance one's shared political beliefs," including "myriad social, economic, religious and political

organizations."  *Perry I*, 591 F.3d at 1158, 1162.

**B.      Pursuant to the Ninth Circuit's Guidance, Certain Exhibits and Associated Portions
of the Trial Transcript Must Be Stricken from the Record.**

As the Supreme Court has recently explained, where a district court has erroneously admitted

into evidence a privileged document, the appropriate remedy is to "exclude[] from evidence" "the

protected material and its fruits." *Mohawk Indus. v. Carpenter*, 130 S. Ct. 599, 601-02 (2009).

Accordingly, the exhibits and associated portions of the trial transcript listed below, admitted into the

record over Proponents' continuing relevance and First Amendment objections, are due to be

stricken.[3]  The documents on their face are communications regarding the exchange of ideas and/or

formulation of messaging and strategy among persons who associated during the Proposition 8

campaign for the common political purpose of securing the passage of that measure—a fact that is

also confirmed by declarations submitted herewith.

### 1. *PX 2656 (and Trial Tr. 2365:10-25; Trial Tr. 2366:9-12).*

PX 2656, as is apparent on the face of the document, is an email exchange among members of

ProtectMarriage.com, Pastor Jim Garlow, and one of Pastor Garlow's vendors, and it relates to the

formulation of public messaging.  *See* Ex. A at ¶ 5(ix).  Pastor Garlow shared the political goal of

passing Proposition 8 and associated with other religious leaders and ProtectMarriage.com for that

purpose.  Because Pastor Garlow shared a common political goal with ProtectMarriage.com and its

members, these persons sometimes associated together to advance that cause and communicated about

the formulation of strategy and messaging with respect to Proposition 8.  *See id.*

### 2. *The portions of PX 2773 Bates numbered DEFINT_PM_018899-900 (and Trial Tr. 2375:13-21).*

The indicated portions of PX 2773, as is apparent on the face of the document, constitute an

email chain sent and received among associates who were communicating for purposes of formulating

messages and strategy.  *See* PX 2773 at DEFINT_PM_018900 (discussing "preference" on what

footage to use for a public message).  *See also* Ex. A. at ¶ 5(x).

---

[3] *See* Trial Tr. 453 (continuing objection lodged); *id.* at 2366 (PX 2656 admitted); *id.* at 2375 (PX 2773 admitted); *id.* at 2023-24 (PX 2350 admitted); *id.* at 2392-95 (PX 2385 admitted); *id.* at 1603-10, 2015 (PX 2389 admitted); *id.* at 2931 (PX 2403 admitted); *id.* at 2388 (PX 2455 admitted); *id.* at 1641-42 (PX 2561 admitted); *id.* at 1643 (PX 2562 admitted); *id.* at 2385 (PX 2589 admitted); *id.* at 1644 (PX 2598 admitted); *id.* at 1993 (PX 2631 admitted); *id.* at 1995 (PX 2599 admitted); *id.* at 1998 (PX 2630 admitted); *id.* at 1900 (PX 2620 admitted).

**3.** ***The portions of PX 2350 containing email correspondence (and Trial Tr. 1030:13-14; Trial Tr. 1037:25-1038:2; Trial Tr. 1039:13-14).***

The indicated portions of PX 2350 contain an email and attachment. The attachment is a publicly available document and is not subject to this motion to strike. The emails, however, represent correspondence between associates in the political cause of promoting laws that support traditional marriage. The first email is a message from Warwick and Alison Marsh of the Fatherhood Foundation to Ron Prentice of ProtectMarriage.com, and as the last line of that email makes clear, it was sent to Mr. Prentice as a suggestion for possible campaign messaging. The second email is a message from Mr. Prentice to ProtectMarriage.com executive committee members and a handful of pastors who shared with ProtectMarriage.com the common political goal of passing Proposition 8. Ex. A at ¶ 5(i). "[A]s was [his] habit" when he received such information, Mr. Prentice "pass[ed] the article along to political allies and associates … to share information that might prove useful to them in formulating political and religious messaging." *Id.*

**4.** ***PX 2385 (and Trial Tr. 2394:5-15).***

PX 2385, as is evident from the face of the exhibit, consists of a series of emails among persons associating for the common political purpose of passing Proposition 8, and the emails discuss the formulation of messaging and strategy. Indeed, in discussing the exhibit at trial, Plaintiffs' counsel stated that one of the emails includes "The Arlington Group talking about what they're doing here, as part of this effort." Trial Tr. 2394:2-4. *See also* Ex. A at ¶ 5(ii)

**5.** ***PX 2389 (and Trial Tr. 1603:12-1604:22; Trial Tr. 1606:19-1610:6).***

PX 2389, as the face of the document makes plain, is a confidential email from Ned Dolejsi—a member of ProtectMarriage.com's ad hoc executive committee as well as the Executive Director of the California Conference of Catholic Bishops ("CCC")—to the leadership of the CCC. *See also* Declaration of Ned Dolejsi at ¶¶ 4-5 (April 22, 2010) (attached hereto as Ex. B). Plaintiffs' expert recognized as much, Trial Tr. 1604:5-6, and also testified that the document discusses campaign

5

strategy and messaging and shows political "cooperation" among organizations in the larger Yes-on-8 campaign, *id.* at 1604:13-14, 1609:12-22.  By Plaintiffs' experts' own characterization, then, this is exactly the type of document subject to First Amendment privilege according to the Ninth Circuit. *See, e.g.*, *Perry I*, 591 F.3d at 1158, 1162 (associations subject to First Amendment privilege are simply those persons who come together "to advance one's shared political beliefs," including "myriad social, economic, religious and political organizations."); *Perry II* at 8-9 (clarifying that under *Perry I*, First Amendment privilege protects persons that are "are part of an *association* subject to First Amendment protection" and regardless of whether the "associated persons span[] more than one entity").  Mr. Dolejsi's declaration, submitted herewith, also demonstrates that this document clearly falls within the Ninth Circuit's definition of the First Amendment privilege.  *See* Ex. B.

### 6. *PX 2403.*

PX 2403, as is evident on the face of the document, is an email communication (with attachment) between leaders of two organizations—Family Research Council and ProtectMarriage.com—who were actively supporting passage of Proposition 8 and associating for that purpose.  As is also evident from the face of the document, and as Mr. Prentice explained in his January 13, 2010 declaration, the email forwards draft FRC messaging materials and requests input from Mr. Prentice. *See* PX 2403 at 1 (stating that attachments are "latest …version" of materials and that "changes" were being made and asking for "feedback"); DIX 2719 at 6.  *See also* Ex. A at ¶ 5(iii).  In other words, it is an email between two political associates, one of whom is attempting to solicit input from the other regarding the formulation of messaging and strategy.

### 7. *PX 2455 (and Trial Tr. 2389:8-14).*

PX 2455, as the face of the document demonstrates, is an email chain among leaders of ProtectMarriage.com and the National Organization for Marriage, and it shows NOM seeking input from ProtectMarraige.com on proposed political messaging during the Proposition 8 campaign.  *See* PX

2455 at 1.  *See also* Ex. A at ¶ 5(iv).

**8.     *PX 2554 (and Trial Tr. 1622:5-1623:25; Trial Tr. 1627:7-1628:15).***

PX 2554 was admitted over Proponents' continuing First Amendment objection and over a spe-

cific objection.  *See* Trial Tr. 453, 1614-1627.  The Court ruled that, as a matter of law, the document

"obviously falls outside the First Amendment privilege as defined by the Ninth Circuit."  *Id.* 1618:8-

9.  The document is an email communication between various volunteers of the LDS Church's

"public affairs councils" in California, and also includes a member of ProtectMarriage.com (Mark

Jansson).  The face of the document also shows that it is a communication about the formulation of

messaging and strategy in support of the overarching Proposition 8 campaign.  Indeed, Plaintiffs' own

expert testified that the document reflects "coordination between people involved in the church and

the campaign."  Tr. 1628:4-6.  By Plaintiffs' experts' own characterization, then, this is exactly the

type of document subject to First Amendment privilege according to the Ninth Circuit.  The declara-

tion of Mark Jansson, submitted herewith, also demonstrates that this document clearly falls within

the Ninth Circuit's definition of the First Amendment privilege.  *See* Declaration of Mark Jansson

(April 22, 2010) at ¶ 5 (attached hereto as Ex. C).

**9.     *PX 2555 (and Trial Tr. 1633:6-18; Trial Tr. 1633:23-1637:9).***

PX 2555 was admitted over Proponents' continuing First Amendment objection and over a spe-

cific objection.  *See* Trial Tr. 453, 1628-33.  The Court noted that the document conveys "the minutes

of a Stake meeting," and held that because the document was in Defendant-Intervenor Jansson's files,

and because he had a role outside the LDS Church and with ProtectMarriage.com, there was no First

Amendment privilege to be claimed as a matter of law.  *Id.* at 1630-31.  The face of the document

reflects that it reports an instance of associated persons formulating messaging and strategy in support

of the overarching Proposition 8 campaign.  Indeed, Plaintiffs' own expert testified that the document

reflects persons in association communicating about "the strategy that's to be employed … with

7

respect to the Prop 8 campaign," *id.* at 1634:10-13, and a "two-way flow of information" between different organizations associated in a common effort to pass Prop 8, *id.* at 1636:7.  By Plaintiffs' experts' own characterization, then, this is exactly the type of document subject to First Amendment privilege according to the Ninth Circuit.  *See Perry I*, 591 F.3d at 1162 (quoting *DeGregory v. Attorney Gen. of New Hampshire*, 383 U.S. 825, 828 (1966), for the proposition that the privilege applies to "'the views expressed and ideas advocated' at political party meetings"); *id.* at 1163-64 (citing *Dole v. Serv. Employees Union, AFL-CIO, Local 280*, 950 F.2d 1456, 1459-61 (9th Cir. 1991), for proposition that First Amendment privilege could protect disclosure of union meeting minutes).  The declaration of Mark Jansson, submitted herewith, also demonstrates that this document clearly falls within the Ninth Circuit's definition of the First Amendment privilege.  *See* Ex. C at ¶ 6.

### 10. *PX 2561 (and Trial Tr. 1642:8-21; Trial Tr. 2669:23-2670:21).*

PX 2561, as is apparent on the face of the document, is a communication between Mr. Prentice and two political associates during the Proposition 8 campaign; it is a communication in which he suggests campaign strategy and requests feedback on that suggested strategy from the two political associates.  Mr. Prentice's declaration, submitted herewith, also demonstrates that this document clearly falls within the Ninth Circuit's definition of the First Amendment privilege.  *See* Ex. A at ¶ 5(v).

### 11. *PX 2562 (and Trial Tr. 1643:14-1644:10).*

PX 2562, according to Plaintiffs' own expert, is an "e-mail from the chair of ProtectMar-riage.com, to others, dealing with some issue regarding how designated gifts take place to the campaign."  Tr. 1643:16-18.  Indeed, as is apparent on the face of the email and the letter attached to it, it is a "confidential" communication from Mr. Prentice to those who were associated with him for purposes of passing Proposition 8.  *See* PX 2562 at DEFINT_PM_013442.  Mr. Prentice's declara-tion, submitted herewith, also demonstrates that this document clearly falls within the Ninth Circuit's

definition of the First Amendment privilege.  *See* Ex. A at ¶ 5(vi).

**12.      *PX 2589 (and Trial Tr. 2386:6-8).***

PX 2589, as is apparent on the face of the document, is a communication between Ronald Prentice and one other person with whom he was associated during the Prop 8 campaign for purposes of formulating messaging and strategy.  As the email states, he is transmitting potential "messages that have come from the research" that the recipient may want "to utilize for [her] own communications." PX 2589 at DEFINT_PM_01350.  Further, as Mr. Prentice explains in the declaration filed herewith, the email was transmitting nonpublic campaign message research because the recipient "and her organization [were] political allies with a shared goal of promoting traditional marriage."  Ex. A at ¶ 5(vii).

**13.      *PX 2598 (and Trial Tr. 1645:4-1646:6).***

PX 2598, as is apparent from the face of the document, is an email from a member of ProtectMarriage.com to the assistant of a major donor to ProtectMarriage.com, who was associating with the committee in order to advance the shared political goal of protecting the legal definition of traditional marriage.  In the email, Mr. Linder, a ProtectMarriage.com vendor/advisor, shares confidential strategy information with this political ally.  *See* Ex. A at ¶ 5(viii).

**14.      *PX 2599 (and Trial Tr. 1975:8-1977:5; Trial Tr. 1995:5-19); PX 2630 (and Trial Tr. 1994:20-21; Trial Tr. 1995:2-4); PX 2631 (and Trial Tr. 1992:20-1993:4; Trial Tr. 1993:21-25).***

PX 2599, PX 2630, and PX 2631, as is apparent from the face of all three documents, are emails transmitting confidential meeting minutes from ProtectMarriage.com "grassroots meeting[s]." The emails and attachments show that the minutes were shared with, and the meetings attended by, a group of persons from several different organizations, all of whom were associated for the common political goal of passing Proposition 8, even if some of the attendees had little or no role in ProtectMarriage.com's operations and decisionmaking.  *See* Ex. A at ¶ 5(xi).  Indeed, in *Perry I*, the Ninth

1  Circuit cited such meetings and meeting minutes as quintessential information protected by the First

2  Amendment privilege.  591 F.3d at 1162 (quoting *DeGregory*, 383 U.S. at 828, for the proposition

3  that the privilege applies to "'the views expressed and ideas advocated' at political party meetings");

4  *id.* at 1163-64 (citing *Dole*, 950 F.2d at 1459-61, for proposition that First Amendment privilege

5  could protect disclosure of union meeting minutes).

6

7          **15.     *PX 2620 (and Trial Tr. 1898:16; Trial Tr. 1899:1-10; Trial Tr. 1899:25-
                       1900:18)*.**

8

9          PX 2620, as is apparent from the face of the email, is a communication from Peter Henderson—

10  the chairman of a predecessor committee working toward qualifying a ballot measure in 2007 (that is,

11  a ballot measure other than Prop 8)—to a small group of other political allies who were working in

12  association with him to "[p]rotect marriage in California."  PX 2620 at TAM_PM_005446.  The

13  confidential communication is about the formulation of strategy and messaging in furtherance of that

14  effort.  *See, e.g.*, *id.* (discussing fundraising strategy; stating that the political associates on the email

15  "will need to discuss what to communicate to people when" the title and summary of the ballot

16  initiative is ready).  *See also* Ex. A at ¶ 5(xv).

17

18         **16.     *PX 2633 (and Trial Tr. 1965:3-1971:8; Trial Tr. 1980:16-1981:6; Trial Tr.
                       1981:21-1982:2 Trial Tr. 1991:24-1992:4; Trial Tr. 1992:13-19)*.**

19

20         PX 2633 was admitted into evidence over Proponents' and Defendant-Intervenor Tam's contin-

21  uing First Amendment objections.  *See* Trial Tr. 453, 1893-94, 1992.  As is apparent on the face of the

22  document, it is an email distributed among members of ProtectMarriage.com and Bill Tam, forward-

23  ing a "statement of unity" signed by Dr. Tam and his organization (Traditional Family Coalition).

24  The face of the document also shows that it was a communication among political associates of

25  "diverse needs and interests" about the formulation of messaging and strategy during the Proposition

26  8 campaign.  *See* PX 2633 at TAM_PM_006668 (discussing fundraising strategy and "strategies for

27  public messaging").  *See also* Ex. A at ¶ 5(xii).  While Dr. Tam and TFC had no significant role in the

28

                                                  10

strategic decisionmaking or operations of ProtectMarriage.com and its official campaign, Dr. Tam and his organization were nonetheless associated with persons in ProtectMarriage.com in a common effort to pass Proposition 8, and thus on occasion they engaged in confidential communications about political messaging and strategy. Regardless of whether the proposed strategy in the document was followed by recipients of the document, *see* Trial Tr. 1967:4-7, 1968:3-4, it is nonetheless a document shared among political associates and is about the formulation of strategy and messaging.

### 17.   *PX 2650 (and Trial Tr. 1911:23-1912:15).*

PX 2650 was admitted into evidence over Proponents' and Defendant-Intervenor Tam's contin-uing First Amendment objections. *See* Trial Tr. 453, 1893, 1912. As is apparent on the face of the document, it is an email chain among political associates regarding the formulation of messaging and strategy during the Proposition 8 campaign. The first email in the chain is from a member of ProtectMarriage.com—Mr. Prentice's assistant, Lynne Fishel—to political associates about strategy related to an upcoming press conference. *See* PX 2650 at DEFINT_PM_026064-65. The second and third emails are between Ms. Fishel and Bill Tam, and further discuss matters of strategy about the interaction of various groups campaigning in favor of Proposition 8. *Id.* at DEFINT_PM_026064. *See also* Ex. A at ¶ 5(xiii).

### 18.   *PX 2651 (and Trial Tr. 1906:21-1908:6).*

PX 2651 was admitted into evidence over Proponents' and Defendant-Intervenor Tam's continu-ing First Amendment objections. *See* Trial Tr. 453, 1893-94, 1908. As is apparent on the face of the document, PX 2651, like PX 2650, is a confidential email exchange between Lynne Fishel and Bill Tam regarding matters of political strategy. *See* PX 2651 at DEFINT_PM_026068 (discussing forwarding particular message to wider audiences and offering advice on possible distribution center for ballot petitions). *See also* Ex. A at ¶ 5(xiv).

19.    *PX 2640 (and Trial Tr. 1905:3-8; Trial Tr. 1906:6-12).*

PX 2640 was admitted into evidence over Proponents' and Defendant-Intervenor Tam's contin-
uing First Amendment objections.  *See* Trial Tr. 453, 1893-94,1905-06.  PX 2640's privileged nature
is evident on its face:  It is a chain of emails communicated "confidentially" during the period when
signatures were being gathered to put Proposition 8 on the ballot.  The chain begins with a communi-
cation from ProtectMarriage.com's general counsel to the five official proponents of Proposition 8, on
which ProtectMarriage.com's chairman was copied.  The later emails in the chain are between Dr.
Tam and the general counsel and reflect a discussion about how to deal with press inquiries.

20.    **PX 2627 (and Trial Tr. 1999:12-18; Trial Tr. 1999:24-2002:13).**

PX 2627 was admitted into evidence over Proponents' and Defendant-Intervenor Tam's contin-
uing First Amendment objections.  *See* Trial Tr. 453, 1893-94,1999.  PX 2627 is, on its face, a
communication from Andrew Pugno of ProtectMarriage.com to political associates who were
engaged in formulating strategy and messaging in favor of the passage of Proposition 8, and it
discusses the logistics of pursuing certain political strategies.  While Dr. Tam and TFC had little or no
involvement in the strategic decisionmaking or operations of ProtectMarriage.com and its official
campaign, Dr. Tam and TFC were nonetheless associated with persons in ProtectMarriage.com in a
common effort to pass Proposition 8, and thus on occasion they engaged in confidential communica-
tions about political messaging and strategy such as that reflected in PX 2627.


C.    **Plaintiffs' Arguments Regarding the Import of the Ninth Circuit's Guidance Are
       Untenable.**

Plaintiffs maintain that the Ninth Circuit's guidance does not call into question a single facet
of any of this Court's First Amendment rulings.  In furtherance of this position, Plaintiffs have
advanced two arguments, both of which are specious.  First, Plaintiffs claim that Proponents have
somehow waived the ability to claim the benefit of the First Amendment privilege as articulated by

the Ninth Circuit because "'Proponents have never asserted a First Amendment privilege over communications to other organizations.'" Doc # 633-8 at 2 (quoting Doc # 372 at 2-3). But Proponents have, from the outset of this litigation, and repeatedly thereafter, claimed that the documents sought in discovery, and later introduced into evidence, were nonpublic communications shared among political associates during a ballot-measure campaign for the purposes of discussing and formulating strategy and messaging. Proponents have *never* stated that the only privileged documents are those distributed solely within ProtectMarriage.com. Instead, we have repeatedly stated that nonpublic communications about political beliefs, strategy, and messaging, made and shared by and among those who have associated for political purposes, are privileged. For example:

- In Proponents' Motion for a Protective Order ("PO Motion"), filed on September 23, 2009, we stated that "the conclusion is inescapable [that] the First Amendment would be improperly infringed if *Defendant-Intervenors* are compelled to answer Plaintiffs' wide-ranging requests for disclosure of *substantially all* of *their* internal, private, and/or otherwise nonpublic political speech and *associational activity* surrounding the Prop. 8 campaign." Doc # 187 at 17-18 (emphasis added).

- In Proponents' Reply in support of that motion, we stated: "This motion is really about Plaintiffs' demands for disclosure of Proponents' *nonpublic* and/or anonymous communications, including (but not limited to) the Proponents' communications targeted to (and/or received from) (i) persons who donated money to or otherwise volunteered to assist the Prop. 8 campaign; (ii) agents and contractors of the campaign, including political consultants; and even (iii) family, friends, and colleagues." Doc # 197 at 6.

- In his declaration in support of the PO Motion, Ronald Prentice stated: "Volunteers of Protect Marriage corresponded with each other, with the public relations firm, with various vendors and independent contractors, and with other third parties about political beliefs, campaign strategy, personal beliefs, and much else relating to Proposition 8." Doc # 187-2 at 4. *See also id.* at 6 (discussing potential chill to ProtectMarriage.com's "donors, volunteers and affiliates").

- At the hearing on the PO Motion, Proponents' counsel explained that "[i]n this case we have a very broad coalition, a lot of people involved," Hr'g of Sept. 25, 2009, Tr. 13:9-10, that the campaign in favor of Proposition 8 involved "a coalition and lots of people involved," *id.* at 15:11-19, and that "what we're not producing, pending this Court's consideration of our petition and its ruling, are communications between and among defendant intervenors and the others that [were described as part of a coalition] that have formed an associational bond for purposes of this political activity," *id.* at 19:19-22. Proponents counsel explained that "at the heart of the [PO Motion]" was a request for protection of "private communication or nonpublic communication that any of the people who formed

13

an associational bond with one another to get this thing passed or, for that matter, people who formed associational bonds on the other side to defeat it." *Id.* at 29:4-13.

- In their Ninth Circuit brief, Proponents stated that they were appealing orders that "require[d] disclosure of nonpublic confidential and/or anonymous speech and associational activity relating to an initiative election," that it was unconstitutional to compel "the content of … private communications about [political messaging] with … political confidants during its formulation." Defendant-Intervenors-Appellants' Mot. for Stay, *Perry v. Schwarzenegger*, No. 09-17241 (filed Nov. 13, 2009), at 8, 12. *See also id.* at 13 (arguing that production orders improperly required disclosure "of [Proponents'] confidential communications with their political associates"); Defendant-Intervenor-Appellants' Br. in Response to Order to Show Cause, *Perry*, at 27 ("The district court has sanctioned wide-ranging discovery into private and confidential political speech and associational activities … in a political campaign supporting an initiative election.") (filed Nov. 13, 2009).

- At the December 16, 2009 hearing (after issuance of the Ninth Circuit's initial opinion, but *prior* to the Ninth Circuit's amended opinion adoption the "core group" language), Plaintiffs' counsel suggested that a First Amendment privilege could only apply to "the core group, the control group, … the proponents themselves, and the top officers of protectmarriage.com." Hr'g of Dec. 16, 2009, Tr. 37:2-8.  Plaintiffs' counsel also said it would "not be a fair interpretation of the Ninth Circuit Panel decision that a communication from protectmarriage.com to a church organization or some other group that is supporting the passage of Proposition 8 is one of these internal communications that the First Amendment privilege … implicates." *Id.* at 44:16-22.  Proponents' counsel objected to these positions, stating: "[T]heir position now is if [a Defendant-Intervenor] ha[d] a one-on-one communication with a family member, a friend, a known political associate, a church leader they have known for 20 years … [t]hose communications are discoverable.  So there is no First Amendment right for individuals, is what they claim.  You have to be a member of a 501[(c)(3)], and then you get First Amendment protection if you have an official title ….  It's remarkable." *Id.* at 57:1-19.  Proponents' counsel further stated: "[ProtectMarriage.com] is not the only thing implicated in this case.  There are individuals.  And it is that individual right to associate whether it be through a formal organization or informally, that is implicated." *Id.* at 61:24-62:2.

- In our Notice of Filing of Privilege Log, submitted on December 21, 2009, we explained: "Plaintiffs' current position necessarily suggests that Proponents' First Amendment association rights are limited to communications with participants in the specifically denominated and legally recognized campaign committee, and communications with any other known political associates are not protected by the First Amendment….  So, too, for any members of the ACLU who might have engaged in private associational and political speech outside the confines of that particular organization….  There is no support for Plaintiffs' position in the caselaw ….  Mr. Jansson, and some of the other Proponents, engaged in such nonpublic communications not only within the confines of some 'control group,' but also with known political associates who banded together to support Proposition 8.  Those communications are no less protected, and no more public … than those that took place and among the 'control group.'" Doc # 314 at 13-15.

- At the January 6 hearing  before Magistrate Judge Spero (after issuance of the Ninth Cir-

14

cuit's amended opinion), Proponents' counsel stated: "Let's not lose sight of the forest for the trees…. If we are going to define 'core group,' the opinion also says at the slip opinion at page 30, note nine, says: 'The freedom of members of a political association to delibe-rate internally over strategy and messaging is an incident of associational autonomy.'….So to argue that you have to carry a business card that says 'Core Group' on it and then you get First Amendment protections, but if you don't carry that business card, you lose your First Amendment protections if you are corresponding with somebody about … a political matter and the formulation of messages, I think is not a proper reading of the opinion." Hr'g of Jan. 6, 2010, Tr. 28:18-29:11.  Proponents' counsel also stated at that hearing: "[Y]ou can't limit the privilege ruling to just one association."  *Id.* at 68:8-9.

- In our objections to Magistrate Judge Spero's January 8 order, we stated: "The definition of the 'core group' requires production of thousands of documents shared confidentially among those who 'associate[d] with others to advance [their] shared political beliefs, and [did] so in private.'  Proponents respectfully object on First Amendment grounds."  Doc # 446 at 17 (citation omitted).  Proponents also objected as follows: "Magistrate Judge Spero held that Proponents could not claim privilege over communications made in their capacity as members of any formal political association other than ProtectMarriage.com or as part of an informal political association.  This holding runs afoul of the First Amendment."  *Id.*

Thus, to claim that Proponents have not asserted privilege over the documents in question is to ignore the entire litigation history in this case.  The claim simply has *no* basis in fact.

Second, Plaintiffs argue:

The magistrate judge further held that "[e]ven if the Court were to conclude that the First Amendment privilege had been properly preserved as to the communication among the members of core groups other than the Yes on 8 and ProtectMarriage.com campaign, proponents have failed to meet their burden of proving that the privilege applies to any documents in proponents' possession, custody or control." [Doc # 372 at 2-3.]  The magi-strate judge explained that "[t]here is no evidence before the Court regarding any other campaign organization, let alone the existence of a core group within such an organiza-tion," and "no evidence before the Court that any of the documents at issue are private internal communications of such a core group regarding formulation of strategy and mes-sages."  *Id.* at 3.

Doc # 633-8 at 2-3.

But this finding was based on a legal theory that the Ninth Circuit has just explained was erroneous—i.e., that to claim First Amendment privilege for communications among members of different formal organizations, one must prove that each organization had a separate "core group" and that the communication was among members of those individual "core groups."  *See* Doc # 372 at 2-3 (speaking of the privilege in terms of "communications among the members of *core groups*")

(emphasis added).  Rather, "[t]he operative inquiry is whether the[] [persons communicating] are part of an *association* subject to First Amendment protection," and those who qualify for this privilege may be made up "of associated persons spanning more than one entity."  *Perry II* at 9.

Moreover, because the "core group" concept had been introduced by the Ninth Circuit on January 4—and had yet to be further defined or applied by this Court—at the January 6 hearing, Proponents' counsel explained: "[T]o the extent we needed to define a core group, and the reliance is on footnote 12, of course, the privilege log was submitted before … the amended footnote 12 came out.  If further evidence is needed … to figure out what now fits within footnote 12, we could provide that, your Honor; but before having footnote 12, we wouldn't have been in a position to set out the metes and bounds of something that didn't exist yet."  Hr'g of Jan. 6, 2010, Tr. 59:25-60:8. *See also id.* at 65:15-20, 68:20-25, 71:24-72:3, 75:25-76:6, 75:23-77:11.  The Court afforded Proponents that opportunity,[4] *but only with respect to persons who were within the ProtectMarriage.com organization*.  Because the Court had erroneously interpreted footnote 12 to exclude inter-organizational communications from First Amendment protection, the Court held that Proponents could not put in *any* evidence about persons who were not members or vendors of ProtectMarriage.com.  *See id.* at 104:3-12.

And to the extent Plaintiffs are claiming that there was no evidence that the documents at issue were communicated by and among associated persons outside of ProtectMarriage.com, that is, as detailed above, a simply preposterous factual assertion.  In any event, the current dispute is focused on specific documents introduced into the record at trial.  The documents on their face show that they were nonpublic communications by persons associated for the purpose of formulating political messaging and strategy in support of Prop 8.  The Court, at trial, held that, as a matter of law, no

---

[4] And even as to this opportunity, in light of the tens of thousands of documents at issue, and in comparison to the repeated opportunities, over several weeks, given to the No-on-8 groups to submit "core group" evidence, the 24 hours afforded Proponents cannot be said to have been
(Continued)

1    privilege protects such communications, *see, e.g.*, Trial Tr. 1615-1621, and thus did not consider the

2    factual nature of each document for purposes of assessing privilege. As is now clear, all of the

3    documents at issue in this motion fit squarely within the privilege as understood and articulated by

4    the Ninth Circuit.

6                                          **CONCLUSION**

7         For the foregoing reasons, Proponents respectfully request that the Court grant this motion to

8    strike exhibits and associate portions of the trial transcript from the record.

10     Dated: April 23, 2010                    Respectfully Submitted,

12                                              COOPER AND KIRK, PLLC
                                                ATTORNEYS FOR DEFENDANTS-INTERVENORS
13                                              DENNIS HOLLINGSWORTH, GAIL J. KNIGHT, MAR-
                                                TIN F. GUTIERREZ, MARK A. JANSSON, AND PRO-
14                                              TECTMARRIAGE.COM – YES ON 8, A PROJECT OF
                                                CALIFORNIA RENEWAL
15
16                                              By:    /s/ Charles J. Cooper
                                                       Charles J. Cooper

28   much of an opportunity at all.