IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN M PERRY, SANDRA B STIER, PAUL T KATAMI and JEFFREY J ZARRILLO, <br><br>    Plaintiffs, <br><br>CITY AND COUNTY OF SAN FRANCISCO, <br><br>    Plaintiff-Intervenor, <br><br>    v <br><br>ARNOLD SCHWARZENEGGER, in his official capacity as governor of California; EDMUND G BROWN JR, in his official capacity as attorney general of California; MARK B HORTON, in his official capacity as director of the California Department of Public Health and state registrar of vital statistics; LINETTE SCOTT, in her official capacity as deputy director of health information & strategic planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as clerk-recorder of the County of Alameda; and DEAN C LOGAN, in his official capacity as registrar-recorder/county clerk for the County of Los Angeles, <br><br>    Defendants, <br><br>DENNIS HOLLINGSWORTH, GAIL J KNIGHT, MARTIN F GUTIERREZ, HAKSHING WILLIAM TAM, MARK A JANSSON and PROTECTMARRIAGE.COM – YES ON 8, A PROJECT OF CALIOFORNIA RENEWAL, as official proponents of Proposition 8, <br><br>    Defendant-Intervenors. <br>_____ / | No    C 09-2292 VRW <br><br>QUESTION FOR CLOSING ARGUMENTS |

The court provides the following questions to the parties in advance of closing arguments.  What follows is by no means an exhaustive list of questions, but is intended simply to assist the parties in focusing their closing arguments.

If the parties wish, they may answer any question in writing on or before June 15, 2010 at 12 PM PDT.  Alternatively, the parties should be prepared to address the questions during closing arguments.  While the court has directed certain questions to certain parties, any party can if it wishes choose to answer any question.

**To Plaintiffs:**

1. Assume the evidence shows Proposition 8 is not in fact rationally related to a legitimate state interest.  Assume further the evidence shows voters genuinely but without evidence believed Proposition 8 was rationally related to a legitimate interest.  Do the voters' honest beliefs in the absence of supporting evidence have any bearing on the constitutionality of Proposition 8?  See <u>Hernandez v Robles</u>, 855 NE2d 1, 7-8 (2006) ("In the absence of conclusive scientific evidence, the Legislature could rationally proceed on the common-sense premise that children will do best with a mother and a father in the home.").

2. What evidence supports a finding that maintaining marriage as an opposite-sex relationship does not afford a rational basis for Proposition 8?

3. Until very recently, same-sex relationships did not enjoy legal protection anywhere in the United States. How does this fact square with plaintiffs' claim that marriage between persons of the same sex enjoys the status of a fundamental right entitled to constitutional protection?

4. What is the import of evidence showing that marriage has historically been limited to a man and a woman? What evidence shows that that limitation no longer enjoys constitutional recognition?

5. What does the evidence show regarding the intent of the voters? If the evidence shows that Proposition 8 on its face and through its consequences distinguishes on the basis of sexual orientation and sex, of what import is voter intent?

6. What empirical data, if any, supports a finding that legal recognition of same-sex marriage reduces discrimination against gays and lesbians?

7. What evidence supports a finding that recognition of same-sex marriage would afford a permanent – as opposed to a transitory – benefit to the City and County of San Francisco? To California cities and counties generally?

8. What is the relevance, if any, of data showing that state and local governments would benefit economically if same-sex couples were permitted to marry? Does that relevance depend on the magnitude of the economic benefit?

9. What are the consequences of a permanent injunction against enforcement of Proposition 8? What remedies do plaintiffs propose?

10. Even if enforcement of Proposition 8 were enjoined, plaintiffs' marriages would not be recognized under federal law. Can the court find Proposition 8 to be unconstitutional without also considering the constitutionality of the federal Defense of Marriage Act?

11. What evidence supports a finding that the choice of a person of the same sex as a marriage partner partakes of traditionally revered liberties of intimate association and individual autonomy?

12. If the evidence of the involvement of the LDS and Roman Catholic churches and evangelical ministers supports a finding that Proposition 8 was an attempt to enforce private morality, what is the import of that finding?

**To Proponents:**

1.  **Assuming a higher level of scrutiny applies to either plaintiffs' due process or equal protection claim, what evidence in the record shows that Proposition 8 is substantially related to an important government interest? Narrowly tailored to a compelling government interest?**

2.  **Aside from the testimony of Mr Blankenhorn, what evidence in the record supports a finding that same-sex marriage has or could have negative social consequences? What does the evidence show the magnitude of these consequences to be?**

3.  **The court has reserved ruling on plaintiffs' motion to exclude Mr Blankenhorn's testimony. If the motion is granted, is there any other evidence to support a finding that Proposition 8 advances a legitimate governmental interest?**

4.  **Why should the court assume that the deinstitutionalization of marriage is a negative consequence?**

5.  **What evidence in the record shows that same-sex marriage is a drastic or far-reaching change to the institution of marriage?**

6.  **What evidence in the record shows that same-sex couples are differently situated from opposite-sex couples where at least one partner is infertile?**

7. Assume the evidence shows that children do best when raised by their married, biological mother and father. Assume further the court concludes it is in the state's interest to encourage children to be raised by their married biological mother and father where possible. What evidence if any shows that Proposition 8 furthers this state interest?

8. Do California's laws permitting same-sex couples to raise and adopt children undermine any conclusion that encouraging children to be raised by a married mother and father is a legitimate state interest?

9. How does the Supreme Court's holding in <u>Michael H v Gerald D</u>, 491 US 110 (1989) square with an emphasis on the importance of a biological connection between parents and their children?

10. Assume the evidence shows that sexual orientation is socially constructed. Assume further the evidence shows Proposition 8 assumes the existence of sexual orientation as a stable category. What bearing if any do these facts have on the constitutionality of Proposition 8?

11. Why is legislating based on moral disapproval of homosexuality not tantamount to discrimination? See Doc #605 at 11 ("But sincerely held moral or religious views that require acceptance and love of gay people, while disapproving certain aspects of their conduct, are not tantamount to discrimination."). What evidence in the record shows that a belief based in morality cannot also be discriminatory? If that moral point of view is not held and is disputed by a small but significant minority of the community, should not an effort to enact that moral point of view into a state constitution be deemed a violation of equal protection?

12. What harm do proponents face if an injunction against the enforcement of Proposition 8 is issued?

**To Plaintiffs and Proponents:**

1. What party bears the burden of proof on plaintiffs' claims? Under what standard of review is the evidence considered?

2. Does the existence of a debate inform whether the existence of a rational basis supporting Proposition 8 is "debatable" or "arguable" under the Equal Protection Clause? See <u>Minnesota v Clover Leaf Creamery Co</u>, 449 US 456, 469 (1981); <u>FCC v Beach Communications, Inc</u>, 508 US 305, 320 (1993).

3. What does the evidence show the difference to be between gays and lesbians, on the one hand, and heterosexuals on the other? Is that difference one which the government "may legitimately take into account" when making legislative classifications? See <u>City of Cleburne v Cleburne Living Center</u>, 473 US 432, 446 (1985).

4. What does the evidence show the definition (or definitions) of marriage to be? How does Professor Cott's proposed definition of marriage fit within Mr Blankenhorn's testimony that competing definitions of marriage are either focused on children or focused on spousal affection? See Cott, Tr 201:9-14 and 222:13-17; Blankenhorn, Tr 2742:9-18 and 2755:25-2756:1.

5. What does it mean to have a "choice" in one's sexual orientation? See e g Tr 2032:17-22; PX 928 at 37.

8

6.  In order to be rooted in "our Nation's history, legal traditions, and practices," see Washington v Glucksberg, 521 US 702, 710 (1997), is it sufficient that a practice has existed historically, or need there be an articulable purpose underlying the practice?

7.  If spouses are obligated to one another for mutual support and support of dependents, and if legal spousal obligations have no basis in the gender of the spouse, what purpose does a law requiring that a marital partnership consist of one man and one woman serve?

8.  The California Family Code requires that registered domestic partners be treated as spouses.  Cal Fam Code § 297.5. Businesses that extend benefits to married spouses in California must extend equal benefits to registered domestic partners.  See Koebke v Bernardo Heights Country Club, 36 Cal 4th 824, 846 (2005) ("We interpret [Cal Fam Code § 297.5(f)] to mean that there shall be no discrimination in the treatment of registered domestic partners and spouses.").  If, under California law, registered domestic partners are to be treated just like married spouses, what purpose is served by differentiating – in name only – between same-sex and opposite-sex unions?

9.  What evidence, if any, shows whether infertility has ever been a legal basis for annulment or divorce?

9

10. How should the failure of the Briggs Initiative (Proposition 6 in 1978) or the LaRouche Initiative (Proposition 64 in 1986) be viewed in determining whether gays and lesbians are politically powerless?

11. What are the constitutional consequences if the evidence shows that sexual orientation is immutable for men but not for women? Must gay men and lesbians be treated identically under the Equal Protection Clause?

12. How many opposite-sex couples have registered as domestic partners under California law? Are domestic partnerships between opposite-sex partners or same-sex partners recognized in other jurisdictions? If appropriate, the parties may rely on documents subject to judicial notice to answer this question.

13. Do domestic partnerships create legal extended family relationships or in-laws?

14. What does the evidence show regarding the difficulty or ease with which the State of California regulates the current system of opposite-sex and same-sex marriage and opposite-sex and same-sex domestic partnerships?

15. If the court finds Proposition 8 to be unconstitutional, what remedy would "yield to the constitutional expression of the people of California's will"?  See Doc #605 at 18.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge