**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KRISTIN M PERRY, SANDRA B STIER, PAUL T KATAMI and JEFFREY J ZARRILLO,

    Plaintiffs,

CITY AND COUNTY OF SAN FRANCISCO,

    Plaintiff-Intervenor,

    v

ARNOLD SCHWARZENEGGER, in his official capacity as governor of California; EDMUND G BROWN JR, in his official capacity as attorney general of California; MARK B HORTON, in his official capacity as director of the California Department of Public Health and state registrar of vital statistics; LINETTE SCOTT, in her official capacity as deputy director of health information & strategic planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as clerk-recorder of the County of Alameda; and DEAN C LOGAN, in his official capacity as registrar-recorder/county clerk for the County of Los Angeles,

    Defendants,

DENNIS HOLLINGSWORTH, GAIL J KNIGHT, MARTIN F GUTIERREZ, HAKSHING WILLIAM TAM, MARK A JANSSON and PROTECTMARRIAGE.COM – YES ON 8, A PROJECT OF CALIOFORNIA RENEWAL, as official proponents of Proposition 8,

    Defendant-Intervenors.
_____/

No   C 09-2292 VRW

ORDER

Defendant-intervenors, the official proponents of Proposition 8 ("proponents"), move for reconsideration of the admission of documents at trial based on the Ninth Circuit's opinion in <u>Perry v Schwarzenegger</u>, 602 F3d 976 (9th Cir 2010) ("<u>Perry II</u>"). Doc #640-2. Dr Hak-Shing William Tam, a proponent, moves by separate motion. Doc #642. Plaintiffs and plaintiff-intervenor City and County of San Francisco ("CCSF") oppose the motions. Doc ##659, 660. Proponents and Tam ask the court to strike 28 documents that were admitted during trial along with related testimony. For the reasons explained below, the motions to strike are DENIED.

I

The court may grant a motion to reconsider an earlier ruling when the moving party puts forth newly discovered evidence or shows a material change in law or a "manifest failure" by the court to consider material facts or dispositive law. See Civ LR 7-9(b). Proponents argue that <u>Perry II</u> constitutes an intervening change in law supporting reconsideration.

<u>Perry II</u> explains that a First Amendment privilege against disclosure applies to a core group of persons "engaged in the formulation of strategy and messages, whether or not they are members of a single organization or entity." Id at 981. An individual asserting a First Amendment privilege against disclosure must show that he or she formed a "single political association" with a group of persons. Id. Thus, a single political association can consist of individuals who are members of various organizations as long as those individuals together formed an associational bond.

Proponents' motion seeks reconsideration of the court's prior rulings regarding the application of the First Amendment privilege in light of <u>Perry II</u>. Proponents assert that the court previously misinterpreted <u>Perry v Schwarzenegger</u>, 591 F3d 1147, 1165 n12 (9th Cir 2010) ("<u>Perry I</u>") as requiring an association to consist solely of members of a single entity or organization. Now, according to proponents, the Ninth Circuit has made clear that an association for purposes of the First Amendment privilege can consist of individuals who are members of various entities or organizations, as long as those individuals show they have created a single political association protected by the First Amendment. <u>Perry II</u>, 602 F3d at 981.

II

The court determined on January 8, 2010 the core group of persons engaged in the formulation of strategy and messages for ProtectMarriage.com, proponents' campaign to pass Proposition 8. Doc #372. Based on the evidence presented, the court concluded that the core group of individuals engaged in the formulation of strategy and messages for the ProtectMarriage.com campaign consisted of the proponents, executive committee, spokespersons and volunteers along with consulting firms. Id at 4. The court did not limit the core group to those individuals who were members of the entity "ProtectMarriage.com." Instead, consulting firms were included precisely because the evidence showed that the consulting firms and ProtectMarriage.com had formed an associational bond. See Doc #496 at 3 (noting that Magistrate Judge Spero had incorporated into the core group "almost every individual and

3

United States District Court
For the Northern District of California

entity referenced" by proponents). Thus, Perry II does not announce a standard different from the standard the court applied in January 2010.

Even if the court were to conclude that Perry II amounts to an intervening change in law, proponents have not made a showing sufficient for the court to conclude the documents at issue are protected by any privilege. The First Amendment does not protect a communication against disclosure simply because it was intended to be private. Rather, in the initiative campaign context, the First Amendment protects against disclosure only those communications about strategy or message formulation between or among individuals who have come together under an associational bond. See Perry I, 591 F3d 1165 n12. While Perry II makes clear that individuals may form an associational bond even if they are members of different entities, Perry II does not alter the requirement that the individuals demonstrate the existence of an associational bond. See Perry II, 602 F3d at 981.

To be a member of a core group of persons developing campaign strategy and messages, the individual must be part of a "single political association," which requires more than simply sharing a common political goal. Perry II, 602 F3d at 981. All people who worked to pass Proposition 8 and occasionally communicated cannot be said to have formed a political association. The existence of a political association must be supported by at least some evidence. See Perry II, 602 F3d at 981.

**A**

Proponents submit the declaration of Ron Prentice, Doc #640-3, the chairman of ProtectMarriage.com, as evidence to support a finding that members of ProtectMarriage.com formed a "single political association" with members of other organizations working to pass Proposition 8. Prentice declares that ProtectMarriage.com "sometimes" coordinated on projects with other organizations and "occasionally" reimbursed their expenses. Doc #640-3 at 3 ¶13. Prentice also declares that individual members of ProtectMarriage.com were involved in other organizations that supported Proposition 8. Id at 4 ¶4. The declaration is consistent with Prentice's testimony during his deposition that ProtectMarriage.com's relationship with other organizations working to pass Proposition 8 was nothing more than "a loose association of people walking in the same direction." Doc #661-2 at 13:9-10.

Proponents argue the Prentice declaration supports a claim of privilege over:

- PX 2350 (an email between Prentice and individuals at the Fatherhood Foundation);
- PX 2385 (an email from a ProtectMarriage.com vendor to an individual associated with the Arlington Group);
- PX 2403 (an email from an individual associated with the Family Research Council to Prentice);
- PX 2455 (emails from individuals associated with the National Organization for Marriage to Prentice and another ProtectMarriage.com associate);
- PX 2561 (an email from a pastor of the Calvary Chapel Costa Mesa Church to Prentice);

5

- **PX 2562 (an email chain between Prentice and an independent consultant and donors discussing fundraising strategy);**
- **PX 2589 (an email from Prentice to United Families International);**
- **PX 2598 (a fundraising email from a ProtectMarriage.com vendor to an anonymous major donor);**
- **PX 2656 (an email between ProtectMarriage.com associates and Pastor Jim Garlow and the Church Communication Network regarding a simulcast funded by ProtectMarriage.com);**
- **PX 2773 (emails between Pastor Garlow and ProtectMarriage.com regarding the simulcast);**
- **PX 2599, PX 2630, PX 2631 (emails inviting various organizations to participate in grassroots conference calls);**
- **PX 2620 (an email from the organizer of an earlier version of a ballot initiative similar to Proposition 8 to ProtectMarriage.com).**

The Prentice Declaration does not support a claim of privilege over any of the exhibits listed above.  Prentice explains that the communications involved individuals who "occasionally" communicated regarding a common goal.  Occasional communication does not suffice to support the existence of a political association.

Proponents also argue that the following exhibits are privileged:

- **PX 2633 (an email forwarding a statement of unity signed by Dr Tam). The document was apparently produced because proponents did not believe Dr Tam was a member of ProtectMarriage.com's core group despite a court order giving him that designation. Doc #640-3 at 11;**
- **PX 2650, PX 2651 (emails between Prentice's assistant and Dr Tam). The documents were apparently produced because proponents did not believe Dr Tam was a member of ProtectMarriage.com's core group, despite a court order granting him that status. See Doc #640-3 at 11.**

To the extent these documents are core group communications as defined by the court's January 8 order, Doc #372, proponents' decision to produce them constitutes a waiver of any claim of First Amendment privilege.

**B**

Proponents submit the declaration of Ned Dolejsi, a member of the executive committee of ProtectMarriage.com, to support a finding that Dolejsi had formed an associational bond with members of the Catholic leadership in California. Doc #640-4. Through the Dolejsi declaration proponents attempt to strike PX 2389, an election day email celebrating the successes of the Catholic leadership in the effort to pass Proposition 8. But even if the court were to conclude that Dolejsi had an associational bond with Catholic leadership sufficient to invoke a privilege under the First Amendment, the Dolejsi declaration makes clear that a "courtesy copy" of this email was sent to ProtectMarriage.com executive committee member Doug Swardstrom. Doc #640-4 at 4 ¶5.

7

Because no evidence in the record shows that Swardstrom had formed an associational bond with Catholic leadership, PX 2389 cannot be privileged under the First Amendment.

### C

Proponents submit the declaration of Mark Jansson, an official proponent of Proposition 8, to support a finding that Jansson formed a political association with members of the leadership of the Mormon Church. Doc #640-5. Proponents argue that this associational bond allows Jansson to claim a privilege over PX 2554, an email from a Mormon leader to various church members who were working to pass Proposition 8, and PX 2555, minutes from a Mormon church public affairs council meeting where Jansson spoke to describe the efforts of ProtectMarriage.com. Id. Only the portion of the minutes relating to Jansson's presentation is in evidence; the remainder of PX 2555 is redacted.

Even if the court were to conclude that Jansson could claim a First Amendment privilege over strategy and message communication within a core group of Mormon leadership, the exhibits here do not fall within the scope of such a privilege. PX 2554 is an email sent to a wide audience of Mormon leaders and "other interested persons." It is on its face not a communication solely within a core group of Mormon leaders. PX 2555 is not privileged because it reflects Jansson's communication on behalf of ProtectMarriage.com to Mormon leaders explaining the steps ProtectMarriage.com asked of the Mormon church. No evidence supports a conclusion that ProtectMarriage.com and the Mormon church are a "single political association;" accordingly, a

communication from ProtectMarriage.com to the Mormon church cannot be privileged under the First Amendment

### D

Dr Hak-Shing William Tam, an official proponent of Proposition 8, submits his own declaration to support a finding that he can assert a First Amendment privilege over communications to individuals associated with the Traditional Family Coalition, of which Tam is executive director. Doc #642-3. Even if the court were to conclude that Tam could claim a First Amendment privilege over communications about strategy and messages within a core group associated with the Traditional Family Coalition, none of the documents identified by Tam in his motion would fall within that privilege.

Tam asks the court to strike PX 2472, PX 2476 and PX 2612, emails from Tam to various "friends" of the Traditional Family Coalition. The Ninth Circuit held that a similar letter from Tam to these same "friends" was "plainly not a private, internal communication." Perry I, 591 F3d 1165 n12. The law has not changed, and these communications are not privileged.

PX 2504, an email between Tam and an anonymous associate, does not involve the formulation of strategy and messages. Because Tam is instead soliciting "active support" from his associate, see Perry I, 591 F3d at 1165 n12, PX 2504 does not fall within any claim of First Amendment privilege. PX 2538, an email to pastors and ministry leaders attempting to motivate supporters of Proposition 8, and PX 2609, a fundraising dinner invitation, are

not communications about strategy and messages protected by the First Amendment. See Perry I, 591 F3d at 1165 n12 (holding that messages about "persuasion, recruitment or motivation" are not privileged). PX 2627 is an email from ProtectMarriage.com to Tam and the head of another organization working to pass Proposition 8. Because no evidence supports a finding that ProtectMarriage.com formed a "single political association" with the other organization, the communication is not privileged.

PX 2640, an email between Tam and ProtectMarriage.com counsel Andrew Pugno, was produced despite the court's holding that both Tam and Pugno are members of ProtectMarriage.com's core group. See Doc #372. Any claim of privilege was thus waived when the document was produced.

### III

For the reasons explained above, the exhibits identified in proponents' and Tam's motions to strike are not privileged. Accordingly, the motions to strike, Doc ##640, 642, are DENIED. The exhibits and related testimony will therefore remain in the trial record.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge