COOPER AND KIRK, PLLC
Charles J. Cooper (DC Bar No. 248070)*
*ccooper@cooperkirk.com*
David H. Thompson (DC Bar No. 450503)*
*dthompson@cooperkirk.com*
Howard C. Nielson, Jr. (DC Bar No. 473018)*
*hnielson@cooperkirk.com*
Nicole J. Moss (DC Bar No. 472424)*
*nmoss@cooperkirk.com*
Peter A. Patterson (OH Bar No. 0080840)*
*ppatterson@cooperkirk.com*
1523 New Hampshire Ave. N.W., Washington, D.C. 20036
Telephone: (202) 220-9600, Facsimile: (202) 220-9601

LAW OFFICES OF ANDREW P. PUGNO
Andrew P. Pugno (CA Bar No. 206587)
*andrew@pugnolaw.com*
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 608-3065, Facsimile: (916) 608-3066

ALLIANCE DEFENSE FUND
Brian W. Raum (NY Bar No. 2856102)*
*braum@telladf.org*
James A. Campbell (OH Bar No. 0081501)*
*jcampbell@telladf.org*
15100 North 90th Street, Scottsdale, Arizona 85260
Telephone: (480) 444-0020, Facsimile: (480) 444-0028

ATTORNEYS FOR DEFENDANT-INTERVENORS DENNIS HOLLINGSWORTH,
GAIL J. KNIGHT, MARTIN F. GUTIERREZ, MARK A. JANSSON,
and PROTECTMARRIAGE.COM – YES ON 8, A
PROJECT OF CALIFORNIA RENEWAL

* Admitted *pro hac vice*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO,<br><br>Plaintiffs,<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, JR., in his official capacity as Attorney General of California; MARK B. HORTON, in his | CASE NO. 09-CV-2292 VRW<br><br>**DEFENDANT-INTERVENORS DENNIS HOLLINGSWORTH, GAIL J. KNIGHT, MARTIN F. GUTIERREZ, MARK A. JANSSON, AND PROTECTMARRIAGE.COM'S MOTION FOR STAY PENDING APPEAL**<br><br>Chief Judge Vaughn R. Walker<br><br>Date:      October 21, 2010<br>Time:     10 a.m.<br>Location: Courtroom 6, 17th Floor |

official capacity as Director of the California Department of Public Health and State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; and DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles,

     Defendants,

and

PROPOSITION 8 OFFICIAL PROPONENTS DENNIS HOLLINGSWORTH, GAIL J. KNIGHT, MARTIN F. GUTIERREZ, HAK-SHING WILLIAM TAM, and MARK A. JANSSON; and PROTECTMARRIAGE.COM – YES ON 8, A PROJECT OF CALIFORNIA RENEWAL,

     Defendant-Intervenors.

<u>Additional Counsel for Defendant-Intervenors</u>

ALLIANCE DEFENSE FUND
Timothy Chandler (CA Bar No. 234325)
*tchandler@telladf.org*
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 932-2850, Facsimile: (916) 932-2851

Jordan W. Lorence (DC Bar No. 385022)*
*jlorence@telladf.org*
Austin R. Nimocks (TX Bar No. 24002695)*
*animocks@telladf.org*
801 G Street NW, Suite 509, Washington, D.C. 20001
Telephone: (202) 393-8690, Facsimile: (202) 347-3622

* Admitted *pro hac vice*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES………………………………………………………………..ii

STATEMENT OF FACTS……………………………………………………………….. 1

ARGUMENT……………………………………………………………………………... 1

I. Proponents Will Likely Succeed on the Merits on Appeal…………………………........2

II. Irreparable Harm Will Result Absent a Stay…………………………………………. 4

III. A Stay Will Not Subject Plaintiffs to Substantial Harm…………………………….......6

IV. The Public Interest Weighs in Favor of a Stay……………………………………….. 6

CONCLUSION………………………………………………………………………………7

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Adams v. Howerton*, 673 F.2d 1036 (9th Cir. 1982) ................................................................. 3

*Baker v. Nelson*, 191 N.W.2d 185 (Minn. 1971) ...................................................................... 2

*Baker v. Nelson*, 409 U.S. 810 (1972) ................................................................................... 2, 3

*Baker v. Wade*, 769 F.2d 289 (5th Cir. 1985) (en banc) ........................................................... 3

*Ben-Shalom v. Marsh*, 881 F.2d 454 (7th Cir. 1989) ................................................................ 3

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) ............................................................................ 7

*Citizens for Equal Prot. v. Bruning*, 455 F.3d 859 (8th Cir. 2006) ........................................... 3

*City of Las Vegas v. Foley*, 747 F.2d 1294 (9th Cir. 1984) ...................................................... 4

*Coalition for Economic Equity v. Wilson*, 122 F.3d 718 (9th Cir. 1997) ................................. 5

*Cook v. Gates*, 528 F.3d 42 (1st Cir. 2008) .............................................................................. 3

*Equality Found. v. City of Cincinnati*, 128 F.3d 289 (6th Cir. 1997) ....................................... 3

*Golden Gate Rest. Ass'n v. City of San Francisco*, 512 F.3d 1112 (9th Cir. 2008) ............... 1, 7

*High Tech Gays v. Def. Indus. Sec. Clearance Office*, 895 F.2d 563 (9th Cir. 1990) .............. 3

*In re Kandu*, 315 B.R. 123 (Bankr. W.D. Wash. 2004) ........................................................... 3

*In re Marriage Cases*, 183 P.3d 384 (Cal. 2008) .................................................................. 1, 3

*Johnson v. Robison*, 415 U.S. 361 (1974) ................................................................................ 4

*Lockyer v. City and County of San Francisco*, 95 P.3d 459 (Cal. 2004) .................................. 5

*Lofton v. Sec'y of the Dep't of Children & Family Servs.*, 358 F.3d 804 (11th Cir. 2004) ....... 3

*Loving v. Virginia*, 388 U.S. 1 (1967) ...................................................................................... 2

*Meyer v. Nebraska*, 262 U.S. 390 (1923) ................................................................................. 2

*New Motor Vehicle Bd. v. Orrin W. Fox Co.*,
    434 U.S. 1345 (1977) (Rehnquist, J., in chambers) ........................................................ 5

<2>
</2>
<1>
</1>
<1>
</1>
<1>
</1>
<1>
</1>

*Nken v. Holder*, 129 S. Ct. 1749 (2009) ..................................................................................2

*Rich v. Sec'y of the Army*, 735 F.2d 1220 (10th Cir. 1984) .......................................................3

*Singer v. Hara*, 522 P.2d 1187 (Wash. Ct. App. 1974) ............................................................3

*Skinner v. Oklahoma*, 316 U.S. 535 (1942) ..............................................................................2

*Smelt v. County of Orange*, 447 F.3d 673 (9th Cir. 2006) ........................................................7

*Southern Alameda Span. Org. v. Union City*, 424 F.2d 291 (9th Cir. 1970) ...............................4

*Steffan v. Perry*, 41 F.3d 677 (D.C. Cir. 1994) (en banc) .........................................................3

*Stormans Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009) .........................................................7

*Strauss v. Horton*, 207 P.3d 48 (Cal. 2009) .............................................................................5

*Thomasson v. Perry*, 80 F.3d 915 (4th Cir. 1996) (en banc) .....................................................3

*Wilson v. Ake*, 354 F. Supp. 2d 1298 (M.D. Fla. 2005) ............................................................3

*Witt v. Dep't of the Air Force*, 527 F.3d 806 (9th Cir. 2008) ....................................................3

*Woodward v. United States*, 871 F.2d 1068 (Fed. Cir. 1989) ...................................................3

**Other**

Civ L.R. 7-2(a) ..........................................................................................................................1

Cal. Fam. Code § 297.5 .............................................................................................................6

**TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:** PLEASE TAKE NOTICE that, should the Court enter judgment for Plaintiffs, on October 21, 2010, or as soon as the matter may be heard, before the Honorable Vaughn R. Walker, United States District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Defendant-Intervenors Hollingsworth, Knight, Gutierrez, Jansson, and ProtectMarriage.com ("Proponents") will move the Court for a stay pending appeal.[1] In the alternative, Proponents request a limited seven-day stay of the Court's judgment to permit them to seek a stay pending appeal from the Ninth Circuit and, if necessary, the Supreme Court.

The issue to be decided is: Are Proponents entitled to a stay pending appeal?

## STATEMENT OF FACTS

"From the beginning of California statehood, the legal institution of civil marriage has been understood to refer to a relationship between a man and a woman." *In re Marriage Cases*, 183 P.3d 384, 407 (Cal. 2008). The people of California have been steadfast in preserving this definition of marriage, as reflected in the passage of Proposition 22 ("Prop 22") in 2000 and Proposition 8 ("Prop 8") in 2008.

The Court has now indicated that its ruling will be forthcoming on August 4, 2010. For the reasons that follow, should the Court rule in favor of Plaintiffs, Proponents respectfully request the Court to stay its judgment pending appeal. A stay is essential to averting the harms that would flow from another purported window of same-sex marriage in California.

## ARGUMENT

Four factors guide this Court's consideration of Proponents' motion for a stay pending appeal: (1) Proponents' likelihood of success on the merits, (2) the possibility of irreparable harm absent a stay; (3) the possibility of substantial injury to other parties if a stay is issued; and (4) the public interest. *See Golden Gate Rest. Ass'n v. San Francisco*, 512 F.3d 1112, 1115 (9th Cir. 2008)

---

[1] Although we have noticed this motion for the next available date on this Court's calendar that is at least 35 days from today, *see* Civ. L.R. 7-2(a), we are also filing a motion asking the Court to expedite its consideration of our stay motion. Specifically, we request the Court to rule on our stay motion at the time it enters judgment in this case.

1

(citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). These factors all point to the same conclusion: This Court should "suspend[] judicial alteration of the status quo" on the important issues at stake in this litigation by staying its judgment pending appeal. *Nken v. Holder*, 129 S. Ct. 1749, 1758 (2009) (quotation marks omitted).

## I. Proponents Will Likely Succeed on the Merits on Appeal.

For all the reasons explained throughout this litigation, including in our summary judgment briefing and argument, Doc ##172-1 & 213; trial memorandum, Doc #605; response to amicus submissions, Doc #604; answers to the Court's questions for closing argument, Doc #687; and arguments made during trial, Proponents are likely to succeed on appeal should this Court rule that Prop 8 is unconstitutional. Indeed, Plaintiffs' claims run up against binding authority at every turn.

*First*, any determination that the fundamental right to marry includes the right to marry a person of the same sex—and, indeed, any determination that the United States Constitution requires a State to redefine marriage to include same-sex couples—is foreclosed by *Baker v. Nelson*, 409 U.S. 810 (1972). When the *Baker* court summarily "dismissed for want of substantial federal question" a same-sex couple's appeal from a Minnesota Supreme Court decision holding that there is no fundamental right to marry a person of the same sex, *see Baker*, 409 U.S. at 810; *Baker v. Nelson*, 191 N.W.2d 185 (Minn. 1971), the fundamental right to marry was already well established, *see Loving v. Virginia*, 388 U.S. 1, 12 (1967); *Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942). Furthermore, the Supreme Court's cases addressing the fundamental right to marry all arose in the context of marriage defined as a union of a man and a woman and plainly acknowledge the abiding connection between marriage and the potentially procreative nature of opposite-sex relationships. *See, e.g.*, *Loving*, 388 U.S. at 12 ("Marriage is … fundamental to our very existence and survival."); *Skinner*, 316 U.S. at 541 ("Marriage and procreation are fundamental to the very existence and survival of the race."); *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) (The right to "marry, establish a home and bring up children … [is] essential to the orderly pursuit of happiness by free men."). This Court would stand alone among the Nation's judiciary in ruling that the United States Constitution protects a fundamental right to marry a person of the same sex.

*Second*, any determination that gays and lesbians constitute a suspect class or quasi-suspect

class under the equal protection clause of the Fourteenth Amendment would be contrary to a long line of binding Ninth Circuit authority. *See, e.g.*, *Witt v. Dep't of the Air Force*, 527 F.3d 806, 821 (9th Cir. 2008); *High Tech Gays v. Def. Indus. Sec. Clearance Office*, 895 F.2d 563, 573-74 (9th Cir. 1990). It would also conflict with the judgment of every circuit court that has considered the matter, all of which have rejected heightened equal protection scrutiny for gays and lesbians. *See Cook v. Gates*, 528 F.3d 42, 61 (1st Cir. 2008); *Thomasson v. Perry*, 80 F.3d 915, 928 (4th Cir. 1996) (en banc); *Baker v. Wade*, 769 F.2d 289, 292 (5th Cir. 1985) (en banc); *Equality Found. v. City of Cincinnati*, 128 F.3d 289, 294 (6th Cir. 1997); *Ben-Shalom v. Marsh*, 881 F.2d 454, 464 (7th Cir. 1989); *Citizens for Equal Protection v. Bruning*, 455 F.3d 859, 866-67 (8th Cir. 2006); *Rich v. Secretary of the Army*, 735 F.2d 1220, 1229 (10th Cir. 1984); *Lofton v. Secretary of the Dep't of Children & Family Servs.*, 358 F.3d 804, 818 (11th Cir. 2004); *Steffan v. Perry*, 41 F.3d 677, 684 n.3 (D.C. Cir. 1994) (en banc); *Woodward v. United States*, 871 F.2d 1068, 1076 (Fed. Cir. 1989). The unanimity of these decisions is borne of the fact that gays and lesbians clearly fail two of the requirements for heightened equal protection scrutiny—immutability and political powerlessness—as the evidence in this case clearly demonstrated.

*Third*, any determination that the definition of marriage as a union of a man and a woman constitutes sex discrimination under the equal protection clause would run counter to binding authority and be erroneous. *See Baker v. Nelson*, 409 U.S. 810 (1972); *see also Wilson v. Ake*, 354 F. Supp. 2d 1298, 1307-08 (M.D. Fla. 2005); *In re Kandu*, 315 B.R. 123, 143 (Bankr. W.D. Wash. 2004); *Singer v. Hara*, 522 P.2d 1187, 1192 (Wash. Ct. App. 1974). Simply put, defining marriage as the union of a man and a woman "does not discriminate on the basis of sex because it treats women and men equally." *Wilson*, 354 F. Supp. 2d at 1307-08. Indeed, in rejecting the same argument under the California Constitution, the California Supreme Court held that "[i]n light of the equality of treatment between genders," California's marriage laws "plainly do[] not constitute discrimination on the basis of sex as that concept is commonly understood." *In re Marriage Cases*, 183 P.3d 384, 436 (Cal. 2008).

*Fourth*, any conclusion that the age-old definition of marriage is *irrational* would also contravene binding authority. In *Adams v. Howerton*, 673 F.2d 1036 (9th Cir. 1982), the Ninth

3

Circuit held that denying marital status to same-sex couples satisfies rational basis review, recognizing that same-sex relationships, unlike opposite-sex relationships, "never produce offspring." 673 F.2d at 1042-43. There are numerous rational bases supporting Prop 8, but this distinction goes to the heart of the matter. Because only the relationship of a man and a woman can "produce offspring," such relationships uniquely implicate the vital societal interest in increasing the likelihood that children will be born to and raised by both their natural parents in stable, enduring family units. Same-sex relationships, by contrast, neither advance nor threaten this interest in the way that opposite-sex relations do. And when "the inclusion of one group promotes a legitimate governmental purpose, and the addition of other groups would not, [courts] cannot say that the statute's classification … is invidiously discriminatory." *Johnson v. Robison*, 415 U.S. 361, 383 (1974).

Furthermore, Prop 8 allows California to proceed with caution when considering fundamental changes to a vitally important social institution. Not only would redefining marriage to include same-sex couples eliminate California's ability to provide special recognition and support to those relationships that uniquely further the vital procreative interests marriage has traditionally served, it would indisputably change the public meaning of marriage. *See, e.g.*, Trial Tr. 313 (Cott) (so conceding). And such a redefinition of marriage will likely result in its further, and perhaps complete, deinstitutionalization. It is surely rational for the people of California to hesitate before embracing changes that may weaken the vital institution of marriage or its ability to further the important interests it has traditionally served.

*Finally*, any attempt to base a finding of irrationality on the purported subjective motivations of voters is foreclosed by Ninth Circuit case law clearly prohibiting such a "futile" and "impracticable" endeavor. *City of Las Vegas v. Foley*, 747 F.2d 1294, 1297 (9th Cir. 1984) (quotation marks omitted). The question of voter motivation is simply "not … an appropriate one for judicial inquiry." *Southern Alameda Spanish Speaking Org. v. Union City*, 424 F.2d 291, 295 (9th Cir. 1970).

## II. Irreparable Harm Will Result Absent a Stay.

"[I]t is clear that a state suffers irreparable injury whenever an enactment of its people … is

enjoined." *Coalition for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997); *see also New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers) ("[A]ny time a State is enjoined by a Court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). Further, absent an immediate stay of any ruling invalidating Prop 8, same-sex couples would be permitted to marry in the counties of Alameda and Los Angeles (and possibly throughout California). Same-sex marriages would be licensed under a cloud of uncertainty, and should Proponents succeed on appeal, any such marriages would be invalid *ab initio*. Indeed, in 2004, the City and County of San Francisco issued marriage licenses to same-sex couples, resulting in approximately 4,000 purported same-sex marriages in about one month's time. *See Lockyer v. City and County of San Francisco*, 95 P.3d 459, 465, 467 (Cal. 2004). The California Supreme Court held that San Francisco lacked authority for its actions, and ordered that "all same-sex marriages authorized, solemnized, or registered by the city officials must be considered void and of no legal effect from their inception." *Id*. at 495.[2]

Repeating that experience would inflict harm on the affected couples and place administrative burdens on the State.[3] Indeed, the Attorney General (no friend of Prop 8), opposed Plaintiffs' unsuccessful motion for a preliminary injunction for these reasons, arguing that the Court "should factor in the potential harm to a broad section of the general public from subsequent

---

[2] In *Strauss v. Horton*, 207 P.3d 48, 59 (Cal. 2009), the California Supreme Court held that Prop 8 did not retroactively invalidate same-sex marriages entered between that Court's decision in *In re Marriage Cases* and Prop 8's enactment. *Id*. at 119-22. Those marriages, however, were entered on the basis of the California Supreme Court's substantive interpretation of Prop 8, not a subsequently reversed trial court decision addressing the validity of that provision.

[3] *See, e.g., Strauss*, 207 P.3d at 122 (reasoning that retroactive application of Prop 8 would "disrupt thousands of actions taken in reliance on the *Marriage Cases* by these same-sex couples, their employers, their creditors, and many others, throwing property rights into disarray, destroying the legal interests and expectations of thousands of couples and their families, and potentially undermining the ability of citizens to plan their lives"); *Lockyer*, 95 P.3d at 498 (ordering San Francisco to: "(1) identify all same-sex couples to whom the officials issued marriage licenses, solemnized marriage ceremonies, or registered marriage certificates, (2) notify these couples that this court has determined that same-sex marriages that have been performed in California are void from their inception and a legal nullity, and that these officials have been directed to correct their records to reflect the invalidity of these marriage licenses and marriages, (3) provide these couples an opportunity to demonstrate that their marriages are not same-sex marriages and thus that the official records of their marriage licenses and marriages should not be revised, (4) offer to refund, upon request, all marriage-related fees paid by or on behalf of same-sex couples, and (5) make appropriate corrections to all relevant records.").

invalidation of possibly thousands of marriages, as well as the ongoing uncertainty about their validity that would undoubtedly persist until a *final determination by an appellate court*." Doc #34 at 13 (emphasis added).

### III. A Stay Will Not Subject Plaintiffs to Substantial Harm.

In contrast, a stay would at most subject Plaintiffs to a period of additional delay pending a final determination of whether they may enter a legally recognized marriage relationship. During this time Plaintiffs will have access to the rights and responsibilities of marriage through domestic partnership, *see* CAL. FAM. CODE § 297.5—a status Plaintiffs Stier and Perry already enjoy, *see* Trial Tr. 153:4-6.

It is not even clear that Plaintiffs would opt to marry if given the choice while appeal of this case is pending. Both Perry and Stier and Katami and Zarrillo could have gotten married before Prop 8 was enacted in 2008, but both couples chose not to. *See* Trial Tr. 80:2-3 (Zarrillo: He and Katami have been in a relationship for nine years.); Trial Tr. 169:16-170:11 (Stier: explaining why she and Perry did not get married in 2008). Indeed, Plaintiff Stier has admitted that she did not get married in 2008 because she did not "want any possibility of [marriage] being taken away from us" and thus told Perry to "wait until we know for sure that we can be permanently married." Trial Tr. 170:4-6. Such certainty, of course, will not be available in this case until all avenues for appeal have been exhausted. Further confirming their lack of urgency, Plaintiffs consented to this Court's decision not to grant their preliminary injunction motion, *see* July 2, 2009 Tr. of Hr'g at 12, and have been content to let more than a year go by while the parties conducted discovery, participated in trial, and awaited this Court's decision.

### IV. The Public Interest Weighs in Favor of a Stay.

"The State of California and its citizens have already confronted the uncertainty that results when marriage licenses are issued in a gender-neutral manner prior to the issuance of a final, judicial determination of legal and constitutional issues. The State and its citizens have a profound interest in not having to confront that uncertainty again." Administration's Opposition to Plaintiffs' Motion for Preliminary Injunction, Doc #33 at 2. Indeed, in denying Plaintiffs' request for a preliminary injunction, this Court recognized the wisdom of not "inject[ing] still further uncertainty

1   in [this] important area of concern and interest to the state and its citizens." Doc #76 at 5.
2   Likewise, such "uncertaint[y] … weigh[s] very heavily" in favor of staying a judgment invalidating
3   Prop 8 pending appeal. July 2, 2009 Tr. of Hr'g at 10, *see also id*. at 12 ("[T]his case is only
4   touching down in this court …. [W]hat happens here, in many ways, is only a prelude to what is
5   going to happen later.").

6   Further, by enacting Prop 22 in 2000 and Prop 8 in 2008, the people of California have declared clearly and consistently that the public interest lies with preserving the definition of marriage as the union of a man and a woman. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) ("[T]he district court should give due weight to the serious consideration of the public interest in this case that has already been undertaken by the responsible state officials in Washington, who unanimously passed the rules that are the subject of this appeal."); *Golden Gate Rest. Ass'n*, 512 F.3d at 1126-1127 ("[O]ur consideration of the public interest is constrained in this case, for the responsible public officials in San Francisco have already considered that interest. Their conclusion is manifested in the Ordinance that is the subject of this appeal."). And while it is always "in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy," *Burford v. Sun Oil Co.*, 319 U.S. 315, 318 (1943) (quotation marks omitted), such considerations are particularly weighty here, as "it is difficult to imagine an area more fraught with sensitive social policy considerations" than regulation of marriage, *Smelt v. County of Orange, California*, 447 F.3d 673, 681 (9th Cir. 2006). The people of California have expressed their "concerns and beliefs about this sensitive area" and "have defined what marriage is": "a consensual, contractual, personal relationship between a man and a woman, which is solemnized." *Id*. at 680 (quotation marks omitted). There is no basis for this Court to second-guess the people of California's considered judgment of the public interest.

## CONCLUSION

For the foregoing reasons, if the Court rules in favor of Plaintiffs, its judgment should be stayed pending appeal. Should the Court disagree, Proponents in the alternative request a limited seven-day stay of the Court's judgment to permit them to seek a stay pending appeal from the Ninth

7

1 | Circuit and, if necessary, the Supreme Court.

4 | Dated: August 3, 2010

>     COOPER AND KIRK, PLLC
>     ATTORNEYS FOR DEFENDANT-INTERVENORS
>     DENNIS HOLLINGSWORTH, GAIL J. KNIGHT,
>     MARTIN F. GUTIERREZ, MARK A. JANSSON, AND
>     PROTECTMARRIAGE.COM – YES ON 8, A PROJECT
>     OF CALIFORNIA RENEWAL
>
>     By:   /s/Charles J. Cooper
>           Charles J. Cooper