FILED

**FOR PUBLICATION**

JAN 04 2011

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

KRISTIN M. PERRY; SANDRA B.
STIER; PAUL T. KATAMI; JEFFREY J.
ZARRILLO,

               Plaintiffs - Appellees,

CITY AND COUNTY OF SAN
FRANCISCO,

               Plaintiff - Intervenor -
Appellee,

   v.

ARNOLD SCHWARZENEGGER, in his
official capacity as Governor of California;
EDMUND G. BROWN, Jr., in his official
capacity as Attorney General of California;
MARK B. HORTON, in his official
capacity as Director of the California
Department of Public Health & State
Registrar of Vital Statistics; LINETTE
SCOTT, in her official capacity as Deputy
Director of Health Information & Strategic
Planning for the California Department of
Public Health; PATRICK O'CONNELL,
in his official capacity as Clerk-Recorder
for the County of Alameda; DEAN C.
LOGAN, in his official capacity as
Registrar-Recorder/County Clerk for the
County of Los Angeles,

No. 10-16696

D.C. No. 3:09-cv-02292-VRW
Northern District of California,
San Francisco

**MEMORANDUM
REGARDING MOTION TO
DISQUALIFY**

Defendants,

and

DENNIS HOLLINGSWORTH; GAIL J.
KNIGHT; MARTIN F. GUTIERREZ;
HAK-SHING WILLIAM TAM; MARK
A. JANSSON;
PROTECTMARRIAGE.COM - YES ON
8, A PROJECT OF CALIFORNIA
RENEWAL, as official proponents of
Proposition 8,

Defendants - Intervenors -
Appellants.

REINHARDT, Circuit Judge.

Shortly before the hearing of this appeal, the defendants-intervenors-appellants ("Proponents") requested that I recuse myself under 28 U.S.C. § 455(a) and § 455(b)(5)(iii).  Under § 455(a), I must recuse myself if "a reasonable person with knowledge of all the facts would conclude that [my] impartiality might reasonably be questioned."  *United States v. Nelson*, 718 F.2d 315, 321 (9th Cir. 1983).  Under § 455(b)(5)(iii), my recusal is required if my wife has an "interest" that could be "substantially affected" by the outcome of this proceeding.  I denied Proponents' motion with a brief statement and promised a further explanation in

2

due course.[1]  Now that our panel has completed the immediately pressing matters

regarding the appeal, I provide my further reasons.

## I

The chief basis for the recusal motion appears to be my wife's beliefs, as

expressed in her public statements and actions, both individually and in her

capacity as Executive Director of the American Civil Liberties Union of Southern

California (ACLU/SC).  She has held that position for 38 years, during 20 of which

we have been married, although over one year ago she announced her retirement

effective next month.

My wife's views, public or private, as to any issues that may come before

this court, constitutional or otherwise, are of no consequence.  She is a strong,

independent woman who has long fought for the principle, among others, that

women should be evaluated on their own merits and not judged in any way by the

deeds or position in life of their husbands (and vice versa).  I share that view and,

in my opinion, it reflects the status of the law generally, as well as the law of

recusal, regardless of whether the spouse or the judge is the male or the female.

---

[1] The parties were notified of the composition of the panel only a week
before the hearing.  The recusal request was filed two days later and I issued my
denial order the following morning.

My position is the same in the specific case of a spouse whose views are expressed in the capacity of an officer, director, or manager of a public interest or advocacy organization that takes positions or supports legislation or litigation or other actions of local, state, or national importance.

Proponents' contention that I should recuse myself due to my wife's opinions is based upon an outmoded conception of the relationship between spouses. When I joined this court in 1980 (well before my wife and I were married), the ethics rules promulgated by the Judicial Conference stated that judges should ensure that their wives not participate in politics. I wrote the ethics committee and suggested that this advice did not reflect the realities of modern marriage–that even if it were desirable for judges to control their wives, I did not know many judges who could actually do so (I further suggested that the Committee would do better to say "spouses" than "wives," as by then we had as members of our court Judge Mary Schroeder, Judge Betty Fletcher, and Judge Dorothy Nelson). The committee thanked me for my letter and sometime later changed the rule.[2] That time has passed, and rightly so. In 2011, my wife and I

---

[2] Judge Roger J. Miner of the Second Circuit has recounted a similar experience:

When I first became a judge, I acquainted my wife with then-

(continued...)

share many fundamental interests by virtue of our marriage, but her views

regarding issues of public significance are her own, and cannot be imputed to me,

no matter how prominently she expresses them.[3]  It is her view, and I agree, that

she has the right to perform her professional duties without regard to whatever my

views may be, and that I should do the same without regard to hers.  Because my

wife is an independent woman, I cannot accept Proponents' position that my

impartiality might reasonably be questioned under § 455(a) because of her

opinions or the views of the organization she heads.

Nor can I accept the argument that my wife's views constitute an "interest"

that could warrant my recusal under § 455(b)(5)(iii), as such a reading would

require judges to recuse themselves whenever they know of a relative's strongly

---

[2](...continued)
applicable 1972 ABA Model Code, which provided that a judge
"should encourage members of his [note the archaic "his"] family to
adhere to the same standards of political conduct that apply to him."
My wife, a well-known political activist at that time, responded:
"Consider me encouraged," and went on to lead some statewide and
national campaigns.  The encouragement to adhere to judicial conduct
rules now applies only in regard to the judge's own political
campaign.

Roger J. Miner, *Judicial Ethics in the Twenty-First Century: Tracing the Trends*,
32 Hofstra L. Rev. 1107, 1130-31 (2004) (brackets in original).

[3] *See generally* Mary Matalin and James Carville, All's Fair: Love, War, and
Running for President 63 (Paperback ed. 1995).

5

held opinions, whether publicly expressed or not.  *See* § 455(b)(5)(iii) (requiring

recusal whenever a relative "[i]s known *by the judge* to have an interest that could

be substantially affected by the outcome of the proceeding").  I likewise cannot

conceive how such an "interest" could be said to exist by virtue of the fact that the

ACLU/SC as an organization has expressed positions regarding the subject at issue

in this case.  The ACLU/SC is devoted to advocating for numerous social issues,

many of which come before the court, of which same-sex marriage is but one.  To

suggest that because my wife heads the ACLU/SC she has an "interest" cognizable

under § 455(b)(5)(iii) in cases regarding which the organization has expressed a

position would be to suggest that I must recuse myself from cases implicating the

constitutionality of the death penalty, school prayer, and affirmative action, among

many others.  Moreover, because § 455(b)(5)(iii) applies not only to the interests of

a judge's spouse, but to the interests of any "person within the third degree of

relationship to either" a judge or a judge's spouse, § 455(b)(5), such a reading

would require a judge's recusal when various other relatives, such as great-

grandchildren and nephews-in-law, head a public interest organization that has

expressed a position concerning a case.  I cannot agree that § 455(b)(5)(iii) requires

judges to recuse themselves whenever a relative, close or otherwise, plays a

prominent role in a public interest organization that, as part of a broad and general

mission, takes a position on a subject that is at issue in a case, or on a case itself.

## II

## A

Proponents additionally suggest that I must recuse myself due to specific ACLU/SC litigation activities. I have long had a policy regarding any conceivable conflict that might result from such activities. I do not participate in any actions by this court when the organization of which my wife is the Executive Director makes any appearance or files any brief, amicus or otherwise, before this court. The clerk's office was notified of this policy many years ago and it has been implemented in numerous cases. In fact, it is impossible to know how many times I have actually recused myself from such cases because the Clerk's office automatically assigns cases covered by my policy to panels of which I am not a member rather than to a panel I am on, as a result of this directive. Later, if there is an en banc call, I advise the Clerk to record the fact that I am recused and to notify the court.

In regard to the ACLU/SC's past litigation activities, Proponents first argue that my recusal is required due to the ACLU/SC's participation in prior California state court cases pertaining to same-sex marriage. These were cases that did not involve the federal constitutional issue raised in the case before us–the only

substantive issue presented here.  Recusal is not required merely because a relative was or is involved in other litigation concerning the same general subject matter that is before the court.  *See Microsoft Corp. v. United States*, 530 U.S. 1301 (2000) (statement of Rehnquist, C.J.) (declining to recuse from Microsoft antitrust case under either § 455(a) or § 455(b)(5)(iii) where son represented Microsoft in other antitrust matters that were potentially affected by case's outcome).  That the ACLU/SC participated in proceedings before a different court, that involved legal questions distinct from the one now before us–cases that were concluded before the appeal of this suit–neither provides a basis to question my impartiality nor creates an "interest" of my wife's that could be "substantially affected" by these proceedings.

Proponents further argue that my recusal is required due to the ACLU/SC's limited activities in the court below.  Proponents rely on two connections to the litigation that is now before this court.   The first such action to which Proponents point is that my wife and the ACLU/SC's then-legal director attended a meeting with one of Plaintiffs' lawyers and a supporter of Plaintiffs' lawsuit prior to the filing of that action in the district court.  At that meeting the ACLU/SC was asked to support the lawsuit and vigorously declined.  Surely, that provides no cause for my recusal.

8

The second is that recusal is required because the ACLU/SC ultimately joined in two amicus briefs and an unsuccessful intervention motion–the latter on behalf of several Bay Area gay rights groups–filed in the district court by six civil rights organizations and signed by the lawyer for one of the other groups.  The two briefs that the ACLU/SC joined were among twenty-four amicus briefs filed in the district court on behalf of 122 organizations and private individuals.  The two briefs were not cited in any way in the district court's findings of fact and law, and the ACLU/SC had no further connection with the case in the district court and none at all as the case came before us.[4]

This limited participation in the district court does not endow my wife or the ACLU-SC with any "interest that could be substantially affected by the outcome of the proceeding." § 455(b)(5)(iii).  Proponents do not explain the nature of the interest that they believe my wife or the ACLU/SC possesses by virtue of the ACLU/SC's tangential filings in the district court, and no such interest exists.  At best, it could be said that through the filings the ACLU/SC has made clear its position regarding how this case should be decided.  However, as explained above, the fact that my wife heads an organization that has adopted a position concerning

---

[4] As a matter of interest, 49 amicus briefs were filed in this court, on behalf of 282 individuals and organizations.

this case, whether the position is expressed by my wife or in any other manner, cannot warrant my recusal. And the suggestion that either my wife or the ACLU/SC could benefit in any tangible way from this court's ultimate decision simply because the ACLU/SC signed on to peripheral lower court filings is highly "unreasonable and speculative." *Microsoft Corp.*, 530 U.S. at 1302 (statement of Rehnquist, C.J.).[5]  This conclusion is consistent with the recusal policy adopted by seven of the nine then-sitting Supreme Court Justices, which does not require recusal under § 455(b)(5)(iii) due to a relative's participation in lower court proceedings absent certain "special factor[s]" not present here, such as the relative's service as lead counsel below or the possibility that a relative's compensation could be substantially affected by the case's outcome.  Statement of

---

[5] Had the ACLU/SC filed a brief in this court, it could conceivably be argued that the organization had an interest in the outcome of our deliberations, on the theory that it could then seek to claim a portion of the credit for any favorable decision this court issued in order to attempt to raise funds or solicit new members. Although I find such arguments highly questionable, in order to avoid any possible claim of conflict of interest I have, as stated above, always recused myself from cases in which the ACLU/SC participated in any way in *this* court, including filing a brief, amicus or otherwise.  However, even this tenuous "interest" is not present where, as here, the ACLU-SC was one of 122 organizations and individuals to have joined an amicus brief in the lower court, but made no filing of any kind with this court.  The lower court filings could under no circumstances have created an "interest" cognizable under § 455(b)(5)(iii), let alone an "interest" that could have been "substantially affected by the outcome of the proceeding." § 455(b)(5)(iii).

10

Recusal Policy, 114 S. Ct. 52, 53 (1993).[6]  The policy is based on the Justices'
construction of § 455(b)(5)(iii), and makes clear that under that provision no
recusal is required where, as here, a relative's participation in a lower court
proceeding had no substantial effect on any interest held by that relative.  Here,
that clearly was the case with respect to the ACLU's actions in the lower court.  In
sum, my wife neither had an interest cognizable under § 455(b)(5)(iii) nor could
any such interest be substantially affected by the outcome of the case in this court.

**B**

Nor does § 455(a) require recusal.  It is significant that none of § 455(b)(5)'s
criteria for recusal based on a family member's involvement in a case applies here.[7]
As the Supreme Court has explained,

> it is unreasonable to interpret § 455(a) (unless the language requires
> it) as implicitly eliminating a limitation explicitly set forth in § 455(b).
> It would obviously be wrong, for example, to hold that "impartiality

---

[6] The Justices' recusal policy emphasizes that "one unnecessary recusal impairs the functioning of the Court," *id.*, a consideration that applies to this court's proceedings only to the extent that an en banc vote might ultimately be affected by a judge's unnecessary recusal.  However, because the Court's conclusion that a relative's participation in lower court proceedings does not merit a Justice's recusal absent "special factors" is based on its construction of the recusal statute, it is clearly applicable to the recusal decision of this court's judges.

[7] That is to say, that my wife is not a party to this case, § 455(b)(5)(i); is not a lawyer in this proceeding, § 455(b)(5)(ii); and does not have an interest that could be substantially affected by this proceeding's outcome, § 455(b)(5)(iii).

11

could reasonably be questioned" simply because one of the parties is
in the fourth degree of relationship to the judge. Section 455(b)(5),
which addresses the matter of relationship specifically, ends the
disability at the third degree of relationship, and that should obviously
govern for purposes of § 455(a) as well.

*Liteky v. United States*, 510 U.S. 540, 553 (1994). Congress gave careful

consideration to the question of when a judge must recuse himself due to a

relative's participation and, in § 455(b)(5), identified the specific circumstances in

which a judge must do so. Section 455(a) cannot be read so broadly as to render

that determination meaningless by proscribing under that provision what is

permissible under § 455(b)(5). *Cf. Baker & Hostetler LLP v. U.S. Dep't of*

*Commerce*, 471 F.3d 1355, 1357-58 (D.C. Cir. 2006) (Kavanaugh, J., On Motion

for Recusal) (concluding that because "[i]n § 455(b)(3) . . . Congress clearly and

specifically addressed the effect of prior government service on a judge's recusal

obligations," recusal under § 455(a) due to prior government service may be

required only under "rare and extraordinary circumstances.").

That is not to say that there could be no special factors or unforeseeable

circumstances that might render § 455(a) applicable where Congress, in adopting

the limitations of § 455(b)(5), failed to consider certain types of actions or where

new practices have arisen due to changes in the practice of law or other societal

developments. Proponents point to no such special factors or unforseen, let alone

12

unforeseeable circumstances here, and none exist of which I am aware. However, even if one were to ignore the existence of clear rules governing a case such as this in § 455(b)(5), my recusal under § 455(a) would still be appropriate only if a reasonable person with knowledge of all the facts would *reasonably* believe that, by virtue of my marriage, I might approach and decide this case differently than I would have otherwise approached and decided it. *See Cheney v. Dist. Ct.*, 541 U.S. 913, 928-29 (2004) (Memorandum of Scalia, J.); *Nelson*, 718 F.2d at 321. As stated above, my wife has no "interest" in the outcome of this case that might be substantially affected by its outcome, over and beyond the interest of any American with a strong view concerning the social issues that confront this nation. Similarly, the organization she heads, not having participated in any filings before this court, has no more to gain from the outcome of this case than any other person or entity with strong views on the subject but not directly involved with the litigation.[8] As to the fact of my wife's views on the subject before us or any other

---

[8] As noted, *supra* at 6-7, I recuse myself as a matter of personal policy whenever the organization my wife heads appears or files an amicus brief in the court on which I sit. I do so to avoid an appearance that the organization might benefit from a decision in which I play a part; as explained *supra* n.5, no such benefit and no such appearance could arise in a case such as this where the organization does not appear before this court in any way or manner, and where its only participation in the district court was as one of 122 organizations and individuals to sign on to an amicus brief.

13

subject that may come before us, or the views of any organization she heads, she is an independent person who need not obtain my approval or agreement to advocate for whatever social causes she chooses. The views are hers, not mine, and I do not in any way condition my opinions on the positions she takes regarding any issues. Therefore, a reasonable person with full knowledge of all the facts would not reasonably believe that I would approach a case in a partial manner due to her independent views regarding social policy, whether those views are publicly expressed and advocated for, or not, and whether advocated for by her in her private capacity or in her capacity as head of the ACLU/SC. I have been a federal judge for 30 years and have, during that time, publicly expressed my views regarding the constitution and its meaning on many occasions, including a number that predate my marriage. *See, e.g.*, Stephen R. Reinhardt, *Symposium: The Conflict Between Text and Precedent in Constitutional Adjudication*, 73 Cornell L. Rev. 434 (1988). A reasonable person familiar with my judicial record throughout my career, and the other facts relevant to this recusal inquiry, would not reasonably believe that either my wife's beliefs or her organization's filings in the court below would play any role whatsoever in my handling of the present case. I therefore decline to recuse myself under § 455(a).

### III

14

It is, indeed, important that judges be and appear to be impartial. It is also important, however, that judges not recuse themselves unless required to do so, or it would be too easy for those who seek judges favorable to their case to disqualify those that they perceive to be unsympathetic merely by publicly questioning their impartiality. *See* H.R. Rep. No. 93-1453 (1974) (providing legislative history of federal recusal statute) ("At the same time, in assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision."). Were I to be recused because of the facts Proponents cite, it would not be merely from serving on the present panel but from voting on whether to rehear the case en banc and taking part in any en banc proceedings held by this court. My wife has no tangible interest in this case's outcome, and I do not believe that my impartiality in this case can reasonably be questioned on the basis of either her public statements or the ACLU/SC's involvement in any judicial proceedings. For these reasons, I deny Proponents' motion.