FILED

JAN 04 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| KRISTIN M. PERRY; SANDRA B. STIER; PAUL T. KATAMI; JEFFREY J. ZARRILLO, <br><br>        Plaintiffs - Appellees, <br><br> CITY AND COUNTY OF SAN FRANCISCO, <br><br>        Plaintiff - Intervenor - Appellee, <br><br>  v. <br><br> ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, Jr., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the California Department of Public Health & State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles, | No. 10-16696 <br><br> D.C. No. 3:09-cv-02292-VRW <br> Northern District of California, <br> San Francisco <br><br> **CONCURRENCE TO THE CERTIFICATION ORDER AND PER CURIAM OPINION** |

>        Defendants,
>
>   and
>
> DENNIS HOLLINGSWORTH; GAIL J. KNIGHT; MARTIN F. GUTIERREZ; HAK-SHING WILLIAM TAM; MARK A. JANSSON; PROTECTMARRIAGE.COM - YES ON 8, A PROJECT OF CALIFORNIA RENEWAL, as official proponents of Proposition 8,
>
>            Defendants - Intervenors - Appellants.

| | |
|---|---|
| KRISTIN M. PERRY; SANDRA B. STIER; PAUL T. KATAMI; JEFFREY J. ZARRILLO, | No. 10-16751 |
| | D.C. No. 3:09-cv-02292-VRW |
| Plaintiffs - Appellees, | |
| CITY AND COUNTY OF SAN FRANCISCO, | |
| Plaintiff - Intervenor - Appellee, | |
| v. | |
| ARNOLD SCHWARZENEGGER, in his official capacity as Governor of California; EDMUND G. BROWN, Jr., in his official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the California Department of Public Health & State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; DEAN C. LOGAN, in his official capacity as Registrar-Recorder/County Clerk for the County of Los Angeles, | |
| Defendants, | |
| DENNIS HOLLINGSWORTH; GAIL J. | |

3

| |
|---|
| KNIGHT; MARTIN F. GUTIERREZ; MARK A. JANSSON; PROTECTMARRIAGE.COM - YES ON 8, A PROJECT OF CALIFORNIA RENEWAL, as official proponents of Proposition 8; HAK-SHING WILLIAM TAM, |
| Defendants - Intervenor, |
| and |
| COUNTY OF IMPERIAL; THE BOARD OF SUPERVISORS OF THE COUNTY OF IMPERIAL; ISABEL VARGAS, In her official capacity as Deputy Clerk/Deputy Commissioner of Civil Marriages for the County of Imperial, |
| Movants - Appellants. |

REINHARDT, Circuit Judge, concurring.

Today we file two orders in the appeals regarding the constitutionality of California's Proposition 8, which provides, "Only marriage between a man and a woman is valid or recognized in California." Put differently, the proposition prohibits same-sex marriage. Marriage between individuals of the same sex is a matter that is highly controversial in this country and in which the American people have a substantial interest. Accordingly, these appeals present a question

4

under the Fourteenth Amendment of the United States Constitution that is of importance to the entire public. Oral argument before this court was viewed on television and the Internet by more people than have ever watched an appellate court proceeding in the history of the Nation,[1] and by innumerable law students across the country.[2]

Today's two orders involve a procedural question known as "standing." The public may wonder why that issue is of such great importance, and what the significance of our standing decisions is. For that reason, while I agree entirely with our two dispositions, both of which are filed in the names of all three of us who are considering the appeals and both of which represent our unanimous views, I believe it desirable to set forth a few explanatory remarks of my own.

The standing problem arises out of a trend in our judicial system over the past few decades. It is a trend that emphasizes technical rules over deciding cases

---

[1] *See, e.g.*, Tim Rutten, *Monday's Must-See TV*, L.A. TIMES (Dec. 7, 2010); Ashby Jones, *On the Prop. 8 Arguments and the Cameras-in-the-Court Debate*, WALL STREET J. LAW BLOG (Dec. 7, 2010); Lisa Leff, *Televised Gay Marriage Hearing Draws Wide Audience*, ASSOCIATED PRESS (Dec. 6, 2010).

[2] *See, e.g.*, Public Information Office, U.S. Court of Appeals for the Ninth Circuit, Proposition 8 Arguments: Coming to a Law School Near You (Dec. 1, 2010), *available at* http://www.ca9.uscourts.gov/datastore/general/2010/12/01/Prop8_LawSchools.pdf .

on the merits, and indeed over the merits themselves.  Our system now increasingly raises obstacles such as standing, mootness, ripeness, abstention, and other procedural bars that preclude courts from deciding cases on the merits, and as a result increasingly limits the access of individuals to the courts.  Members of the public familiar with cases such as *Brown v. Board of Education* and *Roe v. Wade* might have thought that the constitutionality of Proposition 8 could readily be decided when a legal challenge was made to it in federal court.  However, in these times, before we are free to decide such important questions the parties must often overcome difficult procedural barriers.  Why Congress and the Supreme Court have required them to do so is a subject for another day, although I have made my views on the subject clear elsewhere.³  Here the question is simply whether there is standing.

The standing problem, under current Supreme Court doctrine, affects this case in several ways, all relating to the question of whether there is an intervenor opposed to the district court's decision that has the right to appeal it.  Should it be

---

³ *See, e.g.*, Stephen Reinhardt, *Life to Death: Our Constitution and How It Grows*, 44 U.C. DAVIS L. REV. 391 (2010); Stephen Reinhardt, *The Anatomy of an Execution: Fairness vs. Process*, 74 N.Y.U. L. REV. 313 (1999); Stephen Reinhardt, *The Supreme Court, the Death Penalty, and the* Harris *Case*, 102 YALE L.J. 205 (1992); Stephen Reinhardt, *Limiting Access to the Federal Courts: Round Up the Usual Victims*, 6 WHITTIER L. REV. 967 (1984).

held ultimately that there is no such intervenor, the consequences are unclear, other than that we would be unable to review the district court decision on the merits; what would follow thereafter could conceivably be a matter for future decision by this court. All I can say now is that the issues concerning standing were wholly avoidable in this case.

There can be little doubt that when the Plaintiffs filed this action their purpose was to establish that there was a constitutional right to gay marriage, and to do so by obtaining a decision of the Supreme Court to that effect.[4] Yet, according to what their counsel represented to us at oral argument, the complaint they filed and the injunction they obtained determines only that Proposition 8 may not be enforced in two of California's fifty-eight counties. They next contend that the injunction may not be appealed but that it may be extended to the remaining fifty-six counties, upon the filing of a subsequent lawsuit by the Attorney General

---

[4] *See, e.g.*, Margaret Talbot, *A Risky Proposal: Is It Too Soon to Petition the Supreme Court on Gay Marriage*, THE NEW YORKER, Jan. 18, 2010, at 40; Jo Becker, *A Conservative's Road to Same-Sex Marriage Advocacy*, N.Y. TIMES, Aug. 18, 2009, at A1 ("[B]inders stuffed with briefs, case law and notes . . . are filled with arguments Mr. Olson hopes will lead to a Supreme Court decision with the potential to reshape the legal and social landscape along the lines of cases like Brown v. Board of Education and Roe v. Wade: the legalization of same-sex marriage nationwide."); Jesse McKinley, *Bush v. Gore Foes Join to Fight Gay Marriage Ban*, N.Y. TIMES, May 27, 2009, at A1 ("In the end, the two lawyers suggested, the case might take them, again, to the United States Supreme Court.").

7

in state court against the other County Clerks.  Whether Plaintiffs are correct or not, it is clear that all of this would have been unnecessary and Plaintiffs could have obtained a statewide injunction had they filed an action against a broader set of defendants, a simple matter of pleading.  Why preeminent counsel and the major law firms of which they are a part failed to do that is a matter on which I will not speculate.

Next, the problem of standing would have been eliminated had the Governor or the Attorney General defended the initiative, as is ordinarily their obligation.  Because they believed Proposition 8 to be unconstitutional, they did not do so here.  Whether their decision not to defend the initiative was proper is a matter of some debate, although I sympathize with their view that in extraordinary circumstances they possess that right.  Once again, however, I express no ultimate view on the question.

In any event, had Plaintiffs sued a broader class of defendants, there clearly would have been parties who would have had standing to appeal the district court's decision, and who likely would have done so.  Even had they not, it might not have been difficult for those interested in defending the proposition to find an intervenor with standing.  Imperial County, one of the counties that voted in favor of Proposition 8, sought to intervene, but for some unknown reason attempted to do

8

so through a deputy clerk who asserted her own rights instead of through the Clerk who might have asserted hers. Again, this was a most puzzling legal decision. While we have not ruled as to whether the Clerk would have had standing, we have held that a deputy clerk does not. There are forty-two counties that voted in favor of Proposition 8. Surely had those seeking an intervenor contacted other of those counties instead of relying on Imperial County they could have found a Clerk who would have presented the issue whether a *Clerk* rather than a deputy has standing.

None of this means that ultimately there is no standing in this case. Because of a United States Supreme Court ruling regarding the availability of standing to proponents of initiatives, *Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997), we have certified to the Supreme Court of California the question of an initiative proponent's authority and interests under California law. Although that matter must be decided by the Supreme Court of California, Proponents advance a strong argument on this point. Thus, in the end, there may well be standing to maintain this appeal, and the important constitutional question before us may, after all, be decided by an appellate court – ours, the Supreme Court, or both – and may apply to California as a whole, instead of by being finally decided by a trial court, or by default, in only two counties or in none. As a result, the technical barriers and the inexplicable manner in which the parties have conducted this litigation may

in the end not preclude an orderly review by the federal courts of the critical constitutional question that is of interest to all Americans, and particularly to the millions of Californians who voted for Proposition 8 and the tens of thousands of same-sex couples who wish to marry in that state. In the meantime, while we await further word from the Supreme Court of California, I hope that the American public will have a better understanding of where we stand today in this case, if not why.