COOPER AND KIRK, PLLC
Charles J. Cooper (DC Bar No. 248070)*
*ccooper@cooperkirk.com*
David H. Thompson (DC Bar No. 450503)*
*dthompson@cooperkirk.com*
Howard C. Nielson, Jr. (DC Bar No. 473018)*
*hnielson@cooperkirk.com*
Nicole J. Moss (DC Bar No. 472424)*
*nmoss@cooperkirk.com*
Peter A. Patterson (OH Bar No. 0080840)*
*ppatterson@cooperkirk.com*
1523 New Hampshire Ave. N.W., Washington, D.C. 20036
Telephone: (202) 220-9600, Facsimile: (202) 220-9601

LAW OFFICES OF ANDREW P. PUGNO
Andrew P. Pugno (CA Bar No. 206587)
*andrew@pugnolaw.com*
101 Parkshore Drive, Suite 100, Folsom, California 95630
Telephone: (916) 608-3065, Facsimile: (916) 608-3066

ALLIANCE DEFENSE FUND
Brian W. Raum (NY Bar No. 2856102)*
*braum@telladf.org*
James A. Campbell (OH Bar No. 0081501)*
*jcampbell@telladf.org*
15100 North 90th Street, Scottsdale, Arizona 85260
Telephone: (480) 444-0020, Facsimile: (480) 444-0028

ATTORNEYS FOR DEFENDANT-INTERVENORS DENNIS HOLLINGSWORTH,
GAIL J. KNIGHT, MARTIN F. GUTIERREZ, MARK A. JANSSON,
and PROTECTMARRIAGE.COM – YES ON 8, A
PROJECT OF CALIFORNIA RENEWAL

* Admitted *pro hac vice*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO, <br><br> Plaintiffs, <br><br> CITY AND COUNTY OF SAN FRANCISCO, <br><br> Plaintiff-Intervenor, <br><br> v. <br><br> EDMUND G. BROWN, JR., in his official capacity as Governor of California; KAMALA | CASE NO. 09-CV-2292 JW <br><br> **DEFENDANT-INTERVENORS DENNIS HOLLINGSWORTH, GAIL J. KNIGHT, MARTIN F. GUTIERREZ, MARK A. JANSSON, AND PROTECTMARRIAGE.COM'S MOTION TO VACATE JUDGMENT** <br><br> Chief Judge James Ware <br><br> Date: July 11, 2011 <br> Time: 9:00 a.m. |

| | |
|---|---|
| 1 | D. HARRIS, in her official capacity as Attorney |
| 2 | General of California; MARK B. HORTON, in |
| | his official capacity as Director of the California |
| 3 | Department of Public Health and State Registrar |
| | of Vital Statistics; LINETTE SCOTT, in her |
| 4 | official capacity as Deputy Director of Health |
| | Information & Strategic Planning for the |
| 5 | California Department of Public Health; |
| | PATRICK O'CONNELL, in his official capacity |
| 6 | as Clerk-Recorder for the County of Alameda; |
| | and DEAN C. LOGAN, in his official capacity |
| 7 | as Registrar-Recorder/County Clerk for |
| 8 | the County of Los Angeles, |

Location:  Courtroom 5, 17th Floor

9                                    Defendants,

10       and

11       PROPOSITION 8 OFFICIAL PROPONENTS
         DENNIS HOLLINGSWORTH, GAIL J.
12       KNIGHT, MARTIN F. GUTIERREZ, HAK-
         SHING WILLIAM TAM, and MARK A.
13       JANSSON; and PROTECTMARRIAGE.COM –
         YES ON 8, A PROJECT OF CALIFORNIA
14       RENEWAL,

15                                    Defendant-Intervenors.

16

17       Additional Counsel for Defendant-Intervenors

18

19       ALLIANCE DEFENSE FUND
         Jordan W. Lorence (DC Bar No. 385022)*
         *jlorence@telladf.org*
20       Austin R. Nimocks (TX Bar No. 24002695)*
         *animocks@telladf.org*
21       801 G Street NW, Suite 509, Washington, D.C. 20001
         Telephone: (202) 393-8690, Facsimile: (202) 347-3622
22
         * Admitted *pro hac vice*
23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2   TABLE OF AUTHORITIES ........................................................................................................ ii

3   INTRODUCTION ................................................................................................................. 1

4   BACKGROUND .................................................................................................................. 6

5   ARGUMENT ....................................................................................................................... 8

6   I.   Chief Judge Walker Was Disqualified from Participating in This Case Under Section 455. ....... 8

7   II.  The Section 455 Violations Require This Court to Vacate the Judgment and All Orders Entered

8        in This Case ................................................................................................................ 12

9        A.   The Risk of Injustice to Proponents Favors Vacating the Judgment ................................. 13

10       B.   Upholding the Judgment Will Create a Significant Risk of Injustice in Other Cases ........ 16

11       C.   Upholding the Judgment Will Create a Significant Risk of Undermining the Public's

12            Confidence in Judicial Proceedings .................................................................. 17

13   CONCLUSION .................................................................................................................... 18

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

**CASES**

*Adams v. Howerton,*
> 673 F.2d 1036 (9th Cir. 1982) ........................................................................ 15

*American Textile Mfrs. Inst., Inc. v. The Limited, Inc.,*
> 190 F.3d 729 (6th Cir. 1999) ......................................................................... 13

*Baker v. Nelson,*
> 409 U.S. 810 (1972) ....................................................................................... 15

*Baker v. Nelson,*
> 191 N.W.2d 185 (Minn. 1971) ...................................................................... 15

*Baker v. Wade,*
> 769 F.2d 289 (5th Cir. 1985) ......................................................................... 15

*Ben-Shalom v. Marsh,*
> 881 F.2d 454 (7th Cir. 1989) ......................................................................... 15

*Citizens for Equal Prot. v. Bruning,*
> 455 F.3d 859 (8th Cir. 2006) ......................................................................... 15

*Clemens v. United States Dist. Court for Cent. Dist. of Cal.,*
> 428 F.3d 1175, 1178 (9th Cir. 2005) ...................................................... 11, 13

*Cook v. Gates,*
> 528 F.3d 42 (1st Cir. 2008) ........................................................................... 15

*Dean v. District of Columbia,*
> 653 A.2d 307 (D.C. Ct. App. 1995) .............................................................. 15

*Dragovich v. U.S. Dep't of the Treasury,*
> --- F. Supp. 2d --- , 2011 WL 175502 (N.D. Cal. Jan. 18, 2011) ............... 17

*Equality Found. v. City of Cincinnati,*
> 128 F.3d 289, 294 (6th Cir. 1997) ................................................................ 15

*First Interstate Bank of Az., N.A. v. Murphy, Weir & Butler,*
> 210 F.3d 983 (9th Cir. 2000) ......................................................................... 13

ii

*Green v. Branson*,

108 F.3d 1296 (10th Cir. 1997) ........................................................................... 13

*Herrington v. Sonoma County*,

834 F.2d 1488 (9th Cir. 1987) ............................................................................... 10

*High Tech Gays v. Defense Indus. Sec. Clearance Office*,

895 F.2d 563 (9th Cir. 1990) ................................................................................. 15

*Hollingsworth v. Perry*,

130 S. Ct. 705 (2010) ..................................................................... 4, 6, 14, 16, 18

*In re Boston's Children First*,

264 F.3d 164 (1st Cir. 2001) ................................................................................. 11

*In re Kensington Int'l Ltd.*,

368 F.3d 289 (3d Cir. 2004) ................................................................................... 8

*In re Marriage of J.B. and H.B.*,

326 S.W.3d 654 (Tex. Ct. App. 2010) ................................................................. 15

*In re Murchison*,

349 U.S. 133 (1955) .......................................................................................... 1, 5

*In re School Asbestos Litig.*,

977 F.2d 764 (3d Cir. 1992) ................................................................................. 11

*Johnson v. Johnson*,

385 F.3d 503 (5th Cir. 2004) ............................................................................... 15

*Jones v. Hallahan*,

501 S.W.2d 588 (Ky. 1973) ................................................................................. 15

*Liljeberg v. Health Servs. Acquisition Corp.*,

486 U.S. 847 (1988) .................................................................................... *passim*

*Liteky v. United States*,

510 U.S. 540 (1994) ..................................................................... 4, 5, 8, 10, 12

*Lofton v. Secretary of the Dep't of Children & Family Servs.*,

358 F.3d 804 (11th Cir. 2004) ............................................................................. 15

iii

*Nichols v. Alley,*

    71 F.3d 347 (10th Cir. 1995) .......................................................................................... 11

*Parker v. Connors Steel Co.,*

    855 F.2d 1510 (11th Cir. 1988) ...................................................................................... 11

*Perry v. Schwarzenegger,*

    591 F.3d 1147 (9th Cir. 2009) .................................................................................. 4, 14

*Perry v. Schwarzenegger,*

    No. 10-16696, 2010 WL 3212786 (9th Cir. Aug. 16, 2010) .............................. 7, 15, 16

*Perry v. Schwarzenegger,*

    628 F.3d 1191 (9th Cir. 2011) ........................................................................................ 7

*Porter v. Singletary,*

    49 F.3d 1483 (11th Cir. 1995) ...................................................................................... 13

*Potashnick v. Port City Constr. Co.,*

    609 F.2d 1101 (5th Cir. 1980) ...................................................................................... 11

*Preston v. United States,*

    923 F.2d 731 (9th Cir. 1991) ..................................................................... 5, 10, 17, 18

*Price-Cornelison v. Brooks,*

    524 F.3d 1103 (10th Cir. 2008) .................................................................................... 15

*Public Util. Comm'n of D.C. v. Pollak,*

    343 U.S. 451 (1952) ........................................................................................................ 5

*RHJ Med. Ctr., Inc. v. City of DuBois,*

    --- F. Supp. 2d ---, 2010 WL 4959879 (W.D. Pa. Dec. 7, 2010) .................................. 17

*Rich v. Secretary of the Army,*

    735 F.2d 1220 (10th Cir. 1984) .................................................................................... 15

*Romer v. Evans,*

    517 U.S. 620 (1996) ...................................................................................................... 15

*Scarbrough v. Morgan County Board of Education,*

    470 F.3d 250, 261 (6th Cir. 2006) ................................................................................ 15

*Schroeder v. Hamilton Sch. Dist.*,

 282 F.3d 946 (7th Cir. 2002) ................................................................. 15

*Singer v. Hara*,

 522 P.2d 1187 (Wash. Ct. App. 1974) ................................................... 15

*Standhardt v. Superior Court of Ariz.*,

 77 P.3d 451 (Ariz. Ct. App. 2003) .......................................................... 15

*Steffan v. Perry*,

 41 F.3d 677 (D.C. Cir. 1994) .................................................................. 15

*Thomasson v. Perry*,

 80 F.3d 915 (4th Cir. 1996) ..................................................................... 15

*Tramonte v. Chrysler Corp.*,

 136 F.3d 1025 (5th Cir. 1998) .................................................................... 9

*United States v. Arnpriester*,

 37 F.3d 466 (9th Cir. 1994) .............................................................. 17, 18

*United States v. Cooley*,

 1 F.3d 985 (10th Cir. 1993) ..................................................................... 10

*United States v. Holland*,

 519 F.3d 909 (9th Cir. 2008) ............................................................ 11, 13

*United States v. Kelly*,

 888 F.2d 732 (11th Cir. 1989) .................................................................. 13

*United States v. Murphy*,

 768 F.2d 1518 (7th Cir. 1985) .................................................................... 9

*United States v. Nelson*,

 718 F.2d 315 (9th Cir. 1983) .............................................................. 5, 10

*United States v. Van Griffin*,

 874 F.2d 634 (9th Cir. 1989) ..................................................................... 12

*Witt v. Department of the Air Force*,

 527 F.3d 806 (9th Cir. 2008) .................................................................... 15

*Woodward v. United States*,

    871 F.2d 1068 (Fed. Cir. 1989) ................................................................................. 15


**CONSTITUTIONAL PROVISIONS AND STATUTES**

28 U.S.C. § 445(e) ............................................................................................................ 2, 8

28 U.S.C. § 455(a) ..................................................................................................... 1, 2, 6, 8, 10

28 U.S.C. § 455(b)(4) ................................................................................................. 1, 3, 6, 8, 10

Cal. Const. art. I, § 7.5 ......................................................................................................... 6


**RULES**

Fed. R. App. P. 12.1 .......................................................................................................... 1

Fed. R. Civ. P. 62.1 .......................................................................................................... 1


**OTHER AUTHORITIES**

Dan Levine, *Gay judge never thought to drop marriage case,* Reuters, Apr. 6, 2011, *available at*

    http://www.reuters.com/article/2011/04/06/us-gaymarriage-judge-

    idUSTRE7356TA20110406…………………....................................................………2, 7, 8


Maura Dolan, Distilling the same-sex marriage case, L.A. Times, June 21, 2010, available at

    http://www.latimes.com/news/local/la-me-prop8-judge-20100621,0,4456

    510,full.story………………………………………….………………………6


Phillip Matier et al., *Judge being gay a nonissue during Prop. 8 trial,* San Francisco Chronicle, Feb.

    7, 2010, *available at* http://articles.sfgate.com/2010-02-07/bay-area/17848482_1_same-sex-

    marriage-sexual-orientation-judge-walker...............................................……………………2, 6

**TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 11, 2011, at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable James Ware, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Defendant-Intervenors Dennis Hollingsworth, Gail J. Knight, Martin F. Gutierrez, Mark A. Jansson, and ProtectMarriage.com – Yes on 8, a Project of California Renewal, ("Proponents") will move this Court pursuant to FED. R. CIV. P. 60(b) for an order vacating the final judgment (*see* Doc. # 708 at 138[1]; Doc. # 728) and all orders entered by this Court in this case on the grounds that the then-presiding judge was disqualified from sitting in this action under 28 U.S.C. § 455(b)(4) and 28 U.S.C. § 455(a).

Given that an appeal is currently pending, FED. R. CIV. P. 62.1(a)(3) authorizes, and we urge, this Court to enter an order "stat[ing] either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Upon entry of such an order, we will promptly notify the circuit clerk, *see* FED. R. CIV. P. 62.1(b); FED. R. APP. P. 12.1(a); and this Court may then decide the motion if the court of appeals remands for that purpose, *see* FED. R. CIV. P. 62.1(c); FED. R. APP. P. 12.1(b).

## INTRODUCTION

Fundamental to the integrity of the judicial function, and therefore to public confidence in the courts, is the judiciary's strict fidelity to the ancient maxim that "no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome." *In re Murchison*, 349 U.S. 133, 136 (1955). This principle is expressed in the Code of Judicial Ethics and is codified in federal law by statutes requiring that a judge recuse himself whenever he has an "interest that could be substantially affected by the outcome of the proceeding," 28 U.S.C. § 455(b)(4), or more generally, in any other circumstance in which "his impartiality might reasonably be questioned," *id.,* § 455(a).

---

[1] All citations to Doc. # 708, as well as all other documents filed with this Court, reference the page number from the ECF header (rather than the number at the bottom of the page).

1   The question presented in this case is whether gay and lesbian couples have a federal
2   constitutional right to have their relationships recognized as marriages, notwithstanding California's
3   state constitutional provision, adopted by the People through the initiative known as Proposition 8,
4   reaffirming the traditional definition of marriage as a relationship between a man and a woman.
5   Plaintiffs sought and obtained from this Court an injunction prohibiting California officials
6   statewide from enforcing Proposition 8.  The injunction effectively requires California officials to
7   issue marriage licenses to any and all gay and lesbian couples who wish to marry and are otherwise
8   eligible.

9   The district judge who issued this judgment, retired Chief Judge Vaughn R. Walker, has
10  now disclosed to the press on April 6, 2011, that he is gay and that he has been in a committed
11  relationship for more than 10 years.  Dan Levine, *Gay judge never thought to drop marriage case*,
12  Reuters, Apr. 6, 2011, *available at* http://www.reuters.com/article/2011/04/06/us-gaymarriage-
13  judge-idUSTRE7356TA20110406 (last visited April 25, 2011).  The published reports of former
14  Chief Judge Walker's statements to the press note that he had heretofore refused to comment on
15  these issues when asked by the press.  *Id.*; *see also* Phillip Matier et al., *Judge being gay a nonissue*
16  *during Prop. 8 trial*, San Francisco Chronicle, Feb. 7, 2010, *available at*
17  http://articles.sfgate.com/2010-02-07/bay-area/17848482_1_same-sex-marriage-sexual-orientation-
18  judge-walker (last visited April 25, 2011).  The published reports do not address the question
19  whether former Chief Judge Walker and his partner have, or have had, any interest in marriage
20  should the injunction he issued be upheld on appeal.

21  Given that Chief Judge Walker was in a committed, long-term, same-sex relationship
22  throughout this case (and for many years before the case commenced), it is clear that his
23  "impartiality might reasonably [have been] questioned" from the outset.  28 U.S.C. § 455(a).  He
24  therefore had, at a minimum, a *waivable* conflict and was obligated either to recuse himself or to
25  provide "full disclosure on the record of the basis for disqualification," *id*, § 445(e), so that the
26  parties could consider and decide, before the case proceeded further, whether to request his recusal.
27  His failure to do either was a clear violation of Section 455(a), whose "goal … is to avoid even the
28  appearance of partiality."  *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988).

2

But it also must be presumed that Chief Judge Walker had a *nonwaivable* conflict as well. For if at any time while this case was pending before him, Chief Judge Walker and his partner determined that they desired, or might desire, to marry, Chief Judge Walker plainly had an "interest that could be substantially affected by the outcome of the proceeding."   28 U.S.C. § 455(b)(4). Indeed, such a personal interest in his own marriage would place Chief Judge Walker in precisely the same shoes as the two couples who brought the case.   Such a clear and direct stake in the outcome would create a nonwaivable conflict, and recusal would have been mandatory.   Chief Judge Walker thus had a duty to disclose not only the facts concerning his relationship, but also his marriage intentions, for the parties (and the public) were entitled to know whether his waivable conflict was actually a nonwaivable conflict mandating his disqualification.   Only if Chief Judge Walker had unequivocally disavowed any interest in marrying his partner could the parties and the public be confident that he did not have a direct personal interest in the outcome of the case in violation of Section 455(b)(4).   Because he did not do so when the case was assigned to him, and has not done so since, it must be presumed that he has an interest in marrying his partner and therefore was in fact the "judge in his own case."

In light of Chief Judge Walker's undeniable violation of Section 455(a) and his presumed violation of Section 455(b)(4), the only responsible and just course is to vacate the judgment entered in this case.   Indeed, the Supreme Court in *Liljeberg* held that one of the key factors that must be considered in deciding whether a Section 455 conflict disclosed after judgment requires vacatur is "the risk of injustice to the parties in the particular case," *Liljeberg*, 486 U.S. at 864, and the Court undertook "a careful study of [a lower court judge's] analysis of the merits of the underlying litigation" to conclude that "there [was] a greater risk of unfairness in upholding the judgment … than there is in allowing a new judge to take a fresh look at the issues."   *Id*. at 868.

The course of proceedings in this case has been marked by a number of irregular and unprecedented rulings, both procedural and substantive, that give gravely disquieting force to the "appearance of partiality" created by the belated disclosure of Chief Judge Walker's long-term, committed relationship.   For example:

- Before the trial even began, the Ninth Circuit issued an extraordinary writ of mandamus to overturn Chief Judge Walker's order requiring Proponents to turn over confidential internal communications concerning the initiative campaign. *Perry v. Schwarzenegger*, 591 F.3d 1147, 1152 (9th Cir. 2009).

- Also before trial commenced, the Supreme Court of the United States issued an emergency stay, pending the filing of a mandamus petition with the Court, enjoining Chief Judge Walker from video recording and disseminating the trial proceedings to other federal courthouses.  The Court found that Chief Judge Walker had " 'so far departed from the accepted and usual course of judicial proceedings ... as to call for an exercise of this Court's supervisory power,' " and that he had violated the "proper rules of judicial administration … relat[ing] to the integrity of judicial processes." *Hollingsworth v. Perry*, 130 S. Ct. 705, 713 (2010).

- Chief Judge Walker's decision recognizing a right under the Federal Constitution for same-sex couples to have their relationships recognized as marriages conflicts with the judgment of *every State and federal appellate court* to consider the validity of the traditional opposite-sex definition of marriage under the Federal Constitution— including both the United States Supreme Court and the Ninth Circuit—all of which have upheld that definition.  Chief Judge Walker did not cite, let alone address, any of these prior decisions.

- Chief Judge Walker peremptorily held that gays and lesbians are a suspect class under the Federal Constitution even though all eleven Circuit Courts of Appeals to consider the issue (including the Ninth Circuit) have repeatedly and squarely held to the contrary.  Chief Judge Walker did not even cite, let alone address, any of these contrary precedents.

- Despite the unprecedented nature of his ruling and its sharp conflict with the uniform judgment of appellate courts throughout the Country, Chief Judge Walker refused to stay his judgment pending appeal.  As a result, the Ninth Circuit was forced to issue such a stay.

- Shortly before his retirement from the bench, Judge Walker publicly displayed an excerpt from the video recording of the trial in this case in violation of (i) his order sealing the recording; (ii) this Court's Rule 77-3; (iii) the Supreme Court's decision in this case; (iv) the policy of the Judicial Conference of the United States and the Judicial Council of the Ninth Circuit; and (v) his own solemn assurance to Proponents that the trial recordings would be used solely in chambers.

The unprecedented, irregular, and/or peremptory nature of these rulings is difficult – very difficult – to take as the product of an objective, impartial judicial mind.  And while "judicial rulings *alone* almost never constitute a valid basis for a bias or partiality motion," *Liteky v. United States*, 510 U.S. 540, 555 (1994) (emphasis added), the rulings summarized above are nevertheless highly relevant to the inquiry under Section 455(a).  The test is " 'whether a reasonable person with

4

knowledge of *all the facts* would conclude that the judge's impartiality might reasonably be questioned,' " *Preston v. United States*, 923 F.2d 731, 734 (9th Cir. 1991) (quoting *United States v. Nelson*, 718 F.2d 315, 321 (9th Cir. 1983)) (emphasis added), thus requiring recusal under Section 455(a). A disinterested observer would necessarily consider the uniform train of extraordinary and unprecedented rulings favoring the gay and lesbian plaintiff couples and ultimately creating an unprecedented federal constitutional right for them to have their relationships recognized as marriages to be relevant facts in deciding whether Chief Judge Walker's own long-term same-sex relationship, and the fact that he did not disclose the relationship prior to entering judgment, gives rise to a reasonable question as to Chief Judge Walker's impartiality.

These extraordinary rulings likewise bear directly—indeed, dispositively—on the question whether vacating the judgment invalidating Proposition 8 is necessary to avoid a genuine risk of unfairness to Proponents of that measure (and to the People of the State who enacted it by initiative) and to avoid "the risk of undermining the public's confidence in the judicial process." *Liljeberg*, 486 U.S. at 864. We respectfully submit that the judgment must be vacated in order to ensure that "the administration of justice … reasonably appear to be disinterested as well as be so in fact." *Id.* at 869-70 (quoting *Public Util. Comm'n of D.C. v. Pollak*, 343 U.S. 451, 466-67 (1952) (Frankfurter, J., in chambers)).

It is important to emphasize at the outset that we are *not* suggesting that a gay or lesbian judge could not sit on this case. Rather, our submission is grounded in the fundamental principle, reiterated in the governing statute, that no judge "is permitted to try cases where he has an interest in the outcome." *In re Murchison,* 349 U.S. at 136. Surely, no one would suggest that Chief Judge Walker could issue an injunction directing a state official to issue a marriage license *to him*. Yet on this record, it must be presumed that that is precisely what has occurred. At a bare minimum, "[r]ecusal is required" because former Chief Judge Walker's long-term committed relationship, his failure to disclose that relationship at the outset of the case, his failure to disclose whether he has any interest in marriage should his injunction be affirmed, and his actions over the course of this lawsuit give rise to "a genuine question concerning [his] impartiality." *Liteky*, 510 U.S. at 552.

We deeply regret the necessity of this motion.  But as the Supreme Court emphasized earlier in this very case, "[b]y insisting that courts comply with the law, parties vindicate not only the rights they assert but also the law's own insistence on neutrality and fidelity to principle.…  If courts are to require that others follow regular procedures, courts must do so as well." *Hollingsworth*, 130 S. Ct. at 713, 715.  The "regular procedure" here requires adherence to the principles that a judge may not sit on a case when "his impartiality might reasonably be questioned," 28 U.S.C. § 455(a), and certainly not when he has an "interest that could be substantially affected by the outcome of the proceeding," 28 U.S.C. § 455(b)(4).  Proponents ask only that these principles be applied faithfully and neutrally here as in any other case.

## BACKGROUND

On May 22, 2009, two same-sex couples filed this suit claiming that the Due Process and Equal Protection Clauses of the Fourteenth Amendment require California to redefine marriage to include same-sex relationships, and thus that Proposition 8, which provides that "[o]nly marriage between a man and a woman is valid or recognized in California," Cal. Const. art. I, § 7.5, is unconstitutional.  Doc. # 1.  The case was assigned to the Honorable Vaughn R. Walker, who at the time was Chief Judge of this Court.  He presided over the case from beginning to end, including motions, discovery, and a two-and-a-half week trial that took place in January 2010.

Shortly after the parties concluded their evidentiary submissions in late January 2010, a newspaper story reported that Chief Judge Walker is rumored to be gay, but when asked by the reporters, he refused to "comment … about his orientation and whether it was relevant to the lawsuit."  *See, e.g.*, Phillip Matier et al., *Judge being gay a nonissue during Prop. 8 trial*, San Francisco Chronicle, Feb. 7, 2010, *available at* http://articles.sfgate.com/2010-02-07/bay-area/17848482_1_same-sex-marriage-sexual-orientation-judge-walker (last visited April 25, 2011).  And soon after closing arguments on June 16, 2010, a press report in the *Los Angeles Times* claimed that unidentified "colleagues" of Chief Judge Walker said that he "attends bar functions with a companion, a physician[.]"  Maura Dolan, *Distilling the same-sex marriage case*, L.A. Times, June 21, 2010, *available at* http://www.latimes.com/news/local/la-me-prop8-judge-

20100621,0,4456510,full.story (last visited April 25, 2011).  Again, however, Chief Judge Walker refused to comment.

A little over a month later, Chief Judge Walker ruled in Plaintiffs' favor, holding that the Federal Constitution "protects an individual's choice of marital partner regardless of gender" and therefore requires the State of California to redefine marriage to include same-sex relationships. Doc. # 708 at 112-16.  Chief Judge Walker "order[ed] entry of judgment permanently enjoining [Proposition 8's] enforcement; prohibiting the official defendants from applying or enforcing Proposition 8 and directing the official defendants that all persons under their control or supervision shall not apply or enforce Proposition 8."  Doc. # 708 at 138.  Chief Judge Walker made clear that he understood and intended the injunction to apply to every County Clerk in California.  Doc. # 709 at 6-7.   Accordingly, Chief Judge Walker's injunction grants every gay and lesbian couple in California the right to marry, and prohibits all officials across the State from refusing to issue marriage licenses to same-sex couples.

Proponents immediately asked Chief Judge Walker to stay the judgment pending appeal, Doc. # 705, but he refused to do so, Doc. # 727.  The Ninth Circuit, however, promptly stayed the judgment pending appeal, so it has yet to take effect.  *Perry v. Schwarzenegger*, No. 10-16696, 2010 WL 3212786 (9th Cir. Aug. 16, 2010).  On January 4, 2011, shortly after oral argument, the Ninth Circuit certified questions concerning Proponents' standing to the California Supreme Court, *Perry v. Schwarzenegger*, 628 F.3d 1191, 1193 (9th Cir. 2011); on February 16, 2011, the California Supreme Court accepted the certified questions, and the parties are currently briefing the standing issues to that court.

In late February 2011, Judge Walker retired from the bench, and this case was re-assigned to Chief Judge Ware.

On April 6, 2011, former Chief Judge Walker met with a small group of reporters and for the first time publicly "discussed his sexual orientation in the press," disclosing that he is gay and "in a 10-year relationship with a physician."  Dan Levine, *Gay judge never thought to drop marriage case*, Reuters, Apr. 6, 2011, *available at* http://www.reuters.com/article/2011/04/06/us-gaymarriage-judge-idUSTRE7356TA20110406 (last visited April 25, 2011).  According to the

press account, when asked whether he considered recusing himself from this case, former Chief Judge Walker commented that it "would not be appropriate for any judge's sexual orientation, ethnicity, national origin or gender to stop them from presiding over a case." There is no mention in the account, however, of his view regarding the relevance to the recusal issue of his 10-year committed relationship, nor does it address his thoughts on marriage to his partner. *See id.*

## ARGUMENT

The Supreme Court in *Liljeberg* outlined the appropriate analysis for resolving a Rule 60(b) motion to vacate a judgment on the ground that the trial judge was disqualified under 28 U.S.C. § 455. *Liljeberg* instructed courts to consider whether the judge was disqualified from participating in the case under Section 455 and, if so, whether it is appropriate under the circumstances to vacate the judgment under Rule 60(b). *Liljeberg*, 486 U.S. at 858-64. Our analysis proceeds accordingly.

**I.  Chief Judge Walker Was Disqualified from Participating in This Case Under Section 455.**

Section 455 requires disqualification of a judge in multiple circumstances, two of which are relevant here. Subsection (b)(4) requires recusal whenever the judge "knows that he . . . has . . . any . . . interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(4). Subsection (a) is more general, requiring recusal "in any proceeding in which [the judge's] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Subsection (b)(4) is "a somewhat stricter provision" than subsection (a) because recusal under the former is mandatory and may not be waived, while a judge "may accept such a waiver under § 455(a) after 'a full disclosure on the record of the basis for disqualification.'" *Liljeberg*, 486 U.S. at 859 n.8 (quoting 28 U.S.C. § 455(e)). Subsection (a) "has a 'broader reach' than subsection (b)" because it covers all situations involving the mere appearance of partiality, and is not limited to the instances of actual bias or interest enumerated in subsection (b). *Liteky*, 510 U.S. at 553 n.2.

It is well settled that a judge has a duty to inquire into and disclose to the parties any possible grounds for disqualification. *See Liljeberg*, 486 U.S. at 868 (emphasizing the importance of "encouraging a judge or litigant to more carefully examine possible grounds for disqualification and to promptly disclose them when discovered"); *In re Kensington Int'l Ltd.*, 368 F.3d 289, 313

8

(3d Cir. 2004) (the "burden is to be placed on the judge to disclose possible grounds for disqualification"); *United States v. Murphy*, 768 F.2d 1518, 1537 (7th Cir. 1985) ("[Section 455] places on the judge a personal duty to disclose on the record any circumstances that may give rise to a reasonable question about his impartiality."). "A judge has a duty to be watchful of such disqualifying circumstances and decide any requests to recuse *with disclosure necessary to the decision made clear upon the record.*" *Tramonte v. Chrysler Corp.*, 136 F.3d 1025, 1031 (5th Cir. 1998) (emphasis added).

In this case, it is undeniable that Chief Judge Walker failed to make the required disclosure. At no point prior to the entry of judgment did Chief Judge Walker disclose that he is in a now 10-year long, committed same-sex relationship. And he has yet to disclose whether he has any interest in marrying his partner should the injunction he issued be upheld on appeal. These facts are plainly critical to the disqualification inquiry under both Subsection 455(b)(4) and Subsection 455(a), for they are directly relevant to the question whether Chief Judge Walker has an interest in the outcome of this case and they are facts that a disinterested observer would consider in deciding whether Chief Judge Walker's impartiality might reasonably be questioned.

The core issue presented in this case is whether the Fourteenth Amendment requires the redefinition of marriage to include same-sex relationships. Governmental recognition of a relationship as a marriage is, in and of itself, a significant legal interest, a point no party in this case has ever disputed. Indeed, Chief Judge Walker's legal analysis and fact findings, which are drawn directly from Plaintiffs' proposed findings, identify numerous benefits, ranging from the financial to the emotional, that he concludes would accrue specifically to same-sex couples if they are permitted to marry.[2] Thus, to the extent Chief Judge Walker and his partner have any interest in marrying if the injunction is affirmed, he indisputably has a direct personal interest that "could be

---

[2] To cite a few examples, see Doc. # 708 at 81 ("Same-sex couples receive the same tangible and intangible benefits from marriage that opposite-sex couples receive."); *id.* at 93 ("Proposition 8 increases costs and decreases wealth for same-sex couples because of increased tax burdens, decreased availability of health insurance and higher transactions costs to secure rights and obligations typically associated with marriage. Domestic partnership reduces but does not eliminate these costs."); *id.* at 96 ("Proposition 8 results in frequent reminders for gays and lesbians in committed long-term relationships that their relationships are not as highly valued as opposite-sex relationships.").

9

substantially affected by the outcome of th[is] proceeding." 28 U.S.C. § 455(b)(4). Indeed, the resolution of this case has the potential to *create* that personal interest. Simply stated, under governing California law, Chief Judge Walker currently cannot marry his partner, but his decision in this case, and the sweeping injunction he entered to enforce it, would give him a right to do so.

As previously noted, because Chief Judge Walker has not disclosed whether he and his partner have any interest in marrying, let alone unequivocally disavowed such an interest, it must be presumed that he has a disqualifying interest under Subsection 455(b)(4). For only such an unequivocal disavowal would negate the strong inference, arising from his acknowledged long-term, committed relationship and his findings in this case concerning the benefits of marriage for same-sex couples, that he has a personal interest in exercising the federal constitutional right he recognized to marry a same-sex partner should the injunction he issued be affirmed. That inference is strengthened by the fact that Chief Judge Walker did not disclose the existence of the relationship before entering judgment and has never disclosed whether he has any interest in marrying his partner. In any case, this Court need not decide whether Chief Judge Walker was disqualified under Section 455(b)(4) because he was clearly disqualified under Section 455(a).

Section 455(a) mandates that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "The goal of [S]ection 455(a)," the Supreme Court has emphasized, "is to avoid even the appearance of partiality." *Liljeberg*, 486 U.S. at 860. And thus the analytical focus under that provision "is not the reality of bias or prejudice but its appearance." *Liteky*, 510 U.S. at 548; *see also Herrington v. Sonoma County*, 834 F.2d 1488, 1502 (9th Cir. 1987) (Section 455(a) "covers circumstances that *appear* to create a conflict of interest, whether or not there is actual bias"). In applying Section 455(a), then, "the judge's actual state of mind, purity of heart, incorruptibility, or lack of partiality are not the issue." *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993).

"The standard for judging the appearance of partiality requiring recusal" under Section 455(a) "is an objective one and involves ascertaining 'whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.' " *Preston*, 923 F.2d at 734 (quoting *United States v. Nelson*, 718 F.2d 315, 321 (9th Cir. 1983)).

10

"The reasonable person is . . . a well-informed, thoughtful observer," *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008) (quotation marks omitted), but is nevertheless a layperson "who ha[s] not served on the bench" and thus is "often all too willing to indulge suspicions and doubts concerning the integrity of judges," *Liljeberg*, 486 U.S. at 864-65. "In high profile cases such as this one, the outcome of which will in some way affect millions of people, such suspicions are especially likely." *In re School Asbestos Litig.*, 977 F.2d 764, 782 (3d Cir. 1992).

"The use of '[m]ight reasonably be questioned' in section 455(a) . . . clearly mandates that it would be preferable for a judge to err on the side of caution and disqualify himself in a questionable case." *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1112 (5th Cir. 1980); *see also In re Boston's Children First*, 244 F.3d 164, 167 (1st Cir. 2001) (" 'if the question of whether § 455(a) requires disqualification is a close one, the balance tips in favor of recusal' ") (quoting *Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1995)); *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988) ("It has been stated on numerous occasions that when a judge harbors any doubts concerning whether his disqualification is required he should resolve the doubt in favor of disqualification.").

"Disqualification under § 455(a) is necessarily fact-driven and may turn on subtleties in the particular case. Consequently, the analysis of a particular section 455(a) claim must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue." *Holland*, 519 F.3d at 913 (quotation marks omitted); *see also Clemens v. United States Dist. Court for Cent. Dist. of Cal.*, 428 F.3d 1175, 1178 (9th Cir. 2005). "Thus, it is critically important in a case of this kind to identify the facts that might reasonably cause an objective observer to question [Chief Judge Walker's] impartiality." *Liljeberg*, 486 U.S. at 865. Here, the following facts must be considered:

- Chief Judge Walker has been involved in a 10-year (8-year at the time that Plaintiffs commenced this suit) committed same-sex relationship.

- Chief Judge Walker did not disclose the fact that he has been involved in a long-term same-sex relationship until eight months after final judgment was entered, and after he had retired from the bench. *See Liljeberg*, 486 U.S. at 865-67 (stating that a judge's failure to "disclos[e]" his interest was "remarkable" and "might reasonably cause an objective observer to question [his] impartiality"). Indeed, he refused to comment on the issue when asked by the press.

11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- • Chief Judge Walker has never disclosed whether he and his partner have (or have ever had) any interest in marrying should a right to marry an individual of the same sex be established.

A reasonable person, knowing these facts, could reasonably question Chief Judge Walker's impartiality. In addition, the "objective observer" would necessarily consider the extraordinary course of proceedings in this case while Chief Judge Walker has presided. As catalogued *infra* at pp. 14-16, Chief Judge Walker consistently issued extraordinary and unprecedented rulings, both procedural and substantive, often without even citing contrary binding authority, in favor of the plaintiff gay and lesbian couples. To be sure, "judicial rulings *alone* almost never constitute a valid basis for a bias or partiality motion," *Liteky*, 510 U.S. at 555 (emphasis added), and standing alone, we do not contend that Chief Judge Walker's rulings (extraordinary though they are) would do so here. But they are properly considered as part of the Section 455(a) analysis, and here, they could only deepen the concerns that a reasonable, disinterested observer would have about Chief Judge Walker's impartiality as a result of his long-term same-sex relationship, the fact that he did not disclose the relationship while he presided over the case, and the fact that he has not yet disclosed whether he has any interest in marrying his partner.

## II.     The Section 455 Violations Require This Court to Vacate the Judgment and All Orders Entered in This Case.

Fed. R. Civ. P. 60(b) "provides a procedure whereby, in appropriate cases, a party may be relieved of a final judgment." *Liljeberg*, 486 U.S. at 863. The general rule is that "when a judge[] sits in violation of an express statutory standard," as occurred here, "the disqualified judge's rulings are . . . to be vacated." *United States v. Van Griffin*, 874 F.2d 634, 637 (9th Cir. 1989); *see also Liljeberg*, 486 U.S. at 868 ("[i]t is … appropriate to vacate the judgment unless it can be said that respondent did not make a timely request for relief, or that it would otherwise be unfair to deprive the prevailing party of its judgment").[3]   The Court has identified three factors that should be

---

[3] This motion is clearly timely. In *Liljeberg*, the Court found that the motion to vacate was timely even though it was filed not only after judgment was entered in the trial court, but "10 months after the affirmance by the Court of Appeals"—long after the current posture of this case—because "the entire delay [was] attributable" to the trial judge's "failure to disqualify himself" and to "disclose[] [his] interest" to the parties. *Id.* at 869; (Continued)

considered "in determining whether a judgment should be vacated for a violation of [Section] 455(a) …[:]  [1] the risk of injustice to the parties in the particular case, [2] the risk that the denial of relief will produce injustice in other cases, and [3] the risk of undermining the public's confidence in the judicial process."  *Liljeberg*, 486 U.S. at 864.  To succeed in vacating the judgment, however, a party need not satisfy all three factors.  *Cf. United States v. Kelly*, 888 F.2d 732, 747 (11th Cir. 1989) (finding reversible error even though the court mentioned that only two of the three factors were satisfied).  Nevertheless, all three factors here weigh in favor of vacating the judgment.

### A.    The Risk of Injustice to Proponents Favors Vacating the Judgment.

Evaluating the risk of injustice to the parties involves a multifaceted analysis.  Here, at least three considerations under that broad analytical umbrella demonstrate that this Court should vacate the judgment.  First, the Section 455 violation at issue here is serious.  Second, declining to vacate the judgment poses a substantial risk of injustice, not only to Proponents, but to the People of

(Cont'd)
*see also id.* at 863 n.11.  The same is true here.  Chief Judge Walker did not disclose his long-term same-sex relationship "on the record," as required by Section 455(e), while the case was pending before him, and he refused to comment to the press about the issue until after he had retired from the bench.  It was not until April 2011 that he finally disclosed his long-term same-sex relationship to the press, and Proponents filed the instant motion promptly thereafter.  This analysis is not altered by the fact that a published report surfaced about Chief Judge Walker's rumored sexual orientation and "companion" shortly after closing arguments.  As with an earlier press report concerning his sexual orientation, Chief Judge Walker declined to comment.  Nor did the report indicate the long-term nature of Chief Judge Walker's same-sex relationship.  The Ninth Circuit has repeatedly stressed that "[r]umor, speculation, beliefs, conclusions, innuendo, suspicion, opinion," and "characterizations appearing in the media" are inadequate to require recusal under Section 455, *see Clemens*, 428 F.3d at 1178-79; *Holland*, 519 F.3d at 914 n.5; *see also Green v. Branson*, 108 F.3d 1296, 1305 (10th Cir. 1997), and the law is clear that "a litigant's duty to investigate the facts of his case does not include a mandate for investigations into a judge's impartiality.… [Courts] believe instead that litigants (and, of course, their attorneys) should assume the impartiality of the presiding judge, rather than pore through the judge's private affairs and financial matters." *American Textile Mfrs. Inst., Inc. v. The Limited, Inc.*, 190 F.3d 729, 742 (6th Cir. 1999); *see also First Interstate Bank of Az., N.A. v. Murphy, Weir & Butler*, 210 F.3d 983, 987-88 (9th Cir. 2000) ("Section 455(a) [and] the Code of Judicial Conduct … place the burden of maintaining impartiality and the appearance of impartiality on the judge.… Lawyers are entitled to assume that judges . . . will perform their duty."); *Porter v. Singletary*, 49 F.3d 1483, 1489 (11th Cir. 1995) ("we do not believe that an attorney conducting a reasonable investigation would consider it appropriate to question a judge, or the court personnel in the judge's court, about the judge's lack of impartiality").

California.  Third, Plaintiffs cannot show a risk of injustice from vacating the judgment because they cannot show that they relied on that judgment.  We evaluate each of those three considerations in turn.

*First*, an important consideration in assessing the risk of injustice to the parties is the seriousness of the presiding judge's Section 455 violation.  *See Liljeberg*, 486 U.S. at 865-67.  This case involves a serious violation both because Chief Judge Walker's duty to disclose his long-term relationship is not a close question under Section 455(a) and (e), and because he must be presumed to have a direct personal interest in the outcome of the case, which could substantially affect him *personally* by creating a legal right to marry his long-term partner.  Chief Judge Walker had knowledge of the facts giving rise to his disqualifying interest from the moment of this case's inception.  *Cf. id.* at 867-68 (vacating the judgment even though the judge "did not know of his [disqualifying] interest" until after trial).  And despite this knowledge, he failed to disclose the facts on the record to the parties.  *See id.* at 866-67 (vacating the judgment because the judge, after learning of his disqualifying interest, did not "disclos[e]" it to the parties).  As in *Liljeberg*, this conduct amounts to a Section 455 violation that is "neither insubstantial nor excusable," *see id.* at 867, but instead serious and inexplicable.

*Second*, there can be no question that a significant risk of injustice is presented if the judgment is not vacated.  "[A] careful study of [Chief Judge Walker's] analysis of the merits of the underlying litigation" compels the conclusion, as in *Liljeberg*, that "there is a greater risk of unfairness in upholding the judgment … than there is in allowing a new judge to take a fresh look at the issues."  *Id.* at 868.  As previously noted, the proceedings in this case have been marked by a series of irregular and unprecedented rulings, often without citation of binding contrary authority.  *See supra* at pp. 3-5.  For example, Chief Judge Walker's unprecedented pre-trial orders relating to discovery and to broadcasting the trial proceedings prompted extraordinary intervention by the Ninth Circuit and the Supreme Court.  *See Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2009); *Hollingsworth v. Perry*, 130 S. Ct. 705 (2010).  On the merits, Chief Judge Walker's holding that there is a federal constitutional right for same-sex couples to have their relationships recognized as marriages conflicts with the judgment of *every State and federal appellate court* to consider the

14

validity of the traditional opposite-sex definition of marriage under the Federal Constitution—including both the United States Supreme Court and the Ninth Circuit—all of which have upheld that definition.[4]  Chief Judge Walker's opinion did not even acknowledge, let alone address, any of this contrary authority, including the Supreme Court's decision in *Baker v. Nelson*, 409 U.S. 810 (1972), holding that a state law limiting marriage to opposite sex couples did not violate either the Equal Protection or the Due Process Clauses of the Fourteenth Amendment.  Chief Judge Walker also held that gays and lesbians are a suspect class under the Federal Constitution even though the Ninth Circuit (like every other Circuit to address the issue) has repeatedly and squarely held to the contrary.  *See, e.g.*, *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 573-74 (9th Cir. 1990); *Witt v. Departmentt of the Air Force*, 527 F.3d 806, 821 (9th Cir. 2008).[5]  Again, he did not even cite these cases.  With respect to remedy, Chief Judge Walker issued an injunction granting every gay and lesbian couple in California the right to marry even though the individual plaintiffs did not seek class certification, nor assert class claims.   And he refused to stay implementation of his sweeping, unprecedented injunction pending appeal, thus requiring the Ninth Circuit to enter such a stay.  *See Perry v. Schwarzenegger*, No. 10-16696, 2010 WL 3212786 (9th Cir. Aug. 16, 2010).   Finally, while the case was on appeal, Judge Walker publicly displayed, in a speech broadcast by C-SPAN, an excerpt from the video recording of the trial, in violation of (1)

---

[4] *See Baker v. Nelson*, 409 U.S. 810 (1972); *Citizens for Equal Prot. v. Bruning*, 455 F.3d 859, 871 (8th Cir. 2006); *Adams v. Howerton*, 673 F.2d 1036, 1042 (9th Cir. 1982); *Dean v. District of Columbia*, 653 A.2d 307, 308 (D.C. Ct. App. 1995); *Jones v. Hallahan*, 501 S.W.2d 588, 590 (Ky. 1973); *Baker v. Nelson*, 191 N.W.2d 185, 187 (Minn. 1971); *In re Marriage of J.B. and H.B.*, 326 S.W.3d 654 (Tex. Ct. App. 2010); *Standhardt v. Superior Court of Ariz.*, 77 P.3d 451, 453 (Ariz. Ct. App. 2003); *Singer v. Hara*, 522 P.2d 1187, 1197 (Wash. Ct. App. 1974).

[5] *See also, e.g.*, *Cook v. Gates*, 528 F.3d 42, 61 (1st Cir. 2008); *Thomasson v. Perry*, 80 F.3d 915, 928 (4th Cir. 1996) (en banc); *Johnson v. Johnson*, 385 F.3d 503, 532 (5th Cir. 2004); *Baker v. Wade*, 769 F.2d 289, 292 (5th Cir. 1985) (en banc); *Scarbrough v. Morgan County Board of Education*, 470 F.3d 250, 261 (6th Cir. 2006); *Equality Found. v. City of Cincinnati*, 128 F.3d 289, 294 (6th Cir. 1997); *Schroeder v. Hamilton Sch. Dist.*, 282 F.3d 946, 950-51 (7th Cir. 2002); *Ben-Shalom v. Marsh*, 881 F.2d 454, 464 (7th Cir. 1989); *Citizens for Equal Prot. v. Bruning*, 455 F.3d 859, 866-67 (8th Cir. 2006); *Price-Cornelison v. Brooks*, 524 F.2d 1103, 1114 (10th Cir. 2008); *Rich v. Secretary of the Army*, 735 F.2d 1220, 1229 (10th Cir. 1984); *Lofton v. Secretary of the Dep't of Children & Family Servs.*, 358 F.3d 804, 818 (11th Cir. 2004); *Steffan v. Perry*, 41 F.3d 677, 684 n.3 (D.C. Cir. 1994) (en banc); *Woodward v. United States*, 871 F.2d 1068, 1076 (Fed. Cir. 1989); *see also Romer v. Evans*, 517 U.S. 620, 631-35 (1996) (applying rational basis scrutiny to classification based on sexual orientation).

his own order placing the video recording under seal; (2) the clear terms of this Court's Rule 77-3 prohibiting the dissemination of trial proceedings outside the courthouse; (3) the longstanding policies of the Judicial Conference of the United States and the Judicial Council of the Ninth Circuit prohibiting public broadcast of trial proceedings; (4) his assurances on the record to Proponents that the trial recordings would be used solely in chambers; and (5) the Supreme Court's prior decision in this case ruling that Chief Judge Walker's earlier attempt to publicly disseminate the trial proceedings "complied neither with existing rules or policies nor the required procedures for amending them." *Hollingsworth v. Perry*, 130 S. Ct. at 713.

*Third*, juxtaposing the significant risk of injustice to Proponents is Plaintiffs' inability to show any "special hardship by reason of their reliance on the original judgment." *See Liljeberg*, 486 U.S. at 869. The Ninth Circuit has stayed that judgment pending appeal, *see Perry v. Schwarzenegger*, No. 10-16696, 2010 WL 3212786 (9th Cir. Aug. 16, 2010), and thus Plaintiffs cannot credibly claim harm from relying on a judgment that has yet to be implemented. Indeed, any professed reliance on that judgment would be unreasonable and thus not entitled to any weight.

In sum, all of these factors, separately and taken together, weigh decisively in favor of vacating the judgment.

### B.     Upholding the Judgment Will Create a Significant Risk of Injustice in Other Cases.

Upholding the judgment here notwithstanding Chief Judge Walker's disqualification would create a significant risk of injustice in other cases, for it would tacitly approve the Judge's failure to disclose his direct personal interest in the outcome of the case, and his consequent failure to recuse himself. The judiciary should take pains to avoid creating the impression that it approves—or at least will tolerate—such conduct. As in *Liljeberg*, vacating the judgment "may prevent a substantive injustice in some future case by encouraging a judge … to more carefully examine possible grounds for disqualification and to promptly disclose them when discovered." 486 U.S. at 868.

Additionally, the high-profile nature of this case, its overriding importance to countless people in California and throughout the Country, Chief Judge Walker's sweeping and anomalous

16

"factual" findings, and his unprecedented and unexplained legal conclusions magnify the risk of injustice in other cases that would result from denying this motion and declining to vacate the judgment.  In fact, other federal courts have already relied on Chief Judge Walker's "factual" findings, *see Dragovich v. United States Dep't of the Treasury*, --- F. Supp. 2d --- , 2011 WL 175502, at *11 (N.D. Cal. Jan. 18, 2011), and his unprecedented legal conclusions, *see RHJ Med. Ctr., Inc. v. City of DuBois*, --- F. Supp. 2d ---, 2010 WL 4959879, at *45 n.50 (W.D. Pa. Dec. 7, 2010) (citing this case for the proposition under federal law that "strict scrutiny is the appropriate standard of review to apply to legislative classifications based on sexual orientation").  Hence, treating this case as though Chief Judge Walker had no appearance of partiality and no personal interest in the outcome poses a particularly serious risk of spreading injustice to other federal litigation.

### C.   Upholding the Judgment Will Create a Significant Risk of Undermining the Public's Confidence in Judicial Proceedings.

Declining to vacate the judgment and allowing Chief Judge Walker's decision to stand would severely undermine the public's confidence in the judicial system.  The Ninth Circuit has repeatedly recognized that when faced with a trial court ruling tainted by the appearance of impartiality, vacatur is the only way to preserve the public's trust in the judiciary.  In *Preston*, for example, the Ninth Circuit, after finding that the trial judge had violated Section 455 by failing to recuse himself, held that "[t]here is no way . . . to purge the perception of partiality in this case other than to vacate the judgment and remand the case to the district court for retrial by a different judge."  923 F.2d at 735.  The *Preston* court then went on to state:

> We recognize that this case has been tried once to judgment and that a retrial will involve considerable additional expense, perhaps with the same result as the first trial.  This is unfortunate.  [But it] prompts us to repeat . . . that the unfairness and expense which results from disqualification can be avoided in the future only if each judge fully accepts the obligation to disqualify himself in any case in which his impartiality might reasonably be questioned.

*Id.* at 735-36 (quotation marks and alterations omitted); *see also Potashnick*, 609 F.2d at 1115 (similar).  Similarly, in *United States v. Arnpriester*, 37 F.3d 466, 468 (9th Cir. 1994), the Ninth Circuit explained that the judicial "process was irreparably flawed when a judge who would

reasonably be believed to be biased was the judge who ruled," and the Court therefore ordered that the case be remanded and "assign[ed] to a different district judge." *Id.*

The need to "purge the perception of partiality" is particularly acute here. *See Preston*, 923 F.2d at 735. As the Supreme Court has already recognized, *see Hollingsworth*, 130 S. Ct. at 714, this high-profile case involves a highly divisive subject matter, and it raises nationally important constitutional and public-policy questions. The pall cast by the palpable appearance of judicial partiality upon one of the most prominent and widely publicized constitutional cases in this Country's history threatens deep and lasting harm to the public's confidence in our nation's judicial system. However this case is ultimately resolved, a large segment of the population will be unhappy with the result. In these circumstances, it is especially essential that all concerned have complete confidence in the impartiality of the judges deciding it. We respectfully submit that such confidence is not possible here, and so the judgment must be vacated.

## CONCLUSION

For the foregoing reasons, Proponents respectfully request that this Court vacate the judgment (*see* Doc. # 708 at 138; Doc. # 728) and all prior orders entered in this case on the grounds that the then-presiding judge was disqualified from this action under 28 U.S.C. § 455(b)(4) and 28 U.S.C. § 455(a).


DATED: April 25, 2011                    Respectfully Submitted,

                                         ATTORNEYS FOR DEFENDANT-INTERVENORS
                                         DENNIS HOLLINGSWORTH, GAIL J. KNIGHT,
                                         MARTIN F. GUTIERREZ, MARK A. JANSSON, AND
                                         PROTECTMARRIAGE.COM – YES ON 8, A PROJECT
                                         OF CALIFORNIA RENEWAL

                                         By:    /s/ Charles J. Cooper
                                                Charles J. Cooper