KAMALA D. HARRIS
Attorney General of California
CONSTANCE L. LELOUIS
Supervising Deputy Attorney General
TAMAR PACHTER
Deputy Attorney General
DANIEL J. POWELL
Deputy Attorney General
State Bar No. 230304
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 703-5830
  Fax: (415) 703-1234
  E-mail: Daniel.Powell@doj.ca.gov
*Attorneys for State Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KRISTIN M. PERRY, et al.,** <br><br> Plaintiffs, <br><br> v. <br><br> **ARNOLD SCHWARZENEGGER, et al.,** <br><br> Defendants. | 3:09-cv-02292-JW <br><br> **STATE DEFENDANTS' OPPOSITION TO MOTION TO VACATE JUDGMENT** <br><br> Date: June 13, 2011 <br> Time: 9:00 a.m. <br> Courtroom: 5, 17th Floor <br> Judge: Hon. James Ware |

# INTRODUCTION

Defendant-Intervenors' Motion to Vacate Judgment presents a simple issue: can a gay judge impartially adjudicate a case involving gay rights? On the face of their motion, Defendant-Intervenors seem to agree that Judge Walker's sexual orientation is irrelevant. Rather, they argue that Judge Vaughn Walker should have recused himself from this case because he is in a relationship with another man and *not* because he is gay. As many judges have recognized, however, this is a distinction without a difference. Faced with similarly nuanced challenges, courts have seen such recusal requests for what they are: thinly veiled attempts to disqualify judges based on their race, gender, religious affiliation, or in this case, sexual orientation.

As the chief law enforcement officers of the State of California, state defendants[1] are especially concerned at the precedent that might be set should this Court rule that Judge Walker is subject to recusal because of his sexual orientation and the fact that he is in a long-term relationship. On one level, the recusal motion here is similar to long-discredited efforts to bar black judges from adjudicating cases of race discrimination. *See, e.g., Pennsylvania v. Local Union 542, Int'l Union of Operating Eng'rs*, 388 F. Supp. 155 (E.D. Pa. 1974). Like race, gender, religion, and ethnicity, sexual orientation is simply irrelevant to whether a judge is qualified to hear a case, regardless of the subject matter or the identity of the litigants. *Cf., United States v. Alabama*, 582 F. Supp. 1197, 1203 (N.D. Ala. 1984). On another level, the recusal motion here is even more troubling. As Defendant-Intervenors would have it, judges can be forced to disclose some of their most personal, private information. Recusal motions such as the one advanced here threaten to subject gay and lesbian judges—indeed all judges—to "witch hunts" concerning intimate aspects of their most personal and private lives.

We do not require our judges to be automatons set apart from the rest of society. Instead, we recognize that, like the rest of humanity, no judge is free of personal characteristics, beliefs,

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Governor Edmund G. Brown Jr.; Attorney General Kamala D. Harris; and Interim Director of the California Department of Health Howard Backer are automatically substituted as defendants in this action. Linette Scott remains the Deputy Director of Health Information & Strategic Planning for the California Department of Public Health.

and affiliations, and we presume that they will put these aside and apply the law. *United States v. Baskes*, 687 F.2d 165, 170 (7th Cir. 1981). Only when a judge has some specific interest that could be substantially affected by the litigation does the law demand recusal. Defendant-Intervenors have failed to identify any such disqualifying interest. Instead they have ascribed to Judge Walker a personal interest based solely on his sexual orientation and his choice to express his sexual orientation by being part of a long-term relationship. Just as every single one of the attempts to disqualify judges on the basis of their race, gender, or religious affiliation has been rejected by other courts, this Court should similarly reject Defendant-Intervenors' effort to disqualify Judge Walker based on his sexual orientation. The Motion to Vacate Judgment should therefore be denied, and it should be denied while Defendant-Intervenors' appeal is pending pursuant to Federal Rule of Civil Procedure 62.1(a)(2).

## ARGUMENT

The standards governing recusal pursuant to 28 U.S.C. § 455 are well-settled. Section 455(a), which forms the principal basis for Defendant-Intervenors' challenge, provides that "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." "The standard for judging the appearance of partiality requiring recusal under 28 U.S.C. § 455 is an objective one and involves ascertaining 'whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *Preston v. United States*, 923 F.2d 731, 734 (9th Cir. 1991) (quoting *United States v. Nelson*, 718 F.2d 315, 321 (9th Cir. 1983)). Section 455(b)(4), also invoked by Defendant-Intervenors, requires recusal when a judge knows that he has a "financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." "Whether such an interest is disqualifying depends upon the remoteness of the interest and its extent or degree. . . . As the interest becomes less direct, it will require disqualification only if the litigation substantially affects that interest." *In re Beard*, 811 F.2d 818, 831 (4th Cir. 1987). "Since a judge is presumed impartial, the party seeking recusal has a substantial burden to overcome the presumption with factual allegations of personal bias. . . ." *Baskes*, 687 F.2d at 170. A judge

1  need not "recuse on unsupported, irrational, or highly tenuous speculations, and should ignore
2  rumors, innuendos, and erroneous information." *TV Communications Network, Inc v. ESPN, Inc.*,
3  767 F. Supp. 1077, 1080 (D. Colo. 1981).

**I.  THE FACT THAT JUDGE WALKER IS IN A SAME-SEX RELATIONSHIP IS INSUFFICIENT TO SHOW THE APPEARANCE OF BIAS**

The fact that Judge Walker is in a long-term relationship with a same-sex partner and may, if the judgment becomes final, be able to marry his partner in California at some point in the future is insufficient to show bias under section 455.[2] Judge Walker has not indicated that he has any intent to marry his partner—indeed, he could have married his partner in the period between the California Supreme Court's decision in *In re Marriage Cases*, 183 P.3d 384 (Cal. 2008) and the passage of Proposition 8. Mere speculation that Judge Walker *might* marry his partner sometime in the future is the kind of "remote, contingent, or speculative" interest that does not "reasonably bring[ ] into question a judge's impartiality." *In re Drexel Burnham Lambert Incorporated*, 861 F.2d 1307, 1313 (2d Cir. 1988). It might similarly be argued that a judge with a minor daughter must disclose that fact in the context of a challenge to a law that limits minors' access to abortion, or that a judge who had a loved one die of lung cancer must disclose this fact when presiding over a case involving a tobacco-related suit. Although these hypothetical scenarios seem outlandish, this highly personal inquiry is *precisely* what Defendant-Intervenors demand of Judge Walker: "Judge Walker had a duty to disclose not only the facts concerning his relationship, *but also his marriage intentions*. . . ." Mot. at 3 (emphasis added). This alone shows the far-reaching impact of Defendant-Intervenors' position.

Section 455 does not require courts to indulge in this kind of inquiry, however, as such hypothetical interests are insufficient to raise even the appearance of impropriety. In *United States v Alabama*, Alabama sought the recusal of an African-American judge who had minor

---

[2] This Motion is not the first time that Defendant-Intervenors have sought to recuse a judge presiding in this case. On appeal, they also moved to disqualify Judge Reinhardt on the basis of his wife's position as Executive Director of the American Civil Liberties Union of Southern California. Judge Reinhardt denied that motion, which he found to be "based upon an outmoded conception of the relationship between spouses." *Perry v. Schwarzenegger*, 630 F.3d 909, 912 (9th Cir. 2011).

children in a case alleging that Alabama and its institutions of higher learning were maintaining racial segregation. 582 F. Supp. 1197 (N.D. Ala. 1984). The affidavit filed in that case indicated that "Judge Clemon's minor children are possible members of a class of black school children seeking to intervene, suggesting the possibility of the appearance of a personal interest in the outcome of this case." *Id*. at 1200. The district court rejected the sufficiency of that fact, however, finding that "the interests claimed are too tenuous and remote." *Id.* at 1203. Rather, the court concluded, "[t]he interests claimed to be affected are uncertain and contingent upon Judge Clemon's children choosing to attend one of the defendant institutions at some unknown date in the future. These interests are clearly not the substantial interests contemplated under § 455." *Id*. at 1208.

Similarly, in *LeRoy v. City of Houston*, an African-American judge rejected a challenge to her ability to hear a lawsuit alleging that the City of Houston had routinely engaged in racially discriminatory activities in hiring and elections. 592 F. Supp. 415 (S.D. Tex. 1984). Despite being a resident of Houston, and at least at one time part of a putative class (which was never certified), Judge McDonald refused to recuse herself. "The fact that I am black and have been a registered voter is not and should not be sufficient to create an appearance of impropriety." *Id*. at 424. The court recognized the scope of Houston's request, which like that of Defendant-Intervenors here, would require recusal in a whole host of situations never before thought to present an appearance of bias. "This Court would find itself a member of many protected classes, *e.g.,* race-black; sex-women; age-over 40; and would find that it would be seriously hampered if not crippled in its ability to consider the claims of litigants which come to it through the normal course of random assignment." *Id*. The Court rejected the claim that the judge's race could lead to bias and declared the argument to be "without any support." *Id*.

The fact that Judge Walker is, like many individuals, in a long-term relationship that might or might not result in marriage is insufficient to show either that he has a disqualifying interest in the outcome of this litigation or that his impartiality may be questioned. As his relationship status is not a sufficient basis for recusal under section 455(a) or 455(b)(4), Defendant-Intervenors' Motion to Vacate Judgment should be denied.

## II. JUDGE WALKER'S SEXUAL ORIENTATION IS NOT A VALID BASIS FOR HIS RECUSAL

Defendant-Intervenors disavow any argument that the judgment should be vacated on the basis of Judge Walker's sexual orientation, but as courts have recognized in other contexts, that is precisely what Defendant-Intervenors are seeking. Judge Walker's long-term, same-sex relationship is precisely and obviously an expression of his sexual orientation; it is sophistry to attempt to distinguish one from the other. As the Court observed in *Alabama*, defendants' argument that Judge Clemon was interested in the outcome of the case because he had children would lead to the conclusion that "every black judge, with minor children in the state, would be precluded from presiding in a school desegregation case. This reasoning once again suggests only an inference of inherent bias *based on the judge's race*." 582 F. Supp. at 1203. And as Judge McDonald observed when her impartiality was nominally challenged because she was a member of the putative class in *LeRoy*:

> Fundamentally, my only connection with the real parties in interest in this case is race. If my race is enough to disqualify me from hearing this case, then I must disqualify myself as well from a substantial portion of the cases on my docket. This circumstance would cripple my efforts to fulfill my oath as a federal judge to enforce the laws of our nation. I consider the mere happenstance of my race is not enough connection to the actual parties in this case to make recusal appropriate in the situation at hand.

592 F. Supp. at 420. Similarly here, Defendant-Intervenors' argument must be rejected because the only connection alleged between Judge Walker and the plaintiffs in this case is that they are all gay.

As in *LeRoy* and *Alabama*, Defendant-Intervenors' rationale would lead to the recusal in this litigation of every gay judge in a relationship, whether it be short-term or long-term, public or private. Because virtually every gay judge would be subject to recusal under Defendant-Intervenors' reasoning, the inference of bias here is only "based on the judge's [sexual orientation]." *Alabama*, 582 F. Supp. at 1024. Manifestly, a judge's sexual orientation, like a judge's gender, race, or religion, is an insufficient reason to require his recusal. *See id*. at 1203 ("It is clear that a judge's color, sex or religion does not constitute bias in favor of that color, sex or religion."); *see also Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 660

5

(10th Cir. 2002) (noting that "courts have consistently held that membership in a church does not create sufficient appearance of bias to require recusal" and that other associational bias cases show "that group membership alone is insufficient to create the appearance of bias"); *State of Idaho v. Greeman*, 507 F. Supp. 706, 729 (D. Idaho 1981) ("it warrants noting that a judge's background associations, which would include his religious affiliations, should not be considered as a grounds for disqualification"); *Blank v. Sullivan and Cromwell*, 418 F. Supp. 1, 4 (N.D. Ala. 1984) ("The assertion, without more, that a judge who engaged in civil rights litigation and who happens to be of the same sex as a plaintiff in a suit alleging sex discrimination on the part of a law firm, is, therefore, so biased that he or she could not hear the case, comes nowhere near the standards required for recusal."). All judges, including those who are gay, have a duty to "perform judicial duties without bias or prejudice." Model Code of Judicial Conduct, Cannon 3(5). Just as straight judges can be trusted to put aside their sexual orientation when adjudicating a dispute in which sexual orientation is relevant, so, too, can gay judges be trusted to do the same. Plaintiffs do not argue to the contrary.

The seminal case discussing allegations of bias based on a judge's personal characteristics is Judge A. Leon Higginbotham Jr.'s opinion in *Commonwealth of Pennsylvania v. Local Union 542, International Union of Operating Engineers*, 388 F. Supp. 155 (E.D. Pa. 1974). The defendants in that case, who were alleged to have engaged in racial discrimination, sought Judge Higginbotham's recusal, nominally because of a speech he gave at the Annual Meeting of the Association for the Study of Afro-American Life and History. In a thorough opinion, Judge Higginbotham showed that the recusal request was, in fact, based on his race. "Defendants do not go so far as to precisely assert that black judges should per se be disqualified from hearing cases which involve racial issues, but as will be demonstrated hereinafter, the absolute consequence and thrust of their rationale would amount to, in practice, a double standard within the judiciary." *Id*. at 165. Judge Higginbotham highlighted the pretextual nature of defendants' argument by turning it around. No one, he pointed out, would seek to recuse a white judge who had given a speech about human rights to a historical society, demonstrating that the issue was really one of race. *Id*.

While recusal challenges based on race and gender have receded in recent years as the bench has become increasingly diverse, the same has not been true with respect to sexual orientation. It was only in January of this year that an openly gay man was first nominated to the federal bench.[3] While a handful of other federal judges have publicly disclosed that they are gay or lesbian after being appointed to the bench, it is only now that openly gay judges are beginning to adjudicate claims involving discrimination on the basis of sexual orientation. No one now questions that Judge Higginbotham properly presided over the claims of racial discrimination before him, and there should similarly be no question that Judge Walker properly presided over this matter. As there is no basis for Defendant-Intervenors' contention that Judge Walker should have recused himself pursuant to section 455, their motion to vacate judgment should be denied.[4]

## CONCLUSION

The fact that Judge Walker is gay and is in a long-term relationship is insufficient to show bias or the appearance of impropriety. As Judge Higginbotham noted over thirty years ago:

> It would be a tragic day for the nation and the judiciary if a myopic vision of the judge's role should prevail, a vision that required judges to refrain from participating in their churches, in their nonpolitical community affairs, in the universities. So long as Jewish judges preside over matters where Jewish and Gentile litigants disagree; so long as Protestant judges preside over matters where Protestants and Catholics disagree; so long as white judges preside over matters where white and black litigants disagree, I will preside over matters where black and white litigants disagree.

*Commonwealth of Pennsylvania*, 388 F. Supp. at 181. Gay judges must also be permitted to preside over matters where people of different sexual orientations disagree. Defendant-Intervenors' Motion to Vacate Judgment should be denied.

//

//

//

---

[3] Benjamin Weiser, *Obama Nominee for Judge Could Be First Openly Gay Man on Federal Bench*, N.Y. Times, January 28, 2011 at A-29.

[4] State Defendants request that the Court deny this motion while the Defendant-Intervenors' appeal is pending, as provided by Federal Rule of Civil Procedure 62.1(a)(2). For the reasons stated above, the Motion to Vacate Judgment is meritless. A ruling on the motion now would allow the Ninth Circuit to consolidate any appeal of this Court's decision with Defendant-Intervenors' pending appeal, avoiding the possibility of seriatim appeals.

| | | |
|---|---|---|
| 1 | Dated: May 12, 2011 | Respectfully submitted, |
| 2 | | KAMALA D. HARRIS<br>Attorney General of California |
| 3 | | CONSTANCE L. LELOUIS<br>Supervising Deputy Attorney General |
| 4 | | TAMAR PACHTER<br>Deputy Attorney General |

/s/ Daniel J. Powell

DANIEL J. POWELL
Deputy Attorney General
*Attorneys for State Defendants*

SA2009310603
Document in ProLaw

8

# DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   ***Kristin M. Perry, et al. v. Arnold Schwarzenegger, et al.***

No.:   **3:09-cv-02292-VRW**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On <u>May 12, 2011</u>, I served the attached **STATE DEFENDANTS' OPPOSITION TO MOTION TO VACATE JUDGMENT** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Christopher M. Gacek**
Family Research Council
801 G Street NW
Washington, DC 20001

**Kaylan L. Phillips**
1 South 6th Street
Terre Haute, IN 47807-3510

**Kevin James Hasson**
1350 Connecticut Ave, Ste 605 NW
Washington, DC 20036-1735

**Michael James McDermott**
7172 Regional #329
Dublin, CA 94568

**Michael W. Kirk**
Cooper & Kirk, PLLC
1523 New Hampshire Avenue, NW
Washington, DC 2003

**Paul Benjamin Linton**
921 Keystone Avenue
Northbrook, IL 60062

**Rena M Lindevaldsen**
Liberty Counsel
100 Mountainview Rd, Ste 2775
Lynchberg, VA 24502

**Richard E. Coleson**
1 South 6th Street
Terre Haute, IN 47807-3510

**Suzanne B. Goldberg**
Sexuality & Gender Law Clinic
435 W. 116th Street
New York, NY 10025

**Thomas Brejcha**
Thomas More Society
29 S. La Salle, Ste 440
Chicago, IL 60603

| | |
|---|---|
| **Tobias Barrington Wolff** | **Vincent P. McCarthy** |
| **University of Pennsylvania Law School** | **W. Chestnut Hill Road** |
| **3400 Chestnut Street** | **Lichfield, CT 06759** |
| **Philadelphia, PA 19104-6204** | |

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on May 12, 2011, at San Francisco, California.

| S. Chiang | /s/ S. Chiang |
|:---:|:---:|
| Declarant | Signature |

SA2009310603
20451859.doc