1
2
3
4
5                    IN THE UNITED STATES DISTRICT COURT

6              FOR THE NORTHERN DISTRICT OF CALIFORNIA

7                        SAN FRANCISCO DIVISION

8    Kristin M. Perry, et al.,                   NO. C 09-02292 JW

9                         Plaintiffs,            **ORDER DENYING DEFENDANT-
                                                 INTERVENORS' MOTION TO VACATE**
          v.                                     **JUDGMENT**
10
     Arnold Schwarzenegger, et al.,
11
                          Defendants.
12   _____/

13                         **I.  INTRODUCTION**

14        Presently before the Court is Defendant-Intervenors' Motion to Vacate.[1]  The Motion is

15   made on the ground that the presiding judge, Chief District Judge Vaughn R. Walker (retired), was

16   disqualified from presiding over this case.  The grounds and procedures for recusal or

17   disqualification of a federal judge are codified in Title 28 U.S.C. §§ 455, *et seq.*  Those statutes

18   require a federal judge to recuse if, *inter alia*, the judge has a substantial non-pecuniary interest in

19   the case, or if there is some fact that brings the impartiality of the judge reasonably into question.  If

20   the judge does not recuse, a motion for disqualification may be made by a party.

21        Plaintiffs in this case are same-sex couples who claim that a California constitutional

22   provision that redefined marriage in California solely to encompass a union between one man and

23   one woman violated their rights under the federal Constitution.  Defendant-Intervenors were allowed

24   to intervene to advance an argument that the California constitutional provision did not violate the

25   federal Constitution.  After a court trial, Judge Walker entered judgment for Plaintiffs and enjoined

26   _____

27        [1]  (Defendant-Intervenors Dennis Hollingsworth, Gail J. Knight, Martin F. Gutierrez, Mark
     A. Jansson, and Protectmarriage.com's Motion to Vacate Judgment, hereafter, "Motion," Docket
28   Item No. 768.)

enforcement of the state constitution against them.  Defendant-Intervenors appealed that Judgment to the Ninth Circuit.  After he had retired, and while the appeal was pending, a newspaper article reported that Judge Walker shared that he is gay and that he was in a same-sex relationship at the time when he was presiding over this case.  Defendant-Intervenors brought this Motion before the District Court to vacate the Judgment on the ground that Judge Walker was disqualified from presiding over the case because his same-sex relationship was, or reasonably appeared to be, a non-pecuniary interest that could be substantially affected by the outcome of the case.

After considering the Oppositions to the Motion and the governing law, as discussed below, the Court finds that neither recusal nor disqualification was required based on the asserted grounds.  The sole fact that a federal judge shares the same circumstances or personal characteristics with other members of the general public, and that the judge could be affected by the outcome of a proceeding in the same way that other members of the general public would be affected, is not a basis for either recusal or disqualification under Section 455(b)(4).  Further, under Section 455(a), it is not reasonable to presume that a judge is incapable of making an impartial decision about the constitutionality of a law, solely because, as a citizen, the judge could be affected by the proceedings.  Accordingly, the Motion to Vacate Judgment on the sole ground of Judge Walker's same-sex relationship is DENIED.

## II.  BACKGROUND

A detailed procedural history of this case can be found in the Court's August 4, 2010 Findings of Fact and Conclusions of Law.  (hereafter, "Aug. 4 Order," Docket Item No. 708 at 3-4.)  In addition, a videotape and court reporter's transcript recorded the trial proceedings.  The Court summarizes the history of the case as relevant to the present Motion.

From January 11-17, 2010, a bench trial was held by the Court with Judge Walker presiding.  (Aug. 4 Order at 3-4.)  On August 4, 2010, Judge Walker entered Findings of Fact and Conclusions of Law, and entered Judgment against the government Defendants, permanently enjoining them from the enforcement of Proposition 8 and Article I, § 7.5 of the California constitution.  (Id. at

1  136.) On August 4, 2010, Defendant-Intervenors filed an appeal of the Court's final Judgment with

2  the Ninth Circuit. (See Docket Item No. 713.)

3  On March 2, 2011, following the retirement of Judge Walker, the District Court case was

4  reassigned to Chief Judge James Ware. (See Docket Item No. 765.) On April 25, 2011, while the

5  appeal was pending, Defendant-Intervenors moved the District Court to vacate the Judgment. (See

6  Docket Item No. 768.) On April 27, 2011, the District Court issued an Order setting the Motion for

7  an expedited hearing and setting a briefing schedule. (See Docket Item No. 769.)

8  On May 10, 2011, Defendant Los Angeles County Clerk-Recorder filed a Statement of No

9  Position on Defendant-Intervenors' Motion.[2] On May 12, 2011, Plaintiff-Intervenor City and

10  County of San Francisco filed an Opposition to Defendant-Intervenors' Motion. (See Docket Item

11  No. 775.) Also on May 12, 2011, State Defendants filed an Opposition to Defendant-Intervenors'

12  Motion. (See Docket Item No. 778.) On May 13, 2011, Plaintiffs filed an Opposition to Defendant-

13  Intervenors' Motion.[3] Various legal organizations and a broad swath of local and minority bar

14  associations have filed *amicus curiae* briefs in opposition to the Motion. (See Docket Item Nos.

15  783, 788, 793.) On June 13, 2011, the Motion was heard and submitted for decision.

### III.  DISCUSSION

**A.  Jurisdiction**

18  Fed. R. Civ. P. 60(b) prescribes the grounds for moving to vacate a district court judgment.

19  A permissible ground for moving to vacate a judgment is that the district court judge who presided

20  over the case was disqualified. See Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847,

21  862-63 (1988). Once an appeal from a judgment is filed, the district court is ousted of jurisdiction to

22  take certain actions. See Davis v. Yageo Corp., 481 F.3d 661, 685 (9th Cir. 2007). However, Fed.

23  R. Civ. P. 62.1(a) provides that "[i]f a timely motion is made for relief that the court lacks authority

25  [2] (See Defendant Dean C. Logan Los Angeles County/Registrar-Recorder County Clerk's Statement of No Position to Motion to Vacate Judgment, Docket Item No. 774.)

27  [3] (Plaintiffs' Opposition to Proponents' Motion to Vacate Judgment, hereafter, "Plaintiffs' Opp'n," Docket Item No. 779.)

28

United States District Court
For the Northern District of California

1  to grant because an appeal that has been docketed and is pending, the [district] court may: (1) defer

2  considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the

3  court of appeals remands for that purpose or that the motion raises a substantial issue."  Therefore,

4  notwithstanding the pending appeal of the Judgment, the Court has jurisdiction to hear this Motion

5  and, in so doing, to take one of the actions specified by Rule 62.1.

6  **B.   Timeliness**

7       Fed. R. Civ. P. 62.1 provides that a motion seeking relief from a district court while an

8  appeal is pending must be "timely."  Plaintiffs challenge the timeliness of the Motion.  (Plaintiffs'

9  Opp'n at 17-19.)  The timeliness of a motion to vacate a judgment is governed by Fed. R. Civ. P.

10  60(b), which permits a court to entertain a motion to relieve a party from a final judgment if the

11  motion is made "at the earliest possible time after the facts are discovered."  See First Interstate

12  Bank of Az., N.A. v. Murphy, Weir & Butler, 210 F.3d 983, 988 n.8 (9th Cir. 2000).

13       On April 6, 2011, a published interview with Judge Walker reported that he is gay and in a

14  "10-year relationship with a physician."[4]  Apparently concluding that such a relationship constituted

15  a ground for disqualification from presiding over this case, Defendant-Intervenors filed the present

16  Motion on April 25, 2011.  Defendant-Intervenors contend that their Motion is timely because they

17  filed it "promptly" after they learned of Judge Walker's relationship.  (Motion at 12-13 n.3.)

18  Plaintiffs respond that the Motion is untimely, because Defendant-Intervenors "knew well before"

19  April 2011, and at least two months before the Court announced its decision, that Judge Walker "is

20  gay and in a relationship."  (Plaintiffs' Opp'n at 17-19.)  Plaintiffs support this contention by

21  pointing to newspaper articles from 2010 that suggested that Judge Walker is gay.[5]

22

23

_____

24     [4]  (Motion at 7 (citing Dan Levine, *Gay Judge Never Thought to Drop Marriage Case*,
   Reuters, Apr. 6, 2011, *available at* http://www.reuters.com/article/2011/04/06/us-gaymarriage-
25  judge-idUSTRE7356TA20110406).)

26     [5]  (See, e.g., Declaration of Enrique A. Monagas in Support of Plaintiffs' Opposition to
   Proponents' Motion to Vacate Judgment, Ex. B, Judge Being Gay a Non-Issue During Prop 8 Trial,
27  Docket Item No. 780-2.)

28                                                    4

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

1    Because the ground for Defendant-Intervenors' Motion is Judge Walker's same-sex

2    relationship, and not his sexual orientation, the Court does not find that the articles from 2010

3    provide a basis for imputing to Defendant-Intervenors knowledge of Judge Walker's same-sex

4    relationship that would be sufficient to render the Motion untimely.  Therefore, the Court finds that

5    the Motion is timely within the meaning of Rules 60(b) and 62.1.

6    The Court observes that this Motion presents a unique procedural posture, insofar as

7    Defendant-Intervenors first raised the Motion following entry of a Judgment that is under appeal,

8    and before a different district court judge, in light of the retirement of the presiding judge.  While

9    such a Motion would be reviewed for clear error if raised for the first time before the circuit court,[6]

10   the Ninth Circuit has not definitively held that such a standard would apply in a case where the

11   Motion is brought before the district court, but subsequent to the retirement of the presiding judge.

12   However, because this Motion would not survive the lower *de novo* standard of review, the Court

13   need not reach whether a clear error standard would be more appropriate.

14   **C.    Recusal Pursuant to 28 U.S.C. § 455(b)(4)**

15   At issue is whether Judge Walker was required to recuse himself under Section 455(b)(4).[7]

16   The fact that a federal judge shares a fundamental characteristic with a litigant, or shares

17   membership in a large association such as a religion, has been categorically rejected by federal

18   courts as a sole basis for requiring a judge to recuse her or himself.[8]  Defendant-Intervenors deny

19   that the Motion is based on bias against gay or lesbian judges or based on the broad proposition that

---

21   [6] Weiss v. Sheet Metal Workers Local No. 544 Pension Trust, 719 F.2d 302, 304 (9th Cir.
22   1997).

23   [7] The Court examines this ground for the Motion first, while recognizing that even if the
     Court finds that Judge Walker has no actual interest, a finding or reasonable appearance of partiality
24   under Section 455(a) is an independent ground for disqualification.  See, e.g., First Interstate Bank
     of Az., 210 F.3d at 985 n.1.

25   [8] See, e.g., Bryce v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648, 660 (10th
     Cir. 2002); MacDraw, Inc. v. CIT Group Equip. Financing, Inc., 138 F.3d 33, 37 (2d Cir. 1998);
26   Blank v. Sullivan & Cromwell, 418 F. Supp. 1, 4 (S.D.N.Y. 1975); Feminist Women's Health
     Center v. Codispoti, 69 F.3d 399, 400 (9th Cir. 1995); United States v. Alabama, 828 F.2d 1532,
27   1541-42 (11th Cir. 1987); In re City of Houston, 745 F.2d 925, 931 (5th Cir. 1984).

28

United States District Court

For the Northern District of California

a gay or lesbian judge is incapable of being fair if sexual orientation is an issue in a case.[9]  Rather, Defendant-Intervenors narrow their Motion to the contention that Judge Walker had an actual interest in the case.  Plaintiffs in the underlying case were same-sex couples who were challenging the constitutionality of a California Proposition that, Plaintiffs contend, stripped them of the right, as same-sex couples, to marry.  At the time the case was assigned to him, Judge Walker was in a same-sex relationship.  Defendant-Intervenors contend that Judge Walker had an interest in the case because if he were to decide that Plaintiffs were entitled to have their right to marry restored, even though there was no evidence that Judge Walker intended to marry, the sole fact that he was in a same-sex relationship placed Judge Walker in the position of deciding a case that could affect him if he were to desire to marry.  (Motion at 5-7.)

Section 455(b)(4) provides that a judge shall disqualify himself where "[h]e knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding . . . ."  Unlike Section 455(a), Section 455(b) provides for mandatory recusal in cases of "actual bias" and, thus, the test is a subjective one.  United States v. Spangle, 626 F.3d 488, 496 (9th Cir. 2010).  Section 455(b)(4) contains two distinct bases for recusal: (1) when a judge has a financial interest in the subject matter in controversy or in a party to the proceeding; or (2) when a judge has any other interest that could be substantially affected by the outcome of the proceeding.  The latter basis of "any other interest," unlike the former basis which is not so modified, requires recusal only if these non-pecuniary interests "could be substantially affected by the outcome in the proceeding."  In re Cement Antitrust Litigation, 688 F.2d 1297, 1308 (9th Cir. 1982).

Neither the Ninth Circuit nor any other circuit has considered whether a judge presiding over a same-sex marriage case who is also in a same-sex relationship has a disqualifying non-pecuniary interest.  However, other circuits have held that "where federal judges have possessed speculative

---

[9] (See Motion at 5 ("It is important to emphasize at the outset that we are *not* suggesting that a gay or lesbian judge could not sit in on this case.") (emphasis in original).)

United States District Court

For the Northern District of California

1    [non-pecuniary] interests as members of large groups, [] these interests [are] too attenuated to

2    warrant disqualification [under Section 455(b)(4)]." <u>Alabama</u>, 828 F.2d at 1541-42.  In light of the

3    attenuated nature of non-pecuniary interests held by a judge as a general member of the public or a

4    large community, "courts also have concluded that no personal bias or reasonable doubt about the

5    judge's impartiality exists in these circumstances." <u>Id.</u>  In regards to non-pecuniary benefits reaped

6    by judges solely by nature of their membership in a minority group, courts have cautioned against

7    mandating recusal "merely because of the way in which the attorneys in the case decided to frame

8    the class," noting ripe grounds for manipulation.  <u>In re City of Houston</u>, 745 F.2d at 931 (citing <u>Ely</u>

9    <u>Valley Mines, Inc. v. Lee</u>, 385 F.2d 188, 191 (9th Cir. 1967) (finding recusal not warranted when

10   parties intentionally framed the litigation to involve the presiding judge's personal interests in order

11   to move for recusal)).  Further, such a standard "would come dangerously close to holding that

12   minority judges must disqualify themselves from all major civil rights actions." <u>Alabama</u>, 828 F.2d

13   at 1542.

14          These cases lead the Court to adopt the following legal conclusion: In a case that could affect

15   the general public based on the circumstances or characteristics of various members of that public,

16   the fact that a federal judge happens to share the same circumstances or characteristic and will only

17   be affected in a similar manner because the judge is a member of the public, is not a basis for

18   disqualifying the judge under Section 455(b)(4).

19          In applying this conclusion to the present case, the Court finds that Judge Walker was not

20   required to recuse himself under Section 455(b)(4) on the ground that he was engaged in a long-term

21   same-sex relationship and, thus, could reap speculative benefit from an injunction halting

22   enforcement of Proposition 8 in California.  In particular, in a case involving laws restricting the

23   right of various members of the public to marry, any personal interest that a judge gleans as a

24   member of the public who might marry is too attenuated to warrant recusal.  Requiring recusal

25   because a court issued an injunction that could provide some speculative future benefit to the

26   presiding judge solely on the basis of the fact that the judge belongs to the class against whom the

27   unconstitutional law was directed would lead to a Section 455(b)(4) standard that required recusal of

28                                              7

1   minority judges in most, if not all, civil rights cases.  Congress could not have intended such an

2   unworkable recusal statute.

3          Alternatively, Defendant-Intervenors contend that Judge Walker should be disqualified

4   because his same-sex relationship gave him a markedly greater interest in a case challenging

5   restrictions on same-sex marriage than the interest held by the general public.  The Court rejects this

6   argument on two readily apparent grounds.  First, it is inconsistent with the general principles of

7   constitutional adjudication to presume that a member of a minority group reaps a greater benefit

8   from application of the substantive protections of our Constitution than would a member of the

9   majority.  The fact that this is a case challenging a law on equal protection and due process grounds

10  being prosecuted by members of a minority group does not mean that members of the minority

11  group have a greater interest in equal protection and due process than the rest of society.  In our

12  society, a variety of citizens of different backgrounds coexist because we have constitutionally

13  bound ourselves to protect the fundamental rights of one another from being violated by unlawful

14  treatment.  Thus, we all have an equal stake in a case that challenges the constitutionality of a

15  restriction on a fundamental right.  One of the duties placed on the shoulders of federal judges is the

16  obligation to review the law to determine when unequal treatment violates our Constitution and

17  when it does not.  To the extent that a law is adjudged violative, enjoining enforcement of that law is

18  a public good that benefits all in our society equally.  Although this case was filed by same-sex

19  couples seeking to end a California constitutional restriction on their right to marry, all Californians

20  have an equal interest in the outcome of the case.  The single characteristic that Judge Walker shares

21  with the Plaintiffs, albeit one that might not have been shared with the majority of Californians, gave

22  him no greater interest in a proper decision on the merits than would exist for any other judge or

23  citizen.

24         Second, disqualifying Judge Walker based on an inference that he intended to take advantage

25  of a future legal benefit made available by constitutional protections would result in an unworkable

26  standard for disqualification.  Under such a standard, disqualification would be based on

27  assumptions about the amorphous personal feelings of judges in regards to such intimate and

28

United States District Court
For the Northern District of California

shifting matters as future desire to undergo an abortion, to send a child to a particular university or to engage in family planning. So too here, a test inquiring into the presiding judge's desire to enter into the institution of marriage with a member of the same sex, now or in the future, would require reliance upon similarly elusive factors. Given Section 455(b)(4)'s requirement that non-pecuniary interests must be "substantially affected" to require recusal, recusal could turn on whether a judge "fervently" intended to marry a same-sex partner versus merely "lukewarmly" intended to marry, determination that could only be reached through undependable and invasive self-reports. The Ninth Circuit has recognized the inherent unworkability of such a subjective recusal standard. Feminist Women's Health Center, 69 F.3d 399 at 400. In holding that recusal was not warranted on Article VI grounds in an action brought by an abortion clinic against protestors of the clinic where one of the presiding panel judges belonged to the Catholic faith, the court acknowledged that any test where recusal would turn on whether the judge's religious beliefs were "fervently-held" or "lukewarmly maintained" would collapse under such amorphous, unworkable distinctions. Id. ("No thermometer exits for measuring the heatedness of a religious belief objectively.").

To hold otherwise, and require recusal merely based on the fact that the presiding judge is engaged in a long-term same-sex relationship, is to place an inordinate burden on minority judges. Such a standard would, in essence, infer subjective future intent on the basis of a judge's membership in a particular class. In this case, it is notable that the presiding judge has publicly disclosed that he is in a "10-year relationship with a physician."[10] However, there has been no similar disclosure as to the judge's intent to marry, whether now or in the future. The Court declines to adopt the principle that absence of disclosure should warrant the mandatory inference that the presiding judge "fervently" intends to marry and, thus, holds an interest in this case that is

---

[10]  (Motion at 7 (citing Dan Levine, *Gay Judge Never Thought to Drop Marriage Case*, Reuters, Apr. 6, 2011, *available at* http://www.reuters.com/article/2011/04/06/us-gaymarriage-judge-idUSTRE7356TA20110406).)

9

substantially affected by the outcome.[11]  Absence of disclosure could equally connote ambivalence or uncertainty in the face of such a weighty question as whether one intends to marry now or in the future, especially when such an intent involves the willingness and participation of a partner for whom the judge cannot answer.  Inferring otherwise would transmute the subjective standard of Section 455(b)(4) requiring "actual bias" into an objective standard, in contravention of clear Ninth Circuit precedent.[12]  <u>Spangle</u>, 626 F.3d at 496.  Further, assuming *arguendo* such a disclosure had occurred, it is beyond the institutional capacity of a court to interpret the subtleties of a judge's personal, and likely ever-changing, subjective states on such intimate matters.  Even a full renunciation on the record of any intent to ever marry a person of the same sex would be ripe for challenge, should the judge's disclaimer not ring true enough or should indications arise that the judge's intent had shifted since the renunciation.  Thus, to base a recusal standard on future subjective intent to take advantage of constitutional rights is to create an inadministrable test, frustrating congressional efforts to protect judicial integrity with a clear, mandatory recusal statute.

---

[11]  Contrary to Defendant-Intervenors' efforts to distinguish <u>In re City of Houston</u> and <u>Alabama</u> on the grounds that the judges in each made disclosures regarding information relevant to their membership in the class, in neither case did the circuit courts hold that Section 455(b)(4) mandated such disclosure.  In fact, in holding that recusal was not required, the Eleventh Circuit recognized in <u>Alabama</u> that any potential interest, disclosed or not, to attend a public institution of higher learning is "shared by all young black Alabamians."  828 F.2d at 1541.  Moreover, while the judge in <u>In re City of Houston</u> did disclose on the record certain facts that would be relevant to her status as a class member, including her past and current residential addresses, and the voter registration status of both herself and her husband, the court neither based its holding upon disclosure, nor required the presiding judge to disclose her future intent to move into a predominantly black or Hispanic neighborhood or to register to vote.  <u>See</u> <u>Leroy v. City of Houston</u>, 592 F. Supp. 415, 418 (S.D. Tex. 1984).  Rather, the court focused its inquiry on the factors that placed the presiding judge within the class, all of which would generally be a matter of public record and did not extend to consideration of future intentions.

[12]  Moreover, such a presumption would similarly contravene Ninth Circuit precedent recognizing the opposite principle: that a presumption of impartiality should guide any interpretation of a judge's decision not to disclose.  <u>See, e.g.</u>, <u>First Interstate Bank of Az.</u>, 210 F.3d at 988; <u>see also</u> <u>Ortiz v. Stewart</u>, 149 F.3d 923, 939 (9th Cir. 1998).

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    Defendant-Intervenors' reliance on In re City of Houston and Alabama for the principle that

2 Section 455(b)(4) mandated recusal in the present case misinterprets the doctrine.[13]   In re City of

3 Houston involved an action seeking injunctive relief against the City's at-large election system on

4 the ground that it discriminated against the City's African-American and Hispanic citizens by

5 diluting their votes.  745 F.2d at 926-27.  The judge assigned to the case was African-American and

6 a resident of the City.  The City moved the judge to recuse herself under Sections 455(a), (b)(4) and

7 (b)(5)(i).  The City contended that recusal was warranted because the judge herself was a member of

8 the class and, given her ethnicity, it was likely that at least one member of her family was also a

9 member of the class.  Id. at 930.  The Fifth Circuit held that it was not clearly erroneous for the

10 judge to deny the City's motion.  Id. at 926-27.  The court held that the judge's "posture in this case

11 is not what Congress intended to proscribe in the recusal provisions of [Section 455]" because: (1)

12 the judge's "interest in this case is nonpecuniary and is no different from that of the general voting

13 public . . ."; (2) there was a "lack of any possible attrition of public confidence in the impartiality of

14 the judicial system if recusal is not ordered"; (3) of "the attenuated nature of any interest that the

15 judge might have in the outcome of this case"; and (4) of "the illusoriness of the class delineation,

16 inasmuch as all members of the voting public in Houston have an equal interest in the suit . . . ."  Id.

17 at 932.  Given the attenuated nature of the judge's interest, the court held that recusal under Section

18 455(b)(4) was not required.  Id.

19    In Alabama, the Eleventh Circuit held that it was not clearly erroneous for the African-

20 American trial judge, who had minor children who were members of the class, which included all

21 children "who are eligible to attend or will become eligible to attend the public institutions of higher

22 learning . . . ," to deny a motion to disqualify in an action seeking solely injunctive relief

23 desegregating Alabama's system of public higher education.  828 F.2d at 1541-42.  Relying heavily

24 on the Fifth Circuit's holding in In re City of Houston, the court found that "the interests of [the

25

26    [13] (Reply Brief in Support of Motion to Vacate of Defendant-Intervenors Dennis

27 Hollingsworth, Gail J. Knight, Martin F. Gutierrez, Mark A. Jansson, and Protectmarriage.com at 6-9, hereafter, "Reply," Docket Item No. 787.)

28

United States District Court

For the Northern District of California

1   presiding judge's] children are not 'substantial' enough to merit disqualification" and that "[a]ny

2   beneficial effects of this suit upon these children were remote, contingent and speculative." Id. at

3   1541.  The court based its holding on the ground that it lacked evidence that the presiding judge's

4   children had any future intent to attend a public institution of higher learning and, further, "[a]ny

5   potential interest . . . is shared by all young black Alabamians." Id.  In addition, the court found that

6   "[t]o disqualify [the presiding judge] on the basis of his children's membership in the plaintiff class

7   also would come dangerously close to holding that minority judges must disqualify themselves from

8   all major civil rights actions," a result that would be "intolerable." Id. at 1542.

9        Moreover, in contrast to the present case, both the Eleventh and Fifth Circuits faced civil

10   rights actions that were brought on behalf of a class, and in each case the presiding judge or that

11   judge's minor children were parties to the action before them.  Here, any substantial interest that

12   Defendant-Intervenors contend is affected by the outcome of the present action is even more

13   attenuated given the fact that the benefit is not bestowed upon the presiding judge as a consequence

14   of his membership within a class, but as a possible side-effect of the enjoinment of the enforcement

15   of an unconstitutional proposition.  Such an interest is the same as that shared by all citizens of

16   California and, thus, the same reasoning that guided the Fifth and Eleventh Circuits to hold that such

17   an attenuated interest is not sufficiently substantial to require recusal under Section 455(b)(4) also

18   applies in this case.

19        Accordingly, the Court DENIES Defendant-Intervenors' Motion to Vacate Judgment on the

20   ground that under Section 455(b)(4) the presiding judge failed to recuse himself.

21   **D.    Recusal Pursuant to 28 U.S.C. § 455(a)**

22        Alternatively, Defendant-Intervenors contend that even if Judge Walker's same-sex

23   relationship did not constitute a substantial interest under Section 455(b)(4), that relationship brings

24   his impartiality reasonably into question under Section 455(a).  (Motion at 2, 10.)  Thus, they

25   contend that Judge Walker should be disqualified to protect the integrity of the judicial system.  (Id.)

26   Further, they contend that the fact of Judge Walker's non-disclosure of his relationship brings his

27

28                                                12

United States District Court

For the Northern District of California

impartiality into question under Section 455(a).  (Id. at 12.)  The Court considers each contention in turn.

**1.        Whether Judge Walker's Impartiality Could Reasonably Be Questioned**

Section 455(a) provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."[14]  "Since a federal judge is presumed to be impartial, the party seeking disqualification bears a substantial burden to show that the judge is biased." Torres v. Chrysler Fin. Co., No. C 07-00915 JW, 2007 WL 3165665, at *1 (N.D. Cal. Oct. 25, 2007) (citing Reiffin v. Microsoft Corp., 158 F. Supp. 2d 1016, 1021-22 (N.D. Cal. 2001)).  "The test for creation of apparent bias sufficient to require dismissal under [Section 455] is an objective one: 'whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'"  Herrington v. Sonoma Cnty., 834 F.2d 1488, 1502 (9th Cir. 1987) (quoting United States v. Nelson, 718 F.2d 315, 321 (9th Cir. 1983)).  In this context, the "reasonable person" is not someone who is "hypersensitive or unduly suspicious," but rather a "well-informed, thoughtful observer" who "understand[s] all the relevant facts" and "has examined the record and law."  United States v. Holland, 519 F.3d 909, 914 (9th Cir. 2008) (citations omitted).[15]  This standard does not mandate recusal upon the mere "unsubstantiated suspicion of personal bias or prejudice."  Id. (citation omitted).

_____

[14]  Even if there is no finding of actual bias or partiality, the mere appearance of partiality may be sufficient under Section 455(a) to require recusal.  See, e.g., First Interstate Bank of Az., 210 F.3d at 985 n.1 (finding that the basis for recusal may be the "appearance of impropriety," even where there was "no suggestion of actual impropriety or lack of impartiality" by a judge).

[15]  In Holland, the court explained that the "reasonable" observer under Section 455(a) is "someone who 'understand[s] all the relevant facts' and has examined the record and law."  Holland, 519 F.3d at 914 (citation omitted).  The Holland court did not make clear whether the "law" which the reasonable observer would examine consists of: (1) the substantive law governing the case itself (e.g., contract law in a breach of contract case); (2) the law of recusal governing judicial conduct; or (3) both.  However, because the Holland court stated that a reasonable observer would examine "the record and law," the Court understands it to have meant that the reasonable observer would examine the record of the case (i.e., the facts of the case) and the law pertinent to those facts.  Thus, the Court construes Holland to say that the reasonable observer under Section 455(a) is someone who has examined the substantive law governing the case itself, but who is not necessarily familiar with the law of recusal.

United States District Court

For the Northern District of California

The reasonable observer contemplated by Section 455(a) is, like the "reasonable person" contemplated in other areas of the law, a personification created by the Court to facilitate discussion of the idea of "reasonableness." However, in speaking of reasonableness in terms of the reasonable person, the Court is careful to avoid converting the objective standard of Section 455(a) into a subjective one. That is, there is no actual person whose thoughts or beliefs are used as the yardstick of what is "reasonable." The Court, in creating that personification of reasonableness, is bound to do so within the confines of the Constitution and other law. Thus, it would not be reasonable to regard a fact as bringing a judge's impartiality into question if doing so would institute a "double standard for minority judges" whereby the fact that a judge is gay, or black, or female would "raise doubts about [that judge's] impartiality." See Alabama, 828 F.2d at 1542. In addition, the Court recognizes that a fact is not necessarily a basis for questioning a judge's impartiality merely because that fact might lead a segment of the public to question the judge's impartiality. Reasonableness is not determined on the basis of what a particular group of individuals may think, nor even on the basis of what a majority of individuals in a group believe to be the case.[16]

In addition, Section 455(a) is "limited by the 'extrajudicial source' factor which generally requires as the basis for recusal something other than rulings, opinions formed or statements made by the judge during the course of trial." Holland, 519 F.3d at 913-14. The Ninth Circuit has cautioned that Section 455(a) claims "are fact driven, and as a result, the analysis of a particular [Section 455(a)] claim must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue." Clemens v. United States Dist. Court for Central Dist. of California, 428

---

[16] See, e.g., Cheney v. U.S. Dist. Court for Dist. of Columbia, 541 U.S. 913, 923-29 (2004) (Scalia, J.) (explaining, in response to a Section 455(a) recusal motion, that Justice Scalia's impartiality could not "reasonably be questioned," even though many members of the public had concluded that he appeared to be partial in the case, because the recusal question cannot be determined by "uninformed opinion[s]," even if a "significant portion of the press . . . demands" such recusal); see also In re Drexel Burnham Lambert Inc., 861 F.2d 1307, 1313 (2d Cir. 1988) (explaining that judges determine the "appearance of impropriety" under Section 455(a) as they determine "all legal issues," and "not by considering what a straw poll of the only partly informed man-in-the-street would show").

F.3d 1175, 1178 (9th Cir. 2005) (citation omitted).  Moreover, Section 455(a) "does not require recusal based on speculation."  <u>Id.</u> at 1180.

Here, Defendant-Intervenors contend that consideration of the fact that Judge Walker "has been involved in a 10-year (8-year at the time that Plaintiffs commenced this suit) committed same-sex relationship" would lead a reasonable person to question Judge Walker's impartiality.  (Motion at 11-12.)  The Court finds that disqualification under Section 455(a) on the basis of this fact fails, because it depends upon the assumption that a judge who is in a relationship has an interest in getting married which is so powerful that it would render that judge incapable of performing his duties.[17]  Under Ninth Circuit law, however, this assumption is unreasonable.  A well-informed, thoughtful observer would recognize that the mere fact that a judge is in a relationship with another person–whether of the same *or* the opposite sex–does not *ipso facto* imply that the judge must be so interested in marrying that person that he would be unable to exhibit the impartiality which, it is presumed, all federal judges maintain.[18]  <u>Torres</u>, 2007 WL 3165665, at *1; <u>see also</u> <u>Holland</u>, 519 F.3d at 912 (explaining that a judge's general obligation to participate in cases assigned to him is reflected in the oath whereby federal judges "obligate[] [themselves] to 'faithfully and impartially discharge and perform [their] duties' and to 'administer justice without respect to persons, and do equal right to the poor and to the rich'") (quoting 28 U.S.C. § 453)).  To assume otherwise is to engage in speculation about a judge's motives and desires on the basis of an unsubstantiated suspicion that the judge is personally biased or prejudiced.  Mere speculation of that nature does not trigger the recusal requirements of Section 455(a).  <u>Clemens</u>, 428 F.3d at 1180; <u>Holland</u>, 519 F.3d at 914.

---

[17]  (<u>See, e.g.</u>, Motion at 5 (stating that it "must be presumed" that Judge Walker, by finding that Proposition 8 was unconstitutional, in effect "issue[d] an injunction directing a state official to issue a marriage license *to him*") (emphasis in original).)

[18]  Further, the mere fact that an individual is in a relationship with a person does not necessarily imply that that individual is interested in getting married to that person at all.  (<u>See, e.g.</u>, Reply at 2 (contending that "almost two-thirds of [committed same-sex couples] in California would get married if permitted to do so," which suggests that more than one-third of such couples in California have no interest in being married).)

15

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

### 2. Whether Judge Walker's Non-Disclosure of His Relationship Would Lead a Reasonable Observer to Question His Impartiality

Alternatively, Defendant-Intervenors contend that a reasonable observer would question Judge Walker's impartiality, given the fact that Judge Walker did not disclose his same-sex relationship "until eight months after final judgment was entered, and after he had retired from the bench," and because Judge Walker "has never disclosed whether he and his partner have (or have ever had) any interest in marrying should a right to marry an individual of the same sex be established." (Motion at 11-12.) That is, Defendant-Intervenors posit that Judge Walker's silence about the existence of his relationship, and about whether he and his partner have any interest in marrying, would necessarily give rise, in the mind of a reasonable observer, to an assumption that Judge Walker's silence indicates that he was not impartial.[19] However, silence is by its very nature ambiguous, and thus is open to multiple interpretations. Another, and equally reasonable, way to interpret that silence is suggested by Ninth Circuit caselaw, which holds that it is to be presumed that any judge is impartial. See, e.g., First Interstate Bank of Az., 210 F.3d at 988 (stating that judges "are presumed to be impartial and to discharge their ethical duties faithfully so as to avoid the appearance of impropriety"); see also Ortiz v. Stewart, 149 F.3d at 939 ("[W]e abide by the general presumption that judges are unbiased and honest"). Beginning from the presumption that judges are impartial, the Court postulates that a judge who is silent in such a situation has already, *sua sponte*, considered the question of recusal and has determined that he need not disqualify himself, because no reasonable observer would conclude that his impartiality could reasonably be questioned. To adopt Defendant-Intervenors' contrary interpretation would vitiate the presumption of judicial impartiality, as it would lead the reasonable observer to the opposite presumption; namely, that silence is to be taken as conclusive evidence of a judge's partiality.

---

[19] As the Court has previously found, Judge Walker was under no duty to disclaim any future subjective interest in entering a same-sex marriage.

16

United States District Court

For the Northern District of California

1    Defendant-Intervenors' reliance on In re Kensington International Limited,[20] United States v.

2    Murphy[21] and Tramonte v. Chrysler Corp.[22] in support of the proposition that Judge Walker was

3    required to disclose the existence and nature of his relationship is misplaced.[23]  (Motion at 8-9.)  In

4    In re Kensington, the Third Circuit found that a district court judge should have recused himself

5    under Section 455(a), because of his extensive *ex parte* communications with two court-appointed

6    advisors in a complex asbestos-related case, where those advisors were simultaneously representing

7    asbestos claimants in a separate case.  In re Kensington, 368 F.3d at 302-04.  The Third Circuit

8    stated that the burden was on the judge to inform the parties that he was being advised *ex parte* by

9    lawyers who, because they were "actively participating as zealous advocates" in the other case, had

10   a conflict of interest.  Id. at 313-14.  Murphy involved a criminal trial in which the district court

11   judge was "the best of friends" with the government's principal lawyer, and in which the judge and

12   the lawyer went on a vacation together immediately following the trial.  Murphy, 768 F.2d at 1536-

13   37.  The Seventh Circuit found that the burden was on the judge to disclose his close friendship and

14   vacation plans with the lawyer.  Id. at 1537.  Tramonte was a class-action suit in which Chrysler was

15   the defendant, and in which a family member of the district court judge owned a car manufactured

16   by Chrysler, which made that family member a potential member of the class.  Tramonte, 136 F.3d

17   ——————————————

18       [20] 368 F.3d 289 (3d Cir. 2004).

19       [21] 768 F.2d 1518 (7th Cir. 1985).

20       [22] 136 F.3d 1025 (5th Cir. 1998).

21       [23]  In addition, Defendant-Intervenors appear to suggest that Judge Walker had a duty, under
     Section 455(e), to disclose his same-sex relationship.  (See Motion at 2 (contending that Judge
22   Walker, because of his same-sex relationship, was "obligated either to recuse himself or to provide
     'full disclosure on the record of the basis for disqualification'") (quoting 28 U.S.C. § 455(e)).)
23   However, this contention is misguided.  Section 455(e) governs the conditions under which a ground
     for disqualification may be waived by the parties, and states that if the ground for disqualification
24   arises only under Section 455(a), a judge may accept waiver of that ground from the parties,
     "provided [that the waiver] is preceded by a full disclosure on the record of the basis for
25   disqualification."  Thus, the requirement of disclosure on the record is conditional on the finding that
     there was a valid ground for disqualification under Section 455(a).  However, as discussed
26   previously, the Court finds that Judge Walker had no valid ground for disqualifying himself under
     Section 455(a).  Therefore, the disclosure requirement of Section 455(e) was not triggered, and
27   Judge Walker had no obligation under Section 455(e) to disclose his relationship status on the
     record.

28                                                    17

at 1027.  The Fifth Circuit found that the burden was on the judge to disclose whether her spouse or children owned a car manufactured by Chrysler, because a judge "has a duty to be watchful of such disqualifying circumstances" and disclose them on the record.  Id. at 1030-31.

In each of these instances, the judge was associated with one or more individuals who had a clear, concrete stake in the outcome of the litigation.  And in each instance, the appellate court found that the judge was required to disclose the existence and nature of his association with those individuals.  Here, by contrast, Judge Walker had no such association, and thus had nothing to disclose.  Defendant-Intervenors cite no case suggesting that a judge has a duty to disclose information about his personal life when such information does not pertain to the judge's association with an individual having a clear, concrete stake in the outcome of the litigation, and the Court is not aware of any cases standing for that proposition.[24]

In fact, the Court observes that Judge Walker, like all judges, had a duty to preserve the integrity of the judiciary.  Among other things, this means that if, in an overabundance of caution, he were to have disclosed intimate, but irrelevant, details about his personal life that were not reasonably related to the question of disqualification, he could have set a pernicious precedent.  Such a precedent would be detrimental to the integrity of the judiciary, because it would promote, incorrectly, disclosure by judges of highly personal information (e.g., information about a judge's history of being sexually abused as a child), however irrelevant or time-consuming.  Contrary to the intent of Section 455, which was designed to preserve judicial integrity through practices of transparency, it is clear that fostering the practice of commencing a judicial proceeding with an extensive exploration into the history and psyche of the presiding judge would produce the spurious appearance that irrelevant personal information could impact the judge's decision-making, which would be harmful to the integrity of the courts.

---

[24]  In fact, courts that have considered the question have taken the opposite view.  See, e.g., In re McCarthey, 368 F.3d 1266, 1269 (10th Cir. 2004) (declining to "craft a procedure that essentially will require district judges to submit to discovery . . . when a party lacks an adequate factual basis for disqualification on non-financial matters").

United States District Court
For the Northern District of California

1    Finally, the presumption that "all people in same-sex relationships think alike" is an

2  unreasonable presumption, and one which has no place in legal reasoning.  The presumption that

3  Judge Walker, by virtue of being in a same-sex relationship, had a desire to be married that rendered

4  him incapable of making an impartial decision, is as warrantless as the presumption that a female

5  judge is incapable of being impartial in a case in which women seek legal relief.  On the contrary: it

6  is reasonable to presume that a female judge or a judge in a same-sex relationship is capable of

7  rising above any personal predisposition and deciding such a case on the merits.  The Motion fails to

8  cite any evidence that Judge Walker would be incapable of being impartial, but to presume that

9  Judge Walker was incapable of being impartial, without concrete evidence to support that

10  presumption, is inconsistent with what is required under a reasonableness standard.[25]

11    Accordingly, the Court DENIES Defendant-Intervenors' Motion to Vacate Judgment on the

12  ground that the presiding judge failed to recuse himself under Section 455(a).

13                            **IV.  CONCLUSION**

14    The Court DENIES Defendant-Intervenors' Motion to Vacate Judgment.[26]

15

16  Dated:  June 14, 2011                        _____

17                                              JAMES WARE
                                               United States District Chief Judge

18

19  _____

20    [25]  Defendant-Intervenors also point to a number of Judge Walker's rulings in the case, "both
   procedural and substantive," and contend that the "nature of these rulings" contributes to the
21  "appearance of partiality" under Section 455(a).  (Motion at 3-4.)  Defendant-Intervenors concede
   that these rulings of themselves would not constitute a valid basis for a Section 455(a) motion,
22  insofar as judicial rulings "almost never" constitute a basis for such a motion.  (Id. at 12 (citing
   Liteky v. United States, 510 U.S. 540, 555 (1994)).)  Defendant-Intervenors only contend that such
23  rulings would "deepen the concerns" that a reasonable observer would, they contend, already have
   about Judge Walker's impartiality "as a result of his long-term same-sex relationship."  (Id.)
24  However, as discussed previously, the Court finds that a reasonable observer would not question
   Judge Walker's impartiality on the basis of his same-sex relationship.
25
     [26]  In light of the Court's finding that there was no violation of Section 455, the Court need
26  not reach the issue of whether such a violation would be of such a degree as to warrant the
   extraordinary remedy of vacating the Judgment under Fed. R. Civ. P. 60(b).  See Liljeberg, 486 U.S.
27  at 862-63.

28                                  19

1

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2

3   Alan Lawrence Schlosser aschlosser@aclunc.org
    Amir Cameron Tayrani Atayrani@gibsondunn.com
    Andrew Perry Pugno andrew@pugnolaw.com
4   Andrew Walter Stroud stroud@mgslaw.com
    Angela Christine Thompson angelathompsonesq@gmail.com
5   Austin R. Nimocks animocks@telladf.org
    Brian Ricardo Chavez-Ochoa chavezochoa@yahoo.com
6   Brian W Raum braum@telladf.org
    Charles J. Cooper ccooper@cooperkirk.com
7   Charles Salvatore LiMandri cslimandri@limandri.com
    Christine Van Aken christine.van.aken@sfgov.org
8   Christopher Dean Dusseault cdusseault@gibsondunn.com
    Christopher Francis Stoll cstoll@nclrights.org
9   Christopher James Schweickert cjs@wcjuris.com
    Claude Franklin Kolm claude.kolm@acgov.org
10  Daniel J. Powell Daniel.Powell@doj.ca.gov
    Danny Yeh Chou danny.chou@sfgov.org
11  David Boies dboies@bsfllp.com
    David E. Bunim Dbunim@haasnaja.com
12  David H. Thompson dthompson@cooperkirk.com
    David L. Llewellyn Dllewellyn@LS4law.com
13  David M. Balabanian david.balabanian@bingham.com
    Diana E Richmond drichmond@sideman.com
14  Elizabeth O. Gill egill@aclunc.org
    Enrique Antonio Monagas emonagas@gibsondunn.com
15  Ephraim Margolin ephraim_margolin@yahoo.com
    Eric Grant grant@hicks-thomas.com
16  Eric Alan Isaacson erici@rgrdlaw.com
    Erin Brianna Bernstein Erin.Bernstein@sfgov.org
17  Ethan D. Dettmer edettmer@gibsondunn.com
    Gordon Bruce Burns Gordon.Burns@doj.ca.gov
18  Herma Hill Kay hkay@law.berkeley.edu
    Holly L Carmichael holly.l.carmichael@gmail.com
19  Howard C. Nielson hnielson@cooperkirk.com
    Ilona Margaret Turner iturner@nclrights.org
20  James Bopp jboppjr@bopplaw.com
    James A Campbell jcampbell@telladf.org
21  James C. Harrison jharrison@rjp.com
    James Dixon Esseks jesseks@aclu.org
22  James J. Brosnahan jbrosnahan@mofo.com
    Jennifer Carol Pizer jpizer@lambdalegal.org
23  Jennifer Lynn Monk jmonk@faith-freedom.com
    Jeremy Michael Goldman jgoldman@bsfllp.com
24  Jerome Cary Roth Jerome.Roth@mto.com
    Jesse Michael Panuccio jpanuccio@cooperkirk.com
25  John Douglas Freed jfreed@cov.com
    Jon Warren Davidson jdavidson@lambdalegal.org
26  Jordan W. Lorence jlorence@telladf.org
    Joren Surya Bass jbass@perkinscoie.com
27  Jose Hector Moreno jhmoreno@jhmlaw.com

28

20

United States District Court
For the Northern District of California

1   Josh Schiller jischiller@bsfllp.com
    Judy Whitehurst Jwhitehurst@counsel.lacounty.gov
2   Kari Lynn Krogseng krogseng@rjp.com
    Kelly Wayne Kay oakkelly@yahoo.com
3   Kevin Trent Snider kevinsnider@pacificjustice.org
    Lauren Estelle Whittemore lwhittemore@fenwick.com
4   Leslie A Kramer lkramer@fenwick.com
    Louis P. Feuchtbaum lfeuchtbaum@sideman.com
5   Manuel Francisco Martinez manuel.martinez@acgov.org
    Mark Russell Conrad Mark.Conrad@mto.com
6   Mary Elizabeth McAlister court@lc.org
    Matthew Albert Coles mcoles@aclu.org
7   Matthew Dempsey McGill mmcgill@gibsondunn.com
    Michael Wolf mwolf@nethere.com
8   Michael James McDermott mjm1usa@aol.com
    Michael Stuart Wald mwald@stanford.edu
9   Patrick John Gorman pgorman@wctlaw.com
    Peter Obstler peter.obstler@bingham.com
10  Peter A. Patterson ppatterson@cooperkirk.com
    Peter C Renn prenn@lambdalegal.org
11  Richard J. Bettan rbettan@bsfllp.com
    Robert Henry Tyler rtyler@faith-freedom.com
12  Ronald P. Flynn ronald.flynn@sfgov.org
    Rosanne C. Baxter rbaxter@bsfllp.com
13  Sarah Elizabeth Piepmeier spiepmeier@gibsondunn.com
    Shannon Minter sminter@nclrights.org
14  Stephen V. Bomse sbomse@orrick.com
    Steven Edward Mitchel mitchelsteve@yahoo.com
15  Susan Marie Popik spopik@chapop.com
    Tamar Pachter Tamar.Pachter@doj.ca.gov
16  Tara Lynn Borelli tborelli@lambdalegal.org
    Terry Lee Thompson tl_thompson@earthlink.net
17  Theane Evangelis Kapur tkapur@gibsondunn.com
    Theodore B Olson tolson@gibsondunn.com
18  Theodore Hideyuki Uno tuno@bsfllp.com
    Theodore J. Boutrous tboutrous@gibsondunn.com
19  Thomas R. Burke thomasburke@dwt.com
    Timothy D Chandler tchandler@telladf.org
20

21  **Dated:  June 14, 2011**                    **Richard W. Wieking, Clerk**

22

23                                               **By:      /s/ JW Chambers**
                                                     **Susan Imbriani**
24                                                   **Courtroom Deputy**

25

26

27

28