IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Kristin M. Perry, et al., | NO. C 09-02292 JW |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTION TO UNSEAL DIGITAL RECORDING OF TRIAL; GRANTING LIMITED STAY** |
| v. | |
| Arnold Schwarzenegger, et al., | |
| Defendants. | |

## I. INTRODUCTION

Foremost among the aspects of the federal judicial system that foster public confidence in the fairness and integrity of the process are public access to trials and public access to the record of judicial proceedings. Consequently, once an item is placed in the record of judicial proceedings, there must be compelling reasons for keeping that item secret. In the course of the non-jury trial of this case, at the direction of the presiding judge, court staff made a digital recording of the trial. After the close of the evidence, the judge ordered the clerk of court to file that digital recording under seal. The trial record is closed and the case is currently on appeal to the Ninth Circuit.

Presently before the Court is a Motion by Plaintiffs to unseal the recording.[1] The Motion is opposed by Defendant-Intervenors. Upon review of the papers and after a hearing conducted on August 29, 2011, the Court concludes that no compelling reasons exist for continued sealing of the

---

[1] (hereafter, "Motion," Docket Item No. 771-4.) This Motion was originally brought before the Ninth Circuit, which currently has appellate jurisdiction over the merits of the underlying decision in this case, including the judgment. (See Order at 2, Docket Item No. 771.) On April 27, 2011, the Ninth Circuit transferred the Motion to this Court, on the ground that this Court still has jurisdiction over "ancillary matters" associated with this case. (Id. at 2-3.)

digital recording of the trial. Accordingly, the Court GRANTS Plaintiffs' Motion to Unseal and ORDERS the Clerk of Court to place the digital recording in the publicly available record of this case.

## II. BACKGROUND

The digital recording at issue in this Motion is of a trial over which former Chief Judge Vaughn Walker (retired) presided. A detailed summary of the background of the case and its procedural history can be found in the Order issued by Judge Walker on August 4, 2010.[2] Here, the Court reviews the procedural history relevant to the present Motion.

On December 21, 2009, a coalition of media companies requested Judge Walker's permission to televise the trial.[3] (See Docket Item No. 313.) On January 6, 2010, Judge Walker held a hearing regarding the recording and broadcasting of the trial at which he announced that an audio and video feed of the trial would be streamed to several courthouses in other cities, and that the trial would be recorded for broadcast over the Internet. Hollingsworth, 130 S. Ct. at 708-09. On January 7, 2010, Judge Walker notified the parties that the Court had made a formal request to Ninth Circuit Chief Judge Kozinski that the trial be included in a pilot program being conducted by the Ninth Circuit that allowed audio-video recording and transmission of non-jury trial court proceedings. (See Docket Item No. 358.) On January 8, 2010, Chief Judge Kozinski issued an order approving real-time streaming of the trial to certain courthouses, pending the resolution of technical difficulties. Hollingsworth, 130 S. Ct. at 709.

On January 9, 2010, Defendant-Intervenors applied to the Supreme Court for a stay of the Court's order approving the broadcasting of the trial, which the Supreme Court granted on January 13, 2010. See id. at 709-10 (staying the broadcast because the Northern District of California's amendment of its Local Rules to permit broadcast of the trial "likely did not" comply with federal

---

[2] (See Pretrial Proceedings and Trial Evidence; Credibility Determinations; Findings of Fact; Conclusions of Law; Order, hereafter, "August 4 Order," Docket Item No. 708.)

[3] A detailed discussion of the factual background of the Court's consideration of whether the trial should be recorded or broadcast may be found in the Supreme Court's opinion staying the broadcast of the trial. See Hollingsworth v. Perry, 130 S. Ct. 705 (2010).

2

law). On January 15, 2010, Judge Walker notified the parties that, in compliance with the Supreme Court's January 13, 2010 Order, he had formally requested Chief Judge Kozinski to withdraw the case from the pilot project. (See Docket Item No. 463 at 2.)

Although he did not commence broadcasting of the trial, Judge Walker notified the parties that digital recording of the trial would continue "for use in chambers." (See Docket Item No. 463 at 2.) Later, on May 31, 2010, Judge Walker expanded the use of the recording. He notified the parties that "[i]n the event any party wishes to use portions of the trial recording during closing arguments, a copy of the video can be made available to the party." (Docket Item No. 672 at 2.) He ordered that the parties "to maintain as strictly confidential any copy of the video pursuant to paragraph 7.3 of the protective order."[4] (Id.) On June 2, 2010, both Plaintiffs and Plaintiff-Intervenor City and County of San Francisco requested a copy of the digital recording, pursuant to the Court's May 31, 2010 Order.[5] In the August 4 Order, Judge Walker noted that the "trial proceedings were recorded and used by [the Court] in preparing the findings of fact and conclusions of law" and directed the Clerk to "file the trial recording under seal as part of the record." (August 4

---

[4] On January 12, 2010, the parties entered into an Amended Protective Order. (hereafter, "Protective Order," Docket Item No. 425.) The Protective Order was entered because disclosure and discovery activity in the case would be "likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation would be warranted." (Id. at 1.) Paragraph 7.3 of the Amended Protective Order addresses items that are designated as "HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY," and states that such items may only be disclosed to the parties' counsel of record, certain experts, the Court and its personnel, "court reporters, their staffs, and professional vendors" who have signed an agreement to be bound by the Protective Order and the author of the item. (Id. at 8-9.) The Protective Order specifies that "[e]ven after the termination of this litigation, the confidentiality obligations imposed by [the Order] shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs." (Id. at 2.)

[5] (See Notice to Court Clerk from Plaintiff-Intervenor City and County of San Francisco Re Use of Video, Docket Item No. 674 (stating that Plaintiff-Intervenor "wishes to obtain a copy of [certain portions] of the trial video to review for possible use at closing argument"); Notice to Court Clerk Re Plaintiffs' Request for a Copy of the Trial Recording, Docket Item No. 675 (stating that Plaintiffs "respectfully request a copy of the trial recording for possible use during closing arguments").)

1 Order at 4.) The Order also provided that the "parties may retain their copies of the trial recording
2 pursuant to the terms of the protective order."[6] (Id.)

3 After judgment was entered, an appeal from the Judgment was taken to the Ninth Circuit.
4 (See Docket Item Nos. 719, 728.) During the course of the appeal, Defendant-Intervenors moved to
5 prevent Judge Walker from showing snippets of the recording from a copy which he took as part of
6 his judicial papers upon his retirement and to compel Judge Walker, as well as Plaintiffs and
7 Plaintiff-Intervenor, to return the recording. Along with their opposition to that motion, Plaintiffs
8 filed what the Ninth Circuit deemed a Cross-Appeal to unseal the recording. On June 14, 2011, the
9 Court denied Defendant-Intervenors' Motion. (June 14 Order at 1.) This Order addresses Plaintiffs'
10 Cross-Motion to Unseal the recording.

11 Plaintiffs, joined by a non-party coalition of media companies,[7] move the Court to unseal the
12 digital recording of the trial on constitutional and common law grounds. (Motion at 9-10.)
13 Defendant-Intervenors oppose unsealing the recording on multiple grounds.[8] As their principal
14 grounds for maintaining the seal, they rely on a statement made by Judge Walker about how the

---

[6] On June 14, 2011, after the case was assigned to Chief Judge Ware, the Court issued an order denying Defendant-Intervenors' Motion for Order Compelling Return of Trial Recordings. (hereafter, "June 14 Order," Docket Item No. 798.) In its June 14 Order, the Court explained that copies of the digital recording of the trial had been made available to both parties for use during the trial, and held that because "there is no indication that the parties have violated the Protective Order, and because appellate proceedings in this case are still ongoing, the parties may retain their copies of the trial [digital recording]." (Id. at 4.)

[7] Plaintiffs' Motion has been joined by the Non-Party Media Coalition, which is comprised of Los Angeles Times Communications, LLC; The McClatchy Company; Cable News Network, In Session; The New York Times Co.; FOX News; NBC News; Hearst Corporation; Dow Jones & Company, Inc.; The Associated Press; KQED Inc., on behalf of KQED News and the California Report; The Reporters Committee for Freedom of the Press; and the Northern California Chapter of the Radio & Television News Directors Association. (See Joinder of Non-Party Media Coalition in Plaintiffs-Appellees' Motion to Unseal at 1, Docket Item No. 771-6.) Like Plaintiffs, the Non-Party Media Coalition contends that there is a First Amendment right of access to judicial proceedings, and that the right applies to the digital recording in this case. (Id. at 4-10.)

[8] (Appellants' Opposition to Appellees' Motion to Unseal at 5-7, hereafter, "Opp'n," Docket Item No. 771-7.) In addition, the State Defendants have filed a Statement of Non-Opposition stating that they "do not oppose the Plaintiffs' motion to publicly release the videotapes of the trial of this matter." (Docket Item No. 805 at 2.)

4

recording would be used, a ruling by the United States Supreme Court and various Judicial Council statements and Northern District Local Rules.

### III. DISCUSSION

**A.      The Digital Recording of the Trial Is in the Record**

Before discussing the specific grounds urged in favor and in opposition to unsealing the recording, the Court discusses the significance the Court gives to the fact that the digital recording is part of the judicial record.

It is undisputed that on August 4, 2010, Judge Walker ordered the Clerk to file the digital recording of the trial under seal "as part of the record." (August 4 Order at 4.) District court judges have wide discretion to note adjudicative facts and occurrences for the record. (See, e.g., Fed. R. Evid. 201.) While a digital recording of a trial might be an unusual item, district court judges have the authority to order the clerk to include as part of the record any item indicative of the proceedings. At the time Judge Walker ordered the recording filed as part of the record, none of the parties, including Defendant-Intervenors, made an objection. Moreover, here and now, in their Opposition to unsealing the recording, Defendant-Intervenors do not contend that Judge Walker committed a legal error or abused his discretion when he ordered the digital recording to be filed as part of the record. Furthermore, no party has filed a motion either to vacate the portion of the Court's August 4 Order that directed the Clerk to file the recording as part of the record or to strike the digital recording from the record.[9] Instead, the parties, including Defendant-Intervenors, proceed from the common premise that the digital recording is unquestionably part of the record.[10] The

---

[9] At the August 29 hearing, the Court brought this issue to the attention of the parties, and was informed by Defendant-Intervenors' counsel that Defendant-Intervenors, to counsel's knowledge, have not considered bringing such a motion. By raising this issue however, the Court is not commenting whether if such a motion were to be made, it would be timely or appropriate.

[10] (See Opp'n at 5-6 (asserting that "the [digital recording is] now part of the record of the case," but contending that this fact "does not matter" because the common law right to access trial records "has no purchase" in this case, insofar as the digital recording was created "only on condition that [it] not be publicly disseminated outside the courthouse").)

5

parties have limited their argument solely to whether the digital recording should remain sealed. The Court now proceeds to consider the legal standard for maintaining the recording under seal.

**B.      Legal Standards for Maintaining an Item in the Record Under Seal**

Plaintiffs move to unseal the recording on constitutional and common law grounds. Although a number of circuits have explicitly held that there is a First Amendment right of access to court records in civil proceedings,[11] the Ninth Circuit has declined to reach such a conclusion. See San Jose Mercury News v. U.S. Dist. Court, 187 F.3d 1096, 1101-02 (9th Cir. 1999) ("We leave for another day the question of whether the First Amendment . . . bestows on the public a prejudgment right of access to civil court records."). Accordingly, the Court only evaluates Plaintiffs' Motion to Unseal under the common law.

There is a common law right of public access to records in civil proceedings. Hagestad v. Tragesser, 49 F.3d 1430, 1434 (9th Cir. 1995) (citing Nixon v. Warner Comm., Inc., 435 U.S. 589, 597 (1978)). The common law right of access is "a general right to inspect and copy public records and documents, including judicial records and documents." Nixon, 435 U.S. at 597. This right of access is generally not conditioned "on a proprietary interest in the document or upon a need for it as evidence in a lawsuit." Id. Rather, the kinds of public interest that have been found to support the issuance of a writ compelling access to public records include "the citizen's desire to keep a watchful eye on the workings of public agencies" and "a newspaper publisher's intention to publish information concerning the operation of government." Id. at 598.

Transparency "is pivotal to public perception of the judiciary's legitimacy and independence."[12] As the Second Circuit has explained, while the political branches of government can "claim legitimacy by election," judges can only do so by way of their reasoning; thus, "[a]ny step that withdraws an element of the judicial process from public view makes the ensuing decision

---

[11] See, e.g., Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 91-92 (2d Cir. 2004) (observing that the Second Circuit recognizes a First Amendment right of access to civil proceedings, and discussing similar caselaw in the Third and Fourth Circuits).

[12] United States v. Aref, 533 F.3d 72, 82 (2d Cir. 2008).

6

look more like fiat and requires rigorous justification."[13] Therefore, because the Constitution "grants the judiciary 'neither force nor will, but merely judgment,'" it is imperative that courts "impede scrutiny of the exercise of that judgment only in the rarest of circumstances."[14]

This is not to say that transparency must never yield to other interests.[15] There are undoubtedly circumstances in which the damage that would be caused by making public certain aspects of judicial proceedings is so significant that it must override the public's interest in being able to freely scrutinize those proceedings. In determining whether access to the record is appropriate, courts should consider "the interests advanced by the parties in light of the public interest and the duty of the courts." Hagestad, 49 F.3d at 1434 (quoting Nixon, 435 U.S. at 602).

In the Ninth Circuit, the decision whether to unseal an item in the record is "one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." Hagestad, 49 F.3d at 1434 (quoting Nixon, 435 U.S. at 599). Courts that consider the common law right of access are instructed to "start with a strong presumption in favor of access to court records." Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1135 (9th Cir. 2003). A party seeking to overcome this strong presumption bears the burden of meeting a "compelling reasons" standard, under which the party must "articulate compelling reasons supported by specific factual findings" that "outweigh the general history of access and the public policies favoring disclosure." Kamakana v. City and County of Honolulu, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (citations omitted). In determining whether the right of access should be overridden, courts should consider "all relevant factors," including "the public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets." Foltz,

---

[13] Id. (citing Hicklin Eng'g, L.C. v. Bartell, 439 F.3d 346, 348 (7th Cir. 2006)).

[14] Id. (citing The Federalist No. 78 (Alexander Hamilton)).

[15] (See, e.g., id. (finding that the "legitimate national-security concerns at play" in a case made it appropriate for the district court to seal certain documents, despite the compelling public interest in a transparent judicial process).)

7

331 F.3d at 1135 (citing Hagestad, 49 F.3d at 1434). The presumption of access "may be overcome only 'on the basis of articulable facts known to the court, not on the basis of unsupported hypothesis or conjecture.'" Hagestad, 49 F.3d at 1434 (citations omitted). Further, a "judge need not document compelling reasons to unseal [a court record]; rather the proponent of sealing bears the burden with respect to sealing. A failure to meet that burden means that the default posture of public access prevails." Kamakana, 447 F.3d at 1182.

**C.    Whether the Digital Recording Should Be Unsealed**

With a strong presumption in favor of unsealing the digital recording of the trial for the public to access it, the Court considers the grounds urged by Defendant-Intervenors for maintaining the seal. Defendant-Intervenors offer four justifications for maintaining the seal: (1) the circumstances under which the recording was made; (2) an injunction issued by the United States Supreme Court during the proceedings before Judge Walker; (3) unsealing would violate Civil Local Rule 77-3; and (4) public policy concerns. The Court considers each of these contentions in turn.

**1.    The Conditions Under Which the Digital Recording Was Created**

Defendant-Intervenors contend that the digital recording should not now be made public, because it was originally created "on condition that [it] not be publicly disseminated outside the courthouse." (Opp'n at 6.) Defendant-Intervenors contend that Judge Walker's statement that he would use the digital recording during his deliberations constituted a guarantee that the recording would remain sealed. (See id. at 1, 7.) Upon review, the Court finds that the record does not support the contention that Judge Walker limited the digital recording to chambers use only. As discussed above, Judge Walker, without objection, made copies of the digital recording available to the parties for use during closing arguments. (See Docket Item No. 672 at 2.) At least two of the parties obtained copies of the digital recording, and one of the parties played segments on the record during closing argument in open court.

Moreover, Defendant-Intervenors offer no authority in support of the proposition that the conditions under which one judge places a document under seal are binding on a different judge, if a

1  motion is made to that different judge to examine whether sealing is justified; nor is the Court aware

2  of any authority standing for that proposition.[16]

3  Accordingly, the Court finds that the conditions under which the digital recording was

4  created do not constitute "compelling reasons" to overcome the strong presumption in favor of

5  granting the public access to the recording.

**2.   The Injunction by the U.S. Supreme Court**

Defendant-Intervenors contend that unsealing the digital recording would violate the injunction issued by the United States Supreme Court. (See Opp'n at 5-7.) However, the Court finds that Defendant-Intervenors' reliance on the Supreme Court's decision is misguided. In its decision staying the broadcasting of the trial, the Supreme Court stated that its "review [was] confined to a narrow legal issue: whether the District Court's amendment of its local rules to broadcast [the] trial complied with federal law." Hollingsworth, 130 S. Ct. at 709. Without "expressing any view on whether [federal] trials should be broadcast," the Supreme Court held only that the proposed "live streaming of [the] court proceedings" in this case should be stayed "because it appears that the [Northern District of California and the Ninth Circuit] did not follow the appropriate procedures . . . before changing their rules to allow such broadcasting." Id. at 706-09. Accordingly, in light of the Supreme Court's explicit statement that it was solely addressing procedural issues arising from the Northern District's amendment of its local rules regarding the broadcast of court proceedings, the Court finds that the Supreme Court's opinion does not provide

---

[16] In fact, caselaw suggests that a party's reliance on the confidentiality provisions of a protective order may not suffice to outweigh the strong presumption in favor of public access to court records. See Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 125 (2d Cir. 2006) (holding that the "mere existence of a confidentiality order says nothing about whether complete reliance on the order to avoid disclosure was reasonable"). In Lugosch, the court observed that the confidentiality order at issue specifically "contemplate[d] that relief from the provisions of the order may be sought" from the court, and concluded that it was therefore "difficult to see how the defendants can reasonably argue that they produced documents in reliance on the fact that the documents would always be kept secret." Id. Similarly in this case, the Protective Order states that "[n]othing in this Order abridges the right of any person to seek its modification by the Court in the future." (Protective Order at 11.)

9

"compelling reasons" to overcome the strong presumption in favor of public access to the digital recording, now that the trial is over and the digital recording has entered the court record.

### 3. Civil Local Rule 77-3

At the August 29 hearing, Defendant-Intervenors contended that the plain language of Local Rule 77-3's prohibition on "the taking of photographs, public broadcasting or televising, or recording for those purposes in the courtroom or its environs, in connection with any judicial proceeding" necessarily means that the digital recording may not be unsealed, because unsealing the recording would inevitably result in an unlawful "transmission" of the recording outside the environs of the courtroom.

Admittedly, digital recordings of trial proceedings come within the ambit of Local Rule 77-3.[17] However, Local Rule 77-3 speaks only to the *creation* of digital recordings of judicial proceedings for particular purposes or uses.[18] At the time the digital recording at issue in this case was made, there was no objection that Local Rule 77-3 prohibited its creation; nor is such an argument being made now. Nothing in the language of Local Rule 77-3 governs whether digital recordings may be placed into the record. Nor does the Rule alter the common law right of access to court records if a recording of the trial is placed in the record of proceedings. The Court is unaware of any case holding that a court's local rule on recordings can override the common law right of access to court records. Accordingly, the Court finds that Local Rule 77-3 is not authority for superseding the common law right of access to court records, even for a digital recording of the trial itself.

---

[17] The Court uses the version of Local Rule 77-3 that was in effect during the trial.

[18] The Court observes that the "plain language" of Local Rule 77-3 may give rise to several possible interpretations. Defendant-Intervenors, in effect, offer the interpretation that the Rule is intended to be a bridle on district court judges, constraining them from recording judicial proceedings and then entering those recordings into the court record. Another possible interpretation is that the Rule is intended to function as a protective cover for the court, shielding judicial proceedings from being photographed or recorded by outside parties or litigants. Defendant-Intervenors offer no caselaw indicating that the Court should adopt the former interpretation of the Rule. In the absence of any such authority, the Court declines to adopt the former, or any, interpretation of the Rule.

10

### 4. The Chilling Effect on Expert Witnesses and Other Public Policy Considerations

Defendant-Intervenors contend that "public dissemination of the [digital recording] could have a chilling effect on . . . expert witnesses' willingness 'to cooperate in any future proceeding.'" (See Opp'n at 7.) However, the Court finds that this contention is mere "unsupported hypothesis or conjecture," which may not be used by the Court as a basis for overcoming the strong presumption in favor of access to court records. Hagestad, 49 F.3d at 1434.

The Court is aware that many observers have expressed concerns that the broadcast of federal judicial proceedings may have detrimental consequences.[19] Indeed, it is because of such concerns that the Judicial Conference of the United States has urged that the circuits exercise caution with respect to the use of cameras in federal courtrooms.[20] Consistent with that advice, the Ninth Circuit has exhibited a willingness to allow the use of cameras in certain district court proceedings, and under certain limited circumstances. On December 17, 2009, the Judicial Council of the Ninth Circuit voted to allow district courts in the Ninth Circuit to "experiment with the dissemination of video recordings in civil non-jury matters only."[21] In accordance with that

---

[19] (See, e.g., Opp'n at 3-4 (noting the concerns that broadcasting trial proceedings may, *inter alia*, "intimidate litigants, witnesses, and jurors" and "cause judges to avoid unpopular decisions or positions").)

[20] (See Report of the Proceedings of the Judicial Conference of the United States at 17, *available at* www.uscourts.gov/judconf/96-Mar.pdf (Mar. 12, 1996) (stating that the Conference "[s]trongly urge[d] each circuit judicial council to adopt an order . . . not to permit the taking of photographs and radio and television coverage of court proceedings in the United States district courts.").) On June 21, 1996, the Judicial Council of the Ninth Circuit voted to prohibit the "taking of photographs and radio and television coverage of court proceedings in the United States district courts," in accordance with the Judicial Conference's recommendation. (See Appellants' Motion for Order Compelling Return of Trial Recordings, Ex. 5, Docket Item 771-2.) On September 14, 2010, however, the Judicial Conference of the United States evinced a willingness to reconsider its stance on the propriety of recording district court proceedings by approving a pilot project to "evaluate the effect of cameras in district court courtrooms, video recordings of proceedings, and publication of such video recordings." (See Judiciary Approves Pilot Project for Cameras in District Courts, *available at* http://www.uscourts.gov/news/NewsView/10-09-14/Judiciary_Approves_Pilot_Project_for_Cameras_in_District_Courts.aspx.)

[21] (See Ninth Circuit Judicial Council Approves Experimental Use of Cameras in District Courts, *available at* http://www.ce9.uscourts.gov/cm/articlefiles/137-Dec17_Cameras_Press%20Relase.pdf.) The Ninth

11

1 decision, the Ninth Circuit created a "pilot program" for recording certain district court cases. (Id.)
2 It is true that the Supreme Court stayed the broadcast of this trial. However, as discussed above, the
3 Supreme Court only stayed the broadcast on the grounds that the Northern District's revision of its
4 Local Rules to permit the broadcast "likely did not" comport with federal law. Hollingsworth, 130
5 S. Ct. at 709-10. The Supreme Court did not invalidate the Ninth Circuit's policy in regard to the
6 recording of civil non-jury district court proceedings. Thus, at the time the digital recording was
7 made, it was the policy of the Ninth Circuit that the recording of civil non-jury district court
8 proceedings was permissible.[22] Accordingly, the Court finds that the policy concerns expressed by
9 the Judicial Conference of the United States do not prevent the Court from unsealing the digital
10 recording of this civil, non-jury trial.

11 Although the Court acknowledges that significant public policy concerns are implicated in
12 allowing cameras in federal courtrooms, nothing in this Order speaks to the broader question of
13 whether district court trials should be recorded or broadcast. Rather, this Order solely addresses the
14 narrow question of whether the digital recording in this case, which is in the record, should now be
15 unsealed pursuant to the common law right of access to court records. The Court answers that
16 question in the affirmative, without addressing any of the larger questions that may potentially arise
17 from circumstances similar to this case.

### 5. The Fairness of the Trial Is Not Part of This Consideration

19 In addition to relying on constitutional and common law bases for unsealing the recording, at
20 the August 29 hearing, Plaintiffs argued that the digital recording of the trial should be unsealed in
21 order to assist the litigants in rebutting arguments made by Defendant-Intervenors, including, *inter*
22 *alia*, arguments about the fairness of the trial. The Court declines to base its decision on whether to

---

Circuit explained that its decision "amend[ed]" the prior Ninth Circuit policy prohibiting the taking of photographs and radio and television coverage of court proceedings in the district courts. (Id.)

[22] See also Hollingsworth, 130 S. Ct. at 715-17 (Breyer, J., dissenting) (setting forth, as "context" for the Northern District's amendment of its Local Rules, the history of the Ninth Circuit Judicial Council's decision to permit "the use of cameras in district court civil nonjury proceedings" following the 2007 Ninth Circuit Judicial Conference, at which lawyers and judges voted to approve a resolution to that effect "by resounding margins").

12

unseal the digital recording because of their usefulness before the Ninth Circuit. That is a matter solely for the Ninth Circuit to decide.

Similarly, at the August 29 hearing Defendant-Intervenors argued that, because the digital recording is under seal and arguably must remain so, the Ninth Circuit judges hearing the appeal in this case are prohibited from playing the recording as part of their proceedings as prohibited by this district Local Rule 77-3.[23] The Court does not accept the validity of this argument. Regardless, the Court does not base its decision whether to unseal the recording on the effect that the decision would have on the availability of the recording to the Ninth Circuit. The Court reiterates that the *only* issue it is resolving in this Order is whether the digital recording of the trial should be unsealed pursuant to the common law right of access to court records, given that the recording is a court record.

## IV. CONCLUSION

The Court GRANTS Plaintiffs' Motion to Unseal. Subject to the Stay Order issued below, the Clerk of Court is directed to place the digital recording of the trial into the public record.

When the digital recording is placed in the public record, the confidentiality obligations of the Protective Order, as applied to the digital recording of the trial, are LIFTED.

The Clerk of Court is directed to immediately return to Judge Walker the copy of the digital recording that was given to him as part of his judicial papers, which he subsequently lodged with the Court during the pendency of this Motion.[24]

---

[23] The Court notes that Defendant-Intervenors mildly withdrew this contention at the end of the August 29 proceeding.

[24] In its April 28, 2011 Order, the Court ordered "[a]ll participants in the trial," including Judge Walker, "who are in possession of a recording of the trial proceedings" to appear at the June 13, 2011 hearing "to show cause as to why the video tapes should not be returned to the Court's possession." (Order Setting Hearing on Motion at 2, Docket Item No. 772.) On May 12, 2011, Judge Walker voluntarily lodged his chambers copy of the digital recording of the trial with the Court, which filed the copy under seal. (See Docket Item Nos. 777, 781.) In its June 14 Order, the Court stated that it "intends to return the trial video tapes to Judge Walker as part of his judicial papers," and invited any party who objects to "articulate its opposition in . . . supplemental briefing." (June 14 Order at 5.) In accordance with the Court's June 14 Order, Defendant-Intervenors filed a supplemental brief opposing the return of the digital recording of the trial to Judge Walker, and requesting that the Court "direct Judge Walker to maintain his copy of the trial video tapes in strict compliance with the . . . terms of the Protective Order" sealing the recording,

13

The Court STAYS the execution of this Order until **September 30, 2011**. Unless a further stay is granted by the Court on timely motion or by a higher court, on September 30, 2011, the Clerk is ordered to execute this Order.

Dated: September 19, 2011

JAMES WARE
United States District Chief Judge

---

should the Court decide to return his copy of the recording to Judge Walker. (See Docket Item No. 806 at 2-3.) However, in light of the Court's disposition of the Motion to Unseal, Defendant-Intervenors' request for an order directing Judge Walker to comply with the Protective Order sealing the recording of the trial is DENIED as moot.

14

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Alan Lawrence Schlosser aschlosser@aclunc.org
Amir Cameron Tayrani Atayrani@gibsondunn.com
Andrew Perry Pugno andrew@pugnolaw.com
Andrew Walter Stroud stroud@mgslaw.com
Angela Christine Thompson angelathompsonesq@gmail.com
Austin R. Nimocks animocks@telladf.org
Brian Ricardo Chavez-Ochoa chavezochoa@yahoo.com
Brian W Raum braum@telladf.org
Charles J. Cooper ccooper@cooperkirk.com
Charles Salvatore LiMandri cslimandri@limandri.com
Christine Van Aken christine.van.aken@sfgov.org
Christopher Dean Dusseault cdusseault@gibsondunn.com
Christopher Francis Stoll cstoll@nclrights.org
Christopher James Schweickert cjs@wcjuris.com
Claude Franklin Kolm claude.kolm@acgov.org
Daniel J. Powell Daniel.Powell@doj.ca.gov
Danny Yeh Chou danny.chou@sfgov.org
David Boies dboies@bsfllp.com
David E. Bunim Dbunim@haasnaja.com
David H. Thompson dthompson@cooperkirk.com
David L. Llewellyn Dllewellyn@LS4law.com
Diana E Richmond drichmond@sideman.com
Elizabeth O. Gill egill@aclunc.org
Enrique Antonio Monagas emonagas@gibsondunn.com
Ephraim Margolin ephraim_margolin@yahoo.com
Eric Grant grant@hicks-thomas.com
Eric Alan Isaacson erici@rgrdlaw.com
Erin Brianna Bernstein Erin.Bernstein@sfgov.org
Ethan D. Dettmer edettmer@gibsondunn.com
Gordon Bruce Burns Gordon.Burns@doj.ca.gov
Herma Hill Kay hkay@law.berkeley.edu
Holly L Carmichael holly.l.carmichael@gmail.com
Howard C. Nielson hnielson@cooperkirk.com
Ilona Margaret Turner iturner@nclrights.org
James Bopp jboppjr@bopplaw.com
James A Campbell jcampbell@telladf.org
James C. Harrison jharrison@rjp.com
James Dixon Esseks jesseks@aclu.org
James J. Brosnahan jbrosnahan@mofo.com
Jennifer Carol Pizer jpizer@lambdalegal.org
Jennifer Lynn Monk jmonk@faith-freedom.com
Jennifer Lynn Monk jmonk@faith-freedom.com
Jeremy Michael Goldman jgoldman@bsfllp.com
Jerome Cary Roth Jerome.Roth@mto.com
Jesse Michael Panuccio jpanuccio@cooperkirk.com
John Douglas Freed jfreed@cov.com
Jon Warren Davidson jdavidson@lambdalegal.org
Jordan W. Lorence jlorence@telladf.org
Jose Hector Moreno jhmoreno@jhmlaw.com
Josh Schiller jischiller@bsfllp.com
Josh Schiller jischiller@bsfllp.com

15

Judy Whitehurst Jwhitehurst@counsel.lacounty.gov
Kari Lynn Krogseng krogseng@rjp.com
Kelly Wayne Kay oakkelly@yahoo.com
Kevin Trent Snider kevinsnider@pacificjustice.org
Lauren Estelle Whittemore lwhittemore@fenwick.com
Leslie A Kramer lkramer@fenwick.com
Louis P. Feuchtbaum lfeuchtbaum@sideman.com
Manuel Francisco Martinez manuel.martinez@acgov.org
Mark Russell Conrad Mark.Conrad@mto.com
Mary Elizabeth McAlister court@lc.org
Matthew Albert Coles mcoles@aclu.org
Matthew Dempsey McGill mmcgill@gibsondunn.com
Michael Wolf mwolf@nethere.com
Michael James McDermott mjm1usa@aol.com
Michael Stuart Wald mwald@stanford.edu
Patrick John Gorman pgorman@wctlaw.com
Peter Obstler peter.obstler@bingham.com
Peter A. Patterson ppatterson@cooperkirk.com
Peter C Renn prenn@lambdalegal.org
Richard J. Bettan rbettan@bsfllp.com
Robert Henry Tyler rtyler@faith-freedom.com
Ronald P. Flynn ronald.flynn@sfgov.org
Rosanne C. Baxter rbaxter@bsfllp.com
Sarah Elizabeth Piepmeier spiepmeier@gibsondunn.com
Shannon Minter sminter@nclrights.org
Stephen V. Bomse sbomse@orrick.com
Steven Edward Mitchel mitchelsteve@yahoo.com
Susan Marie Popik spopik@chapop.com
Tamar Pachter Tamar.Pachter@doj.ca.gov
Tara Lynn Borelli tborelli@lambdalegal.org
Terry Lee Thompson tl_thompson@earthlink.net
Theane Evangelis Kapur tkapur@gibsondunn.com
Theodore B Olson tolson@gibsondunn.com
Theodore Hideyuki Uno tuno@bsfllp.com
Theodore J. Boutrous tboutrous@gibsondunn.com
Thomas R. Burke thomasburke@dwt.com
Timothy D Chandler tchandler@telladf.org

**Dated: September 19, 2011**          **Richard W. Wieking, Clerk**

                                       **By:     /s/ JW Chambers**
                                       **Susan Imbriani**
                                       **Courtroom Deputy**

**United States District Court**
For the Northern District of California