FILED

**FOR PUBLICATION**

FEB 02 2012

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| KRISTIN M. PERRY; SANDRA B. STIER; PAUL T. KATAMI; JEFFREY J. ZARRILLO, | No. 11-17255 |
| | D.C. No. 3:09-cv-02292-JW |
| Plaintiffs - Appellees, | |
| CITY AND COUNTY OF SAN FRANCISCO, | OPINION |
| Intervenor-Plaintiff - Appellee, | |
| MEDIA COALITION, | |
| Intervenor, | |
| v. | |
| EDMUND G. BROWN, Jr., in his official capacity as Governor of California; KAMALA D. HARRIS, in her official capacity as Attorney General of California; MARK B. HORTON, in his official capacity as Director of the California Department of Public Health & State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health; PATRICK O'CONNELL, in his official capacity as Clerk-Recorder for the County of Alameda; DEAN C. | |

LOGAN, in his official capacity as
Registrar-Recorder/County Clerk for the
County of Los Angeles,

         Defendants,

  and

DENNIS HOLLINGSWORTH; GAIL J.
KNIGHT; MARTIN F. GUTIERREZ;
HAK-SHING WILLIAM TAM; MARK
A. JANSSON;
PROTECTMARRIAGE.COM - YES ON
8, A PROJECT OF CALIFORNIA
RENEWAL, as official proponents of
Proposition 8,

         Intervenor-Defendants -
Appellants.

Appeal from the United States District Court
for the Northern District of California
James Ware, Chief District Judge, Presiding

Argued and Submitted December 8, 2011
San Francisco, California

Before: REINHARDT, HAWKINS, and N.R. SMITH, Circuit Judges.

Opinion by Judge REINHARDT:

In this latest round of litigation concerning California's adoption of an initiative

constitutional amendment to prohibit same-sex marriage, we must decide whether the

district court abused its discretion by ordering the unsealing of the video recording of the trial, which had purportedly been prepared by the trial judge for his in-chambers use only and was later placed in the record and sealed by him. The order, issued by his successor following his retirement, would permit the broadcast of the recording for all to view.

It is important to explain at the outset what our resolution of this case is *not* about. First, we do not resolve any of the policy questions with which courts are now struggling about how to reconcile the traditional concept of "openness" in judicial proceedings with the development of technology that has given the term a new meaning. The Judicial Conference of the United States and Circuit Judicial Councils have been considering this issue for some time, and we have neither the need nor the desire to offer an additional opinion here. While we agree with Justice Holmes "that the trial of causes should take place under the public eye, . . . because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed," *Cowley v. Pulsifer*, 137 Mass. 392, 394 (1884), the trial in this case was held "under the public eye" in the traditional sense of the phrase. Whether or how courts should meet the spirit as well as the letter of Justice Holmes's admonition, for example by authorizing the broadcast

of trials in particular circumstances or as a general matter, will be determined ultimately by the Judiciary as an institution or by mandate from Congress. The narrower consideration that controls our decision here is whether, given the unique circumstances surrounding the creation and sealing of the recording of the trial in this case, the public is entitled to view that recording some two years after the trial.

Second, our ruling has nothing to do with the freedom of the press to publish, describe, or comment on any information to which it obtains access. Rather, the question here is whether courts are required (or even free) to *give* to the media information that is not ordinarily available—and specifically whether a recording purportedly made for the sole purpose of aiding the trial judge in the preparation of his opinion, and then placed in the record and sealed, may shortly thereafter be made public by the court.

We resolve the narrow question before us on a narrow basis when we conclude that the district court abused its discretion by ordering the unsealing of the recording of the trial notwithstanding the trial judge's commitment to the parties that the recording would not be publicly broadcast. The trial judge on several occasions unequivocally promised that the recording of the trial would be used only in chambers and not publicly broadcast. He made these commitments because the Supreme Court had intervened in this very case in a manner that required him to do so, *Hollingsworth*

-4-

*v. Perry*, 130 S. Ct. 705 (2010) (per curiam). Thus, his commitments were not merely broad assurances about the privacy of judicial records in the case; they could not have been more explicitly directed toward the particular recording at issue. In finding that the trial judge had not made a commitment to deny the public access to the recording, the district court abused its discretion: its finding was "without 'support in inferences that may be drawn from the facts in the record.'" *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). The district court further abused its discretion by holding that the determinations made by the trial judge regarding the placement of the recording under seal did not bind a different judge presented with a motion to unseal—a conclusion that we regard as an "implausible" and "illogical" application of the law. *Id.*

Each of these abuses of discretion manifests the same basic error: the district court failed to appreciate the nature of the statements that the trial judge had made to the litigants, the specific factual and legal context in which he made them, and the consequences of his having done so. The integrity of our judicial system depends in no small part on the ability of litigants and members of the public to rely on a judge's word. The record compels the finding that the trial judge's representations to the parties were solemn commitments. Upon this record, there is only one plausible application of the standard for sealing a record that is, arguendo, subject to the

common-law right of public access: the interest in preserving the sanctity of the judicial process is a compelling reason to override the presumption in favor of the recording's release. We therefore reverse the order of the district court as an abuse of its discretion and remand with instructions to maintain the recording under seal.

## I

In the weeks prior to the January 2010 trial in this case, the trial judge, former Chief Judge Vaughn R. Walker of the U.S. District Court for the Northern District of California, expressed a desire to satisfy the public's interest in the case by broadcasting a video feed of the proceedings to various federal courthouses and online. That may well have been a reasonable desire, but the decision was not entirely his to make. The Ninth Circuit Judicial Council had established a pilot program in mid-December 2009 to allow the broadcast of certain proceedings in district courts within the circuit, and the Chief Judge of the Circuit had approved this case's inclusion in that pilot program. Several days later, the Northern District of California amended its local rule governing cameras in the courtroom to allow for participation in the program of cases brought in that district. Then, on the morning of the first day of trial, the Supreme Court—at the request of Appellants, the official proponents of Proposition 8 ("Proponents")—issued a temporary stay of the broadcast. *Hollingsworth v. Perry*, 130 S. Ct. 1132 (2010) (mem.). Two days later, the Court

entered a further stay pending the filing of a petition for mandamus or certiorari, holding that "the courts below did not follow the appropriate procedures set forth in federal law before changing their rules to allow such broadcasting." *Hollingsworth v. Perry*, 130 S. Ct. 705, 706 (2010) (per curiam). The effect of the Court's intervention was that for the duration of the trial in this matter, the effective version of the district court's Local Rule 77-3 prohibited the recording of the trial for future broadcast.[1]

The district court recorded the first two days of the trial on the basis that the Supreme Court might decide to lift the temporary stay, but after the Supreme Court's stay became permanent, Proponents asked that the recording be stopped. It was in this context that Chief Judge Walker responded as follows:

> The local rule permits the recording for purposes . . . of use in chambers . . . . And I think it would be quite helpful to me in preparing the findings of fact to have that recording. So that's the purpose for which the recording is going to be made going forward. But it's not going to be for purposes of public broadcasting or televising.

---

[1] This rule—the one in place prior to the attempted amendment—read in relevant part as follows:

> Unless allowed by a Judge or a Magistrate Judge with respect to his or her own chambers or assigned courtroom for ceremonial purposes, the taking of photographs, public broadcasting or televising, or recording for those purposes in the courtroom or its environs, in connection with any judicial proceeding, is prohibited. Electronic transmittal of courtroom proceedings and presentation of evidence within the confines of the courthouse is permitted, if authorized by the Judge or Magistrate Judge.

Proponents dropped their objection at that point.[2]

In May 2010, shortly before closing arguments, Chief Judge Walker offered to make copies of the video recording available to any parties to the proceeding who wished to use excerpts during their arguments, with the proviso that the copies would be maintained under a strict protective order.[3] Plaintiffs and the City and County of San Francisco obtained copies. After closing arguments, Proponents moved to require the return of the copies.

Chief Judge Walker's opinion, issued on August 4, 2010, resolved any remaining question regarding the status of the recordings:

---

[2] They did, however, file a petition for a writ of certiorari in April 2010, seeking to vacate this court's denial of their petition for a writ of mandamus to prevent Chief Judge Walker from broadcasting the trial. Petition for a Writ of Certiorari, *Hollingsworth v. U.S. Dist. Court for Northern Dist. of California*, 131 S. Ct. 372 (2010) (No. 09-1238), 2010 WL 1513093. The Supreme Court ultimately granted certiorari and remanded with instructions to dismiss the petition for a writ of mandamus as moot. *Hollingsworth v. U.S. Dist. Court for Northern Dist. of California*, 131 S. Ct. 372 (2010) (mem.).

[3] Paragraph 7.3 of the protective order provides in relevant part that parties may disclose covered materials "only to: (a) . . . Counsel of record . . . , as well as employees of said Counsel to whom it is reasonably necessary to disclose the information for this litigation and who have signed an 'Agreement to Be Bound by Protective Order' . . . ; (b) Experts . . . (1) to whom disclosure is reasonably necessary for this litigation [and] (2) who have signed the 'Agreement to Be Bound by Protective Order' . . . ; (c) the Court and its personnel; [and] (d) court reporters, their staffs, and professional vendors to whom disclosure is  reasonably necessary for this litigation and who have signed the 'Agreement to Be Bound by Protective Order' . . . ."

-8-

> The trial proceedings were recorded and used by the court in preparing
> the findings of fact and conclusions of law; the clerk is now DIRECTED
> to file the trial recording under seal as part of the record. The parties may
> retain their copies of the trial recording pursuant to the terms of the
> protective order herein. Proponents' motion to order the copies' return
> is accordingly DENIED.

*Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 929 (N.D. Cal. 2010) (document

citations omitted). In their appeal from the judgment, Proponents challenged neither

the denial of their motion to compel the return of the copies nor the district court's

entry of the recording in the record.

In the same opinion, Chief Judge Walker cited the elimination of the potential

for public broadcast of the trial as a negative factor in weighing the evidence offered

by Proponents. Observing that "Proponents elected not to call the majority of their

designated witnesses to testify at trial," Chief Judge Walker quoted Proponents'

counsel's explanation that the witnesses had been "'extremely concerned about their

personal safety, and did not want to appear with any recording of any sort,

whatsoever.'" *Id.* at 944. He then rejected this explanation, on the basis that

"proponents failed to make any effort to call their witnesses after the potential for

public broadcast in the case had been *eliminated*." *Id.* (emphasis added).

Less than a year after issuing his opinion, Chief Judge Walker retired from the

bench. Both before and after his retirement, he displayed excerpts from the trial

-9-

recording during public appearances. As a result, Proponents asked us to order the return of all copies of the trial recording. Plaintiffs filed a cross-motion to unseal the recording. We transferred these motions and the supporting papers to the district court. After Chief Judge Ware, who replaced Chief Judge Walker as the presiding judge, ordered all parties in possession of copies of the recording to show cause why those copies should not be returned, former Chief Judge Walker lodged his copy with the court, and Chief Judge Ware discharged the show-cause order as to him.

On June 14, 2011, Chief Judge Ware denied Proponents' motion for the return of the trial recording, finding that no violation of the protective order had occurred.[4] He also indicated that he would return the recording to former Chief Judge Walker. In response to Chief Judge Ware's invitation, Proponents filed a brief asking that the recording not be returned to former Chief Judge Walker or that it be held by him under the terms of the protective order.

On September 19, 2011, Chief Judge Ware granted Plaintiffs' cross-motion to unseal the recording. *Perry v. Schwarzenegger*, No. C 09-02292 JW, 2011 WL 4527349 (N.D. Cal. Sept. 19, 2011). He concluded that the common-law right of public access applied to the recording, that neither the Supreme Court's decision in

---

[4] We are not asked to review the finding that no violation of the protective order had occurred.

*Hollingsworth* nor the local rule governing audiovisual recordings barred its release, and that Proponents had made no showing sufficient to justify its sealing in the face of the common-law right. *Id.* at *3-6. He also directed that a copy of the recording be returned to former Chief Judge Walker. *Id.* at *6.

This appeal followed. We granted Proponents' motion for a stay pending appeal and allowed the Media Coalition to intervene.

## II

## A

Two questions are presented: first, whether the trial recording is subject to the common-law presumption of public access; and second, whether there is a sufficiently compelling reason to override any such presumption here. In reversing the district court's decision to unseal the recording, we assume, for purposes of this case only, that the answer to the first question is yes and decide only the second question.

We review for abuse of discretion a "decision to unseal the judicial record." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 n.3 (9th Cir. 2006). Under the abuse-of-discretion standard, if "the trial court identified the correct legal rule to apply to the relief requested," we must "determine whether the trial court's application of the correct legal standard was (1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'"

*Hinkson*, 585 F.3d at 1262. If it was, then we are "able to have a 'definite and firm conviction' that the district court reached a conclusion that was a 'mistake' or was not among its 'permissible' options, and thus that it abused its discretion." *Id.* In addition, an error of law constitutes an abuse of discretion. *Id.* at 1261-62. Thus, we also reverse if, in applying the proper legal standard, the trial court overlooks or misconstrues any binding precedent. *See Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1092-93 (9th Cir. 2010).

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana*, 447 F.3d at 1178 (quoting *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 & n.7 (1978)). Proponents present two arguments that this common-law right of public access does not apply to the recording at issue here. The first is that the video recording of a trial is not one of the types of records to which the common-law right attaches. The second is that Northern District of California Local Rule 77-3, under the terms of which the trial was recorded in the first place, abrogates the common law. As noted above, we need not and do not decide whether Proponents' arguments are in any respect meritorious: we simply assume, without deciding, for purposes of this case only, that the common-law presumption of public access applies to the recording at issue here and that it is not abrogated by the local rule in question.

-12-

**B**

"The common law right of access . . . is not absolute and can be overridden given sufficiently compelling reasons for doing so." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). We conclude that there is a compelling reason in this case for overriding the common-law right and that, in failing to identify that reason on the basis of the record before it, the district court abused its discretion. The reason is that Proponents reasonably relied on Chief Judge Walker's specific assurances—compelled by the Supreme Court's just-issued opinion—that the recording would not be broadcast to the public, at least in the foreseeable future.[5] While Chief Judge Ware found that no such assurances had been given and concluded that, in any event, he was not bound by promises made by his predecessor, 2011 WL 4527349, at *4, his finding was "without 'support in inferences that may be drawn from the facts in the record,'" and his conclusion—which contravenes the very notion of judicial integrity—was an "implausible" and "illogical" application of the

---

[5] Northern District of California Local Rule 79-5(f) provides that "[a]ny document filed under seal in a civil case shall be open to public inspection without further action by the Court 10 years from the date the case is closed," with the proviso that "a party that submitted documents that the Court placed under seal in a case may, upon showing good cause at the conclusion of the case, seek an order that would continue the seal until a specific date beyond the 10 years provided by this rule."

"compelling reason" standard to the facts at issue here. *Hinkson*, 585 F.3d at 1262. Chief Judge Ware thus abused his discretion. *Id.*

Interpreted in their full context, at least two of Chief Judge Walker's statements amount to unequivocal assurances that the video recording at issue would not be accessible to the public. No other inference can plausibly be drawn from the record. First, following the Supreme Court's issuance of a stay against the public broadcast of the trial, Chief Judge Walker stated in open court that he was going to continue "taking the recording for purposes of use in chambers," but that the recording was "not going to be for purposes of public broadcasting or televising." It would be unreasonable to expect Proponents, upon reading the Supreme Court's opinion and hearing Chief Judge Walker's statement in response, to foresee that a recording made for such limited purposes might nonetheless be released for viewing by the public, either during or after the trial. Had Chief Judge Walker not made the statement he did, Proponents would very likely have sought an order directing him to stop recording forthwith, which, given the prior temporary and further stay they had just obtained from the Supreme Court, they might well have secured.

Second, Chief Judge Walker stated in his opinion—citing the Supreme Court's temporary and permanent stays—that "the potential for public broadcast in the case had been *eliminated*." *Perry*, 704 F. Supp. 2d at 944 (emphasis added). He made that

-14-

statement in the context of criticizing Proponents for not having presented additional witnesses—witnesses who had, according to Proponents, been reluctant "'to appear with any recording of any sort.'" *Id.* Without that unequivocal statement, Proponents again might well have taken action to ensure that the recording would not be made available for public viewing.

Chief Judge Ware found that these statements did not constitute a promise by Chief Judge Walker that the recording would not be released to the public. The record compels the opposite inference. Chief Judge Ware based his finding on the fact that Chief Judge Walker had, "without objection, made copies of the digital recording available to the parties for use during closing arguments." 2011 WL 4527349, at *4. Allowing this limited and unchallenged in-courtroom use of the recording, however, was not contrary to Chief Judge Walker's prior declarations: the closing arguments were not broadcast to the public, and the display of footage during closing arguments served the same purpose as the recording's in-chambers use—helping the judge to reach his decision and to prepare his opinion. We therefore reject Chief Judge Ware's finding that Chief Judge Walker made no commitment to the parties to limit the use of the recording to helping him with his own deliberations, and, more important, not to allow the recording to be used for "public broadcasting or televising." The record clearly shows that Chief Judge Walker did make a commitment not to permit the

-15-

public broadcast of the recording. Chief Judge Ware's finding to the contrary was an abuse of his discretion because it lacked "'support in inferences that may be drawn from the facts in the record.'" *Hinkson*, 585 F.3d at 1262.

Chief Judge Ware further reasoned that Proponents had "offer[ed] no authority in support of the proposition that the conditions under which one judge places a document under seal are binding on a different judge, if a motion is made to that different judge to examine whether sealing is justified," and that he was not "aware of any authority standing for that proposition." 2011 WL 4527349, at *4. Whether or not Chief Judge Ware is correct as to the lack of precedent concerning the general question whether a discretionary decision made by one judge binds a subsequent judge in the same case, that general question is not the one we face here. As a case progresses and circumstances change, a court may sometimes properly revise a prior exercise of its discretion, whether the new order is made by the same judge or another. The relevant question here, however, is whether a judge must in exercising his discretion respect a *commitment* that his predecessor has made and upon which a party has reasonably relied.

Chief Judge Ware's reasoning is somewhat ambiguous. To the extent that he concluded that the restriction that Chief Judge Walker had imposed on public access to the recording was not a solemn commitment worthy of reliance but merely a

-16-

transient exercise of discretion subject to revision, his conclusion was inconsistent with the record: he failed to recognize the legal consequence of Chief Judge Walker's statements given the factual and legal context in which they occurred. Chief Judge Walker did not merely create the recording and place it in the record under conditions that he and the parties understood to be subject to later modification; rather, he promised the litigants that the conditions under which the recording was maintained *would not change*—that there was no possibility that the recording would be broadcast to the public in the future. No other inference could plausibly be drawn from the record.

The nature of Chief Judge Walker's commitments and the reasonableness of the Proponents' reliance on those commitments distinguishes this case from *Foltz*, in which we held that the district court had abused its discretion in denying a motion to unseal judicial records. In that case, State Farm asserted its reliance "on the confidentiality provisions of [a] protective order" as a "compelling reason" to keep the records sealed. 331 F.3d at 1137-38. State Farm could not reasonably have relied, we explained, on a "blanket protective order" that it had procured without making "a particularized showing of good cause" to seal "any individual document." *Id.* at 1138. We reached that conclusion because a blanket protective order often covers materials that would not qualify for protection if subjected to an individualized analysis, and

-17-

because we had previously warned that "[r]eliance will be less with a blanket order, because it is by nature overinclusive." *Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). The sealing order at issue here, by contrast, was directed precisely toward a single judicial record. There can be no question that Proponents reasonably relied on Chief Judge Walker's explicit assurances as to this particular record, in contrast to the overinclusive protective order in *Foltz*.

Moreover, whereas the order in *Foltz* was imposed by joint request of the parties, 331 F.3d at 1128, Chief Judge Walker's assurances were compelled by the Supreme Court's ruling in this very case. After the Supreme Court held that his order to broadcast the trial had "complied neither with existing rules or policies nor the required procedures for amending them," *Hollingsworth*, 130 S. Ct. at 713, Chief Judge Walker could not lawfully have continued to record the trial without assuring the parties that the recording would be used only for a permissible purpose. Chief Judge Walker's statements concerning the use of the recording were not only solemn commitments on their own terms, therefore; they were commitments dictated by the actions of a higher court, and thus even worthier of the parties' reliance.

To the extent that Chief Judge Ware *did* believe that his predecessor's decisions were solemn commitments to the parties, but concluded nonetheless that they did not bind him, his abuse of discretion was even more serious: he failed to appreciate the

-18-

importance of preserving the integrity of the judicial system. To revoke Chief Judge Walker's assurances after Proponents had reasonably relied on them would cause serious damage to the integrity of the judicial process—damage that under any plausible, logical application of the "compelling reason" standard would have caused Chief Judge Ware to keep the recording sealed. Indeed, we explained in *Foltz* that "[t]he *central concern* in determining whether access should be granted to documents sealed under a protective order is whether that order was relied upon in the decision to produce documents." 331 F.3d at 1137 (emphasis added); *see Beckman*, 966 F.2d at 475. Chief Judge Ware's failure to recognize the breach of reliance interests as a grave threat to the integrity of the judicial system, and thus a "compelling reason" to seal the recording notwithstanding the presumed existence of a common-law right for the public to view it, constitutes an "implausible" and "illogical" application of the "compelling reason" standard.

Had Chief Judge Ware properly understood Chief Judge Walker's statements as commitments to the parties, and had he recognized those commitments as binding obligations and constraints on his own discretion, he could have arrived at only one conclusion that is logical, plausible, and consistent with the record: to preserve the integrity of the judicial system, the recording must remain under seal. Just as the doctrine of stare decisis "contributes to the actual and perceived integrity of the

-19-

judicial process" by "promot[ing] the evenhanded, predictable, and consistent development of legal principles" and "foster[ing] reliance on judicial decisions," *Payne v. Tennessee*, 501 U.S. 808, 827 (1991), the explicit assurances that a judge makes—no less than the decisions the judge issues—must be consistent and worthy of reliance. *Cf. Massachusetts v. Sheppard*, 468 U.S. 981, 989-90 (1984) ("[W]e refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested.").[6] Litigants and the public must be able to trust the word of a judge if our justice system is to function properly. "[A]s Chief Justice Hughes once noted, 'no man is as essential to his country's well being as is the unstained integrity of the courts.'" *Gubiensio-Ortiz v. Kanahele*, 857 F.2d 1245, 1264 (9th Cir. 1988), *vacated on other grounds*, *United States v. Chavez-Sanchez*, 488 U.S. 1036 (1989).

Proponents were thus entitled to take Chief Judge Walker at his word when he assured them that the trial recording would not be publicly broadcast or televised. Because Proponents reasonably relied on Chief Judge Walker's commitments in

---

[6] There is one apparent exception. In *Bowles v. Russell*, 551 U.S. 205 (2007), the Supreme Court held that where a judge was powerless to change a jurisdictional deadline, his erroneous statement as to the applicable date could have no force or effect. Chief Judge Walker was not similarly powerless to assure the parties that the recording that he created—and the disposition of which was in his sole control—would be kept from public broadcast.

refraining from challenging his actions, the setting aside of those commitments would compromise the integrity of the judicial process. The interest in preserving respect for our system of justice is clearly a compelling reason for maintaining the seal on the recording, notwithstanding any presumption that it should be released. Whatever Chief Judge Ware's rationale for holding that no "compelling reason" required him to maintain the recording under seal—whether he failed to recognize that Chief Judge Walker's statements were solemn assurances to the parties, or whether he believed that he could set those assurances aside because they were made by another judge—we reject his conclusion that the circumstances under which Chief Judge Walker created the recording and entered it in the record were irrelevant to his successor's decision whether to unseal it. The former rationale is wholly "without 'support in inferences that may be drawn from the facts in the record,'" and the latter is an "implausible" and "illogical" application of the "compelling reason" standard. *Hinkson*, 585 F.3d at 1262. Chief Judge Ware therefore abused his discretion. *Id.*

### III

Like the district court, we need not address an issue of first impression in the circuit: whether the First Amendment right of public access to judicial records applies to civil proceedings. Instead, we assume an affirmative answer to that question without deciding—on this occasion—whether the First Amendment applies. We

-21-

nonetheless conclude that the application of the First Amendment would not affect the result that we reach.

In applying the First Amendment standard, we consider whether "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Oregonian Pub. Co. v. U.S. Dist. Court for Dist. of Or.*, 920 F.2d 1462, 1466 (9th Cir. 1990). We conclude, for the reasons we explained above, that the integrity of the judicial process is a compelling interest that in these circumstances would be harmed by the nullification of the trial judge's express assurances, and that there are no alternatives to maintaining the recording under seal that would protect the compelling interest at issue. In short, the recording cannot be released without undermining the integrity of the judicial system.

\*     \*     \*

For the reasons discussed above, we reverse the order of the district court as an abuse of its discretion and remand with instructions to maintain the trial recording under seal.[7]

---

[7] On remand, the district court shall not return to former Chief Judge Walker the copy of the recording that he has lodged with the court.

**REVERSED.**

## COUNSEL LISTING

David Boies and Jeremy M. Goldman, Boies, Schiller & Flexner LLP, Armonk, NY; Theodore B. Olson (argued), Matthew D. McGill, and Amir C. Tayrani, Gibson, Dunn & Crutcher LLP, Washington, D.C.; Theodore J. Boutros, Jr., Christopher D. Dusseault, Theane Evangelis Kapur, Enrique A. Monagas, and Joshua S. Lipshutz, Gibson, Dunn & Crutcher LLP, Los Angeles, CA; for Plaintiffs-Appellees.

Dennis J. Herrera, City Attorney; Therese M. Stewart (argued), Chief Deputy City Attorney; Christine Van Aken and Mollie M. Lee, Deputy City Attorneys; San Francisco, CA; for Intervenor-Plaintiff-Appellee.

Thomas R. Burke (argued) and Rochelle L. Wilcox, Davis Wright Tremaine LLP, San Francisco, CA; for Intervenor.

Andrew P. Pugno, Law Offices of Andrew P. Pugno, Folsom, CA; Charles J. Cooper, David H. Thompson (argued), Howard C. Nielson, Jr., and Peter A. Patterson, Cooper and Kirk, PLLC, Washington, D.C.; Brian W. Raum and James A. Campbell, Alliance Defense Fund, Scottsdale, AZ; for Intervenor-Defendants-Appellants.