THOMAS R. BURKE (CA State Bar No. 141930)
thomasburke@dwt.com
JASON HARROW (CA State Bar No. 308560)
jasonharrow@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:     (415) 276-6500
Facsimile:      (415) 276-6599

Attorneys for Intervenor KQED, Inc.

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Kristin M. Perry, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>Edmund G. "Jerry" Brown, Jr., Governor of California,<br><br>        Defendant. | Case No. 09-cv-2292<br><br>**MOTION TO UNSEAL VIDEOTAPED TRIAL RECORDS**<br><br>Date:<br>Time:<br>Department: |

*DAVIS WRIGHT TREMAINE LLP*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 3

    A.    The "Prop 8" Trial ............................................................................................ 3

        1.    The Constitutional Challenge To Prop 8 Begins........................................... 3

        2.    The Historic Bench Trial Is Recorded, And The Recording Is Placed
                In The Record, Under Seal. ......................................................................... 4

    B.    The Proponents Enforce The Sealing Order While The Appeal Of The Merits
        Is Pending. ...................................................................................................... 5

    C.    The Supreme Court Ultimately Determines That Bans On Same-Sex
        Marriage Are Unconstitutional........................................................................ 6

    D.    The Continuing Public Interest In The Prop 8 Trial......................................... 6

    E.    Intervenor KQED's Interest. ........................................................................... 8

ARGUMENT ........................................................................................................................... 9

THE VIDEOTAPE RECORDS MUST BE UNSEALED BECAUSE THE PUBLIC
INTEREST IN DISCLOSURE NOW FAR OUTWEIGHS THE INTEREST IN HAVING
THE TAPES REMAIN SEALED. ............................................................................................. 9

    A.    Unsealing Is Required Under The Common-Law Right of Access. ...................... 9

        1.    The Common-Law Right Of Access Applies To The Sealed
                Videotapes. ................................................................................................. 9

        2.    Due To The Passage Of Time And Changed Circumstances, No
                Compelling Reason To Seal Defeats The Common-Law Right Of
                Access ......................................................................................................... 10

    B.    The First Amendment Independently Requires The Videotapes Be Unsealed....... 13

        1.    The First Amendment Requires A Compelling Reason To Maintain A
                Record Under Seal. ...................................................................................... 13

        2.    There Is No Longer A Compelling Interest In Sealing Here. ..................... 14

    C.    The Public Will Benefit From Making The Videotapes Public. ............................ 16

    D.    The Arbitrary Ten-Year Time For Unsealing In The Local Rules Must Give
        Way To The Common-Law And Constitutional Right Of Access. ........................ 17

CONCLUSION ........................................................................................................................ 19

i

DAVIS WRIGHT TREMAINE LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bailey v. Sys. Innovation, Inc.*,
    852 F.2d 93 (3d Cir. 1988) .................................................................................................18

*Courthouse News Service v. Planet*,
    750 F.3d 776 (9th Cir. 2014) ....................................................................................2, 14, 15

*Cowley v. Pulsifer*,
    137 Mass. 392 (1884) ..........................................................................................................14

*Cox Broad. Corp. v. Cohn*,
    420 U.S. 469 (1975) .............................................................................................................15

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
    331 F.3d 1122 (9th Cir. 2003) ....................................................................................9, 12, 13

*Gannett Co. v. DePasquale*,
    443 U.S. 368 (1979) .............................................................................................................13

*Globe Newspaper Co. v. Superior Court*,
    457 U.S. 596 (1982) .............................................................................................................14

*Heckers v. Fowler*,
    69 U.S. (2 Wall.) 123 (1864) ...............................................................................................18

*Hollingsworth v. Perry*,
    558 U.S. 183 (2010) (per curiam) (*Hollingsworth I*) .................................................4, 6, 11

*Hollingsworth v. Perry*,
    133 S. Ct. 2652 (2013) (*Hollingsworth II*) ........................................................................1, 2, 6

*In re Nat'l Broadcasting Co., Inc.*,
    653 F.2d 609 (D.C. Cir. 1981) ...............................................................................................9

*In Re Special Grand Jury (For Anchorage, Alaska)*,
    674 F.2d 778 (9th Cir. 1982) ................................................................................................10

*Marisol A. v. Giuliani*,
    26 Media L. Rep. 1151, 1154 (S.D.N.Y. 1997) ...................................................................10

*Nixon v. Warner Communications, Inc.*,
    435 U.S. 589 (1978) .............................................................................................................10

*Obergefell v. Hodges*,
    135 S. Ct. 2584 (2015) ......................................................................................................1, 2, 6

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

*Oliner v. Kontrabecki*,
  745 F.3d 1024 (9th Cir. 2014) .........................................................................2, 14

*Oregonian Publ'g Co. v. District Court*,
  920 F.2d 1462 (9th Cir. 1990) .......................................................................15, 18

*Perry v. Brown*,
  667 F.3d 1078 (9th Cir. 2012) ........................................................... *passim*

*Perry v. Schwarzenegger*,
  704 F. Supp. 2d 921 (N.D. Cal. 2010) ..........................................................1, 4, 12

*Phoenix Newspapers, Inc. v. U.S. Dist. Court for Dist. of Arizona*,
  156 F.3d 940 (9th Cir. 1998) .........................................................................12, 13

*Richmond Newspapers, Inc. v. Virginia*,
  448 U.S. 555 (1980) ..............................................................................13

*Times Mirror Co. v. United States*,
  873 F.2d 1210 (9th Cir. 1989) .......................................................................10, 11

*United States v. Bergera*,
  512 F.2d 391 (9th Cir. 1975) .........................................................................16

*United States v. Columbia Broad. Sys., Inc.*,
  497 F.2d 102 (5th Cir. 1974) .........................................................................18

*United States v. Mouzin*,
  559 F. Supp. 463 (C.D. Cal. 1983) ....................................................................9

*United States v. Thoms*,
  684 F.3d 893 (9th Cir. 2012) .........................................................................16

*United States v. Windsor*,
  133 S. Ct. 2675 (2013) ................................................................................6

*Valley Broadcasting Co. v. United States District Court*,
  798 F.2d 1289 (9th Cir. 1986) ........................................................................9

**Rules**

E.D. Pa. Local Rule 5.1.5 (b)(2) .......................................................................18

Local Rule 79-4(g) ...................................................................................5, 17

Local Rule 79-5(f) (eff. 2010) .......................................................................5, 17

W.D.N.C. Local Rule 6.1(H)(1) ........................................................................18

**Constitutional Provisions**

Cal. Const., Article I, § 7.5.................................................................................................1, 3

**Other Authorities**

http://afer.org/blog/trial-day-11-prop-8-proponents-witness-testimony-continues/ ........................11

http://afer.org/blog/witness-testimony-kenneth-miller/ ..........................................................11

http://www.imdb.com/title/tt5554612/?ref_=tt_eps_cu_n .............................................................7

http://www.marriagetrial.com, homepage archived at https://perma.cc/4E66-R76K ........................7

http://www.nytimes.com/2012/06/23/opinion/how-my-view-on-gay-marriage-
      changed.html ...............................................................................................................12

https://en.wikipedia.org/wiki/8_(play ......................................................................................7

https://en.wikipedia.org/wiki/David_Blankenhorn ....................................................................11

https://en.wikipedia.org/wiki/Kenneth_P._Miller ......................................................................11

https://www.youtube.com/watch?v=MeZ0GIy8l4Q....................................................................11

 Prop 8 Trial Reenactment—Pershing Square, Downtown LA,"
      https://www.youtube.com/watch?v=SVIS5_vao6E ............................................................7

"Testimony: Equality on Trial w/ Marisa Tomei and Josh Lucas,"
      https://www.youtube.com/watch?v=CwBsnklZpwM .........................................................7

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

# PRELIMINARY STATEMENT

Over seven years ago, the Northern District of California hosted one of the most extraordinary federal trials in the nation's history: For two-and-half weeks in January of 2010, this Court conducted a bench trial and heard evidence and argument regarding the constitutionality of California's then-recent Proposition 8, which added a provision to the State Constitution providing that "[o]nly marriage between a man and a woman is valid or recognized in California."  Cal. Const., Art. I, § 7.5.  Ultimately, after months of careful post-trial consideration, the court ruled in favor of the same-sex couples challenging the Proposition and held that Prop 8 was unconstitutional because the U.S. Constitution "protects an individual's choice of marital partner regardless of gender."  *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 991 (N.D. Cal. 2010).  The U.S. Supreme Court affirmed the Court's ruling in *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2659 (2013) (*Hollingsworth II*).  Five years later, the U.S. Supreme Court recognized the constitutional right of same-sex couples to marry nationwide.  *Obergefell v. Hodges*, 135 S. Ct. 2584, 2608 (2015).

Happily for court-watchers, law students, scholars, historians, activists, concerned citizens, and those interested in the transparent operation of the judicial branch, the entire historic trial was videotaped.  But, in a strange irony, those videotapes have never been seen by members of the general public.  A Ninth Circuit decision in 2012 ordered the tapes to remain sealed at that time, so, while much information about the trial is known to the public, the videotaped record languishes indefinitely under seal in the court file.  *See Perry v. Brown*, 667 F.3d 1078 (9th Cir. 2012).

Intervenor KQED, Inc. operates the nation's most-listened-to public radio station and the Bay Area's most popular public television station, and it now moves the Court to unseal the tapes and permit them to be viewed by everyone.[1]  Unsealing is appropriate because so much has changed since the Ninth Circuit ordered that the tapes remain sealed over five years ago.  At that

---

[1] KQED is a member of a Media Coalition that earlier intervened in this case.  *See* ECF No. 670; *see also* Intervenor Non-Party Media Coalition's Principal Brief On Appeal in Ninth Circuit Case No. 11-17255 (filed Nov. 13, 2011, and available at 2011 WL 6077437).

MOTION TO UNSEAL VIDEOTAPED TRIAL RECORDS
Case No. 09-cv-2292

time, the appeal of the merits was still pending. But since then, the appeal of the district court's ruling that Prop 8 was unconstitutional was dismissed, *see Hollingsworth II*, 133 S. Ct. at 2659, and the U.S. Supreme Court put this issue to rest once and for all, *see Obergefell*, 135 S. Ct. at 2608. In other words, the legal issue at the core of the case has now moved from the category of hotly-litigated controversies to settled law.

The First Amendment calculus regarding sealing of records has also changed since 2012. The Ninth Circuit has recently held that the First Amendment protects the public's right of access to records of civil proceedings because "access to public proceedings and records is an indispensable predicate to free expression about the workings of government." *Courthouse News Service v. Planet*, 750 F.3d 776, 785 (9th Cir. 2014). Parties must have a "compelling reason" for courts to seal records—even when both parties actively request the sealing. *Oliner v. Kontrabecki*, 745 F.3d 1024, 1026 (9th Cir. 2014). These were open issues in 2012, but they have now been settled in favor of access.

Moreover, the public discussion of gay rights has shifted substantially since the Prop 8 trial. One of two witnesses who testified at the trial for the defense in favor of upholding Prop 8 has very publicly switched his position and now supports same-sex marriage. At least 60% of Americans now support same-sex marriage, as opposed to 44% just seven years ago, around the time of the trial. And, while there continues to be state legislation introduced to limit the rights of same-sex couples, *see* Decl. of Kate Kendell at ¶ 4, video of the only federal court trial in which two weeks of argument and evidence concerning all aspects of the lives of same-sex marriage remains sealed and off-limits to the public.

The sealing of the video of the Prop 8 trial proceedings can no longer be justified by any compelling interest. Rather, the interests to the public in unsealing the videotapes now far outweigh the privacy or other interests of judicial administration. While the public interest in seeing the open work of government remains compelling, any privacy interests of those involved in the trial have disappeared almost entirely, because the trial is no longer ongoing and the appeal has been decided.

///

DAVIS WRIGHT TREMAINE LLP

Moreover, unsealing the records now would not undermine the trial court judge's specific assurances to the proponents of Proposition 8 seven years ago that the videotapes would not be broadcast for the "foreseeable future." *Perry v. Brown*, 667 F.3d 1078, 1084-85 (9th Cir. 2012). To the contrary: any meaningful threat of harm from "public broadcast" has now fully dissipated, and no one who participated in the trial could have relied on a promise that the videotape would be sealed indefinitely. The combination of the operative court rules, the Ninth Circuit's prior opinion indicating that there would be a time when unsealing would be permissible, and the virtual impossibility of being able to justify the sealing the indefinite sealing of a public record means that the question is not *if* the videotapes should be unsealed, but *when*—and *right now* is the appropriate time.

## BACKGROUND

**A.    The "Prop 8" Trial**

   **1.    The Constitutional Challenge To Prop 8 Begins.**

In 2008, California voters passed "Proposition 8," the ballot initiative at the center of this dispute. "Prop 8," as it was frequently called, amended the California Constitution to provide that "[o]nly marriage between a man and a woman is valid or recognized in California." Cal. Const., Art. I, § 7.5.

The Plaintiffs in this litigation are gay and lesbian Californians who were in committed, long-term relationships at the time the law was enacted. They wished to marry but could not because of Proposition 8. *E.g.* Decl. of Paul Katami at ¶ 2 ("I wasn't being treated equally because I couldn't marry the person I love."). The Plaintiffs sued to challenge the constitutionality of Prop 8 under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The Governor and Attorney General of the State refused to defend the constitutionality of Prop 8, but this Court permitted the Proponents of the ballot proposition to intervene to defend its constitutionality.

///

///

///

DAVIS WRIGHT TREMAINE LLP

## 2.    The Historic Bench Trial Is Recorded, And The Recording Is Placed In The Record, Under Seal.

Then-Chief Judge Vaughn Walker was assigned the case.  As trial approached, Chief Judge Walker expressed his interest in broadcasting the proceedings.  Initially, he wished to allow simultaneous broadcast to the public, but, in a 5-4 ruling issued at the start of the trial, the U.S. Supreme Court ruled  that the recording and broadcast of the trial was not permitted by the Local Rules in effect at the time of trial.  *Hollingsworth v. Perry*, 558 U.S. 183, 199 (2010) (per curiam) (*Hollingsworth I*).

Nonetheless, as the trial court and the parties recognized, the court was still permitted to videotape the trial, even if it could not be simultaneously broadcast.  Instead, as the court found, "the local rule permits the recording for purposes . . . of use in chambers."  *Perry*, 667 F.3d at 1082.  No party objected to the continued recording of the trial, given that the trial would not be simultaneously broadcast.  *Id.*

All four of the Plaintiffs testified.  They believe that the emotional impact of their live, in-person testimony was a critical part of their case that has so far not been able to enter the public discussion.  Plaintiff Paul Katami notes that those in the courtroom who watched him testify could "judge for themselves [his] commitment" to his now-husband Jeff and "hear the way [his] voice quivers when [he] talk[s] about what Jeff means to [him]."  Katami Decl. at ¶ 6.  Likewise, Plaintiff Kristin Perry believes that those who saw her testify could "see how terrified [she] was" and "how personal this was for her."  Decl. of Kristin Perry at ¶ 7.  Those watching, including Chief Judge Walker, could "see on [her] face that [she] was carrying the weight of not only [her] family but the lesbian and gay community as well."  *Id.*

On August 4th, 2010, the Court issued a written opinion and order holding Prop 8 unconstitutional.  *Perry*, 704 F. Supp. 2d at 1003.  The court's opinion also addressed the status of the videotapes.  It stated that "[t]he trial proceedings were recorded and used by the court in preparing the findings of fact and conclusions of law" and then specifically directed the clerk "to file the trial recording under seal *as part of the record*."  *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 929 (N.D. Cal. 2010) (emphasis added).

4

1  Neither party appealed the sealing direction in the court's order.

2  **B.    The Proponents Enforce The Sealing Order While The Appeal Of The Merits Is Pending.**

3

4  In 2011, while the appeal of the merits of the court's decision was pending, the Proponents

5  learned that Chief Judge Walker, who had retired from the bench, had been using excerpts of the

6  videotapes of trial in public appearances.  The Proponents thus asked that the tapes be returned,

7  and the Plaintiffs filed a cross-motion that the videotapes be unsealed.  *Perry*, 667 F.3d at 1083.

8  On February 2, 2012, five days *before* the Ninth Circuit issued its opinion addressing the

9  constitutionality of Prop 8, that court issued an opinion reversing the trial court's decision to

10  unseal the videotapes.  The court stated that its opinion had "nothing to do with the freedom of the

11  press to publish, describe, or comment on any information to which it obtains access."  *Perry*, 667

12  F.3d at 1080.  Instead, it said that its ruling addressed only the question of "whether a recording

13  purportedly made for the sole purpose of aiding the trial judge in the preparation of his opinion,

14  and then placed in the record and sealed, may *shortly thereafter* be made public by the court."  *Id.*

15  at 1081 (emphasis added).

16  The court assumed that the common-law right of access applied to the videotapes, as a

17  public record in a judicial proceeding.  *Id.* at 1084.  But the court held there was a "compelling

18  reason in this case for overriding the common-law right": namely, the fact that the Proponents

19  "reasonably relied on Chief Judge Walker's specific assurances . . . that the recording would not be

20  broadcast to the public, *at least in the foreseeable future*."  *Id.* at 1084–85 (emphasis added).  The

21  court did not give a specific timeframe for the length of time that the common-law right of access

22  would be overcome by the court's assurances that the videotapes would not be publicly broadcast.

23  However, it did cite a local rule providing that sealed documents would be presumptively unsealed

24  ten years after a case is closed.  *See* Local Rule 79-5(f) (eff. 2010); Local Rule 79-4(g) (current

25  version).  That local rule thus forms the outer boundary of the parties' reasonable expectation for

26  sealing—though, as explained below, there is no compelling reason to wait a decade.

27  ///

28  ///

DAVIS WRIGHT TREMAINE LLP

MOTION TO UNSEAL VIDEOTAPED TRIAL RECORDS
Case No. 09-cv-2292

**C.   The Supreme Court Ultimately Determines That Bans On Same-Sex Marriage Are Unconstitutional.**

In the years following this Court's initial landmark decision, the federal courts determined the legal issue at the heart of the case: whether the Constitution prohibits state bans on same-sex marriage.  In this very case, the Ninth Circuit initially affirmed the court's ruling, and the U.S. Supreme Court dismissed the Proponents' appeal for lack of standing.  *Hollingsworth II*, 133 S. Ct. at 2659.  That ruling kept in place the district court's holding that Prop 8 was unconstitutional, and California began recognizing marriages of same-sex couples.  On the same day the Supreme Court dismissed the Proponents' appeal, it also held that the federal Defense of Marriage Act—which prohibited the federal government from recognizing valid state marriages of same-sex couples—was unconstitutional.  *United States v. Windsor*, 133 S. Ct. 2675, 2682 (2013).

Two years later, the Court conclusively resolved the central issue.  In its landmark ruling in *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), the Court held that "the Fourteenth Amendment requires a State to license a marriage between two people of the same sex."  *Id.* at 2593.  In an appendix to its opinion, the court discussed the various lower court rulings that had addressed the issue, and it included both the district court and Ninth Circuit opinion in this case.  *Id.* at 2608 (Appendix A).  To KQED's knowledge, this is the only case of all those cited in this historic litigation campaign in which a complete video record of a federal trial on the merits is available.

Since 2015, all fifty states and the District of Columbia have issued marriage licenses to same-sex couples.

**D.   The Continuing Public Interest In The Prop 8 Trial.**

From the beginning of the Prop. 8 trial, the public was intensely interested in the historic trial that presented opposing views on same-sex marriage in a neutral public forum.  For example, when the Northern District of California changed its local rule to allow cameras, tens of thousands of people notified the Court that they favored camera coverage of the trial proceedings, even though the feedback that the Court invited was as to only the general local rule and not case-specific.  *Hollingsworth I*, 558 U.S. at 202 (Breyer, J., dissenting).  After the U.S. Supreme Court banned broadcast coverage of the trial proceedings, interested parties actually had actors recreate each day of trial testimony and argument based on the transcripts, with actors playing the judge,

DAVIS WRIGHT TREMAINE LLP

the lawyers, and the witnesses.[2]  These "re-enactments" of the trial were performed in cities—and sometimes on city streets—in various places across the country.[3]  Indeed, a LexisNexis search of news stories returns over 7,500 separate articles about "Proposition 8" from 2010 alone—and there were doubtless countless many thousands more stories that were broadcast on radio, television, posted on social media, or published in sources not captured by LexisNexis.

In the years since, the public has continued to be keenly interested in the historic Prop 8 trial, though the intense, day-to-day scrutiny faded.  For instance, in 2016, "Proposition 8" still returned over 700 hits in a search of LexisNexis news sources.  And the issue of gay rights and gay marriage broadly continues to be one of substantial public interest.  More importantly, the public has shown a continual interest in audio-visual depictions of the trial itself, not merely news accounts of the proceedings.  The trial transcripts were used as the basis for a noted play, *8*, that was performed on Broadway in 2011, broadcast in 2012, and then adapted for a radio play in Australia in 2014.[4]  Multiple documentaries have been made about the case and the issue, including the acclaimed *The Case Against 8*, which was released in theaters and aired on HBO in 2014.  And the public's appetite for depictions of the Prop 8 case continues almost literally to this day: on March 3, 2017, an episode of *When We Rise*, a docuseries that aired on ABC, featured an extended recreation of the Prop 8 trial, with acclaimed actors playing Chief Judge Walker, the noted attorneys on each side, and even the witnesses.[5]

Several outside groups likewise recognized the substantial public interest in the videotapes. The National Center for Lesbian Rights, for instance, believes that the Prop 8 trial was a "watershed moment in the history of LGBT rights" and that unsealing of the tapes will "help the public more fully understand the arguments and evidence that this Court (and ultimately the U.S.

---

[2] http://www.marriagetrial.com, homepage archived at https://perma.cc/4E66-R76K.
[3] *See, e.g.*, "Testimony: Equality on Trial w/ Marisa Tomei and Josh Lucas," https://www.youtube.com/watch?v=CwBsnklZpwM (informal reenactment by actors in West Hollywood, California); "Prop 8 Trial Reenactment—Pershing Square, Downtown LA," https://www.youtube.com/watch?v=SVIS5_vao6E.
[4] https://en.wikipedia.org/wiki/8_(play)
[5] http://www.imdb.com/title/tt5554612/?ref_=tt_eps_cu_n

DAVIS WRIGHT TREMAINE LLP

Supreme Court) heard and used to validate the constitutional rights of LGBT persons in the decorum of this historic trial." Decl. of Kate Kendell at ¶ 4. The It Gets Better Project, which releases videos meant to inspire hope for young LGBT people facing harassment, has determined that unsealing of the videos "will exponentially expand the audience that can view the evidence and argument," which serves the It Gets Better Project's educational mission. Decl. of Seth Levy at ¶ 4.

**E.      Intervenor KQED's Interest.**

Intervenor KQED operates the nation's most listened to public radio station and the most popular public television  stations in the San Francisco Bay Area. KQED also has its own news division, KQED News, which publishes and broadcasts "The California Report," which provides daily coverage of news and culture throughout the State of California. KQED serves millions of listeners and viewers in the Bay Area, California, and around the world each week. Decl. of Scott Shafer at ¶ 2.

As a public broadcaster, KQED is uniquely situated to assess the desire its viewers, listeners, and readers have to view the unsealed videotapes of the historic Prop 8 trial. *Id.* at ¶¶ 3–4. That desire remains extremely strong. San Francisco was not only the site of the Prop 8 trial; it also has a large gay and lesbian population, and the advocacy history of its residents—by both those who are LGBT ("lesbian, gay, bisexual, transgender") and those who are not—makes it one of the most important cities in the history of the gay rights movement. Many members of the public have learned about the Prop 8 trial through other media—from news reports to documentaries to magazine articles—but there is no substitute for the insight and illumination that only the videotaped record of the trial can provide. *Id.* at ¶ 5.

Counsel for KQED sought defense counsel's stipulation that the videotape record be unsealed, but trial counsel refused to stipulate to unseal any portion of the videotapes. See Declaration of Thomas R. Burke at ¶ 4.

Accordingly, KQED brings this Motion to unseal the tapes, which are currently in the custody of the Clerk of Court as sealed records of this proceeding. KQED is committed to making publicly available whatever portion of the tapes are unsealed in a way that educates the public and

DAVIS WRIGHT TREMAINE LLP

MOTION TO UNSEAL VIDEOTAPED TRIAL RECORDS
Case No. 09-cv-2292

provides context for the historic document that is finally being made available.  In particular, if the videotapes are unsealed, KQED intends to produce an educational television special and a separate radio special, and also make available online key moments of the trial.  Shafer Decl. at ¶ 6.

## ARGUMENT

### THE VIDEOTAPE RECORDS MUST BE UNSEALED BECAUSE THE PUBLIC INTEREST IN DISCLOSURE NOW FAR OUTWEIGHS THE INTEREST IN HAVING THE TAPES REMAIN SEALED.

Now is the appropriate time to unseal the videotape records of this historic trial.  As public court records, the videotapes are subject to the common-law right of access, and the presumption of access that applies can be overridden only by "sufficiently compelling reasons."  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003).  Whatever reasons that could previously override the presumption of access are no longer applicable, many years after trial and the disposition of this case on appeal.  Further, the First Amendment provides independent grounds to unseal these records.  Last, the First Amendment would also override the entirely arbitrary and excessive 10-year timeframe for unsealing provided by a potentially applicable Local Rule.

**A.    Unsealing Is Required Under The Common-Law Right of Access.**

**1.    The Common-Law Right Of Access Applies To The Sealed Videotapes.**

Courts in the Ninth Circuit "start with a strong presumption in favor of access to court records."  *Foltz*, 331 F.3d at 1135.  The right of access to court records includes the right to obtain copies of videotapes and audiotapes as they are introduced into evidence during a trial.  *Valley Broadcasting Co. v. United States District Court*, 798 F.2d 1289, 1294 (9th Cir. 1986) (rejecting trial court's stated reasons for refusing to provide public with copies of tapes introduced into evidence); *see also United States v. Mouzin*, 559 F. Supp. 463, 463–64 (C.D. Cal. 1983) (permitting media to copy video and audio tapes used at trial).  This is because "what transpires in the courtroom is public property."  *In re Nat'l Broadcasting Co., Inc.*, 653 F.2d 609, 614 (D.C. Cir. 1981) (granting post-verdict access to video and audio tapes played to the jury at trial).

The tapes here—which form an audiovisual record of what occurred in open court during a historic trial—are thus the very definition of "public property" to which the common-law right of

9

access attaches.  Every moment of what was recorded was open to the public, and every line

uttered by a participant was captured in the transcript.  Moreover, the videotapes themselves were

relied on by the court as it made its decision on the records, so the videotapes are no different than

other documentary evidence or court transcripts that are also presumptively available for

inspection by the public.  *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978)

(recognizing "a general right to inspect and copy public records and documents, including judicial

records and documents"); *Marisol A. v. Giuliani*, 26 Media L. Rep. 1151, 1154 (S.D.N.Y. 1997)

(noting that a "strong" presumption of access attaches to a report prepared pursuant to court order

because it was likely to play an important role in the Court's performance of its Article III

function).

The Ninth Circuit did not call into question the district court's 2011 conclusion that the

common-law right of access applied to the videotapes, *see Perry*, 667 F.3d at 1084, and there is no

justification to conclude otherwise here.  There can be no dispute that the videotapes are

presumptively available for public access.

> ### 2.   Due To The Passage Of Time And Changed Circumstances, No Compelling Reason To Seal Defeats The Common-Law Right Of Access.

None of the usual justifications for maintaining these videotapes under seal apply here.

**First**, the common-law right of access is often not applied to traditionally private documents—

such as grand jury records, *see In Re Special Grand Jury (For Anchorage, Alaska)*, 674 F.2d 778,

781 (9th Cir. 1982), and search warrants and related materials for an ongoing investigation, *Times

Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. 1989)—but there is no tradition of secrecy

for videotapes of complete judicial proceedings that were fully open to the public.  Tradition thus

cannot justify sealing here.

**Second**, considerations related to the litigation or the litigants, such as concerns about

privacy, the threat of harassment, or prejudice to ongoing proceedings, cannot justify the

continued sealing of the tapes either.  None of these interests apply in 2017.  In 2010, for instance,

the Supreme Court noted that "witness testimony may be chilled if broadcast," and it also noted

that Proponents' witnesses were worried about potential harassment due to their involvement in

MOTION TO UNSEAL VIDEOTAPED TRIAL RECORDS
Case No. 09-cv-2292

DAVIS WRIGHT TREMAINE LLP

the case.  *Hollingsworth I*, 558 U.S. at 195.  Likewise, when the Ninth Circuit discussed the propriety of sealing the tapes in 2011 and 2012, the Proponents had identified ongoing harassment of witnesses and supporters of the Proposition as a reason that the common-law presumption of access could be overcome.  *See* Proponents' 9th Cir. Br., Dkt. No. 31 at 40–41.  These concerns were acutely felt in 2011, because, at that time, Proponents were "appealing both the judgment invalidating Proposition 8 and the district court's subsequent denial of [their] motion to vacate that judgment," which made it "quite possible that this case will be retried in the future."  *Id.* at 42

But many years have passed since those justifications were last articulated, and there is now a drastically changed calculus on these points.  The decision on the merits is no longer on appeal; there is no longer any potential for retrial; and the legal issue is no longer an open question.  Further, whatever concerns the Proponents' supporters had for privacy have long since disappeared: given the extensive reporting on the case in all media, including through reenactments of the case through transcripts, the Proponents' key participants are known to anyone with an Internet connection.  Both witnesses for the Proponents, for instance, have Wikipedia pages that extensively discuss their testimony,[6] and have had their testimony dissected, discussed, and reenacted in a variety of venues.[7]  Given the publicity and the time that has passed since the trial, if ever there were an instance where the privacy interests of defendants can no longer be a concern, it is this one.

Just as importantly, the views of at least one of the two witnesses for the Proponents has changed.  On June 23, 2012—several months *after* the Ninth Circuit last considered whether the videotapes here could be open to public inspection—Proponents' witness David Blankenhorn publicly reversed his position.  In a remarkable op-ed in the New York *Times*, Blankenhorn announced that "the time has come for [him] to accept gay marriage and emphasize the good that

---

[6] https://en.wikipedia.org/wiki/Kenneth_P._Miller and https://en.wikipedia.org/wiki/David_Blankenhorn.

[7] http://afer.org/blog/witness-testimony-kenneth-miller/; http://afer.org/blog/trial-day-11-prop-8-proponents-witness-testimony-continues/; https://www.youtube.com/watch?v=MeZ0GIy8l4Q (extensive reenactment of testimony of David Blankenhorn from the play *8*).

MOTION TO UNSEAL VIDEOTAPED TRIAL RECORDS
Case No. 09-cv-2292

DAVIS WRIGHT TREMAINE LLP

it can do." He declared that his new work would be "to help build new coalitions bringing together gays who want to strengthen marriage with straight people who want to do the same."[8] This highly-relevant information could not factor into the Ninth Circuit's decision that the tapes here remain sealed, of course, because Blankenhorn's public reversal came months *after* the court issued its decision.

Given the years that have passed since trial, the fact that there is no potential retrial, and the public reversal of one of two witnesses for the Proponents, then, the possibility of any meaningful harm from unsealing the tapes that could come to the people involved in the trial or to the determination of the legal issues has dissipated. *See Phoenix Newspapers, Inc. v. U.S. Dist. Court for Dist. of Arizona*, 156 F.3d 940, 947 (9th Cir. 1998) (noting an important distinction between "closing a proceeding" in the moment and the "decision to seal forever the content of in camera proceedings"). The possibility of harm is certainly too remote to outweigh the "strong presumption" of access that applies to public records of a federal court. *Foltz*, 331 F.3d at 1135.

Finally, the Ninth Circuit in 2012 found that Proponents' reliance on the district court's statement that the trial would not be broadcast was a compelling justification for overcoming the common-law right of access. *See Perry*, 667 F.3d at 1084–88. But the court did not state that perpetual sealing as a result of that understanding would be justified; instead, the Ninth Circuit stated that, in failing to appeal Chief Judge Walker's decision to continue recording the trial and place the tapes under seal upon conclusion of the case, "Proponents reasonably relied on Chief Judge Walker's specific assurances—compelled by the Supreme Court's just-issued opinion—that the recording would not be broadcast to the public, *at least in the foreseeable future*." *Id.* at 1084-85 (emphasis added); *see also Perry*, 667 F.3d at 1081 (noting that the question in the case was whether the tapes "may *shortly thereafter* [i.e., soon after the trial concluded] be made public by the court." (emphasis added)).

///

---

[8] http://www.nytimes.com/2012/06/23/opinion/how-my-view-on-gay-marriage-changed.html

DAVIS WRIGHT TREMAINE LLP

1       Thus, the question the Ninth Circuit's decision leaves open is not *if* the records will be

2   unsealed, but *when*.  After all, Proponents cannot have reasonably on a promise that the videotapes

3   would have been sealed permanently.  That is because under the Local Rules in place at the time,

4   sealed records become presumptively public ten years after a case is closed.  *Perry*, 667 F.3d at

5   1085 n.5.  Therefore, by not appealing the aspect of the court's order placing the videotapes under

6   seal in the same manner as any other court record, Proponents implicitly accepted that the records

7   would be subject to release at some point.[9]  Therefore, their major disagreement must have been

8   with the idea of broadcast during or soon after the trial and while the appeal was pending.  The

9   litigation at that point had little to do with what would happen five years later.

10      Balancing the various interests, then, the records should now be unsealed.  Whatever risk

11  of harm came from unsealing the tapes in 2012 or the years immediately following has dissipated.

12  There is no risk of retrial, nor a meaningful risk of harassment.  There is simply no current value

13  that can justify continued government sealing.  Thus, the "strong presumption" of access attaches

14  and requires the videotapes to be unsealed.  *Foltz*, 331 F.3d at 1135.

15  **B.**   **The First Amendment Independently Requires The Videotapes Be Unsealed.**

16      **1.**   **The First Amendment Requires A Compelling Reason To Maintain A Record**

17                   **Under Seal.**

18      As the Supreme Court repeatedly has recognized, court proceedings are presumptively

19  open to the public.  Indeed, "[a]s early as 1685, Sir John Hawles commented that open

20  proceedings were necessary so 'that  truth may be discovered in civil as well as criminal matters.'"

21  *Gannett Co. v. DePasquale*, 443 U.S. 368, 386 n.15 (1979) (citation omitted).  This tradition of

22  openness "is no quirk of history; rather it has long been recognized as an indispensable attribute of

23  an Anglo-American trial."  *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569, 580 n.17

24  _____

25      [9] Moreover, permanent sealing is rarely justified, and can typically only be effected by

26  express operation of law.  *Phoenix Newspapers, Inc. v. U.S. Dist. Court for Dist. of Arizona*, 156
    F.3d 940, 948 n.2 (9th Cir. 1998) (noting that that "permanent sealing is justified … by law" in

27  some instances, such as the "sealing of portions of hearing related to grand jury proceedings").
    There is no rational reason that videotaped records of otherwise public proceedings must be sealed

28  permanently.

MOTION TO UNSEAL VIDEOTAPED TRIAL RECORDS
Case No. 09-cv-2292

1   (1980) ("[H]istorically both civil and criminal trials have been presumptively open.").

2        Public access to court proceedings is indispensable because it allows "the public to

3   participate in and serve as a check upon the judicial process—an essential component in our

4   structure of self-government." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606

5   (1982).  Indeed, courts have long-recognized that "the trial of [civil] causes should take place

6   under the public eye, not because the controversies of one citizen with another are of public

7   concern, but because . . . every citizen should be able to satisfy himself with his own eyes as to the

8   mode in which a public duty is performed." *Cowley v. Pulsifer*, 137 Mass. 392, 394 (1884).

9        Since the Ninth Circuit's decision in this case in 2012, that court has clarified that the First

10  Amendment places an especially high bar in front of those wishing to maintain civil records under

11  seal.  In *Courthouse News Serv. v. Planet*, 750 F.3d 776 (9th Cir. 2014), the court resolved an

12  open question and definitively held that the First Amendment granted the media rights of access to

13  records in civil proceedings. *Id.* at 786–87.  The court explained that "access to public

14  proceedings and records is an indispensable predicate to free expression about the workings of

15  government," *id.* at 785, and therefore held that federal courts should not abstain from determining

16  the question of whether a local courts' denial of prompt access to civil complaints violated the

17  First Amendment, *id.* at 793.

18       Separately, in *Oliner v. Kontrabecki*, 745 F.3d 1024 (9th Cir. 2014), the Ninth Circuit

19  clarified that a district court may not seal an entire court record absent "compelling reasons" for

20  doing so.  As particularly relevant here, the court applied that demanding standard even where

21  both parties requested that the records would be sealed. *Id.* at 1025.  Instead, even if all parties

22  agree to sealing, there must be "compelling reasons" to "overcome the strong presumption in favor

23  of maintaining public access to court records." *Id.*  These recent decisions emphasize just how

24  strong a showing Proponents must make here, in 2017, to continue maintaining the videotapes

25  under seal.  They cannot meet that high standard here.

26       **2.    There Is No Longer A Compelling Interest In Sealing Here.**

27       Under the compelling interest standard, to maintain the videotapes under seal, Proponents

28  must establish that "(1) closure serves a compelling interest; (2) there is a substantial probability

14

1   that, in the absence of closure, this compelling interest would be harmed; and (3) there are no

2   alternatives that would adequately protect the compelling interest." *Oregonian Publ'g Co. v.*

3   *District Court*, 920 F.2d 1462, 1466 (9th Cir. 1990).  Proponents cannot meet this demanding

4   standard.

5          The Ninth Circuit recognized a compelling interest that applied in 2012 to keep the records

6   sealed: that preserving "the integrity of the judicial process" was "a compelling interest that in

7   these circumstances would be harmed by the nullification of the trial judge's express assurances"

8   that the videotapes would not be publicly broadcast.  *Perry*, 667 F.3d at 1088.  But, now that the

9   merits have long been decided and there are no direct harms that would come from unsealing the

10  tapes, protecting the "integrity of the judicial process" actually cuts the other way.  That is, the

11  unsealing of the tapes would "'bring to bear the beneficial effects of public scrutiny upon the

12  administration of justice,'" *Courthouse News Serv.*, 750 F.3d at 786 (quoting *Cox Broad. Corp. v.*

13  *Cohn*, 420 U.S. 469, 491-92 (1975)), and thereby *enhance* the "integrity of the judicial process"—

14  not undermine it, as the court held unsealing would have in 2012, when the courts were in the

15  midst of deciding the controversial legal question at issue.

16         Moreover, now that many years have passed since trial, the First Amendment and the

17  purpose for which the court authorized the recording are no longer in tension.  As the Ninth

18  Circuit recognized in 2012, the local rules in place at the time prohibited video recording in court

19  for the purpose of public broadcasting or televising.  *Perry*, 667 F.3d at 1082.  Accordingly, the

20  district court made the recording to aid its decisionmaking—just like any other aid, such as a court

21  transcript—and placed it under seal "as part of the record." *Id.* at 1083.  At the time, then, the

22  access demanded by the First Amendment was in some tension with the prohibition on

23  broadcasting dictated by the local rules and required by the unique circumstances of the trial and

24  appeal.

25         But seven years later, there is no longer the possibility of simultaneous broadcast or

26  transmission of the trial.  Rather, if this Court were to unseal the tapes and make them available

27  for inspection, KQED and other media members and non-profit organizations like ItGetsBetter.org

28  and members of the general public could use it just as they would another court record: to

MOTION TO UNSEAL VIDEOTAPED TRIAL RECORDS
Case No. 09-cv-2292

DAVIS WRIGHT TREMAINE LLP

illuminate the historical record and examine the workings of the judicial branch of government. *See* Shafer Decl. at ¶ 6, Kendall Decl. at ¶ 4–5, Levy Decl. at ¶ 3–4.  A "simultaneous broadcast" that can affect the outcome of trial, impact the participants, or change the outcome on appeal is no longer a possibility.  Thus, the First Amendment's compelling interest in preserving the integrity of the judicial augurs in favor of unsealing the videotaped records.

## C.     The Public Will Benefit From Making The Videotapes Public.

As the Ninth Circuit has made clear, "live testimony"—not a bare transcript—is the "indispensable" foundation of our adversary system.  *United States v. Thoms*, 684 F.3d 893, 905 (9th Cir. 2012) (holding that a district court must see and hear live, in-person testimony before reversing the credibility determination made by a magistrate judge).  Indeed, "trial judges and juries in our circuit and all over the country rely on the demeanor evidence given by live testimony everyday, and they find it quite valuable in making accurate decisions."  *Id.*  The value to the public of viewing the full demeanor evidence the district court considered in this historic trial thus is hard to overstate.

Moreover, the circumstances of the Prop 8 Trial mean that these particular videotapes contain unique emotional and educational information that no transcript can provide.  Those who actually testified believe that "video will uniquely show why marriage is important" to same-sex couples because only video will "capture the emotion that was part of every day of trial."  Decl. of Sandra B. Stier at ¶ 7.  The actual video testimony differs substantially from the reenactments, because most reenactments have portrayed the witnesses as "brave and confident" when in fact the record will show them to be "vulnerable."  *Id.* at ¶ 8.  And those who were in the courtroom think it will be particularly revealing to watch the videotape of "other witnesses that spoke about their experiences dealing with Proposition 8 or living as a lesbian or gay person," Perry Decl. at ¶ 10, so that the public can see the "tears" and "emotion" that no transcript can sufficiently convey.  *See United States v. Bergera*, 512 F.2d 391, 393 (9th Cir. 1975) (noting that "dry records" cannot convey the same "immediate impressions" as live testimony, and so are often inferior tools for decisionmaking).

///

MOTION TO UNSEAL VIDEOTAPED TRIAL RECORDS
Case No. 09-cv-2292

DAVIS WRIGHT TREMAINE LLP

Moreover, the record here reveals that a variety of organizations plan to make productive, educational uses out of the videotapes and put them in context. KQED, the It Gets Better Project, the National Center For Lesbian Rights all intend to review and analyze the tapes and present them in a way that enlightens and illuminates and does not merely sensationalize what happened in the courtroom. *See See* Shafer Decl. at ¶ 6, Kendall Decl. at ¶ 4–5, Levy Decl. at ¶ 3–4. There will thus be substantial public benefit, and no downside, to unsealing the tapes.

**D.    The Arbitrary Ten-Year Time For Unsealing In The Local Rules Must Give Way To The Common-Law And Constitutional Right Of Access.**

As explained, both the common-law right of access and the First Amendment require the court to unseal the videotapes now, in 2017. These considerations also trump the local rule that may otherwise provide that the records be unsealed until either 2020 or 2022—depending on what date this Court considers this case "closed."[10]

The local rule in effect at the time of trial provided that "[a]ny document filed under seal in a civil case shall be open to public inspection without further action by the Court 10 years from the date the case is closed." Local Rule 79-5(f) (eff. 2010). The local rule also provided that "a party that submitted documents that the Court placed under seal in a case may, upon showing good cause at the conclusion of the case, seek an order that would continue the seal until a specific date beyond the 10 years provided," but no party sought such an order here. As applied here, this arbitrary ten-year time for unsealing violates the constitutional and common-law directive that records be open for public inspection absent compelling reasons.

///

---

[10] The ten-year timeline for presumptive unsealing provided by Local Rule runs from the date a case is "closed." *See* Local Rule 79-5(f) (eff. 2010); Local Rule 79-4(g) (current version). The ambiguity in the application of the rule arises because it is not entirely clear when this case was closed. On August 4, 2010, the district court ordered the Clerk of Court to enter judgment in favor of Plaintiffs, ECF No. 708 at 136, and then again on August 12, 2010 ordered the judgment be entered "forthwith," ECF No. 727. But no separate judgment was apparently ever entered. Instead, in a ministerial order by Chief Judge Ware, dated August 27, 2012, the Clerk was formally instructed to "close this file," though it had been effectively closed for years before that. ECF No. 842.

MOTION TO UNSEAL VIDEOTAPED TRIAL RECORDS
Case No. 09-cv-2292

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

At the threshold, the local rules of this Court—just like any other rules or statutes—must give way when they conflict with the First Amendment or other legal rules with supremacy over local rules. *Bailey v. Sys. Innovation, Inc.*, 852 F.2d 93, 94 (3d Cir. 1988) (holding that local rule governing extrajudicial statements was invalid as applied because it "violate[d] [the parties'] rights to freedom of speech"); *United States v. Columbia Broad. Sys., Inc.*, 497 F.2d 102, 107 (5th Cir. 1974) (local rule banning all in-court sketches was unconstitutionally overbroad); *see generally Heckers v. Fowler*, 69 U.S. (2 Wall.) 123, 128 (1864) (local rules may be adopted "provided  such rules are not repugnant to the laws of the United States").

As applied here, requiring the videotapes to remain under seal until at least 2020—and possibly even 2022—violates the First Amendment and the common-law right of access. Adhering to the outer boundaries of that rule would permit the sealing of videotaped records well beyond the point at which there remains a compelling reason for keeping the records sealed.  The First Amendment requires that records be unsealed unless a "compelling reason" requires them to be unsealed, not when a given deadline expires. *See supra* § B.2 (discussing the "compelling interest" standard in *Oregonian Publ'g Co.*, 920 F.2d at 1466).

Moreover, the ten-year timeline set by Local Rule for unsealing appears to be completely arbitrary and is far too long to justify under the First Amendment.  Not all sets of local rules address automatic unsealing, but many courts that do have such rules have adopted much shorter timeframes for automatic unsealing than ten years:  the Eastern District of Pennsylvania, for instance, provides for presumptive unsealing two years after the conclusion of the civil action, *see* E.D. Pa. Local Rule 5.1.5 (b)(2), while the Western District of North Carolina provides that any sealed records "shall be unsealed at the time of final disposition of the case," unless otherwise ordered, *see* W.D.N.C. Local Rule 6.1(H)(1).  These rules are consistent with the kind of openness that the First Amendment demands and that the public often benefits from.  The local rule here, by contrast, substitutes a constitutionally-required "compelling interest" standard with an arbitrary 10-year timeframe that is far too long as applied to the interests at stake in this case.  The Constitution requires the videotapes to be unsealed now, not sometime next decade.

///

18

MOTION TO UNSEAL VIDEOTAPED TRIAL RECORDS
Case No. 09-cv-2292

**CONCLUSION**

For all the reasons stated, the videotaped records of the trial proceedings in the Prop. 8 case should be immediately unsealed and made available for public inspection by Intervenor KQED and all other interested parties.

DATED: April 28, 2017

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP
THOMAS R. BURKE
JASON HARROW

By:  _/s/ Thomas R. Burke_
     Thomas R. Burke

Attorneys for Intervenor KQED, Inc.

MOTION TO UNSEAL VIDEOTAPED TRIAL RECORDS
Case No. 09-cv-2292