THOMAS R. BURKE (CA State Bar No. 141930)
thomasburke@dwt.com
JASON HARROW (CA State Bar No. 308560)
jasonharrow@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:    (415) 276-6500
Facsimile:    (415) 276-6599

Attorneys for Intervenor KQED, Inc.

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Kristin M. Perry, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Edmund G. "Jerry" Brown, Jr., Governor of California, <br><br> Defendant. | Case No. 09-cv-2292 <br><br> **DECLARATION OF KRISTIN M. PERRY IN SUPPORT OF KQED'S MOTION TO UNSEAL VIDEOTAPED TRIAL RECORDS** <br><br> Date: <br> Time: <br> Department: |

DAVIS WRIGHT TREMAINE LLP

I, Kristin M. Perry, state:

1. I am Kristin M. Perry. The matters stated herein are true of my own personal knowledge and I could competently testify to them if called as a witness. I make this declaration in support of KQED's Motion to Unseal Videotaped Trial Records.

2. I was one of the four plaintiffs who brought this lawsuit. I agreed to become a plaintiff because I love Sandy Stier ('Sandy"), and I wanted our relationship to be validated in the same way that all of my heterosexual friends had their relationships validated, through marriage. Sandy and I had committed to support and protect each other in every way we could outside of marriage through multiple inferior legal agreements such as domestic partnership, estates plans, home ownership and on a positive note blending our families therefore marriage was the next logical step, the step that would show that we wanted a permanent commitment, and we wanted to solidify that in a way that didn't make us feel like second class citizens. We wanted to be married so we could hold ourselves out in the same way as our heterosexual friends do, so that everyone would know how we felt about each other. I wanted Sandy to be my wife.

3. As a plaintiff in this case I attended all but one day of trial. I also spent countless hours preparing for trial with the legal team. I took part in a legal procedure that I really didn't understand fully until its completion. The complexity of the legal process was uniquely challenging in part due to its high standards for proof and involvement of real people who have suffered specific harm. Being a plaintiff in a lawsuit is different than anything I had ever done before, or that I have done since. The structure of a legal case creates a very high bar to ensure that you support your facts with evidence and that you are honest and accurate. In a trial, and in deposition, there is also the rigor of cross examination, and I don't think the public fully understands how a trial works if they don't see it. I attended all but one day of the trial in this case, and was, therefore, able to hear the testimony of each witness, and the arguments made by counsel. I also testified the first day of trial.

4. Giving testimony on the stand, I felt like I was exposing myself and the most painful, humiliating and intimate details of my life to a room full of people I didn't know, and I was doing that under oath, and I was doing that knowing that the other side was listening to

1

DECLARATION OF KRISTIN M. PERRY IN SUPPORT OF KQED'S MOTION TO UNSEAL VIDEOTAPED TRIAL RECORDS Case No. 09-cv-2292

everything I was saying and was preparing to challenge anything I said that they didn't agree with. I have never been in a situation like that before, and I have never been in a situation like that since. I was very nervous to be so vulnerable, but I knew that this is what needed to happen so I could offer proof of the importance of securing my right to marry Sandy.

5. When I learned that KQED was filing a lawsuit to unseal the tapes, I was delighted. I had literally been hoping the tapes would be released, because I think it is so important on so many levels. For example, people are still debating this issue, there are still discriminatory laws being proposed, and some have become enacted law and they affect the rights of LGBT people to be in a relationship with the person they love and not have to choose that over employment or housing. And there could be another new referendum any day, and the testimony in our case, speaks to these issues that are very alive across the country.

6. I also think the release of the trial tapes will help tell a cautionary tale about how you have to fight back, and if you fight back, you can win. I think this generation of politicians, community leaders and lawmakers should see the tapes, so they can see the pain and suffering they inflict when unjust laws are put on the books. I think that the tapes could be an instructive piece of history for school children who are starting to not remember a time before their moms and dads could get married, as well as in law school classes about civil rights fought in the courts. Seeing the trial testimony, and seeing the faces and mannerisms of the witnesses, including me and Sandy, people will be able to see just how injurious discrimination can be.

7. Although I was very scared while giving my trial testimony, I think it is important for people to see the video of that day. I think it is important for my trial testimony to be publicly available because seeing a video of the trial is very different than hearing me speak publicly after the fact about my experience, or reading the trial transcript. There is something different about being in a trial, being put under oath. Being subject to cross examination means that witnesses are subject to the highest form of transparency. And you will see that in my face in the trial video. I was part of a team that was trying to undo a law that was voted on, and passed, by the majority of Californians. Seeing the video, you will be able to see how terrified I was, you will see how personal this was for me. You will see on my face that I was carrying the weight of not only my

family but the lesbian and gay community as well, and I did not want to let them down, and I felt the pressure of that with every word I said at trial.

8. Now that the experience is over, I know that it was an honor and a privilege to be part of this case, but before I testified, I was very worried, and in the videos you will be able to see that on my face. The main reason I was worried was because I knew I could be subject to cross examination, and although the other side decided not to cross examine me, I knew the possibility was always there. I think you will be able to see on the other sides' face, that they didn't agree with what I was saying, and they were listening to see if there was something they could challenge me on. But you will also see through my testimony that I willed myself to speak very personally about my hope to one day marry the woman I love which I hoped would also highlight the universal themes of love and equality, and I think you will see how embarrassing it was to have to sit in front of my family and friends and describe all of the ways in which access to those universal dreams were not being applied equally to me. For me, when I gave my testimony, that is when it came into sharp focus, that these themes are universal, but I had not been treated the same way as everyone else.

9. One big difference between when I tell my story publicly and when I told my story that day, was that during trial, everything was riding on those few minutes, I wasn't going to get a second chance or the opportunity to edit, whatever I said would be it. For example, Sandy and I are writing a book right now, and we get to craft the narrative and edit it so it comes out the way we want it to, but there is no opportunity like that in court, you are subject to someone else's line of questions and narrative. I know what I said at trial was authentic and honest, and I am certain that someone watching the trial video will be able to see that as well. They will see me as my true self in a very unique and stressful situation and that observation you cannot capture by reading a trial transcript.

10. Not only do I think it is important for my trial testimony to be made public, I think all of the footage of the trial should be made public. I learned so much during the trial. There were many great experts that are at the top of their field in issues that relate to marriage equality and the experience of the LGBT community. But maybe even more important than those expert

witnesses were the other witnesses that spoke about their experiences dealing with Proposition 8 or living as a lesbian or gay person. I was particularly moved by Ryan Kendall, and his story about how he was sent to conversion therapy when his parents learned he was gay. Reading the words that he said from a transcript is not the same as seeing this brave young man tell his truly horrific story, in front of a court and under oath. There were tears, and emotion during his testimony, and that will come through only in the trial video. Reading witness testimony that describes contemplating suicide after years of abuse by parents or therapists is not the same, this testimony can only be fully appreciated through viewing the video. The same is true about the testimony of Helen Zia who was married during the brief period before Proposition 8 was passed when marriages were permitted, or the testimony of Republican former mayor of San Diego Jerry Sanders, who talked about his experience of deciding to oppose a local ordinance after learning that his daughter is lesbian. The emotion in the courtroom during the testimony of those witnesses was palpable, and the world needs to be able to see and feel that, and the only way that can happen is if the trial tapes are released.

11. My participation in the trial challenging Proposition 8 is something I will never forget. It has been over seven years since I sat through the trial and testified at the trial. If the tapes are not released, to me it would feel like a very important part of my history, and the history of the LGBT community as a whole is being erased.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed this 26th day of April 2017, at Washington, DC.

_____
Kristin M. Perry

DECLARATION OF KRISTIN M. PERRY IN SUPPORT OF KQED'S MOTION TO UNSEAL VIDEOTAPED TRIAL RECORDS Case No. 09-cv-2292