Linda Lye (CA SBN 215584)
llye@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Tel: (415) 621-2493
Fax: (415) 255-8437

Attorneys for Amicus Curiae American
Civil Liberties Union of Northern California

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| Kristin M. Perry, et al., | Case No. 09-cv-2292 |
| Plaintiffs, | BRIEF AMICUS CURIAE OF AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA IN SUPPORT OF MOTION TO UNSEAL |
| v. | |
| Edmund G. "Jerry" Brown, Jr., Governor of California, | |
| Defendant. | |

In 2008, the California electorate adopted Proposition 8, a statewide ballot measure that denied same-sex couples the right to marry. The constitutionality of that proposition was litigated in a case that went to trial in this district. The public has an overwhelming interest in obtaining access to the audio-visual recording, lodged in the official court record, of that trial. Intervenor KQED, Inc. ably explains why the common law and First Amendment right to access records of judicial proceedings requires that these records be unsealed. *Amicus* American Civil Liberties Union of Northern California submits this brief to emphasize the weighty interests underlying the public's right to access records of judicial proceedings, and to explain why the reliance interests of parties to the proceedings cannot continue to outweigh the media's and the public's right to view these newsworthy court records.

First, "[t]he Supreme Court has repeatedly held that access to public proceedings and records is an indispensable predicate to free expression about the workings of government." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 785 (9th Cir. 2014). "[A] major purpose of [the First] Amendment was to protect the free discussion of governmental affairs." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604 (1982) (internal quotation marks omitted). As a result, "[f]ree speech carries with it some freedom to listen." *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 576 (1980). "The right of access is thus an essential part of the First Amendment's purpose to ensure that the individual citizen can effectively participate in and contribute to our republican system of self-government." *Courthouse News*, 750 F.3d at 785 (internal quotation marks, citation omitted).

The Supreme Court has recognized two qualified rights of access to judicial proceedings and records, one grounded in the common law and the other in the First Amendment. *See Nixon v. Warner Comm., Inc.*, 435 U.S. 589, 597 (1978) (common law right); *Press-Enter. Co. v. Superior Court,* 478 U.S. 1, 8 (1986)  (First Amendment right).

The records at issue here—audio-visual recordings, lodged in the court file, of a public trial— unquestionably fall within the common law and First Amendment right of access. *See Nixon*, 435 U.S. at 597 (common law right "to inspect and copy public records and documents, including judicial records and documents"); Courthouse *News Serv.*, 750 F.3d 788-89 (recognizing First Amendment

interest in timely access to civil complaints).

The motion to unseal must therefore be granted in the absence of "compelling reasons" justifying sealing. *See Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006)  (where records covered by common law right of access, sealing appropriate only upon "articulat[ion of] compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process") (internal quotation marks, citations omitted); *Oregonian Pub. Co. v. United States District Court*, 920 F.2d 1462, 1466 (9th Cir. 1990) (First Amendment right of access to judicial proceedings may be denied only if, *inter alia*, denial serves a "compelling interest").

It bears emphasis that Intervenor KQED's right of access is "essential not only to its own free expression, but also to the public's." *Courthouse News Serv.*, 750 F.3d at 786.  In asserting the right of access, the news media serves as "surrogates for the public." *Leigh v. Salazar*, 677 F.3d 892, 900 (9th Cir. 2012) (quoting *Richmond Newspapers*, 448 U.S. at 573 (Burger, C.J., announcing judgment)).

*Amicus* respectfully urges this Court, in ruling on this motion to unseal, to evaluate any arguments in favor of continued sealing in light of the weighty interest KQED seeks to vindicate here—the public's right to obtain information necessary to enable meaningful civic participation on important public issues.

Second, although the Ninth Circuit held five years ago that these records should remain sealed due to the reliance interests of parties who testified at trial and who believed these records would remain private, *see Perry v. Brown*, 667 F.3d 1078, 1087-88 (9th Cir. 2012), any such reliance interests are no longer reasonable, let alone compelling.  This is not a situation in which the privacy interests of the Proponents of Proposition 8 should trump the public's interests in obtaining access to audio-visual recordings of a historic, public trial.

*Perry* does not control the result in this case.  It held that, at the time the issue arose, there was a compelling reason to maintain the records under seal. *See id.* at 1084-85 ("Proponents [of Proposition 8] reasonably relied on Chief Judge Walker's specific assurances…that the recording

would not be broadcast to the public, *at least in the foreseeable future*") (emphasis added). Moreover, changes in the facts or the law may lead courts to change their rulings, even when people may have acted in reliance on those rulings. For example, when parties enter into a consent decree— a contract between the parties adopted as an order of the court—the plaintiffs may drop meritorious claims or forms of relief, and the defendants may agree to take actions that the law does not require as part of the bargain. But that does not mean that the court can never modify a consent decree; to the contrary, a court may modify or dissolve a consent decree in response to significant changes in the surrounding facts or law. *See Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384 (1992); *Jeff D. v. Kempthorne*, 365 F.3d 844, 853-54 (9th Cir. 2004). The fact that parties or witnesses may have relied on a judicial order or act does not forever insulate that order from review.

To justify the *ongoing* sealing of these records, there must be a sufficient justification "favoring *continued* secrecy." *Kamakana*, 447 F.3d at 1181 (emphasis added). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.* at 1179; *cf. also Doe v. Kamehameha School*, 596 F.3d 1036, 1043 (9th Cir. 2010) (in light of right of access to judicial records, plaintiff seeking to proceed anonymously "must show both (1) a fear of severe harm, *and* (2) that the fear of severe harm is reasonable").

There are certainly circumstances when litigants' privacy interests justify shielding them from public scrutiny, but this is not among them. *See, e.g.*, *John Doe No. 1 v. Reed*, 130 S.Ct. 2811 (2010) (proceeding pseudonymously in suit to enjoin Washington State from disclosing the identities of petition signers after the district court granted a protective order against the disclosure of their identities); *Roe ex rel. Roe v. Ingraham*, 364 F. Supp. 536, 541 n.7 (S.D.N.Y. 1973), *rev'd on other grounds sub nom. Whalen v. Roe*, 429 U.S. 589 (1977) ("[I]f plaintiffs are required to reveal their identity prior to the adjudication on the merits of their privacy claim, they will already have sustained the injury which by this litigation they seek to avoid.").

The proponents of Proposition 8 were not involuntarily thrust into the public eye or hauled into court. As proponents of a statewide ballot measure, they chose to inject themselves into a controversial public debate. As intervenor-defendants, they also chose to participate in litigation over

the measure. *Cf. Time, Inc. v. Firestone*, 424 U.S. 448, 486 (1976) ("[G]enerally those classed as public figures have 'thrust themselves to the forefront of particular public controversies' and thereby 'invite(d) attention and comment.' And even if they have not, 'the communications media are entitled to act on the assumption that . . . public figures have voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them.'") (citations omitted).

Moreover, this litigation has long since concluded and in the years since the Ninth Circuit's decision in *Perry*, the case has been the subject of extensive public discourse, in the media and dramatic reenactments. *See* Mot. to Intervene at 6-7 (Dkt. No. 852 at 11-12). At this juncture, the incremental attention to the Proponents that might flow from unsealing these records would have no impact on any on-going judicial or other governmental proceeding. *Cf. United States v. Bus. of the Custer Battlefield Museum & Store Located at Interstate 90, Exit 514,* 658 F.3d 1188, 1194-95 (9th Cir. 2011) (search warrant materials subject to qualified common law right of access once criminal investigation has concluded and privacy interests of individuals identified in warrant materials do not constitute compelling reasons justifying denial of access). Under these circumstances, there are simply no compelling reasons for "continued secrecy." *Kamakana*, 447 F.3d at 1181.

For the foregoing reasons, the motion to unseal should be granted.

Dated: May 22, 2017                     Respectfully Submitted,

                                        By:     /s/ *Linda Lye*

                                            Linda Lye
                                        AMERICAN CIVIL LIBERTIES UNION
                                        FOUNDATION OF NORTHERN CALIFORNIA, INC.
                                        39 Drumm Street
                                        San Francisco, CA 94111
                                        Tel: (415) 621-2493
                                        Fax: (415) 255-8437

                                        *Attorneys for Amicus Curiae American Civil Liberties Union of Northern California*