THOMAS R. BURKE (CA State Bar No. 141930)
thomasburke@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111
Telephone:   (415) 276-6500
Facsimile:    (415) 276-6599

Attorneys for Intervenor KQED, Inc.

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Kristin M. Perry, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>Edmund G. "Jerry" Brown, Jr., Governor of California,<br><br>　　　　Defendant. | Case No. 09-cv-2292<br><br>**KQED, INC.'S REPLY IN SUPPORT OF MOTION TO UNSEAL VIDEOTAPED TRIAL RECORDS**<br><br>Date:　　　June 28, 2017<br>Time:　　　2:00 p.m.<br>Judge:　　　Hon. William H. Orrick<br>Location:　Courtroom 2, 17th Floor |

# TABLE OF CONTENTS

**Page**

ARGUMENT ....................................................................................................................... 3

    A.    The Ninth Circuit's 2012 Sealing Order Was Never Intended to be Perpetual. ................................................................................................. 3

    B.    KQED Is Not Legally Barred From Unsealing the Prop. 8 Trial Recordings. ............................................................................................... 5

    C.    The Supreme Court's Decision in *Hollingsworth* and Local Rule 77-3 Have No Bearing on Unsealing the Trial Recordings. ............................ 8

    D.    Unsealing is Required Under the Common-Law Right of Access ............. 9

    E.    The First Amendment Independently Requires the Judicial Records to be Unsealed. ...................................................................................... 11

    F.    The Public's Understanding of the Judicial Process Is Substantially Advanced By Making the Recordings Public; Defendants Offer Only Speculation. ..................................................................................... 12

    G.    Defendants Fail to Justify A Stay Pending Appellate Review. .............. 14

CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arizona v. California*,
    460 U.S. 605 (1983) .......................................................................................................... 6

*Craig v. Harney*,
    331 U.S. 367 (1947) .......................................................................................................... 2

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
    331 F.3d 1122 (9th Cir. 2003) ............................................................................... 9, 10, 11

*Galen v. Redfin Corp.*,
    No. 14-CV-05229-TEH, 2015 WL 7734137 (N.D. Cal. Dec. 1, 2015) .................... 6, 7

*Hollingsworth v. Perry*,
    130 S. Ct. 705 (2010) (*Hollingsworth I*) ................................................................. 8, 9

*Hollingsworth v. Perry*,
    133 S. Ct. 2652 (2013) (*Hollingsworth II*) ......................................................... 2, 3, 8

*Kamakana v. City and County of Honolulu*,
    447 F.3d 1172 (9th Cir. 2006) ......................................................................................... 13

*Leucadia v. Applied Extrusion Technologies, Inc.*,
    998 F.2d 157 (3d Cir. 1993) ............................................................................................ 13

*Levi Strauss & Co. v. Blue Bell, Inc.*,
    778 F.2d 1352 (9th Cir. 1985) ........................................................................................... 6

*Montana v. United States*,
    440 U.S. 147 (1979) .......................................................................................................... 6

*MW Builders, Inc. v. Safeco Ins. Co. of Am.*,
    2009 U.S. Dist. LEXIS 132205 (D. Or. Apr. 6, 2009) ................................................. 7

*Nixon v. Warner Communications, Inc.*,
    435 U.S. 589 (1978) ........................................................................................................ 10

*Obergefell v. Hodges*,
    135 S. Ct. 2584 (2015) ................................................................................................. 2, 3

*Oregonian Pub. Co. v. United States District Court*,
    920 F.2d 1462 (9th Cir. 1990) ............................................................................... 4, 8, 11

*Parra v. Bashas', Inc.*,
    291 F.R.D. 360 (D. Ariz. 2013) .................................................................................. 5, 6, 8

*Perry v. Brown*,
    667 F.3d 1078 (9th Cir. 2012) ....................................................................................... *passim*

*Perry v. Schwarzenegger*,
    704 F. Supp. 2d 921 (N.D. Cal. 2010) .................................................................................. 10

*Press-Enterprise Co. v. Superior Court*,
    478 U.S. 1 (1986) .................................................................................................................. 10

*Richmond Newspapers, Inc. v. Virginia*,
    448 U.S. 555 (1980) ................................................................................................................ 2

*Toussaint v. McCarthy*,
    801 F.2d 1080, 1986 U.S. App. LEXIS 31429 (9th Cir. Cal. Sept. 30,
    1986) ................................................................................................................................... 7, 8

*United States v. Alexander*,
    106 F.3d 874 (9th Cir. 1997) .................................................................................................. 6

*UnitedStates v. Kellington*,
    217 F.3d 1084 (9th Cir. 2000) ................................................................................................ 5

*United States v. McDougal*,
    103 F. 3d 651 (8th Cir. 1986) ............................................................................................... 10

*United States v. Miller*,
    822 F.2d 828 (9th Cir. 1987) .................................................................................................. 5

*United States v. Mouzin*,
    559 F. Supp. 463 (C.D. Cal. 1983) ......................................................................................... 9

*Valley Broadcasting Co. v. United States District Court*,
    798 F.2d 1289 (9th Cir. 1986) ................................................................................................ 9

*Yankee Atomic Electric Co. v. United States*,
    679 F.3d 1354 (Fed. Cir. 2012) .............................................................................................. 8

**Rules**

Local Rule 77-3 ............................................................................................................................ 8, 9

Local Rule 79-5(f) ................................................................................................................... 1, 4, 9

**Constitutional Provisions**

United States Constituion, First Amendment ..................................................... *passim*

**PRELIMINARY STATEMENT**

Opposing KQED's motion to unseal the audio-visual recordings of the historic Proposition 8 trial proceedings, Defendants-Intervenors contend that the videos must remain sealed permanently. Opp. at 13. Applying their logic, 100 years from now historians and the public will have no greater ability to view the only audio-visual recording of the 12-day public trial that KQED seeks to unseal today because doing so will "result in severe and abiding damage to the integrity of our judicial system." *Id.* This extreme position is not the law and instead relies on the mistaken premise that the Ninth Circuit previously held that the Prop. 8 videotapes should be sealed forever.

In 2012, when then Chief Judge Vaughn R. Walker's merits ruling was still under review by the Ninth Circuit and years before the U.S. Supreme Court would decide the constitutional right of same-sex couples to marry nationwide, the Ninth Circuit characterized its decision to seal the videotapes as addressing only the "narrow question" of "whether a recording purportedly made for the sole purpose of aiding the trial judge in the preparation of his opinion, and then placed in the record and sealed, *may shortly thereafter* be made public by the court." *Perry v. Brown*, 667 F.3d 1078, 1081 (9th Cir. 2012) (emphasis added). Although the court assumed that the common-law right of access applied to the videotapes, as a public record in a judicial proceeding (*Id.* at 1084), it held there was a "compelling reason in this case for overriding the common-law right" – because Defendants, proponents of Prop. 8 – "reasonably relied on Chief Judge Walker's specific assurances . . . that the recording would not be broadcast to the public, *at least in the foreseeable future.*" *Id.* at 1084–85 (emphasis added). Tellingly, immediately after this passage in the opinion, the court specifically referred to Local Rule 79-5(f), which included a 10-year sealing provision. *Id.* at 1085, n.5. *Perry* thus made clear that Local Rule 79-5 (f) informs the parties' reasonable expectations as to the duration of any sealing. In other words, the Ninth

Circuit held – not that videotapes must be sealed forever – but instead, that they should be sealed for some reasonable time-limited period.

In their Opposition, Defendants belittle the substantial and material change in circumstances since 2012 on which this motion to unseal is premised. They insist that none of these circumstances are relevant because the Ninth Circuit didn't rely on any of these considerations when it ordered the recordings to remain sealed. Opp. at 10. Of course, the Ninth Circuit didn't consider any of these circumstances *because none had yet happened.* In 2012, Judge Walker's merits ruling was still being reviewed by the court with the attendant prospect of a re-trial or further post-trial proceedings. One of two witnesses who testified at the trial for the defense had not yet prominently changed his position on same-sex marriage. The Supreme Court's opinions in *Hollingsworth* and *Obergefell* were still to come. But in 2017, there exists, no tangible threat of harm to Defendants' witnesses or these historic court proceedings from making the recordings publicly available. Indeed, Defendants proffer no evidence in Opposition that any witnesses or trial participants have faced harassment in spite of the national prominence that this trial received. Any reliance on the need for a sealing is no longer reasonable, let alone compelling. Defendants' Opposition utterly fails to analyze KQED's common law and First Amendment arguments from this perspective.

Instead, Defendants offer only rhetoric about the continued need to protect "judicial integrity" in their insistence on a permanent sealing. But this indisputably important value should be evaluated with perspective and tangible evidence, not automatically applied in the abstract, as Defendants urge. The public's right of access to judicial records demands such rigor. *Craig v. Harney*, 331 U.S. 367, 374 (1947) ("What transpires in the court room is public property")[1]; *Richmond*

---

[1] Remarkably, Defendants insist that Judge Walker's recording of this bench trial – conducted in his federal courtroom that was open to the public is "akin to a private document." Opp. at 20. As KQED explains *infra* at 9-12, the audio-visual record of the Prop. 8 trial is

2

REPLY IN SUPPORT OF KQED's MOTION TO UNSEAL VIDEOTAPED TRIAL RECORDS
Case No. 09-cv-2292

*Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980) ("[I]t is difficult for [people] to accept what they are prohibited from observing"). More than five years after this case became final and more than seven years after hundreds of people watched the public trial testimony in San Francisco and the proceedings have been the subject of wide-spread news accounts, a Broadway play, and multiple documentaries, Defendants submit not a shred of evidence that any trial witness suffered any harassment whatsoever. In contrast, KQED's uncontested evidence demonstrates that unsealing these trial records will allow the public to observe the legal process that the federal court followed as it heard evidence and arguments during the Prop. 8 trial – a tangible public benefit that furthers judicial integrity. On this undisputed record, the Prop. 8 trial recordings should now be unsealed.

Perpetually sealing the Prop. 8 videos will do nothing to ensure "judicial integrity." Rather, the continued sealing of these court records *undermines* the public's full confidence in and appreciation of the underpinnings of the U.S. Supreme Court's rulings in *Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013) (*Hollingsworth II*) and *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015) and its ability to observe the trial witnesses and evidence that Judge Walker considered during the only federal trial of same-sex marriage in the nation's history.

## ARGUMENT

### A. The Ninth Circuit's 2012 Sealing Order Was Never Intended to be Perpetual.

KQED does not dispute that in 2012, the Ninth Circuit was appropriately focused on the integrity of the judicial process when it reviewed the circumstances in which Judge Walker chose to continue to record the trial proceedings immediately after the Supreme Court enjoined simultaneous "livestreaming" of the Prop. 8 trial

---

unquestionably a judicial record that should now be accessible to the public under both the common law and the First Amendment.

3

proceedings to other federal courtrooms in other cities. However, Defendants refuse to even acknowledge that the Ninth Circuit specifically tied its sealing order to the time-limits then provided by Local Rule 79-5(f) providing that sealed documents would be presumptively unsealed ten years after a case is closed. *See Perry*, 667 F.3d at 1085, n.5. Thus, while the Ninth Circuit held that the parties' reasonable reliance interests overcame the otherwise presumptive right of access to the videotapes, it also held that those reliance interests were only reasonable to the extent they were time-limited.

In contrast to Defendants' insistence on a perpetual sealing, this temporal framework provided in the local rules made sense since the court was, at that time, considering Judge Walker's merits ruling and there remained the prospect of a re-trial and further post-trial proceedings.[2] Even Defendants' counsel during argument in the Ninth Circuit indicated that the seal presumably "lasts for 10 years," referring to Local Rule 79-5 (f). Opp. at 12, n.4. Viewed in this proper context, KQED's motion to unseal – based on the substantial change in circumstances since 2012 – is not only appropriate as a challenge to the continued sealing of these judicial records, the motion is imperative if the public is to enjoy the right to inspect the court record of these historic trial proceedings as the law commands. *Oregonian Pub. Co. v. United States District Court*, 920 F.2d 1462, 1466 (9th Cir. 1990).

---

[2] As KQED detailed in its Motion at 17-18, the ten-year sealing imposed by then Local Rule 79-5(f) is arbitrary and contrary to the common law and the constitutional right access as applied to the Prop. 8 recordings. *See* Mot. at 17-18. In their Opposition, Defendants insist for the first time that this local rule shouldn't apply to the videotapes because they were provided by Judge Walker and not a party. Opp. at 11-12. However, this interpretation misreads the language in the first part of the rule that addresses the effect of the sealing that plainly governs regardless of who provides the record to be sealed. *See Perry*, 667 F.3d at 1085, n.5. Regardless, Defendants are bound by the Ninth Circuit's reference to this local rule, which they never appealed.

**B.    KQED Is Not Legally Barred From Unsealing the Prop. 8 Trial Recordings.**

As a threshold matter, Defendants contend that this Court lacks jurisdiction to even hear KQED's motion to unseal and that KQED's motion is barred by the rule of mandate, issue preclusion, and the law of the case doctrine. Opp. at 9-15. But these arguments all rest on Defendants' mischaracterization of *Perry* as having held that the videotapes must be sealed indefinitely. Because *Perry* held no such thing, these doctrines are beside the point.

In any event, Defendants ignore that these doctrines are all discretionary – equitable principles that must be applied flexibly to account for changing legal landscapes and factual circumstances. *See Parra v. Bashas', Inc.*, 291 F.R.D. 360, 370 (D. Ariz. 2013), *amended in part sub nom. Estrada v. Bashas' Inc.*, No. CV-02-00591-PHX-RCB, 2014 WL 1319189 (D. Ariz. Apr. 1, 2014) ("Given [the] inherent flexibility [of the rule of mandate and the law of the case doctrine], there are exceptions warranting a departure from the law of the case and rule of mandate doctrines… Indeed, Ninth Circuit 'cases make clear that the rule of mandate is designed to permit flexibility where necessary, not to prohibit it.'" *U.S. v. Kellington*, 217 F.3d 1084, 1095 n.12 (9th Cir. 2000) (emphasis added). The Ninth Circuit likewise has recognized that the "[l]aw of the case should not be applied woodenly in a way inconsistent with substantial justice." *United States v. Miller*, 822 F.2d 828, 832–33 (9th Cir. 1987).

Defendants assert the rule of mandate, issue preclusion and law of the case for the same proposition – that the Ninth Circuit's mandate is not reviewable, to bolster their otherwise failure to justify the continued sealing. The citation of multiple doctrines does not alter the fact that none prevent review of an order in light of material circumstantial changes. *See Parra*, 291 F.R.D. at 370. Although given the procedural posture of this motion, the law of the case doctrine would be the most appropriate doctrine to consider, because all three doctrines are applied with

5

1  flexibility subject to certain identical exceptions, it matters little which doctrine is
2  evaluated.  *See Parra*, 291 F.R.D. at 370 ("Because '[t]he mandate rule is a subpart of
3  the law of the case doctrine[,] ... the mandate rule is subject to the same exceptions[ ]'
4  as the law of the case doctrine").

5        As for the law of the case doctrine, it "is not a limitation on a tribunal's power,
6  but rather a guide to discretion."  *Arizona v. California*, 460 U.S. 605, 618 (1983).
7  "A court may have discretion to depart from the law of the case where: 1) the first
8  decision was clearly erroneous; 2) an intervening change in the law has occurred; 3)
9  the evidence on remand is substantially different; 4) *other changed circumstances*
10 *exist*; or 5) a manifest injustice would otherwise result."  *United States v. Alexander*,
11 106 F.3d 874, 876 (9th Cir. 1997) (emphasis added); *Galen v. Redfin Corp.*, No. 14-
12 CV-05229-TEH, 2015 WL 7734137, at *4 (N.D. Cal. Dec. 1, 2015) (confirming that
13 "[i]t is also an abuse of discretion to apply the law of the case doctrine where one the
14 five factors above is present.").  These departures are identical for the rule of
15 mandate, and very similar with respect to issue preclusion.  *See Parra*, 291 F.R.D. at
16 370 (as to rule of mandate); *Montana v. United States*, 440 U.S. 147, 159, (1979) ("It
17 is, of course, true that changes in facts essential to a judgment will render collateral
18 estoppel inapplicable in a subsequent action raising the same issues."); *Levi Strauss*
19 *& Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1357 (9th Cir. 1985) (finding "[s]imilarity
20 between issues does not suffice; collateral estoppel is applied only when the issues are
21 identical…. If different facts are in issue in a second case from those that were
22 litigated in the first case, then the parties are not collaterally estopped from litigation
23 in the second case.") (internal citations omitted).
24       In *Galen*, the Northern District found that, "'[c]hanged circumstances' are most
25 likely found where an event subsequent to the first order undermines the rationale
26 for that order."  *Galen*, 2015 WL 7734137, at *4.  Rejecting the theory that a later
27 motion to compel arbitration sought a second bite of the apple, the *Galen* court
28 declined to apply the law of the case doctrine and proceeded to hear the merits of the

DAVIS WRIGHT TREMAINE LLP

motion brought a second time after removing to federal court, finding that the reversal of the superior court's original order denying a motion to compel arbitration constituted a changed circumstance because the appellate court's reasoning "clearly undermined the rationale of the original order." *Id.* at *5.  Likewise here, as KQED detailed in its opening brief, along with the passage of time, there are changed circumstances that undermine the rationale for continuing to seal these court records seven years later.

Similarly, in *MW Builders, Inc. v. Safeco Ins. Co. of Am.*, the court found that the law of the case doctrine did not apply where certain temporal changes altered the application of the legal analysis.  2009 U.S. Dist. LEXIS 132205, at *24 (D. Or. Apr. 6, 2009).  There, the district court was determining prevailing attorneys' fee rates "as this point in time, three years later" and thus would not follow a prior order establishing those rates.  *Id.*  It held that "[a]lthough the court is bound to perform the same legal analysis, it is not required to reach the same result.  Indeed, the very nature of the inquiry — prevailing rate in the community at a point in time — is fluid and cannot be rendered static by the law of the case doctrine.  Both the passage of time and a change of circumstances likely will alter the outcome of its analysis."  *Id.*  The court confirmed that contextual changes and the passage of time may alter the results of the same legal analysis, and that such alteration is not precluded by the law of the case doctrine.  *Id.*

The equitable doctrines, in particular, provide flexibility in the context of an order involving permanent injunctive relief, which is analogous to the Ninth Circuit's 2012 order that the Prop. 8 recordings remain sealed for the "foreseeable future."  *Id.*; *See Toussaint v. McCarthy*, 801 F.2d 1080, *1090-1091, 1986 U.S. App. LEXIS 31429, *20-24 (9th Cir. Cal. Sept. 30, 1986) (finding that "[b]ecause permanent injunctive relief controls future conduct, we are sensitive to the need for modification when circumstances change.").  In finding that the law of the case doctrine did not apply due to the changing contours of constitutional law, *Toussaint* held, "the doctrine of

7
REPLY IN SUPPORT OF KQED's MOTION TO UNSEAL VIDEOTAPED TRIAL RECORDS
Case No. 09-cv-2292

law of the case does not preclude review of the continuing propriety of permanent injunctive relief. The relevant question becomes whether intervening changes in law or fact require different results." *Id.* at 1092-93.

Here, as in *Toussaint*, this Court must determine whether intervening changes in fact and the legal landscape require the continued sealing ordered by the Ninth Circuit. A decision to maintain the seal on the Prop. 8 trial recordings, like a permanent injunction, must be treated with sensitivity to changing circumstances and not with such rigid adherence to judge-made doctrine that injustice is necessarily carried. *Parra*, 291 F.R.D. at 370 ("An appellate mandate does not turn a district judge into a robot, mechanically carrying out orders that become inappropriate in light of subsequent factual discoveries or changes in the law.") (*citing Yankee Atomic Electric Co. v. United States*, 679 F.3d 1354, 1360 (Fed. Cir. 2012)); *Oregonian Pub. Co.,* 920 F.2d at 1466 (First Amendment right of access to judicial proceedings may only be denied to serve a "compelling interest"). In short, none of these equitable doctrines bar KQED's Motion.[3]

### C. The Supreme Court's Decision in *Hollingsworth* and Local Rule 77-3 Have No Bearing on Unsealing the Trial Recordings.

Defendants also wrongly insist that KQED's motion is governed by the U.S. Supreme Court's *per curiam* decision in *Hollingsworth*. Again, the focus of the Supreme Court in *Hollingsworth I* was a concern about Judge Walker's then plan to provide contemporaneous "livestream" broadcast of the Prop. 8 trial proceedings. *Hollingsworth v. Perry*, 130 S. Ct. 705, 706 (2010) (*Hollingsworth I*). The Supreme Court's decision in *Hollingsworth*, having issued on the third day and followed an earlier temporary stay of the broadcast, had no occasion to discuss the public's right of access to a sealed court record and makes no mention of the First Amendment. *Id.* The Supreme Court's ruling was expressly limited, simply holding that the district

---

[3] For the same reasons, Defendants' stare decisis argument also does not bar KQED's motion. Opp. at 15.

1  court did not correctly amend its local rules and consequently the anticipated
2  contemporaneous simulcast of the trial proceedings outside of the San Francisco
3  courthouse was improper.  *Id.*

4  Defendants are also mistaken when they insist that Local Rule 77-3 bars
5  unsealing these court records and is contrary to longstanding policies of the Judicial
6  Conference and the Ninth Circuit's Judicial Council.  Opp. at 16-18.  By its plain
7  language, Local Rule 77-3 clearly imposes limitations on the *contemporaneous*
8  broadcast or recordings of court proceeding – circumstances that are now years
9  removed from the issues in this case.  Here, KQED does not seek to broadcast or to
10 record a court proceeding; KQED seeks to *unseal a recording* made more than seven
11 years ago that was used by the court to prepare the merits ruling and included as a
12 part of the court record.  The relevant local rule, as made clear by the Ninth Circuit's
13 citation to it in *Perry*, 667 F.3d at 1085 n. 5, is Local Rule 79-5(f).  Because the video
14 recordings of the Prop. 8 trial are indisputably a judicial record – verbatim recordings
15 of evidence and legal argument that occurred in Judge Walker's public courtroom and
16 are now lodged in the court's file, KQED and the public's rights of access to them are
17 governed by the common law and the First Amendment.

18 **D.  Unsealing is Required Under the Common-Law Right of Access.**
19 In the Ninth Circuit there is a "strong presumption in favor of access to court
20 records."  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003).
21 As KQED detailed in its opening brief at 9-13, this right of access to court records
22 includes the right to obtain copies of videotapes as they are introduced into evidence.
23 *See e.g., Valley Broadcasting Co. v. United States District Court*, 798 F.2d 1289, 1294
24 (9th Cir. 1986); *United States v. Mouzin*, 559 F. Supp. 463, 464 (C.D. Cal. 1983). This
25 strong presumption only may be overcome on a showing of "compelling reasons,"
26 *Foltz*, 331 F.3d at 1135, articulated in specific, on-the-record findings that "closure is
27 essential to preserve higher values and is narrowly tailored to serve that interest."
28 *Id.*, (*quoting Press-Enterprise Co. v. Superior Court,* 478 U.S. 1, 9 (1986)).

DAVIS WRIGHT TREMAINE LLP

1  Defendants rely heavily on *United States v. McDougal*, 103 F. 3d 651 (8th Cir. 1986) – a non-binding decision from the Eighth Circuit involving a request for access to a videotape of President Clinton's testimony – to insist that the video recordings of the Prop. 8 trial proceedings are merely derivative and akin to a video offered in lieu of live testimony, and therefore not within the common law right of access. Opp. at 18-19. But *McDougal* conflicts with Ninth Circuit case law and is factually distinguishable.

As a threshold matter, *McDougal* held that the videotape was "not a judicial record to which the common law right of public access attaches." *Id.* at 657. But the question in this case is not whether the common law right of access attaches (*Perry* assumed that it does, 667 F.3d at 1084), but whether the presumption of access should be overcome. *McDougal* also held that, even assuming the right attached to the record at issue, it should be overcome, but only because it "rejected the strong presumption" "in favor of public access" standard adopted by other circuits, including the Ninth. *Id.* at 657; *see also Foltz,* 331 F.3d at 1135 ("strong presumption in favor of access to court records"). Thus, *McDougal* denied access to the videotape, but under a legal standard at odds with the governing legal standard in this Circuit.

Moreover, *McDougal* is factually distinguishable because the Prop. 8 videotapes served an entirely different purpose. They are a verbatim audio-visual record of the trial proceedings – nothing like the videotape in *McDougal*. The recording is a quintessential judicial record of the utmost public importance. It is undisputed that the Prop. 8 recordings themselves were used by the court as it made its decision, ultimately affirmed by the Supreme Court. *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 929 (N.D. Cal. 2010). As such, they should now presumptively be available for inspection by the public. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978).

DAVIS WRIGHT TREMAINE LLP

Although the Ninth Circuit, in 2012, did not identify how the common-law right of access could be overcome by Judge Walker's assurances, the common law should now provide access to the videotapes because circumstances in 2012 bearing on the need for Judge Walker's earlier assurances have substantially changed:

- The trial is long over and judgment was entered meaning there is no prospect of a new trial;
- Both defense witnesses have Wikipedia pages that extensively discuss their testimony;
- Only months after the Ninth Circuit's ruling, defense witness David Blakenhorn publicly announced his support for same-sex marriage in a *New York Times* op-ed; and
- In the seven years since the trial, there is no evidence whatever that any of the witnesses or participants in the Prop. 8 trial have faced harassment or intimidation in connection with their participation, even though the trial proceedings were open to the public and widely-reported in the news and annotated online.

On this undisputed record, there is no longer any compelling reason to wait a decade. The "strong presumption" in the common law requires the videotapes to now be unsealed. *Foltz,* 331 F.3d at 1135.

### E. The First Amendment Independently Requires the Judicial Records to be Unsealed.

Under the First Amendment compelling interest standard, to keep the videotapes under seal, Defendants were required to establish that "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives that would adequately protect the compelling interest." *Oregonian Publ'g Co.,* 920 F.2d at 1466. Defendants completely fail to satisfy this demanding standard.

DAVIS WRIGHT TREMAINE LLP

1    In 2012, the Ninth Circuit recognized a compelling interest that applied in
2  2012 to keep the records sealed: that preserving "the integrity of the judicial process"
3  was "a compelling interest that in these circumstances would be harmed by the
4  nullification of the trial judge's express assurances" that the videotapes would not be
5  publicly broadcast.  *Perry*, 667 F.3d at 1088.  But since then, as KQED has outlined –
6  and as Defendants cannot dispute – circumstances have changed.  In 2017, unsealing
7  the Prop. 8 videos will enhance the "integrity of the judicial process" – not undermine
8  it.  There being no compelling justification for the continued sealing of these court
9  records, under the First Amendment, the videotapes should now be publicly released.

### F. The Public's Understanding of the Judicial Process Is Substantially Advanced By Making the Recordings Public; Defendants Offer Only Speculation.

12    Defendants make no attempt to deny the public's ongoing interest in the Prop.
13  8 trial proceedings.  *See* Mot. at 6-7.  Moreover, they scarcely acknowledge the
14  supporting declarations that KQED submitted from the Plaintiffs who testified at
15  trial.  As these declarations make clear, court transcripts of the trial and the various
16  reenactments of the Prop. 8 trial proceedings are no substitute for the video
17  recordings.  Plaintiffs gave emotional trial testimony that only those who were able to
18  attend the court proceedings witnessed.  Plaintiff Paul Katami notes that those in the
19  courtroom who watched him testify could "judge for themselves [his] commitment" to
20  his now-husband Jeff and "hear the way [his] voice quivers when [he] talk[s] about
21  what Jeff means to [him]."  Katami Decl. ¶ 6.  Plaintiff Jeffrey Zarrillo notes that
22  "The trial has been written about and there are trial transcripts, but unless you see
23  the video, you cannot assess for yourself the truthfulness of each witness." Zarrillo
24  Decl. ¶ 7.  Plaintiff Sandra Stier emphasized that "I think my testimony captured the
25  voice of the other gay couples that were not actual plaintiffs in this lawsuit, but who I
26  felt like I was representing.  Seeing my trial testimony, I think people will be able to
27  also see how lawyers, who are not gay, fought for my family and families like mine."
28  Stier Decl. ¶ 7.  Plaintiff Kristin Perry believes that those who saw her testify could

1 "see how terrified [she] was" and "how personal this was for her."  Perry Decl. ¶ 7.
2 Those watching, including Judge Walker, could "see on [her] face that [she] was
3 carrying the weight of not only [her] family but the lesbian and gay community as
4 well." *Id*.  It is precisely this vivid testimony – the visual record that the public will
5 only benefit from observing the witnesses – that, seven years later, still remains
6 under seal and should now be public.

7 In their Opposition, Defendants merely reiterate the identical record that was
8 presented to the Ninth Circuit over five years ago.  Opp. at 20-23.  They proffer
9 generalizations about potential harms from "divisive social issues" yet they provide
10 this Court with no evidence whatever to show that any witnesses or parties to the
11 Prop. 8 trial have *ever* faced harassment in connection with their participation in
12 these proceedings.  After years of intense public scrutiny on the trial testimony
13 presented, they offer no explanation of why this is likely to change if the videotapes of
14 the Prop. 8 trial proceedings are unsealed.  Any theoretical incremental attention
15 that may come to Defendants' two witnesses – individuals who *voluntarily* chose to
16 participate in this high profile trial – is certainly not a compelling reason for
17 "continued secrecy." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1181
18 (9th Cir. 2006).

19 Moreover, Defendants simply parrot the Ninth Circuit's concerns in 2012 about
20 the integrity of the judicial process – without countering the specific evidence that
21 KQED presented to show that no harm has come to any of the Prop. 8 trial
22 participants and the public's greater understanding of how this historic trial was
23 conducted will help the public to appreciate the federal judiciary's ability to fairly
24 adjudicate the continuing same-sex marriage legal issues that still dominate the
25 news today.  *Leucadia v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157, 161 (3d
26 Cir. 1993) ("[T]he very openness of the process should provide the public with a more
27 complete understanding of the judicial system and a better perception of its
28 fairness").  Defendants offer only rote speculation that somehow, some day, the very

DAVIS WRIGHT TREMAINE LLP

unusual facts of this case will somehow dissuade future expert witnesses from testifying. This kind of speculative harm – years after Defendants' witnesses testimony has been widely circulated and discussed – is plainly insufficient.

The Prop. 8 trial is the only time in the history of the nation that a federal court conducted a trial and considered evidence about the propriety of same-sex marriages. Lifting the sealing order will, for the first time, make this testimony accessible to the many interested persons who were unable to attend the trial in person. The Prop 8 trial was a "watershed moment in the history of LGBT rights" and the unsealing of the tapes will "help the public more fully understand the arguments and evidence that this Court (and ultimately the U.S. Supreme Court) heard and used to validate the constitutional rights of LGBT persons in the decorum of this historic trial." Decl. of Kate Kendell ¶ 4. If made publicly available, KQED and non-profit groups like the *It Gets Better Project* are prepared to show what transpired during this federal trial to larger and different audiences than could ever have attended the trial proceedings in San Francisco.

Although the U.S. Supreme Court has since decided the issue of same-sex rights nationwide, even Defendants recognize that there remains an ongoing need for public understanding of the factual basis for those groundbreaking judicial rulings. *See* Opp. at 22. Maintaining the seal on the Prop. 8 recordings will do nothing to advance this important societal interest – but unsealing them will contribute to a greater public awareness of the extraordinary efforts that the federal judiciary undertook during the trial to balance the rights of Californians who voted for Prop. 8 with the constitutional rights of same-sex couples. The Prop. 8 trial was a shining moment for the nation and the federal judiciary and how the trial transpired should not remain shrouded in secrecy.

**G.   Defendants Fail to Justify A Stay Pending Appellate Review.**

The Court should deny Defendants' request to stay any order to unseal. After more than seven years of sealing, if, as KQED strongly believes, Defendants cannot

14

REPLY IN SUPPORT OF KQED's MOTION TO UNSEAL VIDEOTAPED TRIAL RECORDS
Case No. 09-cv-2292

satisfy the showing required to maintain the sealing of these judicial records, issuing a stay will be tantamount to a continued bar against the public's right of access and should be denied.

## CONCLUSION

For all the reasons stated, the videotaped recordings of the 12-days of trial proceedings in this case should be immediately unsealed and made available for public inspection by Intervenor KQED and all other interested parties.

DATED:  June 6, 2017.          Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP
THOMAS R. BURKE

By:   */s/ Thomas R. Burke*
      Thomas R. Burke

Attorneys for Intervenor KQED, Inc.