GIBSON, DUNN & CRUTCHER LLP
Theodore B. Olson, SBN 38137
TOLSON@GIBSONDUNN.COM
Matthew D. McGill, pro hac vice
Amir C. Tayrani, SBN 229609
1050 Connecticut Ave., N.W., Washington, D.C. 20036
T: (202) 955-8668 | F: (202) 467-0539

Theodore J. Boutrous, Jr., SBN 132009
TBOUTROUS@GIBSONDUNN.COM
Christopher D. Dusseault, SBN 177557
Ethan D. Dettmer, SBN 196046
Theane Evangelis, SBN 243570
Abbey Hudson, SBN 266885
333 S. Grand Ave., Los Angeles, CA 90071
T: (213) 229-7804 | F: (213) 229-7520

BOIES, SCHILLER & FLEXNER LLP
David Boies, pro hac vice
DBOIES@BSFLLP.COM
333 Main St., Armonk, NY 10504
T: (914) 749-8200 | F: (914) 749-8300

Attorneys for Plaintiffs
Kristin M. Perry, Sandra B. Stier,
Paul T. Katami, and Jeffrey J. Zarrillo

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN M. PERRY, et al.,<br><br>               Plaintiffs,<br><br>and<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>               Plaintiff-Intervenor,<br><br>     v.<br><br>GAVIN NEWSOM, in his official capacity as Governor of California, et al.,<br><br>               Defendants,<br><br>and<br><br>PROPOSITION 8 OFFICIAL PROPONENTS DENNIS HOLLINGSWORTH, et al.<br><br>               Defendants-Intervenors. | CASE NO. 09-cv-2292-WHO<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO CONTINUE THE SEAL**<br><br>Date:  June 17, 2020<br>Time:  2:00 p.m.<br>Judge:  Hon. William H. Orrick<br>Location:  Courtroom 2, 17th Floor |

1

**TABLE OF CONTENTS**

2   INTRODUCTION ........................................................................................................... 1

3   BACKGROUND AND PROCEDURAL HISTORY ...................................................... 2

4       A.   In 2010, Chief Judge Walker Presides Over A Historic, Highly Publicized Trial
5            Concerning Proposition 8 .......................................................................................... 2

6       B.   Chief Judge Walker Records The Historic Trial On Proposition 8 And Places
             The Video Recording Into The Record Under Seal ................................................... 5

7       C.   In 2011, Chief Judge Ware Orders The Video Recording Of Trial To Be
8            Unsealed ..................................................................................................................... 6

9       D.   In 2012, The Ninth Circuit Requires The Video Recording To Remain Sealed
             But Recognizes—Along With Proponents—That The Seal Is Not Permanent ........... 7

10      E.   In 2018, This Court Finds That The Video Recording Presumptively Should
11           Be Unsealed In August 2020 ...................................................................................... 8

12      F.   Proponents Move To Continue The Seal Indefinitely ................................................. 8

     ARGUMENT ................................................................................................................. 9
13
14      A.   Local Rule 79-5 Presumptively Requires Unsealing After Ten Years ...................... 10

15           1.   Proponents Conceded Applicability Of The 10-Year Sealing Rule ............... 10

16           2.   Plaintiffs Fail To Show A Compelling Reason To Maintain The Seal ........... 12

17                a.   A Compelling Reason Is Required To Maintain The Seal ................. 12

18                b.   Plaintiffs Demonstrate No Compelling Reason To Maintain The
                       Seal .................................................................................................... 13

19           3.   Local Rule 79-5's 10-Year Period Began To Run On August 12, 2010
20                When Judgment Was Entered ......................................................................... 18

21      B.   The Right Of Public Access Requires Unsealing ..................................................... 18

22           1.   The Common-Law Right Of Public Access Requires Unsealing .................... 19

23           2.   The First Amendment Right Of Public Access Requires Unsealing ............. 22

24      C.   In The Alternative, And At Minimum, The Court Should Unseal The Video
             Recording Of The Testimony Of Plaintiffs' Witnesses ............................................. 23

25   CONCLUSION ............................................................................................................. 24

26

27

28

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Adamson Apparel, Inc.*,
785 F.3d 1285 (9th Cir. 2015) ..................................................................................................11

*Amberhill Props. v. City of Berkeley*,
814 F.2d 1340 (9th Cir. 1987) ............................................................................................10, 16

*Apple iPod iTunes Antitrust Litig.*,
75 F. Supp. 3d 1271 (N.D. Cal. 2014) ......................................................................................21

*Application of CBS, Inc.*,
828 F.2d 958 (2d Cir. 1987) ......................................................................................................21

*Bridges v. California*,
314 U.S. 252 (1941) ...................................................................................................................22

*Brown & Williamson Tobacco Corp. v. FTC*,
710 F.2d 1165 (6th Cir. 1983) ...................................................................................................22

*Courthouse News Serv. v. Planet*,
947 F.3d 581 (9th Cir. 2020) .....................................................................................................22

*CreAgri, Inc. v. Pinnaclife Inc.*,
2014 WL 27028 (N.D. Cal. Jan. 2, 2014) .................................................................................23

*Demaree v. Pederson*,
887 F.3d 870 (9th Cir. 2018) .....................................................................................................17

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*,
307 F.3d 1206 (9th Cir. 2002) ...................................................................................................13

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
2015 WL 13389611 (N.D. Cal. Apr. 17, 2015) ........................................................................23

*Flake v. Arpaio*,
2016 WL 4095831 (D. Ariz. Aug. 2, 2016) ..............................................................................21

*Folex Golf Indus., Inc. v. O-TA Precision Indus. Co., Ltd.*,
700 F. App'x 738 (9th Cir. 2017) ..............................................................................................11

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
331 F.3d 1122 (9th Cir. 2003) .......................................................................................12, 13, 19

*Ground Zero Ctr. for Non-Violent Action v. U.S. Dep't of the Navy*,
860 F.3d 1244 (9th Cir. 2017) ...................................................................................................22

*Hollingsworth v. Perry*,
558 U.S. 1107 (2010) ...................................................................................................................5

*Hollingsworth v. Perry*,
558 U.S. 183 (2010) .....................................................................................................................5

ii

Gibson, Dunn &
Crutcher LLP

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013) ............................................................................................... 4, 17

*INS v. St. Cyr*,
  533 U.S. 289 (2001) .................................................................................................... 20

*Kamakana v. City of Honolulu*,
  447 F.3d 1172 (9th Cir. 2006) .......................................................................... 13, 19, 20

*Karasek v. Regents of the Univ. of Cal.*,
  2016 WL 4036104 (N.D. Cal. July 28, 2016) ............................................................ 23

*Kleindienst v. Mandel*,
  408 U.S. 753 (1972) .................................................................................................... 22

*Low v. Trump Univ., LLC*,
  2016 WL 4098195 (S.D. Cal. Aug. 2, 2016) ............................................................. 21

*Magallanes-Damian v. INS*,
  783 F.2d 931 (9th Cir. 1986) ...................................................................................... 11

*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. 589 (1978) .......................................................................................... 13, 19, 21

*Obergefell v. Hodges*,
  135 S. Ct. 2584 (2015) ................................................................................................ 17

*Oregonian Publ'g Co. v. U.S. Dist. Court*,
  920 F.2d 1462 (9th Cir. 1990) .................................................................................... 22

*Perry v. Brown*,
  667 F.3d 1078 (9th Cir. 2012) ............................................ 5, 6, 7, 8, 9, 11, 14, 19, 20, 23

*Perry v. Brown*,
  671 F.3d 1052 (9th Cir. 2012) ...................................................................................... 4

*Perry v. Schwarzenegger*,
  2011 WL 4527349 (N.D. Cal. Sept. 19, 2011) ......................................................... 6, 7

*Perry v. Schwarzenegger*,
  302 F. Supp. 3d 1047 (N.D. Cal. 2018) .............................. 8, 11, 12, 15, 18, 19, 20, 21

*Perry v. Schwarzenegger*,
  704 F. Supp. 2d 921 (N.D. Cal. 2010) .............................................................. 2, 4, 6, 9

*Perry v. Schwarzenegger*,
  765 F. App'x 335 (9th Cir. 2019) ................................................................................. 8

*Plexxikon Inc. v. Novartis Pharm. Corp.*,
  2020 WL 1233881 (N.D. Cal. Mar. 13, 2020) ........................................................... 13

*Press-Enter. Co. v. Superior Court*,
  464 U.S. 501 (1984) .................................................................................................... 22

*Qualls ex rel. Qualls v. Blue Cross of Cal., Inc.*,
  22 F.3d 839 (9th Cir. 1994) ........................................................................................ 15

Gibson, Dunn & Crutcher LLP

iii

*Richmond Newspapers, Inc. v. Virginia*,
  448 U.S. 555 (1980) ................................................................................................... 19, 22, 23

*Times Mirror Co. v. United States*,
  873 F.2d 1210 (9th Cir. 1989) .................................................................................................. 19

*United States v. Alexander*,
  106 F.3d 874 (9th Cir. 1997) .................................................................................................... 11

*United States v. Bentson*,
  947 F.2d 1353 (9th Cir. 1991) .................................................................................................. 11

*United States v. Bus. of Custer Battlefield Mus. & Store*,
  658 F.3d 1188 (9th Cir. 2011) .................................................................................................. 20

*United States v. Carpenter*,
  923 F.3d 1172 (9th Cir. 2019) .................................................................................................. 19

*United States v. McDougal*,
  103 F.3d 651 (8th Cir. 1996) .................................................................................................... 20

*United States v. Warren*,
  601 F.2d 471 (9th Cir. 1979) .................................................................................................... 15

*Valley Broadcasting Co. v. Dist. Court*,
  798 F.2d 1289 (9th Cir. 1986) ....................................................................................... 13, 19, 21

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
  2014 WL 12647906 (N.D. Cal. Sept. 18, 2014) ....................................................................... 24

*Wagner v. Prof'l Eng'rs in Cal. Gov't*,
  354 F.3d 1036 (9th Cir. 2004) .................................................................................................. 10

*Wong v. Astrue*,
  2008 WL 2323860 (N.D. Cal. May 20, 2008) .......................................................................... 13

**Rules**

Civil Local Rule 77-3 ........................................................................................................... *passim*

Civil Local Rule 79-5(b) ................................................................................................................ 23

Civil Local Rule 79-5(f) ................................................................................................................ 10

Civil Local Rule 79-5(g) ...................................................................................................... *passim*

Gibson, Dunn &
Crutcher LLP

PLAINTIFFS' OPPOSITION TO MOTION TO CONTINUE THE SEAL
CASE NO. 09-cv-2292-WHO

**INTRODUCTION**

This dispute concerns the court records of a historic trial: a video recording of the most comprehensive public airing of the arguments for and against the constitutional right of same-sex couples to marry that our legal system has ever produced.

More than a decade ago, two loving couples filed suit in this Court challenging California's Proposition 8, a ballot initiative that stripped gay men and lesbians of the right to marry.  These Plaintiffs—Kristin M. Perry, Sandra B. Stier, Paul T. Katami and Jeffrey J. Zarrillo—alleged that Proposition 8 violated their rights to equal protection and due process under the Fourteenth Amendment of the United States Constitution.  When the State declined to defend the constitutionality of Proposition 8, the official proponents of Proposition 8 under California election law voluntarily intervened to defend the ballot initiative they had championed.

In January 2010, Chief Judge Vaughn Walker held a historic, three-week public trial to determine whether Plaintiffs had a constitutional right to marry the person they loved.  The Court heard sworn testimony from 19 fact and expert witnesses (17 called by Plaintiffs and two called by Proponents) on a variety of subjects relevant to Plaintiffs' claims.  The expert testimony featured leading scholars and professionals in a variety of disciplines including history, psychology, political science and economics.  The Court made a video recording of the trial, which it considered when reaching its decision and placed under seal as part of the record in this case.  On August 4, 2010, the Court ruled in Plaintiffs' favor and found Proposition 8 to be unconstitutional.

The motion currently before the Court presents a simple question with an even simpler answer: should the public have access to the video recording of a historically significant, public trial that led to marriage equality for gay men and lesbians in California now that *ten years* have passed since the Court ruled and placed the video under seal?  The answer to this question is a resounding yes.

The video recording that Proponents seek to conceal and keep out of the public discourse indefinitely is, without question, a valuable historical record of one of the most significant civil rights trials of recent times.  No written transcript, reenactment, or third-party account can substitute for what can be seen and experienced on that recording, a point Proponents concede by arguing so strenuously against lifting the temporary seal.  But both of Proponents' arguments to deny public access to the

Gibson, Dunn & Crutcher LLP

PLAINTIFFS' OPPOSITION TO MOTION TO CONTINUE THE SEAL
CASE NO. 09-cv-2292-WHO

video recording even ten years after the trial fail.  First, far from forbidding unsealing, this Court's local rules require it, and Proponents do not come close to proving a compelling reason to maintain the seal.  Second, the right of public access compels unsealing.  The common-law right is not displaced by this Court's local rules, applies to all judicial "records" (including video recording), and imposes a strong presumption of unsealing that is not overcome here by any compelling reason.  Moreover, the First Amendment provides an even "stronger" right of access than the common law, and properly applying the First Amendment to these unique factual circumstances would not unleash the parade of horribles Proponents purportedly fear.

The time has come—as this Court's local rules and the public right of access require—to unseal the recording for the public and historical interest, and to allow Americans today and for generations to come to witness history in the making.

## BACKGROUND AND PROCEDURAL HISTORY

### A.   In 2010, Chief Judge Walker Presides Over A Historic, Highly Publicized Trial Concerning Proposition 8

Plaintiffs Kristin M. Perry, Sandra B. Stier, Paul T. Katami, and Jeffrey J. Zarrillo, along with the City and County of San Francisco, challenged the constitutionality of Proposition 8, which prohibited same-sex couples from marrying.  Plaintiffs asserted that Proposition 8 violated their rights to equal protection and due process under the Fourteenth Amendment of the United States Constitution. The government defendants declined to defend Proposition 8, and Defendants/Intervenors, the official proponents of Proposition 8 under California election law ("Proponents"), were granted leave to intervene and defend the initiative.  *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 928 (N.D. Cal. 2010).  The parties "engaged in significant discovery, including third-party discovery, to build an evidentiary record."  *Id.* at 932.  Thirty-four individuals were deposed, including 16 experts, nine Plaintiffs and Defendants/Intervenors, and nine third-party witnesses.  Twenty of the depositions were videotaped, and Proponents made no effort to seal the videotaped depositions[1] from public view.

---

[1]  Nineteen of the 20 videotaped depositions contain no confidentiality designation whatsoever.  As for the 20th deposition, a mere four pages of the 302-page transcript were deemed confidential.

Gibson, Dunn & Crutcher LLP

Chief Judge Walker set the action for a bench trial from January 11–27, 2010.  In total, the trial lasted 13 days (approximately 77 hours) and included testimony from 19 fact and expert witnesses, including the four plaintiffs.  All but three of those witnesses testified on behalf of the Plaintiffs and Plaintiff-Intervenor, accounting for over 48 hours of the total trial time.  In addition to Proponents' two trial witnesses,[2] Plaintiffs also entered into evidence the deposition testimony of two of Proponents' withdrawn expert witnesses, Katherine Young and Paul Nathanson.  Proponents never requested that these depositions be kept confidential, and excerpts of both are available publicly on the Internet.[3]

Given the historic nature of this trial and the impact it would have on countless lives, there was immense public interest in the trial before, during, and after it took place.  The trial was highly publicized, with individuals and organizations liveblogging the trial from the courtroom, regular press conferences held by both sides, and news outlets throughout the country reporting on the trial on a daily basis.  One such publication observed that "[the] courtroom doesn't have a spare inch.  It's jammed with spectators, lawyers and media."[4]  The trial also received worldwide news coverage, with BBC News comparing the trial "to landmark cases which ended segregation in US schools and overturned a ban on interracial marriage."[5]

The testimony was emotional and powerful.  As Plaintiff Kristin Perry describes, "I willed myself to speak very personally about my hope to one day marry the woman I love, which I hoped would also highlight the universal themes of love and equality, and [by watching the recording] I think you will see how embarrassing it was to have to sit in front of my family and friends and describe all of the ways in which access to those universal dreams was not available to me in the same way that it was for others."  Perry Decl. ¶ 4.  "I think this generation of politicians, community leaders, and

---

[2]  Proponents called two expert witnesses in their defense case at trial.  One of the Proponents, Dr. William Tam, was called adversely by Plaintiffs during their case.

[3]  *See* https://bit.ly/2zR6P2q (Katherine K. Young deposition excerpt); https://bit.ly/2Wt3Y7w (Paul Nathanson deposition excerpt).

[4]  *See, e.g.*, Howard Mintz, *Prop. 8 trial Day 1: Live coverage from the courtroom*, Mercury News (Jan. 11, 2010), https://bayareane.ws/2L1NI8a; Jordan Lorence, Alliance Defending Freedom (June 16, 2010), https://bit.ly/2xzq7IV; ShadowProof, https://bit.ly/2Wuvgun.

[5]  *See, e.g.*, *US gay marriage ban challenged in federal court*, BBC News (Jan. 12, 2010), https://bbc.in/3dqAU7s.

PLAINTIFFS' OPPOSITION TO MOTION TO CONTINUE THE SEAL
CASE NO. 09-cv-2292-WHO

Gibson, Dunn &
Crutcher LLP

lawmakers should see the tapes, so they can see the pain and suffering they inflict when unjust laws are put on the books." *Id.* ¶ 6.

Following the trial, on August 4, 2010, Chief Judge Walker found Proposition 8 to be unconstitutional and enjoined its enforcement. *Perry*, 704 F. Supp. 2d at 927. Proponents appealed to the Ninth Circuit, which affirmed the trial court's ruling. *See Perry v. Brown*, 671 F.3d 1052 (9th Cir. 2012). Proponents then appealed to the Supreme Court, which held that Proponents lacked standing to appeal Chief Judge Walker's decision. *See Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013). The Court vacated the Ninth Circuit's decision and ordered it to dismiss Proponents' appeal for lack of jurisdiction. As a result, Chief Judge Walker's decision finding Proposition 8 unconstitutional remained in place, *id.*, permitting tens of thousands of people, including Plaintiffs, to legally marry.

In the years following the Proposition 8 trial, a play based on the trial, titled "8," used the actual trial transcripts and was performed on Broadway and in Los Angeles, and reproduced at colleges, high schools, and community centers throughout the world.[6] Celebrities reenacted the play on YouTube, reading from the trial transcript.[7] These YouTube reenactments were viewed nearly 100,000 times. A documentary about Proposition 8, *The Case Against 8*, was released in 2014. Numerous books have been published about the trial, including one written by two of the Plaintiffs, Kristin Perry and Sandy Stier.[8]

In short, this trial was the subject of intense public and historical interest. The testimony has been widely circulated and has become a part of popular culture. But except for the few individuals able to secure a seat in the courtroom, the public has been unable to witness this historic trial first-hand, and to see the witnesses' impassioned testimony and the opening and closing statements for themselves.

---

[6] *See Illuminating California's Proposition 8 Trial, Onstage*, N.Y. Times (July 17, 2011), https://nyti.ms/3dh9bpT; *Brad Pitt joins star-studded Prop 8 play*, CNN (Mar. 1, 2012), https://cnn.it/3ds8cDx; *'8,' a play about Proposition 8, debuts March 3 in L.A.*, L.A. Times (Nov. 19, 2011), https://lat.ms/3fq6xQH.

[7] *See, e.g.*, https://bit.ly/2xTDGD6; *see also* Prop. 8 Trial Re-enactment, Day 1, Chapter 1, YouTube (Jan. 30, 2020), https://bit.ly/2xNngwg (viewed over 69,000 times).

[8] *See, e.g.*, Kristin Perry & Sandy Stier, *Love on Trial: Our Supreme Court Fight for the Right to Marry* (Roaring Forties Press 2017); Kenji Yoshino, *Speak Now: Marriage Equality on Trial* (Broadway Books 2016); Jo Becker, *Forcing the Spring: Inside the Fight for Marriage Equality* (Penguin Books 2015).

Gibson, Dunn & Crutcher LLP

**B.      Chief Judge Walker Records The Historic Trial On Proposition 8 And Places The Video Recording Into The Record Under Seal**

The trial in this matter was a public proceeding, and at no point in time was the courtroom closed.  Thus, all testimony and argument from the trial is, already, a matter of public record and is in no way confidential.  Of course, the timing, location, and limited seating capacity of the trial meant that many members of the public who might have wished to watch the trial first-hand could not do so.

In the weeks leading up to the January 2010 trial, Chief Judge Walker issued an order permitting the trial to be broadcast live via streaming audio and video to a number of federal courthouses around the country.  *Hollingsworth v. Perry*, 558 U.S. 183, 184 (2010) ("*Hollingsworth I*").  Chief Judge Walker issued this order pursuant to an amendment to Local Rule 77-3 that permitted broadcasting for purposes of participation in a pilot program.  *Id.*

On the morning of the first day of trial, the Supreme Court temporarily stayed the broadcast so it could consider in full a stay motion filed by Proponents, who objected to Chief Judge Walker's order.  *Hollingsworth v. Perry*, 558 U.S. 1107 (2010) ("*Hollingsworth II*").  Two days later, the Court extended its temporary stay through the timely filing and disposition of a petition for a writ of certiorari or mandamus, holding that "the District Court's amendment of its local rules to broadcast this trial" likely did not "compl[y] with federal law."  *Hollingsworth I*, 558 U.S. at 189, 199.  The Court declined to "express any views on the propriety of broadcasting court proceedings generally."  *Id.* at 189.

Chief Judge Walker video recorded the first two days of the trial on the basis that the Supreme Court might decide to lift the temporary stay, but after the stay became permanent, Proponents asked Chief Judge Walker to stop the recording.  In response, Chief Judge Walker stated:

> The local rule permits the recording for purposes . . . of use in chambers. . . .  And I think it would be quite helpful to me in preparing the findings of fact to have that recording.  So that's the purpose for which the recording is going to be made going forward.  But it's not going to be for purposes of public broadcasting or televising.

*Perry v. Brown*, 667 F.3d 1078, 1082 (9th Cir. 2012).  Proponents then "dropped their objection."  *Id.*

Chief Judge Walker permitted the parties to obtain copies of the recording for use in closing argument, provided that they maintained the copies under seal.  *Id.*  Plaintiffs used portions of the

recording in closing argument, which were visible to the public watching the trial. *See id.* at 1085. Proponents did not object to this use of the recording.

In his post-trial order finding Proposition 8 unconstitutional, Chief Judge Walker explained that "[t]he trial proceedings were recorded and used by the court in preparing the findings of fact and conclusions of law; the clerk is now DIRECTED to file the trial recording under seal as part of the record." *Perry* , 704 F. Supp. 2d at 929.  Chief Judge Walker explained that "the experts' demeanor and responsiveness showed their comfort with the subjects of their expertise," and that this helped to inform his decision. *Id.* at 940.  He also concluded that the "[P]laintiffs' lay witnesses provided credible testimony," based in part on his "observ[ation]" of the testimony they presented. *Id.*  Chief Judge Walker permitted the parties to retain any copies of the trial recording that they had acquired "pursuant to the terms of the protective order herein" and denied Proponents' motion to order the copies' returned. *Id.* at 929.  Finally, he discredited Proponents' counsel's explanation that most of Proponents' witnesses had elected not to testify out of concern for their personal safety related to the recording because Proponents "made no effort" to call certain witnesses "after potential for *contemporaneous* broadcast of the trial proceedings had been eliminated." *Id.* at 945 (emphasis added).

When Proponents appealed from the judgment finding Proposition 8 unconstitutional, they "challenged neither the denial of their motion to compel the return of the copies nor the district court's entry of the recording in the record." *Perry*, 667 F.3d at 1083.  Chief Judge Walker retired from the bench soon thereafter.

**C.    In 2011, Chief Judge Ware Orders The Video Recording Of Trial To Be Unsealed**

During the pendency of Proponents' appeal, they learned that then-retired Chief Judge Walker had played excerpts of the recording publicly, and they moved to compel all parties to return their copies of the recording.  Plaintiffs—joined by several media organizations, including KQED—cross-moved to unseal the video recording.  In September 2011, Chief Judge Ware granted Plaintiffs' motion. *Perry v. Schwarzenegger*, 2011 WL 4527349 (N.D. Cal. Sept. 19, 2011).  He concluded that (i) the

Gibson, Dunn &
Crutcher LLP

common-law right of public access applied, (ii) neither the Supreme Court's decision issuing a stay of broadcast during trial nor Local Rule 77-3 precluded unsealing, and (iii) Proponents had made no showing sufficient to overcome the common-law right of access.  *Id.* at *3–6.

**D.**    **In 2012, The Ninth Circuit Requires The Video Recording To Remain Sealed But Recognizes—Along With Proponents—That The Seal Is Not Permanent**

Proponents appealed Chief Judge Ware's order.  During oral argument at the Ninth Circuit, Proponents informed the panel that they expected the seal presumptively to last 10 years under the terms of the local rule then codified at 79-5(f).  Judge Hawkins asked Proponents' counsel whether his clients were "under the impression that these tapes would be forever sealed."  Proponents' counsel responded:

> No, your Honor, I believe that a seal lasts for—not necessarily, I guess, is the better answer.  A seal lasts for 10 years under the local rules of the Northern District of California, and at the end of the . . . case, then we would be entitled to go in and ask for an extension of that time, to a specific date, but it would be a minimum of 10 years . . . .

Proponents' counsel conceded that they were "aware of the local rules."[9]

In its order, the Ninth Circuit described the "narrow[] consideration that controls [its] decision" as "whether, given the unique circumstances surrounding the creation and sealing of the recording of the trial in this case, the public is entitled to view that recording some *two years after the trial*."  *Perry*, 667 F.3d at 1080 (emphasis added); *see also id.* at 1081 (describing the issue on appeal as whether the video recording may be unsealed "shortly" after trial).  The Ninth Circuit assumed without deciding "that the common-law presumption of public access applies to the recording at issue here and that it is not abrogated by the local rule in question."  *Id.* at 1084.  Nevertheless, the Court held that the "compelling reason" of "Chief Judge Walker's special assurances . . . that the recording would not be broadcast to the public, *at least in the foreseeable future*" overcame the common-law presumption.  *Id.* at 1084–85 (emphasis added).

The Ninth Circuit thus reversed Chief Judge Ware's order, but cited Local Rule 79-5's presumption that sealed records will be unsealed after ten years in limiting its holding to comply with

---

[9]   *See* Oral Argument at 7:04–7:48, *Perry v. Brown*, 667 F.3d 1078, 1082 (9th Cir. 2012) (No. 11-17255), https://bit.ly/35toPvJ (hereinafter "*Perry* oral argument").

Gibson, Dunn &
Crutcher LLP

1  Chief Judge Walker's assurances about the "foreseeable future."  *Id.* at 1085 n.5.

### E.    In 2018, This Court Finds That The Video Recording Presumptively Should Be Unsealed In August 2020

Seven years after the trial, in 2017, KQED again moved to unseal the video recording.  Dkt. 852. Plaintiffs filed a response in support of unsealing, Dkt. 867, the State Defendants indicated that they did not oppose unsealing, Dkt. 869, and Proponents opposed, Dkt. 864.

In January 2018, this Court found that, unless Proponents could demonstrate a compelling reason that the tapes should remain under seal, it would lift the seal at the ten-year mark from closure of the case as is standard practice under Local Rule 79-5.  *Perry v. Schwarzenegger*, 302 F. Supp. 3d 1047, 1058 (N.D. Cal. 2018), *appeal dismissed*, 765 F. App'x 335 (9th Cir. 2019).  In reaching this ultimate conclusion, the Court found: (i) the doctrines of issue preclusion, law-of-the-case, and stare decisis did not preclude consideration of KQED's motion on the merits, *id.* at 1055; (ii) Local Rule 79-5(g) "provid[es] a ten year presumptive mark for unsealing court records," *id.*; (iii) there is "no doubt that the common-law right of access applies to the video recordings as records of judicial proceedings to which a strong right of public access attaches," *id.*; (iv) "Proponents make no effort to show, factually, how further disclosure of their trial testimony would adversely affect them," *id.*; (v) "the compelling justification of judicial integrity identified in the Ninth Circuit's 2012 Order continues to apply and prevents disclosure of the video recordings through the presumptive unsealing ten year mark applicable under Civil Local Rule 79-5(g)," *id.*; and (vi) the "analysis would be no different" under the "First Amendment right of access instead of the common-law right of access," *id.* at 1058.

Proponents appealed from this Court's January 2018 order, but the Ninth Circuit dismissed the appeal for lack of jurisdiction.  *Perry v. Schwarzenegger*, 765 F. App'x 335 (9th Cir. 2019).

### F.    Proponents Move To Continue The Seal Indefinitely

On April 1, 2020, Proponents moved to continue the seal indefinitely.  Dkt. 892.  Proponents urge the Court to reverse its January 2018 conclusions that both the common-law right of access and First Amendment require unsealing of video recording absent compelling justifications, and that Local Rule 79-5 presumptively requires unsealing after ten years.  But Proponents' latest motion includes no evidence that Proponents or anyone who testified on their behalf would suffer *any harm* from unsealing

the video recording more than ten years after it was made—let alone harm sufficient to overcome the strong presumption of unsealing.  By contrast, 15 of Plaintiffs' trial witnesses have submitted declarations affirmatively supporting the release of the trial recordings.  *See* Exhibits B-P.

Counsel for Plaintiffs requested permission from Proponents' counsel to speak to the two expert witnesses Proponents called at trial, and also to Dr. Tam, in an effort to determine if they actually had any concerns about unsealing the video recording at this late date.  Proponents' counsel declined to grant such permission, stating that he "polled a critical mass of our clients and witnesses," none of whom supported unsealing.  Exhibit A, Dusseault Decl. ¶ 3.  It is unclear from this response which, if any, of the trial witnesses were included in the "critical mass" that Proponents' counsel "polled," and Proponents' counsel's request that Plaintiffs not contact the three witnesses precludes Plaintiffs from determining whether some would support unsealing.  What is clear, however, is that there is no evidence in the record that *any* trial witness has *any* concern about the unsealing of the video recording.[10]

## ARGUMENT

Plaintiffs' motion should be denied, and the video recording of the trial should be unsealed, for two reasons.  First, Local Rule 79-5 presumptively requires unsealing after ten years, and Plaintiffs have failed to provide a compelling reason to maintain the sealing in this case.  Second, the public has a right of access to this court record, under both the common law right of access and the First Amendment.[11]

---

[10] Because Dr. William Tam—one of the three witnesses aligned with Proponents during the trial—appeared pursuant to a trial subpoena served by Plaintiffs, it cannot be said that he agreed to testify in reliance on some understanding of how the video would be treated going forward.  Rather, he testified because he was compelled by law to testify publicly.  Another of Proponents' witnesses, expert David Blankenhorn, voluntarily published an Op Ed piece in the New York Times announcing that he had changed his mind on same-sex marriage, and thus cannot credibly claim that he has some concern about attention being drawn to his testimony.  *See* David Blankenhorn, "How My View on Gay Marriage Changed," N.Y. Times (June 22, 2012), https://nyti.ms/2WghyuX (attached as Dusseault Decl. Ex. 2).

[11] Neither stare decisis nor law of the case prevent their unsealing.  *See* Dkt. 892 at 17.  Chief Judge Walker made clear that he "eliminat[ed]" the "potential for *contemporaneous* broadcast of the trial proceedings." *Perry*, 704 F. Supp. 2d at 945 (emphasis added).  And, more importantly, the Ninth Circuit (and Proponents' counsel during oral argument) indicated the same understanding when they acknowledged that Local Rule 79-5 could require unsealing after 10 years. *Perry*, 667 F.3d at 1085 n.5; *Perry* oral argument at 7:04–7:48 (counsel's concession).

Gibson, Dunn &
Crutcher LLP

## A.      Local Rule 79-5 Presumptively Requires Unsealing After Ten Years

This Court's Local Rule 79-5 (both the version in force in 2010 and the current version) provides that, unless otherwise ordered by the Court, any document filed under seal in a civil case shall be open to public inspection ten years from the date the case is closed.[12]  Proponents, despite their protestations to the contrary, previously conceded the applicability of this presumptive unsealing rule to the trial records.  Having made that concession, the only remaining question is whether Proponents have demonstrated a compelling reason for the tapes to remain under seal.  They have not.

### 1.      Proponents Conceded Applicability Of The 10-Year Sealing Rule

Proponents' counsel conceded the applicability of the ten-year rule during oral argument before the Ninth Circuit in 2011, and explained that his clients were aware of and relied on that rule.  This concession is binding.  During argument, Judge Hawkins asked: "Were your clients under the impression that these tapes would be forever sealed?"  Proponents' counsel responded, "No, your Honor, I believe that a seal lasts for—not necessarily, I guess, is the better answer.  A seal lasts for 10 years under the local rules of the Northern District of California, and at the end of the . . . case, then we would be entitled to go in and ask for an extension of that time, to a specific date, but it would be a minimum of 10 years . . . ."  Proponents' counsel again conceded that "we were aware of the local rules, your Honor."  *Perry* oral argument at 7:04–7:48.

Eight years later, Proponents argue the opposite, and contend that Local Rule 79-5(g) does not apply to the video recording.  *See* Dkt. 892 at 21.  But Proponents' concession "[i]n oral argument before [the Ninth Circuit]" "is binding on it in any further proceedings in th[e] case." *Amberhill Props. v. City of Berkeley*, 814 F.2d 1340, 1341 (9th Cir. 1987); *Wagner v. Prof'l Eng'rs in Cal. Gov't*, 354 F.3d 1036, 1043 n.3 (9th Cir. 2004) (ruling that appellant was "judicially bound" moving forward by its concession at oral argument) (citing *Amberhill*, 814 F.2d at 1341).

Proponents' concession that they "were aware of the local rules" and that they did not expect

---

[12]   The version in force in 2010 provided: "Any document filed under seal in a civil case shall be open to public inspection without further action by the Court 10 years from the date the case is closed." Civil Local Rule 79-5(f) (in effect in 2010 <https://cand.uscourts.gov/superseded-local-rules>). The current version is substantively similar and provides: "Any document filed under seal in a civil case shall, upon request, be open to public inspection without further action by the Court 10 years from the date the case is closed."

Gibson, Dunn &
Crutcher LLP

the seal to last forever was in direct response to Judge Hawkins's question.  Thus, Proponents' concession was directly related to the issue at hand and was no mere "slip of the tongue."  *See In re Adamson Apparel, Inc.*, 785 F.3d 1285, 1294 (9th Cir. 2015) (finding appellant's concession at oral argument binding and that the concession "was not simply a 'slip of the tongue'"); *United States v. Bentson*, 947 F.2d 1353, 1356 (9th Cir. 1991) (finding that appellant's "straightforward" oral judicial admission was binding and noting that "[a] judicial admission is binding before both the trial and appellate courts").  Absent "egregious circumstances," parties "are generally bound by admission of attorneys."  *Magallanes-Damian v. INS*, 783 F.2d 931, 934 (9th Cir. 1986).  No such circumstances exist here.  Accordingly, Proponents' concession is binding.

In any event, two prior decisions in this case—one by the Ninth Circuit and the second by this Court—confirm the presumptive application of Rule 79-5(g)'s ten-year rule.  First, the Ninth Circuit recognized Local Rule 79-5(g)'s applicability in 2012 when it maintained the seal in light of Chief Judge Walker's assurances that the recording would not be publicly broadcast "for the foreseeable future."  *Perry*, 667 F.3d at 1084–85 & n.5 (citing Local Rule 79-5's ten-year rule).  Then, in 2018, this Court followed suit: "There was and is nothing in Rule 79–5 limiting the presumptive unsealing to materials filed by the parties as opposed to materials created and filed by the Court, like transcripts of judicial proceedings or the video recordings at issue." *Perry*, 302 F. Supp. 3d at 1058.  The applicability of Local Rule 79-5(g) has already been decided in this case, and that decision is binding.  *See Folex Golf Indus., Inc. v. O-TA Precision Indus. Co., Ltd.*, 700 F. App'x 738, 738 (9th Cir. 2017) ("Under the 'law of the case' doctrine, a district court is 'precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case,' unless [one of five exceptions] to depart from the law of the case exists." (quoting *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997))).  No exception applies here.[13]  *Alexander*, 106 F.3d at 876.

The only question remaining is whether Plaintiffs have presented a compelling reason to continue the seal.  They have not.

---

[13] "A court may have discretion to depart from the law of the case where: 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result." *Alexander*, 106 F.3d at 876.

Gibson, Dunn &
Crutcher LLP

### 2.     Plaintiffs Fail To Show A Compelling Reason To Maintain The Seal

As this Court previously explained, to maintain the seal after the ten-year mark, Plaintiffs would need to "show compelling reasons for the seal to remain in place." *Perry*, 302 F. Supp. 3d at 1049. Plaintiffs offer not a shred of evidence, let alone "compelling" reasons, for maintaining the seal. Plaintiffs point to three alleged justifications for maintaining the seal—judicial integrity, a possible conflict with Local Rule 77-3 which prohibited public broadcast of trials, and speculation that witnesses for Proponents could be subjected to harassment.  First, with respect to "judicial integrity," the same reason that the Ninth Circuit held the seal must be maintained in 2012—Proponents' expectation that the recording would remain under seal merely for the foreseeable future—now counsels in favor of lifting the seal.   Simply put, there is no "judicial integrity" concern with the release of the video after the expiration of the ten-year period, because any assurance provided by the Court as to the sealing of the video was necessarily qualified by the ten-year default rule for unsealing.

Second, there is no conflict between Local Rules 77-3 and 79-5(g), and Rule 79-5(g) is the applicable Local Rule under these circumstances.  The issue is not whether the Court will broadcast the trial, but rather whether the video should be unsealed and made available to the public for whatever use the public may deem appropriate.

Third, Proponents have not pointed to any evidence demonstrating that their witnesses, let alone *all* witnesses whose testimony is currently sealed, fear for their safety or security in the event the recording is unsealed or would suffer any harm whatsoever upon unsealing.

There is no compelling reason to divert from this Court's normal course in releasing sealed materials in civil cases ten years after the case is closed.

### a.     A Compelling Reason Is Required To Maintain The Seal

Proponents contend that they need only demonstrate "good cause" rather than "compelling reasons" to maintain the seal.  *See* Dkt. 892 at 22–23.  They are wrong.  Although Rule 79-5(g) uses the phrase "good cause," courts have recognized that a lower "good cause" standard applies only to documents sealed as part of a non-dispositive motion; otherwise, the "compelling reasons" standard applies. *See, e.g.*, *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1136–37, 1139 (9th Cir. 2003); *Plexxikon Inc. v. Novartis Pharm. Corp.*, 2020 WL 1233881, at *1 (N.D. Cal. Mar. 13, 2020)

1    ("Civil Local Rule 79-5 *supplements* the [common law's] 'compelling reasons' standard" (emphasis

2    added)); *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002)

3    ("when a party attaches a sealed discovery document to a nondispositive motion, the usual presumption

4    of the public's right of access is rebutted" and thus the good cause standard applies).[14]   The lower

5    standard for non-dispositive motions makes sense because records accompanying such motions "are

6    often unrelated, or only tangentially related, to the underlying cause of action," and the public has less

7    of an interest in them.  *Plexxikon*, 2020 WL 1233881, at *1.  That does not describe this situation.

8        As discussed below, *infra* pp. 19–21, the usual presumption of the public's right of access

9    applies, and therefore a compelling reason to maintain the video recording under seal must be shown

10   even under Local Rule 79-5(g).  Proponents can thus maintain the seal only if they show sufficiently

11   "compelling reasons," such as if disclosure would "gratify private spite, promote public scandal,

12   circulate libelous statements, or release trade secrets."  *Kamakana v. City of Honolulu*, 447 F.3d 1172,

13   1179 (9th Cir. 2006).   The reasons courts accept as sufficiently compelling to overcome the

14   presumption are few and narrow:  "The mere fact that the production of records may lead to a litigant's

15   embarrassment, incrimination, or exposure to further litigation" is not sufficiently compelling to defeat

16   disclosure.  *Id.*; *Foltz*, 331 F.3d at 1137 (district court abused its discretion in maintaining seal when

17   small amount of legitimately non-public information could be redacted).  Ultimately, "the district court

18   must weigh 'the interests advanced by the parties in the light of the public interest and the duty of the

19   courts'" in deciding whether to release particular material.  *Valley Broadcasting Co. v. Dist. Court*, 798

20   F.2d 1289, 1294 (9th Cir. 1986) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 602 (1978)).

21        **b.      Plaintiffs Demonstrate No Compelling Reason To Maintain The Seal**

22        Plaintiffs offer three allegedly "compelling reasons" for maintaining the tapes under seal—

23   judicial integrity, a possible conflict Local Rule 77-3 which prohibited public broadcast of trials, and

---

[14] Proponents cite *Wong v. Astrue*, 2008 WL 2323860, at *1 (N.D. Cal. May 20, 2008) for the proposition that "Rule 79-5(g)'s 'good cause' standard is the same as the 'good cause' standard discussed in *Kamakana*."  Mtn. at 22.  *Wong* does not discuss Rule 79-5(g) (or its predecessor 79-5(f)) at all, let alone stand for the proposition that maintaining the seal after ten years requires a lesser standard than that applied to sealing in the first instance.

speculation that witnesses for Proponents could be subjected to harassment.[15]  All three fail.

### (i)  Judicial Integrity No Longer Compels Maintaining The Seal

Plaintiffs point to "judicial integrity" as requiring that the recording remain under seal, apparently indefinitely, (*see* Dkt. 892 at 17–20), but the reasoning that the Ninth Circuit found to maintain the seal in 2012 now cuts in Plaintiffs' favor.  In holding that judicial integrity required maintaining the seal in 2012, the Ninth Circuit looked to two primary factors: (1) that Judge Walker had promised the tapes would not be released "at least for the foreseeable future"; and (2) that Proponents relied on an *expectation* that the tapes would not be released, at least for the foreseeable future.  Both factors now favor lifting the seal.

First, as the Ninth Circuit's 2012 decision made clear, the "foreseeable future" timeline was tethered to the ten-year presumptive unsealing under Local Rule 79-5(g).  *Perry*, 667 F.3d at 1084–85 & n.5.  That "foreseeable future" is about to be in the past.

Second, in holding that "judicial integrity" required maintaining the seal in 2012, the Ninth Circuit relied heavily upon Proponents' expectations regarding the release of any tapes: "[t]he reason is that *Proponents reasonably relied on Chief Judge Walker's specific assurances*—compelled by the Supreme Court's just-issued opinion—that the recording would not be broadcast to the public, at least in the foreseeable future."  *Perry*, 667 F.3d at 1084–85 (emphasis added).  *In 2012*, Proponents' expectation that the tapes remain under seal might have counseled in favor of maintaining the seal. Now, however, that same consideration cuts the other way.  As explained above, during oral argument before the Ninth Circuit, Proponents' counsel explicitly noted that its clients were aware of the ten-year presumptive unsealing rule and that his clients *were not* under the impression that the video recording of trial would necessarily be sealed forever.  *Perry* oral argument at 7:04–7:48.  Moreover, despite Proponents' "aware[ness]" of the local rules, they did not appeal from the order placing the video recording into the record under seal.  *See Perry*, 667 F.3d at 1083 (Proponents "challenged neither

---

[15] Proponents do not argue that sealing should be continued because the sealed material is confidential or highly sensitive, nor can they.  Unlike sealed business records that might contain nonpublic, competitively sensitive information, the sealed material here is a video recording of a trial that was held in open court and is recorded in publicly available transcripts.  But even material that was once truly confidential is subject to presumptive unsealing after ten years under Local Rule 79.5.

Gibson, Dunn &
Crutcher LLP

the denial of their motion to compel the return of the copies nor the district court's entry of the recording in the record" in their appeal from the judgment).

Thus, the very consideration that led the Ninth Circuit in 2012 to conclude that the tapes should remain under seal—Proponents' expectations that the tapes would remain under seal for the "foreseeable future"—now favors lifting the seal.  To the extent that Proponents offer a new, revisionist history of their expectations—*i.e.* that the tapes would remain under seal forever—such an argument has no support in the record.

Further, unsealing of the trial video ten years after the case is closed is not inconsistent with any "assurances" provided by Chief Judge Walker, given that any such assurance was by its nature tethered to the default rule that sealing ordinarily expires after ten years.  Thus, there is no judicial integrity issue *at all* with unsealing the video at this time.  The video has been maintained under seal for a decade, and at no point did Judge Walker "promise" that it would be sealed indefinitely.

### (ii)   Local Rule 77-3 Does Not Conflict With Lifting The Seal

Proponents next argue that a purported "conflict" between Local Rule 79-5(g) and Local Rule 77-3—which prohibits the public broadcast of court proceedings, except in circumstances not present here—requires maintaining the seal.[16]  Dkt. 892 at 11–15, 22.  Not so.  Local Rule 77-3 is, quite simply, inapplicable to this situation.  The *only* Local Rule that addresses whether an item placed in the record under seal may be released is Local Rule 79-5(g), and as this Court previously observed, "[n]othing in the Rules themselves creates an inherent conflict."  302 F. Supp. 3d at 1058; *see Qualls ex rel. Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 842 n.2 (9th Cir. 1994) ("District courts have broad discretion to interpret their local rules."); *United States v. Warren*, 601 F.2d 471, 474 (9th Cir. 1979) (district court's discretionary application of local rules only "rare[ly]" questioned).

Plaintiffs conflate the notions of unsealing a court record on the one hand and broadcast of a

---

[16]  Local Rule 77-3 currently provides, in relevant part:

> Unless allowed by a Judge or a Magistrate Judge with respect to his or her own chambers or assigned courtroom for ceremonial purposes or for participation in a pilot or other project authorized by the Judicial Council of the Ninth Circuit or the Judicial Conference of the United States, the taking of photographs, public broadcasting or televising, or recording for those purposes in the courtroom or its environs, in connection with any judicial proceeding, is prohibited.

Gibson, Dunn &
Crutcher LLP

trial on the other, but they are different.  This Court did not broadcast the trial.  The only issue before the Court is whether to unseal the video.  Once unsealed, the public can access the video and use it for any lawful purpose.  While members *of the public* may choose to publish some or all of the trial video, for example as part of a documentary, so too could they use an unsealed document as part of such a broadcast.  And members of the public can use it for other purposes as well, such as for their own personal review, as research for scholarly work, or as a visual aid in teaching about civil rights cases or the steps gay and lesbian individuals were required to take to achieve marriage equality in the United States.

### (iii)   Proponents' Amorphous, Unsupported, And Outdated Claims Of Fear Are Not Compelling Reasons To Maintain The Seal

Proponents' third and final reason for maintaining the seal—alleging some general harm that might befall their witnesses—likewise fails.  Proponents offer no evidence that their witnesses, David Blankenhorn, Kenneth Miller, or William Tam, either fear for their safety as a result of the release of these tapes or are actually in any danger.  If such evidence existed, Proponents could have submitted it in support of their motion.  They did not.  In fact, counsel for Plaintiffs asked counsel for Proponents for permission to reach out to those three witnesses to ask them if they had any such concerns.  Proponents' counsel declined to grant permission, and without asserting that any particular witness expressed a fear, stated only that he "polled a critical mass of our clients and witnesses," none of whom supported unsealing.  Dusseault Decl. ¶ 3.  That Proponents have not only submitted no declarations from their own witnesses, and declined to agree to allow Plaintiffs' counsel to reach out to those witnesses, is telling.

Even during the height of the media coverage around Proposition 8 and the public debate raging around the same-sex marriage, Mr. Blankenhorn never expressed concern for his well-being.  During argument before the Ninth Circuit in 2011, counsel for Proponents conceded that Mr. Blankenhorn was not worried about his safety:  "Mr. Blankenhorn is a well-known advocate and expert in this area, and he has said candidly that he was not concerned about harassment of himself." (*Perry* oral argument at 10:00–10:10).  Proponents are bound by this representation, *see Amberhill*, 814 F.2d at 1341, and even if they were not, they have submitted no evidence indicating that their earlier statements regarding

1   Mr. Blankenhorn are not as true today as they were in 2011.  And in any event, Mr. Blankenhorn has

2   since very publicly declared that "[w]hatever one's definition of marriage, legally recognizing gay and

3   lesbian couples and their children is a victory for basic fairness."  Dusseault Decl. Ex. 2.

4        Second, Proponents' other expert, Dr. Kenneth Miller, did not testify that gays and lesbians

5   should not be able to marry.  Instead, as counsel during argument before the Ninth Circuit confirmed,

6   "He is a political scientist and his testimony was focused on the political power of gays and lesbians."

7   *Perry* oral argument at 14:27–14:35.  Because his testimony did not assert that gays and lesbians should

8   not be allowed to marry, as Judge Reinhardt aptly put it: "It's not likely that he is going to be harassed

9   or strung up" for his testimony.  *Id.* at 14:32–14:36.  Indeed, Proponents have put nothing in the record

10  to suggest that Dr. Miller would fear for his safety or security as a result of the release of these tapes to

11  the public.

12       Finally, there is no question that William Tam, one of the official proponents of Proposition 8,

13  faced some harassment as a result of the extremely public position he took as a proponent of a ballot

14  proposition designed to take away the right to marriage that same-sex couples had just been granted

15  under the California Constitution.  But Proponents have offered no *evidence*, not even a declaration by

16  Dr. Tam, to suggest that the release of these tapes ten years after trial would lead to harassment, let

17  alone cause him to fear for his safety.  Proponents' argument is completely devoid of specifics, instead

18  alleging generalized harassment of Proposition 8 supporters with a series of citations that are in some

19  cases more than a decade old and in no event are more recent than 2013.  *See* Dkt. 892 at 18–19 & n.3.

20  That is insufficient.  *Demaree v. Pederson*, 887 F.3d 870, 885 (9th Cir. 2018) (potential that records

21  hypothetically "could be used for improper purposes" did not constitute a compelling reason to seal

22  record).

23       It has been seven years since the Supreme Court issued its decision in *Hollingsworth v. Perry*,

24  570 U.S. 693 (2013), and five years since the Supreme Court finally settled the constitutionality of bans

25  on same-sex marriage in *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015).  The passage of time since the

26  ultimate resolution of this issue has lessened, not increased, the passions on both sides of the issue—

27  something that Proponents' counsel seemed to understand during argument in 2011:

28

Gibson, Dunn &
Crutcher LLP

17

1
2
3
4

> To the extent that the Court is suggesting that, well, the passage of time, passions have ebbed . . . . the harassment and violence and vandalism that we saw in 2008 has ebbed down. With respect to this litigation, *we would submit that the intensity of interest and the passions will only grow into a crescendo as this case reaches its final conclusion, wherever that may be.*

(*Perry* oral argument at 9:23–9:46 OA) (response to question from Judge Smith regarding the passage

5

of time between the document incidents in 2008 and 2011) (emphasis added).  That "final conclusion"

6

was reached five years ago, and the accompanying crescendo has long since come and gone.

7
8

### 3. Local Rule 79-5's 10-Year Period Began To Run On August 12, 2010 When Judgment Was Entered

9

Proponents' assertion that this case was not closed until judgment was entered on August 27,

10

2012 ignores this Court's order two days later entering Judgment in this case "*nunc pro tunc* to August

11

12, 2010, the date on which the Court directed that judgment be entered 'forthwith.'"  Dkt. 843 at 2.

12

On August 12, 2010, Chief Judge Walker ordered that judgment be entered in this case.

13

Dkt. 727 at 10–11 ("The clerk is DIRECTED to enter judgment forthwith.").  Unfortunately, as this

14

Court later explained, "judgment in the case was not (apparently due to an oversight) entered in August

15

2010 as Judge Walker instructed."  *Perry*, 302 F. Supp. 3d at 1057 n.20.   On August 27, 2012, after

16

realizing the clerical error, this Court entered judgment.  Dkt. 842.  Proponents reference that entry of

17

judgment as the date from which Local Rule 79-5(g)'s ten-year presumptive unsealing should be

18

calculated.  *See* Dkt. 892 at 23–24.  But, two days later, on August 29, 2012, this Court further corrected

19

the record, directing that judgment in this case be entered "*nunc pro tunc* to August 12, 2010, the date

20

on which the Court directed that judgment be entered 'forthwith.'"  Dkt. 843 at 2 (Aug. 29, 2012).

21

Because of that correction, not only was this case "functionally" closed as this Court previously noted,

22

*Perry* 302 F. Supp. 3d at 1057 n.20, it was *actually* closed on August 12, 2010, and has been since this

23

Court's order on August 29, 2012.[17]

24

### B. The Right Of Public Access Requires Unsealing

25

Beyond this Court's local rules, two distinct rights of public access—one derived from federal

26

common law and the other derived from the First Amendment—independently require unsealing.

27

28

---

[17] If Proponents are concerned with an apparent clerical error, they may move to correct the error under Federal Rule of Civil Procedure 60(a).

Gibson, Dunn &
Crutcher LLP

First, the federal common law has long "recognize[d] a general right to inspect and copy . . . judicial records and documents." *Warner Commc'ns*, 435 U.S. at 597 (footnotes omitted).  Courts "start with a strong presumption in favor of access to court records," *Foltz*, 331 F.3d at 1135, which allows "citizen[s] . . . to keep a watchful eye on the workings of public agencies," *Warner Commc'ns*, 435 U.S. at 598, and "promot[es] the public's understanding of the judicial process and of significant public events," *Valley Broadcasting*, 798 F.2d at 1294.

Second, the First Amendment right of access is even "stronger" than the common-law right of access.  *United States v. Carpenter*, 923 F.3d 1172, 1179 (9th Cir. 2019).  The First Amendment's "expressly guaranteed freedoms share a common core purpose of assuring freedom of communication on matters relating to the functioning of government." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575 (1980) (plurality op.).  Indeed, "[t]he Bill of Rights was enacted against the backdrop of the long history of trials being presumptively open." *Id.*  "In guaranteeing freedoms such as those of speech and press, the First Amendment can be read as protecting the right of *everyone* to attend trials so as to give meaning to those explicit guarantees." *Id.* (emphasis added).

This Court previously determined that both doctrines require the video recording to be unsealed, *See Perry*, 302 F. Supp. 3d at 1058, and Proponents' latest motion offers no reason for the Court to conclude otherwise now.

### 1.     The Common-Law Right Of Public Access Requires Unsealing

As it did in its 2018 order, *see Perry*, 302 F. Supp. 3d at 1053, this Court should start with a strong presumption of public access, *see Foltz*, 331 F.3d at 1135.  Although the presumption does not attach to certain categories of documents that "have traditionally been kept secret for important public policy reasons," *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989), the Ninth Circuit repeatedly has held that these categories are few and "narrow," *Kamakana*, 447 F.3d at 1178; *Carpenter*, 923 F.3d at 1178–79 (refusing to expand categories of documents immune from presumptive access).  Proponents argue that the video recording here is "akin to private documents not traditionally exposed to the public," Dkt. 892 at 17 (citing *Perry*, 667 F.3d at 1087), but there is nothing private about witness testimony in a public trial.  In fact, the Ninth Circuit has steadfastly recognized only "two categories of documents that fall in this category: grand jury transcripts and warrant materials

in the midst of a pre-indictment investigation." *Kamakana*, 447 F.3d at 1178.[18]  The video recording at issue here is not remotely analogous to these types of records.

Proponents erroneously argue that Local Rule 77-3 "displace[s]" the common-law right to public access.  Dkt. 892 at 12.  As explained above, Local Rule 77-3 says nothing about sealing (or unsealing) court records and thus is irrelevant here.  *See supra* p. 15.  To be sure, Chief Judge Walker did not violate Local Rule 77-3, because he did not record the trial "for [the] purpose[]" of "public broadcasting or televising."  Chief Judge Walker explained that the recording's "purpose" was that "it would be quite helpful to me in preparing the findings of fact."  *Perry*, 667 F.3d at 1082.  That is permissible use of a recording under Local Rule 77-3.  Nor would this Court violate Local Rule 77-3 by lifting the seal, because by merely allowing the public to access the record in this case, the Court is not "broadcasting" or "televising" it.  Rather, it is allowing the public to access a judicial record that Chief Judge Walker believed would be "quite helpful" in rendering his historic decision.

In any event, this Court properly interpreted its own local rules in finding that, whether or not Local Rule 77-3 prohibited the recording ten years ago, a recording *was made* and entered into the record without objection, and that any interpretation of Rule 77-3 in these unique circumstances should not conflict with the right of public access.  *Perry*, 302 F. Supp. 3d at 1056.  This interpretation is eminently reasonable because, wherever possible, the local rules should be read to comport with the Constitution.  *See INS v. St. Cyr*, 533 U.S. 289, 299–300 (2001).  Proponents' reading of Local Rule 77-3 conflicts with the First Amendment's right to public access; this Court's reading furthers it.

Next, Proponents attempt to evade the common law right of access by invoking a "wholly derivative" theory that this Circuit does not follow.  *See* Dkt. 892 at 15.  Proponents rely on the Eighth Circuit's decision in *United States v. McDougal*, 103 F.3d 651 (8th Cir. 1996), which held that the video recording of President Clinton's deposition testimony was not a "judicial record" to which the common law presumption of public access attaches.  But this case does not involve deposition testimony.  And, in any event, the Ninth Circuit takes a different approach.  *See Kamakana*, 447 F.3d

---

[18]  The Ninth Circuit later confirmed that only those two categories are immune from presumptive access when it held that *post*-investigation warrant materials should presumptively be made public. *United States v. Bus. of Custer Battlefield Mus. & Store*, 658 F.3d 1188, 1192 (9th Cir. 2011).

Gibson, Dunn &
Crutcher LLP

at 1184; *Perry*, 302 F. Supp. 3d at 1056 (*McDougal* "dealt with a markedly different situation and applied a different standard").[19]  The question in this Circuit is not whether the public has traditionally accessed a particular kind of document, but instead whether the document is one of a "very specific type[] of documents that warrant the highest protection." *Id.* at 1185.  The recording here does not fall within the two narrow categories discussed in *Kamakana* (grand jury transcripts and pre-indictment warrant materials) that are not exempt from the common law presumption of public access.

Thus, Proponents can overcome the strong presumption of public access only if they establish sufficiently "compelling reasons" to maintain the seal.  Ultimately, "the district court must weigh 'the interests advanced by the parties in the light of the public interest and the duty of the courts'" in deciding whether to release particular material.  *Valley Broadcasting*, 798 F.2d at 1294 (quoting *Warner Commc'ns*, 435 U.S. at 602).  This Court did just what *Valley Broadcasting* required it to do in weighing the competing interests to arrive at its conclusion that public disclosure is required.  Specifically, this Court stated that it has "no doubt that the common-law right of access applies to the video recordings" and balanced that right against the "compelling justification of judicial integrity" that, in the Court's view, required honoring the terms that Chief Judge Walker set when he created the recording for his own use and then directed it to be filed in the record under seal.  *Perry*, 302 F. Supp. 3d at 1055.  That careful balance respected both Proponents' reliance on Judge Walker's promise and the public's right under federal common law and the First Amendment to, after the passage of 10 years, see for itself the historic Proposition 8 trial.

Plaintiffs have explained above why each of Proponents' other proffered reasons falls well short of a sufficiently "compelling" reason to maintain the seal under Local Rule 79-5.  *See supra* pp. 14–15 (judicial integrity), 16–18 (potential harm to witnesses).  For the same reasons, Proponents cannot

---

[19]  The Ninth Circuit has never cited *McDougal*, despite issuing many opinions on the right of access that postdate *McDougal*.  And (other than this case) every district court order in this Circuit to cite *McDougal* concerned video recordings of depositions—a type of record not at issue here. *See, e.g.*, *Flake v. Arpaio*, 2016 WL 4095831 (D. Ariz. Aug. 2, 2016) (rejecting *McDougal* and denying motion for protective order preventing public release of deposition); *Apple iPod iTunes Antitrust Litig.*, 75 F. Supp. 3d 1271 (N.D. Cal. 2014); *Low v. Trump Univ., LLC*, 2016 WL 4098195 (S.D. Cal. Aug. 2, 2016).  Moreover, *McDougal* split with the Second Circuit's correct refusal to "create an exception to the common law right to inspect and copy judicial records for videotaped depositions." *Application of CBS, Inc.*, 828 F.2d 958, 959–60 (2d Cir. 1987).

Gibson, Dunn &
Crutcher LLP

1    overcome the common-law presumption of public access to the video recording of this historic trial.

2        **2.      The First Amendment Right Of Public Access Requires Unsealing**

3        The related doctrine of public access under the First Amendment "flows from an 'unbroken,

4    uncontradicted history' rooted in the common law notion that 'justice must satisfy the appearance of

5    justice.'"  *Courthouse News Serv. v. Planet*, 947 F.3d 581, 589 (9th Cir. 2020) (quoting *Richmond

6    Papers*, 448 U.S. at 573–74 (plurality op.)).  The Supreme Court has confirmed "[i]n a variety of

7    contexts" that the First Amendment implicitly guarantees the "right to 'receive information and ideas.'"

8    *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972).  "What this means in the context of trials is that the

9    First Amendment guarantees of speech and press, standing alone, prohibit government from summarily

10   closing courtroom doors which had long been open to the public at the time that Amendment was

11   adopted."  *Richmond Newspapers*, 448 U.S. at 576.  "For the First Amendment does not speak

12   equivocally. . . .  It must be taken as a command of the broadest scope that explicit language, read in

13   the context of a liberty-loving society, will allow."  *Bridges v. California*, 314 U.S. 252, 263 (1941).

14       "Under the First Amendment," therefore, "the press and the public have a presumed right of

15   access to court proceedings and documents."  *Oregonian Publ'g Co. v. U.S. Dist. Court*, 920 F.2d 1462,

16   1465 (9th Cir. 1990) (citing *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 510 (1984)).  Because

17   "it is difficult for [people] to accept what they are prohibited from observing," *Richmond Newspapers*,

18   448 U.S. at 572 (plurality op.), the First Amendment guarantees free and open access to judicial

19   proceedings to promote public confidence in the judicial system.  Indeed, witnessing a trial "affords

20   citizens a form of legal education and hopefully promotes confidence in the fair administration of

21   justice."  *Id.* (citation omitted); *see also Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165,

22   1181 (6th Cir. 1983) ("The public has an interest in ascertaining what evidence and records the District

23   Court . . . relied upon in reaching [its] decisions.").

24       "[T]he federal courts of appeals widely agree" that "the First Amendment right of access to

25   information reaches civil judicial proceedings and records," just as it does criminal proceedings.

26   *Courthouse News*, 947 F.3d at 590; *see also Ground Zero Ctr. for Non-Violent Action v. U.S. Dep't of

27   the Navy*, 860 F.3d 1244, 1260 (9th Cir. 2017) (treating the First Amendment and common law rights

28   of public access to court documents in a civil case as coextensive with those of a criminal case).  Thus,

1   in determining whether to maintain the seal in the face of the First Amendment, the Court must

2   "consider whether (1) closure serves a compelling interest; (2) there is a substantial probability that, in

3   the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to

4   closure that would adequately protect the compelling interest."  *Perry*, 667 F.3d at 1088.

5          For the reasons discussed above, Proponents have not shown that maintaining the seal ten years

6   after trial would serve a compelling interest.  Nor would judicial integrity be harmed by lifting the seal

7   in accordance with this Court's local rules, which Proponents have conceded they were aware of.  *Perry*

8   oral argument at 7:04–7:48.  Nor would a finding that the First Amendment applies to these unique

9   circumstances be "startling" or "imply that the longstanding bar on the public broadcast of trial

10  proceedings is unconstitutional."  Dkt. 892 at 24.  By unsealing the recording, the Court is not publicly

11  broadcasting the trial.  It is providing the public access to judicial material—entered into the record

12  without specific objection—that aided Chief Judge Walker in rendering his historic decision.  There

13  could be no better "form of legal education."  *Richmond Newspapers*, 448 U.S. at 572 (plurality op.).

14  **C.   In The Alternative, And At Minimum, The Court Should Unseal The Video Recording**
    **Of The Testimony Of Plaintiffs' Witnesses**

15

16         Even if the Court disagrees that the local rules, federal common law, and First Amendment

17  require unsealing the video records of the entire trial, Plaintiffs alternatively request that, at a minimum,

18  the Court unseal those portions of the trial testimony from Plaintiffs' witnesses.  Doing so would

19  comport with the Ninth Circuit's requirement that courts consider "alternatives to closure that would

20  adequately protect [any] compelling interest" that requires at least some sealing, *Perry*, 667 F.3d at

21  1088, as well as this Court's requirement that requests to seal material in civil cases be "narrowly

22  tailored to seek sealing only of sealable material," Local Rule 79-5(b).

23         Under these principles, this Court frequently has denied requests for wholesale sealing where

24  more narrowly tailored sealing can be accomplished.  *See, e.g.*, *Karasek v. Regents of the Univ. of Cal.*,

25  2016 WL 4036104, at *17 n.8 (N.D. Cal. July 28, 2016) (denying "vastly overbroad" sealing requests

26  and requiring "narrowing"); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 2015 WL 13389611, at *1 (N.D. Cal.

27  Apr. 17, 2015) (denying in part motion to seal "with leave to propose sealing that is more narrowly

28  tailored to only the sealable material"); *CreAgri, Inc. v. Pinnaclife Inc.*, 2014 WL 27028, at *2 (N.D.

1   Cal. Jan. 2, 2014) ("[T]he Court told the parties that the sealing requests were too broad and should be

2   narrowed."); *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 2014 WL 12647906, at *2 (N.D. Cal.

3   Sept. 18, 2014) (refusing to seal deposition transcripts because the request to seal was "not narrowly

4   tailored").

5          Here, Proponents' argument against unsealing stems from harm that purportedly would flow to

6   "their witnesses" and "Proposition 8 supporters."  *See, e.g.*, Dkt. 892 at 18.  Proponents have never

7   argued that witnesses who supported *Plaintiffs* would suffer similar harm from unsealing, and in fact

8   15 of Plaintiffs' and Plaintiff-Intervenor's witnesses have submitted a declaration stating that they

9   support unsealing—comprising approximately 43 of the 65 total hours of witness testimony.  Thus,

10  none of Proponents' rationales for continuing the seal apply to Plaintiffs' witnesses' testimony.  They

11  do not explain, for example, how public access to the video recording of the four named Plaintiffs

12  testifying about their love for their partners would in any way harm anyone.  Nor do they explain how

13  public access to the testimony of experts who write and speak regularly on the subjects to which they

14  testified, and who themselves support unsealing, will cause any harm.  Therefore, if the Court is not

15  inclined to unseal the entire video, it should at the very least unseal the testimony, whether given on

16  direct or cross-examination, of any witness called by Plaintiffs, as well as any lawyer argument.

17                                        **CONCLUSION**

18         This Court's local rules, federal common law, and the First Amendment all require the same

19  conclusion:  The time has come for the public to have access to judicial records that helped the trial

20  judge rule in one of the most consequential trials of our generation.  Proponents provide no reason at

21  all—let alone "compelling" reason—to find otherwise.  The Court should deny Proponents' motion to

22  continue the seal.

23  Dated:  May 13, 2020                     Respectfully submitted,

24
25                                           GIBSON, DUNN & CRUTCHER LLP

26
                                             By:  _____*/s/ Theodore B. Olson*_____
27                                                     Theodore B. Olson

28
                                             Attorneys for Plaintiffs

1

### PROOF OF SERVICE

2

    I, Laura Rocha-Maez, declare as follows:

3

    I am employed in the County of Los Angeles, State of California; I am over the age of

4

eighteen years and am not a party to this action; my business address is 333 South Grand Avenue,
Los Angeles, California 90071, in said County and State.  On May 13, 2020, I served the following

5

document(s):

6

### PLAINTIFFS' OPPOSITION TO MOTION TO CONTINUE THE SEAL

7

On the parties stated below, by the following means of service:

8

    COOPER AND KIRK, PLLC
    Charles J. Cooper

9

    ccooper@cooperkirk.com
    David H. Thompson

10

    dthompson@cooperkirk.com
    Peter A. Patterson

11

    ppatterson@cooperkirk.com

12

    1523 New Hampshire Ave. N.W., Washington, D.C. 20036
    Telephone: (202) 220-9600, Facsimile: (202) 220-9601

13

14

    LAW OFFICES OF ANDREW P. PUGNO
    Andrew P. Pugno

15

    andrew@pugnolaw.com
    8261 Greenback Lane, Suite 200, Fair Oaks, California 95628

16

    Telephone: (916) 608-3065, Facsimile: (916) 608-3066

17

18

☑  **BY ELECTRONIC TRANSFER TO THE CM/ECF SYSTEM**:  On this date, I electronically
uploaded a true and correct copy in Adobe "pdf" format of the above-listed document(s) to the

19

United States District Court's Case Management and Electronic Case Filing (CM/ECF) system.
After the electronic filing of a document, service is deemed complete upon receipt of the Notice

20

of Electronic Filing ("NEF") by the registered CM/ECF users.

21

☑  **(FEDERAL)** I declare under penalty of perjury that the foregoing is true and correct.

22

23

    Executed on May 13, 2020

24

                    */s/ Laura Rocha-Maez*

25

                    Laura Rocha-Maez

26

27

28