SHILPI AGARWAL (SBN 270749)
sagarwal@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

*Attorneys for Amicus Curiae*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **KRISTIN M. PERRY**, et al., <br><br> Plaintiffs, <br> and <br><br> **CITY AND COUNTY OF SAN FRANCISCO,** <br><br> Plaintiff-Intervenor, <br> v. <br><br> **GAVIN NEWSOM,** in his official capacity as Governor of California, et al., <br><br> Defendants, <br> and <br><br> **PROPOSITION 8 OFFICIAL PROPONENTS DENNIS HOLLINGSWORTH**, et al., <br><br> Defendants-Intervenors. | Case No. 09-cv-2292 <br><br> **BRIEF AMICUS CURIAE OF AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA IN OPPOSITION TO MOTION TO MAINTAIN THE SEAL ON TRIAL VIDEO RECORDING** <br><br> Date: June 17, 2020 <br> Time: 2:00 p.m. <br> Judge: Hon. William H. Orrick <br> Location: Courtroom 2, 17th Floor |

In 2008, the California electorate adopted Proposition 8, a statewide ballot measure that denied same-sex couples the right to marry. The constitutionality of that proposition was litigated in a case that went to trial in this district. The public has an overwhelming interest in obtaining access to the audio-visual recording, lodged in the official court record, of that trial. Intervenor KQED, Inc. ably explains why the common law and First Amendment right to access records of judicial proceedings together require that these records be unsealed. *Amicus* the American Civil Liberties Union of Northern California submits this brief[1] to emphasize the weighty interests underlying the public's right to access records of judicial proceedings, and to explain why the reliance interests of parties to the proceedings cannot continue to outweigh the media's and the public's right to view these newsworthy court records.

First, "[t]he Supreme Court has repeatedly held that access to public proceedings and records is an indispensable predicate to free expression about the workings of government." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 785 (9th Cir. 2014). "[A] major purpose of [the First] Amendment was to protect the free discussion of governmental affairs." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604 (1982) (internal quotation marks omitted). As a result, "[f]ree speech carries with it some freedom to listen." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 576 (1980). "The right of access is thus an essential part of the First Amendment's purpose to ensure that the individual citizen can effectively participate in and contribute to our republican system of self-government." *Courthouse News*, 750 F.3d at 785 (internal quotation marks, citation omitted).

The Supreme Court has recognized two qualified rights of access to judicial proceedings and records, one grounded in the common law and the other in the First Amendment. *See Nixon*

---

[1] Counsel for movants KQED, Inc., *et al.*, and for respondents the proponents of Proposition 8, have consented to the filing of this *amicus curiae* brief. The American Civil Liberties Union of Northern California's interests in this matter were summarized in its previous motion for leave to file an *amicus* brief in support of KQED, *et al.*'s 2017 motion to unseal the trial recording (Dkt. 863). No party or party's counsel authored any part of this brief, and no other entity funded its preparation. *Amicus* has no parent corporation, nor does any publicly held corporation own its stock.

1  *v. Warner Comm., Inc.*, 435 U.S. 589, 597 (1978) (common law right); *Press-Enter. Co. v.*

2  *Superior Court*, 478 U.S. 1, 7-8 (1986) (First Amendment right).

3        The records at issue here—audio-visual recordings, lodged in the court file, of a public

4  trial—unquestionably fall within the scope of the common law and First Amendment right of

5  access. *See Nixon*, 435 U.S. at 597 (common law right "to inspect and copy public records and

6  documents, including judicial records and documents"); *Courthouse News Serv.*, 750 F.3d 788-

7  89 (recognizing First Amendment interest in timely access to civil complaints). The defendant-

8  intervenors' motion to maintain the seal must therefore be denied in the absence of "compelling

9  reasons" justifying sealing. *See Kamakana v. City and County of Honolulu*, 447 F.3d 1172,

10  1178-79 (9th Cir. 2006) (where records covered by common law right of access, sealing

11  appropriate only upon "articulat[ion of] compelling reasons supported by specific factual

12  findings, that outweigh the general history of access and the public policies favoring disclosure,

13  such as the public interest in understanding the judicial process") (internal quotation marks,

14  citations omitted); *Oregonian Pub. Co. v. United States District Court*, 920 F.2d 1462, 1466 (9th

15  Cir. 1990) (First Amendment right of access to judicial proceedings may be denied only if, inter

16  alia, denial serves a "compelling interest").

17        It bears emphasis that Intervenor KQED's right of access is "essential not only to its own

18  free expression, but also to the public's." *Courthouse News Serv.*, 750 F.3d at 786. In asserting

19  the right of access, the news media serves as "surrogates for the public." *Leigh v. Salazar*, 677

20  F.3d 892, 900 (9th Cir. 2012) (quoting Richmond Newspapers, 448 U.S. at 573 (Burger, C.J.,

21  announcing judgment)).

22        *Amicus* respectfully urges this Court, in ruling on this motion to maintain the seal, to

23  evaluate arguments in favor of continued sealing in light of the weighty interest KQED seeks to

24  vindicate here—the public's right to obtain information necessary to enable meaningful civic

25  participation on important public issues.

26        Second, although the Ninth Circuit held eight years ago that these records should remain

27  sealed due to the reliance interests of parties who testified at trial and who believed these records

28  would remain private, *see Perry v. Brown*, 667 F.3d 1078, 1087-88 (9th Cir. 2012), any such

reliance interests are no longer reasonable, let alone compelling. This is not a situation in which the privacy interests of the proponents of Proposition 8 should trump the public's interests in obtaining access to audio-visual recordings of a historic, public trial.

*Perry* does not control the result in this case. It held that, at the time the issue arose, there was a compelling reason to maintain the records under seal. *See id.* at 1084-85 ("Proponents [of Proposition 8] reasonably relied on Chief Judge Walker's specific assurances . . . that the recording would not be broadcast to the public, *at least in the foreseeable future*") (emphasis added). Moreover, changes in the facts or the law may lead courts to change their rulings, even when people may have acted in reliance on those rulings. For example, when parties enter into a consent decree—a contract between the parties adopted as an order of the court—the plaintiffs may drop meritorious claims or forms of relief, and the defendants may agree to take actions that the law does not require as part of the bargain. But that does not mean that the court can never modify a consent decree; to the contrary, a court may modify or dissolve a consent decree in response to significant changes in the surrounding facts or law. *See Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384 (1992); *Jeff D. v. Kempthorne*, 365 F.3d 844, 853-54 (9th Cir. 2004). The fact that parties or witnesses may have relied on a judicial order or act does not forever insulate that order from review.

To justify the *ongoing* sealing of these records, there must be a sufficient justification "favoring *continued* secrecy." *Kamakana*, 447 F.3d at 1181 (emphasis added). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.* at 1179; *cf. also Doe v. Kamehameha Schools*, 596 F.3d 1036, 1043 (9th Cir. 2010) (in light of right of access to judicial records, plaintiff seeking to proceed anonymously "must show both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable").

There are certainly circumstances when litigants' privacy interests justify shielding them from public scrutiny, but this is not one. *See, e.g., John Doe No. 1 v. Reed*, 561 U.S. 186, 193 (2010) (proceeding pseudonymously in suit to enjoin Washington State from disclosing the identities of petition signers after the district court granted a protective order against the

1   disclosure of their identities); *Roe ex rel. Roe v. Ingraham*, 364 F. Supp. 536, 541 n.7 (S.D.N.Y.

2   1973), rev'd on other grounds sub nom. *Whalen v. Roe*, 429 U.S. 589 (1977) ("[I]f plaintiffs are

3   required to reveal their identity prior to the adjudication on the merits of their privacy claim, they

4   will already have sustained the injury which by this litigation they seek to avoid.").

5        The proponents of Proposition 8 were not involuntarily thrust into the public eye or

6   hauled into court. As proponents of a statewide ballot measure, they chose to inject themselves

7   into a controversial public debate. As intervenor-defendants, they also chose to participate in

8   litigation over the measure. *Cf. Time, Inc. v. Firestone*, 424 U.S. 448, 486 (1976) ("[G]enerally

9   those classed as public figures have 'thrust themselves to the forefront of particular public

10  controversies' and thereby 'invite(d) attention and comment.' And even if they have not, 'the

11  communications media are entitled to act on the assumption that . . . public figures have

12  voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning

13  them.'") (citations omitted).

14       Moreover, this litigation has long since concluded and, in the years since the Ninth

15  Circuit's decision in *Perry*, the case has been the subject of extensive public discourse, in the

16  media and dramatic reenactments. *See* Mot. to Unseal at 6-7 (Dkt. No. 852 at 11-12). At this

17  juncture, the incremental attention to the proponents that might flow from unsealing these

18  records would have no impact on any ongoing judicial or other governmental proceeding. *Cf.*

19  *United States v. Bus. of the Custer Battlefield Museum & Store Located at Interstate 90, Exit*

20  *514*, 658 F.3d 1188, 1194-95 (9th Cir. 2011) (search warrant materials subject to qualified

21  common law right of access once criminal investigation has concluded and privacy interests of

22  individuals identified in warrant materials do not constitute compelling reasons justifying denial

23  of access). Under these circumstances, there are simply no compelling reasons for "continued

24  secrecy." *Kamakana*, 447 F.3d at 1181. For the foregoing reasons, the motion to maintain the

25  seal should be denied, and the video recording of the landmark trial in this case should at last

26  become available to the public.

27

28

1    Dated: May 13, 2020                          Respectfully Submitted,

2                                                 By: /s/ Shilpi Agarwal
                                                      Shilpi Agarwal
3
                                                  AMERICAN CIVIL LIBERTIES UNION
4                                                 FOUNDATION OF NORTHERN
                                                  CALIFORNIA, INC.
5                                                 39 Drumm Street
                                                  San Francisco, CA 94111
6                                                 Telephone: (415) 621-2493
                                                  Facsimile: (415) 255-8437
7
                                                  *Attorneys for* Amicus Curiae *American Civil
8                                                 Liberties Union of Northern California*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28