1    COOPER AND KIRK, PLLC
     Charles J. Cooper (DC Bar No. 248070)*
2    *ccooper@cooperkirk.com*
     David H. Thompson (DC Bar No. 450503)*
3    *dthompson@cooperkirk.com*
     Peter A. Patterson (OH Bar No. 0080840)*
4    *ppatterson@cooperkirk.com*
     1523 New Hampshire Ave. N.W., Washington, D.C. 20036
5    Telephone: (202) 220-9600, Facsimile: (202) 220-9601

6    LAW OFFICES OF ANDREW P. PUGNO
     Andrew P. Pugno (CA Bar No. 206587)
7    *andrew@pugnolaw.com*
     8261 Greenback Lane, Suite 200, Fair Oaks, California 95628
8    Telephone: (916) 608-3065, Facsimile: (916) 608-3066

9    ATTORNEYS FOR DEFENDANTS-INTERVENORS DENNIS HOLLINGSWORTH,
     GAIL J. KNIGHT, MARTIN F. GUTIERREZ, AND MARK A. JANSSON
10
     * Admitted *pro hac vice*
11
                    UNITED STATES DISTRICT COURT
12                 NORTHERN DISTRICT OF CALIFORNIA

13   KRISTIN M. PERRY, et al.,

14           Plaintiffs,                      CASE NO. 09-CV-2292-WHO

15        v.                                  **DEFENDANTS-INTERVENORS'**
                                              **REPLY IN SUPPORT OF THEIR**
16                                            **MOTION TO CONTINUE THE SEAL**
     GAVIN NEWSOM, in his official capacity as
17   Governor of California, et al.,          Date:  June 17, 2020
                                              Time:  2:00 p.m.
18                                            Judge:  Hon. William H. Orrick
             Defendants,                      Location: Courtroom 2, 17th Floor
19
     and
20
     DENNIS HOLLINGSWORTH, et al.,
21
             Defendants-Intervenors.
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.   THE COMPELLING INTEREST IN JUDICIAL INTEGRITY CONTINUES TO REQUIRE
     MAINTAINING THE SEAL. ...................................................................................... 2

II.  NONE OF KQED'S OR PLAINTIFFS' DOCTRINES REQUIRES DISCLOSURE AND
     DISSEMINATION OF THE VIDEO RECORDINGS. .......................................................... 7

     A.  The Common-Law Right of Access Does Not Apply for Multiple Reasons. .................. 7

     B.  Local Rule 79-5 Also Does Not Require the Unsealing of the Video Recordings......... 10

     C.  There Is No First Amendment Right To Access the Video Recordings......................... 14

CONCLUSION............................................................................................................... 15

DEFENDANTS-INTERVENORS' REPLY IN SUPPORT OF THEIR MOTION TO CONTINUE THE SEAL
CASE NO. 09-CV-2292

1

## TABLE OF AUTHORITIES

2

3

**Cases**                                                                                                              **Page**

4  *American Elec. Power v. Connecticut*, 564 U.S. 410 (2011) ............................................................ 7

5  *Amsler v. United States*, 381 F.2d 37 (9th Cir. 1967)..................................................................... 15

6  *Arizona v. Tohono O'odham Nation*, 818 F.3d 549 (9th Cir. 2016)................................................... 4

7  *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882 (9th Cir. 2001) ........ 11

8  *City of Milwaukee v. Illinois and Michigan* (*Milwaukee II*), 451 U.S. 312 (1981)............................ 8

9  *Conway v. United States*, 852 F.2d 187 (6th Cir. 1988)................................................................. 15

10  *Courthouse News Serv. v. Planet*, 947 F.3d 581 (9th Cir. 2020).................................................. 15

11  *Estes v. Texas*, 381 U.S. 532 (1965) ............................................................................................ 15

12  *Flores-Chavez v. Ashcroft*, 362 F.3d 1150 (9th Cir. 2004) ........................................................... 12

13  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003)......................................... 13

14  *Hollingsworth v. Perry*, 558 U.S. 183 (2010).......................................................................... 1, 5

15  *In re Motions of Dow Jones & Co.*, 142 F.3d 496 (D.C. Cir. 1998) ................................................ 7

16  *New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20 (4th Cir. 1963) ................................................. 11

17  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978)........................................................... 7, 14

18  *Perry v. Brown*, 667 F.3d 1078 (9th Cir. 2012)........................................... 1, 2, 3, 4, 5, 6, 7, 9, 11

19  *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921 (N.D. Cal. 2010)........................................... 1, 3, 6

20  *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206 (9th Cir. 2002) ................... 13

21  *Phoenix Newspapers, Inc. v. U.S. Dist. Court for Dist. of Arizona*,
22      156 F.3d 940 (9th Cir. 1998) ................................................................................................ 6

23  *Plexxikon Inc. v. Novartis Pharm. Corp.*, 2020 WL 1233881 (N.D. Cal. Mar. 13, 2020).............. 13

24  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996) ............................................................. 4

25  *Singh v. Mukasey*, 533 F.3d 1103 (9th Cir. 2008) ....................................................................... 14

26  *United States v. Antar*, 38 F.3d 1348 (3d Cir. 1994) ................................................................... 14

27  *United States v. Beckham*, 789 F.2d 401 (6th Cir. 1986) ............................................................. 14

28  *United States v. Hastings*, 695 F.2d 1278 (11th Cir. 1983)........................................................... 15

*United States v. Kerley*, 753 F.2d 617 (7th Cir. 1985) ...................................................... 15

*United States v. McDougal*, 103 F.3d 651 (8th Cir. 1996).......................................... 9, 10

*United States v. Shryock*, 342 F.3d 948 (9th Cir. 2003) ................................................. 12

*United States v. Sierra*, 784 F.2d 1518 (11th Cir. 1986) ................................................. 6

*Valley Broad. Co. v. U.S. Dist. Court for Dist. of Nevada*, 798 F.2d 1289 (9th Cir. 1986).......... 7, 14

**<u>Rules</u>**

Fed. R. Civ. P. 54(b)........................................................................................................... 11

Fed. R. Crim. P. 15 ............................................................................................................ 10

N.D. Cal. L.R.

    77-3 ............................................................................................................................. 8, 9

    77-3 (2009) ..................................................................................................................... 8

    79-5(g) ...................................................................................................................... 5, 13

    79-5(f) (2010) ............................................................................................................... 11

**INTRODUCTION**

In 2010, the U.S. Supreme Court intervened on an emergency and extraordinary basis to prevent former Chief Judge Vaughn Walker from publicly broadcasting the trial over the constitutionality of Proposition 8 as "contrary to federal statutes and the policy of the Judicial Conference of the United States." *Hollingsworth v. Perry*, 558 U.S. 183, 196 (2010). Over Proponents' objection, Judge Walker continued to videotape the trial; but to maintain compliance with the Supreme Court's emergency order, he unambiguously assured Proponents that the recordings were solely "for purposes . . . of use in chambers" and that they were "not going to be for purposes of public broadcasting or televising." Trial Tr. at 754 (Vol. 4). Proponents accepted and relied on this assurance, taking no further action. Again at the conclusion of the trial, when Judge Walker placed the recordings in the Court's record under seal, he unequivocally promised that "the potential for public broadcast" of the trial proceedings "had been eliminated." *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 944 (N.D. Cal. 2010) (emphasis added). And again, Proponents relied on this clear judicial commitment. As the Ninth Circuit held, Judge Walker thus twice "unequivocally promised that the recording of the trial would be used only in chambers and not publicly broadcast. He made these commitments because the Supreme Court had intervened in this very case in a manner that required him to do so." *Perry v. Brown*, 667 F.3d 1078, 1081 (9th Cir. 2012).

In the teeth of these solemn guarantees, KQED and Plaintiffs ask this Court to unseal and publicly disseminate the trial videotapes that Judge Walker promised would never be released. They attempt to sweep the Ninth Circuit's conclusions in the 2012 *Perry* appeal aside, seizing on the court's statement that broadcast could not take place "at least in the foreseeable future." *Id.* at 1084–85. But the most that can be said is that the specific *holding* of the Ninth Circuit in *Perry* did not address the issue whether the seal could be lifted after ten years have passed. The Court's *reasoning*—as binding, here, as its holding—is not so limited: maintaining the seal was necessary, the Ninth Circuit explained, to keep faith with Judge Walker's "promise[ ] . . . that the conditions under which the recording was maintained *would not change*—that there was *no possibility* that the recording would be broadcast to the public *in the future*." *Perry*, 667 F.3d at 1086 (first emphasis in original). That promise plainly had no time horizon.

KQED and Plaintiffs' request to unseal and broadcast these video recordings fails for multiple other reasons as well. The common-law right of access provides no basis for their request, both because it has been displaced by the Local Rules prohibiting the recordings' broadcast and because the common-law right does not attach to derivative documents of this kind. Local Rule 79-5 simply does not apply here. And the First Amendment changes nothing because binding precedent squarely holds that there is no First Amendment right to view recordings of this kind where the trial was open to the public and transcripts of the recordings are freely available.

In 2012, faced with much the same arguments as those advanced by Plaintiffs and KQED today, the Ninth Circuit had no difficulty concluding that "Proponents were . . . entitled to take Chief Judge Walker at his word when he assured them that the trial recording would not be publicly broadcast or televised" and accordingly that "[t]he interest in preserving respect for our system of justice is clearly a compelling reason for maintaining the seal on the recording." *Perry*, 667 F.3d at 1088. The interest in judicial integrity has become no less compelling in the eight years that have passed since those words were written. The seal should remain in place.

## ARGUMENT

### I. THE COMPELLING INTEREST IN JUDICIAL INTEGRITY CONTINUES TO REQUIRE MAINTAINING THE SEAL.

In its 2012 decision rejecting KQED's previous attempt to obtain the trial recordings, the Ninth Circuit held that any right to access the tapes is decisively outweighed by the judicial branch's compelling interest in keeping its own promises. For the reasons discussed *infra* in Part II, neither KQED or anyone else has any right to access the videotapes that Judge Walker solemnly promised would never be released—not under the common law, not under the Local Rules, and not under the First Amendment. But even assuming one of those doctrines *did* grant such a right, the compelling interest in judicial integrity continues to provide an independent, overriding reason to reject KQED's request without even reaching any of these issues. We accordingly begin there.

As the Ninth Circuit described in *Perry*, in the course of defending his decisions both to create the video recordings and to place them in the record under seal, Judge Walker made repeated, "unequivocal assurances that the video recording at issue would not be accessible to the public." 667

F.3d at 1085. Because "the explicit assurances that a judge makes—no less than the decisions the judge issues—must be consistent and worthy of reliance," Judge Reinhardt's opinion for the panel concluded that "the setting aside of those commitments would compromise the integrity of the judicial process." *Id.* at 1087, 1088. That is no less true today.

Plaintiffs argue that allowing the trial recordings to be disclosed and broadcasted—the very thing Judge Walker said that he had "eliminated" as a possibility, *Perry*, 704 F. Supp. 2d at 944— would somehow not be "inconsistent with any 'assurances' provided by Chief Judge Walker," because, they say, "at no point did Judge Walker 'promise' that [the recordings] would be sealed indefinitely." Plaintiffs' Opp. to Mot. to Continue the Seal 15 (May 13, 2020), Doc. 895 ("Plaintiffs' Br."). Similarly, KQED claims, apparently with a straight face, that "nothing in Judge Walker's statement conveyed its application to future broadcasts." KQED Inc.'s Opp. to Defs-Intervenors' Mot. to Continue the Seal 16 (May 13, 2020), Doc. 898 ("KQED's Br."). We confess we have a quite markedly different idea of what the word "eliminated" means—and so, apparently, did the Ninth Circuit. Indeed, Plaintiff and KQED's argument is *flatly contrary* to the decision in *Perry*—for if Judge Walker's assurances did not apply at all to "future broadcasts," it is difficult to fathom why the Ninth Circuit (1) reacted so unfavorably to his disclosure and public display of the tapes months after the trial, (2) reversed this Court's order unsealing them and "permit[ting] the broadcast of the recording for all to view" over a year later, and (3) remanded with "instructions to maintain the trial recording under seal." *Perry*, 667 F.3d at 1080, 1089.

Trying a different tack, Plaintiffs argue that the disclosure and dissemination of the recordings may be squared with Judge Walker's assurances nonetheless because "any such assurance was by its nature tethered to the default rule that sealing ordinarily expires after ten years." Plaintiffs' Br. 15; *see also* KQED's Br. 3. But neither Plaintiffs, KQED, or any of the other entities seeking to now undo his solemn assurances can point to *any suggestion anywhere* by Judge Walker that the "potential for public broadcast" of the proceedings—after having been "eliminated"—would somehow spring back into being, ten years later. That is of course why Plaintiffs are forced to resort to the circumlocution that Judge Walker's representation was "*by its nature* tethered to the [ten-year] default rule," Plaintiffs' Br. 15 (emphasis added)—because they cannot say it was *actually* tethered to that

1   rule. He never even referenced the rule.

2           Unable to find anything in Judge Walker's promises that would cause them to expire after ten

3   years, both Plaintiffs and KQED turn to the Ninth Circuit's decision in *Perry*. Homing in on the

4   court's statement that broadcast could not occur "at least in the foreseeable future," along with its

5   citation, in a footnote, to Rule 79-5(g), 667 F.3d at 1084–85 & n.5, they argue that the Ninth Circuit

6   "made clear that the compelling reason . . . to seal the videotaped trial records would not endure

7   forever." KQED's Br. 18; *see also* Plaintiffs' Br. 14. But ten years can hardly be said to be beyond

8   the "foreseeable future." And while the Ninth Circuit's reference to Rule 79-5(g)'s ten-year default

9   rule may be enough to show that its specific *holding* does not dictate that the recordings must remain

10  sealed beyond "the foreseeable future," the doctrine of *stare decisis* requires obedience not only to a

11  previous case's narrow holding, but also to its animating reasoning. *Seminole Tribe of Florida v.*

12  *Florida*, 517 U.S. 44, 67 (1996). And the Ninth reasoning—by focusing on Judge Walker's

13  "promise[ ] . . . that the conditions under which the recording was maintained *would not change*—

14  that there was *no possibility* that the recording would be broadcast to the public *in the future*"—

15  simply cannot be read as good for ten years only. *Perry*, 667 F.3d at 1086 (first emphasis in original).

16          KQED and Plaintiffs next seize upon a brief statement by Proponents' counsel, at oral

17  argument in 2011, that under the Local Rules the seal on the recordings lasts for a minimum of ten

18  years, suggesting that this aside amounts to an "admission" that now forecloses any argument that

19  Proponents reasonably expected the recordings to remain permanently confidential. KQED's Br. 18–

20  19 n.2; Plaintiffs' Br. 14–15. But as the Ninth Circuit has held, a party's statement of its position on

21  some issue does not preclude it from later articulating a different view, upon reflection, unless (1)

22  "the party . . . succeeded in persuading a court to accept that party's earlier position," and (2) the

23  opposing party would suffer an "unfair detriment" from the change of course. *Arizona v. Tohono*

24  *O'odham Nation*, 818 F.3d 549, 558 (9th Cir. 2016). Here, neither condition is met. The Ninth Circuit

25  did not rely on counsel's interpretation of the local rules in reaching its decision in *Perry*, and neither

26  KQED nor Plaintiffs have even attempted to show any prejudice that would justify judicial estoppel.

27          In all events, counsel was careful to emphasize in the very exchange at issue that even if the

28  ten-year presumption applies, the local rules *themselves* allow that period *to be extended for good*

4

*cause.* Oral Argument at 6:24, *Perry v. Brown*, No. 11-17255 (9th Cir. Dec. 8, 2011), *available at* https://goo.gl/coepDh; *see also* N.D. CAL. L.R. 79-5(g). Given that Judge Walker's promises easily *meet* that standard, *Perry*, 667 F.3d at 1088, counsel's reference to Rule 79-5 would show nothing *even if* it was somehow controlling here.

In addition to dramatically undermining public confidence in the courts, a failure by the judicial system to honor the solemn commitments of its judges would also seriously harm those who reasonably rely on those commitments. The parties and witnesses who testified in this case and the lawyers who questioned them, for instance, did so in reliance on Judge Walker's promise that the videotapes being made would not be publicly released. Both the record and the Supreme Court's opinion in *Hollingsworth* discuss in detail the threats and harassment supporters of Proposition 8 have already suffered. *See, e.g.*, Dkt. #187-2 ¶¶ 11–12; Dkt. #187-9 ¶¶ 6–8; Dkt. #187-11; Dkt. #187-12 ¶¶ 5–6; *Hollingsworth*, 558 U.S. at 185–86. And public broadcast of the trial recordings would increase exponentially the opportunities for abuse. KQED insists that it merely wishes to "make productive, educational uses out of the videotapes and put them in context." KQED's Br. 24. But even assuming that is so, once the recordings have been broadcast and uploaded to the internet, KQED will obviously have no control over how they are used. Appellees' Amici also ask the Court to ignore this concern, but their arguments for access in fact prove its validity: it is precisely because videotapes can be made to "amplify[ ] the impact of the information presented"—irresponsibly as well as responsibly—that Proponents sought (and, twice, obtained) Judge Walker's solemn and unequivocal assurances that the tapes would not be publicly broadcast. Brief of Amici Curiae Reporters Committee and 36 Media Organizations at 9 (May 13, 2020), Doc. 899-2 ("Reporters' Amicus").

Plaintiffs also fault us for failing to provide any new "evidence that Proponents or anyone who testified on their behalf would suffer any harm from unsealing the video recording." Plaintiffs' Br. 8. And they urge the Court to draw adverse inferences from counsel's refusal of their extraordinary request that they be allowed to interview William Tam and Proponents' supporting witnesses, despite their adverse relationship in this proceeding. All of this is of no moment. We have not provided further evidence of harassment because we have *never relied upon harassment* as an independent reason to maintain the seal. Rather, as we have explained, the past harassment of Prop 8

5

supporters illustrates the potential real-world consequences of undermining the structural value of judicial integrity.

That also suffices to dispose of Plaintiffs' alternative suggestion that the Court should "unseal the testimony, whether given on direct or cross-examination, of any witness called by Plaintiffs, as well as any lawyer argument." *Id.* at 24; *see also* Reporters' Amicus 15–16. The suggestion that this partial unsealing would be a "more narrowly tailored" solution rests entirely on the premise that the only reason for maintaining the seal is the "harm that purportedly would flow to [Proponents'] witnesses and Proposition 8 supporters" from disclosure. *Id.* at 23–24 (quotation marks omitted). As just discussed, that is not so; instead, the compelling interest that requires the videotapes to remain sealed is the judiciary's obligation to keep faith with Judge Walker's promise that those recordings would never be disclosed. And the only "narrowly tailored" way to honor Judge Walker's promise that he had "eliminated" the possibility that the trial recordings would be publicly disclosed and disseminated *at all*, *Perry*, 704 F. Supp. 2d at 944, is to *prevent the trial recordings from being publicly disclosed and disseminated at all*.

Plaintiffs' argument for partial disclosure also ignores the fact that Proponents' attorneys, as well as their witnesses, *also* reasonably relied on Judge Walker's assurances that the trial would not be broadcast. Plaintiffs themselves say that their proposed partial unsealing would reach "any lawyer argument." Plaintiffs' Br. 24. But Judge Walker's repeated promises that the recordings would never be disclosed extended to Proponents' lawyers as well as their witnesses—indeed, Judge Walker made that promise in open court to one of them. Trial Tr. at 754 (Vol. 4). And the value of judicial integrity demands that faith in "the explicit assurances that a judge makes" must be preserved not only among "[l]itigants and the public," but also the officers of the Court. *Perry*, 667 F.3d at 1087–88.

KQED notes that a permanent seal is "rarely" appropriate, KQED's Br. 19, but as explained in the very authority it cites, "[t]here are occasions when permanent sealing is justified." *Phoenix Newspapers, Inc. v. U.S. Dist. Court for Dist. of Arizona*, 156 F.3d 940, 948 n.2 (9th Cir. 1998). And just like the example of grand jury proceedings identified in *Phoenix Newspapers*, *id.*, where the court's "obligation . . . to preserve the secrecy of grand jury proceedings and the privacy of jurors" endures without any temporal limit, *United States v. Sierra*, 784 F.2d 1518, 1522 (11th Cir. 1986),

the judiciary's compelling interest in honoring a federal judge's promise, in open court, that "the conditions under which the recording was maintained *would not change*—that there was no possibility that the recording would be broadcast to the public in the future," *Perry*, 667 F.3d at 1086, has no time horizon.

Ultimately, the bulk of Plaintiffs' and KQED's briefing—and the entirety of the vaunted "multiple new declarations" they put in, KQED's Br. 2—is comprised of variations on the theme that the sealed video recordings are "a valuable historical record," Plaintiffs' Br. 1, and that their public broadcast would "provide an unprecedented and wholly unique perspective" into the trial, KQED's Br. 24; *see also* Brief Amicus Curiae of ACLU of N. Cal. at 2 (May 13, 2020), Doc. 896 (urging the Court "to evaluate arguments in favor of continued sealing in light of the weighty interest KQED seeks to vindicate here"). But whether or not that is so, any suggestion that these values should *outweigh* the judiciary's structural interest in keeping its own promises simply cannot be squared with the Ninth Circuit's express holding that "[t]he interest in preserving respect for our system of justice is clearly a compelling reason for maintaining the seal on the recording, notwithstanding any presumption that it should be released." *Perry*, 667 F.3d at 1088.

## II. NONE OF KQED'S OR PLAINTIFFS' DOCTRINES REQUIRES DISCLOSURE AND DISSEMINATION OF THE VIDEO RECORDINGS.

### A. The Common-Law Right of Access Does Not Apply for Multiple Reasons.

Both Plaintiffs and KQED point to the common-law "right of access" as providing them a right to obtain and broadcast the trial videotapes. It does not, for two independently sufficient reasons.

1. Because the common-law "right of access" to judicial proceedings and documents "is not of constitutional dimension," *Valley Broad. Co. v. United States Dist. Court for Dist. of Nevada*, 798 F.2d 1289, 1293 (9th Cir. 1986), it may be superseded or "displaced" by positive law, including judicial rules. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 605–07 (1978); *American Elec. Power v. Connecticut*, 564 U.S. 410, 424 (2011); *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 504 (D.C. Cir. 1998). Nor, contrary to KQED's suggestion, does the Court need to strain to find a reading of positive law that is consistent with the common-law right. While statutes "are to be read with a presumption favoring the retention" of *state* common law rules, *see* KQED's Br. 15–16

7

(quoting *Pasquantino v. United States*, 544 U.S. 349, 349 (2005)), because *federal* common law exists only by "necessary expedient," it is displaced far more readily—whenever positive law "addresses a question previously governed by a decision rested on federal common law," thereby happily eliminating "the need for such an unusual exercise of lawmaking by federal courts." *City of Milwaukee v. Illinois and Michigan* (*Milwaukee II*), 451 U.S. 312, 304, 314 (1981). As shown in our opening brief, Rule 77-3 "addresses [the] question" previously answered by the common-law rule of access in this area, and it therefore displaces the common-law right and erects, in its place, an absolute bar on the broadcast of trial video recordings.

Plaintiffs and KQED attempt to undermine this conclusion, but their principal argument is based on a fundamental misconception about how Rule 77-3 operates. Rule 77-3, both parties insist, "says nothing about sealing (or unsealing) court records," Plaintiffs' Br. 20, because it only limits "the *contemporaneous* broadcasting or televising of court proceeding[s]," KQED's Br. 12. That reading of Rule 77-3 is flatly contrary to its plain text, the Ninth Circuit and this Court's interpretation of it, and all sense. First the text: the rule, again, provides that "public broadcasting or televising, *or recording for those purposes* in the courtroom or its environs, in connection with any judicial proceeding, is prohibited." N.D. CAL. L.R. 77-3 (emphasis added); *accord* N.D. CAL. L.R. 77-3 (2009). The Rule thus bars not just the contemporaneous "broadcasting or televising" of judicial proceedings but also "recording" a proceeding "*for those purposes*." N.D. CAL. L.R. 77-3 (emphasis added). And the only function of this second portion of the Rule is obviously to allow a video recording to be subsequently used for *some* purposes (such as use "by a Judge . . . [in] his or her own chambers," Rule 77-3) but *not others* (namely, subsequent "public broadcasting or televising").

Indeed, if KQED and Plaintiffs' reading of the Rule were correct, nothing would have stopped Judge Walker from disseminating the video recordings to the public *the week following the trial*—or even from broadcasting, each day, the prior day's proceedings. It is passing strange, on their view, *why* Judge Walker promised to use the recordings only for "preparing the findings of fact" *to begin with*. Trial Tr. at 754 (Vol. 4). For by their lights, once the recording was made, *all bets are off*, so long as any broadcast does not take place "contemporaneously." It is also quite inexplicable, on KQED and Plaintiffs' interpretation, why the Ninth Circuit concluded that had Judge Walker *not*

8

made that promise,  Proponents could very likely have obtained an Order from the Supreme Court directing him to refrain from creating a recording that "might . . . be released for viewing by the public, *either during or after the trial*." *Perry*, 667 F.3d at 1085 (emphasis added). Of course, the reason why Judge Walker, the Ninth Circuit, and all the parties behaved in these ways is in fact no mystery—they all understood that Rule 77-3 prohibits not only the contemporaneous "broadcasting or televising" of judicial proceedings but also the *subsequent* use of a "recording" of the proceedings "*for those purposes*." N.D. CAL. L.R. 77-3 (emphasis added).

KQED and Plaintiffs get no further by suggesting that lifting the seal now would not result in the "broadcast" of the recordings. KQED's Br. 13; Plaintiffs' Br. 20. To be sure, "members of the public c[ould] use it for other purposes." *Id.* at 16. But given that the very party seeking access to the videotapes is "a public broadcaster" that "operates the nation's most listened to public radio station and the most popular public television stations in the San Francisco Bay Area" and has avowed the intention of "producing an educational television special" using the recordings and "making available online key moments of the trial," KQED's Br. 6–7, the one use the Court can be *sure* will be made of the recordings *is broadcasting and televising*. KQED's suggestion that Rule 77-3 does not apply because it "does not seek to broadcast" the video recordings, *id.* at 13, is simply beyond the pale.

2.  Even if the common-law right of access *were not* superseded by Rule 77-3, it still would not apply to the videotapes at issue, because they are wholly derivative recordings of trial proceedings that took place in open court for all to see. As the Eighth Circuit persuasively held in *United States v. McDougal*, 103 F.3d 651 (8th Cir. 1996), the common-law right does not apply to these derivative types of materials. Both KQED and Plaintiffs attempt to distinguish *McDougal*, based on the fact that the recordings here "are a verbatim audio-visual record of the full trial proceedings" rather than the recording of a deposition. KQED's Br. 17; *see also* Plaintiffs' Br. 20. That line of argument simply *ignores McDougal*'s reasoning, rather than distinguishing it. As *McDougal* was at pains to emphasize, the recording at issue there—as here—was "an electronic recording of witness testimony." 103 F.3d at 657. To be sure, the witness testimony in *McDougal* was presented by means of a videotaped deposition, rather than through an in-person presentation; but the *McDougal* court could not have been clearer that it was treating that video-recorded deposition testimony "on equal footing" as "live

9

in-court testimony" to honor FED. R. CRIM. P. 15's mandate that deponents under that rule be "treated equally to witnesses who testify in court, in person." *Id.* The recording in *McDougal* was thus on all fours with the trial videotapes in this case in every way that matters.

Unable to distinguish *McDougal*, Plaintiffs and KQED instead ask the Court to depart from it. Plaintiffs attempt to conjure a conflict between *McDougal* and Ninth Circuit precedent by characterizing *McDougal* as holding that "derivative materials" are not the type of document that "the public has traditionally accessed" and then pointing to this Court's reluctance to expand the category of documents "traditionally kept secret." Plaintiffs' Br. 19–21. But *McDougal* did not decline to apply the common-law right of access because the materials in question were of a kind "traditionally kept secret." *Id.* at 19. It held that the common-law right did not apply *because they were derivative*. *McDougal*, 103 F.3d at 657. KQED tries a slightly different argument, contending that *McDougal* was based on the Eighth Circuit's rejection of "the strong presumption in favor of [public] access" applied by the Ninth Circuit, KQED's Br. 13 (quotation marks omitted). But as explained in our opening brief, that supposed distinction does not work either, since the *McDougal* court's rejection of a strong presumption of access was part of its *alternative* holding that disclosure was not necessary *even if the right of access attaches*. 103 F.3d at 657 ("Even if we were to assume that the videotape is a judicial record subject to the common law right of public access, . . ."). We have cited *McDougal* only for its separate, earlier holding that the right of access *does not apply to begin with*.

**B.      Local Rule 79-5 Also Does Not Require the Unsealing of the Video Recordings.**

This Court's Rule 79-5 no more requires disclosure and dissemination of the trial recordings than the common law. Once again, that is so for multiple independent reasons.

1.   Plaintiffs attempt to bar us, at the threshold, from even *offering* those multiple reasons, arguing that Proponents are "judicially bound" by counsel's statement in the brief exchange during the Ninth Circuit argument discussed above, which Plaintiffs characterize as an "oral judicial admission" that Rule 79-5's ten-year unsealing default-rule applies to the video recordings. Plaintiffs' Br. 11. For the reasons discussed above, there is nothing to this. The strict standards that govern judicial admissions are plainly not met here, *see supra*, pp. 4–5, and nothing in the two tentative sentences uttered by counsel at argument eight years ago forecloses Proponents, or this Court, from

10

now adopting whatever they determine to be the best interpretation of Rule 79-5. *See also New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 24 (4th Cir. 1963) ("The doctrine of judicial admissions has never been applied to counsel's statement of his conception of the legal theory of the case. When counsel speaks of legal principles, as he conceives them and which he thinks applicable, he makes no judicial admission and sets up no estoppel which would prevent the court from applying to the facts disclosed by the proof, the proper legal principles as the Court understands them.").

Nor is this Court bound to adhere to an incorrect interpretation or the Rule by "law of the case" principles. As also noted above, Plaintiffs' suggestion that the Ninth Circuit "confirm[ed] the presumptive application of Rule 79-5(g)'s ten-year rule" is completely implausible. Plaintiff's Br. 11. *Perry*'s only reference to Rule 79-5 was in *a single footnote*—which it introduced by noting that the recordings could not be broadcast "*at least* in the foreseeable future." 667 F.3d at 1084–85 (emphasis added); *see supra*, p. 4. And this Court's 2018 Order does not foreclose further consideration of the matter either. As the Ninth Circuit has held, "the law of the case doctrine is wholly inapposite" where a trial court is asked "to reconsider its own interlocutory order," since "*[a]ll [such] rulings of a trial court are subject to revision at any time*." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001); *see also* Fed. R. Civ. P. 54(b) (interlocutory orders "may be revised at any time before the entry of [final] judgment"); Mem. Order, *Perry v. Schwarzenegger*, No. 18-15292 (Apr. 19, 2019), ECF No. 57-1 (holding the Court's August 12, 2020 Order is not a final decision).

2.   As explained in our opening brief, Rule 79-5(g) does not apply to the videotapes here, as an initial matter, because they were placed in the record *by the Court*, not filed by one of the parties. It is clear that Rule 79-5 is limited to party-filed documents from: (a) the title of the Rule, which indicates that it is meant to instruct parties on the procedures for "Filing Documents Under Seal"; (b) subsection a of the Rule, which establishes the scope of the Rule as governing "sealed documents submitted by registered e-filers" or "by a party that is not permitted to e-file"; and (c) the text of subsection g itself, which provides that the seal on a document shall not be lifted if the "Submitting Party"—i.e., the *party that filed the document*—shows "good cause" for maintaining the seal. *Accord* N.D. Cal. L.R. 79-5(f) (2010). KQED argues that Rule 79-5(g) does apply to documents lodged in

11

the record by a court, notwithstanding these textual cues, citing non-precedential orders sealing a variety of documents such as transcripts, trial exhibits, and judicial opinions. Of course, no one questions the authority of a court to issue opinions under seal, but none of KQED's cases holds that this authority comes from Rule 79-5—or that it is governed by Rule 79-5(g)'s presumptive ten-year limit. *See generally United States v. Shryock*, 342 F.3d 948, 983 (9th Cir. 2003) ("the district court has the inherent power to seal documents"). And none of KQED's cases involved *anything like* the item at issue here—a video recording of an entire trial, created at the direction of the Court for limited use in chambers in preparing findings of fact, and placed in the record by the Court itself.

KQED's backup argument that Rule 79-5(g)'s use of the term "party" "includes the Court" requires little response. KQED's Br. 11. KQED submits that (1) the term "designating party" in Rule 79-5 is the same as the term "designating party" in Northern District's Stipulated Protective Order; (2) that the Stipulated Protective Order defines "designating party" to include "a Party or Non-Party"; and (3) that the Protective Order further defines "Non-Party" to include entities "not named as a Party to this action." *Id.* But what KQED is *not* able to find, in its lengthy concatenation of various extraneous provisions, is *any* use of the term "Party" in the Rules to *include the Court itself.*

3.   Even if Rule 79-5 *could* be read as applying to the sealing of documents submitted by the Court itself, rather than a "party" as the Rule says, it would still not require the unsealing of *these particular* recordings, because the dissemination and broadcast of a video recording of trial proceedings is governed by an altogether different rule—Rule 77-3—and that remains the case even if the recordings happen to be lodged in the record. KQED and Plaintiffs both respond by maintaining that Rule 77-3 has nothing to say about how a video-recording may be used after it is created, KQED's Br. 11–13; Plaintiffs' Br. 15, but we have already explained why that reasoning fails. *See supra*, pp. 8–9. In determining whether the video recording of the trial proceedings in this matter may be disclosed and broadcast to the public, this Court should follow the rule *that actually speaks to whether a video recording or trial proceedings may be disclosed and broadcast to the public*. *See Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1158 (9th Cir. 2004) (specific governs the general).

4.   Even setting all these arguments aside, Rule 79-5 does not authorize the disclosure of the videotapes for still another reason: that Rule itself provides that the seal may be extended beyond the

ten-year default "upon a showing [of] good cause," N.D. CAL. L.R. 79-5(g), and that standard is plainly met here. For the reasons discussed in Part I, the critically important value of preserving the integrity of the judicial system constitutes a "compelling reason" to maintain the recordings under seal, as Judge Walker promised, even under the common-law or the First Amendment. It follows *a fortiori* that this compelling interest constitutes "good cause" for purposes of Rule 79-5(g).

Plaintiffs resist this conclusion, arguing that "[a]lthough Rule 79-5(g) uses the phrase 'good cause,' " it actually means "compelling reason" instead. Plaintiffs' Br. 12–13. The cases they cite show nothing of the kind. Rather, those cases—which distinguish between the standards that apply to the disclosure of sealed documents that are or are not attached to a non-dispositive motion—all deal with the *common law right of access*, not Rule 79-5. *See Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) (creating exception to "the usual presumption of the *public's right of access*" for materials attached to non-dispositive motions (emphasis added)); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135–36, 1139 (9th Cir. 2003) ("In *Phillips*, . . . we carved out an exception to the presumption of access"); *Plexxikon Inc. v. Novartis Pharm. Corp.*, 2020 WL 1233881, at *1 (N.D. Cal. Mar. 13, 2020) (the " 'compelling reasons' standard" "derives from the common law"). We freely acknowledge that the common law (if it applied here, which it does not) could be overcome only by "compelling reasons." But that does not change the fact that *Rule 79-5(g)* on its face allows a seal to be extended "upon showing good cause." Ultimately the point is irrelevant, however, since the value of judicial integrity surmounts either threshold.

5.   Finally, even if Rule 79-5 covered items filed by the Court itself, applied here contrary to Rule 77-3's more specific prohibition, and required the disclosure of the videotapes notwithstanding the compelling reasons for keeping them under seal, this Court's prior order *still* erred in calculating *the date* that disclosure should take place. Rule 79-5(g) sets forth a precise, formal rule governing how to calculate its timespan: the seal is presumptively lifted "10 years from the date the case is closed." In this case, there is no difficulty in figuring out when the clock started: it started on August 27, 2012, when the Court entered judgment and directed the Clerk to "close this file" and the case was marked closed. Dkt. #842. Both Plaintiffs and KQED point to the Court's Order two days later deeming its August 27 closure to be effective " 'nunc pro tunc' on August 12, 2010." KQED's Br.

13

14; *see also* Plaintiffs' Br. 18. But Rule 79-5 does not run from when the Court enters an order closing the case "nunc pro tunc"; it runs from when the case *was actually closed*. Proponents do not doubt the Court's power to correct clerical errors "nunc pro tunc" in some instances, but that authority "as a general rule does not enable the court to make 'substantive changes affecting parties' rights.' " *Singh v. Mukasey*, 533 F.3d 1103, 1110 (9th Cir. 2008) (quoting *Transamerica Ins. Co. v. South*, 975 F.2d 321, 325 (7th Cir. 1992)). Ultimately, Plaintiffs' nonsensical contention that this case "was actually closed on August 12, 2010, and has been since this Court's order on August 29, 2012" refutes itself, without the need of any assistance from us. Plaintiffs' Br. 18.[1]

### C.   There Is No First Amendment Right To Access the Video Recordings.

Finally, Plaintiffs and KQED ask the Court to issue a groundbreaking constitutional ruling holding that they are entitled to obtain the trial recordings under the First Amendment. The Court should decline the invitation. It is true that "[t]he First Amendment guarantees free and open access to judicial proceedings," Plaintiffs' Br. 22; *see also* KQED's Br. 21, but as the Ninth Circuit has squarely held, that First Amendment right is "amply satisfied" where the public and press are "granted access to the proceedings themselves." *Valley Broad. Co. v. U.S. Dist. Court for Dist. of Nevada*, 798 F.2d 1289, 1292–93 (9th Cir. 1986). There is no dispute that such access was granted here. Plaintiffs and KQED note that the First Amendment right extends to court "documents" and "records" as well as the proceedings themselves, Plaintiffs' Br. 22; KQED's Br. 21, but again, under settled law the First Amendment right to access these items *is fully satisfied* so long as the press and public are "provided with transcripts" of those materials. *Valley Broadcasting*, 798 F.2d at 1292; *see also Nixon*, 435 U.S. at 609 (First Amendment "simply is not applicable" where "the press . . . was permitted to listen to the tapes and report on what was heard" and "also were furnished transcripts of the tapes"); *United States v. Antar*, 38 F.3d 1348, 1359–60 (3d Cir. 1994); *United States v. Beckham*, 789 F.2d 401, 408–09 (6th Cir. 1986). Again, there is no dispute that such transcripts have been provided here.

---

[1] KQED objects that the validity of the *nunc pro tunc* Order is "moot" because "Proponents never challenged Judge Ware's judgement and amended order closing the case," KQED's Br. 14, but that misses the point. We do not object to the August 29, 2012 *nunc pro tunc* Order itself, which may be valid for certain purposes not at issue here; what we object to is any attempt to use that Order in calculating the 10-year period established by Rule 79-7(g)—and we *have* challenged *that*, at every opportunity.

Nothing in the Ninth Circuit's recent decision in *Courthouse News Service v. Planet* changes the analysis. 947 F.3d 581 (9th Cir. 2020). As KQED and Plaintiffs note, in *Courthouse News Service*, the Ninth Circuit held that in addition to applying to criminal proceedings, "a qualified First Amendment right of access extends to timely access to newly filed civil complaints." *Id.* at 591. But *Courthouse News Service* nowhere suggests that the right to access civil judicial records and proceedings is *more robust* than in the criminal context; and as just discussed, it is well established even in criminal cases that (1) the First Amendment is fully satisfied where the proceedings were open to the public and transcriptions of any records are freely available; and (2) there is no right, beyond this, to broadcast the trial proceedings—either contemporaneously or after the fact. *See Estes v. Texas*, 381 U.S. 532, 539 (1965); *id.* at 584–85 (Warren, C.J., concurring); *id.* at 588 (Harlan, J., concurring); *Amsler v. United States*, 381 F.2d 37, 53 (9th Cir. 1967); *see also Conway v. United States*, 852 F.2d 187, 188 (6th Cir. 1988); *United States v. Kerley*, 753 F.2d 617, 620 (7th Cir. 1985); *United States v. Hastings*, 695 F.2d 1278, 1284 (11th Cir. 1983).

Despite the lengthy perorations by Plaintiffs and their Amici about the First Amendment values that "prohibit government from summarily closing courtroom doors," Plaintiffs' Br. 22; *see also* Reporters' Amicus 7, they elsewhere *acknowledge* that "[t]he trial in this matter was a public proceeding," that "at no point in time was the courtroom closed," and that "[t]he testimony has been widely circulated" in transcript form. Plaintiffs' Br. 4, 5; *see also* KQED's Br. 15 ("Every moment of what was recorded was open to the public, and every line uttered by a participant was captured in the transcript."). The First Amendment guarantees nothing beyond this.

## CONCLUSION

For the foregoing reasons, this Court should permanently maintain the seal.

Dated: May 27, 2020

> COOPER AND KIRK, PLLC
> ATTORNEYS FOR DEFENDANTS-INTERVENORS
>
> By: /s/Charles J. Cooper
>     Charles J. Cooper