**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| KRISTIN M. PERRY; SANDRA B. STIER; PAUL T. KATAMI; JEFFREY J. ZARRILLO, *Plaintiffs-Appellees*, | No. 20-16375 |
| | D.C. No. 3:09-cv-02292-WHO |
| CITY AND COUNTY OF SAN FRANCISCO, *Intervenor-Plaintiff-Appellee*, | |
| | OPINION |
| KQED, INC., *Intervenor-Appellee*, | |
| v. | |
| GAVIN NEWSOM, Governor; ROB BONTA, Attorney General; TOMÁS J. ARAGÓN,* in his official capacity as Director of the California Department of Public Health & State Registrar of Vital Statistics; LINETTE SCOTT, in her official capacity as Deputy Director of Health Information & Strategic Planning for the California Department of Public Health, *Defendants-Appellees*, | |

---

* Under Fed. R. App. P 43(c)(2), Rob Bonta and Tomas Aragón have been substituted for their predecessors, Xavier Becerra and Mark B. Horton.

DENNIS HOLLINGSWORTH; GAIL J.
KNIGHT; MARTIN F. GUTIERREZ;
MARK A. JANSSON,
    *Intervenor-Defendants-Appellants*,

and

PATRICK O'CONNELL, in his official
capacity as Clerk-Recorder for the
County of Alameda; DEAN C.
LOGAN, in his official capacity as
Registrar-Recorder/County Clerk for
the County of Los Angeles,
                              *Defendants.*

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick, District Judge, Presiding

Argued and Submitted December 7, 2020
San Francisco, California

Filed November 18, 2021

Before:  Carlos F. Lucero,** William A. Fletcher, and
Sandra S. Ikuta, Circuit Judges.

---

** The Honorable Carlos F. Lucero, United States Circuit Judge for
the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

Opinion by Judge W. Fletcher;
Dissent by Judge Ikuta

**SUMMARY**[***]

---

### Civil Rights

The panel dismissed, for lack of jurisdiction, an appeal from the district court's order releasing to the public the video recordings of the district court bench trial in the landmark case striking down California's Proposition 8 forbidding same-sex marriage.

Judge Walker recorded the trial for use in chambers, pursuant to a local rule in effect at the time. When proponents of Proposition 8 ("Proponents") objected, he assured them that the recording was not going to be used for purposes of public broadcasting or televising. The video recordings were offered to the parties for use in their closing arguments and were later entered into the record under seal. In 2011, after Judge Walker's retirement and while the appeal of Judge Walker's order permanently enjoining Proposition 8 was pending, then-Chief Judge Ware ordered the video recordings to be unsealed. Proponents appealed, explaining that they had understood Judge Walker's assurance to mean that the recordings would not be made public, although during oral argument, the attorneys acknowledged that neither they nor their clients believed the recordings would remain permanently sealed. On appeal, this court reversed the district court, holding that it had abused its discretion in

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

ordering the recordings unsealed in light of Judge Walker's specific assurances that the recordings would not be broadcast to the public, at least in the foreseeable future. In an amended footnote, the court cited local Rule 79-5(f), which provides that any document filed under seal in a civil case shall be open to the public 10 years from the date the case was closed, unless good cause could be shown to extend the seal. In 2020, Proponents asked the district court to extend the seal. The district court declined the request, in part because Proponents failed to submit any evidence that any Proponent or witness who testified on behalf of Proponents wanted the recordings to remain under seal or feared retaliation or harassment if the recordings were released.

The panel held that Appellants, a subset of the original Proponents, failed to establish a particularized and concrete injury sufficient to constitute "injury in fact" as the Supreme Court has defined that term. Appellants did not claim, and cited no authority for the proposition, that a statement—even a "promise"— made by a judge to litigants in the course of litigation is an enforceable contract. The panel held that even assuming, contrary to their statement in the 2011 appeal, that Judge Walker told Appellants that the video recordings would remain sealed in perpetuity, they failed to plausibly allege a concrete and particularized injury. The panel rejected Appellants' contentions that the unsealing would result in a "palpable injustice" to Appellants themselves or would harm future litigants' ability to rely on judicial "promises," and would thereby injure both the judicial system and future litigants. Neither alleged injury was sufficiently concrete and particularized for purposes of Article III standing. The panel therefore lacked jurisdiction over the appeal.

Dissenting, Judge Ikuta stated that for the past ten years, the Proponents have gone to extraordinary lengths to prevent the public broadcast of these trial proceedings, including a successful trip to the Supreme Court and multiple appeals to this court.  Whether Chief Judge Walker's promise not to publicly broadcast the trial recording is an enforceable contract or merely closely analogous to one, the breach of that promise is a concrete and particularized injury sufficient to confer Article III standing upon the Proponents. Accordingly, the issue of Article III standing does not provide a basis to depart from this court's prior ruling "that the integrity of the judicial process is a compelling interest that in these circumstances would be harmed by the nullification of the trial judge's express assurances, and that there are no alternatives to maintaining the recording under seal that would protect the compelling interest at issue."  *Perry v. Brown*, 667 F.3d 1078, 1081 (9th Cir. 2012).

## COUNSEL

John D. Ohlendorf (argued), Charles J. Cooper, David H. Thompson, Peter A. Patterson, Cooper & Kirk PLLC, Washington, D.C., for Intervenor-Defendants-Appellants.

Christopher D. Dusseault (argued), Theodore J. Boutrous Jr., Theane Evangelis, Abbey J. Hudson, and Jillian N. London, Gibson Dunn & Crutcher LLP, Los Angeles, California; Theodore B. Olson, Matthew D. McGill, Amir C. Tayrani, and Andrew Wilhelm, Gibson Dunn & Crutcher LLP, Washington, D.C.; Ethan Dettmer and Elizabeth A. Dooley, Gibson Dunn & Crutcher LLP, San Francisco, California; David Boies, Boies Schiller & Flexner LLP, Armonk, New York; for Intervenor-Plaintiffs-Appellees.

Seth E. Goldstein, Deputy Attorney General; Benjamin M. Glickman, Supervising Deputy Attorney General; Thomas S. Patterson, Senior Assistant Attorney General; Rob Bonta, Attorney General; Attorney General's Office, Sacramento, California; for Defendants-Appellees.

Dennis J. Herrera, City Attorney; Ronald P. Flynn, Chief Deputy City Attorney; Jeremy M. Goldman, Co-Chief of Appellate Litigation; Office of the City Attorney, San Francisco, California; for Intervenor-Plaintiff-Appellee.

Thomas R. Burke (argued) and Kelly M. Gorton, Davis Wright Tremaine LLP, San Francisco, California; Rochelle L. Wilcox, Davis Wright Tremaine LLP, Los Angeles, California; for Intervenor-Appellee.

Katie Townsend, Caitlin V. Vogus, and Shannon A. Jankowski, Reporters Committee for Freedom of the Press,

Washington, D.C., for Amici Curiae Reporters Committee for Freedom of the Press and 32 Media Organizations.

## OPINION

W. FLETCHER, Circuit Judge:

We are once again asked to decide whether either the First Amendment or common-law right of access requires public release of video recordings of the district court bench trial in the landmark case striking down California's Proposition 8 forbidding same-sex marriage. *See Perry v. Schwarzenegger*, 704 F. Supp. 2d 921 (N.D. Cal. 2010). Long after the trial, the district court ordered release of the recordings. Appellants are a subset of the original proponents of ballot Proposition 8. We conclude that Appellants have failed to demonstrate sufficient injury for Article III standing. We therefore dismiss their appeal for lack of jurisdiction.

## I. Background

In 2008, California voters passed Proposition 8 amending California's Constitution to provide that "[o]nly marriage between a man and a woman is valid or recognized in California." Cal. Const. art. 1, § 7.5. Two same-sex couples who wished to marry ("Plaintiffs") filed suit in the Northern District of California against the Governor, Attorney General, and other California officials. *Hollingsworth v. Perry*, 570 U.S. 693, 702 (2013). Plaintiffs argued that Proposition 8 violated their due process and equal protection rights under the federal Constitution. *Id.* The California State defendants refused to defend Proposition 8, though they continued to enforce it. *Id.* Proposition 8's official proponents who were

responsible for putting it on the ballot—Dennis
Hollingsworth, Gail Knight, Martin Gutierrez, Hak-Shing
William Tam, Mark Jansson, and Protectmarriage.com
("original Proponents")—were permitted to intervene as
defendants. *Schwarzenegger*, 704 F. Supp. 2d. at 954. Tam
split off before trial, leaving a group we will refer to as
"Proponents" or "remaining Proponents."

A bench trial was scheduled for January 2010 before
then-Chief Judge Vaughn Walker. As that time grew closer,
Judge Walker discussed with the parties the possibility of
livestreaming the trial to other courthouses. *Hollingsworth v.
Perry*, 558 U.S. 183, 200 (2010) (per curiam) (Breyer, J.,
dissenting). The primary obstacle to such broadcasting was
the local rules of the Northern District. In particular, Local
Rule 77-3 read in relevant part:

> Unless allowed by a Judge or a Magistrate
> Judge with respect to his or her own chambers
> or assigned courtroom for ceremonial
> purposes, the taking of photographs, public
> broadcasting or televising, or recording for
> those purposes in the courtroom or its
> environs, in connection with any judicial
> proceeding, is prohibited. Electronic
> transmittal of courtroom proceedings and
> presentation of evidence within the confines
> of the courthouse is permitted, if authorized
> by the Judge or Magistrate Judge.

*Perry v. Brown*, 667 F.3d 1078, 1082 n.1 (9th Cir. 2012).

In December 2009, the Ninth Circuit Judicial Council
authorized a pilot program "permitting the use of video in

nonjury civil cases." *Hollingsworth*, 558 U.S. at 201 (Breyer, J., dissenting).   A few days later, the Northern District amended its local rules in order to participate in the pilot program.   *Id.*   The rule change would have allowed the Proposition 8 trial to be broadcast to other courthouses.

Proponents challenged this change of rules.   In January 2010, they petitioned our court for a writ of mandamus that would have prevented the district court from participating in the pilot program. *Id.* at 188.  We denied the petition.  On the morning of the first day of trial, the Supreme Court issued a temporary stay of the proposed broadcast to other courthouses. *Id.* at 185.  Two days later, the Court extended the stay. *Id.* at 184.  The Court concluded that the Northern District's amendment of its local rules likely violated 28 U.S.C. § 2071, which requires that courts generally provide "appropriate public notice and opportunity for comment" when changing their rules.  *See Brown*, 667 F.3d at 1082 (citing *Hollingsworth*, 558 U.S. at 191).

Judge Walker had video recorded (but not broadcast beyond the courthouse) the first two days of trial in the event that the Supreme Court lifted the temporary stay. *Id.*  After the stay was extended, Proponents asked that the trial no longer be recorded.  Judge Walker responded:

> The local rule permits the recording for purposes . . . of use in chambers and that is customarily done when we have these remote courtrooms or the overflow courtrooms.  And I think it would be quite helpful to me in preparing the findings of fact to have that recording.  So that's the purpose for which the recording is going to be made going forward.

But it's not going to be for purposes of public broadcasting or televising.

After this assurance from Judge Walker, Proponents dropped their objection to recording the trial. *Perry*, 667 F.3d at 1082. Proponents called only two witnesses at the trial. Proponents explained, without providing supporting evidence, that their other witnesses declined to testify because they "were extremely concerned about their personal safety, and did not want to appear with any recording of any sort." *Schwarzenegger*, 704 F. Supp. 2d at 944.

Without objection, the video recordings of the trial were offered to the parties for use in their closing arguments, and were later entered into the record under seal. *Brown*, 667 F.3d at 1082. Judge Walker relied on the recordings to prepare his findings of fact and conclusions of law in his written order at the conclusion of the case. *Schwarzenegger*, 704 F. Supp. 2d at 929. He also allowed the parties to keep partial copies of the recordings, subject to a protective order. *Id.* On August 4, 2010, Judge Walker entered an order permanently enjoining the enforcement of Proposition 8, holding that it violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment. *See id.* at 1004.

Proponents appealed. *Perry v. Brown*, 671 F.3d 1052 (9th Cir. 2012). They did not challenge, as part of their appeal, Judge Walker's decision to enter the video recordings into the record under seal, or his decision to provide partial copies of the recordings to the parties. *Brown*, 667 F.3d at 1083.

Less than a year after deciding the case, Judge Walker retired. *Id.* Both before and after retiring, Judge Walker used clips of the recordings in public appearances. *Id.* In

response, the Proponents—whose merits appeal was then pending before us—moved this court to order the return of all copies of the recordings to the district court. *Id.* Plaintiffs, joined by a coalition of media companies, cross-moved to unseal the recordings. *Id.* We transferred the motions to the district court for that court to address them in the first instance.

Then-Chief Judge James Ware had taken over the case following Judge Walker's retirement. After determining that the common-law right of access applied and that Proponents had failed to demonstrate a compelling reason to continue the seal, the court ordered that the video recordings be unsealed. *Perry v. Schwarzenegger*, No. C 09-02292, 2011 WL 4527349 (N.D. Cal. Sept. 19, 2011). Proponents appealed, explaining that they had understood Judge Walker's assurance to mean that the recordings would not be made public. They contended, further, that their witnesses would likely be harassed if the recordings were released, and that fear of harassment would make it more difficult to retry the case if Proponents succeeded in their merits appeal.

In 2011, during oral argument in the appeal from the court's order unsealing the records, Proponents' counsel acknowledged that neither they nor their clients believed the recordings would remain permanently sealed:

> JUDGE HAWKINS: Were your clients under the impression that these tapes would be forever sealed?

> COUNSEL: No Your Honor, I believe that a seal lasts for—not necessarily, I guess, is the better answer, is the seal lasts for ten years

under the local rules of the Northern District of California and at the end of the trial—at the end of the proceedings—at the end of the case, then we would be entitled to go in and ask for an extension of that time to a specific date.  But it would be a minimum of ten years, Your Honor.

JUDGE HAWKINS: And it's clear from the record that your client understood that and acted on that basis?

COUNSEL: The record, I don't believe has anything one way or the other on that, but yes we were aware of the local rules, Your Honor, that it was a minimum of ten years and that we would have the opportunity to ask for an extended seal if we could make a good cause showing of that.

Oral Argument at 07:04–07:58, *Brown*, 667 F.3d 1078 (No. 11-17255), https://www.ca9.uscourts.gov/media/video /?20111208/11-17255.

We reversed the district court, holding that it had abused its discretion in ordering the recordings unsealed.  *Brown*, 667 F.3d at 1081.  We concluded, even assuming that the First Amendment and common-law right of access applied, that there was a compelling reason not to release the recordings at that time.  *Id.* at 1084.  We wrote, "The reason is that Proponents reasonably relied on Chief Judge Walker's specific assurances—compelled by the Supreme Court's just-issued opinion—that the recording would not be broadcast to the public, at least in the foreseeable future."  *Id.* at 1084–85.

In an appended footnote, we cited and quoted Local Rule 79-5(f), to which Proponents' counsel had referred in his answer during oral argument. *Id.* at 1085 n.5. Our footnote explained that Rule 79-5(f)

> provides that "[a]ny document filed under seal in a civil case shall be open to public inspection without further action by the Court 10 years from the date the case is closed," with the proviso that "a party that submitted documents that the Court placed under seal in a case may, upon showing good cause at the conclusion of the case, seek an order that would continue the seal until a specific date beyond the 10 years provided by this rule."

*Id.* (alteration in original) (quoting Local Rule 79-5(f)).

In the separate merits appeal, we affirmed Judge Walker's ruling that Proposition 8 violated the Fourteenth Amendment of the Constitution. *Brown*, 671 F.3d 1052. The Supreme Court granted certiorari and ultimately concluded that while Proponents had standing to defend Proposition 8 in the trial before the district court, they lacked Article III standing to appeal the district court's decision striking down Proposition 8. *Hollingsworth*, 570 U.S. at 715. Two years later, in *Obergefell v. Hodges*, 576 U.S. 644 (2015), the Court held that same-sex marriage is protected under the Fourteenth Amendment.

In 2017, media intervenor KQED asked the district court to unseal the video recordings of the trial. Proponents opposed the unsealing. By this time, Judge Ware had retired

and the case had again been reassigned, this time to Judge William Orrick.

In 2018, the district court held that the common-law right of access applied to the trial recordings. The court held, further, that the reliance interest we had identified in 2012 remained a compelling reason to maintain the recording's seal until its presumptive expiration after ten years, pursuant to the court's local rules. The court ordered that the trial recordings be released after the seal's presumptive expiration in 2020, unless Proponents demonstrated a "compelling reason" to extend the seal. Proponents appealed. We dismissed the appeal for lack of jurisdiction, holding that the decision was neither a final order nor an appealable collateral order. *Perry v. Schwarzenegger*, 765 F. App'x 335 (9th Cir. 2019).

In 2020, Proponents asked the district court to extend the seal. For the first time, the California State defendants actively supported release of the video recordings to the public. The court declined to extend the seal, in part because "the Proponents again failed to submit any evidence by declaration that any Proponent or witness who testified on behalf of the Proponents want[ed] the trial recordings to remain under seal . . . [or] fear[ed] retaliation or harassment if the recordings are released." The court also found that Proponents' acknowledgment during oral argument in 2011 was "a significant indication that even Proponents' counsel contemporaneously understood that sealing is typically limited in time and that it was not reasonable to rely solely on Judge Walker's statements to insist that sealing be permanent." On August 12, 2020, the court ordered that the recordings be made public.

Proponents timely appealed.  A divided motions panel of this court stayed the district court's ordered release of the recordings pending a hearing before the merits panel. Following oral argument, our merits panel requested supplemental briefing addressing the question whether Proponents have Article III standing to bring this appeal.

## II.  Standard of Review

Even when not raised by the parties, we are obliged to determine whether we have subject matter jurisdiction. Article III standing is an essential ingredient of subject matter jurisdiction.  *Whitaker v. Tesla Motors Inc.*, 985 F.3d 1173, 1178 (9th Cir. 2021).

## III.  Article III Standing

Appellants are all of the original Proponents except for Hak-Shing William Tam and Protectmarriage.com.  With the appeal in its current posture, the threshold (and determinative) question is whether Appellants have Article III standing.  As the parties seeking federal review, Appellants bear the burden of showing that they have standing.

Under Article III of the Constitution, our jurisdiction is limited to "Cases" and "Controversies."  U.S. Const. Art. III, § 2.  "For there to be such a case or controversy, it is not enough that the party invoking the power of the court have a keen interest in the issue.  That party must also have 'standing . . . .'"  *Hollingsworth*, 570 U.S. at 700.  The Supreme Court has explained that the "'irreducible constitutional minimum' of [Article III] standing consists of three elements."  *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  Those elements

require that the party invoking federal jurisdiction "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct . . . , and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560–61). The Court has explained that "under Article III, a federal court may resolve only a real controversy with real impact on real persons." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quotation marks and citation omitted).

Although questions of standing often arise early in a case, "Article III demands that an 'actual controversy' persist throughout all stages of litigation." *Hollingsworth*, 570 U.S. at 705. "That means that standing 'must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance.'" *Id.* (quoting *Arizonans for Off. English v. Arizona*, 520 U.S. 43, 64 (1997)).

The current appeal comes to us in a different posture from Appellants' prior appeals. When Appellants appealed Judge Ware's order unsealing the recordings in 2011, they plausibly alleged potential harm from their release. At that time, their merits appeal was still pending. If they had succeeded in that appeal, the case might well have been retried. Appellants introduced evidence that they and others had been harassed for supporting Proposition 8 around the time of its passage. Based on this evidence, Appellants plausibly alleged that their prospective witnesses might refuse to testify for fear of harassment if the video recordings of the first trial were released.

When Appellants appealed Judge Orrick's order in 2019, we lacked appellate jurisdiction to review the order. The district court had denied immediate relief but had provided Appellants the option of establishing a compelling reason to

maintain the seal prior to the recordings' release in 2020. We accordingly dismissed the appeal for lack of an appealable final order.

Unlike in 2011, there is now no prospect of a retrial. Further, Appellants do not allege or rely on any fear of harassment, as indicated by comments by Appellants' counsel to the district court in 2020:

> I very much appreciate that Your Honor had invited and perhaps expected some additional kind of argumentation about threats to the witnesses' safety or harassment, or that sort of thing, but the truth is, Your Honor, that's never been the motivating factor or the basis for which we've opposed disclosure of these videotapes.

Unlike in 2019, the district court's ruling in 2020 is an appealable final order.

In denying Proponents's request to keep the video recordings sealed, the district court concluded in 2020:

> Proponents again failed to submit any evidence by declaration that any Proponent or witness who testified on behalf of Proponents wants the trial recordings to remain under seal. There is no evidence that any Proponent or trial witness fears retaliation or harassment if the recordings are released. Nor is there any evidence that any Proponent or trial witness on behalf of the Proponents believed at the time or believes now that Judge

Walker's commitment to personal use of the recordings meant that the trial recordings would remain under seal forever.

## IV.  Injury in Fact

Our Article III standing inquiry in this appeal begins and ends with "injury in fact, the first and foremost of standing's three elements." *Spokeo*, 136 S. Ct. at 1547 (cleaned up).  To satisfy this element, Appellants must demonstrate "an injury that is both 'concrete and particularized.'"  *Id.* at 1545 (emphasis omitted) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).  To be "particularized," the injury must affect Appellants "in a personal and individual way." *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560 n.1).  To be "concrete . . . [the injury] must actually exist." *Id.*

Appellants' theory of standing is rooted in an analogy to breach of contract. *See TransUnion*, 141 S. Ct. at 2204 (explaining that the injury in fact requirement may be satisfied where the burdened party has "identified a close historical or common-law analogue for their asserted injury"). In their view, releasing the trial tapes amounts to a breach of Judge Walker's "promise" that the recordings were not made "for purposes of public broadcasting or televising," interpreting his assurance as extending into perpetuity.  They claim to have relied on this assurance in deciding not to seek additional injunctive relief from the Supreme Court. Appellants contend that this alleged breach of Judge Walker's "promise" by Judge Orrick's order is alone sufficient to establish injury in fact.  They write in their supplemental brief:

Appellees begin by faulting us for failing to
establish by "declarations or other evidence"
that Proponents stand to suffer some tangible
harm "resulting from the unsealing,"—such as
threats of violence or retaliation—but as we
have explained, our standing is not based on
any such resulting injury, but rather on the
intangible (but critically significant and
concrete) harm that breach of Judge Walker's
promises would cause to "the sanctity of the
judicial process."

Appellants do not claim, and cite no authority for the
proposition, that a statement—even a "promise"—made by a
judge to litigants in the course of litigation is an enforceable
contract. An analogy to a traditionally recognized cause of
action does not relieve a complainant of its burden to
demonstrate an injury. *See*, *e.g.*, *Carlsen v. Gamestop, Inc.*,
833 F.3d 903, 909 (8th Cir. 2016) ("[I]t is crucial . . . not to
conflate Article III's requirement of injury in fact with a
plaintiff's potential cause of action, for the concepts are not
coextensive." (quotation marks and citation omitted)). To
carry their burden, Appellants must plausibly allege a
concrete and particularized *injury*. Even assuming, contrary
to their statement to our court in 2011, that Judge Walker told
Appellants that the video recordings would remain sealed in
perpetuity, they do not have Article III standing to appeal the
district court's order.

Appellants allege two kinds of injuries that would result
from unsealing the recordings. First, the unsealing would
result in a "palpable injustice" to Appellants themselves.
Second, the unsealing would harm future litigants' ability to
rely on judicial "promises," and would thereby injure both the

judicial system and future litigants.  Neither alleged injury is
sufficiently concrete and particularized for purposes of
Article III standing.  We address each alleged injury in turn.

### A.  "Palpable Injustice" to Appellants

Although not raised in their supplemental briefing
addressing Article III standing, Appellants' prior briefing
alleged that concrete injury to Appellants, in the form of
"palpable injustice," will result if the tapes are unsealed.  We
are willing to construe this allegation of injury broadly, as an
allegation of injury not only to Appellants personally, but also
to those who have been closely associated with them and who
may have depended on them to protect their interests.

Only one of the original Proponents, Hak-Shing William
Tam, testified at the bench trial.  *See Schwarzenegger*, 704
F. Supp. 2d at 940.  Although Tam was a named intervenor-
defendant in the bench trial, he was called by Proponents to
testify as an adverse witness during their case in chief.  *Id.*  In
2009, Tam submitted a declaration to the district court stating
that he had experienced harassment because of his support of
Proposition 8 and did not want the trial recorded.  However,
Tam has given no indication since then that he has reason to
fear the release of the recordings.

Further, there is no reason to believe that Appellants now
represent Tam's interests.  Even before the beginning of the
bench trial in January 2010, Tam had separated himself from
Proponents' joint representation and had obtained his own
counsel.  As far as the record before us reveals, Tam never
joined a motion or petition filed by the Proponents after
hiring separate counsel.  And while Tam's name appears on
the caption in the 2011 appeals concerning both these

recordings and the merits of Proposition 8, he was not listed on the notices of appeal filed by the other Proponents or on a single filing in those actions.  Tam was not a party to the 2018 and 2020 proceedings before Judge Orrick, and he is not a party to this appeal.  There is thus no evidence in the record that Tam now fears an injury if the recordings are released, and no evidence that Proponents are acting on his behalf in this appeal.

There is also no evidence of any threatened injury to the remaining Proponents if the video recordings are unsealed. None of them testified at the trial.  Further and critically, none of them has submitted a declaration that they fear harassment or reprisals if the recordings are unsealed.

Appellants called only two witnesses at trial, David Blankenhorn and Professor Kenneth Miller.  *See Schwarzenegger*, 704 F. Supp. 2d at 945.  Neither witness has ever submitted a declaration or given any indication in the record that he fears injury if the recordings are released. Indeed, Blankenhorn has been explicit that he does *not* fear harassment if the recordings are made public.  *See* Oral Argument at 9:50–10:24, *Brown*, 667 F.3d 1078 (No. 11-17255), https://www.ca9.uscourts.gov/media/video/?20111 208/11-17255 (Appellants' counsel explaining that Blankenhorn "has said candidly that he was not concerned about harassment of himself").  Miller has never indicated that he fears any injury if the recordings are released, even though a portion of his testimony was used by Judge Walker in a 2011 televised presentation and has been available online since that time.  *See* Judge Vaughn Walker, *History of Cameras in the Courtroom* at 33:15–36:55, C-SPAN (Mar. 22, 2011), www.c-span.org/video/?298109-3/judge-v aughn-walker-cameras-courtroom.

Appellants argue that not only they, but also their attorneys, "reasonably relied on Judge Walker's assurances" that the recordings would not be released.  To the extent Appellants are relying on possible injury to their attorneys, we seriously question their ability to make such an argument on the attorneys' behalf.  But we need not address this argument because none of Appellants' attorneys submitted any declarations or other evidence to the district court that they fear injury if the recordings are disclosed.

Finally, even if we were to allow Proponents to assert the interests of Proposition 8 general supporters, there is no evidence in the record that they have reason to fear harassment if the recordings are released now.  The record shows that during and prior to 2009, Proposition 8 supporters, including the original individual Proponents, experienced harassment.  But Appellants never supplemented this evidence with anything after 2009, despite opportunities to do so in both the 2018 and 2020 proceedings before the district court.

In short, Appellants have provided no evidence showing harm or threat of harm to themselves from the release of the video recordings.  Only three people aligned or potentially aligned with Appellants—Tam, Blakenhorn, and Miller—were witnesses at trial.  Tam is not a party to this appeal, is not represented by Appellants, and has expressed no concern about the release of the recordings.  Blakenhorn has explicitly stated that he has no concern about their release.  Miller has never indicated that he fears harassment if video recordings of his testimony are released, and parts of the recordings have been available to the general public for a decade.  The entire trial has been publicly available in transcript form since 2010, and there is no evidence in the

record that Appellants, their witnesses, or indeed any Proposition 8 supporter, have been harassed during the period since the release of the transcript.  Simply put, the record is devoid of the "factual showing of perceptible harm" required to establish an injury in fact.  *Lujan*, 504 U.S. at 566.  That is, Appellants have failed to show that an injury or threat of injury "actually exist[s]."  *Spokeo*, 136 S. Ct. at 1548; *see also TransUnion*, 141 S. Ct. at 2200 ("No concrete harm, no standing.").

## B.  Injury to the Judicial System and Future Litigants

We next consider Appellants' general allegation that harm to "the sanctity of the judicial process" and to "future litigants" will result from the release of the video recordings.  In Appellants' view, releasing the recordings would result in diminished trust in the judicial system and would require future litigants "to refuse to accept trial judges' assurances, inducing the filing of seemingly pointless appeals to guard against the possibility that the court might one day go back on its word."  We consider these two alleged injuries in turn.

First, in asserting injury to the judicial system, Appellants acknowledge that they allege an injury shared by everyone.  They concede in their supplemental briefing, "To be sure, the interest in preserving respect for our system of justice . . . is one shared by the public as a whole."  The Supreme Court has long admonished that a party "raising only a generally available grievance . . . does not state an Article III case or controversy."  *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (quoting *Lujan*, 504 U.S. at 573–74).  A purported injury is an impermissible "generalized grievance" when the interest of the party asserting it "is plainly undifferentiated and common to all members of the public."  *Id.* at 440–41

(quotation marks omitted) (quoting *United States v. Richardson*, 418 U.S. 166, 176–77 (1974)).

Appellants argue, however, that as parties to whom Judge Walker's "promise" was made, they "would suffer in a particular and individual way if those promises are breached." But as we explained above, Appellants have provided no evidence that they, or anyone whose interests are potentially aligned with them, would suffer any injury if the tapes are released. Accordingly, they have alleged no interest beyond that common to all of society, and they are "seeking relief that no more directly and tangibly benefits [them] than it does the public at large." *Id.* at 439 (quotation marks and citation omitted). This generalized grievance therefore lacks the particularity to constitute an injury in fact under Article III.

Second, nothing in the record indicates that Appellants will themselves be among the future litigants allegedly harmed by the release of the recordings. Article III requires that the party invoking federal jurisdiction have a "personal stake in the outcome of the controversy." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation omitted). For an injury to be sufficient for standing, "the party seeking review [must] be [it]self among the injured." *Lujan*, 504 U.S. at 563 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972)). Appellants have not alleged that they are currently engaged in other litigation or have plans to litigate in the future. The purported injury to future litigants, if it even exists, is unrelated to Appellants and insufficient for Article III standing.

## V.  Conclusion

While Appellants may feel strongly about the release of the recordings, "[t]he presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements."  *Hollingsworth*, 570 U.S. at 704 (quoting *Diamond v. Charles*, 476 U.S. 54, 62 (1986)). Appellants have failed to establish a particularized and concrete injury sufficient to constitute "injury in fact" as the Supreme Court has defined that term.  We therefore lack jurisdiction over their appeal from the district court's order.

**APPEAL DISMISSED.**

IKUTA, Circuit Judge, dissenting:

This is yet another sad chapter in the story of how the judiciary has been willing to bend or break its own rules and standards in order to publicize the proceedings of a single high-profile trial.  The urge to broadcast has continued despite the Supreme Court's unprecedented intervention to prevent the district court and our court from violating rules precluding such a broadcast, *Hollingsworth v. Perry* (*Hollingsworth*), 558 U.S. 183, 196 (2010) (per curiam), and our subsequent intercession to prevent the district court from reneging on a judge's "solemn commitments" not to do so, *Perry v. Brown* (*Perry*), 667 F.3d 1078, 1081 (9th Cir. 2012). And here we are again: the majority bends the principles of Article III standing in order to deprive proponents of the opportunity to argue that the court should not breach its binding obligations.

I

The story began in 2009 when a group of plaintiffs challenged a ballot initiative, Proposition 8, which overruled a California Supreme Court ruling that legalized same-sex marriage. The official proponents of Proposition 8 intervened to defend the lawsuit after state officials declined to do so.[1]

The trial was scheduled for January 2010. The proponents were understandably concerned about the impact of unwanted publicity. At the time, "numerous instances of vandalism and physical violence [were] reported against those who [were] identified as Proposition 8 supporters," *Hollingsworth*, 558 U.S. at 185–86, and supporters were subjected to death threats, boycotts, or loss of employment, *id.* at 185. The proponents therefore objected to publicly broadcasting the trial, *id.* at 184–85, relying in part on the district court's Local Rule 77-3, which for years had barred the broadcast of court proceedings,[2] *id.* at 191–92.

---

[1] The proponents here are all the official proponents in the original trial regarding Proposition 8 (Dennis Hollingsworth, Gail Knight, Martin Gutierrez, and Mark Jansson) with the exceptions of Hak-Shing William Tam and Protectmarriage.com.

[2] Local Rule 77-3 provided:

> Unless allowed by a Judge or a Magistrate Judge with respect to his or her own chambers or assigned courtroom for ceremonial purposes, the taking of photographs, public broadcasting or televising, or recording for those purposes in the courtroom or its environs, in connection with any judicial proceeding, is prohibited. Electronic transmittal of courtroom proceedings and presentation of evidence within the confines of the courthouse is permitted, if authorized by

Despite this local rule, the district judge presiding over the case, former Chief Judge Vaughn R. Walker, began a persistent effort to ensure that the trial would be broadcast to the public. *Id.* at 186. The judge first floated his interest in broadcasting the trial at a pre-trial hearing in September 2009, but the proponents strongly opposed it. *Id.* A month later, Chief Judge Walker joined a three-judge committee (appointed by the Ninth Circuit Judicial Council) to consider whether to initiate a "pilot program" to broadcast trial proceedings. *Id.* Not surprisingly, the committee recommended such a pilot program. *Id.* As Judge Walker acknowledged, in making this recommendation, the Proposition 8 case "was very much in mind at that time because it had come to prominence then and was thought to be an ideal candidate for consideration." *Id.* (citation omitted).

In December 2009, the Ninth Circuit Judicial Council rushed through a new pilot program allowing "the limited use of cameras in federal district courts within the circuit." *Id.* at 187 (citation omitted). Concurrently, the district court began an effort to amend Local Rule 77-3 so as to allow recording trials "for participation in a pilot or other project authorized by the Judicial Council of the Ninth Circuit." *Id.* (citation omitted). The proponents again strongly objected. Among other arguments, they claimed that any such changes to Ninth

---

the Judge or Magistrate Judge. The term 'environs,' as used in this rule, means all floors on which chambers, courtrooms or on which Offices of the Clerk are located, with the exception of any space specifically designated as a Press Room. Nothing in this rule is intended to restrict the use of electronic means to receive or present evidence during Court proceedings.

Circuit and local rules required a sufficient notice-and-comment period.  *Id.*

In response, the district court posted a new announcement, giving the public five business days to comment on the amended rule.  *Id.*  But even before the five business days had passed, the district court abruptly revised its website again, and announced that the revised rule was adopted pursuant to 28 U.S.C. § 2071(e), which allows courts to implement rules without prior public notice and opportunity for comment if there is an "immediate need" for the rule.  *Id.* at 187–88.

After the district court "revise[d] its rules in haste, contrary to federal statutes and the policy of the Judicial Conference of the United States . . . to allow broadcasting of this high-profile trial," *Hollingsworth*, 558 U.S. at 196, Chief Judge Walker informed the parties that he intended to record and broadcast the upcoming trial, and obtained the Ninth Circuit's approval to allow "real-time streaming of the trial to . . . federal courthouses in San Francisco, Pasadena, Seattle, Portland, and Brooklyn," *id.* at 188.  The Ninth Circuit indicated it could also approve streaming the trial over the internet, if the technical difficulties could be worked out.  *Id.* at 189.

Having failed to prevent the hasty amendment to the protective local rule, the proponents rushed to file an emergency motion with the Supreme Court to prevent the broadcast.  The Supreme Court immediately issued a temporary stay to prevent the trial from being broadcast to other courthouses.  *See Hollingsworth v. Perry*, 558 U.S. 1107 (2010).

But still, Chief Judge Walker continued recording the trial over the proponents' objection, "on the basis that the Supreme Court might decide to lift the temporary stay." *Perry*, 667 F.3d at 1082.

Two days later, the Supreme Court extended the stay "pending the timely filing and disposition of a petition for a writ of certiorari or the filing and disposition of a petition for a writ of mandamus." *Hollingsworth*, 558 U.S. at 199. The Court made clear that it was wrong for the district court to "change its rules at the eleventh hour to treat this case differently from other trials in the district," in order "to broadcast a high-profile trial that would include witness testimony about a contentious issue." *Id.* The Court emphasized that courts must comply with their own rules and standards. "By insisting that courts comply with the law, parties vindicate not only the rights they assert but also the law's own insistence on neutrality and fidelity to principle." *Id.* at 196.

But even with the Supreme Court behind them, the proponents could not make Chief Judge Walker stop filming. The proponents requested the district court halt further recording of the trial in light of the Court's order. But Chief Judge Walker declined to do so. Implicitly acknowledging the Supreme Court's order (and the possibility that the proponents could obtain further relief from the Court), Chief Judge Walker assured the proponents that any recordings would *not* be publicly broadcasted. Rather, Chief Judge Walker stated that a recording would be helpful to him in preparing the findings of fact, and pledged unequivocally: "So that's the purpose for which the recording is going to be made going forward. But it's *not going to be for purposes of public broadcasting* or televising." The next day, Chief

Judge Walker memorialized this assurance in a publicly filed notice that stated as follows: "Transmission of the proceedings to other locations solely within the San Francisco courthouse will continue along with recording *for use in chambers*, as permitted in Civ LR 77-3." Later, in his post-trial opinion, Chief Judge Walker stated that "the potential for public broadcast in the case *had been eliminated*." *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 944 (N.D. Cal. 2010) (emphasis added). In that same opinion, Chief Judge Walker directed the clerk of the court to file the trial recording under seal as part of the record. *Id.* at 929.

We subsequently held that these statements by Chief Judge Walker constituted "binding obligations" and "solemn commitments" that "there was no possibility that the recording would be broadcast to the public in the future." *Perry*, 667 F.3d at 1086–87. The proponents "reasonably relied on Chief Judge Walker's commitments in refraining from challenging his actions" by seeking further relief from the Court. *Id.* at 1088.

Less than a year later, Chief Judge Walker reneged on these "solemn commitments," *id.* at 1081, by playing portions of the trial recording during his public appearances, *id.* at 1083. Again, the proponents rushed to object, and moved the Ninth Circuit to order the return of all copies of the trial recording. *Id.* We referred the motion to the district court. *Id.* A group of media outlets that included Appellee KQED intervened to move the court to unseal the trial recording.

Over the proponents' objection, the district court declined to enforce Chief Judge Walker's commitment, and issued an order to unseal the recording. *Id.* The district court concluded that the common-law right of public access applied

to the recording and that the proponents had made no
showing sufficient to justify its sealing in the face of the
common-law right.  *Id.*

We strongly disagreed, and reversed.  We held that "the
district court abused its discretion by ordering the unsealing
of the recording of the trial notwithstanding the trial judge's
commitment to the parties that the recording would not be
publicly broadcast." *Id.* at 1081.  "The trial judge on several
occasions unequivocally promised that the recording of the
trial would be used only in chambers and not publicly
broadcast. He made these commitments because the Supreme
Court had intervened in this very case in a manner that
required him to do so." *Id.*  Even assuming the common-law
right of access applied to the trial recording, "the interest in
preserving the sanctity of the judicial process is a compelling
reason to override the presumption in favor of the recording's
release." *Id.*

One might think this would be the end of the proponents'
years of effort to prevent the public broadcast of the trial.  But
that would underestimate the apparently insatiable appetite to
publicize the trial.  In response to yet another motion from
KQED to unseal the trial recording, the district court
concluded that Chief Judge Walker's solemn commitment
had an expiration date.  The court reasoned that our holding
in *Perry* applied only until the local rules of the district
court—under which sealed records are presumptively
unsealed after ten years, see Northern District of California
Local Rule 79-5—kicked in.  Therefore, the district court
held that the recording could be unsealed in August 2020.
The proponents protested this ruling, but we dismissed their
appeal for lack of jurisdiction because the decision was
neither a final order nor an appealable collateral order.  *See*

*Perry v. Schwarzenegger*, 765 Fed. Appx. 335 (9th Cir. 2019) (mem.).

In April 2020, again over the proponents' objections, the district court concluded that the interest in judicial integrity that we emphasized in *Perry* was no longer a "compelling justification requiring indefinite sealing of the trial recordings," and held that the trial recordings prepared solely for Chief Judge Walker's private use, and subject to a commitment that eliminated their public broadcast, should be released to the public.  We stayed the district courts' order pending the proponents' appeal.

II

No one reading this saga of the proponents' efforts to prevent the public broadcasting of the trial proceedings could doubt that the proponents have a personal stake in enforcing Chief Judge Walker's promise.  Yet the majority remarkably concludes that the proponents—who for ten years have been trying to stop the unlawful broadcast of the trial proceedings—cannot sufficiently show they will be injured by a breach of the trial judge's "binding obligations."  *Perry*, 667 F.3d at 1087.  According to the majority, the proponents do not have enough of a stake in stopping the district court's breach of its "solemn commitments," *id.* at 1081, to even have Article III standing to bring this case.  As explained below, this is nothing more than another distortion of our rules and standards to ensure that this single high profile trial is broadcast, notwithstanding the compelling "interest in preserving the sanctity of the judicial process."  *Id.*

A

Article III of the Constitution confines the federal judicial power to the resolution of cases and controversies. "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (cleaned up). "To demonstrate their personal stake, plaintiffs must be able to sufficiently answer the question: 'What's it to you?'" *Id.* (quoting Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983)) (cleaned up). The only element of standing at issue here is whether the proponents can show they suffered an injury in fact that is concrete and particularized. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).[3]

A "concrete" injury must be "real, and not abstract." *TransUnion*, 141 S.Ct. at 2204 (citation omitted). "'Concrete' is not, however, necessarily synonymous with 'tangible,'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016), and "[v]arious intangible harms can also be concrete." *TransUnion*, 141 S. Ct. at 2204. "Chief among [such intangible harms] are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.*

One of these "traditionally recognized" harms is a violation of private rights, including contract rights, whether or not the violation of such rights resulted in economic damage or other injury. Common law courts in the Founding

---

[3] There is no dispute that the injury here—*i.e.*, unsealing the trial video—is actual and imminent.

era "reasoned that *every* legal injury necessarily causes damage," *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 798 (2021), including "the fact of breach of contract by itself," *id.* (citing *Marzetti v. Williams* (1830), 109 Eng. Rep. 842, 845 (K.B.)); *see also Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284, 292 (6th Cir. 2018) (Thapar, J., concurring) (collecting common law cases establishing that courts historically "entertained breach-of-contract claims even when 'no real loss be proved'" (citation omitted)). Common law courts heard breach of contract claims and awarded nominal damages even when "there was no apparent continuing or threatened injury."[4] *Uzuegbunam*, 141 S. Ct. at 798; *see also Marzetti*, 109 Eng. Rep. at 845 (noting that in case "substantially founded on a contract . . . the plaintiff, though he may not have sustained a damage in fact, is entitled to recover nominal damages"); Restatement (First) of Contracts § 328 (Am. L. Inst. 1932) ("Where a right of action for breach exists, but no harm was caused by the breach, . . . judgment will be given for nominal damages, a small sum fixed without regard to the amount of harm."). As Justice Thomas summed it up, "[h]istorically, common-law courts possessed broad power to adjudicate suits involving the alleged violation of private rights, even when plaintiffs alleged only the violation of those rights and nothing more." *Spokeo*, 578 U.S. at 344 (Thomas, J., concurring).

Federal courts continue to follow this common law principle that a breach of contract is itself a concrete injury

---

[4] To this day, California allows for an award of nominal damages in breach of contract cases where the plaintiff suffered no actual damages. *See* Cal. Civ. Code § 3360 ("When a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages.").

for purposes of Article III standing, regardless of whether a plaintiff suffers actual damages. *See Springer*, 900 F.3d at 287 (finding insured who was denied benefits but suffered no financial loss nevertheless sustained concrete injury because, "[l]ike any private contract claim, his [Article III] injury does not depend on allegation of financial loss. His injury is that he was denied the benefit of his bargain."); *Mitchell v. Blue Cross Blue Shield of N.D.*, 953 F.3d 529, 536 (8th Cir. 2020) ("Traditionally, a party to a breached contract has a judicially cognizable injury for standing purposes because the other party's breach devalues the services for which the plaintiff contracted and deprives them of the benefit of their bargain.") (cleaned up); *J.P. Morgan Chase Bank, N.A. v. McDonald*, 760 F.3d 646, 650–51 (7th Cir. 2014) ("When one party fails to honor its commitments, the other party to the contract suffers a legal injury sufficient to create standing even where that party seems not to have incurred monetary loss or other concrete harm."); *Katz v. Pershing, LLC*, 672 F.3d 64, 72 (1st Cir. 2012) ("[W]hen a plaintiff generally alleges the existence of a contract, express or implied, and a concomitant breach of that contract, her pleading adequately shows an injury to her rights."); *cf. Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1151 (9th Cir. 2017) (explaining plaintiffs' potential inability to prove damages in breach of contract case does not negate standing).

Common law courts held that promises were enforceable as contracts where the promisee relied on the promise, and as a result was "deluded and diverted from using any legal diligence to pursue" other remedies. *Pillans v. Van Mierop* (1765), 97 Eng. Rep. 1035, 1037 (K.B.); *see also* Kevin M. Teeven, *A History of Promissory Estoppel: Growth in the Face of Doctrinal Resistance*, 72 Tenn. L. Rev. 1111, 1112–13 (2005) (explaining *Pillans* summarized "the

justifications for common law promissory liability as they had existed since the sixteenth century").  Early American courts likewise enforced promises that induced justifiable reliance.  *See, e.g.*, *King's Heirs v. Thompson*, 34 U.S. 204, 218–20 (1835); *Barzilla Homes v. Dana*, 12 Mass. 190, 192 (Mass. 1815); *Trs. of Farmington Acad. v. Allen*, 14 Mass. 172, 176 (Mass. 1817); *Trs. of Parsonage Fund in Fryeburg v. Ripley*, 6 Me. 442, 445–46 (Me. 1830).  As summed up in the 1932 edition of the Restatement of Contracts, "[a] promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."  Restatement (First) of Contracts § 90 (Am. L. Inst. 1932).  Today, federal courts continue to entertain claims based on promissory estoppel.  *See, e.g.*, *Hass v. Darigold Dairy Prods. Co.*, 751 F.2d 1096, 1100 (9th Cir. 1985) (applying rule of promissory estoppel stated in Restatement (Second) of Contracts § 90 (Am. L. Inst. 1979)).

In sum, the breach of a contract or binding promise is an injury traditionally recognized as a violation of a private right, whether or not the injured party suffers economic or other damage.

B

Given this background, the proponents have a vigorous response to the question: "what's it to you."  *TransUnion*, 141 S. Ct. at 2203 (cleaned up).

First, we are bound by our precedent to hold that Chief Judge Walker made a binding, enforceable promise.  *Perry*,

667 F.3d at 1087.  Chief Judge Walker's promises not to broadcast the trial recording publicly were "solemn commitments," "binding obligations," and constraints on other judges' discretion to unseal the recording.  *Id.*  We held that Chief Judge Walker "promised the litigants that the conditions under which the recording was maintained *would not change*," and identified the "legal consequence" of that promise: "there was no possibility that the recording would be broadcast to the public in the future."  *Id.* at 1086.  And this conclusion that Chief Judge Walker made a binding promise wasn't a close call: "No other inference could plausibly be drawn from the record."  *Id.*

Further, "[t]here can be no question that [the proponents] reasonably relied on Chief Judge Walker's explicit assurances" that the recording would not be publicly broadcast.  *Id.*  As we explained, because the local rules did not allow for public broadcasting of trials, "Chief Judge Walker could not lawfully have continued to record the trial without assuring the parties that the recording would be used only for a permissible purpose."  *Id.* at 1087.  Accordingly, "[h]ad Chief Judge Walker not made the statement he did, [the proponents] would very likely have sought an order directing him to stop recording forthwith, which, given the prior temporary and further stay they had just obtained from the Supreme Court, they might well have secured."  *Id.* at 1085.  And because Chief Judge Walker's assurances were "compelled by the Supreme Court's ruling in this very case," they were "even worthier of the parties' reliance."  *Id.* at 1087.  Even the majority notes that the proponents relied on Chief Judge Walker's promises to keep recordings private not only for themselves, but also for the attorneys, witnesses, and supporters who "depended on them to protect their interests."  Majority Op. at 20.

Because Chief Judge Walker made a clear and unambiguous promise that resulted in reasonable, foreseeable, and detrimental reliance by the proponents and those who depended on them, a violation of that promise would be a violation of the proponents' legal rights.[5]  *See supra*, at 33–36.  Such a violation is a traditionally recognized harm providing a basis for lawsuit, whether or not it resulted in economic injury.  Therefore, publicly broadcasting the trial today constitutes a concrete injury for purposes of Article III standing, *see, e.g.*, *TransUnion*, 141 S.Ct. at 2204, regardless of whether the proponents or other individuals associated with them alleged a fear of harassment or reprisals if the broadcast is released.

The proponents' injury is also "particularized."  An injury is particularized if it "affect[s] the plaintiff in a personal and individual way."  *Lujan*, 504 U.S. at 560 n.1.  Here, there can be no question that unsealing the trial recording would do so.  Chief Judge Walker's promise was made directly to the

---

[5] The appellees here assert that the proponents were aware that Chief Judge Walker's promise would not last indefinitely.  But that argument relates to the merits of proponents' claim.  The proponents need not definitively prove the existence or scope of a contract or binding promise to establish Article III standing.  "Whether the elements of breach of contract, including the existence of a contract, are satisfied . . . goes to the merits, not to a court's power to resolve the controversy.  *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 212 (2d Cir. 2020) (citing *Perry v. Thomas*, 482 U.S. 483, 492 (1987)).  Accordingly, "a party that alleges harm due to another's breach of a contract has a justiciable controversy with the other party," and "courts have jurisdiction to resolve the controversy." *Id.*; *see also Novartis Seeds, Inc. v. Monsanto Co.*, 190 F.3d 868, 871 (8th Cir. 1999) (finding plaintiff alleging breach of contract had Article III standing and rejecting argument that merits defense defeats standing because "the distinction between such a defense and subject-matter jurisdiction is a vital one").

proponents; it was a promise about a recording of the proponents' trial specifically; and it was a promise that the proponents relied on. Indeed, in *Perry*, we emphasized that Chief Judge Walker's "solemn commitments" were "representations *to the parties*," and they "could not have been more explicitly directed toward the particular recording at issue." 667 F.3d at 1081 (emphasis added).

C

The majority's arguments to the contrary fail. First, the majority argues that the proponents have failed to establish that any harm will result from the release of the recordings. Majority Op. at 22–23. But, as explained above, the breach of a binding promise (here, a promise not to release the recording) is itself a concrete harm sufficient to establish an injury in fact for purposes of Article III standing. *See supra* at 33–36.

Second, the majority argues that we are not bound by *Perry*'s holding that Chief Judge Walker made a binding commitment, because when the proponents previously appealed Chief Judge Ware's order unsealing the recordings, "they plausibly alleged potential harm from their release." Majority Op. at 16. In the majority's view, the plausible harm was that, if the recording were unsealed, prospective witnesses might refuse to testify at a re-trial for fear of harassment. Majority Op. at 16. But our reasoning in *Perry* was not based on the conclusion that the proponents had plausibly alleged a fear of harassment. Indeed, *Perry* never addressed the question whether the proponents had standing, and so did not consider any question of the proponents' injury. Instead, focusing on the binding nature of Judge Walker's statements and the proponents' reliance on those

statements, we held that the "compelling reason" that required maintaining the trial recording under seal was that the "breach of reliance interests" constituted a "grave threat to the integrity of the judicial system." *Perry*, 667 F.3d at 1087. We explained that "the explicit assurances that a judge makes—no less than the decisions the judge issues—must be consistent and worthy of reliance." *Id.*

Finally, the majority argues that the proponents' injury is not particularized because any injury to the integrity of the judicial system is "an injury shared by everyone." Majority Op. at 23. But Chief Judge Walker did not promise the public as a whole that the trial recording would not be publicly broadcasted. Rather, he made that promise to the proponents specifically. And a breach of that promise will impact the proponents in particular because the recording is of *the proponents'* trial. Moreover, a breach of judicial integrity can concretely injure specific litigants even if it also undermines the public's trust in the justice system. *Cf. Spokeo*, 578 U.S. at 339 n.7 ("The fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance."). Thus, the fact that a breach of Chief Judge Walker's promise would undermine trust in the judicial system does not mean that the proponents—*i.e.*, the specific recipients of that promise—would not suffer a particularized injury.

III

For the past ten years, the proponents have gone to extraordinary lengths to prevent the public broadcast of these trial proceedings, including a successful trip to the Supreme Court and multiple appeals to our court. Whether Chief Judge Walker's promise not to publicly broadcast the trial

recording is an enforceable contract or merely closely analogous to one, the breach of that promise is a concrete and particularized injury sufficient to confer Article III standing upon the proponents. Accordingly, the issue of Article III standing does not provide a basis to depart from our prior ruling "that the integrity of the judicial process is a compelling interest that in these circumstances would be harmed by the nullification of the trial judge's express assurances, and that there are no alternatives to maintaining the recording under seal that would protect the compelling interest at issue." *Perry*, 667 F.3d at 1088. I therefore respectfully dissent from the majority's holding.